Patrick J. Neligan, Jr.
State Bar. No. 14866000
Douglas J. Buncher
State Bar No. 03342700
John D. Gaither
State Bar No. 24055516
NELIGAN LLP
325 North St. Paul, Suite 3600
Dallas, Texas 75201
Telephone:  214-840-5333
Facsimile:  214-840-5301
pneligan@neliganlaw.com
dbuncher@neliganlaw.com
jgaither@neliganlaw.com

**PROPOSED COUNSEL FOR DEBTORS**

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | § | CHAPTER 11 |
| | § | |
| NATIONAL RIFLE ASSOCIATION | § | CASE NO. 21-30085-____ |
| OF AMERICA and SEA GIRT LLC | § | |
| | § | |
| DEBTORS[1] | § | Joint Administration Requested |

**DEBTORS' EMERGENCY MOTION FOR AUTHORITY TO CONTINUE USE OF EXISTING CASH MANAGEMENT SYSTEM, MAINTAIN EXISTING BANK ACCOUNTS, PAY CERTAIN COSTS AND FEES ASSOCIATED WITH CREDIT CARD TRANSACTIONS, AND CONTINUE USE OF EXISTING BUSINESS FORMS**

The National Rifle Association of America (the "NRA") and Sea Girt LLC ("Sea Girt") (collectively, the "Debtors"), as debtors and debtors-in-possession, file this motion (the "Motion") pursuant to Sections 105(a) and 363(c) of the Bankruptcy Code[2] to request entry of an order, substantially in the form attached hereto as **Exhibit A**, authorizing the Debtors to continue to use their existing cash management system, maintain their existing bank accounts,

---

[1] The last four digits of the Debtors' taxpayer identification numbers are:  6130 (NRA) and 5681 (Sea Girt).  The Debtors' mailing address is 11250 Waples Mill Road, Fairfax, Virginia 22030.
[2] 11 U.S.C. §§ 101, *et seq*.  Unless otherwise noted, all statutory references are to the Bankruptcy Code.

**Debtors' Emergency Motion for Authority to Continue Use of Existing Cash Management System, Existing Bank Accounts, and Existing Business Forms**                                                                                                                              **Page 1**

pay certain prepetition costs associated with credit card transactions, and continue to use their existing business forms, and in support state as follows:

## I. BACKGROUND

1. On January 15, 2021 (the "Petition Date"), the Debtors filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code. The Debtors remain in possession of their property and are operating their businesses as debtors-in-possession in accordance with Sections 1107 and 1108 of the Bankruptcy Code. A detailed description of the Debtors' business, capital structure, and the events leading to the Debtors' bankruptcy is set forth in the Debtors' Information Brief and the Declarations of Sonya Rowling, Shawne Soto, and Robert Owens (collectively, the "First Day Declarations"), which are being filed with the Court and are incorporated herein by reference.

## II. THE DEBTORS' CASH MANAGEMENT SYSTEM AND EXISTING BANK ACCOUNTS

**A.     Overview**

2. In the ordinary course of business, the Debtors utilize a cash management system (the "Cash Management System") and various bank accounts (collectively, the "Existing Bank Accounts") to collect and transfer the funds generated by the Debtors' operations and to disburse funds to satisfy the Debtors' financial obligations. The NRA generates revenue through membership dues and contributions, fund raising, events, training programs, and sales of merchandise, sponsorships, and advertising, and operation of a museum and firing range at the NRA headquarters in Fairfax, Virginia. In addition to cash provided from operations, the NRA's operations are periodically funded by two revolving lines of credit, issued by Atlantic Union Bank ("AUB"). The NRA maintains separate bank accounts and cash management systems for

the NRA's general operations and for the operations of its Institute for Legislative Action ("ILA"), each of which is described below.

3. A schedule of all of the Debtors' Existing Bank Accounts identifying the depository institution and purpose of each account is attached hereto as **Exhibit B**. This Cash Management System and the Existing Bank Accounts are overseen and operated by the Debtors' financial services personnel in Fairfax, Virginia.

**B.    The NRA Cash Management System and Bank Accounts**

4. The NRA's primary banking relationship is with AUB. As part of the Cash Management System, the NRA maintains several accounts at AUB, and the NRA's operations are generally funded through a master account (the "General Fund") that is used as a cash concentration account for all deposits. The General Fund is linked to four zero balance collections and disbursement accounts related to specific operations and revenue streams, including (i) a payroll account, from which all payroll is funded, (ii) a general disbursement account, through which NRA payables are processed, (iii) an NRA Store account, into which revenue from the NRA Store is deposited, and (iv) a membership account, into which membership dues and revenue are deposited (collectively, the "Zero Balance Accounts"). Funds held in the Zero Balance Accounts are swept into the General Fund daily.

5. The NRA also maintains two loan sweep accounts (the "Loan Sweep Accounts") at AUB in connection with its available lines of credit. Funds drawn on the lines of credit are deposited into the applicable Loan Sweep Account and swept into the General Fund. Likewise, the NRA pays down the lines of credit by depositing funds from the General Account into the corresponding Loan Sweep Account. Funds are swept by AUB and applied to the outstanding balance on the lines of credit.

6. In addition to the operating accounts maintained at AUB, the NRA maintains several single purpose accounts at various banks related to revenue generated from events held throughout the country. These accounts are located at Wells Fargo, InBank, Commerce Bank, Huntington National Bank, and PNC. Generally, revenue generated through registration and other activities at these events are deposited into the specific account connected with the event,[3] and the funds are then transferred by the NRA's financial personnel to the General Fund. The NRA also maintains a general account at Chain Bridge Bank. In addition, it had to create a dedicated OFAC account at AUB in connection with certain foreign donations, although this account is not currently in use. Sea Girt maintains a bank account at BancorpSouth.

C. **The ILA Cash Management System and Bank Accounts**

7. While ILA is a division within the NRA and not a separate entity, it maintains its own bank accounts and cash management system related to its lobbying and political action activities. ILA's cash management system is structured in the same manner as the NRA system described above and consists of a general operating account that is linked with several zero-balance collection and disbursement accounts. In addition, ILA maintains dedicated accounts related to location-specific lobbying and political action activities that, under applicable law, must be held in a segregated single-purpose account. Finally, ILA maintains dedicated endowment accounts that hold restricted donations.

8. Historically, ILA maintained a banking relationship with Wells Fargo. As of the Petition Date, however, ILA was in the process of migrating its banking relationship to AUB. As a result, ILA presently maintains accounts at both Wells Fargo and AUB as it continues to

---

[3] Because AUB does not have branches throughout the country, the NRA maintains a general event revenue account at Wells Fargo that is used for deposits at most events. The event-specific accounts the NRA maintains at banks other than Wells Fargo are related to events held in areas in which there is no Wells Fargo branch.

transition its relationship to AUB, and each set of accounts remains in use. By this Motion, ILA seeks authority to continue to operate its cash management system in the ordinary course while also transitioning its banking relationship to AUB going forward, including the authority to close its Wells Fargo accounts as they become unnecessary.

**D.      Certain Credit and Debit Card Transactions**

9.      A substantial portion of the NRA's revenue consists of individual membership dues and contributions, many of which are paid electronically via credit and debit cards. These credit and debit card transactions are processed by Chase Paymentech ("the Card Processor") via a credit card processing system (the "Credit Processing System") under the terms of a Select Merchant Payment Instrument Processing Agreement (the "Merchant Services Agreement"). The Credit Processing System and the revenue received via credit and debit card transactions is critical to the NRA's ability to continue operating, and any disruption in this revenue stream would be extremely detrimental to the NRA's reorganization efforts.

10.     As credit and debit card transactions are processed via various points of sale, the Card Processor remits the funds from those transactions, net of its transaction fee under the Merchant Services Agreement, via daily settlements deposited into certain of the NRA's Existing Bank Accounts, which are then swept into the corresponding NRA or ILA operating account (i.e., the NRA General Fund or the primary ILA operating account). By this Motion, the NRA seeks authority to continue the Credit Processing System in the ordinary course of business and to perform its obligations under the Merchant Services Agreement, including the fees due to the Card Processor, in the ordinary course of business.

### III. RELIEF REQUESTED

11.     The Cash Management System and the Existing Bank Accounts facilitate the Debtors' cash monitoring, forecasting, and reporting, and enable the Debtors to efficiently

collect, transfer, and disburse funds generated by business operations. By this Motion, the Debtors seek authority to (i) continue to use the Cash Management System as described above in accordance with the Debtors' prepetition practices; (ii) maintain the existing Bank Accounts; (iii) continue the Credit Processing System in the ordinary course of business and to perform their obligations under the Merchant Services Agreement, including the fees due to the Card Processor; and (iv) continue to use prepetition business forms, including invoices, letterhead, checks, etc., in their current form. As discussed more fully below, the Debtors will designate the Existing Bank Accounts as "Debtor in Possession" accounts in accordance with the United States Trustee's guidelines and mark paper checks accordingly.

## IV. BASIS FOR REQUESTED RELIEF

**A.     Continuation of the Cash Management System**

12.    The Debtors seek authorization to continue to operate the Cash Management System consistent with their prepetition practices and operations and as set forth herein. Such authorization is consistent with the provisions of the Bankruptcy Code. Bankruptcy courts routinely permit Chapter 11 debtors to continue using their existing cash management system. *See, e.g.*, *In re CHC Group Ltd., et al.*, Case No. 16-31854 (BJH) (Bankr. N.D. Tex. June 9, 2016) (granting continued use of the existing cash management system); *In re Energy & Exploration Partners, Inc.*, Case No. 15-44931 (Bankr. N.D. Tex. Dec. 10, 2015) (Docket No. 427); *In re ALCO Stores, Inc.*, Case No. 14-34941 (Bankr. N.D. Tex. Oct. 16, 2014) (Docket No. 70); *In re Reddy Ice Holdings, Inc.*, Case No. 12-32349 (Bankr. N.D. Tex. Apr. 19, 2012) (Docket No. 110); *In re IDEARC Inc.*, Case No. 09- 31828 (Bankr. N.D. Tex. Apr. 19, 2009) (Docket No. 156); *In re Pilgrim Corporation, et al.*, Case No. 08-45664 (Bankr. N.D. Tex. Dec. 1, 2008) (Docket No. 69). Indeed, courts generally treat such requests as a relatively "simple matter." *In re Baldwin-United Corp.*, 79 B.R. 321, 327 (Bankr. S.D. Ohio 1987).

13. In addition, Section 363(c)(1) authorizes a debtor in possession to "use property of the estate in the ordinary course of business without notice or a hearing." The purpose of Section 363(c)(1) is to provide a debtor in possession with the flexibility to engage in the ordinary transactions required to operate its business without unneeded oversight by the court or its constituents. *In re Southmark Corp.*, 49 F.3d 1111, 1114 (5th Cir. 1995) ("[Debtor] use[d] a cash management system . . . to administer more efficiently and effectively its financial and corporate assets."); *Med. Malpractice Ins. Ass'n v. Hirsch (In re Lavigne),* 114 F.3d 379, 384 (2d Cir. 1997); *In re Roth Am.*, 975 F.2d 949, 952 (3d Cir. 1992); *In re HLC Props., Inc.*, 55 B.R. 685, 686 (Bankr. N.D. Tex. 1985) (finding "no need to further burden the docket or the staff of the Court with a superfluous order" when a transaction is in the ordinary course of business). Included within the purview of Section 363(c) is a debtor's ability to continue the "routine transactions" necessitated by a debtor's cash management system. *Amdura Nat'l Distrib. Co. v. Amdura Corp. In re Amdura Corp.)*, 75 F.3d 1447, 1453 (10th Cir. 1996); *Charter Co. v. Prudential Ins. Co. Am. (In re Charter Co.)*, 778 F.2d 617, 621 (11th Cir. 1985) (holding that order authorizing debtor to continue its customary cash management system was "entirely consistent" with § 363(c)).

14. Maintenance of the existing Cash Management System in the ordinary course of the Debtors' business will facilitate the Debtors' transition into these chapter 11 cases and will avoid any unnecessary disruption to the Debtors' operations. Accordingly, the Debtors seek authority under Section 363(c)(l) of the Bankruptcy Code to continue the collection, concentration, and disbursement of cash pursuant to the Cash Management System described above.

B.  **Request to Maintain Existing Bank Accounts**

15. The Office of the United States Trustee has established certain operating guidelines for debtors-in-possession in order to supervise the administration of chapter 11 cases (the "UST Guidelines"). These guidelines generally require debtors to: (i) close all existing bank accounts and open new debtor-in-possession bank accounts; (ii) establish separate accounts for operations, payroll, taxes, and cash collateral; and (iii) obtain checks for all debtor-in-possession accounts which bear the designation "Debtor-in-Possession." These requirements are designed to draw a clear distinction between pre- and post-petition transactions in order to prevent the inadvertent post-petition payment of pre-petition claims. For the reasons described in this Motion, the Debtors request a waiver of the requirement to close the Existing Bank Accounts and maintain separate case-specific accounts. Instead, the Debtors seek authority to continue to maintain and employ the Existing Bank Accounts with the same account numbers. The Debtors will instruct each bank at which the Existing Bank Accounts are located to designate the Existing Bank Accounts as debtor-in-possession accounts and will mark all post-petition checks as "Debtor in Possession" checks.

16. As described above, the Cash Management System is used for the purpose of collecting and distributing payments in the ordinary course of the Debtors' operations. Requiring the Debtors to set up new accounts and notify and coordinate with counterparties regarding the change would unnecessarily interrupt the Debtors' collection and disbursement of funds. *See In re Gaylord Container Corp.*, 1993 WL 188671, at *3 (E.D. La. May 14, 1993) (noting that the U.S. Trustee's requirements "represent a substantial burden on any debtor" and can result in "extraordinary unquantifiable costs . . . associated with the confusion engendered by the implementation of new policies and procedures to comply" with the requirements); *Off'l Comm. of Unsec. Cred. of Columbia Gas Transm. Corp. v. Columbia Gas Sys. Inc.*, 997 F.2d

1039, 1061 (3d Cir. 1993) (observing that requiring debtor to maintain separate accounts "would be a huge administrative burden and economically inefficient"). Similarly, in other chapter 11 cases, courts have recognized that strict enforcement of the requirement that a debtor-in-possession close its bank accounts does not serve the rehabilitative purposes of chapter 11. *See, e.g., In re Bag Liquidation*, Case No. 08-32096 (Bankr. N.D. Tex. May 12, 2008) (Docket No. 70).

17. Maintaining the Existing Bank Accounts and designating them as debtor-in-possession accounts will preserve business continuity and avoid the disruption to the Debtors' collection and disbursement procedures that would necessarily result from closing each Existing Bank Account and opening new accounts.

18. As reflected on **Exhibit B**, all but 4 of the Debtors' 32 Existing Bank Accounts are maintained at banks that are approved depositories in this region or others under the UST Guidelines, and all are insured by the United States through the FDIC. Further, the Debtors believe that all of the Existing Bank Accounts are maintained at financially sound institutions. Accordingly, the Debtors believe that the Existing Bank Accounts substantially comply with the approved investment guidelines identified in Section 345(b) of the Bankruptcy Code and will cooperate with the United States Trustee to address any concerns related to the Existing Bank Accounts.

19. In the course of maintaining the Existing Bank Accounts, the Debtors incur certain banking fees at the various banks at which the Existing Bank Accounts are located depending on monthly banking activity. As of the Petition Date, the Debtors are current on all monthly fees. The Debtors request authority to continue to pay regular and ordinary course bank

fees consistent with the Debtors' applicable banking agreements and with the Debtors' prepetition practice in the ordinary course of business.

20. Consistent with the Debtors' request to maintain the Existing Bank Accounts, the Debtors further request that the Court authorize the banks at which the Existing Bank Accounts are located to continue to maintain, service, and administer the Existing Bank Account as accounts of the Debtors as debtor in possession, without interruption and in the ordinary course of business. In this regard, the banks should be authorized to receive, process, honor, and pay any and all checks, ACH transfers and other instructions, and drafts payable through, drawn, or directed on such Existing Bank Accounts after the Petition Date by holders, makers, or other parties entitled to issue instructions with respect thereto. The Debtors requests that the Court authorize their banks to accept and honor all representations from the Debtors as to which checks, drafts, wires, or ACH transfers should be honored or dishonored consistent with any order of the Court and governing law, whether such checks, drafts, wires, or ACH transfers are dated before or subsequent to the Petition Date.

C. **Request to Maintain Existing Business Forms**

13. In the ordinary course of business, the Debtors utilize various business forms, including purchase orders, invoices, and letterhead. To avoid the disruption of the Cash Management System and unnecessary expenses, the Debtors request that they be authorized to continue use of their existing business forms substantially in the form existing immediately before the Petition Date, without reference to the Debtors' status as debtors-in-possession.

V. <u>**WAIVER OF STAY UNDER RULE 6004(h)**</u>

14. Rule 6004(h) provides that an order authorizing use of estate property is stayed for 14 days after the date of entry of the order, unless the Court orders otherwise. Because it is critical for the Debtors to continue operating the Cash Management System and using the

Existing Bank Accounts in the ordinary course of business, a stay of the Court's order granting this Motion would significantly disrupt the Debtors' operations and harm their estates. Among other things, a stay of the order granting this Motion could disrupt the NRA's revenue stream or prevent it from making critical ordinary course payments to employees and others. Accordingly, the Debtors requests that the stay imposed by Rule 6004(h) be waived in order to prevent immediate and irreparable harm to the Debtors' estates.

## VI. NOTICE

15. The Debtors will provide notice of this Motion to: (i) the Office of the United States Trustee; (ii) the Debtors' secured creditors; (iii) each of the Debtors' 20 largest unsecured creditors; (iv) governmental agencies having a regulatory or statutory interest in the Debtors' cases; and (v) to the extent applicable, any party whose interests are directly affected by this specific pleading. The Debtors submit that, in light of the nature of the relief requested and the urgency of the circumstances surrounding this Motion, no other or further notice need be given.

## VII. CONCLUSION AND PRAYER

16. For the reasons set forth above, the Debtors request that the Court enter an order (i) granting the relief requested herein; and (ii) granting any further relief the Court deems appropriate.

Dated: January 18, 2021                          Respectfully submitted,

/s/ Patrick J. Neligan, Jr.
Patrick J. Neligan, Jr.
Texas Bar No. 14866000
pneligan@neliganlaw.com
Douglas J. Buncher
State Bar No. 03342700
dbuncher@neliganlaw.com
John D. Gaither
Texas Bar No. 24055516
jgaither@neliganlaw.com

**NELIGAN LLP**
325 N. St. Paul, Suite 3600
Dallas, Texas 75201
Telephone: (214) 840-5300
Facsimile: (214) 840-5301

**PROPOSED COUNSEL FOR THE DEBTORS**

Debtors' Emergency Motion for Authority to Continue Use of Existing Cash Management System, Existing
Bank Accounts, and Existing Business Forms                                                                                          Page 12

90304v.2