# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF TEXAS
# DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | § | CHAPTER 11 |
| | § | |
| SEA GIRT LLC, and | § | CASE NO. 21-30085-11 |
| | § | CASE NO. 21-30080-11 |
| THE NATIONAL RIFLE ASSOCIATION | § | |
| OF AMERICA, | § | Joint Administration Requested |
| | § | |
| DEBTORS. | § | |
| | § | |

## DECLARATION OF SHAWNE E. SOTO
## IN SUPPORT OF CERTAIN FIRST DAY MOTIONS

1. My name is Shawne E. Soto. I am the Human Resources Information Systems ("HRIS") Benefits and Payroll Manager of the National Rifle Association of America (the "NRA" or the "Association").

2. I have served in my capacity as HRIS Benefits and Payroll Manager of the NRA since approximately 1995. As part of my job responsibilities, I am involved in overseeing all matters related to employee compensation and benefits. I also oversee all NRA compliance programs and control vendor management.

3. Unless otherwise noted, I have personal knowledge of all matters stated herein. I submit this declaration in support of Debtors' Emergency Motion for Interim and Final Orders Authorizing Payment of Pre-petition Employee Wages, Compensation, and Employee Benefits And Granting Related Relief (the "Wages Motion").

4. I reviewed the Wages Motion and am familiar with the relief it seeks.

**A.    Employee Wages, Associated Tax Obligations, and Employee Withholding**

5.    As of the Petition Date,[1] the NRA had 490 active employees as of the Petition Date, with 381 employees due to be paid during the next payroll cycle. The NRA's employees are paid bi-weekly, on every other Thursday, for the two-week period ending on the preceding Saturday. The NRA's payroll is processed through third-party administrator Ultimate Software ("UltiPro"), which calculates the NRA's bi-weekly payroll obligations and debits the NRA's payroll account on the Tuesday prior to biweekly payroll to employees. Approximately 90% of NRA employees are paid via direct deposit, and the remainder are paid via check. As of the Petition Date, the NRA's average biweekly payroll obligation, including applicable employee and employer tax obligations and various deductions and remittances, was approximately $1,720,000.

6.    As of the Petition Date, the NRA was current on all bi-weekly payroll obligations. The NRA's next payday is January 21, 2021, which covers wages earned during the period from January 3, 2021 to January 16, 2021. Accordingly, the NRA's next payday includes amounts owed to employees for work performed prior to the Petition Date. The NRA estimates that its total employee wage and tax obligation for the January 21, 2021 payroll will be $1,820,000, generally consisting of $865,000 in gross wages, $460,000 in employer and employee tax obligations, and various employee deductions and withholdings.

7.    During each pay period, the NRA also withholds certain amounts from employees' gross earnings related to various benefit programs and garnishments. The NRA estimates that its aggregated employee withholding obligation for the January 21, 2021 payroll will be approximately $211,000.

---

[1] Capitalized terms not defined herein have the same meaning as those terms defined in the underlying motions.

**DECLARATION OF SHAWNE E. SOTO**
**IN SUPPORT OF CERTAIN FIRST DAY MOTIONS**                                              Page 2

**B.     NRA Event Staff**

8.     The NRA has a network of non-employee independent contractors that provide support for NRA events throughout the year ("NRA Event Staff"). The NRA does not currently owe any amounts to NRA Event Staff for prepetition services and does not seek to pay such amounts under this Motion.

**C.     Health, Dental, and Disability Insurance and Related Benefits**

9.     The NRA provides regular, full time eligible employees, and their eligible dependents with access to group health, vision, dental, short- and long-term disability, and life insurance plans, administered by CIGNA (health, dental), UNUM (life, disability), and other third-party benefit providers. The NRA's health and dental insurance policies are self-funded and backstopped by a stop-loss policy. The NRA funds approximately 77% of the monthly costs for employees with the remaining 33% funded by participating employees through payroll deductions.

10.    Because the NRA's plan is self-funded, it is not possible to predict the number of claims that the NRA might be required to pay in a given period. In the ordinary course of business, the NRA pays health and dental claims on a daily basis through its claims submission process, with average daily claims ranging from approximately $10,000 to $50,000 per day depending on the volume of claims. The NRA's stop-loss insurance premiums paid to Cigna varies depending on the number of employees participating in the NRA's benefit plans. The NRA's approximate average monthly premium and administrative fee to Cigna in connection with the health and dental plan and stop-loss insurance is $90,000 to $125,000.

11.    The NRA provides employees with short-term disability coverage through a self-funded short-term disability plan administered via UNUM. The monthly administration cost for this program is approximately $1,200. Accrued claims are processed via UNUM and paid through

the NRA's payroll process. The NRA also provides long-term disability insurance, group and supplemental/dependent life insurance, and accidental death and dismemberment insurance, each of which is fully insured through UNUM. The NRA's aggregate monthly cost for this program is $40,000 per month, inclusive of premiums and administrative costs, which is partially paid via employee payroll deductions in the approximate amount of $9,800 per month.

12. The NRA also provides employees with the opportunity to participate in certain voluntary benefit programs for which premiums are fully funded through deductions from participating employees' payroll. These programs include vision, prepaid legal, group home/auto insurance, and pet insurance, and the associated withholding and premium remittances are approximately $3,800 per pay period, which are paid to the plan administrators on a monthly basis. The NRA anticipates that its withholding and remittance obligations in connection with these voluntary benefit programs for the January 21, 2021 payroll will be approximately $3,800.

D. **Flexible Spending Accounts**

13. The NRA also provides employees with access to employee flexible spending accounts (the "FSAs"). The NRA's FSA program permits eligible employees to contribute funds on a pretax basis, subject to an annual cap, to accounts used to pay qualifying medical expenses throughout the year. The FSAs are administered in-house and funded via deductions from employees' biweekly pay. Employees are then reimbursed from their FSA upon submitting qualified expenses to the NRA's in-house FSA administrator. The NRA's FSA claims obligations are approximately $5,000 to $9,000 per week depending on the claims that are submitted.

E. **Vacation and Paid Time Off**

14. All regular, full time employees of the NRA are eligible for paid vacation based on length of employment. Employees initially accrue 2.88 hours per pay period worked, which can

increase to 7.21 hours per pay period depending on length of service and position held. Generally, the NRA's employees accrue 10 days of vacation during their first year of employment. Unused vacation is rolled over into the next calendar year, but employees' accrual of unused vacation is capped at 225 hours. Unused accrued vacation is payable upon the termination or resignation of employment. The NRA estimates that its total outstanding vacation obligation as of the Petition Date is approximately $3,600,000.

15. The NRA anticipates that many employees will continue to use accrued PTO in the ordinary course of business without causing any material cash flow requirements beyond the NRA's normal payroll obligations.

**F.    Retirement Benefits**

16. The NRA also maintains a company 401k plan (the "401k Plan") for certain eligible employees. The 401k Plan is administered by Fidelity. Employee contributions are processed with each payroll and deducted from participating employees' paycheck. The NRA does not match employee contributions. The NRA does not currently owe any amounts to Fidelity for the administration of the 401k Plan.

17. The NRA also maintains a defined benefit retirement plan that is administered by Fidelity (the "Pension Plan"). The NRA is periodically required to make certain minimum contributions to the Pension Plan. As of the Petition Date, the NRA was current on its required minimum contributions to the Pension Plan. The next required minimum contribution will be due on April 15.

18. In addition, the NRA also provides a limited number of nonqualified 457F/B retirement plans (the "Nonqualified Retirement Plans") for certain employees; these plans are 100% funded by bi-weekly employee payroll deductions. These Nonqualified Retirement Plans

are maintained by the NRA and administered by the Newport Group, which invoices the NRA approximately $10,000 per year for administration and record keeping functions. In the event a plan participant leaves the employment of the NRA, the balance of the participant's nonqualified retirement account is paid out to the employee by the NRA as part of the payroll process.

## G. Payroll Processing, Software, and Administration Expenses

19. As noted above, the NRA utilizes UltiPro to process and administer its payroll. The NRA's obligation to UltiPro for processing services and support is approximately $45,000 per quarter. The NRA also utilizes software provided Web Benefits Design in connection with the various employee benefit programs described above. This software enables the NRA to manage employee benefit enrollment and elections and is critical to the maintenance and operation of the NRA's employee benefits program. The NRA's approximately monthly licensing fee for the use of this Web Benefits Design software is approximately $3,000 per month. In connection with the FSA program described above, the NRA utilizes software provided by Travis Software, at an approximate annual cost of $1,400.

20. In addition, the NRA and ILA utilize Benefit Resources, Inc. to provide various benefit consulting services to their employees. These services are critical to the NRA and ILA's ability to maintain plan compliance and to efficiently administer their employee benefit programs. Absent the services provided by Benefit Resources, Inc., employee benefit programs could be disrupted or become non-compliant. The NRA and ILA's monthly obligation in connection with these services is approximately $12,500. As of the Petition Date, the NRA and ILA were current with Benefit Resources, Inc.

## H. Miscellaneous Employee Obligations and Expenses

21. The NRA provides company phones to certain eligible employees in connection with their employment.  In connection with this employee phone program, the NRA maintains corporate accounts with both AT&T and Verizon Wireless.  The NRA estimates that its aggregate monthly cost for providing company phones under these two plans is approximately $7,000.  The NRA was current on its obligations in connection with the company phone program as of the Petition Date.

22. In addition, the NRA is obligated under federal regulations to provide employees hearing tests and periodic blood tests (for employees exposed to lead), which are provided by third-party testing agencies.  The cost of individual tests is de minimis (less than $100).  While the NRA was current on all obligations related to such testing as of the Petition Date, there may have been tests conducted shortly prior to the Petition Date for which payment will not become due until post-petition.

23. The NRA also maintains an employee assistance program that provides employees with access to various counseling, therapeutic, and rehabilitative services.  The cost of this program is approximately $13,000 per year, paid annually in June.  As of the Petition Date, the NRA was current on its obligations with respect to the employee assistance program.

**I.    The NRA's Employees are Indispensable and Critical to its Continued Operations.**

24. To maintain the continuity of the NRA's business operations, and to preserve the morale of employees, it is important that the NRA be permitted to pay the Prepetition Employee Obligations at its discretion in the ordinary course of business. If employees do not receive payment for work performed prepetition, the NRA could lose a significant number of its employees with little or no notice.  Moreover, any employees living paycheck to paycheck would suffer severe adverse consequences if they did not receive their full compensation.

25. Likewise, the NRA would suffer immediate and irreparable harm as a result of any loss of morale, departures of employees, disruption to its operations, decreased revenue, and resulting damage to goodwill. The NRA's ability to continue operating is largely contingent on its employees and their willingness and ability to continue managing and running the NRA's business. Honoring the Prepetition Employee Obligations will minimize the hardship that employees will certainly endure if payroll is interrupted and will prevent the substantial disruption to the NRA's operations that could result if employees lost the reasonable expectation that they will be paid for their work. I believe that it is in the best interest of its estate to honor the Prepetition Employee Obligations.

### J. Payment of the Prepetition Employee Obligations

26. The payment of the Prepetition Employee Obligations here is necessary to prevent the risk of damage to the NRA's estate, which would adversely affect all parties in interest. As explained above, the continued services and cooperation of the NRA's employees is integral and necessary to the NRA's continued operations and reorganization. If the NRA is unable to assure its employees that they will be paid timely, or if employees are not immediately assured of uninterrupted, critical payments to which they are entitled, the NRA's post-petition operations would be seriously jeopardized. In addition, many of the NRA's employees have years of experience and institutional knowledge, are highly valuable to the NRA, and would be difficult to replace, especially on short notice. The disruption to the NRA's operations caused by the loss of experienced employees would be extremely and irreparably detrimental to the NRA's estate.

27. The NRA has not identified a practical alternative to payment of the Prepetition Employee Obligations that would not result in a significant disruption of its business and harm to the estate.

### K. Payment of Certain of the Prepetition Employee Obligations

28. The payroll taxes and other deductions included in the Prepetition Employee Obligations principally represent employee earnings that state and local governments, employees, and/or judicial authorities have designated for deduction from employees' paychecks. Certain deductions, such as contributions to employee benefits programs (including the 401k Plan, for example) and child support and alimony payments, have been withheld from employees' paychecks on behalf of other parties.

29. I believe that unless the Court grants the relief requested in the Wages Motion, there will be disruption to the NRA's necessary payments to maintain and ensure the NRA's ongoing operations. Specifically, failure to pay the NRA's employees in the ordinary course of business on January 21, 2021 could result in the wholesale loss of employees and dramatically impair the NRA's ability to continue operating its business. Accordingly, payment of the Prepetition Employee Obligations as requested in this Motion is necessary to avoid immediate and irreparable harm to the NRA and its estate.

30. Pursuant to 28 U.S.C. §1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Dated: January 19, 2021

/s/ *Shawne Soto*
Shawne E. Soto