IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | § | CHAPTER 11 |
| | § | |
| SEA GIRT LLC, and | § | CASE NO. 21-30085-11 |
| | § | CASE NO. 21-30080-11 |
| THE NATIONAL RIFLE ASSOCIATION | § | |
| OF AMERICA, | § | Joint Administration Requested |
| | § | |
| DEBTORS. | § | |
| | § | |

## DECLARATION OF ROBERT G. OWENS
## IN SUPPORT OF CERTAIN FIRST DAY MOTIONS

1.    My name is Robert G. Owens. Since August 2, 2018, I have served as the Chief Fiscal Officer and Fiscal Director at the Institute for Legislative Action ("ILA") at the National Rifle Association of America (the "NRA" or the "Association").

2.    In my role, I oversee all accounting operations and financial reporting for ILA.

3.    Unless otherwise noted, I have personal knowledge of all matters stated herein. I submit this declaration in support of the Debtors' (i) *Emergency Motion for Authority to Continue Use of Existing Cash Management System, Maintain Existing Bank Accounts, and Continue Use of Existing Business Forms* (the "Cash Management Motion"); and (ii) *Emergency Motion for Interim and Final Orders Authorizing Payment of Prepetition Employee Wages, Compensation, and Employee Benefits, and Granting Related Relief* (the "Wages Motion"), which I understand are being filed with the Court contemporaneously with my declaration.

A.  **The Cash Management Motion**

4. I have reviewed the Cash Management Motion and am familiar with the relief it seeks.[1]

5. Exhibit B to the Cash Management Motion, which I have reviewed, is a schedule of all existing ILA bank accounts.

6. In the ordinary course of business, ILA utilizes a cash management system and various bank accounts to collect and transfer the funds generated by ILA's operations, and to disburse funds to satisfy certain obligations.

7. ILA maintains its own bank accounts and cash management system. ILA's cash management system consists of a general operating account that is linked with several zero-balance collection and disbursement accounts. In addition, ILA maintains dedicated accounts related to location-specific lobbying and political action activities that, under applicable law, must be held in a segregated single-purpose account. In addition, ILA maintains dedicated endowment accounts that hold restricted donations.

8. Historically, ILA maintained a banking relationship with Wells Fargo. As of the Petition Date,[2] however, ILA was in the process of transferring its banking relationship to Atlantic Union Bank ("AUB"). As a result, ILA presently maintains accounts at both Wells Fargo and AUB as it continues to transition its banking relationship to AUB, and each set of accounts remains in use.

---

[1] ILA maintains its own bank accounts and cash management system (separate from the rest of the NRA); this declaration refers only to ILA's individual accounts and case management system. My understanding is that a separate declaration is being filed contemporaneously with the First Day Motions and discusses the Cash Management System at the NRA outside of ILA.

[2] Capitalized terms not defined herein have the same meaning as those terms defined in the underlying motion.

9. In the course of maintaining its existing bank accounts, ILA incurs certain banking fees at the banks at which ILA's existing bank accounts are located. The amount of fees depends on monthly banking activity. As of the Petition Date, ILA is current on all monthly fees.

10. In the ordinary course of ILA's business, it utilizes various business forms, including purchase orders, invoices, and letterhead.

11. I believe that unless the Court grants the relief requested in the Cash Management Motion, there will be unnecessary disruption to ILA's operations, and ILA will be forced to incur unnecessary expenses.

B. **The Wages Motion**

12. I have reviewed the Wages Motion and am familiar with the relief it seeks.

13. ILA in the ordinary course of its business reimburses certain business-related expenses incurred by employees in the scope of their employment, some of which were incurred but had not been reimbursed as of the Petition Date (collectively, the "Reimbursable Expenses"). Reimbursable Expenses generally relate to business travel, transportation, lodging, meals, cell phones, certain supplies, and other miscellaneous expenses incurred during employees' normal business activities. Employees incur such expenses in reliance upon the understanding that such expenses will be reimbursed. It is my belief that failure to reimburse employees for the Reimbursable Expenses would impact employee morale and cause them financial hardship.

14. In order to be reimbursed, employees are required to submit receipts and expense reports for qualifying Reimbursable Expenses for appropriate review and approval. Upon approval, Reimbursable Expenses are processed as part of ILA's ordinary course accounts payable

process.³  As of the Petition Date, ILA estimates that its obligation to employees on account of Reimbursable Expenses is approximately $30,000. Additional Reimbursable Expenses may have been incurred but not reported as of the Petition Date.

15. ILA provides company phones to certain eligible employees in connection with their employment. In connection with this employee phone program, ILA maintains corporate accounts with both AT&T and Verizon Wireless. I estimate that ILA's aggregate monthly cost for providing company phones under these two plans is approximately $7,000. ILA was current on its obligations in connection with the company phone program as of the Petition Date.

16. Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Dated: January 18, 2021        /s/ *Robert G. Owens*
                                Robert G. Owens

---

³ Within ILA, Reimbursable Expenses are generally submitted by Sunday for the preceding week, reviewed and approved on Mondays and Tuesdays, and paid on Thursdays via ILA's ordinary accounts payable process.