Patrick J. Neligan, Jr.
State Bar. No. 14866000
Douglas J. Buncher
State Bar No. 03342700
John D. Gaither
State Bar No. 24055516
NELIGAN LLP
325 North St. Paul, Suite 3600
Dallas, Texas 75201
Telephone: 214-840-5333
Facsimile: 214-840-5301
pneligan@neliganlaw.com
dbuncher@neliganlaw.com
jgaither@neliganlaw.com

PROPOSED COUNSEL FOR DEBTORS

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | § | CHAPTER 11 |
| | § | |
| NATIONAL RIFLE ASSOCIATION | § | CASE NO. 21-30085-hdh11 |
| OF AMERICA and SEA GIRT LLC | § | |
| | § | |
| DEBTORS[1] | § | JOINTLY ADMINISTERED |

### DEBTORS' MOTION FOR WAIVER OF THE REQUIREMENTS OF SECTION 345(B)

The National Rifle Association of America (the "NRA") and Sea Girt LLC ("Sea Girt") (collectively, the "Debtors"), as debtors and debtors-in-possession, file this motion (the "Motion") pursuant to Sections 105(a) and 345(b) of the Bankruptcy Code to request entry of an order, substantially in the form attached hereto as **Exhibit A**, waiving the requirements of Section 345(b) with respect to certain investment accounts held by the NRA, and in support state as follows:

---

[1] The last four digits of the Debtors' taxpayer identification numbers are: 6130 (NRA) and 5681 (Sea Girt). The Debtors' mailing address is 11250 Waples Mill Road, Fairfax, Virginia 22030.

**Debtors' Motion for Waiver of Requirements of Section 345(b)**      **Page 1**

## I. BACKGROUND

1.      On January 15, 2021 (the "Petition Date"), the Debtors filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code.  The Debtors remain in possession of their property and are operating their businesses as debtors-in-possession in accordance with Sections 1107 and 1108 of the Bankruptcy Code.  A detailed description of the Debtors' business, capital structure, and the events leading to the Debtors' bankruptcy is set forth in the Debtors' Informational Brief [Docket No. 31] and the Declarations of Shawne Soto [Docket No. 10], Robert Owens [Docket No. 11], and Sonya Rowling [Docket No. 12], and is incorporated herein by reference.

## II. NRA INVESTMENT ACCOUNTS

2.      In the ordinary course of business, the NRA maintains certain investment accounts (the "Investment Accounts") at Morgan Stanley Smith Barney LLC ("Morgan Stanley").[2]  As of December 31, 2020, the balance of these Investment Accounts was approximately $51,000,000, which was allocated between cash, equities, fixed income, and alternative assets.[3]  The funds in the Investment Accounts are managed in accordance with the NRA's Long-Term Reserves Oversight and Investment Policy (the "NRA Investment Policy") under the supervision of the NRA's Treasurer and the Investment Oversight Subcommittee of the Finance Committee of the NRA's Board of Directors.  The NRA Investment Policy sets forth specific guidelines regarding all aspects of the NRA's investments, including policies regarding oversight, conflicts of interest, earnings, investment objectives and directives, and investment performance and management.  A copy of the NRA Investment Policy is attached hereto as **Exhibit B**.  The Investment Accounts are in compliance with all aspects of the NRA Investment

---

[2] The Investment Accounts consist of 22 separately numbered accounts, each containing different investments.
[3] The NRA has provided the United States Trustee with account statements for the Investment Accounts detailing the NRA's exact holdings.

Policy, which, among other things, has been designed to maximize the NRA's risk-adjusted returns over the long term while also minimizing the risk of large losses.

3. As a New York not-for-profit corporation, the NRA is also subject to the New York Prudent Management of Institutional Funds Act (the "PMIFA"), N.Y. NOT-FOR-PROFIT CORP. LAW, Art. 5-A, which governs the investment of funds by charitable organizations in New York. As discussed more fully below, the PMIFA dictates that the NRA consider a variety of factors when managing its investments. The NRA Investment Policy mandates that all investments made by the NRA comply with the PMIFA, and at all times the NRA has managed the Investment Accounts to ensure compliance with the PMIFA. The NRA's compliance with the PMIFA is also subject to its review by the NRA's outside auditor. For the avoidance of doubt, the Investment Accounts comply with the PMIFA.

4. Further, the balances in the Investment Account have been pledged to Atlantic Union Bank ("AUB") as collateral for a $28,000,000 line of credit issued by Atlantic Union Bank pursuant to a Loan and Security Agreement, dated as of September 27, 2018. In connection therewith, the Investment Accounts are subject to a Control Agreement, also dated as of September 27, 2018, which, together with the Loan and Security Agreement, restricts the NRA's ability to withdraw or move funds from the Investment Accounts. The NRA believes that, taken together, the foregoing investment structure serves to safeguard the funds in the Investment Accounts, ensure compliance with New York law, and secure and protect the NRA's long term financial health.

### III. RELIEF REQUESTED

5. By this Motion, the NRA requests entry of an order waiving the requirements of Section 345(b) with respect to the Investment Accounts for cause. Cause exists because the NRA is a large, sophisticated debtor and the Investment Accounts are maintained at a highly

rated, stable financial institution. Moreover, the Investment Accounts are closely managed by the NRA in accordance with the NRA Investment Policy, which is expressly designed to safeguard the NRA's investments and ensure compliance with the PMIFA. Finally, the Investment Accounts serve as collateral for AUB and cannot be liquidated without AUB's consent. Accordingly, the NRA seeks relief from the requirements of Section 345(b) and authorization to continue to maintain the Investment Accounts at Morgan Stanley consistent with the NRA Investment Policy and the NRA's prepetition practices.

### IV. BASIS FOR REQUESTED RELIEF

**A.     The Court May Waive the Requirements of Section 345(b) for Cause**

6.     Section 345(a) authorizes debtors to deposit or invest estate funds in a manner that "will yield the maximum reasonable net return on such money, taking into account the safety of such deposit or investment." However, Section 345(b) imposes certain collateral requirements on deposits or investments that are not "insured or guaranteed by the United States" or "backed by the full faith and credit of the United States." The requirements of Section 345(b) may be waived by the Court "for cause."

7.     Recognizing that the requirements of Section 345(b) "can work to needlessly handcuff larger, more sophisticated debtors," courts determining whether to waive the requirements of Section 345(b) for cause have employed a "totality of the circumstances" analysis and considered, among other factors, (i) the sophistication of the debtor's business, (ii) the size of the debtor's business operations, (iii) the amount of the investments involved, (iv) the bank ratings of the financial institutions at which the funds are held, (v) the complexity of the case, (vi) the safeguards in place within the debtor's business insuring the safety of the funds, (vii) the debtor's ability to reorganize in the face of a failure of one or more of the financial institutions, (viii) the benefit to the debtor, (ix) the harm, if any, to the estate, and (x) the

reasonableness of the debtor's request in light of the overall circumstances of the case. *See In re Serv. Merchandise Co., Inc.*, 240 B.R. 894, 896 (Bankr. M.D. Tenn. 1999).

8. In addition to the requirements of Section 345(b), 28 U.S.C. § 959(b) provides that a debtor in possession shall manage estate property "according to the requirements of the valid laws of the state in which such property is situated." Under similar circumstances, one bankruptcy court has recognized this provision as requiring a New York not-for-profit business to comply with the directives of the PMIFA. *In re Diocese of Buffalo, N.Y.*, 621 B.R. 91, 93 (Bankr. W.D.N.Y. 2020). Because the PMIFA imposes specific requirements on investments made by New York not-for-profit corporations, a debtor's compliance with this statutory scheme can also establish cause for relief from Section 345(b). *Id*. at 94.

B. **Cause Exists to Waive the Requirements of Section 345(b) with Respect to the NRA's Investment Accounts**

9. Under either the *Service Merchandise* factors or the reasoning of the court in *Diocese of Buffalo*, cause exists to waive the requirements of Section 345(b) with respect to the NRA's Investment Accounts. Like the debtor in *Service Merchandise*, NRA is a large, sophisticated debtor with a complex and comprehensive cash management system and sophisticated investment policy. Consistent with the goals of the NRA Investment Policy, the Investment Accounts are held at a highly rated, stable financial institution and closely overseen by a subcommittee of the NRA's Board of Directors.[4]

10. Moreover, the NRA Investment Policy has been designed and implemented to both safeguard the NRA's long-term financial reserves while also ensuring a reasonable return on its investments. As a result, the NRA Investment Policy is consistent with Congress's stated purpose in enacting Section 345, which is to ensure that estate funds "are invested prudently and

---

[4] Morgan Stanley's credit ratings are available at: https://www.morganstanley.com/about-us-ir/creditor-presentations.

safely with the eventual goal of being able to satisfy all claims." *Serv. Merch.*, 240 B.R. at 896 (quoting H.R. Rep. 103–834H.R. Rep. 103–834, 103rd Cong., 2nd Sess. 224 (Oct. 4, 1994)). While loss of the funds held in the Investment Accounts would adversely affect the NRA's estate, the abrupt failure of Morgan Stanley would not jeopardize the NRA's ability to reorganize because the NRA's viability and the feasibility of any plan are not solely dependent upon the funds in the Investment Accounts.

11. In addition, the Investment Accounts serve as collateral for the NRA's debts to AUB and are subject to an account control agreement. Accordingly, movement of those funds would potentially require the bank's approval and consent.[5] The NRA submits that the limited risk to the estate in maintaining the Investment Accounts at Morgan Stanley is outweighed by the administrative burden of liquidating and relocating those accounts, and that cause therefore exists for relief from the requirements of Section 345(b).

12. The court's reasoning in *Diocese of Buffalo* also supports relief from the requirements of Section 345(b). Like the debtor in that case, the NRA is subject to the New York PMIFA and the balances held in the Investment Accounts constitute "institutional funds" governed by the statute. N.Y. NOT-FOR-PROFIT CORP. LAW, § 551(e). The act imposes standards governing investments made by New York not-for-profit organizations and requires the NRA to consider the following factors in managing its investments:

> (A) general economic conditions; (B) the possible effect of inflation or deflation; (C) the expected tax consequences, if any, of investment decisions or strategies; (D) the role that each investment or course of action plays within the overall investment portfolio of the fund; (E) the expected total return from income and the appreciation of investments; (F) other resources of the institution; (G) the

---

[5] While the NRA recognizes that its obligations under Section 345(b) are independent of its prepetition agreements with creditors, the NRA notes that it is contractually obligated under its loan documents with AUB to maintain the Investment Accounts at Morgan Stanley. The fact that the NRA's secured lender has approved and, indeed, required the maintenance of its collateral – the Investment Accounts – in the current manner obviates some of the policy concerns that undergird Section 345(b).

> needs of the institution and the fund to make distributions and to preserve capital; and (H) an asset's special relationship or special value, if any, to the purposes of the institution

*Id*. at § 552(e)(1). As the court observed in *Diocese of Buffalo*, the act "mandates careful attention to numerous considerations," which "contrasts sharply with the more narrow requirements of [Section] 345(b)." 621 B.R. at 94. The NRA Investment Policy has been designed to ensure the NRA's compliance with the requirements of the PMIFA.

13. Requiring strict compliance with Section 345(b) in this case would override applicable state law and force the NRA to abandon its overall investment strategy as set forth in the NRA Investment Policy, which has been implemented specifically to safeguard the NRA's funds and comply with the NRA's obligations under New York law. *See id*. (noting the requirement under New York law that a not-for-profit institution implement "an overall investment strategy having risk and return objectives reasonably suited to the fund and the institution"). In short, New York state law imposes a broader regulatory scheme on the NRA than the obligations imposed by Section 345(b), and rote application of Section 345(b) would unnecessarily disrupt the NRA's efforts to comply with that scheme. As in *Diocese of Buffalo*, the NRA's obligation to comply with the PMIFA establishes cause for relief from the requirements of Section 345(b).

### V. CONCLUSION AND PRAYER

14. For the reasons set forth above, the Debtors request that the Court enter an order (i) waiving the requirements of Section 345(b) with respect to the Investment Accounts and authorizing the NRA to maintain the Investment Accounts at Morgan Stanley consistent with the NRA Investment Policy and its prepetition practices; and (ii) granting any further relief the Court deems appropriate.

Dated:  January 28, 2021

Respectfully submitted,

*/s/ Patrick J. Neligan, Jr.*
Patrick J. Neligan, Jr.
Texas Bar No. 14866000
pneligan@neliganlaw.com
Douglas J. Buncher
State Bar No. 03342700
dbuncher@neliganlaw.com
John D. Gaither
Texas Bar No. 24055516
jgaither@neliganlaw.com
**NELIGAN LLP**
325 N. St. Paul, Suite 3600
Dallas, Texas 75201
Telephone: (214) 840-5300
Facsimile: (214) 840-5301

**PROPOSED COUNSEL FOR THE DEBTORS**