# Exhibit B

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| IN RE: | § | CHAPTER 11 |
| | § | |
| | § | |
| NATIONAL RIFLE ASSOCIATION OF | § | CASE NO. 21-30085-hdh11 |
| AMERICA and SEA GIRT LLC | § | |
| | § | |
| DEBTORS[1] | § | JOINTLY ADMINISTERED |

**DECLARATION OF MICHAEL J. COLLINS IN SUPPORT OF APPLICATION FOR ENTRY OF AN ORDER PURSUANT TO, *INTER ALIA*, SECTION 327(e) OF THE BANKRUPTCY CODE AUTHORIZING AND APPROVING THE EMPLOYMENT AND RETENTION EFFECTIVE AS OF THE PETITION DATE OF BREWER, ATTORNEYS & COUNSELORS
AS SPECIAL COUNSEL FOR THE DEBTORS AND
<u>DEBTORS IN POSSESSION</u>**

I, Michael J. Collins, pursuant to 28 U.S.C. § 1746, state:

1.  I am a partner at Brewer, Attorneys and Counselors ("<u>BAC</u>"). My office is located at 1717 Main Street, Suite 5900, Dallas, Texas 75201. I am an attorney duly licensed in and am a member in good standing of the bar for the State of Texas. There are no disciplinary proceedings against me in any jurisdiction. I submit this Declaration in support of the application (the "<u>Application</u>") of the above-captioned Debtors for entry of an order pursuant to, among other things, section 327 of title 11 of the United States Code (the "<u>Bankruptcy Code</u>"), Rules 2014(a) and 5002 of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>"), and Rules 2014 and 2016 of the Local Bankruptcy Rules of the United States Bankruptcy Court for the Northern District of Texas (the "<u>Local Bankruptcy Rules</u>"), authorizing and approving the employment and retention of BAC as special litigation counsel for the Debtors with respect to

---

[1] The last four digits of the Debtors' taxpayer identification numbers are: 6130 (NRA) and 5681 (Sea Girt). The Debtors' mailing address is 11250 Waples Mill Road, Fairfax, Virginia 22030.

certain matters during these chapter 11 Cases.  Except as otherwise noted, I have personal knowledge of the matters set forth herein.

## II.     SERVICES TO BE RENDERED

2.     The Debtors have requested that BAC continue[2] to provide the following professional services in connection with the following matters (collectively, the "Specific Matters"):

- Advice and representation in the pending legal proceedings listed on Schedule 1 attached hereto, wherein BAC currently serves as the NRA's litigation counsel (the "BAC Pre-Petition Litigation"), along with any additional matters that arise out of or relate to the BAC Pre-Petition Litigation;

- To the extent not encompassed within the BAC Pre-Petition Litigation, advice and representation regarding the investigation of the NRA by the New York State Office of the Attorney General (the "NYAG") which preceded the NYAG State Lawsuit (Schedule 1, Ref. No. 14) (such investigation, the "NYAG Investigation");

- To the extent not encompassed within the BAC Pre-Petition Litigation, advice and representation with regard to the NRA's potential claims against certain departed executives, former counsel, and other former fiduciaries believed by the NRA to have breached their duties to the NRA or committed other wrongful acts;

- To the extent not encompassed within the BAC Pre-Petition Litigation, advice and representation regarding compliance with the laws and regulations governing charitable and non-profit organizations;

- Advice and representation with regard to issues arising under state corporate law that may affect or relate to Debtors' reorganization including, but not limited to, fiduciary duties and corporate forms;

- Advice and representation with regard to potential actions by state, federal, or other authorities, including legislative committees, concerning matters discussed

---

[2] To date, the BAC Pre-Petition Litigation has involved claims and defenses asserted by and against Debtor NRA and has not entailed claims by or against Debtor Sea Girt.  However, to the extent that Sea Girt requires professional services in connection with any of the Specific Matters, BAC is prepared to render such services and has identified no conflicts that would preclude it from rendering such services.  If BAC becomes aware of facts or circumstances giving rise to any potential conflict between the NRA and Sea Girt in any of the Specific Matters, BAC will endeavor to obtain conflict waiver(s) as appropriate.  To the extent that a waiver is not obtained and is necessary for the contemplated representation, Sea Girt will be represented in any such matter by separate counsel.

- and alleged in: (i) the United States Senate Committee on Finance Minority Staff Report, titled *The NRA and Russia*, released in September 2019; (ii) certain letter requests directed to the NRA by Democratic members of the House Ways and Means Committee, Senate Finance Committee, and House Judiciary Committee commencing in Spring 2019; and/or (iii) other government inquiries and investigations;

- Advice and representation regarding civil, administrative, and commercial aspects of affinity insurance, including, without limitation: (i) the NRA's rights and obligations under that certain Consent Order between the NRA and the New York State Department of Financial Services ("DFS") effective November 18, 2020 (the "DFS Consent Order"); and (ii) any additional matters which may arise from the affinity-insurance investigation conducted by DFS during the period from 2017 to 2020 which preceded the DFS Consent Order (the "DFS Investigation");

- Advice and representation regarding corporate insurance coverage and coverage for officers and directors;

- To the extent not encompassed within the BAC Pre-Petition Litigation, advice and representation regarding media coverage and media outreach, including claims and defenses related to publicity torts and confidentiality obligations and strategic public affairs and communications services; and

- Assistance to Debtors' bankruptcy counsel, to facilitate the efficient handling of matters in these Cases that implicate BAC's institutional knowledge and pre-petition work.

### III. THE DEBTOR'S RETENTION OF BAC IS APPROPRIATE

3. As attested in the Declaration of Carolyn Meadows (the "Meadows Declaration"), the NRA first retained BAC in early 2018 after it received a warning from Eric Schneiderman, then the Attorney General of the State of New York, that his office faced political pressure to take action against the NRA in advance of the 2020 election.[3] Thus, the NRA hired BAC to fend off the unconstitutional hostilities from the State of New York[4] that have now materialized in the action captioned: *People of the State of New York v. The National Rifle Association et al.*, Index

---

[3] *See, e.g.*, Meadows Decl. ¶ 3.

[4] Meadows Decl. ¶ 7.

No. 451625/2020 (Sup. Ct. N.Y.) (Schedule 1, Ref. No. 14), which is one of the most significant matters comprising the BAC Pre-Petition Litigation. Over the course of BAC's ensuing attorney-client relationship with the NRA, BAC provided professional services and representation to the NRA in connection with all of the Specific Matters enumerated above, including the DFS Investigation, the NYAG Investigation, and legislative inquiries. BAC has also served, and continues to serve, as lead litigation counsel to the NRA in the BAC Pre-Petition Litigation.

4.  As a result of its pre-petition representation of the NRA, BAC has acquired in-depth knowledge of the NRA's finances, operations, corporate governance, and unique political and public relations considerations. Accordingly, BAC possesses the necessary background to provide professional services that may be required by the NRA in connection with the Specific Matters during these chapter 11 Cases. BAC is also well-situated to represent the NRA because BAC's retention has been examined and approved by the Special Litigation Committee of independent directors that oversees the NRA's prosecution and defense of key litigation matters.[5] Over the course of 2018-2020, as BAC's engagement expanded, the members of the Special Litigation Committee received detailed briefings regarding the firm's docket.[6] The committee conurs with the NRA's General Counsel that the reservoir of knowledge accumulated by BAC could not be efficiently offloaded to, or replicated by, substitute counsel.[7] The Special

---

[5] *See id.*

[6] *See id.*

*See id.*

Litigation Committee is familiar BAC's budget and staffing, and "firmly and unanimously" [8] recommends BAC's retention in the best interest of Debtors' estates.

5. BAC possesses expertise in insolvency-related litigation matters. I and other attorneys at BAC have (either while at BAC or other firms) served as counsel and special counsel to debtors, official creditors' committees, and non-debtor affiliates in bankruptcy cases including, without limitation: *Caesars Entertainment Operating Company, Inc.*; *Delta Airlines, Inc.*; *Lehman Brothers Holdings, Inc.*; *Oriental Trading Company, Inc.*; *NII Holdings, Inc.*; and *Quicksilver Resources, Inc.*

### IV.    NO ADVERSE INTEREST

6. In connection with BAC's proposed employment by Debtors, BAC undertook measures to identify conflicts or other relationships that might cause BAC to hold or represent an interest adverse to the Debtors or their estates with respect to the Specific Matters. Specifically, based on information obtained from Debtors and information already in BAC's possession, BAC identified categories of individuals and entities against which to assess conflicts in this matter, including: Debtors' affiliates; Debtors' officers and directors; the bankruptcy judges comprising this Court; the Debtors' lenders and major secured and unsecured creditors; the Debtors' largest vendors and other material contract counterparties; the Debtors' litigation counterparties; the Debtors' insurance carriers; the Debtors' regulators and taxing authorities; and, the Debtors' landlords and utility providers (all such parties, "Potential Parties in Interest"). BAC representatives working under my supervision conducted a detailed search of BAC's client database, and interviewed key BAC personnel, to assess the nature and scope of BAC's association, if any, with the Potential Parties in Interest.

---

[8] Meadows Decl. ¶ 7.

7. To the best of my knowledge, after a reasonably diligent search, BAC has no connection with any Potential Parties in Interest, other than those persons that are current or former BAC clients listed on **Schedule 2** hereto and as set forth below. A person is listed as having an "Open" matter on Schedule 2 if BAC has any open matters for such person and BAC professionals have recorded time on any such matter within the past two years. A person or entity is listed as having a "Closed" matter on Schedule 2 if BAC represented such person or entity or its known affiliate within the past two years based on recorded time charges or other records, but all matters for the relevant person or entity have been closed. In addition to the representations denoted on Schedule 2, BAC, in the course of its representation of the NRA in the DFS and NYAG Investigations, appeared alongside and represented certain individual, then-current employees, directors and officers of the NRA who were subpoenaed for depositions, interviews, or in-person testimony. Such representations were undertaken jointly with, and by reason of, BAC's representation of the NRA in the same investigations. No current attorney-client relationship exists between BAC and any such individual.

8. In connection with certain matters, BAC represented Wayne LaPierre, the Executive Vice President of the NRA. Mr. La Pierre is now represented by P. Kent Correll.

9. Additionally, a BAC partner, William A. Brewer III, is related by marriage to an executive of Ackerman McQueen, Inc. ("Ackerman"), which is the NRA's former vendor and a current litigation counterparty. In connection with the Ackerman Litigation (Schedule 1, Ref. No. 5), the United States District Court for the Northern District of Texas assessed this

relationship and determined that it did not give rise to any conflict impeding BAC's representation of the NRA in litigation adverse to Ackerman.[9]

10. In the event that BAC must become adverse to any party listed on Schedule 2, BAC will first endeavor to obtain applicable written conflict waiver(s) as appropriate. To the extent that a waiver does not exist or is not obtained and is necessary for the contemplated representation, the NRA will be represented in the relevant matter by separate counsel.

11. None of the clients listed on Schedule 2 individually represented more than 1% of BAC's annual revenues for 2018, 2019, or 2020.

12. None of BAC's attorneys are or were, within two years of the Petition Date, a director, officer, or employee of the Debtors.

13. From time to time, BAC has worked with or referred work to other professionals retained or that may be retained in these chapter 11 Cases, including P. Kent Correll, counsel to Wayne LaPierre, and William P. Davis, counsel to the Board of Directors of the NRA, and Patrick J. Neligan, Jr. and Neligan LLP, proposed counsel for the Debtors.

14. While BAC has undertaken, and continues to undertake, efforts to identify connections with the Debtors and other Potential Parties in Interest, it is possible that connections with some parties in interest have not yet been identified. Should BAC, through its continuing efforts, learn of any new connections of the nature discussed herein, BAC will so advise the Court.

---

[9] *See National Rifle Association v. Ackerman McQueen, Inc., et al.*, case no. 3:19-cv-2074 (N.D. Tex.) at ECF No. 166.

15. I do not believe that any of the representations or relationships recited above or listed in Schedule 2 would give rise to a finding that BAC represents or holds an interest adverse to the Debtors or their estates with respect to the services for which BAC would be retained.

16. Accordingly, to the best of my knowledge, BAC: (a) is not a creditor, equity security holder, or insider of the Debtors; (b) was not (nor were any of its attorneys), within two years before the date of the filing of the Debtors' Chapter 11 petitions, a director, officer, or employee of Debtors; and (c) does not have an interest materially adverse to the interest of the Debtors' estates or of any class of creditors.

17. BAC will review its client database periodically during the course of its engagement to ensure that no conflicts or other disqualifying circumstances exist or arise. If any new relevant facts or relationships are discovered or arise, BAC will use reasonable efforts to identify such further developments and will file promptly a supplemental declaration as required by Bankruptcy Rule 2014(a).

**V. STATEMENT UNDER SECTIONS 329 AND 504 OF THE BANKRUPTCY CODE AND UNDER FEDERAL RULE OF BANKRUPTCY PROCEDURE 2016**

18. In accordance with sections 329 and 504 of the Bankruptcy Code and Bankruptcy Rule 2016, I hereby state that neither I nor BAC has entered into any agreements, express or implied, with any other party in interest, including the Debtor, any creditor or investor of the Debtor, or any attorney for such party in interest in the NRA's chapter 11 case, for the purpose of sharing or fixing fees or other compensation to be paid to any such party in interest or its attorneys for services rendered in connection therewith.

19. BAC intends to apply for compensation for professional services rendered on an hourly basis and reimbursement of certain expenses incurred in connection with the services rendered, subject to Court approval and in compliance with applicable provisions of the

Bankruptcy Code, the Bankruptcy Rules, the Bankruptcy Local Rules, and other applicable procedures and orders of this Court.  The hourly rates and corresponding rate structure BAC will use will be the same as the hourly rates and corresponding rate structure that BAC predominantly uses in other restructuring matters, as well as in non-restructuring matters, whether in court or otherwise, regardless of whether a fee application is required.

20. BAC's hourly rates are set at a level designed to compensate BAC for the work of its professionals and to cover fixed and routine overhead expenses. Hourly rates vary with the experience and seniority of the individuals assigned. These hourly rates are subject to periodic adjustments to reflect economic and other conditions and are consistent with the rates charged elsewhere.  A schedule of the range of BAC's 2021 standard hourly rates is attached hereto as **Schedule 3**.

21. It is BAC's policy to charge its clients in all areas of practice for identifiable, non-overhead expenses incurred in connection with the client's case that would not have been incurred except for the representation of that particular client.  It is also BAC's policy to charge its clients only the amount actually incurred by BAC in connection with such items.  Examples of such expenses include postage, overnight mail, courier delivery, transportation, overtime expenses, computer-assisted legal research, photocopying, airfare, meals, and lodging.

22. To minimize the cost to its clients and allow matters to proceed through discovery and prepare for trials efficiently, for document review, issue tagging, and related tasks, BAC uses a BAC affiliate it believes to provide such services at cost effective prices as compared to available alternatives.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct and that all statements I make in this declaration are based on my personal knowledge unless otherwise noted herein.

Executed on January 29, 2021               By:  */s/ Michael J. Collins*
                                           Name:  Michael J. Collins

## SCHEDULE 1

## Pre-Petition Litigation Handled by BAC

*Unless otherwise noted, matters are invoiced at BAC's standard hourly rates.*

| Ref. | Case Caption |
|---|---|
| 1. | *The National Rifle Association v. Andrew Cuomo*, Case No. 1:18-cv-566 (N.D.N.Y. 2018) |
| 2. | *The National Rifle Association v. Ackerman McQueen, Inc. et al.*, Case No. CL19001757 (Va. Cir. Ct. 2019) |
| 3. | *The National Rifle Association v. Ackerman McQueen, Inc. et al.*, Case No. CL19002067 (Va. Cir. Ct. 2019) |
| 4. | *David Dell'Aquilla v. The National Rifle Association et al.,* Case No. 3:19-cv-679 (M.D. Tenn. 2019) |
| 5. | *The National Rifle Association v. Ackerman McQueen, Inc. et al.*, Case. No. 3:19-cv-2074 (N.D. Tex. 2019) |
| 6. | *Under Wild Skies, Inc. v. National Rifle Association*, Case No. 19-12530 (Va. Cir. Ct. 2019) |
| 7. | C. Cox Arbitration, CPR Case No. 1340018083 (2019) |
| 8. | *People of the State of New York v. Ackerman McQueen, Inc. and The National Rifle Association*, Index No. 451825/2019 (Sup. Ct., N.Y. Cnty. 2019) |
| 9. | *The National Rifle Association et al. v. Mark R. Dycio et al.*, Case No. 2019-17571 (Va. Cir. Ct. 2019) |
| 10. | *The National Rifle Association v. Andrew Cuomo*, Case No. 1:20-cv-385 (N.D.N.Y. 2020)[10] |
| 11. | *The National Rifle Association v. Oliver North*, Case No. 903843-20 (N.Y. Sup. Ct. 2019).[11] |
| 12. | *The National Rifle Association v. JAMS, Inc. and Winston & Strawn, LLP*, Case No. 2020 CA 003346 B (D.C. Sup. Ct. 2020)[12] |
| 13. | *District of Columbia v. NRA Foundation, Inc.* et al, Case No. 2020 CA 003454 B (D.C. Sup. 2020) |
| 14. | *People of the State of New York v. The National Rifle Association et al.*, Index. No. 451625/2020 (Sup. Ct. N.Y.) |
| 15. | *The National Rifle Association v. Letitia James*, Case No. 1:20-cv-889 (N.D.N.Y. 2020) |
| 16. | *In re National Rifle Association Business Expenditures Litigation*, MDL No. 2979 (2020) |

---

[10] *Pro bono*.

[11] Fee cap on professionals' services of $75,000.

[12] Fee cap on professionals' services of $100,000.

# SCHEDULE 2

## Disclosures: Representations of Potential Parties in Interest

| Party Represented | Proceeding | Status |
|---|---|---|
| **Wayne LaPierre,** Officer of Debtor | ***The National Rifle Association v. Ackerman McQueen, Inc. et al.*, Case. No. 3:19-cv-2074 (N.D. Tex. 2019)**<br><br>Mr. LaPierre is named as a defendant in a counterclaim by Ackerman. BAC jointly represented Mr. LaPierre alongside the NRA until November 2020, when Mr. LaPierre substituted his own counsel. | Closed |
| **Wayne LaPierre,** Officer of Debtor | ***David Dell'Aquilla v. The National Rifle Association et al.*, Case No. 3:19-cv-679 (M.D. Tenn. 2019)**<br><br>Mr. LaPierre was named as a co-defendant in a putative class action lawsuit against the NRA by a former donor. BAC jointly represented Mr. LaPierre alongside the NRA until September 2020, when claims against Mr. LaPierre were dismissed. | Closed |
| **NRA Freedom Action Foundation**, Affiliate of Debtor | **NYAG Investigation**<br><br>BAC represented the NRA Freedom Action Foundation ("NRA FAF") in connection with a response to a document subpoena in the NYAG Investigation. | Closed |
| **NRA Political Victory Fund**, Affiliate of Debtor | **NYAG Investigation**<br><br>BAC was engaged to represent the NRA Political Victory Fund ("NRA-PVF") in connection with any possible involvement in the NYAG Investigation, but no subpoenas were served upon NRA-PVF and no actions were commenced against NRA-PVF. | Closed |

| Party Represented | Proceeding | Status |
|---|---|---|
| **The NRA Special Contributions Fund d/b/a Whittington Center**, Affiliate of Debtor | **NYAG Investigation**<br><br>BAC was engaged to represent the NRA Special Contributions Fund ("NRA-SCF") in connection with any possible involvement in the NYAG Investigation, but no subpoenas were served upon NRA-SCF and no actions were commenced against NRA-SCF. | **Closed** |

## SCHEDULE 3

### BAC Standard Hourly Billing Rates

| **Professionals** | **2021 Hourly Rates[1]** |
|---|---|
| **Founding Partner**, William A. Brewer III | $1400 |
| **Partner** | $700-$900 |
| **Associate** | $275-$600 |
| **Consultant/Analyst** | $250-$725 |
| **Investigator** | $250-$350 |
| **Public Affairs** | $375-$800 |

---

[1] BAC periodically adjusts its firmwide billing rates to reflect economic changes in the market in which it operates. While no such adjustment will be applied specifically to the Debtor alone, BAC anticipates that any such firmwide adjustment will also apply to the Debtor and will be reflected in the fee applications submitted to the Court.