# Exhibit C

**NELIGAN LLP**
PATRICK J. NELIGAN, JR.
State Bar. No. 14866000
DOUGLAS J. BUNCHER
State Bar No. 03342700
JOHN D. GAITHER
State Bar No. 24055516
325 North St. Paul, Suite 3600
Dallas, Texas 75201
Telephone: 214-840-5333
Facsimile: 214-840-5301
pneligan(dneliganlaw.com
dbuncher neliganlaw.com
jgaither neliganlaw.com
*Proposed Co-Counsel for Debtors and
Debtors-in-Possession*

**UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| IN RE: | § | CHAPTER 11 |
| | § | |
| NATIONAL RIFLE ASSOCIATION OF AMERICA and SEA GIRT LLC, | § § § | CASE NO. 21-30085-hdh11 |
| | § | |
| DEBTORS[1] | § § | Jointly Administered |

**DECLARATION OF CAROLYN MEADOWS IN SUPPORT OF DEBTORS'
APPLICATION FOR ENTRY OF AN ORDER AUTHORIZING AND APPROVING
THE EMPLOYMENT OF BREWER, ATTORNEYS & COUNSELORS AS SPECIAL
COUNSEL FOR THE DEBTORS, EFFECTIVE AS OF THE PETITION DATE**

I, Carolyn Meadows, pursuant to 28 U.S.C. § 1746, state:

1.  I am the President of the National Rifle Association of America (the "Association"), a position to which I was elected by the Association Board of Directors in April 2019. In my capacity as President, I continue to serve on the Association's Board of Directors; I have been a

---

[1] The last four digits of the Debtors' taxpayer identification numbers are: 6130 (National Rifle Association of America) and 5681 (Sea Girt LLC).

**Declaration of Carolyn Meadows in Support of Debtors' Application for Entry of an Order Authorizing and Approving the Employment of Brewer, Attorneys & Counselors as Special Counsel for the Debtors, Effective as of the Petition Date**
**Page 1 of 6**

member of the Association's Board of Directors since 2003. I also served as Second Vice President of the Association during 2017 and 2018, and served a previous, partial term as President from May to September 2018.

2. I submit this declaration in support of the *Debtors' Application for Entry of an Order Authorizing and Approving the Employment of Brewer, Attorneys & Counselors as Special Counsel for the Debtors, Effective as of the Petition Date* (the "Application")[2] filed by Sea Girt, LLC ("Sea Girt") and the National Rifle Association of America (the "Association," and, together with Sea Girt, the "Debtors"), debtors and debtors-in-possession. Except as otherwise noted, I have personal knowledge of the matters stated herein.

3. During late 2017 or early 2018, I learned that another Association Board member, Tom King, had received a disturbing communication from Eric Schneiderman, who then served as Attorney General of the State of New York. That communication caused the Association to become concerned that in advance of the 2020 election, it would face politically motivated hostilities from the New York State Office of the Attorney General (the "NYAG"), possibly including an invasive investigation and a dissolution lawsuit. Those concerns later came to fruition: in August 2020, the NYAG commenced a politically motivated dissolution action against the Association (the "NYAG State Action"). The NYAG State Action names as defendants two sitting officers of the Association: the Association's Executive Vice President and Chief Executive Officer, Wayne LaPierre, and the Association's Secretary and General Counsel, John Frazer.

4. In my capacity as an elected officer, I participated in multiple conversations about the strategic direction the Association should take in advance of a potential attack by the NYAG.

---

[2] Capitalized terms not defined in this Declaration have the meanings set forth in the Application.

**Declaration of Carolyn Meadows in Support of Debtors' Application for Entry of an Order Authorizing and Approving the Employment of Brewer, Attorneys & Counselors as Special Counsel for the Debtors, Effective as of the Petition Date**
Page 2 of 6

The prospect of the NYAG State Action was a key consideration motivating the Association to retain Brewer, Attorneys and Counselors ("BAC").

5. When the NYAG commenced the NYAG State Action, I directed the formation of a special litigation committee (the "Special Litigation Committee") to advise the Association regarding its litigation strategy in this and related matters. I appointed three members of the Special Litigation Committee: myself, First Vice President Charles Cotton, and Second Vice President Willes Lee. Based on my review of the Association's records and my conversations with Messrs. Cotton and Lee, no member of the Special Litigation Committee has any significant business relationship with the Association, or any other relationship that would impair our oversight of the Association's litigation strategy. Thus, the directors composing the Special Litigation Committee are independent and disinterested. I am the Chair of the Special Litigation Committee.

6. On January 7, 2021, the Board of Directors voted to formalize the existence of the Special Litigation Committee as a committee of the Board of Directors, authorized to exercise corporate authority on behalf of the Association. Specifically, the Board delegated to the Special Litigation Committee the following responsibilities:

> RESOLVED that the Special Litigation Committee shall exercise corporate authority on behalf of the NRA with respect to the prosecution and defense of (i) the litigation captioned *People of the State of New York v. The National Rifle Association et al.*, Index No. 451625/2020 (Sup. Ct. N.Y.); (ii) the litigation captioned *The National Rifle Association v. Letitia James*, Case No. 1:20-cv-889 (N.D.N.Y. 2020); (iii) the litigation captioned *District of Columbia v. Association Foundation, Inc.* et al., (2020 CA 003545 B); and (iv) any additional legal proceedings arising from or relating to the same facts, circumstances, or allegations as the foregoing, wherein the potential for an actual or apparent conflict of interest

favors recusal by one or more NRA executives who would customarily oversee such proceedings.[3]

7. The Special Litigation Committee has firmly and unanimously determined that the Association should continue to retain BAC in the prepetition matters it has handled, which include multiple lawsuits opposite the NYAG, as well as commercial litigation against former vendors and fiduciaries of the Association. The Association's interests would be significantly impaired if it were forced to retain new counsel in these matters now—more than two years after selecting BAC to defend the Association against the unconstitutional actions of New York State and in the midst of multiple pending actions. In my capacity as a member of the Special Litigation Committee and as a director and officer of the Association, I have received detailed briefings from BAC over the course of several years regarding its litigation docket and am confident that the reservoir of knowledge BAC has accumulated regarding these cases could not be efficiently offloaded to, or replicated by, substitute counsel. Nor would the Special Litigation Committee desire such an outcome because the services of BAC are beneficial and in the best interests of the Debtors and their estates.

8. The Special Litigation Committee is aware of the considerations favoring robust oversight of costs incurred by outside counsel in any Chapter 11 proceeding. The Special Litigation Committee understands that BAC sets hourly rates for its attorneys that are consistent with those charged in other matters, do not reflect any premium or increase vis-à-vis rates charged to non-bankruptcy clients, and are comparable to the hourly rates of competing firms. In connection with the review and approval of outside counsel's invoices, the Special Litigation Committee has sought and will continue to seek advice from the Board of Directors' counsel.

---

[3] Resolution Authorizing Chapter 11 Reorganization and Related Retention of Counsel, ECF No. 1, at p. 5.

9. Each month, BAC submits detailed invoices narrating, in six-minute increments the work performed by its professionals and the corresponding hourly-rate charge for each entry. The monthly invoices also itemize charges for document review, data hosting, administrative support costs and related items. The Special Litigation Committee customarily seeks advice from William "Wit" Davis, an attorney who serves as independent counsel to the Association's Board of Directors, regarding the reasonableness of the items invoiced each month by BAC and whether adjustments should be requested. After receiving the invoices of BAC and receiving advice from Mr. Davis, each member of the Special Litigation Committee votes each month on whether BAC's invoices should be approved. If and when the members of the Special Litigation Committee agree unanimously that an invoice should be paid, payment authorization is provided to the Association.

10. Members of the Special Litigation Committee have discussed with BAC a staffing and budget plan covering the Special Litigation Committee Litigation for the 90-day period commencing with the filing of these chapter 11 cases and concluding April 15, 2021. The Special Litigation Committee will continue to elicit budget and staffing plans for subsequent periods along with any amended budget or staffing plan necessary to reflect changed circumstances or unanticipated developments and will approve or request changes to them based on our judgement as fiduciaries.

11. Based on the foregoing, the Special Litigation Committee believes that the employment of BAC as special counsel is necessary and in the best interest of the Debtors and their estates.

12. Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Dated: January 29, 2021

                                                                 */s/ Carolyn Meadows*
                                                                  Carolyn Meadows