# Exhibit D

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| IN RE: | § | CHAPTER 11 |
| | § | |
| NATIONAL RIFLE ASSOCIATION | § | CASE NO. 21-30085-hdh11 |
| OF AMERICA and SEA GIRT LLC | § | |
| | § | |
| DEBTORS[1] | § | JOINTLY ADMINISTERED |

**DECLARATION OF JOHN C. FRAZER IN SUPPORT OF APPLICATION FOR ENTRY OF AN ORDER PURSUANT TO, *INTER ALIA*, SECTION 327(e) OF THE BANKRUPTCY CODE AUTHORIZING AND APPROVING THE EMPLOYMENT AND RETENTION EFFECTIVE AS OF THE PETITION DATE OF BREWER, ATTORNEYS & COUNSELORS AS SPECIAL COUNSEL FOR THE DEBTORS AND DEBTORS IN POSSESSION**

I, John C. Frazer, pursuant to 28 U.S.C. § 1746, state:

1. I am the Secretary and General Counsel of the National Rifle Association of America (the "NRA"). I have held the position of General Counsel since January 2015, and have been elected annually by the NRA Board of Directors to the position of Secretary since April 2015. As General Counsel, I am responsible for supervising outside counsel and monitoring and controlling legal costs. Unless otherwise noted, I have personal knowledge of the matters stated herein.

2. Proposed special counsel Brewer, Attorneys and Counselors ("BAC") were first retained by the NRA in March 2018. Although BAC had not previously worked with the NRA,

---

[1] The last four digits of the Debtors' taxpayer identification numbers are: 6130 (NRA) and 5681 (Sea Girt). The Debtors' mailing address is 11250 Waples Mill Road, Fairfax, Virginia 22030.

**Declaration of John C. Frazer in Support of Debtors' Application for Entry of an Order Authorizing and Approving the Employment, Effective as of the Petition Date, of Brewer, Attorneys & Counselors as Special Counsel for the Debtors**

the firm came highly recommended by another outside lawyer on whom the NRA routinely relied. Based on that recommendation, BAC and other firms met with NRA executives to discuss potential legal strategies the NRA might pursue to preserve its corporate relationships in the wake of the Parkland tragedy and to fortify itself in anticipation of government hostilities in New York. Other firms present at these meetings, and considered by the NRA as alternatives or co-counsel to BAC in various matters, included Cooper & Kirk LLP and Morgan, Lewis & Bockius LLP. The NRA has used each of these firms in the past, and I am familiar with their hourly rates, which (allowing for regional variations and firms' internal variations for different levels of partners and associates) are comparable to BAC's hourly rates. Ultimately, the NRA chose to engage BAC.

3. As BAC's relationship with the NRA deepened over the ensuing two years and its institutional knowledge expanded, the NRA chose to engage the firm for additional matters. From time to time, other firms contended for the same work, or were even employed as co-counsel for a time before the NRA ultimately chose to employ BAC exclusively. In sum, over the course of BAC's engagement, the NRA considered at least four law firms as alternatives to BAC, but ultimately continued to rely on BAC as its primary outside litigation counsel.

4. Commencing with BAC's initial retention in March 2018, I was responsible for supervising the firm's activities and reviewing all of the invoices it submitted to the NRA for payment. On August 6, 2020, the New York State Office of the Attorney General (the "NYAG") purported to commence litigation that named me as an individual defendant (the "NYAG State Action"), which gave rise to the potential for an apparent conflict if I continued to supervise the NRA's outside counsel and litigation strategy.

**Declaration of John C. Frazer in Support of Debtors' Application for Entry of an Order Authorizing and Approving the Employment, Effective as of the Petition Date, of Brewer, Attorneys & Counselors as Special Counsel for the Debtors**

2

5. On September 10, 2020, NRA President Carolyn Meadows announced the formation of a Special Litigation Committee of independent directors (the "SLC")[2] to oversee the prosecution and defense of the NYAG State Action and certain related matters, namely: a companion lawsuit commenced August 6, 2020, by the District of Columbia Office of the Attorney General (the "DCAG Action"); and a federal section 1983 lawsuit by the NRA against the NYAG arising from the NYAG State Action and the investigation that preceded it (the "NYAG Federal Action" and, collectively with the NYAG State Action and the DCAG Action, the "SLC Litigation"). Except with regard to the SLC Litigation, I continue to oversee BAC's activities and review any invoices it submits for payment.

6. On occasion, the NRA has negotiated fee caps and discounts with BAC, and from time to time the firm also applies fee caps or discounts on its own initiative. In addition, one case is being handled by BAC on a *pro bono* basis.[3] However, generally speaking, most of the work performed by BAC for the NRA has been billed at BAC's standard hourly rates, which I am informed and believe are no different for bankruptcy-related matters than for non-bankruptcy-related matters. BAC submits detailed monthly invoices narrating, in six-minute increments, the

---

[2] The SLC was formalized as an official committee of the NRA Board of Directors on January 7, 2021. It has been delegated corporate authority to oversee the following litigation matters:

(i) the litigation captioned: *People of the State of New York v. The National Rifle Association et al.*, Index No. 451625/2020 (Sup. Ct. N.Y.); (ii) the litigation captioned *The National Rifle Association v. Letitia James*, Case No. 1:20-cv-889 (N.D.N.Y. 2020); (iii) the litigation captioned *District of Columbia v. NRA Foundation, Inc.* et al., (2020 CA 003545 B); and (iv) any additional legal proceedings arising from or relating to the same facts, circumstances, or allegations as the foregoing, wherein the potential for an actual or apparent conflict of interest favors recusal by one or more NRA executives who would customarily oversee such proceedings.

[3] Specifically, BAC represents the NRA *pro bono* in connection with *The National Rifle Association v. Andrew Cuomo*, Case No. 1:20-cv-385 (N.D.N.Y. 2020), a section 1983 action challenging certain COVID-19 restrictions that impede the exercise of Second Amendment rights.

**Declaration of John C. Frazer in Support of Debtors' Application for Entry of an Order Authorizing and Approving the Employment, Effective as of the Petition Date, of Brewer, Attorneys & Counselors as Special Counsel for the Debtors**

3

work performed by its professionals and the corresponding hourly-rate charge.[4]  I conduct a detailed review of BAC's invoices each month and evaluate, based on my familiarity with each engagement, whether the invoiced charges appear reasonable.  I often elicit additional information from BAC's partners to inform my judgment—*e.g.*, I inquire about the reason for particular research, or the number of professionals required to be staffed on an assignment, or seek insight regarding the factors that drove particular expenditures of time.  Such questions are consistently and transparently answered, and the responses I receive tend to reaffirm my confidence in BAC and the propriety of its billings.

7. As part of the initial retention and from time to time in the NRA's annual budget process, I ask BAC to submit fee estimates for each matter it is handling.  Aggregate expenditures that deviate from these budgets are analyzed and discussed.

8. Additionally, a portion of BAC's invoices are reviewed by an outside law firm retained at the behest of certain insurance carriers; despite its obvious incentive to challenge BAC's billings, that firm has repeatedly concluded that the charges invoiced by BAC are reasonable and should be paid in full.

9. At times, other NRA officers and employees may approach BAC directly with legal questions, or inquire about whether they should do so.  I stay abreast of matters being referred to BAC and, where appropriate, re-direct certain issues to in-house counsel, or less expensive outside counsel, who are capable of handling them.  Examples of items assigned to less-expensive counsel

---

[4] In addition, a BAC affiliate provides document review, issue tagging, related indexing and other services at prices the NRA determined to be substantially more cost effective than available alternatives.

**Declaration of John C. Frazer in Support of Debtors' Application for Entry of an Order Authorizing and Approving the Employment, Effective as of the Petition Date, of Brewer, Attorneys & Counselors as Special Counsel for the Debtors**

4

include routine contract negotiations, regulatory filings, employment matters, and disputes, litigation or investigations unrelated to the high-level work entrusted to BAC.

10. I have discussed with BAC a staffing and budget plan covering each matter proposed to be handled by BAC for the 90-day period commencing with the filing of these chapter 11 cases and concluding April 15, 2021. Assuming that the Court approves BAC's retention and employment, I will continue to elicit budget and staffing plans for subsequent periods from BAC thereafter, and approve or request changes to them based on my judgement as General Counsel.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Dated: January 29, 2021

/s/ John C. Frazer\_\_\_\_
John C. Frazer

4847-3501-4362, v. 1

**Declaration of John C. Frazer in Support of Debtors' Application for Entry of an Order Authorizing and Approving the Employment, Effective as of the Petition Date, of Brewer, Attorneys & Counselors as Special Counsel for the Debtors**

5