Patrick J. Neligan, Jr.
State Bar. No. 14866000
Douglas J. Buncher
State Bar No. 03342700
John D. Gaither
State Bar No. 24055516
NELIGAN LLP
325 North St. Paul, Suite 3600
Dallas, Texas 75201
Telephone:  214-840-5333
Facsimile:  214-840-5301
pneligan@neliganlaw.com
dbuncher@neliganlaw.com
jgaither@neliganlaw.com

**PROPOSED COUNSEL FOR DEBTORS**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| IN RE: | § § | CHAPTER 11 |
| NATIONAL RIFLE ASSOCIATION OF AMERICA and SEA GIRT LLC, | § § § § | CASE NO. 21-30085-hdh11 |
| DEBTORS[1] | § | Jointly Administered |

**DEBTORS' MOTION FOR AN ORDER AUTHORIZING EMPLOYMENT
AND PAYMENT OF PROFESSIONALS
<u>UTILIZED IN THE ORDINARY COURSE OF BUSINESS</u>**

The National Rifle Association of America (the "<u>NRA</u>") and Sea Girt LLC ("<u>Sea Girt</u>") (collectively, the "<u>Debtors</u>"), as debtors and debtors-in-possession, file this motion (the "<u>Motion</u>") pursuant to Sections 105(a) and 363(c) of the Bankruptcy Code to request entry of an order, substantially in the form attached hereto as **Exhibit A**, authorizing the Debtors to continue to retain, employ, and compensate certain professionals utilized in the ordinary course of business, and in support state as follows:

**I. BACKGROUND**

1.      On January 15, 2021 (the "<u>Petition Date</u>"), the Debtors filed their voluntary petitions for

---

[1] The last four digits of the Debtors' taxpayer identification numbers are:  6130 (NRA) and 5681 (Sea Girt).  The Debtors' mailing address is 11250 Waples Mill Road, Fairfax, Virginia 22030.

relief under Chapter 11 of the Bankruptcy Code.  The Debtors remains in possession of their property and are operating their businesses as debtors-in-possession in accordance with Sections 1107 and 1108 of the Bankruptcy Code.  A detailed description of the Debtors' business, capital structure, and the events leading to the Debtors' bankruptcy is set forth in the Declarations of Shawne E. Soto [Docket No. 10], Robert G. Owens [Docket No. 11], and Sonya B. Rowling [Docket No. 12] (the "First-Day Declarations") and Debtors' Informational Brief in Connection with Voluntary Chapter 11 Petitions [Docket No. 31] filed on January 20, 2021, which are incorporated herein by reference.

## II. ORDINARY COURSE PROFESSIONALS

2. Prior to the Petition Date, the Debtors utilized certain professionals (collectively, the "Ordinary Course Professionals"), including the professionals identified on the attached **Exhibit B** (the "Initial Ordinary Course Professionals"), in the ordinary course of business. The Ordinary Course Professionals perform services, including legal, tax, and accounting services, that are not intrinsically related to the Debtors' reorganization or the administration of the Debtors' Chapter 11 cases, and the Debtors would require the services of the Initial Ordinary Course Professionals regardless of the pendency of these cases.  To the best of the Debtors' knowledge, the Initial Ordinary Course Professionals have no interest materially adverse to the Debtors and their estates.

## II.  RELIEF REQUESTED

A. **Overview of Requested Relief**

3. Given the number of professionals the Debtors utilize in the ordinary course of business, it would be impractical and inefficient for the Debtors to prepare individual employment and fee applications for each Ordinary Course Professional.  Further, many of the professionals the Debtors utilize are not "professional persons" whose retention is subject to Section 327(a) of the Bankruptcy Code.  By this Motion, the Debtors request entry of an order pursuant to Sections 105(a) and 363(c) of the Bankruptcy Code authorizing the Debtors (a) to retain the Ordinary Course Professionals without the necessity of a separate, formal retention application approved by this Court for each Ordinary Course Professional, and

2

(b) to pay each Ordinary Course Professional for post-petition services rendered and expenses incurred, subject to certain limits set forth below, without the necessity of additional court approval.

4.  The Debtors will file individual employment applications for any professionals that the Debtors seek to employ in connection with their reorganization or in connection with special matters not appropriate for ordinary course treatment (the "Chapter 11 Professionals").  Chapter 11 Professionals will be compensated and reimbursed only in accordance with applicable provisions of the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, the Local Court Rules of the United States Bankruptcy Court for the Northern District of Texas, and any orders entered in the Chapter 11 Cases governing professional compensation and reimbursement for services rendered and expenses incurred.

**B.     Proposed Ordinary Course Professional Approval Procedures**

5.  The Debtors request authority to continue to utilize the Initial Ordinary Course Professionals in the ordinary course of business and consistent with their prepetition practices subject to the following procedures.  Within thirty (30) days of the later of (a) the entry of an order granting the relief requested in this Motion or (b) the date on which each retained Ordinary Course Professional commences services for the Debtors, each Ordinary Course Professional will be required to provide to the Debtors and their counsel, for filing with the Court and service upon: (i) the United States Trustee for the Northern District of Texas; and (ii) counsel to any official committee appointed in these cases (the "Committee") (collectively, the "Notice Parties"), a declaration pursuant to 28 U.S.C. § 1746 of the United States Code, substantially in the form annexed hereto as **Exhibit C**, certifying that the professional does not represent or hold any interest adverse to the Debtors or the estates with respect to the matter on which the professional is to be employed (the "Declaration"). The Debtors also request that they be authorized to employ and retain additional Ordinary Course Professionals not currently listed on **Exhibit B** as future circumstances require without the need to file individual retention applications or provide further hearing or notice to any party, by filing with the Court a supplement to **Exhibit B** (the "Supplement") and serving a copy of the Supplement

and the requisite Declaration upon the Notice Parties.

6. Upon service of each required Declaration, the Notice Parties and other parties in interest will have fifteen (15) days (the "Objection Deadline") to object to the retention of the Ordinary Course Professional in question. Any such objections must be filed with the Court and served upon the Debtors, the Debtors' counsel, the Notice Parties, and the subject Ordinary Course Professional by the Objection Deadline.  If any such objection cannot be resolved or withdrawn within fifteen (15) days after service, the matter will be scheduled for hearing before the Court on the next regularly scheduled hearing date or such other date that may be agreeable to the Ordinary Course Professional, the Debtors, and the objecting party. If no objection is received on or before the Objection Deadline, if any objection is withdrawn, or if any objection submitted is timely resolved, the Debtors will be authorized to retain the Ordinary Course Professional as a final matter without further order of the Court, as of the Petition Date or the applicable date of engagement.

7. The Debtors will not pay any fees and expenses to any Ordinary Course Professional (nor shall any such Ordinary Course Professional draw down on any existing retainer) unless: (a) such Ordinary Course Professional has submitted its Declaration and such Declaration is filed with the Court and served on the Notice Parties; (b) the applicable Objection Deadline has expired; and (c) no timely objection is pending. If a timely objection is received, no payment will be made until such objection is resolved, withdrawn or otherwise overruled by the Court.

**C.     Proposed Payment Procedures**

8. The Debtors seek authority to pay, without formal application to and order from the Court, the fees and expenses of each Ordinary Course Professional upon submission to, and approval by, the Debtors of an appropriate invoice setting forth in reasonable detail the nature of the post-petition services rendered and expenses incurred. The Debtors, however, recognize that bills exceeding certain dollar amounts should be subject to the approval procedures otherwise applicable to Chapter 11 Professionals.

4

9. Once the Debtors retain an Ordinary Course Professional in accordance with the foregoing procedures, they shall pay such Ordinary Course Professional one-hundred percent (100%) of their fees and one-hundred percent (100%) of their disbursements incurred with respect to postpetition services, upon the submission to, and approval by, the Debtors of an appropriate invoice setting forth in reasonable detail the nature of the services rendered after the Petition Date; provided, however, that each Ordinary Course Professional's total compensation and reimbursement shall not exceed $50,000 per month on average over a three-month rolling basis (the "Monthly Fee Cap").  The Debtors propose that payments to a particular Ordinary Course Professional in excess of the Monthly Fee Cap be subject to Court approval based upon an application for allowance of fees and expenses under Sections 330 and 331 of the Bankruptcy Code, and that the applicable Ordinary Course Professional be entitled to payment of its requested fees and expenses up to the Monthly Fee Cap pending the Court's allowance of fees and expenses in excess of the Monthly Fee Cap.

10. In the ordinary course of business, as a routine matter, the Debtors review all bills received from the Ordinary Course Professionals to assess the reasonableness of the fees charged and the necessity of the expenses incurred. This type of review will continue post-petition and, coupled with the proposed Monthly Fee Cap, will protect the Debtors' estates against excessive and improper billings.

**D.    Periodic Payment Statements**

11. Within thirty (30) days after the end of, and with respect to, each full three-month period after the Petition Date (including any initial partial month in the first period), the Debtors propose to file a periodic payment summary statement with the Court and to serve such statement upon the Notice Parties. The summary statement will include the following information for each Ordinary Course Professional: (a) the name of the Ordinary Course Professional; (b) the aggregate amounts paid as compensation for services rendered and reimbursement of expenses incurred by such Ordinary Course Professional during the statement period; and (c) a general description of the

services rendered by such Ordinary Course Professional. The obligation to file summary statements will terminate upon confirmation of a plan in these Chapter 11 cases.

## IV. BASIS FOR REQUESTED RELIEF

12. The Debtors seek the relief requested in this Motion to streamline their post-petition operations and to avoid any later controversy about employing and paying the Ordinary Course Professionals. The Debtors believe that their decision to employ and compensate the Ordinary Course Professionals is an appropriate exercise of their business judgment under Section 363(c)(1) because the employment and compensation of the Ordinary Course Professionals are matters that relate to the ordinary course of the Debtors' business, not for work related to these bankruptcy cases. By this Motion, the Debtors are neither requesting to pay prepetition amounts owed to any of the Ordinary Course Professionals nor requiring the Ordinary Course Professionals to waive any claim against the Debtors.

A.  **The Debtors Employ the Ordinary Course Professionals in the Ordinary Course of the Business**

13. The Debtors, as debtors in possession, are authorized to operate their business. 11 U.S.C. §§ 1107(a), 1108. Under Section 363(c)(1), the Debtors may enter into transactions, including the use, sale, or lease of estate property in the ordinary course of business without notice and a hearing. "The framework of [S]ection 363 is designed to allow a trustee (or a debtor in possession) the flexibility to engage in ordinary transactions without unnecessary creditor and bankruptcy court oversight, while protecting creditors by giving them an opportunity to be heard when transactions are not ordinary." *In re Nellson Nutraceutical, Inc.*, 369 B.R. 787, 797 (Bankr. D. Del. 2007) (quoting *In re Roth American, Inc.*, 975 F.2d 949, 952 (3d Cir. 1992)).

14. In order to determine whether or not a transaction falls in the ordinary course of business, many courts have adopted two tests: the "vertical dimension" or "creditor's expectation" test, and the "horizontal dimension" or "industry-wide" test. *See id. See also Burlington N. R.R. v.*

*Dant & Russell, Inc. (In re Dant & Russell, Inc.)*, 853 F.2d 700 (9th Cir. 1988). Under the vertical dimension test, courts "analyze the transactions from the vantage point of a hypothetical creditor and the inquiry is whether the transaction subjects a creditor to economic risk of a different nature from those he accepted when he decided to extend credit." *In re Nellson Nutraceutical, Inc.*, 369 B.R. at 797. A debtor's pre-petition business practices and conduct are the primary focus of the vertical analysis. *Id.* Under the horizontal dimension test, courts analyze "whether, from an industry-wide perspective, the transaction is of the sort commonly undertaken by companies in that industry." *Id.*

15. Application of the vertical and horizontal tests to the Debtors' employment and compensation of the Ordinary Course Professionals demonstrates that the Debtors' actions should be considered ordinary course transactions under Section 363(c)(1). With regard to the vertical dimension test, the Debtors' employment and compensation of the Ordinary Course Professionals is consistent with the Debtors' pre-petition business practices. The Debtors utilized the services of each of the Initial Ordinary Course Professionals in connection with the day-to-day ordinary course of operation of the Debtors' business. Further, the operation of the Debtors' business requires the assistance of various non-bankruptcy professionals in connection with accounting, auditing, legal, tax, regulatory, and other matters. The Debtors' prepetition utilization of the Initial Ordinary Course Professionals in non-bankruptcy related matters supports a finding that the continued employment of those professionals is permissible under Section 363(c). *See In re Century Inv. Fund VII Ltd. P'ship*, 96 B.R. 884, 894 (Bankr. E.D. Wis. 1989) ("Whether the debtor employed the particular type of professional in its normal business operation before bankruptcy may be a consideration in determining professional status in relation to the bankruptcy."); *see also In re Park Ave. Partners Ltd. P'ship*, 95 B.R. 605, 616-17 (Bankr. E.D. Wis. 1998) (whether a debtor employs the particular type of professional in its normal business operation is a relevant consideration).

16. With regard to the horizontal dimension test, it is standard practice for other similar businesses to utilize the services provided by the Ordinary Course Professionals in connection with

7

ordinary course day-to-day operations. As a tax-exempt organization dedicated to the advancement and protection of certain constitutional rights, the NRA utilizes a variety of professionals related to both its tax-exempt status (e.g., accountants, auditors, and corporate, regulatory, and tax attorneys) and the activities that relate to its core mission (e.g., law firms pursuing advocacy for its members' and other constituents' rights). These are the same categories of services and professionals that are utilized by similar tax-exempt organizations. Therefore, employment and compensation of the Ordinary Course Professionals satisfies both the horizontal and vertical tests and is a permissible ordinary course transaction under Section 363(c)(1).

B.  **The Ordinary Course Professionals are not Professional Persons Subject to Section 327**

17. In addition, the Ordinary Course Professionals should not be subject to the requirements of Section 327 because they are not "professional persons" within the meaning of Section 327(a), which requires court approval of "attorneys, accountants, appraisers, auctioneers, or other professional persons [that] represent or assist the [debtor] in carrying out the [debtor's] duties under [the Bankruptcy Code]. Not all individuals normally considered as "professionals" are deemed professionals for purposes of Section 327. *In re Smith*, 524 B.R. 689, 694-95 (Bankr. S.D. Tex. 2015). Section 327(a) only applies to professionals that "represent or assist the [debtor] in carrying out the [debtor's] duties under [the Bankruptcy Code]." *Id*. Therefore, courts have distinguished between professionals whose employment relates to the administration of the bankruptcy case and professionals employed in the ordinary course operation of the debtor's business. *Id.* (citing *In re Seatrain Lines, Inc.*, 13 B.R. 980, 981 (Bankr. S.D.N.Y. 1981)).

18. Section 327(a) only applies to the retention of professionals that are "central" to the administration of the estate and will play an intimate role in the reorganization of the debtor's estate. *Id.*; *see also In re Aladdin Petroleum Co.*, 85 B.R. 738, 740-41 (Bankr. W.D. Tex. 1988) (stating that in determining professional status, the Court should consider, among other factors, the effect of the services upon the administration of the bankruptcy case and how central that role is to the

8

reorganization proceedings); *Elstead v. Nolden (In re That's Entm't Mktg. Group)*, 168 B.R. 226, 230 (N.D. Cal. 1994) (only retention of professionals whose duties are central to administration of estate requires prior court approval under section 327). If the debtor is not seeking to employ a professional because of a need that arose incident to the bankruptcy, Section 327(a) does not apply, regardless of whether the professional's services are important to the debtor's business. *See In re Century Inv. Fund VII Ltd. P'ship*, 96 B.R. 884, 894 (Bankr. E.D. Wis. 1987) (explaining that Section 327 does not apply where the professional's services are "necessary whether a Chapter 11 has been filed or not, and the nature of the services does not change significantly on account of the bankruptcy"); *In re Seiling Assoc. Ltd. P'ship*, 128 B.R. 721, 723 (Bankr. E.D. Va. 1991) (environmental toxicology consultant could be hired in the ordinary course of Debtor's business without court approval); *In re Johns–Manville Corp.*, 60 B.R. 612 (Bankr. S.D.N.Y. 1986) (lobbyist retained to perform services in the ordinary course of debtor's business "performed a function completely external to the reorganization process" and therefore did not fall under § 327 "professional."); *Seatrain*, 13 B.R. at 981 (holding that maritime engineers employed in the course of Debtor's business would "play an important role in the mechanics of [Debtor's] operation," but were not professionals under § 327 because their retention would not "affect the administration of [Debtor's] reorganization.").

19.     Although the Ordinary Course Professionals provide valuable services for the Debtors, their employment is not central to the reorganization of the Debtors' business. Furthermore, it could hinder the operation of the Debtors' business and the administration of the Debtors' estates if the Debtors were required (a) to submit to the Court an application, declaration, and proposed retention order for each Ordinary Course Professional, (b) to wait until such order is approved before such Ordinary Course Professional continues to render services, and (c) to withhold payment of the normal fees and expenses of the Ordinary Course Professionals until they comply with the compensation and reimbursement procedures applicable to Chapter 11 Professionals. Such restrictions raise specific constitutional concerns in this case with respect to professionals the NRA utilizes in advancing its

9

core mission of protecting Second Amendment rights. Because the NRA's advancement of Second Amendment rights "is a quintessential First Amendment-protected activity," restricting the NRA's ability to continue this activity or subjecting its ability to do so to prior approval by the Court raises a "complex constitutional issue of whether the First Amendment . . . conflicts with the notice and hearing requirements" of Section 327(a). Johns-Manville, 60 B.R. at 621 at n. 8 (quoting *In Comm. of Asbestos-Related Litigants and/or Creditors v. Johns-Manville Corp.*, 32 B.R. 728, 733 n. 7 (S.D.N.Y. 1983)). The relief requested in this Motion will avoid the need for the Court and Debtors to delve into this "complex constitutional issue."

20. Absent the relief requested in this Motion, there is also a risk that some Ordinary Course Professionals would be unwilling to provide services, and that others would suspend services pending a specific court order authorizing the services. Since many of the matters for which the Ordinary Course Professionals provide services are active on a day-to-day basis, any delay or need to replace professionals could have adverse consequences on the Debtors' estates. For example, if the expertise and background knowledge of the Ordinary Course Professionals with respect to the particular matters for which they were responsible prior to the Petition Date were lost, the estates undoubtedly would incur additional and unnecessary expenses because the Debtors would have to retain other professionals without such background and expertise, at potentially higher rates. It is therefore in the best interest of the Debtors' estates to avoid any disruption to the professional services required.

21. Finally, the requested relief will allow the Debtors to avoid additional fees that such Ordinary Course Professionals would charge in connection with preparing and prosecuting numerous interim fee applications. Likewise, the procedure set forth above will relieve the Court, the United States Trustee, and other interested parties of the burden of reviewing a multitude of fee applications involving relatively small amounts of fees and expenses.

22. To the best of the Debtors' knowledge, none of the Ordinary Course Professionals

represent or hold any interest materially adverse to the Debtors or to their estates with respect to the matter in which the Debtors employ such Ordinary Course Professional(s). Although certain of the Ordinary Course Professionals may hold unsecured claims against one or more of the Debtors, the Debtors do not believe that any of such claims constitute interests materially adverse to the Debtors, their estates, their creditors, or other parties in interest.

23. Courts in this and other districts in Texas have granted similar relief. *See, e.g., In re J. Hilburn, Inc.*, Case No. 20-31308-hdh11 (Bankr. N.D. Tex. Jun. 17, 2020) [Docket No. 147]; *In re A'GACI, L.L.C.,* Case No. 18-50049-rbk-11 (RBK) (Bankr. W.D. Tex. March 13, 2018); *In re Preferred Care Inc.,* Case No. 17-44642 (MXM) (Bankr. N.D. Tex. Jan. 23, 2018); *In re Buffets, LLC,* Case No. 16-50557 (RBK) (Bankr. W.D. Tex. 2016); *In re Erickson Incorporated,* Case No. 16-34393 (HDH) (Bankr. N.D. Tex. 2016); *In re CHC Group Ltd.*, Case No. 16-31854 (BJH) (Bankr. N.D. Tex. 2016); *In re Spectrum Jungle Labs Corp.*, Case No. 09-50455 (RBK) (Bankr. W.D. Tex. Mar. 9, 2009); *In re Am. Plumbing, Inc.*, Case No. 03-55789 (LMC) (Bankr. W.D. Tex. Nov. 12, 2003); *In re Mirant Corp.*, Case No. 03-46590 (DML) (Bankr. N.D. Tex. Aug. 1, 2003); *In re Encompass Svs. Corp.*, Case No. 02-43582 (WRG) (Bankr. S.D. Tex. Dec. 18, 2002). The Debtors submit that similar relief is appropriate here.

24. Based on the foregoing facts and circumstances, the Debtors submit that the employment and compensation of the Ordinary Course Professionals in the manner set forth above and in the proposed Order is supported by sound business judgment, and is necessary, prudent, and in the best interests of the Debtors, their estates, and their creditors.

## V. CONCLUSION AND PRAYER

For the reasons set forth above, the Debtors request that the Court enter an order (i) granting the relief requested herein; and (ii) granting any further relief the Court deems appropriate .

Dated:  February 1, 2021 Respectfully submitted,

*/s/ Patrick J. Neligan, Jr.*
Patrick J. Neligan, Jr.
Texas Bar No. 14866000
pneligan@neliganlaw.com
Douglas J. Buncher
State Bar No. 03342700
dbuncher@neliganlaw.com
John D. Gaither
Texas Bar No. 24055516
jgaither@neliganlaw.com
**NELIGAN LLP**
325 N. St. Paul, Suite 3600
Dallas, Texas 75201
Telephone: (214) 840-5300
Facsimile: (214) 840-5301

**PROPOSED COUNSEL FOR THE DEBTORS**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 1st day of February 2021 a true and correct copy of the foregoing was served via first class U.S. mail on the parties named on the attached Master Service List.

 */s/ Douglas J. Buncher*
Douglas J. Buncher

**In re: Sea Girt LLC - Case No. 21-30080**
**In re: National Rifle Association of America - Case No. 21-30085**

## MASTER SERVICE LIST

### Debtor/Debtor's Counsel

| | |
|---|---|
| National Rifle Association of America<br>11250 Waples Mill Road<br>Fairfax, VA  22030 | Neligan LLP<br>Attn:   Patrick J. Neligan<br>          Douglas J. Buncher<br>          John D. Gaither<br>325 N. St. Paul, Suite 3600<br>Dallas, TX 75201<br>Email: pneligan@neliganlaw.com<br>          dbuncher@neliganlaw.com<br>          jgaither@neliganlaw.com |
| Sea Girt LLC<br>11250 Waples Mall Road<br>Fairfax, VA  22030 | |

### U.S. Trustee

Office of the United States Trustee
Attn: Lisa Young
Earle Cabell Federal Building
1100 Commerce Street, Room 976
Dallas, TX  75242

### Secured Creditors

Atlantic Union Bank
Attn: Andrew Kalin
1800 Robert Fulton Drive, Suite 100
Reston, VA  20191
Email: andrew.kalin@atlanticunionbank.com

### 20 Largest Unsecured Creditors

| | |
|---|---|
| Ackerman McQueen, Inc.<br>1601 Northwest Expressway<br>Oklahoma City, OK  73118-1438 | Membership Marketing Partners LLC<br>11250 Waples Mill Road, Suite 310<br>Fairfax, VA  22030 |

Gould Paper Corporation
Attn: Warren Connor
99 Park Avenue, 10th Floor
New York, NY  10016

Under Wild Skies
201 N. Union Street, Suite 510
Alexandria, VA  22314

Quadgraphics
N63W23075 Hwy. 74
Sussex, WI  53089

Membership Advisors Public REL
11250 Waples Mill Road, Suite 310
Fairfax, VA  22030

Mercury Group
1601 NW Expressway, Suite 1100
Oklahoma City, OK  73118

Image Direct Group LLC
200 Monroe Avenue, Building 4
Frederick, MD  21701

TMA Direct, Inc.
12021 Sunset Hills Road, Suite 350
Manassas, VA  20109

Membership Advisors Fund Raising
11250 Waples Mill Road, Suite 310
Fairfax, VA  22030

Krueger Associates, Inc.
105 Commerce Drive
Aston, PA  19014

Infocision Management Corp.
325 Springside Drive
Akron, OH  44333

Valtim Incorporated
P.O. Box 114
Forest, VA  24551

Communications Corp of America
Attn:  Judy Reid
13195 Freedom Way
Boston, VA  22713

Salesforce.Com, Inc.
One Mark St. – The Landmark, Suite 300
San Francisco, CA  94105

Speedway Motorsports, Inc.
P.O. Box 600
Concord, NC  28026

Google
1600 Amphitheatre Parkway
Mountain View, CA  94043-1351

United Parcel Services
P.O. Box 7247-0244
Philadelphia, PA  19170

Stone River Gear, LLC
P.O. Box 67
Bethel, CT  06801

CDW Computer Centers, Inc.
P.O. Box 75723
Chicago, IL  60675

## Government Agencies

Internal Revenue Service
P.O. Box 7346
Philadelphia, PA  19101-7346

Office of Attorney General (NY)
Attn:  Letitia James
28 Liberty Street
New York, NY  10005

90324v1

| | |
|---|---|
| Office of Attorney General (DC)<br>Attn: Karl A. Racine<br>441 Fourth St., N.W., Suite 600-South<br>Washington, DC  20001 | Office of Attorney General (TX)<br>Attn:  Ken Paxton<br>P.O. Box 12548<br>Austin, TX  78711-2548 |
| Mahmooth A. Faheem<br>Lori A. Butler<br>Pension Benefit Guaranty Corporation<br>1200 K NW<br>Washington, DC  20005-4026<br>mahmooth.faheem@pbgc.gov<br>butler.lori@pbgc.gov<br>efile@pbgc.gov | |

## Notice of Appearance

| | |
|---|---|
| Laurie A. Spindler<br>Linebarger Coggan Blair & Sampson, LLP<br>2777 N. Stemmons Freeway, Suite 1000<br>Dallas, TX  75207<br>dallas.bankruptcy@publicans.com | G. Michael Gruber<br>Dorsey & Whitney LLP<br>300 Crescent Court, Suite 400<br>Dallas, TX  75201<br>gruber.mike@dorsey.com |
| Brian E. Mason<br>Dorsey & Whitney LLP<br>300 Crescent Court, Suite 400<br>Dallas, TX  75201<br>mason.brian@dorsey.com | H. Joseph Acosta<br>Dorsey & Whitney LLP<br>300 Crescent Court, Suite 400<br>Dallas, TX  75201<br>acosta.joseph@dorsey.com |
| Natalie L. Arbaugh<br>Winston & Strawn LLP<br>2121 N. Pearl Street, Suite 900<br>Dallas, TX  75201<br>narbaugh@winston.com | Thomas M. Buchanan<br>Matthew Saxon<br>Winston & Strawn LLP<br>1901 L St., N.W.<br>Washington, DC  20036<br>tbuchana@winston.com<br>msaxon@winston.com |
| David Neier<br>Winston & Strawn LLP<br>200 Park Avenue<br>New York, NY  10166-4193<br>dneier@winston.com | Tara LeDay<br>McCreary, Veselka, Bragg & Allen, P.C.<br>P.O. Box 1269<br>Round Rock, TX  78680<br>tleday@mvbalaw.com |

90324v1

| | |
|---|---|
| Michael I. Baird<br>Pension Benefit Guaranty Corporation<br>1200 K St. NW<br>Washington, DC  20005-4026<br>baird.michael@pbgc.gov<br>efile@pbgc.gov | Brandon R. Freud<br>Chuhak & Tecson, P.C.<br>30 S. Wacker Drive, Suite 2600<br>Chicago, IL  60606<br>bfreud@chuhak.com |

90324v1