**NELIGAN LLP**
PATRICK J. NELIGAN, JR.
State Bar. No. 14866000
DOUGLAS J. BUNCHER
State Bar No. 03342700
JOHN D. GAITHER
State Bar No. 24055516
325 North St. Paul, Suite 3600
Dallas, Texas 75201
Telephone: 214-840-5333
Facsimile: 214-840-5301
pneligan@neliganlaw.com
dbuncher@neliganlaw.com
jgaither@neliganlaw.com
**Proposed Co-Counsel for Debtors**

## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | § | CHAPTER 11 |
| | § | |
| **NATIONAL RIFLE ASSOCIATION OF** | § | CASE NO. 21-30085-hdh11 |
| **AMERICA and SEA GIRT LLC,** | § | |
| | § | |
| **DEBTORS**[1] | § | Jointly Administered |
| | § | |

## DEBTORS' OPPOSITION TO MOTION OF
## CHRISTOPHER W. COX TO MODIFY THE AUTOMATIC STAY

---

[1] The last four digits of the Debtors' taxpayer identification numbers are: 6130 (National Rifle Association of America) and 5681 (Sea Girt LLC).

# CONTENTS

I. INTRODUCTION ................................................................................................ 1

II. JURISDICTION AND VENUE ......................................................................... 1

III. FACTUAL BACKGROUND ............................................................................ 2

    A.   THE MULTI-PRONGED LITIGATION REGARDING GOVERNANCE AND EXPENDITURES... 2

    B.   THE DISPUTE BETWEEN COX AND THE NRA ............................................... 3

    C.   THE STATUS OF THE ARBITRATION. ........................................................... 5

IV. LEGAL ARGUMENT ....................................................................................... 7

    A.   THE STAY APPLIES TO THE NRA'S COUNTERCLAIMS. .................................. 7

    B.   APPLICABLE FACTORS AND BURDEN OF PROOF FOR RELIEF UNDER SECTION 362(D).. 8

    C.   COX DOES NOT ESTABLISH CAUSE FOR RELIEF FROM THE STAY. ............................ 10

        1. Cox misconstrues the purpose and effect of the stay. .......................................... 10

        2. Other relevant factors weigh against granting relief from the automatic stay. ..... 13

V. PRAYER ............................................................................................................ 15

# AUTHORITIES

## Federal Cases

*360 Electrical, L.L.C. v. Gottrox, L.L.C.*, No. 2:08-CV-00044-TJW,
   2011 WL 3625579 (E.D. Tex. Aug. 17, 2011) ........................................................... 7

*Bonneville Power Admin. v. Mirant Corp. (In re Mirant Corp.)*,
   440 F.3d 238 (5th Cir. 2006) ...................................................................................... 8

*E³ Biofuels-Mead, LLC v. QA3 Fin. Corp.*, 384 B.R. 580 (D. Kan. 2008).................................... 7

*GATX Aircraft Corp. v. M/V Courtney Leigh*, 768 F.2d 711 (5th Cir. 1985).............................. 11

*In re Adkins*, 513 B.R. 888 (Bankr. N.D. Tex. 2014) .................................................................. 12

*In re Cardinal Indus., Inc.*, 116 B.R. 964 (Bankr. S.D. Ohio 1990) ............................................ 9

*In re Curtis*, 40 B.R. 795 (Bankr. D. Utah 1984) ........................................................................ 9

*In re Edwin A. Epstein, Jr. Operating Co., Inc.*, 314 B.R. 591 (Bankr. S.D. Tex. 2004).............. 7

*In re Fin. Oversight & Mgmt. Bd. for Puerto Rico*,
   No. 17 BK 3283-LTS, 2018 WL 9708898 (D.P.R. Aug. 7, 2018) ........................... 12

*In re Fine*, 285 B.R. 700 (Bankr. D. Minn. 2002) ...................................................................... 12

*In re Fowler*, 259 B.R. 856 (Bankr. E.D. Tex. 2001) ................................................................... 9

*In re Holtkamp*, 669 F.2d 505 (7th Cir. 1982) .......................................................................... 12

*In re Hunt*, 93 B.R. 484 (Bankr. N.D. Tex. 1988) ..................................................................... 12

*In re Kleibrink*, 346 B.R. 734 (Bankr. N.D. Tex. 2006) ............................................................ 10

*In re Self*, 239 B.R. 877 (Bankr. E.D. Tex. 1999)...................................................................... 10

*In re Sentry Park, Ltd.*, 87 B.R. 427 (Bankr. W.D. Tex. 1988)..................................................... 9

*In re Trust*, 526 B.R. 668 (Bankr. N.D. Tex. 2015)................................................................... 10

*In re U.S. Brass Corp.*, 173 B.R. 1000 (Bankr. E.D. Tex.) ....................................................... 10

*Little Creek Dev. Co. v. Commonwealth Mortg. Corp. (In re Little Creek Dev. Co.)*,
   779 F.2d 1068 (5th Cir. 1986) .................................................................................... 8

*Matter of S.I. Acquisition, Inc.*, 817 F.2d 1142 (5th Cir. 1987)................................................. 11

*Midlantic Nat. Bank v. New Jersey Dep't of Envtl. Prot.*, 474 U.S. 494 (1986) ........................ 11

*Mooney v. Gill*, 310 B.R. 543 (N.D. Tex. 2002)..................................................................... 9

*Sonnax Indus. v. Tri Component Prods. Corp. (In re Sonnax Indus. Inc.),*
 907 F.2d 1280 (2d Cir. 1990)...................................................................................... 9

**Federal Statutes**

11 U.S.C. § 362............................................................................................... *passim*

**Other Authorities**

H.R.Rep. No. 95–595, 95th Cong., 2d Sess. 340 (1978) ................................................ 11

S.Rep. No. 989, 95th Cong., 2d Sess. 54–55 (1978) .................................................... 11

The National Rifle Association of America (the "NRA") and Sea Girt, LLC ("Sea Girt" and, together with the NRA, the "Debtors"), debtors and debtors-in-possession, file this opposition (the "Opposition") to the *Motion of Christopher W. Cox (I) to Modify the Automatic Stay to Allow a Trial-Ready Arbitration to Proceed Against the National Rifle Association of America, and (II) for Related Relief* (Docket No. 63) (the "Motion") filed by Christopher W. Cox ("Cox").

In support of this Opposition, the Debtors incorporate by reference the Declaration of Michael J. Collins in support of the Debtors' application for authorization and approval of special counsel (Docket No. 84, Exhibit B) (the "Collins Declaration") and the declaration of Svetlana M. Eisenberg (the "Eisenberg Declaration"), attached hereto as **Exhibit A**, and further state:

## I. INTRODUCTION

Cox's portrayal of his litigation with the NRA as an isolated matter unrelated to the Debtors' reorganization omits the context of the dispute and the unprecedented upheaval faced by the NRA over the past few years that has imperiled the NRA's mission, the constitutionally-protected interests of its members, and the NRA's very existence. The Arbitration does not exist in a vacuum. Equally as important, Cox ignores the very purpose of these proceedings, an organized and efficient venue in which to find the proverbial "breathing room" in which to focus the Debtors' time and energy on negotiating with creditors and proposing a plan of reorganization. Stay relief to allow one creditor to liquidate his claim in the early stages of a complex Chapter 11 case would imperil the Debtors' reorganization and should not be granted.

## II. JURISDICTION AND VENUE

1.      The Court has jurisdiction over this Application pursuant to 28 U.S.C. §§ 157 and 1334. Consideration of this Application is a core proceeding under 28 U.S.C. § 157(b)(2).

2.      The Debtors confirm their consent, pursuant to Bankruptcy Rule 7008, to the entry of a final order by the Court.

3.      Venue is proper pursuant to 28 U.S.C. §§ 1408(1) and (2) and 1409(a).[2]

## III. FACTUAL BACKGROUND

### A.      The Multi-Pronged Litigation Regarding Governance and Expenditures.

4.      More than three years ago, the NRA learned that high-ranking New York State Democratic officials intended to exploit the state government's regulatory powers against the NRA in order to weaken it as a political force before the 2020 election. New York's former Attorney General was apparently so troubled by the pretextual and unconstitutional misuse of the state's broad supervisory authority that he warned the NRA of potential politically motivated hostilities from the New York State Office of the Attorney General (the "NYAG"), including a potential investigation of the NRA's operations and finances. Those concerns later came to fruition in the form of the NYAG's investigation of the NRA (the "NYAG Investigation") and subsequent litigation by the NYAG that seeks to end the NRA (the "NYAG State Lawsuit").[3] See Collins Decl. (Docket No. 84), at ¶ 3.

5.      However, the NRA had undertaken its own review of its controls, compliance, and governance efforts and implementing changes to place its governance and compliance programs beyond reproach. ██████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

---

[2] Cox's contention that "there are questions" regarding the Debtors' assertion of proper venue under 28 U.S.C. §§ 1408 and 1409 (*see* Mot. at p. 3, n.2) is unsupported by any factual allegations or argument and should be disregarded.

[3] *People of the State of New York v. The National Rifle Association et al.*, Index No. 451625/2020 (Sup. Ct. N.Y.) (the "NYAG State Lawsuit").

███. *See* Eisenberg Decl., Exhibit 2 (The NRA's Amended Response With Counterclaims Against Christopher Cox); *see also Debtors' Informational Brief in Connection with Voluntary Chapter 11 Petitions* (Docket No. 31) (the "Informational Brief"), § III.A.

6.      The NRA's efforts spawned a number of overlapping actions concerning the finances and governance of the NRA centering on alleged abuses by fiduciaries, including multiple actions involving the NRA's former advertising agency, Ackerman McQueen ("AMc"),[4] the putative class action by a handful of NRA donors (the "Dell'Aquila Litigation"),[5] other actions against former fiduciaries,[6] the NYAG State Lawsuit,[7] and the latest, an action by the District of Columbia that seeks to ride the coattails of the NYAG.[8] *See* Informational Brief, § III.A; Collins Decl., Schedule 1.

**B.      The Dispute Between Cox and the NRA.**

7.      The Arbitration is merely one of the many actions stemming from the NRA's efforts to address past misconduct by the fiduciaries in whom the NRA and its members placed their trust.



8.      ████████████████████████████████████████

████████████████████████████████████████

███████      *See* Eisenberg Decl., Ex. 2, pp. 14-15, 27.

9.      ████████████████████████████████████████

████████████████████████████████████████████

---

[4] *Nat'l Rifle Ass'n of Am. v. Ackerman McQueen, Inc., et al.*, Civ. Case No. 3-19-cv-02074-G (N.D. Tex.); *Ackerman McQueen Inc. v. Stinchfield*, Civ. No. 3:19-cv-03016-X (N.D. Tx.); *Nat'l Rifle Ass'n of Am. v. Ackerman McQueen, Inc. et al.*, Case No. CL19001757 (Va. Cir. Ct. 2019); *Nat'l Rifle Ass'n of Am. v. Ackerman McQueen, Inc. et al.*, Case No. CL19002067 (Va. Cir. Ct. 2019).

[5] *See Dell'Aquila v. LaPierre* et al., Civ. Case No. 3:19-cv-00679 (M.D. Tn.).

[6] *See, e.g., Nat'l Rifle Ass'n of Am. v. North*, Index No. 903843-20 (Sup. Ct. Albany Cnty.).

[7] *See also People of the State of New York v. Ackerman McQueen, Inc. and The National Rifle Association*, Index No. 451825/2019 (Sup. Ct., N.Y. Cnty. 2019).

[8] *District of Columbia v. NRA Foundation, Inc.* et al, Case No. 2020 CA 003454 B (D.C. Sup. 2020).

████████████████████████████████████████████████████

████████████████████████████████████████████████████

███████ *See id.*, at pp. 14-16.

10.   ████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████   *See, generally,* Eisenberg Decl.,

Exhibit 1 (Christopher Cox's First Amended Arbitration Claim) and Ex. 2.

11.   ████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████████████████████████████ *See, generally*, Eisenberg

Decl., Ex. 2.

12.     Claims by the estate against Cox under the Bankruptcy Code, including claims for

the avoidance of transfers made and obligations incurred under Sections 548 and 544(b), have not

been asserted in the Arbitration.  *See id.*

C.     **The Status of the Arbitration.**

13.     As Cox repeatedly states in his Motion, the Arbitration was "trial-ready" when the

Debtors filed their voluntary petitions for relief under Chapter 11 of the Bankruptcy Code on

January 15, 2021 (the "Petition Date"). Cox's claims and the NRA's counterclaims were scheduled

to be tried on January 18, 2021 before Hon. James Eyler (the "Arbitrator") of the International

Institute for Conflict Prevention and Resolution in a trial expected to last approximately 10 days.

*See* Eisenberg Decl., ¶ 4.

14.     Blatantly daring the NRA to try to obtain enforcement of the automatic stay, ████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

███████████████████████████ *See* Eisenberg Decl., Ex. 3 (January 15, 2021 email from

Tom Buchanan to Hon. James Eyler) (emphasis added).

15.     ██████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

███████████████████████████████████████████

████████ *See* Eisenberg Decl., Ex. 4 (Order Staying Proceedings, *Cox v. Nat'l Rifle Assoc. of Am.*, CPR Case No. G-21-05-S).

16.     The NRA anticipates that its trial witnesses will include more than ten witnesses (officers, directors, and executives of the NRA) who, for obvious reasons, are focused on these Chapter 11 Cases.  During the transition to Chapter 11, most of the attention of the NRA's leadership and employees has been directed to the typical issues that arise in the early stages of Chapter 11, including the use of their existing cash management system, securing an agreement for the use of cash collateral, maintaining access to payment processing services, ensuring the continuation of employee benefits and payroll, addressing the numerous and repeated inquiries of vendors, employees, and members regarding the Chapter 11 Cases, along with media inquiries more extensive than those in typical cases under Chapter 11, compiling information for the Office of the United States Trustee, preparing the Debtors' Schedules of Assets and Liabilities, Statement of Financial Affairs, and initial Monthly Operating Reports, and, most significantly, working with their Chapter 11 Counsel to develop a restructuring strategy that ensures the Debtors' success as a going concern.  *See* Eisenberg Decl., ¶¶ 5-6.

17.     However, in the days and weeks to come, the NRA's attention will be focused on negotiating with creditors, formulating a plan of reorganization, and taking the steps necessary to complete a move to Texas.  Moreover, in the coming weeks, Debtors will be proposing to the Court a protocol to efficiently manage multiple overlapping claims and litigation like the claims asserted by Cox and the NRA's claims against Cox, including Chapter 5 claims.

## IV. LEGAL ARGUMENT

### A.     The Stay Applies to the NRA's Counterclaims.

Cox's request for "confirmation" that the automatic stay does not apply to the NRA's counterclaims has already been rejected by the Arbitrator and should be rejected by this Court.

While a debtor's offensive claims are generally not stayed, the automatic stay will apply to a debtor's claims when they are inextricably intertwined or not severable from claims against the debtor or which, if decided adversely to the debtor, could serve as predicate for imposing liability on the debtor or adversely affect the debtor. *See, e.g.*, *In re Edwin A. Epstein, Jr. Operating Co., Inc.*, 314 B.R. 591, 597 (Bankr. S.D. Tex. 2004) (concluding that the stay applied to all claims in "an inextricably intertwined action that must be heard as a unit" where claims arose from the same transaction or occurrence); *360 Electrical, L.L.C. v. Gottrox, L.L.C.*, No. 2:08-CV-00044-TJW, 2011 WL 3625579, at *2 (E.D. Tex. Aug. 17, 2011) (stay applied to debtor's counterclaims where court could not rule on debtor's claims for declaratory judgment of noninfringement, invalidity, and unenforceability of patent without ruling on creditor's patent infringement claims against the debtor); *E³ Biofuels-Mead, LLC v. QA3 Fin. Corp.*, 384 B.R. 580, 581-82 (D. Kan. 2008) (automatic stay applied to debtor's declaratory judgment action because it exposed the bankruptcy estate to the same risk as the counterclaims and third-party claims against the debtor). The application of the stay in "inextricably intertwined" claims is both logical and well-settled law.





*See* Eisenberg Decl., Ex. 4.

**B.    Applicable Factors and Burden of Proof for Relief Under Section 362(d).**

Under Section 362(d)(1) of the Bankruptcy Code, a court may grant relief from the stay, such as by terminating, annulling, modifying, or conditioning such stay, for "cause."  11 U.S.C. § 362(d)(1).  "Cause" is not defined by the Bankruptcy Code but is left to the discretion of the bankruptcy court and decided on a case-by-case basis.  *See Bonneville Power Admin. v. Mirant Corp. (In re Mirant Corp.)*, 440 F.3d 238, 253 (5th Cir. 2006) ("[I]n the past we have noted that this lack of definition [of "cause" in the Code] affords 'flexibility to the bankruptcy courts") (quoting *Little Creek Dev. Co. v. Commonwealth Mortg. Corp. (In re Little Creek Dev. Co.)*, 779 F.2d 1068, 1072 (5th Cir. 1986)).  Factors commonly considered by bankruptcy courts in determining whether "cause" exists to allow litigation against a debtor to proceed in another forum include:

1.  Whether the relief will result in a partial or complete resolution of the issues;

2.  The lack of any connection with or interference with the bankruptcy case;

3.  Whether the foreign proceeding involves the debtor as a fiduciary;

4.  Whether a specialized tribunal has been established to hear the particular cause of action and whether that tribunal has the expertise to hear such cases;

5.  Whether the debtor's insurance carrier has assumed full financial responsibility for defending the litigation;

6. Whether the action essentially involves third parties, and the debtor functions only as a bailee or conduit for the good or proceeds in question;

7. Whether the litigation in another forum would prejudice the interests of other creditors, the creditors' committee and other interested parties;

8. Whether the judgment claim arising from the foreign action is subject to equitable subordination under Section 510(c);

9. Whether movant's success in the foreign proceeding would result in a judicial lien avoidable by the debtor under Section 522(f);

10. The interests of judicial economy and the expeditious and economical determination of litigation for the parties;

11. Whether the foreign proceedings have progressed to the point where the parties are prepared for trial; and

12. The impact of the stay on the parties and the "balance of hurt."

*In re Curtis*, 40 B.R. 795, 799–800 (Bankr. D. Utah 1984); *Sonnax Indus. v. Tri Component Prods. Corp. (In re Sonnax Indus. Inc.)*, 907 F.2d 1280, 1286 (2d Cir. 1990).

Though no definitive test or combination of factors applies in every case, "[t]he bankruptcy court must balance the hardships of the parties and base a decision on whether to modify the automatic stay on the degree of hardship involved and the goals of the Bankruptcy Code." *Mooney v. Gill*, 310 B.R. 543, 546 (N.D. Tex. 2002) (citing *In re Cardinal Indus., Inc.*, 116 B.R. 964, 983 (Bankr. S.D. Ohio 1990)). "Cause is an intentionally broad and flexible concept, made so in order to permit the courts to respond in equity to inherently fact-sensitive situations." *Id.* at 546-47 (quoting *In re Sentry Park, Ltd.*, 87 B.R. 427, 430 (Bankr. W.D. Tex. 1988)); *see also In re Fowler*, 259 B.R. 856, 860 (Bankr. E.D. Tex. 2001) (citing *Curtis* factors and considering whether lifting the automatic stay would (1) be a "great prejudice" to the estate or debtor and (2) whether the hardship caused to the movant "considerably outweighs" the hardship to the debtor by continuing the stay).

When alleging grounds to lift the automatic stay, other than for a lack of equity, the movant is required to make a prima facie showing that it is entitled to relief from stay. *In re Trust*, 526 B.R. 668, 673 (Bankr. N.D. Tex. 2015). Only if the movant alleges facts demonstrating a legal entitlement to the relief sought will the burden shift to the party opposing relief to go forward with his proof. *Id.* at 673-74 (citing 11 U.S.C. § 362(g), *In re Sonnax Indus.*, 907 F.2d at 1285); *In re Kleibrink*, 346 B.R. 734, 760 (Bankr. N.D. Tex. 2006) (citing *In re Self*, 239 B.R. 877, 880 (Bankr. E.D. Tex. 1999), *aff'd*, No. 3:07-CV-0088-K, 2007 WL 2438359 (N.D. Tex. Aug. 28, 2007), *aff'd*, 621 F.3d 370 (5th Cir. 2010)). This burden is especially daunting in the earliest stages of a complex case. *See In re U.S. Brass Corp.*, 173 B.R. 1000, 1006 (Bankr. E.D. Tex.), *modified*, 176 B.R. 11 (Bankr. E.D. Tex. 1994).

### C.     Cox Does Not Establish Cause for Relief from the Stay.

While arguing that "all of the factors warrant modification of the automatic stay," Cox relies on only two: proximity of trial and judicial economy.[10] His argument that he will suffer prejudice by being "required to recommence a new proceeding in this Court"[11] is merely a reformulation of these two factors colored by a fundamental misunderstanding of the purpose and effect of the automatic stay, and is far outweighed by prejudice that the Debtors would suffer if Cox was granted stay relief at the outset of these Chapter 11 Cases.

### 1.   Cox misconstrues the purpose and effect of the stay.

The automatic stay is not a venue provision as Cox's arguments presume, but a *stay* designed to prevent "the dissipation or diminution of the bankrupt's assets while rehabilitative efforts are undertaken and prohibits the proliferation of numerous claims in different forums

---

[10] Mot., pp. 6-7, ¶ 22.

[11] Mot., p. 2, ¶ 2; p. 6, ¶ 22.

against the debtor." *Matter of S.I. Acquisition, Inc.*, 817 F.2d 1142, 1146 (5th Cir. 1987).[12] As the Fifth Circuit stated in *S.I. Acquisition*, the legislative history of Section 362 underscores the importance of the automatic stay to a debtor's ability to reorganize:

> The automatic stay is one of the fundamental debtor protections provided by the bankruptcy laws. It gives the debtor a breathing spell from his creditors. It stops all collection efforts, all harassment, and all foreclosure actions. It permits the debtor to attempt a repayment or reorganization plan, or simply to be relieved of the financial pressures that drove him into bankruptcy.
>
> The automatic stay also provides creditor protection. Without it, certain creditors would be able to pursue their own remedies against the debtor's property. Those who acted first would obtain payment of the claims in preference to and to the detriment of other creditors. Bankruptcy is designed to provide an orderly liquidation procedure under which all creditors are treated equally. A race of diligence by creditors for the debtor's assets prevents that.

*Id.* (quoting H.R.Rep. No. 95-595, 95th Cong., 2d Sess. 340 (1978); S.Rep. No. 989, 95th Cong., 2d Sess. 54–55 (1978)); *see also Midlantic Nat. Bank v. New Jersey Dep't of Envtl. Prot.*, 474 U.S. 494, 503 (1986)).

Thus, the Fifth Circuit found, the automatic stay "imposes a moratorium on all actions against the debtor or its property and assets" and "<u>ensures a respite for the debtor so that it may attempt to reorganize</u> or decide to liquidate and promotes the overriding bankruptcy policy of equal distribution of a debtor's assets among creditors." *S.I. Acquisition*, 817 F.2d at 1146 (emphasis added) (citing *GATX Aircraft Corp. v. M/V Courtney Leigh*, 768 F.2d 711, 716 (5th Cir. 1985)).

In furtherance of these objectives, the automatic stay provides the bankruptcy court with the opportunity to determine if it will establish the amount and validity of claims or defer to another court, "thereby preventing a 'chaotic and uncontrolled scramble for the debtor's assets in a variety of uncoordinated proceedings in different courts.'" *In re Hunt*, 93 B.R. 484, 488 (Bankr. N.D.

---

[12] Cox's substantial discussion regarding the Federal Arbitration Act and the liberal federal policy favoring arbitration is irrelevant because the automatic stay does not remove the Arbitration to this Court.

Tex. 1988), *modified*, No. 388-35725-HCA-11, 1989 WL 67827 (Bankr. N.D. Tex. Jan. 31, 1989), and *modified*, 95 B.R. 442 (Bankr. N.D. Tex. 1989) (quoting *In re Holtkamp*, 669 F.2d 505, 508 (7th Cir. 1982)); *see also In re Fin. Oversight & Mgmt. Bd. for Puerto Rico*, No. 17 BK 3283-LTS, 2018 WL 9708898 (D.P.R. Aug. 7, 2018) ("[m]odification of the automatic stay would also interfere with the claims resolution process established by the Bankruptcy Code").

Cox's misunderstanding of the automatic stay as a question of venue appears to rest on the dubious premise that he may simply initiate litigation against the NRA in bankruptcy court notwithstanding the automatic stay. However, he offers no authority to support the proposition that a creditor can initiate litigation outside of the confines of the proof of claim process, which has been rejected by another court in this district. *In re Adkins*, 513 B.R. 888, 895 (Bankr. N.D. Tex. 2014) (rejecting an exception to the automatic stay that would allow "any action against a debtor in the bankruptcy court, without tripping the stay wire" because it "fails to account for the most basic purpose of the automatic stay . . . the breathing room afforded a debtor from his creditors upon a bankruptcy filing") (citing *GATX Aircraft Corp.*, 768 F.2d at 716; *In re Fine*, 285 B.R. 700, 702 (Bankr. D. Minn. 2002)).

Thus, Cox's argument that he "would be required to recommence a new proceeding"[13] and relitigate the case in this Court misses the point, which is to prevent him from litigating at all while the Debtors are given the opportunity to begin reorganizing and corralling a multitude of uncoordinated proceedings in state and federal courts free of the burden of ongoing litigation. It is not prejudicial to Cox because it is the entire point of the statute.

Cox seeks to evade consideration of the "balance of hurt" by arguing that the NRA "does not need to centralize or streamline litigation in this Court" because "there are apparently only a

---

[13] Mot., at p. 2, ¶ 2.

handful of litigation matters involving the NRA,"[14] which is both demonstrably wrong and a **misleading attempt** to portray the Arbitration as unrelated to the multiple pending actions.

The NRA is involved in more than a dozen pending actions in state and federal courts in New York, Virginia, the District of Columbia, Tennessee, and Texas, most of which relate to the finances and governance of the NRA and alleged abuses by fiduciaries, including the **NYAG State Lawsuit, along with a host of** related and unrelated regulatory matters.[15] *See* Collins Decl., Schedule 1. Because voluminous, overlapping litigation in multiple forums cannot be sustained in perpetuity, the Debtors' need for a time-out to focus on formulating a plan and proposing a process to streamline the resolution of outstanding claims and litigation is acute.

Furthermore, the breathing spell afforded by the automatic stay provides the Debtors the time necessary to evaluate claims under Sections 544 and 548 of the Bankruptcy Code for the avoidance of transfers and obligations to Cox which, while factually intertwined with the claims at issue in the Arbitration, are outside the scope of the Arbitration. Requiring the NRA to proceed with Arbitration before it has the opportunity to assess the estate's claims subjects the NRA to the risk these claims could be precluded by possible adverse findings in the Arbitration.

2. <u>Other relevant factors weigh against granting relief from the automatic stay.</u>

Consideration of the second, seventh, and tenth *Curtis* factors compel continuation of the stay for the same reasons. *In re Curtis*, 40 B.R. at 799-800. The Cox Arbitration has a substantial connection with the Chapter 11 Cases and considerations of judicial economy and the expeditious and economical determination of litigation weigh strongly in favor of continuation of the automatic

---

[14] Mot., at p. 8, ¶ 26.

[15] These matters are distinct from and unrelated to the many lawsuits and appeals initiated or joined by the NRA in furtherance of its Second Amendment advocacy mission, such as actions challenging county COVID-19 orders closing gun shops and ranges or state firearm licensing or transfer laws that unconstitutionally infringe Second Amendment rights.

stay because the Arbitration is merely one of a number of pending actions, including actions which threaten the NRA's existence as a going concern.  If, mere weeks after the filing of the Chapter 11 Cases, Cox obtains stay relief to proceed in another forum, other litigants will demand the same, effectively returning the NRA to the morass of protracted, expensive litigation and defeating the purpose of the bankruptcy process in allowing for a speedy and economical resolution of claims.[16] Alternatively, allowing Cox to proceed in his chosen forum while leaving other claimants to claims proceedings in bankruptcy court would undoubtedly be perceived as prejudicial and unfair by other claimants.

More immediately, the NRA's witnesses in the Cox matter are the same individuals within the organization who are focused on the transition to Chapter 11, including the operational impacts of a bankruptcy filing and the administrative requirements of the early stages of a Chapter 11 case. Cox's blanket assertion that stay relief would not prejudice the NRA because it intends to pay allowed claims in full evades the issue: paying allowed claims in full becomes improbable if the NRA's opportunity to reorganize is lost at the outset of the case because it is forced into a morass of litigation.

And while granting stay relief to Cox would severely prejudice the Debtors' administration of the Chapter 11 Cases and reorganization efforts, it would not give Cox the result he really seeks – immediate payment of his purported claim.[17]  Allowing Cox to proceed to Arbitration would only result in a partial resolution of the issues because the Arbitration will not resolve all claims of the estate and even after resolution of the pending claims, Cox would have to return to this Court to participate in the reorganization in order to receive a distribution on account of any judgment,

---

[16] Furthermore, the factual and legal issues in the Arbitration overlap with potential Chapter 5 claims.

[17] *See* Mot., p. 5, ¶ 17 (arguing that Cox has been prejudiced by delay because ███████████ ███████████████████████████████████████ (emphasis in original).

which could only be paid pursuant to a confirmed plan or order of this Court. Accordingly, the first *Curtis* factor—whether stay relief will result in a complete resolution of the issues—weighs against granting relief from the automatic stay.[18]

Consideration of these factors compels a conclusion that a balancing of the actual prejudice to the Debtors, their estates, and their creditors against the alleged hardship to Cox if he is not allowed to proceed to Arbitration mandates that the Motion be denied. The mere fact that the Arbitration was "trial ready" does not outweigh the overarching objective of the automatic stay to give the Debtors a respite so that they may seek to reorganize.

## V. <u>PRAYER</u>

For the foregoing reasons, tshe Debtors respectfully request that the Court (1) find, consistent with the ruling of the Arbitrator, that the automatic stay applies to the NRA's counterclaims and (2) deny the request for modification of the automatic stay.

---

[18] The third, fourth, fifth, sixth, eighth, and ninth factors identified in *Curtis* are neutral or only slightly relevant. The disputes within the Arbitration do not require a specialized tribunal and the tribunal therefore possesses no greater expertise to hear the causes of action than the Court, which weighs slightly against stay relief. No insurance carrier has assumed financial responsibility for defending the NRA, and thus, the full cost and time of the Cox Arbitration will be borne entirely and solely by the NRA. While this factor weighs against stay relief, it is subsumed within the second, tenth, and twelfth factors (interference with the bankruptcy case, considerations of judicial economy and the expeditious and economical determination of litigation, and the balance of harms). The Arbitration does not involve the NRA as a fiduciary or bailee, making the third and sixth factors irrelevant. The eighth factor is irrelevant because the Debtors have not assessed whether any judgment claim arising from Arbitration would be subject to equitable subordination under Section 510(c) of the Bankruptcy Code. The ninth factor is irrelevant because no judicial lien avoidable under Section 522(f) would result from a judgment in favor of Cox.

Dated: February 8, 2021

Respectfully submitted,

*/s/ Patrick J. Neligan*
Patrick J. Neligan, Jr., SBN 14866000
Douglas J. Buncher, SBN 03342700
John D. Gaither, SBN 24055516
**NELIGAN, LLP**
325 North St. Paul, Suite 3600
Dallas, Texas 75201
Telephone: 214-840-5333
Facsimile: 214-840-5301
pneligan@dneliganlaw.com
dbuncher@neliganlaw.com
jgaither@neliganlaw.com
**Proposed Counsel for Debtors**

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on the 8th day of February 2021, a redacted copy of the foregoing was served via first class U.S. mail on the parties named on the attached Master Service List.

/s/ Douglas J. Buncher
Douglas J. Buncher

4849-4172-7963, v. 4

# EXHIBIT A

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| IN RE: | § | **CHAPTER 11** |
| | § | |
| | § | |
| **NATIONAL RIFLE ASSOCIATION OF** | § | **CASE NO. 21-30085-hdh11** |
| **AMERICA and SEA GIRT LLC** | § | |
| | § | |
| **DEBTORS**[1] | § | **JOINTLY ADMINISTERED** |

**DECLARATION OF SVETLANA M. EISENBERG IN SUPPORT OF DEBTORS'**
**OPPOSITION TO MOTION OF CHRISTOPHER W. COX**
**TO MODIFY THE AUTOMATIC STAY**

I, Svetlana M. Eisenberg, pursuant to 28 U.S.C. § 1746, state:

1.      I am a partner at Brewer, Attorneys and Counselors ("BAC").  My office is located at 750 Lexington Avenue, 14th Floor, New York, New York  10022.

2.      I am an attorney duly licensed in and am a member in good standing of the bar for the State of New York.  There are no disciplinary proceedings against me in any jurisdiction. I submit this declaration in support of the opposition of Sea Girt, LLC ("Sea Girt") and the National Rifle Association of America (the "NRA," and, together with Sea Girt, the "Debtors") to the *Motion (I) to Modify the Automatic Stay to Allow a Trial-Ready Arbitration to Proceed Against the National Rifle Association of America, and (II) for Related Relief* (Docket No. 63) (the "Motion").  I represent the National Rifle Association of America (the "NRA") in the arbitration proceeding at issue in the Motion.  Except as otherwise stated, I have personal

---

[1] The last four digits of the Debtors' taxpayer identification numbers are: 6130 (NRA) and 5681 (Sea Girt). The Debtors' mailing address is 11250 Waples Mill Road, Fairfax, Virginia 22030.

knowledge of each of the facts stated in this Declaration, which are true and correct. If called as a witness, I could and would testify as to the matters set forth herein.

3.       Attached as Exhibits 1, 2, 3, 4 and 5 are true and correct copies of

a.       Christopher Cox's First Amended Arbitration Claim (**Exhibit 1**);

b.       The NRA's Response With Counterclaims Against Christopher Cox (**Exhibit 2**);

c.       Email message from Mr. Cox's counsel dated January 15, 2021 to Judge Eyler and counsel for the NRA (**Exhibit 3**);

d.       Email message from counsel for the NRA dated January 16, 2021 to Judge Eyler and counsel for Mr. Cox (**Exhibit 4**); and

e.       Email message from Judge Eyler dated January 16, 2021 to counsel attaching an Order of the Arbitration Tribunal dated January 16, 2021 (**Exhibit 5**).

4.       As of the Petition Date, Mr. Cox's claims and the NRA's counterclaims were scheduled to be tried on January 18, 2021 before the Hon. James Eyler, an arbitrator with the International Institute for Conflict Prevention and Resolution in a trial expected to last approximately 10 days.

5.       Many of the hearing witnesses in the Arbitration are the same individuals within the organization who are focused on the transition to Chapter 11, including the operational impacts of a chapter 11 filing and the administrative requirements of the early stages of a chapter 11 case. It is anticipated that the NRA's trial witnesses will include more than ten witnesses (including Officers, Directors, and executives of the Association) who are focused on these chapter 11 cases.

6.       During the transition to chapter 11, much of the attention of the NRA's leadership and employees has been directed to a number of operational issues, including but not limited to, the use of the Debtors' existing cash management system, maintaining access to payment

processing services, ensuring the continuation of employee benefits and payroll, addressing inquiries of vendors, employees, members, and members of the media, compiling information for the Office of the United States Trustee, preparing the Debtors' Schedules of Assets and Liabilities, Statement of Financial Affairs, and initial Monthly Operating Reports, and working with the Debtors' proposed Chapter 11 Counsel to develop a restructuring strategy.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct and that all statements I make in this declaration are based on my personal knowledge unless otherwise noted herein.

Executed on February 8. 2021                By:  /s/ Svetlana M. Eisenberg
                                            Name: Svetlana M. Eisenberg

4849-2942-5627, v. 1

# EXHIBIT 1
# (To Be Filed Under Seal)

# EXHIBIT 2
## (To Be Filed Under Seal)

# EXHIBIT 3
## (To Be Filed Under Seal)

# EXHIBIT 5

## (To Be Filed Under Seal)

# EXHIBIT 4
## (To Be Filed Under Seal)

**In re: Sea Girt LLC - Case No. 21-30080**
**In re: National Rifle Association of America - Case No. 21-30085**

**MASTER SERVICE LIST**

**Debtor/Debtor's Counsel**

National Rifle Association of America
11250 Waples Mill Road
Fairfax, VA  22030

Neligan LLP
Attn:   Patrick J. Neligan
        Douglas J. Buncher
        John D. Gaither
325 N. St. Paul, Suite 3600
Dallas, TX 75201
Email: pneligan@neliganlaw.com
        dbuncher@neliganlaw.com
        jgaither@neliganlaw.com

Sea Girt LLC
11250 Waples Mall Road
Fairfax, VA  22030

**U.S. Trustee**

Office of the United States Trustee
Attn: Lisa Young
Earle Cabell Federal Building
1100 Commerce Street, Room 976
Dallas, TX  75242

**Secured Creditors**

Atlantic Union Bank
Attn: Andrew Kalin
1800 Robert Fulton Drive, Suite 100
Reston, VA  20191
Email: andrew.kalin@atlanticunionbank.com

**20 Largest Unsecured Creditors**

Ackerman McQueen, Inc.
1601 Northwest Expressway
Oklahoma City, OK  73118-1438

Membership Marketing Partners LLC
11250 Waples Mill Road, Suite 310
Fairfax, VA  22030

Gould Paper Corporation
Attn: Warren Connor
99 Park Avenue, 10th Floor
New York, NY  10016

Under Wild Skies
201 N. Union Street, Suite 510
Alexandria, VA  22314

Quadgraphics
N63W23075 Hwy. 74
Sussex, WI  53089

Membership Advisors Public REL
11250 Waples Mill Road, Suite 310
Fairfax, VA  22030

Mercury Group
1601 NW Expressway, Suite 1100
Oklahoma City, OK  73118

Image Direct Group LLC
200 Monroe Avenue, Building 4
Frederick, MD  21701

TMA Direct, Inc.
12021 Sunset Hills Road, Suite 350
Manassas, VA  20109

Membership Advisors Fund Raising
11250 Waples Mill Road, Suite 310
Fairfax, VA  22030

Krueger Associates, Inc.
105 Commerce Drive
Aston, PA  19014

Infocision Management Corp.
325 Springside Drive
Akron, OH  44333

Valtim Incorporated
P.O. Box 114
Forest, VA  24551

Communications Corp of America
Attn:  Judy Reid
13195 Freedom Way
Boston, VA  22713

Salesforce.Com, Inc.
One Mark St. – The Landmark, Suite 300
San Francisco, CA  94105

Speedway Motorsports, Inc.
P.O. Box 600
Concord, NC  28026

Google
1600 Amphitheatre Parkway
Mountain View, CA  94043-1351

United Parcel Services
P.O. Box 7247-0244
Philadelphia, PA  19170

Stone River Gear, LLC
P.O. Box 67
Bethel, CT  06801

CDW Computer Centers, Inc.
P.O. Box 75723
Chicago, IL  60675

## Government Agencies

Internal Revenue Service
P.O. Box 7346
Philadelphia, PA  19101-7346

Office of Attorney General (NY)
Attn:  Letitia James
28 Liberty Street
New York, NY  10005

Office of Attorney General (DC)
Attn: Karl A. Racine
441 Fourth St., N.W., Suite 600-South
Washington, DC 20001

Office of Attorney General (TX)
Attn: Ken Paxton
P.O. Box 12548
Austin, TX 78711-2548

Mahmooth A. Faheem
Lori A. Butler
Pension Benefit Guaranty Corporation
1200 K NW
Washington, DC 20005-4026
mahmooth.faheem@pbgc.gov
butler.lori@pbgc.gov
efile@pbgc.gov

## Notice of Appearance

Laurie A. Spindler
Linebarger Coggan Blair & Sampson, LLP
2777 N. Stemmons Freeway, Suite 1000
Dallas, TX 75207
dallas.bankruptcy@publicans.com

G. Michael Gruber
Dorsey & Whitney LLP
300 Crescent Court, Suite 400
Dallas, TX 75201
gruber.mike@dorsey.com

Brian E. Mason
Dorsey & Whitney LLP
300 Crescent Court, Suite 400
Dallas, TX 75201
mason.brian@dorsey.com

H. Joseph Acosta
Dorsey & Whitney LLP
300 Crescent Court, Suite 400
Dallas, TX 75201
acosta.joseph@dorsey.com

Natalie L. Arbaugh
Winston & Strawn LLP
2121 N. Pearl Street, Suite 900
Dallas, TX 75201
narbaugh@winston.com

Thomas M. Buchanan
Matthew Saxon
Winston & Strawn LLP
1901 L St., N.W.
Washington, DC 20036
tbuchana@winston.com
msaxon@winston.com

David Neier
Winston & Strawn LLP
200 Park Avenue
New York, NY 10166-4193
dneier@winston.com

Tara LeDay
McCreary, Veselka, Bragg & Allen, P.C.
P.O. Box 1269
Round Rock, TX 78680
tleday@mvbalaw.com

Michael I. Baird
Pension Benefit Guaranty Corporation
1200 K St. NW
Washington, DC  20005-4026
baird.michael@pbgc.gov
efile@pbgc.gov

Mark Ralston
Fishman Jackson Ronquillo PLLC
Three Galleria Tower
13155 Noel Road, Suite 700
Dallas, TX  75240
mralston@fjrpllc.com

Robert Lapowsky
Stevens & Lee, P.C.
620 Freedom Business Center, Suite 200
King of Prussia, PA  19406
rl@stevenslee.com

Joe E. Marshall
Marshall Law
2626 Cole Avenue, Suite 300
Dallas, TX  75204
jmarshall@marshalllaw.net

M. Jermaine Watson
Joshua N. Eppich
H. Brandon Jones
Clay M. Taylor
J. Robertson Clarke
Bonds Ellis Eppich Schafer Jones LLP
420 Throckmorton Street, Suite 1000
Fort Worth, TX  76102
jermaine.watson@bondsellis.com
joshua@bondsellis.com
clay.taylor@bondsellis.com
brandon@bondsellis.com
robbie.clarke@bondsellis.com

Brandon R. Freud
Chuhak & Tecson, P.C.
30 S. Wacker Drive, Suite 2600
Chicago, IL  60606
bfreud@chuhak.com

Kevin T. White
Director – Legal
Quad/Graphics, Inc.
601 Silveron Blvd., Suite 200
Flower Mound, TX  75028
ktwhite@quad.com

David W. Giattino
Stevens & Lee, P.C.
919 Market Street, Suite 1300
Wilmington, DE 19801
dwg@stevenslee.com

Duane M. Geck
Donald H. Cram
Severson & Werson, P.C.
One Embarcadero Center, Suite 2600
San Francisco, CA  94111
dmg@severson.com
dhc@severson.com