**G. Michael Gruber**
State Bar. No. 08555400
gruber.mike@dorsey.com
**H. Joseph Acosta**
State Bar No. 24006731
acosta.joseph@dorsey.com
**Brian E. Mason**
State Bar No. 24079906
mason.brian@dorsey.com
**Dorsey & Whitney LLP**
300 Crescent Court, Suite 400
Dallas, TX 75201
Tel.: (214) 981-9900
Fax: (214) 981-9901
*Attorneys for Ackerman McQueen, Inc.*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | § | **CHAPTER 11** |
| | § | |
| **NATIONAL RIFLE ASSOCIATION** | § | **Case No. 21-30085-hdh-11** |
| **OF AMERICA and SEA GIRT LLC,** | § | |
| | § | |
| **DEBTORS.** | § | **JOINTLY ADMINISTERED** |

## ACKERMAN MCQUEEN, INC.'S MOTION TO DISMISS THE CHAPTER 11 BANKRUPTCY PETITION, OR, IN THE ALTERNATIVE, MOTION FOR THE APPOINTMENT OF A CHAPTER 11 TRUSTEE, AND BRIEF IN SUPPORT

COMES NOW Ackerman McQueen, Inc., the largest unsecured creditor in the above-captioned case ("*AMc*" or "*Creditor*"), and hereby files its *Motion to Dismiss the Chapter 11 Bankruptcy Petition, or, in the Alternative, Motion for the Appointment of a Chapter 11 Trustee, and Brief in Support* (the "*Motion*"), pursuant to Sections 102, 1112, 1104 of the Bankruptcy Code, 11 U.S.C. §§ 101-1532 (the "*Bankruptcy Code*"), based upon bad faith, cause, and bankruptcy fraud.

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ iii

I.      SUMMARY ..........................................................................................................1

II.     JURISDICTION AND VENUE ...........................................................................3

III.    BACKGROUND FACTS ......................................................................................3

    A.      The NRA's Stated Purpose for Filing Bankruptcy. .........................................3

    B.      The NRA's Choice to File a Series of Litigations Actively Endangers the
        Solvency of the NRA. ......................................................................................6

    C.      The NRA's Gross Mismanagement, Breach of Fiduciary Duties, Fraud and
        Misspending Has Spiraled Out of Control. .....................................................8

    D.      The Timing of the Litigation Belies the NRA's Fraudulent Intent. ..............11

IV.     ARGUMENTS AND AUTHORITIES ................................................................14

    A.      The NRA's Bad Faith Requires Dismissal Under 11 U.S.C. § 1112(b) for
        "Cause" and the Court's Inherent Power to Prevent Abuse Under 11 U.S.C. §
        105..................................................................................................................14

    B.      In the Alternative to Dismissal, the Court Should Appoint a Trustee under
        Section 1104 for "Cause" and in the Interest of Creditors. ...........................37

V.      PRAYER ............................................................................................................40

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Durland v. United States*, 161 U.S. 306 (1896) .......................................................................... 29

*In re Al Copeland Enters., Inc.*, 991 F.2d 233 (5th Cir. 1993) ..................................................... 26

*In re Albany Partners, Ltd.*, 749 F.2d 670 (11th Cir. 1984) ........................................................ 14

*In re Alexandra Trust*, 526 B.R. 668, 675 (Bankr. N.D. Tex. 2015) ...................................... 24, 32

*In re Am. Coastal Energy*, 399 B.R. 805 (Bankr. S.D. Tex. 2009) ........................................ 26, 27

*In re Antelope Techs., Inc.*, 431 Fed. Appx. 272, 273 (5th Cir. 2011) ............................ 16, 17, 21

*In re Art Midwest, Inc.*, No. 04-91225-RFN-11, 2006 Bankr. LEXIS 12 (Bankr. N.D. Tex. Jan. 5, 2006) ..................................................................................................................................... 15

*In re Asanda Air II LLC*, 600 B.R. 714 (Bankr. N.D. Ga. 2019) .................................................. 35

*In re Avalon Hotel Partners, LLC*, 302 B.R. 377 (Bankr. D. Or. 2003) ....................................... 16

*In re Brazos Emergency Physicians Ass'n, P.A.*, 471 Fed. Appx. 393 (5th Cir. 2012) ............... 15

*In re Briggs-Cockerham, L.L.C.*, No. 10-34222-BJH-11, 2010 Bankr. LEXIS 4132 (Bankr. N.D. Tex. Nov. 23, 2010) ................................................................................................................. 15

*In re Cardwell*, No. 09-43121, 2017 Bankr. LEXIS 1412 (Bankr. E.D. Tex. May 25, 2017) ..... 29

*In re Cedar Short Resort, Inc.*, 235 F.3d 375 (8th Cir. 2000) ............................................... *passim*

*In re Charles George Land Reclamation Tr.*, 30 B.R. 918 (Bankr. D. Mass. 1983) ................... 28

*In re Charter First Mtg., Inc.*, 42 B.R. 38 (Bankr. D. Or. 1984) ................................................. 28

*In re CoServ, L.L.C.*, 273 B.R. 487 (Bankr. N.D. Tex. 2002) ..................................................... 37

*In re Draughon Training Inst., Inc.*, 119 B.R. 921 (Bankr. W.D. La. Apr. 10, 1990) ..... 26, 27, 28

*In re Elmwood Dev. Co.*, 964 F.2d 508 (5th Cir. 1992) ............................................. 14, 15, 16, 17

*In re Hall, Bayoutree Assocs., Ltd.*, 939 F.2d 802 (9th Cir. 1991) ............................................. 35

*In re Houghton Mifflin Harcourt Publ'g Co.*, 474 B.R. 122 (Bankr. S.D.N.Y. 2012) ................ 34

*In re Humble Place Joint Venture*, 936 F.2d 814 (5th Cir. 1991) ......................................... 14, 16

*In re Jacobsen*, 609 F.3d 647 (5th Cir. 2010) ............................................................................ 15

*In re Kickapoo Kennels, LLC,* No. 12-39321-H3-11, 2013 Bankr. LEXIS 2499 (Bankr. S.D. Tex. Jun. 19, 2013) ............................................................................................................................... 16

*In re Leslie*, No. 98-35386-H3-11, 1999 Bankr. LEXIS 2113 (Bankr. S.D. Tex. Feb. 11, 1999) ................................................................................................................................................. 16, 25

*In re Little Creek Dev. Co.*, 779 F. 2d 1068 (5th Cir. 1986) ................................................. 14, 15

*In re Marsch*, 36 F.3d 825 (9th Cir. 1994) .......................................................................... 14, 25

*In re Mense*, 509 B.R. 269 (Bankr. C.D. Cal. 2014) ................................................................ 16

*In re Metropolitan Realty Corp.*, 433 F.2d 676 (5th Cir. 1970) ............................................... 14

*In re Mirant Corp.*, No. 03-46590, 2005 Bankr. LEXIS 1686 (Bankr. N.D. Tex. Jan. 26, 2005) ................................................................................................................................................. 16, 20

*In re Northstar Offshore Grp., LLC*, No. 16-34028, 2020 Bankr. LEXIS 1811 (Bankr. S.D. Tex. Jul. 10, 2020) ............................................................................................................................... 27

*In re Office Prods. of Am., Inc.*, 136 B.R. 983 (Bankr. W.D. Tex. 1992) .................................. 37

*In re Paolini,* 312 B.R. 295 (Bankr. E.D. Va. 2004) .................................................................. 16

*In re Royal Alice Props., LLC*, 2020 Bankr. LEXIS 2354 (Bankr. E.D. La. Sep. 4, 2020) ......... 37

*In re SGL Carbon Corp.*, 200 F.3d 154, 156-57 (3d Cir. 1999) .......................................... *passim*

*In re SGL Carbon*, Case No. 98-02779-JJF (Bankr. D. Del. Dec. 16, 1998) ............................. 18

*In re Sherwood Enters., Inc.*, 112 B.R. 165 (Bankr. S.D. Tex. 1989) ........................................ 16

*In re Tex. Pig Stands, Inc.*, 610 F.3d 937 (5th Cir. 2010) .......................................................... 26

*In re Victory Constr. Co., Inc.*, 9 B.R. 549 (Bankr. C.D. Cal. 1981) ......................................... 14

*In re Winshall Settlor's Tr.*, 758 F.2d 1136 (6th Cir. 1985) ...................................................... 14

*In re Zed, Inc.*, 20 B.R. 462 (Bankr. N.D. Cal. 1982) ..................................................... 31, 34, 35

*Investors Grp., LLC v. Pottorff*, 518 B.R. 380 (N.D. Tex. 2014) ...................................... 15, 16, 33

*Ky. Emple. Ret. Sys. v. Seven Cntys. Servs., Inc.*, 823 Fed. App'x 300 (6th Cir. 2020) ... 26, 27, 28

*Midlantic Nat'l Bank v. N.J. Dep't of Envtl. Prot.*, 474 U.S. 494 (1986) .............................. 26, 27

*Palmer v. Dau*, No. 6:10-cv-248-Orl-19KRS, 2010 U.S. Dist. LEXIS 69329 (M.D. Fla. July 12, 2010) ................................................................................................................................ 35

*Phillips v. Illinois Cent. Gulf R.R.*, 874 F.2d 984 (5th Cir. 1989) ................................................. 35

*Pipkins-Thomas v. United States*, 223 Fed. Appx. 310 (5th Cir. 2007) ........................................ 15

*SEC v. Harris*, No. 3:09-CV-1809-B, 2016 U.S. Dist. LEXIS 51708 (N.D. Tex. Apr. 18, 2016) ................................................................................................................................ 26

*United States v. Chaker*, 820 F.3d 204 (5th Cir. 2016) ................................................................ 29

*United States v. Desantis*, 237 F.3d 607 (6th Cir. 2001) .............................................................. 29

*United States v. Keane*, 522 F.2d 534 (7th Cir. 1975) ................................................................. 29

*United States v. Louderman*, 576 F.2d 1383 (9th Cir. 1978) ....................................................... 29

*United States v. McNeive*, 536 F.2d 1245 (8th Cir. 1976) ........................................................... 29

*United States v. Spurlin*, 664 F.3d 954 (5th Cir. 2011) ............................................................... 29

*United States v. Spurlock*, 214 Fed. Appx. 382 (5th Cir. 2007) .................................................. 33

*United States v. Van Dyke*, 605 F.2d 220 (6th Cir. 1979) ............................................................ 29

**Statutes**

11 U.S.C. § 105 ............................................................................................................... 14, 15, 40

11 U.S.C. § 157 ......................................................................................................................... 40

11 U.S.C. § 362 ......................................................................................................................... 33

11 U.S.C. § 1104 ................................................................................................................. 36, 37

11 U.S.C. § 1112 ......................................................................................................... 14, 16, 25, 40

18 U.S.C. § 152 ......................................................................................................................... 29

18 U.S.C. § 157 ................................................................................................................... 28, 29

28 U.S.C. § 157 ..................................................................................................................... 3, 33

28 U.S.C. § 959 ............................................................................................................... 25, 26, 27

28 U.S.C. § 1334 ......................................................................................................................... 3

28 U.S.C. § 1406 .......................................................................................................... 34

28 U.S.C. § 1408 ..................................................................................................... 3, 34

28 U.S.C. § 1409 ............................................................................................................ 3

**Other Authorities**

1 J. Moore, A. Vestal & P. Kurland, Moore's Manual, Federal Practice and Procedure, § 7.13[1] (1990) ..................................................................................................................... 35

**Rules**

N-PCL 1002 .................................................................................................................. 26

NY CLS N-PCL § 907 ............................................................................................. 25, 26

## I.    <u>SUMMARY</u>

1.     The U.S. Supreme Court and virtually every Federal Circuit, including the Fifth Circuit, have held that companies that forthrightly claim they are solvent cannot manipulate the Bankruptcy Code for an illicit purpose, but rather must file a petition in good faith with a legitimate goal of reorganizing. This preliminary requirement is necessary to protect the integrity and equity of the bankruptcy courts. In this case, the National Rifle Association of America ("***NRA***") did not file this bankruptcy for a legitimate goal of reorganization.

2.     Simultaneously with its bankruptcy filing, the NRA released a host of carefully crafted, politically motivated messages, presumably to assuage any concerns from its membership, representing that it is as financially healthy as ever. By its own admission, the NRA filed this bankruptcy solely to escape the civil prosecution of claims by the New York Attorney General ("***NYAG***") that the NRA's management team, starting with Executive Vice President, Wayne LaPierre ("***LaPierre***), among other things, engaged in rampant self-dealing, breached their fiduciary duties, filed fraudulent tax returns with the state and federal government, had virtually no internal controls and if the controls interfered with the enrichment of executives, ignored best practices, actively obtained and improperly misspent trusted funds, and committed fraud on the public.[1]

3.     As part of this plan, the NRA formed a sham entity in Texas less than two months before filing for bankruptcy to manufacture venue, and is asking this Court to assist with its

---

[1] *See People of the State of New York v. NRA, et al.*, Index No. 451625/2020, State of New York, County of New York, [https://ag.ny.gov/sites/default/files/summons_and_complaint_1.pdf] (the "***Enforcement Action***"); *District of Columbia v. NRA Foundation and the NRA, Civil Action No.*, in the Superior Court for the District of Columbia, Civil Division, [https://oag.dc.gov/sites/default/files/2020-08/NRA-Foundation-Complaint-Redacted.pdf]. Pursuant to Federal Rule of Evidence 201, AMc requests that the Court take judicial notice of all filings and proceedings in the Enforcement Action.

reincorporation in Texas. However, this bankruptcy cannot achieve the NRA's illicit goal of dissolving in New York and reincorporating in Texas, as the NRA lacks the requisite approval from the NYAG or NY Supreme Court to dissolve, merge into, or consolidate with a foreign nonprofit incorporated in another state.

4.      The NRA further contends that it needs the protections of the bankruptcy court to consolidate litigation.   However, the NRA's self-imposed, wasteful, and destructive litigation largely stems from claims intentionally initiated by the NRA to deflect the spotlight off its own malfeasance.  This Rambo-style "litigation strategy" has done nothing more than enrich the NRA's counsel and public relations firm (the Brewer Firm)[2] (millions in legal fees *per month* since 2018)[3] and forced the NRA into its latest round of litigation roulette with this bankruptcy.  Unfortunately for the NRA, the law does not allow the NRA to reap the equitable protections of the bankruptcy courts to escape the litigation web it has spun.

5.      The NRA's acts and omissions mandate the dismissal of this bankruptcy on the grounds that the filing was made in bad faith.  It should also be dismissed for cause pursuant to section 1112 of the Bankruptcy Code because it exposes the NRA to bankruptcy fraud under 18 U.S.C. § 157, which proscribes a scheme or artifice to defraud innocent parties with the use of the bankruptcy system.

---

[2] Brewer Attorneys & Counselors (the "***Brewer Firm***").

[3] *See, e.g.*, Will Van Sant, *Ex-NRA Execs Fear Attorney is Shielding LaPierre at the Group's Expense*, TRACE (Nov. 24, 2020), https://www.thetrace.org/2020/11/nra-gun-lawsuits-bill-brewer-lapierre-attorney-legal-costs/ ("Since his hiring, Brewer has been the prime architect of at least 10 lawsuits that the NRA has filed, while also handling defense work and arbitration proceedings that followed the expulsion of top personnel who'd clashed with LaPierre. To date, Brewer has prevailed in only one of those 10 suits, a skirmish over legal bills. He's lost two cases, settled one, and the remainder are pending…the firm has collected upward of $50 million to date — a conservative estimate given how the firm's NRA workload has grown"). *See also* Stephen Gutowski, Twitter (May 11, 2019), https://twitter.com/StephenGutowski/status/1127299783813677056 (posting Lt. Col. Oliver North's letter to the NRA Board requesting independent review of the Brewer Firm's fees, which at the time were more than $19 million for roughly one year of representation).

6.      In the event the Court is not ready to dismiss this bankruptcy, AMc requests the Court appoint an independent chapter 11 trustee.  The bankruptcy estate is held in trust for the benefit of creditors, and the debtor-in-possession holds fiduciary duties towards the creditors.  It is impossible for the current NRA officers and its private counsel to competently or truthfully serve as a fiduciary to AMc (or its other litigation opponents) in light of the allegations of mismanagement against the NRA and its executives in the NYAG Enforcement Action, and in light of the wasteful and destructive litigation path the NRA has taken.  Thus, if dismissal is not appropriate at this time, AMc respectfully requests the Court appoint such a trustee.

## II.      JURISDICTION AND VENUE

7.      This Court has jurisdiction over the Bankruptcy Case and Motion pursuant to 28 U.S.C. §§ 157 and 1334.  Debtors assert that venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.  However, as set forth below, AMc disputes whether this Bankruptcy Case is appropriate.  This Motion constitutes a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

8.      The legal predicates for the relief sought herein are Sections 105, 1104 and 1112 of the Bankruptcy Code and Rules 1017, 2002, 9013, and 9014 of the Federal Rules of Bankruptcy Procedure.

## III.      BACKGROUND FACTS

### A.  The NRA's Stated Purpose for Filing Bankruptcy.

9.      On January 15, 2021 (the "***Petition Date***"), the NRA and its shell subsidiary, Sea Girt, LLC ("***Sea Girt***"), filed two voluntary petitions for relief under Title 11 of the Bankruptcy Code.[4]

---

[4] The separate petition filed by Sea Girt is herein referred to as "***Sea Girt Bankr.***"  Citations to the NRA's petition are referred to as "***NRA Bankr.***"

10. Simultaneously with the bankruptcy filings, the NRA's Chief Executive Officer, Executive Vice President, and long-term leader and spokesman, LaPierre, issued a statement to the NRA's five million members explaining that the NRA's purpose for the bankruptcy had nothing to do with the NRA's financial constraints:

> Today, the NRA announced **a restructuring plan that positions us** for the long-term and ensures out continued success as the nation's leading advocate for constitutional freedom – **free from the toxic political environment of New York**.
>
> **The plan can be summed up quite simply: We are DUMPING New York, and we are pursuing plans to reincorporate the NRA in Texas.**
>
> …
>
> You know that our opponents will try to seize upon this news and distort the truth. Don't believe what you read from our enemies. The NRA is not 'bankrupt' or 'going out of business.' The NRA is not insolvent. **We are as financially strong as we have been in years**.
>
> But they know today's announcement makes us bigger, stronger and more prepared for the fight for freedom.
>
> **We are leaving the state of an attorney general** who, just a few months ago, vowed to put us out of business through an abuse of legal and regulatory power.
>
> …
>
> **Under this plan, we seek protection from New York officials** who illegally abused and weaponized the powers they wield against the NRA and its members.
>
> …
>
> **This plan** actually improves our business. It **protects us from costly, distracting and unprincipled attacks from anti-2A politicians aimed at attacking the NRA** because we are a potent political force.[5]

---

[5] *See Letter from Wayne*, WWW.NRAFORWARD.ORG (Jan. 15, 2021), https://www.nra forward.org/waynesletter (letter to NRA's five million members explaining the bankruptcy intent); *see also* Danny Hakim & Mary Williams Walsh, *The N.R.A. Wants to 'Dump' Its Regulators via Bankruptcy. Will It Succeed?*, NEW YORK TIMES (Jan. 22, 2021), https://www.nytimes.com/2021/01/21/business/nra-bankruptcy-new-york.html. On January 15, 2021, the same day the NRA filed the Bankruptcy Case, one of its board members (Bob Barr, former Republican congressman from Georgia) clarified in a TV interview that the filing "has nothing to do with the N.R.A.s financial posture, which is

11.     Other high-ranking NRA officials confirmed the NRA's justification for its bankruptcy. The NRA's First Vice President, lawyer Charles Cotton, shared similar unequivocal sentiments that the NRA's bankruptcy is for litigation strategy:

> In an interview, NRA board member Charles Cotton made clear that the bankruptcy filing was motivated by litigation and regulatory scrutiny in what he called 'corrupt New York' – not financial concerns.

> 'We've got to get in a state where we can operate without that kind of undue weaponizing of governmental agencies, and frankly to get all the litigation in a place where we've got an even shake,' Cotton told the Associated Press.[6]

12.     In a Question and Answer format published to its members through its website, the NRA further explained its improper purpose for the bankruptcy:

> By filing for chapter 11, is the NRA admitting it mismanaged donor funds?

> Not at all…**This action is necessitated primarily by one thing: the unhinged and political attack against the NRA by the New York Attorney General.**[7]

13.     Importantly, the NRA's proposed special counsel, the Brewer Firm, who has been at the forefront of the NRA's messaging since its arrival in 2018, employs an entire public relations department to its law firm, and its patriarch, William A. Brewer III ("***Brewer***"), has repeatedly made clear how the Brewer Firm is just as much a public relations firm as it is a law firm.[8] At the first day hearings, the Brewer Firm attempted to walk back some of the public statements made by

---

very, very strong. It simply is a legal vehicle to move under protection of federal laws, to escape the abuse by the New York authorities." *See id.*

[6] *See* Paul J. Weber & Michael R. Sisak, *NRA Declares Bankruptcy, Plans to Incorporate in Texas*, ASSOCIATED PRESS (Jan. 15, 2021), https://apnews.com/article/new-york-gun-politics-coronavirus-pandemic-texas-cbe5845c17e 18eed8679d6daec75ff75.

[7] *See Questions & Answer*, www.nraforward.org, https://www.nraforward.org/questionsanswers, *last accessed* Feb. 1, 2021 (emphasis added).

[8] *See Public Affairs*, WWW.BREWERATTORNEYS.COM, https://www.brewerattorneys.com/the-art-of-advocacy, *last accessed* Feb. 1, 2021 (the firm "position[s] [its] clients to prevail both within and outside the courtroom" and "pioneered … an Issues & Crisis Management group").

LaPierre and other executives relating to the NRA's admitted non-financial purpose for filing for bankruptcy:

> I only want to briefly address some of the media – some of the press statements Mr. Sheehan cites, that the NRA is dumping New York. We want to be clear that those statements, as casual though they were, don't amount to an expressed intent to elude or obstruct the particular litigation in which the oral arguments are scheduled tomorrow.[9]

Yet, the Brewer Firm failed to disclose to the Court that it was the one that actually drafted the public statements, or, at the very least, was intimately involved in their preparation and dissemination to the media.[10]

## B. The NRA's Choice to File a Series of Litigations Actively Endangers the Solvency of the NRA.

14. Since 2018, when the NRA and LaPierre hired the Brewer Firm, the NRA has embarked on a scorched-earth litigation strategy designed to identify various scapegoats for its decades-long fraud and mismanagement and to keep Brewer's promise to LaPierre that he was going to keep him out of jail.[11]

---

[9] First Day Motions Hr'g Tr. at 18:25-19:6 (Jan. 20, 2021).

[10] *See, i.e.*, *NRA Forward*, www.nraforward.org, https://www.nraforward.org/press-release, *last accessed* Feb. 5, 2021; *NRA Legal Facts*, www.nralegalfacts.org, https://www.nralegalfacts.org/copy-of-about-the-nra-s-case, *last accessed* Feb. 5, 2021.

[11] *See NRA v. AMc, et al.*, Civil Action No. 3:19-cv-02074 (N.D. Tex.) (the "***Texas Action***"), ECF 141 at Ex. B, ¶ 17 ("Mr. LaPierre stated numerous times that Mr. Brewer was the only person that was going to keep him out of jail."), ¶ 14 ("Mr. LaPierre explained that Mr. Brewer was going to be gone in 30-60 days anyway because he was going to have everything resolved with the New York Attorney General. During the meeting, Mr. LaPierre repeatedly said that Mr. Brewer was the only person that could save the NRA from the New York Attorney General, that Mr. Brewer had some key relationships in the State of New York, and that Mr. Brewer "knew how to fix this." When I asked Mr. LaPierre what he meant by Mr. Brewer's knowing "how to fix this," Mr. LaPierre responded that "he just is," and reaffirmed that Mr. Brewer was going to leave AMc alone."); Ex. C, ¶ 10 ("During another meeting in January 2019 attended by Mr. LaPierre, Angus, Revan, Melanie, and Nader, Mr. LaPierre stated on numerous occasions that Mr. Brewer was the only person that was going to keep him out of jail. In response to that, Angus, Melanie, and I asked Mr. LaPierre why he should be concerned about going to jail. Mr. LaPierre stated on three separate occasions to me and everyone in the room that, "you don't know what you don't know.").

15. The NRA has instituted a bevy of litigation against numerous parties, including four lawsuits against AMc filed over a six-month period, all of which still await resolution.[12] In less than three years, the NRA has instigated dozens of lawsuits, including actions against Governor Cuomo of New York (two separate lawsuits); New York Attorney General Letitia James (two separate lawsuits); the City of Los Angeles, California; the City of San Francisco, California; the County of Santa Clara, California; the Governor of New Mexico; the Governor of California; Fairfax County, Virginia; Lt. Col. Oliver North, the NRA's former President; and Chris Cox ("**Cox**") (arbitration against the NRA's former chief lobbyist) (collectively, the "**Lawsuits**").[13] Not surprisingly, the NRA is represented by the Brewer Firm in virtually all of these cases.[14]

16. Now, the NRA wants to use this self-created quagmire of litigation, primarily created by the Brewer Firm, as justification for filing bankruptcy. This case is preceded by another legal "Hail Mary," since the NRA is already inappropriately trying to delay the progress of these cases by purportedly seeing to consolidate its lawsuits in Federal multi-district litigation.

17. On October 20, 2020, the NRA filed a *Motion to Transfer Cases for Coordinated or Consolidated Pre-Trial Proceedings pursuant to 28 U.S.C. § 1407* in the matter styled *In re: National Rifle Association Business Expenditures Litigation*, MDL Docket No. 145 (the "**MDL**").[15] The NRA moved to consolidate four lawsuits that were unrelated. All other parties in those four lawsuits opposed consolidation, including AMc, for similar reasons as they oppose this Bankruptcy Case—because the NRA is merely attempting to delay the litigation it brought upon

---

[12] *NRA v. AMc, et al.*, Circuit Court of Virginia, Cause CL19001757; *NRA v. AMc, et al.*, Circuit Court of Virginia, Cause CL19002067; *NRA v. AMc, et al.*, Circuit Court of Virginia, Cause 19002886 (collectively, the "**Virginia Action**"); the Texas Action.
[13] *See* ECF 63 (Christopher Cox's Motion to Modify the Automatic Stay).
[14] *See* ECF 84 at Ex. B, Schedule 1 (NRA's Application to Employ the Brewer Firm).
[15] *See* MDL, ECF 1.

itself. Specifically, the NRA has argued that the NYAG's *state* Enforcement Action was the primary basis to consolidate the *federal* cases into the Northern District of Texas.[16] According to the NRA, after learning the MDL consolidation was opposed, it filed this Bankruptcy Case and explained that the primary basis was to consolidate to the NYAG Enforcement Action.[17] On February 4, 2021, the United States Judicial Panel on Multidistrict Litigation denied the NRA's motion to consolidate.[18]

### C. **The NRA's Gross Mismanagement, Breach of Fiduciary Duties, Fraud and Misspending Has Spiraled Out of Control.**

18. On August 6, 2020, the NYAG filed its 169-page Complaint in the Enforcement Action against the NRA, LaPierre, and other current and former high-ranking NRA executives for breach of fiduciary duty, gross mismanagement, wrongful related-party transactions, whistleblower violations, false reporting, self-dealing, unjust enrichment, and other claims. According to the NYAG's Complaint:

> For nearly three decades … Wayne LaPierre … has exploited the organization for his financial benefit, and the benefit of a close circle of NRA staff, board members, and vendors. Contrary to his statutory duties of care, loyalty and obedience to the mission of the charity, LaPierre has undertaken a series of actions to consolidate his position; to exploit that position for his personal benefit and that of his family; to continue, by use of a "secret poison pill contract," his employment even after removal and ensuring NRA income for life; and to intimidate, punish, and expel anyone at a senior level who raised concerns about his conduct. The effect has been to divert millions of dollars away from the charitable mission…[19]

Those millions of dollars included expenses for LaPierre's personal benefit that "violated NRA policy, including private jet travel for purely personal reasons; trips to the Bahamas to vacation on

---

[16] *Id.*
[17] *Compare* MDL, ECF 1 at 2-5, 8 *with* NRA Bankr., ECF 28 ¶¶ 1-2, 16.
[18] MDL, ECF 45.
[19] *See* Enforcement Action Compl. at 1 ¶ 2 [https://ag.ny.gov/sites/default/files/summons_and_complaint_1.pdf].

a yacht owned by the principal of numerous NRA vendors…[and] lucrative consulting contracts for ex-employees and board members…"[20]

19.     When employees, board members and their NRA-authorized counsel, and even the former NRA President questioned LaPierre's actions (or Brewer's involvement in, and direction of, those actions), the questions "were quashed or ignored."[21] Even worse, "LaPierre retaliated against" them, despite formal whistleblower complaints.[22]

20.     But LaPierre did not do it alone. Joshua Powell ("***Powell***"), LaPierre's former right-hand man and Chief of Staff, along with the Brewer Firm were "in charge of the NRA's compliance efforts."[23] Powell soon became the "Senior Strategist"—a newly created position—to coordinate with the Brewer Firm "in its campaign against the State of New York,"[24] *i.e.*, the Enforcement Action.

21.     In turn, LaPierre did not seek bids from other lawyers or law firms to serve in the NRA's purported compliance efforts, "did not identify any metrics or analytics that he applied in making the decision to retain the Brewer Firm," and "did not review the financial terms of the Brewer engagement and did not 'get into' any consideration of project-based pricing as opposed to hourly-based pricing."[25] LaPierre left these issues to the General Counsel's discretion.[26] Unfortunately, General Counsel John Frazer ("***Frazer***") had "less than two years of experience in private practice, and little experience engaging or negotiating with outside counsel for large-scale

---

[20] *Id*. at 35 ¶ 140.
[21] *Id*. at 4 ¶ 10.
[22] *Id*. at 4 ¶ 10.
[23] *Id*. at 58 ¶ 239.
[24] *Id*. at 58 ¶ 240.
[25] *Id*. at 109 ¶ 456.
[26] *Id*. at 109 ¶ 456.

litigation and internal investigation work."[27] Frazer approved the Brewer Firm's estimated monthly fees of $1.25 million.[28] Upon information and belief, the Brewer Firm has charged the NRA at least $60 million since 2018.[29]

22.  That was just the start. The NYAG has alleged LaPierre and other NRA officers directly and routinely abused their authority by improperly being reimbursed for personal expenses, including private jet travel and trips to the Bahamas,[30] disregarded NRA policies,[31] engaged in self-dealing transactions,[32] allowed excess and unauthorized compensation to themselves,[33] misreported to the IRS,[34] hired disqualified officers,[35] engaged in bribes,[36] permitted lack of oversight by the audit committee,[37] hired criminals to work in the executive office,[38] negligently allowing the NRA to enter into multi-million dollar oral contracts,[39] and entered into multi-million dollar consulting agreements with terminated officers.[40]

23.  The NYAG Complaint indicates the degree to which other insiders were complicit in failing to comply with audit committee requirements,[41] lack of sufficient oversight by the audit committee,[42] providing materially false and misleading statements to the NYAG,[43] failing to

---

[27] *Id.* at 109 ¶ 457.

[28] *Id.* at 109 ¶ 457.

[29] *See* Stephen Gutowski, Twitter (May 11, 2019), https://twitter.com/StephenGutowski/status/11272997838 13677056 (posting Lt. Col. Oliver North's letter to the NRA Board requesting independent review of the Brewer Firm's fees, which at the time were more than $19 million for roughly one year of representation).

[30] *See* Enforcement Action Compl. at ¶¶ 140, 150-175, 190.

[31] *Id.* at ¶ 239.

[32] *Id.* at ¶¶ 141, 221, 259-63, 266, 365, 430.

[33] *Id.* at ¶¶ 142, 243-46, 421.

[34] *Id.* at ¶¶ 434, 436, 439-43.

[35] *Id.* at ¶ 457.

[36] *Id.* at ¶¶ 228-30, 400-01.

[37] *Id.* at ¶ 233.

[38] *Id.* at ¶ 283.

[39] *Id.* at ¶¶ 252-58.

[40] *Id.* at ¶¶ 339-43, 346-53.

[41] *Id.* at ¶¶ 278-79.

[42] *Id.* at ¶¶ 476-80.

[43] *Id.* at ¶¶ 281, 547-48.

respond to whistleblower complaints,[44] failing to review related party transactions,[45] audit committee failure to oversee external auditors,[46] failing to comply with officer and director compliance programs,[47] and improper management of institutional funds under New York law.[48]

24.　　If the NRA President or board members raised concerns about the engagement, fees, and activities of the Brewer Firm (which exceeded $1.5 million monthly), they were quickly pushed out of the organization.[49]

25.　　As part of the Enforcement Action, the NYAG seeks to dissolve the NRA based upon its "pattern of conducting its business in a persistently fraudulent or illegal manner, abusing its powers contrary to public policy of New York and its tax exempt status, and failing to provide for the proper administration of its trust assets and institutional funds…"[50] The NYAG also seeks restitution from LaPierre and the other individual defendants, to remove LaPierre as director and EVP, and to enjoin the individual defendants from service in any fiduciary capacity for any charitable or nonprofit organization in New York, among other relief.[51]

**D.　The Timing of the Litigation Belies the NRA's Fraudulent Intent.**

26.　　In a calculated effort to avoid the NYAG Enforcement Action and manufacture venue, the NRA started planning to incorporate this bankruptcy into its litigation strategy. On November 24, 2020, the NRA formed Sea Girt as a Texas limited liability company,[52] apparently

---

[44] *Id*. at ¶¶ 484-90.
[45] *Id*. at ¶¶ 498-508.
[46] *Id*. at ¶¶ 518-31.
[47] *Id*. at ¶¶ 534-43.
[48] *Id*. at ¶¶ 549-59.
[49] *Id*. at ¶¶ 452-474. *See also* Will Van Sant & Daniel Nass, *The NRA Exodus: Who Left the Organization During a Year of Upheaval*, THE TRACE (Mar. 2, 2020), https://www.thetrace.org/2020/03/nra-departures-timeline-wayne-lapierre/.
[50] *See* Enforcement Action Compl. at 5 ¶ 12.
[51] *Id*. at 5-6 ¶ 13.
[52] *See* NRA Bankr. ECF No. 63-1, Ex., E, Certificate of Formation at 1.

to manufacture bankruptcy jurisdiction before a Texas Court. Based on the NRA's bankruptcy petition, the NRA owns 100% of the interests in Sea Girt and is its sole manager.[53] Sea Girt's only "creditors" are the NRA and the NRA's Deputy Chief of Staff,[54] and upon information and belief, Sea Girt has absolutely no operations, employees, or independent officers. Sea Girt further admits that it does not even have any noninsider creditors.

27. On or about January 7, 2021, the NRA Board supposedly passed a resolution that the NRA delegated to LaPierre "the power … to reorganize or restructure the affairs of the Association."[55] The Board also formed a "Special Litigation Committee" specifically to handle the Enforcement Action.[56] In consultation with the Brewer Firm and its "Special Litigation Committee" (*i.e.*, the Enforcement Action committee), LaPierre "determined that a Chapter 11 reorganization" would "advance the best interests of the NRA" and Sea Girt.[57] The Board thereafter resolved to put the NRA in bankruptcy and continue retaining the Brewer Firm as "special counsel."[58] However, it now appears that the NRA Board was never truly included in any part of this "resolution." NRA Board Member, Judge Philip Journey, recently filed a Motion for Appointment of Examiner in these proceedings, in which he explained to the Court:

> In direct violation of its own bylaws, the NRA did not disclose to the board of directors its intent to seek Chapter 11 relief. In further violation of the bylaws, no solicitation to the board for votes of approval of the filing was conducted. In fact, one or more board members only became aware of this case through media outlets.[59]

---

[53] *See* NRA Bankr., ECF 1 at 5 ("WHEREAS, the NRA is the single member and manager of Sea Girt, a Texas limited liability company"); Sea Girt Action, ECF 1 at 13 (List of Equity Security Holders pursuant to Federal Rule of Bankruptcy Procedure Rule 1007(a)(3)).
[54] *See* Sea Girt Bankr., ECF 13 (Sea Girt's Creditor Matrix); *Sea Girt Action*, ECF 20.
[55] *See* NRA Bankr., ECF 1 at 5.
[56] *See id.*
[57] *See id.*
[58] *See* NRA Bankr., ECF 1 at 6.
[59] *See* NRA Bankr., ECF 144 at ¶ 16 (internal footnotes omitted).

Thus it appears that, consistent with its previous conduct, the NRA's management has taken actions in direct contradiction to its own bylaws and once again steamrolled its own Board of Directors in favor of LaPierre's authoritarian regime.

28.     Further exposing the NRA's fraud is its contradictory statements to this Court and the public regarding the NYAG Enforcement Action.  On the one hand, the NRA and its "special counsel" (Brewer Firm) repeatedly confirmed the NRA is not afraid of or running away from the NYAG.[60]  On the other hand, the NRA has separately described the Enforcement Action as the most significant piece of litigation in the NRA's history.  And, according to the NRA's own board resolution, it was the Special Litigation Committee formed specifically to manage the Enforcement Action that decided (along with LaPierre) to file bankruptcy.[61]  In similar contradiction, the NRA told this Court it is "ready and willing to go forward" with the Enforcement Action proceeding,[62] but separately told the New York court[63] that it "reserves its rights" to seek relief from the Court to stay that matter.  Stated differently, the NRA claims that it is seeking to get away from New York and the NYAG by filing this bankruptcy, including in order to consolidate the Enforcement Action to save litigation expense, but at the same time is taking the position that the Enforcement Action can and should proceed full steam ahead.

29.     While the NRA filing seems primarily geared towards avoiding regulatory oversight from the NYAG, the NRA was well aware that it would cause substantial delay in other lawsuits as well.  For example, just three days after filing the Bankruptcy Case, on January 18,

---

[60] *See* First Day Motions Hr'g Tr. at 15:17-18 (Jan. 20, 2021).

[61] *See* NRA Bankr., ECF 1 at 5.

[62] *See* First Day Motions Hr'g Tr. at 19:6-7 (Jan. 20, 2021).

[63] *See* Enforcement Action, Dkt. 205 at 1 ("the NRA is available to proceed with the hearing and adjudication of its pending motion to transfer venue…and motion to dismiss or stay this action.").

2021, the NRA was scheduled to begin the Final Arbitration Hearing against the former head of the NRA's Institute for Legislative Action, Cox, who was forced to file a motion to lift stay.[64]

30.     In addition, the near-two-year lawsuit between the NRA and AMc, scheduled for trial in September 2021, is now in jeopardy of being derailed unless the bankruptcy is dismissed or the stay is lifted.  Indeed, just four days after the Petition Date, pursuant to court-ordered deadline, the NRA expected to receive an amended counterclaim in the Texas Action, which the NRA knew would include claims against it for fraud, civil conspiracy, and business disparagement, and claims against the NRA Foundation for operating as the NRA's alter ego.

31.     As the NRA (with the help of its litigation counsel) is adept at doing, this bankruptcy filing was perfectly poised, and upon information and belief, is intended to stall these several, negative actions looming against the NRA.

## IV.     ARGUMENTS AND AUTHORITIES

### A. The NRA's Bad Faith Requires Dismissal Under 11 U.S.C. § 1112(b) for "Cause" and the Court's Inherent Power to Prevent Abuse Under 11 U.S.C. § 105.

32.     "Every bankruptcy statute since 1898 has incorporated literally, or by judicial interpretation, a standard of good faith for the commencement, prosecution, and confirmation of bankruptcy proceedings."[65]  The Bankruptcy Code mandates that, on the request of a party in

---

[64] *See* NRA Bankr., ECF 63 at 2.

[65] *Little Creek* 779 F. 2d at 1071; *see also In re Marsch*, 36 F.3d 825, 828 (9th Cir. 1994) ("courts have overwhelmingly held that a lack of good faith in filing a Chapter 11 petition establishes cause for dismissal"); *In re Humble Place Joint Venture*, 936 F.2d 814, 817 (5th Cir. 1991) (following *Little Creek*); *In re Winshall Settlor's Tr.*, 758 F.2d 1136, 1137 (6th Cir. 1985) (noting an "implicit prerequisite to the right to file is "good faith" on the part of the debtor"); *In re Albany Partners, Ltd.*, 749 F.2d 670, 674 (11th Cir. 1984) (noting the equitable nature of "cause" determinations "support the construction that a debtor's lack of good faith may constitute cause for dismissal"); *In re Victory Constr. Co., Inc.*, 9 B.R. 549, 551–57, 558 (Bankr. C.D. Cal. 1981) (chronicling the history and development of the good faith doctrine under the Bankruptcy Act of 1898, and concluding, "It would be more than anomalous to conclude that in consolidating the provisions of Chapter X, XI, and XII in Chapter 11 of the Code, Congress intended to do away with a safeguard against abuse and misuse of process which had been established and accepted as part of bankruptcy philosophy (either by statute or decisional law) for almost a century.").

interest, a court "*shall* convert" a Chapter 11 bankruptcy case to Chapter 7 "or dismiss a case…whichever is in the best interests of the creditors and the estate, for cause."[66] Since at least 1986, the Fifth Circuit has held that a bankruptcy filed without "good faith" should be dismissed under the "cause" standard in Section 1112(b).[67]

33.     "[G]ood faith implies an honest intent and genuine desire on the part of the petitioner to use the statutory process to effect a plan of reorganization and not merely as a device to serve some sinister or unworthy purpose."[68]  As the Fifth Circuit has expressly found, "[t]he good faith standard protects the integrity of the bankruptcy courts and prohibits a debtor's misuse of the process where the overriding motive is to delay creditors without any possible benefit, or to achieve a reprehensible purpose through manipulation of the bankruptcy laws."[69]  Additionally, the good faith standard maintains the integrity of the bankruptcy process by providing equitable bankruptcy relief *only* to debtors with "clean hands."[70]

34.     "Bankruptcy Courts are courts of equity, and a court of equity is enabled to frustrate fraud and work complete justice" with "broad statutory power,"[71] including authority to

---

[66] 11 U.S.C. § 1112(b)(1), (4) (emphasis added).  *See also In re Cedar Short Resort, Inc.*, 235 F.3d 375, 379 (8th Cir. 2000).

[67] *See, e.g.*, *In re Humble Place Joint* Venture, 936 F.2d 814, 816-17 (5th Cir. 1991) (following *In re Little Creek Dev. Co.*, 779 F. 2d 1068, 1071 (5th Cir. 1986)); *In re Elmwood Dev. Co.*, 964 F.2d 508, 510 (5th Cir. 1992).

[68] *Cedar Shore*, 235 F.3d at 379 (quoting *In re Metropolitan Realty Corp.*, 433 F.2d 676, 678 (5th Cir. 1970)).

[69] *Elmwood Dev.*, 964 F.2d 508, 510 (5th Cir. 1992) ("the good faith rule . . . has been properly honored by the bankruptcy court's dismissal"); *see also Little Creek*, 779 F.2d at 1072 (good faith requirement prevents "abuse of the bankruptcy process by debtors whose overriding motive is to delay creditors without benefiting them in any way or to achieve reprehensible purposes").

[70] *Little Creek*, 779 F.2d at 1072.

[71] *See Pipkins-Thomas v. United States*, 223 Fed. Appx. 310, 313 (5th Cir. 2007) (internal quotations omitted) (noting that the Bankruptcy Code vests bankruptcy courts with latitude to carry out provisions of the Code and prevent abuses of process).

dismiss an action *sua sponte* when filed in bad faith.[72]  With this in mind, the Fifth Circuit has

provided necessary guidance on how the bankruptcy court should employ its discretion:

> The good faith determination depends largely upon the bankruptcy court's on-the-spot evaluation of the debtor's financial condition, motives, and the local financial realities. A collation of factors, rather than any single datum, controls resolution of this issue. In determining whether a petition was filed with the requisite good faith, the court must examine the facts and circumstances germane to each particular case.[73]

The totality of the circumstances is generally used to evaluate whether a filing is made in good

faith.[74]  In any event, a court's determination of bad faith "is a finding of fact reviewed for clear

error."[75]

35.     As previously discussed, bad faith is "cause" to dismiss a Chapter 11 case, pursuant

to Section 1112.[76]  After the movant satisfies the initial burden to make a *prima facie* showing of

bad faith, the burden shifts to the bankruptcy petitioner to demonstrate good faith.[77]

---

[72] *See In re Art Midwest, Inc.*, No. 04-91225-RFN-11, 2006 Bankr. LEXIS 12, at *9 (Bankr. N.D. Tex. Jan. 5, 2006) (noting the *Little Creek* court "instructed bankruptcy courts to be vigilant for those cases where the rehabilitative purposes of chapter 11 will not be served"); *see also* 11 U.S.C. § 105(a) (permitting *sua sponte* action "to prevent an abuse of process").

[73] *Elmwood Dev.*, 964 F.2d at 510; *see also In re Briggs-Cockerham, L.L.C.*, No. 10-34222-BJH-11, 2010 Bankr. LEXIS 4132, at *17 (Bankr. N.D. Tex. Nov. 23, 2010) (Houser, J.) (holding bad faith determination "depends largely upon the bankruptcy court's on-the-spot evaluation of the debtor's financial condition, motives, and the local financial realities"); *Investors Grp., LLC v. Pottorff*, 518 B.R. 380, 384 (N.D. Tex. 2014) (affirming the Fifth Court's standard that "bad faith to secure a litigation advantage in another forum is not only case dispositive but also necessitates a dismissal").

[74] *See, e.g., Cedar Shore*, 235 F.3d at 379 (citing *Little Creek*, 779 F.2d at 1072); *Pottorff*, 518 B.R. at 384 (applying totality of circumstances analysis).

[75] *Pottorff*, 518 B.R. at 382 (quoting *In re Jacobsen*, 609 F.3d 647, 652 (5th Cir. 2010)). The *Pottorf* court also clarified that an order from the Fifth Circuit in another case indicated "bad faith to secure a litigation advantage in another forum is not only case dispositive but also necessitates a dismissal." *See id.* at 384 (discussing *In re Brazos Emergency Physicians Ass'n, P.A.*, 471 Fed. Appx. 393, 394 (5th Cir. 2012) (*per curiam*)).

[76] *See In re Leslie*, No. 98-35386-H3-11, 1999 Bankr. LEXIS 2113, at *4 (Bankr. S.D. Tex. Feb. 11, 1999) (citing *Humble Place*, 936 F.2d at 816-18); *Elmwood Dev.*, 964 F.2d at 510 ("Lack of good faith in the filing of a Chapter 11 bankruptcy petition constitutes cause for dismissal under 11 U.S.C. § 1112(b).").

[77] *See In re Mirant Corp.*, No. 03-46590, 2005 Bankr. LEXIS 1686, at *27 n.20 (Bankr. N.D. Tex. Jan. 26, 2005) (mem. op.) ("The movant has the initial burden to present a prima facie case alleging bad faith; once achieved, the burden shifts to the debtor to prove that the petition was filed in good faith."); *In re Sherwood Enters., Inc.*, 112 B.R. 165, 172 (Bankr. S.D. Tex. 1989) (describing the same burden shifting); *In re Mense*, 509 B.R. 269, 277 (Bankr. C.D. Cal. 2014) (the moving party has the initial burden of making out a prima facie case of bad faith, and once "such a showing has been made, the burden shifts to the debtor to establish that its chapter 11 case was filed in good faith"

36.     This Court has held that "bad faith to secure a litigation advantage in another forum is not only case dispositive but also necessitates a dismissal."[78]  Similarly, in *In re Kickapoo Kennels, LLC*, the Southern District of Texas dismissed a bad faith filing, where the debtor operated profitably pre- and post-petition because "[t]here was no financial need" to file the Chapter 11 bankruptcy other than to gain unfair advantage in litigation.[79]  Indeed, "[s]everal courts have dismissed bankruptcy cases based on the fact that the debtor, in filing a chapter 11 petition, was attempting to gain unfair advantage" in existing litigation.[80]  After all, "Congress designed Chapter 11 to give those businesses teetering on the verge of a ***fatal financial plummet*** an opportunity to reorganize on solid ground and try again, not to give profitable enterprises an opportunity to evade contractual or other liability."[81]

37.     The Fifth Circuit has also found dismissal appropriate when a filing is guided by litigation tactics.  In *In re Antelope Techs., Inc.*, the Fifth Circuit evaluated a bad faith case where a chapter 11 bankruptcy was initiated by the controlling shareholders of the debtor who had been sued.[82]  The bankruptcy court had "found that the petition was filed to gain advantage in the shareholder litigation rather than for a reorganization."[83]  The bankruptcy court reasoned that "although [the controlling shareholders] saw an [alleged] opportunity for growth of [Antelope]'s business through recapitalization, [Antelope]'s near-term capital needs were not so urgent as to

---

(quoting *In re Avalon Hotel Partners, LLC*, 302 B.R. 377, 384 (Bankr. D. Or. 2003)); *In re Paolini,* 312 B.R. 295, 305 (Bankr. E.D. Va. 2004) (mem. op.).
[78] *See Pottorff*, 518 B.R. at 384.
[79] *See* No. 12-39321-H3-11, 2013 Bankr. LEXIS 2499, at *4 (Bankr. S.D. Tex. Jun. 19, 2013).
[80] *See In re Leslie*, 1999 Bankr. LEXIS 2113, at *4 (Bankr. S.D. Tex. Feb. 11, 1999) (citing array of cases).  In *Leslie*, the court dismissed the Chapter 11 petition, finding that the debtor filed bankruptcy to gain an unfair advantage in litigation. *See id.* at *5.
[81] *Cedar Shore*, 235 F.3d at 381 (emphasis added) (internal quotations omitted).
[82] 431 Fed. Appx. 272, 273 (5th Cir. 2011).
[83] *Id*.

cause the filing of a Chapter 11 petition at the time [Antelope]'s board authorized and directed [a controlling shareholder] to file it . . ."[84]  On appeal, the district court affirmed, and on further appeal, the Fifth Circuit held that "there was no clear error in the finding that the purpose of the petition was not primarily to reorganize or respond to financial crisis but instead was to gain unfair advantage in the shareholder derivative action."[85]

38.  In the above cases within the Fifth Circuit jurisprudence, nowhere does any court adopt a subjective standard that requires a showing that a debtor intended to misuse a bankruptcy filing.  Rather, Fifth Circuit courts generally look objectively at the primary purposes of a debtor's filing to determine whether it met the requirements of a good faith standard.[86]

39.  The Third Circuit's approach to dealing with petitions filed by solvent companies seeking to gain advantages in ongoing litigation is consistent with that of the Fifth Circuit.  In the seminal case of *In re SGL Carbon Corporation*, the Third Circuit (in adopting a good faith standard) carefully analyzed the appropriateness of a dismissal in a scenario identical to that of the NRA's, whether "the Chapter 11 petition filed by a financially healthy company in the face of potentially significant civil antitrust liability complies with the requirements of the Bankruptcy Code."[87]

40.  In *SGL Carbon*, a myriad of anti-trust lawsuits were filed against the debtor.[88]  A year later, the debtor filed what appeared to be a pre-planned bankruptcy, wherein a plan and

---

[84] *Id.*
[85] *Id.* at 275.
[86] *See Elmwood Dev.*, 964 F.2d at 512 ("Because the **good faith standard is an objective one**, the court was not constrained to entertain and give dispositive weight to the subjective state of mind of Elmwood's manager.") (emphasis added).
[87] 200 F.3d 154, 156-57 (3d Cir. 1999).
[88] *Id.* at 157.

disclosure statement were filed on the same day of its voluntary Chapter 11 petition.[89]  In its disclosure statement, the debtor identified the anti-trust litigation as the only factor leading to the Chapter 11 filing.[90]  A day after its petition date, the debtor amplified its disclosure through a press release publicly stating that:

- "Chapter 11 protection provides the most effective and efficient means for resolving the civil antitrust claims";

- "SGL Carbon is financially healthy"; and

- "[B]ecause certain plaintiffs continue to make excessive and unreasonable demands, SGL CARBON Corporation believes the prospects of ever reaching a commercially practicable settlement with them are remote."[91]

Contemporaneously, the chairman of the debtor's German parent company proclaimed to securities analysts—***not dissimilar to major donors or sponsors of the NRA***—that the debtor was "financially healthier than before" and the filing had nothing to do with "serious insolvency or credit problems."[92]

41.     Within a month after the debtor filed, the official committee of unsecured creditors, comprised primarily of plaintiffs in the anti-trust suits, filed a motion to dismiss the bankruptcy on bad faith grounds.[93]  Within two months after the filing, the presiding district court conducted a hearing on the dismissal, wherein it found—based solely on documentary and deposition testimony and, significantly, without applying a good faith filing standard—that "the petition furthered the purpose of Chapter 11 because plaintiffs' litigation was imperiling SGL Carbon's operation by

---

[89] *Id.* at 156-57; *In re SGL Carbon*, Case No. 98-02779-JJF (Bankr. D. Del. Dec. 16, 1998) (Farnan, J.) [Dkt. Nos. 2-3, Plan and Disclosure Statement].
[90] *Id.* at 157.
[91] *Id.*
[92] *Id.* at 158 (internal quotations omitted).
[93] *Id.* at 158.

distracting its management, was potentially ruinous and could eventually force the company out of business."[94]

42.     On appeal, the Third Circuit first noted that the district court "made no findings that SGL Carbon filed for bankruptcy for reasons other than to improve its negotiating position with plaintiffs."[95]  Following precedent from the First, Second, Fourth, Fifth, Sixth, Eighth, and Ninth Circuits,[96] the Third Circuit adopted the good faith standard and reasoned that:

> The requisite fact intensive inquiry requires determining where SGL Carbon's petition falls along the spectrum ranging from the clearly acceptable to the patently abusive.  We first review the District Court's findings of fact and then examine the totality of facts and circumstances to determine whether they support a finding of good faith.[97]

43.     Notwithstanding the discretionary standard of review and based on the circumstances of the filing, the Third Circuit rejected the excuse of the debtor (and findings by the district court) that: (a) "'the anti-trust litigation posed a serious threat to [the debtor's] continued operations'" and (b)  "the [anti-trust] litigation might result in a judgment that could cause the company 'financial and operational ruin.'"[98]  Instead, Third Circuit found that:

> Whether or not SGL Carbon faces a potentially crippling antitrust judgment, it is incorrect to conclude it had to file when it did. As noted, ***SGL Carbon faces no immediate financial difficulty***. All the evidence shows that management repeatedly asserted ***the company was financially healthy*** at the time of the filing. Although the District Court believed the litigation might result in a judgment causing "financial and operational ruin" we believe that on the facts here, that assessment was premature.  A Chapter 11 petition would impose an automatic stay on all efforts to collect the judgment and would allow the company the exclusive right to formulate a reorganization plan under which the amount of the judgment could be adjusted to allow the company to reorganize.  SGL Carbon has offered no evidence it could not effectively use those protections as the prospect of such a judgment

---

[94] *Id*.
[95] *Id*.
[96] *Id*. at 160-161.
[97] *Id*. at 162.
[98] *Id*.; *see also id.* at 159 ("Consistent with the other courts of appeals to consider the issue, we believe this decision is committed to the sound discretion of the bankruptcy or district court and will review for abuse of discretion.").

became imminent. The District Court's finding that the petition had to be filed at that particular time to avoid financial ruin and therefore was made in good faith is ***clearly contradicted by the evidence***.[99]

44.     In the end, based on objective factors,[100] the Third Circuit held the debtor did not file for valid reorganization purposes, but in the hopes that a "financially solvent compan[y] [could] rapidly conclude litigation to enable a continuation of their business."[101] And, despite the debtor's pretextual excuses, the Court held that "[t]he mere possibility of a future need to file, without more, does not establish that a petition was filed in 'good faith.'"[102] This Court has followed the same reasoning in the *Mirant* case.[103]

45.     The Eight Circuit similarly has found that surrounding circumstances, as evidenced by public announcements, effectively demonstrate a debtor's lack of good faith. In *Cedar Shore*, a representative of the debtor "had publicly declared that the business was doing well and that the corporation was poised to turn a profit."[104] The Eighth Circuit, in affirming the dismissal of the debtor's bankruptcy petition on bad faith grounds, held that the "primary motivation for filing bankruptcy was to dispose of the [pending] lawsuit," evident by the fact the debtor "was not in dire financial straits."[105]

---

[99] *Id*. at 163 (emphasis added).

[100] *Id*. at 164 ("SGL Carbon, by its own account, and by all objective indicia, experienced no financial difficulty at the time of filing nor any significant managerial distraction. Although SGL Carbon may have to file for bankruptcy in the future, such an attenuated possibility standing alone is not sufficient to establish the good faith of its present petition.").

[101] *See Cedar Shore*, 235 F.3d at 380 (quoting *SGL Carbon*, 200 F.3d at 169).

[102] *See SGL Carbon*, 200 F.3d at 169. *See also* ECF 28 ¶ 25 (the NRA including "additional legal proceedings [that] may be filed in the near future" as a basis for its bankruptcy filing); Frist Day Motions Hr'g Tr. at 10:17-19 (counsel telling the Court the NRA considered "potential litigation that might be coming down the road" in filing bankruptcy) & 11:8-10 ("In this particular case, the NRA, like a lot of companies, was facing not only current litigation, but potential litigation.").

[103] *See In re Mirant Corp.*, No. 03-46590, 2005 Bankr. LEXIS 1686, at *25 (Bankr. N.D. Tex. Jan. 26, 2005) (Lynn, J.) (mem. op.); *SGL Carbon*, 200 F.3d. at 165-66.

[104] *Cedar Shore*, 235 F.3d at 380.

[105] *See Cedar Shore*, 235 F.3d at 380. In fact, a representative of the debtor "had publicly declared that the business was doing well and that the corporation was poised to turn a profit." *See id.*

1. ***The NRA Filed to "Dump New York" as a Litigation Tactic.***

46. Ignoring the guidance provided by *Antelope Techs., SGL Carbon*, and *Cedar Shore*, on the same day the NRA filed the Bankruptcy Case, the NRA's leader and top executive publicly declared the NRA is "**not insolvent**" and is "**as financially strong as [it has] been in years**."[106]

47. As recited above in his letter to the NRA members, LaPierre unequivocally explained that the purpose for the restructuring was not because of the NRA's financial difficulties, but instead to ***escape scrutiny and legal accountability*** by New York officials.[107] Just like the debtor's president in *SGL Carbon*, LaPierre claimed the Enforcement Action is "costly" and "distracting."[108] In the same breath, he assured the NRA members that its business would continue uninterrupted—*i.e.*, any "distraction" is not actually negatively impacting the NRA's operations.[109]

48. Much like *SGL Carbon*, the NRA has substantial net assets,[110] "is current on all obligations," and has not defaulted.[111] The NRA also does "not presently anticipate needing to

---

[106] *See Letter from Wayne*, WWW.NRAFORWARD.ORG (Jan. 15, 2021), https://www.nra forward.org/waynesletter; *see also SGL Carbon*, 200 F.3d at 158 (SGL Carbon was "financially healthier than before" and denied the antitrust lawsuits were negatively impacting its business operations.).

[107] *See Cedar Shore*, 235 F.3d at 380 (a representative of the debtor "had publicly declared that the business was doing well and that the corporation was poised to turn a profit").

[108] *See Letter from Wayne*, WWW.NRAFORWARD.ORG; *see SGL Carbon*, 200 F.3d at 158 (overruling the lower court's finding that distractions of litigation would justify the encouraging of a Chapter 11 filing).

[109] *See Letter from Wayne*, WWW.NRAFORWARD.ORG ("NRA supporters will continue to enjoy all their full member benefits…We will continue to publish and deliver your magazines. We will continue to train Americans and teach them firearm safety. We will continue to teach hunter safety. But most importantly, we will continue to fight for your freedom and the freedom of all Americans – as we have for all these years. In fact, we are expanding our national platform."); *see also SGL Carbon*, 200 F.3d at 157 (The company was "financially healthy" and would not have filed the petition but for the "excessive" antitrust claims. The company "expect[ed] to continue [its] normal business operations.").

[110] *See NRA Bankr.*, ECF 21 ¶ 10 ("The NRA's total net assets are approximately $50 million"); *see also SGL Carbon*, 200 F.3d at 166.

[111] *See NRA Bankr.*, ECF 28 ¶ 13; *see also In re SGL Carbon Corp.*, 200 F.3d at 166 ("In addition, there is no evidence that SGL Carbon had difficulty meeting its debts as they came due, that it had any overdue debts, or that it had defaulted on any debts. Nor is there any evidence that SGL had any difficult raising or borrowing money, or otherwise had impaired access to the capital markets.").

draw down" on its line of credit.[112]  One reason the NRA's financial position is allegedly so strong

is that "over this last year [it] has attracted hundreds of thousands of new members."[113]

     49.     In representations to this Court during the First Day Motions hearing on January

20, 2021, the NRA asserted that "based on litigation," the NRA was comfortable with being able

to pay creditors "in full,"[114] *i.e.*, the NRA is not currently under, and does not foresee being under,

any financial constraint or inability to pay creditors—even with all of the expensive litigation.[115]

     50.     As mentioned above, the NRA is represented by the Brewer Firm in virtually all of

its active lawsuits, which also seeks to become "special counsel" in this Bankruptcy Case.[116]

Together, the Brewer Firm and the NRA formulated, planned, and executed these bankruptcy

filings and related public statements as part of its litigation plan.[117]  Indeed, the NRA has

apparently already set aside an additional $2.551 million for the Brewer Firm to assist with this

bankruptcy.[118]  In strikingly similar fashion to the debtor *SGL Carbon*, the NRA admitted its

reason for its Chapter 11 filings is litigation, *as explained by its proposed special counsel (Brewer)*:

> Under this plan, the Association wisely seeks protection from New York officials
> who it believes have illegally weaponized their powers against the NRA and its
> members, says William A. Brewer III, counsel to the NRA in those cases.[119]

---

[112] *See* NRA Bankr., ECF 28 ¶ 13.

[113] *See* NRA Bankr., ECF 28 ¶ 13 at ¶ 26; *see also Questions & Answer*, www.nraforward.org, https://www.nraforward
.org/questionsanswers, ("Is the NRA going 'bankrupt?'  No.  In fact, this move comes at a time when the NRA is in
its strongest financial condition in years…The NRA is not insolvent.").

[114] *See* First Day Motions Hr'g Tr. at 13:2-5 (Jan. 20, 2021).

[115] *Id*. at 12:1-9.

[116] *See* ECF 84 at Ex. B, Schedule 1 (NRA's Application to Employ the Brewer Firm).

[117] *See* n. 10.

[118] ECF 84 at Ex. E ¶ 11.

[119] Danny Hakim, *N.R.A. Declares Bankruptcy and Seeks to Exit New York*, NEW YORK TIMES (Jan. 15, 2021),
https://www.nytimes.com/2021/01/15/us/politics/nra-bankruptcy.html?auth=login-google (quoting Brewer); *see also
The New York Times Reports the NRA Intends to Reincorporate in Texas*, WWW.BREWERATTORNEYS.COM,
https://www.brewerattorneys.com/news, *last accessed* Feb. 1, 2021; *see also* First Day Motions Hr'g Tr. at 15:2-5
("This is not a bad-faith failing, and we look forward to using the Chapter 11 to resolve the litigation and to move
forward to emerge out of this bankruptcy as a company domiciled here in Texas…").

51.     The NRA **boldly** urged this same reason before this Court in its opening paragraphs of its *Informational Brief*, beginning with "the partisan attacks the NRA confronts in New York" and describing "[e]fforts to weaponized state and local government power against the NRA."[120] The NRA made its position even clearer when it provided the two following arguments in support of its bankruptcy filing:

- "The NRA Contends with Voluminous, Overlapping Litigation and Politicized Attacks In Its **Domicile** State"[121]; and

- "The NRA Will Utilize Chapter 11 To Resolve Pending Claims, Rationalize Contractual Relationships, And Relocate To Texas."[122]

52.     The NRA proclaimed it "seeks to avail itself of the protections of the Bankruptcy Code in order to continue its efforts to reduce operating costs and to address the ever-increasing litigation being filed against the NRA."[123]

> The NRA instituted this chapter 11 reorganization proceeding **to establish a centralized, neutral forum in which it can streamline, resolve, and address all outstanding claims and preserve its ability to pursue its constitutionally protected mission as a going concern**.[124]

53.     But, the NRA's transparent motives are best revealed in a press release issued the same day of the bankruptcy filing:

> **The NRA plan, which involves utilizing the protection of the bankruptcy court**, has the Association **dumping New York** and organizing its legal and regulatory matters in an efficient forum.  **The move comes at a time when the NRA is in its strongest financial condition in years**.[125]

---

[120] *See* NRA Bankr., ECF 28 ¶ 1.
[121] *See* NRA Bankr., ECF 28 § III (A) (emphasis added). *See also SGL Carbon*, 200 F.3d at 157 ("In SGL Carbon's Disclosure Statement, in a section addressing 'Factors Leading to the Chapter 11 Filing,' SGL Carbon only discussed the antitrust litigation.").
[122] *See* NRA Bankr., ECF 28 § III (B).
[123] *See* NRA Bankr., ECF 28 ¶ 26.
[124] *See* NRA Bankr., ECF 28 ¶ 3 (emphasis added).
[125] *See Press Release*, WWW.NRAFORWARD.ORG (Jan. 15, 2021), https://www.nraforward.org/press-release (emphasis added).

54. At the first day hearing, the NRA's bankruptcy lawyers then back tracked from the NRA's public attacks on the NYAG, contending that the "Chapter 11 offers and an ability to centralize this litigation and deal with it in a rational and I think organized fashion."[126]

55. In any event, whichever different NRA statement the Court ultimately chooses as the basis of its ruling, "obtaining a more convenient forum in litigation, standing alone, is not a good faith reason for filing a bankruptcy petition."[127] As the Eighth and Third Circuits would say, the NRA did not file for "valid reorganization of [a] financially troubled business" but solely to "rapidly conclude litigation to enable a continuation of their business" through another forum:[128]

> The plan aims to streamline costs and expenses, proceed with pending litigation in a coordinated and structured manner, and realize many financial and strategic advantages.[129]

> Under this plan, we seek protection from New York officials who illegally abused and weaponized the powers they wield against the NRA and its members.[130]

> The NRA is expected to emerge from these proceedings within the next six months.[131]

---

[126] *See* First Day Motions Hr'g Tr. at 11:15-17 (Jan. 20, 2021).

[127] *See In re Alexandra Trust*, 526 B.R. 668, 675 (Bankr. N.D. Tex. 2015); *see also* Danny Hakim & Mary Williams Walsh, *The N.R.A. Wants to 'Dump' Its Regulators via Bankruptcy. Will It Succeed?*, NEW YORK TIMES (Jan. 22, 2021), https://www.nytimes.com/2021/01/21/business/nra-bankruptcy-new-york.html (University of Pennsylvania Law School bankruptcy professor noting, for good faith, the debtor cannot proclaim it does not need bankruptcy but only filed because of some other problem).

[128] *See Cedar Shore*, 235 F.3d at 380 (quoting *SGL Carbon*, 200 F.3d at 169). *See also* NRA Bankr., ECF 31 ¶ 3 ("The NRA instituted this Chapter 11 reorganization proceeding to establish a centralized, neutral forum…"); First Day Motions Hr'g Tr. at 11:8-17 (Jan. 20, 2021) (arguing the NRA "needed both the breathing spell that Chapter 11 offers and an ability to centralize this litigation and deal with it in a rational and I think organized fashion") & at 12:7-9 ("my client looked at this and realized there had to be a way to deal with all of this litigation in a centralized forum") & at 12:10-23 (further discussing need for centralization because of the opposition to the NRA's attempt at multidistrict litigation. *See SGL Carbon*, 200 F.3d at 164. That the NRA has publicly stated it is even more financially healthy than before, coupled with its representations that it can pay creditors in full, demonstrates the NRA does not have a valid purpose for reorganization. *See* NRA Bankr., ECF 28 ¶ 27; First Day Motions Hr'g Tr. at 13:3-5, 15:2-6 (Jan. 20, 2021).

[129] *See Letter from Wayne*, WWW.NRAFORWARD.ORG (Jan. 15, 2021), https://www.nra forward.org/waynesletter.

[130] *Id.*

[131] *See Questions & Answers*, WWW.NRAFORWARD.ORG, https://www.nraforward.org/questionsanswers, last accessed Feb. 1, 2021 (emphasis added).

56.     The attempt to gain unfair advantage in litigation is *prima facie* bad faith.[132] Considering the purpose of Chapter 11 is "to give those businesses teetering on the verge of a fatal financial plummet an opportunity to reorganize on solid ground and try again,"[133] the NRA's attempt to evade its contractual obligations and legal liability makes a mockery of the bankruptcy system. Just as debtor in *SGL Carbon*, the NRA's (a) $50+ million net worth, (b) confirmation of financial health, and (c) attempts at forum shopping and obtaining leverage in litigation merit dismissal. Because the NRA is seeking "to achieve objectives outside the legitimate scope of the bankruptcy laws,"[134] *i.e.*, solely tactical advantage in litigation,[135] the NRA is operating in bad faith, which <u>requires</u> dismissal.[136]

### 2.     *The NRA Is Violating 28 U.S.C. § 959 by Not Complying with New York Law.*

57.     This case should also be dismissed because the NRA is attempting to violate New York state law, which requires either the NYAG's or NY Supreme Court's approval to dissolve or merge into or consolidate with a foreign nonprofit incorporated in another state.[137] Pursuant to 28 U.S.C. § 959, a trustee or debtor in possession "shall manage and operate" property of the bankruptcy estate "according to the requirements of the valid laws of the State in which such property is located."[138] Stated differently, "a bankruptcy petition is not a grant of immunity,"[139]

---

[132] *See In re Leslie*, 1999 Bankr. LEXIS 2113, at *4 (citing various cases). Ultimately, the *Leslie* court found the debtor filed bankruptcy to gain an unfair advantage in litigation and dismissed the case. *See id.* at *5.

[133] *Cedar Shore*, 235 F.3d at 381.

[134] *SGL Carbon*, 200 F.3d at 165 (quoting *In re Marsch*, 36 F.3d at 828).

[135] *Id.* (citing numerous cases finding that filing to obtain a tactical litigation advantage is outside the "legitimate scope" of bankruptcy laws).

[136] *See* 11 U.S.C. § 1112(b)(1), (4) ("the court ***shall***" dismiss for cause (emphasis added)).

[137] *See* NY CLS N-PCL § 907.

[138] 28 U.S.C. § 959(b). *See also Ky. Emple. Ret. Sys. v. Seven Cntys. Servs., Inc.*, 823 Fed. App'x 300, 304 (6th Cir. 2020) ("It is correct that the statute does not specify that it applies only to state laws enforcing police powers. And that we have only had occasion to apply § 959 in circumstances involving public health and safety does not create a limiting principle where none exists in the statutory text.").

[139] *See In re Am. Coastal Energy*, 399 B.R. 805, 810 (Bankr. S.D. Tex. 2009).

and a trustee or debtor-in-possession must comply with state law before obtaining the final relief sought through bankruptcy.[140] "Congress did not intend for the Bankruptcy Code to pre-empt all state laws."[141]

58.     New York law requires permission of the NYAG before a not-for-profit organization can dissolve.[142] New York law also requires the NRA to obtain NYAG approval or N.Y. Supreme Court approval to merge or consolidate with a foreign entity.[143] Yet, the NRA's strategy in this bankruptcy is transparent, if not clearly admitted. It has publicly stated that it "expect[s] to emerge from these proceedings within the next six months"[144] by illegally dissolving in New York without the NYAG's permission and reincorporating in Texas.[145] Presumably, the NRA also wants this Court to bless the transfer of its assets from New York to Texas in the interest of creditors—another clear violation of New York state law.[146] Stated differently, the very relief that the NRA is seeking through this chapter 11 (*i.e.*, reorganization in Texas without the approval of the State of New York) is not permitted under the law and is further evidence of bad faith.

---

[140] *See, e.g.*, *SEC v. Harris*, No. 3:09-CV-1809-B, 2016 U.S. Dist. LEXIS 51708, at *28 (N.D. Tex. Apr. 18, 2016) (requiring compliance with state law for plugging a well, pursuant to 28 U.S.C. § 959(b) and foreign state law).

[141] *Midlantic Nat'l Bank v. N.J. Dep't of Envtl. Prot.*, 474 U.S. 494, 505 (1986). *See also In re Draughon Training Inst., Inc.*, 119 B.R. 921, 924 (Bankr. W.D. La. Apr. 10, 1990) ("The Code does not change the business and regulatory environment in which a debtor operates. A debtor-in-possession under Chapter 11 is not *pro tanto* excused by virtue of his bankruptcy from complying with valid and enforceable state and local regulation. By virtue of 28 U.S.C. § 959(b), it is required to obey them."). *See further In re Tex. Pig Stands, Inc.*, 610 F.3d 937, 943 (5th Cir. 2010) (applying 28 U.S.C. § 959 where Chapter 11 trustee failed to remit state sales tax to the Texas Comptroller); *see generally In re Al Copeland Enters., Inc.*, 991 F.2d 233, 237-38 (5th Cir. 1993).

[142] *See* N-PCL 1002(d).

[143] *See* NY CLS N-PCL § 907.

[144] *See Questions & Answers*, WWW.NRAFORWARD.ORG.

[145] *See* N-PCL 1002(d).

[146] *See, e.g.*, Brian Mittendorf & Sarah Webber, *The NRA Declares Bankruptcy: 5 Questions Answered*, WWW.THECONVERSATION.COM (Jan. 22, 2021), https://theconversation.com/the-nra-declares-bankruptcy-5-questions-answered-153423 (noting that "the NRA may not transfer its assets," which "would not be released without consent from New York authorities").

59.     Regardless of the NRA's non-profit status, courts have repeatedly held that a debtor in bankruptcy must comply with applicable state law.[147]  Compliance with 28 U.S.C. § 959 focuses on the pre-petition and post-petition obligations of the debtor.[148]  In *Ky. Emple. Ret. Sys. v. Seven Cntys. Servs., Inc.*,[149] the Sixth Circuit held that, pursuant to 28 U.S.C. § 959, a nonprofit debtor is required to comply with Kentucky law post-petition and continue to pay contributions to the Kentucky Employees Retirement System.

60.     Similarly, in *In re Draughon Training Institute, Inc.*,[150] the Bankruptcy Court upheld the Texas Education Association's denial of the debtor's certificate of approval—which denial prevented the debtor from continuing to accept and enroll students—on grounds that the debtor did not have a proper refunding policy in place and had questionable financial soundness.[151] In denying the debtor's requested relief of enjoining the Association from restraining the debtor's student enrollment, the *Draughon* court reasoned that, (a) pursuant to 28 U.S.C. § 959, "[f]ederal bankruptcy law is not designed to displace valid state and local law that is not in conflict"[152] and (b) "[c]onsumer protection is a valid exercise of police and regulatory power for purposes of the [s]ection 362(b)(4) exemption from the automatic stay."[153]

---

[147] *See Midlantic Nat'l Bank*, 474 U.S. at 505 ("Title 28 U. S. C. § 959(b) provides additional evidence that Congress did not intend for the Bankruptcy Code to pre-empt all state laws."); *Am. Coastal Energy*, 399 B.R. at 810 ("A bankruptcy petition is not a grant of immunity. Bankrupt debtors are no different from any citizen in that they must comply with state and federal laws.").

[148] *See In re Northstar Offshore Grp., LLC*, No. 16-34028, 2020 Bankr. LEXIS 1811, at *36 (Bankr. S.D. Tex. Jul. 10, 2020) (A debtor's obligation to expend funds to bring the estate into compliance with a state health and safety law is not contingent upon whether the obligation arose before or after the bankruptcy filing. . . . The analysis must focus not on just when the obligation arose, *but whether the obligation continues to arise anew with the passage of each day*. (quoting *Am. Coastal Energy*, 399 B.R. at 809-10)) .

[149] 823 F. App'x 300, 304 (6th Cir. 2020).

[150] 119 B.R. 921, 922-23 (Bankr. W.D. La. 1990).

[151] *See Draughon*, 119 B.R. at 922-23.

[152] *Draughon*, 119 B.R. at 924.

[153] *Id.*; *see also In re Charter First Mtg., Inc.*, 42 B.R. 380, 382-85 (Bankr. D. Or. 1984) (finding Washington's Consumer Protection Act had a valid public purpose, and that the imposition of injunctive relief, penalties and attorney's fees on the debtor would further that purpose.).

61.      Other courts have similarly found that noncompliance with applicable state law and regulations constitutes grounds for dismissal.[154]  Here, the NRA does not even try to hide the fact that it is attempting to circumvent New York state law, which clearly proscribes dissolution without NYAG approval; it appears to be boasting about its attempted circumvention to play to its membership.  This case is the prototype case for dismissal.

### *3.   The NRA's Use of This Bankruptcy Constitutes Bankruptcy Fraud.*

62.      In using this bankruptcy to accomplish their scheme to escape New York and the NYAG, the NRA has committed bankruptcy fraud under 18 U.S.C. § 157.  This section provides, in relevant part that:

> A person who, having devised or intending to devise a scheme or artifice to defraud and for the purpose of executing or concealing such a scheme or artifice or attempting to do so—
>
> (1) files a petition under title 11, including a fraudulent involuntary petition under section 303 of such title;
>
> (2) files a document in a proceeding under title 11; or
>
> (3) makes a false or fraudulent representation, claim, or promise concerning or in relation to a proceeding under title 11, at any time before or after the filing of the petition, or in relation to a proceeding falsely asserted to be pending under such title,
>
> shall be fined under this title, imprisoned not more than 5 years, or both.[155]

---

[154] *In re Charles George Land Reclamation Tr.*, 30 B.R. 918, 924 (Bankr. D. Mass. 1983) ("The dismissal of this case was a recognition by this Court that the appropriate forum to redress and correct this environmental nuisance [that threatens the health, safety and well-being of the people who surround it] in the most expeditious and efficient manner was the State court."); *see generally Ky. Emple. Ret. Sys.*, 823 Fed. Appx. at 305 (Regardless of the NRA's non-profit status, courts have repeatedly held that a debtor in bankruptcy must comply with applicable state law.).

[155] 18 U.S.C. § 157(1)-(3). Generally, bankruptcy fraud involves "(1) a specific intent to defraud; (2) a scheme to defraud; and (3) filing a bankruptcy petition to conceal or execute that scheme."  *See United States v. Spurlin*, 664 F.3d 954, 964 (5th Cir. 2011).  *See also* 18 U.S.C. § 157; *United States v. Chaker*, 820 F.3d 204, 210 (5th Cir. 2016) (To demonstrate bankruptcy fraud, movant must show that the debtor "devised a scheme or artifice to defraud and that, for the purpose of executing that scheme, he made a false or fraudulent representation during a bankruptcy proceeding.").

63. "In bankruptcy court, honesty is so important that bankruptcy fraud is punishable as a crime under 18 U.S.C. § 157."[156] "The statute [18 U.S.C. § 157] makes the crime complete upon the filing of the bankruptcy petition when the filing is accompanied by the other two defined circumstances."[157] Success of the scheme is not an element of the crime.[158]

64. The statute is intended to be interpreted broadly.[159] Under the predecessor to this statute, which is instrumental,[160] courts held that the "scheme to defraud" is not defined according to technical standards. [161] Rather, such standard is the "reflection of moral uprightness, fundamental honesty, fair play, and right dealing in general and business life" of society's members.[162] It is therefore "not necessary that scheme be fraudulent on its face, but the scheme must involve some sort of fraudulent misrepresentation or omissions reasonably calculated to deceive persons of ordinary prudence and comprehension."[163] Indeed, "[t]he Supreme Court [has] recognized that the definition of 'scheme or artifice to defraud' is not to be limited to common law concepts of fraud and false pretenses."[164]

65. Here, the intent to defraud can and should be derived from the circumstances surrounding the NRA's affairs. Since the NRA, like all non-profits, seeks to voluntarily obtain funds from millions of unsuspecting consumers, the NRA's management are well aware that they need to comply with the laws governing its affairs, including its own bylaws. These laws and

---

[156] *In re Cardwell*, No. 09-43121, 2017 Bankr. LEXIS 1412, at *13 (Bankr. E.D. Tex. May 25, 2017).
[157] *United States v. Desantis*, 237 F.3d 607, 613 (6th Cir. 2001).
[158] *See Desantis*, 237 F.3d at 613.
[159] *See United States v. Louderman*, 576 F.2d 1383, 1388 (9th Cir. 1978) (quoting *United States v. Keane*, 522 F.2d 534, 544 (7th Cir. 1975), *cert. denied*, 424 U.S. 976 (1976) ("[T]he statute includes a broad proscription of behavior for the purpose of protecting society.").
[160] *Durland v. United States*, 161 U.S. 306 (1896); *Louderman*, 576 F.2d at 1388.
[161] *United States v. Van Dyke*, 605 F.2d 220, 225 (6th Cir. 1979), *cert. denied*, 444 U.S. 994 (1979).
[162] *Van Dyke*, 605 F.2d at 225.
[163] *Id.*
[164] *United States v. McNeive*, 536 F.2d 1245, 1247 (8th Cir. 1976) (explaining *Durland v. United States*, 161 U.S. at 312-13).

bylaws are intended to protect consumers, and when the NRA chose New York as its home jurisdiction, also the citizens of New York. Following such regulations ensures to the members and donors of the NRA that the organization is legitimate and uses their funds primarily to advance the NRA's stated mission.

66. The scheme or artifice is exposed through the NRA's litigation tactic of filing this bankruptcy. Without requoting the NRA's various representations to this Court and to the public (including its proposed special counsel and its bankruptcy counsel's statements, even during a hearing before this Court), the NRA clearly stated it is not insolvent, is not experiencing any financial hardship, and it is filing to streamline litigation and avoid the NYAG. The scheme or artifice is exposed by the fact that the NRA is using the equitable relief of bankruptcy to do what it is otherwise prohibited from doing—dissolving without NYAG approval in contravention of New York law. The scheme or artifice is exposed by the NRA situating this Bankruptcy Case outside of New York based on its affiliate's formation in Texas *just two months ago*, which affiliate is just a shell (and sham) company.

67. Sea Girt was formed a mere two months before the NRA used it to file this Bankruptcy Case. Sea Girt's sole managing member is the NRA.[165] The only allegations about Sea Girt in Debtors' *Informational Brief* are:

> Sea Girt is a single-member limited liability company organized under Texas law, and is wholly owned by the NRA. The NRA and Sea Girt currently maintain their headquarters and principal place of business in Fairfax, Virginia.[166]

> Sea Girt's operations are directed by the NRA as its sole managing member.[167]

---

[165] *See* NRA Bankr., ECF 28 ¶ 7; Sea Girt Bankr., ECF 1 at 13.
[166] *See* NRA Bankr., ECF 28 ¶ 6.
[167] *See* NRA Bankr., ECF 28 ¶ 7.

68.     On information and belief, Sea Girt does not have meaningful bills or debts, Sea Girt does not have its own place of business, and Sea Girt does not have employees.[168] Indeed, immediately preceding the statement that Sea Girt's operations are directed by the NRA, Debtors informed the Court that the NRA "employs approximately 490 people."[169] Supported by Sea Girt's scant disclosures, like having a creditor matrix comprised solely of two insiders,[170] it is apparent Sea Girt is a "mere shell, without substance" formed as a sham and fraud upon this Court *and* the NRA's creditors solely to promote the NRA's own interests in a manner not intended by Chapter 11.[171]

69.     Yet, it was Sea Girt that led the way in this Bankruptcy Case. Sea Girt filed a bare bones petition first, followed by the NRA. Three days later, after different judges in each case had been assigned, the NRA then elected to file first day motions for both cases in the NRA case—not the Sea Girt case—even though it was likely aware that this Court's internal rules require the first filed case—in this case, Sea Girt's—to govern any first day pleadings and joint consolidation. While hoping Sea Girt's existence was critical to venue being created for this filing, the NRA represented to the Court at the first day hearing that it naturally wanted to file in the NRA case because no one knew Sea Girt.[172] Given the recent timing and location of its formation, the lack of assets, employees and operations, and the minimal disclosures, one cannot escape the conclusion that Sea Girt and this bankruptcy filings are part of a larger scheme to break the law.

---

[168] *See generally In re Zed, Inc.*, 20 B.R. 462, 462-63 (Bankr. N.D. Cal. 1982). *See* Sea Girt Bankr., ECF 1 at 11; Sea Girt Bankr., ECF 20 (Sea Girt amended its initial petition to include a mere two creditors—the NRA and its Deputy Chief of Staff).
[169] *See* NRA Bankr., ECF 28 ¶ 7.
[170] Sea Girt Bankr., ECF 13.
[171] *See In re Zed, Inc*, 20 B.R. at 463 (holding that the Chapter 11 case was not filed in good faith).
[172] *See* First Day Motions Hr'g Tr. 25:20-26:1.

70. In *In re Alexandra Trust*, this Court found the debtor's stated purpose of consolidating litigation coupled with the fact that it had "no operations, employees, or income" clearly demonstrated the petition was filed as a litigation tactic, which constituted "cause" for dismissal.[173] The Court should repeat its finding in this case.

71. The NRA's scheme is apparent: move away from New York and to Texas, using first, its now dismissed MDL filing, and next through bankruptcy by forming a sham organization through which it can attempt to obtain jurisdiction of this Court. The NRA even admits as much when it told this Court that it attempted to "streamline" its litigation (in actuality only four lawsuits) through MDL, but when the parties objected, it chose to file this chapter 11 bankruptcy:

> And you should also understand, Your Honor, that prior to the Chapter 11, the lawyers for the NRA had reached out to a number of the parties, from the New York Attorney General's Office to various private parties who were in litigation with the NRA, about an MDL, a multidistrict litigation, **in which all of the litigation, or all of it certainly related to the Attorney General and to the investigation and to some of the litigation against former vendors and others, would be brought in a centralized forum and resolved that way**. And unfortunately, the parties, to an entity, refused. **And absent being able to streamline discovery and have all of this litigation, or much of it, handled in a centralized forum**, the NRA was indeed facing the adage, death by a thousand cuts.[174]

72. The NRA's fraudulent intent is clearly to avoid the jurisdiction and pressure from the New York government and to "streamline" litigation against itself while continuing to pursue its own claims against its opponents but at a delayed pace more amenable to not receiving a bad judgment.[175] The NRA's decision to incorporate bankruptcy into its litigation scheme is when it

---

[173] *See* 526 B.R. 668, 679-80 (Bankr. N.D. Tex. 2015).

[174] *See* First Day Motions Hr'g Tr. at 12:10-23 (Jan. 20, 2021). As an aside, the fact that the NRA argued that opposition to its attempted four-lawsuit-consolidation MDL is a basis for the Bankruptcy Case further demonstrates the NRA's intent—to manipulate those same four lawsuits in this forum. While other lawsuits are pending by and against the NRA, the NRA itself only focuses on those four.

[175] In a similar case as here, a court in this district found "bad faith" when underlying litigation was pending for 27-plus months but the debtor filed for bankruptcy only 13 days before trial. *See Pottorff*, 518 B.R. at 383-84. *See also* Texas Action, ECF 198 (In a status report to Judge Fish on whether the Bankruptcy Case stays the Texas Action, the

triggered potential ramifications for bankruptcy fraud under 28 U.S.C. § 157. When it actually pulled the trigger and filed on the Petition Date, is when the violation of Section 157(a)(1) was complete. As in *Pottorff*, there is "sufficient basis to dismiss the petition for a finding of bad faith for filing the petition to gain a litigation advantage and for being solvent."[176] Those acting in concert with the NRA (*i.e.*, the Brewer Firm and the NRA's bankruptcy counsel) are likewise liable for this bankruptcy fraud.[177]

### 4. *The NRA's Venue Shopping of This Case Is A Sign of Bad Faith.*

73. As discussed above, Sea Girt is a sham entity that the NRA formed just two months ago to manufacture venue for this bankruptcy. Inferred from the lack of any disclosure, Sea Girt has no assets, no officers, no employees, no governance documents, no operations, no offices, no bank accounts, and **only two insider creditors**: an employee of the NRA and the NRA itself.[178] Notably, Bankruptcy Rule 1007(d) and the clear instructions on Form 204 require a debtor only list **noninsider** creditors on its Top 20 List. However, LaPierre (the NRA's leader) verified Sea Girt's Top 20 List, under penalty of perjury, despite its obvious falsehood.[179]

74. In addition to the NRA's filing activities that conflict with well-settled internal rules of this Court, the NRA has also failed to provide *any* explanation for why this shell corporation, formed two months ago, needed to file bankruptcy at all, let alone in connection with the NRA. Indeed, the circumstances surrounding Sea Girt's "existence" remain hidden.

---

NRA stated its "position is that [its] claims against Defendants are not subject to the automatic stay of section 362(a) of the Bankruptcy Code, 11 U.S.C. § 362(a)," while "all of Defendants' counterclaims against [the NRA] are subject to the automatic stay.").
[176] *See Pottorff*, 518 B.R. at 385.
[177] *See United States v. Spurlock*, 214 Fed. Appx. 382, 387 (5th Cir. 2007) ("First, one need not be the named party in a bankruptcy proceeding to be guilty of conspiring to commit bankruptcy fraud.").
[178] *See* Sea Girt Bankr., ECF No. 20.
[179] *See* Sea Girt Bankr., ECF No. 21.

75. Indeed, the NRA, which has been in existence since 1871, has no legitimate purpose for forming a new shell in Texas less than 60 days ago.[180] The sole purpose for forming Sea Girt was to circumvent the venue statute, 28 U.S.C. § 1408, and allow the NRA to avail itself of this Court's jurisdiction. This flaunting of bankruptcy law further warrants dismissal.

76. If the NRA's tactics become the acceptable method of manufacturing venue, the bankruptcy venue statute would be rendered illusory. Any company could simply file wherever it wanted, in any jurisdiction of the United States, by following the NRA's straw-man strategy.

77. Bankruptcy Rule 1014(a)(2) expressly authorizes a court to dismiss a case filed in an improper venue, and 28 U.S.C. §1406(a) mandates dismissal if a transfer is not otherwise in the interest of justice.[181] Here, Sea Girt's petition was arguably filed in a proper forum because it is an organization formed in Texas. However, courts have expressly dismissed bankruptcy cases, on bad faith grounds, when forum shopping tactics have been employed. In *In re Zed, Inc.*, a bankruptcy court dismissed a bad faith filing where the debtor:

- was formed not even one full year before filing for bankruptcy;

- did not now have and has never had a bank account, nor has the debtor ever had any money whatever;

- never had any employees;

- never paid any bills or debts;

- did not have its own place of business; and

- was a mere shell, without substance and no capital whatever had been committed to the corporation for payment of creditors.[182]

---

[180] *See* NRA Bankr. ECF No. 63-1, Ex., E, Certificate of Formation at 1.
[181] *See, e.g., In re Houghton Mifflin Harcourt Publ'g Co.*, 474 B.R. 122, 124 (Bankr. S.D.N.Y. 2012) ("§ 1406 and its related caselaw leave the Court with no discretion.").
[182] *See* 20 B.R. at 463 (finding the corporation had no risk and the formation was a "sham and fraud upon" the creditors and court); *see also In re Asanda Air II LLC*, 600 B.R. 714, 725 (Bankr. N.D. Ga. 2019) (dismissal is warranted where

In other words, "[t]he principals of the corporation ha[d] absolutely nothing at risk." [183] Accordingly, in dismissing the case on bad faith grounds, the court held that the "[f]ormation of the debtor was a sham and a fraud upon [the creditor and the court]"[184] and "[t]he debtor and its principals have abused the jurisdiction of this Court," by using it to promote their own interests "in a manner not intended by Congress."[185]

78.     In *In re Hall, Bayoutree Assocs., Ltd.*,[186] the Ninth Circuit similarly affirmed the dismissal of an improperly filed case on bad faith grounds where a Texas limited partnership, whose principal asset was an apartment complex in Houston, Texas, filed for chapter 11 relief in the District of Arizona.  The court held that "[a]lthough dismissal of an action for improper venue is a harsh remedy, dismissal is proper where the filing in an improper forum evidences bad faith."[187]

79.     Here, dismissal is warranted because the NRA could not have filed bankruptcy in this jurisdiction without the use of a shell company formed in anticipation of the filing.  Not only does the shell need no reorganization, being less than two months old, it serves no other purpose than to permit this filing to appear legitimate.  Whether the Court should dismiss on this fact alone is within the Court's discretion.  However, when coupled with the NRA's other significant acts of bad faith and fraud, the Court clearly has substantial justification to dismiss this case.

---

venue brought in improper forum on bad faith); *Palmer v. Dau*, No. 6:10-cv-248-Orl-19KRS, 2010 U.S. Dist. LEXIS 69329, at *6 (M.D. Fla. July 12, 2010) ("When venue would be proper in another district under [section] 1391, transferr is preferred over dismissal unless there is evidence that a case was brought in an improper venue in bad faith or in an effort to harass a defendant.").

[183] *In re Zed, Inc.*, 20 B.R. at 463.
[184] *Id.*
[185] *Id.*
[186] *See generally* 939 F.2d 802 (9th Cir. 1991).
[187] *Bayoutree Assocs.*, 939 F.2d at 806 (citing 1 J. Moore, A. Vestal & P. Kurland, Moore's Manual, Federal Practice and Procedure, § 7.13[1] (1990); *cf. Phillips v. Illinois Cent. Gulf R.R.*, 874 F.2d 984, 986 (5th Cir. 1989)).

**B. In the Alternative to Dismissal, the Court Should Appoint a Trustee under Section 1104 for "Cause" and in the Interest of Creditors.**

80. In the alternative to dismissal, an independent trustee should be appointed to administer this case. Bankruptcy Code Section 1104(a) sets forth the circumstances under which the court *must* order the appointment of a Chapter 11 trustee:

> (a) At any time after the commencement of the case but before confirmation of a plan, on request of a party in interest or the United States trustee, and after notice and a hearing, the court shall order the appointment of a trustee—
>
> > (1) For cause, including fraud, dishonesty, incompetence or gross mismanagement of the affairs of the debtor by current management, either before or after the commencement of the case, or similar cause… or
> >
> > (2) If such appointment is in the interests of creditors, any equity security holders, and other interests of the estate.[188]

81. Based upon the evidence presented herein, exposing the NRA's bad faith intent for initiating this Bankruptcy Case, Debtors and their management have acted fraudulently and dishonestly. Therefore, "cause" exists for the appointment of a trustee and the Court must order such appointment.[189]

82. Furthermore, a paramount duty of a trustee in a bankruptcy case is to act on behalf of the bankruptcy estate, that is, for the benefit of all the creditors of the estate, and to administer the assets and business of the estate in the interest of those creditors. "A debtor in possession, like a trustee, is a fiduciary holding the bankruptcy estate and operating the business for the benefit of its creditors and (if the value justifies) equity owners."[190] The Bankruptcy Code provides a vehicle

---

[188] 11 U.S.C. § 1104(a)(1)-(2).
[189] *See* 11 U.S.C. § 1104(a).
[190] *In re CoServ, L.L.C.*, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002); *see also In re Office Prods. of Am., Inc.*, 136 B.R. 983, 986 (Bankr. W.D. Tex. 1992) ("In a Chapter 11 case, whether the debtor remains in possession of the prepetition assets and administers them for the benefit of the creditors, the debtor occupies a strictly fiduciary role.").

for appointment of a trustee when the debtor's principals fail to fulfill those rigorous responsibilities.[191] The standard for appointment of a chapter 11 trustee under section 1104(a)(2) is flexible.[192]

83. The appointment of a trustee under Section 1104(a)(2) is appropriate in this case because of the NRA's rampant mismanagement, corruption, and embezzlement by insider executives and board members, fraud, breaches of fiduciary duties, and a vexatious litigation as exposed by the NYAG, the Class Action plaintiff, and in the Texas Action.[193] Critically, those misdeeds were performed by, at the direction of, or with the approval of the NRA's leader for more than 40 years—LaPierre,[194] the same one who assumed sole authority to file this bankruptcy[195] (apparently without the approval of the NRA Board[196]), and the same one who is verifying the NRA's *and* Sea Girt's false filings, under penalty of perjury.[197] Neither the NRA, nor LaPierre at its helm, can realistically carry out the fiduciary duties of a debtor-in-possession toward creditors when *both* the NRA *and* LaPierre face liability for those misdeeds. Also important is that those same misdeeds affect the bankruptcy estate that the debtor-in-possession is required to maintain for the benefit of creditors. Indeed, it is likely that litigants against the NRA, like AMc, are the largest stakeholders in this Bankruptcy Case. Considering the highly contested nature of the pending lawsuits involving the NRA, plus the allegations of mismanagement, dishonesty, and

---

[191] *See* 11 U.S.C. § 1104(a)(1)-(2).

[192] *See In re Royal Alice Props., LLC*, 2020 Bankr. LEXIS 2354, *31 (Bankr. E.D. La. Sep. 4, 2020) ("Section 1104(a)(2) creates a flexible standard and allows the appointment of a trustee even when no 'cause' exists.").

[193] *See generally* Enforcement Action Compl. [https://ag.ny.gov/sites/default/files/summons_and_complaint_1.pdf]; *Dell'Aquila et al. v. Nat'l Rifle Ass'n*, No. 3:19-cv-00679 (M.D. Tenn.) ("**Class Action**"), 2d Am. Compl., ECF No. 43; Texas Action, ECF No. 31 at 77-122.

[194] *See* Enforcement Action Compl. at 34-68 (describing widespread violations of New York law of the NRA's senior management under the leadership and direction of LaPierre); Texas Action, ECF No. 31 at 82-84, 92-98, 110, 113 (describing LaPierre's wrongful conduct and control over NRA).

[195] *See* NRA Bankr., ECF No. 1 at 5.

[196] *See* NRA Bankr., ECF No. 114 at ¶ 116.

[197] *See e.g.*, NRA Bankr., ECF No. 1 at 4; Sea Girt Bankr., ECF No. 1 at 4.

breaches of numerous obligations, it is unfathomable that under current management, the NRA can now serve as a *fiduciary* to those litigant-creditors.

84. A trustee also is needed to investigate and preserve valid derivative claims against current and/or former management for the benefit of creditors. The bankruptcy estate clearly has an interest in asserting those claims, once confirmed.[198] Considering that the mismanagement, breaches of fiduciary duty, and fraud that has *apparently* gone unchecked for decades (which is one of the issues giving rise to the various lawsuits), it is clear that the Court cannot rely upon the NRA's current management to properly oversee these bankruptcy claims. This is especially so when taking into account the allegations against proposed special counsel itself (Brewer and the Brewer Firm) raised by *NRA* executives and board members,[199] in addition to outside litigants and journalists,[200] and the fact that the Brewer Firm will continue to direct the NRA's litigation strategy even here.

85. Thus, assuming the NRA is even entitled to the equitable relief bankruptcy provides, and that it even needs to reorganize at all, an independent fiduciary appointed by the Court is the best person to lead this bankruptcy, report to the Court and creditors and investigate, as necessary. The severity and corroboration of the allegations against the NRA's management in the various lawsuits, and the evidence presented in support thereof, have demonstrated that the

---

[198] *See, e.g.,* Texas Action, ECF No. 31 at 77, 92-95, 111, 113.

[199] *See, e.g.,* Texas Action, ECF No. 105 at ¶¶ 9-19 (compiling testimony from North and other NRA leaders regarding concerns about Brewer Firm) (ECF No. 105 is a redacted version of the brief accompanying ECF No. 79, which was filed under seal); *see also NRA v. North*, No. 903843-20 (N.Y. Sup. Ct. 2020), Doc. 12, Def.'s Ans. (former NRA president North describing concerns over Brewer Firm legal fees and retaliation for raising concerns with NRA leadership).

[200] *See, e.g.,* Class Action, ECF No. 43 at ¶¶ 46-48 (describing North's concerns about Brewer Firm and NRA spending); Will Van Sant, *Ex-NRA Execs Fear Attorney is Shielding LaPierre at the Group's Expense*, TRACE, (Nov. 24, 2020), https://www.thetrace.org/2020/11/nra-gun-lawsuits-bill-brewer-lapierre-attorney-legal-costs/ ("James's suit also takes aim at the NRA's relationship with Brewer's firm itself, alleging that the group has been reckless in expanding the firm's mandate and in the legal fees it has paid.").

NRA's management is entrenched and cannot realistically pursue a path moving forward in the best interest of the NRA's creditors, donors, partners, and other interests. They have not done so yet. And doing so would be against their own personal interests. That conflict is incurable.

86. Thus, allowing the NRA to remain in possession poses an unjustifiable risk to the creditors and to the public. If the NRA expects to promote its cause and survive, changes must be made. But that is not the intention of the NRA's current management and advisors. It is clear that they are using this bankruptcy instead as a tactic to cause delay and confusion in numerous lawsuits in numerous forums. This bankruptcy should be dismissed for its illegitimacy. But, to the extent this Court is inclined to let it proceed, the Court should appoint an independent chapter 11 trustee to oversee the NRA.

## V. **PRAYER**

Ackerman McQueen, Inc. concludes that the Bankruptcy Case should be dismissed as to the NRA and Sea Girt because (1) besides attempting to avoid the NYAG, the NRA is clearly using the equitable remedy of bankruptcy as a litigation tactic; (2) the NRA is attempting to circumvent New York's statutory requirements for dissolution; and (3) the NRA (and Sea Girt) is not insolvent nor experiencing financial hardship.

In the alternative to dismissal, AMc further concludes that the NRA cannot serve as debtor-in-possession because the NRA will be unable to manage the estate in the best interest of its creditors in compliance with its fiduciary duties as evidenced by (1) the allegations and evidence against the NRA in the various underlying cases concerning the NRA and its executives' mismanagement and (2) the very fact that NRA management is subjecting the NRA to this costly manipulation tactic to game the system.

WHEREFORE, AMc respectfully requests the Court enter an Order, substantially in the form attached hereto as Exhibit A, dismissing the Bankruptcy Case based upon a finding of bad faith under 11 U.S.C. § 1112(b), and/or based upon a finding of fraud in violation of 11 U.S.C. § 157; or in the alternative, authorizing the appointment of a chapter 11 trustee. The Court should also grant such other and further relief to which AMc may be entitled.

Date: February 10, 2021

Respectfully submitted,

**DORSEY & WHITNEY LLP**

*/s/ G. Michael Gruber*
**G. MICHAEL GRUBER**
State Bar No. 08555400
gruber.mike@dorsey.com
**H. JOSEPH ACOSTA**
State Bar No. 24006731
acosta.joseph@dorsey.com
**BRIAN E. MASON**
Texas Bar No. 24079906
mason.brian@dorsey.com
300 Crescent Court, Suite 400
Dallas, Texas 75201
Phone: (214) 981.9900
Facsimile: (214) 981.9901

**ATTORNEYS FOR ACKERMAN MCQUEEN, INC.**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing document has been served upon all parties named on the attached Master Service List by first-class U.S. Mail, and all parties receiving notice by and through the Court's CM/ECF system on February 10, 2021

*/s/ G. Michael Gruber*
G. MICHAEL GRUBER

**In re: Sea Girt LLC - Case No. 21-30080**
**In re: National Rifle Association of America - Case No. 21-30085**

## MASTER SERVICE LIST

### Debtor/Debtor's Counsel

National Rifle Association of America
11250 Waples Mill Road
Fairfax, VA  22030

Neligan LLP
Attn:   Patrick J. Neligan
          Douglas J. Buncher
          John D. Gaither
325 N. St. Paul, Suite 3600
Dallas, TX 75201
Email: pneligan@neliganlaw.com
          dbuncher@neliganlaw.com
          jgaither@neliganlaw.com

Sea Girt LLC
11250 Waples Mall Road
Fairfax, VA  22030

### U.S. Trustee

Office of the United States Trustee
Attn: Lisa Young
Earle Cabell Federal Building
1100 Commerce Street, Room 976
Dallas, TX  75242

### Secured Creditors

Atlantic Union Bank
Attn: Andrew Kalin
1800 Robert Fulton Drive, Suite 100
Reston, VA  20191
Email: andrew.kalin@atlanticunionbank.com

### 20 Largest Unsecured Creditors

Ackerman McQueen, Inc.
1601 Northwest Expressway
Oklahoma City, OK  73118-1438

Membership Marketing Partners LLC
11250 Waples Mill Road, Suite 310
Fairfax, VA  22030

Gould Paper Corporation
Attn: Warren Connor
99 Park Avenue, 10th Floor
New York, NY 10016

Under Wild Skies
201 N. Union Street, Suite 510
Alexandria, VA 22314

Quadgraphics
N63W23075 Hwy. 74
Sussex, WI 53089

Membership Advisors Public REL
11250 Waples Mill Road, Suite 310
Fairfax, VA 22030

Mercury Group
1601 NW Expressway, Suite 1100
Oklahoma City, OK 73118

Image Direct Group LLC
200 Monroe Avenue, Building 4
Frederick, MD 21701

TMA Direct, Inc.
12021 Sunset Hills Road, Suite 350
Manassas, VA 20109

Membership Advisors Fund Raising
11250 Waples Mill Road, Suite 310
Fairfax, VA 22030

Krueger Associates, Inc.
105 Commerce Drive
Aston, PA 19014

Infocision Management Corp.
325 Springside Drive
Akron, OH 44333

Valtim Incorporated
P.O. Box 114
Forest, VA 24551

Communications Corp of America
Attn: Judy Reid
13195 Freedom Way
Boston, VA 22713

Salesforce.Com, Inc.
One Mark St. – The Landmark, Suite 300
San Francisco, CA 94105

Speedway Motorsports, Inc.
P.O. Box 600
Concord, NC 28026

Google
1600 Amphitheatre Parkway
Mountain View, CA 94043-1351

United Parcel Services
P.O. Box 7247-0244
Philadelphia, PA 19170

Stone River Gear, LLC
P.O. Box 67
Bethel, CT 06801

CDW Computer Centers, Inc.
P.O. Box 75723
Chicago, IL 60675

## **Government Agencies**

Internal Revenue Service
P.O. Box 7346
Philadelphia, PA 19101-7346

Office of Attorney General (NY)
Attn: Letitia James
28 Liberty Street
New York, NY 10005

Office of Attorney General (DC)
Attn: Karl A. Racine
441 Fourth St., N.W., Suite 600-South
Washington, DC 20001

Mahmooth A. Faheem
Lori A. Butler
Pension Benefit Guaranty Corporation
1200 K NW
Washington, DC 20005-4026
mahmooth.faheem@pbgc.gov
butler.lori@pbgc.gov
efile@pbgc.gov

Office of Attorney General (TX)
Attn: Ken Paxton
P.O. Box 12548
Austin, TX 78711-2548

## Notice of Appearance

Laurie A. Spindler
Linebarger Coggan Blair & Sampson, LLP
2777 N. Stemmons Freeway, Suite 1000
Dallas, TX 75207
dallas.bankruptcy@publicans.com

Brian E. Mason
Dorsey & Whitney LLP
300 Crescent Court, Suite 400
Dallas, TX 75201
mason.brian@dorsey.com

Natalie L. Arbaugh
Winston & Strawn LLP
2121 N. Pearl Street, Suite 900
Dallas, TX 75201
narbaugh@winston.com

David Neier
Winston & Strawn LLP
200 Park Avenue
New York, NY 10166-4193
dneier@winston.com

G. Michael Gruber
Dorsey & Whitney LLP
300 Crescent Court, Suite 400
Dallas, TX 75201
gruber.mike@dorsey.com

H. Joseph Acosta
Dorsey & Whitney LLP
300 Crescent Court, Suite 400
Dallas, TX 75201
acosta.joseph@dorsey.com

Thomas M. Buchanan
Matthew Saxon
Winston & Strawn LLP
1901 L St., N.W.
Washington, DC 20036
tbuchana@winston.com
msaxon@winston.com

Tara LeDay
McCreary, Veselka, Bragg & Allen, P.C.
P.O. Box 1269
Round Rock, TX 78680
tleday@mvbalaw.com

Michael I. Baird
Pension Benefit Guaranty Corporation
1200 K St. NW
Washington, DC  20005-4026
baird.michael@pbgc.gov
efile@pbgc.gov

# EXHIBIT A
# PROPOSED ORDER

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **IN RE:** | § | **CHAPTER 11** |
| | § | |
| **NATIONAL RIFLE ASSOCIATION** | § | **Case No. 21-30085-hdh-11** |
| **OF AMERICA and SEA GIRT LLC,** | § | |
| | § | |
| **DEBTORS.** | § | **JOINTLY ADMINISTERED** |

<u>**ORDER ON MOTION TO DISMISS CHAPTER 11 BANKRUPTCY PETITION**</u>

COMES NOW Ackerman McQueen, Inc.'s *Motion to Dismiss Chapter 11 Bankruptcy Petition* (the "***Motion***"). Having reviewed the Motion and having heard the statements and evidence offered in support of the relief requested therein at a hearing before this Court, the Court determines that the legal and factual bases set forth in the Motion and at the hearing establish just cause for the relief granted herein. Accordingly, it is hereby **ORDERED** that:

1. The Motion is GRANTED.

2. The above-captioned case is dismissed without prejudice.

**###END OF ORDER###**

Order prepared by:

**DORSEY & WHITNEY LLP**
**G. MICHAEL GRUBER**
State Bar No. 08555400
gruber.mike@dorsey.com
**BRIAN E. MASON**
Texas Bar No. 24079906
mason.brian@dorsey.com
300 Crescent Court, Suite 400
Dallas, Texas 75201
Phone: (214) 981.9900
Facsimile: (214) 981.9901