| | |
|---|---|
| **NELIGAN LLP**<br>PATRICK J. NELIGAN, JR.<br>State Bar. No. 14866000<br>DOUGLAS J. BUNCHER<br>State Bar No. 03342700<br>JOHN D. GAITHER<br>State Bar No. 24055516<br>325 North St. Paul, Suite 3600<br>Dallas, Texas 75201<br>Telephone: 214-840-5333<br>Facsimile: 214-840-5301<br>pneligan@neliganlaw.com<br>dbuncher@neliganlaw.com<br>jgaither@neliganlaw.com<br>**PROPOSED CO-COUNSEL FOR DEBTORS AND DEBTORS-IN-POSSESSION** | **GARMAN TURNER GORDON LLP**<br>GREGORY E. GARMAN<br>Nevada Bar No. 6654, *pro hac vice* pending<br>WILLIAM M. NOALL<br>Nevada Bar No. 3549, *pro hac vice* pending<br>GABRIELLE A. HAMM<br>Texas Bar No. 24041047<br>7251 Amigo Street, Suite 210<br>Las Vegas, Nevada 89119<br>Telephone: 725-777-3000<br>Facsimile: 725-777-3112<br>ggarman@gtg.legal<br>wnoall@gtg.legal<br>ghamm@gtg.legal<br>**PROPOSED CO-COUNSEL FOR DEBTORS AND DEBTORS-IN-POSSESSION** |

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| IN RE: | § | CHAPTER 11 |
| | § | |
| NATIONAL RIFLE ASSOCIATION OF AMERICA and SEA GIRT LLC, | § § § | CASE NO. 21-30085-hdh11 |
| | § | |
| DEBTORS[1] | § § § | Jointly Administered |

**DEBTORS' APPLICATION FOR ENTRY OF AN ORDER AUTHORIZING AND APPROVING THE EMPLOYMENT OF GARMAN TURNER GORDON LLP AS CHAPTER 11 CO-COUNSEL FOR THE DEBTORS**

Sea Girt, LLC ("Sea Girt") and the National Rifle Association of America (the "NRA," and, together with Sea Girt, the "Debtors"), debtors and debtors-in-possession, file this application (the "Application") for entry of an order (the "Order"), substantially in the form attached hereto as **Exhibit A**, authorizing and approving the Debtors' employment and retention of Garman Turner Gordon LLP ("GTG") as co-counsel for the Debtors and granting related relief pursuant to Sections 327(a) and 328(a) of title 11 of the United States Code (the "Bankruptcy Code"), Rule

---

[1] The last four digits of the Debtors' taxpayer identification numbers are: 6130 (National Rifle Association of America) and 5681 (Sea Girt LLC).

2014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 2014-1 of the Local Bankruptcy Rules of the United States Bankruptcy Court for the Northern District of Texas ("N.D. Tex. L.B.R.").

In support of this Application, the Debtors submit and incorporate by reference the declarations of: (1) Gregory E. Garman, Esq. (the "Garman Declaration"), attached hereto as **Exhibit B**, which includes the disclosures required by Bankruptcy Rule 2014 and N.D. Tex. L.B.R. 2014-1; and (2) John Frazer, Esq. (the "Frazer Declaration"), attached hereto as **Exhibit C**. These declarations provide the verification required by the Appendix B *Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under United States Code by Attorneys in Larger Chapter 11 Cases* (the "UST Guidelines"). In further support of this Application, the Debtors respectfully state as follows:

## I. JURISDICTION AND VENUE

1. The Court has jurisdiction over this Application pursuant to 28 U.S.C. §§ 157 and 1334. Consideration of this Application is a core proceeding under 28 U.S.C. § 157(b)(2). The Debtors and BAC confirm their consent, pursuant to Bankruptcy Rule 7008, to the entry of a final order by the Court.

2. Venue is proper pursuant to 28 U.S.C. §§ 1408(1) and (2) and 1409(a).

3. The statutory predicates for this Application are Sections 327(a), 328(a) 1107(a), and 1108 of the Bankruptcy Code, Bankruptcy Rule 2014, and N.D. Tex. L.B.R. 2014-1.

## II. BACKGROUND

4. On January 15, 2020 (the "Petition Date"), the Debtors filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code, thereby commencing the above-captioned cases (the "Chapter 11 Cases") in this Court. A description of the Debtors' business, capital structure,

and the events leading to the Debtors' Chapter 11 Cases is set forth in the Declarations of Shawne E. Soto [Docket No. 10], Robert G. Owens [Dkt. No. 11], and Sonya B. Rowling [ECF No. 12] (the "First-Day Declarations") and Debtors' *Informational Brief in Connection with Voluntary Chapter 11 Petitions* [ECF No. 31] filed on January 20, 2021, which are incorporated herein by reference.

5.      On January 20, 2021, the Court entered an order [ECF No. 36] authorizing the joint administration and procedural consolidation of the Chapter 11 Cases pursuant to Bankruptcy Rule 1015(b).

6.      The Debtors remain in possession of their property and continue to operate and manage their business as a debtors-in-possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

7.      No trustee or examiner has been appointed in the Chapter 11 Cases. On February 8, 2021, Phillip Journey filed the *Motion for Appointment of Examiner* (the "Examiner Motion") [ECF No. 114].

8.      The United States Trustee (the "UST") appointed the Official Unsecured Creditors' Committee (the "Committee") on February 4, 2021.  ECF No. 105.

9.      In view of the size and complexity of the Debtors' reorganization and expected challenges from the Debtors' litigation opponents and other parties in interest, the Debtors have determined it is in their best interests to retain GTG as co-counsel for the Debtors to provide additional support and resources supplementary to the services of Neligan LLP ("Neligan") in connection with the reorganization and contested matters anticipated to arise in the Chapter 11 Cases.  On February 9, 2021, the Debtors approved the retention of GTG as co-counsel for the Debtors in the Chapter 11 Cases and approved the engagement letter between the Debtors and

GTG, effective as of January 25, 2021 attached to the Garman Declaration as Exhibit 1 (the "Engagement Agreement").[2]

10. GTG will represent the Debtors in coordination with Neligan and the Debtors' litigation counsel, Brewer, Attorneys & Counselors ("BAC"). Neligan, GTG, and BAC conduct regular, usually daily, conference calls (not charged to the Debtors) to coordinate the division of responsibilities and assignment of discrete tasks in connection with their representation of the Debtors so as to minimize duplication of services and ensure that the Chapter 11 Cases are administered as efficiently as possible. Debtors' counsel will continue to coordinate their services in order to avoid duplication throughout the Chapter 11 Cases.[3]

### III. RELIEF REQUESTED

11. By this Application, the Debtors seek to employ and retain GTG as general bankruptcy co-counsel for the Debtors in accordance with the terms and conditions set forth in the Engagement Agreement pursuant to Sections 327(a) and 328 of the Bankruptcy Code, to provide services to the Debtors that supplement the services provided by Neligan and other counsel. Consistent with N.D. Tex. L.B.R. 2014-1(b)(1), the Debtors request that GTG's employment be approved as of January 25, 2021, which is the date GTG first rendered services to the Debtors in these Chapter 11 Cases.

12. The Debtors also seek authorization to pay GTG a retainer in the amount of $650,000 (the "Retainer"), with $275,000 of the Retainer to be transferred from a retainer held in trust by the Debtors' litigation counsel, BAC, as of the Petition Date, and $375,000 of the Retainer to be paid by the Debtors.

---

[2] Frazer Decl., ¶¶ 5, 7.

[3] *See* Garman Decl., ¶ 4.

## IV. GTG'S QUALIFICATIONS

13. The Debtors have selected GTG to act as co-counsel with Neligan because of GTG's recognized expertise and extensive experience in the field of business reorganizations, including both out-of-court restructurings and cases under Chapter 11 of the Bankruptcy Code, creditors' rights, complex business litigation, insolvency-related litigation, and other areas of commercial law throughout the country. GTG has represented debtors, committees, lenders, and creditor groups in numerous complex restructurings, including, among others, *In re EB Holdings II, Inc.*, Case Nos. 17-12642-mkn and 19-16364-abl (D.Nev.); *In re Dynamic International Airways, LLC*, Case No. 17-10814 (M.D.N.C.); *In re Gump's Holdings, LLC, et al.*, Case No. 18-14683-mkn (D.Nev.); *In re Las Vegas Monorail Company*, Case Nos. 10-10464-btb and No. 20-14451-nmc (D.Nev.); *In re Fontainebleau Holdings, LLC, et al.*, Case No. 09-21481-BKC-AJC (S.D.Fla.); *In re Turnberry/MGM Grand Towers, LLC*, Case No. 15-13706-abl (D.Nev.); *In re Chico Health Imaging, LLC*, Case No. 17-20247 (E.D.Ca.); *In re Ahern Rentals, Inc.*, Case No. 11-53860-btb (D.Nev.); *In re Lake at Las Vegas Joint Venture, LLC*, Case No. 08-17814-mkn (D.Nev.); *Chrysler LLC, et al.*, Case No. 09-50002 (S.D.N.Y.).[4]

## V. SERVICES TO BE PROVIDED BY GTG

14. The services of GTG under a general retainer are appropriate and necessary to enable the Debtors to execute their duties as debtors and debtors-in-possession faithfully and to implement the restructuring and reorganization of Debtors by ensuring the Debtors have the necessary resources to respond to potential case issues efficiently and expeditiously. Subject to further order of this Court, it is proposed that GTG be employed as bankruptcy co-counsel to assist Debtors and their other professionals by rendering professional services, including:

---

[4] Frazer Decl., ¶ 7; Garman Decl., ¶ 5.

    (a)    Preparing necessary or appropriate motions, responses, and other papers in connection with contested matters, pending litigation, and outstanding claims, including regarding claims procedures, claims estimation, or litigation management;

    (b)    Advising and counseling the Debtors and their management regarding the Debtors' restructuring strategy, assisting the Debtors in the formulation of their plan of reorganization and disclosure statement, and prosecuting confirmation of a plan;

    (c)    Providing other specific services and assistance requested by the Debtors and/or Neligan in connection with the Debtors' reorganization and administration of their estates.

15.    GTG has stated its desire and willingness to render the necessary professional services as counsel to the Debtors pursuant to the terms of the Engagement Agreement.

16.    GTG will represent the Debtors in coordination with Neligan and the Debtors' litigation counsel, BAC. As set forth above, Neligan and GTG will coordinate the division of responsibilities and assignment of discrete tasks in connection with their representation of the Debtors to minimize duplication of services and ensure that the Chapter 11 Cases are administered as efficiently as possible. GTG will, at all points in time, work to avoid duplication of services to the Debtors in these Chapter 11 Cases.[5]

## VI. PAYMENT OF FEES AND EXPENSES

17.    GTG intends to apply for compensation for professional services rendered on an hourly basis and reimbursement of expenses incurred in connection with these Chapter 11 Cases, subject to the Court's approval and in compliance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the UST Guidelines, the Local Rules, and any other applicable procedures and orders of the Court. GTG will maintain detailed, contemporaneous records of time

---

[5] Garman Decl., ¶ 4.

and any actual and necessary expenses incurred in connection with the rendering of the legal services described above by category and nature of the services rendered.[6]

18. Subject to the Court's approval, GTG will charge for its legal services on an hourly basis in accordance with its ordinary and customary hourly rates in effect on the date services are rendered, which range from $235–$825 per hour for attorneys and $175–$215 per hour for paraprofessionals. Gregory E. Garman and Gabrielle A. Hamm will be primarily responsible for GTG's representation of Debtors in their Chapter 11 Cases and their hourly rates are $795 and $400, respectively. GTG's hourly rates are subject to periodic adjustment to reflect economic and other conditions.[7]

19. The hourly rates and corresponding rate structure GTG will use in these Chapter 11 Cases are the same as the hourly rates and corresponding rate structure that it uses in other restructuring and non-restructuring matters, whether in court or otherwise, and regardless of whether a fee application is required. GTG's hourly rates are set at a level designed to compensate GTG fairly for the work of its attorneys and paraprofessionals and to cover fixed and routine expenses, and its rates vary with the experience and seniority of the individuals assigned. These rates and the rate structure reflect that restructuring and other complex matters typically involve great complexity, high stakes, and severe time pressures and are comparable to the rates that other comparable counsel would charge to do work substantially similar to the work GTG will perform in these Chapter 11 Cases. The Debtors submit that such rates are reasonable in light of the quality of GTG's services and the depth and breadth of GTG's experience in Chapter 11 restructurings.[8]

---

[6] *Id.*, at ¶ 6.

[7] *Id.*, at ¶ 7.

[8] *Id.*, at ¶ 8.

20. GTG will also seek reimbursement of its expenses pursuant to its policies set forth in the Engagement Agreement. It is GTG's policy to charge its clients in all areas of practice for identifiable, non-overhead expenses incurred in connection with the client's case that would not have been incurred except for representation of that particular client, such as postage, overnight mail, courier delivery, transportation, overtime expenses, computer-assisted legal research, photocopying, airfare, meals, and lodging.[9]

21. GTG was retained subsequent to the Petition Date and has not received compensation for work to be performed in these Chapter 11 Cases. GTG is not currently holding a retainer and the Debtors are seeking authority to pay GTG the $650,000 Retainer as described above.[10] GTG previously represented the NRA in a discrete litigation matter that was concluded prior to the Petition Date. GTG was paid $30,666 in fees and reimbursed $1,076.45 in out-of-pocket costs in connection with that matter, and no fees or costs remain outstanding.[11]

22. Pursuant to Bankruptcy Rule 2016(b), GTG has neither shared nor agreed to share (a) any compensation it may receive with another party or person, other than with the partners, associates, and contract attorneys associated with GTG or (b) any compensation another person or party has received or may receive.[12]

## VII. DISCLOSURES CONCERNING CONFLICTS

23. To the best of Debtors' knowledge, information and belief, GTG represents no interests adverse to the Debtors. Other than matters disclosed in the Garman Declaration, neither

---

[9] *Id.*, at ¶ 9. Included in GTG's general overhead, and thus not charged as an expense to the client, are long-distance calls, conference calls using GTG's internal conference network, and the vast majority of the cost of electronic legal research using Westlaw.

[10] *Supra*, at ¶ 11.

[11] *Id.*, at ¶ 10.

[12] Garman Decl., ¶ 11.

GTG nor any of its partners or employees have any present or prior connection with Debtors, their creditors, the United States Trustee or persons employed by the Office of the United States Trustee, other parties-in-interest, or their respective attorneys and accountants. The Debtors believe that GTG is "disinterested" within the meaning of Sections 101(14) and 327 of the Bankruptcy Code, as modified by Section 1107(b) of the Bankruptcy Code, and that the employment of GTG is in the best interests of the Debtors and their estates.[13]

24. Upon receiving additional information regarding the Debtors' creditors and other parties in interest in these Chapter 11 Cases, GTG will conduct additional conflicts checks and will promptly supplement this Declaration to disclose any potential conflicts discovered.[14]

### VIII. ANSWERS TO QUESTIONS AND VERIFICATION REQUIRED BY THE UST GUIDELINES

25. Pursuant to the UST Guidelines, GTG answers the following questions:

    (a) **Question**: Did GTG agree to any variations from, or alternatives to, its standard customary billing arrangements for this engagement?

    **Answer**: No.

    (b) **Question**: Do any of the professionals included in this engagement vary their rate based on the geographic location of the bankruptcy case?

    **Answer**: No.

    (c) **Question**: If GTG represented the client in the 12 months prepetition, disclose its billing rates and material financial terms for the prepetition engagement, including any adjustments during the 12 months prepetition. If GTG's billing rates and material financial terms have changed postpetition, explain the difference and the reasons for the difference.

    **Answer**: GTG was retained by the NRA in 2019 in a matter which was concluded during the 12-month period preceding the Petition Date. GTG charged its standard rates then in effect, which ranged from $235–$785 per

---

[13] *Id.*, at ¶¶ 13-18.

[14] *Id.*, at ¶ 17.

>
> hour. GTG has not changed its billing rates or material financial terms post-petition.
>
> (d) **Question**: Has your client approved your prospective budget and staffing plan, and, if so, for what budget period?
>
> **Answer**: Yes, the NRA has approved a budget and staffing plan covering the first 60 days following the effective date of GTG's retention (through March 26, 2021).[15]

26. This Application is supported by the Declaration of John Frazer, attached hereto as **Exhibit C**, which contains the verified statement required by the UST Guidelines, Section D, governing applications for employment.

## IX. BASIS FOR RELIEF

The Debtors seek retention of GTG pursuant to Section 327(a) of the Bankruptcy Code, which provides that a debtor, subject to Court approval:

> [M]ay employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the [debtor] in carrying out the [debtor]'s duties under this title.

11 U.S.C. § 327(a). As set forth in Section 1107(b) of the Bankruptcy Code, a person "is not disqualified for employment under section 327 of this title by a debtor in possession solely because of such person's employment by or representation of the debtor before the commencement of the case." 11 U.S.C. § 1107(b).

Bankruptcy Rule 2014(a) requires that an application for retention include:

> [S]pecific facts showing the necessity for the employment, the name of the [firm] to be employed, the reasons for the selection, the professional services to be rendered, any proposed arrangement for compensation, and, to the best of the applicant's knowledge, all of the [firm's] connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants,

---

[15] Garman Decl., ¶ 12.

> the United States trustee, or any person employed in the office of the United States trustee.

Fed. R. Bankr. P. 2014.

The Debtors submit that for all the reasons stated above and in the Frazer Declaration, the retention and employment of GTG as counsel to the Debtors is warranted. Further, as stated in the Garman Declaration, GTG is a "disinterested person" within the meaning of Section 101(14) of the Bankruptcy Code, as required by Section 327(a) of the Bankruptcy Code, and does not hold or represent an interest adverse to the Debtors' estates and has no connection to the Debtors, their creditors, or other parties in interest, except as otherwise disclosed in the Garman Declaration.

Payment of the Retainer under the terms set forth herein is appropriate under Section 328 of the Bankruptcy Code, which authorizes the employment of professional persons "on any reasonable terms and conditions of employment, *including on a retainer*, on an hourly basis, or on a contingent fee basis." 11 U.S.C. § 328(a) (emphasis added).

The approval of post-petition retainers has been previously addressed in the Ninth Circuit case of *In re Knudsen Corp.*, 84 B.R. 668, 672-73 (B.A.P. 9th Cir. 1988) (confirming that "a bankruptcy court may authorize a retainer as part of a compensation agreement"). In determining whether to approve a fee retainer procedure, the *Knudsen* court relied on the following factors:

1. The case is an unusually large one in which an exceptionally large amount of fees accrue each month;
2. The court is convinced that waiting an extended period for payment would replace an undue hardship on counsel;
3. The court is satisfied that counsel can respond to any reassessment; and
4. The fee retainer procedure is, itself, the subject of a noticed hearing prior to any payment thereunder.

*Id*. at 672-73.

*Knudsen* has been widely followed and even expanded in courts across the country. *See In re Pittsburgh Corning Corp.*, 255 B.R. 162, 171 (Bankr. W.D. Pa. 2000) ("We also recognize that there may be factors other than those identified in *Knudsen* which may come into play in a given case...."); *In re Heritage Mall Assoc.*, 184 B.R. 128, 135 (Bankr. D. Or. 1995) ("Having determined that earned on receipt and classic retainers are not absolutely prohibited," the Court set forth additional factors to determine whether such a request was reasonable). In deciding the propriety of a post-petition retainer, in addition to those set forth in *Knudsen*, courts also consider the following factors:

1. The retainer's economic impact on the debtor's ongoing business operation;
2. The retainer's economic impact on the debtor's ability to reorganize;
3. The amount and the reasonableness of the retainer;
4. The reputation of the debtor's counsel; and
5. The ability of debtor's counsel to disgorge such payments at the conclusion of the case should the Court determine that the fees are not justified.

*In re Truong*, 259 B.R. 264, 268 (Bankr. D. N.J. 2001) (citing *In re Jefferson Bus. Crt. Assoc.*, 135 B.R. 676, 680 (Bankr. D. Colo 1992)). And, with respect to the reasonableness of the request for a retainer, courts consider:

1. Whether the terms of an engagement agreement reflect normal business terms in the marketplace;
2. The relationship between the Debtor and the professionals, i.e., whether the parties involved are sophisticated business entities with equal bargaining power who engaged in an arms length negotiation;
3. Whether the retention, as proposed, is in the best interests of the estate;
4. Whether there is creditor opposition to the retention and retainer provisions; and
5. Whether given the size, circumstances and posture of the case, the amount of the retainer is itself reasonable, including whether the retainer provides the appropriate level of "risk minimization" especially in light of the existence of any other "risk minimizing" devices, such as an

administrative order and/or carve out.

*In re Insilco Tech., Inc.*, 291 B.R. 628, 634 (Bankr. D. Del. 2003); *see also In re Pan American Hospital*, 312 B.R. 706, 712-13 (Bankr. S.D. Fla. 2004) (applying the *Knudsen* approach on the size of the case and the substantiality of counsel's need for the retainer with the *Insilco* approach on reasonableness).

Ultimately, however, and consistent with the ability to craft appropriate engagement terms under Section 328 of the Bankruptcy Code, the payment of a post-petition retainer is not prohibited by the Bankruptcy Code, as "[t]he provisions for employment and payment of a debtor's counsel in Chapter 11 are flexible and practical" and "[a] determination of whether, and in what amount, a retainer should be paid is best left to the parties and the discretion of the Court." *In re Jefferson Bus. Crt. Assoc.*, 135 B.R. at 680 (citing *In re NBI, Inc.*, 129 B.R. 212, 219 (Bankr. D. Colo. 1991)).

The terms of an Engagement Agreement reflect normal business terms in the marketplace and have been consistently approved in cases in which GTG is retained under Section 327 of the Bankruptcy Code. The Retainer is a security retainer that will be held in a trust account pursuant to N.D. Tex. L.B.R. 2016-1(b) and will not be drawn absent this Court's approval in compliance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the UST Guidelines, the Local Rules, and any other applicable procedures and orders of the Court.  Therefore, the oversight of this Court and interested parties regarding the payment of fees is fully preserved.  Any part of the Retainer not used, or any amounts of fees and costs not allowed ultimately by the Court, will be returned to the estates by GTG, which would have the ability to disgorge any payments at the conclusion of the case if the Court found the fees were not justified.[16]

---

[16] Garman Decl., ¶ 20.

Payment of the Retainer will not impact the Debtors' ongoing business operations or ability to reorganize, as the NRA has total assets of approximately $200 million.

Retaining GTG on the terms set forth in the Engagement agreement is necessary and in the best interests of the Debtors and their estates, as it will poise the Debtors to proceed expeditiously with their reorganization efforts. While Debtors were initially hopeful that they would be given a meaningful opportunity to reorganize their affairs, it has become evident that they will face opposition to even the most perfunctory of administrative tasks commonly approved in Chapter 11 cases, such as using their existing cash management system to avoid disruption and expense to their estates. As a result, the Debtors require additional assistance from GTG to supplement the services provided by Neligan, which, while providing considerable expertise of undeniable quality, is a small firm of only three attorneys and one paralegal. GTG will assist in case staffing so that the Debtors have a fair opportunity to utilize the protections afforded by the Bankruptcy Code and reorganize their affairs.

Further, given the size, circumstances, and posture of these Chapter 11 Cases, the amount of the Retainer is reasonable. GTG will perform a substantial amount of work for the estates during the administration of these cases, including assisting in contested matters and matters relating to outstanding claims and litigation that are expected to involve a high level of complexity and considerable time pressures. The requested Retainer is consistent with the amount that would ordinarily be requested by GTG in a case of this magnitude and has been heavily negotiated by GTG and the Debtors, both sophisticated parties on equal footing in the negotiations. Requiring GTG to perform such significant work without the benefit of a retainer would subject GTG to

unreasonable risk and undue burden as substantial firm resources are likely to be directed to these Chapter 11 Cases in a short timeframe.[17]

## X. PRAYER

WHEREFORE, based on the foregoing, the Debtors request that the Court enter an order, substantially in the form attached hereto, granting the relief requested in this Application and granting such other and further relief as is appropriate under the circumstances.

Dated:  February 10, 2021

National Rifle Association of America

By:  */s/ John Frazer*
John Frazer
Secretary and General Counsel

4847-5222-1402, v. 4

---

[17] *Id.*, ¶¶ 19, 20.