# EXHIBIT B

**Declaration of Gregory E. Garman in Support of Debtors' Application for Entry of an Order Authorizing and Approving the Employment of Garman Turner Gordon LLP as Chapter 11 Co-Counsel for the Debtors**

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| IN RE: | § | **CHAPTER 11** |
| | § | |
| **NATIONAL RIFLE ASSOCIATION OF** | § | **CASE NO. 21-30085-hdh11** |
| **AMERICA and SEA GIRT LLC,** | § | |
| | § | |
| **DEBTORS[1]** | § | **Jointly Administered** |
| | § | |

**DECLARATION OF GREGORY E. GARMAN IN SUPPORT OF
DEBTORS' APPLICATION FOR ENTRY OF AN ORDER AUTHORIZING
AND APPROVING THE EMPLOYMENT OF GARMAN TURNER
GORDON, LLP AS CHAPTER 11 CO-COUNSEL FOR THE DEBTORS**

I, Gregory E. Garman, state as follows pursuant to 28 U.S.C. § 1746:

1.      I am an attorney licensed to practice law in the State of Nevada, Nevada Bar No. 6654. I am a partner with the law firm of Garman Turner Gordon LLP ("GTG"). GTG maintains offices in Nevada at 7251 Amigo Street, Suite 210, Suite 100, Las Vegas, Nevada 89119

2.      I submit this Declaration in support of the Debtors' *Application for Order Authorizing Retention and Employment of Garman Turner Gordon, LLP as Counsel to the Debtors* (the "Application"),[2] filed by the National Rifle Association (the "NRA") of America and Sea Girt LLC ("Sea Girt" and, together with the NRA, the "Debtors"), pursuant to which the Debtors seek to employ GTG pursuant to the terms of the Engagement Agreement attached hereto as **Exhibit 1**. Except as otherwise stated, I have personal knowledge of each of the facts stated in this Declaration, which are true and correct to the best of my knowledge, information, and belief. If called as a witness, I could and would testify as to the matters set forth herein.

---

[1] The last four digits of the Debtors' taxpayer identification numbers are: 6130 (National Rifle Association of America) and 5681 (Sea Girt LLC).

[2] Capitalized terms not defined in this Declaration have the meanings set forth in the Application.

DECLARATION OF GREGORY E. GARMAN IN SUPPORT OF DEBTORS' APPLICATION FOR ENTRY OF
AN ORDER AUTHORIZING AND APPROVING THE EMPLOYMENT OF GARMAN TURNER GORDON LLP
AS CHAPTER 11 CO-COUNSEL FOR THE DEBTORS

1 of 8

3.      I have read the Application.  To the best of my knowledge, the statements set forth in the Application are true and correct, including statements made therein regarding GTG's qualifications and compensation rates.

4.      In view of the size and complexity of the Debtors' reorganization and expected challenges from the Debtors' litigation opponents, the Debtors determined it to be in their best interests to retain GTG to provide additional support and resources supplementary to the services of Neligan LLP ("Neligan") in connection with the reorganization and contested matters anticipated to arise in the Chapter 11 Cases.  GTG will represent the Debtors in coordination with Neligan and the Debtors' litigation counsel, Brewer, Attorneys & Counselors ("BAC").  Neligan, GTG, and BAC conduct regular, usually daily, conference calls (not charged to the Debtors) to coordinate the division of responsibilities and assignment of discrete tasks in connection with their representation of the Debtors to minimize duplication of services and ensure that the Chapter 11 Cases are administered as efficiently as possible.  GTG will, at all points in time, work to avoid duplication of services to the Debtors in these Chapter 11 Cases.

5.      The Debtors selected GTG to act as co-counsel because of GTG's recognized expertise and extensive experience in the field of business reorganizations, including both out-of-court restructurings and cases under Chapter 11 of the Bankruptcy Code, creditors' rights, secured transactions, complex business litigation, insolvency-related litigation, and other areas of commercial law.  GTG has represented debtors, committees, lenders, and creditor groups in numerous complex restructurings, including, among others, *In re EB Holdings II, Inc.*, Case Nos. 17-12642-mkn and 19-16364-abl (D.Nev.); *In re Dynamic International Airways, LLC*, Case No. 17-10814 (M.D.N.C.); *In re Gump's Holdings, LLC, et al.*, Case No. 18-14683-mkn (D.Nev.); *In re Las Vegas Monorail Company*, Case Nos. 10-10464-btb and No. 20-14451-nmc (D.Nev.);

Declaration of Gregory E. Garman in Support of Debtors' Application for Entry of     **2 of 8**
an Order Authorizing and Approving the Employment of Garman Turner Gordon LLP
as Chapter 11 Co-Counsel for the Debtors

*In re Fontaineblean Holdings, LLC, et al.*, Case No. 09-21481-BKC-AJC (S.D.Fla.);
*In re Turnberry/MGM Grand Towers, LLC*, Case No. 15-13706-abl (D.Nev.); *In re Chico Health Imaging, LLC*, Case No. 17-20247 (E.D.Ca.); *In re Ahern Rentals, Inc.*, Case No. 11-53860-btb (D.Nev.); *In re Lake at Las Vegas Joint Venture, LLC*, Case No. 08-17814-mkn (D.Nev.); *Chrysler LLC, et al.*, Case No. 09-50002 (S.D.N.Y.).

6.      GTG intends to apply for compensation for professional services rendered on an hourly basis and reimbursement of expenses incurred in connection with these Chapter 11 Cases, subject to the Court's approval and in compliance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the UST Guidelines, the Local Rules, and any other applicable procedures and orders of the Court.  GTG will maintain detailed, contemporaneous records of time and any actual and necessary expenses incurred in connection with the rendering of the legal services described above by category and nature of the services rendered.

7.      Subject to the Court's approval, GTG will charge for its legal services on an hourly basis in accordance with its ordinary and customary hourly rates in effect on the date services are rendered, which range from $235–$825 per hour for attorneys and $175–$215 per hour for paraprofessionals. Gabrielle A. Hamm and I will be primarily responsible for GTG's representation of Debtors in their Chapter 11 Cases and our hourly rates are $400 and $795, respectively.  GTG's hourly rates are subject to periodic adjustment to reflect economic and other conditions.  In the event GTG determines to raise its rates, GTG will provide the Debtors with prior notice and file a notice of the new rates.

8.      The hourly rates and corresponding rate structure GTG will use in these Chapter 11 Cases are the same as the hourly rates and corresponding rate structure used in other restructuring and non-restructuring matters, whether in court or otherwise and regardless of whether a fee

application is required. GTG's hourly rates are set at a level designed to compensate GTG fairly for the work of its attorneys and paraprofessionals and to cover fixed and routine expenses, and its rates vary with the experience and seniority of the individuals assigned. These rates and the rate structure reflect that restructuring and other complex matters typically involve great complexity, high stakes, and severe time pressures and are comparable to the rates that other comparable counsel would charge to do work substantially similar to the work GTG will perform in these Chapter 11 Cases. The Debtors submit that such rates are reasonable in light of the quality of GTG's services and the depth and breadth of GTG's experience in Chapter 11 Cases.

9.      GTG will also seek reimbursement of its expenses pursuant to its policies set forth in the Engagement Agreement. It is GTG's policy to charge its clients in all areas of practice for identifiable, non-overhead expenses incurred in connection with the client's case that would not have been incurred except for representation of that particular client, such as postage, overnight mail, courier delivery, transportation, overtime expenses, computer-assisted legal research, photocopying, airfare, meals, and lodging. Included in GTG's general overhead, and thus not charged as an expense to the client, are long-distance calls, conference calls using GTG's internal conference network, and the vast majority of the cost of electronic legal research using Westlaw.

10.     GTG was retained subsequent to the Petition Date and has not received compensation for work to be performed in these Chapter 11 Cases. GTG is not currently holding a retainer. In a prior litigation matter, discussed below, which was unrelated to the restructuring and concluded prior to the Petition Date, GTG was paid $30,666 in fees and reimbursed $1,076.45 in out-of-pocket costs, and no fees or costs remain outstanding.

11.     Pursuant to Bankruptcy Rule 2016(b), GTG has neither shared nor agreed to share (a) any compensation it may receive with another party or person, other than with the partners,

associates, and contract attorneys associated with GTG or (b) any compensation another person or party has received or may receive.

12.     Pursuant to the UST Guidelines, GTG answers the following questions:

    a.     **Question**: Did GTG agree to any variations from, or alternatives to, its standard customary billing arrangements for this engagement?

    **Answer**: No.

    b.     **Question**: Do any of the professionals included in this engagement vary their rate based on the geographic location of the bankruptcy case?

    **Answer**: No.

    c.     **Question**: If GTG represented the client in the 12 months prepetition, disclose its billing rates and material financial terms for the prepetition engagement, including any adjustments during the 12 months prepetition. If GTG's billing rates and material financial terms have changed postpetition, explain the difference and the reasons for the difference.

    **Answer**: GTG was retained by the NRA in 2019 in a matter which was concluded during the 12-month period preceding the Petition Date. GTG charged its standard rates then in effect, which ranged from $235–$785 per hour. GTG has not changed its billing rates or material financial terms post-petition.

    d.     **Question**: Has your client approved your prospective budget and staffing plan, and, if so, for what budget period?

    **Answer**: Yes, the NRA has approved a budget and staffing plan covering the first 60 days following the effective date of GTG's retention (through March 26, 2021).

13.     GTG is not a creditor of the Debtors.

14.     Neither GTG nor any partner or associate thereof holds equity securities or has an ownership interest in the Debtors.

15.     In connection with its proposed retention of GTG in these Chapter 11 Cases, GTG was provided with a list of the Debtors' creditors, the names of officers, directors, and affiliated entities, and other known parties in interest. GTG conducted a conflicts check in its client database,

DECLARATION OF GREGORY E. GARMAN IN SUPPORT OF DEBTORS' APPLICATION FOR ENTRY OF
AN ORDER AUTHORIZING AND APPROVING THE EMPLOYMENT OF GARMAN TURNER GORDON LLP
AS CHAPTER 11 CO-COUNSEL FOR THE DEBTORS

5 of 8

which includes GTG's clients and known principals and affiliates of those clients, to determine whether GTG had any conflicts or other relationships that might cause it not to be disinterested or to hold or represent an interest adverse to the Debtors or their estates.

16. Based on this review, to the best of my knowledge, neither I, GTG, nor any partner or associate thereof, insofar as I have been able to ascertain, have any present or prior connection with the Debtors, their creditors, other parties in interest, their respective attorneys and accountants, the Office of the United States Trustee for the Northern District of Texas or any employee thereof, except as follows:

(a) GTG represented the NRA in its 42 U.S.C. § 1983 lawsuit against the City and County of San Francisco and certain of its elected officials for violation of the NRA's First and Fourteenth Amendment rights after the San Francisco Board of Supervisors adopted Resolution 190841 calling for government officials to "assess the financial and contractual relationships our vendors and contractors have with [the NRA]," and to "take every reasonable step to limit those entities who do business with the City and County of San Francisco from doing business with [the NRA]."[3] GTG was paid $30,666 in fees and reimbursed $1,076.45 in out-of-pocket costs, the matter was concluded, and no fees or costs remain outstanding.

(b) William M. Noall, Esq., a GTG partner, is a lifetime member of NRA. Other GTG professionals have been members of the NRA in the past.

---

[3] *National Rifle Association of America v. City and County of San Francisco, et al.*, 1:19-CV-5669 (N.D. Cal. 2019). The NRA dismissed the action when, in response to the NRA's lawsuit, the Mayor and City Attorney issued a memorandum all City department heads advising that Resolution 190841 did not impose duties on City departments, change any of the City's existing laws or policies, or control City departments' exercise of discretion," and that "no department will take steps to assess the relationships between City contractors and the NRA, and no department will take steps to restrict any contractor from doing business with the NRA or to restrict City contracting opportunities for any business that has any relationship with the NRA," thereby mooting the action.

(c)     GTG has worked with BAC, Debtors' litigation counsel, in prior, unrelated matters. GTG or its attorneys may have professional connections to other attorneys who appear in these cases. GTG does not believe its professional relationship with BAC or other attorneys in these cases resulting from prior, unrelated engagements affects its qualification to serve as counsel to the Debtors.

17.     Upon receiving additional information regarding the Debtors' creditors and other parties in interest in these Chapter 11 Cases, GTG will conduct additional conflicts checks and will promptly supplement this Declaration to disclose any potential conflicts discovered.

18.     Accordingly, except as set forth herein, and based upon the information available to me, neither I, GTG, nor any partner or associate thereof, insofar as I have been able to ascertain, holds or represents any interest adverse to the Debtors or their estates in the matters upon which GTG is to be employed. Based upon the information available to me, I believe that GTG is a "disinterested person" within the meaning of Section 101(14) of the Bankruptcy Code, as modified by Section 1107(b) of the Bankruptcy Code.

19.     By the Application, the Debtors are seeking approval to pay GTG a retainer in the aggregate amount of $650,000 (the "Retainer"). The requested Retainer is consistent with, or less than, the amount that would ordinarily be requested by GTG in a case of this magnitude and has been heavily negotiated by GTG and the Debtors, both sophisticated parties, at arms' length.

20.     Any part of the Retainer not used, or any amounts of fees and costs not allowed ultimately by the Court, will be returned to the estates by GTG, which has the ability to disgorge any payments at the conclusion of the case if the Court found the fees were not justified. However, requiring GTG to perform the significant work expected in these Chapter 11 Cases without the

benefit of a retainer would subject GTG to unreasonable risk and undue burden as substantial firm resources are likely to be directed to these Chapter 11 Cases in a short timeframe.

21.     The foregoing constitutes the statement of GTG pursuant to Sections 329 and 504 of the Bankruptcy Code, and Bankruptcy Rules 2014(a) and 2016(b).

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury of the laws of the United States that these facts are true to the best of my knowledge and belief.

Dated: February 10, 2021                    By:  */s/ Gregory E. Garman*
       Las Vegas, Nevada                         Gregory E. Garman

4819-0029-1290, v. 3

# EXHIBIT 1

GARMAN
TURNER
GORDON

650 WHITE DRIVE
SUITE 100
LAS VEGAS, NV 89119
WWW.GTG.LEGAL
PHONE: 725 777 3000
FAX: 725 777 3112

February 5, 2021

Gregory E. Garman, Esq.
ggarman@gtg.legal

**VIA EMAIL & U.S. MAIL:**
The National Rifle Association of America
Sea Girt, LLC
Attn: John Frazer
11250 Waples Mill Road
Fairfax, VA 22030
John.Frazer@nrahq.org

Re:    Engagement of Garman Turner Gordon LLP

Dear Mr. Frazer:

Thank you for selecting Garman Turner Gordon ("we," "us," "our," or the "Firm") to provide legal services regarding the Matter described below. The terms in this letter ("Engagement Letter") together with the Standard Terms of Representation attached hereto as Exhibit A will describe the basis on which the Firm will provide the legal services. As we have discussed, the Firm's clients in this Matter will be the National Rifle Association of America (the "Association") and Sea Girt, LLC ("Sea Girt" and collectively with the Association "you," "your," or the "Client").

Subject to the Bankruptcy Court's approval of the engagement on the Matter, the Firm will be engaged, effective as of January 25, 2021, to represent the Association and Sea Girt in their pending reorganization proceedings pending in the United States Bankruptcy Court for the Northern District of Texas (the "Court"), jointly administered as case no: 21-30085 (the "Matter").

We have collectively understood and agreed that the Firm's representation is limited to the performance of services related to this Matter only. We may agree with you to further limit or expand the scope of the Firm's representation from time to time, but only if a change is confirmed in a writing signed by a partner of the Firm that expressly refers to this letter (a "Supplement").

You have agreed that our representation of the Client in this Matter does not give rise to a lawyer-client relationship between the Firm and any of the Client's affiliates; the representation being provided pursuant to this Engagement Letter is solely for you and we assume and will rely upon the assumption that all affiliates or other persons or entities will seek their own legal

representation with regard to the Matter. Accordingly, representation of the Client in this Matter will not give rise to any conflict of interest in the event other clients of the Firm are adverse to any of the Client's affiliates.

As a condition to accepting this representation, we will require, and you have agreed to provide a retainer. Because of the pending chapter 11 bankruptcy cases, no retainer can be provided without Court approval. However, upon approval of the Court, it has been agreed that a retainer of two hundred seventy-five thousand dollars ($275,000) will be transferred from funds being held in trust for the benefit of Client by Brewer, Attorneys & Counselors as well as a post-petition retainer, subject to Court approval, in the amount of three hundred seventy-five thousand dollars ($375,000) for an aggregate retainer of six hundred and fifty thousand dollars ($650,000). You understand that the receipt of such retainer is a condition to our engagement. The application of such retainer against fees, costs and expenses is subject to future order of the Bankruptcy Court.

The fees, costs and expenses relating to the Matter are not predictable. Accordingly, we have made no commitment to you concerning the maximum fees, costs and expenses that will be necessary to resolve or complete the Matter. However, it is our intent, with your cooperation, within the next seven days, to prepare a budget and staffing plan in connection with the Matter. However, any estimate of fees, costs and expenses that we may have discussed represents only an estimate of such fees, costs and expenses.

It is expressly understood that the Client's obligation to pay the Firm's fees, costs and expenses is in no way contingent on the ultimate outcome of the Matter. Unless otherwise agreed with you in writing, we reserve the right to deliver all billing statements to you via email.

The principal basis for computing our fees will be the amount of time spent on the Matter by various lawyers and legal assistants multiplied by their hourly billing rates. I will be the attorney in charge of the relationship and my hourly rate is $795. Our current rates for attorneys range from $235 per hour to $825 per hour. Time devoted by paraprofessionals, and project assistants are charged at billing rates ranging from $55 to $235 per hour. These billing rates are subject to change annually and the Client will be notified of any changes to those billing rates whether directly or by invoice. These applicable hourly rates are the Firm's prevailing rates for attorneys, law clerks and other professional and para-professional assistants.

Additional information regarding fees and other important matters appear in the attached Standard Terms of Representation, which is incorporated as part of this Engagement Letter and which you should review carefully before agreeing to our engagement on the Matter. This Engagement Letter is a binding legal document with significant consequences. The Client is encouraged to have it reviewed by other counsel of the Client's choice prior to execution by the Client. Please indicate your acceptance of the terms of this representation letter and the Standard Terms of Representation by signing and returning a copy of this Engagement Letter to me. Please call me if you have any questions. We look forward to working with you.

3 | P a g e

Sincerely,

**GARMAN TURNER GORDON**

GREGORY E. GARMAN, ESQ.

**AGREED TO AND ACCEPTED:**

The National Rifle Association of America

By: _____

Title: _____ EVP - NRA _____

Sea Girt, LLC

By: _____

Title: _____ General Counsel - NRA

3 | Page

Sincerely,

**GARMAN TURNER GORDON**

**GREGORY E. GARMAN, ESQ.**

AGREED TO AND ACCEPTED:

The National Rifle Association of America

By: _____

Title: _____

Sea Girt, LLC

By: _____

Title: _____

4|Page

### Exhibit "A"

## STANDARD TERMS OF REPRESENTATION

This document sets forth the standard terms of our engagement as your counsel. Except where expressly stated below, unless modified by a writing that expressly refers hereto signed by a partner of the Firm[1], these terms will be an integral part of our agreement with you. Therefore, we ask that you review this document carefully and contact us promptly if you have any questions. You should retain this document in your file.

### The Scope of Our Work

The legal services that the Firm will provide to you are described in our Engagement Letter or any Supplement thereto, which together with these Standard Terms of Representation, our Engagement Letter and any Supplement thereto constitute our legal contract with you. Our representation is limited to performance of the services described as the "Matter" in that Engagement Letter and any Supplement thereto and does not include representation of you or your interests in any other matter.

The only person or entity that we represent is the person or entity that is identified in our Engagement Letter as the "Client" and does not include any affiliates of such person or entity (*i.e.*, if you are a corporation or partnership, any parents, subsidiaries, employees, officers, directors, shareholders or partners of the corporation or partnership, or commonly owned corporations or partnership; or, if you are a trade association, any members of the trade association). Accordingly, for conflict of interest purposes, we may currently or at a later time agree to represent another client with interests adverse to any such affiliate without obtaining your consent.

Because we are not your general counsel, our acceptance of a Matter does not involve an undertaking to represent you or your interests in any other matter. In particular, the Firm's engagement on the Matter does not include responsibility for review of your insurance policies to determine the possibility of coverage for the claim asserted in the Matter, for notification of your insurance carriers about the Matter, or for advice to you about your disclosure obligations concerning the matter under the federal securities laws or any other applicable law. If you decide at any point that you wish to engage the Firm for other work, such engagement must be confirmed in a Supplement.

Either at the commencement or during the course of our representation, we may express opinions or beliefs concerning the litigation or various courses of action and the results that might be anticipated. Any such statement made by any lawyer of our Firm is intended to be an

---

[1] Capitalized Terms not defined in these Standard Terms of Representation shall have the meanings ascribed in the Engagement Letter and any Supplement thereto.

expression of our best professional judgment only, based on information available to us at the time, and should not be construed by you as a promise or guarantee.

## Who Will Provide the Legal Services

Customarily, each Client of the Firm is served by a principal lawyer contact. Subject to the supervisory role of the principal lawyer, your work or parts of it may be performed by other lawyers and legal assistants in the Firm. Such delegation may be for the purpose of involving lawyers or legal assistants with special expertise in a given area or for the purpose of providing services on the most cost efficient and timely basis.

## Client Responsibilities

You agree to pay our billing statements for services and expenses as provided below. In addition, you agree to be candid and cooperative with us and will keep us informed with complete and accurate factual information, documents and other communications relevant to the subject matter of our representations or otherwise reasonably requested by us. You agree to make Client's officers and employees available to attend trial, hearings, depositions and discovery conferences, and other proceedings, and to commit the appropriate personnel and sufficient resources to meet the Client's discovery obligations. In the event you perceive any actual or possible disagreement with the Firm or the Firm's handling of the Matter, you agree to promptly and candidly discuss the problem with the Firm. Because it is important that we be able to contact you at all times to consult with you regarding your representation, you will inform us, in writing, of any changes in the name, address, telephone number, contact person, e-mail address, state of incorporation or other relevant changes regarding you or your business. Whenever we need your instructions or authorization in order to proceed with legal work on your behalf, we will contact you at the latest business address we have received from you. If you affiliate with, acquire, are acquired by, or merge with another entity, you will provide us with sufficient notice to permit us to withdraw as your lawyer if we determine that such affiliation, acquisition, or merger creates a conflict of interest between any of our clients and the other party to such affiliation, acquisition, or merger, or if we determine that it is not in the best interests of the Firm to represent the new entity.

The Firm agrees to keep you informed as to the status of the Matter and as to the course of action which is being followed or is being recommended by the Firm. The Firm encourages you to participate in all major decisions involving the Matter. Unless otherwise directed by you, the Firm will provide you with copies at your cost, of all significant documents sent or received by the Firm in connection with the Matter. If, in the Firm's sole discretion, it appears that a conflict of interest has or may arise between two or more clients, then the Firm shall have the right to withdraw from representation of one of more of the clients and to continue the representation of any of the other clients.

All of the Firm's work product will be owned by the Firm and may be utilized in whole or in part by the Firm in other projects, subject to issues related to our duty of confidentiality. We

agree to make reasonably available to you all written materials we send or receive pertaining to these matters so long as our billing statements have been timely paid.

### Confidentiality of Communications

All communications between the Firm and you – whether written, oral or electronic – are confidential, and you agree to take all reasonable precautions to ensure that the confidentiality of these communications is preserved. This includes, at a minimum, ensuring that (i) written communications are not read by other persons, (ii) oral conversations are not overheard by other persons, (iii) electronic communications are not accessible by other persons, and (iv) the communications among you and any other clients the Firm is representing on the same Matter and the Firm are not disclosed by you to other persons.

### Insurance Coverage/Indemnification Agreements

You agree to advise the Firm as promptly as possible of any insurance policies or other agreements which may provide for insurance coverage, indemnification and/or payment of attorney's fees, costs and expenses, in whole or in part, with respect to the Matter.

### How Fees Will Be Set

The hourly rates of our lawyers and legal assistants are adjusted from time to time (usually on an annual basis) to reflect current levels of legal experience, changes in overhead costs, inflation and other factors. We will keep records of the time we devote to your work, including conferences (both in person and over the telephone), negotiations, factual and legal research and analysis, document preparation and revision, travel on your behalf, and other related matters. We record our time in units of tenths of an hour. Approval of our fees and costs is subject to approval by the Court.

### Costs and Expenses

We will charge the Client not only for legal services rendered, but also for other ancillary services provided. The Client agrees, subject to requisite Court approval, to reimburse the Firm for all out-of-pocket expenses paid by the Firm. Examples include application fees, investigative costs, title insurance premiums, travel expenses, witness fees, charges for serving and filing papers, costs for depositions, transcripts and filing fees, recording fees and fees for certifying documents. The Client also agrees to pay when billed for certain specified costs including for messenger services, computerized research services, postage, scanning and photocopying, notarial attestations and overtime clerical assistance. We do not charge for long-distance telephone toll charges or for sending or receiving faxes.

We will use an electronic document management program for managing documents created and received in the Matter. Conversion of those documents into the document management program will be billed as a cost for the Client. While our charges for these services are measured by use, they may not, in all instances, reflect our exact out-of-pocketcosts. The

7 | Page

precise cost of providing service is difficult to establish for many of these services. We charge such costs we charge at the rate representing reasonable charges in the community for such services. We would be pleased to discuss the specific schedule of charges for these additional services with you and to answer any questions that you may have. If you would prefer, in some situations we can arrange for these services to be provided by third parties with direct billing to you. Attached as **Exhibit "B"** is a list of typical cost items and their associated costs.

You authorize us to retain any other persons or entities in performing necessary services related to this Matter. Such other persons or entities may include, but are not limited to, Court reporters, escrow agents, appraisers, investigators, consultants, or experts necessary in our judgment to represent your interests in the representation. Their fees and expenses generally will not be paid by us, but will be billed directly to you. You agree to promptly pay the reasonable charges of every person or entity hired by the Firm to perform services related to the Matter.

## Billing Arrangements and Terms of Payment

We will bill you on a regular basis, normally each month, for fees, costs and expenses. If you have any questions or objections concerning a billing statement, you agree to raise them promptly for discussion. Such questions or objections shall be timely only if made within twenty (20) days from the delivery of the applicable billing statement. In all events, unless otherwise agreed to in a writing signed by us or prohibited by law, you agree to make payments within thirty (30) days of receiving our billing statement. We may give you notice if your account becomes delinquent, and in such event you agree to immediately bring the account or the retainer deposit current. Past-due bills will bear interest at the rate of one percent (1%) per month without notice. Should any bill become thirty (30) days past due, the Firm may choose to cease all work on the Client's behalf until all outstanding bills are paid in full. If the delinquency continues and you do not arrange satisfactory payment terms, we will withdraw from the representation and pursue collection of your account. You agree to pay the fees, costs and expenses related to preservation and pursuit of the Firm's claims against you and collecting the debt, including court costs, filing fees, and reasonable attorney fees and costs. Client and the Firm acknowledge that in the event the Firm is retained as legal counsel for a debtor-in-possession under the Bankruptcy Code, the award of legal fees, costs and expenses is subject to award and review by the United States Bankruptcy Court.

## Retainer and Trust Deposits

You as a client of the Firm are being asked to deposit a retainer with the Firm. After you do so, at the conclusion of our legal representation or at such time as the retainer deposit is unnecessary or is appropriately reduced, the remaining balance or an appropriate part of it will be returned to you. If the retainer deposit proves insufficient to cover current expenses and fees at some point during the representation, it may have to be increased.

All trust deposits we receive from you, including retainers, will be placed in a trust account for your benefit. Normally, pursuant to court rule, your deposit will be placed in a pooled account, and the interest earned on the pooled account will be payable to a charitable

8 | P a g e

foundation. Other trust deposits will also be placed in the pooled account unless you request a segregated account.

Retainers and Minimum Fees can be paid with check, or by wire transfer. If you chose to wire the funds we will provide wire instructions.

### Conflicts

The Firm represents many other entities and individuals. It is possible that some of the Firm's present or future clients will have disputes with you during this engagement. Therefore, as a condition to the Firm's undertaking this engagement, you agree that the Firm may continue to represent, or may undertake in the future to represent, existing or new clients in any matter that is not substantially related to the Matter, even if the interests of such clients in those other matters are directly adverse to you. The Client's prospective consent to conflicting representation contained in the preceding sentence shall not apply in any instance where, as the result of the Firm's representation of you, the Firm has obtained sensitive, proprietary or other confidential information that, if known to any such other client of the Firm, could be used in any such other matter by such client to the material disadvantage of you. In other words, we agree not to accept, without prior approval from you, any engagement known to be in direct conflict with your interests in the Matter. If, in the course of representing multiple clients, we determine in our sole discretion that a conflict of interest exists, we will notify all affected clients of such conflict and may withdraw from representing any one or more of the multiple clients, possibly including you, to the extent such a withdrawal would be permitted or required by applicable ethical rules.

### Termination and File Retention

You may at any time terminate our services and representation upon written notice to us. Such termination shall not, however, relieve you of the obligation to pay, subject to necessary court approval, for all services already rendered, including work in progress and remaining incomplete at the time of termination, and to pay for all expenses incurred on your behalf through the date of termination.

We reserve the right to withdraw from our representation (1) if you fail to honor the Engagement Letter, any Supplement thereto or these Standard Terms of Representation; (2) for any just reason as permitted or required under the Nevada Code of Professional Responsibility or by any appropriate court; (3) if you demand that we take action which we, in our discretion, determine would violate Rule 11 of the Federal Rules of Civil Procedure or any state or bankruptcy law derivative thereof; (4) if you fail to cooperate with us, make false statement or representations to us, or fail to pay us promptly as required by the terms hereof; or (5) as required or permitted by the applicable rules of professional conduct, all upon written notice to you. In the event that we terminate the engagement, we will take such steps as are reasonably practicable to protect your interests in the Matter, and you agree to take all steps necessary to free us of any obligation to perform further, including the execution of any documents necessary to perfect our withdrawal. We will be entitled to be paid for all services rendered and costs and expenses incurred on your behalf through the date of withdrawal. If permission for withdrawal is

required by a court, we will promptly request such permission, and you agree not to oppose our request. In the event of termination, you agree to pay us promptly, to the extend approved by the Court, for all services rendered plus all other charges or expenses incurred prior to such termination.

Unless previously terminated, our representation of you in the Matter will terminate upon our sending you our final statement for services rendered in the Matter.

The Client is responsible for maintaining its own copies of documents forwarded to it by the Firm. Following termination of our services, at your request, your papers and property will be returned to you upon receipt of payment of outstanding fees, costs and expenses. Otherwise, we agree to make a diligent effort, subject to casualties beyond our control, to retain and maintain all major and significant components of your papers and property relative to the Matter for a period of four (4) years following the conclusion of the matter. Our own files pertaining to the Matter will be retained by the Firm. These Firm files include, for example, firm administrative records, time and expense reports, personnel and staffing materials, and credit and accounting records; and internal lawyers' work product such as drafts, notes, internal memoranda, and legal and factual research, including investigative reports, prepared by or for the internal use of lawyers. All such documents retained by the Firm will be transferred to the person responsible for administering our records retention program. For various reasons, including the minimization of unnecessary storage expenses, we reserve the right to destroy or otherwise dispose of any such documents or other materials retained by us within a reasonable time after the termination of the engagement.

We shall be entitled to enforce our attorneys' retaining lien and attorneys' charging lien in accordance with Nevada law, so that, in the event you fail to pay the Firm as provided herein, the Firm may retain exclusive control of all your files as well as any property, monies, or original documents in the Firm's possession, until such fees, costs and expenses are paid in full. You hereby grant a power of attorney to counsel to execute any drafts or instruments payable to you, apply sums received to the Firm's outstanding billing statements, and remit any remaining funds to you.

After the conclusion of our representation, changes may occur in the applicable laws or regulations that could have an impact upon your future rights and liabilities. Unless you engage us after the conclusion of the Matter to provide additional advice on issues arising from the Matter, the Firm has no continuing obligation to advise you with respect to future legal developments.

### Governing Law and Rules of Professional Conduct

The Engagement Letter shall be interpreted and enforced in accordance with the laws of the State of Nevada, as amended from time to time. The Firm's services shall be governed by the Rules of Professional Conduct as adopted by the Nevada Supreme Court, as amended from time to time, without regard to where the services are actually performed. Any lawsuit, action or

proceeding arising out of or relating to this agreement shall only be instituted in a federal or state court located in Nevada.

## Disputes

JURY WAIVER. THE CLIENT AND THE FIRM VOLUNTARILY, IRREVOCABLY AND UNCONDITIONALLY WAIVE ANY RIGHT TO HAVE A JURY PARTICIPATE IN RESOLVING ANY DISPUTE, WHETHER SOUNDING IN CONTRACT, TORT, OR OTHERWISE, ARISING OUT OF, IN CONNECTION WITH, RELATED TO, OR INCIDENTAL TO THE RELATIONSHIP ESTABLISHED BETWEEN THEM IN CONNECTION WITH THE MATTER, THIS AGREEMENT, OR ANY OTHER AGREEMENT OR DOCUMENT EXECUTED OR DELIVERED OR CREATED IN CONNECTION HEREWITH OR THEREWITH OR ANY ACT OR TRANSACTION RELATED HERETO.

### Effort and Outcome

The Firm agrees to competently and diligently represent the Client in the Matter. The Client acknowledges that the Firm has given no assurances regarding the outcome of the Matter. You acknowledge that, in the event of a loss in a contested matter or adversary proceeding, you may be liable for the opposing party's attorney's fees and will be liable for the opposing party's costs as required by law. You further acknowledge that a suit brought solely to harass or coerce a settlement may result in liability for malicious prosecution or abuse of process.

### Commencement of Representation

If representation of the Client by the Firm in the Matter has commenced prior to the Firm receiving a copy of the Engagement Letter and any Supplement thereto signed by the Client and any required retainer, all such services rendered by the Firm are agreed to have been requested and provided pursuant to the terms of the Engagement Letter and any Supplement thereto.

### Privacy Policy of Garman Turner Gordon

Lawyers, as providers of certain personal services, may be required by the Gramm-Leach-Bliley Act (the "Act") to inform their clients of their policies regarding privacy of their information or the information of their constituents (such as employees, Officers, Directors, members, and/or donors). We understand your concerns as to privacy and the need to ensure the privacy of all your information. Your privacy is important to us, and maintaining your trust and confidence is a high priority. Lawyers have been and continue to be bound by professional standards of confidentiality that are even more stringent than those required by the Act. Therefore, we have always protected your right to privacy. The purpose of this notice is to

explain our Privacy Policy with regard to personal information about you that we obtain and how we keep that information secure.

Nonpublic Personal Information. To the extent we come to possess nonpublic personal information about an of your constituents (if, for example, suchinformation is provided to us by you to enable our representation of you or obtained by us with your authorization or consent, **we undertake not to disclose any such personal information during or after the representation of you to anyone, except as permitted by law and any applicable state ethics rules. In addition, we understand that such information may be protected by the First Amendment of the United States Constitution to the extent it may reveal the identity of an NRA supporter whose identity is not publicly known. We undertake to take great care to protect such information and to assert all applicable privileges and immunities to protect such information from disclosure to the utmost extent possible.**

We do not disclose any nonpublic personal information about current or former clients obtained in the course of representation of those clients, except as expressly authorized by those clients to enable us to effectuate the purpose of our engagement or as required or permitted by law or applicable provisions of codes of professional responsibility or ethical rules governing our conduct as lawyers.

Confidentiality and Security. We retain records relating to professional services that we provide so that we are better able to assist you with your professional needs and to comply with professional guidelines or requirements of law. In order to guard your nonpublic personal information, we maintain physical, electronic, and procedural safeguards that comply with our professional standards.

### Integration

The Engagement Letter, any Supplement thereto and these Standard Terms of Representation contain the entire agreement between the Client and the Firm regarding the Matter and the fees, costs and expenses relative to the Matter. The Engagement Letter and any Supplement thereto shall be binding upon the Client and the Firm and their respective heirs, executors, legal representatives and successors. These Standard Terms of Representation may be revised periodically. Any revision shall be delivered to the Client and be effective thirty (30) days after such delivery unless we have received an objection to the revision from the Client within such thirty (30) day-period.

### Authorization to Retain the Firm

The person signing the Engagement Letter on behalf of the Client acknowledges that he has the requisite power and authority to execute and deliver the Engagement Letter on behalf of the Client, and that the Client has duly authorized and approved all necessary action and consent to be taken by him with respect to the Matter.

12 | P a g e

## Exhibit "B"

### Chargeable Costs

| | | |
|---|---|---|
| 1. | Local Courier Messenger Services | $10.00 |
| 2. | Indexing (per tab) | .50 |
| 3. | Photocopying (per page) | .25 |
| 4. | Telephone Charge (long distance) | actual charge |
| 5. | Equifax | actual charge |
| 6. | Federal Express | actual charge |
| 7. | UPS Delivery | actual charge |
| 8. | Computerized Research | actual charge |
| 9. | Scanning (per page) | .25 |
| 10. | Electronic Filing and Retrieval Fees | actual charge |