**National Rifle Assn. of Am. v North, 69 Misc.3d 1201(A) (2020)**
130 N.Y.S.3d 925, 2020 N.Y. Slip Op. 51109(U)



Unreported Disposition
69 Misc.3d 1201(A), 130 N.Y.S.3d 925 (Table), 2020 WL 5884482 (N.Y.Sup.), 2020 N.Y. Slip Op. 51109(U)

**This opinion is uncorrected and will not be published in the printed Official Reports.**

**\*1** The National Rifle Association of America, Plaintiff,
v.
Oliver North, Defendant.

Supreme Court, Albany County
903843-20
Decided on October 2, 2020

CITE TITLE AS: National Rifle Assn. of Am. v North

### ABSTRACT

Actions
Stay

Plaintiff association's action seeking declaration that disciplinary proceeding should continue against defendant former officer stayed given substantial identity between it and related action by Attorney General seeking dissolution of association.

*National Rifle Assn. of Am. v North*, 2020 NY Slip Op 51109(U). Actions—Stay—Plaintiff association's action seeking declaration that disciplinary proceeding should continue against defendant former officer stayed given substantial identity between it and related action by Attorney General seeking dissolution of association. (Sup Ct, Albany County, Oct. 2, 2020, Platkin, J.)

### APPEARANCES OF COUNSEL

APPEARANCES:
Brewer, Attorneys & Counselors
Attorneys for Plaintiff
(William A. Brewer III and Svetlana M. Eisenberg, of counsel)
750 Lexington Avenue, 14th Floor
New York, New York 10022
Williams & Connolly LLP
Attorneys for Defendant
(Brendan V. Sullivan, Jr., pro hac vice, of counsel)
725 Twelfth Street, N.W.
Washington, D.C. 20005
(Alexander S. Zolan, and Steven M. Cady of counsel)
650 Fifth Avenue, Suite 1500
New York, NY 10019

### OPINION OF THE COURT

Richard M. Platkin, J.

Plaintiff National Rifle Association of America ("NRA" or "Association") commenced this action on June 12, 2020 against defendant Oliver North, a member, director and former officer of the Association.

Through an amended complaint filed on August 11, 2020, the NRA seeks a declaration that it will not be in violation of Not-For-Profit Corporation Law ("N-PCL") § 715-b if it moves **\*2** ahead with an internal disciplinary proceeding against North. The NRA also seeks to recover money damages from North based on alleged breaches of fiduciary and statutory duties. North joined issue by filing an answer to the NRA's amended complaint on August 31, 2020.

By notice of motion dated August 11, 2020, North moves pursuant to CPLR 2201 and the Court's inherent power for a stay of this action during the pendency of an action commenced by the Attorney General in Supreme Court, New York County on August 6, 2020 to dissolve the NRA (*see People of the State of New York v The National Rifle Association, Inc., et al.*, Index No. 451625-2020 ["Dissolution Case"]). The NRA opposes the requested stay.

BACKGROUND

A. The NRA's Amended Complaint

The NRA is a not-for-profit corporation organized under the laws of New York with its principal place of business in Fairfax, Virginia (*see* NYSCEF Doc No. 18 ["Amended Complaint"], ¶ 15). Lieutenant Colonel Oliver North (Ret.) ("North") is a member of the NRA and its board of directors, and he also served as the NRA's president in 2018 and 2019 (*see id*., ¶¶ 16, 18).

In addition to his uncompensated work with the NRA, North was employed since 2018 by Ackerman McQueen ("Ackerman"), the NRA's former advertising and communications firm (*see id*., ¶¶ 18, 49). In connection with that employment, North allegedly entered into a multi-million-dollar contract with Ackerman to produce a digital documentary series funded by the NRA (*see id*., ¶¶ 11, 41-49, 51-52). Thus, the Amended Complaint alleges that "North was hired by Ackerman to host a television show for which Ackerman was paid by the NRA, and North, at the same time, served as the NRA's Director and, in 2018/2019, as its President" (*id*., ¶ 41).

Under the NRA's Conflict of Interests Policy, "commercial transactions between a Director or an officer, on the one hand, and the NRA (or, under certain circumstances, a vendor it pays), on the other hand, must be reviewed and approved by the NRA's Board of Directors -- or a designated committee of the Board -- to ensure that the terms of the transaction serve the best interests of the NRA" (*id*., ¶ 41; *see id*., ¶ 42). The NRA alleges that North "defied the NRA's compliance efforts and refused to make necessary disclosures . . . about his lucrative contract with [Ackerman]" (*id*., ¶ 11). "And, when the NRA stood firm in its demand for transparency, North resorted to drastic measures: he led an unsuccessful effort to oust" the NRA's executive vice-president and chief executive officer, Wayne LaPierre, who is said to "have led the compliance effort" (*id*.).

Thomas J. King, an NRA life member who also serves as the executive director and chairman of the New York State Rifle and Pistol Association ("NYSRPA"),[1] filed an internal disciplinary complaint against North on August 5, 2019, seeking his expulsion from the Association under a provision of the NRA Bylaws that allows for the imposition of discipline, including expulsion, against a member "for good cause, including . . . any conduct as a member that is contrary to or in violation of the Bylaws" (*id*., ¶ 26; *see id*., ¶¶ 6, 39, 68).

King's complaint alleges that, "[s]ince at least . . . May 2018, North acted contrary to and in violation of the NRA's Bylaws, engaged in conduct that was disruptive of the orderly operation of the NRA in pursuit of its goals, and violated his obligation of loyalty to the NRA **\*3** and its objectives" (*id*., ¶ 68). Specifically, King alleges that: North and Ackerman concealed the terms of their contract from the NRA and resisted disclosure (*see id*., ¶¶ 41, 45-46); North was not an independent contractor to Ackerman, as the NRA had been led to believe, but rather an employee and fiduciary of Ackerman (*see id*., ¶ 49); and North and Ackerman had produced only a small portion of the documentary series for which the NRA had paid millions of dollars to Ackerman (*see id*., ¶¶ 51-52).

King's complaint further alleges that, "[w]hile resisting requests for full disclosure and refusing cooperation with the NRA's efforts to comply with [laws and internal policies], North conspired with [Ackerman] and others to manufacture allegations against the outside counsel for the NRA which was directing the NRA's compliance efforts" (*id*., ¶ 49). "Under the guise of being an 'independent' director, in or around March 2019, North wrote a letter to the NRA's Audit Committee raising purported concerns about the amount of the law firm's fees -- a measure designed to distract from scrutiny of North and . . . Ackerman" (*id*., ¶ 50). "This is an act that [North] now claims entitles him to whistleblower status" (*id*.).

Additionally, "in April 2019, North, in conspiracy with others, resorted to drastic behavior: an extortion scheme, the objective of which was to enrich himself and protect . . . Ackerman, at the expense of the NRA" (*id*., ¶ 53). Specifically, North is said to have delivered an ultimatum: Wayne LaPierre "must resign from his position as CEO of the NRA and support North's continued tenure as President"; otherwise, North and Ackerman would release damaging information concerning the NRA, LaPierre and other senior NRA officials (*see id*., ¶¶ 54-55).

According to King, North's wrongful actions "were undertaken to protect his own financial and personal interests and to insulate his employer, Ackerman, from review and scrutiny of its billing practices as a vendor to the NRA" (*id*., ¶ 68; *see also id*., ¶ 71).

The NRA's Ethics Committee took up King's complaint at a September 12, 2019 meeting and "determined that the charges . . . would warrant expulsion, and that [North] be expelled in the event the charges are proved or a hearing is not requested" (*id*., ¶ 72). After being advised of the complaint, North demanded a hearing, which was scheduled to commence on August 12, 2020 (*see id*., ¶¶ 73-76).

**National Rifle Assn. of Am. v North, 69 Misc.3d 1201(A) (2020)**
130 N.Y.S.3d 925, 2020 N.Y. Slip Op. 51109(U)

On May 18, 2020, North, through his counsel, sent a letter demanding that the NRA terminate the disciplinary proceeding (*see id*., ¶ 80). The letter stated that, "in or around April of 2019, [North] blew the whistle on alleged financial improprieties at the NRA and was therefore entitled to the protections of New York's whistleblower statute" (*id*., ¶ 81). North also "threatened to sue the NRA under the whistleblower statute if the NRA did not, in effect, cancel the hearing . . . and allow[] him to remain a member" (*id*.; *see also id*., ¶ 82).

The first and second causes of action alleged in the Amended Complaint seek declaratory relief related to what the NRA describes as "internal governance matters -- i.e., a disciplinary proceeding initiated against North by another NRA member in accordance with the NRA's Bylaws -- and a declaration that North -- through his actions -- forfeited his membership on the NRA's Board" (NYSCEF Doc No. 32 ["Opp Mem"] at 3; *see* Amended Complaint, ¶¶ 91-105). In this regard, the NRA asserts that North is not entitled to whistleblower protections under N-PCL § 715-b, as his reports of misconduct were not made in good faith but rather were intended to protect his own pecuniary and personal interests (*see* Amended Complaint, ¶¶ 8, 85-87). The NRA further maintains that North "cannot rely on New York's whistleblower statute to prevent the disciplinary proceedings from moving forward" (*id*., ¶ 8). The third and fourth causes of action seek money damages for North's alleged breaches of the fiduciary and statutory duties that **\*4** he owed to the NRA as an officer and director and for allegedly conspiring with others to violate those duties (*see id*., ¶¶ 11, 51-52, 106-119).

B. North's Answer

In his answer to the Amended Complaint (*see* NYSCEF Doc No. 41 ["Answer"]), North denies engaging in misconduct and alleges that the NRA is retaliating against him for reporting potential financial wrongdoing and inadequate governance to other NRA officers and directors.

The Answer begins by referencing the Attorney General's 160-page complaint in the Dissolution Case (*see* NYSCEF Doc No. 24 ["AG's Complaint"]), which was filed after North joined issue on the NRA's original complaint herein. The AG's Complaint, which is said to "detail[] years of widespread illegal conduct committed by the NRA and four of its officers, including . . . LaPierre," seeks "to dissolve the NRA, remove LaPierre, and permanently bar him from serving as an officer, director, or trustee of any New York not-for-profit organization" (Answer, ¶ 2). North emphasizes that the AG's Complaint "specifically alleges that the NRA has retaliated against [him] in violation of New York law" (*id*., ¶ 3, citing AG's Complaint, ¶ 636).

North alleges that, around the time he took office as NRA president in September 2018, "he heard disgusting allegations of financial misconduct related to the use of NRA member dues" (*id*., ¶ 4). In particular, North claims to have "discovered that the NRA had been making extraordinary payments to the law firm of its outside counsel William A. Brewer III based on enormous legal bills submitted by Brewer's law firm" (*id*.). These payments amounted to "over $1 million per month beginning in April 2018," increased to $1.8 million per month beginning in July 2018, with total billings reaching "$54 million between April 2018 and June 2020" (*id*.).

"Shocked by the magnitude of these legal fees, North sought the advice of the then-NRA

Board Counsel and exercised his fiduciary duty to the NRA's Board, members, and donors by reporting these potentially excessive legal fees to other officers and directors of the NRA, and demanding the NRA conduct an outside, independent, confidential investigation" (*id*., ¶ 5).

Allegedly upset by North's reporting of these matters to others within the NRA, including the Audit Committee, as well as by North's formation of a special committee of the board of directors to investigate the legal fees paid to Brewer,[2] LaPierre and Brewer allegedly acted to protect their own interests by blocking each of North's investigative attempts and "also embark [ing] on a scheme to denounce North, to defame him, and to expel him from the NRA" (*id*., ¶¶ 6-7). The NRA's acts of retaliation allegedly included:

> a. Blocking North's re-nomination as President of the NRA;
>
> b. Disbanding the NRA Board special committee formed by North before it could do any work;
>
> c. Inventing and publicly disseminating a false story that North had engaged in a "coup" and tried to "extort" LaPierre;
>
> d. Denying North indemnification that had been provided to other officers and directors of the NRA in connection with investigations and lawsuits related to the NRA, including investigations into the potential financial misconduct and inadequate governance reported **\*5** by North; and

**National Rifle Assn. of Am. v North, 69 Misc.3d 1201(A) (2020)**
130 N.Y.S.3d 925, 2020 N.Y. Slip Op. 51109(U)

e. Attempting to force North to resign from the NRA Board (*id*., ¶ 7).

The foregoing allegations are said to be consistent with the AG's Complaint, "which alleges that LaPierre acted 'to intimidate, punish, and expel anyone at a senior level who raised concerns about his conduct'" (*id*., quoting AG's Complaint, ¶ 2). The NRA's subsequent attempt to expel North from its membership on account of "a baseless complaint purportedly made by a LaPierre crony, Thomas J. King," allegedly constitutes further retaliation against North (*id*., ¶ 8, citing AG's Complaint, ¶¶ 471, 636).

Contrary to the NRA's claim that North did not raise his whistleblower concerns until May 2020, eight months after his receipt of King's complaint (*see id*., ¶ 10), North maintains that he "consistently raised his concerns about the NRA's retaliation in numerous letters to NRA officers and directors, including the NRA's general counsel, since Spring 2019" (*id*., ¶ 11). North also claims to have "specifically sought whistleblower protection from the NRA in a letter to the NRA's general counsel dated October 25, 2019" (*id*., ¶ 12; *see also* NYSCEF Doc No. 43).

The Answer also cites North's June 1, 2020 submission to the NRA Hearing Board of "a presentation in defense" of the disciplinary complaint, which "include[d] statements from numerous witness[es] with firsthand knowledge of the matters at issue," all of whom indicated that North acted in accordance with his fiduciary obligations when he reported potential financial misconduct and inadequate governance to other officers and directors of the NRA (Answer, ¶ 13; *see also* NYSCEF Doc No. 44). North's presentation also included "a lengthy analysis by Harvey Pitt, an expert on corporate governance [and] the former General Counsel and Chairman of the SEC," who concluded that North had acted in conformity with his "fiduciary, legal, and ethical responsibilities" to the Association (Answer, ¶ 13).

North asserts that his "conduct qualifies him as a whistleblower under New York law -- a fact consistent with and supported by [the AG's Complaint] -- and this Court should not issue an order allowing [him] to suffer retaliation for that conduct" (*id*., ¶ 14).

C. The Stay Motion

North argues that a stay of this action during the pendency of the Dissolution Case "will preserve judicial resources, prevent inconsistent results, and protect [his] rights" because the Dissolution Case "encompasses substantially all of the issues in this action" (NYSCEF Doc No. 22, ¶¶ 14-18).

The NRA opposes the stay application, arguing first that North's motion is procedurally improper under Rule 24 of the Rules of the Commercial Division. As to the merits, the NRA contends that a stay is not warranted because this action was commenced first, there is not a complete identity of parties and claims, there is no overlap in the relief sought, and a stay would prejudice the NRA by "delaying its ability to obtain timely needed relief" (Opp Mem at 4).

Remote oral argument on the motion was held on September 2, 2020, and this Decision & Order follows.

DISCUSSION

A. Rule 24

The NRA argues, as a threshold matter, that North's motion violates Rule 24 of the Rules of the Commercial Division, which states, in pertinent part: "Prior to the making or filing of a motion, . . . the moving party shall advise the court in writing . . . outlining the issue(s) in dispute and requesting a telephone conference" (22 NYCRR 202.70, Rule 24 [c]).

The purpose of Rule 24 is "to permit the court the opportunity to resolve issues before **\*6** motion practice ensues" (*id*. [a]). It is clear from the parties' written submissions and the oral argument held on September 2, 2020, however, that a consensual resolution of the stay application would not be possible. Under the circumstances, the Court will excuse North's non-compliance with Rule 24 (*see generally ADCO Elec. Corp. v McMahon*, 38 AD3d 805, 806 [2d Dept 2007]; *cf. Briarpatch Ltd., L.P. v Briarpatch Film Corp.*, 68 AD3d 520, 520 [1st Dept 2009]).

B. Stay

"Except where otherwise prescribed by law, the court in which an action is pending may grant a stay of proceedings in a proper case, upon such terms as may be just" (CPLR 2201). "Thus, a court has broad discretion to grant a stay in order to avoid the risk of inconsistent adjudications, application of proof and potential waste of judicial resources" (*Chaplin v National Grid*, 171 AD3d 691, 692 [2d Dept 2019] [internal quotation marks and citation omitted]; *see* Siegel & Connors, NY Prac § 255 [6th ed 2020] ["It is left to the court to determine what a 'proper case' is as a matter of discretion, which must be exercised with circumspection" (citation omitted)]).

"Although it is not dispositive on a motion to stay, the general rule in New York is that the court which has first taken jurisdiction is the one in which the matter should be determined and it is a violation of the rules of comity to interfere" (*Matter of PPDAI Group Sec. Litig.*, 64 Misc 3d 1208[A], 2019 NY Slip Op 51075[U], *5 [Sup Ct, NY County 2019] [internal quotation marks and citation omitted]). "The first to file rule, however, should not be applied mechanically irrespective of other considerations" (*id*. [citation omitted]).

Initially, it is apparent that the AG's Complaint in the Dissolution Case encompasses the bulk of the issues raised by the NRA's request for declaratory relief in this action. In a section of her complaint entitled "The NRA's Retaliation Against Dissidents on the Board," the Attorney General alleges that the NRA retaliated against North -- identified as "Dissident No. 1" -- for exercising his fiduciary duties as an NRA officer and reporting potential financial misconduct to others within the Association (*see* AG's Complaint, ¶¶ 444-475). The alleged retaliation is said to include the NRA's actions in "conducting an internal expulsion proceeding against [North]" (*id*., ¶ 471). On the basis of these allegations, the Attorney General's fifteenth cause of action seeks a judgment removing LaPierre and other NRA officers and directors from their positions for retaliating against North and other whistleblowers in violation of N-PCL § 715-b (*see id*., ¶¶ 633-637).[3] Additionally, the cause of action for dissolution of the NRA is predicated, in part, on the unlawful retaliation allegedly inflicted upon North (*see id*., ¶¶ 567, 573).

If the evidence adduced in the Dissolution Case establishes that the NRA caused the initiation of disciplinary proceedings against North in retaliation for his good-faith reports of **7** illegal or improper conduct, it seems doubtful that the NRA would be entitled to the declaration that it seeks here: that N-PCL § 715-b does not preclude it from imposing discipline upon North, including expulsion, so long as the NRA follows the disciplinary process prescribed in the Bylaws (*see* Amended Complaint, Demand for Relief [1]; *see generally Joshi v Trustees of Columbia Univ.*, 2018 WL 2417846, *10-12, 2018 US Dist LEXIS 89280, *31-36 [SD NY May 29, 2018, 17-CV-4112 (JGK)]).[4]

To be sure, the Court recognizes that there is not a full identity of issues, as the Amended Complaint seeks the recovery of money damages for North's alleged breaches of fiduciary and statutory duties, as well as for his alleged conspiracy to violate such duties (*see* Oral Arg Tr at 9-12).[5] In this regard, the NRA alleges that North "engag[ed] in obstructive behavior to protect his lucrative contract with Ackerman and impede the NRA's compliance efforts" (Amended Complaint, ¶ 109). The NRA further alleges that, "in an effort to conceal his wrongful conduct, North agreed and conspired with multiple parties . . . to damage the NRA's reputation, extort [LaPierre], promulgate false and misleading information, and otherwise deflect scrutiny away from North's and his co-conspirators' malfeasance" (*id*., ¶ 117).

Although the NRA's damages claims are not directly at issue in the Dissolution Case, the AG's Complaint is predicated on factual allegations that bear heavily on these claims. Thus, while the NRA seeks to recover damages for North's alleged concealment of his lucrative employment relationship with Ackerman, the AG's Complaint alleges, mirroring North's Answer, that LaPierre himself "negotiated" the employment contract in order to persuade North to accept the "unpaid position" of NRA president (AG's Complaint, ¶¶ 444-451, 465; *see* Answer, ¶ 11). Further, if North were found in the Dissolution Case to be a whistleblower who acted in good faith, the NRA's allegation of "obstructive behavior" here (Amended Complaint, ¶ 109) would have to be viewed in a very different light.

In addition to the absence of a complete identity of issues, the NRA also emphasizes that there is not a complete identity of parties. North is not a party to the Dissolution Case, and the four individual defendants named in the Dissolution Case are not parties to this action.[6] The NRA also stresses that the relief sought herein -- a declaration of rights concerning its internal affairs and money damages -- is very different from the relief sought by the Attorney General: dissolution of the NRA, removal of certain officers and directors, the voiding of allegedly illegal **8** transactions, and payment of restitution (*see* AG's Complaint, Prayer for Relief).

On the other hand, North obviously is a key fact witness in the Dissolution Case, and there is a substantial argument that any issues decided in that case against the NRA will be entitled to preclusive effect in this case, even in the absence of a complete identity of parties (*see Buechel v Bain*, 97 NY2d 295, 304, 315 [2001]; *see Matter of Susan UU. v Scott VV.*, 119 AD3d 1117, 1120 [3d Dept 2014] ["respondent is entitled to assert collateral estoppel notwithstanding the fact that he was not a party to the (other) action, as mutuality is not required" (internal quotation marks and citation omitted)]). Likewise, North may be bound by a judgment adverse to the positions he takes here to the extent that he is found to be in privity with the Attorney General with

respect to the whistleblower claim (*see e.g. Amalgamated Sugar Co. v NL Indus., Inc.*, 825 F2d 634, 641 [2d Cir 1987]; *Walter E. Heller & Co., Inc. v Cox*, 343 F Supp 519, 524 [SD NY 1972], *affd* 486 F2d 1398 [2d Cir 1973]). Thus, the determinations made in the Dissolution Case may serve as a basis for granting or withholding the relief sought in this case.[7]

Given the substantial identity between the two actions and the significant likelihood that determination of the Dissolution Case will dispose of this case or limit the issues to be adjudicated, the Court finds, in the exercise of discretion, that a stay is warranted to "preserve judicial resources, further the interest of justice by preventing inequitable results and promote orderly procedure by furthering the goals of comity and uniformity" (*Concord Assoc., L.P. v EPT Concord, LLC*, 101 AD3d 1574, 1575 [3d Dept 2012]).[8]

In this connection, the Court rejects the NRA's reliance on authorities requiring a "'complete identity'" of parties, claims and requested relief (Opp Mem at 10, quoting *Abrams v Xenon Indus.*, 145 AD2d 362, 363 [1st Dept 1988]). The line of cases relied upon by the NRA has been expressly rejected by the Appellate Division, Third Department as "not uniform" and constituting an overly rigid interpretation of CPLR 2201's highly discretionary standard (*National Mgt. Corp. v Adolfi*, 277 AD2d 553, 555 [3d Dept 2000] [citation omitted]; *see Concord Assoc.*, 101 AD3d at 1575; *see also Asher v Abbott Labs.*, 307 AD2d 211, 211-212 [1st Dept 2003]; *Research Corp. v Singer-Gen. Precision, Inc.*, 36 AD2d 987, 988 [3d Dept 1971]).

The Court further finds that the prejudice to North from being forced to defend against this action during the pendency of the Dissolution Case outweighs any prejudice to the NRA that might result from the stay. The NRA clearly has greater financial resources than North, and it is questionable whether North would be entitled to indemnification from the NRA for his legal fees **\*9** and other expenses incurred in defending against this action (*see* NYSCEF Doc No. 20 at 33-38). Thus, denial of the stay would require North to expend substantial sums to litigate many of the same issues that are the subject of the Dissolution Case. Moreover, this litigation may itself be part of the retaliation allegedly inflicted upon North for his whistleblowing activities.[9] On the other hand, the Court discerns little, if any, prejudice to the NRA if this case is stayed during the pendency of the Dissolution Case.[10]

Finally, while this action was commenced first, the more comprehensive nature of the Dissolution Case, which is prosecuted by the Attorney General as the regulator of New York not-for-profit corporations, and the fact that both cases remain at their earliest stages counsel against a mechanical application of the first-to-file rule (*see AIG Fin. Prods. Corp. v Penncara Energy, LLC*, 83 AD3d 495, 495 [1st Dept 2011]; *cf. Matter of PPDAI Group Sec. Litig.*, 2019 NY Slip Op 51075[U], *5).

CONCLUSION

Accordingly,[11] it is

ORDERED that defendant's motion for a stay of this action pending determination of *People of the State of New York v The National Rifle Association of America, Inc., et al.*, Index No. 451625-2020 is granted; and it is further

ORDERED that this action is stayed pending further order of court.

This constitutes the Decision & Order of the Court, the original of which is being uploaded to NYSCEF for entry by the Albany County Clerk. Upon such entry, counsel for defendant shall promptly serve notice of entry on plaintiff.

Dated: October 2, 2020

Albany, New York

RICHARD M. PLATKIN

A.J.S.C.

Papers Considered: NYSCEF Nos. 1-2, 12-16, 18-25, 32-36, 41-47.

**FOOTNOTES**

Copr. (C) 2021, Secretary of State, State of New York

**Footnotes**

**National Rifle Assn. of Am. v North, 69 Misc.3d 1201(A) (2020)**
130 N.Y.S.3d 925, 2020 N.Y. Slip Op. 51109(U)

1 NYSRPA "is an official NRA-affiliated State Association which is the largest and oldest Second Amendment advocacy organization in New York" (*id.*, n 2).

2 North later learned of allegations that "LaPierre . . . had corruptly received hundreds of thousands of dollars in clothing and personal air, limo, and other travel charges, as well as other benefits. Allegations also surfaced in the press that the NRA was in violation of the laws governing tax-exempt organizations" (*id.*, ¶ 5).

3 The NRA recently stated its intention to file a motion to strike certain portions of North's Answer, specifically those that rely on allegations of the AG's Complaint (*see* NYSCEF Doc No. 46). However, even if those portions were stricken, it remains clear that the AG's Complaint is based, in pertinent part, on the allegations of retaliation set forth in North's initial answer and in the supporting documents filed in this action on July 22, 2020 (*see* NYSCEF Doc Nos. 12-16). Thus, any alleged improprieties in North's Answer would not affect the disposition of this motion.

4 At oral argument, the Court inquired into the basis of the NRA's assertion that N-PCL § 715-b would not "prevent the disciplinary proceedings from moving forward," even if North were proven to be a protected whistleblower (*see* Amended Complaint, ¶ 8). The NRA failed to provide a clear answer (*see* NYSCEF Doc No. 47 ["Oral Arg Tr"] at 7-8), but it appears that the NRA takes the position that King's initiation of the disciplinary process in his role as an NRA member was independent of, and unrelated to, the alleged retaliation. North disagrees, dismissing King as "a LaPierre crony" (Answer, ¶ 8).

5 The NRA amended its complaint to add these causes of action on August 11, 2020, following the Attorney General's commencement of the Dissolution Case on August 6, 2020.

6 In addition to the NRA, the Attorney General has sued LaPierre, Wilson "Woody" Phillips, who served as the NRA's *ex officio* director, treasurer and chief financial officer, Joshua Powell, a former officer, *de facto* officer or "key person" of the NRA, and John Frazer, the Association's secretary and general counsel (*see* AG's Complaint, ¶¶ 18-21).

7 Of course, if the Attorney General prevails in obtaining the dissolution of the NRA, the issues raised by this action may well be rendered academic.

8 It also bears emphasis that "[t]he primary purpose of a declaratory judgment is to adjudicate the parties' rights before a 'wrong actually occurs in the hope that later litigation will be unnecessary'" (*Klostermann v Cuomo*, 61 NY2d 525, 538 [1984], *quoting Matter of Morgenthau v Erlbaum*, 59 NY2d 143, 148 [1983], *cert denied* 464 US 993 [1983]), and "[t]he decision to entertain an action for declaratory judgment is a matter committed to the sound discretion of Supreme Court, which may decline to consider such relief where other adequate remedies are available" (*Clarity Connect, Inc. v AT & T Corp.*, 15 AD3d 767, 767 [3d Dept 2005]). Thus, the fact that the Attorney General already is seeking coercive relief in the Dissolution Case on the basis of her allegations that the NRA is engaging in unlawful retaliation against North further counsels against proceeding with the portion of this action seeking declaratory relief at this time.

9 Although North is "not asking th[is] Court to stop th[e] internal [expulsion] procedure" (Oral Arg Tr at 15; *see id*. at 27-28), the NRA asks the Court to place its judicial imprimatur on the process.

10 The NRA laments that the Dissolution Case "will not be resolved imminently or quickly" (Opp Mem at 11), but the same likely is true of this highly fact-intensive case.

11 Given the foregoing, the NRA's request for counsel fees pursuant to 22 NYCRR 130-1.1 on account of North's

**National Rifle Assn. of Am. v North, 69 Misc.3d 1201(A) (2020)**
130 N.Y.S.3d 925, 2020 N.Y. Slip Op. 51109(U)

allegedly frivolous conduct in making this motion (*see* Opp Mem at 11-12) is denied.

End of Document © 2021 Thomson Reuters. No claim to original U.S. Government Works.