*National Rifle Association of America*

## Case No. 21-30085

# DEBTORS' WITNESS AND EXHIBIT LIST FOR FEBRUARY 24, 2021 HEARING

# Exhibit 19

**ELIGIBLE 457 PLAN**

## TABLE OF CONTENTS

### ARTICLE I, DEFINITIONS

1.01 Account .......................................................1
1.02 Accounting Date ........................................1
1.03 Beneficiary ................................................1
1.04 Code ..........................................................1
1.05 Compensation ...........................................1
1.06 Deferral Contributions ...............................2
1.07 Deferred Compensation ............................2
1.08 Effective Date ............................................2
1.09 Elective Deferrals ......................................3
1.10 Employee ...................................................3
1.11 Employer ....................................................3
1.12 Employer Contribution ...............................3
1.13 ERISA ........................................................3
1.14 Excess Deferrals .......................................3
1.15 Includible Compensation ...........................3
1.16 Independent Contractor .............................3
1.17 Leased Employee ......................................3
1.18 Matching Contribution ................................3
1.19 Nonelective Contribution ...........................3
1.20 Normal Retirement Age ..............................3
1.21 Participant ..................................................3
1.22 Plan ............................................................3
1.23 Plan Administrator ......................................3
1.24 Plan Entry Date ..........................................3
1.25 Plan Year ....................................................3
1.26 Pre-Tax Elective Deferrals .........................3
1.27 Rollover Contribution ..................................3
1.28 Roth Elective Deferrals ..............................3
1.29 Salary Reduction Agreement .....................3
1.30 Salary Reduction Contribution ....................3
1.31 Service .......................................................3
1.32 State ...........................................................4
1.33 Substantial Risk of Forfeiture ....................4
1.34 Tax-Exempt Organization ..........................4
1.35 Taxable Year ..............................................4
1.36 Transfer ......................................................4
1.37 Trust ...........................................................4
1.38 Trustee .......................................................4
1.39 Type of 457 Plan ........................................4
1.40 Vested ........................................................4

### ARTICLE II, ELIGIBILITY AND PARTICIPATION

2.01 Eligibility ....................................................5
2.02 Participation upon Re-Employment ............5
2.03 Change in Employment Status ...................5

### ARTICLE III, DEFERRAL CONTRIBUTIONS/LIMITATIONS

3.01 Amount .......................................................6
3.02 Salary Reduction Contributions .................6
3.03 Matching Contributions ..............................6
3.04 Normal Limitation .......................................6
3.05 Normal Retirement Age Catch-Up Contribution ........6
3.06 Age 50 Catch-Up Contribution ...................7
3.07 Contribution Allocation ...............................7
3.08 Allocation Conditions .................................7
3.09 Rollover Contributions ................................7
3.10 Distribution of Excess Deferrals ................8
3.11 Deemed IRA Contributions ........................8
3.12 Roth Elective Deferrals ..............................8
3.13 Benefit Accrual ..........................................9
3.14 Eligible Automatic Contribution Arrangement (EACA) ........9
3.15 In-Plan Roth Rollover Contribution ..........10
3.16 In-Plan Roth Transfer ...............................11

### ARTICLE IV, TIME AND METHOD OF PAYMENT OF BENEFITS

4.01 Distribution Restrictions ..........................12
4.02 Time and Method of Payment of Account .............12
4.03 Required Minimum Distributions ..............12
4.04 Death Benefits ..........................................14
4.05 Distributions Prior to Severance from Employment .14
4.06 Distributions Under Qualified Domestic Relations Orders (QDROs) ...............................14
4.07 Direct Rollover of Eligible Rollover Distributions – Governmental Plan ....................................15
4.08 Election to Deduct from Distribution ........16

### ARTICLE V, PLAN ADMINISTRATOR - DUTIES WITH RESPECT TO PARTICIPANTS' ACCOUNTS

5.01 Term/Vacancy ..........................................17
5.02 Powers and Duties ...................................17
5.03 Compensation ..........................................17
5.04 Authorized Representative ........................17
5.05 Individual Accounts/Records.....................17
5.06 Value of Participant's Account ..................17
5.07 Account Administration, Valuation and Expenses ... 17
5.08 Account Charged .......................................19
5.09 Ownership of Fund/Tax-Exempt Organization ........19
5.10 Participant Direction of Investment ..........19
5.11 Vesting/Substantial Risk of Forfeiture .....19
5.12 Preservation of Eligible Plan Status .........19
5.13 Limited Liability ........................................20
5.14 Lost Participants .......................................20
5.15 Plan Correction .........................................20

### ARTICLE VI, PARTICIPANT ADMINISTRATIVE PROVISIONS

6.01 Beneficiary Designation ...........................21
6.02 No Beneficiary Designation ......................21
6.03 Salary Reduction Agreement ...................21
6.04 Personal Data to Plan Administrator .........21
6.05 Address for Notification ............................21
6.06 Participant or Beneficiary Incapacitated ................21

### ARTICLE VII, MISCELLANEOUS

7.01 No Assignment or Alienation.....................22
7.02 Effect on Other Plans...............................22
7.03 Word Usage ..............................................22
7.04 State Law ..................................................22
7.05 Employment Not Guaranteed ...................22
7.06 Notice, Designation, Election, Consent and Waiver 22

### ARTICLE VIII, TRUST PROVISIONS— GOVERNMENTAL ELIGIBLE 457 PLAN

8.01 Governmental Eligible 457 Plan...............23
8.02 Acceptance/Holding..................................23
8.03 Receipt of Contributions ...........................23
8.04 Full Investment Powers .............................23
8.05 Records and Statements ...........................24
8.06 Fees and Expenses from Fund .................24
8.07 Professional Agents ..................................24
8.08 Distribution of Cash or Property ...............24
8.09 Resignation and Removal .........................24
8.10 Successor Trustee ....................................24
8.11 Valuation of Trust......................................24
8.12 Participant Direction of Investment ..........24
8.13 Third Party Reliance .................................24
8.14 Invalidity of Any Trust Provision ...............24
8.15 Exclusive Benefit ......................................24
8.16 Substitution of Custodial Account or Annuity Contract........................................24
8.17 Group Trust Authority ...............................25

**ARTICLE IX, AMENDMENT, TERMINATION, TRANSFERS**

9.01    Amendment by Employer/Sponsor .......................... 26
9.02    Termination/Freezing of Plan ................................ 26
9.03    Transfers ............................................................... 26
9.04    Purchase of Permissive Service Credit .................. 26

## ARTICLE I
### DEFINITIONS

1.01 **"Account"** means the separate Account(s) which the Plan Administrator or the Trustee maintains under the Plan for a Participant's Deferred Compensation. The Plan Administrator or Trustee may establish separate Accounts for multiple Beneficiaries of a Participant to facilitate required minimum distributions under Section 4.03 based on each Beneficiary's life expectancy.

1.02 **"Accounting Date"** means the last day of the Plan Year. The Plan Administrator will allocate Employer contributions and forfeitures for a particular Plan Year as of the Accounting Date of that Plan Year, and on such other dates, if any, as the Plan Administrator determines, consistent with the Plan's allocation conditions and other provisions.

1.03 **"Beneficiary"** means a person who the Plan or a Participant designates and who is or may become entitled to a Participant's Account upon the Participant's death. A Beneficiary who becomes entitled to a benefit under the Plan remains a Beneficiary under the Plan until the Plan Administrator or Trustee has fully distributed to the Beneficiary his or her Plan benefit. A Beneficiary's right to (and the Plan Administrator's or a Trustee's duty to provide to the Beneficiary) information or data concerning the Plan does not arise until the Beneficiary first becomes entitled to receive a benefit under the Plan.

1.04 **"Code"** means the Internal Revenue Code of 1986, as amended.

1.05 **"Compensation"**

**(A) Uses and Context.** Any reference in the Plan to Compensation is a reference to the definition in this Section 1.05, unless the Plan reference, or the Employer in the Adoption Agreement, modifies this definition. Except as the Plan otherwise specifically provides, the Plan Administrator will take into account only Compensation actually paid during (or as permitted under the Code, paid for) the relevant period. A Compensation payment includes Compensation paid by the Employer through another person under the common paymaster provisions in Code §§3121 and 3306. In the case of an Independent Contractor, Compensation means the amounts the Employer pays to the Independent Contractor for services, except as the Employer otherwise specifies in the Adoption Agreement. The Employer in the Adoption Agreement may elect to allocate contributions based on Compensation within specified 12 month period which ends within a Plan Year.

**(B) Base Definitions and Modifications.** The Employer in the Adoption Agreement must elect one of the following base definitions of Compensation: W-2 Wages, Code §3401(a) Wages, or 415 Compensation. The Employer may elect a different base definition as to different Contribution Types. The Employer in the Adoption Agreement may specify any modifications thereto, for purposes of contribution allocations under Article III. If the Employer fails to elect one of the above-referenced definitions, the Employer is deemed to have elected the W-2 Wages definition.

**(1) W-2 Wages.** W-2 Wages means wages for federal income tax withholding purposes, as defined under Code §3401(a), plus all other payments to an Employee in the course of the Employer's trade or business, for which the Employer must furnish the Employee a written statement under Code §§6041, 6051, and 6052, but determined without regard to any rules that limit the remuneration included in wages based on the nature or location of the employment or

services performed (such as the exception for agricultural labor in Code §3401(a)(2)).

**(2) Code §3401(a) Wages (income tax wage withholding).** Code §3401(a) Wages means wages within the meaning of Code §3401(a) for the purposes of income tax withholding at the source, but determined without regard to any rules that limit the remuneration included in wages based on the nature or the location of the employment or the services performed (such as the exception for agricultural labor in Code §3401(a)(2)).

**(3) Code §415 Compensation (current income definition/simplified compensation under Treas. Reg. §1.415(c)-2(d)(2)).** Code §415 Compensation means the Employee's wages, salaries, fees for professional service and other amounts received (without regard to whether or not an amount is paid in cash) for personal services actually rendered in the course of employment with the Employer maintaining the Plan to the extent that the amounts are includible in gross income (including, but not limited to, commissions paid salespersons, compensation for services on the basis of a percentage of profits, commissions on insurance premiums, tips, bonuses, fringe benefits and reimbursements or other expense allowances under a nonaccountable plan as described in Treas. Reg. §1.62-2(c)).

Code §415 Compensation does not include:

**(a) Deferred compensation/SEP/SIMPLE.** Employer contributions (other than Elective Deferrals) to a plan of deferred compensation (including a simplified employee pension plan under Code §408(k) or to a simple retirement account under Code §408(p)) to the extent the contributions are not included in the gross income of the Employee for the Taxable Year in which contributed, and any distributions from a plan of deferred compensation (whether or not qualified), regardless of whether such amounts are includible in the gross income of the Employee when distributed.

**(b) Option exercise.** Amounts realized from the exercise of a non-qualified stock option (an option other than a statutory option under Treas. Reg. §1.421-1(b)), or when restricted stock or other property held by an Employee either becomes freely transferable or is no longer subject to a substantial risk of forfeiture under Code §83.

**(c) Sale of option stock.** Amounts realized from the sale, exchange or other disposition of stock acquired under a statutory stock option as defined under Treas. Reg. §1.421-1(b).

**(d) Other amounts that receive special tax benefits.** Other amounts that receive special tax benefits, such as premiums for group term life insurance (but only to the extent that the premiums are not includible in the gross income of the Employee and are not salary reduction amounts under Code §125).

**(e) Other similar items.** Other items of remuneration which are similar to any of the items in Sections 1.11(B)(3)(a) through (d).

**(4) Alternative (general) 415 Compensation.** Under this definition, Compensation means as defined in Section 1.11(B)(3) but with the addition of: (a) amounts described in

Code §§104(a)(3), 105(a), or 105(h) but only to the extent that these amounts are includible in Employee's gross income; (b) amounts paid or reimbursed by the Employer for moving expenses incurred by the Employee, but only to the extent that at the time of payment it is reasonable to believe these amounts are not deductible by the Employee under Code §217; (c) the value of a nonstatutory option (an option other than a statutory option under Treas. Reg. §1.421-1(b)) granted by the Employer to the an Employee, but only to the extent that the value of the option is includible in the Employee's gross income for the Taxable Year of the grant; (d) the amount includible in the Employee's gross income upon the Employee's making of an election under Code §83(b); and (e) amounts that are includible in the Employee's gross income under Code §409A or Code §457(f)(1)(A) or because the amounts are constructively received by the Participant. [Note if the Plan's definition of Compensation is W-2 Wages or Code §3401(a) Wages, then Compensation already includes the amounts described in clause (e).]

**(C) Deemed 125 Compensation.** Deemed 125 Compensation means, in the case of any definition of Compensation which includes a reference to Code §125, amounts under a Code §125 plan of the Employer that are not available to a Participant in cash in lieu of group health coverage, because the Participant is unable to certify that he/she has other health coverage.

**(D) Modification to Compensation.** The Employer must specify in the Adoption Agreement the Compensation the Plan Administrator is to take into account in allocating Deferral Contributions to a Participant's Account. For all Plan Years other than the Plan Year in which the Employee first becomes a Participant, the Plan Administrator will take into account only the Compensation determined for the portion of the Plan Year in which the Employee actually is a Participant.

**(E) Elective Contributions.** Compensation under Section 1.05 includes Elective Contributions unless the Employer in the Adoption Agreement elects to exclude Elective Contributions. "Elective Contributions" are amounts excludible from the Employee's gross income under Code §§125, 132(f)(4), 402(e)(3), 402(h)(1)(B), 403(b), 408(p) or 457, and contributed by the Employer, at the Employee's election, to a cafeteria plan, a qualified transportation fringe benefit plan, a 401(k) arrangement, a SARSEP, a tax-sheltered annuity, a SIMPLE plan or a Code §457 plan.

**(F) Post-Severance Compensation.** Compensation includes Post-Severance Compensation to the extent the Employer elects in the Adoption Agreement or as the Plan otherwise provides. Post-Severance Compensation is Compensation paid after a Participant's Severance from Employment from the Employer, as further described in this Section 1.05(F). As the Employer elects, Post-Severance Compensation may include any or all of regular pay, leave cash-outs, or deferred compensation within the time period described in Section 1.05(F)(1), and may also include salary continuation for disabled Participants, all as defined below. Any other payment paid after Severance from Employment that is not described in this Section 1.05(F) is not Compensation even if payment is made within the time period described below. Post-Severance Compensation does not include severance pay, parachute payments under Code §280G(b)(2) or payments under a nonqualified unfunded deferred compensation plan unless the payments would have been paid at that time without regard to Severance from Employment.

**(1) Timing.** Post-Severance Compensation includes regular pay, leave cashouts, or deferred compensation only to the extent the Employer pays such amounts by the later of

2 1/2 months after Severance from Employment or by the end of the Limitation Year that includes the date of such Severance from Employment.

**(a) Regular pay.** Regular pay means the payment of regular Compensation for services during the Participant's regular working hours, or Compensation for services outside the Participant's regular working hours (such as overtime or shift differential), commissions, bonuses, or other similar payments, but only if the payment would have been paid to the Participant prior to a Severance from Employment if the Participant had continued in employment with the Employer.

**(b) Leave cash-outs.** Leave cash-outs means payments for unused accrued bona fide sick, vacation, or other leave, but only if the Employee would have been able to use the leave if employment had continued and if Compensation would have included those amounts if they were paid prior to the Participant's Severance from Employment.

**(c) Deferred compensation.** As used in this Section 1.05(F), deferred compensation means the payment of deferred compensation pursuant to an unfunded deferred compensation plan, if Compensation would have included the Deferred Compensation if it had been paid prior to the Participant's Severance from Employment, but only if the payment would have been paid at the same time if the Participant had continued in employment with the Employer and only to the extent that the payment is includible in the Participant's gross income.

**(2) Salary continuation for disabled Participants.** Salary continuation for disabled Participants means Compensation paid to a Participant who is permanently and totally disabled (as defined in Code §22(e)(3)).

**(G) Differential Wage Payments.** An individual receiving a Differential Wage Payment, as defined by Code §3401(h)(2), shall be treated as an employee of the employer making the payment and the Differential Wage Payment shall be treated as compensation for purposes of Code §457(b) and any other Internal Revenue Code section that references the definition of compensation under Code §415, including the definition of Includible Compensation as provided in Section 1.15.

**1.06 "Deferral Contributions"** means as the Employer elects on the Adoption Agreement, Salary Reduction Contributions, Nonelective Contributions and Matching Contributions. The Plan Administrator in applying the Code §457(b) limit will take into account Deferral Contributions in the Taxable Year in which deferred, or if later, in the Taxable Year in which the Deferral Contributions are no longer subject to a Substantial Risk of Forfeiture. The Plan Administrator in determining the amount of a Participant's Deferral Contributions disregards the net income, gain and loss attributable to Deferral Contributions unless the Deferral Contributions are subject to a Substantial Risk of Forfeiture. If a Deferral Contribution is subject to a Substantial Risk of Forfeiture, the Plan Administrator takes into the Deferral Contribution as adjusted for allocable net income, gain or loss in the Taxable Year in which the Substantial Risk of Forfeiture lapses.

**1.07 "Deferred Compensation"** means as to a Participant the amount of Deferral Contributions, Rollover Contributions and Transfers adjusted for allocable net income, gain or loss, in the Participant's Account.

**1.08 "Effective Date"** of this Plan is the date the Employer specifies in the Adoption Agreement. The Employer in the Adoption Agreement may elect special effective dates for Plan provisions the Employer specifies provided any such

date(s) are permitted by the Code, by Treasury regulations, or by other applicable guidance.

1.09 **"Elective Deferrals"** means a contribution the Employer makes to the Plan pursuant to a Participant's Salary Reduction Agreement, as described in Section 3.02. The term "Elective Deferrals" includes Pre-Tax Elective Deferrals and Roth Elective Deferrals.

1.10 **"Employee"** means an individual who provides services for the Employer, as a common law employee of the Employer. The Employer in the Adoption Agreement must elect or specify any Employee, or class of Employees, not eligible to participate in the Plan (an "Excluded Employee"). See Section 1.16 regarding potential treatment of an Independent Contractor as an Employee.

1.11 **"Employer"** means the entity specified in the Adoption Agreement, any successor which shall maintain this Plan; and any predecessor which has maintained this Plan. In addition, where appropriate, the term Employer shall include any Participating Employer.

1.12 **"Employer Contribution"** means Nonelective Contributions or Matching Contributions.

1.13 **"ERISA"** means the Employee Retirement Income Security Act of 1974, as amended.

1.14 **"Excess Deferrals"** means Deferral Contributions to a Governmental Eligible 457 Plan or to a Tax-Exempt Organization Eligible 457 Plan for a Participant that exceed the Taxable Year maximum limitation of Code §§457(b) and (e)(18).

1.15 **"Includible Compensation"** means, for the Employee's Taxable Year, the Employee's total Compensation within the meaning of Code §415(c)(3) paid to an Employee for services rendered to the Employer. Includible Compensation includes Deferral Contributions under the Plan, compensation deferred under any other plan described in Code §457, and any amount excludible from the Employee's gross income under Code §§401(k), 403(b), 125 or 132(f)(4) or any other amount excludible from the Employee's gross income for Federal income tax purposes. The Employer will determine Includible Compensation without regard to community property laws.

1.16 **"Independent Contractor"** means any individual who performs service for the Employer and who the Employer does not treat as an Employee or a Leased Employee. The Employer in the Adoption Agreement may elect to permit Independent Contractors to participate in the Plan. To the extent that the Employer permits Independent Contractor participation, references to Employee in the Plan include Independent Contractors and Compensation means the amounts the Employer pays to the Independent Contractor for services, except as the Employer otherwise specifies in the Adoption Agreement.

1.17 **"Leased Employee"** means an Employee within the meaning of Code §414(n).

1.18 **"Matching Contribution"** means an Employer fixed or discretionary contribution made or forfeiture allocated on account of Salary Reduction Contributions.

1.19 **"Nonelective Contribution"** means an Employer fixed or discretionary contribution not made as a result of a Salary Reduction Agreement and which is not a Matching Contribution.

1.20 **"Normal Retirement Age"** means the age the Employer specifies in the Adoption Agreement consistent with Section 3.05(B).

1.21 **"Participant"** is an Employee other than an Excluded Employee who becomes a Participant in accordance with the provisions of Section 2.01.

1.22 **"Plan"** means the 457 plan established or continued by the Employer in the form of this basic Plan and (if applicable) Trust Agreement, including the Adoption Agreement. The Employer in the Adoption Agreement must designate the name of the Plan. All section references within the Plan are Plan section references unless the context clearly indicates otherwise.

1.23 **"Plan Administrator"** is the Employer unless the Employer designates another person to hold the position of Plan Administrator. The Plan Administrator may be a Participant.

1.24 **"Plan Entry Date"** means the dates the Employer elects in Adoption Agreement.

1.25 **"Plan Year"** means the consecutive 12-month period the Employer elects in the Adoption Agreement.

1.26 **"Pre-Tax Elective Deferrals"** means a Participant's Salary Reduction Contributions which are not includible in the Participant's gross income at the time deferred and have been irrevocably designated as Pre-Tax Elective Deferrals by the Participant in his or her Salary Reduction Agreement. A Participant's Pre-Tax Elective Deferrals will be separately accounted for, as will gains and losses attributable to those Pre-Tax Elective Deferrals.

1.27 **"Rollover Contribution"** means the amount of cash or property which an eligible retirement plan described in Code §402(c)(8)(B) distributes to an eligible Employee or to a Participant in an eligible rollover distribution under Code §402(c)(4) and which the eligible Employee or Participant transfers directly or indirectly to a Governmental Eligible 457 Plan. A Rollover Contribution includes net income, gain or loss attributable to the Rollover Contribution. A Rollover Contribution excludes after-tax Employee contributions, as adjusted for net income, gain or loss.

1.28 **"Roth Elective Deferrals"** means a Participant's Salary Reduction Contributions that are includible in the Participant's gross income at the time deferred and have been irrevocably designated as Roth Elective Deferrals by the Participant in his or her Salary Reduction Agreement. A Participant's Roth Elective Deferrals will be separately accounted for, as will gains and losses attributable to those Roth Elective Deferrals. However, forfeitures may not be allocated to such account. The Plan must also maintain a record of a Participant's investment in the contract (i.e., designated Roth contributions that have not been distributed) and the year in which the Participant first made a Roth Elective Deferral.

1.29 **"Salary Reduction Agreement"** means a written agreement between a Participant and the Employer, by which the Employer reduces the Participant's Compensation for Compensation not available as of the date of the election and contributes the amount as a Salary Reduction Contribution to the Participant's Account.

1.30 **"Salary Reduction Contribution"** means a contribution the Employer makes to the Plan pursuant to a Participant's Salary Reduction Agreement.

1.31 **"Service"** means any period of time the Employee is in the employ of the Employer. In the case of an Independent Contractor, Service means any period of time the Independent Contractor performs services for the Employer on an independent contractor basis. An Employee or Independent Contractor terminates Service upon incurring a Severance from Employment.

**(A) Qualified Military Service.** Service includes any qualified military service the Plan must credit for contributions and benefits in order to satisfy the crediting of Service requirements of Code §414(u). A Participant whose employment is interrupted by qualified military service under Code §414(u) or who is on a leave of absence for qualified military service under Code §414(u) may elect to make additional Salary Reduction Contributions upon resumption of employment with the Employer equal to the maximum Deferral Contributions that the Participant could have elected during that period if the Participant's employment with the Employer had continued (at the same level of Compensation) without the interruption of leave, reduced by the Deferral Contributions, if any, actually made for the Participant during the period of the interruption or leave. This right applies for five years following the resumption of employment (or, if sooner, for a period equal to three times the period of the interruption or leave). The Employer shall make appropriate make-up Nonelective Contributions and Matching Contributions for such a Participant as required under Code §414(u). The Plan shall apply limitations of Article III to all Deferral Contributions under this paragraph with respect to the year to which the Deferral Contribution relates.

**(B) "Continuous Service"** as the Adoption Agreement describes means Service with the Employer during which the Employee does not incur a Severance from Employment.

**(C) "Severance from Employment."**

**(1) Employee.** An Employee has a Severance from Employment when the Employee ceases to be an Employee of the Employer. A Participant does not incur a Severance from Employment if, in connection with a change in employment, the Participant's new employer continues or assumes sponsorship of the Plan or accepts a Transfer of Plan assets as to the Participant.

**(2) Independent Contractor.** An Independent Contractor has a Severance from Employment when the contract(s) under which the Independent Contractor performs services for the Employer expires (or otherwise terminates), unless the Employer anticipates a renewal of the contractual relationship or the Independent Contractor becoming an Employee. The Employer anticipates renewal if it intends to contract for the services provided under the expired contract and neither the Employer nor the Independent Contractor has eliminated the Independent Contractor as a potential provider of such services under the new contract. Further, the Employer intends to contract for services conditioned only upon the Employer's need for the services provided under the expired contract or the Employer's availability of funds. Notwithstanding the preceding provisions of this Section 1.31, the Plan Administrator will consider an Independent Contractor to have incurred a Severance from Employment: (a) if the Plan Administrator or Trustee will not pay any Deferred Compensation to an Independent Contractor who is a Participant before a date which is at least twelve months after the expiration of the Independent Contractor's contract (or the last to expire of such contracts) to render Services to the Employer; and (b) if before the applicable twelve-month payment date, the Independent Contractor performs Service as an Independent Contractor or as an Employee, the Plan Administrator or Trustee will not pay to the Independent Contractor his or her Deferred Compensation on the applicable date.

**(3) Deemed Severance.** Notwithstanding Section 1.05(F), if the Employer elects in the Adoption Agreement,

then if a Participant performs service in the uniformed services (as defined in Code §414(u)(12)(B)) on active duty for a period of more than 30 days, the Participant will be deemed to have a severance from employment solely for purposes of eligibility for distribution of amounts not subject to Code §412. However, the Plan will not distribute such a Participant's Account on account of this deemed severance unless the Participant specifically elects to receive a benefit distribution hereunder. If a Participant elects to receive a distribution on account of this deemed severance, then no Deferral Contributions may be made for the Participant during the 6-month period beginning on the date of the distribution. If a Participant would be entitled to a distribution on account of a deemed severance, and a distribution on account of another Plan provision, then the other Plan provision will control and the 6-month suspension will not apply.

1.32 **"State"** means (a) one of the 50 states of the United States or the District of Columbia, or (b) a political subdivision of a State, or any agency or instrumentality of a State or its political subdivision. A State does not include the federal government or any agency or instrumentality thereof.

1.33 **"Substantial Risk of Forfeiture"** exists if the Plan expressly conditions a Participant's right to Deferred Compensation upon the Participant's future performance of substantial Service for the Employer.

1.34 **"Tax-Exempt Organization"** means any tax-exempt organization other than a governmental unit or a church or qualified church-controlled organization within the meaning of Code §3121(w)(3).

1.35 **"Taxable Year"** means the calendar year or other taxable year of a Participant.

1.36 **"Transfer"** means a transfer of Eligible 457 Plan assets to another Eligible 457 Plan which is not a Rollover Contribution and which is made in accordance with Section 9.03.

1.37 **"Trust"** means the Trust created under the adopting Employer's Plan. A Trust required under a Governmental Eligible 457 Plan is subject to Article VIII. Any Trust under a Tax-Exempt Organization Eligible 457 Plan is subject to Section 5.09.

1.38 **"Trustee"** means the person or persons who as Trustee execute the Employer's Adoption Agreement, or any successor in office who in writing accepts the position of Trustee.

1.39 **Type of 457 Plan.** This Plan is an Eligible 457 Plan, which is a plan which satisfies the requirements of Code §457(b) and Treas. Reg. §§1.457-3 through -10. The Employer in the Adoption Agreement must specify whether the plan is either a Governmental Eligible 457 Plan or a Tax-Exempt Organization Eligible 457 Plan, as defined below:

**(A) "Governmental Eligible 457 Plan"** means an Eligible 457 Plan established by a State.

**(B) "Tax-Exempt Organization Eligible 457 Plan"** means an Eligible 457 Plan established by a Tax-Exempt Organization.

1.40 **"Vested"** means a Participant's Deferral Contributions that are not subject to a Substantial Risk of Forfeiture, including a vesting schedule.

## ARTICLE II
## ELIGIBILITY AND PARTICIPATION

2.01 <u>ELIGIBILITY</u>. Each Employee who is not an Excluded Employee becomes a Participant in the Plan in accordance with the eligibility conditions and as of the Plan Entry Date the Employer elects in the Adoption Agreement. If this Plan is a restated Plan, each Employee who was a Participant in the Plan on the day before the Effective Date continues as a Participant in the Plan, irrespective of whether he/she satisfies the eligibility conditions in the restated Plan, unless the Employer indicates otherwise in the Adoption Agreement.

2.02 <u>PARTICIPATION UPON RE-EMPLOYMENT</u>. A Participant who incurs a Severance from Employment will re-enter the Plan as a Participant on the date of his or her re-employment. An Employee who satisfies the Plan's eligibility conditions but who incurs a Severance from Employment prior to becoming a Participant will become a Participant on the later of the Plan Entry Date on which he/she would have entered the Plan had he/she not incurred a Severance from Employment or the date of his or her re-employment. Any Employee who incurs a Severance from Employment prior to satisfying the Plan's eligibility conditions becomes a Participant in accordance with the Adoption Agreement.

2.03 <u>CHANGE IN EMPLOYMENT STATUS</u>. If a Participant has not incurred a Severance from Employment but ceases to be eligible to participate in the Plan, by reason of becoming an Excluded Employee, the Plan Administrator must treat the Participant as an Excluded Employee during the period such a Participant is subject to the Adoption Agreement exclusion. The Plan Administrator determines a Participant's sharing in the allocation of Employer Contributions by disregarding his or her Compensation paid by the Employer for services rendered in his or her capacity as an Excluded Employee. However, during such period of exclusion, the Participant, without regard to employment classification, continues to share fully in Plan income allocations under Section 5.07 and to accrue vesting service if applicable.

## ARTICLE III
## DEFERRAL CONTRIBUTIONS/LIMITATIONS

3.01 <u>AMOUNT</u>.

**(A)  Contribution Formula.** For each Plan Year, or other period the Employer specifies in the Adoption Agreement, the Employer will contribute to the Plan the type and amount of Deferral Contributions the Employer elects in the Adoption Agreement.

**(B)  Return of Contributions.** The Employer contributes to this Plan on the condition its contribution is not due to a mistake of fact. If the Plan has a Trust, the Trustee, upon written request from the Employer, must return to the Employer the amount of the Employer's contribution (adjusted for net income, gain or loss) made by the Employer on account of a mistake of fact. The Trustee will not return any portion of the Employer's contribution under the provisions of this paragraph more than one year after the Employer made the contribution on account of a mistake of fact. In addition, if any Participant Salary Reduction Contribution is due to a mistake of fact, the Employer or the Trustee upon written request from the Employer shall return the Participant's contribution (adjusted for net income, gain or loss), within one year after payment of the contribution.

The Trustee will not increase the amount of the Employer contribution returnable under this Section 3.01 for any earnings attributable to the contribution, but the Trustee will decrease the Employer contribution returnable for any losses attributable to it. The Trustee may require the Employer to furnish it whatever evidence the Trustee deems necessary to enable the Trustee to confirm the amount the Employer has requested be returned is properly returnable.

**(C)  Time of Payment of Contribution.** If the Plan has a Trust, the Employer may pay its contributions for each Plan Year to the Trust in one or more installments and at such time(s) as the Employer determines, without interest. A Governmental Employer shall deposit Salary Reduction Contributions to the Trust within a period that is not longer than is reasonable for the administration of Participant Accounts.

3.02 <u>SALARY REDUCTION CONTRIBUTIONS</u>. The Employer in the Adoption Agreement must elect whether the Plan permits Salary Reduction Contributions, and also the Plan limitations, if any, which apply to Salary Reduction Contributions. Unless the Employer elects otherwise in the Adoption Agreement, all such limitations apply on a payroll basis.

**(A)  Deferral from Sick, Vacation and Back Pay.** The Employer in the Adoption Agreement must elect whether to permit Participants to make Salary Reduction Contributions from accumulated sick pay, from accumulated vacation pay or from back pay.

**(B)  Automatic Enrollment.** The Employer in the Adoption Agreement may provide for automatic Salary Reduction Contributions of a specified amount, subject to giving notice to affected Participants of the automatic election and of their right to make a contrary election.

A Governmental Employer under an Eligible 457 Plan may elect to provide an Eligible Automatic Contribution Arrangement ("EACA"). If the Employer elects to provide an EACA, the Employer will amend the Plan to add necessary language.

**(C)  Application to Leave of Absence and Disability.** Unless a Participant in his or her Salary Reduction Agreement elects otherwise, the Participant's Salary Reduction Agreement shall continue to apply during the Participant's leave of absence or the Participant's disability (as the Plan Administrator shall establish), if the Participant has Compensation other than imputed compensation or disability benefits.

**(D)  Post-severance deferrals limited to Post-Severance Compensation.** Deferrals are permitted from an amount received following Severance from Employment only if the amount is Post-Severance Compensation.

3.03 <u>MATCHING CONTRIBUTIONS</u>. The Employer in the Adoption Agreement must elect whether the Plan permits Matching Contributions and, if so, the type(s) of Matching Contributions, the time period applicable to any Matching Contribution formula, and as applicable, the amount of Matching Contributions and the Plan limitations, if any, which apply to Matching Contributions. Any Matching Contributions apply to age 50 catch-up contributions, if any, and to any Normal Retirement Age catch-up contributions unless the Employer elects otherwise in the Adoption Agreement.

3.04 <u>NORMAL LIMITATION</u>. Except as provided in Sections 3.05 and 3.06, a Participant's maximum Deferral Contributions (excluding Rollover Contributions and Transfers) under this Plan for a Taxable Year may not exceed the lesser of:

(a)  The applicable dollar amount as specified under Code §457(e)(15) (or such larger amount as the Commissioner of the Internal Revenue may prescribe), or

(b)  100% of the Participant's Includible Compensation for the Taxable Year.

3.05 <u>NORMAL RETIREMENT AGE CATCH-UP CONTRIBUTION</u>. If selected in the Adoption Agreement, a Participant may elect to make this catch-up election. For one or more of the Participant's last three Taxable Years ending before the Taxable Year in which the Participant attains Normal Retirement Age, the Participant's maximum Deferral Contributions may not exceed the lesser of:

(a)  Twice the dollar amount under Section 3.04(a) Normal Limitation, or (b) the underutilized limitation.

**(A)  Underutilized Limitation.** A Participant's underutilized limitation is equal to the sum of: (i) the normal limitation for the Taxable Year, and (ii) the normal limitation for each of the prior Taxable Years of the Participant commencing after 1978 during which the Participant was eligible to participate in the Plan and the Participant's Deferral Contributions were subject to the Normal Limitation or any other Code §457(b) limit, *less* the amount of Deferral Contributions for each such prior Taxable Year, excluding age 50 catch-up contributions.

**(B)  Normal Retirement Age.** Normal Retirement Age is the age the Employer specifies in the Adoption Agreement provided that the age may not be: (i) earlier than the earliest of age 65 or the age at which Participants have the right to retire and receive under the Employer's defined benefit plan (or money purchase plan if the Participant is not eligible to participate in a defined benefit plan) immediate retirement benefits without actuarial or other reduction because of retirement before a later specified age; or (ii) later than age 70 1/2.

(1)  **Participant Designation.** The Employer in the Adoption Agreement may permit a Participant to designate his or her Normal Retirement Age as any age including or between the foregoing ages.

(2)  **Multiple 457 Plans.** If the Employer maintains more than one Eligible 457 Plan, the Plans may not permit any

Participant to have more than one Normal Retirement Age under the Plans.

**(3) Police and Firefighters.** In a Governmental Eligible 457 Plan with qualified police or firefighter Participants within the meaning of Code §415(b)(2)(H)(ii)(I), the Employer in the Adoption Agreement may elect (or permit the qualified Participants to elect) a Normal Retirement Age as early as age 40 and as late as age 70 1/2.

**(C) Pre-2002 Coordination.** In determining a Participant's underutilized limitation, the Plan Administrator, in accordance with Treas. Reg. §1.457-4(c)(3)(iv), must apply the coordination rule in effect under now repealed Code §457(c)(2). The Plan Administrator also must determine the Normal Limitation for pre-2002 Taxable Years in accordance with Code §457(b)(2) as then in effect.

3.06 AGE 50 CATCH-UP CONTRIBUTION. An Employer sponsoring a Governmental Eligible 457 Plan must specify in the Adoption Agreement whether the Participants are eligible to make age 50 catch-up contributions.

If an Employer elects to permit age 50 catch-up contributions, all Employees who are eligible to make Salary Reduction Contributions under this Plan and who have attained age 50 before the close of the Taxable Year are eligible to make age 50 catch-up contributions for that Taxable Year in accordance with, and subject to the limitations of, Code §414(v). Such catch-up contributions are not taken into account for purposes of the provisions of the Plan implementing the required limitations of Code §457. If, for a Taxable Year, an Employee makes a catch-up contribution under Section 3.05, the Employee is not eligible to make age 50 catch-up contributions under this Section 3.06. A catch-up eligible Participant in each Taxable Year is entitled to the greater of the amount determined under Section 3.05 or Section 3.06 Catch-Up Amount plus the Section 3.04 Normal Limitation.

3.07 CONTRIBUTION ALLOCATION. The Plan Administrator will allocate to each Participant's Account his or her Deferral Contributions. The Employer will allocate Employer Nonelective and Matching Contributions to the Account of each Participant who satisfies the allocation conditions in the Adoption Agreement in the following manner:

**(a) Fixed match.** To the extent the Employer makes Matching Contributions under a fixed Adoption Agreement formula, the Plan Administrator will allocate the Matching Contribution to the Account of the Participant on whose behalf the Employer makes that contribution. A fixed Matching Contribution formula is a formula under which the Employer contributes a specified percentage or dollar amount on behalf of a Participant based on that Participant's Salary Reduction Contributions.

**(b) Discretionary match.** To the extent the Employer makes Matching Contributions under a discretionary Adoption Agreement formula, the Plan Administrator will allocate the Matching Contributions to a Participant's Account in the same proportion that each Participant's Salary Reduction Contributions taken into account under the formula bear to the total Salary Reduction Contributions of all Participants.

**(c) Tiered match.** If the Matching Contribution formula is a tiered formula, the Plan Administrator will allocate separately the Matching Contributions with respect to each tier of Salary Reduction Contributions, in accordance with the tiered formula.

**(d) Discretionary nonelective.** The Plan Administrator will allocate discretionary Nonelective Contributions for a Plan Year in the same ratio that each Participant's Compensation for the Plan Year bears to the total Compensation of all

Participants for the Plan Year, unless the Employer elects otherwise in the Adoption Agreement.

**(e) Fixed nonelective.** The Plan Administrator will allocate fixed Nonelective Contributions for a Plan Year in the same ratio that each Participant's Compensation for the Plan Year bears to the total Compensation of all Participants for the Plan Year, unless the Employer elects otherwise in the Adoption Agreement.

**(f) Other nonelective.** The Plan Administrator will allocate Nonelective Contributions for a Plan Year as specified in the Adoption Agreement.

3.08 ALLOCATION CONDITIONS. The Plan Administrator will determine the allocation conditions applicable to Nonelective Contributions or to Matching Contributions (or to both) in accordance with the Employer's elections in the Adoption Agreement. The Plan Administrator will not allocate to a Participant any portion of an Employer Contribution (or forfeiture if applicable) for a Plan Year or applicable portion thereof in which the Participant does not satisfy the applicable allocation condition(s).

3.09 ROLLOVER CONTRIBUTIONS. If elected in the Adoption Agreement, an Employer sponsoring a Governmental Eligible 457 Plan may permit Rollover Contributions.

**(A) Operational Administration.** The Employer, operationally and on a nondiscriminatory basis, may elect to limit an eligible Employee's right or a Participant's right to make a Rollover Contribution. Any Participant (or as applicable, any eligible Employee), with the Employer's written consent and after filing with the Trustee the form prescribed by the Plan Administrator, may make a Rollover Contribution to the Trust. Before accepting a Rollover Contribution, the Trustee may require a Participant (or eligible Employee) to furnish satisfactory evidence the proposed transfer is in fact a "Rollover Contribution" which the Code permits an employee to make to an eligible retirement plan. The Trustee, in its sole discretion, may decline to accept a Rollover Contribution of property which could: (1) generate unrelated business taxable income; (2) create difficulty or undue expense in storage, safekeeping or valuation; or (3) create other practical problems for the Trust.

**(B) Pre-Participation Rollover.** If an eligible Employee makes a Rollover Contribution to the Trust prior to satisfying the Plan's eligibility conditions, the Plan Administrator and Trustee must treat the Employee as a limited Participant (as described in Rev. Rul. 96-48 or in any successor ruling). A limited Participant does not share in the Plan's allocation of any Employer Contributions and may not make Salary Reduction Contributions until he/she actually becomes a Participant in the Plan. If a limited Participant has a Severance from Employment prior to becoming a Participant in the Plan, the Trustee will distribute his or her Rollover Contributions Account to the limited Participant in accordance with Article IV.

**(C) Separate Accounting.** If an Employer permits Rollover Contributions, the Plan Administrator must account separately for: (1) amounts rolled into this Plan from an eligible retirement plan (other than from another Governmental Eligible 457 plan); and (2) amounts rolled into this Plan from another Governmental Eligible 457 Plan The Plan Administrator for purposes of ordering any subsequent distribution from this Plan, may designate a distribution from a Participant's Rollover Contributions as coming first from either of (1) or (2) above if the Participant has both types of Rollover Contribution Accounts.

© 2016

7

**(D)   May Include Roth Deferrals.** If this Plan is an eligible governmental 457(b) plan which accepts Roth Elective Deferrals, then a Rollover Contribution may include Roth Deferrals made to another plan, as adjusted for Earnings. Such amounts must be directly rolled over into this Plan from another plan which is qualified under Code §401(a), from a 403(b) plan, or from an eligible governmental 457 plan. The Plan must account separately for the Rollover Contribution, including the Roth Deferrals and the Earnings thereon.

**(E)   In-Plan Roth Rollover Contributions.** A Governmental Employer under an Eligible 457 Plan may elect to permit In-Plan Roth Rollover Contribution. If the Employer decides to permit In-Plan Roth Rollover Contributions, the Employer will amend the Plan to add necessary language.

3.10 <u>DISTRIBUTION OF EXCESS DEFERRALS</u>. In the event that a Participant has Excess Deferrals, the Plan will distribute to the Participant the Excess Deferrals and allocable net income, gain or loss, in accordance with this Section 3.10.

**(A)   Governmental Eligible 457 Plan.** The Plan Administrator will distribute Excess Deferrals from a Governmental Eligible 457 Plan as soon as is reasonably practicable following the Plan Administrator's determination of the amount of the Excess Deferral.

**(B)   Tax-Exempt Organization Eligible 457 Plan.** The Plan Administrator will distribute Excess Deferrals from a Tax-Exempt Organization Eligible 457 Plan no later than April 15 following the Taxable Year in which the Excess Deferral occurs.

**(C)   Plan Aggregation.** If the Employer maintains more than one Eligible 457 Plan, the Employer must aggregate all such Plans in determining whether any Participant has Excess Deferrals.

**(D)   Individual Limitation.** If a Participant participates in another Eligible 457 Plan maintained by a different employer, and the Participant has Excess Deferrals, the Plan Administrator may, but is not required, to correct the Excess Deferrals by making a corrective distribution from this Plan.

3.11 <u>DEEMED IRA CONTRIBUTIONS</u>. A Governmental Employer under an Eligible 457 Plan may elect to permit Participants to make IRA contributions to this Plan in accordance with the Code §408(q) deemed IRA rules. If the Employer elects to permit deemed IRA contributions to the Plan, the Employer will amend the Plan to add necessary IRA language and either the Rev. Proc. 2003-13 sample deemed IRA language or an appropriate substitute.

3.12 <u>ROTH ELECTIVE DEFERRALS</u>. The Employer may elect in the Adoption Agreement to permit Roth Elective Deferrals. Unless elected otherwise, Roth Elective Deferrals shall be treated in the same manner as Elective Deferrals. The Employer may, in operation, implement deferral election procedures provided such procedures are communicated to Participants and permit Participants to modify their elections at least once each Plan Year.

**(A)   Elective Deferrals.** "Elective Deferral" means a contribution the Employer makes to the Plan pursuant to a Participant's Salary Reduction Agreement, as described in Section 3.02. The term "Elective Deferrals" includes Pre-tax Elective Deferrals and Roth Elective Deferrals.

**(B)   Pre-Tax Elective Deferrals.** "Pre-Tax Elective Deferrals" means a Participant's Salary Reduction Contributions which are not includible in the Participant's gross income at the time deferred and have been irrevocably designated as Pre-Tax Elective Deferrals by the Participant in his or her Salary

Reduction Agreement. A Participant's Pre-Tax Elective Deferrals will be separately accounted for, as will gains and losses attributable to those Pre-Tax Elective Deferrals.

**(C)   Roth Elective Deferrals.** "Roth Elective Deferrals" means a Participant's Salary Reduction Contributions that are includible in the Participant's gross income at the time deferred and have been irrevocably designated as Roth Elective Deferrals by the Participant in his or her Salary Reduction Agreement. A Participant's Roth Elective Deferrals will be separately accounted for, as will gains and losses attributable to those Roth Elective Deferrals. However, forfeitures may not be allocated to such account. The Plan must also maintain a record of a Participant's investment in the contract (i.e., designated Roth contributions that have not been distributed) and the year in which the Participant first made a Roth Elective Deferral.

**(D)   Ordering Rules for Distributions.** The Administrator operationally may implement an ordering rule procedure for withdrawals (including, but not limited to, withdrawals on account of an unforeseeable emergency) from a Participant's accounts attributable to Pre-Tax Elective Deferrals or Roth Elective Deferrals. Such ordering rules may specify whether the Pre-Tax Elective Deferrals or Roth Elective Deferrals are distributed first. Furthermore, such procedure may permit the Participant to elect which type of Elective Deferrals shall be distributed first.

**(E)   Corrective distributions attributable to Roth Elective Deferrals.** For any Plan Year in which a Participant may make both Roth Elective Deferrals and Pre-Tax Elective Deferrals, the Administrator operationally may implement an ordering rule procedure for the distribution of Excess Deferrals (Treas. Reg. §1.457-4(e)). Such an ordering rule may specify whether the Pre-Tax Elective Deferrals or Roth Elective Deferrals are distributed first, to the extent such type of Elective Deferrals was made for the year. Furthermore, such procedure may permit the Participant to elect which type of Elective Deferrals shall be distributed first.

**(F)   Loans.** If Participant loans are permitted under the Plan, then the Administrator may modify the loan policy or program to provide limitations on the ability to borrow from, or use as security, a Participant's Roth Elective Deferral account. Similarly, the loan policy or program may be modified to provide for an ordering rule with respect to the default of a loan that is made from the Participant's Roth Elective Deferral account and other accounts under the Plan.

**(G)   Rollovers.** A direct rollover of a distribution from Roth Elective Deferrals shall only be made to a Plan which includes Roth Elective Deferrals as described in Code §402A(e)(1) or to a Roth IRA as described in Code §408A, and only to the extent the rollover is permitted under the rules of Code §402(c).

The Plan shall accept a rollover contribution of Roth Elective Deferrals only if it is a direct rollover from another Plan which permits Roth Elective Deferrals as described in Code §402A(e)(1) and only to the extent the rollover is permitted under the rules of Code §402(c). The Employer, operationally and on a uniform and nondiscriminatory basis, may decide whether to accept any such rollovers.

The Plan shall not provide for a direct rollover (including an automatic rollover) for distributions from a Participant's Roth Elective Deferral account if the amount of the distributions that are eligible rollover distributions are reasonably expected to total less than $200 during a year. In addition, any distribution from a Participant's Roth Elective Deferrals are not taken into

© 2016

account in determining whether distributions from a Participant's other accounts are reasonably expected to total less than $200 during a year. Furthermore, the Plan will treat a Participant's Roth Elective Deferral account and the Participant's other accounts as held under two separate plans for purposes of applying the automatic rollover rules. However, eligible rollover distributions of a Participant's Roth Elective Deferrals are taken into account in determining whether the total amount of the Participant's account balances under the Plan exceed the Plan's limits for purposes of mandatory distributions from the Plan.

The provisions of the Plan that allow a Participant to elect a direct rollover of only a portion of an eligible rollover distribution but only if the amount rolled over is at least $500 is applied by treating any amount distributed from a Participant's Roth Elective Deferral account as a separate distribution from any amount distributed from the Participant's other accounts in the Plan, even if the amounts are distributed at the same time.

**(H) Automatic Enrollment.** If the Plan utilizes an automatic enrollment feature as described in Section 3.02(B), then any such automatic contribution shall be a Pre-Tax Elective Deferral.

**(I) Operational Compliance.** The Plan Administrator will administer Roth Elective Deferrals in accordance with applicable regulations or other binding authority.

3.13 BENEFIT ACCRUAL. If the Employer elects to apply this Section, then effective as of the date adopted, for benefit accrual purposes, the Plan treats an individual who dies or becomes disabled (as defined under the terms of the Plan) while performing qualified military service with respect to the Employer as if the individual had resumed employment in accordance with the individual's reemployment rights under USERRA, on the day preceding death or disability (as the case may be) and terminated employment on the actual date of death or disability.

**(A) Determination of benefits.** The amount of Matching Contributions to be made pursuant to this Section 3.13 shall be determined as though the amount of Salary Reduction Contributions of an individual treated as reemployed under this Section on the basis of the individual's average actual Salary Reduction Contributions for the lesser of: (i) the 12-month period of service with the Employer immediately prior to qualified military service; or (ii) the actual length of continuous service with the Employer.

3.14 ELIGIBLE AUTOMATIC CONTRIBUTION ARRANGEMENT (EACA). As elected in the Adoption Agreement, the Employer maintains a Plan with automatic enrollment provisions as an Eligible Automatic Contribution Arrangement ("EACA"). Accordingly, the Plan will satisfy the (1) uniformity requirements, and (2) notice requirements under this Section.

**(A) Uniformity.** The Automatic Deferral Percentage must be a uniform percentage of Compensation. All Participants in the EACA, as defined in Amendment Section 2.1, are subject to Automatic Deferrals, except to the extent otherwise provided in Amendment Section 2.2. If a Participant's Affirmative Election expires or otherwise ceases to be in effect, the Participant will immediately thereafter be subject to Automatic Deferrals, except to the extent otherwise provided in Amendment Section 2.2. However, the Plan does not violate the uniform Automatic Deferral Percentage merely because the Plan applies any of the following provisions:

**(a) Years of participation.** The Automatic Deferral Percentage varies based on the number of plan years the Participant has participated in the Plan while the Plan has applied EACA provisions;

**(b) No reduction from prior default percentage.** The Plan does not reduce an Automatic Deferral Percentage that, immediately prior to the EACA's effective date was higher (for any Participant) than the Automatic Deferral Percentage;

**(c) Applying statutory limits.** The Plan limits the Automatic Deferral amount so as not to exceed the limits of Code Section 457(b)(2) (determined without regard to Age 50 Catch-Up Deferrals).

**(B) EACA notice.** The Plan Administrator annually will provide a notice to each Participant a reasonable period prior to each plan year the Employer maintains the Plan as an EACA ("EACA Plan Year").

**(a) Deemed reasonable notice/new Participant.** The Plan Administrator is deemed to provide timely notice if the Plan Administrator provides the EACA notice at least 30 days and not more than 90 days prior to the beginning of the EACA Plan Year.

**(b) Mid-year notice/new Participant or Plan.** If: (a) an Employee becomes eligible to make Salary Reduction Contributions in the Plan during an EACA Plan Year but after the Plan Administrator has provided the annual EACA notice for that plan year; or (b) the Employer adopts mid-year a new Plan as an EACA, the Plan Administrator must provide the EACA notice no later than the date the Employee becomes eligible to make Salary Reduction Contributions. However, if it is not practicable for the notice to be provided on or before the date an Employee becomes a Participant, then the notice will nonetheless be treated as provided timely if it is provided as soon as practicable after that date and the Employee is permitted to elect to defer from all types of Compensation that may be deferred under the Plan earned beginning on that date.

**(c) Content.** The EACA notice must provide comprehensive information regarding the Participants' rights and obligations under the Plan and must be written in a manner calculated to be understood by the average Participant in accordance with applicable guidance.

**(C) EACA permissible withdrawal.** If elected in in the Adoption Agreement, a Participant who has Automatic Deferrals under the EACA may elect to withdraw all the Automatic Deferrals (and allocable earnings) under the provisions of this Amendment Section 3.4.Any distribution made pursuant to this Section will be processed in accordance with normal distribution provisions of the Plan.

**(a) Amount.** If a Participant elects a permissible withdrawal under this Section, then the Plan must make a distribution equal to the amount (and only the amount) of the Automatic Deferrals made under the EACA (adjusted for allocable gains and losses to the date of the distribution).The Plan may separately account for Automatic Deferrals, in which case the entire account will be distributed. If the Plan does not separately account for the Automatic Deferrals, then the Plan must determine earnings or losses in a manner similar to the rules of Treas. Reg. §1.401(k)-2(b)(2)(iv) for distributions of excess contributions.

**(b) Fees.** Notwithstanding the above, the Plan Administrator may reduce the permissible distribution amount by any generally applicable fees. However, the Plan may not charge a greater fee for distribution under this Section than applies to other distributions. The Plan Administrator may adopt a policy regarding charging such fees consistent with this paragraph.

**(c)    Timing.** The Participant may make an election to withdraw the Automatic Deferrals under the EACA no later than 90 days, or such shorter period as specified in the Adoption Agreement, after the date of the first Automatic Deferral under the EACA. For this purpose, the date of the first Automatic Deferral is the date that the Compensation subject to the Automatic Deferral otherwise would have been includible in the Participant's gross income. Furthermore, a Participant's withdrawal right is not restricted due to the Participant making an Affirmative Election during the 90 day period (or shorter period as specified in Adoption Agreement.).

**(d)    Rehired Employees.** For purposes of this Section, an Employee who for an entire Plan Year did not have contributions made pursuant to a default election under the EACA will be treated as having not had such contributions for any prior Plan Year as well.

**(e)    Effective date of the actual withdrawal election:** The effective date of the permissible withdrawal will be as soon as practicable, but in no event later than the earlier of (1) the pay date of the second payroll period beginning after the election is made, or (2) the first pay date that occurs at least 30 days after the election is made. The election will also be deemed to be an Affirmative Election to have no Salary Reduction Contributions made to the Plan.

**(f)    Related matching contributions.** The Plan Administrator will not take any deferrals withdrawn pursuant to this section into account in computing the contribution and allocation of matching contributions, if any. If the Employer has already allocated matching contributions to the Participant's account with respect to deferrals being withdrawn pursuant to this Section, then the matching contributions, as adjusted for gains and losses, must be forfeited. Except as otherwise provided, the Plan will use the forfeited contributions to reduce future contributions or to reduce plan expenses.

**(D)    Compensation.** Compensation for purposes of determining the amount of Automatic Deferrals has the same meaning as Compensation with regard to Salary Reduction Contributions in general.

**(E)    Definitions.**

**(a)    Definition of Automatic Deferral.** An Automatic Deferral is a Salary Reduction Contribution that results from the operation of this Article III. Under the Automatic Deferral, the Employer automatically will reduce by the Automatic Deferral Percentage elected in this Amendment the Compensation of each Participant subject to the EACA, as specified in Amendment Section 2.2. The Plan Administrator will cease to apply the Automatic Deferral to a Participant who makes an Affirmative Election as defined in this Section.

**(b)    Definition of Automatic Deferral Percentage/Increases.** The Automatic Deferral Percentage is the percentage of Automatic Deferral which the Employer elects in Amendment Section 2.1 or elsewhere in the Plan (including any scheduled increase to the Automatic Deferral Percentage the Employer may elect).

**(c)    Effective date of EACA Automatic Deferral.** The effective date of an Employee's Automatic Deferral will be as soon as practicable after the Employee is subject to Automatic Deferrals under the EACA, consistent with (a) applicable law, and (b) the objective of affording the Employee a reasonable period of time after receipt of the notice to make an Affirmative Election (and, if applicable, an investment election).

**(d)    Definition of Affirmative Election.** An Affirmative Election is a Participant's election made after the EACA's

Effective Date not to defer any Compensation or to defer more or less than the Automatic Deferral Percentage.

**(e)    Effective Date of Affirmative Election.** A Participant's Affirmative Election generally is effective as of the first payroll period which follows the payroll period in which the Participant made the Affirmative Election. However, a Participant may make an Affirmative Election which is effective: (a) for the first payroll period in which he or she becomes a Participant if the Participant makes an Affirmative Election within a reasonable period following the Participant's entry date and before the Compensation to which the Election applies becomes currently available; or (b) for the first payroll period following the EACA's effective date, if the Participant makes an Affirmative Election not later than the EACA's effective date.

3.15 IN-PLAN ROTH ROLLOVER CONTRIBUTION

**(a)    Right to elect In-Plan Roth Rollover Contribution.** If elected in the Adoption Agreement, a Participant may elect to roll over a distribution directly to an In-Plan Roth Rollover Contribution Account in accordance with the provisions of the Plan, this Section and the elections made in the Adoption Agreement. "In-Plan Roth rollover contributions" will be subject to the Plan rules related to designated Roth accounts.

**(b)    Eligibility for distribution and rollover.** A Participant must be eligible for a distribution in order to roll over a distribution to an In-Plan Roth Rollover Contribution Account in accordance with this Section. A Participant may not make an "in-Plan Roth rollover contribution" with regard to an amount which is not an "eligible rollover distribution."

**(c)    Form of rollover.** The Administrator may permit an "in-Plan Roth rollover contribution" either by converting to cash any non-cash investments prior to rolling over the Participant's distribution election amount to the In-Plan Roth Rollover Contribution Account, or by rolling over the Participant's current investments to the In-Plan Roth Rollover Contribution Account. A Plan loan so transferred in a direct rollover (if such transfer is permitted) without changing the repayment schedule is not treated as a new loan.

**(d)    Treatment of In-Plan Roth Rollover Contributions.**

**(1)    Amount of In-Plan Roth Rollover Contribution.** A Participant may take an in-service distribution only for purposes of electing a direct rollover to an In-Plan Roth Rollover Contribution Account. A portion of the amount that is eligible to be rolled over to an In-Plan Roth Rollover Contribution Account may be distributed solely for the purpose of federal or state income tax withholding for the Participant's anticipated tax obligations regarding the amount includible in the Participant's gross income by reason of the In-Plan Roth Rollover Contribution (and the amount withheld for income taxes). The Administrator may limit the amount of the 100% withholding distribution to the amount the Administrator reasonably determines is sufficient to satisfy the Participant's federal and/or state income tax liability relating to the Plan distribution.

**(2)    No rollover or distribution treatment.** Notwithstanding any other Plan provision, a direct In-Plan Roth Rollover Contribution is not a rollover contribution for purposes of the Plan. Accordingly, the Plan will take into account the amounts attributable to an "in-plan Roth rollover contribution" in determining whether a Participant's Vested Account balance exceeds $5,000 for purposes of Code §411(a)(11). In addition, an "in-Plan Roth rollover contribution" is not a distribution for purposes of Code §§401(a)(11) (relating to spousal consent) and 3405(c) (relating to mandatory income tax withholding). Furthermore, it is not a distribution for purposes of applying any limitations

© 2016

that a Plan may impose with respect to the number of in-service distributions permitted by the Plan.

**(3) Withdrawal of In-Plan Roth Rollover Contributions.** A Participant may withdraw amounts from the Participant's In-Plan Roth Rollover Contribution Account only when the Participant is eligible for a distribution from the Plan account that is the source of the "in-Plan Roth rollover contribution." This Section does not expand (except, if elected, for distributions for withholding) or eliminate any distribution rights on amounts that a Participant elects to treat as an "in-Plan Roth rollover contribution."

**(e) Definitions and other rules.**

**(1) In-Plan Roth Rollover Contribution.** An "in-Plan Roth rollover contribution" means a rollover contribution to the Plan that consists of a distribution from a Participant's Plan account, other than a designated Roth account, that the Participant rolls over to the Participant's designated In-Plan Roth Rollover Contribution Account in the Plan, in accordance with Code §402(c)(4). An "in-Plan Roth rollover contribution" may occur only by a direct rollover.

**(2) Distribution from partially Vested account.** Distributions (i.e., the source of the "in-Plan Roth rollover contribution" amounts) are permitted only from Vested amounts allocated to a qualifying source as identified in the Adoption Agreement. If a distribution is made to a Participant who has not severed employment and who is not fully Vested in the Participant's Account from which the rollover is to be made, and the Participant may increase the Vested percentage in such account, then at any relevant time the Participant's Vested portion of the account will be determined in the manner set forth in Section 6.5(h).

3.16 IN-PLAN ROTH TRANSFER

**(a) Right to elect In-Plan Roth Rollover Contribution.** As elected in the Adoption Agreement, a Participant may elect to transfer amounts to an In-Plan Roth Transfer Account in accordance with the provisions of the Plan and this Amendment. In-Plan Roth Transfers will be subject to the taxation provisions and separate accounting requirements that apply to designated Roth accounts. Furthermore, the Participant shall be fully Vested in the portion of his or her account attributable to the In-Plan Roth Transfer.

**(b) Form of transfer.** The Plan will transfer investments to the Participant's In-Plan Roth Transfer Account in accordance with the Plan terms and procedures governing Plan investments. A Participant loan that is transferred to a Participant's In-Plan Roth Transfer Account (if such transfer is permitted) without changing the repayment schedule is not treated as a new loan.

**(c) Treatment of In-Plan Roth Rollover Contributions.**

**(1) No distribution treatment.** An In-Plan Roth Transfer is not a Plan distribution. Accordingly, the Plan may not withhold or distribute any amounts for income tax withholding, unless a distribution of other amounts is permitted pursuant to the terms of the Plan.

**(2) Withdrawal of In-Plan Roth Transfers.** A Participant may withdraw amounts from the Participant's In-Plan Roth Transfer Account only when the Participant is eligible for a distribution from the Plan account that is the source of the In-Plan Roth Transfer. This Amendment does not expand or eliminate any distribution rights or restrictions on amounts that a Participant elects to treat as an In-Plan Roth Transfer.

**(d) Definitions and other rules.**

**(1) In-Plan Roth Transfer.** An In-Plan Roth Transfer means an amount that a Participant elects to transfer from a Plan Account, other than a designated Roth account, into an In-Plan Roth Transfer Account, in accordance with Code §402(c)(4)(E) and this Amendment. An In-Plan Roth Transfer may only be made with respect to amounts that are not distributable under the terms of the Plan.

**(2) Distribution from partially Vested account.** Distributions (i.e., the source of the "in-Plan Roth rollover contribution" amounts) are permitted only from Vested amounts allocated to a qualifying source as identified in the Adoption Agreement. If a distribution is made to a Participant who has not severed employment and who is not fully Vested in the Participant's Account from which the rollover is to be made, and the Participant may increase the Vested percentage in such account, then at any relevant time the Participant's Vested portion of the account will be determined in the manner set forth in Section 6.5(h).

**(3) In-Plan Roth Transfer Account.** An In-Plan Roth Transfer Account is a sub-account the Plan Administrator establishes for the purpose of separately accounting for a Participant's Transfers attributable to the Participant's In-Plan Roth Transfers. The Plan Administrator has authority to establish such a sub-account, and to the extent necessary, may establish sub-accounts based on the source of the In-Plan Roth Transfer. The Plan Administrator will administer an In-Plan Roth Transfer Account as provided by IRS guidance and the Plan provisions, including the provisions of this Amendment.

**(4) Participant includes certain alternate payees.** For purposes of eligibility for an In-Plan Roth Transfer, the Plan will treat a Participant's alternate payee spouse or former spouse who is not an Employee as a Participant (unless the right to elect an In-Plan Roth Transfer is limited to Employees).

© 2016

## ARTICLE IV
## TIME AND METHOD OF
## PAYMENT OF BENEFITS

**4.01** DISTRIBUTION RESTRICTIONS. Except as the Plan provides otherwise, the Plan Administrator or Trustee may not distribute to a Participant the amounts in his or her Account prior to one of the following events:

(a) The Participant's attaining age 70 1/2;

(b) The Participant's Severance from Employment; or

(c) The Participant's death.

**4.02** TIME AND METHOD OF PAYMENT OF ACCOUNT. The Plan Administrator, or Trustee at the direction of the Plan Administrator, will distribute to a Participant who has incurred a Severance from Employment the Participant's Vested Account under one or any combination of payment methods and at the time(s) the Adoption Agreement specifies. If the Adoption Agreement permits more than one time or method, the Plan Administrator, in the absence of a Participant election described below, will determine the time and method applicable to a particular Participant. In no event will the Plan Administrator direct (or direct the Trustee to commence) distribution, nor will the Participant elect to have distribution commence, later than the Participant's required beginning date, or under a method that does not satisfy Section 4.03.

**(A) Participant Election of Time and Method.** The Employer in the Adoption Agreement must elect whether to permit Participants to elect the timing and method of distribution of their Account in accordance with this Section 4.02. The Plan Administrator must consent to the specific terms of any such Participant election and the Plan Administrator in its sole discretion may withhold consent. Subject to the foregoing conditions, a Participant: (1) may elect to postpone distribution of his or her Account beyond the time the Employer has elected in the Adoption Agreement, to any fixed or determinable date including, but not beyond, the Participant's required beginning date; and (2) may elect the method of payment. A Participant in a Tax Exempt Organization Eligible 457 Plan may elect the timing and method of payment of his or her Account no later than 30 days before the date the Plan Administrator or Trustee first would commence payment of the Participant's Account in accordance with the Adoption Agreement. The Plan Administrator must furnish to the Participant a form for the Participant to elect the time and a method of payment. A Participant in a Governmental Eligible 457 Plan is not subject to any such requirement in election the timing or method of payment.

**(B) Number of Initial Elections/Subsequent Elections.** A Participant in a Tax-Exempt Organization Eligible 457 Plan may make any number of elections or revoke any prior election under Section 4.02(A) within the election period. Once the initial election period expires, a Participant, before payment would commence under the Participant's initial election, may make one additional election to defer (but not to accelerate) the timing of payment of his or her Account and also as to the method of payment.

**(C) No Election/Default.** If the Participant does not make a timely election regarding the time and method of payment, the Plan Administrator will pay or direct the Trustee to pay the Participant's Account in accordance with the Adoption Agreement.

**(D) Mandatory Distribution.** The Employer in the Adoption Agreement will elect whether the Plan will make Mandatory Distributions. If the Employer elects Mandatory Distributions,

the Employer may determine operationally whether to include Rollover Contributions in determining whether the Participant is subject to Mandatory Distributions.

**4.03** REQUIRED MINIMUM DISTRIBUTIONS. The Plan Administrator may not distribute nor direct the Trustee to distribute the Participant's Account, nor may the Participant elect any distribution his or her Account, under a method of payment which, as of the required beginning date, does not satisfy the minimum distribution requirements of Code §401(a)(9) or which is not consistent with applicable Treasury regulations.

**(A) General Rules.**

**(1) Precedence.** The requirements of this Section 4.03 will take precedence over any inconsistent provisions of the Plan.

**(2) Requirements of Treasury Regulations Incorporated.** All distributions required under this Section 4.03 will be determined and made in accordance with the Treasury regulations under Code §401(a)(9).

**(B) Time and Manner of Distribution.**

**(1) Required Beginning Date.** The Participant's entire interest will be distributed, or begin to be distributed, to the Participant no later than the Participant's required beginning date.

**(2) Death of Participant Before Distribution Begins.** If the Participant dies before distributions begin, the Participant's entire interest will be distributed, or begin to be distributed, no later than as follows:

**(a) Spouse Designated Beneficiary.** If the Participant's surviving spouse is the Participant's sole designated Beneficiary, then, except as the Employer may elect in the Adoption Agreement, distributions to the surviving spouse will begin by December 31 of the calendar year immediately following the calendar year in which the Participant dies, or by December 31 of the calendar year in which the Participant would have attained age 70 1/2, if later.

**(b) Non-Spouse Designated Beneficiary.** If the Participant's surviving spouse is not the Participant's sole designated Beneficiary, then, except as the Employer may elect in the Adoption Agreement, distributions to the designated Beneficiary will begin by December 31 of the calendar year immediately following the calendar year in which the Participant died.

**(c) No Designated Beneficiary.** If there is no designated Beneficiary as of September 30 of the year following the year of the Participant's death, the Participant's entire interest will be distributed by December 31 of the calendar year containing the fifth anniversary of the Participant's death.

**(d) Death of Spouse.** If the Participant's surviving spouse is the Participant's sole designated Beneficiary and the surviving spouse dies after the Participant but before distributions to the surviving spouse begin, this Section 4.03(B)(2) other than Section 4.03(B)(2)(a), will apply as if the surviving spouse were the Participant.

For purposes of this Section 4.03(B) and Section 4.03(D), unless Section 4.03(B)(2)(d) applies, distributions are considered to begin on the Participant's required beginning date. If Section 4.03(B)(2)(d) applies, distributions are

© 2016

considered to begin on the date distributions are required to begin to the surviving spouse under Section 4.03(B)(2)(a). If distributions under an annuity purchased from an insurance company irrevocably commence to the Participant before the Participant's required beginning date or to the Participant's surviving spouse before the date distributions are required to begin to the surviving spouse under Section 4.03(B)(2)(a), the date distributions are considered to begin is the date distributions actually commence.

**(3)   Forms of Distribution.** Unless the Participant's interest is distributed in the form of an annuity purchased from an insurance company or in a single sum on or before the required beginning date, as of the first distribution calendar year distributions will be made in accordance with Sections 4.03(C) and 4.03(D). If the Participant's interest is distributed in the form of an annuity purchased from an insurance company, distributions thereunder will be made in accordance with the requirements of Code §401(a)(9) and the Treasury regulations.

**(C)   Required Minimum Distributions during Participant's Lifetime.**

**(1)   Amount of Required Minimum Distribution for Each Distribution Calendar Year.** During the Participant's lifetime, the minimum amount that will be distributed for each distribution calendar year is the lesser of:

**(a)   ULT.** The quotient obtained by dividing the Participant's account balance by the number in the Uniform Life Table set forth in Treas. Reg. §1.401(a)(9)-9, using the Participant's attained age as of the Participant's birthday in the distribution calendar year; or

**(b)   Younger Spouse.** If the Participant's sole designated Beneficiary for the distribution calendar year is the Participant's spouse, the quotient obtained by dividing the Participant's account balance by the number in the Joint and Last Survivor Table set forth in Treas. Reg. §1.401(a)(9)-9, using the Participant's and spouse's attained ages as of the Participant's and spouse's birthdays in the distribution calendar year.

**(2)   Lifetime Required Minimum Distributions Continue Through Year of Participant's Death.** Required minimum distributions will be determined under this Section 4.03(C) beginning with the first distribution calendar year and up to and including the distribution calendar year that includes the Participant's date of death.

**(D)   Required Minimum Distributions after Participant's Death.**

**(1)   Death On or After Distributions Begin.**

**(a)   Participant Survived by Designated Beneficiary.** If the Participant dies on or after the date distributions begin and there is a designated Beneficiary, the minimum amount that will be distributed for each distribution calendar year after the year of the Participant's death is the quotient obtained by dividing the Participant's account balance by the longer of the remaining life expectancy of the Participant or the remaining life expectancy of the Participant's designated Beneficiary, determined as follows:

**(i)   Participant's Life Expectancy.** The Participant's remaining life expectancy is calculated using the attained age of the Participant as of the Participant's birthday in the calendar year of death, reduced by one for each subsequent calendar year.

**(ii)   Spouse's Life Expectancy.** If the Participant's surviving spouse is the Participant's sole designated Beneficiary, the remaining life expectancy of the surviving spouse is calculated for each distribution calendar

year after the year of the Participant's death using the surviving spouse's age as of the spouse's birthday in that year. For distribution calendar years after the year of the surviving spouse's death, the remaining life expectancy of the surviving spouse is calculated using the attained age of the surviving spouse as of the spouse's birthday in the calendar year of the spouse's death, reduced by one for each subsequent calendar year.

**(iii)   Non-Spouse's Life Expectancy.** If the Participant's surviving spouse is not the Participant's sole designated Beneficiary, the designated Beneficiary's remaining life expectancy is calculated using the attained age of the Beneficiary as of the Beneficiary's birthday in the calendar year following the calendar year of the Participant's death, reduced by one for each subsequent calendar year.

**(b)   No Designated Beneficiary.** If the Participant dies on or after the date distributions begin and there is no designated Beneficiary as of September 30 of the calendar year after the calendar year of the Participant's death, the minimum amount that will be distributed for each distribution calendar year after the calendar year of the Participant's death is the quotient obtained by dividing the Participant's account balance by the Participant's remaining life expectancy calculated using the attained age of the Participant as of the Participant's birthday in the calendar year of death, reduced by one for each subsequent calendar year.

**(2)   Death before Date Distributions Begin.**

**(a)   Participant Survived by Designated Beneficiary.** Except as the Employer may elect in the Adoption Agreement, if the Participant dies before the date distributions begin and there is a designated Beneficiary, the minimum amount that will be distributed for each distribution calendar year after the year of the Participant's death is the quotient obtained by dividing the Participant's account balance by the remaining life expectancy of the Participant's designated Beneficiary, determined as provided in Section 4.03(D)(1).

**(b)   No Designated Beneficiary.** If the Participant dies before the date distributions begin and there is no designated Beneficiary as of September 30 of the year following the year of the Participant's death, distribution of the Participant's entire interest will be completed by December 31 of the calendar year containing the fifth anniversary of the Participant's death.

**(c)   Death of Surviving Spouse Before Distributions to Surviving Spouse Are Required to Begin.** If the Participant dies before the date distributions begin, the Participant's surviving spouse is the Participant's sole designated Beneficiary, and the surviving spouse dies before distributions are required to begin to the surviving spouse under Section 4.03(B)(2)(a), this Section 4.03(D)(2) will apply as if the surviving spouse were the Participant.

**(d)   5-year or Life Expectancy rule; possible election.** The Employer in its Adoption Agreement will elect whether distribution of the Participant's Account will be made in accordance with the life expectancy rule under Section 4.03(D)(2)(a) or the 5-year rule under Section 4.03(D)(2)(b). The Employer's election may permit a Designated Beneficiary to elect which of these rules will apply or may specify which rule applies. However, the life expectancy rule (whether subject to election or not) applies only in the case of a Designated Beneficiary. The 5-year rule applies as to any Beneficiary who is not a Designated Beneficiary. A permitted election under this Section must be made no later than the earlier of September 30 of the calendar year in which distribution would be required to begin under Section 4.03(D)(2)(a), or by September 30 of the calendar year which contains the fifth anniversary of the Participant's (or, if applicable, surviving spouse's) death.

**(E) Definitions.**

**(1) Designated Beneficiary.** The individual who is designated as the Beneficiary under the Plan and is the designated beneficiary under Code §401(a)(9) and Treas. Reg. §1.401(a)(9)-1, Q&A-4.

**(2) Distribution calendar year.** A calendar year for which a minimum distribution is required. For distributions beginning before the Participant's death, the first distribution calendar year is the calendar year immediately preceding the calendar year which contains the Participant's required beginning date. For distributions beginning after the Participant's death, the first distribution calendar year is the calendar year in which the distributions are required to begin under Section 4.03(B)(2). The required minimum distribution for the Participant's first distribution calendar year will be made on or before the Participant's required beginning date. The required minimum distribution for other distribution calendar years, including the required minimum distribution for the distribution calendar year in which the Participant's required beginning date occurs, will be made on or before December 31 of that distribution calendar year.

**(3) Life expectancy.** Life expectancy as computed by use of the Single Life Table in Treas. Reg. §1.401(a)(9)-9.

**(4) Participant's account balance.** The account balance as of the last valuation date in the calendar year immediately preceding the distribution calendar year (valuation calendar year) increased by the amount of any contributions made and allocated or forfeitures allocated to the account balance as of dates in the valuation calendar year after the valuation date and decreased by distributions made in the valuation calendar year after the valuation date. The account balance for the valuation calendar year includes any Rollover Contributions or Transfers to the Plan either in the valuation calendar year or in the distribution calendar year if distributed or transferred in the valuation calendar year.

**(5) Required beginning date.** A Participant's required beginning date is the April 1 of the calendar year following the later of: (1) the calendar year in which the Participant attains age 70 1/2, or (2) the calendar year in which the Participant retires or such other date under Code §401(a)(9) by which required minimum distributions must commence.

4.04 DEATH BENEFITS. Upon the death of the Participant, the Plan Administrator must pay or direct the Trustee to pay the Participant's Account in accordance with Section 4.03. Subject to Section 4.03, a Beneficiary may elect the timing and method of payment in the same manner as a Participant may elect under Section 4.02, if such elections apply.

If a Participant dies while performing qualified military service (as defined in Code §414(u)), the survivors of the Participant are entitled to any additional benefits (other than benefit accruals relating to the period of qualified military service) provided under the Plan as if the Participant had resumed and then terminated employment on account of death.

4.05 DISTRIBUTIONS PRIOR TO SEVERANCE FROM EMPLOYMENT. The Employer must elect in the Adoption Agreement whether to permit in-service distributions of a Participant's Vested Account under this Section 4.05, notwithstanding the Section 4.01 distribution restrictions.

**(A) Unforeseeable Emergency.** In the event of a Participant's unforeseeable emergency, the Plan Administrator may make a distribution to a Participant who has not incurred a Severance from Employment (or who has incurred a Severance but will not begin to receive payments until some future date). In the event of an unforeseeable emergency, the Plan Administrator also may accelerate payments to a Participant or to a Beneficiary. The Plan Administrator will establish a policy for determining whether an unforeseeable emergency exists. An unforeseeable emergency is a severe financial hardship of a Participant or Beneficiary resulting from: (1) illness or accident of the Participant, the Beneficiary, or the Participant's or Beneficiary's spouse or dependent (as defined in Code §152(a)); (2) loss of the Participant's or Beneficiary's property due to casualty; (3) the need to pay for the funeral expenses of the Participant's or Beneficiary's spouse or dependent (as defined in Code §152(a)); or (4) other similar extraordinary and unforeseeable circumstances arising from events beyond the Participant's or Beneficiary's control, or which applicable law may define as an unforeseeable emergency. The Plan Administrator will not pay the Participant or the Beneficiary more than the amount reasonably necessary to satisfy the emergency need, which may include amounts necessary to pay taxes or penalties on the distribution. The Plan Administrator will not make payment to the extent the Participant or Beneficiary may relieve the financial hardship by cessation of deferrals under the Plan, through insurance or other reimbursement, or by liquidation of the individual's assets to the extent such liquidation would not cause severe financial hardship.

The Participant's Beneficiary is a person who a Participant designates and who is or may become entitled to a Participant's Plan Account upon the Participant's death.

**(B) De minimis distribution.** In accordance with the Employer's Adoption Agreement elections, the Plan Administrator may allow a Participant to elect to receive a distribution or the Plan Administrator will distribute (without a Participant election) any amount of the Participant's Account where: (1) the Participant's Account (disregarding Rollover Contributions) does not exceed $5,000 (or such other amount as does not exceed the Code §411(a)(11)(A) dollar amount); (2) the Participant has not made or received an allocation of any Deferral Contributions under the Plan during the two-year period ending on the date of distribution; and (3) the Participant has not received a prior distribution under this Section 4.05(B).

**(C) Distribution of Rollover Contributions.** The Employer in the Adoption Agreement may elect to permit a Participant to request and to receive distribution of the Participant's Account attributable to Rollover Contributions (but not to Transfers) before the Participant has a distributable event under Section 4.01.

4.06 DISTRIBUTIONS UNDER QUALIFIED DOMESTIC RELATIONS ORDERS (QDROs). Notwithstanding any other provision of this Plan, the Employer in the Adoption Agreement may elect to apply the QDRO provisions of this Section 4.06. If Section 4.06 applies, the Plan Administrator (and any Trustee) must comply with the terms of a QDRO, as defined in Code §414(p), which is issued with respect to the Plan.

**(A) Time and Method of Payment.** This Plan specifically permits distribution to an alternate payee under a QDRO at any time, notwithstanding any contrary Plan provision and irrespective of whether the Participant has attained his or her earliest retirement age (as defined under Code §414(p)) under the Plan. A distribution to an alternate payee prior to the Participant's attainment of earliest retirement age is available only if the QDRO specifies distribution at that time or permits an agreement between the Plan and the alternate payee to authorize an earlier distribution. Nothing in this Section 4.06 gives a Participant a right to receive distribution at a time the Plan otherwise does not permit nor authorizes the alternate payee to receive a form of payment the Plan does not permit.

**(B) QDRO Procedures.** The Plan Administrator must establish reasonable procedures to determine the qualified

© 2016

status of a domestic relations order. Upon receiving a domestic relations order, the Plan Administrator promptly will notify the Participant and any alternate payee named in the order, in writing, of the receipt of the order and the Plan's procedures for determining the qualified status of the order. Within a reasonable period of time after receiving the domestic relations order, the Plan Administrator must determine the qualified status of the order and must notify the Participant and each alternate payee, in writing, of the Plan Administrator's determination. The Plan Administrator must provide notice under this paragraph by mailing to the individual's address specified in the domestic relations order.

**(C)   Accounting.** If any portion of the Participant's Account Balance is payable under the domestic relations order during the period the Plan Administrator is making its determination of the qualified status of the domestic relations order, the Plan Administrator must maintain a separate accounting of the amounts payable. If the Plan Administrator determines the order is a QDRO within 18 months of the date amounts first are payable following receipt of the domestic relations order, the Plan Administrator will distribute or will direct the Trustee to distribute the payable amounts in accordance with the QDRO. If the Plan Administrator does not make its determination of the qualified status of the order within the 18-month determination period, the Plan Administrator will distribute or will direct the Trustee to distribute the payable amounts in the manner the Plan would distribute if the order did not exist and will apply the order prospectively if the Plan Administrator later determines the order is a QDRO.

To the extent it is not inconsistent with the provisions of the QDRO, the Plan Administrator may segregate or may direct the Trustee to segregate the QDRO amount in a segregated investment account. The Plan Administrator or Trustee will make any payments or distributions required under this Section 4.06 by separate benefit checks or other separate distribution to the alternate payee(s).

**(D)   Permissible QDROs.** A domestic relations order that otherwise satisfies the requirements for a qualified domestic relations order ("QDRO") will not fail to be a QDRO: (i) solely because the order is issued after, or revises, another domestic relations order or QDRO; or (ii) solely because of the time at which the order is issued, including issuance after the annuity starting date or after the Participant's death.

4.07 DIRECT ROLLOVER OF ELIGIBLE ROLLOVER
DISTRIBUTIONS – GOVERNMENTAL PLAN.

**(A)   Participant Election.** A Participant (including for this purpose, a former Employee) in a Governmental Eligible 457 Plan may elect, at the time and in the manner the Plan Administrator prescribes, to have any portion of his or her eligible rollover distribution from the Plan paid directly to an eligible retirement plan specified by the Participant in a direct rollover election. For purposes of this election, a "Participant" includes as to their respective interests, a Participant's surviving spouse and the Participant's spouse or former spouse who is an alternate payee under a QDRO.

**(B)   Rollover and Withholding Notice.** At least 30 days and not more than 180 days prior to the Trustee's distribution of an eligible rollover distribution, the Plan Administrator must provide a written notice (including a summary notice as permitted under applicable Treasury regulations) explaining to the distributee the rollover option, the applicability of mandatory 20% federal withholding to any amount not directly rolled over, and the recipient's right to roll over within 60 days after the date of receipt of the distribution ("rollover notice").

**(C)   Default distribution or rollover.** Except as provided in Paragraph (D), in the case of a Participant who does not elect timely to roll over or to receive distribution of his or her

Account, the Plan Administrator or the Trustee, at the Plan Administrator's direction, may distribute to the Participant or may directly roll over the Participant's Account in accordance with the Plan's rollover notice.

**(D)   Mandatory default rollover.** If (1) the Plan is a Governmental Eligible 457 Plan, (2) the Plan makes a mandatory distribution after the Code §401(a)(31)(B) Effective Date, greater than $1,000, and (3) the Participant does not elect to have such distribution paid directly to an eligible retirement plan specified by the Participant in a direct rollover or to receive the distribution directly, then the Plan Administrator will pay the distribution in a direct rollover to an individual retirement plan designated by the Plan Administrator.

**(E)   Non-spouse beneficiary rollover right.** A non-spouse beneficiary who is a "designated beneficiary" under Section 4.03(E)(1), by a direct trustee-to-trustee transfer ("direct rollover"), may roll over all or any portion of his or her distribution to an individual retirement account the beneficiary establishes for purposes of receiving the distribution. In order to be able to roll over the distribution, the distribution otherwise must satisfy the definition of an eligible rollover distribution.

**(1)   Certain requirements not applicable.** Although a non-spouse beneficiary may roll over directly a distribution as provided in Section 4.07(E), the distribution is not subject to the direct rollover requirements of Code §401(a)(31) (including the automatic rollover provisions of Code §401(a)(31)(B)), the notice requirements of Code §402(f) or the mandatory withholding requirements of Code §3405(c). If a non-spouse beneficiary receives a distribution from the Plan, the distribution is not eligible for a "60-day" rollover.

**(2)   Trust beneficiary.** If the Participant's named beneficiary is a trust, the Plan may make a direct rollover to an individual retirement account on behalf of the trust, provided the trust satisfies the requirements to be a designated beneficiary within the meaning of Code §401(a)(9)(E).

**(3)   Required minimum distributions not eligible for rollover.** A non-spouse beneficiary may not roll over an amount which is a required minimum distribution, as determined under applicable Treasury regulations and other Revenue Service guidance. If the Participant dies before his or her required beginning date and the non-spouse beneficiary rolls over to an IRA the maximum amount eligible for rollover, the beneficiary may elect to use either the 5-year rule or the life expectancy rule, pursuant to Treas. Reg. §1.401(a)(9)-3, A-4(c), in determining the required minimum distributions from the IRA that receives the non-spouse beneficiary's distribution.

**(F)   Definitions.** The following definitions apply to this Section:

**(1)   Eligible rollover distribution.** An eligible rollover distribution is any distribution of all or any portion of a Participant's Account, except an eligible rollover distribution does not include: (a) any distribution which is one of a series of substantially equal periodic payments (not less frequently than annually) made for the life (or life expectancy) of the Participant or the joint lives (or joint life expectancies) of the Participant and the Participant's designated Beneficiary, or for a specified period of ten years or more; (b) any Code §401(a)(9) required minimum distribution; (c) any unforeseeable emergency payment; and (d) any distribution which otherwise would be an eligible rollover distribution, but where the total distributions to the Participant during that calendar year are reasonably expected to be less than $200.

**(2)   Eligible retirement plan.** An eligible retirement plan is an individual retirement account described in Code §408(a),

© 2016

an individual retirement annuity described in Code §408(b), an annuity plan described in Code §403(a), a qualified plan described in Code §401(a), an annuity contract (or custodial agreement) described in Code §403(b), or an eligible deferred compensation plan described in Code §457(b) and maintained by an Employer described in Code §457(e)(1)(A), which accepts the Participant's, the Participant's spouse or alternate payee's eligible rollover distribution.

A Participant or beneficiary may elect to roll over directly an eligible rollover distribution to a Roth IRA described in Code §408A(b). For this purpose, the term "eligible rollover distribution" includes a rollover distribution described in this Section.

    **(3) Direct rollover.** A direct rollover is a payment by the Plan to the eligible retirement plan specified by the distributee.

    **(4) Mandatory distribution.** A mandatory distribution is an eligible rollover distribution without the Participant's consent before the Participant attains the later of age 62 or Normal Retirement Age (see paragraph 3.05 (B)). A distribution to a beneficiary is not a mandatory distribution.

    **(5) 401(a)(31)(B) Effective Date.** The 401(a)(31)(B) Effective Date is the date of the close of the first regular legislative session of the legislative body with the authority to amend the Plan that begins on or after January 1, 2006.

    4.08 <u>ELECTION TO DEDUCT FROM DISTRIBUTION</u>. An Eligible Retired Public Safety Officer may elect annually for that taxable year to have the Plan deduct an amount from a distribution which the Eligible Retired Public Safety Officer

otherwise would receive and include in income. The Plan will pay such deducted amounts directly to pay qualified health insurance premiums.

**(A) Direct payment.** The Plan will pay directly to the provider of the accident or health insurance plan or qualified long-term care insurance contract the amounts the Eligible Retired Public Safety Officer has elected to have deducted from the distribution. Such amounts may not exceed the lesser of $3,000 or the amount the Participant paid for such taxable year for qualified health insurance premiums, and which otherwise complies with Code §402(l).

 **(B) Definitions.**

    **(1) Eligible retired public safety officer.** An "Eligible Retired Public Safety Officer" is an individual who, by reason of disability or attainment of Normal Retirement Age, is separated from service as a Public Safety Officer with the Employer.

    **(2) Public safety officer.** A "Public Safety Officer" has the same meaning as in Section 1204(9)(A) of the Omnibus Crime Control and Safe Streets Act of 1968 (42 U.S.C. 3796b(9)(A)).

    **(3) Qualified health insurance premiums.** The term "qualified health insurance premiums" means premiums for coverage for the Eligible Retired Public Safety Officer, his or her spouse, and dependents, by an accident or health insurance plan or qualified long-term care insurance contract (as defined in Code §7702B(b)).

© 2016

**ARTICLE V**
**PLAN ADMINISTRATOR - DUTIES WITH RESPECT TO PARTICIPANTS' ACCOUNTS**

5.01 TERM/VACANCY. The Plan Administrator will serve until his or her successor is appointed. In case of a vacancy in the position of the Plan Administrator, the Employer will exercise any and all of the powers, authority, duties and discretion conferred upon the Plan Administrator pending the filling of the vacancy.

5.02 POWERS AND DUTIES. The Plan Administrator will have the following powers and duties:

(a)   To select a committee to assist the Plan Administrator;

(b)   To select a secretary for the committee, who need not be a member of the committee;

(c)   To determine the rights of eligibility of an Employee to participate in the Plan and the value of a Participant's Account;

(d)   To adopt rules and procedures and to create administrative forms necessary for the proper and efficient administration of the Plan provided the rules, procedures and forms are not inconsistent with the terms of the Plan;

(e)   To construe and enforce the terms of the Plan and the rules and regulations the Plan Administrator adopts, including interpretation of the Plan documents and documents related to the Plan's operation;

(f)   To direct the distribution of a Participant's Account;

(g)   To review and render decisions respecting a claim for (or denial of a claim for) a benefit under the Plan;

(h)   To furnish the Employer with information which the Employer may require for tax or other purposes;

(i)   To establish a policy in making distributions for unforeseeable emergencies;

(j)   To establish under a Governmental Eligible 457 Plan, policies regarding the receipt of Rollover Contributions and default rollover distributions;

(k)   To establish a policy regarding the making and the receipt of Transfers;

(l)   To establish a policy regarding Participant or Beneficiary direction of investment;

(m)   To engage the services of any person to invest any Account under this Plan and to direct such person to make payment to a Participant of his or her Vested Account;

(n)   To establish under a Governmental Eligible 457 Plan, a policy (see Section 5.02(A)) which the Trustee must observe in making loans, if any, to Participants and Beneficiaries;

(o)   To undertake correction of any Plan failures as necessary to preserve eligible Plan status; and

(p)   To undertake any other action the Plan Administrator deems reasonable or necessary to administer the Plan.

The Plan Administrator shall have total and complete discretion to interpret and construe the Plan and to determine all questions arising in the administration, interpretation and application of the Plan. Any determination the Plan Administrator makes under the Plan is final and binding upon any affected person.

**(A)   Loan Policy.** In a Governmental Eligible 457 Plan, the Plan Administrator, in its sole discretion, may establish, amend or terminate from time to time, a nondiscriminatory policy which the Trustee must observe in making Plan loans, if any, to Participants and to Beneficiaries. If the Plan Administrator adopts a loan policy, the loan policy must be a written document and must include: (1) the identity of the person or positions authorized to administer the participant loan program; (2) the procedure for applying for a loan; (3) the criteria for approving or denying a loan; (4) the limitations, if any, on the types and amounts of loans available; (5) the procedure for determining a reasonable rate of interest; (6) the types of collateral which may secure the loan; and (7) the events constituting default and the steps the Plan will take to preserve Plan assets in the event of default. A loan policy the Plan Administrator adopts under this Section 5.02(A) is part of the Plan, except that the Plan Administrator may amend or terminate the policy without regard to Section 9.01.

**(B)   QDRO Policy.** If the QDRO provisions of Section 4.06 apply, the Plan Administrator will establish QDRO procedures.

5.03 COMPENSATION. The Plan Administrator and the members of the Committee will serve without compensation for services, but the Employer will pay all expenses of the Plan Administrator and Committee.

5.04 AUTHORIZED REPRESENTATIVE. The Plan Administrator may authorize any one of the members of the Committee, if any, or the Committee's Secretary, to sign on the Plan Administrator's behalf any Plan notices, directions, applications, certificates, consents, approvals, waivers, letters or other documents.

5.05 INDIVIDUAL ACCOUNTS/RECORDS. The Plan Administrator will maintain a separate Account in the name of each Participant to reflect the value of the Participant's Deferred Compensation under the Plan. The Plan Administrator will maintain records of its activities.

5.06 VALUE OF PARTICIPANT'S ACCOUNT. The value of each Participant's Account consists of his or her accumulated Deferred Compensation, as of the most recent Accounting Date or any later date as the Plan Administrator may determine.

5.07 ACCOUNT ADMINISTRATION, VALUATION AND EXPENSES.

**(A)   Individual Accounts.** The Plan Administrator, as necessary for the proper administration of the Plan, will maintain, or direct the Trustee to maintain, a separate Account, or multiple Accounts, in the name of each Participant to reflect the Participant's Account Balance under the Plan. The Plan Administrator will make its allocations of Employer Contributions and of Earnings, or will request the Trustee to make such allocations, to the Accounts of the Participants as necessary to maintain proper Plan records and in accordance with the applicable: (i) Contribution Types; (ii) allocation conditions; (iii) investment account types; and (iv) Earnings allocation methods. The Plan Administrator may also maintain, or direct the Trustee to maintain, a separate temporary Account for Participant forfeitures which occur during a Plan Year, pending their accrual and allocation in accordance with the Plan terms, or for other special items as the Plan Administrator determines is necessary and appropriate for proper plan administration.

**(1) By Contribution Type.** The Plan Administrator, will establish Plan Accounts for each Participant as necessary to reflect his or her Accounts attributable to the following Contribution Types and the Earnings attributable thereto: Pre-Tax Deferrals, Roth Deferrals, Matching Contributions, Nonelective Contributions, Rollover Contributions (including Roth versus pre-tax amounts), and Transfers.

**(2) By investment account type.** The Plan Administrator will establish separate Accounts for each Participant as necessary to reflect his or her investment account types as described below:

**(a) Pooled Accounts.** A Pooled Account is an Account which for investment purposes is not a Segregated Account or a Participant-Directed Account. If any or all Plan investment Accounts are Pooled Accounts, each Participant's Account has an undivided interest in the assets comprising the Pooled Account. In a Pooled Account, the value of each Participant's Account Balance consists of that proportion of the net worth (at fair market value) of the Trust Fund which the net credit balance in his or her Account (exclusive of the cash value of incidental benefit insurance contracts) bears to the total net credit balance in the Accounts of all Participants plus the cash surrender value of any insurance contracts held by the Trustee on the Participant's life. As of each Valuation Date, the Plan Administrator must reduce a Participant-Directed Account for any forfeiture arising from Section 5.07 after the Plan Administrator has made all other allocations, changes or adjustments to the Account (excluding Earnings) for the valuation period.

**(b) Participant-Directed Accounts.** A Participant-Directed Account is an Account that the Plan Administrator establishes and maintains or directs the Trustee to establish and maintain for a Participant to invest in one or more assets that are not pooled assets held by the Trust, such as assets in a brokerage account or other property in which other Participants do not have any interest. As the Plan Administrator determines, a Participant-Directed Account may provide for a limited number and type of investment options or funds, or may be open-ended and subject only to any limitations imposed by applicable law. A Participant may have one or more Participant-Directed Accounts in addition to Pooled or Segregated Accounts. A Participant-Directed Account is credited and charged with the Earnings. As of each Valuation Date, the Plan Administrator must reduce a Participant-Directed Account for any forfeiture arising from Section 5.07 after the Plan Administrator has made all other allocations, changes or adjustments to the Account (excluding Earnings) for the valuation period.

**(c) Segregated Accounts.** A Segregated Account is an Account the Plan Administrator establishes and maintains or directs the Trustee to establish and maintain for a Participant: (i) to facilitate installment payments; (ii) to hold a QDRO amount; (iii) to prevent a distortion of Plan Earnings allocations; or (iv) for such other purposes as the Plan Administrator may direct. A Segregated Account receives all income it earns and bears all expense or loss it incurs. The Trustee will invest the assets of a Segregated Account consistent with the purpose for which the Plan Administrator or Trustee established the Account. As of each Valuation Date, the Plan Administrator must reduce a Segregated Account for any forfeiture arising after the Plan Administrator has made all other allocations, changes or adjustments to the Account (excluding Earnings) for the Valuation Period.

**(3) Amount of Account/distributions.** The amount of a Participant's Account, as determined by the Plan Administrator, is equal to the sum of all contributions, Earnings and other additions credited to the Account, less all distributions (including distributions to Beneficiaries and to alternate payees and also including disbursement of Plan loan proceeds), expenses and other charges against the Account as of a Valuation Date or other relevant date. For purposes of a distribution under the Plan, the amount of a Participant's Account Balance is determined based upon its value on the Valuation Date immediately preceding or coinciding with the date of the distribution. If any or all Plan investment Accounts are Participant-Directed Accounts, the directing Participant's Account Balance consists of the assets held within the Participant-Directed Account and the value of the Account is determined based upon the fair market value of such assets.

**(4) Account statements.** As soon as practicable after the Accounting Date of each Plan Year, the Plan Administrator will deliver to each Participant (and to each Beneficiary) a statement reflecting the amount of his or her Account Balance in the Trust as of the statement date or most recent Valuation Date. No Participant, except the Plan Administrator/Participant or Trustee/Participant, has the right to inspect the records reflecting the Account of any other Participant.

**(B) Allocation of Earnings.** This Section 5.07(B) applies solely to the allocation of Earnings of the Trust Fund. The Plan Administrator will allocate Employer Contributions and Participant forfeitures, if any, in accordance with Article III. Earnings means the net income, gain or loss earned by a particular Account, by the Trust, or with respect to a contribution or to a distribution, as the context requires.

**(1) Allocate as of Valuation Date.** As of each Valuation Date, the Plan Administrator must adjust Accounts to reflect Earnings for the Valuation Period since the last Valuation Date.

**(2) Definition of Valuation Date.** A Valuation Date under this Plan is each: (a) Accounting Date; (b) Valuation Date the Employer elects in the Adoption Agreement; or (c) Valuation Date the Plan Administrator establishes. The Employer in the Adoption Agreement or the Plan Administrator may elect alternative Valuation Dates for the different Contribution Types which the Plan Administrator maintains under the Plan.

**(3) Definition of Valuation Period.** The Valuation Period is the period beginning on the day after the last Valuation Date and ending on the current Valuation Date.

**(4) Allocation methods.** The Plan Administrator will allocate Earnings to the Participant Accounts in accordance with the daily valuation method, balance forward method, balance forward with adjustment method, weighted average method, Participant-Directed Account method, or other method the Employer elects under the Adoption Agreement. The Employer in the Adoption Agreement may elect alternative methods under which the Plan Administrator will allocate the Earnings to the Accounts reflecting different Contribution Types or investment Account types which the Plan Administrator maintains under the Plan. The Plan Administrator first will adjust the Participant Accounts, as those Accounts stood at the beginning of the current Valuation Period, by reducing the Accounts for any forfeitures, distributions, and loan disbursement payments arising under the Plan, for expenses charged during the Valuation Period to the Accounts (expenses directly related to a Participant's Account). The Plan Administrator then, subject to the restoration allocation requirements of the Plan, will allocate Earnings under the applicable valuation method.

**(a) Daily valuation method.** If the Employer in the Adoption Agreement elects to apply the daily valuation method, the Plan Administrator will allocate Earnings on each day of the Plan Year for which Plan assets are valued on an established market and the Trustee is conducting business. Under the daily valuation method, all assets subject to such method are subject to daily valuation. The assets may be held in Participant-Directed Accounts or in Accounts which are subject to Trustee or other fiduciary investment direction.

**(b) Balance forward method.** If the Employer in the Adoption Agreement elects to apply the balance forward method, the Plan Administrator will allocate Earnings pro rata to the adjusted Participant Accounts, since the last Valuation Date.

**(c) Balance forward with adjustment method.** If the Employer in the Adoption Agreement elects to apply the balance forward with adjustment method, the Plan Administrator will allocate pursuant to the balance forward method, except it will treat as part of the relevant Account at the beginning of the Valuation Period the percentage of the contributions made as the Employer elects in the Adoption Agreement, during the Valuation Period the Employer elects in the Adoption Agreement.

**(d) Weighted average method.** If the Employer in the Adoption Agreement elects to apply a weighted average allocation method, the Plan Administrator will allocate pursuant to the balance forward method, except it will treat a weighted portion of the applicable contributions as if includible in the Participant's Account as of the beginning of the Valuation Period. The weighted portion is a fraction, the numerator of which is the number of months in the Valuation Period, excluding each month in the Valuation Period which begins prior to the contribution date of the applicable contributions, and the denominator of which is the number of months in the Valuation Period. The Employer in the Adoption Agreement may elect to substitute a weighting period other than months for purposes of this weighted average allocation.

**(e) Participant-Directed Account method.** The Employer in the Adoption Agreement must elect to apply the Participant-Directed Account method to any Participant-Directed Account under the Plan. Under the Participant-Directed Account method: (i) each Participant-Directed Account is credited and charged with the Earnings such Account generates; (ii) the Employer's election, if any, in the Adoption Agreement or another method for the allocation of Earnings will not apply to any Participant-Directed Account; and (iii) the Participant-Directed Account may be valued as often as daily, but will be valued at least annually, and all assets in the Account are not necessarily valued on the same frequency. An Account which is subject to the Participant-Directed Account method includes an individual brokerage account or similar account in title to the Trustee for the benefit of the Participant.

**(C) Allocation of Net Income, Gain or Loss (No Trust).** In a Tax-Exempt Eligible 457 Plan that does not maintain a trust the Plan Administrator will allocate net income, gain or loss in accordance with this provision. As of each Accounting Date (and each other valuation date determined under the Adoption Agreement), the Plan Administrator will adjust Accounts to reflect net income, gain or loss, if any, since the last Accounting Date or Account valuation. The Employer in the Adoption Agreement will elect the method for allocating net income gain or loss. The Plan Administrator will continue to allocate net income, gain and loss to a Participant's Account subject to an installment distribution, until the Account is fully distributed.

**5.08** ACCOUNT CHARGED. The Plan Administrator will charge all distributions made to a Participant or to his or her Beneficiary, or transferred under Section 9.03 from his or her Account, against the Account of the Participant when made.

**5.09** OWNERSHIP OF FUND/TAX-EXEMPT ORGANIZATION. If the Employer is a Tax-Exempt Organization, the Plan is an unfunded plan and all Deferred Compensation, property and rights to property purchased by Deferred Compensation and all income attributable thereto remain, until paid or made available under the Plan, the sole property and rights of the Employer, subject only to the claims of the Employer's general creditors. No Participant or Beneficiary will have any vested interest or secured or preferred position with respect to an Account or have any claim against the Employer except as a general creditor. No Participant or Beneficiary shall have any right to sell, assign, transfer or otherwise convey his or her Account or any interest in his or her Deferred Compensation. The Employer or the Plan Administrator, acting as the Employer's agent, may enter into a trust agreement solely for the purpose of investing all or part of the Accounts, which will be subject to the claims of the Employer's general creditors, and in which the Participants or Beneficiaries will not have a vested interest nor a secured or preferred position or have any claim except as the Employer's general creditor. The Employer may not purchase life insurance contracts under this Plan unless the Employer retains all incidents of ownership in such contracts, the Employer is the sole beneficiary of such contracts and the Employer is not under any obligation to transfer the contracts or pass through the proceeds to any Participant or to his or her Beneficiary. The Employer may adopt and attach to the Plan as "Appendix A," the Internal Revenue Service Model Rabbi Trust under Rev. Proc. 92-64 (as amended) to hold the assets of a Tax-Exempt Organization Eligible 457 Plan. If the Employer adopts the Model Rabbi Trust, the Plan incorporates by reference the provisions of the Model Rabbi Trust as if fully set forth herein.

**5.10** PARTICIPANT DIRECTION OF INVESTMENT. Subject to the terms of the Plan Administrator's adopted policy, if any, and also to written consent of the Trustee, if the Plan has a Trust, a Participant will have the right to direct the investment or re-investment of the assets comprising the Participant's Account. The Plan Administrator will account separately for the Participant-Directed Accounts. The Participant's right to direct investment does not give the Participant any vested interest or secured or preferred position with respect to assets over which he/she has investment responsibility.

**5.11** VESTING/SUBSTANTIAL RISK OF FORFEITURE. The Employer in the Adoption Agreement may elect to apply a vesting schedule or to specify any other Substantial Risk of Forfeiture applicable to any or all Deferral Contributions.

**(A) Forfeiture Allocation.** The Employer in the Adoption Agreement must elect the method the Plan Administrator will use to allocate any Participant forfeitures, including those related to lost Participants under Section 5.14. The Plan Administrator will allocate a forfeiture in the Plan Year in which the forfeiture occurs or in the next following Plan Year.

**5.12** PRESERVATION OF ELIGIBLE PLAN STATUS. The Plan Administrator may elect to sever from this Plan and to treat as a separate 457 plan, the Accounts of any Participants who have Excess Deferrals that the Plan Administrator has not corrected in accordance with Section 3.10 or in the case of any other Code §457(b) failure that the Employer may not otherwise correct, and which failure would result in the Plan ceasing to be an Eligible 457 Plan. In such event, the Plan Administrator will take any necessary or appropriate action consistent with the Employer's maintenance of separate 457 plans and with preservation of Eligible 457 Plan status of this Plan.

5.13 <u>LIMITED LIABILITY</u>. The Employer will not be liable to pay plan benefits to a Participant in excess of the value of the Participant's Account as the Plan Administrator determines in accordance with the Plan terms. Neither the Employer nor the Plan Administrator will be liable for losses arising from depreciation or shrinkage in the value of any investments acquired under this Plan.

5.14 <u>LOST PARTICIPANTS</u>. If the Plan Administrator is unable to locate any Participant or Beneficiary whose Account becomes distributable (a "lost Participant"), the Plan Administrator will apply the provisions of this Section 5.14.

**(A)   Attempt to Locate.** The Plan Administrator will attempt to locate a lost Participant and may use one or more of the following methods: (1) provide a distribution notice to the lost Participant at his or her last known address by certified or registered mail; (2) use a commercial locator service, the internet or other general search method; (3) use the Social Security Administration or PBGC search program; or (4) use such other methods as the Plan Administrator believes prudent.

**(B)   Failure to Locate.** If a lost Participant remains unlocated for 6 months following the date the Plan Administrator first attempts to locate the lost Participant using one or more of the methods described in Section 5.14(A), the Plan Administrator may forfeit the lost Participant's Account. If the Plan Administrator forfeits the lost Participant's Account, the forfeiture occurs at the end of the above-described 6-month period and the Plan Administrator will allocate the forfeiture in accordance with Section 5.11. The Plan Administrator under this Section 5.14(B) will forfeit the entire Account of the lost Participant, including Salary Reduction Contributions.

If a lost Participant whose Account was forfeited thereafter at any time but before the Plan has been terminated makes a claim for his or her forfeited Account, the Plan Administrator will restore the forfeited Account to the same dollar amount as the amount forfeited, unadjusted for net income, gains or losses occurring subsequent to the forfeiture. The Plan Administrator will make the restoration in the Plan Year in which the lost Participant makes the claim, first from the amount, if any, of Participant forfeitures the Plan Administrator otherwise would allocate for the Plan Year, then from the amount, if any, of Trust net income or gain for the Plan Year and last from the amount or additional amount the Employer contributes to the Plan for the Plan Year. The Plan Administrator will distribute the restored Account to the lost Participant not later than 60 days after the close of the Plan Year in which the Plan Administrator restores the forfeited Account.

**(C)   Nonexclusivity and Uniformity.** The provisions of this Section 5.14 are intended to provide permissible but not exclusive means for the Plan Administrator to administer the Accounts of lost Participants. The Plan Administrator may utilize any other reasonable method to locate lost Participants and to administer the Accounts of lost Participants, including the default rollover under Section 4.07(C) and such other methods as the Revenue Service or the U.S. Department of Labor ("DOL") may in the future specify. The Plan Administrator will apply Section 5.14 in a reasonable manner, but may in determining a specific course of action as to a particular Account, reasonably take into account differing circumstances such as the amount of a lost Participant's Account, the expense in attempting to locate a lost Participant, the Plan Administrator's ability to establish and the expense of establishing a rollover IRA, and other factors. The Plan Administrator may charge to the Account of a lost Participant the reasonable expenses incurred under this Section 5.14 and which are associated with the lost Participant's Account.

5.15 <u>PLAN CORRECTION</u>. The Plan Administrator, in conjunction with the Employer and Trustee as appropriate, may undertake such correction of Plan errors as the Plan Administrator deems necessary, including but not limited to correction to maintain the Plan's status as an Eligible 457 Plan. The Plan Administrator under this Section 5.15 also may undertake Plan correction in accordance with any correction program that the Internal Revenue Service makes applicable to 457 plans.

## ARTICLE VI
## PARTICIPANT ADMINISTRATIVE PROVISIONS

6.01 <u>BENEFICIARY DESIGNATION</u>. A Participant from time to time may designate, in writing, any person(s) (including a trust or other entity), contingently or successively, to whom the Plan Administrator or Trustee will pay the Participant's Account (including any life insurance proceeds payable to the Participant's Account) in the event of death. A Participant also may designate the method of payment of his or her Account. The Plan Administrator will prescribe the form for the Participant's written designation of Beneficiary and, upon the Participant's filing the form with the Plan Administrator, the form revokes all designations filed prior to that date by the same Participant. A divorce decree, or a decree of legal separation, revokes the Participant's designation, if any, of his or her spouse as his or her Beneficiary under the Plan unless the decree or a QDRO provides otherwise. The foregoing revocation provision (if applicable) applies only with respect to a Participant whose divorce or legal separation becomes effective on or following the date the Employer executes the Adoption Agreement, unless the Employer in the Adoption Agreement specifies a different effective date.

6.02 <u>NO BENEFICIARY DESIGNATION</u>. If a Participant fails to name a Beneficiary in accordance with Section 6.01, or if the Beneficiary named by a Participant predeceases the Participant, then the Plan Administrator will pay the Participant's remaining Account in accordance with Article IV in the following order of priority, to:

(a) The Participant's surviving spouse; or

(b) The Participant's children (including adopted children), in equal shares by right of representation (one share for each surviving child and one share for each child who predeceases the Participant with living descendants); and if none to

(c) The Participant's estate.

If the Beneficiary survives the Participant, but dies prior to distribution of the Participant's entire Account, the Trustee will pay the remaining Account to the Beneficiary's estate unless: (1) the Participant's Beneficiary designation provides otherwise; or (2) the Beneficiary has properly designated a beneficiary. A Beneficiary only may designate a beneficiary for the Participant's Account Balance remaining at the Beneficiary's death, if the Participant has not previously designated a successive contingent beneficiary and the Beneficiary's designation otherwise complies with the Plan terms. The Plan Administrator will direct a Trustee if applicable as to the method and to whom the Trustee will make payment under this Section 6.02.

6.03 <u>SALARY REDUCTION AGREEMENT</u>.

**(A) General.** A Participant must elect to make Salary Reduction Contributions on a Salary Reduction Agreement form the Plan Administrator provides for this purpose. The Salary Reduction Agreement must be consistent with the Employer's Adoption Agreement elections and the Plan Administrator in a Salary Reduction Agreement may impose such other terms and limitations as the Plan Administrator may determine.

**(B) Election Timing.** A Participant's Salary Reduction Agreement may not take effect earlier than the first day of the calendar month following the date the Participant executes the Salary Reduction Agreement and as to Compensation paid or made available in such calendar month. However, if an Employee is eligible to become a Participant during the Employee's calendar month of hire, the Employee may execute a Salary Reduction Agreement on or before the date he/she becomes an Employee, effective for the month in which he/she becomes an Employee.

**(C) Sick, Vacation and Back Pay.** If the Employer in the Adoption Agreement permits Participants to make Salary Reduction Contributions from accumulated sick pay, from accumulated vacation pay or from back pay, a Participant who will incur a Severance from Employment may execute a Salary Reduction Agreement before such amounts are paid or made available provided: (i) such amounts are paid or made available before the Participant incurs the Severance; and (ii) the Participant is an Employee in that month.

**(D) Modification of Salary Reduction Agreement.** A Participant's Salary Reduction Agreement remains in effect until a Participant modifies it or ceases to be eligible to participate in the Plan. A Participant may modify his or her Salary Reduction Agreement by executing a new Salary Reduction Agreement. Any modification will become effective no earlier than the beginning of the calendar month commencing after the date the Participant executes the new Salary Reduction Agreement. Filing a new Salary Reduction Agreement will revoke all Salary Reduction Agreements filed prior to that date. The Employer or Plan Administrator may restrict the Participant's right to modify his or her Salary Reduction Agreement in any Taxable Year.

6.04 <u>PERSONAL DATA TO PLAN ADMINISTRATOR</u>. Each Participant and each Beneficiary of a deceased Participant must furnish to the Plan Administrator such evidence, data or information as the Plan Administrator considers necessary or desirable for the purpose of administering the Plan. The provisions of this Plan are effective for the benefit of each Participant upon the condition precedent that each Participant will furnish promptly full, true and complete evidence, data and information when requested by the Plan Administrator, provided the Plan Administrator advises each Participant of the effect of his or her failure to comply with its request.

6.05 <u>ADDRESS FOR NOTIFICATION</u>. Each Participant and each Beneficiary of a deceased Participant must file with the Plan Administrator from time to time, in writing, his or her address and any change of address. Any communication, statement or notice addressed to a Participant, or Beneficiary, at his or her last address filed with the Plan Administrator, or as shown on the records of the Employer, binds the Participant, or Beneficiary, for all purposes of this Plan.

6.06 <u>PARTICIPANT OR BENEFICIARY INCAPACITATED</u>. If, in the opinion of the Plan Administrator or of the Trustee, a Participant or Beneficiary entitled to a Plan distribution is not able to care for his or her affairs because of a mental condition, a physical condition, or by reason of age, the Plan Administrator or at the direction of the Plan Administrator, the Trustee, may make the distribution to the Participant's or Beneficiary's guardian, conservator, trustee, custodian (including under a Uniform Transfers or Gifts to Minors Act) or to his or her attorney-in-fact or to other legal representative upon furnishing evidence of such status satisfactory to the Plan Administrator and to the Trustee. The Plan Administrator and the Trustee do not have any liability with respect to payments so made and neither the Plan Administrator nor the Trustee has any duty to make inquiry as to the competence of any person entitled to receive payments under the Plan.

**ARTICLE VII**
**MISCELLANEOUS**

7.01 NO ASSIGNMENT OR ALIENATION. A Participant or Beneficiary does not have the right to commute, sell, assign, pledge, transfer or otherwise convey or encumber the right to receive any payments under the Plan or Trust and the Plan Administrator and the Trustee will not recognize any such anticipation, assignment, or alienation. The payments and the rights under this Plan are nonassignable and nontransferable. Furthermore, a Participant's or Beneficiary's interest in the Trust is not subject to attachment, garnishment, levy, execution or other legal or equitable process.

7.02 EFFECT ON OTHER PLANS. This Plan does not affect benefits under any other retirement, pension, or benefit plan or system established for the benefit of the Employer's Employees, and participation under this Plan does not affect benefits receivable under any such plan or system, except to the extent provided in such plan or system.

7.03 WORD USAGE. Words used in the masculine will apply to the feminine where applicable, and wherever the context of the Plan dictates, the plural will be read as the singular and the singular as the plural.

7.04 STATE LAW. The laws of the state of the Employer's principal place of business will determine all questions arising with respect to the provisions of this Plan, except to the extent Federal law supersedes State law.

7.05 EMPLOYMENT NOT GUARANTEED. Nothing contained in this Plan, or any modification or amendment to the Plan, or in the creation of any Account, or the payment of any benefit, gives any Employee, Participant or Beneficiary any right to continue employment, any legal or equitable right against the Employer, the Plan Administrator, the Trustee, any other Employee of the Employer, or any agents thereof except as expressly provided by the Plan.

7.06 NOTICE, DESIGNATION, ELECTION, CONSENT AND WAIVER. All notices under the Plan and all Participant or Beneficiary designations, elections, consents or waivers must be in writing and made in a form the Plan Administrator specifies or otherwise approves. To the extent permitted by Treasury regulations or other applicable guidance, any Plan notice, election, consent or waiver may be transmitted electronically. Any person entitled to notice under the Plan may waive the notice or shorten the notice period except as otherwise required by the Code.

# ARTICLE VIII
## TRUST PROVISIONS—GOVERNMENTAL ELIGIBLE 457 PLAN

**8.01** GOVERNMENTAL ELIGIBLE 457 PLAN. The provisions of this Article VIII apply to a Governmental Eligible 457 Plan and do not apply to a Tax-Exempt Organization Eligible 457 Plan. The Employer in the Adoption Agreement may elect to substitute another trust (attached to this Plan as "Appendix A") or to modify any provision of Article VIII, consistent with Code §457(g) and applicable Treasury regulations.

**8.02** ACCEPTANCE/HOLDING. The Trustee accepts the Trust created under the Plan and agrees to perform the duties and obligations imposed. The Trustee must hold in trust under this Article VIII, all Deferred Compensation until paid in accordance with the Plan terms.

**8.03** RECEIPT OF CONTRIBUTIONS. The Trustee is accountable to the Employer for the funds contributed to it by the Employer or the Plan Administrator, but the Trustee does not have any duty to see that the contributions received comply with the provisions of the Plan.

**8.04** FULL INVESTMENT POWERS. The Trustee has full discretion and authority with regard to the investment of the Trust, except with respect to a Trust asset under Participant direction of investment, in accordance with Section 8.12. The Trustee is authorized and empowered, but not by way of limitation, to exercise and perform the following powers, rights and duties:

(a) To invest any part or all of the Trust in any common or preferred stocks, open-end or closed-end mutual funds, put and call options traded on a national exchange, United States retirement plan bonds, corporate bonds, debentures, convertible debentures, commercial paper, U. S. Treasury bills, U. S. Treasury notes and other direct or indirect obligations of the United States Government or its agencies, improved or unimproved real estate situated in the United States, limited partnerships, insurance contracts of any type, mortgages, notes or other property of any kind, real or personal, and to buy or sell options on common stock on a nationally recognized options exchange with or without holding the underlying common stock, as a prudent person would do under like circumstances. Any investment made or retained by the Trustee in good faith will be proper but must be of a kind constituting a diversification considered by law suitable for trust investments;

(b) To retain in cash so much of the Trust as it may deem advisable to satisfy liquidity needs of the Plan and to deposit any cash held in the Trust in a bank account at reasonable interest;

(c) To invest, if the Trustee is a bank or similar financial institution supervised by the United States or by a State, in any type of deposit of the Trustee (or a bank related to the Trustee within the meaning of Code §414(b)) at a reasonable rate of interest or in a common trust fund as described in Code §584, or in a collective investment fund, the provisions of which the Trust incorporates by this reference, which the Trustee (or its affiliate, as defined in Code §1504) maintains exclusively for the collective investment of money contributed by the bank (or its affiliate) in its capacity as Trustee and which conforms to the rules of the Comptroller of the Currency;

(d) To manage, sell, contract to sell, grant options to purchase, convey, exchange, transfer, abandon, improve, repair, insure, lease for any term even though commencing in the future or extending beyond the term of the Trust, and otherwise deal with all property, real or personal, in such manner, for such considerations and on such terms and conditions as the Trustee decides;

(e) To credit and distribute the Trust as directed by the Plan Administrator of the Plan. The Trustee will not be obliged to inquire as to whether any payee or distributee is entitled to any payment or whether the distribution is proper or within the terms of the Plan, or as to the manner of making any payment or distribution. The Trustee will be accountable only to the Plan Administrator for any payment or distribution made by it in good faith on the order or direction of the Plan Administrator;

(f) To borrow money, to assume indebtedness, extend mortgages and encumber by mortgage or pledge;

(g) To compromise, contest, arbitrate or abandon claims and demands, in the Trustee's discretion;

(h) To have with respect to the Trust all of the rights of an individual owner, including the power to exercise any and all voting rights associated with Trust assets, to give proxies, to participate in any voting trusts, mergers, consolidations or liquidations, to tender shares and to exercise or sell stock subscriptions or conversion rights;

(i) To lease for oil, gas and other mineral purposes and to create mineral severances by grant or reservation; to pool or unitize interest in oil, gas and other minerals; and to enter into operating agreements and to execute division and transfer orders;

(j) To hold any securities or other property in the name of the Trustee or its nominee, with depositories or agent depositories or in another form as it may deem best, with or without disclosing the trust relationship;

(k) To perform any and all other acts in its judgment necessary or appropriate for the proper and advantageous management, investment and distribution of the Trust;

(l) To retain any funds or property subject to any dispute without liability for the payment of interest, and to decline to make payment or delivery of the funds or property until a court of competent jurisdiction makes a final adjudication;

(m) To file all tax returns required of the Trustee;

(n) To furnish to the Employer and the Plan Administrator an annual statement of account showing the condition of the Trust and all investments, receipts, disbursements and other transactions effected by the Trustee during the Plan Year covered by the statement and also stating the assets of the Trust held at the end of the Plan Year, which accounts will be conclusive on all persons, including the Employer and the Plan Administrator, except as to any act or transaction concerning which the Employer or the Plan Administrator files with the Trustee written exceptions or objections within 90 days after the receipt of the accounts; and

(o) To begin, maintain or defend any litigation necessary in connection with the administration of the Trust, except that the Trustee will not be obliged or required to do so unless indemnified to its satisfaction.

**(A) Nondiscretionary Trustee.** The Employer in the Adoption Agreement may elect to appoint a Nondiscretionary Trustee, subject to this Section 8.04(A). The Nondiscretionary Trustee does not have any discretion or authority with regard to the investment of the Trust, but must act solely as a directed Trustee hereunder. The Nondiscretionary Trustee is authorized and empowered to exercise and perform the above Section 8.04 powers, rights and duties provided that the Trustee shall act solely as a directed Trustee and only in

accordance with the written direction of the Employer, the Plan Administrator or of a Participant as applicable. The Nondiscretionary Trustee is not liable for making, retaining or disposing of any investment or for taking or failing to take any other action, in accordance with proper Employer, Plan Administrator or Participant direction.

8.05 <u>RECORDS AND STATEMENTS</u>. The records of the Trustee pertaining to the Trust will be open to the inspection of the Plan Administrator and the Employer at all reasonable times and may be audited from time to time by any person or persons as the Employer or Plan Administrator may specify in writing. The Trustee will furnish the Plan Administrator whatever information relating to the Trust the Plan Administrator considers necessary.

8.06 <u>FEES AND EXPENSES FROM FUND</u>. The Trustee will receive reasonable annual compensation in accordance with its fee schedule as published from time to time. The Trustee will pay from the Trust all fees and expenses the Trustee reasonably incurs in its administration of the Trust, unless the Employer pays the fees and expenses.

8.07 <u>PROFESSIONAL AGENTS</u>. The Trustee may employ and pay from the Trust reasonable compensation to agents, attorneys, accountants and other persons to advise the Trustee as in its opinion may be necessary. The Trustee may delegate to any agent, attorney, accountant or other person selected by it any non-Trustee power or duty vested in it by the Trust, and the Trustee may act or refrain from acting on the advice or opinion of any agent, attorney, accountant or other person so selected.

8.08 <u>DISTRIBUTION OF CASH OR PROPERTY</u>. The Trustee may make distribution under the Plan in cash or property, or partly in each, at its fair market value as determined by the Trustee.

8.09 <u>RESIGNATION AND REMOVAL</u>. The Trustee or the Custodian may resign its position by giving written notice to the Employer and to the Plan Administrator. The Trustee's notice must specify the effective date of the Trustee's resignation, which date must be at least 30 days following the date of the Trustee's notice, unless the Employer consents in writing to shorter notice.

The Employer may remove a Trustee or a Custodian by giving written notice to the affected party. The Employer's notice must specify the effective date of removal which date must be at least 30 days following the date of the Employer's notice, except where the Employer reasonably determines a shorter notice period or immediate removal is necessary to protect Plan assets.

8.10 <u>SUCCESSOR TRUSTEE</u>.

**(A) Appointment.** In the event of the resignation or the removal of a Trustee, where no other Trustee continues to service, the Employer must appoint a successor Trustee if it intends to continue the Plan. If two or more persons hold the position of Trustee, in the event of the removal of one such person, during any period the selection of a replacement is pending, or during any period such person is unable to serve for any reason, the remaining person or persons will act as the Trustee. If the Employer fails to appoint a successor Trustee as of the effective date of the Trustee resignation or removal and no other Trustee remains, the Trustee will treat the Employer as having appointed itself as Trustee and as having filed the Employer's acceptance of appointment as successor Trustee with the former Trustee.

**(B) Automatic Successor.** Any corporation which succeeds to the trust business of the Trustee, or results from any merger or consolidation to which the Trustee is a party, or is the transferee of substantially all the Trustee's assets, will be the successor to the Trustee under this Trust. The successor

Trustee will possess all rights, duties and powers under this Trust as if the successor Trustee were the original Trustee. Neither the Trustee nor the successor Trustee need provide notice to any interested person of any transaction resulting in a successor Trustee. The successor Trustee need not file or execute any additional instrument or perform any additional act to become successor Trustee.

8.11 <u>VALUATION OF TRUST</u>. The Trustee will value the Trust as of each Accounting Date to determine the fair market value of the Trust assets. The Trustee will value the Trust on such other date(s) the Plan Administrator may direct.

8.12 <u>PARTICIPANT DIRECTION OF INVESTMENT</u>. Consistent with the Plan Administrator's policy adopted under Section 5.02(I), the Trustee may consent in writing to permit Participants in the Plan to direct the investment to the Trust assets. The Plan Administrator will advise the Trustee of the portion of the Trust credited to each Participant's Account under the Plan, and subject to such Participant direction. As a condition of Participant direction, the Trustee may impose such conditions, limitations and other provisions as the Trustee may deem appropriate and as are consistent with the Plan Administrator's policy. The Trustee will report to the Plan Administrator the net income, gain or losses incurred by each Participant-Directed Account separately from the net income, gain or losses incurred by the general Trust during the Trust Year.

8.13 <u>THIRD PARTY RELIANCE</u>. No person dealing with the Trustee will be obliged to see to the proper application of any money paid or property delivered to the Trustee, or to inquire whether the Trustee has acted pursuant to any of the terms of the Trust. Each person dealing with the Trustee may act upon any notice, request or representation in writing by the Trustee, or by the Trustee's duly authorized agent, and will not be liable to any person whomsoever in so doing. The certificate of the Trustee that it is acting in accordance with the Trust will be conclusive in favor of any person relying on the certificate.

8.14 <u>INVALIDITY OF ANY TRUST PROVISION</u>. If any clause or provision of this Article VIII proves to be or is adjudged to be invalid or void for any reason, such void or invalid clause or provision will not affect any of the other provisions of this Article VIII and the balance of the Trust provisions will remain operative.

8.15 <u>EXCLUSIVE BENEFIT</u>. The Trustee will hold all the assets of the Trust for the exclusive benefit of the Participants and their Beneficiaries and neither the Employer nor the Trustee will use or divert any part of the corpus or income of the Trust for purposes other than the exclusive benefit of the Participants and Beneficiaries of the Plan. The Employer will not have any right to the assets held by the Trustee and the Trust assets will not be subject to the claims of the Employer's creditors or, except as provided in Section 4.06, of the creditors of any Participant or Beneficiary. No Participant or Beneficiary shall have any right to sell, assign, transfer or otherwise convey his or her Account or any interest in his or her Deferred Compensation. Notwithstanding the foregoing, the Plan Administrator may pay from a Participant's or Beneficiary's Account the amount the Plan Administrator finds is lawfully demanded under a levy issued by the Internal Revenue Service with respect to that Participant or Beneficiary or is sought to be collected by the United States Government under a judgment resulting from an unpaid tax assessment against the Participant or Beneficiary. The Trust created under the Employer's Plan is irrevocable and its assets will not inure to the benefit of the Employer.

8.16 <u>SUBSTITUTION OF CUSTODIAL ACCOUNT OR ANNUITY CONTRACT</u>. The Employer in the Adoption Agreement may elect to use one or more custodial accounts or annuity contracts in lieu of or in addition to the Trust established in this Article VIII. Any such custodial account or

annuity contract must satisfy the requirements of Code §457(g)(3) and applicable Treasury regulations.

8.17 <u>GROUP TRUST AUTHORITY</u>. Notwithstanding any contrary provision in this Plan, the Trustee may, unless restricted in writing by the Plan Administrator, transfer assets of the Plan to a group trust that is operated or maintained exclusively for the commingling and collective investment of monies provided that the funds in the group trust consist exclusively of trust assets held under plans qualified under Code §401(a), individual retirement accounts that are exempt under Code §408(e), and eligible governmental plans that meets the requirements of Code §457(b). For this purpose, a trust includes a custodial account that is treated as a trust under Code §401(f) or under Code §457(g)(3). For purposes of valuation, the value of the interest maintained by the Plan in such group trust shall be the fair market value of the portion of the group trust held for Plan, determined in accordance with generally recognized valuation procedures.

## ARTICLE IX
## AMENDMENT, TERMINATION, TRANSFERS

9.01 <u>AMENDMENT BY EMPLOYER/SPONSOR</u>. The Employer has the right at any time and from time to time:

(a)   To amend this Plan and Trust Agreement and the Adoption Agreement in any manner it deems necessary or advisable in order to continue the status of this Plan as an Eligible 457 Plan; and

(b)   To amend this Plan and Trust Agreement and the Adoption Agreement in any other manner, including deletion, substitution or modification of any Plan, Trust or Adoption Agreement provision.

The Employer must make all amendments in writing. The Employer may amend the Plan by an Adoption Agreement election, by addenda, by separate amendment, or by restatement of the Adoption Agreement or Plan. Each amendment must state the date to which it is either retroactively or prospectively effective. The Employer also may not make any amendment that affects the rights, duties or responsibilities of the Trustee or the Plan Administrator without the written consent of the affected Trustee or the Plan Administrator.

9.02 <u>TERMINATION/FREEZING OF PLAN</u>. The Employer has the right, at any time, to terminate this Plan or to cease (freeze) further Deferral Contributions to the Plan. Upon termination or freezing of the Plan, the provisions of the Plan (other than provisions permitting continued Deferral Contributions) remain operative until distribution of all Accounts. Upon Plan termination, the Plan Administrator or Trustee shall distribute to Participants and Beneficiaries all Deferred Compensation as soon as is reasonably practicable following termination.

9.03 <u>TRANSFERS</u>. The Employer may enter into a Transfer agreement with another employer under which this Plan: (a) may accept a Transfer of a Participant's Account in the other employer's Eligible 457 Plan; or (b) may Transfer a Participant's (or Beneficiary's) Account in this Plan to the other employer's Eligible 457 Plan. The plan sponsors of the plans involved in the Transfer both must be States or both must be Tax-Exempt Organizations and the plans must provide for Transfers. The Participant or Beneficiary, after the Transfer will have Deferred Compensation in the recipient plan at least equal to his or her Deferred Compensation in the transferring plan immediately before the Transfer. Any Transfer also must comply with applicable Treasury regulations, and in particular Treas. Reg. §§1.457-10(b)(2) as to post-severance transfers between Governmental Eligible 457 Plans; 1.457-10(b)(3) as to transfers of all assets between Governmental Eligible 457 Plans; 1.457-10(b)(4) as to transfers between Governmental Eligible 457 Plans of the same Employer; and 1.457-10(b)(5) as to post-severance transfers between Tax-Exempt Organization Eligible 457 Plans. The Plan Administrator will credit any Transfer accepted under this Section 9.03 to the Participant's Account and will treat the transferred amount as a Deferral Contribution for all purposes of this Plan except the Plan Administrator, will not treat such Transfer as a Deferral Contribution subject to the limitations of Article III. In addition, in the case of a Transfer between Tax-Exempt Organization Eligible Plans, the recipient plans shall apply a Participant's distribution elections made under the transferor plan in accordance with Treas. Reg. §1.457-10(b)(6)(ii). The Plan's Transfer of any Participant's or Beneficiary's Account under this Section 9.03 completely discharges the Employer, the Plan Administrator, the Trustee and the Plan from any liability to the Participant or Beneficiary for any Plan benefits.

9.04 <u>PURCHASE OF PERMISSIVE SERVICE CREDIT</u>. A Participant in a Governmental Eligible 457 Plan, prior to

otherwise incurring a distributable event under Article IV, may direct the Trustee to transfer all or a portion of his or her Account to a governmental defined benefit plan (under Code §414(d)) for: (a) the purchase of permissive service credit (under Code §415(n)(3)(A)) under such plan, or (b) the repayment of contributions and earnings previously refunded with respect to a forfeiture of service credited under the plan (or under another governmental plan within the same State) to which Code §415 does not apply by reason of Code §415(k)(3).

© 2016