United States Department of Justice
Office of the United States Trustee
1100 Commerce St.  Room 976
Dallas, Texas  75242
(214) 767-8967

Lisa L. Lambert
Tx Bar. No. 11844250 (also NY)
for the United States Trustee

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | |
|---|---|
| **In re:**<br><br>**NATIONAL RIFLE ASSOCIATION OF AMERICA and SEA GIRT LLC**<br><br>**Debtors.** | Chapter 11<br>Case No. 21-30085-hdh11<br>Jointly Administered<br>Hearing Date: 2/24/2021<br>Hearing Time: 2:00 p.m. |

**U.S. TRUSTEE'S OBJECTION TO MMP'S MOTION FOR AN ORDER REQUIRING THE UNITED STATES TRUSTEE TO RECONSTITUTE THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS**

TO THE HONORABLE HARLIN D. HALE,
UNITED STATES BANKRUPTCY JUDGE:

The United States Trustee for Region 6 objects to the Motion to Reconstitute the Official Committee of Unsecured Creditors filed by Membership Marketing Partners, LLC ("MMP" or "Movant") (Dkt. No. 164).

**PRELIMINARY STATEMENT**

1. MMP, which is co-located with the Debtor National Rifle Association ("NRA") at its national headquarters in Virginia, asks this Court to disturb the balance of creditor interests represented on the Official Committee of Unsecured Creditors (the

"Committee") appointed by the U.S. Trustee and urges the Court to order the U.S. Trustee to appoint additional trade creditors who can outvote litigation creditors that have lawsuits pending against the NRA. In so doing, the Movant asks this Court to favor trade creditors, whom the NRA says will be paid in full, over potential judgment creditors who may not be paid in full.

2. Moreover, the five-person Committee adequately represents the three types of creditor interests in the case—trade (goods and services), litigation, and pension obligations—and Movant fails to establish otherwise.[1] Not only is the Committee adequately representative, but the Committee size also satisfies the requirements of the Bankruptcy Code. The Motion should therefore be denied.

3. But even if the Court were to find the Committee not adequately representative, the Bankruptcy Code does not authorize the Court to appoint additional creditors or to direct the appointment of particular creditors, as Movant requests. At most, the Court may make findings about adequate representation and order the U.S. Trustee to modify membership accordingly.

## STATEMENT OF FACTS

4. On January 19, 2021, the U.S. Trustee posted a Notice of Formation Meeting for the Official Committee of Unsecured Creditors, asking creditors interested in serving on the Committee to return the creditor questionnaire by January 25, 2021. https://www.justice.gov/ust-regions-r06/page/file/1357216/download. The U.S. Trustee also sent forms to all creditors on the Debtors' list of 20 largest unsecured

---

[1] No member appointed to the Committee shares an address with the NRA, as does the Movant.

creditors and mailed and e-mailed additional creditors identified in the Debtors' Information Brief in Connection with Voluntary Chapter 11 Petitions (the "Information Brief," D.I. 31).

5. Fifteen (15) creditors—principally trade creditors (goods and services) and litigation counter-parties—returned the forms.

6. Movant and two affiliated entities returned forms reflecting the same individual representative with the same contact information at an address they share with the NRA in its Virginia headquarters. The U.S. Trustee conducted a virtual formation meeting by individually interviewing creditors, including Movant.

7. On February 4, 2021, the U.S. Trustee appointed a Committee of five members: two trade creditors (Stone River Gear LLC and InfoCision, Inc.); two litigation claimants (David Dell'Aquila and Ackerman McQueen, Inc.); and the Pension Benefit Guaranty Corporation (the "PBGC").[2]

8. Debtors have freely admitted that they filed these bankruptcy cases primarily, if not solely, to address the New York Attorney General lawsuit filed in August 2020 against the NRA, its CEO and EVP (Wayne LaPierre), and other NRA executives,[3] as well as to address other litigation against the NRA. *See* Information Brief. Moreover, the Debtors have represented that they are solvent with total net assets of

---

[2] The PBGC also returned a form expressing interest in serving on the Committee. Unlike most governmental units, the PBGC is eligible for committee service because it is expressly included within the definition of "persons." *See* 11 U.S.C. § 101(41)(B). Only "persons" are eligible for committee membership, *see* 11 U.S.C. § 1102(b)(1), and most governmental entities are not persons. *See* 11 U.S.C. § 101(41).

[3] *People of the State of New York v. The National Rifle Ass'n of Am., et al.*, Index No. 451625/2020 (Sup. Ct. N.Y. Cnty. 2020) (the "NYAG Action").

approximately $50 million, s*ee id.* at ¶ 10, and that they intend to pay unsecured creditors that are not litigation creditors a 100% recovery.

https://www.nraforward.org/press-release: "The NRA will propose a plan that provides for payment in full of all valid creditors' claims. The Association expects to uphold commitments to employees, vendors, members, and other community stakeholders."

## THE STATUTORY FRAMEWORK

### Section 1102 Confers Important, but Different, Authority on Courts and U.S. Trustees with Respect to Official Committees

9. Section 1102(a) of the Code governs the formation, appointment, and modification of official committees. It provides under what circumstances and pursuant to which standards a court and the U.S. Trustee may act in connection with official committees. Congress gave the U.S. Trustee and courts important, but divergent, authority with respect to committees in chapter 11.

10. Section 1102(a)(1) provides that the U.S. Trustee "shall appoint" a committee of creditors holding unsecured claims in virtually all cases (if there are creditors willing to serve) "as soon as practicable after the order for relief . . . ." 11 U.S.C. § 1102(a)(1). That language is mandatory, and the U.S. Trustee must appoint a committee of unsecured creditors unless such a committee cannot be appointed because of lack of interest or eligible and suitable candidates. The U.S. Trustee also, as appropriate, monitors committee membership and occasionally modifies their composition. 11 U.S.C. § 1102(a)(1) and (2).

11. In contrast, the "shall ordinarily" language of section 1102(b)(1) is precatory: official committees "shall ordinarily consist of the persons, willing to serve, that hold the seven largest claims against the debtor of the kinds represented on such committee . . . ."

12. The Bankruptcy Code defines creditors as those who hold "claims" that arose before or at the petition date. 11 U.S.C. § 101(10). The Code defines a claim as a:

    (A)    right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or

    (B)    right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

11 U.S.C. § 101(5). Thus, creditors with disputed or contingent claims are eligible for official committee membership on equal footing with those with undisputed and fixed claims.

13. In contrast to the U.S. Trustee, a court's authority over committee formation and membership is limited to ordering the following four types of relief:

- order the U.S. Trustee to appoint additional committees if necessary to assure adequate representation;

- order the U.S. Trustee to change committee membership if necessary to ensure adequate representation;

- order for cause that a committee be appointed in a small business or sub-chapter V case; or

- order the U.S. Trustee to increase committee membership to include a creditor that is a small business concern.

11 U.S.C. § 1102(a)(1)-(4).

14. "Those are the only powers over committees the Code gives the court. There are no others." *In re Caesars Entm't Operating Co.,* 526 B.R. 265, 268 (Bankr. N.D. Ill. 2015).

15. The relative and delineated roles for the courts and the U.S. Trustee in committee matters under section 1102 are no accident. Part of the impetus for the comprehensive revamping of the bankruptcy system in the 1986 amendments (apart from the constitutional infirmities) was Congress's desire to bifurcate judicial from administrative functions and screen courts from administrative functions that could raise conflict of interest issues. *See In re Victory Markets, Inc.,* 196 B.R. 1, 3-4 (Bankr. N.D.N.Y. 1995); *see also In re ShoreBank Corp.,* 467 B.R. 156, 160 (Bankr. N.D. Ill. 2012) (discussing the historical development of the role of bankruptcy courts and U.S. Trustees regarding committee membership).[4]

   > After the adoption of the Code in 1978, Congress recognized that requiring courts to appoint creditors' committees was an administrative burden which should be shifted entirely to the U.S. Trustee. [citation omitted]. It also became apparent that by shifting the responsibility of appointing creditors' committees to the U.S. Trustee, Congress could avoid any questions as to the court's neutrality in the bankruptcy process when deciding disputes between its hand-picked committee and other parties in interest. *Id.; see In re Sharon Steel Corp.,* 100 B.R. 767, 773 (Bankr.W.D.Pa.1989) (citing legislative history).

   *Victory Markets*, 196 B.R. at 3-4.

16. Between 1978 and 1986, the power to appoint and modify a committee rested with the bankruptcy courts (except in those districts participating in the U.S. Trustee pilot program). *Victory Markets, Inc.,* 196 B.R. at 3. But the 1986 amendments, which

---

[4] The 1986 amendments established the United States Trustee system on a permanent, nationwide basis (except for North Carolina and Alabama). The U.S. Trustee program was originally established as a pilot program in the 1978 legislation.

established the U.S. Trustee system on a permanent, nationwide basis (except for North Carolina and Alabama), withdrew the authority of bankruptcy courts to appoint or modify committees and vested that authority in the U.S. Trustee:

> [T]he 1986 Act repealed Code § 1102(c) which had expressly granted courts the authority to add to and delete from the creditors' committee. [citation omitted]. The U.S. Trustee, pursuant to the 1986 Act, was endowed with the authority to appoint a creditors committee and the courts were relieved of their authority to affect the composition of the same upon a finding of inadequate representation.

*Id.* at 3-4.

17. Section 1102(a)(4), added in 2005 as part of BAPCPA, granted courts express authority for the first time since 1986 to review committee membership and order its modification. But the scope of a court's authority is not unfettered.

18. A court is confined to determining whether the committee is adequately representative, and the absolute predicate for relief is that the committee, as constituted, does not adequately represent the unsecured creditor body, requiring a change in composition "to ensure adequate representation. . . ." 11 U.S.C. § 1102(a)(4).[5] If the court finds the Committee not adequately representative, it makes factual findings about the representation needed but does not appoint a member or direct the appointment of any particular creditor.

19. It is against this statutory framework and legislative backdrop that the Motion must be considered.

---

[5] Most cases addressing the issue of "adequate representation" have arisen under section 1102(a)(2). Section 1102(a)(2) contains virtually identical language permitting the appointment of additional committees—rather than modifying committee membership—upon finding an additional committee is "necessary to assure adequate representation . . . ." Accordingly, cases decided under section 1102(a)(2) can illuminate the analysis required in a challenge to committee membership arising under section 1102(a)(4).

## LAW AND ARGUMENT

**I. The Sole Issue for Judicial Review is Adequate Representation, and a Committee is Adequately Representative When Diverse Groups of Creditors Are Represented and Participating.**

20. Without a threshold finding that the Committee is not adequately representative, the Movant is entitled to no relief. "The statute clearly requires an initial determination of whether a party is adequately represented." *Mirant Americas Energy Marketing, LP, v. The Official Comm. of Unsecured Creditors of Enron Corp.,* 2003 WL 22327118, * 3 (S.D.N.Y. 2003). The Movant "bears the burden of proving that the Official Committee does not provide them with adequate representation." *In re Garden Ridge Corp.,* 2005 WL 523129, *3 (Bankr. D. Del. 2005). Accordingly, if a movant provides "no evidence" that a committee is not adequately representative, the motion for relief should be denied. *In re Dana Corp.,* 344 B.R. 35, 40 (Bankr. S.D.N.Y. 2006); *accord In re Allied Holdings, Inc.,* 2007 WL 7138349, *3 (Bankr. N.D. Ga. 2007) (movants failed to prove the predicate issue of inadequate representation and court denied the motion).[6]

21. "[A]dequate representation exists through a single committee so long as the diverse interests of the various creditor groups are represented on and have participated in that committee." *In re Sharon Steel Corp.,* 100 B.R. 767, 777-78 (Bankr. W.D. Pa. 1989).

---

[6] The *Mirant, Garden Ridge and Allied Holdings* cases all involved a court's ruling on a request for an additional committee under section 1102(a)(2).

22. "Nowhere does the Code mandate a committee must faithfully reproduce the exact composition of the creditor body. Rather, adequate representation of various creditor types is required." *In re Hill Stores, Co*., 137 B.R. 4, 7 (Bankr. S.D.N.Y. 1992).

23. Thus, an adequately representative committee need not be an "exact replica" or mirror image of the creditor body; it need only be broadly representative. *Dana Corp*., 344 B.R. at 39; *accord Garden Ridge*, 2005 WL 523129 at *3.

24. Nor does adequate representation require "proportionate representation of distinct groups of creditors" on a committee. *Garden Ridge,* 2005 WL 523129, *3.

25. The Committee in this case is adequately representative, and MMP offers no evidence otherwise. Fifteen creditors returned questionnaires expressing interest in serving on the Committee, and the creditors fell broadly into three groups: trade (vendors and service providers), litigation counter-parties (both tort and contract claims), and the PBGC. The U.S. Trustee appointed a five-person Committee broadly representative of these three groups. Moreover, given the Debtors' stated intention to pay trade creditors in full, one could argue, perhaps, that the Committee should have fewer, not more, trade creditors to ensure adequate representation, contrary to Movant's urging that trade creditors should dominate the Committee. Nevertheless, with two trade creditors, two litigation claimants, and the PBGC, this Committee is adequately representative and reflects the creditor interests in the case.

26. MMP argues that only InfoCision and Stone River are "true creditors" and that the inclusion of the PBGC, Dell'Aquila, and Ackerman is "puzzling." Motion, ¶ 9. MMP further asserts that vendors are the "majority of creditor interests." *Id.* at ¶ 20. And MMP accuses the U.S. Trustee of having intentionally and deliberately "hand-

27. Although Movant complains that the PBGC is a contingent creditor, Motion, ¶ 9, the Code itself considers contingent creditors eligible for committee membership. *See* 11 U.S.C. § 101(5) and (10). Nevertheless, the National Rifle Association has *admitted to underfunding* its retirement plans by $44 million in its 2019 public tax return and by $48 million in its Amended List of 20 Largest Creditors, which lists the PBGC first. And even though most government entities are ineligible to serve on official committees, Congress made a specific exception for the PBGC. *See* n.2, *supra,* p. 3. Thus, the PBGC is routinely appointed to committees across the country (*e.g.*, Asarco, Neiman Marcus, Pilgrim's Pride, Pacific Lumber, Dean's Foods, American Airlines, J.C. Penney, and Brooks Brothers, to name only a few), and most parties find its experience and perspective beneficial:

> Having the PBGC represented on a committee can be helpful, particularly if the other creditors are new to the bankruptcy process. PBGC officials have extensive experience as a full member and an ex officio member of committees and bring a level of sophistication and knowledge to the table.

*Understanding PBGC's Role in Bankruptcy*, p. 2, The Journal of Corporate Renewal (August 2006), available at

http://www.fiduciarycounselors.com/assets/CorpRenewal_082006.pdf Movant may indeed be the first creditor ever to allege that the PBGC has an "axe to grind" against a debtor's management, rather than acknowledging the PBGC's role in the bankruptcy system as a knowledgeable, repeat actor with important public interests to protect. *See* Motion, ¶ 21. Moreover, like MMP and other trade creditors, the PBGC

picked three creditors for the OCC with an axe to grind against the Debtor's management . . . ." *Id.* None of these assertions withstands legal or factual scrutiny.

has the same incentive to see the Debtors reorganize—albeit to minimize future unfunded pension liability rather than to maximize future commercial opportunities.

28. The Code also wisely allows creditors with disputed claims to be eligible for official committee service. Otherwise, debtors could dispute creditors' claims and "gerrymander" the committee formation process in their favor.

29. One of the litigation counter-parties, Ackerman McQueen, is the Debtors' single largest unsecured creditor (other than PBGC's contingent pension claim) and, given its long commercial relationship with the Debtors, is one of the creditors most knowledgeable about the Debtors.

30. As for Dell'Aquila, whether he has an "axe to grind" against Debtors' management is irrelevant to his ability to fulfill his fiduciary duties to all unsecured creditors. *See* Motion ¶ 9 (alleging Dell'Aquila "has been on a years-long quest to replace the Debtor's board of directors and management."). Movant has not asserted any facts that suggest Dell'Aquila, who is an approximately 50-year NRA member and long-time, significant donor, has an "axe to grind" against the Debtors themselves.[7] MMP misses the important distinction in bankruptcy law between the interests of a debtor and the interests of a debtor's current management.

## II. The Court Reviews Only the Results of the U.S. Trustee's Appointment Decisions, Not the Decisions Themselves, to Ensure Adequate Representation.

31. The Movant also invokes the Court's authority under section 105 to impose an "arbitrary and capricious" standard of review on the U.S. Trustee's committee

---

[7] Dell'Aquila's claims for fraud pending in the United States District Court for the Middle District of Tennessee against the NRA— in his individual capacity and as the putative class representative— survived the NRA's Motion to Dismiss. *Dell'Aquila v. LaPierre*, No. 3:19-cv-00679, Memorandum Op. (M.D. Tenn. Sep. 30, 2020) (Dkt. No. 63).

appointments. But any challenge to committee composition is about the result, not the decision-making process.

32. When a party seeks an order from a court directing a change in membership of a committee, the court asks only whether it is "necessary to assure adequate representation," as the well-reasoned opinion in *ShoreBank* made clear. In *ShoreBank*, the movants sought a change in committee composition based on the allegation that the committee was not adequately representative. 467 B.R. at 160. The court rejected an "arbitrary and capricious" standard of review and correctly reasoned that under section 1102(a)(4) the standard of review is a "red herring" because "there is **no 'standard of review.'**" *Id.* 161-163 (emphasis added). The court recognized that section 1102(a)(1) does not require the U.S. Trustee to "provide a rationale or make a record" when appointing the official committee. *Id.* Therefore, "there is nothing for a court to review—other than the bare decision itself, that is—and without a rationale or a record no meaningful review can take place." *Id.* at 162.

33. All of the cases to the contrary cited by the Movant must be considered against the then-existing statutory framework compared to now. Between 1986 and October 2005, section 1102 provided no procedure or standard for a court to review the adequacy of a committee's representation, and it was BAPCPA's amendments to section 1102 that established the current rules governing the Court's authority over committee composition and modification.

34. Moreover, section 105 cannot be invoked to afford relief directly at odds with the statutory scheme: "It is hornbook law that § 105(a) "does not allow the bankruptcy court to override explicit mandates of other sections of the Bankruptcy Code. Section

105(a) confers authority to 'carry out' the provisions of the Code, but it is quite impossible to do that by taking action that the Code prohibits." *Law v. Siegel*, 571 U.S. 415, 421 (2014) (citations omitted).

35. Although the *Caesars* decision addressed a slightly different question—whether a bankruptcy court has the authority to disband an additional committee appointed by the U.S. Trustee—its discussion of the limits of section 105 with respect to official committees is on point and instructive:

> Section 105(a) confers no such power [to disband an official committee]. That section gives bankruptcy courts the power only to implement existing Code provisions. It is neither an "independent source of rights," nor a source of "substantive authority[.]" Because it is neither, section 105(a) does not allow bankruptcy courts to contradict the Code, *Law v. Siegel*, —— U.S. ——, 134 S.Ct. 1188, 1194, 188 L.Ed.2d 146 (2014)—such as by exercising powers the Code does not confer[.]
>
> . . . The approach suggested in *City of Detroit*— that section 105(a) authorizes the exercise of that power because the Code does not "explicitly prohibit" it, is consequently incorrect. Had Congress wanted to give bankruptcy courts the power to abolish committees appointed under section 1102(a) (1), it could have done so. It chose not to. That choice must be respected.

*Caesars*, 526 B.R. at 269-70 (internal citations and quotations omitted).

36. Accordingly, section 105 does not authorize the relief that Movant seeks, nor does it authorize the Court to take action not within the Court's four powers over official committees.

37. Although the U.S. Trustee would vigorously deny any allegation that he acted arbitrarily and capriciously in appointing the Committee, that is not a basis for relief with respect to committee membership under section 1102(a)(4). Rather, section 1102(a)(4) focuses on the *result* of the appointment process, *i.e.,* whether the Committee is adequately representative, and not the appointment process itself. Here,

the Committee is adequately representative, and Movant has not established otherwise.

### III. Even Assuming *Arguendo* That Movant Established That the Committee is Not Adequately Representative, Section 1102(A)(4) Does Not Authorize the Court to Appoint Movant or Any Other Creditor to the Committee.

38. The "court may order the United States trustee to change the membership of a committee. . . if the . . . change is necessary to ensure adequate representation . . . ." 11 U.S.C. § 1102(a)(4). On its face, the plain statutory language does not authorize the Court itself to make an appointment if the Court finds the Committee not adequately representative. Rather, it may only order the U.S. Trustee to do so.

39. Section 1102(a)(4) reads best as allowing courts to perform the adjudicative function of determining, upon request, whether an official committee is adequately representative but maintaining the U.S. Trustee's historical, administrative prerogative to appoint. If Congress had intended for courts to perform the administrative function of naming individual committee members, it could easily have said so. It did not. Instead, the statute provides that the courts may only "order the United States Trustee to change the membership." This phrase would be unnecessary if the courts were to perform both the judicial function of determining what classes of creditors should be on a committee to ensure adequate representation and the administrative function of naming specific creditors.

40. Thus, if the Court determines that MMP has satisfied its burden of proof to be afforded relief, the Court will determine what types of changes, if any, are necessary to ensure adequate representation and order the U.S. Trustee to effect those changes.

*See* 7 COLLIER ON BANKRUPTCY ¶ 1102.07 (16th ed.) (appointment of replacement members is still a decision that will be made by the U.S. Trustee).

41. This interpretation is consistent with the origins of section 1102(a)(4) in the first instance. In considering predecessor legislation to BAPCPA, the National Bankruptcy Review Commission ("NBRC") recommended that section 1102 be amended to provide for judicial review of committee structure. The NBRC responded to concerns about a renewed court role in committee selection with a statement that "the U.S. Trustee would remain responsible for the actual appointment of committee members." NBRC, *Final Report*, p. 501 (October 20, 1997), available at https://govinfo.library.unt.edu/nbrc/reportcont.html.

> Others might be concerned about the policy implications of reestablishing court influence over appointments through the proposed review powers. However, the threat of any ethical dilemmas would be constrained by the continuing involvement of the U.S. Trustee in the process. Although courts would have the power to review, they would remain removed from the actual appointment process.

*Id.*

42. Notwithstanding these statutory limits, the Movant suggests that the Court should appoint it to the Committee, and if not Movant, then Valtim or Quad/Graphics: "MMP will happily step aside in favor of Valtim and Quad/Graphics being placed on the OCC." Motion, ¶ 20. But the statute does not permit this relief. At most, the Court has authority to make findings about adequate representation and direct modification of committee membership.

43. Moreover, "[c]ommittees are not designed to provide a speaker's platform for a particular creditor. They are designed to enable investigation and to provide a forum

for negotiation on behalf of all of the claims or interests they represent." *In re Drexel Burnham Lambert Group, Inc.*, 118 B.R. 209, 212-13 (Bankr. S.D.N.Y. 1990).

### IV. A Five-Person Committee Also Satisfies the Bankruptcy Code.

44. MMP further suggests that a committee with seven members is required in virtually every case, but MMP is wrong. Although section 1102(b)(1) provides that "a committee of creditors . . . shall *ordinarily* consist of the persons, willing to serve, that hold the seven largest claims against the debtor of the kinds represented on such committee," 11 U.S.C. § 1102(b)(1) (emphasis added), the legislative history, as well as the context of the statute itself, make clear that this is precatory, not mandatory, language. H.R. Rep. No. 595, 95th Cong., 1st Sess. 401(1977). A seven-person committee is a guideline, not a statutory requirement.

45. Moreover, the language of section 1102(b)(1) is nonbinding and "affords no right of membership" to any creditor, even the seven largest unsecured creditors as Movant suggests. *See Drexel Burnham Lambert*, 118 B.R. at 212-13.

46. Given the statutory standard that a committee must be adequately representative of the diverse types of interests in the creditor body, it makes sense that the seven largest unsecured creditors should not reflexively be appointed to the official committee. For example, if the seven largest creditors in a case were bondholders, but there were significant goods and services debt beneath them, a bondholder only committee likely would not satisfy the adequate representation standard.

47. Moreover, U.S. Trustees routinely appoint committees smaller than seven and occasionally larger than seven, according to the needs of the case and the scope and scale of the creditor body. U.S. Trustees also sometimes appoint additional

committee members as a case progresses and additional creditors come forward, including, for example, after a debtor rejects an executory contract later in the case.

48. Simply put, the statute does not require a seven-person committee, and many prudential reasons exist for smaller and larger committees depending on the context of the case.

## CONCLUSION

49. The Committee is adequately representative of the three types of creditor interests in the case—trade, litigation, and pension obligations—and Movant fails to establish otherwise. Not only is the Committee adequately representative, but the Committee size also satisfies the requirements of the Bankruptcy Code. The Motion should therefore be denied.

WHEREFORE, the U.S. Trustee respectfully prays that this Court enter an order denying Movant's motion in its entirety and granting such additional and further relief as the Court deems appropriate.

DATED: February 21, 2021                Respectfully submitted,

WILLIAM T. NEARY
UNITED STATES TRUSTEE

*/s/ Lisa L. Lambert*
Lisa L. Lambert
Assistant U.S. Trustee
TX 11844250 (also NY)
Office of the United States Trustee
1100 Commerce Street, Room 976
Dallas, Texas 75242
(202) 834-4233
Lisa.L.Lambert@usdoj.gov

**Certificate of Service**

I certify that on February 21, 2021, I served a true copy of this document by electronic case filing notice on those requesting ECF notice and by email as listed below:

*By email to*:
Judith W. Ross
Ross & Smith, PC
700 North Pearl St., Suite 1610
Dallas, TX 75201
Judith.Ross@judithwross.com

                                          */s/ Lisa L. Lambert*
                                          Lisa L. Lambert