**IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION**

| | |
|---|---|
| DAVID DELL'AQUILA, LORANNDA BORJA, TODD CHESNEY, and BRENT WEBER, on behalf of themselves and all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> WAYNE LaPIERRE, NATIONAL RIFLE ASSOCIATION OF AMERICA, and NRA FOUNDATION, INC. <br><br> Defendants. | NO. 3:19-cv-00679 <br><br> JUDGE CAMPBELL <br><br> MAGISTRATE JUDGE FRENSLEY |

## MEMORANDUM

Pending before the Court are motions to dismiss the Second Amended Complaint (Doc. No. 43) filed separately by each of the three defendants: the National Rifle Association of America ("NRA"), the NRA Foundation, Inc., and Wayne LaPierre (Doc. Nos. 46, 48, 50). Plaintiffs filed a consolidated response. (Doc. No. 53). Defendants each filed a separate reply. (Doc. Nos. 60, 61, 62). For the reasons stated below, the NRA Foundation's and Wayne LaPierre's motions to dismiss will be **GRANTED**; and the NRA's motion to dismiss will be **GRANTED** in part, **DENIED** in part.

### I. BACKGROUND

Plaintiffs allege the NRA, NRA Foundation, and NRA CEO Wayne LaPierre, fraudulently solicited membership and donations by claiming membership fees and donations would be used to advance the mission of the NRA, and that the organizations used a significant portion of the funds



**EXHIBIT**
**UST 3**

for purposes unrelated to that mission. Plaintiffs bring claims for fraud and violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961, *et seq.*

Defendants seek to dismiss all claims, arguing that Plaintiffs lack standing to challenge internal administration of unrestricted funds, have not pleaded the claims with sufficient particularity to satisfy the requirements of Rule 9 of the Federal Rules of Civil Procedure, and have not plausibly alleged the elements of the fraud and RICO claims.

## II.    STANDARD OF REVIEW

For purposes of a motion to dismiss, the Court must take all of the factual allegations in the complaint as true as the Court has done above. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *Id*. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id*. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. *Id*. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief. *Id*. at 679. A legal conclusion, including one couched as a factual allegation, need not be accepted as true on a motion to dismiss, nor are mere recitations of the elements of a cause of action sufficient. *Id*. at 678; *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010); *Abriq v. Hall*, 295 F. Supp. 3d 874, 877 (M.D. Tenn. 2018). Moreover, factual allegations that are merely *consistent* with the defendant's liability do not satisfy the claimant's burden, as mere consistency does not establish *plausibility* of entitlement to relief even if it supports the *possibility* of relief. *Iqbal*, 556 U.S. at 678.

In determining whether a complaint is sufficient under the standards of *Iqbal* and its predecessor and complementary case, *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), it may be appropriate to "begin [the] analysis by identifying the allegations in the complaint that are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 680. Identifying and setting aside such allegations is crucial, because they simply do not count toward the plaintiff's goal of showing plausibility of entitlement to relief. As suggested above, such allegations include "bare assertions," formulaic recitation of the elements, and "conclusory" or "bald" allegations. *Id*. at 681. The question is whether the remaining allegations – factual allegations, *i.e.*, allegations of factual matter – plausibly suggest an entitlement to relief. *Id*. If not, the pleading fails to meet the standard of Fed. R. Civ. P. 8 and thus must be dismissed under Rule 12(b)(6). *Id*. at 683.

### III.    ANALYSIS

**A. Standing**

Defendants argue Plaintiffs lack standing to challenge the non-profits' authority to act or administration of unrestricted donations.[1] Defendants characterize Plaintiffs' claims as challenging the authority of the NRA or NRA Foundation to spend funds for purposes unrelated to the mission of the NRA. Defendant argue that state law limits those who can challenge nonprofit corporate action to the state attorney general or certain individuals filing suit on behalf of the corporation.[2]

---

[1]   Although each of the Defendants filed a separate motion to dismiss, the arguments on standing vary only slightly. Accordingly, the Court addresses the arguments together and refers to the arguments collectively.

[2]   The NRA Foundation cites Tennessee state law governing non-profit corporations – Tenn. Code Ann. § 48-53-104. The NRA and LaPierre cite New York law – New York Not-for-Profit Corporation Law § 720. Because of the disposition of this issue, the Court need not resolve the question of which state's law applies.

3

Plaintiffs correctly argue that these state statutes do not govern the fraud claims asserted here against the corporations or LaPierre. Though the claims presented involve representations regarding the organizations' use of funds, Plaintiffs are not, in fact, "challenging the administration of funds" or seeking to undo any other corporate act. The claims asserted here are that Plaintiffs' donations and membership dues to the NRA and NRA Foundation were procured by fraudulent misrepresentations regarding the use of the donated funds and Plaintiffs seek to recover the funds that they personally donated. Moreover, Plaintiffs claim that they were personally defrauded meets the requirements for standing under Article III, which requires: (1) "an injury in fact"; (2) "a causal connection" between the alleged injury and the defendants' conduct; and (3) redressability – that the injury will "likely … be redressed by a favorable decision." *Wall v. Mich. Rental*, 852 F.3d 492, 495 (6th Cir. 2017) (citing *Lujan v. Def. of Wildlife*, 504 U.S. 555, 560-61 (1992)).

Defendants cite *Wilding v. DNC Servs. Corp.*, No. 16-61511-CIV, 2017 WL 6345492 (S.D. Fla. Aug. 25, 2017), for the proposition that "donating to an organization does not, of itself, create a legally protected interest in the organization's operations." (Doc. No. 47 at 7; Doc. No. 49 at 7; Doc. No. 51 at 6). In *Wilding*, donors to the Democratic National Committee ("DNC") and Bernie Sanders's campaign brought claims of fraud alleging they donated to the DNC in reliance on the DNC's promise of neutrality in the presidential primaries and that the DNC was, in fact, not neutral because it favored Hillary Clinton over Bernie Sanders. *Id*. at *3. The *Wilding* court noted that the plaintiffs were not entitled to challenge DNC's conduct of its internal affairs by virtue of being donors. However, the court also recognized that a donor may suffer "cognizable injury from the violation of an independent duty, such as if the donation was procured by fraud." *Id*. at *5. In *Wilding*, the court ultimately held that plaintiffs did not have standing to assert their fraud claim because they had not alleged a causal connection between the defendant's statements and their

4

injury – none of the plaintiffs claimed to have read or heard the promises of neutrality before making their donations. *Id*. at *4. Nothing in the court's reasoning in *Wilding* supports Defendants' argument that the cited state statutes eliminate Plaintiffs' standing to bring a claim for fraud.

## B. Fraud

Without discussion, the parties assume Tennessee law applies to the fraud claims in this case. (*See* Doc. No. 47 at 10; Doc. No. 49 at 12; Doc. No. 51 at 12; Doc. No. 54 at 11). A federal court sitting in diversity applies the choice of law rules of the forum state. *In re Air Crash Disaster*, 86 F.3d 498, 540-41 (6th Cir. 1996) (*citing Klaxton Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941)). Tennessee applies the "most significant relationship" test of the Restatement (Second) Conflict of Laws to choice-of-law questions for tort claims. *Orlowski v. Bates*, 146 F.Supp. 3d 908, 921 (W.D. Tenn. 2015). The most significant relationship is determined by examining: (1) the place of the alleged injury; (2) the place where the conduct causing the injury occurred; (3) the domicile and/or place of business of the parties involved; and (4) the place where the relationship of the parties is centered. *Glennon v. Dean Witter Reynolds, Inc.*, 83 F.3d 132, 136 (6th Cir. 1996).

It is not readily apparent that Tennessee has the most significant relationship to the claims brought by residents of Tennessee, Kansas, and Arizona based on statements made by Defendants in New York and Washington, D.C. However, none of the parties has identified material differences between the law of Tennessee and that of the other states; nor have any of the parties argued that the Court should apply some law other than that of Tennessee to the fraud claim. Accordingly, the Court will not undertake such analysis *sua sponte* and will assume for purposes of the motion to dismiss that Tennessee law applies to the fraud claims.

To establish a claim for fraud in Tennessee, a plaintiff must allege facts showing that: (1) the defendant made a representation of an existing or past fact; (2) the representation was false

when made; (3) the representation was in regard to a material fact; (4) the false representation was made either knowingly or without belief in its truth or recklessly; (5) plaintiff reasonably relied on the misrepresented material fact; and (6) plaintiff suffered damage as a result of the misrepresentation. *Walker v. Sunrise Pontiac-GMC Truck, Inc.*, 249 S.W.3d 301, 311 (Tenn. 2008). If the alleged fraudulent representation is with regard to a future action, a plaintiff must demonstrate that "a promise or representation was made with the intent not to perform." *Shah v. Racetrac Petroleum Co*., 338 F.3d 557, 567 (6th Cir. 2003) (citing *Fowler v. Happy Goodman Fam.*, 575 S.W.2d 496, 499 (Tenn. 1978)).

Rule 9(b) of the Federal Rules of Civil Procedure requires that, when pleading fraud, "a party must state with particularity the circumstances constituting fraud." While Rule 9(b) imposes a heightened standard, "Rule 9(b) exists predominantly for the same purpose as Rule 8: to provide a defendant fair notice of the substance of a plaintiff's claim in order that the defendant may prepare a responsive pleading. Rule 9(b), however, also reflects the rulemakers' additional understanding that, in cases involving fraud and mistake, a more specific form of notice is necessary to permit a defendant to draft a responsive pleading." *United States ex rel. SNAPP, Inc. v. Ford Motor Co.*, 532 F.3d 496, 504 (6th Cir. 2008) (internal quotations and citations omitted). "So long as a [plaintiff] pleads sufficient detail—in terms of time, place, and content, the nature of a defendant's fraudulent scheme, and the injury resulting from the fraud—to allow the defendant to prepare a responsive pleading, the requirements of Rule 9(b) will generally be met." *Id.*

6

1. The NRA Foundation

The NRA Foundation argues Plaintiffs have failed to satisfy the heightened pleading requirements of Rule 9(b). The Foundation argues that Plaintiffs have not identified the "time, place, and content" of any specific solicitations that they claim to be fraudulent. Without such detail, the Foundation argues they cannot respond to the allegations. In addition, the Foundation argues that the specific statements on its website are not themselves solicitations and, even if they were, do not contain any promises regarding the exclusive use of donated funds.

The Court agrees that details of the alleged fraudulent solicitations by the Foundation are sparse. The Second Amended Complaint makes the following allegations:

79. During the period from November 30, 2015 to January 26, 2019, Defendants LaPierre and the NRA Foundation solicited funds from Plaintiff Dell'Aquila and each member of the NRA Foundation Class.

80. When soliciting such funds, Defendants LaPierre and the NRA Foundation advised Plaintiffs that their funds would be used be used for gun safety education; to promote shooting sports and hunter safety; to foster wildlife conservation; and to protect gun ownership rights in the United States (collectively, the "NRA's core mission").

81. Plaintiff Dell'Aquila and each member of the NRA Foundation Class reasonably relied upon the statements made by Defendants concerning the proposed use of the solicited funds.

82. As a result of such reliance, Plaintiff Dell'Aquila and each member of the NRA Foundation Class donated funds to the NRA Foundation during the time period from November 30, 2015 to January 26, 2019.

83. Defendants' statements concerning the use of the solicited funds were materially and intentionally false. In reality, the NRA Foundation used the solicited funds for alternative purposes, including without limitation, the following: [list].

(Doc. No. 43, ¶¶ 79-82).

While the alleged fraudulent scheme is explained, the allegations regarding the solicitations themselves are completely devoid of detail, particularly allegations of time and place of the alleged

7

fraudulent solicitations. Plaintiffs allege that during a period of time spanning more than three years, the Foundation solicited donations in some unidentified manner. This does not meet the particularity requirements of Rule 9(b), which requires plaintiffs to allege, at a minimum, the "time, place, and content" of the alleged misrepresentations.

Plaintiffs argue that they specifically pleaded allegedly fraudulent statements made by the NRA Foundation as published on its website. (Doc. No. 54 at 15 (*citing* Doc. No. 43, ¶¶ 11-34)). The cited portion of the complaint alleges that during the relevant time period, the NRA Foundation published statements on its website including: a description of the NRA Foundation mission (¶¶ 17-18); the "general focus of Foundation grants" (¶19); and a "Donor Bill of Rights" that affirms the right "to expect the board to exercise prudent judgment in its stewardship responsibilities" and "to be assured your gifts will be used for the purposes for which they are given" (¶ 20).[3] Even if these statements were construed to make a false statement of material fact – and it is not clear that they can be so construed – the allegations do not connect the "solicitation" with the statements on the website. In fact, Plaintiffs do not make any allegation that the NRA Foundation solicited funds via the website.

Accordingly, the claims against the NRA Foundation will be dismissed for failure to meet the pleading requirements of Rule 9(b).

2. The NRA

Plaintiffs allege the NRA solicited funds with the promise to use those funds "to advance the mission of the NRA" and that instead of spending the donated funds for that purpose, the NRA and LaPierre used significant portions of the funds for purposes entirely unrelated to the NRA's

---

[3] Plaintiffs also allege that the NRA Office of Advancement sent Dell'Aquila letters reminding him of his "next scheduled gift" on at least three occasions. (*Id.*, ¶¶ 28, 29, 31). It is not clear whether the Office of Advancement is part of the NRA Foundation or the NRA. Assuming these letters were sent by the NRA Foundation, Plaintiff does not explain how the "reminders" constitute a fraudulent misrepresentation.

8

mission. (Doc. No. 43, ¶¶ 69-77). Plaintiffs state that the "NRA core mission" is "gun safety education; to promote shooting sports and hunter safety; to foster wildlife conservation; and to protect gun ownership rights in the United States." (*Id*., ¶ 71). Plaintiffs do not point to an "NRA mission statement" *per se*, but allege that during the relevant period, the NRA website contained statements articulating the mission of the NRA and its use of donated funds as follows:

> **WHAT IS THE NRA?**
>
> The NRA is America's preeminent gun rights organization, made up of nearly five million members. Together, we fight and win the toughest battles for the Second Amendment, all while offering the best firearms educational programs in the country.
>
> Every day, the NRA fights back against politicians, judges, and bureaucrats who want to regulate, restrict, and ultimately, destroy your Second Amendment freedom.
>
> That's why you need to join the NRA RIGHT NOW.
>
> \*\*\*
>
> **How does the NRA use my membership dues?**
>
> Your support will help us defend your Second Amendment freedom whenever and wherever it comes under attack. In addition, your membership dues will help the NRA cultivate the next generation of sportsmen and women through our youth firearms trainings…empower women with our self-defense programs…and support our police officers with our world-class law-enforcement training programs.

(Doc. No. 43, ¶¶ 11, 13).

In addition, the NRA provided the following Uniform Disclosure Statement to members via its website and by mail:

> On behalf of The National Rifle Association of America, Inc. (NRA), 11250 Waples Mill Road, Fairfax, Virginia, 22030, this charitable solicitation is being made by the NRA. Contributions raised will be used to advance the mission of the NRA.

(Doc. No. 43, ¶ 14).  Plaintiffs allege the NRA sent a membership renewal notification to members each year and that the renewal notice included the Uniform Disclosure Statement. (*Id*., ¶ 34).

Plaintiffs allege the NRA used donated funds for purposes unrelated to the NRA's core mission by:

a. making inflated payments to its advertising agency, Ackerman McQueen, without obtaining documentation justifying such expense.

b. spending over $97,000 *per day* for the legal services of William A. Brewer, III during the first quarter of 2019;

c. spending approximately $2 million *per month* for the legal services of the Brewer Law Firm, over a thirteen-month period;

d. spending $274,695 for clothing purchases for Defendant LaPierre from a Beverly Hills clothing store -- through payments made to Ackerman McQueen;

e. spending $243,644 on luxury travel for Defendant LaPierre to the Bahamas, Palm Beach, Los Angeles, Reno, Budapest, and Italy -- through payments made to Ackerman McQueen;

f. spending $5,446.16 per month for a luxury apartment for Megan Allen, an intern in Fairfax, Virginia;

g. spending tens of thousands of dollars on hair and make-up expenses for Wayne LaPierre's wife;

h. spending funds to investigate the purchase of a $6 million mansion for Wayne LaPierre on a lake and golf course near Dallas, Texas;

i. paying for private jets to fly Wayne LaPierre's relatives in April 2017;

j. paying for private jet travel for Wayne LaPierre on a regular basis.

k. promoting Josh Powell to Executive Director of General Operations, after the NRA settled two separate sexual harassment suits against Mr. Powell.

(Doc. No. 43, ¶ 74).

The NRA argues Plaintiffs have not pleaded facts to establish *any* of the elements of fraud: falsity, knowledge and intent, reliance, and injury.  First, the NRA argues that the statement that the funds would be used to advance the mission of the NRA was not false because it did not claim

the funds would be used "exclusively (or even mostly)" to advance the mission of the NRA. The NRA explained the lack of falsity as follows:

> Although Plaintiffs point to specific expenditures of which they apparently do not approve, the vast majority of the NRA's expenditures are not alleged to fall without Plaintiff's definition of the "NRA's core mission." Of course, there can be no dispute that the NRA spends its funds on gun safety education, promotion of shooting sports and hunter safety, wildlife conservation, and Second Amendment advocacy. Moreover, though Plaintiffs may disagree with the NRA's expenditures, simply declaring certain areas of spending not within the NRA's core mission (or deciding how best to achieve the goals of that mission) is not Plaintiff's prerogative. The NRA's decision to devote certain resources as it determines in its business judgment are appropriate is not actionable in fraud simply because Plaintiff's disagree with certain isolated expenditures.
>
> However, even putting aside what constitutes expenditure that fit within the "NRA's core mission," the NRA's statements cited by Plaintiffs are unquestionably true. Not a single Solicitation alleged by Plaintiffs states that donated funds will be *exclusively* (or even mostly) used to fund the "NRA's core mission."

(Doc. No. 49 at 11-12).

The NRA next argues that Plaintiffs did not allege "in more than a passing conclusory assertion that the NRA knew of and intended the falsity of its statements." (*Id*. at 12). The NRA argues that because the statements regarding the use of funds relate to the promise of some future action, Plaintiffs must allege that the NRA had no present intent to carry out the promise. The NRA further argues that Plaintiffs cannot plead the element of intent for "any future expenditures that were not in contemplation at the time of the Solicitation." In other words, the NRA argues that if, at the time of the solicitation, it did not specifically plan to spend money on, for example personal expenses of Wayne LaPierre, there can be no plausible allegation of intent with regard to that expenditure.

The Court declines to read the intent requirement so narrowly. First, Plaintiffs allege that the funds were spent on things that were *not* in furtherance of the mission of the NRA. It was not necessary that the NRA know at the time what the extraneous expenditures would be, only that

11

they knew that money would be spent outside the mission. Moreover, Rule 9(b) allows the element of intent to be alleged generally. *See* Fed. R. Civ. P. 9(b). Given the extent of the alleged misspent funds – in both duration and volume – the Court finds Plaintiffs' allegation that the NRA knew donated funds would not be used to advance the mission of the NRA sufficiently plausible to state a claim. (Doc. No. 43, ¶ 75).

The NRA also argues that Plaintiffs have not sufficiently pleaded reasonable reliance. This argument is a restatement of the falsity argument. Essentially, the NRA asserts that Plaintiffs could not have reasonably relied on statements indicating that the NRA would use funds to advance the NRA's mission because the NRA never claimed all of the funds would be used to advance the mission of the NRA and at most provide only a "remote indication of how funds may be used" by stating that the funds will be used to "help" or "advance" the NRA's goals. They argue Plaintiffs' allegation of reasonable reliance on statements regarding how funds would be spent was insufficient because "all nonprofits have expenditures to which, in the business judgment of management, they must devote resources in order to function." (Doc. No. 49 at 12). As discussed above, statements that the funds would be used to advance the mission of the NRA renders Plaintiffs allegation of reasonable reliance plausible.

Finally, the NRA argues Plaintiffs' alleged injury can amount to only "a very small sum." It is not clear whether the NRA is arguing that the only potential injury is the portion of money that was allegedly misused or whether the NRA views Plaintiffs' entire donations as "a very small sum." In either case, while the value of the alleged injury may be disputed, the NRA does not dispute that Plaintiffs have pleaded some injury. An allegation of some injury is all that is required to plead this element of the claim.

At this juncture in the litigation, making all inferences in the light most favorable to the Plaintiffs, the Court finds Plaintiffs have sufficiently alleged a claim for fraud against the NRA. Although the Court will not engage in a statement by statement review of the allegations, it bears noting that many of the statements cited by Plaintiffs do not make any representations regarding the use of donor funds.  However, because some of them do, and Plaintiffs have alleged the remaining elements of the claim, the Court will deny the NRA's motion to dismiss the claim for fraud.

### 3. Wayne LaPierre

Plaintiffs allege that LaPierre, as CEO of the NRA, made numerous personal appeals to individual donors and to the NRA donor base as a whole imploring them to renew membership or join the NRA while knowing that the donated funds would not be used entirely to fund the mission of the NRA because some portion of the funds was being used to pay for personal expenses for himself and his family, including clothing, luxury travel, hair and makeup, and private jets. (Doc. No. 43, ¶¶ 25-26, 32, 69-86).

As stated above, Plaintiffs' general allegations of "solicitation" without reference to any specific communications do not meet the pleading requirements of Rule 9(b) and will not be considered as a basis for a fraud claim.  Plaintiffs identify only a single specific communication from LaPierre during the applicable time period. On July 3, 2018, LaPierre sent a personal letter to Dell'Aquila, that stated, "Your leadership inspires so many to stand up and fight for the values we hold dear." (*Id*. at ¶ 32). Plaintiffs allege this letter intended to solicit additional donations to the NRA and the NRA Foundation. (*Id*.).  On its face, this statement does not solicit donations or make any representations as to how donated funds will be spent. Even making all inferences in

favor of the Plaintiffs, the Court cannot find that this letter contains a false statement that could give rise to a claim for fraud.

Plaintiffs also allege LaPierre "uses his position with the NRA to encourage donations to both the NRA and to the NRA Foundation." (Doc. No. 43 at ¶ 25). Plaintiffs cite emails from LaPierre on July 21, 2014, and July 18, 2019, that encouraged members to upgrade or extend their memberships. (*Id*. at ¶¶ 25, 26). However, neither of these statements was made within the time period applicable to this case and the Court will not consider them as a basis for a fraud claim. Even if Plaintiffs intended that these statements serve as examples of emails LaPierre sent to the membership *during* the applicable time period – a connection Plaintiffs do not make – the messages themselves do not contain any statements about how membership dues will be spent.

Accordingly, the claim for fraud against Wayne LaPierre will be dismissed.

## C.  RICO

"To prevent organized crime from 'obtaining a foothold in legitimate business,' Congress created a civil cause of action for RICO violations." *In re ClassicStar Mare Lease Litig*., 727 F.3d 473, 483 (6th Cir. 2013). RICO, 18 U.S.C. § 1961, *et seq*., provides that it shall be unlawful for any person employed by or associated with any enterprise engaged in interstate or foreign commerce to conduct or participate in the conduct of such enterprise's affairs through a pattern of racketeering activity. 18 U.S.C. § 1962(c). To state a claim under the statute, a plaintiff must plead (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity. *ClassicStar*, 727 F.3d at 483.  Defendants argue Plaintiffs' RICO claim fails to plead facts to show the existence of a RICO enterprise or establish any predicate act of racketeering activity.

1. Enterprise

A RICO "enterprise" is a group of persons associated together for a common purpose of engaging in a course of conduct. *Shields v. Umumprovident Corp.*, 2011 WL 924724, at * 4 (6th Cir. Mar. 17, 2011). An enterprise can be an individual, partnership, corporation, association or other legal entity, and any union or group of individuals associated in fact though not a legal entity. 18 U.S.C. § 1961(4). "The enterprise itself is not liable for RICO violations; rather the 'persons' who conduct the affairs of the enterprise through a pattern of racketeering activity are liable." *ClassicStar*, 727 F.3d at 490 (citing *U.S. v. Phillip Morris USA, Inc.* 566 F.3d 1095, 1111 (D.C. Cir. 2009). To establish liability under § 1962(c), a plaintiff 'must allege and prove the existence of two distinct entities: (1) a 'person'; and (2) an 'enterprise' that is not simply the same 'person' referred to by a different name." *Id*. (citing *Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 161 (2001)). "Under RICO, a corporation cannot be both the 'enterprise' and the 'person' conducting or participating in affairs of that enterprise." *Id*. (citing *Begala v. PNC Bank, Ohio, N.A.*, 214 F.3d 776, 781 (6th Cir. 2000)).

Plaintiffs allege that the NRA is an enterprise engaged in interstate commerce.[4] (*See* Doc. No. 43 at ¶¶ 97, 111). Accordingly, because the NRA cannot be both an enterprise and a person for purposes of RICO liability, the RICO claims against the NRA must be dismissed.

---

[4] Plaintiffs allegations of enterprise vary slightly between the two claims. With regard to the RICO claim against LaPierre and the NRA that "Defendant LaPierre is employed by the NRA, which is an enterprise engaged in interstate commerce. Defendant NRA is associated with Defendant NRA Foundation, which is an enterprise engaged in interstate commerce." The RICO claim against LaPierre and the NRA Foundation alleges only that the NRA is an enterprise: "Defendant LaPierre is employed by the NRA, which is an enterprise engaged in interstate commerce. Defendant NRA Foundation is associated with the NRA, which is an enterprise engaged in interstate commerce." (Doc. No. 43, ¶¶ 97, 111).

15

2. Racketeering Activity

"Racketeering activity" is defined under the statute as one of a number of predicate acts, including, as alleged here, mail fraud. *See* 18 U.S.C. § 1961(1). Mail fraud consists of "(1) a scheme or artifice to defraud; (2) use of the mails … in furtherance of the scheme; and (3) intent to deprive the victim of money or property." *Slorp v. Lerner, Sampson & Rothfuss*, 587 F. App'x 249, 264 (6th Cir. 2014). Plaintiffs alleging RICO violations based on mail fraud must "meet the more rigorous pleading standards of Rule 9(b) with respect to their claims based on fraud." *Heinrich v. Waiting Angels Adoption Svcs., Inc.*, 668 F.3d 393, 403 (6th Cir. 2012). The plaintiffs must, at a minimum, "allege the time, place, and content of the alleged misrepresentation on which [they] relied; the fraudulent scheme; and the injury resulting from the fraud." *Id.* (citing *United States ex rel. Bledsoe v. Cmty. Health Sys., Inc.*, 342 F.3d 634, 643 (6th Cir. 2003). "When pleading predicates acts of mail fraud, in order to satisfy the heightened pleading requirements of Rule 9(b), a plaintiff must '(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent.'" *Id.* at 404. A RICO plaintiff is not required to plead reliance on an allegedly false statement. *Id.* (citing *Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639, 648 (2008). Plaintiff must show that the predicate act was the proximate cause of plaintiff's injuries. *Id.* at 405.

As stated above with regard to the fraud claims against the NRA Foundation and Wayne LaPierre, Plaintiffs have failed to adequately plead a fraudulent misrepresentation. For purposes of the RICO claims against the Foundation and LaPierre, this means that they cannot establish the predicate act necessary to state a RICO violation. Accordingly, Plaintiffs' RICO claims against LaPierre and the NRA Foundation.

16

## IV.    CONCLUSION

For the reasons stated, the motions to dismiss are resolved as follows: the NRA Foundation's Motion to Dismiss (Doc. No. 46) is **GRANTED**; Wayne LaPierre's Motion to Dismiss (Doc. No. 50) is **GRANTED**; and the NRA's Motion to Dismiss is **GRANTED** as to the RICO claim, and **DENIED** as to the fraud claim.  An appropriate Order will enter.

_____
WILLIAM L. CAMPBELL, JR.
UNITED STATES DISTRICT JUDGE