M. Jermaine Watson
Texas Bar I.D. No. 24063055
Joshua N. Eppich
Texas Bar I.D. No. 24050567
H. Brandon Jones
Texas State Bar No. 24060043
Clay M. Taylor
Texas Bar I.D. No. 24033261
J. Robertson Clarke
Texas Bar I.D. No. 24108098
**BONDS ELLIS EPPICH SCHAFER JONES LLP**
420 Throckmorton Street, Suite 1000
Fort Worth, Texas 76102
(817) 405-6900 telephone
(817) 405-6902 facsimile
Email: jermaine.watson@bondsellis.com
Email: joshua@bondsellis.com
Email: brandon@bondsellis.com
Email: clay.taylor@bondsellis.com
Email: robbie.clarke@bondsellis.com

**ATTORNEYS FOR THE HONORABLE PHILLIP JOURNEY**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| IN RE: | § | Chapter 11 |
| | § | |
| NATIONAL RIFLE ASSOCIATION | § | Case No. 21-30085-hdh11 |
| OF AMERICA and SEA GIRT LLC, | § | |
| | § | |
| Debtors[1] | § | Jointly Administered |

**LIMITED OBJECTION TO THE MOTIONS TO
DISMISS OR THE APPOINTMENT OF TRUSTEE**

Phillip Journey ("Journey") hereby files this limited objection (the "Limited Objection") to the motions (the "Dismissal Motions") brought by the Attorney General of the State of New York (the "NYAG") [Docket Nos. 155 and 156], Ackerman McQueen, Inc. ("AMc") [Docket No. 131], and the Attorney General for the District of Columbia (the "DCAG" and, collectively with the NYAG and AMc, the "Movants") [Docket No. 214] requesting the dismissal of, or

---

[1] The last four digits of the Debtors' taxpayer identification numbers are: 6130 (NRA) and 5681 (Sea Girt). The Debtors' mailing address is 11250 Waples Mill Road, Fairfax, Virginia 22030.

alternatively, the appointment of a chapter 11 trustee for, the Debtors' chapter 11 bankruptcy cases, and respectfully states as follows:

1. As indicated by his *Motion for Appointment of Examiner* [Docket No. 114] (the "Examiner Motion"), Journey shares the belief of the Movants that the NRA requires court intervention due to allegations of fraud, dishonesty, incompetence, and gross mismanagement. The critical issue for this Court, and the basis of this Limited Objection, is recognizing the appropriate judicial remedy to address these allegations. Journey submits that after taking into account (1) the interests of **all interested parties**, including the millions of members, volunteers, donors, and participants across the country who actively support the NRA, (2) the non-profit nature of the NRA, and (3) the limited and specific nature of the Movants' allegations against only certain individuals, the best solution is the appointment of an examiner, potentially one with expanded powers as discussed below.

2. The Debtors' bankruptcy cases represent an opportunity for the NRA to change course, foster full transparency, strengthen its corporate governance, and eradicate any mismanagement that has prevented it from fulfilling its core purposes. In fact, given the NYAG's pending regulatory action in New York seeking the outright dissolution of the NRA, these bankruptcy cases may represent the only path forward to preserve the NRA for the benefit of its creditors, members, and other interested parties. As a result, dismissing these bankruptcy cases would very likely result in the termination of the NRA as a going concern, the loss of jobs to the NRA's employees as well as a vital ongoing customer of many of the vendors and creditors, and the loss of an important American institution that has long served its members and advanced their constitutional rights. The Movants cite the Debtors' financial solvency and litigation history as

evidence of a bad faith filing constituting grounds for dismissal, yet they overlook the existential threat and overreach posed by the NYAG's enforcement action.

3. Moreover, the cases cited by the Movants in connection with their bad faith arguments are distinguishable as they arise from bankruptcy cases of for-profit entities. The NRA has no shareholders yet has members and charitable purposes. In addition, many debtors enter bankruptcy embroiled in multiple lawsuits, and resorting to bankruptcy as a means to resolve those issues is entirely within the scope of the Bankruptcy Code. These bankruptcy cases should therefore not be dismissed as they serve as a vehicle to renew and preserve the NRA for its creditors, vendors, and members and to allow it to continue pursuing its political function and charitable purposes.

4. Journey reiterates his position that an examiner, including potentially an examiner with expanded powers, is the best path forward to fairly accommodate all of the interests involved in these bankruptcy cases. Both sections 1112(b)(1) and 1104(c) expressly anticipate that there will be cases in which an examiner is the preferred remedy over dismissal or a trustee. Journey strongly believes that the NRA fits squarely within that category.

5. At stated above, the grounds for dismissal do not take into account the unique context of these bankruptcy cases and risk the wholesale dissolution of a long-standing and cherished organization.

6. With respect to the appointment of a trustee, based on his long history with the NRA and as a current member of its Board of Directors, Journey believes that such a remedy would be both overly disruptive to the NRA's operations and wholly unnecessary given the specific charges levied by the Movants against only certain insiders. Whereas an examiner will be able to pinpoint any fraud, dishonesty, or gross mismanagement with an eye towards removing any culpable parties from the NRA's management, a trustee must necessarily start from the ground up

and assess each and every component of the Debtors' operations, committees, subcommittees, and charitable entities to the potential detriment of the NRA's large constituency. The time and costs required for a trustee's efforts would be substantial, especially in comparison to the limited time and costs of an examiner. Given that the Movants' allegations narrowly fixate on the alleged unlawful actions of a handful of insiders, not the organization itself, a targeted effort by an examiner against specific problems and individuals is the most efficient path forward. This approach further allows all parties in interest to negotiate a plan whereby each creditor, regulatory body, member or party-in-interest can participate.

7. Finally, to the extent that the Court believes that the Debtors require immediate intervention, Journey would suggest that an examiner with expanded powers is the most appropriate balance. Transparency for these bankruptcy cases and the NRA's operations remains the key principle in reorganizing the NRA, and therefore an examiner is the primary remedy for these Debtors. However, with the following expanded powers akin to those granted in the *Mirant*[2] case, the examiner would be able to assist the Debtors in maintaining their operations and continuing to serve as an important non-profit organization in order to fulfill its political and financial mission for its members, vendors, and all other interested parties:

    1. Investigate potential causes of action against insiders and non-debtors, including relative to misconduct and any potential breach of fiduciary duty.

    2. Investigate potential causes of action against any creditors, including members of the UCC.

    3. Investigate potential excessive compensation, expenses and perks of officers and/or directors, including investigation of reasonableness and market terms.

    4. Investigate compensation and contracts with related parties, including family members of officers, directors, and certain creditors.

    5. Investigate restriction and segregation of cash receipts, and evaluate appropriate

---

[2] *In re Mirant Corp.*, 314 B.R. 555, 561-562 (N.D. Bankr. Tex. 2004).

compliance and use of any restricted funds, pre-petition.

6. Investigate intercompany transactions, particularly between Debtors and non-debtors, including borrowings, pre-petition.

7. Investigate supporting information related to Debtor estimates of undisputed claims versus the likely totality of all claims.

8. Assess litigation in process, consult with interested parties as directed by the Court, consult with and assess the merits of any recommended course of action, and corresponding litigation budget.

9. Provide at least monthly reporting to the UCC and the court of actions taken, observations, conclusions and/or recommendations, with regard to defined scope. Reporting may be made under seal where appropriate.

10. Monitor reporting and segregation of cash receipts, and evaluate appropriate compliance with any restricted funds, post-petition.

11. Monitor intercompany transactions, particularly between Debtors and non-debtors, post-petition.

12. Monitor sources, uses, and transfers of funds for the estate, to include restricted and unrestricted receipts, versus projected expenses, and the necessity and reasonableness of such expenses.

13. Investigate any claims deemed meritorious by the Examiner that shall be raised by a party in interest against the Debtors or members of the Committee.

14. Upon the request of a party in interest, mediate any dispute involving the Debtors, or make a motion to the court to recommend third-party mediation.

15. Examiner may take a position on any motion filed in these cases.

16. Examiner shall participate in any Plan discussions with the Debtors and UCC.

8. Much like the *Mirant* case, there are factors present here that warrant the appointment of an examiner, such as the NRA's corporate structure, its non-profit status, the largely unrepresented members of the NRA, and the various agendas of the parties in this case in conflict with the best interests of all parties in interest, not just certain parties in interest.

## CONCLUSION

Movant therefore respectfully requests that the Court enter an order: (i) denying the Dismissal Motions; (ii) granting the Examiner Motion; and (iii) granting Journey such other and further relief as is just and proper.

Dated: March 5, 2021

Respectfully submitted by,

*/s/ M. Jermaine Watson*
M. Jermaine Watson
Texas Bar I.D. No. 24063055
Joshua N. Eppich
Texas Bar I.D. No. 24050567
H. Brandon Jones
Texas State Bar No. 24060043
Clay M. Taylor
Texas Bar I.D. No. 24033261
J. Robertson Clarke
Texas Bar I.D. No. 24108098
**BONDS ELLIS EPPICH SCHAFER JONES LLP**
420 Throckmorton Street, Suite 1000
Fort Worth, Texas 76102
(817) 405-6900 telephone
(817) 405-6902 facsimile
Email: jermaine.watson@bondsellis.com
Email: joshua@bondsellis.com
Email: brandon@bondsellis.com
Email: clay.taylor@bondsellis.com
Email: robbie.clarke@bondsellis.com

**ATTORNEYS FOR PHILLIP JOURNEY**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on March 5, 2021, a copy of the foregoing document was served on all parties requesting service via the Court's ECF system.

*/s/ J. Robertson Clarke*
J. Robertson Clarke