# EXHIBIT B

# EXHIBIT B

Case 21-30085-hdh11 Doc 307-2 Filed 03/06/21 Entered 03/06/21 05:43:57 Page 2 of 173

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF NEW YORK**

| | | |
|---|---|---|
| PEOPLE OF THE STATE OF NEW YORK, BY LETITIA JAMES, ATTORNEY GENERAL OF THE STATE OF NEW YORK | § § § § § | |
| Plaintiff, | § § | **INDEX NO. 451625/2020** |
| v. | § § | Hon. Joel M. Cohen |
| THE NATIONAL RIFLE ASSOCIATION et al., | § § § | |
| Defendants. | § § | |

### DEFENDANT THE NATIONAL RIFLE ASSOCIATION'S ORIGINAL VERIFIED <u>ANSWER AND COUNTERCLAIMS</u>

1

## TABLE OF CONTENTS

VERIFIED ANSWER ............................................................................................................. 2

AFFIRMATIVE DEFENSES ............................................................................................. 134

COUNTERCLAIMS ........................................................................................................... 136

    Parties, Jurisdiction and Venue ................................................................................... 137

    Factual Background ...................................................................................................... 137

        A.  The NRA: Support For Gun Safety And A Commitment To Core Political Speech .................................................................................................................... 140

        B.  Various Elected Officials in New York Target the NRA Based on the Viewpoints Expressed in Its Speech. .............................................................. 141

        C.  James Maliciously Defames the NRA to Create a Pretext for Law Enforcement Action. .......................................................................................... 143

        D.  The NYAG's Pretextual "Investigation" Underscores James's Plan to Destroy the NRA. ................................................................................................ 144

        E.  James Seeks the Extraordinary and Unprecedented Relief of Dissolution Based Solely on Alleged Executive Misconduct. ........................................... 145

        F.  New York's Not-for-Profit Law's Dissolution Provisions are Unconstitutional As-Applied to Political Entities Like the NRA .................. 152

        I.  First Counterclaim ..................................................................................... 155

        II.  Second Counterclaim ................................................................................. 158

        III. Third Counterclaim ................................................................................... 160

        IV. Fourth Counterclaim ................................................................................. 161

        V.  Fifth Counterclaim ..................................................................................... 163

        VI.  Sixth Counterclaim .................................................................................... 164

        VII.  Seventh Counterclaim .............................................................................. 166

1

Defendant, the National Rifle Association of America (the "NRA"), by and through its

undersigned counsel, hereby responds to the Verified Complaint (the "Complaint") filed by

Plaintiff the People of the State of New York, by Letitia James, Attorney General of the State of

New York (the "NYAG"),[1] as follows.

Even before assuming office, and without a shred of evidence that the NRA had done

anything wrong, Attorney General James vowed to weaponize the supervisory powers of the

NYAG to destroy one of the nation's oldest, largest civil rights organizations.   Her impetus was

nakedly political: to be weaken the NRA as a political force in advance of the 2020 elections.   In

order to deliver on James' corrupt campaign promise, the Complaint abandons any pretense of

impartial regulatory oversight.   It seeks dissolution (a "corporate death sentence") based on

allegations which, even if true, could never justify that remedy.   It aligns the NYAG shamelessly

with vendors that stole millions from the charity the NYAG purports to supervise.   And it

misconstrues and elides testimony from courageous whistleblowers who came forward to help

perfect the NRA—not destroy it.   These whistleblowers testified repeatedly to the NYAG during

the course of its "investigation" that they were protected when they came forward, and their

concerns addressed.   Shamelessly, the NYAG distorts the narrative of their involvement and

deliberately omits such testimony from the Complaint.

---

[1] The NRA objects to the caption of the Complaint on the ground that this action is purportedly brought in the name of "the people" rather than "the state."  *See* N.Y. CPLR 1301 ("An action brought in behalf of the people … shall be brought in the name of the state."); *New York ex rel. Boardman v Natl. R.R. Passenger Corp.*, 233 F.R.D. 259, 265 (N.D.N.Y. 2006) ("Although New York's general statutory scheme is for the Attorney General to prosecute lawsuits,… ***the case has to be prosecuted in the name of the State of New York***..) (emphasis added).  The NRA further notes that the caption incorrectly references "The National Rifle Association of America, Inc."; although the NRA is a corporation, it is not denominated "Inc.".

1

Given the above, it is no surprise that this lawsuit has been condemned as overtly unconstitutional by sixteen states,[2] multiple scholars,[3] and the ACLU.[4]  Not only is this case dishonest, it is counterproductive to any legitimate charitable-supervisory effort.  Most importantly, for all who love our democratic institutions, it will fail.

## VERIFIED ANSWER

Except as otherwise expressly admitted in this Original Verified Answer, the NRA denies each and every allegation contained or implied anywhere in the Complaint whether in the body, titles, headings, sub-headings, footnotes or otherwise. To the extent the NRA uses terms herein which are defined in the Complaint, that use is not an acknowledgment or admission of any characterization Plaintiff may ascribe to the defined terms.  The NRA further denies that Plaintiff

---

[2] See *NRA v. James*, Civ. No. 1:20-cv-00889-MAD-TWD (Dkt. No. 25) (Brief of States of Arkansas, Alaska, Georgia, Idaho, Mississippi, Oklahoma, Kansas, Kentucky, Louisiana, Missouri, Ohio, South Carolina, South Dakota, Texas, Utah and West Virginia as *Amici Curiae* in Support of Plaintiff and in Opposition to Dismissal) ("The New York AG's actions threaten the civil rights of five million members, including citizens of the *Amici* states.)

[3] *See, e.g.*, Ruth Marcus, *The NRA is a Cesspool. That Doesn't Mean It Should Be Dissolved*, WASH. POST. (Opinion, Aug. 9, 2020), https://www.washingtonpost.com/opinions/2020/08/09/nra-is-cesspool-that-doesnt-mean-it-should-be-dissolved/; Noah Feldman, *New York's Attorney General Shouldn't Dismantle the NRA*, BLOOMBERG (Opinion, Aug. 6, 2020), https://www.bloomberg.com/opinion/articles/2020-08-06/new-york-s-attorney-general-shouldn-t-dismantle-nra-in-lawsuit; David Cole, *The NRA Has a Right to Exist*, WALL ST. J. (Opinion, Aug. 26, 2020), https://www.wsj.com/articles/the-nra-has-a-right-to-exist-11598457143?mod=opinion_lead_pos7 ("The American Civil Liberties Union rarely finds itself on the same side as the National Rifle Association in policy debates or political disputes. Still, we are disturbed by New York Attorney General Letitia James's recent effort to dissolve the NRA"); Jonathan Turley, *The Tragic Irony of the New York State Lawsuit Against the NRA*, THE HILL (Opinion, Aug. 8, 2020), https://thehill.com/opinion/judiciary/511155-the-tragic-irony-of-the-new-york-state-lawsuit-against-the-national-rifle-association ("Trying to dissolve an organization engaged in political speech should not occur absent overwhelming proof that it is a criminal enterprise, which is why this has never happened with a group like the NRA."); Alan Z. Rozenshtein, *The Attempt to Dissolve the NRA Threatens Democratic Norms*, LAWFARE (Opinion, Aug. 11, 2020), https://www.lawfareblog.com/attempt-dissolve-nra-threatens-democratic-norms ("I personally can't stand [the NRA] . . . . [b]ut that said James's attempt to dissolve the NRA in its entirety is a violation of key democratic and rule-of-law norms.").

[4] See David Cole, *The NRA Has a Right to Exist*, WALL ST. J. (Aug. 26, 2020), https://www.wsj.com/articles/the-nra-has-a-right-to-exist-11598457143 ("The American Civil Liberties Union rarely finds itself on the same side as the National Rifle Association . . . [s]till, we are disturbed by New York Attorney General Letitia James's recent effort to dissolve the NRA. . . . You may have your own opinions about the NRA, but all Americans should be concerned about this sort of overreach.")

2

FILED: NEW YORK COUNTY CLERK 02/23/2021 11:14 PM     INDEX NO. 451625/2020

NYSCEF DOC. NO. 230     Case 21-30085-hdh11 Doc 307-2 Filed 03/06/21     Entered 03/06/21 05:43:57     Page 6 of 173     RECEIVED NYSCEF: 02/23/2021

is entitled to any relief.  The NRA expressly reserves the right to amend and/or supplement this Answer as may be necessary.

## PRELIMINARY STATEMENT

1.     The NRA admits that it operates as a New York not-for-profit corporation.  The NRA denies the remaining allegations set forth in Paragraph 1 of the Complaint.

2.     The NRA admits that Mr. LaPierre has served as Chief Executive Officer of the NRA since 1991.  The NRA denies the allegations in Paragraph 2 of the Complaint concerning the NRA's net assets, and respectfully refers the Court to the NRA's financial statements for their complete, accurate contents. The NRA denies the remaining allegations set forth in Paragraph 2 of the Complaint.

3.     The allegations in Paragraph 3 of the Complaint concerning Mr. LaPierre's discretion and duties pursuant to the NRA bylaws and New York law constitute legal conclusions to which no response is required; to the extent that a response is required, the NRA denies the allegations.  The NRA denies the remaining allegations set forth in Paragraph 3 of the Complaint.

4.     The NRA denies the allegations set forth in Paragraph 4 of the Complaint.

5.     The NRA admits that significant travel and entertainment expenses were billed to the NRA by its disgraced and former vendor, Ackerman McQueen, Inc., in violation of applicable accounting controls.  The NRA lacks knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 5 of the Complaint concerning Mr. Powell and Mr. Phillips, and therefore denies such allegations.  The NRA denies the remaining allegations set forth in Paragraph 5 of the Complaint.

6.     The NRA admits that Mr. Powell received salary increases prior to his termination for cause in January 2019.  The NRA denies the remaining allegations set forth in Paragraph 6 of the Complaint.

3

7.      The NRA lacks knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 7 of the Complaint concerning Mr. Frazer's practice prior to his employment at the NRA, and therefore denies such allegations. The NRA denies the remaining allegations set forth in Paragraph 7 of the Complaint.

8.      The NRA admits that Mr. LaPierre travels by private air charter pursuant to a *bona fide* security program, and has occasionally been accompanied by family members and other passengers. The NRA states that expenses associated with private air travel which were determined to constitute excess benefits  were reimbursed by Mr. LaPierre to the NRA. To the extent that Paragraph 8 of the Complaint sets forth allegations concerning travel or leisure activities undertaken by Mr. LaPierre and his family other than in connection with NRA business, the NRA lacks knowledge or information sufficient to form a belief as to the truth of such allegations and therefore denies them. The NRA denies the remaining allegations set forth in Paragraph 8 of the Complaint.

9.      The NRA admits that Mr. Powell failed to timely disclose relationships with certain NRA vendors, and states that Mr. Powell is no longer employed by the NRA. The NRA further states that post-employment consulting agreements negotiated by Mr. Phillips with departing employees without benefits for the NRA have been terminated, and Mr. Phillips is no longer employed by the NRA. The NRA denies the remaining allegations set forth in Paragraph 9 of the Complaint.

10.      The NRA admits that in 2018, certain employees notified the Audit Committee of their concerns regarding allegedly improper practices and behavior, and that some of these concerns involved Mr. Powell. The NRA denies the remaining allegations set forth in Paragraph 10 of the Complaint.

4

11.     The NRA denies the allegations set forth in Paragraph 11 of the Complaint.

12.     To the extent that Paragraph 12 purports to characterize New York statutes or remedies sought thereunder, its allegations consist of legal conclusions to which no response is required; to the extent a response is required, the NRA denies such allegations.  The NRA denies the remaining allegations set forth in Paragraph 12 of the Complaint.

13.     To the extent that Paragraph 13 purports to characterize New York statutes or remedies sought thereunder, its allegations consist of legal conclusions to which no response is required; to the extent a response is required, the NRA denies such allegations.  The NRA denies the remaining allegations set forth in Paragraph 13 of the Complaint.

## PART ONE – THE PARTIES

14.     Paragraph 14 of the Complaint contains legal conclusions to which no response is required; to the extent a response is required, the NRA denies such allegations.

15.     The NRA admits that it is a not-for-profit corporation that has been domiciled in the State of New York since its formation on November 17, 1871.  The NRA further admits that it engages in fundraising and is registered with the Charities Bureau of the Office of the Attorney General to conduct business and solicit donations. The remaining allegations in Paragraph 15 of the Complaint consist of legal conclusions to which no response is required; to the extent a response is required, the NRA denies such allegations.

16.     The NRA admits the allegations set forth in Paragraph 16 of the Complaint.

17.     Paragraph 17 of the Complaint purports to describe and/or summarize the contents of the NRA's bylaws, which speak for themselves. The NRA respectfully refers the Court to its bylaws for their complete, accurate contents; to the extent that the allegations in Paragraph 17 are inconsistent with the referenced document, the NRA denies them.

5

18.     The NRA admits that Mr. LaPierre has served as Executive Vice President of the NRA since the early 1990s, a position to which he has been repeatedly elected by the NRA Board of Directors.  The NRA further admits that Mr. LaPierre maintains an office address at 11250 Waples Mill Road, Fairfax, VA 22030.  To the extent that the allegations in Paragraph 18 of the Complaint purport to describe and/or summarize the NRA's bylaws, the NRA states that its bylaws speak for themselves, and respectfully refers the Court to its bylaws for their complete, accurate contents.  To the extent that the allegations in Paragraph 18 are inconsistent with the referenced document, the NRA denies them.

19.     The NRA admits that Mr. Powell held the positions of Chief of Staff, Executive Director of General Operations, and Senior Strategist, and served as an *ex officio* member of the Board of Directors.  The NRA further admits that Mr. Powell was terminated in January 2020. The NRA lacks knowledge or information sufficient to form a belief as to the truth of the Complaint's allegations regarding Mr. Powell's current residence, and therefore denies such allegations.  To the extent that the allegations in Paragraph 19 purport to characterize New York statutes or obligations arising thereunder, they state legal conclusions to which no response is required; to the extent a response is required, the NRA denies such allegations.   The NRA denies the remaining allegations set forth in Paragraph 19 of the Complaint.

20.     The NRA admits the allegations set forth in Paragraph 20 of the Complaint.

21.     The NRA admits the allegations set forth in Paragraph 21 of the Complaint.

## PART TWO – JURISDICTION AND VENUE

22.     The allegations in Paragraph 22 of the Complaint consist of legal conclusions to which no response is required; to the extent a response is required, the NRA denies such allegations.

6

23.     The allegations in Paragraph 23 of the Complaint consist of legal conclusions to which no response is required; to the extent a response is required, the NRA denies such allegations.

24.     The allegations in Paragraph 24 of the Complaint consist of legal conclusions to which no response is required; to the extent a response is required, the NRA denies such allegations.

25.     The allegations in Paragraph 25 of the Complaint consist of legal conclusions to which no response is required; to the extent a response is required, the NRA denies such allegations.

26.     The NRA denies the allegations set forth in Paragraph 26 of the Complaint.

## PART THREE – APPLICABLE LAW

27.     The allegations in Paragraph 27 of the Complaint consist of legal conclusions to which no response is required; to the extent a response is required, the NRA denies such allegations.

28.     The allegations in Paragraph 28 of the Complaint consist of legal conclusions to which no response is required; to the extent a response is required, the NRA denies such allegations.

29.     The allegations in Paragraph 29 of the Complaint consist of legal conclusions to which no response is required; to the extent a response is required, the NRA denies such allegations.

30.     The allegations in Paragraph 30 of the Complaint consist of legal conclusions to which no response is required; to the extent a response is required, the NRA denies such allegations.

7

31.     The allegations in Paragraph 31 of the Complaint consist of legal conclusions to which no response is required; to the extent a response is required, the NRA denies such allegations.

32.     The allegations in Paragraph 32 of the Complaint consist of legal conclusions to which no response is required; to the extent a response is required, the NRA denies such allegations.

33.     The allegations in Paragraph 33 of the Complaint consist of legal conclusions to which no response is required; to the extent a response is required, the NRA denies such allegations.

34.     The allegations in Paragraph 34 of the Complaint consist of legal conclusions to which no response is required; to the extent a response is required, the NRA denies such allegations.

35.     The allegations in Paragraph 35 of the Complaint consist of legal conclusions to which no response is required; to the extent a response is required, the NRA denies such allegations.

36.     The allegations in Paragraph 36 of the Complaint consist of legal conclusions to which no response is required; to the extent a response is required, the NRA denies such allegations.

37.     The allegations in Paragraph 37 of the Complaint consist of legal conclusions to which no response is required; to the extent a response is required, the NRA denies such allegations.

8

38.     The allegations in Paragraph 38 of the Complaint consist of legal conclusions to which no response is required; to the extent a response is required, the NRA denies such allegations.

39.     The allegations in Paragraph 39 of the Complaint consist of legal conclusions to which no response is required; to the extent a response is required, the NRA denies such allegations.

40.     The allegations in Paragraph 40 of the Complaint consist of legal conclusions to which no response is required; to the extent a response is required, the NRA denies such allegations.

41.     The allegations in Paragraph 41 of the Complaint consist of legal conclusions to which no response is required; to the extent a response is required, the NRA denies such allegations.

42.     The allegations in Paragraph 42 of the Complaint consist of legal conclusions to which no response is required; to the extent a response is required, the NRA denies such allegations.

43.     The allegations in Paragraph 43 of the Complaint consist of legal conclusions to which no response is required; to the extent a response is required, the NRA denies such allegations.

44.     The allegations in Paragraph 44 of the Complaint consist of legal conclusions to which no response is required; to the extent a response is required, the NRA denies such allegations.

9

45.     The allegations in Paragraph 45 of the Complaint consist of legal conclusions to which no response is required; to the extent a response is required, the NRA denies such allegations.

46.     The allegations in Paragraph 46 of the Complaint consist of legal conclusions to which no response is required; to the extent a response is required, the NRA denies such allegations.

47.     The NRA denies the allegations set forth in Paragraph 47 of the Complaint.

48.     The allegations in Paragraph 48 of the Complaint consist of legal conclusions to which no response is required; to the extent a response is required, the NRA denies such allegations.

49.     The allegations in Paragraph 49 of the Complaint consist of legal conclusions to which no response is required; to the extent a response is required, the NRA denies such allegations.

50.     The allegations in Paragraph 50 of the Complaint consist of legal conclusions to which no response is required; to the extent a response is required, the NRA denies such allegations.

51.     The allegations in Paragraph 51 of the Complaint consist of legal conclusions to which no response is required; to the extent a response is required, the NRA denies such allegations.

52.     The allegations in Paragraph 52 of the Complaint consist of legal conclusions to which no response is required; to the extent a response is required, the NRA denies such allegations.

10

53.     The allegations in Paragraph 53 of the Complaint consist of legal conclusions to which no response is required; to the extent a response is required, the NRA denies such allegations.

54.     The allegations in Paragraph 54 of the Complaint consist of legal conclusions to which no response is required; to the extent a response is required, the NRA denies such allegations.

## PART FOUR – THE NRA'S HISTORY AND INTERNAL GOVERNANCE

55.     The NRA admits the allegations set forth in Paragraph 55 of the Complaint.

56.     The NRA admits the allegations set forth in Paragraph 56 of the Complaint.

57.     The NRA admits that over the course of 149 years, it established itself as one of the largest, oldest social-welfare nonprofits in the country, and further admits that it is a 501(c)(4) organization exempt from certain taxation.   The remaining allegations in Paragraph 57 consist of legal conclusions to which no response is required; to the extent a response is required, the NRA denies such allegations.

58.     The allegations in the second sentence of Paragraph 58 of the Complaint consist of legal conclusions to which no response is required; to the extent a response is required, the NRA denies such allegations.  The NRA admits the allegations set forth in the first and third sentences of Paragraph 58.

59.     The NRA denies the allegations set forth in Paragraph 59 of the Complaint.

60.     The NRA denies the allegations set forth in Paragraph 60 of the Complaint.

61.     The NRA admits the allegations set forth in Paragraph 61 of the Complaint, except states that the NRA's bylaws allow contributions to certain federal independent-expenditure-only political committees and certain state ballot measure committees.

11

62.    The allegations in Paragraph 62 of the Complaint consist of legal conclusions to which no response is required; to the extent a response is required, the NRA denies such allegations.

63.    Paragraph 63 of the Complaint purports to describe and/or summarize the contents of the NRA's bylaws, which speak for themselves. The NRA respectfully refers the Court to its bylaws for their complete, accurate contents; to the extent that the allegations in Paragraph 63 are inconsistent with the referenced document, the NRA denies them.

64.    To the extent that the allegations in Paragraph 64 purport to characterize New York law, they constitute legal conclusions to which no response is required; to the extent a response is required, the NRA denies such allegations.   The remaining allegations in Paragraph 64 purport to describe and/or summarize the contents of the NRA's bylaws, which speak for themselves. The NRA respectfully refers the Court to its bylaws for their complete, accurate contents; to the extent that the allegations in Paragraph 64 are inconsistent with the referenced document, the NRA denies them.

65.    Paragraph 65 of the Complaint purports to describe and/or summarize the contents of the NRA's bylaws, which speak for themselves. The NRA respectfully refers the Court to its bylaws for their complete, accurate contents; to the extent that the allegations in Paragraph 65 are inconsistent with the referenced document, the NRA denies them.

66.    Paragraph 66 of the Complaint purports to describe and/or summarize the contents of the NRA's bylaws, which speak for themselves. The NRA respectfully refers the Court to its bylaws for their complete, accurate contents; to the extent that the allegations in Paragraph 66 are inconsistent with the referenced document, the NRA denies them.

12

Case 21-30085-hdh11 Doc 307-2 Filed 03/06/21 Entered 03/06/21 05:43:57 Page 16 of
173

67.     Paragraph 67 of the Complaint purports to describe and/or summarize the contents of the NRA's bylaws, which speak for themselves. The NRA respectfully refers the Court to its bylaws for their complete, accurate contents; to the extent that the allegations in Paragraph 67 are inconsistent with the referenced document, the NRA denies them.

68.     Paragraph 68 of the Complaint purports to describe and/or summarize the contents of the NRA's bylaws, which speak for themselves. The NRA respectfully refers the Court to its bylaws for their complete, accurate contents; to the extent that the allegations in Paragraph 68 are inconsistent with the referenced document, the NRA denies them.

69.     The NRA admits that the Executive Vice President is functionally the chief executive of the NRA and is elected annually by the NRA Board.  The remaining allegations in Paragraph 69 of the Complaint purport to describe and/or summarize the contents of the NRA's bylaws, which speak for themselves. The NRA respectfully refers the Court to its bylaws for their complete, accurate contents; to the extent that the allegations in Paragraph 69 are inconsistent with the referenced document, the NRA denies them.

70.     The NRA admits the allegations set forth in paragraph 70 of the Complaint.

71.     The NRA admits the allegations set forth in Paragraph 71 of the Complaint.

72.     The NRA admits that Wayne LaPierre has been in the leadership of the NRA for thirty years.  The NRA denies the remaining allegations in Paragraph 72 of the Complaint.

73.     The allegations in Paragraph 73 of the Complaint purport to describe and/or summarize the contents of the NRA's bylaws, which speak for themselves. The NRA respectfully refers the Court to its bylaws for their complete, accurate contents; to the extent that the allegations in Paragraph 73 are inconsistent with the referenced document, the NRA denies them.

74.     The NRA admits the allegations set forth in Paragraph 74 of the Complaint.

13

75.     The allegations in Paragraph 75 of the Complaint purport to describe and/or summarize the contents of the NRA's bylaws, which speak for themselves. The NRA respectfully refers the Court to its bylaws for their complete, accurate contents; to the extent that the allegations in Paragraph 75 are inconsistent with the referenced document, the NRA denies them.

76.     The allegations in Paragraph 76 of the Complaint purport to describe and/or summarize the contents of the NRA's bylaws, which speak for themselves. The NRA respectfully refers the Court to its bylaws for their complete, accurate contents; to the extent that the allegations in Paragraph 76 are inconsistent with the referenced document, the NRA denies them.

77.     The NRA admits that Mr. Philips served as Treasurer until 2018.  The remaining allegations in Paragraph 77 of the Complaint purport to describe and/or summarize the contents of the NRA's bylaws, which speak for themselves. The NRA respectfully refers the Court to its bylaws for their complete, accurate contents; to the extent that the allegations in Paragraph 77 are inconsistent with the referenced document, the NRA denies them.

78.     The NRA admits that Mr. Frazer has served as Secretary since 2015.  The remaining allegations in Paragraph 78 of the Complaint purport to describe and/or summarize the contents of the NRA's bylaws, which speak for themselves. The NRA respectfully refers the Court to its bylaws for their complete, accurate contents; to the extent that the allegations in Paragraph 78 are inconsistent with the referenced document, the NRA denies them.

79.     The allegations in Paragraph 79 of the Complaint purport to describe and/or summarize the contents of the NRA's bylaws, which speak for themselves. The NRA respectfully refers the Court to its bylaws for their complete, accurate contents; to the extent that the allegations in Paragraph 79 are inconsistent with the referenced document, the NRA denies them.

14

80.     The allegations in Paragraph 80 of the Complaint purport to describe and/or summarize the contents of the NRA's bylaws, which speak for themselves. The NRA respectfully refers the Court to its bylaws for their complete, accurate contents; to the extent that the allegations in Paragraph 80 are inconsistent with the referenced document, the NRA denies them.

81.     The allegations in Paragraph 81 of the Complaint purport to describe and/or summarize the contents of the NRA's bylaws, which speak for themselves. The NRA respectfully refers the Court to its bylaws for their complete, accurate contents; to the extent that the allegations in Paragraph 81 are inconsistent with the referenced document, the NRA denies them.

82.     The NRA admits the allegations set forth in Paragraph 82 of the Complaint.

83.     The NRA admits the allegations set forth in Paragraph 83 of the Complaint.

84.     The allegations in Paragraph 84 of the Complaint purport to describe and/or summarize the contents of the NRA's bylaws, which speak for themselves. The NRA respectfully refers the Court to its bylaws for their complete, accurate contents; to the extent that the allegations in Paragraph 84 are inconsistent with the referenced document, the NRA denies them.

85.     The allegations in Paragraph 85 of the Complaint purport to describe and/or summarize the contents of the NRA's bylaws, which speak for themselves. The NRA respectfully refers the Court to its bylaws for their complete, accurate contents; to the extent that the allegations in Paragraph 85 are inconsistent with the referenced document, the NRA denies them.

86.     The allegations in Paragraph 86 of the Complaint purport to describe and/or summarize the contents of the NRA's bylaws, which speak for themselves. The NRA respectfully refers the Court to its bylaws for their complete, accurate contents; to the extent that the allegations in Paragraph 86 are inconsistent with the referenced document, the NRA denies them.

15

87.     The allegations in Paragraph 87 of the Complaint purport to describe and/or summarize the contents of the NRA's bylaws, which speak for themselves. The NRA respectfully refers the Court to its bylaws for their complete, accurate contents; to the extent that the allegations in Paragraph 87 are inconsistent with the referenced document, the NRA denies them.

88.     The allegations in Paragraph 88 of the Complaint purport to describe and/or summarize the contents of the NRA's bylaws and Audit Committee Charter, which speak for themselves. The NRA respectfully refers the Court to such documents for their complete, accurate contents; to the extent that the allegations in Paragraph 88 are inconsistent with the referenced documents, the NRA denies them.  The remaining allegations in Paragraph 88 consist of legal conclusions to which no response is required; to the extent a response is required, the NRA denies such allegations.

89.     The allegations in Paragraph 89 of the Complaint purport to describe and/or summarize the contents of Audit Committee Charter, which speaks for itself. The NRA respectfully refers the Court to the Audit Committee Charter for its complete, accurate contents; to the extent that the allegations in Paragraph 89 are inconsistent with the referenced document, the NRA denies them.

90.     The allegations in Paragraph 90 of the Complaint purport to describe and/or summarize the contents of Audit Committee Charter, which speaks for itself. The NRA respectfully refers the Court to the Audit Committee Charter for its complete, accurate contents; to the extent that the allegations in Paragraph 90 are inconsistent with the referenced document, the NRA denies them.

91.     The allegations in Paragraph 91 of the Complaint purport to describe and/or summarize the contents of Audit Committee Charter, which speaks for itself. The NRA

16

respectfully refers the Court to the Audit Committee Charter for its complete, accurate contents; to the extent that the allegations in Paragraph 91 are inconsistent with the referenced document, the NRA denies them.

92.    The allegations in Paragraph 92 of the Complaint purport to describe and/or summarize the contents of Audit Committee Charter, which speaks for itself. The NRA respectfully refers the Court to the Audit Committee Charter for its complete, accurate contents; to the extent that the allegations in Paragraph 92 are inconsistent with the referenced document, the NRA denies them.

93.    The allegations in Paragraph 93 of the Complaint purport to describe and/or summarize the contents of corporate documents, which speak for themselves. The NRA respectfully refers the Court to such documents for their complete, accurate contents; to the extent that the allegations in Paragraph 93 are inconsistent with the referenced documents, the NRA denies them.

94.    The allegations in Paragraph 94 of the Complaint purport to describe and/or summarize the contents of the Statement of Corporate Ethics, which speaks for itself. The NRA respectfully refers the Court to the Statement for its complete, accurate contents; to the extent that the allegations in Paragraph 94 are inconsistent with the referenced document, the NRA denies them.

95.    The allegations in Paragraph 95 of the Complaint purport to describe and/or summarize the contents of the NRA's bylaws, which speak for themselves. The NRA respectfully refers the Court to its bylaws for their complete, accurate contents; to the extent that the allegations in Paragraph 95 are inconsistent with the referenced document, the NRA denies them.

17

Case 21-30085-hdh11 Doc 307-2 Filed 03/06/21    Entered 03/06/21 05:43:57    Page 21 of
173

96.    The allegations in Paragraph 96 of the Complaint purport to describe and/or summarize the contents of the NRA's bylaws, which speak for themselves. The NRA respectfully refers the Court to its bylaws for their complete, accurate contents; to the extent that the allegations in Paragraph 96 are inconsistent with the referenced document, the NRA denies them.

97.    The allegations in Paragraph 97 of the Complaint purport to describe and/or summarize the contents of the NRA's bylaws, which speak for themselves. The NRA respectfully refers the Court to its bylaws for their complete, accurate contents; to the extent that the allegations in Paragraph 97 are inconsistent with the referenced document, the NRA denies them.

98.    The allegations in Paragraph 98 of the Complaint purport to describe and/or summarize the contents of the NRA Employee Handbook and the NRA Policy Manual, which speak for themselves. The NRA respectfully refers the Court to those documents for their complete, accurate contents; to the extent that the allegations in Paragraph 98 are inconsistent with the referenced documents, the NRA denies them.

99.    The NRA admits that multiple board resolutions were adopted between 1988 and 1998 that impacted the contract review process.  The NRA denies the remaining allegations set forth in Paragraph 99 of the Complaint.

100.    To the extent that Paragraph 100 purports to describe and/or summarize the contents of resolutions adopted by the NRA Board, the NRA states that such documents speak for themselves.  The NRA respectfully refers the Court to such documents for their complete, accurate contents; to the extent that the allegations in Paragraph 100 are inconsistent with the referenced documents, the NRA denies them.

101.    To the extent that Paragraph 101 purports to describe and/or summarize the contents of resolutions adopted by the NRA Board, the NRA states that such documents speak

18

for themselves. The NRA respectfully refers the Court to such documents for their complete, accurate contents; to the extent that the allegations in Paragraph 101 are inconsistent with the referenced documents, the NRA denies them.

102. The NRA admits that in 2012, Mr. LaPierre signed a memorandum discussing procedures for complying with certain Board resolutions governing purchasing. The NRA states that the memorandum contained inaccuracies arising from its failure to reflect policy changes enacted by the Board of Directors pursuant to its resolution dated December 21, 2005 and approved on January 7, 2006. To the extent that Paragraph 102 purports to describe and/or summarize the contents of the memorandum, the NRA states that such document speaks for itself. The NRA respectfully refers the Court to the memorandum for its complete, accurate contents; to the extent that the allegations in Paragraph 102 are inconsistent with the referenced document, the NRA denies them.

103. The NRA denies the allegations set forth in Paragraph 103 of the Complaint.

104. The NRA admits that it has several policies governing hiring, evaluating, and retaining employees. To the extent that Paragraph 104 purports to describe and/or summarize the contents of such policies, the NRA states that the policy documents speak for themselves and respectfully refers the Court to such documents for their complete, accurate contents. To the extent that the allegations in Paragraph 104 are inconsistent with the referenced documents, the NRA denies them.

105. The NRA admits that its Employee Manual contains no written policy on employee bonuses. The NRA states that the considerations informing employee bonuses include, among other things, employment-contract provisions and input from compensation consultants. The NRA denies the remaining allegations in Paragraph 105.

19

Case 21-30085-hdh11 Doc 307-2 Filed 03/06/21 Entered 03/06/21 05:43:57 Page 23 of 173

106.    Paragraph 106 purports to describe and/or summarize the contents of the NRA Employee Handbook. The NRA states that this document speaks for itself and respectfully refers the Court to the Employee Handbook for its complete, accurate contents. To the extent that the allegations in Paragraph 106 are inconsistent with the referenced document and with other NRA policy documents, including the NRA Policy Manual, the NRA denies them.

107.    Paragraph 107 purports to describe and/or summarize the contents of the Travel and Business Expense Reimbursement Policy. The NRA states that this document speaks for itself, and respectfully refers the Court to the Travel and Business Expense Reimbursement Policy for its complete, accurate contents. To the extent that the allegations in Paragraph 107 are inconsistent with the referenced document and other NRA policy documents, including the NRA Policy Manual, the NRA denies them.

108.    Paragraph 108 purports to describe and/or summarize the contents of the Travel and Business Expense Reimbursement Policy. The NRA states that this document speaks for itself, and respectfully refers the Court to the Travel and Business Expense Reimbursement Policy for its complete, accurate contents. To the extent that the allegations in Paragraph 108 are inconsistent with the referenced document and other NRA policy documents, including the NRA Policy Manual, the NRA denies them.

109.    Paragraph 109 of the Complaint purports to describe and/or summarize the contents of the NRA Employee Handbook. The NRA states that such document speaks for itself, and respectfully refers the Court to the Employee Handbook for its complete, accurate contents. To the extent that the allegations in Paragraph 109 are inconsistent with the referenced document, the NRA denies them.

20

110.    Paragraph 110 purports to describe and/or summarize the contents of the Travel and Business Expense Reimbursement Policy.  The NRA states that this document speaks for itself, and respectfully refers the Court to the Travel and Business Expense Reimbursement Policy for its complete, accurate contents.  To the extent that the allegations in Paragraph 110 are inconsistent with the referenced document and other NRA policy documents, including the NRA Policy Manual, the NRA denies them.

111.    Paragraph 111 purports to describe and/or summarize the contents of the Travel and Business Expense Reimbursement Policy.  The NRA states that this document speaks for itself, and respectfully refers the Court to the Travel and Business Expense Reimbursement Policy for its complete, accurate contents.  To the extent that the allegations in Paragraph 111 are inconsistent with the referenced document and other NRA policy documents, including the NRA Policy Manual, the NRA denies them.

112.    Paragraph 112 purports to describe and/or summarize the contents of the Travel and Business Expense Reimbursement Policy.  The NRA states that this document speaks for itself, and respectfully refers the Court to the Travel and Business Expense Reimbursement Policy for its complete, accurate contents.  To the extent that the allegations in Paragraph 112 are inconsistent with the referenced document and other NRA policy documents, including the NRA Policy Manual, the NRA denies them.

113.    Paragraph 113 purports to describe and/or summarize the contents of the Statement of Corporate Ethics.  The NRA states that this document speaks for itself, and respectfully refers the Court to the Statement for its complete, accurate contents.  To the extent that the allegations in Paragraph 113 are inconsistent with the referenced document, the NRA denies them.

21

114.   Paragraph 114 purports to describe and/or summarize the contents of the NRA whistleblower policy.  The NRA states that this document speaks for itself, and respectfully refers the Court to the NRA whistleblower policy for its complete, accurate contents.  To the extent that the allegations in Paragraph 114 are inconsistent with the referenced document, the NRA denies them.

115.   Paragraph 115 purports to describe and/or summarize the contents of a new version of the Statement of Corporate Ethics.  The NRA states that this document speaks for itself, and respectfully refers the Court to the Statement for its complete, accurate contents.  To the extent that the allegations in Paragraph 115 are inconsistent with the referenced document, the NRA denies them.

116.   Paragraph 116 purports to describe and/or summarize the contents of the NRA Purchasing Policy.  The NRA states that the NRA Purchasing Policy speaks for itself, and respectfully refers the Court to such document for its complete, accurate contents.  To the extent that the allegations in Paragraph 116 are inconsistent with the referenced document, the NRA denies them.

117.   Paragraph 117 purports to describe and/or summarize the contents of the NRA Purchasing Policy.  The NRA states that the NRA Purchasing Policy speaks for itself, and respectfully refers the Court to such document for its complete, accurate contents.  To the extent that the allegations in Paragraph 117 are inconsistent with the referenced document, the NRA denies them.

118.   Paragraph 118 purports to describe and/or summarize the contents of the NRA Purchasing Policy.  The NRA states that the NRA Purchasing Policy speaks for itself, and respectfully refers the Court to such document for its complete, accurate contents.  To the extent

22

that the allegations in Paragraph 118 are inconsistent with the referenced document, the NRA denies them.

119.    The NRA denies the allegations set forth in Paragraph 119 of the Complaint.

120.    Paragraph 120 purports to describe and/or summarize the contents of the NRA Purchasing Policy.  The NRA states that the NRA Purchasing Policy speaks for itself, and respectfully refers the Court to such document for its complete, accurate contents.  To the extent that the allegations in Paragraph 120 are inconsistent with the referenced document, the NRA denies them.

121.    Paragraph 121 purports to describe and/or summarize the contents of the NRA Purchasing Policy.  The NRA states that the NRA Purchasing Policy speaks for itself, and respectfully refers the Court to such document for its complete, accurate contents.  To the extent that the allegations in Paragraph 121 are inconsistent with the referenced document, the NRA denies them.

122.    To the extent that Paragraph 122 purports to describe and/or summarize the contents of a resolution adopted by the NRA Board, the NRA states that such document speaks for itself.  The NRA respectfully refers the Court to such document for its complete, accurate contents; to the extent that the allegations in Paragraph 122 are inconsistent with the referenced documents, the NRA denies them.

123.    Paragraph 123 purports to describe and/or summarize the contents of the NRA Officers and Board of Directors Policy.  The NRA states that the NRA Officers and Board of Directors Policy speaks for itself, and respectfully refers the Court to such document for its complete, accurate contents.  To the extent that the allegations in Paragraph 123 are inconsistent with the referenced document, the NRA denies them.

23

124.    Paragraph 124 purports to describe and/or summarize the contents of the NRA Officers and Board of Directors Policy. The NRA states that the NRA Officers and Board of Directors Policy speaks for itself, and respectfully refers the Court to such document for its complete, accurate contents. To the extent that the allegations in Paragraph 124 are inconsistent with the referenced document, the NRA denies them.

125.    Paragraph 125 purports to describe and/or summarize the contents of NRA public filings. The NRA states that those public filings speak for themselves, and respectfully refers the Court to such documents for their complete, accurate contents. To the extent that the allegations in Paragraph 125 are inconsistent with the referenced documents, the NRA denies them.

126.    The allegations in Paragraph 126 of the Complaint constitute legal conclusions to which no response is required; to the extent that a response is required, the NRA denies the allegations.

127.    The NRA admits that its Conflict of Interest and Related Party Transaction Policy was adopted in or around January 2016 and constitutes a separate policy document distinct from the Employee Handbook. The NRA denies the remaining allegations set forth in Paragraph 127 of the Complaint.

128.    Paragraph 128 purports to describe and/or summarize the contents of the NRA Conflict of Interest and Related Party Transaction Policy. The NRA states that the NRA Conflict of Interest and Related Party Transaction Policy speaks for itself, and respectfully refers the Court to such document for its complete, accurate contents. To the extent that the allegations in Paragraph 128 are inconsistent with the referenced document, the NRA denies them. The remaining allegations in Paragraph 128 of the Complaint constitute legal conclusions to which no response is required; to the extent that a response is required, the NRA denies the allegations.

24

129.   Paragraph 129 purports to describe and/or summarize the contents of the NRA Conflict of Interest and Related Party Transaction Policy.  The NRA states that the NRA Conflict of Interest and Related Party Transaction Policy speaks for itself, and respectfully refers the Court to such document for its complete, accurate contents.  To the extent that the allegations in Paragraph 129 are inconsistent with the referenced document, the NRA denies them.

130.   Paragraph 130 purports to describe and/or summarize the contents of the NRA Conflict of Interest and Related Party Transaction Policy.  The NRA states that the NRA Conflict of Interest and Related Party Transaction Policy speaks for itself, and respectfully refers the Court to such document for its complete, accurate contents.  To the extent that the allegations in Paragraph 130 are inconsistent with the referenced document, the NRA denies them.

131.   Paragraph 131 purports to describe and/or summarize the contents of the NRA Conflict of Interest and Related Party Transaction Policy.  The NRA states that the NRA Conflict of Interest and Related Party Transaction Policy speaks for itself, and respectfully refers the Court to such document for its complete, accurate contents.  To the extent that the allegations in Paragraph 131 are inconsistent with the referenced document, the NRA denies them.

132.   Paragraph 132 purports to describe and/or summarize the contents of the NRA Conflict of Interest and Related Party Transaction Policy.  The NRA states that the NRA Conflict of Interest and Related Party Transaction Policy speaks for itself, and respectfully refers the Court to such document for its complete, accurate contents.  To the extent that the allegations in Paragraph 132 are inconsistent with the referenced document, the NRA denies them.

### **PART FIVE – DEFENDANTS' VIOLATIONS OF NEW YORK LAW**

133.   Paragraph 133 of the Complaint purports to describe and/or summarize the contents of the NRA's bylaws, which speak for themselves. The NRA respectfully refers the Court to its

25

Case 21-30085-hdh11 Doc 307-2 Filed 03/06/21   Entered 03/06/21 05:43:57   Page 29 of
173

bylaws for their complete, accurate contents; to the extent that the allegations in Paragraph 133

are inconsistent with the referenced document, the NRA denies them.

134.    Paragraph 134 of the Complaint purports to describe and/or summarize the contents

of the NRA's bylaws, which speak for themselves. The NRA respectfully refers the Court to its

bylaws for their complete, accurate contents; to the extent that the allegations in Paragraph 134

are inconsistent with the referenced document, the NRA denies them.

135.    The NRA admits the allegations set forth in Paragraph 135 of the Complaint.

136.    The NRA admits that Mr. Philips served as Treasurer of the NRA for 26 years, a

position to which he was repeatedly elected by the NRA Board.  To the extent that Paragraph 136

purports to describe and/or summarize the executive authority of the Treasurer and/or the

Executive Vice President pursuant to the NRA bylaws, the NRA states that its bylaws speak for

themselves and respectfully refers the Court to the bylaws for their complete and accurate

contents.  To the extent that the allegations in Paragraph 136 are inconsistent with the referenced

document, the NRA denies them.  The NRA denies the remaining allegations in Paragraph 136.

137.    The NRA admits that it hired Mr. Frazer as General Counsel in 2015, and further

admits that Mr. Frazer has served as Secretary since 2015, a position to which he has repeatedly

been elected by the NRA Board.  To the extent that Paragraph 137 purports to describe and/or

summarize the executive authority of the Treasurer and/or the Executive Vice President pursuant

to the NRA bylaws, the NRA states that its bylaws speak for themselves and respectfully refers

the Court to the bylaws for their complete and accurate contents.  To the extent that the allegations

in Paragraph 137 are inconsistent with the referenced document, the NRA denies them.  The NRA

denies the remaining allegations in Paragraph 137.

26

138. The NRA admits that it hired Mr. Powell as Chief of Staff in 2016, and further admits that he was appointed to the roles of Executive Director of General Operations in January 2017 and Senior Strategist in December 2018. The NRA further admits that it terminated Mr. Powell in January 2020. To the extent that Paragraph 138 purports to describe and/or summarize the executive authority of the Treasurer and/or the Executive Vice President pursuant to the NRA bylaws, the NRA states that its bylaws speak for themselves and respectfully refers the Court to the bylaws for their complete and accurate contents. To the extent that the allegations in Paragraph 138 are inconsistent with the referenced document, the NRA denies them. The NRA denies the remaining allegations in Paragraph 138.

139. The NRA denies the allegations set forth in Paragraph 139 of the Complaint.

140. The NRA denies the allegations set forth in Paragraph 140 of the Complaint.

141. The NRA admits that Mr. LaPierre's wife, Susan LaPierre, is chair of the NRA Women's Leadership Forum. With respect to testimony allegedly elicited from Mr. LaPierre by the NYAG during the course of its investigation, the NRA states that such testimony was elicited subject to substantial COVID-19 precautions which could reasonably be expected to impede accurate transcription, including masking and socially-distant seating arrangements. The NRA further states that it repeatedly requested, and was repeatedly denied, the opportunity to identify and rectify errata in the NYAG's transcripts. Accordingly, the NRA lacks knowledge or information sufficient to form a belief as to the accuracy of allegations in Paragraph 141 of the Complaint purporting to characterize Mr. LaPierre's testimony, and on that basis denies such allegations. The NRA denies the remaining allegations set forth in Paragraph 141 of the Complaint.

142. The NRA denies the allegations set forth in Paragraph 142 of the Complaint.

27

143.    Paragraph 143 purports to characterize testimony elicited from Mr. LaPierre by the NYAG during the course of its investigation. The NRA states that such testimony was elicited subject to substantial COVID-19 precautions which could reasonably be expected to impede accurate transcription, including masking and socially-distant seating arrangements. The NRA further states that it repeatedly requested, and was repeatedly denied, the opportunity to identify and rectify errata in the NYAG's transcripts. Accordingly, the NRA lacks knowledge or information sufficient to form a belief as to the accuracy of allegations in Paragraph 143 purporting to characterize Mr. LaPierre's testimony, and on that basis denies such allegations. The NRA denies the remaining allegations set forth in Paragraph 143 of the Complaint.

144.    Because Paragraph 144 fails to specify the "NRA records" referenced, the NRA lacks knowledge or information sufficient to form a belief as to the truth of allegations regarding such records and therefore such allegations. The NRA states that air charter charges determined to constitute excess benefits were reimbursed by Mr. LaPierre to the NRA. With respect to testimony allegedly elicited from Mr. LaPierre by the NYAG during the course of its investigation, the NRA states that such testimony was elicited subject to substantial COVID-19 precautions which could reasonably be expected to impede accurate transcription, including masking and socially-distant seating arrangements. The NRA further states that it repeatedly requested, and was repeatedly denied, the opportunity to identify and rectify errata in the NYAG's transcripts. Accordingly, the NRA lacks knowledge or information sufficient to form a belief as to the accuracy of allegations in Paragraph 144 purporting to characterize Mr. LaPierre's testimony, and on that basis denies such allegations. The NRA denies the remaining allegations set forth in Paragraph 144 of the Complaint.

28

145.    Paragraph 145 purports to characterize testimony elicited from Mr. LaPierre by the NYAG during the course of its investigation. The NRA states that such testimony was elicited subject to substantial COVID-19 precautions which could reasonably be expected to impede accurate transcription, including masking and socially-distant seating arrangements. The NRA further states that it repeatedly requested, and was repeatedly denied, the opportunity to identify and rectify errata in the NYAG's transcripts. Accordingly, the NRA lacks knowledge or information sufficient to form a belief as to the accuracy of allegations in Paragraph 145 purporting to characterize Mr. LaPierre's testimony, and on that basis denies such allegations. The NRA admits that it incurred an air charter charge totaling $11,435 on August 21, 2016, and states that this amount was reimbursed by Mr. LaPierre with interest. To the extent that Paragraph 145 purports to characterize travel or recreation activities undertaken by Mr. LaPierre or his family other than in connection with NRA business, the NRA lacks knowledge or information sufficient to form a belief as to the truth of such allegations and therefore denies them. The NRA denies the remaining allegations set forth in Paragraph 145 of the Complaint.

146.    Paragraph 146 purports to characterize testimony elicited from Mr. LaPierre by the NYAG during the course of its investigation. The NRA states that such testimony was elicited subject to substantial COVID-19 precautions which could reasonably be expected to impede accurate transcription, including masking and socially-distant seating arrangements. The NRA further states that it repeatedly requested, and was repeatedly denied, the opportunity to identify and rectify errata in the NYAG's transcripts. Accordingly, the NRA lacks knowledge or information sufficient to form a belief as to the accuracy of allegations in Paragraph 146 purporting to characterize Mr. LaPierre's testimony, and on that basis denies such allegations. The NRA admits that it incurred an air charter charge totaling $26,995 on July 1, 2017, and states

29

that the amount of excess benefit realized from this flight was reimbursed by Mr. LaPierre with interest. The NRA denies the remaining allegations set forth in Paragraph 146 of the Complaint.

147.   Paragraph 147 purports to characterize testimony elicited from Mr. LaPierre by the NYAG during the course of its investigation. The NRA states that such testimony was elicited subject to substantial COVID-19 precautions which could reasonably be expected to impede accurate transcription, including masking and socially-distant seating arrangements. The NRA further states that it repeatedly requested, and was repeatedly denied, the opportunity to identify and rectify errata in the NYAG's transcripts. Accordingly, the NRA lacks knowledge or information sufficient to form a belief as to the accuracy of allegations in Paragraph 147 purporting to characterize Mr. LaPierre's testimony, and on that basis denies such allegations. The NRA denies the remaining allegations set forth in Paragraph 147 of the Complaint.

148.   Paragraph 148 purports to characterize testimony elicited from Mr. LaPierre by the NYAG during the course of its investigation. The NRA states that such testimony was elicited subject to substantial COVID-19 precautions which could reasonably be expected to impede accurate transcription, including masking and socially-distant seating arrangements. The NRA further states that it repeatedly requested, and was repeatedly denied, the opportunity to identify and rectify errata in the NYAG's transcripts. Accordingly, the NRA lacks knowledge or information sufficient to form a belief as to the accuracy of allegations in Paragraph 148 purporting to characterize Mr. LaPierre's testimony, and on that basis denies such allegations. The NRA states that expenses associated with private air travel which were determined to constitute excess benefits were reimbursed by Mr. LaPierre to the NRA.

149.   Paragraph 149 purports to characterize testimony elicited from Mr. LaPierre by the NYAG during the course of its investigation. The NRA states that such testimony was elicited

30

subject to substantial COVID-19 precautions which could reasonably be expected to impede accurate transcription, including masking and socially-distant seating arrangements. The NRA further states that it repeatedly requested, and was repeatedly denied, the opportunity to identify and rectify errata in the NYAG's transcripts. Accordingly, the NRA lacks knowledge or information sufficient to form a belief as to the accuracy of allegations in Paragraph 149 purporting to characterize Mr. LaPierre's testimony, and on that basis denies such allegations. The NRA denies the remaining allegations set forth in Paragraph 149 of the Complaint.

150. The NRA denies the allegations set forth in Paragraph 150 of the Complaint.

151. The NRA states that charges associated with private air travel deemed to constitute potential excess benefits were reimbursed by Mr. LaPierre. The NRA denies the remaining allegations in Paragraph 151 of the Complaint.

152. The NRA admits that in March and April 2019, Mr. LaPierre took business trips to Orlando, Florida and Tulsa, Oklahoma with stops in North Platte, Nebraska. The NRA states that potential excess benefit amounts relating to these trips were reimbursed by Mr. LaPierre. The NRA denies the remaining allegations in Paragraph 152 of the Complaint.

153. Paragraph 153 purports to characterize testimony elicited by the NYAG during the course of its investigation. The NRA states that such testimony was elicited subject to substantial COVID-19 precautions which could reasonably be expected to impede accurate transcription; for example, the testimony referenced here was conducted by videoconference, with the witness situated in a remote area and tasked with printing and organizing his own exhibits. The NRA further states that it repeatedly requested, and was repeatedly denied, the opportunity to identify and rectify errata in the NYAG's transcripts. Accordingly, the NRA lacks knowledge or

31

Case 21-30085-hdh11 Doc 307-2 Filed 03/06/21    Entered 03/06/21 05:43:57    Page 35 of
173

information sufficient to form a belief as to the accuracy of allegations purporting to characterize

the referenced testimony, and on that basis denies such allegations.

154.    The NRA lacks knowledge or information sufficient to form a belief as to the truth

or falsity of the allegations set forth in Paragraph 154 of the Complaint, and on that basis denies

such allegations.

155.    The NRA lacks knowledge or information sufficient to form a belief as to the truth

or falsity of the allegations set forth in Paragraph 155 of the Complaint, and on that basis denies

such allegations.

156.    Paragraph 156 purports to characterize testimony elicited by the NYAG during the

course of its investigation.  The NRA states that such testimony was elicited subject to substantial

COVID-19 precautions which could reasonably be expected to impede accurate transcription; for

example, the testimony referenced here was conducted by videoconference, with the witness

situated in a remote area and tasked with printing and organizing his own exhibits.  The NRA

further states that it repeatedly requested, and was repeatedly denied, the opportunity to identify

and rectify errata in the NYAG's transcripts.  Accordingly, the NRA lacks knowledge or

information sufficient to form a belief as to the accuracy of allegations in  Paragraph 156 of the

Complaint purporting to characterize the referenced testimony, and on that basis denies such

allegations.  The NRA denies the remaining allegations in Paragraph 156.

157.    To the extent Paragraph 157 purports to describe and/or summarize the contents of

regulatory filings by the NRA, the NRA states that such documents speak for themselves, and

respectfully refers the Court to such documents for their complete, accurate contents.  To the

extent that the allegations in Paragraph 157 are inconsistent with the referenced document, the

NRA denies them.  The NRA lacks knowledge or information sufficient to form a belief as to the

32

truth of allegations in Paragraph 157 regarding the NYAG's success or failure at locating evidence, and on that basis denies such allegations.

158.    The NRA lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations set forth in Paragraph 158 of the Complaint, and therefore denies them.

159.    The NRA admits that it incurred charges relating to air travel by Mr. LaPierre to the Bahamas during the referenced period, including in connection with donor-cultivation and other business activities.  The NRA states that charges deemed to constitute excess benefits  were reimbursed by Mr. LaPierre.  The NRA lacks knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations in Paragraph 159 of the Complaint and, on that basis, denies such allegations.

160.    The NRA admits that Mr. LaPierre has attended celebrity fundraising events during December in the Bahamas.  The NRA denies the remaining allegations set forth in Paragraph 160 of the Complaint.

161.    The NRA admits that it previously executed contracts with each of Membership Marketing Partners ("MMP"), Allegiance Creative Group ("Allegiance"), and Concord Social & Public Relations ("Concord"), and that such contracts were signed and took effect in December 2011.   The NRA lacks knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations in Paragraph 161 of the Complaint and, on that basis, denies such allegations.

162.    The NRA denies the allegations set forth in Paragraph 162 of the Complaint.

163.    The NRA admits that it paid MMP roughly $71 million during the period from 2014 to 2020, and admits that it paid Concord roughly $26.1 million during the same period.  The NRA denies the remaining allegations in Paragraph 163.

33

164.    The NRA admits that it paid Allegiance roughly $6 million during the period from 2014 to 2020.  To the extent Paragraph 164 purports to describe and/or summarize the contents of the NRA's 2018 Form 990, the NRA states that such form speaks for itself, and respectfully refers the Court to such document for its complete, accurate contents.  To the extent that the allegations in Paragraph 164 are inconsistent with the referenced document, the NRA denies them.

165.    Paragraph 165 purports to characterize testimony elicited from Mr. LaPierre by the NYAG during the course of its investigation.  The NRA states that such testimony was elicited subject to substantial COVID-19 precautions which could reasonably be expected to impede accurate transcription, including masking and socially-distant seating arrangements.  The NRA further states that it repeatedly requested, and was repeatedly denied, the opportunity to identify and rectify errata in the NYAG's transcripts.  Accordingly, the NRA lacks knowledge or information sufficient to form a belief as to the accuracy of allegations in Paragraph 165 purporting to characterize Mr. LaPierre's testimony, and on that basis denies such allegations. The NRA denies the remaining allegations set forth in Paragraph 165 of the Complaint.

166.    The NRA admits that over the course of 2012-2018, payments were made to MMP, Concord and Allegiance for additional services and staffing not originally contemplated in the entities' 2011 contracts.  The NRA further admits that Mr. LaPierre signed contracts with MMP in 2015 and 2017; Allegiance in 2015, 2017 and 2019; Concord in 2015 and 2017; and ATI in 2004.  To the extent Paragraph 166 purports to characterize testimony elicited from Mr. LaPierre by the NYAG during the course of its investigation, the NRA states that such testimony was elicited subject to substantial COVID-19 precautions which could reasonably be expected to impede accurate transcription, including masking and socially-distant seating arrangements.  The

34

FILED: NEW YORK COUNTY CLERK 02/23/2021 11:14 PM
INDEX NO. 451625/2020
NYSCEF DOC. NO.: 230
RECEIVED NYSCEF: 02/23/2021
Case 21-30085-hdh11 Doc 307-2 Filed 03/06/21 Entered 03/06/21 05:43:57 Page 38 of
173

NRA further states that it repeatedly requested, and was repeatedly denied, the opportunity to identify and rectify errata in the NYAG's transcripts. Accordingly, the NRA lacks knowledge or information sufficient to form a belief as to the accuracy of allegations in Paragraph 166 purporting to characterize Mr. LaPierre's testimony, and on that basis denies such allegations. The NRA denies the remaining allegations set forth in Paragraph 166 of the Complaint.

167.    The NRA admits that it possesses, and produced to the NYAG, copies of travel-expense reimbursement documents reflecting trips by Mr. LaPierre to California during the referenced period, including hotel stays and meetings with vendors.   The NRA lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 167, and therefore denies such allegations.

168.    To the extent Paragraph 168 purports to characterize testimony elicited from Mr. LaPierre by the NYAG during the course of its investigation, the NRA states that such testimony was elicited subject to substantial COVID-19 precautions which could reasonably be expected to impede accurate transcription, including masking and socially-distant seating arrangements.  The NRA further states that it repeatedly requested, and was repeatedly denied, the opportunity to identify and rectify errata in the NYAG's transcripts. Accordingly, the NRA lacks knowledge or information sufficient to form a belief as to the accuracy of allegations in Paragraph 168 purporting to characterize Mr. LaPierre's testimony, and on that basis denies such allegations. The NRA lacks knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations set forth in Paragraph 168 of the Complaint, and therefore denies them.

169.    To the extent Paragraph 169 purports to characterize testimony elicited from Mr. LaPierre by the NYAG during the course of its investigation, the NRA states that such testimony was elicited subject to substantial COVID-19 precautions which could reasonably be expected to

35

impede accurate transcription, including masking and socially-distant seating arrangements. The
NRA further states that it repeatedly requested, and was repeatedly denied, the opportunity to
identify and rectify errata in the NYAG's transcripts. Accordingly, the NRA lacks knowledge or
information sufficient to form a belief as to the accuracy of allegations in Paragraph 169
purporting to characterize Mr. LaPierre's testimony, and on that basis denies such allegations.
The NRA lacks knowledge or information sufficient to form a belief as to the truth or falsity of
the remaining allegations set forth in Paragraph 169 of the Complaint, and therefore denies them.

170.   To the extent Paragraph 170 purports to characterize the contents of the NRA
Financial Disclosure Questionnaires and copies thereof submitted by Mr. LaPierre, the NRA
states that such documents speak for themselves, and respectfully refers the Court to such
documents for their complete, accurate contents. To the extent that the allegations in Paragraph
170 are inconsistent with the referenced documents, the NRA denies them.

171.   Paragraph 171 purports to characterize the contents of the NRA Financial
Disclosure Questionnaires and copies thereof submitted by Mr. LaPierre. The NRA states that
such documents speak for themselves, and respectfully refers the Court to such documents for
their complete, accurate contents. To the extent that the allegations in Paragraph 171 are
inconsistent with the referenced documents, the NRA denies them. To the extent Paragraph 171
purports to characterize testimony elicited from Mr. LaPierre by the NYAG during the course of
its investigation, the NRA states that such testimony was elicited subject to substantial COVID-
19 precautions which could reasonably be expected to impede accurate transcription, including
masking and socially-distant seating arrangements. The NRA further states that it repeatedly
requested, and was repeatedly denied, the opportunity to identify and rectify errata in the NYAG's
transcripts. Accordingly, the NRA lacks knowledge or information sufficient to form a belief as

36

to the accuracy of allegations in Paragraph 171 purporting to characterize Mr. LaPierre's testimony, and on that basis denies such allegations.

172.    Paragraph 172 purports to describe and/or summarize the contents of the NRA Conflict of Interest and Related Party Transaction Policy. The NRA states that the NRA Conflict of Interest and Related Party Transaction Policy speaks for itself, and respectfully refers the Court to such document for its complete, accurate contents. To the extent that the allegations in Paragraph 172 are inconsistent with the referenced document, the NRA denies them. The remaining allegations in Paragraph 172 of the Complaint constitute legal conclusions to which no response is required; to the extent that a response is required, the NRA denies the allegations.

173.    To the extent Paragraph 173 purports to characterize testimony elicited from Mr. LaPierre by the NYAG during the course of its investigation, the NRA states that such testimony was elicited subject to substantial COVID-19 precautions which could reasonably be expected to impede accurate transcription, including masking and socially-distant seating arrangements. The NRA further states that it repeatedly requested, and was repeatedly denied, the opportunity to identify and rectify errata in the NYAG's transcripts. Accordingly, the NRA lacks knowledge or information sufficient to form a belief as to the accuracy of allegations in Paragraph 173 purporting to characterize Mr. LaPierre's testimony, and on that basis denies such allegations.

174.    To the extent Paragraph 174 purports to characterize testimony elicited from Mr. LaPierre by the NYAG during the course of its investigation, the NRA states that such testimony was elicited subject to substantial COVID-19 precautions which could reasonably be expected to impede accurate transcription, including masking and socially-distant seating arrangements. The NRA further states that it repeatedly requested, and was repeatedly denied, the opportunity to identify and rectify errata in the NYAG's transcripts. Accordingly, the NRA lacks knowledge or

37

information sufficient to form a belief as to the accuracy of allegations in Paragraph 174 purporting to characterize Mr. LaPierre's testimony, and on that basis denies such allegations.

175.   To the extent Paragraph 175 purports to characterize testimony elicited from Mr. LaPierre by the NYAG during the course of its investigation, the NRA states that such testimony was elicited subject to substantial COVID-19 precautions which could reasonably be expected to impede accurate transcription, including masking and socially-distant seating arrangements.  The NRA further states that it repeatedly requested, and was repeatedly denied, the opportunity to identify and rectify errata in the NYAG's transcripts.  Accordingly, the NRA lacks knowledge or information sufficient to form a belief as to the accuracy of allegations in Paragraph 175 purporting to characterize Mr. LaPierre's testimony, and on that basis denies such allegations. The NRA states that Mr. LaPierre performs significant donor-cultivation work, for which ample "evidentiary support" exists.  The NRA denies the remaining allegations set forth in Paragraph 175 of the Complaint.

176.   The NRA lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations set forth in Paragraph 176 of the Complaint, and therefore denies them.

177.   Paragraph 177 purports to describe and/or summarize the contents of the NRA Travel Policy.  The NRA states that the NRA Travel Policy speaks for itself, and respectfully refers the Court to such document for its complete, accurate contents.  To the extent that the allegations in Paragraph 177 are inconsistent with the referenced document, the NRA denies them.

178.   The NRA admits that it has purchased travel-consulting services from Inventive Incentive & Insurance Services Inc. ("II&IS"), and that certain II&IS invoices issued over the course of the past thirty years have borne the d/b/a name GS2 Enterprises.  To the extent

38

Paragraph 178 purports to characterize testimony elicited from Mr. LaPierre by the NYAG during the course of its investigation, the NRA states that such testimony was elicited subject to substantial COVID-19 precautions which could reasonably be expected to impede accurate transcription, including masking and socially-distant seating arrangements. The NRA further states that it repeatedly requested, and was repeatedly denied, the opportunity to identify and rectify errata in the NYAG's transcripts. Accordingly, the NRA lacks knowledge or information sufficient to form a belief as to the accuracy of allegations in Paragraph 178 purporting to characterize Mr. LaPierre's testimony, and on that basis denies such allegations. The NRA denies the remaining allegations in Paragraph 178.

179. To the extent Paragraph 179 purports to characterize testimony elicited from Mr. LaPierre by the NYAG during the course of its investigation, the NRA states that such testimony was elicited subject to substantial COVID-19 precautions which could reasonably be expected to impede accurate transcription, including masking and socially-distant seating arrangements. The NRA further states that it repeatedly requested, and was repeatedly denied, the opportunity to identify and rectify errata in the NYAG's transcripts. Accordingly, the NRA lacks knowledge or information sufficient to form a belief as to the accuracy of allegations in Paragraph 179 purporting to characterize Mr. LaPierre's testimony, and on that basis denies such allegations. The NRA denies the remaining allegations in Paragraph 179.

180. The NRA admits that it paid monthly fees to II&IS for travel services during the periods indicated, and further admits that such monthly fees totaled $15,000 and $19,000 at certain relevant times. The NRA states that II&IS subsequently participated in a competitive bidding process for travel-consultation services and submitted a less-costly bid than competitors. The NRA denies the remaining allegations in Paragraph 180.

39

181. With respect to allegations purporting to characterize testimony elicited by the NYAG in the course of its investigation, the NRA states that it repeatedly requested, and was repeatedly denied, the opportunity to identify and rectify errata in the NYAG's transcripts, and further states that many witnesses testified subject to COVID-19 precautions such as masking, social distancing, and/or videoconference which would be reasonably expected to diminish the accuracy of transcripts. Accordingly, the NRA lacks knowledge or information sufficient to form a belief as to the truth or falsity of allegations purporting to recount witnesses' testimony, and therefore denies such allegations. The NRA lacks knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations set forth in Paragraph 181 of the Complaint, and therefore denies them.

182. The NRA denies that, during the entirety of the 2005-2019 period, the NRA's Purchasing Policy required written authorization of the NRA President or a Vice President. The NRA lacks knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations set forth in Paragraph 182 of the Complaint, and therefore denies them.

183. The NRA lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations set forth in Paragraph 183 of the Complaint, and therefore denies them.

184. To the extent Paragraph 184 purports to describe and/or summarize a business case analysis worksheet pertaining to travel services provider II&IS, the NRA states that this document speaks for itself, and respectfully refers the Court to such document for its complete, accurate contents. To the extent that the allegations in Paragraph 184 are inconsistent with the referenced document, the NRA denies them. The NRA lacks knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations set forth in Paragraph 184 of the Complaint, and therefore denies them.

40

185.   The NRA admits that on March 15, 2019, Mr. LaPierre, along with other appropriate officers and staff, —authorized a contract with GS2 Enterprises. The NRA's then-president, North, likewise acknowledged the contract.  To the extent Paragraph 185 purports to describe and/or summarize a business case analysis worksheet pertaining to travel services provider II&IS/GS2, the NRA states that this document speaks for itself, and respectfully refers the Court to such document for its complete, accurate contents.  To the extent that the allegations in Paragraph 185 are inconsistent with the referenced document, the NRA denies them.

186.   The NRA admits that in early 2020, it conducted a competitive-bid process for certain travel services offered previously by II&IS.  The NRA admits that it accepted II&IS's winning bid, one term of which was a flat monthly fee of $7,000.  The NRA denies the remaining allegations in Paragraph 186.

187.   To the extent Paragraph 187 purports to characterize testimony elicited from Mr. LaPierre by the NYAG during the course of its investigation, the NRA states that such testimony was elicited subject to substantial COVID-19 precautions which could reasonably be expected to impede accurate transcription, including masking and socially-distant seating arrangements.  The NRA further states that it repeatedly requested, and was repeatedly denied, the opportunity to identify and rectify errata in the NYAG's transcripts.  Accordingly, the NRA lacks knowledge or information sufficient to form a belief as to the accuracy of allegations in Paragraph 187 purporting to characterize Mr. LaPierre's testimony, and on that basis denies such allegations.

188.   The NRA admits that it paid the referenced amounts to a travel consultant from August 2014 to February 2020.  The NRA denies the remaining allegations in Paragraph 188.

189.   The NRA denies the allegations set forth in Paragraph 189 of the Complaint.

41

190.  The NRA admits that it remitted expense reimbursements to Mr. LaPierre during the referenced period.  To the extent that the allegations in Paragraph 190 purport to characterize the net balance of reimbursements remitted between and among the NRA and Mr. LaPierre (omitting reimbursements by Mr. LaPierre to the NRA), the NRA denies such allegations.

191.  To the extent that Paragraph 191 purports to characterize or apply IRS regulations, its allegations consist of legal conclusions to which no response is required; to the extent a response is required, the NRA denies such allegations.  The NRA lacks knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations set forth in Paragraph 191 of the Complaint, and therefore denies them.

192.  The NRA lacks knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations set forth in Paragraph 192 of the Complaint, and therefore denies them.

193.  To the extent that the allegations in Paragraph 193 purport to characterize travel, recreation, or charitable activities by Mr. LaPierre or his family unrelated to NRA business, the NRA lacks knowledge of information sufficient to form a belief as to the truth or falsity of the allegations set forth in Paragraph 193, and therefore denies them.

194.  To the extent that the allegations in Paragraph 194 purport to characterize NRA expense-reimbursement records, the NRA states that these documents speak for themselves, and respectfully refers the Court to such documents for their complete, accurate contents.  To the extent that the allegations in Paragraph 194 are inconsistent with the referenced documents, the NRA denies them.

195.  The NRA admits that it reimbursed expenses incurred by Mr. LaPierre in connection with the production of Under Wild Skies, a television program focused on hunting

42

and conservation.  The NRA lacks knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations set forth in Paragraph 195 of the Complaint, and therefore denies them.

196.    The NRA admits that Mr. LaPierre was reimbursed for expenses during the referenced period relating to, among other things, golf club membership fees.  To the extent that Paragraph 196 purports to characterize Form CHAR500 or any related document filed with the NYAG, the NRA states that these filings speak for themselves, and respectfully refers the Court to such documents for their complete, accurate contents.  To the extent that the allegations in Paragraph 196 are inconsistent with the referenced documents, the NRA denies them.  To the extent Paragraph 196 purports to characterize testimony elicited from Mr. LaPierre by the NYAG during the course of its investigation, the NRA states that such testimony was elicited subject to substantial COVID-19 precautions which could reasonably be expected to impede accurate transcription, including masking and socially-distant seating arrangements.  The NRA further states that it repeatedly requested, and was repeatedly denied, the opportunity to identify and rectify errata in the NYAG's transcripts.  Accordingly, the NRA lacks knowledge or information sufficient to form a belief as to the accuracy of allegations in Paragraph 196 purporting to characterize Mr. LaPierre's testimony, and on that basis denies such allegations.  The NRA lacks knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations set forth in Paragraph 196 of the Complaint, and therefore denies them.

197.    The NRA admits that certain expenses submitted by Mr. LaPierre were formerly processed by an employee within NRA-ILA, and that the employee incurred an extended sick leave beginning in 2017.  To the extent Paragraph 197 purports to characterize testimony elicited by the NYAG during the course of its investigation, the NRA states that such testimony was

43

Case 21-30085-hdh11 Doc 307-2 Filed 03/06/21 Entered 03/06/21 05:43:57 Page 47 of 173

elicited subject to substantial COVID-19 precautions which could reasonably be expected to impede accurate transcription; for example, the testimony referenced here was conducted by videoconference, with the witness situated in a remote area and tasked with printing and organizing his own exhibits. The NRA further states that it repeatedly requested, and was repeatedly denied, the opportunity to identify and rectify errata in the NYAG's transcripts. Accordingly, the NRA lacks knowledge or information sufficient to form a belief as to the accuracy of allegations in Paragraph 197 purporting to characterize the referenced testimony, and on that basis denies such allegations. The NRA denies the remaining allegations set forth in Paragraph 197 of the Complaint.

198. The NRA denies the allegations set forth in Paragraph 198 of the Complaint.

199. The NRA admits that at certain relevant times, it maintained an internal consulting budget in the Executive Vice President cost center. The NRA denies the remaining allegations set forth in Paragraph 199.

200. The NRA admits that its Financial Services Division prepares a proposed budget each year based on, among other things (i) data regarding historical expenditures in relevant categories and (ii) input from executives including, where applicable, Mr. LaPierre. The NRA denies the remaining allegations in Paragraph 200.

201. The NRA denies that the 2012 Memorandum sets forth its operative contracting policies, and refers to and reincorporates herein its response to Paragraph 102 concerning the 2012 Memorandum. The NRA denies the remaining allegations in Paragraph 201.

202. The NRA lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations set forth in Paragraph 202 of the Complaint, and therefore denies them.

44

203.    To the extent Paragraph 203 purports to characterize testimony elicited from Mr.

LaPierre by the NYAG during the course of its investigation, the NRA states that such testimony

was elicited subject to substantial COVID-19 precautions which could reasonably be expected to

impede accurate transcription, including masking and socially-distant seating arrangements.  The

NRA further states that it repeatedly requested, and was repeatedly denied, the opportunity to

identify and rectify errata in the NYAG's transcripts.  Accordingly, the NRA lacks knowledge or

information sufficient to form a belief as to the accuracy of allegations in Paragraph 203

purporting to characterize Mr. LaPierre's testimony, and on that basis denies such allegations.

The NRA admits that in certain instances during 2018, McKenna received payment for services

not covered by its then-existing contract.  The NRA further admits that during the time period

alleged, certain invoices were paid without confirmation of a formal written contract.  The NRA

lacks knowledge or information sufficient to form a belief as to the truth or falsity of the remaining

allegations set forth in Paragraph 203 of the Complaint, and therefore denies them.

204.    The NRA admits that certain Women's Leadership Forum staff work closely with

Mrs. LaPierre in connection with the Women's Leadership Forum.  The NRA lacks knowledge

or information sufficient to form a belief as to the truth or falsity of the remaining allegations set

forth in Paragraph 204 of the Complaint, and therefore denies them.

205.    The NRA admits that the EVP Consulting Budget has, from time to time, included

consulting arrangements with former NRA presidents and/or board members.  The NRA further

states that the details of such consulting arrangements, their documentation, and their approval or

ratification by the Audit Committee vary and have varied over time.  The requirements of New

York law and NRA policy have likewise varied over time. To the extent that the allegations in

Paragraph 205 purport to characterize New York law, they constitute legal conclusions to which

45

no response is required; to the extent a response is required, the NRA denies such allegations. To

the extent the allegations in Paragraph 205 purport to characterize the Conflict of Interest and

Related Party Transaction Policy, the NRA states that such policy speaks for itself. The NRA

respectfully refers the Court to the Conflict of Interest and Related Party Transaction Policy for

its complete, accurate contents; to the extent that the allegations in Paragraph 205 are inconsistent

with the referenced document, the NRA denies them. The NRA lacks knowledge or information

sufficient to form a belief as to the truth or falsity of the remaining allegations set forth in

Paragraph 205 of the Complaint, and therefore denies them.

206.    The NRA admits that during the referenced period, it incurred substantial expenses

to provide security for Mr. LaPierre based on the advice of security professionals and law

enforcement officials. To the extent Paragraph 206 purports to characterize testimony elicited

from Mr. LaPierre by the NYAG during the course of its investigation, the NRA states that such

testimony was elicited subject to substantial COVID-19 precautions which could reasonably be

expected to impede accurate transcription, including masking and socially-distant seating

arrangements. The NRA further states that it repeatedly requested, and was repeatedly denied,

the opportunity to identify and rectify errata in the NYAG's transcripts. Accordingly, the NRA

lacks knowledge or information sufficient to form a belief as to the accuracy of allegations in

Paragraph 206 purporting to characterize Mr. LaPierre's testimony, and on that basis denies such

allegations. The NRA lacks knowledge or information sufficient to form a belief as to the truth

or falsity of the remaining allegations set forth in Paragraph 206 of the Complaint, and therefore

denies them.

207.    The NRA admits that an armored vehicle was procured for Mr. LaPierre. To the

extent that the allegations in Paragraph 207 purport to excerpt or characterize testimony elicited

46

FILED: NEW YORK COUNTY CLERK 02/23/2021 11:14 PM          INDEX NO. 451625/2020

NYSCEF DOC. NO. 230          Case 21-30085-hdh11 Doc 307-2 Filed 03/06/21 Entered 03/06/21 05:43:57 Page 50 of          RECEIVED NYSCEF: 02/23/2021

173

by the NYAG during the course of its investigation, the NRA states that it repeatedly requested, and was repeatedly denied, the opportunity to identify and rectify errata in the NYAG's transcripts. Accordingly, the NRA lacks knowledge or information sufficient to form a belief as to the accuracy of allegations in Paragraph 207 purporting to characterize such testimony, and on that basis denies such allegations.

208.   With respect to allegations purporting to characterize testimony elicited by the NYAG in the course of its investigation, the NRA states that it repeatedly requested, and was repeatedly denied, the opportunity to identify and rectify errata in the NYAG's transcripts, and further states that many witnesses testified subject to COVID-19 precautions such as masking, social distancing, and/or videoconference which would be reasonably expected to diminish the accuracy of transcripts. Accordingly, the NRA lacks knowledge or information sufficient to form a belief as to the truth or falsity of allegations in Paragraph 208 purporting to recount witnesses' testimony, and therefore denies such allegations.

209.   The NRA admits that in the wake of the Parkland tragedy, following advice that Mr. LaPierre establish a "safe house," Mr. LaPierre and his wife reviewed several properties at the recommendation of Ackerman McQueen, including a home in Westlake, Texas. The NRA lacks knowledge or information sufficient to form a belief as to the accurate market valuation the property, and denies the allegations in Paragraph 209 regarding the same. The NRA admits that in the wake of the Parkland tragedy, following advice that Mr. LaPierre establish a "safe house," Mr. LaPierre and his wife reviewed several properties at the recommendation of Ackerman McQueen, including a home in Westlake, Texas. The NRA lacks knowledge or information sufficient to form a belief as to the accurate market valuation of the property, and denies the

47

Case 21-30085-hdh11 Doc 307-2 Filed 03/06/21   Entered 03/06/21 05:43:57   Page 51 of
173

allegations in Paragraph 209 regarding the same.  The NRA denies the remaining allegations in Paragraph 209.

210.   To the extent the allegations in Paragraph 210 purport to characterize documents executed by Mr. Philips, the NRA states that such documents speak for themselves. The NRA respectfully refers the Court to such documents for their complete, accurate contents; to the extent that the allegations in Paragraph 210 are inconsistent with the referenced documents, the NRA denies them. To the extent that the allegations in Paragraph 210 purport to characterize the legal effect of such documents, they constitute legal conclusions to which no response is required; to the extent a response is required, the NRA denies such allegations.

211.   To the extent the allegations in Paragraph 211 purport to characterize an email dated May 21, 2018, the NRA states that such email speaks for itself. The NRA respectfully refers the Court to such email for its complete, accurate contents; to the extent that the allegations in Paragraph 211 are inconsistent with the referenced documents, the NRA denies them.

212.   The NRA admits that it received an invoice from WBB Investments LLC in the amount of $70,000 bearing the referenced annotation.  To the extent the allegations in Paragraph 212 purport to characterize NRA policy, the NRA states that such policy speaks for itself. The NRA respectfully refers the Court to such NRA policy for its complete, accurate contents; to the extent that the allegations in Paragraph 212 are inconsistent with the referenced documents, the NRA denies them.

213.   The NRA admits the allegations set forth in Paragraph 213 of the Complaint.

214.   To the extent the allegations in Paragraph 214 purport to characterize the May 25, 2018 email, the NRA states that such email speaks for itself. The NRA respectfully refers the Court to such email for its complete, accurate contents; to the extent that the allegations in

48

Paragraph 214 are inconsistent with the referenced documents, the NRA denies them. The NRA lacks knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations set forth in Paragraph 214 of the Complaint, and therefore denies them.

215. The NRA admits that it issued a check to WBB Investments, LLC in the amount of $70,000; shortly thereafter, the NRA made clear it did not intend to proceed with any transaction and the funds were returned. To the extent Paragraph 215 purports to characterize testimony elicited from Mr. LaPierre by the NYAG during the course of its investigation, the NRA states that such testimony was elicited subject to substantial COVID-19 precautions which could reasonably be expected to impede accurate transcription, including masking and socially-distant seating arrangements. The NRA further states that it repeatedly requested, and was repeatedly denied, the opportunity to identify and rectify errata in the NYAG's transcripts. Accordingly, the NRA lacks knowledge or information sufficient to form a belief as to the accuracy of allegations in Paragraph 215 purporting to characterize Mr. LaPierre's testimony, and on that basis denies such allegations. The NRA denies the remaining allegations set forth in Paragraph 215 of the Complaint.

216. The NRA admits that Phillips served as Treasurer of the NRA from 1992 to 2018. To the extent that Paragraph 216 purports to characterize the executive authority of the Treasurer and/or the Executive Vice President pursuant to the NRA bylaws, the NRA states that its bylaws speak for themselves and respectfully refers the Court to the bylaws for their complete and accurate contents. To the extent that the allegations in Paragraph 216 are inconsistent with the referenced document, the NRA denies them. The NRA admits that during his tenure as Treasurer, Phillips failed to adhere to certain internal financial controls. The NRA denies the remaining allegations in Paragraph 216.

49

217.   The NRA admits that beginning in 2018, after Phillips' departure, Phillips' successor revised certain financial processes, including processes relating to credit card reimbursements and expense approvals.  To the extent Paragraph 217 purports to characterize testimony elicited by the NYAG during the course of its investigation, the NRA states that such testimony was elicited subject to substantial COVID-19 precautions which could reasonably be expected to impede accurate transcription; for example, the testimony referenced here was conducted by videoconference, with the witness situated in a remote area and tasked with printing and organizing his own exhibits.  The NRA further states that it repeatedly requested, and was repeatedly denied, the opportunity to identify and rectify errata in the NYAG's transcripts.  Accordingly, the NRA lacks knowledge or information sufficient to form a belief as to the accuracy of allegations in Paragraph 217 purporting to characterize the referenced testimony, and on that basis denies such allegations. The NRA denies the remaining allegations set forth in Paragraph 217 of the Complaint.

218.   The NRA admits that during 2018, at least one FSD staffer raised concerns about practices during Phillips' tenure relating to the review of expenses and processing of payments. With respect to allegations purporting to characterize testimony elicited by the NYAG in the course of its investigation, the NRA states that it repeatedly requested, and was repeatedly denied, the opportunity to identify and rectify errata in the NYAG's transcripts, and further states that many witnesses testified subject to COVID-19 precautions such as masking, social distancing, and/or videoconference which would be reasonably expected to diminish the accuracy of transcripts.  Accordingly, the NRA lacks knowledge or information sufficient to form a belief as to the truth or falsity of allegations purporting to recount witnesses' testimony, and therefore denies such allegations.  The NRA lacks knowledge or information sufficient to form a belief as

50

to the truth or falsity of the remaining allegations set forth in Paragraph 218 of the Complaint, and therefore denies them.

219. The NRA refers to and reincorporates herein its response to Paragraph 218.

220. The NRA admits that several FSD staff raised issues with the Audit Committee pursuant to the NRA's whistleblower policy during the summer of 2018, including at a July 2018 Audit Committee meeting. The NRA further admits that certain such whistleblower concerns pertained to Mr. Phillips and Mr. Powell. The NRA denies the remaining allegations in Paragraph 220.

221. The NRA admits that it made payments to HomeTelos LP between 2014 and 2017, and admits further that Mr. Phillips later disclosed a personal friendship with an executive of HomeTelos or an affiliate. The NRA states that its transactions with HomeTelos were ratified by the Audit Committee of the NRA Board following Mr. Phillips' disclosure. The NRA denies the remaining allegations set forth in Paragraph 221 of the Complaint.

222. The NRA admits that on or about September 2, 2014, Mr. Phillips executed a contract with HomeTelos LP on behalf of the NRA. The NRA states that neither Mr. LaPierre nor any other NRA officer signed the contract or participated in its negotiation. To the extent the allegations in Paragraph 222 purport to characterize the Conflict of Interest and Related Party Transaction Policy, including types of relationships constituting conflicts thereunder, the NRA states that such policy speaks for itself. The NRA respectfully refers the Court to the Conflict of Interest and Related Party Transaction Policy for its complete, accurate contents; to the extent that the allegations in Paragraph 222 are inconsistent with the referenced document, the NRA denies them.

51

223.   The NRA admits that upon information and belief, the Managing Director of Information Services participated in the negotiation of the HomeTelos contract, and elected to engage HomeTelos on the agreed terms, without being aware of or influenced by Mr. Phillips' personal friendship.   The NRA lacks knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations set forth in Paragraph 223 of the Complaint, and therefore denies them.

224.   To the extent the allegations in Paragraph 224 purport to characterize the contents of Mr. Philips' conflict disclosure forms for the referenced years, the NRA states that such forms speak for themselves.   The NRA respectfully refers the Court to such documents for their complete, accurate contents; to the extent that the allegations in Paragraph 224 are inconsistent with the referenced documents, the NRA denies them.

225.   The NRA admits that although the HomeTelos agreement had ended in 2017, it re-examined the agreement in 2018, and the relationship was reviewed the same year by the Audit Committee of the NRA Board.   The NRA denies the remaining allegations in Paragraph 225 of the Complaint.

226.   The NRA admits that staff raised issues with the Audit Committee regarding the HomeTelos contract in July 2018.   The NRA lacks knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations set forth in Paragraph 226 of the Complaint, and therefore denies them.

227.   The NRA lacks knowledge or information sufficient to form a belief as to the truth or falsity of the first sentence of Paragraph 227 of the Complaint, and therefore denies them.   The NRA admits the remaining allegations set forth in Paragraph 227.

52

228.    The NRA admits that Phillips disclosed a July 2018 trip aboard a yacht owned by
the shareholder of MMP.  The NRA states that Phillips disclosed the trip prior to his departure,
and the trip was ratified by the Audit Committee.  To the extent Paragraph 228 purports to
characterize testimony elicited from Mr. LaPierre by the NYAG during the course of its
investigation, the NRA states that such testimony was elicited subject to substantial COVID-19
precautions which could reasonably be expected to impede accurate transcription, including
masking and socially-distant seating arrangements.  The NRA further states that it repeatedly
requested, and was repeatedly denied, the opportunity to identify and rectify errata in the NYAG's
transcripts.  Accordingly, the NRA lacks knowledge or information sufficient to form a belief as
to the accuracy of allegations in Paragraph 228 purporting to characterize Mr. LaPierre's
testimony, and on that basis denies such allegations.  The NRA denies the remaining allegations
set forth in Paragraph 228 of the Complaint.

229.    To the extent the allegations in Paragraph 229 purport to characterize the contents
of Mr. Philips' Financial Disclosure Questionnaire, the NRA states that such document speaks
for itself.  The NRA respectfully refers the Court to such document for its complete, accurate
contents; to the extent that the allegations in Paragraph 229 are inconsistent with the referenced
document, the NRA denies them.  The NRA admits the remaining allegations set forth in
Paragraph 229 of the Complaint.

230.    Upon information and belief, the NRA admits the allegations in the first sentence
of Paragraph 230.  To the extent that Paragraph 230 purports to characterize the Report of the
Audit Committee of the NRA Board of Directors dated September 8-9, 2018, the NRA states that
such document speaks for itself.  The NRA respectfully refers the Court to such document for its

53

FILED: NEW YORK COUNTY CLERK 02/23/2021 11:14 PM
NYSCEF DOC. NO. 230

INDEX NO. 451625/2020
RECEIVED NYSCEF: 02/23/2021

Case 21-30085-hdh11 Doc 307-2 Filed 03/06/21 Entered 03/06/21 05:43:57 Page 57 of
173

complete, accurate contents; to the extent that the allegations in Paragraph 230 are inconsistent with the referenced document, the NRA denies them.

231. The NRA admits the allegations set forth in the first sentence of Paragraph 231. To the extent that Paragraph 231 purports to characterize provisions of the NRA bylaws governing the compensation of the Treasurer, the NRA states that its bylaws speak for themselves and respectfully refers the Court to the bylaws for their complete and accurate contents; to the extent that the allegations in Paragraph 231 are inconsistent with the referenced document, the NRA denies them. The remaining allegations in Paragraph 231 consist of legal conclusions to which no response is required; to the extent a response is required, the NRA denies such allegations.

232. To the extent that Paragraph 232 purports to characterize the content of a purported post-employment consulting agreement propounded by Mr. Philips, the NRA states that such agreement speaks for itself. The NRA respectfully refers the Court to such document for its complete and accurate contents; to the extent that the allegations in Paragraph 232 are inconsistent with the referenced document, the NRA denies them. To the extent that Paragraph 232 purports to characterize the legal effect of the foregoing document, its allegations consist of legal conclusions to which no response is required; to the extent a response is required, the NRA denies such allegations.

233. With respect to allegations purporting to characterize testimony elicited by the NYAG in the course of its investigation, the NRA states that it repeatedly requested, and was repeatedly denied, the opportunity to identify and rectify errata in the NYAG's transcripts, and further states that many witnesses testified subject to COVID-19 precautions such as masking, social distancing, and/or videoconference which would be reasonably expected to diminish the accuracy of transcripts. Accordingly, the NRA lacks knowledge or information sufficient to form

54

FILED: NEW YORK COUNTY CLERK 02/23/2021 11:14 PM
NYSCEF DOC. NO. 230

INDEX NO. 451625/2020

RECEIVED NYSCEF: 02/23/2021

Case 21-30085-hdh11 Doc 307-2 Filed 03/06/21 Entered 03/06/21 05:43:57 Page 58 of
173

a belief as to the truth or falsity of allegations in Paragraph 233 purporting to recount witnesses' testimony, and therefore denies such allegations. The NRA admits that the Audit Committee did not review or approve any purported consulting agreement for Phillips prior to Phillips' retirement.

234. The allegations in the second sentence of Paragraph 234 constitute legal conclusions to which no response is required; to the extent a response is required, the NRA denies such allegations. The NRA lacks knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations set forth in Paragraph 234 of the Complaint, and therefore denies them.

235. With respect to allegations purporting to characterize testimony elicited by the NYAG in the course of its investigation, the NRA states that it repeatedly requested, and was repeatedly denied, the opportunity to identify and rectify errata in the NYAG's transcripts, and further states that many witnesses testified subject to COVID-19 precautions such as masking, social distancing, and/or videoconference which would be reasonably expected to diminish the accuracy of transcripts. Accordingly, the NRA lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 235 purporting to recount witnesses' testimony, and therefore denies such allegations.

236. With respect to allegations purporting to characterize testimony elicited by the NYAG in the course of its investigation, the NRA states that it repeatedly requested, and was repeatedly denied, the opportunity to identify and rectify errata in the NYAG's transcripts, and further states that many witnesses testified subject to COVID-19 precautions such as masking, social distancing, and/or videoconference which would be reasonably expected to diminish the accuracy of transcripts. Accordingly, the NRA lacks knowledge or information sufficient to form

55

FILED: NEW YORK COUNTY CLERK 02/23/2021 11:14 PM
NYSCEF DOC. NO. 230

Case 21-30085-hdh11 Doc 307-2 Filed 03/06/21 Entered 03/06/21 05:43:57 Page 59 of
173

INDEX NO. 451625/2020

RECEIVED NYSCEF: 02/23/2021

a belief as to the truth or falsity of the allegations in Paragraph 236 purporting to recount witnesses' testimony, and therefore denies such allegations.

237.    The NRA admits that following his retirement, Mr. Phillips purported to submit invoices to the NRA in the referenced amounts, and that payments were remitted in response to some of these invoices before the NRA ceased paying Mr. Phillips during 2019.  The NRA lacks knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations set forth in Paragraph 237 of the Complaint, and therefore denies them.

238.    The NRA admits that Mr. Powell was hired as Chief of Staff in 2016, and had previously served as an elected member of the NRA Board. To the extent Paragraph 238 purports to characterize testimony elicited from Mr. LaPierre by the NYAG during the course of its investigation, the NRA states that such testimony was elicited subject to substantial COVID-19 precautions which could reasonably be expected to impede accurate transcription, including masking and socially-distant seating arrangements.  The NRA further states that it repeatedly requested, and was repeatedly denied, the opportunity to identify and rectify errata in the NYAG's transcripts.  Accordingly, the NRA lacks knowledge or information sufficient to form a belief as to the accuracy of allegations in Paragraph 238 purporting to characterize Mr. LaPierre's testimony, and on that basis denies such allegations.  The NRA denies the remaining allegations set forth in Paragraph 238 of the Complaint.

239.    The NRA denies the allegations set forth in Paragraph 239 of the Complaint.

240.    The NRA admits that Mr. Powell served as Executive Director of General Operations until December 2018 and thereafter served as Senior Strategist.  The NRA denies the remaining allegations set forth in Paragraph 240 of the Complaint.

56

FILED: NEW YORK COUNTY CLERK 02/23/2021 11:14 PM
NYSCEF DOC. NO. 230

INDEX NO. 451625/2020

RECEIVED NYSCEF: 02/23/2021

Case 21-30085-hdh11 Doc 307-2 Filed 03/06/21 Entered 03/06/21 05:43:57 Page 60 of
173

241. To the extent that Paragraph 241 purports to characterize a memorandum dated December 3, 2018, entitled "STAFF ANNOUNCEMENT," the NRA states that such memorandum speaks for itself. The NRA respectfully refers the Court to such document for its complete and accurate contents; to the extent that the allegations in Paragraph 241 are inconsistent with the referenced document, the NRA denies them.

242. The NRA admits that it terminated Mr. Powell for cause in January 2020, and that such cause included misappropriation of NRA funds. The NRA denies the remaining allegations set forth in Paragraph 242 of the Complaint.

243. The NRA admits that both Mr. LaPierre and Mr. Phillips were involved in setting Mr. Powell's compensation, and states that advice was also obtained from compensation consultants. The NRA further admits that Mr. Powell received approximately the designated salaries during the designated periods. To the extent that Paragraph 243 purports to represent the contents of an employment agreement, the NRA states that the agreement speaks for itself. The NRA respectfully refers the Court to such document for its complete and accurate contents; to the extent that the allegations in Paragraph 243 are inconsistent with the referenced agreement, the NRA denies them. The NRA denies the remaining allegations set forth in Paragraph 243 of the Complaint.

244. To the extent that Paragraph 244 purports to represent the contents of an employment agreement, the NRA states that the agreement speaks for itself. The NRA respectfully refers the Court to such document for its complete and accurate contents; to the extent that the allegations in Paragraph 244 are inconsistent with the referenced agreement, the NRA denies them. To the extent that Paragraph 244 purports to represent the contents of NRA policies contained in the Employee Handbook or Policy Manual, the NRA states that such policies speak

57

FILED: NEW YORK COUNTY CLERK 02/23/2021 11:14 PM
NYSCEF DOC. NO.: 230

INDEX NO. 451625/2020

RECEIVED NYSCEF: 02/23/2021

Case 21-30085-hdh11 Doc 307-2 Filed 03/06/21 Entered 03/06/21 05:43:57 Page 61 of
173

for themselves. The NRA respectfully refers the Court to such documents for their complete and accurate contents; to the extent that the allegations in Paragraph 244 are inconsistent with the referenced documents, the NRA denies them. The NRA admits that Mr. Powell submitted and obtained reimbursements for cellular, utilities, parking, cable, and internet charges. The NRA states that certain such charges supplied cause for Mr. Powell's termination, and states further that it is currently engaged in efforts to recover such sums from Mr. Powell.

245. The NRA admits that Mr. Powell's salary was increased to $650,000 in the third quarter of 2017 and that Mr. Phillips and Mr. LaPierre provided input concerning the salary increase. The NRA denies the remaining allegations set forth in Paragraph 245 of the Complaint.

246. The NRA admits that Mr. Powell's salary was increased to $800,000 in January 2018 and that Mr. Phillips and Mr. LaPierre provided input concerning the salary increase. The NRA denies the remaining allegations set forth in Paragraph 246 of the Complaint.

247. The NRA admits that Mr. Powell appears to have violated the NRA's expense reimbursement requirements and policies. The NRA denies the remaining allegations set forth in Paragraph 247 of the Complaint.

248. The NRA admits that Mr. Powell charged expenses to his NRA credit card. The NRA lacks knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations set forth in Paragraph 248 of the Complaint, and therefore denies them.

249. To the extent that Paragraph 249 purports to represent the contents of the referenced letter, the NRA states that the letter speaks for itself. The NRA respectfully refers the Court to such letter for its complete and accurate contents; to the extent that the allegations in Paragraph 249 are inconsistent with the referenced letter, the NRA denies them. The NRA denies the remaining allegations set forth in Paragraph 249 of the Complaint.

58

Case 21-30085-hdh11 Doc 307-2 Filed 03/06/21 Entered 03/06/21 05:43:57 Page 62 of 173

250.    To the extent that the allegations in Paragraph 250 purport to require the NRA to admit or deny the activities of outside counsel or advice sought from outside counsel, the NRA declines to respond by reason of attorney-client privilege and the work product doctrine, and therefore denies such allegations.  The NRA lacks knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations set forth in Paragraph 250 of the Complaint, and therefore denies them.

251.    The NRA admits the allegations set forth in Paragraph 251 of the Complaint.

252.    The NRA admits that Mr. Powell purported to pay a sum of $40,760.20 in full accord and satisfaction of outstanding amounts sought by the NRA.  The NRA rejected Mr. Powell's offer and continues to seek to recover the full amount owed.

253.    The NRA admits that discussions began during or about mid-2017 regarding what later became known as "Project Ben-Hur," and that such discussions ultimately involved McKenna and touched upon banking and insurance relationships.  The NRA denies the remaining allegations set forth in Paragraph 253 of the Complaint.

254.    The NRA admits that McKenna performed services relating to Project Ben-Hur during 2017 and 2018 which were not encompassed by McKenna's then-current contract with the NRA.  The NRA lacks knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations set forth in Paragraph 254 of the Complaint, and therefore denies them.

255.    The NRA admits that McKenna performed consulting services for the NRA since at least 2012, and that such services included donor-cultivation work.  The NRA admits that in July 2017, it entered into an amended contract with McKenna that provided for a $20,000 monthly consulting fee.  The NRA lacks knowledge or information sufficient to form a belief as to the

59

truth or falsity of the remaining allegations set forth in Paragraph 255 of the Complaint, and therefore denies them.

256. The NRA denies the allegations set forth in Paragraph 256 of the Complaint.

257. The NRA admits that it remitted payments to McKenna in 2018, and further admits upon information and belief that Mr, Powell and Mr. Phillips played a role in negotiating the terms of McKenna's engagement during early 2018. The NRA states that following the Audit Committee's review of the relationship in September 2018, Mr. Powell was "walled off" from contract negotiations with McKenna.

258. The NRA admits that a cybersecurity firm called LookingGlass performed services for the NRA during early 2018, and further admits that such services were discontinued by mid-2018. The NRA further admits upon information and belief that Mr. Powell played a role in LookingGlass's engagement. The NRA lacks knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations set forth in Paragraph 258 of the Complaint, and therefore denies them.

259. The NRA admits upon information and belief that Mr. Powell's wife became an independent contractor of McKenna during or about December 2017, and later became an employee of McKenna.

260. The NRA admits upon information and belief that Mr. Powell's wife became an independent contractor of McKenna during or about December 2017, and later became an employee of McKenna. The NRA lacks knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations in Paragraph 260, and therefore denies them.

261. To the extent that Paragraph 261 purports to represent the contents of an amended contract signed by Mr. Philips and Mr. Powell in January 2018, the NRA states that the contract

60

speaks for itself. The NRA respectfully refers the Court to such contract for its complete and accurate contents; to the extent that the allegations in Paragraph 261 are inconsistent with the referenced letter, the NRA denies them. The NRA lacks knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations set forth in Paragraph 261 of the Complaint, and therefore denies them.

262. The NRA admits that Mr. Powell did not disclose his wife's relationship with McKenna to the NRA Office of the General Counsel or the Audit Committee prior to January 2018. The NRA lacks knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations set forth in Paragraph 262 of the Complaint, and therefore denies them.

263. The NRA admits that Mr. Powell disclosed his wife's relationship with McKenna to the NRA Office of the General Counsel during mid-2018. The NRA lacks knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations set forth in Paragraph 263 of the Complaint, and therefore denies them.

264. The NRA admits that a "refresher" seminar regarding compliance obligations of all NRA employees was conducted on July 26, 2018, and that Mr. Powell participated in presenting the seminar. The NRA further admits that the seminar included training on conflicts of interest and related-party transactions. The NRA lacks knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations set forth in Paragraph 264 of the Complaint, and therefore denies them.

265. The NRA denies the allegations set forth in Paragraph 265 of the Complaint.

266. The NRA admits that it paid $11,512.73 to Jim Powell Photography ("JPP") in 2018, prior to concerns being raised by staff. The NRA further admits that staff discussed such

61

concerns with the Audit Committee in July 2018 pursuant to the NRA whistleblower policy. The

NRA admits that the Audit Committee of the NRA Board subsequently ratified prior transactions

with JPP but denies that the Audit Committee's review was "summar[y]." The NRA lacks

knowledge or information sufficient to form a belief as to the truth or falsity of the remaining

allegations set forth in Paragraph 266 of the Complaint, and therefore denies them.

267.  The NRA admits that it received a letter making assertions of sex discrimination

against Mr. Powell in June 2017.  To the extent that Paragraph 267 purports to represent a

complaint, the NRA states that the complaint speaks for itself.  The NRA respectfully refers the

Court to such document for its complete and accurate contents; to the extent that the allegations

in Paragraph 267 are inconsistent with the referenced complaint, the NRA denies them.  The NRA

lacks knowledge or information sufficient to form a belief as to the truth or falsity of the remaining

allegations set forth in Paragraph 267 of the Complaint, and therefore denies them.

268.  To the extent that Paragraph 268 purports to represent a complaint, the NRA states

that the complaint speaks for itself.  The NRA respectfully refers the Court to such document for

its complete and accurate contents; to the extent that the allegations in Paragraph 268 are

inconsistent with the referenced complaint, the NRA denies them.

269.  The NRA admits that during or about June 2018, it made a payment to a former

employee totaling $89,000 and obtained a release of various existing and potential claims.  The

NRA denies the remaining allegations set forth in Paragraph 269 of the Complaint.

270.  The NRA admits that an Ackerman senior executive made an accusation of sexual

harassment against Mr. Powell in or about October 2018, and admits that Mr. Powell ceased to

be an NRA "designee" pursuant to the Ackerman Services Agreement.  The NRA denies the

remaining allegations set forth in Paragraph 270 of the Complaint.

62

271.     The NRA admits that John Frazer was hired as General Counsel in January 2015, was elected to the position of Secretary by the Board in April 2015, and continues to serve in both capacities.  To the extent that Paragraph 271 purports to describe and/or summarize the executive authority of the Executive Vice President pursuant to the NRA bylaws, the NRA states that its bylaws speak for themselves and respectfully refers the Court to the bylaws for their complete and accurate contents.  To the extent that the allegations in Paragraph 271 are inconsistent with the referenced document, the NRA denies them.

272.     The NRA admits the allegations set forth in Paragraph 272 of the Complaint.

273.     The NRA admits the allegations in the fourth sentence of Paragraph 273 of the Complaint.  The NRA lacks knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations set forth in Paragraph 273 of the Complaint, and therefore denies them.

274.     The NRA lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations set forth in the first and second sentences of Paragraph 274 of the Complaint, and therefore denies them.  The NRA admits that Mr. Frazer returned to the NRA in January 2015 full-time as its General Counsel, and further states, on information and belief, that the salary approved by the NRA Board was initially $272,576 with additional compensation of $55,870 before the Board increased it to approximately $305,900 with additional compensation of $54,100.  The NRA denies the remaining allegations set forth in Paragraph 274 of the Complaint.

275.     The NRA lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations set forth in Paragraph 275 of the Complaint, and therefore denies them.

63

276. To the extent Paragraph 276 purports to characterize testimony elicited from Mr. LaPierre by the NYAG during the course of its investigation, the NRA states that such testimony was elicited subject to substantial COVID-19 precautions which could reasonably be expected to impede accurate transcription, including masking and socially-distant seating arrangements. The NRA further states that it repeatedly requested, and was repeatedly denied, the opportunity to identify and rectify errata in the NYAG's transcripts. Accordingly, the NRA lacks knowledge or information sufficient to form a belief as to the accuracy of allegations in Paragraph 276 purporting to characterize Mr. LaPierre's testimony, and on that basis denies such allegations. The NRA denies the remaining allegations set forth in Paragraph 276 of the Complaint.

277. To the extent Paragraph 277 purports to characterize testimony elicited from Mr. LaPierre by the NYAG during the course of its investigation, the NRA states that such testimony was elicited subject to substantial COVID-19 precautions which could reasonably be expected to impede accurate transcription, including masking and socially-distant seating arrangements. The NRA further states that it repeatedly requested, and was repeatedly denied, the opportunity to identify and rectify errata in the NYAG's transcripts. Accordingly, the NRA lacks knowledge or information sufficient to form a belief as to the accuracy of allegations in Paragraph 277 purporting to characterize Mr. LaPierre's testimony, and on that basis denies such allegations. The NRA lacks knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations set forth in Paragraph 277 of the Complaint, and therefore denies them.

278. The allegations in Paragraph 278 consist of legal conclusions to which no response is required; to the extent a response is required, the NRA denies such allegations.

279. With respect to allegations purporting to characterize testimony elicited by the NYAG in the course of its investigation, the NRA states that it repeatedly requested, and was

64

repeatedly denied, the opportunity to identify and rectify errata in the NYAG's transcripts, and further states that many witnesses testified subject to COVID-19 precautions such as masking, social distancing, and/or videoconference which would be reasonably expected to diminish the accuracy of transcripts. Accordingly, the NRA lacks knowledge or information sufficient to form a belief as to the truth or falsity of allegations in Paragraph 279 purporting to recount witnesses' testimony, and therefore denies such allegations. The NRA denies the remaining allegations set forth in Paragraph 279 of the Complaint.

280. The NRA admits that Frazer has executed and certified Forms CHAR 500 in his capacity as Secretary. To the extent that Paragraph 280 purports to characterize Forms CHAR 500, the NRA states that the forms speak for themselves and respectfully refers the Court to such forms for their complete and accurate contents. To the extent that the allegations in Paragraph 280 are inconsistent with the referenced documents, the NRA denies them.

281. To the extent that Paragraph 281 purports to characterize NRA annual filings and certifications executed by Mr. Frazer, the NRA states that the documents speak for themselves and respectfully refers the Court to such documents for their complete and accurate contents. To the extent that the allegations in Paragraph 281 are inconsistent with the referenced documents, the NRA denies them. The NRA denies the remaining allegations set forth in Paragraph 281 of the Complaint.

282. Upon information and belief, the NRA denies the allegations set forth in Paragraph 282 of the Complaint.

283. The NRA lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations set forth in Paragraph 283 of the Complaint, and therefore denies them.

65

Case 21-30085-hdh11 Doc 307-2 Filed 03/06/21    Entered 03/06/21 05:43:57    Page 69 of
173

284. The NRA admits that it employs multiple senior staff members who liaise with Mr. LaPierre, attend management meetings and Board meetings, and represent the NRA around the country. The NRA admits that one such staff member has a current salary of $250,000. The NRA admits upon information and belief that the referenced Senior Staff Member has held various job titles, but denies that she has always and exclusively reported to Mr. LaPierre. The NRA lacks knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations set forth in Paragraph 284 of the Complaint, and therefore denies them.

285. The NRA admits that it conducted a confidential internal investigation in or about 2003, and states that the independent professionals who conducted the investigation "cleared" the staff member of wrongdoing. The NRA lacks knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations set forth in Paragraph 285 of the Complaint, and therefore denies them.

286. The NRA lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations set forth in Paragraph 286 of the Complaint, and therefore denies them.

287. Upon information and belief, the NRA denies the allegations set forth in Paragraph 287 of the Complaint.

288. The NRA admits that in 2012, roughly $18,000 in expenses were incurred at the direction of a senior staff member, and states that such expenses were subsequently reimbursed to the NRA with interest. With respect to allegations purporting to characterize testimony elicited by the NYAG in the course of its investigation, the NRA states that it repeatedly requested, and was repeatedly denied, the opportunity to identify and rectify errata in the NYAG's transcripts, and further states that many witnesses testified subject to COVID-19 precautions such as masking, social distancing, and/or videoconference which would be reasonably expected to diminish the

66

accuracy of transcripts. Accordingly, the NRA lacks knowledge or information sufficient to form a belief as to the truth or falsity of allegations purporting to recount witnesses' testimony, and therefore denies such allegations. The NRA denies the remaining allegations set forth in Paragraph 288 of the Complaint.

289.    The NRA lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations set forth in Paragraph 289 of the Complaint, and therefore denies them.

290.    The NRA lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations set forth in Paragraph 290 of the Complaint, and therefore denies them.

291.    The NRA lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations set forth in Paragraph 291 of the Complaint, and therefore denies them.

292.    The NRA lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations set forth in Paragraph 292 of the Complaint, and therefore denies them.

293.    To the extent that Paragraph 293 purports to characterize the Report of the Audit Committee dated January 5-6, 2019, the NRA states that the Report speaks for itself, and respectfully refers the Court to such document for its complete and accurate contents. To the extent that the allegations in Paragraph 293 are inconsistent with the referenced documents, the NRA denies them. The NRA denies the remaining allegations set forth in Paragraph 293 of the Complaint.

294.    To the extent Paragraph 294 purports to characterize testimony elicited from Mr. LaPierre by the NYAG during the course of its investigation, the NRA states that such testimony was elicited subject to substantial COVID-19 precautions which could reasonably be expected to impede accurate transcription, including masking and socially-distant seating arrangements. The NRA further states that it repeatedly requested, and was repeatedly denied, the opportunity to

67

identify and rectify errata in the NYAG's transcripts. Accordingly, the NRA lacks knowledge or information sufficient to form a belief as to the accuracy of allegations in Paragraph 294 purporting to characterize Mr. LaPierre's testimony, and on that basis denies such allegations. The NRA denies the remaining allegations set forth in Paragraph 294 of the Complaint.

295. The NRA admits that from time to time, the referenced staff member has reported to Mr. LaPierre, but states that she has also reported to other executives. The allegations in the third and fourth sentences of Paragraph 295 constitute legal conclusions to which no response is required; to the extent a response is required, the NRA denies such allegations. The NRA denies the remaining allegations in Paragraph 295 of the Complaint.

296. The NRA denies the allegations set forth in Paragraph 296 of the Complaint.

297. The NRA admits the allegations set forth in Paragraph 297 of the Complaint.

298. To the extent that Paragraph 298 purports to characterize NRA's Forms 990 filed during the referenced period, the NRA states that the Forms speak for themselves and respectfully refers the Court to such documents for their complete and accurate contents. To the extent that the allegations in Paragraph 298 are inconsistent with the referenced documents, the NRA denies them. The NRA denies that it has not publicly disclosed fees paid to Mercury in 2018.

299. The NRA lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations set forth in Paragraph 299 of the Complaint, and therefore denies them. The NRA states that it has been engaged in litigation with Ackerman since 2019 in an effort to ascertain information relating to these matters.

300. The NRA admits that for decades, its senior leadership including Mr. LaPierre sought advice from Ackerman, especially its former CEO, Angus McQueen, on strategic communication, crisis management, and other sensitive matters. The NRA lacks knowledge or

68

information sufficient to form a belief as to the truth or falsity of the remaining allegations set forth in Paragraph 300 of the Complaint, and therefore denies them.

301.   The NRA lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations set forth in Paragraph 301 of the Complaint, and therefore denies them.

302.   The NRA admits the allegations set forth in Paragraph 302 of the Complaint.

303.   The NRA admits that there was a Services Agreement between the NRA and Ackerman.   The NRA denies the remaining allegations set forth in Paragraph 303 of the Complaint.

304.   To the extent that Paragraph 304 purports to characterize the Services Agreement referenced in Paragraph 304 of the Complaint, the NRA states that the Agreement speaks for itself, and respectfully refers the Court to such document for its complete and accurate contents. To the extent that the allegations in Paragraph 304 are inconsistent with the referenced documents, the NRA denies them.

305.   The NRA admits that LaPierre met typically with Ackerman executives to discuss Ackerman's budget, and that LaPierre was joined by Phillips such meetings.   The NRA denies the remaining allegations set forth in Paragraph 305 of the Complaint.

306.   The NRA denies the allegations set forth in Paragraph 306 of the Complaint.

307.   The NRA denies the allegations set forth in Paragraph 307 of the Complaint.

308.   Paragraph 308 purports to characterize the NRA's operative pleading in the matter captioned *National Rifle Association of America v Ackerman McQueen, Inc. et al.,* case No. 19-cv-02074-G, Northern District of Texas, Dallas Division. The NRA states that the pleading speaks for itself, and respectfully refers the Court to such document for its complete and accurate contents.   To the extent that the allegations in Paragraph 308 are inconsistent with the referenced

69

document, the NRA denies them. The NRA denies the remaining allegations set forth in Paragraph 308 of the Complaint.

309. The NRA denies the allegations set forth in Paragraph 309 of the Complaint.

310. The NRA denies the allegations set forth in Paragraph 310 of the Complaint.

311. The NRA admits that Ackerman billed the NRA for purported out-of-pocket expenses, and further admits that the invoices for such expenses were generally transmitted to the NRA unaccompanied by explanatory details or supporting documents. The NRA lacks knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations set forth in Paragraph 311 of the Complaint, and therefore denies them.

312. Paragraph 312 of the Complaint contains legal conclusions to which no response is required; to the extent a response is required, the NRA denies such allegations.

313. The NRA lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations set forth in Paragraph 313 of the Complaint, and therefore denies them.

314. Paragraph 314 of the Complaint contains legal conclusions to which no response is required; to the extent a response is required, the NRA denies such allegations. The NRA admits upon information and belief that certain expenses were invoiced by Ackerman in a manner which violated NRA policy. The NRA states that it has been engaged in litigation with Ackerman since 2019 to identify and recover such payments. The NRA denies the remaining allegations set forth in Paragraph 314 of the Complaint.

315. The NRA denies the allegations set forth in Paragraph 315 of the Complaint.

316. The NRA denies the allegations set forth in Paragraph 316 of the Complaint.

317. The NRA lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations set forth in Paragraph 317 of the Complaint, and therefore denies them.

70

Case 21-30085-hdh11 Doc 307-2 Filed 03/06/21 Entered 03/06/21 05:43:57 Page 74 of 173

318.    The NRA denies the allegations set forth in Paragraph 318 of the Complaint.

319.    Paragraph 319 purports to summarize or describe the contents of invoices submitted by Ackerman to the NRA.  The NRA states that the documents speak for themselves, and respectfully refers the Court to such documents for their complete and accurate contents.  To the extent that the allegations in Paragraph 319 are inconsistent with the referenced documents, the NRA denies them.  The NRA denies the remaining allegations set forth in Paragraph 319 of the Complaint.

320.    The NRA denies the allegations set forth in Paragraph 320 of the Complaint.

321.    The NRA denies the allegations set forth in Paragraph 321 of the Complaint.

322.    With respect to the allegations in Paragraph 322 of the Complaint regarding the contents of, and circumstances surrounding charges incurred via Ackerman's corporate credit cards, the NRA lacks knowledge or information sufficient to form a belief as to the truth or falsity of such allegations, and therefore denies them.  The NRA denies the remaining allegations set forth in Paragraph 322 of the Complaint.

323.    The NRA lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations set forth in Paragraph 323 of the Complaint, and therefore denies them.

324.    The NRA denies the allegations set forth in Paragraph 324 of the Complaint.

325.    The NRA lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations set forth in Paragraph 325 of the Complaint, and therefore denies them.

326.    The NRA admits that audits of Ackerman's documents were conducted in Oklahoma City, Oklahoma.  The NRA denies the allegations set forth in Paragraph 326 of the Complaint.

327.    The NRA admits the allegations set forth in Paragraph 327 of the Complaint.

71

328.    The NRA admits the allegations set forth in Paragraph 328 of the Complaint.

329.    To the extent Paragraph 329 of the Complaint purports to summarize or describe the contents of contract(s) between the NRA and Under Wild Skies, Inc. ("UWS"), the NRA states that the documents speak for themselves, and respectfully refers the Court to such documents for their complete and accurate contents.  To the extent that the allegations in Paragraph 329 are inconsistent with the referenced documents, the NRA denies them.

330.    The NRA admits that Mr. LaPierre and his wife appeared in episodes of Under Wild Skies.  The NRA lacks knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations set forth in Paragraph 330 of the Complaint, and therefore denies them.

331.    The NRA denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 331 of the Complaint, except admits that various NRA officers, directors, spouse(s), and the Executive Director of Advancement participated in hunts that appeared on Under Wild Skies.

332.    Paragraph 332 of the Complaint contains legal conclusions to which no response is required; to the extent a response is required, the NRA denies such allegations.

333.    The NRA lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations set forth in Paragraph 333 of the Complaint, and therefore denies them.

334.    The NRA lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations set forth in Paragraph 334 of the Complaint, and therefore denies them.

335.    The NRA lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations set forth in Paragraph 335 of the Complaint, and therefore denies them.

72

Case 21-30085-hdh11 Doc 307-2 Filed 03/06/21    Entered 03/06/21 05:43:57    Page 76 of
173

336.    The NRA admits that during 2019, it received from UWS, and remitted payment

for, several invoices in the amount of $97,500 bearing the designation "supplemental invoice."

The NRA lacks knowledge or information sufficient to form a belief as to the truth or falsity of

the remaining allegations set forth in Paragraph 336 of the Complaint, and therefore denies them.

337.    The NRA lacks knowledge or information sufficient to form a belief as to the truth

or falsity of the allegations set forth in Paragraph 337 of the Complaint, and therefore denies them.

338.    The NRA denies the allegations set forth in Paragraph 338 of the Complaint.

339.    The NRA lacks knowledge or information sufficient to form a belief as to the truth

of the allegations set forth in Paragraph 339 of the Complaint, and therefore denies them.

340.    To the extent Paragraph 340 of the Complaint purports to summarize or describe

the contents of the Agreement regarding the Termination of Employment, Release,

Confidentiality and Non-Disparagement signed by Kyle Weaver, Lisa Supernaugh, and Wilson

Philips on November 5, 2016, the NRA states that the Agreement speaks for itself, and

respectfully refers the Court to such document for its complete and accurate contents.  To the

extent that the allegations in Paragraph 340 are inconsistent with the referenced documents, the

NRA denies them.  The NRA denies the remaining allegations in Paragraph 340 of the Complaint.

341.    To the extent Paragraph 341 of the Complaint purports to summarize or describe

the contents of the Agreement regarding the Termination of Employment, Release,

Confidentiality and Non-Disparagement signed by Kyle Weaver, Lisa Supernaugh, and Wilson

Philips on November 5, 2016, the NRA states that the agreement speaks for itself, and respectfully

refers the Court to such document for its complete and accurate contents.  To the extent that the

allegations in Paragraph 341 are inconsistent with the referenced documents, the NRA denies

them.

73

Case 21-30085-hdh11 Doc 307-2 Filed 03/06/21 Entered 03/06/21 05:43:57 Page 77 of 173

342.   The allegations in Paragraph 342 of the Complaint purport to describe and/or summarize the contents of the NRA Purchasing Policy, which speaks for itself. The NRA respectfully refers the Court to the Policy for its complete, accurate contents; to the extent that the allegations in Paragraph 342 are inconsistent with the referenced document, the NRA denies them.

343.   To the extent Paragraph 343 of the Complaint purports to summarize or describe the contents of the Agreement regarding the Termination of Employment, Release, Confidentiality and Non-Disparagement signed by Kyle Weaver, Lisa Supernaugh, and Wilson Philips on November 5, 2016, the NRA states that the agreement speaks for itself, and respectfully refers the Court to such document for its complete and accurate contents.  To the extent that the allegations in Paragraph 343 are inconsistent with the referenced documents, the NRA denies them.  The NRA lacks knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations set forth in Paragraph 343 of the Complaint, and therefore denies them.

344.   To the extent Paragraph 344 of the Complaint purports to summarize or describe the contents of the Agreement regarding the Termination of Employment, Release, Confidentiality and Non-Disparagement dated November 5, 2016, the NRA states that the agreement speaks for itself, and respectfully refers the Court to such document for its complete and accurate contents.  To the extent that the allegations in Paragraph 344 are inconsistent with the referenced documents, the NRA denies them.  To the extent Paragraph 344 purports to characterize testimony elicited from Mr. LaPierre by the NYAG during the course of its investigation, the NRA states that such testimony was elicited subject to substantial COVID-19 precautions which could reasonably be expected to impede accurate transcription, including

74

masking and socially-distant seating arrangements. The NRA further states that it repeatedly requested, and was repeatedly denied, the opportunity to identify and rectify errata in the NYAG's transcripts. Accordingly, the NRA lacks knowledge or information sufficient to form a belief as to the accuracy of allegations in Paragraph 344 purporting to characterize Mr. LaPierre's testimony, and on that basis denies such allegations.

345. Paragraph 345 purports to characterize testimony elicited from Mr. LaPierre by the NYAG during the course of its investigation. The NRA states that such testimony was elicited subject to substantial COVID-19 precautions which could reasonably be expected to impede accurate transcription, including masking and socially-distant seating arrangements. The NRA further states that it repeatedly requested, and was repeatedly denied, the opportunity to identify and rectify errata in the NYAG's transcripts. Accordingly, the NRA lacks knowledge or information sufficient to form a belief as to the accuracy of allegations in Paragraph 345 purporting to characterize Mr. LaPierre's testimony, and on that basis denies such allegations. The NRA lacks knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations set forth in Paragraph 345 of the Complaint, and therefore denies them.

346. The NRA admits upon information and belief that the principal of H.W.S. Consulting is an individual who formerly served as Executive Director of the NRA Foundation until his retirement in 2008. The NRA further admits that, until about December 2018, it was party to a Consulting Agreement with H.W.S. Consulting Inc. (the "HWS Consulting Agreement"). To the extent Paragraph 346 of the Complaint purports to summarize or describe the contents of the HWS Consulting Agreement, the NRA states that the Agreement speaks for itself, and respectfully refers the Court to such Agreement for its complete and accurate contents. To the extent that the allegations in Paragraph 346 are inconsistent with the referenced document,

75

the NRA denies them. The NRA lacks knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations set forth in Paragraph 346 of the Complaint, and therefore denies them.

347. The NRA states that the HWS Consulting Agreement was entered into thirteen years ago, and predated many relevant NRA policies. The NRA lacks knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations set forth in Paragraph 347 of the Complaint, and therefore denies them.

348. To the extent that Paragraph 348 purports to characterize NRA's Forms 990 filed during the referenced period, the NRA states that the Forms speak for themselves and respectfully refers the Court to such documents for their complete and accurate contents. To the extent that the allegations in Paragraph 348 are inconsistent with the referenced documents, the NRA denies them.

349. To the extent Paragraph 349 of the Complaint purports to summarize or describe the contents of the HWS Consulting Agreement, the NRA states that the Agreement speaks for itself, and respectfully refers the Court to such Agreement for its complete and accurate contents. To the extent that the allegations in Paragraph 349 are inconsistent with the referenced document, the NRA denies them.

350. Paragraph 350 of the Complaint contains legal conclusions to which no response is required; to the extent a response is required, the NRA denies such allegations. The NRA lacks knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations set forth in Paragraph 350 of the Complaint, and therefore denies them.

351. The NRA lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations set forth in Paragraph 351 of the Complaint, and therefore denies them.

76

FILED: NEW YORK COUNTY CLERK 02/23/2021 11:14 PM
NYSCEF DOC. NO. 230

INDEX NO. 451625/2020

RECEIVED NYSCEF: 02/23/2021

Case 21-30085-hdh11 Doc 307-2 Filed 03/06/21 Entered 03/06/21 05:43:57 Page 80 of
173

352.   The NRA lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations set forth in Paragraph 352 of the Complaint, and therefore denies them.

353.   The NRA lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations set forth in Paragraph 353 of the Complaint, and therefore denies them.

354.   To the extent Paragraph 354 of the Complaint purports to summarize or describe the contents of the HWS Consulting Agreement, the NRA states that the Agreement speaks for itself, and respectfully refers the Court to such Agreement for its complete and accurate contents. To the extent that the allegations in Paragraph 354 are inconsistent with the referenced document, the NRA denies them.   The NRA admits that it reimbursed H.W.S. Consulting for certain expenses during 2016.  The NRA lacks knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations set forth in Paragraph 354 of the Complaint, and therefore denies them.

355.   The NRA admits that the HWS Consulting Agreement was terminated in 2018, and that the Foundation Executive's expenses were delayed pending documentation.  The NRA lacks knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations set forth in Paragraph 355 of the Complaint, and therefore denies them.

356.   The NRA admits that it entered into a Consulting Services Agreement in 2016 to which Lockton Affinity and a former NRA employee were parties.  The NRA further admits that Lockton Affinity formerly served as a broker for many NRA-related affinity insurance programs, including Carry Guard.  The NRA denies the remaining allegations set forth in Paragraph 356 of the Complaint.

357.   To the extent that Paragraph 357 purports to characterize NRA's 2016 Form 990, the NRA states that the Form speaks for itself and respectfully refers the Court to such document

77

FILED: NEW YORK COUNTY CLERK 02/23/2021 11:14 PM
INDEX NO. 451625/2020
NYSCEF DOC. NO. 230
Case 21-30085-hdh11 Doc 307-2 Filed 03/06/21   Entered 03/06/21 05:43:57   Page 81 of
173
RECEIVED NYSCEF: 02/23/2021

for its complete and accurate contents.  To the extent that the allegations in Paragraph 357 are inconsistent with the referenced document, the NRA denies them.

358.    The NRA admits upon information and belief that the Managing Director received consulting fees from Lockton Affinity after his departure from the NRA.  The NRA lacks knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations set forth in Paragraph 358 of the Complaint, and therefore denies them.

359.    The NRA admits that Phillips executed a Bonus Structure, Employment Longevity Incentive and Termination Agreement with a now-former NRA employee which bore the date July 1, 2014 (the "Bonus Agreement").  To the extent that Paragraph 359 purports to characterize the Bonus Agreement, the NRA states that the Agreement speaks for itself and respectfully refers the Court to such document for its complete and accurate contents.  To the extent that the allegations in Paragraph 359 are inconsistent with the referenced document, the NRA denies them.  The NRA lacks knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations set forth in Paragraph 359 of the Complaint, and therefore denies them.

360.    The NRA admits subsequent purported amendments to the Bonus Agreement were executed, and respectfully refers the Court to such documents for their complete and accurate contents.  To the extent that the allegations in Paragraph 360 are inconsistent with the referenced documents, the NRA denies them.  The NRA denies the remaining allegations set forth in Paragraph 360 of the Complaint.

361.    To the extent that Paragraph 361 purports to describe or summarize the Consulting Services Agreement, the NRA states that the Agreement speaks for itself and respectfully refers the Court to such document for its complete and accurate contents.  To the extent that the

78

FILED: NEW YORK COUNTY CLERK 02/23/2021 11:14 PM
NYSCEF DOC. NO.: 230

INDEX NO. 451625/2020

RECEIVED NYSCEF: 02/23/2021

Case 21-30085-hdh11 Doc 307-2 Filed 03/06/21 Entered 03/06/21 05:43:57 Page 82 of
173

allegations in Paragraph 361 are inconsistent with the referenced document, the NRA denies them.

362.    Paragraph 362 purports to characterize testimony elicited from Mr. LaPierre by the NYAG during the course of its investigation.  The NRA states that such testimony was elicited subject to substantial COVID-19 precautions which could reasonably be expected to impede accurate transcription, including masking and socially-distant seating arrangements.  The NRA further states that it repeatedly requested, and was repeatedly denied, the opportunity to identify and rectify errata in the NYAG's transcripts.  Accordingly, the NRA lacks knowledge or information sufficient to form a belief as to the accuracy of allegations in Paragraph 362 purporting to characterize Mr. LaPierre's testimony, and on that basis denies such allegations.

363.    The NRA lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations set forth in Paragraph 363 of the Complaint, and therefore denies them.

364.    The NRA lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations set forth in Paragraph 364 of the Complaint, and therefore denies them.

365.    Paragraph 365 of the Complaint contains legal conclusions to which no response is required; to the extent a response is required, the NRA denies such allegations.  The NRA denies the remaining allegations set forth in Paragraph 365 of the Complaint.

366.    Upon information and belief, the NRA admits the allegations set forth in Paragraph 366 of the Complaint.

367.    The NRA admits that one of its board members, a former professional football player, performed paid consulting work for the NRA from time to time during the referenced period and received fees and expense reimbursements in connection with the same.  The NRA

79

lacks knowledge or information sufficient to form a belief as to the truth or falsity of the remaining

allegations set forth in Paragraph 367 of the Complaint, and therefore denies them.

368.   To the extent that Paragraph 368 purports to characterize the Memorandum of

Understanding dated January 9, 2016, the NRA states that such documentspeaks for itself and

respectfully refers the Court to such document for its complete and accurate contents.  To the

extent that the allegations in Paragraph 368 are inconsistent with the referenced document, the

NRA denies them.

369.   The NRA lacks knowledge or information sufficient to form a belief as to the truth

or falsity of the allegations set forth in Paragraph 369 of the Complaint, and therefore denies them.

370.   To the extent that Paragraph 370 purports to characterize the referenced contract,

the NRA states that such document speaks for itself and respectfully refers the Court to such

document for its complete and accurate contents.  To the extent that the allegations in Paragraph

370 are inconsistent with the referenced document, the NRA denies them.  The NRA denies the

remaining allegations in Paragraph 370 of the Complaint.

371.   The NRA states that the referenced contract was executed in 2002 and predated the

existence of certain requirements referenced by the Complaint.  The NRA lacks knowledge or

information sufficient to form a belief as to the truth or falsity of the remaining allegations set

forth in Paragraph 371 of the Complaint, and therefore denies them.

372.   Paragraph 372 purports to characterize the Report of the Audit Committee dated

September 2016, the NRA states that such document speaks for itself.  The NRA respectfully

refers the Court to such document for its complete, accurate contents; to the extent that the

allegations in Paragraph 372 are inconsistent with the referenced document, the NRA denies

them.

80

373. The NRA denies the allegations set forth in Paragraph 373 of the Complaint.

374. Paragraph 374 purports to characterize the Report of the Audit Committee dated February 2019, the NRA states that such document speaks for itself. The NRA respectfully refers the Court to such document for its complete, accurate contents; to the extent that the allegations in Paragraph 374 are inconsistent with the referenced document, the NRA denies them. The NRA denies the remaining allegations set forth in Paragraph 374 of the Complaint.

375. The NRA admits, upon information and belief, that one of its former board members was a retired police officer from Iowa, served on the referenced committees, and was not re-nominated in 2020. The NRA lacks knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations set forth in Paragraph 375 of the Complaint, and therefore denies them.

376. To the extent that Paragraph 376 purports to characterize a contract the NRA states on information and belief that such contract speaks for itself and respectfully refers the Court to such document for its complete and accurate contents. To the extent that the allegations in Paragraph 376 are inconsistent with the referenced document, the NRA denies them. The NRA lacks knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations set forth in Paragraph 376 of the Complaint, and therefore denies them.

377. The NRA lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations set forth in Paragraph 377 of the Complaint, and therefore denies them.

378. The NRA lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations set forth in Paragraph 378 of the Complaint, and therefore denies them.

379. Paragraph 379 purports to characterize the notes or draft of minutes memorialized in connection with a September 2016 Audit Committee meeting. The NRA states that such

81

Case 21-30085-hdh11 Doc 307-2 Filed 03/06/21 Entered 03/06/21 05:43:57 Page 85 of
173

documents speak for themselves. The NRA respectfully refers the Court to such documents for their complete, accurate contents; to the extent that the allegations in Paragraph 379 are inconsistent with the referenced document, the NRA denies them. The NRA lacks knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations set forth in Paragraph 379 of the Complaint, and therefore denies them.

380. Paragraph 380 purports to characterize the Report of the Audit Committee dated January 2018, the NRA states that such document speaks for itself. The NRA respectfully refers the Court to such document for its complete, accurate contents; to the extent that the allegations in Paragraph 380 are inconsistent with the referenced document, the NRA denies them.

381. Upon information and belief, the NRA denies the allegations set forth in Paragraph 381 of the Complaint.

382. The NRA admits that, at certain relevant times, one of its board members received $4,000 per month for public speaking and consulting services. To the extent Paragraph 382 of the Complaint purports to describe and/or summarize the contents of the NRA's 2018 Form 990, the NRA states that such form speaks for itself, and respectfully refers the Court to such document for its complete, accurate contents. To the extent that the allegations in Paragraph 382 are inconsistent with the referenced document, the NRA denies them.

383. The NRA lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations set forth in Paragraph 383 of the Complaint, and therefore denies them.

384. Paragraph 384 purports to characterize the Report of the Audit Committee dated January11, 2018, the NRA states that such document speaks for itself. The NRA respectfully refers the Court to such document for its complete, accurate contents; to the extent that the allegations in Paragraph 384 are inconsistent with the referenced document, the NRA denies

82

them.  To the extent that the allegations in Paragraph 384 purport to characterize New York law, they constitute legal conclusions to which no response is required; to the extent a response is required, the NRA denies such allegations.  The NRA lacks knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations set forth in Paragraph 384 of the Complaint, and therefore denies them.

385.    To the extent Paragraph 385 purports to characterize an email chain dated May 15, 2019, the NRA states that such document speaks for itself.  The NRA respectfully refers the Court to such document for its complete, accurate contents; to the extent that the allegations in Paragraph 385 are inconsistent with the referenced document, the NRA denies them.

386.    To the extent that the allegations in Paragraph 386 purport to classify any NRA board member as a "lobbyist" pursuant to any statutory or regulatory scheme defining the same, they consist of legal conclusions to which no response is required; to the extent a response is required, the NRA denies such allegations.  Upon information and belief, the NRA admits the remaining allegations set forth in Paragraph 386 of the Complaint.

387.    The NRA admits upon information and belief that it compensated Board Member No. 4 for public speaking services during the referenced period.  The NRA lacks knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations set forth in Paragraph 387 of the Complaint, and therefore denies them.

388.    To the extent Paragraph 388 purports to characterize an email chain dated May 10, 2016, the NRA states that such document speaks for itself.  The NRA respectfully refers the Court to such document for its complete, accurate contents; to the extent that the allegations in Paragraph 388 are inconsistent with the referenced document, the NRA denies them.

83

389.    To the extent Paragraph 389 purports to characterize the Report of the Audit Committee dated September 2016, the NRA states that such document speaks for itself. The NRA respectfully refers the Court to such document for its complete, accurate contents; to the extent that the allegations in Paragraph 389 are inconsistent with the referenced document, the NRA denies them. The NRA lacks knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations set forth in Paragraph 389 of the Complaint, and therefore denies them.

390.    To the extent Paragraph 390 purports to characterize the Report of the Audit Committee dated January 11, 2018, the NRA states that such document speaks for itself. The NRA respectfully refers the Court to such document for its complete, accurate contents; to the extent that the allegations in Paragraph 390 are inconsistent with the referenced document, the NRA denies them. The NRA denies the remaining allegations set forth in Paragraph 390 of the Complaint.

391.    Upon information and belief, the NRA admits the allegations set forth in Paragraph 391 of the Complaint.

392.    To the extent Paragraph 392 purports to characterize the Report of the Audit Committee dated April 2019, the NRA states that such document speaks for itself. The NRA respectfully refers the Court to such document for its complete, accurate contents; to the extent that the allegations in Paragraph 392 are inconsistent with the referenced document, the NRA denies them.

393.    The NRA denies knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 393 of the Complaint, except admits, upon information and belief, that Board Member No. 5 is a past NRA President, has been paid at various times for

84

consulting services, and executed a 10-year contract for $220,000 annually. To the extent Paragraph 393 purports to characterize testimony elicited from Mr. LaPierre by the NYAG during the course of its investigation, the NRA states that such testimony was elicited subject to substantial COVID-19 precautions which could reasonably be expected to impede accurate transcription, including masking and socially-distant seating arrangements. The NRA further states that it repeatedly requested, and was repeatedly denied, the opportunity to identify and rectify errata in the NYAG's transcripts. Accordingly, the NRA lacks knowledge or information sufficient to form a belief as to the accuracy of allegations in Paragraph 393 purporting to characterize Mr. LaPierre's testimony, and on that basis denies such allegations. The NRA denies the remaining allegations set forth in Paragraph 393 of the Complaint.

394. The NRA admits that in 2018, the Audit Committee reviewed and ratified, following its execution, a contract with Board Member No. 5. The NRA further admits that LaPierre was a signatory to such contract, which was also acknowledged at the time of its execution by appropriate officers of the Board of Directors. The NRA further admits that it has made grants at relevant times to the United Sportsmen of Florida, but states that Board Member No. 5 did not participate in these grantmaking decisions. To the extent Paragraph 394 purports to characterize testimony elicited from Mr. LaPierre by the NYAG during the course of its investigation, the NRA states that such testimony was elicited subject to substantial COVID-19 precautions which could reasonably be expected to impede accurate transcription, including masking and socially-distant seating arrangements. The NRA further states that it repeatedly requested, and was repeatedly denied, the opportunity to identify and rectify errata in the NYAG's transcripts. Accordingly, the NRA lacks knowledge or information sufficient to form a belief as to the accuracy of allegations in Paragraph 394 purporting to characterize Mr. LaPierre's

85

testimony, and on that basis denies such allegations. The NRA denies the remaining allegations set forth in Paragraph 394 of the Complaint.

395. Paragraph 395 consists of legal conclusions to which no response is required; to the extent a response is required, the NRA denies such allegations.

396. Paragraph 396 consists of legal conclusions to which no response is required; to the extent a response is required, the NRA denies such allegations.

397. Paragraph 397 consists of legal conclusions to which no response is required; to the extent a response is required, the NRA denies such allegations.

398. Paragraph 398 consists of legal conclusions to which no response is required; to the extent a response is required, the NRA denies such allegations.

399. Paragraph 399 of the Complaint purports to characterize the NRA's bylaws, which speak for themselves. The NRA respectfully refers the Court to its bylaws for their complete, accurate contents; to the extent that the allegations in Paragraph 399 are inconsistent with the referenced document, the NRA denies them.

400. To the extent that Paragraph 400 purports to characterize NRA's Forms 990 filed during the referenced period, the NRA states that the Forms speak for themselves and respectfully refers the Court to such documents for their complete and accurate contents. To the extent that the allegations in Paragraph 400 are inconsistent with the referenced documents, the NRA denies them. The NRA denies the remaining allegations set forth in Paragraph 400 of the Complaint.

401. To the extent that the allegations in Paragraph 401 consist of legal conclusions regarding the "adequa[cy]" of compensation documentation pursuant to state or federal law, these legal conclusions require no response; to the extent a response is required, the NRA denies such allegations. The NRA denies the remaining allegations in Paragraph 401 of the Complaint.

86

402.   The NRA admits that it has hired executive compensation consultants from time to time, including in or about August 2017.  The NRA further admits that such consultant delivered a report in or about January 2018 which supported the compensation recommendations made by the OCC and adopted by the Board of Directors that year.  The NRA lacks knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations set forth in Paragraph 402 of the Complaint, and therefore denies them.

403.   The NRA admits that the OCC considered, and made recommendations to the Board regarding, Phillips' compensation in 2017.  The NRA lacks knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations set forth in Paragraph 403 of the Complaint, and therefore denies them.

404.   The NRA lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations set forth in Paragraph 404 of the Complaint, and therefore denies them.

405.   To the extent that Paragraph 405 purports to characterize the Report of Officers Compensation Committee dated September 7, 2017, the NRA states that the Report speaks for itself and respectfully refers the Court to such document for its complete and accurate contents. To the extent that the allegations in Paragraph 405 are inconsistent with the referenced documents, the NRA denies them.  The NRA denies the remaining allegations set forth in Paragraph 405 of the Complaint.

406.   The NRA admits the allegations set forth in the first sentence of Paragraph 406, and admits that Board minutes reflect that the Board adopted the OCC's recommendations.  The NRA denies the remaining allegations set forth in Paragraph 406 of the Complaint.

407.   The NRA denies the allegations set forth in Paragraph 407 of the Complaint.

408.   The NRA denies the allegations set forth in Paragraph 408 of the Complaint.

87

409.    The allegations in Paragraph 409 consist of legal conclusions which require no response; to the extent a response is required, the NRA denies such allegations.

410.    To the extent that the allegations in Paragraph 410 purport to characterize the NRA bylaws, the NRA states that its bylaws speak for themselves and respectfully refers the Court to the bylaws for their complete and accurate contents; to the extent that the allegations in Paragraph 410 are inconsistent with the referenced document, the NRA denies them.  The NRA denies the remaining allegations set forth in Paragraph 410 of the Complaint.

411.    The allegations in Paragraph 411 consist of legal conclusions which require no response; to the extent a response is required, the NRA denies such allegations. The NRA denies the remaining allegations set forth in Paragraph 411 of the Complaint.

412.    The NRA denies the allegations set forth in Paragraph 412 of the Complaint.

413.    The NRA lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations set forth in Paragraph 413 of the Complaint, and therefore denies them.

414.    The allegations in Paragraph 414 consist of legal conclusions which require no response; to the extent a response is required, the NRA denies such allegations.

415.    To the extent that the allegations in Paragraph 415 argue for particular tax treatment of particular expenditures, they constitute legal conclusions which require no response; to the extent a response is required, the NRA denies such allegations.  The NRA lacks knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations set forth in Paragraph 415 of the Complaint, and therefore denies them.

416.    The NRA admits that an employee formerly charged with processing certain expense reimbursements for Mr. LaPierre incurred an unexpected medical absence in recent years and that reimbursement of certain expenses was consequently delayed; the NRA states that the

88

financial downside of such delay has been borne by Mr. LaPierre, who continued to incur business expenses without expectation of timely reimbursement. The NRA denies the remaining allegations set forth in Paragraph 416 of the Complaint.

417. The NRA lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations set forth in Paragraph 417 of the Complaint, and therefore denies them.

418. The NRA denies the allegations set forth in Paragraph 418 of the Complaint.

419. The NRA states that it was formerly party to a post-employment contract with Mr. LaPierre which was terminated by mutual consent, and denies that it is currently party to any contract containing the terms described in Paragraph 419. To the extent Paragraph 419 purports to characterize testimony elicited from Mr. LaPierre by the NYAG during the course of its investigation, the NRA states that such testimony was elicited subject to substantial COVID-19 precautions which could reasonably be expected to impede accurate transcription, including masking and socially-distant seating arrangements. The NRA further states that it repeatedly requested, and was repeatedly denied, the opportunity to identify and rectify errata in the NYAG's transcripts. Accordingly, the NRA lacks knowledge or information sufficient to form a belief as to the accuracy of allegations in Paragraph 419 purporting to characterize Mr. LaPierre's testimony, and on that basis denies such allegations. The NRA denies the remaining allegations set forth in Paragraph 419 of the Complaint.

420. To the extent Paragraph 420 purports to characterize testimony elicited from Mr. LaPierre by the NYAG during the course of its investigation, the NRA states that such testimony was elicited subject to substantial COVID-19 precautions which could reasonably be expected to impede accurate transcription, including masking and socially-distant seating arrangements. The NRA further states that it repeatedly requested, and was repeatedly denied, the opportunity to

89

identify and rectify errata in the NYAG's transcripts.  Accordingly, the NRA lacks knowledge or information sufficient to form a belief as to the accuracy of allegations in Paragraph 420 purporting to characterize Mr. LaPierre's testimony, and on that basis denies such allegations. The NRA denies the remaining allegations set forth in Paragraph 420 of the Complaint.

421.    To the extent that Paragraph 421 purports to characterize a letter agreement dated March 16, 2015, the NRA states that the letter speaks for itself.  The NRA respectfully refers the Court to such letter for its complete and accurate contents; to the extent that the allegations in Paragraph 421 are inconsistent with the referenced document, the NRA denies them.  The NRA denies the remaining allegations set forth in Paragraph 421 of the Complaint.

422.    To the extent that Paragraph 422 purports to characterize a memorandum dated April 30, 2018, the NRA states that the memorandum speaks for itself.  The NRA respectfully refers the Court to such memorandum for its complete and accurate contents; to the extent that the allegations in Paragraph 422 are inconsistent with the referenced document, the NRA denies them.

423.    To the extent that Paragraph 423 purports to characterize a memorandum dated April 30, 2018, the NRA states that the memorandum speaks for itself.  The NRA respectfully refers the Court to such memorandum for its complete and accurate contents; to the extent that the allegations in Paragraph 423 are inconsistent with the referenced document, the NRA denies them.  The NRA states that it is not party to any contract containing the terms set forth in the referenced memorandum.  The NRA denies the remaining allegations set forth in Paragraph 423 of the Complaint.

424.    To the extent Paragraph 424 purports to characterize testimony elicited from Mr. LaPierre by the NYAG during the course of its investigation, the NRA states that such testimony

90

was elicited subject to substantial COVID-19 precautions which could reasonably be expected to impede accurate transcription, including masking and socially-distant seating arrangements. The NRA further states that it repeatedly requested, and was repeatedly denied, the opportunity to identify and rectify errata in the NYAG's transcripts. Accordingly, the NRA lacks knowledge or information sufficient to form a belief as to the accuracy of allegations in Paragraph 424 purporting to characterize Mr. LaPierre's testimony, and on that basis denies such allegations. The remaining allegations in Paragraph 424 consist of legal conclusions which require no response; to the extent a response is required, the NRA denies such allegations.

425.    The NRA denies the allegations set forth in Paragraph 425 of the Complaint.

426.    The NRA admits that during his tenure as an NRA executive and salaried officer, Phillips had an NRA-issued credit card. To the extent that the allegations in Paragraph 426 purport to argue for particular tax treatment of particular expenditures, they consist of legal conclusions which require no response; to the extent a response is required, the NRA denies such allegations. The NRA lacks knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations set forth in Paragraph 426 of the Complaint, and therefore denies them.

427.    The allegations in Paragraph 427 consist of legal conclusions which require no response; to the extent a response is required, the NRA denies such allegations.

428.    To the extent that the allegations in Paragraph 428 purport to characterize the NRA bylaws, the NRA states that its bylaws speak for themselves and respectfully refers the Court to the bylaws for their complete and accurate contents; to the extent that the allegations in Paragraph 428 are inconsistent with the referenced document, the NRA denies them.

91

429.   The NRA admits that Mr. Powell was paid the referenced salaries during or about the referenced periods, and further admits upon information and belief that Mr. Powell received additional undisclosed, unauthorized benefits.   The NRA lacks knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations set forth in Paragraph 429 of the Complaint, and therefore denies them.

430.   To the extent that Paragraph 430 purports to characterize NRA's Forms 990 filed in 2017 and 2018, the NRA states that the Forms speak for themselves and respectfully refers the Court to such documents for their complete and accurate contents.   To the extent that the allegations in Paragraph 430 are inconsistent with the referenced documents, the NRA denies them.   The NRA lacks knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations set forth in Paragraph 430 of the Complaint, and therefore denies them.

431.   The allegations in Paragraph 431 consist of legal conclusions which require no response; to the extent a response is required, the NRA denies such allegations.

432.   To the extent that Paragraph 432 purports to characterize NRA's Forms 990 and CHAR500, the NRA states that the documents speak for themselves and respectfully refers the Court to such documents for their complete and accurate contents.   To the extent that the allegations in Paragraph 432 are inconsistent with the referenced documents, the NRA denies them.

433.   To the extent that Paragraph 433 purports to characterize NRA's Forms 990 filed during the referenced period, the NRA states that the Forms speak for themselves and respectfully refers the Court to such documents for their complete and accurate contents.   To the extent that

92

the allegations in Paragraph 433 are inconsistent with the referenced documents, the NRA denies them.

434.    The allegations in Paragraph 434 consist of legal conclusions which require no response; to the extent a response is required, the NRA denies such allegations.

435.    To the extent that Paragraph 435 purports to characterize NRA's Forms 990 filed in 2017 and 2018, the NRA states that the Forms speak for themselves and respectfully refers the Court to such documents for their complete and accurate contents.  To the extent that the allegations in Paragraph 435 are inconsistent with the referenced documents, the NRA denies them.

436.    The NRA admits that Mr. Powell failed to provide sufficient justification for certain expenses, and states that the NRA terminated Mr. Powell based on this and other causes.  The remaining allegations in Paragraph 436 consist of legal conclusions which require no response; to the extent a response is required, the NRA denies such allegations.

437.    To the extent that Paragraph 437 purports to characterize NRA's Forms 990 filed during the referenced period, the NRA states that the Forms speak for themselves and respectfully refers the Court to such documents for their complete and accurate contents.  To the extent that the allegations in Paragraph 437 are inconsistent with the referenced documents, the NRA denies them.

438.    To the extent that Paragraph 438 purports to characterize NRA's Forms 990 filed during the referenced period, the NRA states that the Forms speak for themselves and respectfully refers the Court to such documents for their complete and accurate contents.  To the extent that the allegations in Paragraph 438 are inconsistent with the referenced documents, the NRA denies them.

93

Case 21-30085-hdh11 Doc 307-2 Filed 03/06/21 Entered 03/06/21 05:43:57 Page 97 of 173

439.    The NRA denies the allegations set forth in Paragraph 439 of the Complaint.

440.    To the extent that Paragraph 440 purports to characterize NRA's Forms 990 filed during the referenced period, the NRA states that the Forms speak for themselves and respectfully refers the Court to such documents for their complete and accurate contents.  To the extent that the allegations in Paragraph 440 are inconsistent with the referenced documents, the NRA denies them.  To the extent that the allegations in Paragraph 440 purport to assess the legal sufficiency or implications of the NRA's tax filings, such allegations constitute legal conclusions to which no response is required; to the extent a response is required, the NRA denies such allegations

441.    To the extent that Paragraph 441 purports to characterize NRA's Forms 990 filed during the referenced period, the NRA states that the Forms speak for themselves and respectfully refers the Court to such documents for their complete and accurate contents.  To the extent that the allegations in Paragraph 441 are inconsistent with the referenced documents, the NRA denies them. To the extent that the allegations in Paragraph 441 purport to assess the legal sufficiency or implications of the NRA's tax filings, such allegations constitute legal conclusions to which no response is required; to the extent a response is required, the NRA denies such allegations.

442.    The allegations in Paragraph 442 consist of legal conclusions which require no response; to the extent a response is required, the NRA denies such allegations.

443.    To the extent that Paragraph 443 purports to characterize NRA's Forms 990 filed during the referenced period, the NRA states that the Forms speak for themselves and respectfully refers the Court to such documents for their complete and accurate contents.  To the extent that the allegations in Paragraph 443 are inconsistent with the referenced documents, the NRA denies them.

94

Case 21-30085-hdh11 Doc 307-2 Filed 03/06/21    Entered 03/06/21 05:43:57    Page 98 of
173

444.    The NRA admits on information and belief that Mr. LaPierre had discussions with

Lt. Col. Oliver North in spring 2018 concerning North's potential candidacy for NRA President.

The NRA lacks knowledge or information sufficient to form a belief as to the truth or falsity of

the remaining allegations set forth in Paragraph 444 of the Complaint, and therefore denies them.

445.    To the extent that the allegations in Paragraph 445 purport to characterize the NRA

bylaws, the NRA states that its bylaws speak for themselves and respectfully refers the Court to

the bylaws for their complete and accurate contents; to the extent that the allegations in Paragraph

445 are inconsistent with the referenced document, the NRA denies them.   The NRA lacks

knowledge or information sufficient to form a belief as to the truth or falsity of the remaining

allegations set forth in Paragraph 445 of the Complaint, and therefore denies them.

446.    To the extent that the allegations in Paragraph 446 purport to excerpt or characterize

deposition testimony, the NRA respectfully refers the Court to the transcript of such testimony

for its complete and accurate contents; to the extent that the allegations in Paragraph 446 are

inconsistent with the referenced document, the NRA denies them.  The NRA lacks knowledge or

information sufficient to form a belief as to the truth or falsity of the remaining allegations set

forth in Paragraph 446 of the Complaint, and therefore denies them.

447.    To the extent that Paragraph 447 purports to characterize a fax received on April

22, 2018, the NRA states that the fax speaks for itself and respectfully refers the Court to such

fax for its complete and accurate contents.   To the extent that the allegations in Paragraph 447

purport to excerpt or characterize deposition testimony, the NRA respectfully refers the Court to

the transcript of such testimony for its complete and accurate contents; to the extent that the

allegations in Paragraph 447 are inconsistent with the referenced document, the NRA denies

them.   The NRA lacks knowledge or information sufficient to form a belief as to the truth or

95

falsity of the remaining allegations set forth in Paragraph 447 of the Complaint, and therefore denies them.

448. The NRA admits that on May 6, 2018, it executed an amended Services Agreement with Ackerman and Mercury Group, Inc.; to the extent that the allegations in Paragraph 448 purport to describe or summarize the Services Agreement, the NRA states that the Agreement speaks for itself and respectfully refers the Court to such Agreement for its complete and accurate contents. To the extent that the allegations in Paragraph 448 are inconsistent with the referenced document, the NRA denies them. The NRA denies the remaining allegations in Paragraph 448 of the Complaint.

449. Upon information and belief, the NRA admits that North entered into an Employment Agreement with Ackerman on or about May 15, 2018. To the extent that Paragraph 449 purports to characterize the Employment Agreement, the NRA states that the Agreement speaks for itself and respectfully refers the Court to such Agreement for its complete and accurate contents. To the extent that the allegations in Paragraph 449 are inconsistent with the referenced document, the NRA denies them. The NRA lacks knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations set forth in Paragraph 449 of the Complaint, and therefore denies them.

450. The NRA denies the allegations set forth in Paragraph 450 of the Complaint.

451. The NRA admits the allegations set forth in the first sentence of Paragraph 451 of the Complaint. The NRA lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations set forth in the second sentence of Paragraph 451, and therefore denies them. The NRA denies the remaining allegations in Paragraph 451 of the Complaint.

96

452.    The NRA lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations set forth in Paragraph 452 of the Complaint, and therefore denies them.

453.    The NRA lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations set forth in Paragraph 453 of the Complaint, and therefore denies them.

454.    The NRA denies the allegations set forth in Paragraph 454 of the Complaint.

455.    The NRA admits that the Brewer firm was initially retained in March 2018, and that its work included issues involving NRA affinity partners.  To the extent that the allegations in Paragraph 455 purport to require the NRA to admit or deny the content of legal advice sought by counsel, work performed by counsel, or other privileged matter, the NRA declines to respond to such allegations on grounds of attorney-client privilege and the work product doctrine.  To the extent a response is required, the NRA denies such allegations.

456.    The NRA denies that it failed to consider other firms as alternatives to the Brewer firm in 2018, and states that it considered, and from time to time employed, several competitor firms.  To the extent that the allegations in Paragraph 456 purport to require the NRA to admit or deny the content of legal advice sought by counsel, work performed by counsel, or other privileged matter, the NRA declines to respond to such allegations on grounds of attorney-client privilege and the work product doctrine.  To the extent a response is required, the NRA denies such allegations.  The NRA denies the remaining allegations set forth in Paragraph 456 of the Complaint.

457.    The NRA admits that Mr. Frazer negotiated an engagement letter with the Brewer firm and prepared a business case analysis in connection with the same. To the extent that Paragraph 457 purports to characterize the business case analysis, the NRA states that the document speaks for itself and respectfully refers the Court to such documents for its complete

97

and accurate contents. To the extent that the allegations in Paragraph 457 are inconsistent with the referenced document, the NRA denies them. The NRA further admits that Mr. Frazer is one of several individuals who has been responsible for reviewing and approving payment of the Brewer firm's invoices at relevant times. The NRA denies the remaining allegations set forth in Paragraph 457 of the Complaint.

458.   The NRA admits that the Audit Committee memorialized, during a meeting on March 8, 2019, the matter referenced in Paragraph 458, but denies that any "Board resolution" was adopted to such effect. The NRA further denies that any NRA policy "required written approval from the President and a Vice President" for the retention of counsel in 2018. The NRA states that the Audit Committee resolved on April 28, 2019, that the NRA's retention of the Brewer firm "was duly authorized" and that a copy of the foregoing resolution was provided by the NRA to the NYAG more than a year before the NYAG filed this lawsuit. The NRA lacks knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations set forth in Paragraph 458 of the Complaint, and therefore denies them.

459.   The NRA denies the allegations in Paragraph 459 of the Complaint.

460.   The allegations in Paragraph 460 purport to describe and summarize letters sent by North to named recipients in March 2019; the NRA respectfully refers the Court to such letters for their complete and accurate contents. To the extent that the allegations in Paragraph 460 are inconsistent with the referenced documents, the NRA denies such allegations.

461.   The allegations in Paragraph 461 purport to describe and summarize letters and memoranda sent by North to named recipients in March 2019; the NRA respectfully refers the Court to such letters for their complete and accurate contents. To the extent that the allegations in Paragraph 461 are inconsistent with the referenced documents, the NRA denies such allegations.

98

462. The NRA admits that an outside law firm was hired to review the Brewer firm's engagement in March 2019 and that the firm determined the engagement had been duly authorized. To the extent that the allegations in Paragraph 462 purport to require the NRA to admit or deny the content of additional legal advice sought from or work performed by the above-referenced law firm, the NRA declines to respond to such allegations on grounds of attorney-client privilege and the work product doctrine. To the extent a response is required, the NRA denies such allegations.

463. The NRA denies the allegations set forth in Paragraph 463 of the Complaint.

464. With respect to allegations purporting to characterize testimony elicited by the NYAG in the course of its investigation, the NRA states that it repeatedly requested, and was repeatedly denied, the opportunity to identify and rectify errata in the NYAG's transcripts, and further states that many witnesses testified subject to COVID-19 precautions such as masking, social distancing, and/or videoconference which would be reasonably expected to diminish the accuracy of transcripts. Accordingly, the NRA lacks knowledge or information sufficient to form a belief as to the truth or falsity of allegations in Paragraph 464 purporting to recount witnesses' testimony, and therefore denies such allegations. The NRA lacks knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations set forth in Paragraph 464 of the Complaint, and therefore denies them.

465. The NRA admits that Mr. LaPierre raised concerns about North's relationship with Ackerman in 2018. The NRA states that others, including the employee whistleblowers referenced throughout the Complaint, raised similar concerns. The NRA denies the remaining allegations set forth in Paragraph 465 of the Complaint.

99

466.   The NRA admits that Mr. LaPierre instructed North to cease and desist from attempts to interfere with certain work by the Brewer firm—including work related to North's employer, Ackerman—that gave rise to potential conflicts of interest for North (such legal matters, the "Conflict Matters").  The NRA denies that it prevented North from accessing Brewer invoices unrelated to the Conflict Matters, and states that North received detailed briefings from the Brewer firm on matters apart from the Conflict Matters.  To the extent that the allegations in Paragraph 461 purport to characterize letters sent by LaPierre to North in March or April 2019, the NRA respectfully refers the Court to such letters for their complete and accurate contents. To the extent that the allegations in Paragraph 466 are inconsistent with the referenced documents, the NRA denies such allegations.

467.   To the extent that the allegations in Paragraph 467 purport to characterize letters sent by LaPierre to North in February 2019, the NRA respectfully refers the Court to such letters for their complete and accurate contents. To the extent that the allegations in Paragraph 467 are inconsistent with the referenced documents, the NRA denies such allegations.

468.   The NRA admits the allegations in the first sentence of Paragraph 468 of the Complaint.  With respect to allegations purporting to characterize testimony elicited by the NYAG in the course of its investigation, the NRA states that it repeatedly requested, and was repeatedly denied, the opportunity to identify and rectify errata in the NYAG's transcripts, and further states that many witnesses testified subject to COVID-19 precautions such as masking, social distancing, and/or videoconference which would be reasonably expected to diminish the accuracy of transcripts.  Accordingly, the NRA lacks knowledge or information sufficient to form a belief as to the truth or falsity of allegations in Paragraph 468 purporting to recount witnesses' testimony, and therefore denies such allegations.

100

469.    To the extent that the allegations in Paragraph 469 purport to summarize or describe a letter dated April 25, 2019, the NRA respectfully refers the Court to such letter for its complete and accurate contents. To the extent that the allegations in Paragraph 469 are inconsistent with the referenced document, the NRA denies such allegations.

470.    To the extent that the allegations in Paragraph 470 purport to summarize or describe the referenced letter, the NRA respectfully refers the Court to such letter for its complete and accurate contents. To the extent that the allegations in Paragraph 470 are inconsistent with the referenced document, the NRA denies such allegations.

471.    The NRA admits that as of the date of this Answer North did not resign as an NRA member or NRA director. The NRA further admits that its Bylaws contemplate a process for involuntary termination from membership for cause. The NRA further admits that, in response to a complaint by an NRA member in good standing seeking the expulsion of North from the NRA membership pursuant to Article III Section 11 of the NRA's Bylaws, the Ethics Committee of the NRA Board reviewed the complainant's allegations and determined that they would warrant North's expulsion if proved or uncontested. The NRA further admits that North through counsel was then advised that at the hearing, contemplated by its Bylaws, the complainant NRA member would be permitted to argue for North's expulsion from the NRA and North would be permitted to defend himself. The NRA further admits that North originally requested to have a hearing but later alleged that the hearing would violate New York law and that the NRA then sought, inter alia, a declaratory judgment otherwise, and that such litigation is ongoing but presently stayed. In that litigation, the NRA also seeks damages from North for violations of his fiduciary and statutory duties to the NRA and for his conspiracy with others to violate such duties. The NRA further admits that the NRA asserted these claims against North based on his

101

obstructive behavior to protect a lucrative contract with Ackerman and impede the NRA's compliance efforts and by being paid millions of dollars for making a documentary series he and Ackerman simply failed to deliver. In the litigation, the NRA also seeks a declaratory judgment that because he failed to resign from Ackerman in or around June 2019, he forfeited his position on the NRA Board. The NRA denies the remaining allegations in Paragraph 471 of the Complaint, including the allegation that the disciplinary proceeding was "undertaken in retaliation for [North's alleged] exercise of fiduciary responsibilities" or that the NRA violated its whistleblower policy.

472. To the extent that the allegations in Paragraph 472 purport to summarize or describe a letter dated July 22, 2019, the NRA respectfully refers the Court to such letter for its complete and accurate contents. To the extent that the allegations in Paragraph 472 are inconsistent with the referenced document, the NRA denies such allegations.

473. To the extent that the allegations in Paragraph 473 purport to summarize or describe a letter sent on August 1, 2019 by three former Board members to the NRA, the NRA respectfully refers the Court to such letter for its complete and accurate contents. To the extent that the allegations in Paragraph 473 are inconsistent with the referenced document, the NRA denies such allegations.

474. To the extent that Paragraph 474 purports to characterize the contents "correspondence" or "social media posts" by outside directors, the NRA lacks knowledge or information sufficient to form a belief as to the truth or falsity of such allegations, and therefore denies them. The NRA admits that during 2019, not every director received his or her desired committee assignment(s). The NRA denies the remaining allegations set forth in Paragraph 474 of the Complaint.

102

475.    The NRA admits the allegations set forth in Paragraph 475 of the Complaint.

476.    The NRA denies the allegations set forth in Paragraph 476 of the Complaint.

477.    The allegations in Paragraph 477 of the Complaint consist of legal conclusions which require no response; to the extent a response is required, the NRA denies such allegations.

478.    To the extent that the allegations in Paragraph 478 purport to summarize or describe the Mission Statement of the NRA Audit Committee, the NRA respectfully refers the Court to the Mission Statement for its complete and accurate contents. To the extent that the allegations in Paragraph 478 are inconsistent with the referenced document, the NRA denies such allegations.

479.    With respect to allegations in Paragraph 479 of the Complaint purporting to characterize testimony elicited by the NYAG in the course of its investigation, the NRA states that it repeatedly requested, and was repeatedly denied, the opportunity to identify and rectify errata in the NYAG's transcripts, and further states that many witnesses testified subject to COVID-19 precautions such as masking, social distancing, and/or videoconference which would be reasonably expected to diminish the accuracy of transcripts. Accordingly, the NRA lacks knowledge or information sufficient to form a belief as to the truth or falsity of allegations in Paragraph 479 purporting to recount witnesses' testimony, and therefore denies such allegations.

480.    With respect to allegations in Paragraph 480 purporting to characterize testimony elicited by the NYAG in the course of its investigation, the NRA states that it repeatedly requested, and was repeatedly denied, the opportunity to identify and rectify errata in the NYAG's transcripts, and further states that many witnesses testified subject to COVID-19 precautions such as masking, social distancing, and/or videoconference which would be reasonably expected to diminish the accuracy of transcripts. Accordingly, the NRA lacks knowledge or information sufficient to form a belief as to the truth or falsity of allegations purporting to recount witnesses'

103

testimony, and therefore denies such allegations in paragraph 480.  The NRA denies the remaining allegations set forth in Paragraph 480 of the Complaint.

481.   With respect to allegations in Paragraph 481 of the Complaint purporting to characterize testimony elicited by the NYAG in the course of its investigation, the NRA states that it repeatedly requested, and was repeatedly denied, the opportunity to identify and rectify errata in the NYAG's transcripts, and further states that many witnesses testified subject to COVID-19 precautions such as masking, social distancing, and/or videoconference which would be reasonably expected to diminish the accuracy of transcripts.  Accordingly, the NRA lacks knowledge or information sufficient to form a belief as to the truth or falsity of allegations in Paragraph 481 purporting to recount witnesses' testimony, and therefore denies such allegations.

482.   The NRA denies the allegations set forth in Paragraph 482 of the Complaint.

483.   With respect to allegations in Paragraph 483 of the Complaint purporting to characterize testimony elicited by the NYAG in the course of its investigation, the NRA states that it repeatedly requested, and was repeatedly denied, the opportunity to identify and rectify errata in the NYAG's transcripts, and further states that many witnesses testified subject to COVID-19 precautions such as masking, social distancing, and/or videoconference which would be reasonably expected to diminish the accuracy of transcripts.  Accordingly, the NRA lacks knowledge or information sufficient to form a belief as to the truth or falsity of allegations in Paragraph 483 purporting to recount witnesses' testimony, and therefore denies such allegations.

484.   The allegations in Paragraph 484 of the Complaint consist of legal conclusions which require no response; to the extent a response is required, the NRA denies such allegations.

485.   The allegations in Paragraph 485 of the Complaint purport to describe and/or summarize the contents of the Statement of Corporate Ethics, which speaks for itself. The NRA

respectfully refers the Court to the Statement for its complete, accurate contents; to the extent that the allegations in Paragraph 485 are inconsistent with the referenced document, the NRA denies them.

486.   The allegations in Paragraph 486 of the Complaint consist of legal conclusions which require no response; to the extent a response is required, the NRA denies such allegations. The NRA denies the remaining allegations set forth in Paragraph 486 of the Complaint.

487.   With respect to allegations in paragraph 487 purporting to characterize testimony elicited by the NYAG in the course of its investigation, the NRA states that it repeatedly requested, and was repeatedly denied, the opportunity to identify and rectify errata in the NYAG's transcripts, and further states that many witnesses testified subject to COVID-19 precautions such as masking, social distancing, and/or videoconference which would be reasonably expected to diminish the accuracy of transcripts.  Accordingly, the NRA lacks knowledge or information sufficient to form a belief as to the truth or falsity of allegations in Paragraph 487 purporting to recount witnesses' testimony, and therefore denies such allegations.  The NRA denies the remaining allegations set forth in Paragraph 487 of the Complaint.

488.   The NRA admits that a group of employee whistleblowers compiled a document titled "List of Top Concerns for the Audit Committee" which they presented to the Audit Committee in July 2018.  To the extent that Paragraph 488 purports to characterize the referenced memorandum, the NRA states that the memorandum speaks for itself.  The NRA respectfully refers the Court to such document for its complete and accurate contents; to the extent that the allegations in Paragraph 488 are inconsistent with the referenced document, the NRA denies them.  The NRA denies the remaining allegations set forth in Paragraph 488 of the Complaint.

105

489.   The NRA admits that it regards the referenced employees as whistleblowers who raised their concerns with the Audit Committee pursuant to the NRA whistleblower policy.  With respect to allegations purporting to characterize testimony elicited by the NYAG in the course of its investigation, the NRA states that it repeatedly requested, and was repeatedly denied, the opportunity to identify and rectify errata in the NYAG's transcripts, and further states that many witnesses testified subject to COVID-19 precautions such as masking, social distancing, and/or videoconference which would be reasonably expected to diminish the accuracy of transcripts. Accordingly, the NRA lacks knowledge or information sufficient to form a belief as to the truth or falsity of allegations in Paragraph 489 purporting to recount witnesses' testimony, and therefore denies such allegations.  The NRA denies that the meeting of the Audit Committee of the NRA Board of Directors which occurred on July 30, 2018, constituted or was denominated as an "emergency" meeting.  The NRA admits the remaining allegations set forth in Paragraph 489 of the Complaint.

490.   With respect to allegations in Paragraph 490 of the Complaint purporting to characterize testimony elicited by the NYAG in the course of its investigation, the NRA states that it repeatedly requested, and was repeatedly denied, the opportunity to identify and rectify errata in the NYAG's transcripts, and further states that many witnesses testified subject to COVID-19 precautions such as masking, social distancing, and/or videoconference which would be reasonably expected to diminish the accuracy of transcripts.  Accordingly, the NRA lacks knowledge or information sufficient to form a belief as to the truth or falsity of allegations in paragraph 490 purporting to recount witnesses' testimony, and therefore denies such allegations. The NRA states the Audit Committee's meeting ran several hours longer than expected.  The NRA states on information and belief that the Audit Committee chair was aware serious

106

FILED: NEW YORK COUNTY CLERK 02/23/2021 11:14 PM
NYSCEF DOC. NO. 230
INDEX NO. 451625/2020
RECEIVED NYSCEF: 02/23/2021

Case 21-30085-hdh11 Doc 307-2 Filed 03/06/21 Entered 03/06/21 05:43:57 Page 110 of
173

whistleblower concerns would be, and were, raised at the meeting, and dedicated substantial time and attention to investigating and addressing them.

491. To the extent that Paragraph 491 purports to characterize the content of a personal statement, the NRA states that the statement speaks for itself. The NRA respectfully refers the Court to such document for its complete and accurate contents; to the extent that the allegations in Paragraph 491 are inconsistent with the referenced document, the NRA denies them. The NRA values the whistleblower for her diligence and courage, and states that she subsequently received a significant promotion.

492. To the extent that Paragraph 492 purports to characterize the Report of the Audit Committee dated September 2018, the NRA states that such document speaks for itself. The NRA respectfully refers the Court to such document for its complete, accurate contents; to the extent that the allegations in Paragraph 492 are inconsistent with the referenced document, the NRA denies them. The NRA admits that certain previous Audit Committee reports contained the notation "there were no instances of whistleblowing reported," and that no such annotation appeared with respect to the July 30, 2018 meeting, wherein whistleblowing occurred. The NRA denies the remaining allegations set forth in Paragraph 492 of the Complaint.

493. The NRA denies the allegations set forth in Paragraph 493 of the Complaint.

494. With respect to allegations purporting to characterize testimony elicited by the NYAG in the course of its investigation, the NRA states that it repeatedly requested, and was repeatedly denied, the opportunity to identify and rectify errata in the NYAG's transcripts, and further states that many witnesses testified subject to COVID-19 precautions such as masking, social distancing, and/or videoconference which would be reasonably expected to diminish the accuracy of transcripts. Accordingly, the NRA lacks knowledge or information sufficient to form

107

a belief as to the truth or falsity of allegations in Paragraph 494 purporting to recount witnesses'

testimony, and therefore denies such allegations. To the extent that Paragraph 494 alleges any

intentional or knowing inaccuracy in the Report of the Audit Committee documenting the

Committee's July 30, 2018, meeting, the NRA denies such allegations. The NRA states that RSM

met repeatedly with the Audit Committee during the third quarter of 2018 in advance of the filing

of the NRA's 2017 Form 990, and states that attendee notes from the referenced meeting

specifically note RSM's presence. The NRA states on information and belief that if RSM was

not in attendance, any erroneous reference to RSM's attendance was unintentional. The NRA

lacks knowledge or information sufficient to form a belief as to the truth or falsity of the remaining

allegations set forth in Paragraph 494 of the Complaint, and therefore denies them.

495.   The NRA admits that, on information and belief, RSM corresponded with and

interviewed Audit Committee members and finance staff, including multiple NRA

Whistleblowers, during 2018. The NRA further admits that certain NRA staff were well aware of

the whistleblowers' concerns. With respect to allegations in Paragraph 495 concerning RSM's

work papers, the NRA lacks information sufficient to form a belief as to the truth or falsity of

such allegations, and therefore denies them. The NRA denies the remaining allegations set forth

in Paragraph 495 of the Complaint.

496.   The NRA denies the allegations set forth in Paragraph 496 of the Complaint.

497.   With respect to allegations in Paragraph 497 purporting to characterize testimony

elicited by the NYAG in the course of its investigation, the NRA states that it repeatedly

requested, and was repeatedly denied, the opportunity to identify and rectify errata in the NYAG's

transcripts, and further states that many witnesses testified subject to COVID-19 precautions such

as masking, social distancing, and/or videoconference which would be reasonably expected to

108

diminish the accuracy of transcripts. Accordingly, the NRA lacks knowledge or information sufficient to form a belief as to the truth or falsity of allegations in Paragraph 497 purporting to recount witnesses' testimony, and therefore denies such allegations. To the extent that the allegations in Paragraph 497 purport to require the NRA to admit or deny the content of legal advice sought by counsel, work performed by counsel, or other privileged matter, the NRA declines to respond to such allegations on grounds of attorney-client privilege and the work product doctrine. To the extent a response is required, the NRA denies such allegations. The NRA denies the remaining allegations set forth in Paragraph 497 of the Complaint.

498. The NRA denies the allegations set forth in Paragraph 498 of the Complaint.

499. To the extent Paragraph 499 purports to describe and/or summarize the contents of the NRA Conflict of Interest and Related Party Transaction Policy, the NRA states that the Policy speaks for itself, and respectfully refers the Court to such document for its complete, accurate contents. To the extent that the allegations in Paragraph 499 are inconsistent with the referenced document, the NRA denies them.

500. To the extent Paragraph 500 purports to describe and/or summarize the contents of the NRA Conflict of Interest and Related Party Transaction Policy, the NRA states that the Policy speaks for itself, and respectfully refers the Court to such document for its complete, accurate contents. To the extent that the allegations in Paragraph 500 are inconsistent with the referenced document, the NRA denies them.

501. To the extent Paragraph 501 purports to describe and/or summarize the contents of the NRA Conflict of Interest and Related Party Transaction Policy, the NRA states that the Policy speaks for itself, and respectfully refers the Court to such document for its complete, accurate contents. To the extent that the allegations in Paragraph 501 are inconsistent with the referenced

109

document, the NRA denies them.  To the extent that the allegations in Paragraph 501 purport to characterize New York law, they constitute legal conclusions to which no response is required; to the extent a response is required, the NRA denies such allegations.

502.  To the extent Paragraph 502 purports to describe and/or summarize the contents of the NRA Conflict of Interest and Related Party Transaction Policy, the NRA states that the Policy speaks for itself, and respectfully refers the Court to such document for its complete, accurate contents.  To the extent that the allegations in Paragraph 502 are inconsistent with the referenced document, the NRA denies them.  To the extent that the allegations in Paragraph 502 purport to characterize New York law, they constitute legal conclusions to which no response is required; to the extent a response is required, the NRA denies such allegations.

503.  The allegations in Paragraph 503 of the Complaint consist of legal conclusions which require no response; to the extent a response is required, the NRA denies such allegations.

504.  The NRA denies the allegations set forth in Paragraph 504 of the Complaint.

505.  The NRA admits that in September 2016, the Audit Committee reviewed transactions in approximately the designated amounts.  The NRA lacks knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations set forth in Paragraph 505 of the Complaint, and therefore denies them.

506.  To the extent that Paragraph 506 purports to characterize the Report of the Audit Committee dated September 2016, the NRA states that such document speaks for itself.  The NRA respectfully refers the Court to such document for its complete, accurate contents; to the extent that the allegations in Paragraph 506 are inconsistent with the referenced document, the NRA denies them.  The NRA lacks knowledge or information sufficient to form a belief as to the

110

truth or falsity of the remaining allegations set forth in Paragraph 506 of the Complaint, and therefore denies them.

507.    The NRA admits that during 2017, the Audit Committee reviewed and ratified transactions in approximately the designated amounts.  The NRA lacks knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations set forth in Paragraph 507 of the Complaint, and therefore denies them.

508.    To the extent that Paragraph 508 purports to characterize the Report of the Audit Committee dated September 2018, the NRA states that such document speaks for itself.  The NRA respectfully refers the Court to such document for its complete, accurate contents; to the extent that the allegations in Paragraph 508 are inconsistent with the referenced document, the NRA denies them.

509.    To the extent that Paragraph 509 purports to characterize the Report of the Audit Committee dated September 2018, the NRA states that such document speaks for itself.  The NRA respectfully refers the Court to such document for its complete, accurate contents; to the extent that the allegations in Paragraph 509 are inconsistent with the referenced document, the NRA denies them.  The NRA denies the remaining allegations set forth in Paragraph 509 of the Complaint.

510.    To the extent that Paragraph 510 purports to characterize the Report of the Audit Committee dated September 2018, the NRA states that such document speaks for itself.  The NRA respectfully refers the Court to such document for its complete, accurate contents; to the extent that the allegations in Paragraph 510 are inconsistent with the referenced document, the NRA denies them.

111

511.   The NRA admits that the Audit Committee did not review a copy of the North-Ackerman contract prior to its execution.  To the extent that the allegations in Paragraph 511 purport to characterize the requirements of New York law, they constitute legal conclusions to which no response is required; to the extent a response is required, the NRA denies such allegations.   The NRA denies the remaining allegations set forth in Paragraph 511 of the Complaint.

512.   The NRA admits that the Audit Committee reviewed what it believed to be a summary of the contract's material terms. With respect to allegations purporting to characterize testimony elicited by the NYAG in the course of its investigation, the NRA states that it repeatedly requested, and was repeatedly denied, the opportunity to identify and rectify errata in the NYAG's transcripts, and further states that many witnesses testified subject to COVID-19 precautions such as masking, social distancing, and/or videoconference which would be reasonably expected to diminish the accuracy of transcripts.  Accordingly, the NRA lacks knowledge or information sufficient to form a belief as to the truth or falsity of allegations in Paragraph 512 purporting to recount witnesses' testimony, and therefore denies such allegations.   The NRA denies the remaining allegations set forth in Paragraph 512 of the Complaint.

513.   To the extent that Paragraph 513 purports to characterize the Report of the Audit Committee dated September 2018, the NRA states that such document speaks for itself.  The NRA respectfully refers the Court to such document for its complete, accurate contents; to the extent that the allegations in Paragraph 513 are inconsistent with the referenced document, the NRA denies them.  With respect to allegations purporting to characterize testimony elicited by the NYAG in the course of its investigation, the NRA states that it repeatedly requested, and was repeatedly denied, the opportunity to identify and rectify errata in the NYAG's transcripts, and

112

further states that many witnesses testified subject to COVID-19 precautions such as masking, social distancing, and/or videoconference which would be reasonably expected to diminish the accuracy of transcripts. Accordingly, the NRA lacks knowledge or information sufficient to form a belief as to the truth or falsity of allegations in Paragraph 513 purporting to recount witnesses' testimony, and therefore denies such allegations.

514. The NRA admits upon information and belief that Ackerman ultimately invoiced the NRA for the entire cost of North's employment contract, including salary, benefits, and perquisites, irrespective or whether North actually filmed the video documentary series contemplated by the purported summary of material terms which the Audit Committee reviewed. The NRA states that this is a subject of litigation between the NRA and Ackerman. The NRA denies the remaining allegations set forth in Paragraph 514 of the Complaint.

515. To the extent that Paragraph 515 purports to characterize the Report of the Audit Committee dated September 2018, the NRA states that such document speaks for itself. The NRA respectfully refers the Court to such document for its complete, accurate contents; to the extent that the allegations in Paragraph 515 are inconsistent with the referenced document, the NRA denies them. The NRA denies the remaining allegations set forth in Paragraph 515 of the Complaint.

516. To the extent that Paragraph 516 purports to characterize the Reports of the Audit Committee dated April 28, 2019 and May 30, 2019, the NRA states that the Reports speak for themselves. The NRA respectfully refers the Court to such documents for their complete, accurate contents; to the extent that the allegations in Paragraph 516 are inconsistent with the referenced document, the NRA denies them. The NRA denies the remaining allegations set forth in Paragraph 516 of the Complaint.

113

517.    The NRA denies the allegations set forth in Paragraph 517 of the Complaint.

518.    The allegations in Paragraph 518 of the Complaint consist of legal conclusions which require no response; to the extent a response is required, the NRA denies such allegations.

519.    The allegations in Paragraph 519 of the Complaint purport to describe and/or summarize the contents of Audit Committee Charter, which speaks for itself. The NRA respectfully refers the Court to the Audit Committee Charter for its complete, accurate contents; to the extent that the allegations in Paragraph 519 are inconsistent with the referenced document, the NRA denies them.

520.    The NRA admits that RSM was the NRA's external auditor between 2008 and 2019. The allegations in Paragraph 520 of the Complaint consist of legal conclusions which require no response; to the extent a response is required, the NRA denies such allegations. The NRA denies the remaining allegations set forth in Paragraph 520 of the Complaint.

521.    The allegations in Paragraph 521 of the Complaint purport to describe and/or summarize the contents of Audit Committee Charter, which speaks for itself. The NRA respectfully refers the Court to the Audit Committee Charter for its complete, accurate contents; to the extent that the allegations in Paragraph 521 are inconsistent with the referenced document, the NRA denies them. The NRA lacks knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations set forth in Paragraph 521 of the Complaint, and therefore denies them.

522.    The NRA lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations set forth in Paragraph 522 of the Complaint, and therefore denies them.

523.    The NRA denies the allegation that the Audit Committee never communicated anything to RSM about passthrough expenses incurred through Ackerman. The NRA lacks

114

knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations set forth in Paragraph 523 of the Complaint, and therefore denies them.

524. To the extent that the allegations in Paragraph 524 purport to excerpt or characterize deposition testimonies, the NRA respectfully refers the Court to the transcripts of such testimonies for their complete and accurate contents; to the extent that the allegations in Paragraph 524 are inconsistent with the referenced documents, the NRA denies them.

525. To the extent that the allegations in Paragraph 525 purport to excerpt or characterize deposition testimonies, the NRA respectfully refers the Court to the transcripts of such testimonies for their complete and accurate contents; to the extent that the allegations in Paragraph 525 are inconsistent with the referenced documents, the NRA denies them. With respect to allegations concerning RSM's work papers, the NRA lacks knowledge or information sufficient to form a belief as to the truth or falsity of such allegations, and therefore denies them.

526. The NRA denies the allegations set forth in Paragraph 526 of the Complaint.

527. With respect to allegations in Paragraph 527 of the Complaint purporting to characterize testimony elicited by the NYAG in the course of its investigation, the NRA states that it repeatedly requested, and was repeatedly denied, the opportunity to identify and rectify errata in the NYAG's transcripts, and further states that many witnesses testified subject to COVID-19 precautions such as masking, social distancing, and/or videoconference which would be reasonably expected to diminish the accuracy of transcripts. Accordingly, the NRA lacks knowledge or information sufficient to form a belief as to the truth or falsity of allegations in Paragraph 527 purporting to recount witnesses' testimony, and therefore denies such allegations.

528. With respect to allegations in Paragraph 528 of the Complaint purporting to characterize testimony elicited by the NYAG in the course of its investigation, the NRA states

115

that it repeatedly requested, and was repeatedly denied, the opportunity to identify and rectify errata in the NYAG's transcripts, and further states that many witnesses testified subject to COVID-19 precautions such as masking, social distancing, and/or videoconference which would be reasonably expected to diminish the accuracy of transcripts.  Accordingly, the NRA lacks knowledge or information sufficient to form a belief as to the truth or falsity of allegations in Paragraph 528 purporting to recount witnesses' testimony, and therefore denies such allegations.

529.   The allegations in Paragraph 529 of the Complaint purport to characterize audit-planning presentations delivered by RSM, which speak for themselves. The NRA respectfully refers the Court to the presentations for their complete, accurate contents; to the extent that the allegations in Paragraph 529 are inconsistent with the referenced documents, the NRA denies them.

530.   The NRA admits that the Audit Committee relied on RSM to perform applicable tests as part of its annual audit.  With respect to allegations purporting to characterize testimony elicited by the NYAG in the course of its investigation, the NRA states that it repeatedly requested, and was repeatedly denied, the opportunity to identify and rectify errata in the NYAG's transcripts, and further states that many witnesses testified subject to COVID-19 precautions such as masking, social distancing, and/or videoconference which would be reasonably expected to diminish the accuracy of transcripts.  Accordingly, the NRA lacks knowledge or information sufficient to form a belief as to the truth or falsity of allegations in Paragraph 530 purporting to recount witnesses' testimony, and therefore denies such allegations.    The NRA denies the remaining allegations set forth in Paragraph 530 of the Complaint.

531.   The NRA denies the allegations set forth in Paragraph 531 of the Complaint.

116

532.   The allegations in Paragraph 532 of the Complaint consist of legal conclusions which require no response; to the extent a response is required, the NRA denies such allegations.

533.   The allegations in Paragraph 533 of the Complaint consist of legal conclusions which require no response; to the extent a response is required, the NRA denies such allegations.

534.   The NRA denies the allegations set forth in Paragraph 534 of the Complaint.

535.   Paragraph 535 purports to characterize testimony elicited by the NYAG during the course of its investigation.  The NRA states that such testimony was elicited subject to substantial COVID-19 precautions which could reasonably be expected to impede accurate transcription; for example, the testimony referenced here was conducted by videoconference, with the witness situated in a remote area and tasked with printing and organizing his own exhibits.  The NRA further states that it repeatedly requested, and was repeatedly denied, the opportunity to identify and rectify errata in the NYAG's transcripts.  Accordingly, the NRA lacks knowledge or information sufficient to form a belief as to the accuracy of allegations in Paragraph 535 purporting to characterize or excerpt the referenced testimony, and on that basis denies such allegations.  The NRA denies the remaining allegations set forth in Paragraph 535 of the Complaint.

536.   To the extent that the allegations in Paragraph 536 purport to excerpt or characterize deposition testimonies, the NRA respectfully refers the Court to the transcripts of such testimonies for their complete and accurate contents; to the extent that the allegations in Paragraph 536 are inconsistent with the referenced documents, the NRA denies them.

537.   The NRA admits that outside counsel participated in formulating, and Mr. Frazer and Mr. Powell at times participated in delivering, compliance training presentations.  The NRA denies the remaining allegations set forth in Paragraph 537 of the Complaint.

117

538.    The NRA denies the allegations set forth in Paragraph 538 of the Complaint.

539.    The NRA denies the allegations set forth in Paragraph 539 of the Complaint.

540.    With respect to allegations in Paragraph 540 purporting to characterize testimony elicited by the NYAG in the course of its investigation, the NRA states that it repeatedly requested, and was repeatedly denied, the opportunity to identify and rectify errata in the NYAG's transcripts, and further states that many witnesses testified subject to COVID-19 precautions such as masking, social distancing, and/or videoconference which would be reasonably expected to diminish the accuracy of transcripts.  Accordingly, the NRA lacks knowledge or information sufficient to form a belief as to the truth or falsity of allegations in Paragraph 540 purporting to recount witnesses' testimony, and therefore denies such allegations.  The NRA denies the remaining allegations set forth in Paragraph 540 of the Complaint.

541.    To the extent Paragraph 541 purports to characterize the NRA Conflict of Interest and Related Party Transaction Policy, the NRA states that the Policy speaks for itself, and respectfully refers the Court to such document for its complete, accurate contents.  To the extent that the allegations in Paragraph 541 are inconsistent with the referenced document, the NRA denies them.  The NRA lacks knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations set forth in Paragraph 541 of the Complaint, and therefore denies them.

542.    With respect to allegations in Paragraph 542 purporting to characterize testimony elicited by the NYAG in the course of its investigation, the NRA states that it repeatedly requested, and was repeatedly denied, the opportunity to identify and rectify errata in the NYAG's transcripts, and further states that many witnesses testified subject to COVID-19 precautions such as masking, social distancing, and/or videoconference which would be reasonably expected to diminish the

118

FILED: NEW YORK COUNTY CLERK 02/23/2021 11:14 PM
INDEX NO. 451625/2020
NYSCEF DOC. NO. 230
Case 21-30085-hdh11 Doc 307-2 Filed 03/06/21 Entered 03/06/21 05:43:57 Page 122 of
173
RECEIVED NYSCEF: 02/23/2021

accuracy of transcripts. Accordingly, the NRA lacks knowledge or information sufficient to form a belief as to the truth or falsity of allegations purporting to recount witnesses' testimony, and therefore denies such allegations. To the extent that the allegations in Paragraph 542 purport to characterize New York law, they constitute legal conclusions to which no response is required; to the extent a response is required, the NRA denies such allegations. The NRA denies the remaining allegations set forth in Paragraph 542 of the Complaint.

543. The NRA denies the first sentence of Paragraph 543 of the Complaint. The NRA lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations set forth in the second sentence of Paragraph 543 of the Complaint, and therefore denies them. To the extent Paragraph 543 purports to characterize the Report of the Audit Committee covering the meeting on July 30, 2018, the NRA states that such document speaks for itself. The NRA respectfully refers the Court to such document for its complete, accurate contents; to the extent that the allegations in Paragraph 543 are inconsistent with the referenced document, the NRA denies them. The NRA states that the Chair of the Audit Committee was provided with a copy of the Top Concerns memorandum after the meeting; with respect to the allegation that he did not receive his copy from, specifically, the Vice Chair, the NRA lacks knowledge or information sufficient to form a belief as to the truth or falsity of such allegation, and therefore denies them. The NRA denies the remaining allegations set forth in Paragraph 543 of the Complaint.

544. The allegations in Paragraph 544 of the Complaint consist of legal conclusions which require no response; to the extent a response is required, the NRA denies such allegations.

545. The allegations in Paragraph 545 of the Complaint consist of legal conclusions which require no response; to the extent a response is required, the NRA denies such allegations.

119

FILED: NEW YORK COUNTY CLERK 02/23/2021 11:14 PM
NYSCEF DOC. NO. 230

INDEX NO. 451625/2020

RECEIVED NYSCEF: 02/23/2021

Case 21-30085-hdh11 Doc 307-2 Filed 03/06/21 Entered 03/06/21 05:43:57 Page 123 of
173

546.   To the extent that Paragraph 546 purports to characterize NRA's CHAR500s for the referenced years, the NRA states that the documents speak for themselves and respectfully refers the Court to such documents for their complete and accurate contents.  To the extent that the allegations in Paragraph 546 are inconsistent with the referenced documents, the NRA denies them.  The NRA denies the remaining allegations set forth in Paragraph 546 of the Complaint.

547.   The NRA denies the allegations set forth in Paragraph 547 of the Complaint.

548.   To the extent that Paragraph 548 purports to characterize NRA's CHAR500s for the referenced years, the NRA states that the documents speak for themselves and respectfully refers the Court to such documents for their complete and accurate contents.  To the extent that the allegations in Paragraph 548 are inconsistent with the referenced documents, the NRA denies them.  The NRA denies the remaining allegations set forth in Paragraph 548 of the Complaint.

549.   The allegations in Paragraph 549 of the Complaint consist of legal conclusions which require no response; to the extent a response is required, the NRA denies such allegations.

550.   The allegations in Paragraph 550 of the Complaint consist of legal conclusions which require no response; to the extent a response is required, the NRA denies such allegations.

551.   The allegations in Paragraph 551 of the Complaint consist of legal conclusions which require no response; to the extent a response is required, the NRA denies such allegations.

552.   The allegations in Paragraph 552 of the Complaint consist of legal conclusions which require no response; to the extent a response is required, the NRA denies such allegations.

553.   The allegations in Paragraph 553 of the Complaint consist of legal conclusions which require no response; to the extent a response is required, the NRA denies such allegations.

554.   The allegations in Paragraph 554 of the Complaint consist of legal conclusions which require no response; to the extent a response is required, the NRA denies such allegations.

120

555. The allegations in Paragraph 555 of the Complaint consist of legal conclusions which require no response; to the extent a response is required, the NRA denies such allegations.

556. The allegations in Paragraph 556 of the Complaint consist of legal conclusions which require no response; to the extent a response is required, the NRA denies such allegations.

557. The NRA admits the allegations set forth in Paragraph 557 of the Complaint.

558. The NRA denies the allegations set forth in Paragraph 558 of the Complaint.

559. The allegations in Paragraph 559 of the Complaint consist of legal conclusions which require no response; to the extent a response is required, the NRA denies such allegations.

560. No response is called for by Paragraph 560 of the Complaint, and the NRA reincorporates its responses to Paragraphs 1 through 559 as if fully set forth herein.

## **CAUSES OF ACTION**

### **FIRST CAUSE OF ACTION**
### **Dissolution of the NRA – N-PCL §§ 112(a)(1), 112(a)(5), 1101(a)(2)**
### **(Against Defendant NRA)**

561. The allegations in Paragraph 561 of the Complaint consist of legal conclusions which require no response; to the extent a response is required, the NRA denies such allegations.

562. The allegations in Paragraph 562 of the Complaint consist of legal conclusions which require no response; to the extent a response is required, the NRA denies such allegations.

563. The allegations in Paragraph 563 of the Complaint consist of legal conclusions which require no response; to the extent a response is required, the NRA denies such allegations.

564. The allegations in Paragraph 564 of the Complaint consist of legal conclusions which require no response; to the extent a response is required, the NRA denies such allegations.

565. The allegations in Paragraph 565 of the Complaint consist of legal conclusions which require no response; to the extent a response is required, the NRA denies such allegations.

FILED: NEW YORK COUNTY CLERK 02/23/2021 11:14 PM
NYSCEF DOC. NO. 230

INDEX NO. 451625/2020

RECEIVED NYSCEF: 02/23/2021

Case 21-30085-hdh11 Doc 307-2 Filed 03/06/21 Entered 03/06/21 05:43:57 Page 125 of
173

566. The allegations in Paragraph 566 of the Complaint consist of legal conclusions which require no response; to the extent a response is required, the NRA denies such allegations.

567. The allegations in Paragraph 567 of the Complaint consist of legal conclusions which require no response; to the extent a response is required, the NRA denies such allegations.

568. The allegations in Paragraph 568 of the Complaint consist of legal conclusions which require no response; to the extent a response is required, the NRA denies such allegations.

569. The allegations in Paragraph 569 of the Complaint consist of legal conclusions which require no response; to the extent a response is required, the NRA denies such allegations.

570. The allegations in Paragraph 570 of the Complaint consist of legal conclusions which require no response; to the extent a response is required, the NRA denies such allegations.

571. The allegations in Paragraph 571 of the Complaint consist of legal conclusions which require no response; to the extent a response is required, the NRA denies such allegations.

572. The allegations in Paragraph 572 of the Complaint consist of legal conclusions which require no response; to the extent a response is required, the NRA denies such allegations.

573. The allegations in Paragraph 573 of the Complaint consist of legal conclusions which require no response; to the extent a response is required, the NRA denies such allegations.

574. The allegations in Paragraph 574 of the Complaint consist of legal conclusions which require no response; to the extent a response is required, the NRA denies such allegations.

## SECOND CAUSE OF ACTION
## Dissolution of the NRA – N-PCL §§ 112(a)(7), 1102(a)(2)(D)
### (Against Defendant NRA)

575. No response is called for by Paragraph 575 of the Complaint, and the NRA reincorporates its responses to Paragraphs 1 through 574 as if fully set forth herein.

122

576.    The allegations in the Second Cause of Action are not against the NRA and therefore no response is required. To the extent a response is deemed necessary, the NRA denies the allegations.

577.    The allegations in Paragraph 577 of the Complaint consist of legal conclusions which require no response; to the extent a response is required, the NRA denies such allegations.

578.    The NRA denies the allegations set forth in Paragraph 578 of the Complaint.

579.    The allegations in Paragraph 579 of the Complaint consist of legal conclusions which require no response; to the extent a response is required, the NRA denies such allegations.

### THIRD CAUSE OF ACTION
### For Breach of Fiduciary Duty Under N-PCL §§ 717 and 720 and Removal Under N- PCL §§ 706(d) and 714(c)
### (Against Defendant LaPierre)

580.    No response is called for by Paragraph 580 of the Complaint, and the NRA reincorporates its responses to Paragraphs 1 through 579 as if fully set forth herein.

581.    The allegations in the Third Cause of Action are not against the NRA and therefore no response is required. To the extent a response is deemed necessary, the NRA denies the allegations.

582.    The allegations in the Third Cause of Action are not against the NRA and therefore no response is required. To the extent a response is deemed necessary, the NRA denies the allegations.

583.    The allegations in the Third Cause of Action are not against the NRA and therefore no response is required. To the extent a response is deemed necessary, the NRA denies the allegations.

584.    The NRA denies the allegations set forth in Paragraph 584 of the Complaint.

### FOURTH CAUSE OF ACTION

123

**For Breach of Fiduciary Duty to the NRA Under N-PCL §§ 717 and 720 and
Removal Under N-PCL §§ 706(d) and 714(c)
(Against Defendant Frazer)**

585.   No response is called for by Paragraph 585 of the Complaint, and the NRA reincorporates its responses to Paragraphs 1 through 584 as if fully set forth herein.

586.   The allegations in the Fourth Cause of Action are not against the NRA and therefore no response is required. To the extent a response is deemed necessary, the NRA denies the allegations.

587.   The allegations in the Fourth Cause of Action are not against the NRA and therefore no response is required. To the extent a response is deemed necessary, the NRA denies the allegations.

588.   The allegations in the Fourth Cause of Action are not against the NRA and therefore no response is required. To the extent a response is deemed necessary, the NRA denies the allegations.

589.   The allegations in the Fourth Cause of Action are not against the NRA and therefore no response is required. To the extent a response is deemed necessary, the NRA denies the allegations.

**FIFTH CAUSE OF ACTION
For Breach of Fiduciary Duty to the NRA Under N-PCL §§ 717 and 720
(Against Defendant Phillips)**

590.   No response is called for by Paragraph 590 of the Complaint, and the NRA reincorporates its responses to Paragraphs 1 through 589 as if fully set forth herein.

591.   The allegations in the Fifth Cause of Action are not against the NRA and therefore no response is required. To the extent a response is deemed necessary, the NRA denies the allegations.

124

592.    The allegations in the Fifth Cause of Action are not against the NRA and therefore no response is required. To the extent a response is deemed necessary, the NRA denies the allegations.

593.    The allegations in the Fifth Cause of Action are not against the NRA and therefore no response is required. To the extent a response is deemed necessary, the NRA denies the allegations.

## SIXTH CAUSE OF ACTION
### For Breach of Fiduciary Duty to the NRA Under N-PCL §§ 717 and 720
**(Against Defendant Powell)**

594.    No response is called for by Paragraph 594 of the Complaint, and the NRA reincorporates its responses to Paragraphs 1 through 593 as if fully set forth herein.

595.    The allegations in the Sixth Cause of Action are not against the NRA and therefore no response is required. To the extent a response is deemed necessary, the NRA denies the allegations.

596.    The allegations in the Sixth Cause of Action are not against the NRA and therefore no response is required. To the extent a response is deemed necessary, the NRA denies the allegations.

597.    The allegations in the Sixth Cause of Action are not against the NRA and therefore no response is required. To the extent a response is deemed necessary, the NRA denies the allegations.

## SEVENTH CAUSE OF ACTION
### For Breach of EPTL § 8-1.4
**(Against Defendant LaPierre)**

598.    No response is called for by Paragraph 598 of the Complaint, and the NRA reincorporates its responses to Paragraphs 1 through 597 as if fully set forth herein.

125

Case 21-30085-hdh11 Doc 307-2 Filed 03/06/21   Entered 03/06/21 05:43:57   Page 129 of 173

599.   The allegations in the Seventh Cause of Action are not against the NRA and therefore no response is required. To the extent a response is deemed necessary, the NRA denies the allegations.

600.   The allegations in the Seventh Cause of Action are not against the NRA and therefore no response is required. To the extent a response is deemed necessary, the NRA denies the allegations.

601.   The allegations in the Seventh Cause of Action are not against the NRA and therefore no response is required. To the extent a response is deemed necessary, the NRA denies the allegations.

**EIGHTH CAUSE OF ACTION**
**For Breach of EPTL § 8-1.4**
**(Against Defendant Frazer)**

602.   No response is called for by Paragraph 602 of the Complaint, and the NRA reincorporates its responses to Paragraphs 1 through 601 as if fully set forth herein.

603.   The allegations in the Eighth Cause of Action are not against the NRA and therefore no response is required. To the extent a response is deemed necessary, the NRA denies the allegations.

604.   The allegations in the Eighth Cause of Action are not against the NRA and therefore no response is required. To the extent a response is deemed necessary, the NRA denies the allegations.

605.   The allegations in the Eighth Cause of Action are not against the NRA and therefore no response is required. To the extent a response is deemed necessary, the NRA denies the allegations.

**NINTH CAUSE OF ACTION**
**For Breach of EPTL § 8-1.4**

126

Case 21-30085-hdh11 Doc 307-2 Filed 03/06/21 Entered 03/06/21 05:43:57 Page 130 of
173

**(Against Defendant Phillips)**

606. No response is called for by Paragraph 606 of the Complaint, and the NRA reincorporates its responses to Paragraphs 1 through 605 as if fully set forth herein.

607. The allegations in the Ninth Cause of Action are not against the NRA and therefore no response is required. To the extent a response is deemed necessary, the NRA denies the allegations.

608. The allegations in the Ninth Cause of Action are not against the NRA and therefore no response is required. To the extent a response is deemed necessary, the NRA denies the allegations.

609. The allegations in the Ninth Cause of Action are not against the NRA and therefore no response is required. To the extent a response is deemed necessary, the NRA denies the allegations.

### TENTH CAUSE OF ACTION
### For Breach of EPTL § 8-1.4
### (Against Defendant Powell)

610. No response is called for by Paragraph 610 of the Complaint, and the NRA reincorporates its responses to Paragraphs 1 through 609 as if fully set forth herein.

611. The allegations in the Tenth Cause of Action are not against the NRA and therefore no response is required. To the extent a response is deemed necessary, the NRA denies the allegations.

612. The allegations in the Tenth Cause of Action are not against the NRA and therefore no response is required. To the extent a response is deemed necessary, the NRA denies the allegations.

127

613. The allegations in the Tenth Cause of Action are not against the NRA and therefore no response is required. To the extent a response is deemed necessary, the NRA denies the allegations.

## ELEVENTH CAUSE OF ACTION
### Wrongful Related-Party Transactions – N-PCL §§ 112(a)(10), 715(f)
### and EPTL § 8-1.9(c)(4)
### (Against Defendant LaPierre)

614. No response is called for by Paragraph 614 of the Complaint, and the NRA reincorporates its responses to Paragraphs 1 through 613 as if fully set forth herein.

615. The allegations in the Eleventh Cause of Action are not against the NRA and therefore no response is required. To the extent a response is deemed necessary, the NRA denies the allegations.

616. The allegations in the Eleventh Cause of Action are not against the NRA and therefore no response is required. To the extent a response is deemed necessary, the NRA denies the allegations.

617. The allegations in the Eleventh Cause of Action are not against the NRA and therefore no response is required. To the extent a response is deemed necessary, the NRA denies the allegations.

## TWELFTH CAUSE OF ACTION
### Wrongful Related-Party Transactions – N-PCL §§ 112(a)(10), 715(f)
### and EPTL § 8-1.9(c)(4)
### (Against Defendant Powell)

618. No response is called for by Paragraph 618 of the Complaint, and the NRA reincorporates its responses to Paragraphs 1 through 617 as if fully set forth herein.

128

Case 21-30085-hdh11 Doc 307-2 Filed 03/06/21 Entered 03/06/21 05:43:57 Page 132 of
173

619.   The allegations in the Twelfth Cause of Action are not against the NRA and therefore no response is required. To the extent a response is deemed necessary, the NRA denies the allegations.

620.   The allegations in the Twelfth Cause of Action are not against the NRA and therefore no response is required. To the extent a response is deemed necessary, the NRA denies the allegations.

621.   The allegations in the Twelfth Cause of Action are not against the NRA and therefore no response is required. To the extent a response is deemed necessary, the NRA denies the allegations.

### THIRTEENTH CAUSE OF ACTION
### <u>Wrongful Related-Party Transactions – N-PCL §§ 112(a)(10), 715(f) and EPTL § 8-1.9(c)(4)</u>
### (Against Defendant Phillips)

622.   No response is called for by Paragraph 622 of the Complaint, and the NRA reincorporates its responses to Paragraphs 1 through 623 as if fully set forth herein.

623.   The allegations in the Thirteenth Cause of Action are not against the NRA and therefore no response is required. To the extent a response is deemed necessary, the NRA denies the allegations.

624.   The allegations in the Thirteenth Cause of Action are not against the NRA and therefore no response is required. To the extent a response is deemed necessary, the NRA denies the allegations.

625.   The allegations in the Thirteenth Cause of Action are not against the NRA and therefore no response is required. To the extent a response is deemed necessary, the NRA denies the allegations.

### FOURTEENTH CAUSE OF ACTION

129

**Wrongful Related-Party Transactions – N-PCL §§ 112(a)(10), 715(f)
and EPTL § 8-1.9(c)(4)
(Against Defendant NRA)**

626. No response is called for by Paragraph 626 of the Complaint, and the NRA reincorporates its responses to Paragraphs 1 through 625 as if fully set forth herein.

627. The allegations in Paragraph 627 of the Complaint consist of legal conclusions which require no response; to the extent a response is required, the NRA denies such allegations.

628. The allegations in Paragraph 628 of the Complaint consist of legal conclusions which require no response; to the extent a response is required, the NRA denies such allegations.

629. The allegations in Paragraph 629 of the Complaint consist of legal conclusions which require no response; to the extent a response is required, the NRA denies such allegations.

630. The allegations in Paragraph 630 of the Complaint consist of legal conclusions which require no response; to the extent a response is required, the NRA denies such allegations.

631. The NRA denies the allegations set forth in Paragraph 631 of the Complaint.

632. The allegations in Paragraph 632 of the Complaint consist of legal conclusions which require no response; to the extent a response is required, the NRA denies such allegations.

**FIFTEENTH CAUSE OF ACTION
Violation of the Whistleblower Protections of N-PCL § 715-b and EPTL § 8-1.9
(Against Defendant NRA)**

633. No response is called for by Paragraph 633 of the Complaint, and the NRA reincorporates its responses to Paragraphs 1 through 632 as if fully set forth herein.

634. The allegations in Paragraph 634 of the Complaint consist of legal conclusions which require no response; to the extent a response is required, the NRA denies such allegations.

635. The allegations in Paragraph 635 of the Complaint consist of legal conclusions which require no response; to the extent a response is required, the NRA denies such allegations.

130

636. The NRA denies the allegations set forth in Paragraph 636 of the Complaint.

637. The allegations in Paragraph 637 of the Complaint consist of legal conclusions which require no response; to the extent a response is required, the NRA denies such allegations.

<h3 style="text-align:center">SIXTEENTH CAUSE OF ACTION<br>For Breach of NYPMIFA, Article 5-A of the N-PCL<br>(Against Defendant NRA)</h3>

638. No response is called for by Paragraph 638 of the Amended Complaint, and the NRA reincorporates its responses to Paragraphs 1 through 637 as if fully set forth herein.

639. The allegations in Paragraph 639 of the Complaint consist of legal conclusions which require no response; to the extent a response is required, the NRA denies such allegations.

640. The allegations in Paragraph 640 of the Complaint consist of legal conclusions which require no response; to the extent a response is required, the NRA denies such allegations.

641. The NRA denies the allegations set forth in Paragraph 641 of the Complaint.

642. The NRA denies the allegations set forth in Paragraph 642 of the Complaint.

<h3 style="text-align:center">SEVENTEENTH CAUSE OF ACTION<br>For False Filings Under Executive Law §§ 172-d(1) and 175(2)(d)<br>(Against Defendant NRA and Frazer)</h3>

643. No response is called for by Paragraph 643 of the Amended Complaint, and the NRA reincorporates its responses to Paragraphs 1 through 642 as if fully set forth herein.

644. The NRA denies the allegations set forth in Paragraph 644 of the Complaint.

645. The NRA denies the allegations set forth in Paragraph 645 of the Complaint.

<h3 style="text-align:center">EIGHTEENTH CAUSE OF ACTION<br>For Unjust Enrichment Derivatively in Favor of the NRA Under<br>N-PCL § 623 and common law<br>(Against LaPierre, Phillips, Frazer and Powell)</h3>

646. No response is called for by Paragraph 646 of the Amended Complaint, and the NRA reincorporates its responses to Paragraphs 1 through 645 as if fully set forth herein.

131

647.   The allegations in Paragraph 647 of the Complaint consist of legal conclusions which require no response; to the extent a response is required, the NRA denies such allegations.

648.   The allegations in Paragraph 648 of the Complaint consist of legal conclusions which require no response; to the extent a response is required, the NRA denies such allegations.

649.   The allegations in Paragraph 649 of the Complaint consist of legal conclusions which require no response; to the extent a response is required, the NRA denies such allegations.

650.   The allegations in Paragraph 650 of the Complaint consist of legal conclusions which require no response; to the extent a response is required, the NRA denies such allegations.

651.   The allegations in Paragraph 651 of the Complaint consist of legal conclusions which require no response; to the extent a response is required, the NRA denies such allegations.

652.   The allegations in Paragraph 652 of the Complaint consist of legal conclusions which require no response; to the extent a response is required, the NRA denies such allegations.

653.   The allegations in Paragraph 653 of the Complaint consist of legal conclusions which require no response; to the extent a response is required, the NRA denies such allegations.

654.   The first sentence in Paragraph 654 of the Complaint consists of legal conclusions which require no response; to the extent a response is required, the NRA denies such allegations. The NRA lacks knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations set forth in Paragraph 654 of the Complaint, and therefore denies them.

655.   The allegations in Paragraph 655 of the Complaint consist of legal conclusions which require no response; to the extent a response is required, the NRA denies such allegations.

656.   The allegations in Paragraph 656 of the Complaint consist of legal conclusions which require no response; to the extent a response is required, the NRA denies such allegations.

132

Case 21-30085-hdh11 Doc 307-2 Filed 03/06/21   Entered 03/06/21 05:43:57   Page 136 of
173

657.    The allegations in Paragraph 657 of the Complaint consist of legal conclusions which require no response; to the extent a response is required, the NRA denies such allegations.

658.    To the extent that Paragraph 658 purports to characterize NRA's 2015-2018 Forms 990, the NRA states that the documents speak for themselves and respectfully refers the Court to such documents for their complete and accurate contents.  To the extent that the allegations in Paragraph 658 are inconsistent with the referenced documents, the NRA denies them.  The NRA lacks knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations set forth in Paragraph 658 of the Complaint, and therefore denies them.

659.    The NRA denies the allegations set forth in Paragraph 659 of the Complaint.

660.    The allegations in Paragraph 660 of the Complaint consist of legal conclusions which require no response; to the extent a response is required, the NRA denies such allegations.

661.    The allegations in Paragraph 661 of the Complaint consist of legal conclusions which require no response; to the extent a response is required, the NRA denies such allegations.

662.    The NRA denies the allegations set forth in Paragraph 662 of the Complaint.

663.    The NRA denies the allegations set forth in Paragraph 663 of the Complaint.

664.    The NRA denies the allegations set forth in Paragraph 664 of the Complaint.

665.    The allegations in Paragraph 665 of the Complaint consist of legal conclusions which require no response; to the extent a response is required, the NRA denies such allegations.

666.    The allegations in Paragraph 666 of the Complaint consist of legal conclusions which require no response; to the extent a response is required, the NRA denies such allegations.

133

## AFFIRMATIVE DEFENSES

Without admission that it carries the burden of proof as to any of the following, the NRA asserts

the following affirmative defenses without waiver of other applicable affirmative defenses not

included here which the NRA reserves the right to assert as they become known.

### First Affirmative Defense

1.     The Complaint fails to state a cause of action or claim upon which relief can be

granted.

### Second Affirmative Defense

2.     Plaintiff's claims and related requests for remedial action and other relief against

the NRA are barred, in whole or in part, by the doctrines of estoppel, regulatory estoppel, waiver,

and/or laches.

### Third Affirmative Defense

3.     Plaintiff's claims and related requests for remedial action and other relief against

the NRA are barred, in whole or in part, by Plaintiff's unclean hands.

### Fourth Affirmative Defense

4.     Plaintiff's attempt to bring a derivative action in behalf of the NRA cannot be

sustained due to its failure adequately to allege the futility of making a demand upon the NRA

Board of Directors.  Further, the Attorney General has not only failed to allege with particularity,

but cannot allege, that a majority of the Board is conflicted with self-interest, or is controlled by

self-interested persons, concerning transactions at issue.  Director nominations occur through a

nominating committee – which gets candidates from innumerable sources including

advertisements in NRA Magazine and in response to requests made to Members for suggested

134

Directors – or by petition, or both, after which approximately one-half of the NRA's five million members are eligible to vote for Directors of their preference. The particular circumstances presented by these nomination and election protocols hopelessly defeat the Attorney General's necessary threshold allegations to establish demand futility.

**Fifth Affirmative Defense**

5.     Plaintiff's attempt to bring a derivative action in behalf of NRA members pursuant to N-PCL § 1102(a)(2) additionally fails because Plaintiff fails to allege support from ten percent of the total number of NRA members. Although derivative standing pursuant to N-PCL § 623 would be insufficient in a dissolution action, Plaintiff likewise fails to allege support from five percent of any class of NRA members as the foregoing section would require. Indeed, Plaintiff alleges no support from any NRA member.

**Sixth Affirmative Defense**

6.     Plaintiff's attempt to enjoin, void or rescind alleged related-party transactions pursuant to N-PCL §§ 112(a)(10), 715(f), and EPTL § 8-1.9(c)(4) fails because, to the extent such transactions were not approved in accordance with N-PCL § 715(a)-(b), they were duly ratified in accordance with N-PCL § 715(j).

**Seventh Affirmative Defense**

7.     The damages suffered by Plaintiff or any third-parties were proximately caused by intervening and superseding actions and occurrences including, but not limited to, actions of persons, entities, and/or forces over which the NRA exerted no control and for which the NRA has no responsibility.

135

Case 21-30085-hdh11 Doc 307-2 Filed 03/06/21 Entered 03/06/21 05:43:57 Page 139 of 173

### Eighth Affirmative Defense

8.     Plaintiff's claims and related requests for remedial action and other relief against the NRA are barred, in whole or in part, by the applicable statute of limitations and other statutory time limitations.

### Ninth Affirmative Defense

9.     Plaintiff's claims and related requests for remedial action and other relief against the NRA on its claims of falsity in public filings, and other allegations which sound in fraud, must fail because the allegations of the Complaint are not stated with sufficient particularity as required under the Civil Practice Law and Rules regardless of the remedial purposes of any statute on which Plaintiff is proceeding in this case.

### Tenth Affirmative Defense

10.    Plaintiff's claims and related requests for remedial action and other relief against the NRA must fail, in whole or in part, because the NRA did not act with intent to deceive, manipulate, or defraud, nor did the NRA recklessly disregard any alleged misrepresentations, misstatements, or omissions of material fact.

### Eleventh Affirmative Defense

11.    This action is pending contemporaneously with other actions which seek to adjudicate overlapping factual and legal issues, including, without limitation, a federal action by the NRA under 42 U.S.C. § 1983 and multiple contested matters in the United States Bankruptcy Court for the Northern District of Texas.  Therefore, one ore or more claims or allegations asserted, or remedies sought, is reasonably likely to be barred by collateral estoppel or res judicata.

### COUNTERCLAIMS

Defendant, the NRA, by its attorneys, asserts the following Counterclaims as against New York State Attorney General Letitia James ("James"), in her official capacity, and, pursuant to

136

CPLR 3019(a), as against James in her individual capacity, upon personal knowledge of its own actions, and upon information and belief as to all other matters, as follows:

## PARTIES, JURISDICTION AND VENUE

1.       The NRA is a non-profit corporation organized under the laws of the State of New York with its principal place of business in Fairfax, Virginia. The NRA is America's leading provider of marksmanship and gun safety education for the military, law enforcement and civilians. It is also the foremost defender of the Second Amendment to the United States Constitution.  The NRA has over five million members, and its programs reach millions more.

2.       James is the Attorney General of the State of New York and, at certain times relevant to these Counterclaims, was acting individually—as she sought political office—and at other times under color of state law. Her principal place of business is The Capitol, Albany, New York, 12224. James is sued in her individual and official capacities.

3.       By filing the Complaint, James has submitted to the jurisdiction and venue of this Court.

## FACTUAL BACKGROUND

4.       As a candidate for the New York State Office of the Attorney General, James promised that, if elected, she would "take down the NRA" by wielding the enforcement powers she hoped to possess if she were elected as NYAG.  James repeatedly made clear during her campaign that she saw "no distinction"[5] between the NRA's charitable existence and its ability to engage in pro-gun political speech, which she characterized as "poisonous" and "deadly propaganda."[6] She

---

[5] *See Annual NRA Fundraiser Sparks Protests*, LI HERALD  (Oct. 25, 2018),http://liherald.com/stories/ nassau-protests-nra-fundraiser,107617.

[6] *See* Jon Campbell, *NY AG Letitia James Called the NRA a 'Terrorist Organization.' Will It Hurt Her Case?* USA TODAY (Aug. 19, 2020), https://www.usatoday.com/story/news/politics/2020/08/19/nra-lawsuit-ny-ag-letitia-james-past-comments/5606437002/.

137

maligned the NRA as a "terrorist organization" and a "criminal enterprise." And she was explicit

about her plan: her "top issue" would be to leverage her "power as an attorney general to regulate

charities" in order to instigate a fishing expedition into the NRA's "legitimacy . . . to see whether

or not they have in fact complied with the not-for-profit law in the State of New York."[7]  In other

words, James would use her office's dissolution power to silence the NRA's political advocacy.

James further vowed that financial institutions and donors linked to the NRA would be pursued by

law enforcement—akin to supporters of Al Qaeda or the mafia.[8]

     5.      James's promise to weaponize New York's law-enforcement apparatus against the

NRA, its banks, and its financial supporters echoed prior threats and actions by her longtime

supporter, Governor Andrew Cuomo.  In a stunning course of misconduct that drew criticism from

the ACLU[9] and instigated another pending First Amendment lawsuit that has withstood

multiple motions to dismiss,[10] Cuomo conspired with willing leadership at the New York

Department of Financial Services ("DFS") in a campaign to "#BankruptTheNRA"[11] by threatening

its financial service providers with retaliatory, invasive investigations. Devised in 2017, this plan

called for the NYAG to conduct a parallel "investigation" of the NRA to "find" reasons to

---

[7] *See* Jillian Jorgensen, *Letitia James Says She'd Investigate NRA's Not-For-Profit Status If Elected Attorney General*, N.Y. DAILY NEWS (July 12, 2018), https://www.nydailynews.com/news/politics/ny-pol-tish-james-nra- 20180712-story.html.

[8] *See Attorney General Candidate, Public Advocate Letitia James*, OUR TIME PRESS (Sept.6, 2018), http://www.ourtimepress.com/attorney-general-candidate-public-advocate-letitia-james/(emphasis added).

[9] See David Cole, *New York State Can't Be Allowed to Stifle the NRA's Political Speech, Speak Freely* (Aug. 24, 2018), https://www.aclu.org/blog/free-speech/new-york-state-cant-be- allowed-stifle-nras-political-speech; *see also* Cheryl Chumley, *ACLU defends NRA - - Yes, You Read That Right*, WASH. TIMES (Aug. 27, 2018) https://www.washingtontimes.com/news/2018/aug/27/aclu-defends-nra-yes-you-read-right/; *seealso* Declan McCullagh, *ACLU Sticks Up for the NRA?!*, REASON (Aug. 24, 2018), https://reason.com/2018/08/24/aclu-teams- up-with-nra/.

[10] *Nat'l Rifle Ass'n of Am. v. Cuomo,* Case No. 1:18-cv-00566-TJM-CFH (N.D.N.Y.).

[11] *See* August 4, 2018 Facebook post by Andrew Cuomo, https://www.facebook.com/ andrewcuomo/posts/new-york-is-forcing-the-nra-into-financial-crisis-its-time-to-put-the-gun-lobby- /10155989594858401/.

138

FILED: NEW YORK COUNTY CLERK 02/23/2021 11:14 PM
INDEX NO. 451625/2020
NYSCEF DOC. NO. 230
RECEIVED NYSCEF: 02/23/2021

Case 21-30085-hdh11 Doc 307-2 Filed 03/06/21 Entered 03/06/21 05:43:57 Page 142 of
173

commence legal actions against the NRA. The NRA became aware of this scheme when the then-New York Attorney General Eric Schneiderman became so troubled by it that he telephoned the NRA with an advance warning. Unfortunately, Schneiderman later resigned, and his successor James harbors no similar reservations about weaponizing the powers of her office over non-profits like the NRA.

6. Shortly after taking office, James commenced her long-promised investigation into the NRA's finances, personnel, operations, and political strategy, all with the purpose of damaging the NRA politically, diverting its corporate resources, and contriving a pretext to dissolve the NRA, without ever making a meaningful effort to engage NRA leadership, or giving the NRA a fair opportunity to take appropriate action to address compliance issues raised by the NYAG and to correct alleged deficiencies. James's unconstitutional, retaliatory investigation found no evidence to support her audacious claims, yet she predictably concluded it by commencing this action and seeking a dissolution of the NRA.

7. James thus seeks to shutter a five- million-member political advocacy organization based solely on allegations of misconduct by four individual executives, two of whom no longer work at the NRA, and one of whom was fired by the NRA for many of the same issues alleged in the Complaint. Given that it is obviously political, this action has shocked civil liberties advocates and legal and public policy scholars across the political spectrum.[12]

---

[12] *See, e.g.*, Editorial, *How Did Caribbean Yacht Vacations Promote the Second Amendment? We May Find Out in Court*, WASH. POST. (Aug. 8, 2020), https://www.washingtonpost.com/opinions/is-this-really-the-right-penalty-for-the-nra/2020/08/ 07/f81778fc-d8e2-11ea-930e-d88518c57dcc_story.html ("We question whether dissolution is the right penalty, even if the charges are proved in court."); Henry Olsen, *New York's Lawsuit to Dissolve the NRA is Outrageous*, WASH. POST. (Opinion, Aug. 7, 2020), https://www.washingtonpost.com/opinions/2020/08/07/new-yorks-lawsuit-dissolve-nra-is-outrageous/ ("James's allegations . . . would certainly be damning if true. . . . None of this, however, justifies destroying the organization itself. The NRA is still supported by millions of people and has substantial assets. It is neither broke nor derelict."); Ruth Marcus, *The NRA is a Cesspool. That Doesn't Mean It Should Be Dissolved*, WASH. POST. (Opinion, Aug. 9, 2020), https://www.washingtonpost.com/opinions/2020/08/09/nra-is-

139

8. James's actions manifestly violate the freedoms guaranteed by the United States Constitution and the Constitution of the State of New York.

**A.** **The NRA: Support For Gun Safety And A Commitment To Core Political Speech.**

9. The NRA was created after the Civil War as a private association to promote marksmanship among the citizenry of the United States. It obtained a charter from the State of New York in November 1871, and thereafter began a proud legacy of marksmanship training and Second Amendment and gun safety advocacy. From its inception, the NRA received praise from the State of New York for its many public contributions and partnered with the State to advance marksmanship, firearms safety, education, conservation, and other public policy goals.

10. First among the "Purposes and Objectives" contained in the NRA's bylaws is "[t]o protect and defend the Constitution of the United States." Accordingly, political speech is a major purpose of the NRA and the NRA engages in extensive political speech and legislative advocacy to promote and vindicate the rights of its members and all Americans.

11. Today, the NRA spends tens of millions of dollars annually distributing pamphlets, fact sheets, articles, electronic materials, and other literature to advocate in support of Second Amendment freedoms and to assist NRA members who engage in national, state, and local firearm

---

cesspool-that-doesnt-mean-it-should-be-dissolved/; Noah Feldman, *New York's Attorney General Shouldn't Dismantle the NRA*, BLOOMBERG (Opinion, Aug. 6, 2020), https://www.bloomberg.com/opinion/articles/2020-08- 06/new-york-s-attorney-general-shouldn-t-dismantle-nra-in-lawsuit; David Cole, *The NRA Has a Right to Exist*, WALL ST. J. (Opinion, Aug. 26, 2020), https://www.wsj.com/articles/the-nra-has- a-right-to-exist-11598457143?mod=opinion_lead_pos7 ("The American Civil Liberties Union rarely finds itself on the same side as the National Rifle Association in policy debates or political disputes. Still, we are disturbed by New York Attorney General Letitia James's recent effort to dissolve the NRA"); Jonathan Turley, *The Tragic Irony of the New York State Lawsuit Against the NRA*, THE HILL (Opinion, Aug. 8, 2020), https://thehill.com/opinion/judiciary/511155-the-tragic-irony-of-the-new-york-state-lawsuit-against-the-national-rifle-association ("Trying to dissolve an organization engaged in political speech should not occur absent overwhelming proof that it is acriminal enterprise, which is why this has never happened with a group like the NRA."); Alan Z. Rozenshtein, *The Attempt to Dissolve the NRA Threatens Democratic Norms*, LAWFARE (Opinion, Aug. 11, 2020), https://www.lawfareblog.com/attempt-dissolve-nra-threatens-democratic-norms ("I personally can't stand [the NRA] . . . . [b]ut that said James's attempt to dissolve the NRA in its entirety is a violation of key democratic and rule-of-law norms.").

140

FILED: NEW YORK COUNTY CLERK 02/23/2021 11:14 PM
INDEX NO. 451625/2020
NYSCEF DOC. NO. 230
Case 21-30085-hdh11 Doc 307-2 Filed 03/06/21 Entered 03/06/21 05:43:57 Page 144 of
173
RECEIVED NYSCEF: 02/23/2021

dialogue and debate. The NRA's direct mail, television, radio, and digital communications seek to educate the public about issues bearing on the Second Amendment, defend the right of the people to keep and bear arms, and galvanize participation in the political process by NRA members and supporters, and others who care about the right to keep and bear arms, and want to keep it. In addition, the NRA's letter-writing campaigns, peaceable public gatherings, and other grassroots "lobbying" activities constitute precisely the type of political speech which rests "[a]t the core of the First Amendment."[13]

## B. **Various Elected Officials in New York Target the NRA Based on the Viewpoints Expressed in Its Speech.**

12.     In recent years, the NRA's corporate domicile—New York—has witnessed the ascendancy of governmental officials determined to make the State a dangerous place for Second Amendment advocacy. Although the NRA welcomes fair, full-throated policy debate, it cannot abide the corrupt misuse of government power by certain New York officials attempting to squelch political opposition to benefit themselves and advance their own careers. Unfortunately, this is what has occurred, and is already the subject of another ongoing federal lawsuit.

13.     New York Governor Andrew Cuomo has a longstanding political vendetta against the NRA, which he accuses of exerting a "stifl[ing] . . .stranglehold" over national gun policy.[14] For Cuomo, silencing the NRA is a career strategy. During 2018, Cuomo and several political allies, including the former Superintendent of DFS, orchestrated a campaign of selective enforcement, backroom exhortations, retaliation and public threats designed to coerce financial

---

[13] *See, e.g.*, *Brown v. Hartlage*, 456 U.S. 45, 52 (1982).

[14] *See* Kenneth Lovett, *Exclusive: Cuomo Fires Back at Jeb Bush for 'Stupid' and'Insensitive' Gun Tweet*, N.Y. DAILY NEWS (Feb. 17, 2016), http://www.nydailynews.com/news/politics/cuomo-blasts-jeb-stupid-insensitive-gun-tweet- article-1.2534528.

141

FILED: NEW YORK COUNTY CLERK 02/23/2021 11:14 PM
NYSCEF DOC. NO. 230
INDEX NO. 451625/2020
RECEIVED NYSCEF: 02/23/2021

Case 21-30085-hdh11 Doc 307-2 Filed 03/06/21 Entered 03/06/21 05:43:57 Page 145 of
173

institutions operating in New York to blacklist pro-gun advocacy groups, especially the NRA. The NRA's First Amendment claims arising from this conduct have withstood motions to dismiss and are currently pending in the United States District Court for the Northern District of New York.[15]

14.  James's predecessor in office, Attorney General Eric Schneiderman, defied his own party loyalties to warn the NRA that he was being urged to use his office in support of these politically motivated efforts. In a telephone call to Tom King, an NRA director, in mid- 2017, Schneiderman emphasized that while he opposed the NRA's positions on the Second Amendment, he was troubled by recent, extraordinary pressures being placed on him by Cuomo and others to weaken the NRA as a political force in 2020. Schneiderman advised King to "get ready."

15.  Although the NRA believed it was operating in compliance with New York State law, it also understood that a politically driven "compliance audit" was something for which it should carefully prepare. To fortify its defenses, the NRA undertook a top-to-bottom review of its operations and governance.[16] In the process, the NRA met with resistance from a handful of its executives and vendors who did not welcome the NRA Board's push for additional documentation and transparency. Over the ensuing year, the NRA became embroiled in litigation with those it

---

[15] *Nat'l Rifle Ass'n of Am. v. Cuomo*, Case No. 1:18-cv-00566-TJM-CFH (N.D.N.Y.).

[16] Indeed, the Complaint extensively documents that the NRA voluntarily undertook efforts to improve its internal governance functions beginning in 2017, up to the present day. These efforts include replacing Defendant Wilson Phillips with a new treasurer that the complaint repeatedly lauds for engaging in remedial efforts such as a 50% reduction in travel expenses (¶ 156), "reengineering" the process for handling Defendant Wayne LaPierre's expense reimbursements to "make it . . . robust and appropriate" (¶ 197), investigating and terminating a complained-of vendor contract with HomeTelos in the spring of 2018 (¶ 225), examining Defendant Joshua Powell's improper expenses and engaging outside counsel to assist, and confronting Powell regarding improper conflicts of interest in mid-2018, resulting in Powell's removal and repayment of misappropriated monies to the NRA (¶¶ 249-50, 263), and investigating and examining the improper use of a corporate credit card by LaPierre's senior assistant (¶ 294). The NRA engaged outside counsel to do an extensive review of the NRA's relationship with its contractual partners and in service of that effort ultimately commenced litigation against Ackerman to obtain documentation that Ackerman has been withholding. (¶¶ 302, 455). The NRA has further been evaluating the establishment of an internal audit function (¶ 483) and adopted a revised whistleblower policy in January 2020. (¶ 115).

142

FILED: NEW YORK COUNTY CLERK 02/23/2021 11:14 PM
NYSCEF DOC. NO. 230

INDEX NO. 451625/2020
RECEIVED NYSCEF: 02/23/2021

Case 21-30085-hdh11 Doc 307-2 Filed 03/06/21 Entered 03/06/21 05:43:57 Page 146 of
173

determined had abused its trust. These fights were difficult, but the NRA was determined to protect its mission, message, members and donors and prepare itself to fend off a political attack from the NYAG if one came.

16.       Months after delivering his warning to Mr. King, Schneiderman resigned from office. As the NRA's First Amendment lawsuit against Governor Cuomo received increased coverage during the summer of 2018 (and garnered support from the American Civil Liberties Union),[17] James adopted Cuomo's plan and made the political prosecution of the NRA a central campaign theme.  On September 6, 2018, James announced that, if elected, she would follow Cuomo's financial-blacklisting campaign by "put[ting] pressure upon the banks that finance the NRA" in order to choke off support for its Second Amendment speech, and reiterated her attacks on the NRA's legitimacy as a not-for-profit corporation.[18]

## C.       James Maliciously Defames the NRA to Create a Pretext for Law Enforcement Action.

17.       During late summer and early fall 2018, James began to publicize false, defamatory assertions that the NRA engaged in criminal activity.  On September 4, 2018, during a debate between Democratic candidates, James stated that, if elected, her "top issue" would be "going after the NRA because *it is a criminal enterprise*."[19]  Two days later, James elaborated: "We need to again take on the NRA, which holds itself out as a charitable organization. But in

---

[17] *See* David Cole, *New York State Can't Be Allowed to Stifle the NRA's Political Speech*, SPEAK FREELY (Aug. 24, 2018), https://www.aclu.org/blog/free-speech/new-york-state-cant-be- allowed-stifle-nras-political-speech; *see also* Cheryl Chumley, *ACLU defends NRA - - Yes, You Read That Right*, WASH. TIMES (Aug. 27, 2018) https://www.washingtontimes.com/ news/2018/aug/27/aclu-defends-nra-yes-you-read-right/; *see also* Declan McCullagh, *ACLU Sticks Up for the NRA?!*, REASON (Aug. 24, 2018), https://reason.com/2018/08/24/aclu-teams-up-with-nra/.

[18] *See Attorney General Candidate, Public Advocate Letitia James* OUR TIME PRESS (Sept.6, 2018), https://www.ourtimepress.com/attorney-general-candidate-public-advocate-letitia-james/.

[19] *See* New York City Bar Association, *Forum for the Democratic Attorney General Primary Candidates*, (Sept. 4, 2018), *available at* https://www.youtube.com/ watch?v=6n2_LHNEUW0 (statement at the 17:50 mark).

143

FILED: NEW YORK COUNTY CLERK 02/23/2021 11:14 PM
NYSCEF DOC. NO. 230

INDEX NO. 451625/2020

RECEIVED NYSCEF: 02/23/2021

Case 21-30085-hdh11 Doc 307-2 Filed 03/06/21 Entered 03/06/21 05:43:57 Page 147 of
173

fact, they are not. ***They are nothing more than a criminal enterprise.*** We are waiting to take on all of the banks that finance them, their investors."[20] Similarly, on October 31, 2018, James stated that "the NRA holds [itself] out as a charitable organization, but in fact, [it] really [is] a ***terrorist organization***."[21]

18.     These statements were not mere heated political rhetoric. Rather, they were intended to reiterate and reinforce James's false, malicious assertions that the NRA had committed serious crimes, including crimes for which its financial backers might face repercussions.

**D.     The NYAG's Pretextual "Investigation" Underscores James's Plan to Destroy the NRA.**

19.     Even though James defamed and inveighed against the NRA, the NRA initially offered to cooperate with any good-faith inquiry into its finances.[22] Rather than accept the NRA's offer of cooperation in good faith, James's staff secretly subpoenaed the NRA's accounting firm, demanding sensitive records, including names of NRA members and donors—and tried to forbid the firm from alerting the NRA, despite its obligation under the Internal Revenue Code to do so. When the NRA requested that confidential documents produced to the NYAG Charities Bureau be maintained in confidence for purposes of James's purported charitable-compliance investigation—and not given to other NYAG staff who were adverse to the NRA on Second Amendment matters—the NYAG flatly refused.

---

[20] *See Attorney General Candidate, Public Advocate Letitia James*, OUR TIME PRESS (Sept.6, 2018), https://www.ourtimepress.com/attorney-general-candidate-public-advocate-letitia-james/ (emphasis added).

[21] *See* Teddy Grant, *Letitia 'Tish' James on Becoming New York's Next Attorney General*,EBONY (Oct. 31, 2018), https://www.ebony.com/news/letitia-tish-james-on-becoming-new-yorks- next-attorney-general/ (emphasis added).

[22] Gabriela Resto-Montero, *New York's Attorney General Opens Investigation into the NRA as Its President Steps Down*, VOX, (Apr. 28, 2019), https://www.vox.com/policy-and-politics/2019/4/27/18519685/nra-ceo-accuses-president-extortion-wayne-lapierre-oliver-north ("A lawyer for the NRA said the organization will 'fully cooperate' with the investigation, andadded, 'The NRA is prepared for this, and has full confidence in its accounting practices andcommitment to good governance.'").

144

20.     James has vowed that she would use the NYAG's enforcement powers for the precise purpose of stanching political speech ("deadly propaganda") with which she and Governor Cuomo disagree. She has begun to deliver on her campaign promises to retaliate against the NRA for constitutionally protected speech on issues that James opposes. James's Charities Bureau investigation is nothing more than a pretext for her goal of depriving the NRA, its members, and its donors of their constitutional rights to freedom of speech and association under the First Amendment, and to the right to keep and bear arms under the Second Amendment.

**E.     James Seeks the Extraordinary and Unprecedented Relief of Dissolution Based Solely on Alleged Executive Misconduct.**

21.     Prior to commencing this action, James made no attempt to settle her purported grievances against the NRA or monitor or reform the NRA to remedy alleged corruption. That is because improving the NRA's governance is not James's goal—destroying the NRA is.

22.     The same day that the NYAG commenced this action, in an obviously coordinated effort, the Attorney General for the District of Columbia also filed suit against the NRA and the NRA's 501(c)(3) arm, the NRA Foundation, which is domiciled there.[23] Notably, the DCAG's complaint alleges similar misconduct but does not seek dissolution.

23.     The Complaint here contains no allegations of fraud or intentional illegality by the employees of the NRA broadly, or by the NRA Board of Directors or any Committee of the Board. Instead, the Complaint at most accuses the NRA and its Board of failing to maintain fulsome records and of lax oversight. The NRA disputes even these allegations, but viewed in their worst possible light, they cannot justify James's decision to commence a dissolution action.

24.     The dissolution causes of action in the Complaint are brought under New York

---

[23] *District of Columbia v. NRA Foundation et al.*, Case No. 2020-CA-003454 (Sup. Ct. D.C.).

145

Not-for-Profit Corporation Law Sections 1101 and 1102. Section 1101 authorizes the NYAG to commence a dissolution action where a corporation "has exceeded the authority conferred upon it by law, or has violated any provision of law whereby it has forfeited its charter, or carried on, conducted or transacted its business in a persistently fraudulent or illegal manner, or by the abuse of its powers contrary to public policy of the State." Section 1102 gives the NYAG the right to commence the equivalent of a derivative action by a director, who may seek dissolution where "directors or members in control of the corporation have looted or wasted the corporate assets, have perpetuated the corporation solely for their personal benefit, or have otherwise acted in an illegal, oppressive or fraudulent manner." Despite the wording of Section 1102, New York's highest court has ruled thatdissolution under this section is only available in cases of "egregious" conduct, which "go far beyond charges of waste, misappropriation and illegal accumulations of surplus, which might be cured by a derivative action for injunctive relief and an accounting."[24]

25.     As such, this extreme remedy is reserved for non-profits that themselves were deemed to be a *sham*—a word that appears nowhere in the Complaint.  Examples of such cases include a puppy rescue organization that was really a puppy mill;[25] a purported cancer charity that performed no such work;[26] a supposed leukemia foundation that spent less than one percent

---

[24] *Liebert v. Clapp*, 13 N.Y.2d 313, 316 (1963).

[25] *See* Press Release, *A.G. Schneiderman Obtains Consent Order Shuttering Long Island Puppy Flipper* (Mar. 16, 2015), https://ag.ny.gov/press-release/2015/ag-schneiderman-obtains-  consent-order-shuttering-long-island-puppy-flipper.

[26] *See Coalition Against Breast Cancer Dissolved By New York Attorney General's Office*,CHARITY WATCH (May 7, 2013), https://www.charitywatch.org/charity-donating- articles/coalition-against-breast-cancer-dissolved-by-new-york-attorney-general39s-office; PressRelease, *A.G. Schneiderman Announces Settlement with Two Sham Cancer Charities That Bilked More Than $75 Million From Donors* (Mar. 30, 2016), https://ag.ny.gov/press-release/2016/ag-schneiderman-announces-settlement-two-sham-cancer-charities-bilked-more-75; Press Release, *A.G. Schneiderman Announces $350,000 Settlement with Sham Breast Cancer Charity* (Jun. 16, 2017), https://ag.ny.gov/press-release/2017/ag-schneiderman-announces-350000-settlement- sham-breast-cancer-charity.

146

FILED: NEW YORK COUNTY CLERK 02/23/2021 11:14 PM
NYSCEF DOC. NO. 230

INDEX NO. 451625/2020

RECEIVED NYSCEF: 02/23/2021

Case 21-30085-hdh11 Doc 307-2 Filed 03/06/21 Entered 03/06/21 05:43:57 Page 150 of
173

of its revenue to help children suffering from cancer;[27] a tobacco industry-funded non-profit that spread disinformation about tobacco's health effects;[28] or a non-profit that was a front for distribution of child pornography.[29]

26.     The Complaint does not allege that the NRA fails to conduct activities consistent with its stated corporate purposes, nor that it fails to honor requests by donors regarding the specific application of their gifts. The Complaint is also silent concerning the NRA's finances and whether any alleged looting or waste by the individual defendants rendered the NRA insolvent or incapable of continuing to carry out its stated purpose.

27.     To the NRA's knowledge, since at least 1999 and perhaps for its entire existence, the NYAG has never sought dissolution of a non-profit corporation based solely on alleged self-dealing or related-party transactions engaged in by corporate executives, whether known or unknown to the corporation's board and regardless of whether those transactions were approved and regardless of how substantially those transactions diminished corporate assets. Not when NARAL Pro-Choice's president looted hundreds of thousands of dollars for personal expenses and intimidated others into staying quiet to perpetuate the fraud.[30] Not when the leader of the National Arts Club was found to have "systematically abused his authority" to steal millions for

---

[27] See New York Attorney General Schneiderman Announces $1 Million Settlement withOfficials of So-Called Children's Leukemia Foundation and Their Auditor, National Associationof Charity Officials, NASCO (Dec. 17, 2015), https://www.nasconet.org/2015/12/new-york-attorney-general-schneiderman-announces-1-million-settlement-with-officials-of-so-called- childrens-leukemia-foundation-and-their-auditor/.

[28] See Bill McAllister, N.Y. Judge Places Tobacco Institute Under Control of Receiver,WASH. POST (May 3, 1998), https://www.washingtonpost.com/archive/politics/1998/05/03/ny-judge-places-tobacco-institute-under-control-of-receiver/fd082867-5a96-4f8b-9d7c- 202d4eb88701/.

[29] People v. Zymurgy, Inc., 233 A.D.2d 178 (1st Dep't 1996).

[30] See Press Release, New York Attorney General Sues Former NARAL President forSiphoning Over $250,000 from Charity for Personal Use (Jun 29, 2012), https://ag.ny.gov/press-release/2012/office-attorney-general-sues-former-naral-president-siphoning-over-250000- charity.

147

himself and his brother.[31] Not when the Thoroughbred Retirement Foundation was found to be so "dysfunctional" that it was driven into insolvency by the "reckless"actions of its board and caused the suffering and death of horses in its charge.[32] Not when the former president of the New York Legal Assistance Group was found to have diverted millions of dollars over 15 years to other entities he controlled, *with board approval*, and the organization was found to havefiled "materially misleading" financial statements.[33] Not when the NYAG found a "shocking" "breakdown in governance" at the Victor E. Perley Fund that allowed its leader to loot over a million dollars and waste the fund's *entire* investment portfolio intended for underprivileged children.[34] Not when former executives of the Metropolitan Council on Jewish Poverty were indicted for grand larceny, money laundering, tax fraud and criminal conspiracy for taking millions through an illegal insurance-inflation scheme stretching back 20 years.[35] Nor in any of the more than two dozen other instances since 1999 when the NYAG alleged self-dealing by non-profit executives. In every single one of those cases, the NYAG considered the non-profit a *victim* and engaged in collaborative discussions with the organizations to implement measures designed to tighten internal controls.

---

[31] *See* Press Release, *A.G. Schneiderman Obtains $950k Settlement from Former NationalArts Club Leaders for Years of Self-Dealing* (Jul. 10, 2013), https://ag.ny.gov/press- release/2013/ag-schneiderman-obtains-950k-settlement-former-national-arts-club-leaders-years.

[32] See Press Release, A.G. Schneiderman Sues to Remove Board of ThoroughbredRetirement Foundation That Put Horses in Danger and Finances in Ruin (May 3, 2012), https://ag.ny.gov/press-release/2012/ag-schneiderman-sues-remove-board-thoroughbred- retirement-foundation-put-horses.

[33] See Press Release, A.G. Schneiderman Announces Settlement of Lawsuit Against YisroelSchulman, Former Director of NYLAG, For Breaching His Fiduciary Duty to NYLAG and Other Charities (Nov. 29, 2017), https://ag.ny.gov/press-release/2017/ag-schneiderman-announces- settlement-lawsuit-against-yisroel-schulman-former.

[34] See Press Release, A.G. Schneiderman Announces $1.025 Million Settlement withTrustees of Nonprofit that Squandered Assets Intended for Underprivileged Children (Apr. 29, 2015), https://ag.ny.gov/press-release/2015/ag-schneiderman-announces-1025-million-settlement-trustees-nonprofit-squandered.

[35] *See* Press Release, *A.G. Schneiderman & Comptroller DiNapoli Announce Agreement with Met Council to Restore Charity's Operations* (Dec. 19, 2013), https://ag.ny.gov/press- release/2013/ag-schneiderman-comptroller-dinapoli-announce-agreement-met-council-restore.

148

28.    A survey of non-profit enforcement by the National Association of State Charity

Officials, a consortium of attorneys general similarly demonstrates that, for the past two years,

almost none of the actions categorized as "Governance and Breach of Fiduciary Duty" sought

dissolution.[36] Even where they did, the remedy was sought in the alternative only if other, less-

severe injunctive relief was not obtained.[37] It is notable that the Attorney General of the District

of Columbia, which commenced an action on the same day as James making similar allegations

against the NRA and one of its D.C.-domiciled foundations, *did not seek dissolution* of the

foundation. When asked during an August 6, 2020 press conference what precedent existed for

this action, James offered only two examples, neither of which were sought on the basis of

fraudulent expenditures by management.[38] The first, the Federation of Multicultural Programs,

ran a series of homes and programs for the disabled, had accumulated 27 safety violations, was

determined to be actively harming patients in its care because of a lack of funds, and had been

warned repeatedly by the New York State Office for People With Disabilities before it was shut

down.[39] The second purported example, the Trump Foundation, was an action in which the

dissolution claim was premised not on waste or misspending, but because the Foundation, *unlike*

---

[36] *See* NASCO's 2019 and 2020 annual reports, *available at https://www.nasconet.org/annual-reports/*, at 11-15 (2019, identifying the Trump Foundation action as the only one seeking dissolution); and 7-10 (identifying only the Trump Foundation and two sham charity actions where looting also occurred as dissolution actions).

[37] *Id.* Michael West, the senior attorney at the New York Council of Nonprofits, called thedissolution action "unprecedented." *See* Alex Yablon, *Get Ready for a Feeding Frenzy Over the NRA's Corpse*, SLATE (Sept. 3, 2020). Anne Milgram, former Attorney General for the State of New Jersey similarly noted on the Café Insider podcast after learning of this lawsuit, "The thing Ikept thinking about as somebody who's overseen charities, is that, as a rule, you, you know therewere instances where we took the most aggressive actions were instances where charities have already been given an opportunity to reform, or they'd been identified as being problematic and flagged for and basically told 'You're going to lose your status unless you do this.'" CAFÉ INSIDERPODCAST, August 11, 2020 at 42:00, *available at* https://cafe.com/insider-podcast/cafe-insider-8-11-the-executives-privilege/.

[38] *See* Transcript of James's press conference at 14:46, *available at* https://www.rev.com/blog/transcripts/ny-attorney-general-letitia-james-sues-nra-press- conference-august-6.

[39] *See* Russ Buetner, *An Operator of Group Homes Keeps State Aid Despite Faults*, N.Y. TIMES (Dec. 27, 2011), https://www.nytimes.com/2011/12/28/nyregion/operator-of-ny-group- homes-thrived-despite-lapses-in-care.html.

149

*the NRA*, was prohibited from engaging in political activity but had been found to operate as little more than a "checkbook" that was "co-opted" by a presidential campaign.[40] It was notably also already in the process of winding down its affairs.

29.    The difference here is James's well-documented animus against the NRA. James's radical departure from precedent to pursue dissolution cannot therefore be reasonably viewed as anything other than abuse of the non-profit laws to silence a political enemy.

30.    The dissolution action has rightfully drawn widespread condemnation as a blatant abuse of power and a threat to democratic principles from both sides of the political divide, including the American Civil Liberties Union, the New Republic, and other voices not traditionally aligned with the NRA.[41]

---

[40] *People v. Donald J. Trump*, et al., Index No. 451130/2018, Dkt. 1 ¶¶ 108, 116 ("The Foundation exceeded the authority conferred to it in its certificate of incorporation and acted in a persistently illegal manner by repeatedly intervening in Mr. Trump's campaign for president in 2016 . . ." and "[the Foundation] has conducted its business in a persistently illegal manner and abused its powers contrary to the public policy of the State of New York by operating without anyoversight or control by a board of directors.").

[41] *See, e.g.*, Editorial, *How Did Caribbean Yacht Vacations Promote the SecondAmendment? We May Find Out in Court*, WASH POST. (Aug. 8, 2020),https://www.washingtonpost.com/opinions/is-this-really-the-right-penalty-for-the-nra/2020/08/ 07/f81778fc-d8e2-11ea-930e-d88518c57dcc_story.html ("We question whether dissolution is the right penalty, even if the charges are proved in court."); Henry Olsen, *New York's Lawsuit to Dissolve the NRA is Outrageous*, WASH. POST. (Opinion, Aug. 7, 2020), https://www.washingtonpost.com/opinions/2020/08/07/new-yorks-lawsuit-dissolve-nra-is- outrageous/ ("James's allegations . . . would certainly be damning if true. . . . None of this,however, justifies destroying the organization itself. The NRA is still supported by millions ofpeople and has substantial assets. It is neither broke nor derelict."); Ruth Marcus, *The NRA is aCesspool. That Doesn't Mean It Should Be Dissolved*, WASH. POST. (Opinion, Aug. 9, 2020),https://www.washingtonpost.com/opinions/2020/08/09/nra-is-cesspool-that-doesnt-mean-it- should-be-dissolved/; Noah Feldman, *New York's Attorney General Shouldn't Dismantle the NRA*,BLOOMBERG (Opinion, Aug. 6, 2020), https://www.bloomberg.com/opinion/articles/2020-08-06/new-york-s-attorney-general-shouldn-t-dismantle-nra-in-lawsuit; David Cole, *The NRA Has aRight to Exist*, WALL ST. J. (Opinion, Aug. 26, 2020), https://www.wsj.com/articles/the-nra-has- a-right-to-exist-11598457143?mod=opinion_lead_pos7 ("The American Civil Liberties Unionrarely finds itself on the same side as the National Rifle Association in policy debates or politicaldisputes. Still, we are disturbed by New York Attorney General Letitia James's recent effort todissolve the NRA"); Jonathan Turley, *The Tragic Irony of the New York State Lawsuit Against theNRA*, THE HILL (Opinion, Aug. 8, 2020), https://thehill.com/opinion/judiciary/511155-the-tragic- irony-of-the-new-york-state-lawsuit-against-the-national-rifle-association ("Trying to dissolve anorganization engaged in political speech should not occur absent overwhelming proof that it is acriminal enterprise, which is why this has never happened with a group like the NRA."); Alan Z.Rozenshtein, *The Attempt to Dissolve the NRA Threatens Democratic Norms*, LAWFARE (Opinion,Aug. 11, 2020), https://www.lawfareblog.com/attempt-dissolve-nra-threatens-democratic-norms("I personally can't stand [the NRA] . . . . [b]ut that saidJames's attempt to dissolve the NRA in its entirety is a violation of key democratic and rule-of-law norms.").

150

31.      The NYAG Office's decision to seek this severe remedy—effectively seizure of the NRA's remaining assets and annulment of its existence—constitutes impermissible selective enforcement of the New York Not-for-Profit Corporation Law by James.  Both the U.S. and New York Constitutions prohibit the government from applying or enforcing a valid law "with an evil eye and an unequal hand."[42]  Such behavior "taints the integrity of the legal process to the degree that no court should lend itself to adjudicate the merits of the enforcement action," "even though the party … may well have been guilty of violating the law."[43] Discrimination on the basis of political speech is such an impermissible standard.[44]  If "'conscious, intentional discrimination'" exists, then "the defendant will be entitled to a dismissal of the prosecution as a matter of law."[45]

32.      Here, both James's documented animus against the NRA and more than 20 years' worth of action by the NYAG against non-profits make clear that the dissolution causes of action are included for no reason other than to punish a political enemy and stifle its speech. The record on James's—as well as her boss, Governor Cuomo's—hatred of the NRA is extensive. While campaigning, James repeatedly called the NRA a "terrorist organization" and a "criminal enterprise" and called its constitutionally protected Second Amendment agenda "poisonous." She stated explicitly that, once elected, she would use the New York Not-for-Profit Corporation Law to "target" the NRA.

33.      As the New York Court of Appeals has acknowledged, proof of intent in these

---

[42] *See Yick Wo v. Hopkins*, 118 U.S. 356, 373-74 (1886); *303 West 42nd St. v. Klein*, 46 N.Y.2d 686 (1979).

[43] *303 West 42nd St. v. Klein*, 46 N.Y.2d 686 (1979).

[44] *Id.*; *Reno v. American-Arab Anti-Discrimination Committee*, 525 U.S. 471 (1999).

[45] *People v. Utica Daw's Drug Co.*, 16 A.D.2d 12, 19 (4th Dep't 1962).

151

matters is often hard for a defendant to come by, but here it permeates the public record. Proof of intent may also be found by a "showing of a grossly disproportionate incidence of nonenforcement against others similarly situated in all relevant respects save for" the impermissible motive.[46]

34.     While the totality of the NYAG's enforcement history against non-profits is not a matter of easily searchable public record, an exhaustive search of its press releases, consent orders, publicly filed enforcement actions, and news articles stretching back more than 20 years yields not a single example where the NYAG has sought outright dissolution of any non-profit corporation (or a for-profit one, for that matter), based solely on allegations of executive misconduct and lack of oversight. This was true regardless of whether the alleged looting was board-sanctioned or not, regardless of whether the transgressor allegedly controlled the board, regardless of whether the corporation had deficient policies and procedures, regardless of the amount allegedly looted, regardless of whether the looting *completely depleted the assets of the corporation*, regardless of whether it was tied to illegal activity such as kickback schemes and money laundering, regardless of whether the individual defendants pled guilty to crimes, regardless of whether it resulted in false filings made with State regulators, and regardless of whether the corporation was no longer able to continue its purpose. James could not identify one relevant example at her press conference. Likewise, the NRA has not identified a single such action where dissolution was sought on the basis that governance reforms would allegedly be futile.

35.     Fatally for the NYAG, the Complaint identifies no basis for its extreme departure from its decades-long enforcement practice.

**F.     New York's Not-for-Profit Law's Dissolution Provisions are Unconstitutional As-Applied to Political Entities Like the NRA.**

---

[46] *Klein*, 46 N.Y.2d 686 (1979).

152

Case 21-30085-hdh11 Doc 307-2 Filed 03/06/21 Entered 03/06/21 05:43:57 Page 156 of
173

36.     Although the NYAG has never before alleged, and no New York court has ever

held, that executive misconduct alone constitutes the persistent corporate fraud necessary to sustain

a dissolution action, James now seeks a dissolution order based on this theory.

37.     Given the NRA's constitutionally protected activity, James must demonstrate that

dissolution is "the least restrictive means of achieving a compelling state interest."[47]

38.     The Complaint identifies no compelling state interest; rather, it relies on the

general *parens patriae* principles underlying non-profit laws that ensure charities perform in the

public interest.  Nor does the NYAG explain how dissolving rather than reforming the NRA will

be in the interest of its millions of members, who will find themselves deprived of their political

voice.

39.     The NYAG's long enforcement history demonstrates that dissolution is not the

least restrictive means to ensuring that non-profits serve the public interest.[48]  In every prior

instance where non-profit executives were accused of looting corporate assets, the NYAG has

---

[47] *Thomas v. Review Bd. of Indiana Employment Sec.*, 450 U.S. 707, 719 (1981).

[48] This has also been the consensus of various legal commentators. As constitutional scholar Jonathan Turley noted, where other instances of self-dealing and even outright racketeering at identified by officials at politically engaged non-profits The United Way and the Teamsters Union, "[n]o prosecutor would have dreamed of dissolving [them]." And indeed, no dissolution was sought in either case. Jonathan Turley, The Tragic Irony of the New York State Lawsuit Against the NRA, THE HILL (Op-Ed). Alan Z. Rozenstein of Lawfare noted, "a lawsuit threatening to destroy any major political group should be held to a high standard. In particular, the government should bend over backwards, even while it enforces the law, to preserve the institution if at all possible . . . [b]ut the priority should be reform, not dissolution. To seek dissolution, especially out of the gate, is to ignore the millions of Americans for whom the NRA is a vital avenue for political participation.    [S]eeking such a radical remedy every time that occurs would clearly go beyond what the legislature intended, and what good public policy countenances. The breadth of the law only makes sense if paired with discretion on the part of those who enforce it."" Alan Z. Rozenstein, The Attempt to Dissolve the NRA Threatens Democratic Norms, LAWFARE (Aug. 11, 2020). Noah Feldman, another constitutional law scholar noted that "If an organization has really fallen into a condition of fundamental corruption, a state attorney general can demand it get new leaders, or replace its board of directors and its management in their entirety   But asking the court not to order reform of the organization, but to dismantle and dissolve it altogether, creates the impression that the attorney general is trying to use the legal system to intervene in the very political dispute in which the NRA is such an important player: the fight over Second Amendment rights and gun control." Noah Feldman New York's Attorney General Shouldn't Dismantle the NRA, BLOOMBERG (Aug. 6, 2020), https://www.bloomberg.com/opinion/articles/2020-08- 06/new-york-s-attorney-general-shouldn-t-dismantle-nra-in-lawsuit.

153

Case 21-30085-hdh11 Doc 307-2 Filed 03/06/21 Entered 03/06/21 05:43:57 Page 157 of
173

always worked with the non-profit to implement reform measures that strengthen corporate governance in order to prevent looting from occurring in the future and to allow the non-profit to continue performing its charitable purpose.

40.     The Complaint contains only one sentence concerning NRA reform, stating without any supporting facts that reform would be "futile."[49] Such an allegation is contradicted by the remainder of the Complaint.  Indeed, the setup of the NRA's governance structure is so extensive the Complaint requires over 70 paragraphs just to describe it.[50]   The organization encompasses 11 divisions, each overseen by the Executive Vice President.  The NRA's bylaws establish a 76-member board of directors to have general oversight of the organization.  The bylaws also establish a leadership structure of eight officers, six of whom are elected annually by the Board.  Five of these officers are ex officio members of the Board but lack voting power.  The Board is aided by "dozens of standing and Special Committees," including an officer compensation committee, a nominating committee, an executive committee, and an audit committee (with its own charter).  The NRA has formalized policies maintained in an employee handbook and a Board policy manual, including policies and procedures on employee selection, compensation, time off, work standards, insurance and pension benefits, a statement of corporate ethics, purchase policy, a contract review policy, travel and business expense reimbursement policy, an officer and board of directors policy on disclosure of conflicts of interest, a conflict of interest and related party transaction policy that requires financial and conflict of interest disclosures by directors, officers and employees, and a new whistleblower policy.

41.     Despite framing the NRA as a fraudulent organization beyond repair, the

---

[49] Complaint at ¶ 663.

[50] Complaint at ¶¶ 60-132.

154

Complaint in fact extensively documents and makes the case that the NRA has undertaken efforts to improve its internal governance functions up to the present day. The Complaint is replete with allegations concerning dissident board members who acted as whistleblowers and were focused on reform as well as the introduction of more robust policies inrecent years; and it avers the current treasurer has been investigating the alleged malfeasance by the former treasurer and has implemented stricter controls.[51]

42.     James's threatened, and actual, regulatory and civil reprisals are a blatant and malicious retaliation campaign against the NRA and its constituents based on her disagreement with the content of their speech.  This wrongful conduct threatens to destroy the NRA and chill the speech of the NRA, its members, and other constituents, including like-minded groups and their members.

43.     Notwithstanding that the NRA was already in the process of undertaking an expensive internal audit of its compliance with New York's non-profit law, James commenced her investigations and this action against the NRA with the sole purpose of seeking to dissolve a political enemy. This pretextual "investigation" not only caused the NRA to incur millions of dollars in unnecessary expenditures, James then turned around and used those expenditures as the basis to claim a violation of New York's Prudent Management of Institutional Funds Act in support of the NRA's dissolution. The NRA will now incur more needless debt litigating a dissolution action that, in essence, will require litigation regarding actions the NRA has already commenced against vendors and other wrongdoers.

## I.     AS AND FOR A FIRST COUNTERCLAIM
**(Violation of the NRA's First and Fourteenth Amendment Rights Under 42 U.S.C. § 1983
by Retaliating Against the NRA Based on Its Speech Against James in her Official and
Individual Capacities)**

---

[51] Complaint at ¶ 98 and Ex. B.

155

44.     The NRA repeats and re-alleges each and every allegation in the preceding
paragraphs 1-43 as though fully set forth herein.

45.     42 U.S.C. § 1983 provides, in pertinent part, that "[e]very person who, under color
of any statute, ordinance, regulation, custom, or usage, of any State ... ,subjects, or causes to be
subjected, any citizen of the United States or other person within the jurisdiction thereof to the
deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall
be liable to the party injured in an action at law, suit in equity, or other proper proceeding for
redress ...." 42 U.S.C. § 1983.

46.     James is a "person" subject to a claim under 42 U.S.C. § 1983.

47.     The Fourteenth Amendment to the United States Constitution includes the "Equal
Protection Clause," which prohibits New York State from "deny[ing] to any person within its
jurisdiction the equal protection of the laws."

48.     The NRA is a person within New York's jurisdiction pursuant to the Fourteenth
Amendment of the United States Constitution.

49.     The First Amendment, which applies to James by operation of the Fourteenth
Amendment, secures the NRA's right to free speech, including its right to express political beliefs
concerning the constitutionally protected right to keep and bear arms.

50.     The NRA has a longstanding history of political advocacy advancing the Second
Amendment rights of all Americans. Although James disagrees with and opposes the NRA's
political views, the NRA's freedom to express its views is a fundamental right protected by the
First Amendment.

51.     James's actions as NYAG—including, but not limited to, the investigation into the
NRA's tax-exempt status—were done under color of state law and undertaken directly in response

156

FILED: NEW YORK COUNTY CLERK 02/23/2021 11:14 PM
NYSCEF DOC. NO. 230

INDEX NO. 451625/2020
RECEIVED NYSCEF: 02/23/2021

Case 21-30085-hdh11 Doc 307-2 Filed 03/06/21 Entered 03/06/21 05:43:57 Page 160 of
173

to, and substantially motivated by, the NRA's political speech regarding the right to keep and bear arms as guaranteed by the Second Amendment. James has acted with the intent to obstruct, chill, deter, and retaliate against the NRA's core political speech, which is protected by the First Amendment.

52.     James maintains discretion in determining whether and how to carry out her actions, including the decision to initiate a wrongful investigation into the NRA's business practices and whether to seek dissolution. James chose to exercise her discretion to harm the NRA based on the content of the NRA's speech regarding the Second Amendment.

53.     James's unlawful and intentional actions are not justified by a substantial or compelling government interest and are not narrowly tailored to serve any such interest. The remedy of dissolution is not the least restrictive means of achieving any such interest.

54.     James's intentional actions have resulted in significant damage to the NRA, including but not limited to, reputational harm, as well as injury to the NRA's trade, business, or profession.

55.     The NRA is entitled to a declaratory judgment that James has violated its First Amendment rights.

56.     The NRA is also entitled to an award of damages in an amount to be determined by the trier of fact.

57.     The NRA is also entitled to an award of attorneys' fees and costs pursuant to New York Civil Practice Law and Rules § 8601.

58.     In addition to the above-described damages, absent an injunction against James's violation of the NRA's rights to free speech, the NRA will suffer irrecoverable loss and irreparable harm. First, "[w]hen an alleged deprivation of a constitutional right is involved, most courts hold

157

that no further showing of irreparable injury is necessary." *Hartford Courant Company, LLC v. Carroll*, 986 F.3d 211, 224 (2d Cir. 2021) (citation omitted); *see also, e.g., Time Square Books, Inc. v. City of Rochester*, 223 A.D.2d 270, 278 (4th Dep't 1996) ("Infringement of the constitutionally guaranteed right of free expression, 'for even minimal periods of time, unquestionably constitutes irreparable injury.'") (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)). Because the NRA has established a probable violation of its First Amendment rights, it has established irreparable harm. Second, if an injunction does not issue, the NRA will suffer irreparable harm because it will be dissolved, losing significant amounts of revenue that will be difficult to quantify after the fact. *E.g.*, *Willis of NY., Inc. v. DeFelice*, 299 A.D.2d 240, 242 (1st Dep't 2002) (irreparable damage shown where, "in the absence of a restraint[,] plaintiffs would likely sustain a loss of business impossible, or very difficult, to quantify"). Finally, the equities clearly weigh in favor of the NRA, because absent injunctive relief, its and its members' rights under the U.S. Constitution will continue to be violated, but James, to the contrary, will suffer no prejudice should her continued unconstitutional actions be enjoined.

## II.   AS AND FOR A SECOND COUNTERCLAIM
### (Violation of the NRA's Rights Under Article I, Section 8 of the New York State Constitution by Retaliating Against the NRA Based on Its Speech Against James in her Official and Individual Capacities)

59.     The NRA repeats and re-alleges each and every allegation in the preceding paragraphs 1-58 as though fully set forth herein.

60.     Article I, Section 8 of the New York Constitution provides in relevant part: "[e]very citizen may freely speak, write and publish his or her sentiments on all subjects, being responsible for the abuse of that right; and no law shall be passed to restrain or abridge the liberty of speech or of the press."

61.     Article I, Section 8 of the New York State Constitution secures the NRA's right to

158

free speech, including its right to express political beliefs concerning the constitutionally protected right to keep and bear arms.

62.     The NRA has a longstanding history of political advocacy advancing the Second Amendment rights of all Americans. Although James disagrees with and opposes the NRA's political views, the NRA's freedom to express its views is a fundamental right protected by the New York Constitution.

63.     James's actions as NYAG—including, but not limited to, the investigation into the NRA's tax-exempt status—were done under color of state law and undertaken directly in response to and substantially motivated by the NRA's political speech regarding the right to keep and bear arms. James has acted with the intent to obstruct, chill, deter, and retaliate against the NRA's core political speech, which is protected by the New York Constitution.

64.     James maintains discretion in determining whether and how to carry out her actions, including the decision to initiate a wrongful investigation into the NRA's business practices and whether to seek dissolution. James chose to exercise her discretion to harm the NRA based on the content of the NRA's speech regarding the Second Amendment.

65.     James's unlawful and intentional actions are not justified by a substantial or compelling government interest and are not narrowly tailored to serve any such interest.

66.     The remedy of dissolution is not the least restrictive means of achieving any such interest.

67.     James's intentional actions have resulted in significant damage to the NRA, including, but not limited to, damage due to reputational harm, as well as injury to the NRA's trade, business, or profession.

68.     The NRA is entitled to a declaratory judgment that James has violated its rights

159

under the New York State Constitution.

69.     The NRA is also entitled to an award of damages in an amount to be determined by the trier of fact.

70.     The NRA is also entitled to an award of attorneys' fees and costs pursuant to New York Civil Practice Law and Rules § 8601.

71.     In addition to the above-described damages, absent an injunction against James's violation of the NRA's rights to free speech, the NRA will suffer irrecoverable loss and irreparable harm.  The NRA has established a probable violation of its rights under the New York Constitution, and has therefore established irreparable harm.  Moreover, if an injunction does not issue, the NRA will suffer irreparable harm because it will be dissolved, losing significant amounts of revenue that will be difficult to quantify after the fact.  Finally, the equities clearly weigh in favor of the NRA, because absent injunctive relief, its and its members' rights under the New York Constitution will continue to be violated, but James, to the contrary, will suffer no prejudice should her continued unconstitutional actions be enjoined.

### III.     AS AND FOR A THIRD COUNTERCLAIM
**(Violation of the NRA's First and Fourteenth Amendment Rights Under 42 U.S.C. § 1983 by Retaliating Against the NRABased on Its Members' Exercise of Association Rights Against James in her Official and Individual Capacities)**

72.     The NRA repeats and re-alleges each and every allegation in the preceding paragraphs 1-71 as though fully set forth herein.

73.     The First Amendment, which applies to James by operation of the Fourteenth Amendment recognizes and protects the right to freedom of association.

74.     James is a "person" subject to a claim under 42 U.S.C. § 1983.

75.     The NRA is a person within New York's jurisdiction pursuant to the Fourteenth Amendment of the United States Constitution.

160

76.     The NRA's more than five million members are an association that desires to engage in advocacy, expression and protection of Second Amendment rights.

77.     James's intentional actions are designed to punish the NRA and its members for associating to engage in Second Amendment advocacy and to chill NRA members' future exercise of such freedom of association and have resulted in and will continue to result in significant damage to the NRA, including, but not limited to, damage due to reputational harm, as well as injury to the NRA's trade, business, or profession.

78.     The NRA is entitled to a declaratory judgment that James has violated its First Amendment rights.

79.     The NRA is also entitled to an award of damages in an amount to be determined bythe trier of fact.

80.     The NRA is also entitled to an award of attorneys' fees and costs pursuant to New York Civil Practice Law and Rules § 8601.

81.     In addition to the above-described damages, absent an injunction against James's violation of the NRA's rights to free association, the NRA will suffer irrecoverable loss and irreparable harm.  The NRA has established a probable violation of its rights under the First Amendment, and has therefore established irreparable harm.  Moreover, if an injunction does not issue, the NRA will suffer irreparable harm because it will be dissolved, losing significant amounts of revenue that will be difficult to quantify after the fact.  Finally, the equities clearly weigh in favor of the NRA, because absent injunctive relief, its and its members' rights under the U.S. Constitution will continue to be violated, but James, to the contrary, will suffer no prejudice should her continued unconstitutional actions be enjoined.

### IV.    AS AND FOR A FOURTH COUNTERCLAIM
**(Violation of the NRA's Rights Under Article I, Section 9 of the New York State Constitution by Retaliating Against the NRA Based on Its Members' Exercise of**

161

FILED: NEW YORK COUNTY CLERK 02/23/2021 11:14 PM
INDEX NO. 451625/2020
NYSCEF DOC. NO. 230
RECEIVED NYSCEF: 02/23/2021

Case 21-30085-hdh11 Doc 307-2 Filed 03/06/21 Entered 03/06/21 05:43:57 Page 165 of
173

**Association Rights Against James in her Official and Individual Capacities)**

82.    The NRA repeats and re-alleges each and every allegation in the preceding paragraphs 1-81 as though fully set forth herein.

83.    Article I, Section 9 of the New York State Constitution recognizes and protects the right to freedom of association, providing in relevant part: "No law shall be passed abridging the rights of the people peaceably to assemble and to petition the government …."

84.    The NRA's more than five million members are an association that desires to engage in advocacy, expression and protection of Second Amendment rights, including but not limited to, petitioning the government.

85.    James's intentional actions are designed to punish the NRA and its members for associating to engage in Second Amendment advocacy and to chill NRA members' future exercise of such freedom of association. Such actions have resulted in, and will continue to result in, significant damage to the NRA, including, but not limited to, damage due to reputational harm, as well as injury to the NRA's trade, business, or profession.

86.    The NRA is entitled to a declaratory judgment that James has violated its rights under the New York State Constitution.

87.    The NRA is also entitled to an award of damages in an amount to be determined by the trier of fact.

88.    The NRA is also entitled to an award of attorneys' fees and costs pursuant to New York Civil Practice Law and Rules § 8601.

89.    In addition to the above-described damages, absent an injunction against James's violation of the NRA's rights to free association, the NRA will suffer irrecoverable loss and irreparable harm. The NRA has established a probable violation of its rights under the New York Constitution, and has therefore established irreparable harm. Moreover, if an injunction does not

162

FILED: NEW YORK COUNTY CLERK 02/23/2021 11:14 PM
NYSCEF DOC. NO. 230

INDEX NO. 451625/2020

RECEIVED NYSCEF: 02/23/2021

Case 21-30085-hdh11 Doc 307-2 Filed 03/06/21   Entered 03/06/21 05:43:57   Page 166 of
173

issue, the NRA will suffer irreparable harm because it will be dissolved, losing significant amounts of revenue that will be difficult to quantify after the fact. Finally, the equities clearly weigh in favor of the NRA, because absent injunctive relief, its and its members' rights under the New York Constitution will continue to be violated, but James, to the contrary, will suffer no prejudice should her continued unconstitutional actions be enjoined.

### V.   AS AND FOR A FIFTH COUNTERCLAIM
**(Selective Enforcement of N.Y. Not-for-Profit Corporation Law Against the NRA in Violation of the Fourteenth Amendment Against James in her Official and Individual Capacities)**

90.     The NRA repeats and re-alleges each and every allegation in the preceding paragraphs 1-89 as though fully set forth herein.

91.     The NRA is a person within New York's jurisdiction pursuant to the Fourteenth Amendment of the United States Constitution.

92.     The Equal Protection Clause of the Fourteenth Amendment prohibits State actors from uneven application of the law based on an impermissible standard. Discrimination based on political speech is such an impermissible standard.

93.     James's decision to seek dissolution of the NRA, for the very first time on the sole basis of executive misconduct, despite more than two decades of non-enforcement against similarly situated non-profits, demonstrates selective enforcement of the not-for-profit law. James's repeated hostile statements regarding the NRA demonstrate that this selective enforcement has occurred on the impermissible basis of the NRA's disfavored political speech.

94.     The NYAG routinely announces investigations it is conducting, and since James took office, it has announced no investigations into other New York-based non-profits for similar alleged misconduct.

95.     The NRA is entitled to a declaratory judgment that James has violated its

163

Fourteenth Amendment rights.

96.     The NRA is also entitled to dismissal of the Complaint.

97.     The NRA is also entitled to an award of damages in an amount to be determined by the trier of fact.

98.     The NRA is also entitled to an award of attorneys' fees and costs pursuant to New York Civil Practice Law and Rules § 8601.

99.     In addition to the above-described damages, absent an injunction against James's violation of the NRA's equal protection rights, the NRA will suffer irrecoverable loss and irreparable harm.  The NRA has established a probable violation of its rights under the Fourteenth Amendment, and has therefore established irreparable harm.  Moreover, if an injunction does not issue, the NRA will suffer irreparable harm because it will be dissolved, losing significant amounts of revenue that will be difficult to quantify after the fact.  Finally, the equities clearly weigh in favor of the NRA, because absent injunctive relief, its and its members' rights under the U.S. Constitution will continue to be violated, but James, to the contrary, will suffer no prejudice should her continued unconstitutional actions be enjoined.

## VI.     AS AND FOR A SIXTH COUNTERCLAIM
### (Selective Enforcement of N.Y. Not-for-Profit Corporation Law Against the NRA in Violation of Article I, Section 11of the New York State Constitution Against James in her Official and Individual Capacities)

100.     The NRA repeats and re-alleges each and every allegation in the preceding paragraphs 1-99 as though fully set forth herein.

101.     Pursuant to the Equal Protection Clause set forth in Article I, Section 11 of the New York Constitution, "[n]o person shall be denied the equal protection of the laws of [New York] state or any subdivision thereof."

102.     The NRA is a "person" within the meaning of the Equal Protection Clause in the

164

FILED: NEW YORK COUNTY CLERK 02/23/2021 11:14 PM
NYSCEF DOC. NO. 230
INDEX NO. 451625/2020
RECEIVED NYSCEF: 02/23/2021

Case 21-30085-hdh11 Doc 307-2 Filed 03/06/21 Entered 03/06/21 05:43:57 Page 168 of
173

New York Constitution.

103.     Article I, Section 11 of the New York State Constitution prohibits State actors from uneven application of the law based on an impermissible standard. Discrimination based on political speech is such an impermissible standard.

104.     James's decision to seek dissolution of the NRA, for the very first time on the sole basis of executive misconduct, despite more than two decades of non-enforcement against similarly situated non-profits, demonstrates selective enforcement of the not-for-profit law. James's repeated hostile statements regarding the NRA demonstrate that this selective enforcement has occurred on the impermissible basis of the NRA's disfavored political speech.

105.     NYAG routinely announces investigations it is conducting, and since James took office, it has announced no other investigations into other New York-based non-profits for similar alleged misconduct.

106.     The NRA is entitled to a declaratory judgment that James has violated its rights under the New York State Constitution.

107.     The NRA is also entitled to dismissal of this Complaint.

108.     The NRA is also entitled to an award of damages in an amount to be determined by the trier of fact.

109.     The NRA is also entitled to an award of attorneys' fees and costs pursuant to New York Civil Practice Law and Rules § 8601.

110.     In addition to the above-described damages, absent an injunction against James's violation of the NRA's equal protection rights, the NRA will suffer irrecoverable loss and irreparable harm.  The NRA has established a probable violation of its rights under the New York

165

Constitution, and has therefore established irreparable harm. Moreover, if an injunction does not

issue, the NRA will suffer irreparable harm because it will be dissolved, losing significant amounts

of revenue that will be difficult to quantify after the fact. Finally, the equities clearly weigh in

favor of the NRA, because absent injunctive relief, its and its members' rights under the New York

Constitution will continue to be violated, but James, to the contrary, will suffer no prejudice should

her continued unconstitutional actions be enjoined.

## VII.   AS AND FOR A SEVENTH COUNTERCLAIM
### (Declaratory Judgment Against James in her Official and Individual Capacities)

111.    The NRA repeats and re-alleges each and every allegation in the preceding

paragraphs 1-110 as though fully set forth herein.

112.    The First Amendment requires that state actions infringing on such a right be

warranted by a compelling state interest and accomplished by the least restrictive means.

113.    Pursuant to CPLR 3001, in pertinent part, "the [New York State] supreme court

may render a declaratory judgment having the effect of a final judgment as to the rights and other

legal relations of the parties to a justiciable controversy whether or not further relief is or could be

claimed."

114.    Dissolving an entity like the NRA that is engaged in constitutionally protected

activity is not warranted by a compelling state interest and is not the least restrictive means of

achieving any alleged compelling state interest.

115.    James seeks, under color of state law, to impute the actions of four individuals to

over five million members and subject them to statutory dissolution liability on a theory of

corporate fraud or alternately under laws allowing dissolution where executives have looted a

corporation, despite clear court precedent disallowing such a severe remedy. Any such reading of

New York's Not-for-Profit Law Sections 1101 or 1102 would be unconstitutional when applied to

166

organizations such as the NRA that are engaged in constitutionally protected speech.

116.    The NRA is entitled to a declaratory judgment that allegations of executive

misconduct do not constitute corporate fraud or criminality and that Sections 1101 and 1102 are

unconstitutional as-applied to the NRA absent such a showing.

## DEMAND FOR JURY TRIAL

117.    The NRA hereby demands a trial by jury on all issues so triable.

## REQUEST FOR RELIEF

WHEREFORE the NRA respectfully requests that the Court enter judgment in the NRA's

favor and against James, as follows:

a.    Dismissing this action in its entirety, and awarding Defendant its costs and

expenses of this action;

b.    Declaring, pursuant to CPLR § 3001, that James violated the NRA's rights to free

speech under both the United States and New York State Constitutions;

c.    Declaring, pursuant to CPLR § 3001, that James violated the NRA's equal

protection rights under both the United States and New York State Constitutions;

d.    Declaring, pursuant to CPLR § 3001, that James violated the NRA members'

rights to free association under both the United States and New York State Constitutions;

e.    Declaring that Sections 1101 and 1102 of New York's Not-for-Profit Law are

unconstitutional insofar as they may be used—as the NYAG attempts to do here—to dissolve

organizations engaged in constitutionally protected activities based solely on allegations of

executive looting;

f.    Granting a preliminary and permanent injunction preventing the NYAG from

further pursuing its dissolution causes of action;

g.    Granting a preliminary and permanent injunction, ordering James, the NYAG's

167

FILED: NEW YORK COUNTY CLERK 02/23/2021 11:14 PM
NYSCEF DOC. NO. 230

INDEX NO. 451625/2020
RECEIVED NYSCEF: 02/23/2021

Case 21-30085-hdh11 Doc 307-2 Filed 03/06/21 Entered 03/06/21 05:43:57 Page 171 of
173

Charities Bureau, its agents, representatives, employees and servants and all persons and entities in concert or participation with it and James (in her official capacity), to immediately cease and refrain from engaging in any further conduct or activity which has the purpose or effect of interfering with the NRA's exercise of the rights afforded to it under the First Amendment to the United States Constitution and Sections 8, 9 and 11 of the New York State Constitution;

  h.  Granting such other injunctive or equitable relief to which the NRA is entitled;

  i.  Awarding the NRA actual damages, including compensatory and consequential damages, in an amount to be determined at trial;

  j.  Awarding the NRA exemplary or punitive damages;

  k.  Awarding the NRA pre-judgment and post-judgment interest at the highest lawful rates;

  l.  Awarding the NRA such costs and disbursements as are incurred in prosecuting this action, including reasonable attorneys' and experts' fees; and

  m.  Granting the NRA such other and further relief as this Court deems just and proper.

Dated: February 23, 2021

By: /s/ Sarah B. Rogers _____
  William A. Brewer III
  wab@brewerattorneys.com
  Sarah B. Rogers
  sbr@brewerattorneys.com

**BREWER, ATTORNEYS & COUNSELORS**
750 Lexington Avenue, 14th Floor
New York, New York 10022
Telephone: (212) 489-1400
Facsimile: (212) 751-2849

168

Case 21-30085-hdh11 Doc 307-2 Filed 03/06/21 Entered 03/06/21 05:43:57 Page 172 of
173

**ATTORNEYS FOR DEFENDANT
THE NATIONAL RIFLE ASSOCIATION**

169

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

PEOPLE OF THE STATE OF NEW §
YORK, BY LETITIA JAMES, §
ATTORNEY-GENERAL OF THE STATE §
OF NEW YORK §
§ **INDEX NO.  451625/2020**
                    **Plaintiff,** §
§ Hon. Joel M. Cohen
.v. §
§
**THE NATIONAL RIFLE ASSOCIATION** §
**et al.,** §
§
                    **Defendants.** §

## VERIFICATION

Willes Lee, being duly sworn, deposes and says:

I am the Second Vice President of the National Rifle Association of America, the

defendant in the above-entitled action which is a corporation created under and by virtue of the

laws of the State of New York.  I have read the foregoing Original Verified Answer and state that

it is true to my knowledge, except as to matters alleged on information and belief, and that as to those

matters I believe it to be true.

_Willes K. Lee_
Willes K. Lee

Subscribed and sworn before me
This ____ day of February 2021.

GraceMarie Neary
NOTARY PUBLIC
Commonwealth of Virginia
Reg. # 346106
Com. Exp. Dec. 31, 2024

Notary Public

City/County of Arlington
Commonwealth of Virginia
Subscribed and sworn to before me
this 23rd day of February, 2031
by Willes K. Lee
_____ Notary Public
Reg # 346106  Com Exp Dec 31, 2024