Louis R. Strubeck, Jr. (SBT 19425600)
Kristian W. Gluck (SBT 24038921)
Scott P. Drake (SBT 24026812)
Laura L. Smith (SBT 24066039)
Nick Hendrix (SBT 24087708)
NORTON ROSE FULBRIGHT US LLP
2200 Ross Avenue, Suite 3600
Dallas, TX 75201-7932
Telephone: (214) 855-8000
Facsimile: (214) 855-8200
louis.strubeck@nortonrosefulbright.com
kristian.gluck@nortonrosefulbright.com
scott.drake@nortonrosefulbright.com
laura.smith@nortonrosefulbright.com
nick.hendrix@nortonrosefulbright.com

PROPOSED COUNSEL FOR THE OFFICIAL
COMMITTEE OF UNSECURED CREDITORS

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF TEXAS
# DALLAS DIVISION

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| NATIONAL RIFLE ASSOCIATION OF AMERICA AND SEA GIRT LLC, | § § | Case No. 21-30085-hdh11 |
| | § | |
| Debtors[1]. | § | Jointly Administered |

**THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS' OBJECTION TO DEBTORS' APPLICATION FOR ENTRY OF ORDER PURSUANT TO SECTIONS 105(a), 327(e), 329 AND 1107(b) OF THE BANKRUPTCY CODE AUTHORIZING AND APPROVING THE EMPLOYMENT AND RETENTION EFFECTIVE AS OF THE PETITION DATE OF BREWER, ATTORNEYS & COUNSELORS AS SPECIAL COUNSEL FOR THE DEBTORS AND DEBTORS IN POSSESSION**

TO THE HONORABLE HARLIN D. HALE,
UNITED STATES BANKRUPTCY JUDGE:

The Official Committee of Unsecured Creditors (the "Committee") for the above-captioned chapter 11 cases (the "Chapter 11 Cases") of the National Rifle Association of America (the "NRA") and Sea Girt LLC (collectively, the "Debtors"), through the Committee's proposed counsel, Norton Rose Fulbright US LLP, respectfully submits this objection (the "Objection") to

---

[1] The last four digits of the Debtors' taxpayer identification numbers are: 6130 (NRA) and 5681 (Sea Girt). The Debtors' mailing address is 11250 Waples Mill Road, Fairfax, Virginia 22030.

101890425.9                                                              1

the *Debtors' Application for Entry of an Order Pursuant to Sections 105(a), 327(e), 328(a), 329, and 1107(b) of the Bankruptcy Code Authorizing and Approving the Employment and Retention Effective as of the Petition Date of Brewer, Attorneys & Counselors* (the "Brewer Firm" or "BAC") *as Special Counsel for the Debtors and Debtors in Possession* (the "Brewer Application") [Dkt. No. 84].  In further support of the Objection, the Committee respectfully represents as follows:

## PRELIMINARY STATEMENT

1.  There are a myriad of serious issues with the Brewer Firm and its continued participation at the level proposed in these bankruptcy proceedings.  While the Brewer Firm has attempted to minimize any perceived dangers from its ongoing representation of the Debtors by seeking to be employed under section 327(e) as simply "special counsel," the proposed scope of the Brewer Firm's employment as set forth in the Brewer Application clearly demonstrates that the Brewer Firm desires and would have anything but a limited role and hopes to maintain its hold and control over the Debtors and to direct the future path of these Chapter 11 Cases.  However, because of the Brewer Firm's apparent conflicts of interest as well as the existence of potential valuable estate causes of action against the Brewer Firm, the Brewer Firm cannot meet the required standard for its desired role as section 327(a) bankruptcy counsel, a role that has also already been filled by two other law firms that frankly lack any of the infirmities that plague the Brewer Firm.  While the Committee is understandably circumspect to support any involvement of the Brewer Firm in these Chapter 11 Cases, it concedes that in some extremely limited circumstances, it may be appropriate to allow the Brewer Firm to be employed as true section 327(e) special counsel, but only in litigation where the Brewer Firm does not have a conflict and only where it would be highly inefficient and prejudicial to the Debtors and its creditors for substitute counsel to be retained at this stage.

## JURISDICTION AND VENUE

2. The Court has jurisdiction over the Brewer Application pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

3. Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## BACKGROUND

4. On January 15, 2021 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief pursuant to chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Northern District of Texas, Dallas Division (the "Court").

5. The Debtors continue to operate their business as debtors-in-possession pursuant to Bankruptcy Code sections 1107(a) and 1108.

6. On January 29, 2021, the Debtors filed the Brewer Application and the *Application for an Order Authorizing the Retention and Employment of Neligan LLP* (the "Neligan Firm") *as Counsel to the Debtor* (the "Neligan Application") [Dkt. No. 82].[2]

7. On February 4, 2021, the United States Trustee for the Northern District of Texas (the "U.S. Trustee") appointed the Committee pursuant to section 1102 of the Bankruptcy Code.[3] *See* Dkt. No. 105.

8. On February 8, 2021, the Committee selected Norton Rose Fulbright US LLP as counsel, subject to Court approval. On February 11, 2021, the Committee selected AlixPartners as its financial advisor, subject to Court approval.

---

[2] On March 1, 2021, the Debtors filed an *Amended Declaration of Patrick J. Neligan, Jr. in Support of Application for an Order Authorizing the Retention and Employment of Neligan LLP as Counsel to the Debtors* [Dkt. No. 267].

[3] The Committee is comprised of the following entities: (a) the Pension Benefit Guaranty Corp.; (b) Ackerman McQueen, Inc.; (c) InfoCision, Inc.; (d) Stone River Gear, LLC; and (e) David Dell'Aquila [Dkt. No. 105].

9. On February 10, 2021, the Debtors filed the *Debtors' Application for Entry of an Order Authorizing and Approving the Employment of Garman Turner Gordon LLP* (the "Garman Firm") *as Chapter 11 Co-Counsel for the Debtors* (the "Garman Application") [Dkt. No. 132].

10. On February 16, 2021, the U.S. Trustee filed the *United States Trustee's Objection to Debtors' Application for Entry of an Order Pursuant to Sections 105(a), 327(e), 328(a), 329, and 1107(b) of the Bankruptcy Code Authorizing and Approving the Employment and Retention Effective as of the Petition Date of Brewer, Attorneys & Counselors* (the "UST Objection") [Dkt. No. 166].

11. On February 19, 2021, Ackerman McQueen, Inc. ("Ackerman") filed *Ackerman McQueen, Inc.'s Objection to Debtors' Application for Entry of Order pursuant to Sections 105(a), 327(e), 329, and 1107(b) of the Bankruptcy Code Authorizing and Approving the Employment and Retention Effective as of the Petition Date of Brewer Attorneys & Counselors as Special Counsel for the Debtors and Debtors in Possession [ECF 84] ("the Brewer Application") and Joinder in the United States Trustee' Objection to the Brewer Application [ECF 166]* (the "Ackerman Objection/Joinder") [Dkt. Nos. 193 & 198].

12. On March 1, 2021, David Dell'Aquila ("Mr. Dell'Aquila") filed *David Dell'Aquila's Objection to Debtors' Application for Entry of Order Pursuant to Sections 105(a), 327(e), 328(a), 329, and 1107(b) of the Bankruptcy Code Authorizing and Approving the Employment and Retention Effective as of the Petition Date of Brewer, Attorneys & Counselors as Special Counsel for the Debtors and Debtors in Possession [ECF 84] and Joinder in the United States Trustee's Objection [ECF 166]* (the "Dell'Aquila Objection/Joinder") [Dkt. No. 268].

13. On March 1, 2021, the Committee filed a Comment with respect to the Neligan Application and the Garman Application [Dkt No. 269].

14. On March 9 and [_], 2021, the Bankruptcy Court entered orders granting, respectively, the Neligan Application and the Garman Application.

## OBJECTION TO THE BREWER APPLICATION

15. As set forth in the Brewer Application, the Debtors seek to retain the Brewer Firm as "special counsel" under section 327(e) of the Bankruptcy Code.

16. The U.S. Trustee has filed an especially broad objection to the employment of the Brewer Firm for a multitude of reasons including that: (a) the scope of the Brewer Firm's proposed retention exceeds the parameters of section 327(e) of the Bankruptcy Code; (b) the Brewer Firm is not disinterested, due in part to the fact that the Debtors may have claims and causes of action against the Brewer Firm; (c) even if section 327(e) of the Bankruptcy Code applied, the Brewer Firm has not met the standards to be employed under section 327(e) of the Bankruptcy Code because the Brewer Firm holds or represents an interest adverse to the Debtors and their estates with respect to the matters on which the Brewer Firm is to be employed and the retention of the Brewer Firm is not in the best interests of the estate; and (d) the Brewer Firm has failed to comply with its disclosure obligations under Federal Rule of Bankruptcy Procedure ("Bankruptcy Rule") 2014 and section 329 of the Bankruptcy Code. Ackerman and Mr. Dell'Aquila have joined in the U.S. Trustee's Objection.

17. The Committee shares many of the concerns raised by the U.S. Trustee, Ackerman, and Mr. Dell'Aquila and, given the multitude of serious and incurable issues with the Brewer Application, a compelling case can be that it would be wholly inappropriate for the Brewer Firm to have any involvement in these Chapter 11 Cases. However, the Committee recognizes that to a limited extent some efficiencies could be lost (and the attendant increase in costs to the estates) if the Brewer Firm is not retained as special litigation counsel given its institutional knowledge of

the Debtors' business and legal affairs, and its present involvement in numerous litigation matters on behalf of the NRA. *See Pequeño v. Schmidt*, 2007 U.S. Dist. LEXIS 109444, at *10 (S.D. Tex. 2007) ("Section 327(e) of the Bankruptcy Code promotes economy in administration by recogniz[ing] that continuing the retention of pre-petition counsel/creditors will avoid wasteful expense and delay that might result from having to hire disinterested counsel unfamiliar with the subject matter.") (internal quotations and citations omitted).

18. Accordingly, to the extent the Court doesn't deny the Brewer Application in its entirety, and the Court permits the Brewer Firm to be engaged in a limited capacity, then it should be as true "special counsel" with an extremely narrow focus limited to certain existing prepetition litigation matters wherein the Brewer Firm does not have a conflict. The Brewer Firm, however, should be precluded from serving as general bankruptcy counsel for the Debtors in these Chapter 11 Cases.[4]

A. **The Brewer Firm's Conflicts of Interest Precludes Engagement in the Chapter 11 Cases**

19. The Committee's primary concern with the Brewer Firm's proposed engagement stems from the extremely troubling allegations contained in the lawsuit filed by the New York Attorney General (the "NYAG") in August 2020 against the NRA and others, wherein the NYAG alleges, among other things, numerous and pervasive billing improprieties by the Brewer Firm in connection with its past representations of the NRA. *See People of the State of New York v. The National Rifle Ass'n of Am., et al.*, Index No. 451625/2020 (Sup. Ct. N.Y. Cnty. 2020) (the "NYAG Action"). The inescapable conclusion to these allegations is that, at a minimum, the Brewer Firm clearly is a target for potential estate causes of action, including potentially valuable fraudulent

---

[4] Given the retention of the Neligan Firm and the Garman Firm as 327(a) counsel, there will be no prejudice to the Debtors if the Brewer Firm is not retained as general bankruptcy counsel.

conveyance claims.[5] The allegations against the Brewer Firm, which are serious and material to the NYAG Action – the very lawsuit that precipitated the filing of these Chapter 11 Cases – creates a fatal conflict of interest that eviscerates the Brewer Firm's alleged independence and status as a disinterested professional.

20. In addition to the deeply concerning allegations in the NYAG Action, which facts could give rise to potentially avoidable fraudulent transfer claims, the Brewer Firm received approximately $17.5 million from the Debtors within the ninety days prior to the Petition Date (the "90-Day Payments"), which could give rise to potentially avoidable preference claims.[6]

21. The Committee firmly agrees with the U.S. Trustee that the proposed parameters of the Brewer Firm's engagement are inappropriate here and well outside the scope of Section 327(e) of the Bankruptcy Code, and therefore must be carefully scrutinized under the more stringent requirements of Section 327(a) of the Bankruptcy Code. *See* UST Objection at ¶¶ 30-38.

22. As a starting point, Section 327 of the Bankruptcy Code is rooted in a "congressional intention to hold professionals performing duties for the estate to **strict fiduciary standards**." *See, e.g., In re Envirodyne Indus., Inc.*, 150 B.R. 1008, 1016 (Bankr. N.D. Ill. 1993) (emphasis added). The section's primary policy objective is to ensure that a professional employed

---

[5] The NYAG has alleged that in the three years the Brewer Firm has represented the NRA, the NRA has paid the Brewer Firm $54 million, an extraordinary amount by any measure. The NYAG Action further alleges, among other things, that the Brewer Firm's fees and billing practices raised concerns and requests for fee audits by several NRA insiders, including the Dissident NRA President, the First Vice President, and four members of the NRA Board. *See* NYAG Action, attached to the UST Objection at Ex. A, at ¶¶ 454-474.

[6] As with the allegations in the NYAG Action, which must be fully investigated by the Committee, the facts regarding the 90-Day Payments must also be fully investigated by the Committee. If valid causes of action exist, the Committee will seek standing to assert such causes of action for the benefit of the NRA bankruptcy estate.

in the case will have strict and undivided loyalty to the client. *See In re Lee*, 94 B.R. 172, 178 (Bankr. C.D. Cal. 1988).

23. Specifically, Section 327(a), which is the standard that should be applied to the Brewer Application, requires that an estate professional be "disinterested" and not hold or represent an interest adverse to the estate. 11 U.S.C. § 327(a); *In re 7677 E. Berry Ave. Assocs., L.P.*, 419 B.R. 833, 841 (Bankr. D. Colo. 2009) ("Together, the statutory requirements of disinterestedness and no interest adverse to the estate serve the important policy of ensuring that all professionals appointed pursuant to section 327(a) tender undivided loyalty and provide untainted advice and assistance in furtherance of their fiduciary responsibilities.") (internal quotations and citations omitted). Section 101(14) of the Bankruptcy Code defines a "disinterested person" as a person that "does not have an interest materially adverse to the interest of the estate or any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the debtor, of for any other reason." 11 U.S.C. § 101(14).

24. Although the phrase "hold or represent an interest adverse to the estate" is not defined in the Bankruptcy Code, numerous courts, including those in the Fifth Circuit, employ the following definition developed by *In re Roberts*, 46 B.R. 815 (Bankr. D. Utah 1985), *aff'd in part and rev'd and remanded in part on other grounds*, 75 B.R. 402 (D. Utah 1987):

> (1) to possess or assert any economic interest that would tend to lessen the value of the bankruptcy estate or that would create either an actual or potential dispute in which the estate is a rival claimant; or
>
> (2) to possess a predisposition under circumstances that render . . . a bias against the estate.

*See I.G. Petroleum, L.L.C. v. Fenasci (In re West Delta Oil Co.)*, 432 F.3d 347, 356 (5th Cir. 2005) (citation omitted).

25. In determining whether a professional has or represents an "adverse interest," one court observed that a conflict will be found when a professional has a competing interest that could "affect the performance of their services or which might impair the high degree of impartiality and detached judgment expected of them during the administration of a case." *In re Amdura Corp.*, 121 B.R. 862, 865 (Bankr. D. Colo. 1990).

26. Here, the Brewer Firm holds an interest adverse to the estate as there is, at a minimum, a "potential dispute in which the estate is a rival claimant," specifically potential causes of action that the estate has against the Brewer Firm based on the 90-Day Payments and the allegations contained in the NYAG Action. *West Delta Oil Co.*, 432 F.3d at 356.

27. As discussed in detail in the UST Objection, when an estate professional is the recipient of a potentially avoidable transfer (such as here, a preferential or fraudulent transfer), such professional is not disinterested and will be deemed to hold an interest adverse to the debtor and the estate. *See* UST Objection at ¶¶ 45-46. Indeed, numerous courts have held that if an estate professional has received an avoidable transfer, there is an actual conflict of interest that requires disqualification of the professional. *See In re Pillowtex, Inc.*, 304 F.3d 246, 252 (3d Cir. 2002) ("Where there is an actual conflict of interest. . . disqualification is mandatory. . . [a] preferential transfer to [debtor's counsel] would constitute an actual conflict of interest between counsel and the debtor, and would require the firm's disqualification."); *In re First Jersey Securities Inc.*, 180 F.3d 504 (3rd Cir. 1999) (finding that the holder of an avoidable preference had an actual conflict and was not disinterested).

28. Notably, even when there is only a potential conflict of interest, a bankruptcy court has the discretion and flexibility to disqualify a proposed professional after assessing the severity of the potential conflict. *See Magten Asset. Mgmt. Corp. v. Paul Hastings Janofsky & Walker LLP*

*(In re Northwestern Corp.)*, 346 B.R. 84, 88 (D. Del. 2006) (explaining that that denomination of conflict as "potential" or "actual" and decision concerning whether to disqualify professional based upon that determination in situations not yet rising to level of actual conflict are matters committed to bankruptcy court's sound exercise of discretion).

29. At the very least, when there has been a "facially plausible claim" that a proposed professional received an avoidable transfer, the bankruptcy court should hold a hearing to assess whether a conflict exists before approving a professional's engagement. *See Pillowtex, Inc.,* 304 F.3d at 255 ("[W]hen there has been a facially plausible claim of a substantial preference, the district court and/or the bankruptcy court cannot avoid the clear mandate of the statute by the mere expedient of approving retention conditional on a later determination of the preference issue.").

30. Here, the NYAG Action contains twenty pages alleging various detailed billing improprieties involving the Brewer Firm and the purported failure of the NRA to review and assess the reasonableness of what multiple NRA officers themselves described as the "extraordinary fees the NRA has incurred" by the Brewer Firm. *See* NYAG Action at ¶ 461. The allegations contained in the NYAG Action, taken at face value, would support a "facially plausible claim" that could provide the basis for a possible fraudulent conveyance lawsuit against the Brewer Firm. Similarly, the 90-Day Payments, in light of the fact that the Brewer Application does not provide any *Pillowtex* analysis and otherwise wholly fails to establish why the 90-Day Payments are not preferential transfers, would also support a "facially plausible claim" that could provide the basis for a possible preferential transfer lawsuit against the Brewer Firm.

31. With respect to whether the allegations against the Brewer Firm actually give rise to colorable estate claims that would result in a clear conflict, the Debtors have the burden to address why they believe the allegations against the Brewer Firm would not "affect [the Brewer

Firm's] performance of their services" or "impact the high degree of impartiality and detached judgment expected of them." *Amdura Corp.*, 121 B.R. at 865; *see also In re Big Mac Marine, Inc.*, 326 B.R. 150, 154 (B.A.P. 8th Cir. 2005) (burden is on the debtor to establish that requirements of section 327(a) are satisfied).

32. Despite the obligation to do so, the Brewer Application and supporting declarations are devoid of any discussion regarding the 90-Day Payments or the NYAG's allegations of billing improprieties against the Brewer Firm, much less what, if any, efforts were made by the Debtors and/or the Special Litigation Committee[7] to investigate such claims to determine if the estate has potential claims against the Brewer Firm or to otherwise assess the alleged disinterestedness of the Brewer Firm. Instead, the Brewer Application and accompanying declarations merely recite, in conclusory fashion, that the proposed retention has been examined and approved by the Special Litigation Committee who "firmly and unanimously recommended the retention of the Brewer Firm as special counsel to the Debtors" after finding that such retention is in the best interest of Debtors' estates. *See* Brewer Application at ¶ 12; Declaration of Carolyn Meadows in support of Brewer Application [Dkt. No. 84-3] at ¶ 7; Declaration of Michael J. Collins (the "Collins Declaration") in support of Brewer Application [Dkt. No. 84-2] at ¶ 4.

---

[7] On January 7, 2021, the Board of the NRA is alleged to have enacted a resolution (the "January 7 Resolution") formalizing the existence of the Special Litigation Committee as a committee of the Board of the NRA pursuant to N.Y. N-PCL § 712(a), and appointing Carolyn Meadows, Charles Cotton, and Willes Lee as members of the Special Litigation Committee. *See* Resolution Authorizing Chapter 11 Reorganization and Related Retention of Counsel, dated January 15, 2021 [Dkt. No. 1]. The Committee has not seen a copy of the January 7 Resolution. The January 7 Resolution allegedly charged the Special Litigation Committee with exercising corporate authority on behalf of the NRA "with respect to the prosecution and defense of: (i) the litigation captioned *People of the State of New York v. The National Rifle Association et al.*, Index No. 451625/2020 (Sup. Ct. N.Y.); (ii) the litigation captioned *The National Rifle Association v. Letitia James*, Case No. 1:20-cv-889 (N.D.N.Y. 2020); (iii) the litigation captioned *District of Columbia v. NRA Foundation, Inc. et al.*, (2020 CA 003545 B); and (iv) any additional legal proceedings arising from or relating to the same facts, circumstances, or allegations as the foregoing, wherein the potential for an actual or apparent conflict of interest favors recusal by one or more NRA executives who would customarily oversee such proceedings." *Id.*

33. In short, the Debtors cannot satisfy their burden under Section 327(a) to show that the Brewer Firm is disinterested and does not hold an interest adverse to the estate because they have failed to address the 90-Day Payments and the serious allegations of impropriety involving the Brewer Firm's prior billing practices with the NRA.[8] Given that the Brewer Firm is a potential litigation target of the estate, they cannot, and should not, be retained as an estate professional under Section 327(a) of the Bankruptcy Code.[9]

          **B.**      **The NYAG's Allegations Against the Brewer Firm Warrant an Investigation**

34. The Debtors' attempt to engage the Brewer Firm without addressing either the NYAG's allegations of misconduct against the Brewer Firm, or why the 90-Day Payments are not preferential transfers, is of great concern to the Committee and suggests that the Debtors have either predetermined (without any apparent investigation) that the estate does not hold colorable claims against the Brewer Firm, or have no interest in undertaking an investigation of such claims.

35. The Debtors' actions also raise the specter that they are attempting to obfuscate the Committee's rights to investigate and seek standing to pursue avoidance actions or similar claims against the Brewer Firm. To fulfill its statutory and fiduciary duty, the Committee intends to fully evaluate and assess the Debtors' prepetition transfers.[10] This role is especially important when the

---

[8]    As noted by the U.S. Trustee, the Debtors' failure to disclose and address the allegations of impropriety levied against the Brewer Firm in the NYAG Action also constitutes inadequate disclosure under Bankruptcy Rule 2014 that independently provides sufficient grounds to deny the Brewer Application. *See* UST Objection at ¶ 71 (citing *In re Universal Bldg. Products*, 486 B.R. 650, 663 (Bankr. D. Del. 2010) (citations omitted)).

[9]    The Committee has nothing to add beyond what is contained in the UST Objection regarding conflicts of interest and lack of disclosures related to the Brewer Firm's prior representation of the NRA's CEO and EVP, Wayne LaPierre, or William Brewer's relationship to the sister of Ackerman McQueen's CEO. The Committee incorporates the UST Objection and reserves the right to be heard and present arguments and evidence with respect to these issues at the hearing on the Brewer Application. However, the Committee is currently more concerned with, and focused on, the allegations of misconduct by the Brewer Firm and the potential estate causes of action arising therefrom.

[10]   Section 1103(c)(2) of the Bankruptcy Code specifically charges the Committee with the duty to "investigate the acts, conduct, assets, liabilities and financial condition of the debtor, the operation of the debtor's business and the desirability of the continuance of such business and any other matter relevant to the case or to the formulations of a plan." 11 U.S.C. § 1103. "The investigative authority granted to a committee is extremely broad and a committee may undertake whatever investigation is appropriate to enable it to fulfill its duty to monitor the operations of the

fiduciary duties owed by the debtor in possession to unsecured creditors are strained by the existence of transfers to insiders or its professionals. *See In re Innkeepers USA Trust, et al.*, 442 B.R. 227 (Bankr. S.D. N. Y. 2010) ("In a bankruptcy case, it is "Bankruptcy 101" that a debtor and its board of directors owe fiduciary duties to the debtor's creditors to maximize the value of the estate…."); s*ee also* John A. E. Pottow, University of Michigan Law School Scholarship Repository, Law & Economics Working Papers, "Fiduciary Duties in Bankruptcy and Insolvency" available at https://repository.law.umich.edu/law_econ_current/135/ (March 29, 2018) (Creditors' Committee's right to investigate and bring actions on behalf of estate protects against a debtor in possession's conflicted allegiances). The Committee's involvement here will be particularly important, as the relationship between the Debtors and the Brewer Firm demonstrates that, as the NRA's counsel, the Debtors are unlikely to investigate or advocate the estate to pursue claims against the Brewer Firm.

### C. The Committee Could Support a Very Limited Scope Engagement for the Brewer Firm

36. Despite the Brewer Firm's apparent conflicts that ordinarily should and would preclude its engagement under Section 327(a) of the Bankruptcy Code, the Committee, as noted above, believes there could be some efficiencies by permitting the Debtors to engage the Brewer Firm under Section 327(e) in a very limited capacity as true "special counsel." *See Pequeño v. Schmidt*, 2007 U.S. Dist. LEXIS 109444, at *10.

37. Currently, the Brewer Application seeks to engage the Brewer Firm to provide services in ten broad categories. *See* Collins Declaration at ¶ 2. At this time, the Committee does not yet have enough insight into the Debtors' business or the Debtors' prior relationship with the

---

debtor and participate in formulation of a plan." 7 Collier on Bankruptcy ¶ 1103.5[1](5)[c] (Alan Resnick & Henry J. Sommer eds., 16th ed. rev. 2021).

Brewer Firm to assess whether the Brewer Firm's counsel in certain of the proposed categories could benefit the estate. Accordingly, if the Brewer Firm is to be retained as "special counsel" it should be limited solely to litigation matters where the Brewer Firm represented the NRA prior to the commencement of the bankruptcy case, and which the Brewer Firm does not have a conflict. Notably, this could include the NYAG Action, for which the Brewer Firm has represented the NRA for well over two years, provided that the Brewer Firm does not have a conflict due to the serious allegations alleged by the NYAG for, among other things, numerous billing improprieties by the Brewer Firm in connection with its past representations of the NRA.[11]

38. Although the Committee could conceivably support the Brewer Firm's retention by the Debtors as "special counsel," provided that role is very limited and well defined, the Committee reiterates its objection to the retention of the Brewer Firm in any capacity that is directly related to these Chapter 11 Cases. A prime example of this highly objectionable scope is the category of work proposed by the Brewer Firm that is described as "[a]ssistance to Debtors' bankruptcy counsel, to facilitate the efficient handling of matters in these Cases that implicate the Brewer Firm's institutional knowledge and prepetition work."[12] *See* Collins Declaration at ¶ 2.

39. The Committee is also concerned about other proposed categories that are broad in scope and could result in the Brewer Firm's direct representation of the Debtors in the Chapter 11 Cases. For example, another category of tasks includes "[a]dvice and representation with regard

---

[11] To the extent new counsel must be obtained to represent the NRA in litigation where the Brewer Firm has not been approved by the Court to serve as counsel, the Brewer Firm should also be ordered to fully cooperate and assist in the transition of such litigation to new counsel and compensate the estate for related "learning curve" costs.

[12] Further to this point, the Committee would point out that the Brewer Firm was included in the signature block on the Debtors' recently filed *Omnibus Opposition to (1) Ackerman McQueen, Inc.'s Motion to Dismiss the Chapter 11 Bankruptcy Petition, or, in the Alternative, Motion for the Appointment of a Chapter 11 Trustee, (2) the State of New York's Motion to Dismiss, or, in the Alternative, to Appoint Chapter 11 Trustee, and (3) the District of Columbia's Motion to Appoint Chapter 11 Trustee* [Dkt. No. 307].

to issues arising under state corporate law that may affect or relate to Debtors' reorganization including, but not limited to, fiduciary duties and corporate forms." *See* Collins Declaration at ¶ 2. Given that the Brewer Firm is a potential litigation target of the estate, it would be entirely inappropriate for the Brewer Firm to be advising the Debtors' management regarding compliance with their fiduciary duties – duties that notably include an obligation to investigate estate claims in order to maximize value for creditors. *See Innkeepers USA*, 442 B.R. 227.

40. Additionally, the proposed scope of the Brewer Firm's retention includes "advice and representation regarding media coverage and media outreach . . . and strategic public affairs and communications services." *See* Collins Declaration at ¶ 2. While case law provides that a public relations firm is deemed to be "professional person" within the ambit of section 327(a) of the Bankruptcy Code, section 327(e) of the Bankruptcy Code only allows the employment of an "attorney that has represented the debtor" and accordingly, the proposed public relations work that the Brewer Firm requests as part of its retention would not be covered under section 327(e) of the Bankruptcy Code and should not be included in the scope of the Brewer Firm's ongoing representation of the Debtors. *See, e.g., In re Microwave Products of Am., Inc.*, 94 B.R. 971 (Bankr. W.D. Tenn. 1989) (holding that a public relations firm is deemed to be "professional person" under section 327(a) of the Bankruptcy Code).

41. As stated above, given that the estate may hold valuable claims against the Brewer Firm, including potential avoidance claims, the Brewer Firm should have no role representing the Debtors in any capacity in the Chapter 11 Cases. Moreover, as addressed by the U.S. Trustee, performing bankruptcy-related work clearly goes beyond the pale of "special counsel" and, for the reasons stated above, would be inappropriate. *See* UST Objection at ¶¶ 30-38.

## CONCLUSION

WHEREFORE, the Committee respectfully requests that the Court enter an order (i) denying the Brewer Application, except on the terms set forth herein which contemplates a limited and clearly defined engagement under Section 327(e) of the Bankruptcy Code, and (ii) granting such other and further relief as is just and proper.

Dated: March 12, 2021

Respectfully submitted,

NORTON ROSE FULBRIGHT US LLP

By: */s/ Louis R. Strubeck, Jr.*
Louis R. Strubeck, Jr. (SBT 19425600)
Kristian W. Gluck (SBT 24038921)
Scott P. Drake (SBT 24026812)
Laura L. Smith (SBT 24066039)
Nick Hendrix (SBT 24087708)
2200 Ross Avenue, Suite 3600
Dallas, Texas 75201-7932
Tel: (214) 855-8000
Facsimile: (214) 855-8200
louis.strubeck@nortonrosefulbright.com
kristian.gluck@nortonrosefulbright.com
scott.drake@nortonrosefulbright.com
laura.smith@nortonrosefulbright.com
nick.hendrix@nortonrosefulbright.com

*Proposed Counsel to the Official Committee of Unsecured Creditors*

## CERTIFICATE OF SERVICE

The undersigned attorney hereby certifies that a true and correct copy of the foregoing document was served electronically through the Bankruptcy Court's Electronic Case Filing System on those parties that have consented to such service, on the 12th day of March, 2021.

*/s/ Louis R. Strubeck, Jr.*
Louis R. Strubeck, Jr.