Louis R. Strubeck, Jr. (SBT 19425600)
Kristian W. Gluck (SBT 24038921)
Scott P. Drake (SBT 24026812)
Laura L. Smith (SBT 24066039)
Nick Hendrix (SBT 24087708)
NORTON ROSE FULBRIGHT US LLP
2200 Ross Avenue, Suite 3600
Dallas, TX 75201-7932
Telephone: (214) 855-8000
Facsimile: (214) 855-8200
louis.strubeck@nortonrosefulbright.com
kristian.gluck@nortonrosefulbright.com
scott.drake@nortonrosefulbright.com
laura.smith@nortonrosefulbright.com
nick.hendrix@nortonrosefulbright.com

*Proposed Counsel for The Official Committee of Unsecured Creditors*

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| In re: | § | Chapter 11 |
|---|---|---|
|  | § |  |
| NATIONAL RIFLE ASSOCIATION OF AMERICA AND SEA GIRT LLC, | § | Case No. 21-30085-hdh11 |
|  | § |  |
| Debtors[1]. | § | Jointly Administered |

**THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS' OBJECTION
TO THE MOTION FOR APPOINTMENT OF EXAMINER [DKT. NO. 114]**

TO THE HONORABLE HARLIN D. HALE,
UNITED STATES BANKRUPTCY JUDGE:

The Official Committee of Unsecured Creditors (the "Committee") of the National Rifle Association of America (the "NRA") and Sea Girt LLC (collectively, the "Debtors") respectfully submits this Objection (the "Objection") to the *Motion for Appointment of Examiner* [Dkt. No. 114] (the "Examiner Motion") filed by Phillip Journey (the "Movant"). In further support of this Objection, the Committee respectfully represents as follows:

---

[1] The last four digits of the Debtors' taxpayer identification numbers are: 6130 (NRA) and 5681 (Sea Girt). The Debtors' mailing address is 11250 Waples Mill Road, Fairfax, Virginia 22030.

## PRELIMINARY STATEMENT

In the Examiner Motion, the Movant urges the Court to accept as a foregone conclusion, without evidence and contrary to applicable authority, that the appointment of an independent examiner is mandatory in these chapter 11 cases. It is not. In the alternative, the Movant asserts that an examiner with extraordinarily broad, expanded powers is "necessary" to protect the interests of the estate and the Debtors' creditors. It is not either. The Movant overlooks the critical and active role that committees are empowered to take once appointed, a role which here the Committee is already fulfilling. If having a fully engaged Committee were not enough, these chapter 11 cases are also subject to the additional oversight and investigation of the United States Trustee and other parties, including those that have filed motions to dismiss and/or to appoint a chapter 11 trustee. The addition of yet another professional to these chapter 11 cases—particularly one with a $350,000 budget and ability to retain its own advisors—not only would unnecessarily duplicate the work already being done by the Committee and other parties but further would serve to delay the debtors' exit from bankruptcy. Accordingly, the Examiner Motion should be denied.

## JURISDICTION AND VENUE

1.   The Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

2.   Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## RELEVANT BACKGROUND

3.   On January 15, 2021, each of the Debtors filed a voluntary petition for relief pursuant to chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Northern District of Texas, Dallas Division (the "Court").

4. The Debtors continue to operate their business as debtors-in-possession pursuant to Bankruptcy Code sections 1107(a) and 1108.

5. On February 4, 2021, the United States Trustee for the Northern District of Texas appointed the Committee pursuant to section 1102 of the Bankruptcy Code.[2] *See* Dkt. No. 105. The Committee subsequently selected Norton Rose Fulbright US LLP as counsel on February 8, 2021, subject to Court approval. The Committee also selected AlixPartners, LLP as its financial advisor on February 11, 2021, subject to Court approval.

6. On February 8, 2021, the Movant filed the Examiner Motion, pursuant to which the Movant seeks appointment of an independent examiner with extraordinarily broad authority to examine and investigate (i) the actions of the Debtors' pre- and post-petition management; (ii) the management practices being employed in the operation of the non-profit organization; (iii) the compensation of management; (iv) the benefits and perks being provided to the Debtors' management team; and (v) the propriety of arrangements with certain vendors.

7. On February 10, 2021, Ackerman McQueen, Inc. ("AMc") filed *Ackerman McQueen, Inc.'s Motion to Dismiss the Chapter 11 Bankruptcy Petition, or, in the Alternative, Motion for Appointment of a Chapter 11 Trustee, and Brief in Support* [Dkt. No. 131] (the "AMc Dismissal/Trustee Motion").

8. On February 12, 2021, The People of the State of New York, by Letitia James, Attorney General of the State of New York (the "NYAG") filed the *State of New York's Motion to Dismiss, or, in the Alternative to Appoint a Chapter 11 Trustee* [Dkt. Nos. 155 & 163] and the *State of New York's Memorandum of Law and Brief in Support of Motion to Dismiss, or, in the*

---

[2] The Committee is currently comprised of the following entities: (a) the Pension Benefit Guaranty Corp.; (b) Ackerman McQueen, Inc.; (c) InfoCision, Inc.; (d) Stone River Gear, LLC; and (e) David Dell'Aquila. *See* Dkt. No. 105.

101952893.7    3

*Alternative, to Appoint a Chapter 11 Trustee* [Dkt. No. 156] (collectively, the "NYAG Dismissal/Trustee Motion" together with the AMc Dismissal/Trustee Motion, the "Dismissal/Trustee Motions").

9. On February 17, 2021, Christopher W. Cox filed *Christopher W. Cox's Joinder to (I) the Motions to Dismiss or, in the Alternative, to Appoint a Chapter 11 Trustee filed by Ackerman McQueen, Inc. and the State of New York, or (II) the Motion of Phillip Journey for Appointment of an Examiner* [Dkt. No. 172].

10. On February 22, 2021, the NYAG filed a motion to continue the hearing on the Examiner Motion (the "Motion to Continue") [Dkt. No. 208]. The Movant filed an objection to the Motion to Continue [Dkt. No. 224].

11. On February 23, 2021, the District of Columbia, through its Attorney General (the "DOCAG"), filed the *District of Columbia's Motion in Support in the State of New York's Motion to Appoint a Chapter 11 Trustee* [Dkt. No. 214].

12. On February 24, 2021, the Court held a hearing on the Motion to Continue, granted the Motion to Continue, and ordered the Examiner Motion to be heard with the hearings on the Dismissal/Trustee Motions, which are set for a six-day trial before this Court beginning on March 29, 2021.

13. On March 5, 2021, the Movant filed the *Limited Objection to the Motions to Dismiss or the Appointment of Trustee* [Dkt. No. 306] (the "Limited Objection") and re-urged his prior request that the Court appoint an examiner with the following expanded powers: (i) investigate potential causes of action against insiders and non-debtors, including relative to misconduct and any potential breach of fiduciary duty; (ii) investigate potential causes of action against any creditors, including members of the Committee; (iii) investigate potential excessive

compensation, expenses and perks of officers and/or directors, including investigation of reasonableness and market terms; (iv) investigate compensation and contracts with related parties, including family members of officers, directors, and certain creditors; (v) investigate restriction and segregation of cash receipts, and evaluate appropriate compliance and use of any restricted funds, pre-petition; (vi) investigate intercompany transactions, particularly between Debtors and nondebtors, including borrowings, pre-petition; (vii) investigate supporting information related to Debtor estimates of undisputed claims versus the likely totality of all claims; (viii) assess litigation in process, consult with interested parties as directed by the Court, consult with and assess the merits of any recommended course of action, and corresponding litigation budget; (ix) provide at least monthly reporting to the Committee and the court of actions taken, observations, conclusions and/or recommendations, with regard to defined scope. Reporting may be made under seal where appropriate; (x) monitor reporting and segregation of cash receipts, and evaluate appropriate compliance with any restricted funds, post-petition; (xi) monitor intercompany transactions, particularly between Debtors and nondebtors, post-petition; (xii) monitor sources, uses, and transfers of funds for the estate, to include restricted and unrestricted receipts, versus projected expenses, and the necessity and reasonableness of such expenses; (xiii) investigate any claims deemed meritorious by the Examiner that shall be raised by a party in interest against the Debtors or members of the Committee; (xiv) upon the request of a party in interest, mediate any dispute involving the Debtors, or make a motion to the court to recommend third-party mediation; (xv) take a position on any motion filed in these cases; and (xvi) participate in any Plan discussions with the Debtors and Committee.

14.     On March 6, 2021, the Debtors filed the *Omnibus Opposition to (1) Ackerman McQueen, Inc.'s Motion to Dismiss the Chapter 11 Bankruptcy Petition, or, in the Alternative,*

*Motion for the Appointment of a Chapter 11 Trustee, (2) the State of New York's Motion to Dismiss, or in the Alternative, to Appoint Chapter 11 Trustee, and (3) the District of Columbia's Motion to Appoint a Chapter 11 Trustee* [Dkt. No. 307].

## **OBJECTION**

15. As set forth in the Examiner Motion, the Movant seeks entry of an order appointing an independent examiner with extraordinarily broad powers to investigate the governance of the Debtors and the actions of its management both pre- and post-petition and the propriety of arrangements with certain vendors. In support of his request, the Movant relies wholly upon the allegations raised by the NYAG and DOCAG in their respective pre-petition state court litigation against the Debtors and their management, which include claims involving misappropriation of funds, failure to provide oversight and breach of fiduciary duty.[3] These same allegations have also been raised in connection with the Dismissal/Trustee Motions.

16. To be sure, the Examiner Motion raises allegations that are serious and concerning. But the Committee, which has already been formed, is statutorily empowered to conduct such investigation, and in fact the Committee's investigation with respect to these matters is already well underway due largely to the fact that the allegations in the Examiner Motion also form the basis of the Dismissal/Trustee Motions. Ultimately, the appointment of an examiner would be duplicative of the Committee's work, thus wasting valuable estate resources (i.e., cash) and result in needless delay, with no attendant commensurate benefit to the estate, and would not further the Committee's efforts to advance these cases toward the goal of paying creditors in full. Accordingly, the Examiner Motion must be denied.

---

[3] In this vein, the complaints for both the pre-petition lawsuits brought by the DOCAG and the NYAG are attached to the Examiner Motion as Exhibits A and B.

> **A.** **The Appointment of an Examiner is Not Mandatory Because the Movant has Failed to Show That the Statutory Threshold of Section 1104(c)(2) of the Bankruptcy Code Has Been Satisfied.**

17. The Movant first argues in the Examiner Motion that the appointment of an examiner is mandatory in these cases pursuant to section 1104(c)(2) of the Bankruptcy Code because the Debtors' fixed, liquidated, unsecured debts, other than debts for goods, services, or taxes, or owing to an insider, exceed $5,000,000. As an initial matter, the Movant bears the burden to prove under section 1104(c)(2) of the Bankruptcy Code that an examiner should be appointed and must establish that the Debtors' "fixed, liquidated, unsecured debts, *other than for goods, services, or taxes, or owing to an insider*, exceed $5,000,000." *See In re Dewey & Leboeuf LLP*, 478 B.R. 627, 636 (Bankr. S.D.N.Y. 2012); 11 U.S.C. § 1104(c)(2) (emphasis added). Typically, this requirement is satisfied where there is outstanding unsecured bank debt or outstanding publicly issued debentures in an aggregate sum in excess of $5,000,000. *See* 7 Collier on Bankruptcy ¶ 1104.03 (Alan Resnick & Henry J. Sommer eds., 16th ed. rev. 2021).

18. Although the Movant summarily asserts in the Examiner Motion that there is "no dispute" that the Debtors' fixed, liquidated, non-insider unsecured debts exceed $5 million, the Debtors' Schedules filed in the cases tell a different story. While the Schedules reflect that the Debtors have over $62 million of unsecured debt, this debt appears to be comprised entirely of unsecured taxes or trade debts for goods and services, neither of which can be considered under section 1104(c)(2)'s plain language. *See* Dkt. Nos. 159-60, 286-88; *see also In re Dewey & Leboeuf LLP*, 478 B.R. at 636 (noting that while "[i]n many large cases, there is no dispute that the condition is satisfied," this was not true where "[t]he Debtor's schedules show it has substantial debts, but it is mostly secured debt, or *unsecured trade debts for goods or services*.") (emphasis added). Moreover, all of the other scheduled claims in these cases are litigation claims that are unliquidated; accordingly, such claims are also excluded under section 1104(c)(2) of the

Bankruptcy Code. *See In re Dewey & Leboeuf LLP*, 478 B.R. at 636 (finding that PBGC's claims appeared at best, to be estimated, and not fixed, liquidated debts where the claim "required[d] resolution of disputed issues about the amount of an unfunded pension liability.").

19. Moreover, it is also noteworthy that the cases cited by the Movant in support of its argument that appointment of an examiner is mandatory did not actually involve a dispute regarding whether or not the $5,000,000 statutory cap had been met. *See* Examiner Motion ¶¶ 23, 24; *see also, e.g.*, *In re Revco D.S., Inc.*, 898 F.2d 498, 501 n.2 (6th Cir. 1990) (stating that "[t]he parties stipulated that such debts exceed $ 5 million."); *In re UAL Corp.*, 307 B.R. 80, 84 (Bankr. N.D. Ill. 2004) ("The AFA and United do not dispute that each of these requirements [of section 1104(c)(2)] has been met–the last because the debt involved here exceeds the $5 million threshold."); *In re Schepps Food Stores*, 148 B.R. 27, 29 (S.D. Tex. 1992) (noting, without further elaboration, the "appropriate debts of [the Debtor] exceed $ 5,000,000."). Here, by contrast, the Debtors' Schedules do not support the Movant's contention that the $5,000,000 threshold has been satisfied, and the Movant, who carries the burden of proof on this issue, has not offered any evidence in support of his argument that the monetary requirements of section 1104(c)(2) of the Bankruptcy Code have been reached. Accordingly, the standard for mandatory appointment of an examiner has not been satisfied by the Movant, and the Examiner Motion should be denied.

**B.    Even if the Statutory Threshold of Section 1104(c)(2) Was Satisfied Here, Numerous Courts Agree That the "As is Appropriate" Language of Section 1104(c)(2) of the Bankruptcy Code Grants a Court Ample Discretion to Not Appoint an Examiner.**

20. Even if the Debtors' unsecured, liquidated, non-insider, non-trade debts exceed $5,000,000, this Court still has discretion to not appoint an examiner in these cases. Specifically, section 1104(c) of the Bankruptcy Code provides, in relevant part:

> If the court does not order the appointment of a trustee under this section, then at any time before confirmation of a plan, on request of a party in interest . . . the court shall order the appointment of an examiner to conduct such an investigation of the debtor *as is appropriate* . . . ."

11 U.S.C. § 1104(c) (emphasis added).

21. While the Committee acknowledges that several bankruptcy courts, including certain courts in the Fifth Circuit (none of which are binding on this Court),[4] have held that the appointment of an examiner is mandatory where the minimum debt threshold of section 1104(c)(2) of the Bankruptcy Code has been satisfied, other courts have come to a different conclusion. Indeed, other bankruptcy courts—including the U.S. Bankruptcy Court for the District of Delaware and the U.S. Bankruptcy Court for the Southern District of New York—which have held that the "as is appropriate" clause of section 1104(c)(2) of the Bankruptcy Code modifies the mandatory language of the statute (i.e. "the court shall order the appointment of an examiner") and provides a court leeway in determining whether appointment of an examiner is appropriate. *See*, *e.g.*, *In re Residential Capital, LLC*, 474 B.R. 112, 120-21 (Bankr. S.D.N.Y. 2012) (citing cases); *In re Visteon Corp.*, No. 09-11786 (CSS), 2010 Bankr. LEXIS 5464 (Bankr. D. Del. May 12, 2010), Hr'g Tr. at 170:16-20 (ECF Doc. # 3145) (denying appointment of examiner and finding "it would be an absurd result to find that in every case where the financial criteria is met and a party-in-interest asks, the Court must appoint an examiner.")

---

[4] The Movant relies heavily on Judge Jernigan's decision in *In re Erickson Ret. Cmtys., LLC*, 425 B.R. 309, 312 (Bankr. N.D. Tex. 2010) to support his contention that the appointment of an examiner is mandatory when the minimum debt threshold of section 1104(c)(2) of the Bankruptcy Code is met. However, that case is distinguishable as not only was Judge Jernigan's commentary in *Erickson* mere *dicta*, but critically, Judge Jernigan did not appoint an examiner in *Erickson* despite the statute's apparent mandate. *See id.* (noting, in *dicta*, that where the $5 million unsecured debt threshold is met, a bankruptcy court *ordinarily* has no discretion.") (emphasis added). Instead, Judge Jernigan determined that the movants "**lacked[ed] standing** and/or [] **contractually waived** the right to seek an examiner in these cases." *Id.* at 314. Indeed, other courts in Fifth Circuit that have adopted the mandatory interpretation of section 1104(c)(2) have seemingly acknowledged implicit exceptions to the rule depending upon the facts and circumstances of the case. *See*, *e.g.*, *In re Schepps Food Stores, Inc.*, 148 B.R. at 39-30 (the provision is mandatory, but the right to request an examiner may be waived).

22. These courts agree that appointment of an examiner is precluded where doing so would not be "appropriate" based upon the facts and circumstances of the case.[5] Courts following this line of better reasoned analysis rely on the legislative history of section 1104(c) of the Bankruptcy Code, which provides that an examiner shall be appointed to conduct an investigation "as is appropriate under the particular circumstances of the case," but "the protection must be needed, and the cost and expense must not be disproportionately high." H.R. Rep. No. 95-595, 95th Cong., 1st Sess. 402 (1977). For example, the appointment of an examiner "would be inappropriate if . . . an appropriate and thorough investigation has already been conducted (or is nearly complete) by a creditors committee or a governmental agency." *In re Residential Capital, LLC*, 474 B.R. at 121. Indeed, courts have consistently refused to appoint an examiner where doing so would only add cost and delay to the detriment of all creditors and parties-in-interest in the case. *See In re Shelter Res. Corp.*, 35 B.R. 304, 305 (Bankr. N.D. Ohio 1983) (noting "[t]he appointment of an examiner would entail undue delay in the administration of this estate and most likely cause the debtor to incur substantial and unnecessary costs and expenses detrimental to the interests of creditors and parties in interest."); *see also U.S. Bank Nat'l Ass'n v. Wilmington Trust Co. (In re Spansion, Inc.)*, 426 B.R. 114, 128 (Bankr. D. Del. 2010) (rejecting mandatory interpretation of section 1104(c)(2) and denying a motion to appoint examiner pursuant to section 1104(c)(2) because the "as is appropriate" language afforded court discretion to deny appointment that would result in waste and delay).

---

[5] *See generally id.; see also In re Dewey & Leboeuf LLP*, 478 B.R. at 636 ("Based on the facts and circumstances present in this case, the Court concludes that the Examiner Motion should be denied even if the debt threshold in section 1104(c)(2) is satisfied."); *In re Am. Home Mortg. Holdings, Inc.*, No. 07-11047 (CSS) (Bankr. D. Del. Oct. 31, 2007), Hr'g Tr. at 76:09-12 (ECF Doc. # 1997) (rejecting mandatory interpretation of section 1104(c)(2) because financial threshold was only one part of inquiry and "'the other piece of the puzzle is that there has to be an investigation to perform that's appropriate," and denying a motion to appoint an examiner); *In re Calpine Corp.*, 377 B.R. 808 (Bankr. S.D.N.Y. 2007), Hr'g Tr. at 72:23-73:19 (ECF Doc. # 6467).

23. Here, appointment of an examiner is not "appropriate," as the Committee's investigation is already well underway in connection with the hearings on the Dismissal/Trustee Motions, and there is no question that the Committee can, is and will adequately represent the interests of unsecured creditors and other parties-in-interest in these cases. *See e.g.*, *In re PG&E Corp.*, No. 19-30088-DM, 2020 Bankr. LEXIS 1754, at *4 (Bankr. N.D. Cal. July 6, 2020) (declining to appoint an examiner where the TCC had investigated the matter and an examiner was "not needed" and "not appropriate"); *In re Innkeepers USA Trust,* No. 10-13800 (SCC) (Bankr. S.D.N.Y. Sept. 30, 2012), Hr'g Tr. at 168:21-169:11 (finding that all of requested examination topics would be addressed by litigation or by "multiple layers of interested parties" and it would not be appropriate to have estate pay for third party to duplicate efforts of others as movant would have access to discovery on these topics and be able to "uncover and [marshal] additional facts on the issues of concern"); *In re Shelter Res. Corp.*, 35 B.R. at 305 ("There is currently in place a Debenture Holders' Committee with powers under Section 1103(c) of the Bankruptcy Code to carry on, if necessary, an investigation as may be appropriate. The appointment of an examiner under these circumstances, with the possibility of duplicated effort, is not in the spirit of economy of administration in the handling of bankruptcy estates.").

24. Additionally, an examiner would be a waste of estate resources in light of the presence and actions of the Committee, whose power and duties are outlined in section 1103 of the Bankruptcy Code. Importantly, the provisions of the Bankruptcy Code outlining the investigative function of the Committee and the investigative function of an examiner are virtually identical and require the Committee or the examiner, as applicable, to "investigate the acts, conduct, assets, liabilities, and financial condition of the debtor, the operation of the debtor's business and the desirability of the continuation of such a business . . . ." *See* 11 U.S.C. §§

1103(c)(2), 1106(a)(3), 1106(b). Here, as mandated by section 1103(c)(2) of the Bankruptcy Code, the Committee is already investigating "the acts, conduct, assets, liabilities, and financial condition of the debtor, the operation of the debtor's business and the desirability of the continuation of such a business . . . ," which is the same investigation that would be done by an examiner if appointed by the Court. Accordingly, the appointment of an examiner would merely duplicate the ongoing work of the Committee and would increase the amount of administrative expenses in these cases.

C. **The Appointment of an Examiner Under Section 1104(c)(1) of the Bankruptcy Code is Not Necessary Where, as Here, an Unsecured Creditors' Committee is Best Situated to Perform and is Performing the Investigation.**

25. The Movant's final argument is that the appointment of an examiner is necessary under section 1104(c)(1) of the Bankruptcy Code, which "requires" an examiner if "such appointment is in the interest of creditors, any equity security holders, and other interests of the estate." *See* 11 U.S.C. § 1104(c)(1). However, here too the Movant's application of section 1104(c)(1) of the Bankruptcy Code in this case is misplaced because an examiner is not in the "best interests of creditors" given that the Committee will perform the precise investigation that is needed.

26. It is the Committee—not an examiner—which serves as the statutorily designated watchdog for all unsecured creditors, and its role in this case is already particularly significant in these cases because the allegations raised in the Examiner Motion and in the Dismissal/Trustee Motions have required an investigation by the Committee. Courts, including the Fifth Circuit Court of Appeals, have acknowledged that a committee, not an examiner, should be charged with actively investigating and policing the Debtors. *Compare* Examiner Motion ¶ 25 (citing *In re Mirant Corp.*, No. 03-46590, 2004 Bankr. LEXIS 1283, at *10 n.10 (Bankr. N.D. Tex. Sep. 2, 2004)) *with In re Advisory Comm. of Major Funding Corp.*, 109 F.3d 219, 224 (5th Cir. 1997) ("Creditors' Committees have the responsibility to protect the interest of the creditors; in essence, 'the function

of a creditors' committee is to act as a watchdog on behalf of the larger body of creditors which it represents.'"). Moreover, courts have consistently acknowledged that an examiner is unnecessary under section 1104(c)(1) of the Bankruptcy Code where the Committee and United States Trustee can actively investigate, pursue and recover assets that may have been fraudulently or wrongfully transferred out of the Debtors' estates. *See, e.g.*, *In re Lenihan,* 4 B.R. 209 (Bankr. D.R.I. 1980) (where the parties offered no proof of dissipation of the debtor's assets postpetition, despite evidence the Debtors' improperly invested funds prepetition, an examiner was not warranted); *In re Mechem Fin. of Ohio, Inc.*, 92 B.R. 760, 761 (Bankr. N.D. Ohio 1988) (finding that the appointment of an examiner "would impose another layer of expenses on the Debtor, to the detriment of unsecured creditors," when "[t]he U.S. Trustee and Creditors' Committee can pursue recovery of any assets that might have been preferentially transferred prepetition."); *In re Sletteland*, 260 B.R. 657, 672 (Bankr. S.D.N.Y. 2001) (noting, in *dicta*, that members of a creditors' committee had been appointed since the filing of an examiner motion and had served discovery orders on the Debtor, which "ordinarily make it particularly inappropriate to impose on the estate, and probably on these same creditors, the sizable cost of a trustee or examiner," particularly where "it would appear that the committee can appropriately perform any necessary investigation."). Here, the Committee's advisors have vast expertise in representing committees in complex bankruptcy cases, and the appointment of an examiner in these cases would not be additive, but would be an unnecessary drain on estate resources—resources which the Committee is concerned about preserving in order to maximize the recovery for all unsecured creditors. Accordingly, the Court should deny the request to appoint an examiner under section 1104(c)(1).

27.     The Movant relies on two cases in support of its argument that the appointment of an examiner is warranted under section 1104(c)(1); however both cases are distinguishable from

the facts and circumstances of these cases. *See* Examiner Motion ¶ 29 (citing *In re JNL Funding Corp.*, No. 10-73724, 2010 WL 3448221, at *3 (Bankr. E.D.N.Y. Aug. 26, 2010); *In re Keene Corp.*, 164 B.R. 844, 856 (Bankr. S.D.N.Y. 1994)).

28.     First, in *JNL Funding Corp.*, the U.S. Bankruptcy Court for the Eastern District of New York determined that an examiner was appropriate where the court had "[the] consent of the parties"[6] after months of "increasing acrimony, motion practice, letters to the Court, and discovery disputes." 2010 Bankr. LEXIS 2971, at *8. Based upon the agreement of the parties, Judge Trust in *JNL Funding Corp.* found that an examiner would "avoid[] the excessive expense to the estate and all parties of attempting to schedule and conduct sixty-nine depositions across the continental United States . . . ." *Id.* at *9. Here, the Committee specifically objects to the appointment of an examiner, unlike the committee in *JNL Funding*. Additionally, this case does not currently have sixty-nine depositions organized across the entire United States and even if it did, the virtual nature of depositions and discovery amidst the COVID-19 pandemic obviates the need for travel and associated costs. Accordingly, in contrast to *JNL Funding*, an examiner (particularly one with a suggested budget of $350,000) would only *increase* the expense to the estate—to the detriment of unsecured creditors and other parties-in-interest.

29.     The Movant also relies on *In re Keene Corp.* in support of its view that the potential for avoidance claims against an insider presents "a textbook case calling for the appointment of an examiner in the interest of creditors." 164 B.R. at 856. In *Keene*, Judge Bernstein appointed an examiner at the request of the debtor in order to determine the viability of certain stayed, wrongful transfer claims. However, the court in *Keene* also found that there were "indications that the

---

[6] Specifically, in *JNL Funding Corp.*, the committee and the debtor filed responses ***in support*** of the appointment of an examiner. *See id.* at *6. (emphasis added).

committee abdicated its responsibility to exercise independent judgment on behalf of the creditors," where it represented to the court that the "Plaintiffs' Bar" of the stayed, wrongful transfer claims would prosecute the claims irrespective of whether the court appointed an examiner. *See id.* at 857 ("The determination of the 'Plaintiffs' Bar' to proceed with the Wrongful Transfer Claims 'in any event'—claims which are automatically stayed—flouts the law, and the Committee's advocacy of this view creates the impression that it is representing the 'Plaintiffs' bar' and not the plaintiffs."). Here, unlike the committee in *Keene*, the Committee is not abdicating its responsibilities to the unsecured creditor body in opposing the Examiner Motion. To the contrary, avoiding duplication of effort, added costs, and unnecessary delay is at the forefront of the Committee's Objection.

      **D.    In the Alternative, Should the Court Choose to Appoint an Examiner, the Examiner's Role Should be Limited and Narrow in Scope and With Appropriate Budgetary Constraints.**

      30.    Bankruptcy courts faced with a request for an examiner uniformly agree that they maintain the discretion to define the scope and role of an examiner. *See, e.g., In re Erickson Ret. Cmtys., LLC*, 425 B.R. at 312; *In re Loral Space & Communs., Ltd.*, No. 04-CV-8645RPP, 2004 U.S. Dist. LEXIS 25681, 2004 WL 2979785, at *4 (S.D.N.Y. Dec. 23, 2004); *see also* Examiner Motion ¶ 34 (conceding that "the Court retains discretion to define the "nature, extent and duration" of the investigation "as is appropriate." *In re Revco*, 898 F.2d at 501).

      31.    Assuming, *arguendo*, that the Court is inclined to appoint an examiner, the Committee respectfully requests that the Court limit the scope of such examiner, with an overall budget not to exceed $100,000. Attached hereto as **Exhibit A** is the Movant's proposed scope for an examiner as set forth in the Limited Objection, along with the Committee's view regarding whether the proposed scope is appropriate. As is set forth in more detail on **Exhibit A**, the proposed

scope is far-reaching, burdensome, and duplicative in light of the Committee's appointment in these cases.[7]

## RESERVATION OF RIGHTS

The Committee reserves the right to amend or supplement this Objection before the hearing on the Examiner Motion, and to be heard before this Court with respect to the subject matter of the Examiner Motion, this Objection, and any matters related thereto.

## CONCLUSION

WHEREFORE, the Committee respectfully requests that the Court enter an order denying the Examiner Motion as set forth herein and granting such other and further relief as is just and proper. Alternatively, should the Court choose to appoint an examiner, the Committee respectfully requests that the Court enter an order appointing an examiner with a very narrow, limited scope and [with an overall budget not to exceed $100,000 and granting such other and further relief as is just and proper.

---

[7] The Examiner Motion also relies upon a series of cases in support of its argument that an examiner's investigatory powers should be broad, however, many of those decisions were made in the context of large mega-cases involving failed leveraged buy-out transactions or improper parent-subsidiary relationships. *See Examiner M*otion ¶ 36 (citing *In re Caesars Entertainment Operating Company, Inc.*, Case No. 15-01145; *In re Dynegy Holdings, LLC*, Case No. 11-38111 (CGM) (Bankr. S.D.N.Y. 2011) [Docket No. 276]; *In re Residential Capital, Inc.*, Case No. 12-12020 (MG) (Bankr. S.D.N.Y. 2012) [Docket No. 454]; *In re Dade Behring Holdings Inc.*, Case No. 02-29020 (BWB) (Bankr. N.D. Ill. 2002)). This case, while large, is still much smaller in size when compared to the rare mega-case in which an examiner has been appointed. *See, e.g., In re SemCrude, L.P.*, Case No. 08-11525 (BLS) (Bankr. D. Del. 2008) [Docket No. 1295]; *In re Tribune Co.*, Case No. 08-13141 (KJC) (Bankr. D. Del. 2008) [Docket No. 4120]. See also *In re Southmark Corp.*, 113 B.R. 280, 281 (Bankr. N.D. Tex. 1990).

Dated: March 12, 2021

Respectfully submitted,

NORTON ROSE FULBRIGHT US LLP

By: */s/ Louis R. Strubeck, Jr.*
Louis R. Strubeck, Jr. (SBT 19425600)
Kristian W. Gluck (SBT 24038921)
Scott P. Drake (SBT 24026812)
Laura L. Smith (SBT 24066039)
Nick Hendrix (SBT 24087708)
2200 Ross Avenue, Suite 3600
Dallas, Texas 75201-7932
Tel: (214) 855-8000
Facsimile: (214) 855-8200
louis.strubeck@nortonrosefulbright.com
kristian.gluck@nortonrosefulbright.com
scott.drake@nortonrosefulbright.com
laura.smith@nortonrosefulbright.com
nick.hendrix@nortonrosefulbright.com

*Proposed Counsel to the Official Committee of Unsecured Creditors*

## **CERTIFICATE OF SERVICE**

The undersigned attorney hereby certifies that a true and correct copy of the foregoing document was served electronically through the Bankruptcy Court's Electronic Case Filing System on those parties that have consented to such service, on the 12th day of March, 2021.

*/s/ Louis R. Strubeck, Jr.*
Louis R. Strubeck, Jr.

**EXHIBIT A**

101952893.7

## Proposed Scope of Examiner

| Proposed Services | Committee View |
|---|---|
| (i) investigate potential causes of action against insiders and non-debtors, including relative to misconduct and any potential breach of fiduciary duty; | This scope is within the Committee's power and duties as outlined in section 1103 of the Bankruptcy Code and will be adequately addressed by the Committee. |
| (ii) investigate potential causes of action against any creditors, including members of the Committee; | This scope is within the Committee's power and duties as outlined in section 1103 of the Bankruptcy Code and will be adequately addressed by the Committee. To the extent the Committee needs to investigate claims against a member of the Committee, the non-conflicted members will handle the investigation. |
| (iii) investigate potential excessive compensation, expenses and perks of officers and/or directors, including investigation of reasonableness and market terms; | This scope is within the Committee's power and duties as outlined in section 1103 of the Bankruptcy Code and will be adequately addressed by the Committee. |
| (iv) investigate compensation and contracts with related parties, including family members of officers, directors, and certain creditors; | This scope is within the Committee's power and duties as outlined in section 1103 of the Bankruptcy Code and will be adequately addressed by the Committee. |
| (v) investigate restriction and segregation of cash receipts, and evaluate appropriate compliance and use of any restricted funds, pre-petition; | This scope is within the Committee's power and duties as outlined in section 1103 of the Bankruptcy Code and will be adequately addressed by the Committee. |
| (vi) investigate intercompany transactions, particularly between Debtors and nondebtors, including borrowings, pre-petition; | This scope is within the Committee's power and duties as outlined in section 1103 of the Bankruptcy Code and will be adequately addressed by the Committee. |
| (vii) investigate supporting information related to Debtor estimates of undisputed claims versus the likely totality of all claims; | This scope is within the Committee's power and duties as outlined in section 1103 of the Bankruptcy Code and will be adequately addressed by the Committee. |
| (viii) assess litigation in process, consult with interested parties as directed by the Court, consult with and assess the merits of any recommended course of action, and corresponding litigation budget; | This scope is within the Committee's power and duties as outlined in section 1103 of the Bankruptcy Code and will be adequately addressed by the Committee. With respect to litigation in process against a member of the Committee, the non-conflicted members will handle the assessment. |
| (ix) provide at least monthly reporting to the Committee and the court of actions taken, observations, conclusions and/or recommendations, with regard to defined scope. Reporting may be made under seal where appropriate; | To the extent the Court grants the Examiner Motion as to a particular scope, it would be appropriate to provide regular reporting to the parties in interest in these cases. |

101952893.7

Page 1

| | |
|---|---|
| (x) monitor reporting and segregation of cash receipts, and evaluate appropriate compliance with any restricted funds, post-petition; | This scope is within the Committee's power and duties as outlined in section 1103 of the Bankruptcy Code and will be adequately addressed by the Committee. |
| (xi) monitor intercompany transactions, particularly between Debtors and nondebtors, post-petition; | The Cash Management Order limits intercompany transactions except as permitted by the Committee and the United States Trustee and thus this proposed scope is unnecessary and duplicative. |
| (xii) monitor sources, uses, and transfers of funds for the estate, to include restricted and unrestricted receipts, versus projected expenses, and the necessity and reasonableness of such expenses; | This scope is within the Committee's power and duties as outlined in section 1103 of the Bankruptcy Code and will be adequately addressed by the Committee. |
| (xiii) investigate any claims deemed meritorious by the Examiner that shall be raised by a party in interest against the Debtors or members of the Committee; | This scope is within the Committee's power and duties as outlined in section 1103 of the Bankruptcy Code and will be adequately addressed by the Committee. To the extent the Committee needs to investigate claims against a member of the Committee, the non-conflicted members will handle the investigation. |
| (xiv) upon the request of a party in interest, mediate any dispute involving the Debtors, or make a motion to the court to recommend third-party mediation; | To the extent a mediator is requested by a party in interest to mediate a specific issue, a motion can be filed at the appropriate time. |
| (xv) take a position on any motion filed in these cases; and | To the extent the Court grants the Examiner Motion as to a particular scope, it would not be appropriate to then permit the Examiner to weigh in a motion that is unrelated to the Examiner's scope. |
| (xvi) participate in any Plan discussions with the Debtors and Committee. | Appointment of an Examiner to participate in Plan discussions for a plan that has not been filed is premature. To the extent the Court appoints an Examiner, the Court can always expand the scope of the Examiner at a later date to address plan negotiations to the extent appropriate. |