**NELIGAN LLP**
PATRICK J. NELIGAN, JR.
State Bar No. 14866000
DOUGLAS J. BUNCHER
State Bar No. 03342700
JOHN D. GAITHER
State Bar No. 24055516
325 North St. Paul, Suite 3600
Dallas, Texas 75201
Telephone: 214-840-5333
Facsimile: 214-840-5301
pneligan@neliganlaw.com
dbuncher@neliganlaw.com
jgaither@neliganlaw.com
*Counsel for Debtors and*
*Debtors-in-Possession*

**GARMAN TURNER GORDON LLP**
GREGORY E. GARMAN
Nevada Bar No. 6654, admitted *pro hac vice*
Email: ggarman@gtg.legal
WILLIAM M. NOALL
Nevada Bar No. 3549, admitted *pro hac vice*
Email: wnoall@gtg.legal
GABRIELLE A. HAMM
Texas Bar No. 240401047
Email: ghamm@gtg.legal
DYLAN CICILIANO
Nevada Bar No. 12348, admitted *pro hac vice*
E-mail: dciciliano@gtg.legal
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
Telephone: 725-777-3000
Facsimile: 725-777-3112
*Counsel for Debtors and*
*Debtors-in-Possession*

## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | § | **CHAPTER 11** |
| | § | |
| **NATIONAL RIFLE ASSOCIATION OF** | § | **CASE NO. 21-30085-hdh11** |
| **AMERICA and SEA GIRT LLC,** | § | |
| | § | |
| **DEBTORS**[1] | § | **Jointly Administered** |
| | § | |

---

### DEBTORS' EMERGENCY MOTION TO COMPEL THE STATE OF NEW YORK TO (I) RESPOND TO DEBTORS' DOCUMENT REQUESTS OR ADMIT NO DOCUMENTS EXIST AND (II) PRODUCE A REPRESENTATIVE UNDER FED. R. CIV. P. 30(b)(6)

The National Rifle Association of America ("NRA") and Sea Girt LLC ("Sea Girt" and,

together with NRA, the "Debtors"), debtors and debtors-in-possession, hereby submit this

emergency Motion (the "Motion") to compel the People of the State of New York, by Letitia

James, Attorney General of the State of New York (the "NYAG") to (i) respond to Debtors'

document requests pursuant to Rule 34(b)(2)(E)(i) of the Federal Rule of Civil procedure, or admit

---

[1] The last four digits of the Debtors' taxpayer identification numbers are: 6130 (Association) and 5681 (Sea Girt).

it does not possess responsive documents; and (ii) designate a representative of the Attorney General's office under Rule 30(b)(6) to testify regarding the NYAG's positions.

This Motion is made upon the memorandum of points and authorities set forth below, the declaration of Dylan T. Ciciliano ("Cicliano Decl.") attached hereto as **Exhibit A**, the pleadings, papers, and other records on file with the clerk of the above-captioned Court, judicial notice of which is hereby respectfully requested under Federal Rule of Evidence 201, and the evidence and argument of counsel entertained by the Court at the time of the hearing on the motion.

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.
## INTRODUCTION

In the *State of New York's Motion to Dismiss, or, in the Alternative, to Appoint a Chapter 11 Trustee* and brief in support thereof [Dkt. Nos. 155, 156, 163] (the "NYAG Motion"), the NYAG seeks to strip Debtors of any control over their own reorganization or deprive them of the protections of chapter 11 altogether. To obtain such grave relief, the NYAG must meet considerable evidentiary burdens. When it filed the NYAG Motion on February 12, 2021, the NYAG promised it would do so—insisting it had already amassed "ample evidence of fraud, dishonesty, incompetency and gross mismanagement of the NRA's affairs."[2] In order to obtain notice of that purported evidence and prepare their defense, Debtors served carefully targeted document requests, and a Rule 30(b)(6) deposition notice, on the NYAG that explored the evidentiary bases for the NYAG's contentions. Unfortunately, the NYAG refused to produce or identify documents in response to many of Debtors' requests. Moreover, the NYAG has flouted

---

[2] *See* NYAG Motion at 17.

the parties' agreed discovery protocol, which unambiguously entitled Debtors to a corporate-representative deposition, by refusing to sit for one.

Although Debtors attempted to meet and confer with the NYAG in good faith to resolve both issues, time is growing short—the Debtors must prepare to defend the NYAG Motion and other pending motions. Therefore, Debtors respectfully request that the Court compel the NYAG to (1) produce or identify documents in response to each of Debtors' document requests or, in the alternative, admit that it does not possess responsive documents; and (2) designate a witness and a date for a Rule 30(b)(6) deposition.

## II.
## JURISDICTION AND VENUE

1. The Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. Consideration of this Motion is a core proceeding under 28 U.S.C. § 157(b)(2). Venue is proper pursuant to 28 U.S.C. §§ 1408(1) and (2) and 1409(a).

2. The Debtors confirm their consent, pursuant to Bankruptcy Rule 7008, to the entry of a final order by the Court.

## III.
## RELEVANT FACTS

### A. The Dismissal Motions and Discovery Agreement.

3. On February 10, 2021, *Ackerman McQueen, Inc.'s Motion to Dismiss the Chapter 11 Bankruptcy Petition, or, in the Alternative, Motion for the Appointment of a Chapter 11 Trustee and Brief in Support* [Docket No. 131] ("AMc Motion") was filed by Ackerman McQueen, Inc. ("AMc").

4. The NYAG filed the NYAG Motion on February 12, 2021 (together with the AMc Motion, the "Dismissal Motions").

5.     On February 25, 2021, the Debtors, AMc, and the NYAG (collectively, the "Parties") negotiated a protocol for the conduct of expedited discovery that was formalized on February 26, 2021, a true and correct copy of which is attached as **Exhibit B** (the "Discovery Agreement").

6.     Among other things, the Discovery Agreement provides for accelerated written discovery, thereby allowing discovery disputes to be promptly identified and addressed. Specifically, the Discovery Agreement requires the Parties to serve objections and responses to written discovery requests within three business (3) days and produce responsive documents within fifteen (15) days.

7.     Further, the Discovery Agreement provides for reciprocal discovery obligations. It was agreed that the NYAG and AMc, as movants, are permitted to conduct a maximum of seven depositions,[3] and that the Debtors are also permitted to conduct a maximum of seven depositions of AMc and the NYAG, collectively, including one 30(b)(6) deposition of each of the NYAG and AMc lasting 10 hours.

**B.     The Document Production Issues.**

8.     In accordance with the Discovery Agreement, the Debtors served the NYAG with *Debtors' First Request for the Production of Documents to the People of the State of New York* (the "Requests") on February 25, 2021, a true and correct copy of which is attached hereto as **Exhibit C**, which contained a total of seven (7) specific requests.

---

[3] To comprise (1) Wayne LaPierre, (2) John Frazer, (3) Woody Phillips, (4) Craig Spray, (5) Carolyn Meadows, (6) Sonya Rowling, and (7) one 30(b)(6) deposition of the NRA. The limit of seven depositions clearly contemplated former employees, outside directors and others not represented by the same counsel as the Debtors and explicitly contemplates depositions of directors.

9.      On March 2, 2021, the NYAG served the *People of the State of New York's Objections and Responses to Debtors' First Requests for the Production of Documents* (the "Initial Responses"), a true and correct copy of which is attached hereto as **Exhibit D**.

10.     By letter dated March 3, 2021, a true and correct copy of which is attached hereto as **Exhibit E**, Debtors' counsel promptly requested a Rule 37 conference with the NYAG's counsel regarding the Initial Responses.  As set forth in the March 3 letter, the Initial Responses indicated that the NYAG did not intend to produce documents until it designated trial exhibits,[4] effectively denying the Debtors discovery, or would simply identify all documents produced in *People of the State of New York v. The National Rifle Association of America, et al.*, Index No. 451625/2020, pending in the Supreme Court of the State of New York (the "NYAG Enforcement Action") without regard to responsiveness.  For example, the NYAG's Initial Responses set forth the following objection and response:

**Request for Production No. 1:**

All Documents Regarding the "ample evidence of fraud, dishonesty, incompetence and gross mismanagement of the NRA's affairs" alleged in Paragraph 45 of the NYAG's Motion including, without limitation, any and all Documents reflecting conduct, transactions, or practices that occurred or continued on or after the Petition Date.

**Response to Request No. 1:**

NYAG objects to this request because it seeks Documents already in the Debtors' possession, custody, and control. NYAG further objects to this request as overbroad and unduly burdensome. In its Motion, the NYAG asserted there is ample evidence of fraud, dishonesty, incompetency and gross mismanagement of the NRA's affairs, and that allegations of such misconduct are set out at length in the NYAG Enforcement Complaint. The NYAG further stated in its Motion that representative examples of such misconduct provide sufficient cause for appointment of a trustee and are set forth in the Motion. To the extent that this request seeks all evidence of "fraud, dishonesty, incompetence and gross mismanagement of the NRA's affairs," it is overbroad, unduly burdensome, and irrelevant as it calls for the production of

---

[4] Three (3) days before the hearing under N.D.Tex. L.B.R. 9014-1.

materials beyond those relevant to the NYAG Motion. **Subject to and without waiver of the foregoing objections, the NYAG refers the Debtors to the NYAG Enforcement Complaint and the production of the NYAG's pre-complaint investigation file recently made in the NYAG Enforcement Action. NYAG further refers the Debtors to its response to Document Request 7, which provides that the NYAG will identify documents it intends to rely on in support of its Motion in compliance with the applicable rules and agreement of the parties.**[5]

11.     Counsel conferred on March 6, 2021, at which time Debtors' counsel requested that the NYAG produce documents responsive to the Requests notwithstanding any prior production in the NYAG Enforcement Action and/or identify the applicable pages of her document production corresponding to each of the Debtors' requests.   Counsel for the NYAG agreed to produce documents in response to the Requests regardless of whether the responsive documents were previously produced in the NYAG Enforcement Action.[6]

12.     On March 12, 2021, the NYAG produced approximately 1.7 million pages of documents in response to the Requests, comprising the NYAG's pre-complaint investigation file recently produced in the NYAG Enforcement Action, and served the *People of the State of New York's Amended Objections and Responses to Debtors' First Requests for the Production of Documents* (the "Amended Responses"), a true and correct copy of which is attached hereto as **Exhibit F**.

13.     The NYAG's March 12 amended response to each of the Debtors' seven (7) requests is set forth in its entirety as follows:

**Request for Production No. 1:**

        All Documents Regarding the "ample evidence of fraud, dishonesty, incompetence and gross mismanagement of the NRA's affairs" alleged in Paragraph 45 of the NYAG's Motion including, without limitation, any and all Documents

---

[5] Ex. E (Initial Responses), pp. 3-4 (emphasis added).

[6] Ciciliano Decl., ¶ 7.

reflecting conduct, transactions, or practices that occurred or continued on or after the Petition Date.

**Response to Request No. 1:**

NYAG objects to this request because it seeks Documents already in the Debtors' possession, custody, and control. NYAG further objects to this request as overbroad and unduly burdensome. In its Motion, the NYAG asserted there is ample evidence of fraud, dishonesty, incompetency and gross mismanagement of the NRA's affairs, and that allegations of such misconduct are set out at length in the NYAG Enforcement Complaint. The NYAG further stated in its Motion that representative examples of such misconduct provide sufficient cause for appointment of a trustee and are set forth in the Motion. To the extent that this request seeks all evidence of "fraud, dishonesty, incompetence and gross mismanagement of the NRA's affairs," it is overbroad, unduly burdensome, and irrelevant as it calls for the production of materials beyond those relevant to the NYAG Motion. Subject to and without waiver of the foregoing objections, ***the NYAG refers the Debtors to the NYAG Enforcement Complaint and the production of the NYAG's pre-complaint investigation file recently made in the NYAG Enforcement Action***. At the request of the Debtor's Bankruptcy Counsel, the NYAG further represents that it will provide ***the NYAG's discoverable pre-complaint investigation file recently made in the NYAG Enforcement Action*** to the NRA to Debtors' Counsel. ***NYAG further refers the Debtors to its responses to Document Requests number 3, which specifies categories and specific documents that the NYAG currently believes that it will rely upon in the hearings on its Motion and 7, which provides that the NYAG will identify documents it intends to rely on in support of its Motion in compliance with the applicable rules and agreement of the parties***.

**Request for Production No. 2:**

All Documents Regarding any alleged diversion or misuse of corporate assets on or after the Petition Date, including, without limitation, any alleged abuse by NRA management of expense or reimbursement policies.

**Response to Request No. 2:**

NYAG objects to this request because it seeks Documents already in the Debtors' possession, custody, and control. Subject to and without waiver of the foregoing objection, NYAG has served document demands on Debtors relating to the NRA's post-Petition Date conduct, the NYAG will produce such documents responsive to this request as are in its possession, custody or control, ***and as set forth in its response to Document Request 7, will identify documents it intends to rely on in support of the NYAG Motion***.

**Request for Production No. 3:**

To the extent not encompassed by Requests 1 and 2 above, all Documents which You allege evidence or establish any diversion or misuse of NRA assets.

**Response to Request No. 3:**

NYAG objects to this request because it seeks Documents already in the Debtors' possession, custody, and control. NYAG further objects to this request as overbroad, unduly burdensome, and irrelevant to the extent that it seeks all evidence of "any diversion or misuse of NRA assets," as it calls for the production of materials beyond those relevant to the NYAG Motion as set forth in the response to the Response to Request No. 1. Subject to and without waiver of the foregoing objections, ***NYAG refers the Debtors to the NYAG Enforcement Complaint and the production of the NYAG's pre-complaint investigation file*** recently made to Debtor NRA in the NYAG Enforcement Action and which NYAG is willing to produce to Debtors' counsel. Further, to the extent that the request is read to call for the identification and production of Documents that the NYAG will or may rely upon in support of the NYAG Motion, the NYAG will produce or identify documents or categories of documents it intends to rely upon in support of its motion. These include:

- Documents relating to the use of charter, private or first class travel, including but not limited to those flights and travel expenses identified in the motion. *See, e.g.,* Bates Nos. NYAG-00116136–118111.

- Statements of Charges including but not limited to NYAG- 73000, 73131, 73139, 73143, 73225, 73277, 73282, 73670, 73672, 73738, 73742, 73745, 73747, 73847, 74842, 74864, 74867, 74869, 78755, 78756, 79069, 79084, 79085, 79146, 79608, 79618, 79712, 79713, 79773, 79891, 80514, 80919, 80935, 81181, 82206, 82216, 82229, 82426, 82427, 82428, 82536, 82537, 82538, 82586, 82587, 82588, 82589, 82590, 82685, 82705, 82714, 82715, 82970, 82971, 82975, 82976, 82977, 83105, 83106, 83108, 83109, 83110, 83111, 83112, 83170, 83171, 83172, 83302, 83303, 83369, 83370, 83371, 83382, 83387, 83388, 83527, 83528, 83706, 83717, 83731, 83732, 83827, 83828, 83855, 84367, 84368, 84533, 84535, 84536, 84689, 84746, 84771, 84782, 84822, 84823, 85078, 85080, 85081, 85212, 85256, 85257, 85438, 85440, 85441, 85521, 85938, 85939, 86041, 86043, 86044, 86159, 86437, 86438, 86547, 86549, 86550, 86597, 87439, 87440, 87543, 88245, 88248, 88548, 88549, 88551, 88552, 88655, 88749, 88750, 88885, 88887, 88888, 89018, 89020, 89021, 89082, 89099, 89100, 89209, 89212, 89262, 89369, 89370, 89513, 89515, 89516, 89709, 89715, 89716, 89841, 89843, 89844, 89947, 90052, 90053, 90174, 90956, 90957, 91096, 91098, 91099, 91241, 91344, 91345, 91399, 92194, 92268, 118901, 228355, 246397, 257049, 277361, 309250, 309269, 309272, 309273, 309274, 309275, 309276, 309277, 309278, 309279, 309280, 309281, 309282, 309283, 309284, 309285, 309296, 309315, 309322, 309339, 310076, 310091, 310105,

310548, 310549, 310551, 310553, 311671, 311682, 311697, 311716, 311731, 311738, 311755, 311772, 311790, 311791, 311792, 311793, 311794, 311795, 311796, 311797, 311798, 311799, 311800, 311801, 311802, 311803, 311804, 311805, 311806, 311807, 311808, 311809, 311810, 311811, 311948, 311949, 311968, 311973, 312321, 312835, 313110, 331329.

- Documents pertaining to travel booked through or by Gayle Stanford or II & IS Travel or GS2 Enterprises. *See, e.g.,* Bates Nos. NYAG-STANFORD-00000001 - NYAG-STANFORD-00001885.

- Documents relating to NRA reimbursement of expenses. *See, e.g.*, Bates Nos. NYAG-56721–66228, 119486–120618;

- Transcripts of investigatory examinations and exhibits thereto. *See, e.g.,* Bates Nos. NYAG00000001 – NYAG00018978.

- Documents relating to the use of Ackerman McQueen to serve as a pass-through for NRA expenses. *See, e.g.*, Bates Nos. NYAG120673-120804; NYAG126977- 132816.

- The NRA and NRAF IRS Form 990s and CHAR500s. These are publicly filed documents and are also in Debtor NRA's possession. If necessary, the NYAG will re-produce the same to Debtors.

- NRA Conflict of Interest Disclosures. *See, e.g.*, Bates No. NYAG 21268-28829.

- NRA Bylaws and policies. *See, e.g.*, Bates No. NYAG18979-19174; NYAG28830- 30082

- NRA Board Minutes, including Committee meetings minutes and records. *See, e.g.,* NYAG19491-21267.

- Documents relating to related party transactions. *See, e.g.*, Bates Nos. NYAG26767-27068; NYAG35099-35152.

- Documents produced by Debtors in connection with the 341 hearings or requests of the United States Trustee, creditors or parties in interest relating to the formation of Sea Girt LLC and the Debtors' decision to file for Bankruptcy, including the minutes of Board meetings and Committee meetings, documents related thereto, resolutions, testimony, and public statements.

- Documents filed by the Debtors in these Bankruptcy Cases including but not limited to the Petitions and supporting documents, Statements of Financial Affairs, Schedules, and any amendments thereto.

- Whistleblower Issues/Top Concerns Memo. *See, e.g.,* NYAG290967-70; NYAG291665-70; NYAG00040357-40358.

- Wells Fargo Banking Records. *See, e.g.,* Bates No. NYAG-WF-00000001 through NYAG-WF01168542.

- The NRA's public statements, including the statements of its officers and directors, regarding the filing of bankruptcy including the content of the NRAforward.org website.

- Wayne LaPierre's employment agreement signed, according to Debtors' testimony, on January 7, 2021.

*NYAG further refers the Debtors to its response to Document Request 7, which provides that the NYAG will identify documents it intends to rely on in support of its Motion in compliance with the applicable rules and agreement of the parties.*

**Request for Production No. 4:**

All Documents Regarding any false or misleading regulatory filing allegedly made by the NRA on or after the Petition Date including, without limitation, Documents which establish the falsity or misleading nature of such filing(s).

**Response to Request No. 4:**

NYAG objects to this request because it seeks Documents already in the Debtors' possession, custody, and control. Subject to and without waiver of the foregoing objection, the NYAG is not currently in possession of responsive documents but *the NYAG has served document demands on Debtors relating to their regulatory filings on or after the Petition Date, and in accordance with its response to Document Request 7, NYAG will identify responsive documents it intends to rely on in support of the NYAG Motion in compliance with the applicable rules and agreement of the parties.*

**Request for Production No. 5:**

All Documents Regarding the NRA General Counsel's alleged lack of oversight of the NRA's affairs.

**Response to Request No. 5:**

NYAG objects to this request because it seeks Documents already in the Debtors' possession, custody, and control. NYAG further objects to this request as overbroad, unduly burdensome, and irrelevant as it calls for the production of

materials beyond those relevant to the pending NYAG Motion. Subject to and without waiver of the foregoing objections, ***NYAG refers the Debtors to the NYAG Enforcement Complaint and the production of the NYAG's pre-complaint investigation file recently made in the NYAG Enforcement Action***. NYAG further refers the Debtors to its response to Document Request No. 3 which outlines evidence NYAG believes it will use in support of its motion and ***Document Request 7, which provides that the NYAG will identify documents it intends to rely on in support of the NYAG Motion in compliance with the applicable rules and agreement of the parties***.

### Request for Production No. 6:

All Documents Regarding any private air travel expense which You allege: (i) was incurred by the NRA on the behalf or at the behest of Wayne LaPierre or his family, and (ii) lacked a proper business or security justification, and (iii) has not been reimbursed by Mr. LaPierre to the NRA.

### Response to Request No. 6:

NYAG objects to this request because it seeks Documents already in the Debtors' possession, custody, and control. Subject to and without waiver of the foregoing objection, ***NYAG refers the Debtors to the NYAG Enforcement Complaint and the production of the NYAG's pre-complaint investigation file recently made in the NYAG Enforcement Action***. Further, the NYAG refers the Debtors particularly to documents Bates Stamped NYAG-00116136–118111 and NYAG- 73000, 73131, 73139, 73143, 73225, 73277, 73282, 73670, 73672, 73738, 73742, 73745, 73747, 73847, 74842, 74864, 74867, 74869, 78755, 78756, 79069, 79084, 79085, 79146, 79608, 79618, 79712, 79713, 79773, 79891, 80514, 80919, 80935, 81181, 82206, 82216, 82229, 82426, 82427, 82428, 82536, 82537, 82538, 82586, 82587, 82588, 82589, 82590, 82685, 82705, 82714, 82715, 82970, 82971, 82975, 82976, 82977, 83105, 83106, 83108, 83109, 83110, 83111, 83112, 83170, 83171, 83172, 83302, 83303, 83369, 83370, 83371, 83382, 83387, 83388, 83527, 83528, 83706, 83717, 83731, 83732, 83827, 83828, 83855, 84367, 84368, 84533, 84535, 84536, 84689, 84746, 84771, 84782, 84822, 84823, 85078, 85080, 85081, 85212, 85256, 85257, 85438, 85440, 85441, 85521, 85938, 85939, 86041, 86043, 86044, 86159, 86437, 86438, 86547, 86549, 86550, 86597, 87439, 87440, 87543, 88245, 88248, 88548, 88549, 88551, 88552, 88655, 88749, 88750, 88885, 88887, 88888, 89018, 89020, 89021, 89082, 89099, 89100, 89209, 89212, 89262, 89369, 89370, 89513, 89515, 89516, 89709, 89715, 89716, 89841, 89843, 89844, 89947, 90052, 90053, 90174, 90956, 90957, 91096, 91098, 91099, 91241, 91344, 91345, 91399, 92194, 92268, 118901, 228355, 246397, 257049, 277361, 309250, 309269, 309272, 309273, 309274, 309275, 309276, 309277, 309278, 309279, 309280, 309281, 309282, 309283, 309284, 309285, 309296, 309315, 309322, 309339, 310076, 310091, 310105, 310548, 310549, 310551, 310553, 311671, 311682,

311697, 311716, 311731, 311738, 311755, 311772, 311790, 311791, 311792, 311793, 311794, 311795, 311796, 311797, 311798, 311799, 311800, 311801, 311802, 311803, 311804, 311805, 311806, 311807, 311808, 311809, 311810, 311811, 311948, 311949, 311968, 311973, 312321, 312835, 313110, 331329.[] NYAG *further refers the Debtors to air travel expenses alleged in the NYAG Motion and to its response to Document Request 7, which provides that the NYAG will identify documents it intends to rely on in support of the NYAG Motion in compliance with the applicable rules and agreement of the parties*.

**Request for Production No. 7:**

All Documents which You intend to offer as evidence in support of the Motion.

**Response to Request No. 7:**

NYAG does not yet know which Documents it intends to offer as evidence in support of the Motion. *It will identify this information when known and in compliance with the applicable rules (including Local Bankruptcy Rule 9014-1) and agreement of the parties*. It reserves the right to use any documents, information, or other materials for purposes of impeachment or rebuttal.[7]

14. Thus, while the NYAG has now provided exemplars of the documents apparently perceived as favorable in some of the Amended Responses, other Amended Responses identify no documents whatsoever—but merely indicate such documents will be identified in advance of the hearing on the NYAG Motion. If the NYAG does not possess or is unaware of documents responsive to Requests No. 1, 2, 4, 5, or 7, the NYAG should say so. Debtors do not expect the NYAG to identify, at this time, documents regarding Debtors' post-petition operations which the NYAG has yet to receive through discovery. However, if the "ample evidence" asserted by the NYAG when it filed the NYAG Motion on February 12, 2021 did not exist (and instead, the NYAG merely hoped to obtain such evidence through a discovery fishing expedition), the record should make the foregoing clear. The Debtors therefore respectfully request that the Court overrule the

---

[7] Ex. F (Amended Responses) (all emphasis added).

NYAG's objections to the foregoing RFPs and compel the NYAG to identify responsive materials, if any exist.

## C.    The 30(b)(6) Deposition Issues.

15.    On March 9, the Debtors served upon NYAG their *Notice of Intention to Take Oral Deposition of Corporate Representative(s) of the People of the State of New York* (the "NYAG 30(b)(6) Notice"), a true and correct copy of which is attached hereto as **Exhibit G**.

16.    On March 12, Debtors' counsel William Noall and Dylan Ciciliano met and conferred with counsel for NYAG, the U.S. Trustee, AMc, and other parties-in-interest regarding scheduling numerous (11-14) depositions during the two-week period preceding the hearing on the Dismissal Motions. Regarding the NYAG 30(b)(6) Notice, counsel for NYAG, Monica Connell, stated that the NYAG may have objections to producing either a 30(b)(6) witness on certain subjects or at all, and that the Debtors would receive her response over the weekend or on Monday, March 15 at the latest.[8]

17.    In correspondence to Ms. Connell sent the afternoon of March 12, Mr. Ciciliano emphasized the importance of the NYAG's 30(b)(6) deposition to the Debtors' ability to prepare for trial and the need to resolve any dispute promptly. A true and correct copy of Mr. Ciciliano's March 12 letter to Ms. Connell is attached hereto as **Exhibit H**.

18.    In Ms. Connell's March 12 response to Mr. Ciciliano's correspondence, she complained that the Debtors had not identified who would appear for the March 15, 2021 deposition of the NRA's 30(b)(6) witness(es) and had not yet agreed to a final deposition schedule. However, as the Debtors have no obligation to identify their 30(b)(6) witnesses by topic in advance but did so only to facilitate scheduling, and as a deposition schedule cannot be "final" when the

---

[8] Cicliano Decl., ¶ 10.

total number of depositions remains unknown, Ms. Connell's response led to an impasse.[9]  A true and correct copy of Ms. Connell's March 12 letter is attached hereto as **Exhibit I**.

19.     During a further conference on March 14, Ms. Connell represented to Mr. Ciciliano that she was still unable to state whether the NYAG would object to the Debtors' taking any deposition of a 30(b)(6) witness, but that the NYAG would refuse to present a witness on certain topics.  Regardless of the position taken by the NYAG at this juncture, however, the Debtors have been left with insufficient time to adequately prepare.[10]

20.     On March 16, 2021 at 5:50 p.m. Central time, the Debtors received the NYAG's written objection to the NYAG 30(b)(6) Notice, a copy of which is attached as **Exhibit J**.   The parties conducted a meet-and-confer teleconference that commenced at 7:45 p.m. Central Time concerning **Exhibit J**, but the Parties could not reach an agreement. In sum, the NYAG refused to produce a Rule 30(b)(6) designee on the ground that the facts Debtors seek to explore—most significantly, the factual bases for the NYAG's contentions that Debtors are engaged in "fraud" and "mismanagement"—reside solely with lawyers.  The NYAG indicated there was no room for compromise, and Debtors should seek relief from the Court.

21.     As the Court is keenly aware, discovery is ongoing in preparation for an evidentiary hearing on the Dismissal Motions commencing on March 29, 2021.

---

[9] *Id.*, ¶ 12.

[10] *Id.*, ¶ 13

## IV.
## LEGAL ARGUMENT AND ANALYSIS

**A.** **The NYAG Should be Required to Identify Documents In Response to Each of the Debtors' Requests.**

22. In relevant part, Rule 34 of the Federal Rules of Civil Procedure, made applicable

to these proceedings by Rule 9014 of the Federal Rules of Bankruptcy Procedure, provides:

> Producing the Documents or Electronically Stored Information.
> Unless otherwise stipulated or ordered by the court, these
> procedures apply to producing documents or electronically stored
> information:
>
> (i) A party must produce documents as they are kept in the usual
> course of business or must organize and label them to correspond
> to the categories in the request;
>
> (ii) If a request does not specify a form for producing electronically
> stored information, a party must produce it in a form or forms in
> which it is ordinarily maintained or in a reasonably usable form or
> forms; and
>
> (iii) A party need not produce the same electronically stored
> information in more than one form.

Fed. R. Civ. P. 34(b)(2)(E) (emphasis added).

23. Rule 34(b)(2)(E)(i) permits the party responding to a request for production to

either "produce documents as they are kept in the usual course of business" or "organize and label

them to correspond to the categories in the request."[11]  This provision was added to Rule 34 in

1980 "because of a concern that litigants were deliberately mixing critical documents with masses

---

[11] *Chilly Dil Consulting, Inc. v. JetPay ISO Servs., LLC*, No. 3:14-CV-2749-P-BK, 2015 WL 13469921, at *2 (N.D. Tex. Dec. 21, 2015).

of other documents to hide their existence or obscure their significance."[12] Stated differently, document dumps are not allowed.[13]  A leading treatise explains:

> The amendment forbids the producing party from thus making it harder to find such items. Similarly, the producing party does have a burden to select and produce the items requested rather than simply dumping large quantities of unrequested materials onto the discovering party along with the items actually sought under Rule 34.[14]

24.     "Rule 34 also imposes on a party the duty to produce documents in a manner in which they can reasonably be used by the requesting party."[15]

25.     When a producing party elects not to organize documents to correspond with categories in the request, that party bears the burden of demonstrating that the documents are

---

[12] *Id.* (citing *Board of Ed. of Evanston Township High School Dist. No. 202 v. Admiral Heating & Ventilating, Inc.*, 104 F.R.D. 23, 36 (N.D. Ill. 1984); 8A C. Wright, A. Miller & R. Marcus, Federal Practice and Procedure, § 2213, at 431 (2nd ed. 1994)); Fed. R. Civ. P. 34, Advisory Committee Note (1980 Amendment, Subdivision (b)) (stating the amendment was aimed at forestalling such abuses as the deliberate mixing of "critical documents with others in the hope of obscuring significance.")

[13] *See Montania v. Aetna Cas. & Sur. Co.*, 153 F.R.D. 620, 621 (N.D. Ill. 1994) ("Defendant should not be required to guess which documents [of the 17,570 pages offered] relate to which request, especially since the requests were clear and specific").

[14] Wright & Miller, Federal Practice and Procedure, § 2213 (3d ed. Oct. 2020); *Rothman v. Emory University*, 123 F.3d 446 (7th Cir. 1997) (plaintiff would be sanctioned for producing unrelated, non–responsive documents).

[15] *Atico Int'l USA, Inc. v. Luv n' care, Ltd.*, No. 09-60397-CIV, 2010 WL 11505474, at *3 (S.D. Fla. July 21, 2010) (requiring producing party to provide requesting parties with a "list detailing which bates-labeled documents are responsive to which specific request" because requiring requesting parties to search through voluminous documents in an effort to determine which of the hundreds of documents are responsive to which requests imposes an undue burden) (citing *Mancini v. Ins. Corp. of New York*, No. 07cv1750-L(NLS), 2009 WL 176529, at *5 (S.D. Cal. June 18, 2009) (finding that "[w]hile it may be burdensome for [plaintiff] to review the entire universe of documents to ascertain which documents are responsive to the document requests, it would be even more burdensome for [defendant] to guess which documents are responsive to which requests" and ordering identification "for example by bates number"); *Wagner v. Dryvit Sys., Inc.*, 208 F.R.D. 606, 610 (D. Neb. 2001) ("[P]roducing large amounts of documents in no apparent order does not comply with a party's obligation under Rule 34."); *Kozlowski v. Sears, Roebuck & Co.*, 73 F.R.D. 73, 76 (D. Mass. 1976) (A party may not utilize "a system of record-keeping which conceals rather than discloses relevant records, or makes it unduly difficult to identify or locate them, thus rendering the production of documents an excessively burdensome and costly expedition.").

produced as kept in the usual course of business,[16] which requires more than merely representing that the documents have been produced as they are maintained.[17] The NYAG cannot meet this burden with respect to a "pre-complaint investigation file" comprising documents largely obtained from other sources, as the Debtors recognized in their instruction to the NYAG regarding the production of documents:

> Given the likelihood that responsive Documents were received or compiled by the [NYAG] other than in the usual course of business as contemplated by Fed. R. Civ. P. 34(b)(2)(E)(i), the Debtors instruct You to organize and label the Documents produced to correspond with the categories in the Requests set forth below.[18]

26.     The NYAG's references to its own, unproved allegations and a promise to later identify the documents it intends to use at trial are facially inadequate. While the NYAG has now identified a non-exhaustive list of documents that purportedly support the NYAG's allegations, the Responses make clear that the referenced documents are not exhaustive, and how the vast majority of the documents in the "pre-complaint investigation file" relate to the allegations in the NYAG Motion, or the Complaint in the NYAG Enforcement Action for that matter, is anyone's guess. To the extent that documents exist which are responsive to Requests No. 1, 2, 4, 5 or 7, the NYAG must identify them. If the NYAG is unaware of such documents or unprepared to identify

---

[16] *Chilly Dil Consulting*, 2015 WL 13469921, at *3 (citing *CooperVision, Inc. v. Ciba Vision Corp.*, 2007 WL 2264848, at *5 (E.D. Tex. 2007) (citing *Johnson v. Kraft Foods N. Am.*, 236 F.R.D. 535 (D. Kan. 2006))).

[17] *Id.* (citing *Johnson*, 236 F.R.D. at 540-41; *Cardenas v. Dorel Juvenile Group, Inc.*, 230 F.R.D. 611, 618 (D. Kan. 2005) (both holding that the mere assertion that documents were produced as kept in the ordinary course of business is insufficient to fulfill the requirements of the governing rule)).

[18] Ex. C (Requests), p. 4, Instruction #8.

them despite the bold assertions in the NYAG Motion, the record in this case should reflect the same.[19]

## B.    The NYAG Should be Compelled to Designate and Produce a 30(b)(6) Witness Under Fed. R. Civ. P. 26 and 30 and the Parties' Discovery Agreement.

27.    Under Rule 30(b)(6), a "party may name as the deponent a public or private corporation, a partnership, an association, **a government agency**, or other entity and must describe with reasonable particularity the matters for examination" and "[t]he named organization must then designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on its behalf."[20]   Public agencies are not immune from this obligation.[21]

Rule 30(b)(6) depositions are a distinct and preferred method of discovery, unequal to other forms of written discovery such as interrogatories and requests for production of documents. *Great Am. Ins. Co. of N.Y. v. Vegas Const. Co.*, 251 F.R.D. 534, 541 (D. Nev. 2008) (citing *Marker v. Union Fid. Life Ins. Co.*, 125 F.R.D. 121, 126 (M.D.N.C. 1989).

---

[19] *Cheng v. AIM Sports, Inc.,* No. CV103814PSGPLAX, 2011 WL 13196557, at *8 (C.D. Cal. Mar. 30, 2011) (where plaintiffs were "overly generous" in identifying the universe of documents potentially responsive to certain requests for production, plaintiffs should bear the burden of searching those records) (citing *Williams v. Taser Intern., Inc.*, 2006 WL 1835437, at *7 (N.D. Ga. June 30, 2006) (noting that where a party is " 'overly generous' in identifying responsive documents so as to unduly burden [the party seeking discovery] in their search of those documents," a Court may order the producing party to organize and label those documents specifically responsive to the requests for production)

[20] Fed. R. Civ. P. 30(b)(6) (emphasis added).

[21] *See, e.g.*, *William Beaumont Hosp. v. Medtronic, Inc.*, No. 09-CV-11941, 2010 WL 2534207, at *8 (E.D. Mich. June 18, 2010) (granting a motion to compel a 30(b)(6) deposition and rejecting reliance on contention interrogatory because the "[p]laintiffs should have the opportunity to more fully probe [defendant's] [interrogatory] response using the traditional method for ascertaining facts in the litigation process—examination of a witness"); *United States ex rel. Fry v. Health Alliance of Greater Cincinnati*, No. 1:03-cv-167, 2009 WL 5227661, at *3 (S.D. Ohio Nov. 20, 2009) ("[T]he fact that government attorneys are the only individuals with the requisite knowledge to answer Defendants['] questions does not prevent them from preparing a designee to answer the questions.… The United States, like any other litigant, has the duty to prepare a witness to testify under oath on its behalf."); *Town of Colorado City v. United Effort Plan Trust*, No. CV11-8037- PHX-DGC, 2012 WL 5989482, at *2 (D. Ariz. Nov. 29, 2012) (stating that the Utah Attorney General's office must submit to a representative deposition); *Oklahoma ex rel. Edmonson v. Tyson Foods, Inc.*, No. 05-CV-329-GKF-SAJ, 2007 WL 649335, at *2 (N.D. Okla. Feb. 26, 2007) ("Defendant has a method under the Federal Rules of Civil Procedure that will permit Defendant to obtain the information Defendant seeks—a Fed. R. Civ. Proc. 30(b)(6) deposition of Plaintiff [Attorney General] on topics listed by Defendant.").

The NYAG, as any other litigant, was required to have a factual basis to file the Motion and seek the relief in view of Rule 9011 of the Federal Rules of Bankruptcy Procedure. Accordingly, the Debtors seek an order compelling the NYAG to designate deponents to testify regarding the factual basis of her claims. Shortly before the time to appear as set forth in the notice of the NYAG 30(b)(6) deposition, the NYAG advised the Debtors that they objected to the 30(b)(6) deposition notice.

This refusal is egregious, The Parties' Discovery Agreement and the plain language of Rule 30(b)(6), require the NYAG to produce a witness to testify on its behalf. However, the NYAG, now, less than two weeks before the start of the evidentiary hearing, refuses to produce a witness to testify regarding the positions of the NYAG. During the Parties most recent meet and confer regarding this subject held on the evening of March 16, 201, the NYAG admitted that the only witnesses the NYAG could put forward would be "attorneys." In fact, the NYAG admits that a 30(b)(6) deposition of the NYAG would effectively amount to a deposition of the NYAG's counsel prosecuting the NYAG Enforcement Action. Further extending this position, the NYAG states that such a deposition would necessarily invade the work product doctrine by probing the mental impressions, conclusion, legal theories and opinions of the NYAG.

However, a request to take a 30(b)(6) deposition is not the functional equivalent of a request to depose opposing counsel. In *United States v. Stabl, Inc.*, 2018 WL 3758204, *5 (D. Ne 2018), a government agency, a plaintiff, objected to a Rule 30(b)(6) deposition, arguing that because attorneys were the only individuals with knowledge of the topic areas noticed by Defendants, the Rule 30(b)(6) notices to the governmental entities were the functional equivalent of a request to depose opposing counsel. The court rejected this argument, stating:

> Although the plaintiffs assert that only attorneys have knowledge regarding the identified topics, "the duty to prepare a Rule 30(b)(6) witness goes beyond matters personally known to the designee or to matters in which the designated witness was

personally involved." *Waste Connections*, No. 8:12CV436, 2014 WL 1281918, \*3. Even if attorneys are the only individuals with requisite knowledge, it does not necessarily follow that such knowledge is automatically protected by attorney-client privilege. ***"[T]he fact that government attorneys are the only individuals with the requisite knowledge to answer Defendants questions does not prevent them from preparing a designee to answer the questions."*** *U.S., ex rel. Fry v. Health All. of Greater Cincinnati*, No. 1:03-CV-167, 2009 WL 5227661, at \*3 (S.D. Ohio Nov. 20, 2009). Finally, "[A] blanket claim of privilege in response to a Rule 30(b)(6) notice creates an unworkable circumstance in which a defendant loses a primary means of discovery without a meaningful review of his opponent's claim of privilege." <u>Me</u>rkin, 283 F.R.D. at 694.

*See Stabl, Inc.,* p.3-4 (emphasis added).

. . . .

As stated by the court in *Tellis v. LeBlanc*, No. 8:12CV436, 2020 WL 5732628, (WDLA 2020),

> A Rule 30(b)(6) designee does not give his personal opinions but presents the corporation's "position" on the topic. *Id.* When a corporation produces an employee pursuant to a Rule 30(b)(6) notice, it represents that the employee has the authority to speak on behalf of the corporation with respect to the areas within the notice of deposition. This extends not only to facts, but also to subjective beliefs and opinions. *Id.*, citing *Resolution Trust Corp. v. S. Union*, 985 F.2d 196, 197 (5th Cir. 1993)(When a corporation or association designates a person to testify on its behalf, the corporation appears vicariously through that agent "as to its knowledge and perceptions.").

Tellis p. 3.

These findings are not unique, and Courts uniformly hold that facts a Rule 30(b)(6) witness obtains from counsel are not entitled to protection. *See Great Am. Ins. Co.*, 251 F.R.D. at 539, 541 (citing *In re Vitamins Antitrust Litig.*, 216 F.R.D. 168, 172 (D. D.C. 2003) (holding that a Rule 30(b)(6) witnesses must be thoroughly educated about the noticed deposition topics and facts known to the corporation or its counsel)).

Nor does it matter that the facts were learned or discovered by the NYAG's counsel. *Protective National Ins. Co. of Omaha v. Commonwealth Ins. Co.* is directly on point. 137 F.R.D. 267 (D. Neb. 1989). There, a 30(b)(6) designee was asked what facts were known by her company that supported the answer and counterclaim. *Id.* at 272. The designee asserted the attorney-client privilege and refused to answer because she learned of the facts only from the company's counsel. *Id.* at 271-72. The district court held the facts sought were not privileged. *Id.*

at 283. First, the court noted that attorney-client privilege protects communications, not facts. *Id.* at 278. That the facts came from counsels' investigation did not render the facts privileged, and thus attorney-client privilege is inapplicable. *Id.* at 279. Nor was the information sought privileged under work-product doctrine. *Id.* at 282. Although the work-product doctrine protects an attorney's mental thoughts and conclusions, it does not protect facts discovered by the attorney. *Id.* at 280-81. The court noted that while a deposition question that called for a 30(b)(6) designee to disclose counsel's mental impressions, conclusions, and legal theories would be privileged, simply asking about the facts and avoiding the protected areas of the work-product doctrine does not bring facts under privilege's shield. *Id.* Because the deposing party had stated that it was only interested in the facts supporting the answer and counterclaim, and not the mental impressions or legal conclusions of counsel, the 30(b)(6) designee was required to answer the deposing party's questions. *Id.* at 282-83.[22]

The Debtors are entitled to cross-examine an NYAG representative prepared to testify regarding the knowledge of the NYAG and the NYAG's positions and contentions, particularly as the NYAG has rendered written discovery all but useless to inform the Debtors of the factual basis for the NYAG's allegations.[23] Presumably, the NYAG has knowledge or a position as to a set of

---

[22] *Protective* is not a unique holding—the majority of courts have reached the same conclusion when presented with similar facts. *See, e.g., Centrix Fin. Liquidating Tr. v. Nat. Union Fire Ins. Co. of Pittsburg, PA*, 2013 WL 3225802 (E.D. Mo. June 25, 2013); *DSM Desotech Inc. v. 3D Sys. Corp.*, 2011 WL 117048 (N.D. Ill. Jan. 12, 2011); *Oklahoma v. Tyson Foods, Inc.*, 262 F.R.D. 617 (N.D. Okla. 2009); *Navigators Mgt. Co., Inc. v. St. Paul Fire & Marine Ins. Co.*, 2009 WL 465586 (E.D. Mo. Feb. 24, 2009); *State Farm Mut. Auto. Ins. Co. v. New Horizont, Inc.*, 250 F.R.D. 203 (E.D. Penn. 2008*); Pastrana v. Local 9509, Comm. Workers of Am., AFL-CIO*, 2007 WL 2900477 (S.D. Cal. Sept. 28, 2007); *U.S. Equal Emp't Opportunity Comm. v. Caesars Entm't, Inc.*, 237 F.R.D. 428 (D. Nev. 2006); *Smith v. General Mills, Inc.*, 2006 WL 7276959 (S.D. Ohio Apr. 13, 2006); *Security Ins. Co. of Hartford v. Trustmark Ins. Co.*, 218 F.R.D. 29 (D. Conn. 2003); *U.S. ex rel. O'Keffe v. McDonnell Douglas Corp.*, 961 F.Supp. 1288 (E.D. Mo. 1997); *Bank Brussels Lambert v. Credit Lyonnais (Suisse) S.A.*, 1995 WL 598971 (S.D.N.Y. Oct. 11, 1995); *Lance, Inc. v. Ginsburg*, 32 F.R.D. 51 (E.D. Pa. 1962).

[23] *See, e.g., Louisiana Pac. Corp. v. Money Mkt. 1 Institutional Inv. Dealer*, 285 F.R.D. 481, 486 (N.D. Cal. 2012) ("A corporation cannot merely assert that certain documents state its position") (quoting *Wilson v. Lakner*, 228 F.R.D. 524, 530 (D. Md. 2005)); *U.S. v. Taylor*, 166 F.R.D. 356, 361 (M.D.N.C. 1996) (a Rule 30(b)(6) designee "represents the knowledge of the corporation.")

alleged facts or an area of inquiry, and its Rule 30(b)(6) witness "must present the position, give reasons for the position, and, more importantly, stand subject to cross-examination."[24]

Accordingly, NYAG should be ordered to forthwith designate its 30(b)(6)witness so that the Debtors may conduct that deposition well in advance of the commencement of trial on the Motions.

## V.
## CONCLUSION

With the hearing on the Dismissal Motions beginning in less than two weeks, the time for the NYAG to disclose the basis, if any, for its allegations has long since passed. Accordingly, Debtors respectfully request that the Court enter an order compelling the NYAG to respond to Debtors' document requests pursuant to Rule 34(b)(2)(E)(i) or admit it does not possess responsive documents; and (ii) designate a representative of the Attorney General's office under Rule 30(b)(6) to testify regarding the NYAG's positions.

---

[24] *Louisiana Pac. Corp.*, 285 F.R.D. at 486; *see also Twentieth Century Fox Film Corp. v. Marvel Enterprises, Inc.*, No. 01 CIV. 3016(AGS)(HB), 2002 WL 1835439, at *3 (S.D.N.Y. Aug. 8, 2002).

Dated: March 17, 2021

Respectfully submitted,

/s/ William M. Noall
Patrick J. Neligan, Jr., SBN 14866000
Douglas J. Buncher, SBN 03342700
John D. Gaither, SBN 24055516
**NELIGAN, LLP**
325 North St. Paul, Suite 3600
Dallas, Texas 75201
Telephone: 214-840-5333
Facsimile: 214-840-5301
pneligan@dneliganlaw.com
dbuncher@neliganlaw.com
jgaither@neliganlaw.com

Gregory E. Garman
Nevada Bar No. 6654, admitted *pro hac vice*
William M. Noall
Nevada Bar No. 3549, admitted *pro hac vice*
Gabrielle A. Hamm
Texas Bar No. 240401047
Dylan Ciciliano
Nevada Nar No. 12348, admitted *pro hac vice*
**GARMAN TURNER GORDON LLP**
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
T: 725-777-3000 / F: 725-777-3112
ggarman@gtg.legal
wnoall@gtg.legal
ghamm@gtg.legal
dciciliano@gtg.legal

Counsel for Debtors