Gerrit M. Pronske
State Bar No. 16351640
Eric M. Van Horn
State Bar No. 24051465
Jason P. Kathman
State Bar No. 24070036
**SPENCER FANE LLP**
2200 Ross Avenue, Suite 4800 West
Dallas, TX 75201
(214) 750-3610 – Telephone
(214) 750-3612 – Telecopier
-and-
5700 Granite Parkway, Suite 650
Plano, TX 75024
(972) 324-0300 – Telephone
(972) 324-0301 – Telecopier
Email: gpronske@spencerfane.com
Email: ericvanhorn@spencerfane.com
Email: jkathman@spencerfane.com

**COUNSEL FOR THE PEOPLE OF
THE STATE OF NEW YORK, BY
LETITIA JAMES, ATTORNEY GENERAL
OF THE STATE OF NEW YORK**

James Sheehan
*Pro Hac Vice*
Emily Stern
*Pro Hac Vice*
Monica Connell
*Pro Hac Vice*
Stephen Thompson
*Pro Hac Vice*
**OFFICE OF THE ATTORNEY GENERAL
OF THE STATE NEW OF NEW YORK**
28 Liberty Street
New York, NY 10005
(212) 416-8401 – Telephone
Email: James.Sheehan@ag.ny.gov
Email: Emily.Stern@ag.ny.gov
Email: Monica.Connell@ag.ny.gov
Email: Stephen.Thompson@ag.ny.gov

**COUNSEL FOR THE PEOPLE OF
THE STATE OF NEW YORK, BY
LETITIA JAMES, ATTORNEY GENERAL
OF THE STATE OF NEW YORK**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | **CASE NO. 21-30085-hdh-11** |
| **NATIONAL RIFLE ASSOCIATION** | § | |
| **OF AMERICA and SEA GIRT LLC,** | § | **CHAPTER 11** |
| | § | |
| Debtors[1]. | § | **Jointly Administered** |

## THE STATE OF NEW YORK'S OPPOSITION TO
## DEBTORS' MOTION TO COMPEL AND MOTION FOR A
## PROTECTIVE ORDER AND TO STAY RULE 30(b)(6) DEPOSITION

---

[1] The last four digits of the Debtors' taxpayer identification numbers are: 6130 (NRA) and 5681 (Sea Girt). The Debtors' mailing address is 11250 Waples Mill Road, Fairfax, Virginia 22030.

THE STATE OF NEW YORK'S OPPOSITION TO THE DEBTORS' MOTION TO COMPEL AND
MOTION FOR PROTECTIVE ORDER AND TO STAY RULE 30(b)(6) DEPOSITION – PAGE 1

DA 2094703.2

**TO THE HONORABLE HARLIN D. HALE,**
**CHIEF UNITED STATES BANKRUPTCY JUDGE:**

The People of the State of New York, by Letitia James, Attorney General of the State of New York ("**NYAG**"), a party in interest in the above-referenced bankruptcy case, hereby respectfully submits this *Memorandum of Law and Brief* ("**Brief**") *in Opposition to Debtors' Motion to Compel and in Support of its Motion for a Protective Order to Stay the Rule 30(b)(6) Deposition*.

## PRELIMINARY STATEMENT

1.      On March 9, 2021, the National Rifle Associations of America, Inc. ("NRA") and Sea Girt LLC ("Sea Girt") (collectively the "**Debtors**") sent a Notice of Intent to Take Oral Deposition of Corporate Representative(s) of the party in interest People of the State of New York by Attorney General Letitia James ("**Notice**") pursuant to Federal Rule of Civil Procedure 30(b)(6). Debtors cannot meet their burden of showing that the extraordinary step of deposing assistant attorneys general in New York Attorney General's Office ("**NYAG**") in this matter on the topics identified in the Notice. Debtors seek privileged information, which is not subject to discovery, and seek testimony that is also cumulative or duplicative, overly broad, unduly burdensome and not relevant to this action and, therefore, not discoverable.

2.      It is respectfully submitted that this Court should deny Debtors' motion and grant the NYAG's motions denying the deposition of the NYAG's counsel on the topics set forth in the Notice and staying the Rule 30(b)(6) Deposition pending the Court's decision ("**Motions**"). Debtors cannot meet their burden of showing that the extraordinary step of deposing the New York Attorney General's counsel in this matter on the topics identified in the Notice. Debtors are seeking privileged information, which is not subject to discovery, and otherwise requesting information that is cumulative or duplicative, overly broad, unduly burdensome and not relevant to this action

and, therefore, not discoverable.

## BACKGROUND

**I.      The NYAG's Regulatory Authority**

3.      The NYAG is the State of New York's chief legal officer.  New York Constitution Article V, § 4 and Exec. Law § 60 (1).  Among other statutory duties, the NYAG is the regualtor responsible for overseeing the activities of New York not-for-profit corporations and the conduct of their officers and directors, in accordance with New York's Not-for-Profit Corporation Law ("N-PCL"), Estates Powers & Trusts Law ("EPTL"), Prudent Management of Institutional Funds Act ("NYPMIFA") and the Executive Law ("Exec. Law"). The NYAG has a wide range of supervisory and oversight powers over charitable corporations, and over the trustees of property held for charitable purposes.  *Citizens United v. Schneiderman*, 882 F.3d 374 (2d Cir. 2018).

4.      The NRA is a charitable not-for-profit corporation chartered by a special act of the State of New York Legislature on November 17, 1871.  The NRA is legally domiciled in New York. It is registered with the NYAG Charities Bureau ("Charities Bureau") to conduct business and solicit donations and subject to the NYAG's oversight.

5.      The NYAG's Charities Bureau is staffed primarily with attorneys and support staff. Declaration of James Sheehan ("Sheehan Decl."), ¶ 8. The attorneys working in the Charities Bureau are responsible for regulatory oversight and review of filings. In addition, the attorneys conduct investigations of charities suspected of violating the laws enforced by the NYAG.  They also represent the State in any subsequent enforcement action.  Sheehan Decl. ¶¶ 3-5.

**II.     NYAG Attorneys Investigated Debtor NRA and Represent the State in Resulting Litigations.**

6.      On August 6, 2020, after a fifteen-month-long investigation by NYAG attorneys that involved the examination of numerous witnesses, including current and former NRA officers

**THE STATE OF NEW YORK'S OPPOSITION TO THE DEBTORS' MOTION TO COMPEL AND MOTION FOR PROTECTIVE ORDER AND TO STAY RULE 30(b)(6) DEPOSITION – PAGE 3**

DA 2094703.2

and employees, and review of tens of thousands of documents, the NYAG commenced the action styled *People of the State of New York, by Letitia James, Attorney General of the State of New York v. The National Rifle Association of America, Inc., et. al.,* Index No. 451625/2020. The 163-page Verified Complaint ("**NYAG Enforcement Complaint**") filed in the Supreme Court of the State of New York (the "**NY State Court**") presents detailed factual allegations of pervasive illegal conduct at the NRA.[2]

7.      The NYAG Enforcement action is currently pending in the Supreme Court of the State of New York, County of New York.  The NYAG has outlined in its *Motion to Dismiss or In the Alternative for Appointment of a Trustee* ("**Motion to Dismiss**") the numerous non-meritorious attempts NRA has made to interfere with the NYAG Enforcement Action in its attempt to evade legal accountability, and NYAG incorporates that procedural history by reference.  *See Motion to Dismiss*, Dkt # 156, § II-III.

8.      The fifteen-month-long investigation that resulted in the NYAG Enforcement Action was conducted by the same assistant attorneys general who are counsel in the NYAG Enforcement Action and in this matter. These attorneys interviewed witnesses, conducted examinations, sought relevant information, reviewed thousands of documents and, ultimately, drafted the NYAG Enforcement Complaint. The same attorneys, with local counsel, represent NYAG in this action, and they continue to vigorously prosecute the NYAG Enforcement Action.

9.      To date, the NRA's motion to dismiss the State Enforcement Action was dismissed and the the parties are engaged in discovery in both the NYAG Enforcement Action and this matter.

10.      At the request of the NRA and the four current and former NRA officers sued in the NYAG Enforcement Action, the NYAG turned over its complete discoverable investigatory

---

[2] *See generally* NYAG Enforcement Complaint, attached as Exhibit 1 to the Appendix in Support of the New York Attorney General's Motion to Dismiss, or in the Alternative, to Appoint Chapter 11 Trustee ("**Appendix**").

**THE STATE OF NEW YORK'S OPPOSITION TO THE DEBTORS' MOTION TO COMPEL AND MOTION FOR PROTECTIVE ORDER AND TO STAY RULE 30(b)(6) DEPOSITION – PAGE 4**

DA 2094703.2

file (the "**Investigatory File**") in February 2021. Specifically, the NYAG produced copies of examination transcripts and exhibits on February 10, 2021. The NYAG produced the bulk of the remaining discoverable Investigatory File on February 18, 2021, with a small number of remaining documents produced on February 25, 2021. Sheehan Decl., ¶ 6.

11. At the request of one of the firms serving as bankruptcy counsel for the NRA herein, the NYAG again produced the entire Investigatory File as well as additional documents on March 12, 2021. Sheehan Decl., ¶ 7.

12. In their motion, the Debtors' counsel complain about the volume of documents served upon them. Yet they specifically requested that another copy of the entire Investigatory File be re-produced to them. In addition, their demands call for, for example, "All Documents Regarding the "ample evidence of fraud, dishonesty, incompetence and gross mismanagement of the NRA…." *See* Debtors' Motion, Ex. C (Debtors' Request for Production), Request No.1. The NYAG served objections to the Debtors' demands within three days of receipt. *See* Debtors' Motion, Ex. D. Following a meet and confer, the NYAG agreed to amend its responses, specifying documents it intends to rely upon in support of its Motion to Dismiss or in the Alternative to Appoint a Trustee. *See* Debtors' Motion, Ex. F. To be clear, as alleged in its Motion to Dismiss, the NYAG is not seeking to or agreeing to try the entire scope of its NYAG Enforcement Action here. The basis for the motion for appointment of a trustee relies upon many of the allegations set forth in great detail in the NYAG Enforcement Complaint, many of which are set out in the Motion to Dismiss, as well as evidence the NYAG is eliciting in discovery now of even more recent conduct by the Debtors' leadership. The Amended Responses set out documents within the universe of documents then available to the NYAG that the NYAG knows it will rely upon. Further, the NYAG has and will supplement as appropriate and will, in a little over a week, set out

THE STATE OF NEW YORK'S OPPOSITION TO THE DEBTORS' MOTION TO COMPEL AND MOTION FOR PROTECTIVE ORDER AND TO STAY RULE 30(b)(6) DEPOSITION – PAGE 5

DA 2094703.2

its Exhibit List, Witness List and Transcript Designation Lists for the trial. The Debtors did not ask for a meet and confer or otherwise discuss any alleged deficiencies in the amended response prior to filing this motion.

13.     The NYAG has been transparent in providing NRA all materials that makeup the factual basis of the NYAG's claims regarding the NRA's mismanagement; in response to the discovery requests in the NYAG Enforcement Action, the NYAG has turned over to the NRA the entirety of the NYAG investigation file, encompassing over 100,000 documents that include all documents that make us the bases for the NYAG Enforcement Action and the NYAG's *Motion to Dismiss* in this action.

**III.     The Debtors Serve a Notice to Take the Deposition of the NYAG Seeking Information Relevant to the Other Ongoing Litigation, Seeking Privileged and Duplicative Material.**

14.     On March 9, 2021, Debtors served the Notice, scheduling the deposition of the NYAG for March 23, 2021. Sheehan Decl., Ex. 2. This Notice seeks deposition testimony from the NYAG on 17 different topics ("Topics") including the person who will be testifying on each Topic.[3] *Id.*

15.     The 17 topics noticed for deposition by the Debtors are as follows:

1)     The name and role of each designated 30(b)(6) witness for response to each of the numbered paragraphs herein, the name and role of each person who participated in the selection and preparation of each 30(b)(6) witness, the document reviews undertaken to prepare for this examination, and whether the designated witness is able to testify about all the information known or readily available to the NYAG about each of the topics in the 30(b)(6)

---

[3]  The NYAG and Creditor Ackerman McQueen negotiated a discovery agreement with the Debtors. To the extent that the Debtors argue that the NYAG agreed to produce a corporate representative witness, this is just inaccurate. The agreement was negotiated with Sarah Rogers of Brewer, Associates and Counselors. It was negotiated that the NYAG did not consent to a 30(b)(6) deposition or any particular topic, but that one could be noticed. *See* Debtors' Motion, Ex. B.  In the agreement, the NYAG identified the party witnesses it intended to call. The Debtors did not. The agreement specifically notes that the Debtors could notice depositions but that "Nothing contained herein shall waive any rights of either of the Movants or the NRA to object to discovery, including any persons to be deposed who are not specifically listed above or the subject matter of any 30(b)(6) deposition." *Id.* at ¶ 9(b)(5).

**THE STATE OF NEW YORK'S OPPOSITION TO THE DEBTORS' MOTION TO COMPEL AND MOTION FOR PROTECTIVE ORDER AND TO STAY RULE 30(b)(6) DEPOSITION – PAGE 6**

DA 2094703.2

notice.

2) The factual basis for Your contention that "LaPierre[] and his lieutenants[] siphon[ed] [] tens of millions of dollars out of the NRA to use for their own purposes," including (i) the identity of each "lieutenant" referenced, (ii) the factual basis for your contention, if applicable, that the conduct alleged to constitute "siphoning" was authorized, aided or abetted by current NRA management, and (iii) the transaction(s) in which funds were allegedly "siphoned."

3) The identity of each transaction or relationship ratified by the Audit Committee pursuant to N-PCL § 715(j) for which You contend that the Audit Committee's ratification failed to satisfy the requirements of § 715(j), and the factual basis for such contention.

4) The "ample evidence of fraud, dishonesty, incompetency and gross mismanagement of the NRA's affairs" which you alleged existed at the time You filed the Motion Memorandum, including the facts and circumstances surrounding each instance of alleged fraud, dishonesty, incompetency or gross mismanagement.

5) Each "lucrative contract" between the NRA and any "insider[] [or] entit[y] providing personal benefits to the LaPierres" which You contend was awarded without proper review or authorization, and the factual basis for Your contention.

6) If You contend that the NRA's executive vice president, general counsel, and/or treasurer receive any excessive or improper compensation, the factual basis for such contention.

7) The factual basis for Your contention, if applicable, that the NRA failed to correct, or pursue correction of, the excess benefits disclosed on its 2019 Form 990.

8) The factual basis for Your contention that the NRA fails or has failed to protect whistleblowers, or suppresses or has suppressed whistleblower reports, including, without limitation, the factual basis for Your contention that "NRA personnel . . . took affirmative steps to conceal the nature and scope of the NRA whistleblowers' concerns from its external auditors."

9) The factual basis for Your contention that Wilson Phillips "was awarded," by the NRA, the post-employment consulting contract described in Paragraph 81 of the Motion Memorandum.

10) The identity of each NRA executive whom You contend "lack[s] honesty and care in their oversight of the NRA's charitable assets" and the factual basis for such contention.

11) If You contend that the NRA, or any individual NRA executive, was aware of, directed, or was party to any "informal agreement" concerning any allegedly-improper expense invoiced by AMc, the factual basis for Your contention.

12) The factual basis for each of Your contentions, in the NYAG State Lawsuit, regarding RSM, including, without limitation, Your contentions that: (i) RSM was not present for, nor invited to participate in, the July 30, 2018, Audit Committee meeting; (ii) none of the NRA personnel interviewed by RSM reported any instances of whistleblowing or "suspicious activity" to RSM; (iii) the Audit Committee "failed to exercise the requisite level of oversight or accountability" with respect to RSM; (iv) the Audit Committee "itself failed to communicate essential information to RSM that may have materially impacted the quality of the audit; (v) RSM "was not aware that Ackerman was covering substantial expenses" which were invoiced to the NRA; and (vi) an RSM audit partner claimed that his team was unaware of the Top Concerns Memo while the 2018 Audit was ongoing, and likely would have performed additional audit testing around certain transactions if it were made aware.

13) Your Communications with the following persons (including, without limitation, Communications with counsel or agents acting under the supervision on the behalf of such person(s)) Regarding the NYAG-NRA Investigation: Andrew Cuomo; Maria Vullo; Linda Lacewell; Everytown; AMc.

14) The factual basis for Your contention that the NRA's retention and/or compensation of outside counsel "serve[s] as evidence of gross mismanagement" including, without limitation, the factual basis for Your contentions that: the NRA (i) improperly made payments to outside counsel without consideration of the factors set forth in NYPMIFA 552(e)(1); and (ii) the NRA's compensation of outside counsel was "exorbitant."

15) The factual basis for Your contention that any air travel expense was incurred by the NRA on the behalf or at the behest of Wayne LaPierre or his family, and lacked a proper business or security justification, including, for each transfer, the date of each expense, the person(s) incurring such expense, and the destination or location of such expense.

16) The factual basis for Your decision to seek dissolution of the NRA including, without limitation, the factual basis for Your disparate enforcement approach to the NRA vis-à-vis the following not-for-profit entities:

- NARAL Pro-Choice NY
- Richenthal Foundation
- Grand Marnier Foundation

**THE STATE OF NEW YORK'S OPPOSITION TO THE DEBTORS' MOTION TO COMPEL AND MOTION FOR PROTECTIVE ORDER AND TO STAY RULE 30(b)(6) DEPOSITION – PAGE 8**

DA 2094703.2

- Rochester Association of Paraprofessionals
- Praxis Housing Initiative
- Gloria Wise Community Center
- Marcus Garvey Nursing Home and Ruby Weston Manor
- Thoroughbred Retirement Foundation
- National Arts Club
- Educational Housing Services, Inc.
- Therapy and Learning Center, Inc.
- Metropolitan Council on Jewish Poverty
- Society for Propagation of the Faith
- Glad Tidings Tabernacle, Inc.
- Regional Aid for Interim Needs, Inc.
- Victor E. Perley Fund
- Homeland Foundation, Inc.
- New York Legal Assistance Group, Inc.

17) Your intention to "distribute [the NRA's] remaining and future assets" as set forth in paragraph 574 of the NYAG State Lawsuit, including, without limitation, the specific entities or uses to which You seek to seek to allocate the NRA's assets.

Sheehan Decl., Exhibit A (internal footnotes and citations omitted).

16. On March 12, 2021, the NYAG served Debtors with the People of the State of New York's Amended Objections and Responses to Debtors' First Requests for the Production of Documents ("NYAG Doc. Response"). Debtors' Motion to Compel, Ex. F. The NYAG provided Debtors with its Investigatory File. *Id.*, Response 1. In specific response to Document Requests number 3 and number 7, the NYAG specified the categories and specific documents by bates numbering that the NYAG currently believes it will rely upon in the hearing on its Motion to Dismiss and further agreed to identify additional documents it intends to rely on in support of its Motion to Dismiss. *Id.*, Responses 3 & 7. In response to Document Request No. 6, the NYAG also provided a specific list of documents that relate to air travel expenses. *Id.*, Response 6.

17. Accordingly, the NYAG has produced, and Debtors have in their possession, all non-privileged discoverable documents in this case and in the NYAG Enforcement Action, as well as additional information obtained by the NYAG since commencement of these bankruptcy cases.

THE STATE OF NEW YORK'S OPPOSITION TO THE DEBTORS' MOTION TO COMPEL AND MOTION FOR PROTECTIVE ORDER AND TO STAY RULE 30(b)(6) DEPOSITION – PAGE 9

DA 2094703.2

The discovery provided by the NYAG provides the Debtors all of the materials they need to determine the factual basis of the NYAG's claims. Further, in the NYAG Doc. Response, the NYAG has provided guidance on the specific materials that the NYAG is relying on to support its Motion to and will continue to supplement such specification.

18. Accordingly, the Topics in the Notice are duplicative and unduly burdensome as the Debtors already have, in addition to the notice provided in the Motion to Dismiss, the NYAG's entire investigation file, the detailed 163-page NYAG Enforcement Complaint, and NYAG guidance as to the materials it currently intends to rely on to support the Motion to Dismiss. Within these materials, Debtors can obtain all information properly discoverable in relationship to the Motion to Dismiss. Debtors, however, are not seeking information properly discoverable in relationship to the Motion to Dismiss. Debtors are attempting to conduct improper discovery regarding the discussions, deliberations and thought processes of the NYAG's attorneys, including discussions and decisions regarding its litigation, trial preparation and enforcement practices.

19. The only persons with knowledge of the Topics identified in the Notice and the allegations contained in the NYAG Enforcement Complaint and the Motion to Dismiss are the NYAG's trial attorneys. Those assistant attorneys general who conducted the investigation and are acting as trial counsel in ongoing litigation.

20. On March 12, 2021, the NYAG notified Debtors that it had objections to the Notice but was looking closely at the matter. On March 16, the NYAG served a detailed notice of objection and requested that Debtors voluntarily withdraw the Notice. *See* Debtors' Motion, Ex. J. A meet and confer was held. Debtors declined to withdraw the notice or any Topics.

21. On March 17, 2021, the Debtors moved to compel. Dkt. # 372. The NYAG now opposes that motion and asks for a protective order and stay of the March 23, 2021 deposition.

**THE STATE OF NEW YORK'S OPPOSITION TO THE DEBTORS' MOTION TO COMPEL AND MOTION FOR PROTECTIVE ORDER AND TO STAY RULE 30(b)(6) DEPOSITION – PAGE 10**

DA 2094703.2

Fed. R. Civ. P. 26 is made applicable by Rule 7026 of the Federal Rules of Bankruptcy Procedure ("the **Bankruptcy Rules**"). The Federal Rules of Civil Procedure also provide the means for a party to protect itself from discovery methods, including a Rule 30(b)(6) deposition, which seeks information outside of the scope of discovery. Under Rule 26, "[a] party or person from whom discovery is sought may move for a protective order" and "a court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense ….", including forbidding the discovery or prescribing a discovery method other than the one selected by the party. Fed. R. Civ. P. 26(c)(1).

22.     The Court should also stay the deposition pending its determination. "'Upon motion by a party or by the person from whom discovery is sought, and for good cause shown,' a district court is authorized to 'make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense.'" *Landry v. Air Line Pilots Ass'n Int'l AFL-CIO*, 901 F.2d 404, 435 (5th Cir. 1990) (citing Rule 26(c)). This include a stay of discovery pending the determination of a motion if the outcome of the motion could eliminate the need for discovery. *Id.*

## ARGUMENT

### I.     DEBTORS' NOTICE SEEKS TESTIMONY OF OPPOSING COUSNEL AND IS BARRED UNDER THE *SHELTON* STANDARD

23.     The deposition of an attorney is generally disfavored and employed only in limited circumstances. *Theriot v. Parish of Jefferson,* 185 F.3d 477, 491 (5th Cir. 1999), *cert denied* 529 U.S. 1129 (2000), *citing Shelton v. Am. Motors Corp.,* 805 F.2d 1323, 1327 (8th Cir. 1986). In *Shelton v. Am. Motors Corp.*, 805 F.2d 1323 (8th Cir. 1986), the Court reversed the district court's grant of default judgment in plaintiff's favor after defendant's in-house counsel declined to answer questions about the existence of certain documents on grounds of work product. The Court

**THE STATE OF NEW YORK'S OPPOSITION TO THE DEBTORS' MOTION TO COMPEL AND MOTION FOR PROTECTIVE ORDER AND TO STAY RULE 30(b)(6) DEPOSITION – PAGE 11**

DA 2094703.2

reasoned that where counsel has engaged in the process of selecting and compiling documents in preparation for litigation, merely acknowledging the existence of such documents would reveal counsel's mental impressions, which are protected under the work product doctrine. *Shelton,* at 1329. The *Shelton* Court made clear that seeking to depose opposing counsel constitutes an abuse of the discovery process:

> The harassing practice of deposing opposing counsel (unless that counsel's testimony is crucial and unique) appears to be an adversary trial tactic that does nothing for the administration of justice but rather prolongs and increases the cost of litigation, demeans the profession, and constitutes an abuse of the discovery process.

*Id.* at 1330.

24. The *Shelton* Court further observed that an attorney's trial preparation would be far simpler if deposing opposing counsel were allowed but underscored the dangers of allowing the deposition:

> Undoubtedly, counsel's task in preparing for trial would be much easier if [counsel] could dispense with [other discovery methods], and simply depose opposing counsel in an attempt to identify the information that opposing counsel has decided is relevant and important to [counsel's] legal theories and strategy. The practice of forcing trial counsel to testify as a witness, however, has long been discouraged.

*Shelton* at 1327 (citing *Hickman v. Taylor,* 329 U.S. 496-513, 67 S.Ct. 385, 394 (1947)).; see also *Ind. Maritime Carriers, et al., v. Barwil Agencies A.S. et al.* 2005 WL 2060925 *2-5 (E.D. La. Aug. 23, 2005). The *Shelton* Court recognized that in "cases that involve reams of documents and extensive document discovery, the selection and compilation of document is often more crucial than legal research." *Id.* at 1328 *citing James Julian, Inc. v. Raytheon Co..,* 93 F.R.D. 138, 144 (D.Del. 1982). Thus, if counsel "were compelled to acknowledge whether specifically prescribed documents exist, [counsel] would necessarily reveal [counsel's] selective process" as counsel would be acknowledging the document and since it was important enough to remember, the may be relying on it in preparing the case. *Id.* at 1329.

**THE STATE OF NEW YORK'S OPPOSITION TO THE DEBTORS' MOTION TO COMPEL AND MOTION FOR PROTECTIVE ORDER AND TO STAY RULE 30(b)(6) DEPOSITION – PAGE 12**

DA 2094703.2

25. The Court in *Shelton* established a three-part test for situations in which a deposition of opposing counsel is implicated. In order to take a deposition of opposing counsel, a party must establish that (1) no other means exist to obtain the information sought other than to depose opposing counsel …; (2) the information sought is relevant and nonprivileged; and (3) the information is crucial to the preparation of the case." *Id.;* see also *In re Douglas Asphalt Co.* 436 B.R. 246, 249-250 (S.D. Ga. 2019)(*Shelton* test must be satisfied) *Nguyen v. Excel Corp.* 197 F.3d 200, 208-210 (5th Cir. 1999)(applying the *Shelton* factors in determining whether appropriate to depose opposing counsel); *Securus Technologies, Inc., v. Global Tel Link Corp.*, 331 F.Supp.3d 633, 637-639 (N.D. Tex. 2017)(*Shelton* test instructive in determining if good cause exists to quash deposition); *McKenney/Pearl Rest. Partners, L.P. v. Metro. Life Ins. Co.* 2016 WL 3033544 *5-7 (N.D. Tex) (applying *Shelton* factors). Courts in the Fifth Circuit have concluded that "the critical factor in determining whether the *Shelton* test applies … is the extent of the lawyers involvement in the pending litigation" and that, … "if the lawyer is actively involved in trial preparation, [counsel] cannot be deposed unless the *Shelton* criteria are met." *Id. 6 citing Murphy v. Adelphia Recovery Tr.,* 2009 WL 4755368 *3 (N.D. Tex. 2009). Debtors have not, and cannot, satisfy any of these criteria under the circumstances of this case and based on the Topics identified in the Notice. Applying the *Shelton* factors, and as demonstrated below, the Debtors cannot meet their burden under *Shelton* to take the deposition of the NYAG's counsel on the Topics in the Notice.

**A.** **Debtors Cannot Demonstrate That There Are No Other Means To Obtain The Information Sought In Debtors' Notice.**

26. The first factor under *Shelton* is whether "no other means exist to obtain the information than to depose opposing counsel …." 805 F.2d at 1327. This first factor is not satisfied if the party seeking to depose opposing counsel can seek the information through other discovery methods or, if, the party has already obtained the information. *Id.* at 1327–28; *See also Nguyen v.*

**THE STATE OF NEW YORK'S OPPOSITION TO THE DEBTORS' MOTION TO COMPEL AND MOTION FOR PROTECTIVE ORDER AND TO STAY RULE 30(b)(6) DEPOSITION – PAGE 13**

DA 2094703.2

*Excel Corp.*, 197 F.3d 200, 209 (A deposition of counsel should not be ordered when the information sought could be otherwise obtained.); *see also Murphy v. Adelphia Recovery Tr.*, 2009 WL 4755368 * 2 (N.D.Tex. Nov. 3, 2009)(deposition of opposing counsel should not proceed unless there is a strong showing of need and the information sought cannot be obtained from other sources) *citing Theriot v. Parish of Jefferson,* 185 F.3d 477, 491 (5th Cir.1999), *cert. denied,* 529 U.S. 1129, 120 S.Ct. 2004, 146 L.Ed.2d 955 (2000); *Davis-Lynch, Inc. v. Weatherford Int'l, Inc.,* No. 6-07-CV-559, 2009 WL 2174925 at *2 (E.D.Tex. Jul. 21, 2009); *Delor v. Intercosmos Media Group, Inc.,* No. 04-3262, 2005 WL 1588300 at *1 (E.D.La.Jun.27, 2005); *Wilson v. Scruggs,* No. 3-02-CV-525-LN, 2003 WL 23521358 at *1 (S.D.Miss. Apr. 10, 2003).

27.     Debtors cannot demonstrate that no other means exist to obtain the information other than by deposing counsel.  Not only are there other means to obtain the information sought in the Notice; the NYAG has already turned over the relevant nonprivileged information by providing the Investigatory File, and Debtors agreed to forego interrogatories in this action.  Thus, Debtor not only has the information and documents forming the basis of the allegations contained in the NYAG Enforcement Action and Motion to Dismiss, but as the subject matter of both actions is Debtors' actions, Debtors themselves hold all of the information regarding their activities that form the basis of the allegations.  *Cf. United States v. Dist. Council of New York City*, No. 90 CIV 5722, 1992 WL 208284, at *14 (S.D.N.Y. Aug. 18, 1992) ("No Rosetta stone is necessary to unlock their mysteries.  Defendant and his counsel can read them and determine which documents pertain to an allegation, and to what degree, directly or indirectly." (quoting *United States v. Dist. Council*, Memorandum Opinion and Order, dated July 30, 1992, at 13)).

28.     Here, Debtors have the universe of possibly relevant documents; they have clarification on specific documents and classes of documents upon which the NYAG currently

**THE STATE OF NEW YORK'S OPPOSITION TO THE DEBTORS' MOTION TO COMPEL AND MOTION FOR PROTECTIVE ORDER AND TO STAY RULE 30(b)(6) DEPOSITION – PAGE 14**

DA 2094703.2

intends to rely which will be supplemented appropriately. They also are seeing through depositions and the exhibits used therein the particular focus ot the NYAG's inquiries and will get a complete list fo the exhibits, witnesses and deposition transcripts upon which the NYAG will reply for trial on its Motion to Dismiss.

**B.**     **Debtors Seek Information That Is Protected by Privilege And/Or Is Not Relevant.**

29.     The second factor under *Shelton* is whether "the information sought is relevant and nonprivileged[.]" 805 F.2d at 1327.   Under the Federal Rules of Civil Procedure, the scope of discovery allows the parties to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense …." Fed. R. Civ. P. 26(b)(1).   Accordingly, even if a matter is relevant, the court must determine if the matter is subject to a privilege precluding discovery, or if the court limit discovery on the matter." *Id.;* Fed. R. Civ. P. 26(c) (for good cause, the court may limit the scope of disclosure, or if  the court must determine if the matter is subject to a privilege precluding discovery, or if the court should otherwise use its discretion to limit discovery on the matter."); *see also  Livers v. Schenck*, No. 8:08-cv-107, 2009 WL 928986, at *4 (D. Neb. Apr. 3, 2009).   Debtors' Notice, on its face, seeks information that is protected by privilege and/or is not relevant.

**C.**     **Debtors seek information that is protected by attorney work-product in all Topics.**

30.     Debtors' Notice seeks information protected as attorney work-product. Attorney work-product is governed by the Federal Rules of Civil Procedure.  Fed. R. Civ. P. 26(b)(3)(A) provides, in pertinent part:  "Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative …." Attorney work-product includes, and protects from disclosure, "the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the

litigation." Fed. R. Civ. P. 26(b)(3)(B).  Debtors' Notice plainly seeks information that is protected by attorney work- product.

   **D.     Deposing litigation counsel on the factual basis of the case, i.e., Topics 2-12 and 14-16 calls for revelation of attorney work-product.**

   31.     Topics 2-12 and 14-16 all seek information that is protected by attorney-work product by requesting the "factual basis" for the NYAG's allegations in the Motion to Dismiss and the NYAG Enforcement Action.  Exhibit __ at 2-12 and 14-16.

   32.     While Debtors purport to seek the "factual basis" of the NYAG's claims, "it is the selection and compilation of the relevant facts that is at the heart of the work product doctrine." *E.E.O.C. v. HBE Corp,* 157 F.R.D. 465, 466 *citing Shelton v. American Motors Corp.,* 805 F.2d 1323 (8th Cir. 1986).  See also *Shelton*, 805 F.2d at 1329 ("In cases that involve reams of documents and extensive document discovery, the selection and compilation of documents is often more crucial than legal research."); E.E.O.C. v. Am. Int'l Group, Inc. 1994 WL 376052 * 2(S.D.N.Y. July 18, 1994(Where a party has the investigative file, they are seeking deposition testimony on how the government "intends to marshal the facts, documents and [statements] in its possession, and to discover inferences" the government believes can be drawn from the documents.).  The *HBE Corp.* court determined that when the party that is the subject of the 30(b)(6) deposition notice "has fully complied with all of the defendant's discovery requests, including turning over its complete investigative file and identifying all witness requested by the defendant and known to the plaintiff to have relevant information" that the information being sought by the deposition is privileged.  *Id.* at 466-467.  Where "all relevant, non-privileged evidence has been disclosed" the 30(b)(6) deposition "is intended to ascertain how the [party from whom deposition is sought] intends to marshal the facts, documents and testimony in its possession and to discover the inference that [the deposed party] believes properly can be drawn from the evidence as it is

accumulated." *SEC v. Morelli,* 143 F.R.D. 42, 47 (S.D.N.Y. 1992); *see also In re Bilzerian,* 258 B.R. 846, 849 (M.D. Fla. 2001)(refusing to allow counsel's deposition when disclosure of facts would effectively reveal the mental impressions or opinions of an attorney, those facts are protected from disclosure by the attorney work product doctrine.)

33.     Where a 30(b)(6) notice seeks to depose a witness concerning material that the law enforcement agency has already provided in discovery, even when framed as for factual information, "the witness in explaining why certain documents 'support' or 'rebut' the allegations, would necessarily be asked to interpret the facts and discuss how the [law enforcement agency] decided to proceed in preparing the case." *E.E.O.C. v. Texas Roadhouse, Inc.,* 2014 WL 4471521 *3 (D. Mass. Sept. 9, 2014).

*34.*     "Numerous other federal courts have similarly concluded that 30(b)(6) deposition notices directed to a law enforcement agency … were, in effect, notices to depose opposing counsel of record and would not be permitted given a) the agencies' lack of independent knowledge of the transactions at issue and that the information the noticing party was seeking was generated by the agencies' counsel or counsel's agents in preparation of trial; the consequent high potential for intrusion into attorney work product; c) the undue burden and inefficiency entailed to prepare a lay witness to engage in rote memorization of the evidence in the case, and d) the availability of alternative means to secure legitimated factual discovery. *E.E.O.C.* v. *McCormick & Schmick's Seafood Resturants, Inc., et al.,* 2010 WL 2572809 *4 (D. Md. June 22, 2010)(citations omitted).

35.     In *Shelton*, the Eighth Circuit held "that where, as here, the deponent is opposing counsel and has engaged in a selective process of compiling documents from among voluminous files in preparation for litigation, the mere acknowledgment of the existence of those documents would reveal counsel's mental impressions, which are protected as work product." 805 F.2d at

**THE STATE OF NEW YORK'S OPPOSITION TO THE DEBTORS' MOTION TO COMPEL AND MOTION FOR PROTECTIVE ORDER AND TO STAY RULE 30(b)(6) DEPOSITION – PAGE 17**

DA 2094703.2

1326.

36.    Similar to *Shelton*, here, any NYAG designee would be its current litigation counsel and would be asked to provide the factual basis for various allegations[4].  In answering questions on Topics 2-12 and 14-16, the NYAG's designee would be revealing his or her mental impressions, legal theories, and legal strategy by providing the factual basis for the allegations.  *See Shelton*, 805 F.2d at 1329; *Hickman v. Taylor*, 329 U.S. 495, 511 (1947); *E.E.O.C.*, 2012 WL 169981, at *5.  That Debtors seek attorney work product is clear because they are already in possession of the relevant nonprivileged documents.  *See, supra*, at 6–9. Therefore, Debtors could only be seeking the NYAG's litigation counsel's legal theories, mental impressions, and legal strategy related to those documents, all of which is privileged work product.  *Cf. Dist. Council*, 1992 WL 208284, at *10.  Thus, Topics 2-12 and 14-16 improperly seek attorney work-product.

37.    Similarly, Topic 13 seeks information protected as attorney work product.  Topic 13 seeks the NYAG's communications with the New York Governor, Superintendent of the New York State Department of Financial Services, Ackerman McQueen, Inc., who served as the NRA's advertising agency and Everytown for Gun Safety Action Fund, Inc. and any affiliated entities. To the extent that there were any written communications with these entities, any such communications that were relevant and nonprivileged would have been produced as part of the NYAG's investigatory file.

38.    Accordingly, what the Debtors are actually seeking is to depose the attorneys

---

[4] While a 30(b)(6) witness "is not required to have firsthand knowledge," the witness would have to be prepared by counsel and preparation "would include disclosure of [counsel's] legal and factual theories … and their opinions as to the significance of documents, credibility of witnesses, and other matters constituting attorney work product." *S.E.C. v. Rosenfeld,* 1997 WL 576021 *2 (S.D.N.Y).  "Preparation of such witness would require the use of attorney work product and would be unduly burdensome." *In re Hogan,* --B.R. ---, 2020 WL 8576058 * 8 (D. S.C.);  Having someone spending "untold weeks if not months learning the case" would be "inefficient in the extreme." *S.E.C. v. Nacchio,* 614 F.Supp.2d 1164, 1177 (D.Colo. 2009).

**THE STATE OF NEW YORK'S OPPOSITION TO THE DEBTORS' MOTION TO COMPEL AND MOTION FOR PROTECTIVE ORDER AND TO STAY RULE 30(b)(6) DEPOSITION – PAGE 18**

DA 2094703.2

representing the NYAG to inquire about their investigative process, who they may have spoken to and what questions they may have asked. Testimony about these discussions would involve questions of attorney work product since they would necessarily reflect counsels' areas of questions, mental impressions and opinions. *SEC v. Rosenfeld*, 1997 WL 576021 at 3 (S.D. NY Sept. 16, 1997). Thus, Topic 13 also seeks attorney work product.

39.      Topic 16 also seeks information protected by attorney work-product. Topic 16 seeks information relating to decisions to take certain legal actions and seek certain relief against the NRA and 18 unrelated parties. Debtors' Motion, Ex J. Decisions to take legal actions unescapably include mental impressions, opinions, legal theories, and legal strategy. *See Herron v. Best Buy Co.*, No. 2:12-cv-2103, 2015 WL 2091614, at *2 (E.D. Cal. May 4, 2015) (finding that "any deposition questions will inevitably tread on the attorneys' mental impressions and investigation of the factual matters leading up to the filing of the original and amended complaints.").

**E.      Debtors seek information that is not relevant in Topics 13, 16 and 17.**

40.      Under *Shelton*, Debtors must demonstrate that their Notice seeks information that is relevant. However, as demonstrated below, Debtors' Notice, on its face, seeks categories of information that are not relevant, including Topics 13, 16 and 17.

41.      For example, Topic 13 seeks information regarding discussions with various parties regarding the NYAG investigation of the NRA. Topic 13 also relates to litigation in other venues and is not applicable to the Motion to Dismiss. First, the NYAG Enforcement Action is being litigated in State court in New York. Second, On August 6, 2020, hours after the NYAG Enforcement Action was commenced, the NRA filed a countersuit against the NYAG in the United States District Court for the Northern District of New York ("**NDNY** Action"). In the NDNY

**THE STATE OF NEW YORK'S OPPOSITION TO THE DEBTORS' MOTION TO COMPEL AND MOTION FOR PROTECTIVE ORDER AND TO STAY RULE 30(b)(6) DEPOSITION – PAGE 19**

DA 2094703.2

Action, the NRA asserts claims, *inter alia,* under the First and Fourteenth Amendment arising out of the NYAG's investigation and request for dissolution in the NYAG Enforcement Action.  The NYAG's Motion to Dismiss the NDNY Action was fully briefed as of January 4, 2021.  In addition, in its Answer to the NYAG Enforcement Complaint, the NRA has raised defenses and included counterclaims relating to its claims under the First and Fourteenth Amendment.  The judge in the NYAG Enforcement Action has stayed any discovery on these constitutional claims as the issue is being litigated in the NDNY Action.  Debtors' Motion, Ex. J, p.3. What Debtors are seeking to do is obtain discovery in this venue relating to claims and defenses that the NRA has raised in other venues and that has no relationship to this matter.  Here, the NYAG must meet the standards applicable for appointment of a Trustee or fail to do so.  The motion rises or falls on its merits.

42.     Topic 16 seeks the factual basis for seeking dissolution of the NRA and the NYAG's enforcement approach regarding 18 other not-for-profit entities, none of which are the subject of this matter or the NYAG Enforcement Action.  Decisions to take legal actions and what relief to see invariably would include the mental impressions, opinions, legal theories and legal strategy of the attorneys involved.  The Fifth Circuit has made clear that "deliberative analysis[ of evidence put forward by the party requesting discovery] is required before a . . . judge may permit open-ended discovery into a matter that goes to the core of a prosecutor's function and implicates serious separation of powers concerns. *Id*. at 285. There is no selective prosecution claim/defense in this matter and a selective prosecution claim would not be a cognizable defense to the Motion to Dismiss.

43.     Topic 17 seeks information regarding the NYAG's "intention" to distribute" the NRA's future assets.  In its Prayer for Relief in the NYAG Enforcement Action the NYAG requested, among other relief, an order "[d]issolving the NRA and directing that its

**THE STATE OF NEW YORK'S OPPOSITION TO THE DEBTORS' MOTION TO COMPEL AND MOTION FOR PROTECTIVE ORDER AND TO STAY RULE 30(b)(6) DEPOSITION – PAGE 20**

DA 2094703.2

remaining assets and any future assets be applied to charitable uses consistent with the mission set forth in the NRA's certificate of incorporation …". It is of no relevance to the Motion to Dismiss how the NYAG may distribute assets at the conclusion of the NYAG Enforcement Action if judicial dissolution, just one form of relief sought, is granted.[5]

44. Therefore, all of the Topics described in Debtors' Notice seek information that is either not relevant, protected by privilege or attorney work-product, or both. Thus, Debtors cannot carry their burden to satisfy the second *Shelton* factor.

**F.      Debtors Seek Information That Is Not Crucial To Preparation Of The Case.**

45. The third factor under *Shelton* is whether "the information is crucial to the preparation of the case." 805 F.2d at 1327. Generally, when the party seeking to depose opposing counsel has already received relevant, nonprivileged information covering the deposition topics, the information sought by way of deposing opposing counsel is not crucial to preparation of the case. *See, e.g., Newkirk v. ConAgra Foods, Inc.*, No. 8:10-cv-22, 2010 WL 2135263, at *6 (D. Neb. May 27, 2010) ("ConAgra has already provided the plaintiffs with relevant, nonprivileged information covering the proposed deposition topics. The plaintiffs have no need to depose ConAgra's attorneys, and the information sought is not crucial to the preparation of the case.").

46. Like *Newkirk*, the NYAG has disclosed and produced relevant, nonprivileged information covering the Notice's Topics. The NYAG has produced over 100,000 documents to Debtors and provided to Debtors specific documents that it intends to use to support its Motion to Dismiss, and will continue to do so. Defendants have the information necessary to prepare their

---

[5] The NYAG seeks various remedies in the NYAG Enforcement Action, including orders directing restitution, unwinding transactions, requiring an accounting, and removing officers and directors. The NYAG also asserts claims seeking judicial dissolution of the NRA. If the court grants judicial dissolution, the NRA's assets would have to be distributed in accordance with the law, for charitable uses consistent with its charitable mission. *See, e.g.,* N.Y. Not for Profit Corp. Law §§ 1101, 1102, 1109(b), and 1115(a). Requesting NYAG to testify and speculate to answer this question is irrelevant, unduly burdensome, and arguably calls for privileged information.

**THE STATE OF NEW YORK'S OPPOSITION TO THE DEBTORS' MOTION TO COMPEL AND MOTION FOR PROTECTIVE ORDER AND TO STAY RULE 30(b)(6) DEPOSITION – PAGE 21**

DA 2094703.2

case. Thus, Debtors' cannot carry their burden to satisfy the third *Shelton* factor.

47.     Under *Shelton*, Debtors bear the burden of satisfying *all three factors* in order to depose opposing counsel. As demonstrated above, Debtors cannot carry their burden on any one of the factors. Therefore, this Court should bar Debtors from deposing the State's litigation counsel and quash the Notice in its entirety.

## II.   DEBTORS' MOTION FAILS TO ESTABLISH AN ENTITLEMENT TO AN ORDER TO COMPEL.

48.     Under Federal Rule of Civil Procedure 26(c)(1), "[t]he court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following," *inter alia*: (1) "forbidding the disclosure of discovery;" (2) "prescribing a discovery method other than the one selected by the party seeking discovery;" (3) "forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters;" and (4) "requiring that a deposition be sealed and opened only on court order[.]" Fed. R. Civ. P. 26(c)(1)(A), (C), (D). (E). As noted above, Debtors seek testimony that is privileged, overbroad, unduly burdensome, duplicative and not relevant. For these reasons, it is respectfully submitted that Debtors have not established entitlement to the deposition they seek. Their motion papers do not establish otherwise.

49.     Contrary to Debtors' assertions in their Motion to Compel, NYAG is not objecting to Debtors' Notice on the basis that the government can never be subject to a Fed. R. Civ. P. 30(b)(6) deposition. There are certainly many types of cases and many topics that may be covered in a 30(b)(6) deposition of a governmental entity. Rather, NYAG objects to the Notice on the basis that in this context, the deposition sought and Topics identified are improper. Rather, NYAG objects to the Notice on the basis that the Topics seek information that is privileged and otherwise protected information and discovery that is irrelevant, cumulative, duplicative, unduly burdensome

**THE STATE OF NEW YORK'S OPPOSITION TO THE DEBTORS' MOTION TO COMPEL AND MOTION FOR PROTECTIVE ORDER AND TO STAY RULE 30(b)(6) DEPOSITION – PAGE 22**

DA 2094703.2

and not otherwise allowed under Fed. R. Civ. P. 26, thereby entitling NYAG to a protective order.

50. While parties generally have the availability of their choice of discovery methods, federal courts disfavor depositions of a party's attorney and allow them only in limited circumstances, despite the party noticing a deposition. *Theriot v. Par. of Jefferson,* 185 F.3d 477, 491 (5th Cir. 1999) (As the entire record was available to the parties it was not an abuse of discretion to quash the deposition); *McKinney/Pearl Rest. Partners. L.P. v. Metro. Life Ins. Co.,* No. 3:14CV2498-B 2016 WL 3033544 * 5 (N.D. Tex. May 26, 2016) (Party did not show that no other means existed to obtain the information or that deposition was crucial to the case preparation);; *S.E.C. v. Monterosso* No. 07-61693-CIV, 2009 WL 8708868 *2 (S.D. Fla. June 2, 2009) (30(b)(6) deposition quashed but party already had all the documents and could serve interrogatories); *F.T.C. v. U.S. Grant Res., LLC,* No. CIV.A. 04-596, 2004 WL 1444951 *10 (E.D. La. June 25, 2004) (Quashing 30(b)(6) deposition and noting that relevant facts are available in the materials produced); *S.E.C. v. Morelli*, 143 F.R.D. 42, 48 (S.D.N.Y 1992) (Barring 30(b)(6) deposition of the SEC but recognizing information can be obtained through interrogatories).

51. Debtors fail to contend with the precedent applicable to the facts here. Debtors rely on *Protective Nat'l Ins. Co. of Omaha* as being "directly on point" in this matter, but its facts are clearly distinguishable as are the facts in *Great American*. *See* Debtor's Mot. p. 20, citing *Protective Nat'l Ins. Co. of Omaha v. Commonwealth Ins. Co.,* 137 F.R.D. 267 (D.Neb. 1989) and *Great Am. Ins. Co. of N.Y. v. Vegas Constr. Co., Inc.,* 251 F.R.D. 539, 541 (D. Nev. 2008). The disputes in *Protective* and *Great American* were between two private entities and did not involve a government regulator or investigation. *Id.* Neither *Protective Nat'l's* nor *Great American's* designee for the Rule 30(b)(6) deposition were lawyers; the cases addressed the deposition of a company employee, where one would expect the company party to have *independent* knowledge

---

**THE STATE OF NEW YORK'S OPPOSITION TO THE DEBTORS' MOTION TO COMPEL AND MOTION FOR PROTECTIVE ORDER AND TO STAY RULE 30(b)(6) DEPOSITION – PAGE 23**

DA 2094703.2

of the underlying factual matter[6]. *Id.* at 277. With government law enforcement investigations, as here, the law enforcement entity does not have firsthand knowledge of the facts at issue in the case but instead gathers facts from the entities and persons investigated and other witnesses. *SEC v. Buntrock,* No. 02 C 2180 2004 WL 14270278 * 3 (N.D. Ill June 29, 2004). Further, while both *Protective Nat'l* and *Great American* stated that where a client learns some of its facts from its lawyer's investigation, that those facts may be subject to disclosure in a deposition, neither court addressed whether trial counsel themselves could be deposed when it would reveal work product.[7]

52.     The *Protective Nat'l* court clearly recognized the danger where, as here, "deposition questions may tend to elicit the impressions of counsel about the relative significance of facts; opposing counsel is not entitled to his adversaries' thought processes" and that "the effort must be to protect against indirect disclosure of an attorney's mental impressions or theories of the case." *Id.* at 280; *U.S. ex rel O'Keefe v. McDonnell Douglas Corp.,* 961 F.Supp. 1288, 1290 (E.D. Mo. 1997), aff'd, 132 F.3d. 1252 (8th Cir. 1998)[8](Government not be required to answer questions "which tend to reveal counsel's advice, counsel's view as to the significance of specific facts, or counsel's questions to third-party witnesses" as that is protected as privileged work product.).

53.     While Debtors completely ignore the *Shelton* test that applies to the Rule 30(b)(6) deposition of NYAG, the *Pastrana* case relied upon by Debtors only allowed the attorney deposition to go forward after finding that two out of three of the *Shelton* factors applied. *Pastrana*

---

[6] Debtors list a string of cases that they assert follows *Protective*. *See* Debtors' Motion to Compel at fn. 22 . However, like *Protective*, the majority of these cases have dissimilar fact to those here, in that they involve two private parties who would hold independent knowledge and/or they did not involve an attorney as the deponent.

[7] Indeed, in *Protective Nat'l*, in allowing the deposition of an insurance company representative, the court specifically found that the questioning of an employee was appropriate there because it *did not* tend to elicit mental impressions of the company's lawyers and recognized that the mental impressions of lawyers regarding facts "enjoy nearly absolute immunity from discovery." *Protective Nat. Ins. Co. of Omaha*, 137 F.R.D. 267 (D. Neb. 1989).
[8] This case is also inapposite as the government had not objected to the first deposition but objected to the demand to produce the witness a second time, which the court granted. *U.S. ex rel O'Keefe v. McDonnell Douglas Corp.,* 961 F.Supp. 1288, 1289 (E.D. Mo. 997), aff'd, 132 F.3d 1252 (8th Cir. 1998).

**THE STATE OF NEW YORK'S OPPOSITION TO THE DEBTORS' MOTION TO COMPEL AND MOTION FOR PROTECTIVE ORDER AND TO STAY RULE 30(b)(6) DEPOSITION – PAGE 24**

*v. Local 9509, Commc'ns Workers of Am., AFL-CIO* No. 06CV1779 W AJB 2007 WL 2900477 *

2 (S.D. Cal. Sept. 28, 2007); Debtors Motion to Compel at fn. 22. In *Pastrana*, the Court applied

the *Shelton* factors when determining whether Plaintiff's attorney could be deposed regarding a

telephone conversation Plaintiff and his counsel had with Defendant regarding Plaintiff's

grievance. *Id*. at *1. Plaintiff Pastrana could not remember the conversation and his counsel was

the only other witness for Plaintiff to the conversation. *Id.* In determining whether to allow the

deposition, the Court noted that "courts have held that because of the negative impact that deposing

a party's attorney can have on the litigation process, the taking of opposing counsel's deposition

should be permitted only in limited circumstances, and that the party seeking to depose another

party's attorney must demonstrate the propriety and the need for the deposition. *Id*. * 2 citing

*Shelton,* 805 F.2d at 1327. In allowing the extremely limited deposition, the Court found that

Defendants satisfied both the relevancy prong of *Shelton's* second requirement and *Shelton's* third

requirement that the information was crucial to the preparation of the case as it impacted the statute

of limitations defense. *Id*. Unlike the attorney in *Pastrana,* NYAG does not have independent

information regarding the NYAG Enforcement Action and the testimony of assistant attorneys

general is not the only evidence addressing any issue. Here, Debtors have firsthand knowledge of

the issues and Debtors already have access to all other nonprivileged secondhand information

contained in the NYAG Investigatory File. Likewise, the court in *State of Okla. ex rel Edmonton*,

also cited by Debtors, applied the *Shelton* factors when granting a motion for a protective order

preventing Defendant's deposition of the Oklahoma Attorney General. *State of Okla. ex rel

Edmonton v. Tyson Foods, Inc.,* No. 05-CV-329-GFK SAJ, 2007 WL 649335 * 3-4 (N.D. Okla.

Feb. 26, 2007).[9]

---

[9] Debtors also rely on *Town of Colorado City* for the premise that public agencies are not immune from a deposition, however, the court there was not ruling on whether a protective order should be issued to quash a deposition nor has

54.     While it is "technically true that the [law enforcement entity] may designate any person under Rule 30(b)(6) … from a practical standpoint the argument fails to pass muster.  Rule 30(b)(6) requires that the responding party make a conscientious good faith effort to designate a person or persons having knowledge of the matters sought by the discovering party and to prepare those persons knowledgeable about the areas noticed so that they can fully, completely and unevasively address the questions posed."  *F.T.C. v. U.S. Grant Res., LLC* No. CIV.A. 04-596, 2004 WL 1444951 *9 (E.D. La. 2004).  Where, as here, the investigation was conducted by NYAG attorneys, the 30(b)(6) notice "necessarily involves" either "the testimony of one or more attorneys assigned to the case" or the "prepar[ation of] other witnesses to testify" by those attorneys.  *Id.* "Most notably, the *Rosenfeld* court commented:

> Although defendant is correct that a Rule 30(b)(6) witness is not required to have firsthand knowledge, and that discovery should be conducted as efficiently as possible, the notice of deposition clearly calls for the revealing of information gathered by the SEC attorneys in anticipation of bringing the instant enforcement proceedings, and if forced to designate witnesses to testify fully and completely concerning the matters described in the notice of deposition, testimony of the [government] attorneys conducted the investigation would be necessary."

*Id.* citing *S.E.C. v. Rosenfeld,* No. 97 CIV. 1467 (RPP), 1997 WL 576021 * 2 (S.D.N.Y. 1997), *see also S.E.C. v. Buntrock,* 217 F.R.D. 441, 444 (N.D. Ill. 2003) aff'd No. 02 C 2180, 2004 WL 1470278 (N.D. Illl. June 29, 2004),  *S.E.C. v. Morelli,* 143 F.R.D. 42 (S.D.N.Y. 1992).  The "preparation of such witness would require the use of attorney work product and would be unduly burdensome since it would result in the recitation of facts known from information" already available to Debtors or available through written discovery requests.  *In re Hogan,* No. CV 18-05693-HB 2020 WL 8576058 *8 (Feb. 21, 2020).  The *Hogan* court further recognized that the dispute was not a "conventional two-party dispute" but rather the United States Trustee, like

---

the NYAG asserted that a public entity is immune from a deposition.  *Town of Colo. City v. United Effort Plan Tr.* No. CV11-8037-PHX-DGC, 2012 WL 5989482 *1-3 (D. Ariz. Nov. 29, 2012).

**THE STATE OF NEW YORK'S OPPOSITION TO THE DEBTORS' MOTION TO COMPEL AND MOTION FOR PROTECTIVE ORDER AND TO STAY RULE 30(b)(6) DEPOSITION – PAGE 26**

DA 2094703.2

NYAG "is a government agency with civil enforcement responsibilities" and a deposition would seek attorney work product. *Id*.

## CONCLUSION

55.     For the reasons demonstrated above, it is respectfully requested that this Court deny the motion to compel and grant the motion to for a protective order thereby quashing Debtors' Notice and barring the deposition of the NYAG's litigation counsel and grants such other and further relief as it deems just, proper and appropriate.

Dated:  March 18, 2021

Respectfully submitted,

*/s/ Gerrit M. Pronske*
Gerrit M. Pronske
State Bar No. 16351640
Eric M. Van Horn
State Bar No. 24051465
Jason P. Kathman
State Bar No. 24070036
**SPENCER FANE LLP**
2200 Ross Avenue, Suite 4800 West
Dallas, Texas 75201
(214) 750-3610 – Telephone
(214) 750-3612 – Telecopier
-and-
5700 Granite Parkway, Suite 650
Plano, Texas 75024
(972) 324-0300 – Telephone
(972) 324-0301 – Telecopier
Email:  gpronske@spencerfane.com
Email:  ericvanhorn@spencerfane.com
Email:  jkathman@spencerfane.com

– And –

*/s Monica Connell*
Monica Connell
*Pro Hac Vice*
James Sheehan
*Pro Hac Vice*
Emily Stern
*Pro Hac Vice*
Stephen Thompson
*Pro Hac Vice*
**OFFICE OF THE ATTORNEY GENERAL OF
THE STATE OF NEW YORK**
28 Liberty Street
New York, NY  10005
(212) 416-8401
Email: James.Sheehan@ag.ny.gov
Email: Emily.Stern@ag.ny.gov
Email: Monica.Connell@ag.ny.gov
Email: Stephen.Thompson@ag.ny.gov

**COUNSEL FOR THE PEOPLE OF THE
STATE OF NEW YORK, BY LETITIA
JAMES, ATTORNEY GENERAL OF THE
STATE OF NEW YORK**

**THE STATE OF NEW YORK'S OPPOSITION TO THE DEBTORS' MOTION TO COMPEL AND
MOTION FOR PROTECTIVE ORDER AND TO STAY RULE 30(b)(6) DEPOSITION – PAGE 28**

DA 2094703.2