Gerrit M. Pronske
State Bar No. 16351640
Eric M. Van Horn
State Bar No. 24051465
Jason P. Kathman
State Bar No. 24070036
**SPENCER FANE LLP**
2200 Ross Avenue, Suite 4800 West
Dallas, TX 75201
(214) 750-3610 – Telephone
(214) 750-3612 – Telecopier
-and-
5700 Granite Parkway, Suite 650
Plano, TX 75024
(972) 324-0300 – Telephone
(972) 324-0301 – Telecopier
Email: gpronske@spencerfane.com
Email: ericvanhorn@spencerfane.com
Email: jkathman@spencerfane.com

**COUNSEL FOR THE PEOPLE OF
THE STATE OF NEW YORK, BY
LETITIA JAMES, ATTORNEY GENERAL
OF THE STATE OF NEW YORK**

James Sheehan
*Pro Hac Vice*
Emily Stern
*Pro Hac Vice*
Monica Connell
*Pro Hac Vice*
Stephen Thompson
*Pro Hac Vice*
**OFFICE OF THE ATTORNEY GENERAL
OF THE STATE NEW OF NEW YORK**
28 Liberty Street
New York, NY 10005
(212) 416-8401 – Telephone
Email: James.Sheehan@ag.ny.gov
Email: Emily.Stern@ag.ny.gov
Email: Monica.Connell@ag.ny.gov
Email: Stephen.Thompson@ag.ny.gov

**COUNSEL FOR THE PEOPLE OF
THE STATE OF NEW YORK, BY
LETITIA JAMES, ATTORNEY GENERAL
OF THE STATE OF NEW YORK**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | **CASE NO. 21-30085-hdh-11** |
| **NATIONAL RIFLE ASSOCIATION** | § | |
| **OF AMERICA and SEA GIRT LLC,** | § | **CHAPTER 11** |
| | § | |
| Debtors[1]. | § | **Jointly Administered** |

### THE STATE OF NEW YORK'S
### MOTION TO PRECLUDE DEBTORS FROM INTRODUCING CERTAIN
### EVIDENCE AND ELICITING CERTAIN TESTIMONY THEY HAVE SHIELDED
### FROM DISCOVERY BASED UPON INAPPROPRIATE PRIVILEGE ASSERTIONS

---

[1] The last four digits of the Debtors' taxpayer identification numbers are: 6130 (NRA) and 5681 (Sea Girt). The Debtors' mailing address is 11250 Waples Mill Road, Fairfax, Virginia 22030.

**TO THE HONORABLE HARLIN D. HALE,**
**CHIEF UNITED STATES BANKRUPTCY JUDGE:**

The People of the State of New York, by Letitia James, Attorney General of the State of New York ("**NYAG**"), a party in interest in the above-referenced bankruptcy case, hereby respectfully submits this *Motion To Preclude Debtors from Introducing Certain Evidence and Eliciting Certain Testimony They have Shielded from Discovery Based Upon Inappropriate Assertions of Privilege* (the "**Preclusion Motion**").

## PRELIMINARY STATEMENT

1.      By this motion, the People of the State of New York by Attorney General Letitia James ("**NYAG**"), a party in interest in this proceeding, ask this Court to prevent the Debtors from using attorney client and attorney work product assertions  to prevent any inquiry with regard to certain central facts at issue in this case, while claiming  that the work of attorneys supports assertions that the bankruptcy was authorized, and provides a defense to evidence of gross mismanagement by CEO Wayne LaPierre.

2.       Debtor National Rifle Association of America, Inc. ("**NRA**") has used the assertion of attorney client and attorney work product privilege to block inquiry into material, even central issues in these bankruptcy cases.  The NYAG now asks that the Court issue an order prohibiting the NRA from introducing evidence about which it blocked inquiry through the wrongful assertion of privilege. This covers three main areas of relevant information.

3.      Primarily, evidence elicited during the course of the bankruptcy cases before this Court demonstrates that the only cited source of authority for the NRA's bankruptcy filing was an ambiguously worded provision in an employment contract for NRA Executive Vice President Wayne LaPierre, which was submitted to the NRA Board of Directors ("**Board**") for consideration during an executive session ("**Executive Session**") of the January 7, 2021 NRA Board meeting

**THE STATE OF NEW YORK'S MOTION TO PRECLUDE DEBTORS' FROM INTRODUCING CERTAIN**
**EVIDENCE AND ELICITING TESTIMONEY THEY HAVE SHIELDED FROM DISCOVERY BASED**
**UPON INAPPROPRIATE PRIVILEGE ASSERTIONS – PAGE 2**

("**Meeting**"). It appears that the Board never actually voted to place the NRA into Chapter 11 bankruptcy.

4. Board minutes reveal that during the Executive Session, the Board purportedly voted to approve an employment contract. That contract provides, in defining the duties of Executive Vice President Wayne LaPierre, that he "shall be empowered to exercise corporate authority in furtherance of the mission and interests of the NRA, including without limitation to reorganize or restructure the affairs of the Association for purposes of cost-minimization, regulatory compliance or otherwise." The minutes are silent as to any approval for or delegation of authority to file for bankruptcy. What actually happened during that executive session? What information was shared with the Board? The NRA claims that a valid delegation of authority occurred but has acted consistently to block inquiry into that process by citation to attorney client and attorney work product privilege.[2]

5. Even while asserting that there was a valid delegation, Debtor NRA has asserted privilege to block NYAG's inquiry into whether the NRA Board of Directors, in approving LaPierre's employment contract, were informed that they were adopting a policy granting NRA's Executive Vice President the unprecedented authority and the complete discretion to institute a bankruptcy proceeding. Under the NRA's bylaws , at Article V, section 2 (c), the Executive Vice

---

[2] Debtor NRA's Petition did not contain a resolution of the Board approving the filing or LaPierre's employment contract. Instead, it contained a resolution passed by the NRA Board's Special Litigation Committee, comprised of three officers. The resolution was issued on January 15, 2021, the petition date in these cases. That resolution stated that on January 7, 2021,

> the NRA Board of Directors voted to approve that certain Employment Agreement between the NRA and Wayne LaPierre ... clarifying, for avoidance of doubt, that Wayne LaPierre is delegated the power to "exercise corporate authority in furtherance of the mission and interests of the NRA, including... including to reorganize or restructure the affairs of the Association;"

*See* Docket No. 1, p. 5 (January 15, 2021 Resolution of Special Litigation Committee).

**THE STATE OF NEW YORK'S MOTION TO PRECLUDE DEBTORS' FROM INTRODUCING CERTAIN EVIDENCE AND ELICITING TESTIMONEY THEY HAVE SHIELDED FROM DISCOVERY BASED UPON INAPPROPRIATE PRIVILEGE ASSERTIONS – PAGE 3**

DA 2114639.5

President shall direct the affairs of the Association "in accordance with the programs and policies established by the Board of Directors." Connell Decl. Ex. J. In addition, Article VI, section 2(b)(i), reserves to the Board of Directors the power to "[p]resent a petition for judicial dissolution or to adopts plans of merger, consolidation, or nonjudicial dissolution." *Id.* These facts are central to the issue of whether NRA complied with the requirements of New York law and its own Bylaws in authorizing this fundamental corporate change, or whether Mr. LaPierre and the non-employee officers of the NRA purposefully hid the bankruptcy filing from its Board and attempted to deceive the Board into delegating authority to file for bankruptcy through an Employment Agreement. The facts go to the core of the Motion to Dismiss under section 1112 and, alternatively, the Motion to Appoint a Chapter 11 Trustee under section 1104.

6.      Through the assertion of privilege, Debtors have blocked the NYAG from inquiring on these topics. For example, the NYAG asked the NRA's designated corporate representative, General Counsel and Board Secretary John Frazer, whether there was "any discussion" during the Executive Session "relating to Mr. LaPierre's employment agreement and specifically the language discussing reorganization?" Debtors' counsel objected and instructed the witness not to answer. Frazer Dep., March 15, 2021, p. 302:15-24. Connell Decl. Ex. K. At the 341 Hearings, when asked about whether the Board "was told that the contract they were considering was – also authorized the filing of bankruptcy?" and whether Mr. Frazer heard the word "bankruptcy used by any of the board members" in the executive session he attended, Debtors' counsel objected saying "you're basically asking him to reveal attorney client communications." 341 Tr. Day 2, 37:13-38:2.

7.      In another example, Debtor NRA blocked questions from a Board Member who has come forward alleging that the Board was misled. On March 18, 2021, NYAG took the deposition of the Honorable Judge Phillip Journey ("**Judge Journey**"). Judge Journey is a member

**THE STATE OF NEW YORK'S MOTION TO PRECLUDE DEBTORS' FROM INTRODUCING CERTAIN EVIDENCE AND ELICITING TESTIMONEY THEY HAVE SHIELDED FROM DISCOVERY BASED UPON INAPPROPRIATE PRIVILEGE ASSERTIONS – PAGE 4**

DA 2114639.5

of the Board who has appeared as a party herein and sought appointment of an examiner. Docket No. 114. Throughout Judge Journey's deposition, counsel for NRA and Sea Girt LLC ("**Sea Girt**") (collectively the "**Debtors**") made a blanket privilege objection to the entire content of the Executive Session of the NRA board meeting ("**Board Meeting**"). While Judge Journey had independent counsel, his personal counsel followed the Debtors' counsel's lead and agreed with the objection. Counsel for Debtors and Judge Journey further instructed Judge Journey not to answer *any questions* about what was discussed during the Executive Session, claiming privilege attached to everything said during the Executive Session.[3] Attempts to work around the assertion of the privilege were similarly unproductive. For example, Judge Journey was asked whether the words "Chapter 11" were used in the Executive Session. The response by Debtors' counsel was "to object and direct you [directed at Judge Journey] not to answer pursuant to the attorney/client privilege, and if you insist on answering, the deposition will be terminated right now." Dep. of Judge Philip Journey, pp. 25:22-26:5. Debtors claim that the Board's actions in the Executive Session in approving the Employment Contract constitute a valid delegation but block inquiry into both. This is just one instance of the overzealous use of privilege. as both a sword and shield by Debtors.

---

[3] Debtors' objections extended to questions regarding Judge Journey's personal opinion as to whether information was withheld from the Board, repeatedly, instructing Judge Journey "I [] direct you not to answer to the extent that calls for you to disclose what occurred at the executive session as it was covered by the attorney/client privilege." Dep. of Judge Philip Journey, March18, 2021, pp. 87 When during an answer, Judge Journey testified that "the January 15th [bankruptcy] filing was not the governance failure. It was an indication of it, that the governance failure I believe occurred happened at the January 7th board meeting. And the fact that the board was not informed…," Debtors' counsel interrupted the answer and instructed Judge Journey not to discuss what happened in the executive sessions" and when he was eventually allowed to finish his answer, moved to strike. *Id.,* 154:20-156:19. *See also id*, pp 157, 158 (Debtors' counsel confirms that "everything that happened in the executive session regarding Wayne LaPierre's employment contract was privileged").

**THE STATE OF NEW YORK'S MOTION TO PRECLUDE DEBTORS' FROM INTRODUCING CERTAIN EVIDENCE AND ELICITING TESTIMONEY THEY HAVE SHIELDED FROM DISCOVERY BASED UPON INAPPROPRIATE PRIVILEGE ASSERTIONS – PAGE 5**

DA 2114639.5

8.     Debtors' counsel also asserted privilege objections to, for example, production of reports prepared by Morgan, Lewis & Bockius LLP ("**Morgan Lewis**"). NRA claims that it retained Morgan Lewis to do a complete review of the governance of NRA to ensure NRA was in compliance with New York's not-for-profit laws and that Morgan Lewis issued a report confirming it was ("**Morgan Lewis Report**"). NRA seeks to use affirmatively the Morgan Lewis Report, apparently in addition to a report(s) and advice obtained from other third party entities (including K&L Gates) and law firms that provided tax advice concerning illegal excess benefit transactions (collectively the "**Reports**"), to support the NRA's contention that it is currently in compliance with, and has remediated past violations of, New York and federal law governing nonprofits and charities. The NRA relies on this advice to claim that there are no issues remaining with fraud, dishonesty, or gross mismanagement. But NRA refuses to provide anything but a heavily redacted copy of only one Morgan Lewis Report to NYAG, the U.S. Trustee, and other interested parties in this bankruptcy proceeding and has precluded inquiries into the substance of such reports.[4]

9.     Debtors have represented that the more than one million dollars in illegal excess benefit transactions to senior NRA executives reported in their most recent regulatory filings in November 2020, including $300,000 to Mr. LaPierre, represent an accurate assessment of monies improperly paid to insiders. As to Mr. LaPierre,, Debtors allege that he has repaid all such monies in full. Yet NRA blocks access to the information relating to such transactions as privileged, including the source documents such as invoices upon which such calculations were based. During

---

[4] The NYAG and counsel for the Debtors did attempt to resolve issues relating to Morgan Lewis and other similar reports. Counsel for the Debtors offered to represent that there was only one Morgan Lewis report relating to attorney billing and did agree to produce that report in un-redacted form to resolve this dispute. However, the parties have not been able to resolve the overriding issue of disclosure of all reports or documents pertaining to NRA governance, oversight or compliance that the NRA will refer to and rely upon as part of its defense.

**THE STATE OF NEW YORK'S MOTION TO PRECLUDE DEBTORS' FROM INTRODUCING CERTAIN EVIDENCE AND ELICITING TESTIMONEY THEY HAVE SHIELDED FROM DISCOVERY BASED UPON INAPPROPRIATE PRIVILEGE ASSERTIONS – PAGE 6**

DA 2114639.5

her 30(b)(6) examination concerning these repayments, the designated witness, Ms. Rowling, testified that she had **no knowledge of how these amounts were determined, or what the documentary basis was for their calculation.** During his deposition on March 24, 2021, the NRA's then-Treasurer and CFO, Craig Spray, stated that when he inquired about what outside counsel reviewed or the basis for their opinion on the amount of excess benefit transactions: "I requested that information, and I was advised that because of privilege I wasn't going to get it." He was prohibited by NRA's counsel from disclosing the substance of discussions with tax counsel on this matter.

10.    that such information was privileged. The NRA asserts that the disclosure and partial repayments disclosed in its filing demonstrates its strict compliance with the law. But it shields the information pertaining to such disclosures through an assertion of privilege.

11.    Having been improperly denied the opportunity to explore non-privileged facts central to NYAG's *Motion to Dismiss, or, in the Alternative, Appoint Chapter 11 Trustee* (the "**Motion**"), which subjects are set for hearing on April 5, NYAG seeks appropriate relief from this Court. At this juncture, the parties are a week away from trial in this matter and it would be impossible to reconvene all of the deponents and take further testimony. Further, even if the Debtors were to provide NYAG and other interested parties with an un-redacted copy of the Reports, NYAG and others have lost the ability to review and question witnesses regarding the same and to otherwise properly use the evidence. It is respectfully submitted that this Court should grant NYAG's motion. As the Debtors have attempted to use the attorney-client privilege as both a shield and a sword, NYAG seeks an order that NRA cannot introduce evidence that a valid delegation of authority to file for bankruptcy occurred during the Executive Session of the Board

**THE STATE OF NEW YORK'S MOTION TO PRECLUDE DEBTORS' FROM INTRODUCING CERTAIN EVIDENCE AND ELICITING TESTIMONEY THEY HAVE SHIELDED FROM DISCOVERY BASED UPON INAPPROPRIATE PRIVILEGE ASSERTIONS – PAGE 7**

DA 2114639.5

Meeting nor can they introduce into evidence or refer to any Reports they received, and to which they utilized the attorney-client privilege.

## BACKGROUND

### I. NYAG'S REGULATORY AUTHORITY

12. NYAG is the State of New York's chief legal officer. N.Y. Const. art. V, § 4; N.Y. Exec. Law § 60. Among other statutory duties, NYAG is the regulator responsible for overseeing the activities of New York not-for-profit corporations and the conduct of their officers and directors, in accordance with New York's Not-for-Profit Corporation Law ("**N-PCL**"), Estates Powers & Trusts Law ("**EPTL**"), Prudent Management of Institutional Funds Act ("**NYPMIFA**") and the Executive Law ("**Exec. Law**"). NYAG has a wide range of supervisory and oversight powers over charitable corporations, and over the trustees of property held for charitable purposes. *Citizens United v. Schneiderman*, 882 F.3d 374 (2d Cir. 2018).

13. The NRA is a charitable not-for-profit corporation chartered by a special act of the State of New York Legislature on November 17, 1871. The NRA is legally domiciled in New York. It is registered with the NYAG Charities Bureau ("**Charities Bureau**") to conduct business and solicit donations and is subject to the NYAG's oversight.

14. On August 6, 2020, the NYAG commenced the action styled *People of the State of New York, by Letitia James, Attorney General of the State of New York v. The National Rifle Association of America, Inc., et. al.*, Index No. 451625/2020 (the "**NYAG Enforcement Action**"). The 163-page Verified Complaint ("**NYAG Enforcement Complaint**") filed in the Supreme

**THE STATE OF NEW YORK'S MOTION TO PRECLUDE DEBTORS' FROM INTRODUCING CERTAIN EVIDENCE AND ELICITING TESTIMONEY THEY HAVE SHIELDED FROM DISCOVERY BASED UPON INAPPROPRIATE PRIVILEGE ASSERTIONS – PAGE 8**

DA 2114639.5

Court of the State of New York (the "**NY State Court**") presents detailed factual allegations of pervasive illegal conduct at the NRA.[5]

15.    The NYAG Enforcement Action is currently pending in the Supreme Court of the State of New York, County of New York.

16.    On February 12, 2021, NYAG filed and served the Motion.  The Motion describes the numerous non-meritorious attempts NRA has made to interfere with the NYAG Enforcement Action in its attempt to evade legal accountability, and NYAG incorporates that procedural history by reference.  *See Motion to Dismiss*, Docket No. 156, §§ II-III.  The Motion seeks the dismissal of the bankruptcy case, or, alternatively, appointment of a Chapter 11 trustee.

17.    Although the aforementioned federal legal standards regarding dismissal or the appointment of a trustee apply here, the Motion relies upon the detailed allegations set forth in the NYAG Enforcement Complaint, proof regarding NRA's attempts to avoid legal accountability in New York, and proof that the NYAG is eliciting in discovery regarding recent conduct by the Debtors' leadership.

## II.    NYAG HAS DISCOVERED THAT THE BOARD MAY NOT HAVE AUTHORIZED THIS BANKRUPTCY PROCEEDING

18.    The NYAG has learned through discovery that not only was the bankruptcy filing of the NRA not approved by its Board, but the plan to file was intentionally kept from the Board, the then Treasurer/CFO who was an *ex officio* board member, the Secretary/General Counsel, who was also an *ex officio* board member, and the current acting CFO.  NRA attempted to secure authority for the bankruptcy filing to EVP LaPierre   from the Board without the Board knowing

---

[5] *See generally* NYAG Enforcement Complaint, attached as Exhibit 1 to the Appendix in Support of the New York Attorney General's Motion to Dismiss, or in the Alternative, to Appoint Chapter 11 Trustee ("**Appendix**")[Docket No. 156-1].

**THE STATE OF NEW YORK'S MOTION TO PRECLUDE DEBTORS' FROM INTRODUCING CERTAIN EVIDENCE AND ELICITING TESTIMONEY THEY HAVE SHIELDED FROM DISCOVERY BASED UPON INAPPROPRIATE PRIVILEGE ASSERTIONS – PAGE 9**

DA 2114639.5

that NRA intended to file for bankruptcy. NRA attempted this audacious feat by seeking Board approval, at the January 7, 2021 Board Meeting, of an Employment Agreement (the "**Employment Agreement**") between the NRA and NRA Executive Vice President Wayne LaPierre ("**LaPierre**"). Connell Decl. Ex. A. NRA officers and attorneys apparently sought to extract Board approval for the existing NRA plan to file for bankruptcy, which filing took place one week after on January 15, 2021, by and through Paragraph 2(a) of the Proposed Employment Agreement, which outlines a list of "duties" of Mr. LaPierre. The second sentence of Paragraph 2(a) of the Proposed Employment Agreement (entitled "Duties and Compensation") that the NRA contends provided the Board notice, knowledge and authority for Mr. LaPierre to file the bankruptcy states as follows:

> Among his authorities, Employee shall be empowered to exercise corporate authority in furtherance of the mission and interests of the NRA, including without limitation to reorganize or restructure the affairs of the Association for purposes of cost-minimization, regulatory compliance or otherwise [and] the customary duties of such position and such other commensurate duties as may be assigned from time to time by the Board of Directors.

(the "**Delegation Clause**") *Id.* [6]

19.     Because the portion of the Executive Session of the Board Meeting regarding consideration of the Employment Agreement dealt with Mr. LaPierre, Mr. LaPierre was excluded from the Executive Session of the Board Meeting. Minutes of the Board Meeting show that there was no discussion about the above-quoted sentence of the Delegation Clause in paragraph 2(a) of the Proposed Employment Agreement or any discussion whatsoever about the NRA's plan to file for bankruptcy. NRA now apparently takes the position that it successfully extracted authority

---

[6] The Employment Agreement that Mr. LaPierre ultimately signed added provisions selecting Texas for the choice of governing law and forum for dispute resolution. This is despite NRA being legally domiciled in New York. Due to the NRA's assertion of privilege, no inquiry was permitted into the discussions with the Board concerning the addition of these provisions and choice of Texas.

**THE STATE OF NEW YORK'S MOTION TO PRECLUDE DEBTORS' FROM INTRODUCING CERTAIN EVIDENCE AND ELICITING TESTIMONEY THEY HAVE SHIELDED FROM DISCOVERY BASED UPON INAPPROPRIATE PRIVILEGE ASSERTIONS – PAGE 10**

DA 2114639.5

from the Board for this bankruptcy filing through the Board's approval of the ambiguous Delegation Clause.

20. Various executives and NRA witnesses were asked questions at three separate sessions of the meeting of creditors pursuant to 11 U.S.C. § 341 about whether there was any discussion whatsoever at the Board Meeting (or any other meeting) regarding the NRA's plans to file for bankruptcy. These questions were based, at least in part, on Debtors' disclosure in this proceeding that, between October 2020 and the Board meeting, NRA invested more than $6 million in preparation for NRA' bankruptcy filing. Connell Decl. Ex. H. NRA counsel objected to all questions designed to uncover whether NRA factually apprised the Board of its plans or acted with the intent of affirmatively misleading the Board regarding its plans. NYAG's unanswered questions go to the heart of the Motion's contentions regarding NRA's bad-faith commencement of this case. By instructing witnesses not to answer those questions, NRA has attempted to prevent the discovery of facts that could show that NRA executed a coordinated plan to mislead the Board.

21. To summarize, the NRA appears set to argue that it informed its 76-member Board of its intention to put the NRA into bankruptcy by inserting an ambiguous sentence into an employment contract that ostensibly delegated Board authority to an NRA officer. NRA worked to hide the intended use of the critical provision in the Employment Contract that it now relies on for the assignment of nontransferable powers from the Board to Mr. LaPierre. Debtors' current attempt to use attorney-client privilege to cloak from disclosure the fact that NRA worked to keep the Board ignorant of the impending bankruptcy is a gross misuse of the privilege, which is not intended to shield from disclosure attorney attempts to mislead their clients.

**THE STATE OF NEW YORK'S MOTION TO PRECLUDE DEBTORS' FROM INTRODUCING CERTAIN EVIDENCE AND ELICITING TESTIMONEY THEY HAVE SHIELDED FROM DISCOVERY BASED UPON INAPPROPRIATE PRIVILEGE ASSERTIONS – PAGE 11**

DA 2114639.5

22. The NYAG has reason to believe that NRA mislead the Board during the Executive Session. At the third session of the 341 meeting, on March 12, 2021 at approximately 1:21 p.m., John Frazer, General Counsel for the NRA, was asked whether "the words 'bankruptcy' or 'Chapter 11'" were ever spoken at the Executive Session of the Board Meeting, or any other part of the Board Meeting, or any other board meeting. Connell Decl., Ex. D, 13:25-16:25. Mr. Frazer, who was not present at the Executive Session where Mr. LaPierre's Employment Contract was discussed, did attend a separate Executive Session as well as the open portion of the Board Meeting on January 7th. Mr. Frazer did not recall those words ever being used in the portions of the Board Meeting he attended. *Id.* 15:3-5, 16:22-25. The failure of the Board to approve the filing of the NRA bankruptcy, and the attempt to hide and obfuscate the bankruptcy filing from the Board, are highly relevant facts to the Motion.[7]

23. With that background, and after various attempts by the NRA to continue to hide the fact that the Board was never informed of the plan to file for bankruptcy, a news story broke that provides a basis for questioning board witnesses, including Judge Journey, about the alleged Board authorization of the bankruptcy. At 5:00 a.m. on March 9, 2021, the *Washington Free Beacon* published an article that stated, in relevant part:

> The meeting [an upcoming NRA Board Meeting scheduled for Sunday, March 14, 2021] comes after board member Phillip Journey accused NRA lawyers of misleading the board about the creation of the Special Litigation Committee and the bankruptcy in a court filing. Journey, a Kansas family court judge, told the Free Beacon the board was not made aware of the bankruptcy plan when it voted to empower the committee in a Jan. 7, 2021 meeting. He said he found out about [the bankruptcy filing] when his daughter texted him a news story.

---

[7] The Washington, D.C. Attorney General originally joined the Motion's request for appointment of a trustee, and upon information and belief, the NYAG believes that the Washington, D.C. Attorney General will be additionally be joining the request for dismissal of the case.

**THE STATE OF NEW YORK'S MOTION TO PRECLUDE DEBTORS' FROM INTRODUCING CERTAIN EVIDENCE AND ELICITING TESTIMONEY THEY HAVE SHIELDED FROM DISCOVERY BASED UPON INAPPROPRIATE PRIVILEGE ASSERTIONS – PAGE 12**

DA 2114639.5

"You could have seen the top of my car blow off with my head," Journey said. "Because I knew what that meant. It meant that those three lawyers committed a lie of omission of material facts to the board of directors…. Nobody said bankruptcy."

Connell Decl. Ex. E, at 1.

24.     If the statements contained in the news article are true and correctly attributed, a current NRA Board member and sitting Judge in the State Court in Kansas concluded that the filing of the NRA bankruptcy was premised on a fraudulent omission of material facts to the Board. If true, these are significant, relevant facts that support the Motion.

25.     The subsequent March 18, 2021 deposition of Judge Journey ("**Journey Dep.**") has revealed the extent to which NRA officers and attorneys worked to prevent Board members from becoming aware of the purpose of the Delegation Clause in the Proposed Employment Agreement. According to Judge Journey, Board members were not even provided individual copies of the Proposed Employment Agreement.  Judge Journey explained that two copies of the Proposed Employment Agreement were placed at two tables and that individual Board members could take turns reading the two copies before both copies were "turn[ed] . . . back in."  Connell Decl., Ex. F (Journey Dep. 22:2-4).

26.     During Judge Journey's deposition, he was instructed by Debtors' counsel and his own counsel to not answer any questions regarding what was discussed during the Executive Session of the Board Meeting.  *See, e.g.*, *id.* 154:25-155:3.

27.     When NYAG Counsel asked him about why Judge Journey thought the filing of the bankruptcy was a governance failure, Judge Journey indicated that "[t]he January 15th filing was not the governance failure.  It was an indication of it, that the governance failure I believe occurred happened at the January 7th board meeting.  And the fact that the [B]oard was not informed . . . ." *Id.* 154:13-24.  At that point, Debtors' counsel cut Judge Journey off and stated

**THE STATE OF NEW YORK'S MOTION TO PRECLUDE DEBTORS' FROM INTRODUCING CERTAIN EVIDENCE AND ELICITING TESTIMONEY THEY HAVE SHIELDED FROM DISCOVERY BASED UPON INAPPROPRIATE PRIVILEGE ASSERTIONS – PAGE 13**

DA 2114639.5

that Judge Journey could not "discuss what happened" in the January 7th executive session. *Id.* 154:25-155:3.

28. Judge Journey further testified: "So look at the Free Beacon article. The governance failure was the failure of officers or counsel or those the board is dependent on from revealing the material fact the bankruptcy was in process of being filed at that board meeting." *Id.* 156:12-16. Again, Debtors counsel objected and moved to strike "based on attorney/client privilege." *Id.* 156:17-18.

29. Debtors' counsel further objected to Judge Journey testifying as to what the Board member who presided at the Executive Session of the Board Meeting, Mr. Cotton, said in his presentation to the Board. *Id.* 156:20-157:25. Mr. Cotton, although an attorney, was not acting as counsel and was simply acting as "first vice president and chairing the meeting because the president wasn't there." *Id.* 157:8-15.

30. When Judge Journey was directly asked what Mr. Cotton said during that presentation, Debtors' counsel and Judge Journey's counsel objected "pursuant to attorney/client privilege and instruct[ed Journey] not to answer." *Id.* 157:20-24.

31. Debtors' counsel was then questioned as to whether his position was that "because an attorney was present in the room, all discussions in the executive session were privileged?" *Id.* 158:16-18. Debtor's counsel took the position that "every discussion they had in there was regarding legal advice. So in that instance, yes." *Id.* 158:19-22. NYAG's counsel further inquired "So, you're saying that everything that happened in the executive session regarding Wayne LaPierre's employment contract on January 7th was privileged. Is that right?" *Id.* 158:24-159:1. Debtor's counsel replied "For this one, for what I'm seeing, absolutely." *Id.* 159:2-3. Judge

---

**THE STATE OF NEW YORK'S MOTION TO PRECLUDE DEBTORS' FROM INTRODUCING CERTAIN EVIDENCE AND ELICITING TESTIMONEY THEY HAVE SHIELDED FROM DISCOVERY BASED UPON INAPPROPRIATE PRIVILEGE ASSERTIONS – PAGE 14**

DA 2114639.5

Journey was then instructed not to answer by his individual counsel and, based on the objections, Judge Journey refused to answer. *Id.* 159:5-12.

32.    William W. Davis ("**Davis**"), counsel to the Board, previously filed a Declaration with this Court in Support of Debtors' Emergency Motion for Protective Order regarding Judge Journey's deposition. Connell Decl. Ex. G, Docket No. 348 (the "**Davis Decl.**").    In his Declaration, Davis indicates that the Board met on January 7, 2021 and was "in executive session to discuss the report of the Officers Compensation Committee, which included a recommendation that the Board adopt and approve a revised employment contract for [Mr.] LaPierre." Davis. Decl. ¶ 5.

33.    Mr. Davis further states that "copies of the proposed contract were made available to the Board, which many directors chose to review." *Id.* ¶ 6. Despite the Employment Agreement allegedly providing the executive authority to file bankruptcy, the Board members were not provided the agreement in advance and only two copies were "made available" for review by over thirty Board members during a short Executive Session lasting only 52 minutes. Journey Dep. 22:2-4; Davis Decl. ¶ 5.

34.    Mr. Davis also simply states that during the discussion regarding the terms of the Employment Agreement that "Board members sought legal advice regarding particular provisions of the contract and the potential addition of a forum-selection clause." Davis. Decl. ¶ 7.

35.    Mr. Davis admits that "proceedings in executive session are not *per se* privileged[,]" but claims they are strictly confidential[.]" *Id.* ¶ 4.

36.    Frazer, NRA's General Counsel, testified at his deposition that one Board member, Mr. Duane Liptak ("**Liptak**"), resigned from the Board shortly after the filing of the bankruptcy as he felt "he wasn't able to provide proper oversight." Connell Decl. Ex. H, March 18, 2021

**THE STATE OF NEW YORK'S MOTION TO PRECLUDE DEBTORS' FROM INTRODUCING CERTAIN EVIDENCE AND ELICITING TESTIMONEY THEY HAVE SHIELDED FROM DISCOVERY BASED UPON INAPPROPRIATE PRIVILEGE ASSERTIONS – PAGE 15**

DA 2114639.5

deposition of John Frazer 36:22-37:19 (the "**Frazer Dep.**").  Prior to resigning, Mr. Liptak sent a letter to Mr. Frazer "regarding the bankruptcy filing in which he asked why – asked essentially why it hadn't been discussed with the board at the January 7th meeting." *Id.* 40:18-22.

37.     Mr. Frazer was asked directly whether or not "Prior to the NRA filing for bankruptcy in mid-January, did you communicate to the board any – anything with respect to potential of a bankruptcy filing? *Id.* 65:22-25.  NRA's Counsel objected on the basis of attorney-client privilege and Mr. Frazer refused to answer. *Id.* 66:1-5.  Mr. Frazer, however, later confirmed that after he became aware that Chapter 11 reorganization was being considered, he did not discuss the potential bankruptcy with the legal affairs committee of the Board nor did he discuss that information with anyone on the Board. *Id.* 68:9-19.

NRA's Purported Compliance and Remediation Measures

38.     The NRA has repeatedly touted its internal compliance reviews – Mr. LaPierre referred to as "self-corrections – which the NRA claims to have begun in 2017 with the retention of Morgan Lewis and remains "ongoing." Connell Decl., Ex. I, 01/22/2021 Hr'g 49:10-22.[8]  The NRA, however, has not allowed adequate inquiry into the scope, nature or findings of those reviews.

39.     Mr. Frazer testified that in 2017, NRA hired the "law firm of Morgan Lewis to do a compliance review of the organization." *Id.* 158:3-12.  The NYAG's counsel tried to question Mr. Frazer about the scope of work performed by Morgan Lewis:

> Mr. LaPierre – okay.  Mr. LaPierre has said that the NRA has done all manner of compliance reviews and pointed to the work that Morgan Lewis did and so I would like to understand what they did.  If the NRA is relying on that work as

---

[8] This first meeting of creditors occurred on February 22, 2021, not January 22, 2021 as the transcript reflects; however, the citation provided herein utilizes the "1/22/21" date on the transcript.

**THE STATE OF NEW YORK'S MOTION TO PRECLUDE DEBTORS' FROM INTRODUCING CERTAIN EVIDENCE AND ELICITING TESTIMONEY THEY HAVE SHIELDED FROM DISCOVERY BASED UPON INAPPROPRIATE PRIVILEGE ASSERTIONS – PAGE 16**

DA 2114639.5

demonstration of its compliance and its commitment to being compliant organization, I'm asking this witness to explain ... what that engagement was?

*Id.* 159:14-160:2. NYAG's counsel further clarified she was seeking the "scope" of the work that was done and what the engagement was for with regard to Morgan Lewis. *Id.* 160:17-19.

40.     Mr. Frazer conferred with his attorneys and then NRA's counsel made a speaking objection where he stated, in relevant part:

> But the scope of the services certainly as Mr. LaPierre testified included compliance. However, the scope of those services are – and compliance is just irrevocably intertwined with your action in New York, and I'm not going to permit this lawyer of the Association to talk about his communications with other lawyers of the Association as they relate to – that pending action. And so – Mr. Frazer will confirm that compliance was within the scope of their services but we won't be answering questions deeper than that.

*Id.* 161:21-162: 12.

41.     When asked what the compliance review entailed, NRA's counsel objected on "work product and subject to attorney-client privilege" and instructed Mr. Frazer not to answer. *Id.*164:21-165:4.

42.     Despite the fact that the NRA relies on the Morgan Lewis Report to demonstrate compliance, Debtors' counsel also objected to whether or not Morgan Lewis' compliance review resulted in a report and whether there were any recommendations by the Morgan Lewis firm conveyed to NRA's senior management, and what actions the NRA took in reliance on Morgan Lewis' engagement. *Id.* 166:8167: 13. Later in the deposition, Debtors' counsel told Mr. Frazer: "I instruct you not to answer the questions with regard to the work done by Morgan Lewis." *Id.* 202:22-24.

43.     Mr. LaPierre also repeatedly invoked Morgan Lewis at the 341 meeting for the same proposition regarding legal compliance. For example, Mr. LaPierre assured the U.S. Trustee that NRA hired Morgan Lewis, "one of the top nonprofit law firms in the country -- to do a

**THE STATE OF NEW YORK'S MOTION TO PRECLUDE DEBTORS' FROM INTRODUCING CERTAIN EVIDENCE AND ELICITING TESTIMONEY THEY HAVE SHIELDED FROM DISCOVERY BASED UPON INAPPROPRIATE PRIVILEGE ASSERTIONS – PAGE 17**

DA 2114639.5

complete review of the governance of NRA, to make sure we were in complete and total compliance with New York State non-for-profit law." Connell Decl., Ex. I, 01/22/2021 Hr'g 49:10-15. Mr. LaPierre also cited to certain NRA actions before stating that NRA "double-checked that with outside counsel -- Morgan Lewis -- to make sure [the NRA was] doing it appropriately." *Id.* 61:3-12. Mr. LaPierre also referenced Morgan Lewis in an answer before asserting that NRA was in "100 percent compliance with New York State non-for-profit law." *Id.* 138:3-12. Mr. LaPierre then again invoked Morgan Lewis when he explained NRA used Morgan Lewis for "okay[ing]" the "scope of the Brewer [law firm] work" done for NRA based on Morgan Lewis's "independent look." *Id.* 202:4-13.

44.     Debtors have similarly blocked the NYAG from obtaining information relating to illegal excess benefit transactions to EVP LaPierre and other senior NRA executions, which were first reported in the NRA's 2019 IRS 990 filing and addressed in the NRA's related IRS Form 4720 excise tax forms. This regulatory filing, made in November 2020, identifies excess benefit transactions made to NRA insiders. Information regarding these excess benefits transactions goes to the heart of the Debtors' arguments that the NRA, despite its history of improper and illegal payments to or for senior executives, including longtime EVP, Mr. LaPierre, is now properly governed such that diversion, misuse and gross mismanagement of assets no longer occur, and that all such payments have been properly reviewed and repaid. But the NYAG has been blocked from gaining information pertaining to the collection, review, and accounting of the invoices and information relating to improper and illegal payments by assertions of privilege.

45.     For example, Sonya Rowling, acting NRA CFO, who was designated by the NRA as a 30(b)(6) witness on these topics, was repeatedly instructed not to answer questions relating to how the excess benefit transactions were identified, calculated, or communicated to those within

**THE STATE OF NEW YORK'S MOTION TO PRECLUDE DEBTORS' FROM INTRODUCING CERTAIN EVIDENCE AND ELICITING TESTIMONEY THEY HAVE SHIELDED FROM DISCOVERY BASED UPON INAPPROPRIATE PRIVILEGE ASSERTIONS – PAGE 18**

DA 2114639.5

the NRA.  She was instructed not to answer questions about who was considered a "disqualified person" for preparation of these official filings and the basis for the statement on the form that Mr. LaPierre was recently informed of his receipt of excess benefits.  See, e.g., Dep. of Sonya Rowling, March 19, 2021, pp. 13, 15-17.  The identification, calculation and disclosure of insider payments was almost entirely shielded by privilege objections or instructions not to answer.  The NRA should not be permitted to point to its disclosures of diversion to insiders as complete and part of its reform efforts when it has prevented the NYAG from gaining information about such diversions during discovery.

46.    Similarly, Former NRA CFO Craig Spray testified that he gathered information about expenses pertaining to at least one former officer to assist tax counsel as part of the identification of excess benefit transactions but that in connection with LaPierre's expenses "I did not have access to those documents."   When asked if he knew what expenses they reviewed he was instructed not to answer.  Mr. Spray, then the Board-appointed Treasurer of the NRA and CFO testified as follows:

> Q:    Is it your testimony that you don't know how the number reported in schedule I of the 2019 amended 4720 for Wayne LaPierre was arrived at?
>
> A:    I requested that information, and I was advised that because of privilege I wasn't going to get it.

47.    Mr. Spray testified that he was denied access to underlying information but relied upon counsel in signing the amended 4720 forms disclosing the excess payments.  Dep. of Craig Spray, March 24, 2021, pp.  171-73.

**ARGUMENT**

**I.    DEBTORS' CLAIM OF ATTORNEY CLIENT PRIVILEGE IS IMPROPER**

---

**THE STATE OF NEW YORK'S MOTION TO PRECLUDE DEBTORS' FROM INTRODUCING CERTAIN EVIDENCE AND ELICITING TESTIMONEY THEY HAVE SHIELDED FROM DISCOVERY BASED UPON INAPPROPRIATE PRIVILEGE ASSERTIONS – PAGE 19**

DA 2114639.5

48. Debtors inappropriately claimed attorney-client privilege regarding every discussion that happened in the Executive Session and what the Board members knew or did not know, thereby preventing the NYAG and other interested parties from learning factual information that is highly relevant to this proceeding. Further, Debtors have affirmatively used the Morgan Lewis Report, other compliance reviews , to claim that the NRA has taken actions and is completely in compliance with New York law while refusing to even discuss the topics of these purported legal compliance and remediation measures, what counsel was retained for, or whether there were any recommendations. Similarly, they have blocked from inquiry the factual process and basis for the contention that the NRA has fully disclosed and addressed excess benefit transactions to insiders, including the NRA's Executive Vice President. This is inappropriate.

### A. Federal Law Governs The Discovery And Privilege Issues In This Matter.

49. As previously explained, Debtors repeatedly invoked attorney-client privilege to prevent NYAG's discovery of facts relevant to the Motion. As to those invocations, "[r]ule 501 of the Federal Rules of Evidence governs the applicability of evidentiary privileges in federal court." *In re Grand Jury Subpoena Dated Dec. 17, 1996*, 148 F.3d 487, 492 n.3 (5th Cir. 1998). Federal Rule of Evidence 501 provides that:

> The common law--as interpreted by United States courts in the light of reason and experience--governs a claim of privilege unless any of the following provides otherwise: [1] the United States Constitution; [2] a federal statute; or [3] rules prescribed by the Supreme Court. But in a civil case, state law governs privilege regarding a claim or defense for which state law supplies the rule of decision.

50. Pursuant to Rule 501, courts have consistently held that, when neither the United States Constitution nor federal statute provides otherwise, federal common law establishes the scope of privilege for claims and defenses for which federal law provides the rule of decision. *See Ferko v. Nat'l Ass'n for Stock Car Auto Racing, Inc.*, 218 F.R.D. 125, 133 (E.D. Tex. 2003); *Smith*

**THE STATE OF NEW YORK'S MOTION TO PRECLUDE DEBTORS' FROM INTRODUCING CERTAIN EVIDENCE AND ELICITING TESTIMONEY THEY HAVE SHIELDED FROM DISCOVERY BASED UPON INAPPROPRIATE PRIVILEGE ASSERTIONS – PAGE 20**

DA 2114639.5

*v. Smith*, 154 F.R.D. 661, 671 (N.D. Tex. 1994); *In re El-Atari,* 2013 WL 593705, at *2 (Bankr. E.D. Va. Feb. 14, 2013).

51.     Here, both Debtor's petition for bankruptcy and NYAG's Motion "involve[] strictly issues created by the Bankruptcy Code itself."  *In re Muscatell*, 93 B.R. 268, 271 (Bankr. M.D. Fla. 1988).  Accordingly, given that the disputes before this Court all turn on questions of federal law, Rule 501 dictates that federal common law determines the extent to which the invocation of attorney-client privilege shields Debtors from the disclosure of materials and information relevant to NYAG's Motion.  *See Smith*, 154 F.R.D. at 671; *In re El-Atari,* No. 09-14950-BFK, 2013 WL 593705, at *2; *In re Muscatell*, 93 B.R. at 271.

**B.      The NYAG Sought Information That Is Relevant And Not Protected By Attorney-Client Privilege.**

52.     The attorney-client privilege *only* protects from disclosure confidential communications made by a client to their lawyer for the purpose of obtaining legal advice. *Hodges, Grant & Kaufman v. United States,* 768 F.2d 719, 720 (5th Cir. 1985); *see also Upjohn Co. v. United States,* 449 U.S. 383, 395-96 (1981).  The attorney-client privilege protects two related, but different, communications: (1) confidential communications made by a client to their lawyer for the purpose of obtaining legal advice; and (2) any communications from an attorney to their client in the course of giving legal advice.  *U.S. v. Mobil Corp.,* 149 F.R.D. 533, 536 (N.D. Tex. 1993) (citation omitted).

53.     The attorney-client privilege does not protect against discovery of underlying facts. *Upjohn,* 449 U.S. at 395; *Ind. Clearinghouse, Inc. v. Browning Mfg. Div. of Emerson Elec. Co.*, 953 F.2d 1004, 1007 (5th Cir. 1992) (citing *United States v. El Paso Co.,* 682 F.2d 530, 538-39 n.10 (5th Cir. 1982), *cert. denied,* 466 U.S. 944 (1984)).  Further, the attorney-client privilege

**THE STATE OF NEW YORK'S MOTION TO PRECLUDE DEBTORS' FROM INTRODUCING CERTAIN EVIDENCE AND ELICITING TESTIMONEY THEY HAVE SHIELDED FROM DISCOVERY BASED UPON INAPPROPRIATE PRIVILEGE ASSERTIONS – PAGE 21**

DA 2114639.5

"does not embrace everything that arises out of the existence of an attorney-client relationship." *U.S. v. Pipkins,* 528 F.2d 559, 563 (5th Cir. 1976).

54. To protect a communication by attorney-client privilege the Debtors must prove that: (1) the asserted holder of the privilege is a client; (2) the communication was made to counsel; (3) for the primary purpose of securing either a legal opinion or legal services, or assistance in some legal proceeding and not for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client. *Ferko,* 218 F.R.D. at 133-34 (citing *Mobil Corp.*, 149 F.R.D. at 536).

55. The party who invokes the attorney-client privilege bears the burden to demonstrate its applicability. *Hodges,* 768 F.2d at 721. The application of attorney-client privilege "is a question of fact, to be determined in the light of the purpose of the privilege and guided by judicial precedents." *Id.* Any "[a]mbiguities as to whether the elements of a privilege claim have been met are construed against the proponent." *E.E.O.C. v. BDO USA, L.L.P.*, 876 F.3d 690, 695 (5th Cir. 2017) (citation omitted). This is because the attorney client-privilege "has the effect of withholding relevant information from the fact-finder" so it must be "interpreted narrowly so as to appl[y] only where necessary to achieve its purpose." *Id.* (citing *United States v. Robinson,* 121 F.3d 971, 974 (5th Cir. 1997) (quoting *Fisher v. United States,* 425 U.S. 391, 403 (1976))) (quotation marks omitted).

56. "[S]imply describing a lawyer's advice as 'legal,' without more, is conclusory and insufficient to carry out the proponent's burden of establishing attorney-client privilege." *Id.* at 696; *see also United States v. Chen,* 99 F.3d 1495, 1502 (9th Cir. 1986) ("calling the lawyer's advice 'legal' or 'business' advice does not help in reaching a conclusion, it *is* the conclusion"). Where there is a "mixed discussion of business and legal advice, courts should consider the context

**THE STATE OF NEW YORK'S MOTION TO PRECLUDE DEBTORS' FROM INTRODUCING CERTAIN EVIDENCE AND ELICITING TESTIMONEY THEY HAVE SHIELDED FROM DISCOVERY BASED UPON INAPPROPRIATE PRIVILEGE ASSERTIONS – PAGE 22**

DA 2114639.5

key, ultimately seeking to glean the manifest purpose of the communication." *BDO USA,* 876

F.3d at 696 (quotation marks and ellipsis omitted).

57.     Here, Debtors have failed to meet their burden that the Executive Session is

protected by attorney-client privilege. The only evidence Debtors have provided is a self-serving

declaration from Mr. Davis stating that the First Vice President who made the presentation in a

non-attorney capacity advised the Board "that because they were discussing proposed contract

terms the discussion was confidential and privileged." Davis Decl. ¶ 6. The Davis Declaration

also vaguely states that the "Board members sought legal advice regarding particular provisions

of the contract and the potential addition of a forum-selection clause." *Id.* ¶ 7. Mr. Davis'

conclusory statements are clearly insufficient to make a claim of attorney-client privilege and to

allow this Court to determine whether "everything" that was discussed was legal advice and/or

whether it was a mix of business and legal advice. Certainly, discussing employment contract

terms often skews more toward obtaining business advice, including, but not limited to, provisions

on compensation, benefits, and job duties.

58.     Contrary to Debtors' assertions at the depositions and in the Davis Declaration, the

mere fact that an attorney attended a meeting does not render everything said or done at that

meeting privileged, nor does it serve to insulate a meeting from discovery. *Rush v. Columbus

Mun. Sch. Dist.*, 2000 WL 1598021, at *2 (5th Cir. Sept. 28, 2000) (the mere presence of an

attorney does not insulate the meeting from discovery but only protects communications made for

the purpose of obtaining legal advice); *see also Pownell v. Credo Petroleum Corp.*, No. 09-CV-

01540-WYD-KLM, 2011 WL 1045418, at *2-3 (D. Colo. March 17, 2011) (rejecting claim that

an entire board meeting was attorney-client privileged because the "company legal counsel" was

present, and finding that only six minutes of the meeting were privileged); *Miner v. Kendall,* No.

**THE STATE OF NEW YORK'S MOTION TO PRECLUDE DEBTORS' FROM INTRODUCING CERTAIN
EVIDENCE AND ELICITING TESTIMONEY THEY HAVE SHIELDED FROM DISCOVERY BASED
UPON INAPPROPRIATE PRIVILEGE ASSERTIONS – PAGE 23**

DA 2114639.5

96-1126-MLB, 1997 WL 695587, at *1 (D. Kan. Sept. 17, 1997) ("the mere fact that an attorney took minutes or notes of the meeting does not, of itself, render the minutes or notes privileged").

59.     Moreover, "the mere fact that a closed meeting was held does not automatically render all conversations in the closed session protected by the attorney-client privilege." *Hinsdale v. City of Liberal, Kan.,* 961 F. Supp. 1490, 1494 (D. Kan. 1997). Rather, the attorney-client privilege would only "protect communications from [board] members to counsel for the purposes of obtaining legal advice." *Id.* The closed meeting, however, "does not protect discussions among [board] members or the opinions, impressions, and conclusion[s] of [board] members based upon events occurring during the closed session." *Id.*

60.     In *Wilstein*, a court considered facts similar to the facts in this case. *Wilstein v. San Tropal Condo. Master Ass'n*, 189 F.R.D. 371 (N.D. Ill. 1999). The *Wilstein* plaintiff requested a handicapped parking space from his condo, but the board members for the condo denied his request. *Id.* at 374. The plaintiff filed an administrative action and later a lawsuit, and sought to depose the board members regarding closed executive sessions. *Id.* The defendant refused to answer questions about the executive sessions, asserting a blanket claim of attorney-client and work product privileges. *Id.* at 375. The court disagreed with defendant's assertion, and determined that the underlying facts of the dispute discussed by board members in an executive session are discoverable:

> A fact is one thing and a communication concerning the fact is an entirely different thing. The client cannot be compelled to answer the question, "What did you say or write to the attorney?" but may not refuse to disclose any relevant fact within his knowledge merely because he incorporated a statement of such fact into his communication to his attorney.

*Id.* (quoting *Upjohn,* 449 U.S. at 395-96).

---

**THE STATE OF NEW YORK'S MOTION TO PRECLUDE DEBTORS' FROM INTRODUCING CERTAIN EVIDENCE AND ELICITING TESTIMONEY THEY HAVE SHIELDED FROM DISCOVERY BASED UPON INAPPROPRIATE PRIVILEGE ASSERTIONS – PAGE 24**

61.     The *Wilstein* court found that "[o]nly the relevant portions of the executive session meeting discussing confidential information disclosed to the attorney or advice from the attorney relating to pending or anticipated litigation are privileged from discovery." *Id.* at 380.  Questions that pertain to factual information and do not involve the counsel's legal advice must be answered by a deponent.  *Id.*  The court provided examples of questions that would not violate the attorney-client privilege such as:

> What topics were discussed in executive session?  Why was [the plaintiff] denied a handicapped parking space?  What factual information did the [board] consider?  What . . . alternatives, if any, did the [board] consider? . . . How did the Board vote?  Were any members in favor [of the proposed action]?  What business and economic factors did the board consider in its decision[?]

*Id.*

62.     Here, like in *Wilstein*, the deponent should have answered numerous factual questions, including, but not limited to questions such as: (1) Was the Board member aware that the NRA was contemplating filing bankruptcy?; (2) Did the Board member understand that the provision in the Employment Agreement might grant Mr. LaPierre the sole authority to file bankruptcy proceedings for NRA?; (3) Was there any discussion regarding the provision of the Employment Agreement that allegedly provided Mr. LaPierre with sole authority to file for bankruptcy?; (4) Was the issue of NRA filing bankruptcy ever discussed?; (5) What topics relating to the Employment Agreement were discussed during Executive Session?  The Debtors similarly have not provided sufficient evidence that the Morgan Lewis Report or the other purported compliance reviews they have claimed to conduct are protected by any privilege other than their "conclusion" that it is subject to attorney-client privilege and/or is protected as work product.  This is insufficient.  Again, it is Debtors' burden to prove that a privilege applies.  The Debtors have failed to meet their burden by refusing to provide any information regarding why Morgan Lewis

**THE STATE OF NEW YORK'S MOTION TO PRECLUDE DEBTORS' FROM INTRODUCING CERTAIN EVIDENCE AND ELICITING TESTIMONEY THEY HAVE SHIELDED FROM DISCOVERY BASED UPON INAPPROPRIATE PRIVILEGE ASSERTIONS – PAGE 25**

DA 2114639.5

or other compliance consultants were retained, the scope of representation, and what in particular in the Morgan Lewis Report or other compliance reviews protect them from disclosure due to privilege.

63.     In relation to the Morgan Lewis Report, the Debtors refused to answer questions such as: (1) What was Morgan Lewis retained to do? (2) Did Morgan Lewis make any recommendations for changes?; (3) Were any of these recommended changes communicated to the Board?; (4) What changes, if any, has NRA made after receiving the Morgan Lewis Report?; (5) What changes, if any, has NRA chosen not to make?

64.     Debtors' counsel wrongfully objected to any questions regarding the Executive Session and the Morgan Lewis Report on the basis of attorney-client privilege and prevented NYAG and other interested parties from obtaining information that goes to the heart of the issue in this proceeding.

### C.     The NRA Has Waived Its Attorney-Client And Work Product Privileges Through Its Partial Disclosures of Privileged Information Under Rule 502(a).

65.     The NRA's intention to cherry pick parts of documents and meetings to disclose, while asserting privilege as to other parts, is prohibited under Federal Rule of Evidence 502(a). Rule 502(a) states that when a party partially discloses a communication or information that it claims is privileged in a federal proceeding, the party "waives the attorney-client privilege or work-product protection" and "the waiver extends to an undisclosed communication or information in a federal . . . proceeding . . . if: (1) the waiver is intentional; (2) the disclosed and undisclosed communications or information concern the same subject matter; and (3) they ought in fairness to be considered together." Fed. R. Evid. 502(a).

66.     "[D]isclosure of any significant portion of a confidential communication waives the privilege as to the whole." *Nguyen v. Excel Corp.*, 197 F.3d 200, 208 (5th Cir. 1999) (citation

**THE STATE OF NEW YORK'S MOTION TO PRECLUDE DEBTORS' FROM INTRODUCING CERTAIN EVIDENCE AND ELICITING TESTIMONEY THEY HAVE SHIELDED FROM DISCOVERY BASED UPON INAPPROPRIATE PRIVILEGE ASSERTIONS – PAGE 26**

DA 2114639.5

omitted); *see also Grigson v. Farmers Grp., Inc.*, No. 1:17-CV-00088-LY, 2019 WL 3781439, at *3 (W.D. Tex. Aug. 12, 2019) ("courts do not permit" a party to "cherry pick[] its claim of privilege."). If executives for a company testify about privileged attorney-client communications, including, but not limited to, directions provided to their attorneys and their attorneys' legal research, the company "waive[s] the attorney-client privilege by its own failures – its failure to object and its failure to maintain the confidentiality of its communications." *Nguyen*, 197 F.3d at 208 (holding that a party waived the attorney-client privilege when its executives selectively disclosed confidential communications by testifying about portions of the attorney-client communication).

67.     "[A] subject matter waiver is reserved for those unusual situations in which fairness requires a further disclosure of related, protected information, in order to prevent a selective and misleading presentation of evidence to the disadvantage of the adversary." *Datatreasury Corp. v. Wells Fargo & Co.*, No. 2:06-CV-72 DF, 2009 WL 10679839, at *2 (E.D. Tex. Nov. 13, 2009) (quoting Fed. R. Evid. 502(a), 11/28/2007 advisory committee's note). For example, in *Datatreasury*, the plaintiff used an email in a deposition that "include[d] statements regarding interactions and dealings between [plaintiff's employee] and Chase Bank during 1998-1999." *Id.* at *3. Afterwards, the defendants requested that the court find that the plaintiff waived the entire subject matter of all interactions and dealings between any of plaintiff's employees and Chase Bank. *Id.* The court agreed, finding that since plaintiff had used the document offensively by questioning a witness about the contents of the email and the relationship between plaintiff and Chase Bank during a deposition, plaintiff used the document with the intention of "develop[ing] support for its claims or defenses, [including] the value and quality of [patents]", and plaintiff

**THE STATE OF NEW YORK'S MOTION TO PRECLUDE DEBTORS' FROM INTRODUCING CERTAIN EVIDENCE AND ELICITING TESTIMONEY THEY HAVE SHIELDED FROM DISCOVERY BASED UPON INAPPROPRIATE PRIVILEGE ASSERTIONS – PAGE 27**

DA 2114639.5

therefore waived privilege on all communications and interactions between plaintiff and Chase Bank that occurred before and after the email at issue. *Id.*

68.     Similar to *Nguyen, Grigson*, and *Datatreasury*, the Court should not permit NRA to selectively disclose privileged information at trial when it has failed to produce all of the privileged information and underlying documents to the NYAG.  Indeed, it is the eleventh hour and the NRA has still failed to meet its discovery obligations.  The NRA has selectively used the Reports as evidence that it believes supports its claims and defenses, while at the same time prohibiting the NYAG and other interested parties from any discovery regarding the Reports. Likewise, the NRA is selectively disclosing that the Employment Agreement was allegedly discussed at the Executive Session and that the Board members knowingly granted an executive with the sole authority to file a bankruptcy case for the NRA, while also claiming attorney-client privilege anytime a deponent was questioned about the Employment Agreement and/or the Executive Session.

69.     Simply put, Rule 502(a) does not permit NRA to manipulate the privilege in this way; and instead, NRA has waived any privileges that may have been attached to the Reports and the Executive Session through its selective disclosure of communications and information.  NRA should not be allowed to use any of its purported evidence on these topics at trial since NRA violated the discovery rules in its tactical decision to withhold the information and communications on the basis of false claims of privilege and prevented NYAG and other interested parties to obtain information that "ought in fairness to be considered together."

## D.     Under The Offensive Use Doctrine, Debtors Cannot Use A Privilege Designation As Both A Sword And A Shield.

70.     The NRA mistakenly argues that it can use the attorney-client privilege as its sword and shield, contending that it can use the information it has on the Board Meeting discussions

**THE STATE OF NEW YORK'S MOTION TO PRECLUDE DEBTORS' FROM INTRODUCING CERTAIN EVIDENCE AND ELICITING TESTIMONEY THEY HAVE SHIELDED FROM DISCOVERY BASED UPON INAPPROPRIATE PRIVILEGE ASSERTIONS – PAGE 28**

DA 2114639.5

during the Executive Session and the Reports, without producing the underlying documents or otherwise allowing the NYAG to obtain discovery of said items and information. *Not so.*

71.     The attorney-client privilege is intended to be used as a shield, not a sword. *Conkling v. Turner*, 883 F.2d 431, 434 (5th Cir. 1989). When a party attempts to use it as both, fairness dictates that the court disarm it of one. *Id.* Here, the Court should take away the NRA's sword and order that the NRA be prohibited from utilizing the Reports or from discussing the Reports or anything that happened in the Executive Session. *Cf. Mapp*, 2017 WL 8780604, at *3 (precluding party from introducing evidence regarding reliance on counsel where co-party refused to waive privilege); Fed. R. Civ. P. 37(c) (a court may properly exclude evidence that should have been disclosed if the failure was not substantially justified or harmless).

72.     The Fifth Circuit has adopted the offensive use waiver doctrine under the federal common law, which prohibits the dual usage of a privilege as a sword and shield. *Archer v. Sterquell*, No. 2:05-CV-078-C, 2005 WL 8157959, at *3 (N.D. Tex. Nov. 29, 2005). Under the offensive use waiver doctrine, "a party may not use privileged information both offensively and defensively at the same time." *Willy v. Admin. Review Bd.*, 423 F.3d 483, 497 (5th Cir. 2005) (applying federal common law). The doctrine applies to both the attorney-client and the work-product privileges. *Archer*, 2005 WL 8157959, at *3. "[W]hen a party entitled to claim the attorney-client privilege uses confidential information against his adversary (the sword), he implicitly waives its use protectively (the shield) under that privilege." *Willy*, 423 F.3d at 497. The reasoning behind the offensive use doctrine is a fundamental pillar of the attorney-client and work-product privileges: the privileges are "intended only as an incidental means of defense, and not as an independent means of attack[.]" *United States v. Moody*, 923 F.2d 341, 352 (5th Cir. 1991).

**THE STATE OF NEW YORK'S MOTION TO PRECLUDE DEBTORS' FROM INTRODUCING CERTAIN EVIDENCE AND ELICITING TESTIMONEY THEY HAVE SHIELDED FROM DISCOVERY BASED UPON INAPPROPRIATE PRIVILEGE ASSERTIONS – PAGE 29**

DA 2114639.5

73.     For example, in *Moody*, the United States prosecuted a defendant for concealing property belonging to his bankruptcy estate, namely $201,000 that he distributed to himself from a partnership. Id. at 344. At the trial court level, the defendant was convicted. *Id.* On appeal, the defendant argued that the partnership itself was ***not*** a personal asset, and instead, contended that the district court erred by admitting testimony from his bankruptcy attorney that he "had not objected to her listing" the partnership as one of his personal assets on the bankruptcy petitions. *Id.* at 352. However, during opening arguments at trial, defendant's attorney put the discussions regarding assets to include on the bankruptcy petitions at issue by incorporating by reference the opening argument by the attorney for a co-defendant. *Id.* On appeal, the Fifth Circuit held that the defendant waived his attorney-client privilege to his discussions with his attorney regarding the bankruptcy petitions under the offensive use waiver doctrine, since he used his communications with his attorney as a sword (claiming his attorney said to put the partnership interest on the bankruptcy petitions) and a shield (claiming that his communications—or lack thereof—to his attorney with respect to including the partnership interest on the bankruptcy petitions were privileged). *Id.*; *see also Archer*, 2005 WL 8157959, at *4 (rejecting attorney-client privilege asserted by a party because he was "clearly attempting to protect communications between himself and his attorneys based upon the assertion of privileges, while at the same time basing his federal claims on those very communications.").

74.     Debtors are attempting to argue that their executive had the Board's approval to file a Chapter 11 Bankruptcy for NRA based on an Executive Session of a Board Meeting and the Proposed Employment Agreement. Debtors are also trying to argue that all of the issues raised by the NYAG in this case regarding mismanagement and failure to comply with the law have been remedied based on the Reports. However, Debtors refused during the depositions to allow any

**THE STATE OF NEW YORK'S MOTION TO PRECLUDE DEBTORS' FROM INTRODUCING CERTAIN EVIDENCE AND ELICITING TESTIMONEY THEY HAVE SHIELDED FROM DISCOVERY BASED UPON INAPPROPRIATE PRIVILEGE ASSERTIONS – PAGE 30**

DA 2114639.5

testimony regarding anything that happened during the Executive Session, what if any discussion there was regarding the Proposed Employment Agreement or anything related to the Reports. While Debtors produced a copy of the Morgan Lewis Report, it is heavily redacted and provides no meaningful information. All of the information Debtors seek to use related to the Morgan Lewis Report is contained (allegedly) in the redacted portion of the Morgan Lewis Report.

75. If the Court allows NRA to present evidence on topics that NRA denied NYAG discovery on, NYAG will suffer significant prejudice. NYAG was not able to depose Judge Journey and Mr. Frazer regarding the NRA Board's adoption of the Employment Agreement until March 18. The NRA's actions in instructing the witnesses not to answer questions deprived the NYAG of crucial evidence regarding what the Board members were told regarding the bankruptcy and whether the statements in the Washington Free Beacon are true. The objections also prevented the NYAG and other interested parties to uncover what the Board knew regarding any intention of the NRA to file bankruptcy and whether it knowingly granted an executive with the sole authority to file for bankruptcy.

76. With trial in this case beginning on April 5, 2021, there is simply not enough time for the NYAG to further depose Judge Journey, Mr. Frazer, and all the other deponents and prepare to use these depositions at trial. *Cf. Prideaux v. Tyson Foods, Inc.*, 387 F. App'x 474, 479 (5th Cir. 2010). NYAG will also be unable to analyze, seek additional discovery on, or effectively utilize the unredacted Morgan Lewis Report in such a short period of time.

77. Accordingly, even if the Court orders the NRA to allow the NYAG to ask Judge Journey, Mr. Frazer and other deponents questions regarding the Executive Session and/or the Reports, the NYAG and other interested parties will still be prejudiced. The NRA should not be allowed to obtain an advantage by improperly withholding discovery. *Cf. Taylor v. Illinois*, 484

**THE STATE OF NEW YORK'S MOTION TO PRECLUDE DEBTORS' FROM INTRODUCING CERTAIN EVIDENCE AND ELICITING TESTIMONEY THEY HAVE SHIELDED FROM DISCOVERY BASED UPON INAPPROPRIATE PRIVILEGE ASSERTIONS – PAGE 31**

DA 2114639.5

U.S. 400, 415 (1988) (party should not be allowed to gain "a tactical advantage that would minimize the effectiveness of cross-examination and the ability to adduce rebuttal evidence" by late disclosure). This relief is also in accordance with Fed. R. Civ. P. 37 which provides that if a party fails to comply with a court order, that this Court can consider multiple sanctions, including, but not limited to, (1) directing that the matters embraced in the order or other designated facts be taken as established for purposes of this action, as the prevailing party claims; (ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence.

78. Debtors cannot use the information they claim as protected by the attorney-client privilege or the work product doctrine as both a shield and a sword. Therefore, because Debtors refused to allow discovery regarding the Executive Session, and the Reports, Debtors should be prohibited from introducing into evidence or testifying regarding any of these matters. To do otherwise, would allow Debtors to inappropriately use a privilege as both a sword and a shield.

**E.**     **The Probative Value Of The Evidence The NRA Intends To Offer Is Substantially Outweighed By A Danger Of Unfair Prejudice, And Is Therefore Barred By Rule 403.**

79. Even if the at-issue evidence could be admissible, the probative value of the evidence the NRA intends to offer into evidence is substantially outweighed by a danger of unfair prejudice. The NRA plans to argue that it relied on its counsel, but categorically refuses to fully disclose the documents and communications upon which it relies and allow NYAG the opportunity to combat any inferences that may be drawn from that evidence. The NRA cannot have it both ways.

80. Federal Rule of Evidence 403 allows the court to "exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice[.]" A danger of

**THE STATE OF NEW YORK'S MOTION TO PRECLUDE DEBTORS' FROM INTRODUCING CERTAIN EVIDENCE AND ELICITING TESTIMONEY THEY HAVE SHIELDED FROM DISCOVERY BASED UPON INAPPROPRIATE PRIVILEGE ASSERTIONS – PAGE 32**

DA 2114639.5

unfair prejudice occurs when a party intends to present evidence that it reasonably relied on the advice of counsel, but the party refuses to waive attorney-client privilege as to the advice its attorney provided them. *SEC v. Mapp*, No. 04:16-CV-00246, 2017 WL 8780604, at *1-2 (E.D. Tex. Dec. 4, 2017). If a party is permitted to present evidence that they had a lawyer present at a meeting without fully disclosing what was said at the meeting, the party would unfairly gain "all the essential benefits of an inference that [the party's] actions were consistent with the advice he received from counsel, while at the same time prohibiting the [opposing party] from combatting that inference." *Id.* at *2. "Manipulation of the privilege in this manner is clearly contrary to the goals of the Federal Rules of Civil Procedure and in no way further the goals underlying the privilege." *Id.* (quoting *Huzjak v. United States*, 118 F.R.D. 61, 65 (N.D. Ohio 1987)).

81.     In *Mapp*, the SEC alleged that a defendant violated federal securities laws. *Id.* at *1. The defendant sought to present evidence regarding the presence of lawyers, a legal process for review, and general principals of legal review to show he reasonably relied on the presence and involvement of counsel in the issuance of securities, but without fully disclosing any specific advice he received from counsel. *Id.* at *1-2. The SEC argued that the defendant "should be precluded from offering any evidence or argument about the engagement, presence, or involvement of [counsel] in the issuance of [the] securities" because a co-defendant refused to waive privilege and it was "far more likely to confuse the issues, mislead the jury, and waste time than it is to prove anything relevant to the [defense]." *Id.* at *1.

82.     The court agreed, finding it would be confusing and unduly prejudicial for the defendant to present this evidence without also allowing evidence of "(1) whether [the defendant] ever sought advice from [counsel] regarding compliance with federal securities laws, (2) what information [the defendant] provided counsel when seeking that advice, (3) what advice [the

**THE STATE OF NEW YORK'S MOTION TO PRECLUDE DEBTORS' FROM INTRODUCING CERTAIN EVIDENCE AND ELICITING TESTIMONEY THEY HAVE SHIELDED FROM DISCOVERY BASED UPON INAPPROPRIATE PRIVILEGE ASSERTIONS – PAGE 33**

DA 2114639.5

defendant] received, if any, from counsel, and (4) whether his conduct was consistent with the advice he received." *Id.* at *2. Accordingly, the defendant was precluded from introducing draft documents and "placing undue focus on the fact that [the defendant] conferred with [counsel] or that [counsel] drafted or reviewed offering materials." *Id.* at *3.

83.    *Mapp* is factually similar to the present case. The NRA wants to present extensive evidence on the presence and involvement of its lawyers in the Executive Session and with regard to the Employment Agreement and the Reports.  But, the NRA has refused to produce any evidence regarding the advice it sought, the information it provided its counsel when seeking said advice, the advice received, and whether the NRA acted consistent with the advice received. Trial starts on April 5. The NRA had its shot to comply with its discovery obligations, but deliberately failed to play by the rules. The NRA's rule-breaking should not be rewarded, and all evidence of its purported attorney-client privileged information and communications should be excluded at trial in its entirety.

## CONCLUSION

67.    For the reasons demonstrated above, NYAG respectfully requests that the Court preclude the Debtors from (1) introducing any evidence of the Reports, including the Morgan Lewis Report; (2) referring or relying on the Reports and giving any testimony related to the same; and (3) offering evidence on what occurred and topics discussed during the Executive Session where the Debtors objected to discovery of such facts during discovery.  NYAG also requests that the Court grant such other and further relief as it deems just, proper and appropriate.

**THE STATE OF NEW YORK'S MOTION TO PRECLUDE DEBTORS' FROM INTRODUCING CERTAIN EVIDENCE AND ELICITING TESTIMONEY THEY HAVE SHIELDED FROM DISCOVERY BASED UPON INAPPROPRIATE PRIVILEGE ASSERTIONS – PAGE 34**

DA 2114639.5

Dated: March 26, 2021

Respectfully submitted,

*/s/ Gerrit M. Pronske*
Gerrit M. Pronske
State Bar No. 16351640
Eric M. Van Horn
State Bar No. 24051465
Jason P. Kathman
State Bar No. 24070036
**SPENCER FANE LLP**
2200 Ross Avenue, Suite 4800 West
Dallas, Texas 75201
(214) 750-3610 – Telephone
(214) 750-3612 – Telecopier
-and-
5700 Granite Parkway, Suite 650
Plano, Texas 75024
(972) 324-0300 – Telephone
(972) 324-0301 – Telecopier
Email: gpronske@spencerfane.com
Email: ericvanhorn@spencerfane.com
Email: jkathman@spencerfane.com

– And –
*/s/ Monica Connell*
Monica Connell
*Pro Hac Vice*
James Sheehan
*Pro Hac Vice*
Emily Stern
*Pro Hac Vice*
Stephen Thompson
*Pro Hac Vice*
**OFFICE OF THE ATTORNEY GENERAL OF THE STATE OF NEW YORK**
28 Liberty Street
New York, NY 10005
(212) 416-8401
Email: James.Sheehan@ag.ny.gov
Email: Emily.Stern@ag.ny.gov
Email: Monica.Connell@ag.ny.gov
Email: Stephen.Thompson@ag.ny.gov

**COUNSEL FOR THE PEOPLE OF THE STATE OF NEW YORK, BY LETITIA JAMES, ATTORNEY GENERAL OF THE STATE OF NEW YORK**

**THE STATE OF NEW YORK'S MOTION TO PRECLUDE DEBTORS' FROM INTRODUCING CERTAIN EVIDENCE AND ELICITING TESTIMONEY THEY HAVE SHIELDED FROM DISCOVERY BASED UPON INAPPROPRIATE PRIVILEGE ASSERTIONS – PAGE 35**

DA 2114639.5

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 26, 2021, a true and correct copy of the foregoing was served (without exhibits) upon all parties entitled to notice, including the Debtors and United States Trustee, via the Court's electronic transmission facilities. Any party may request the exhibits from the counsel listed above. Any additional method of service will be reflected with a supplemental certificate of service.

*/s/ Eric M. Van Horn*
Eric M. Van Horn

**THE STATE OF NEW YORK'S MOTION TO PRECLUDE DEBTORS' FROM INTRODUCING CERTAIN EVIDENCE AND ELICITING TESTIMONEY THEY HAVE SHIELDED FROM DISCOVERY BASED UPON INAPPROPRIATE PRIVILEGE ASSERTIONS – PAGE 36**

DA 2114639.5