**NELIGAN LLP**
PATRICK J. NELIGAN, JR.
State Bar No. 14866000
DOUGLAS J. BUNCHER
State Bar No. 03342700
JOHN D. GAITHER
State Bar No. 24055516
325 North St. Paul, Suite 3600
Dallas, Texas 75201
Telephone: 214-840-5333
Facsimile: 214-840-5301
pneligan@neliganlaw.com
dbuncher@neliganlaw.com
jgaither@neliganlaw.com
*Counsel for Debtors and*
*Debtors-in-Possession*

**BREWER ATTORNEYS & COUNSELORS**
WILLIAM A. BREWER III
State Bar No. 02967035
SARAH B. ROGERS
New York Bar No. 4755252, admitted *pro hac vice*
Email: sbr@brewerattorneys.com
Email: wab@brewerattorneys.com
1717 Main Street, Suite 5900
Dallas, Texas 75201
Telephone: 214-653-4000
Facsimile: 214-653-1015
*Proposed Special Counsel for Debtors*
*and Debtors-in-Possession*

**GARMAN TURNER GORDON LLP**
GREGORY E. GARMAN
Nevada Bar No. 6654, admitted *pro hac vice*
Email: ggarman@gtg.legal
WILLIAM M. NOALL
Nevada Bar No. 3549, admitted *pro hac vice*
Email: wnoall@gtg.legal
GABRIELLE A. HAMM
Texas Bar No. 240401047
Email: ghamm@gtg.legal
DYLAN CICILIANO
Nevada Bar No. 12348, admitted *pro hac vice*
E-mail: dciciliano@gtg.legal
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
Telephone: 725-777-3000
Facsimile: 725-777-3112
*Counsel for Debtors*
*and Debtors-in-Possession*

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| IN RE: | § | CHAPTER 11 |
| | § | |
| NATIONAL RIFLE ASSOCIATION OF AMERICA and SEA GIRT LLC, | § | CASE NO. 21-30085-hdh11 |
| | § | |
| DEBTORS[1] | § | Jointly Administered |
| | § | |

**DEBTORS' RESPONSE IN OPPOSITION TO THE NYAG'S MOTION
TO PRECLUDE DEBTORS FROM INTRODUCING CERTAIN EVIDENCE
AND ELICITING CERTAIN TESTIMONY THEY HAVE SHIELDED FROM
DISCOVERY BASED ON INAPPROPRIATE PRIVILEGE ASSERTIONS**

---

[1] The last four digits of the Debtors' taxpayer identification numbers are 6130 (NRA) and 5681 (Sea Girt).

National Rifle Association of America ("NRA") and Sea Girt LLC ("Sea Girt" and together with NRA, the "Debtors"), debtors and debtors-in-possession, hereby submit this response in opposition (the "Opposition") to *The State of New York's Motion to Preclude Debtors From Introducing Certain Evidence and Eliciting Certain Testimony They Have Shielded From Discovery Based On Inappropriate Privilege Assertions* [ECF No. 417] (the "Motion") filed by The People of the State of New York, by Letitia James, Attorney General of the State of New York ("NYAG") on the eve of trial and after the substantial completion of discovery.

This Opposition is made upon the memorandum of points and authorities set forth below, the declarations of Dylan Ciciliano, Gregory Garman, John Frazer, and Sarah B. Rogers attached hereto as **Exhibits A**, **B**, **C**, and **D**, respectively, the pleadings, papers, and other records on file with the clerk of the above-captioned Court, judicial notice of which is hereby respectfully requested under Federal Rule of Evidence 201, and the evidence and argument of counsel entertained by the Court at the time of the hearing on the Motion.

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.
## INTRODUCTION

Styled as a motion to preclude evidence on several broad, imprecisely defined subjects, the Motion does not represent the culmination of any good-faith effort to resolve a dispute over discovery or privilege. Instead, the Motion resorts to strawman arguments and conjecture about documents that *might* exist (none do) and arguments Debtors *might* assert in an eleventh-hour tactical bid for a vague evidentiary exclusion that would substantially burden Debtors' defense.

The Motion purports to address two categories of privileged, sought-to-be-precluded evidence: (i) alleged "Reports" prepared by one or more law firms; and (ii) the events and outcome

of an attorney-client privileged executive session of the NRA Board of Directors held on January 7, 2021.[2]

*First*, as the NRA has repeatedly advised, the comprehensive law firm "Reports" that the NYAG seeks to exclude do not exist. However, the broad terms of the preclusion order sought by the NYAG would have the effect of blocking evidence on two discrete topics relevant to the NRA's defense, on which documents and testimony have been provided to the NYAG throughout the discovery process: (i) the validity of outside counsel's retention, and (ii) the scope and robustness of the NRA's excess-benefit analysis in connection with its 2019 Form 990. The NRA should be permitted to present documents and testimony on these subjects, and certainly should not be precluded based on the nonexistence of fictitious "Reports" that the NYAG accuses the NRA of withholding.

*Second*, the NYAG objects to the NRA's assertions of privilege with respect to confidential, closed executive sessions of the NRA Board of Directors during which legal advice was provided by multiple counsel and litigation strategy was discussed. Although the NRA has no intention of wielding the content of these privileged ***discussions*** as a "sword," the NRA must be able to cite ***actions*** taken by its Board which are fully documented in Board minutes that were produced during discovery. These actions include the Board's approval of the NRA Executive Vice President's employment contract, the appointment of the NRA's Special Litigation Committee, and the Board's approval of this bankruptcy proceeding. The unsurprising fact that

---

[2] Specifically, the Motion seeks to preclude Debtors from "(1) introducing any evidence of the Reports, including the Morgan Lewis Report; (2) referring or relying on the Reports and giving any testimony related to the same; and (3) offering evidence on what occurred and topics discussed during Executive Session where the Debtors objected to discovery of such facts during discovery." Mot. at 34.

the Board received legal advice regarding these actions does not render the actions invalid or inadmissible.

The NYAG's invocation of the "offensive use" doctrine is wholly without merit. Debtors' assertions of privilege have been clear, consistent, and well-founded throughout the discovery process. Debtors have no plans to present legal advice as evidence at trial; but by groundlessly raising the specter that Debtors may do so, the NYAG seeks to preclude non-privileged evidence of Board decisions and the content of Debtors' tax return. The Motion should be denied in its entirety.

## II.
## RELEVANT BACKGROUND

### A. Attorney-Client Privilege Regarding Executive Sessions.

1. Debtors' claim of privilege regarding communications made during two executive sessions of the NRA Board on January 7, 2021 (the "Executive Sessions") is not new information to the NYAG.

2. On March 10, 2021, counsel for Debtors and the NYAG conferred regarding the *Notice of Intent to Take Oral Deposition of the Honorable Phillip Journey* (the "Journey Notice" served on March 10, 2021. During that conference, Debtors' counsel expressed concern during that conference that the NYAG was planning to elicit privileged communications from Judge Journey as a result of Mr. Pronske's statement that Judge Journey's testimony was necessary because the NRA had "stonewalled" with claims of attorney-client privilege.[3]

---

[3] *See Debtors' Emergency Motion for Protective Order re: NYAG's Notice of Intention to Take Deposition of the Honorable Phillip Journey* [ECF No. 341] (the "Journey Deposition Motion") and the *Declaration of Gabrielle A. Hamm in Support of Debtors' Emergency Motion for Protective Order re: NYAG's Notice of Intention to Take Deposition of the Honorable Phillip Journey* [ECF No. 342].

3.      The Journey Deposition Motion filed on March 11, 2021 stated that "information given to the Board in executive session" is the subject of "unequivocal assertion of privilege."

4.      On March 12, 2021, Debtors submitted the Declaration of William W. Davis in support of the Journey Deposition Motion.[4]  Mr. Davis is not counsel to the NRA, but independent counsel to the NRA Board.

5.      Mr. Davis acknowledged that proceedings in executive session are not *per se* privileged; however, the Executive Sessions held on January 7, 2021 *were* privileged.  In the first Executive Session, which was held to discuss the report of the Officers Compensation Committee, including a recommendation that the Board adopt and approve a revised employment contract for Wayne LaPierre, members of the NRA Board deliberated contract terms and sought legal advice regarding particular provisions of the contract and the potential addition of a forum selection clause.[5]  The second Executive Session was held for the purpose of obtaining legal advice regarding a proposed resolution formalizing the appointment of a Special Litigation Committee, which advice was provided by counsel for the NRA and Mr. Davis.  Both sessions were conducted in confidence.[6]

6.      After rising from executive session on January 7, 2021, the Board took two important actions: it approved Mr. LaPierre's Employment Contract and formalized the appointment of a Special Litigation Committee.[7]  Neither action is asserted to be privileged, and both are documented in board minutes produced to the NYAG.

---

[4] ECF No. 348.

[5] *Id.*, ¶ 5, 7.

[6] *Id.*, ¶ 8.

[7] *See Voluntary Petition* of Sea Girt LLC, Case No. 21-30080-hdh-ll, ECF No. 1, p. 5 (1/15/2021 Resolution Authorizing Chapter 11 Reorganization and Related Retention of Counsel); *Voluntary Petition* of National Rifle Association of America, Case No. 21-30085-hdh-ll, ECF No. 1, p. 5 (same).

7.      Another privileged executive session of the NRA Board of Directors was held on Sunday, March 28, 2021.  After receiving legal advice from Debtors' counsel in these chapter 11 cases—Garman Turner Gordon LLP and Neligan LLP—the overwhelming majority of members of the Board of Directors in attendance adopted a resolution approving and ratifying the filing of the Chapter 11 cases.[8]  Although this executive session occurred after the Motion was filed (and, therefore, is not explicitly addressed by the NYAG), Debtors anticipate that the NYAG may advance the same aggressive arguments in an effort to exclude evidence of the Board's ratification of the Chapter 11 filing, which Debtors oppose.  Preclusion of the March 28, 2021 resolution would not only impede the adjudication of this matter, but would call into question the ability of any debtor to receive, and safeguard, privileged advice incident to the authorization or ratification of a bankruptcy proceeding.

**B.      The NYAG's "Morgan Lewis Report" vs. the Real Morgan Lewis BAC Memo.**

8.      The NYAG's contentions regarding a purported "Morgan Lewis Report" are inaccurate.  As set forth in the Frazer Declaration, Morgan, Lewis & Bockius LLP ("Morgan Lewis") was engaged by the NRA to provide tax and nonprofit governance advice to the NRA over a number of years, but issued only one written opinion of the kind envisioned by the NYAG in the Motion: a discrete memorandum on a very specific issue regarding "the authority of [NRA] management to engage legal counsel on behalf of the Association"[9] (the "Morgan Lewis BAC Memo").

---

[8] *See* Garman Decl., ¶ 4.

[9] *Id.*, ¶ 4.

9.    Importantly, at no time did the NRA represent to the NYAG that the comprehensive "Morgan Lewis Report" described in the Motion had ever existed.  There is no such document.[10]

10.    The NYAG has known of the existence of the Morgan Lewis BAC Memo for many months; the NRA discussed the memorandum with the NYAG during its investigation and produced a redacted version to the NYAG on June 1, 2020.[11]  The NYAG did not dispute the NRA's redactions.[12]  During a meet-and-confer teleconference on or about March 8, 2021, the NYAG's counsel suggested that the parties "might have a dispute" about the redactions to the Morgan Lewis BAC Memo, but did not follow-up or make any attempt to ripen or resolve the potential dispute.[13]

11.    The NRA heard nothing further from the NYAG on this issue until 4:32 p.m. (CDT) on March 23, 2021, when NYAG counsel, Gerrit Pronske, informed Debtors' counsel, via voicemail that he intended to file a motion for discovery sanctions within the hour.[14]

12.    When Debtors' counsel returned Mr. Pronske's call seeking to understand and resolve whatever issue the NYAG deemed sanctionable, the NYAG's counsel, for the first time, demanded one or more purported "reports" prepared by Morgan Lewis or other counsel.  Terms for resolution of the dispute were discussed and Debtors offered to produce the actual Morgan Lewis BAC Memo in unredacted form, subject to an agreement that the NYAG would not contend that Debtors' production effected a subject-matter waiver.[15]

---

[10] *Id.*, ¶ 2.

[11] Rogers Decl. ¶ 2.

[12] *Id.*, ¶ 3.

[13] Ciciliano Decl., ¶ 5.

[14] *Id.*, ¶ 6.

[15] Garman Decl., ¶ 5.

13. On March 24, 2021, NYAG counsel sent an email to Debtors' counsel documenting proposed terms for resolving the discovery dispute. However, the provision that the NRA provide a list of "any other reports/opinions/assessments/reviews, formal or informal given to the NRA regarding compliance, governance or remediation issues" no later than 5:00 p.m. the following day was not consistent with Debtors' counsel's understanding or recollection of the terms discussed by phone. Debtors' counsel responded within twenty minutes, stating that preparing a list of all advice given to the NRA concerning compliance, governance and/or remediation, formal or informal, written or unwritten, would be not merely burdensome, but impossible, and inviting further discussion.[16]

14. The NYAG did not respond.[17]

15. Thereafter, the NYAG filed the Motion. The Motion asserts that: "NRA claims that it retained Morgan Lewis to do a complete review of the governance of the NRA to ensure NRA was in compliance with New York's not-for-profit laws and Morgan Lewis issued a report confirming it was (the 'Morgan Lewis Report')."[18] This is false. As counsel attempted to explain during the brief meet-confer efforts that ensued when the NYAG announced its eleventh-hour sanctions motion, the NRA makes no such claim, and no "Morgan Lewis Report" exists.[19]

## C. Other "Reports" of Outside Law Firms and Documents Regarding Excess Benefit Transactions.

16. The NYAG also contends that Debtors are affirmatively seeking to use "report(s) and advice obtained from third party entities (including K&L Gates) and law firms that provided

---

[16] *Id.*, ¶ 6.

[17] *Id.*

[18] Motion at 6.

[19] Frazer Decl., ¶ 2.

tax advice concerning illegal excess benefit transactions (collectively the "Reports"), to support the NRA's contention that it is currently in compliance with, and has remediated past violations of, New York and federal law governing nonprofits and charities"[20] but "has precluded inquiries into the substance of such reports."[21] The NYAG has not identified any opinion letter, memorandum, or "report" regarding the NRA's compliance with state and federal law or excess benefit transactions that exists or has been withheld.

17.     In addition to the purported "Morgan Lewis Report," the Motion asserts that the NRA "seeks to affirmatively use . . . report(s) and advice obtained from other third party entities (including K&L Gates) . . . that provided tax advice concerning illegal excess benefit transactions (collectively the 'Reports')."[22] To the knowledge of the NRA's General Counsel, the NRA has never sought tax advice from K&L Gates regarding illegal excess benefit transactions, and K&L Gates has never issued a report, opinion letter, memorandum, or similar document to the NRA on this topic.[23]

18.     Debtors have not "blocked the NYAG from obtaining information relating to illegal excess benefit transactions to EVP LaPierre and other senior NRA executions [sic], which were first reported in the NRA's 2019 IRS 990 filing and addressed in the NRA's related IRS Form 4720 excise tax forms," as the NYAG contends.[24] In fact, the opposite is true.

19.     On March 22, 2021, counsel for the NYAG, Monica Connell, requested that Debtors supplement their production to include, among other things, "[d]ocuments that support

---

[20] Motion, ¶ 8.

[21] *Id.*, p. 6, n.4.

[22] *Id.*

[23] Frazer Decl., ¶ 5.

[24] *Id.*, ¶ 44.

the calculation of the excess benefit transactions identified in the NRA's 2019 IRS Form 990 including but not limited to the specific invoices from Gayle Stanford and her related entities which were used to calculate excess benefit transactions identified in the NRA's 2019 IRS Form 990" or identify relevant documents within their production.[25]

20.     In response to a further email from Ms. Connell regarding the documents on March 23, 2021, Debtors' counsel told her that documents had already been produced and Debtors would further supplement their production with respect to other categories.[26]

21.     Later on March 23, Mr. Ciciliano provided to the NYAG "2019 NRA 990 highlights to Board of Director's meeting.docx" and "NRA 2019 990 Tax Return Comments.docx," attachments to emails that had either been separated or omitted from emails produced in discovery.[27]

22.     Mr. Ciciliano confirmed on March 24, 2021 that documents supporting the calculation of the excess benefit transactions identified in the NRA's 2019 IRS Form 990 requested in Ms. Connell's March 22 email were produced, and attached a spreadsheet identifying the Bates-ranges of the relevant documents.[28]  Later that evening, however, Ms. Connell sent an email with the same demands yet again:

> We have been endeavoring, through demands and various witnesses, to obtain information regarding the amount of excess benefit transactions reported in the NRA's 2019 990 and taxes reported on the 4720s including specifically the documents that were relied upon to make those calculations and the manner of calculation. We have been met with assertions of

---

[25] Ciciliano Decl., ¶ 8, Ex. F (March 22 email chain with NYAG counsel Monica Connell).

[26] *Id.*, ¶ 9, Ex. G (March 23 email producing documents).

[27] *Id.*, ¶ 11, Ex. H  (March 23 email chain with NYAG counsel Stephen Thompson).

[28] *Id.*, ¶ 12, Ex. I  (March 24 email to NYAG counsel Monica Connell regarding documents produced).

privilege. This is unacceptable and we would like to meet and confer with regard to this issue as soon as possible.[29]

23.     On March 25, before Debtors' counsel responded to Ms. Connell's latest email, Mr. Pronske advised the Court that the NYAG would be filing a motion for sanctions that same day. The Motion was filed the next day, on March 26.

24.     Nonetheless, on March 28, Mr. Ciciliano again advised Ms. Connell that the requested documents had already been produced, including the spreadsheet that underlay the NRA's excess-benefit calculations for Mr. LaPierre in connection with the NRA's 2019 Form 990. Debtors' counsel pointed out that the NYAG was fully aware of this document and had asked questions about it during a deposition:

> Upon investigation, Debtors have produced the documents that form the basis of excess benefit transactions reported in the NRA's 2019 990 and taxes reported on the 4720, including relied upon invoices. Likewise, I've read transcripts where your co-counsel examined witnesses on those documents, including NRA-BK-00039547. I don't believe there is actually a dispute here. To the extent that you would still like to meet and confer, we'll be available tomorrow. Please propose a time.[30]

### III.
### LEGAL ARGUMENT

A.     __The NYAG's Motion is Untimely.__

The NYAG's Motion is untimely and should be denied on that basis alone. Debtors' positions regarding the scope of the privilege have been known to the NYAG from the outset and have not changed.  Indeed, the now-disputed redactions to the Morgan Lewis BAC Memo have been known to the NYAG since June 2020. The NYAG has had ample opportunity to raise a discovery dispute now extant for weeks to this Court, which has gone to great lengths to timely

---

[29] _Id._, ¶ 13, Ex. J  (March 24 NYAG demand).

[30] _Id._, ¶ 15, Ex. F (March 28 email).

resolve discovery disputes. In failing to do so until the eve of trial, when discovery was nearly complete, the NYAG has deprived the Court any opportunity to fashion a remedy, should one be required, that is not prejudicial to Debtors.[31]

Courts routinely reject the well-known ploy of requesting the exclusion of evidence on the eve of trial as a sanction for alleged discovery violations after the complaining party failed to bring the issue to the attention of the court. One court aptly stated:

> The plaintiff's unexplained delay in seeking court assistance to obtain the documents now at issue, coupled with his request for sanctions in the form of an order precluding defendants from opposing his damage claims and from offering evidence at trial, raises the inference that the plaintiff is not as concerned with obtaining the documents as he is with "hold[ing] in abeyance a putative discovery violation" for the strategic purpose of using it late in the proceedings as a basis to prevent defendants from defending the claims against them. For these reasons, the plaintiff's Motion to Compel and associated request for sanctions are denied.[32]

If the Debtors' multi-year compliance review or authorization to commence the Chapter 11 were "central issues" in this case, despite the NAYG's failure to raise them in its dismissal motion, it was incumbent upon the NYAG to avail itself of the process for compelling discovery.[33]

---

[31] *See, e.g., Knight v. Boehringer Ingelheim Pharmaceuticals, Inc.*, 323 F. Supp. 3d 837 (S.D. W.Va. 2018) (court refused to grant spoliation instruction where plaintiff's delay in raising spoliation issue deprived the court of the opportunity to facilitate obtaining the information by other means).

[32] *Buttler v. Benson*, 193 F.R.D. 664, 666 (D. Colo. 2000); *see also, e.g., Copantitla v. Fiskardo Estiatorio, Inc.*, 788 F. Supp. 2d 253 (S.D.N.Y. 2011) (denying defendants' request to dismiss plaintiff's claims as a sanction for alleged violation of discovery obligations stemming from a question posed at his deposition, where defendants never pursued any remedies for plaintiff's conduct, and now belatedly sought to use the incident as a tool to obtain dismissal); *Griffith v. General Motors Corp.*, 303 F.3d 1276 (11th Cir. 2002), *cert. denied*, 538 U.S. 1023, 123 S. Ct. 1953, 155 L. Ed. 2d 868 (2003) (district court did not abuse discretion in denying plaintiff's motion to hold defendant in contempt for failure to disclose prior cases in which expert had testified where plaintiff sought to exclude the expert's testimony six weeks prior to trial without ever having asked the district court to intervene after the matter had gone on for two years); *Vondrak v. City of Las Cruces*, 671 F. Supp. 2d 1239 (D.N.M. 2009) (denying defendants' motion to limit testimony of expert witnesses on the basis of incomplete disclosures, which was a belated discovery motion); *THEC International-Hamdard Cordova Group-Nazari Constr. Co., Ltd. Joint Venture v. Cohen Mohr, LLP*, 301 F. Supp. 3d 1 (D.D.C. 2018) (plaintiffs were not entitled to sanctions, which were not timely requested).

[33] *See Droughn v. FMC Corp.*, 74 F.R.D. 639 (E.D. Pa. 1977) (denying plaintiff's motion to limit assertions of fact by defendant where, rather than availing herself of procedures for compelling discovery, plaintiff filed motion after close of discovery); *Williams v. R.W. Cannon, Inc.*, No. 08-60168-CIV, 2008 WL 11330706, at *1 (S.D. Fla.

Having declined to do so, the NYAG is not entitled to drastic sanctions against Debtors as a reward for its delay.

**B.**     **The "Offensive Use" Doctrine Applies Only to a Party Affirmatively Using Privileged Communications; It Is Inapplicable Where Privilege is Preserved.**

The NYAG's convoluted argument that Debtors have waived privilege under the "offensive use" or "at-issue" doctrine is unsupported by any apposite authority or evidence of any offensive disclosure of privileged communication, but is concocted from thin air based on the NYAG's unsubstantiated conjecture about Debtors' "*intention to selectively disclose privileged communications,*"[34] blatant mischaracterizations of the Debtors' contentions, and the NYAG's own theories recast as allegations of the Debtors. The NYAG cannot show that Debtors have relied on privileged advice from counsel to establish a claim and therefore seeks to turn the concept of waiver on its head, demanding Debtors either admit the NYAG's allegations or deny them and thereby trigger an "offensive use" waiver.

"Offensive use" may not be invoked on the basis that privileged communications are relevant to the opposing party's claims or may prove useful for impeachment. The offensive-use doctrine is applicable when "(1) *the party asserting the privilege is seeking affirmative relief*; (2) the privileged information sought in all probability would be outcome determinative of the cause of action asserted; and (3) the party seeking disclosure has no other means of obtaining the

---

July 31, 2008) (denying enlargement of time to conduct further discovery where the plaintiff made no attempt to compel better disclosures, noting that "had the plaintiff sincerely wanted information to determine whether additional depositions were necessary, he would have sought that information during discovery") (citing *Buttler*, 193 F.R.D. at 666) (cleaned up).

[34] Motion, ¶ 65 ("The NRA's *intention* to cherry pick parts of documents and meetings to disclose, while asserting privilege as to other parts, is prohibited under Federal Rule of Evidence 502(a)) (emphasis added).

evidence."[35]  The burden of demonstrating that the doctrine applies rests on the party seeking discovery.[36]

The Fifth Circuit recently examined the doctrine in *In re Itron, Inc.*[37]  The Court held that "a client waives the privilege by affirmatively relying on attorney-client communications to support an element of a legal claim or defense—thereby putting those communications 'at issue' in the case."[38]  The Court cautioned, however, that it is not enough to assert a claim to which privileged material is relevant:  "[r]elevance is *not* the standard for determining whether or not evidence should be protected from disclosure as privileged, ... even if one might conclude the facts to be disclosed are vital, highly probative, directly relevant or even go to the heart of an issue."[39] The client "must *rely* on privileged advice from his counsel to make his claim or defense."[40]

Thus, the NYAG cannot cause an offensive use waiver by Debtors on the basis of the NYAG's own allegations, no matter how "central" they may be.  "Attorney/client documents may be quite helpful [to an adversary's argument], but this is not a sufficient basis for abrogating the

---

[35] *Stabilis Fund II, LLC v. Compass Bank*, No. 3:18-CV-0283-B, 2019 WL 6063267, at *3 (N.D. Tex. Nov. 15, 2019) (emphasis added) (quoting *Fugro-McClelland Marine Geosciences, Inc. v. Steadfast Ins. Co.*, 2008 WL 5273304, at *4 (S.D. Tex. Dec. 19, 2008) (citing *Republic Ins. Co. v. Davis*, 856 S.W.2d 158, 163 (Tex. 1993))).

[36] *Id.* (citing *In re JDN Real Estate-McKinney L.P.*, 211 S.W.3d 907, 923 (Tex. App.—Dallas 2006).

[37] 883 F.3d 553 (5th Cir. 2018).  While the Court applied Mississippi law, it noted that Mississippi has adopted the general approach to the issue and cited a wide-range of authorities, including earlier Fifth Circuit decisions, in support of its holding.  *Id.* (citing, inter alia, *Jackson Med. Clinic for Women, P.A. v. Moore*, 836 So.2d 767, 773 (Miss. 2003); 8 Fed. Prac. & Proc. § 2016.6; 2 81 Am. Jur. 2d § 329; 1 McCormick On Evidence § 93; 2 Paul R. Rice et al., Attorney-Client Privilege in the United States § 9:46 (2017–18 ed.)); *United States v. Newell*, 315 F.3d 510, 525 (5th Cir. 2002); *Indus. Clearinghouse, Inc. v. Browning Mfg. Div. of Emerson Elec. Co.*, 953 F.2d 1004, 1007 (5th Cir. 1992); *Conkling v. Turner*, 883 F.2d 431, 434–35 (5th Cir. 1989); *In re Burlington N., Inc.*, 822 F.2d 518, 533 (5th Cir. 1987); *United States v. Miller*, 600 F.2d 498, 501–02 (5th Cir. 1979); *Hunt v. Blackburn*, 128 U.S. 464, 470–71, 9 S.Ct. 125, 32 L.Ed. 488 (1888); *In re Icenhower*, 755 F.3d 1130, 1141 (9th Cir. 2014)) (other citations omitted).

[38] *Id.* at 558.

[39] *In re Itron, Inc.*, 883 F.3d at 561 (quoting *Rhone–Poulenc Rorer Inc. v. Home Indem. Co.*, 32 F.3d 851, 864 (3d Cir. 1994) (emphasis added)).

[40] *Id.* at 561 (quoting *In re Cty. of Erie*, 546 F.3d 222, 229 (2d Cir. 2008) (citing *Rhone-Poulenc*, 32 F.3d at 863) (emphasis in original).

privilege."[41]  An "offensive use" waiver may not be invoked by a party's denial of allegations; rather, the party asserting privilege must "explicitly rely on the existence or absence of the very communications for which he claims a privilege."[42]

      1.     The  Morgan Lewis BAC Memo and Other "Reports."

The NYAG's contention that the NRA "has selectively used the Reports as evidence that it believes supports its claims and defenses, while at the same time prohibiting the NYAG and other interested parties from any discovery" is both untrue and nonsensical.  Debtors cannot rely on, nor prohibit anyone from discovering, "Reports" that were never created.  The only "report" that Debtors have ever referenced is the  Morgan Lewis BAC Memo pertaining solely to the issue of the executive's authority to retain outside counsel, which Debtors have not prohibited the NYAG from discovering but have offered to provide.  With respect to the advice of Morgan Lewis unrelated to the  Morgan Lewis BAC Memo, the NYAG appears to complain that Debtors' General Counsel did not explicitly rely on legal advice to establish a defense.[43]

What the NYAG really appears to be seeking is the universe of advice by Debtors' outside counsel regarding Debtors' compliance review process and tax advice in connection with excess benefit transactions and tax filings.  As Debtors have not relied on the advice rendered by outside counsel to establish that Debtors are in full compliance with New York State non-for-profit law or disclosed communications with counsel as the NYAG contends, the NYAG offers misleading interpretations of testimony to imply otherwise.  For example, the NYAG alleges:

> Mr. LaPierre also repeatedly invoked Morgan Lewis at the 341 meeting for the same proposition regarding legal compliance.  For example, Mr.

---

[41] *In re Burlington N.*, 822 F.2d at 533.

[42] *Id.* (holding that reliance on *Noerr-Pennington* merely denies the existence of an antitrust violation does not give up the right to keep privileged communications under theory of waiver) (citing *United States v. Woodall*, 438 F.2d 1317, 1324-26 (5th Cir.1970), *cert. denied,* 403 U.S. 933, 91 S.Ct. 2262, 29 L.Ed.2d 712 (1971)).

[43] Motion, ¶¶ 39-41.

> LaPierre assured the U.S. Trustee that NRA hired Morgan Lewis, "one of the top nonprofit law firms in the country -- to do a complete review of the governance of NRA, to make sure we were in complete and total compliance with New York State non-for-profit law."[44]

In fact, Mr. LaPierre did not reveal any communications with Morgan Lewis or the substance of Morgan Lewis's advice. Rather, Mr. LaPierre stated:

> THE U.S. TRUSTEE: … My question is:· What changes have ·been made since 2018 to the audit procedures?

> MR. LaPIERRE:· Okay.· Okay.· Okay.· What we · did is we immediately hired Morgan Lewis to -- to do · a -- one of the top nonprofit law firms in the · country -- to do a complete review of the governance of · the NRA, to make sure we were in complete and total · compliance with New York State non-for-profit law. · And -- and -- and we began a review of the entire · association, all of its employees, all of its vendors, · of -- of -- - of everyone.· Because if there was anything · out of compliance, we wanted to self-correct.

> And that procedure began in 2017, continued · through 2018, 2019, and it -- it's still -- it -- it is · still ongoing …

Debtors also have not refused discovery of non-privileged information or documents relating to excess benefit transactions or the NRA's 2019 Form 990 and other tax filings. To the contrary, Debtors have made every effort to not only provide the NYAG with the calculations and supporting documents for NRA's 2019 Form 990, but have identified responsive documents by Bates-number (multiple times) and even gone so far as to draw a virtual map. The NYAG's response has been to repeat its formulaic demand for information and documents regarding the amount of excess benefit transactions reported over and over and over again, without identifying any documents or information—aside from privileged communications—it believes Debtors have not produced. If there remains a dispute regarding Debtors' production regarding these documents, Debtors do not know what it is.

---

[44] Motion, ¶ 43 (citing 2/22/2021 341 Tr., 49:10-15).

2.      The Executive Sessions.

The NYAG also cites nothing in support of its allegation that "the NRA is selectively disclosing that … the Board members knowingly granted an executive with the sole authority to file a bankruptcy case for the NRA, while also claiming attorney-client privilege anytime a deponent was questioned about the Employment Agreement and/or the Executive Session"[45] because the only parties speculating about the intent or understanding of the Board members are the Movants.  The theory that authorization for the Debtors' Chapter 11 is subject to challenge if certain Board members did not understand that corporate authority to "reorganize or restructure the affairs of the Association" may include the commencement of Chapter 11 is one created from whole cloth by the Movants.[46]

Unable to identify any disclosure of confidential communications or advice of counsel that would give rise to a waiver, the NYAG resorts to irreconcilable arguments.  According to the NYAG, stating that Board members sought legal advice regarding particular provisions of the contract and the potential addition of a forum-selection clause in Executive Session is conclusory and insufficient to assert a claim of privilege.[47] At the same time, however, the NYAG argues that merely disclosing the existence of discussions regarding the Employment Agreement in Executive Session in order to assert the claim of privilege[48] constitutes offensive use, thereby effecting a

---

[45] Motion, ¶ 68; *see also id.*, ¶ 75.

[46] *See* Motion, ¶ 5.

[47] *See* Motion, ¶¶ 34, 57.

[48] *See* Motion, ¶¶ 68 (arguing that the NRA is "selectively disclosing that the Employment Agreement was allegedly discussed at the Executive Session").  The NYAG concedes that Debtors' counsel did not permit any inquiry into the substance of discussions with tax counsel or discussions with the Board concerning the terms of the Employment Contract on the grounds of privilege.  *See, e.g.*, Motion, p. 7 ("[Craig Spray] was prohibited by NRA's counsel from disclosing the substance of discussions with tax counsel on this matter"); p. 10, n.6 ("Due to the NRA's assertion of privilege, no inquiry was permitted into the discussions with the Board concerning the addition of these provisions and choice of Texas.")

waiver of the very communications over which the privilege has just been asserted and requiring Debtors to disclose the substance of the communications. It can't be both.

*Nguyen v. Excel Corp.*, cited by the NYAG, supports Debtors' argument. There, the Fifth Circuit held that waiver of the privilege by partial disclosure comes into play when a party discloses "any significant portion of a confidential communication."[49] The Court found that the privilege was waived where no objection was raised to questions designed to elicit information beyond the general nature of the legal services provided, including the substance of the communication, the directions given to counsel, and the legal materials reviewed in addressing the question presented, and the privilege was impliedly waived when executives testified about the directions that they provided their attorney and legal research undertaken by their attorneys.[50]

The NYAG has identified no communication disclosed by Debtors akin to the disclosures that led to a waiver in *Nguyen*, but asserts a waiver based on the type of disclosure that the *Nguyen* court said was <u>not</u> a waiver—a description of the subject matter of the privileged communication such as that required to assert a valid claim of privilege. With respect to the types of communications constituting offensive use under *Nguyen*, the NYAG does not establish that Debtors failed to diligently object to questions seeking to invade the privilege or take every step to preserve Debtors' claim of privilege. Indeed, Debtors' diligence appears to be the basis for most of the NYAG's complaints.

---

[49] *Nguyen v. Excel Corp.*, 197 F.3d 200, 208 (5th Cir. 1999) (quoting *Indus. Clearinghouse, Inc. v. Browning Mfg. Div. of Emerson Elec. Co.*, 953 F.2d 1004, 1007 (5th Cir.1992) (quoting *United States v. El Paso Co.*, 682 F.2d 530, 538 (5th Cir.1982), *cert. denied*, 466 U.S. 944, 104 S.Ct. 1927, 80 L.Ed.2d 473 (1984))).

[50] *Nguyen*, 197 F.3d at 208.

The NYAG's reliance on *Moody* is also unavailing because the NYAG does not establish that Debtors are relying on advice of counsel at all, much less as the basis for a claim or defense.[51] Instead, the NYAG contends that Debtors are "attempting to argue that their executive had the Board's approval to file a Chapter 11 Bankruptcy for NRA based on an Executive Session of a Board Meeting and the Proposed Employment Agreement"[52] which is not advice of counsel, even if true, which it isn't. Debtors have not argued that authority to file under Chapter 11 arose by virtue of advice of counsel or privileged communications during Executive Session, as authority arose from the bylaws, resolutions passed by the Board approving the Employment Contract and formation of the Special Litigation Committee, which are not confidential communications, but operative facts. Indeed, Debtors have not raised authority to file as a claim or defense in connection with the motions to dismiss or appoint trustee at all, as Debtors do not bear the burden of proof. furthermore,

## C.     Claims of Privilege Regarding Executive Sessions in Judge Journey Deposition.

Though the NYAG does not clearly explain what relief it seeks for allegedly improper claims of privilege, much of the NYAG's brief is devoted to its allegations that Debtors' counsel "blocked" testimony regarding the Executive Sessions and the NRA's compliance review and 2019 Form 990. By "blocking," the NYAG refers to asserting privilege and instructing the witness not to disclose privileged communications. "Blocking" testimony by asserting privilege and instructing the witness not to disclose privileged communications is, of course, the proper method of preserving the privilege.

---

[51] *United States v. Moody*, 923 F.2d 341, 352–53 (5th Cir.1991).

[52] Motion, ¶ 74.

Most of the NYAG's allegations about "blocked" testimony are hyperbole unsupported by the record anyway. For example, Debtors' counsel did not contend that the Executive Sessions of the NRA Board are necessarily privileged, or that the mere presence of an attorney in the room renders all discussion privileged; rather, Debtors have consistently maintained that discussions for the purpose of obtaining legal advice are privileged.[53] That an entire discussion may be privileged when the discussion revolves around obtaining legal advice or deliberating a legal position is not a novel application of the privilege.

Debtors' counsel also did not "block" Judge Journey from testifying by instructing him "not to answer *any questions* about what was discussed during the Executive Session,"[54] as the NYAG contends. Counsel for both Debtors and Judge Journey instructed him not to reveal privileged information—communications with counsel and the NRA's legal strategy—and when their instructions diverged, Judge Journey followed the instruction of his own counsel.[55] Debtors' counsel did not object to questions calling for Judge Journey's knowledge of facts or his own opinions, and he freely testified absent a privilege instruction from his counsel:

> Q. As a board member of the NRA, do you believe that those -- that that sentence approved or authorized the filing of a bankruptcy by the NRA?
>
> MR. CICILIANO: I would just object, and to the extent that your belief is based on what has been told to you by the counsel of the NRA, I would direct you not to answer. To the extent you have an individual recollection, you may.
>
> MR. WATSON: Judge Journey, you can answer based on your -- based on your knowledge or observations.
>
> . . .

---

[53] *See, e.g.*, Journey Depo Tr., 157: 25–159:12.

[54] NYAG Motion, ¶ 7, p. 5.

[55] Journey Depo Tr., 16:12–17:11; 23:22–24:21; 25:22–27:5.

Q. (BY MR. PRONSKE) The question, Judge Journey, is that that sentence that I read from the employment contract, do you believe that those words authorized or approved a bankruptcy filing of the NRA?

A. You know, when I read that -- we reorganize the NRA all the time. We create committees, and we do all kinds of things that are not what would have been contemplated as what occurred. So, you know, I did not -- I'm a little mad at myself because I didn't make that link.[56]

Q. (BY MR. PRONSKE) So to be apparent and to be clear, your testimony is, am I correct, Judge Journey, that you did not make any correction -- any correlation in your mind between that sentence of the employment contract or any other sentence in the employment contract and the filing of a bankruptcy. Is that correct?

MR. CICILIANO: I would just to – I would just object. To the extent that that requires you to divulge what's in your mind with respect to what was informed to you by counsel of the NRA, I would direct you not to answer to that extent.

MR. WATSON: Judge, you can answer the question based upon what you know and your recollection.

THE WITNESS: Thank you.

A. You know, I just want to say "sustained" or "overruled." I don't know. But anyway, you know, there was -- there was no hint in my little feeble mind that anyone was contemplating bankruptcy.[57]

…

Q. Okay. Do you believe, Judge Journey, as a board member that only the full board of directors of the NRA can authorize a bankruptcy filing?

MR. WATSON: Objection, calls for legal conclusion. But you can answer, Judge.

MR. CICILIANO: Yeah, I would just object to the extent you've been informed by counsel one way or the other of the NRA; but to the extent you have a personal opinion, go ahead.

A. My personal review of the statutes and the case law tells me that the board has to authorize it.

---

[56] *Id.*, 28:2–12; 28:17–29:1.

[57] *Id.*, 29:13–30:7.

Q. (BY MR. PRONSKE) Okay. And do you think that the filing of bankruptcy can be delegated to the executive committee?

MR. WATSON: Same objection, calls for a legal conclusion.

MR. CICILIANO: Same. And to the extent that it's informed by counsel, don't answer that, but in your personal knowledge, go ahead.

A. I think it's possible that the board can delegate some authority under the bylaws. And whether that delegation occurred properly under the bylaws and whether that delegation was done knowingly, of course, is a question of fact somebody we all know is going to end up answering.[58]

During his nearly 4-hour deposition, Judge Journey testified about, among other things, the process for conducting an executive session during a Board meeting, the individuals present during the January 7, 2021 executive session, the availability of Mr. LaPierre's employment contract during the meeting, his own review of the contract, his understanding of the terms of the contract, his own vote to approve the contract, and the adoption of the resolution approving the contract.[59] While an occasional error in assessing privilege during a deposition deliberately designed to break privilege[60] may be inevitable, the wholesale assertion of privilege described by the NYAG simply did not occur.

## IV.
## CONCLUSION

The Motion is without merit, on both the facts and the law, because Debtors have not selectively disclosed privileged communications or explicitly relied upon the existence or absence of communications for which Debtors claim the privilege, but have consistently and diligently

---

[58] *Id.*, 33:22–34:23.

[59] *Id.*, 17:12–22:24; 27:23–30:16.

[60] *Id.*, 25:22–27:5 (asking whether the words "bankruptcy," "Chapter 11," "reorganization," "court," or "filing" were used, seeking privileged communications by process of elimination; *see also id.*, 157:18–158:12.

acted to preserve the privilege. The NYAG is not entitled to invade Debtors' privilege to support its own claims. It's also too late for any resolution or remedy that would not substantially prejudice the Debtors. With the hearing on the NYAG's and other motions beginning in a few days, the NYAG's decision to delay a discovery motion in the hopes of achieving a tactical advantage is fatal to the Motion.

Dated: March 30, 2021

Respectfully submitted,

/s/ Gabrielle A. Hamm
Patrick J. Neligan, Jr., SBN 14866000
Douglas J. Buncher, SBN 03342700
John D. Gaither, SBN 24055516
**NELIGAN, LLP**
325 North St. Paul, Suite 3600
Dallas, Texas 75201
Telephone: 214-840-5333
Facsimile: 214-840-5301
pneligan@dneliganlaw.com
dbuncher@neliganlaw.com
jgaither@neliganlaw.com

Gregory E. Garman
Nevada Bar No. 6654, admitted *pro hac vice*
William M. Noall
Nevada Bar No. 3549, admitted *pro hac vice*
Gabrielle A. Hamm, SBN 240401047
Dylan Ciciliano
Nevada Nar No. 12348, admitted *pro hac vice*
**GARMAN TURNER GORDON LLP**
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
T: 725-777-3000 / F: 725-777-3112
ggarman@gtg.legal
wnoall@gtg.legal
ghamm@gtg.legal
dciciliano@gtg.legal
*Counsel for Debtors*

Sarah B. Rogers, admitted *pro hac vice*
sbr@brewerattorneys.com
**BREWER, ATTORNEYS & COUNSELORS**
750 Lexington Avenue, Floor 14
New York, New York 10022
Telephone: (212) 489-1400
Facsimile: (212) 751-2849
*Proposed Special Litigation Counsel for Debtors*