# EXHIBIT E

CONFIDENTIAL PURSUANT TO PROPOSED PROTECTIVE ORDER

1              UNITED STATES DISTRICT COURT

2              NORTHERN DISTRICT OF TEXAS

3                  DALLAS DIVISION

4

5

     IN RE:                    )

6                              )

                               )

7    NATIONAL RIFLE            ) Case No.

     ASSOCIATION OF AMERICA    ) 21-30085-hdh-11

8    AND SEA GIRT, LLC,        )

                               )

9       Debtors.               )

10

11   ********************************************************

12        REMOTE ORAL AND VIDEOTAPED DEPOSITION OF

13             HONORABLE PHILLIP JOURNEY

14                 MARCH 18, 2021

15   CONFIDENTIAL PURSUANT TO PROPOSED PROTECTIVE ORDER

16   ********************************************************

17

18

19

20

21

22

23

24

25

                                        Page 1

CONFIDENTIAL PURSUANT TO PROPOSED PROTECTIVE ORDER

1        REMOTE ORAL AND VIDEOTAPED DEPOSITION OF HONORABLE

2   PHILLIP JOURNEY, produced as a witness at the instance

3   of the New York State Office of the Attorney General,

4   and duly sworn, was taken remotely in the above-styled

5   and numbered cause on the 18th day of March, 2021, from

6   4:10 p.m. to 7:57 p.m., via Zoom, before Julie C.

7   Brandt, RMR, CRR, and CSR in and for the State of Texas,

8   reported by machine shorthand, with the witness located

9   in Wichita, Kansas, pursuant to the Federal Rules of

10  Civil Procedure and the provisions stated on the record

11  or attached hereto.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page  2

CONFIDENTIAL PURSUANT TO PROPOSED PROTECTIVE ORDER

```
 1                      REMOTE APPEARANCES
 2
 3   FOR THE NEW YORK STATE OFFICE OF THE ATTORNEY GENERAL:
 4        Gerrit Pronske
          Eric Van Horn
 5        Jason Kathman
          SPENCER FANE LLP
 6        2200 Ross Avenue, Suite 4800 West
          Dallas, Texas 75201
 7        214.750.3610
          gpronske@spencerfane.com
 8
 9   FOR THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS:
10        Nick Hendrix
          Emma Persson
11        NORTON ROSE FULBRIGHT US LLP
          2200 Ross Avenue, Suite 3600
12        Dallas, Texas 75201
          214.855.8341
13        nick.hendrix@nortonrosefulbright.com
14
     FOR THE HONORABLE PHILLIP JOURNEY:
15
          Jermaine Watson
16        BONDS ELLIS EPPICH SCHAFER JONES LLP
          420 Throckmorton Street, Suite 1000
17        Fort Worth, Texas 76102
          817.529.2724
18        jermaine.watson@bondsellis.com
19
     FOR ACKERMAN MCQUEEN, INC.:
20
          Brian Mason
21        Joseph Acosta
          DORSEY & WHITNEY LLP
22        300 Crescent Court, Suite 400
          Dallas, Texas 75201
23        214.981.9929
          mason.brian@dorsey.com
24
25
                                                  Page  3
```

CONFIDENTIAL PURSUANT TO PROPOSED PROTECTIVE ORDER

```
 1    FOR THE NATIONAL RIFLE ASSOCIATION OF AMERICA:
 2         Dylan Ciciliano
           William Noall
 3         Talitha Gray Kozlowski
           GARMAN TURNER GORDON LLP
 4         7521 Amigo Street, Suite 210
           Las Vegas, Nevada 89119
 5         702.777.3000
           dciciliano@gtg.legal
 6
 7    FOR THE PEOPLE OF THE STATE OF NEW YORK:
 8         Lucas McNamara
           Monica Connell
 9         Yael Fuchs
           OFFICE OF THE ATTORNEY GENERAL OF THE
10             STATE OF NEW YORK
           28 Liberty Street, 18th Floor
11         New York, New York 10005
           212.416.8401
12         lucas.mcnamara@ag.ny.gov
13         Jonathan Conley
           NEW YORK STATE OFFICE OF THE ATTORNEY GENERAL
14         The Capitol
           Albany, New York 12224
15         212.416.8108
           jonathan.conley@ag.ny.gov
16
17    FOR THE OFFICE OF THE U.S. TRUSTEE:
18         Lisa L. Lambert
           Marc F. Salitore
19         UNITED STATES TRUSTEE PROGRAM
           1100 Commerce Street, Room 976
20         Dallas, Texas 75242
           214.767.8967
21         lisa.l.lambert@usdoj.gov
22
      FOR THE PROPOSED SPECIAL COUNSEL FOR DEBTORS:
23
           Svetlana M. Eisenberg
24         BREWER ATTORNEYS & COUNSELORS
           750 Lexington Avenue, 14th Floor
25         New York, New York 10022
```

                                          Page 4

CONFIDENTIAL PURSUANT TO PROPOSED PROTECTIVE ORDER

1      212.224.8817

       sme@brewerattorneys.com

2

3  ALSO PRESENT:

4      Jennifer Jones

5      Jeremy Economos

6      Dave Hamrick

7      Dave Webster

8      David Dell'Aquila

9

   VIDEOGRAPHER:

10

       Zack Mata - Veritext

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

                                    Page 5

CONFIDENTIAL PURSUANT TO PROPOSED PROTECTIVE ORDER

1                          INDEX

                                              PAGE
2

   Appearances...................................    3
3   Proceedings...................................    7
   Stipulations..................................    8
4

   HONORABLE PHILLIP JOURNEY
5        Examination by Mr. Pronske...............   10
         Examination by Mr. Mason.................   86
6        Examination by Mr. Ciciliano.............  100
         Further Examination by Mr. Pronske.......  148
7        Further Examination by Mr. Mason.........  165
8   Signature and Changes.........................  171
   Reporter's Certificate........................  173
9
10   DEPOSITION EXHIBITS                    IDENTIFIED
11   Exhibit 1        NRA Bylaws as Amended
                    September 14, 2019.............   37
12
   Exhibit 2        Employment Agreement of Wayne
13                    R. LaPierre...................   41
14
15
16
17
18
19
20
21
22
23
24
25

Veritext Legal Solutions
800-336-4000

CONFIDENTIAL PURSUANT TO PROPOSED PROTECTIVE ORDER

1   changes made for that version?

2       A.   I remember there were two bylaws events that

3   were voted on in the October 24th meeting.  I do not

4   recall the topics.  I do recall that I voted for both of

5   them.

6       Q.   Okay.  And now let's go to that board meeting,

7   and I want to ask you when the board broke up to have

8   the executive session relating to the Wayne LaPierre

9   employment contract, were you present in that executive

10  session?

11      A.   Yes.

12      Q.   And can you tell the Court, was the sole

13  purpose of that executive session to review and approve

14  the employment contract of Wayne LaPierre?

15              MR. WATSON:  Objection.  There may be a

16  privilege here, but I'll let the NRA assert that

17  privilege.

18              MR. CICILIANO:  Yeah, I would likewise

19  object to the extent that it calls for the disclosure of

20  attorney/client communications or work product.  I would

21  direct you not to answer on behalf of the NRA, but

22  generally --

23              MR. WATSON:  I'm sorry.  Are you done,

24  Dylan?

25              MR. CICILIANO:  Yes.

Veritext Legal Solutions
800-336-4000

CONFIDENTIAL PURSUANT TO PROPOSED PROTECTIVE ORDER

 1          MR. WATSON:  I am going to instruct you

 2    not to answer that, Judge --

 3          THE WITNESS:  Thank you.

 4          MR. WATSON:  -- on that basis.

 5     Q.   (BY MR. PRONSKE)  So Judge Journey, are you

 6    refusing to answer that question?

 7     A.   I'm sorry, what?

 8     Q.   Are you refusing to answer that question on

 9    your attorney's advice?

10     A.   I think I should rely on my counsel's advice,

11    yes.

12     Q.   Okay.  So were -- was -- when that committee

13    broke up -- broke into session, was the full board told

14    that this -- that there was going to be an executive

15    session?

16     A.   Generally, an executive session is moved by

17    one of the members of the board and then voted on

18    whether they should go into executive session.  So it's

19    not like anybody tells you except by making the motion.

20     Q.   Okay.  And that motion was made in the full

21    board session.  Is that right?

22     A.   Yes.

23     Q.   And the full board would have had all of the

24    board of directors and other individuals that would

25    have -- there would have been attorneys and then there

Page 17

CONFIDENTIAL PURSUANT TO PROPOSED PROTECTIVE ORDER

1  would have been other individuals there.  Is that

2  correct?

3      A.   Yes.  There were -- there's the board counsel,

4  Wit.  And then, of course, there's the general counsel,

5  the secretary.  They were both present, and I believe

6  Mr. Brewer was present also.  I know he came in and out

7  of the room a couple times.

8      Q.   Would there -- would that -- would the full

9  board session be a session that would be considered

10 privileged?

11          MR. CICILIANO:  Objection, calls for a

12 legal conclusion.

13     Q.   (BY MR. PRONSKE)  Or just the executive

14 session?

15          MR. WATSON:  I'm going to object.  It

16 does call for a legal conclusion.

17     Q.   (BY MR. PRONSKE)  You can answer, if you know.

18          MR. WATSON:  You can answer.  You can go

19 ahead and answer, Judge.

20     A.   Okay.  What was the question again?

21     Q.   (BY MR. PRONSKE)  The question is is it just

22 the executive sessions that are considered to be

23 privileged, or is the full board session also considered

24 privileged?

25     A.   I --

Page 18

CONFIDENTIAL PURSUANT TO PROPOSED PROTECTIVE ORDER

1        MR. WATSON:  I'm going to object.  Same

2    objection.

3            Before you answer, Judge, let me object.

4            THE WITNESS:  Okay.

5            MR. WATSON:  Calls for a legal

6    conclusion.

7            But you can answer.

8    A.    It's my understanding that the regular board

9    meeting is reflected in the minutes and, therefore, it's

10   not privileged because everybody has access to the

11   minutes.

12   Q.    (BY MR. PRONSKE)  Okay.

13   A.    So I believe the privilege extends to the

14   executive session.

15   Q.    Okay.  So then I'm going to go back to my

16   original question that was objected to, which is did the

17   full board -- was the full board aware that there was

18   going to be an executive session where the sole issue to

19   be reviewed would be the Wayne LaPierre employment

20   contract?

21           MR. WATSON:  Same objection, calls for

22   speculation.  He can't testify to what the other board

23   members knew.  He can only testify to what he observed

24   or his impression of what happened.

25           MR. CICILIANO:  And I would further

Page 19

1　object to the extent that it requires the judge to

2　actually opine as to what was discussed in a privileged

3　session in order to answer the question, as it

4　presupposes the privilege, the nature of the

5　communication.

6　　　　Q.　(BY MR. PRONSKE)　You can answer the question.

7　　　　A.　The board goes into executive session when a

8　member of the board makes a motion and it's seconded,

9　and then the board votes on that motion.　If the

10　board -- so someone would bring up the topic, and then

11　someone would say let's go into executive session, and

12　then the board votes, and they go into executive session

13　if it passes.　I mean, it's not like they say we're

14　going to do this at that time and we'll be here.

15　　　　Q.　Was the board aware that there was going to be

16　an executive session where the Wayne LaPierre employment

17　contract was going to be discussed and approved?

18　　　　　　　　MR. WATSON:　Objection, asked and

19　answered or --

20　　　　　　　　Could you restate the question, Gerrit?

21　　　　A.　I don't think there was any advance notice

22　like an agenda.　You know, you all have copies of the

23　agenda.　It doesn't say we're going into executive

24　session here.

25　　　　Q.　(BY MR. PRONSKE)　Okay.　Can you tell the

Page 20

CONFIDENTIAL PURSUANT TO PROPOSED PROTECTIVE ORDER

1  Court which attorneys were present in the executive

2  session to discuss the employment contract?

3          MR. CICILIANO:  I would just object on

4  the same point to the nature of the question and

5  presupposing what was discussed.

6          You can answer who was at the executive

7  session, what attorneys.

8      A.   I don't remember if Brewer was in the room

9  during that conversation, but I believe Mr. Frazer was.

10  He was there the entire time.  And I believe board

11  counsel was present.

12      Q.   (BY MR. PRONSKE)  Is that William Davis?

13      A.   Yes.

14      Q.   Okay.

15      A.   That's Wit.  That's all I know, Wit.  Yeah,

16  you're right, William Davis, okay.

17      Q.   And was Sara Rogers present?

18      A.   I'm not sure.

19      Q.   Were there any staff members present in that

20  executive session?

21          MR. CICILIANO:  Objection, vague.

22      A.   You presume I know everybody.  I don't know.

23      Q.   (BY MR. PRONSKE)  Okay.  During that executive

24  session, were the members that were sitting in that

25  session provided with a copy of Mr. LaPierre's

Page 21

CONFIDENTIAL PURSUANT TO PROPOSED PROTECTIVE ORDER

1    employment contract to be approved?

2        A.    They were not given a copy, no.  There were

3    two copies at two tables, and you had to sit there and

4    read it and turn it back in.

5        Q.    And did you go over and open that contract and

6    review it?

7        A.    Yes, I read it.

8        Q.    Was there a presentation made by someone with

9    respect to that contract?

10       A.    Mr. Cotton was the -- is the first vice

11   president of the NRA, and as President Meadows was not

12   at the board meeting, he ran the meeting.  So there was

13   another lawyer in the room, too, by the way.  You know,

14   you'll have to ask him what he said.

15       Q.    Okay.  And was Mr. LaPierre present in that

16   session?

17       A.    No.  No.

18       Q.    This morning --

19       A.    Mr. LaPierre came for about three minutes and

20   left and did not return to the board meeting.

21       Q.    Okay.  So he attended the full board meeting

22   or this executive session?

23       A.    He was not in either of the executive

24   sessions.

25       Q.    Okay.  So Mr. Frazer testified this morning he

Page 22

CONFIDENTIAL PURSUANT TO PROPOSED PROTECTIVE ORDER

1  was in that executive session.  Is he just incorrect on

2  that?

3               MR. WATSON:  Objection, assumes facts not

4  in evidence.  Judge Journey wasn't present this morning

5  at Mr. Frazer's deposition.

6       Q.   (BY MR. PRONSKE)  Let me rephrase that.

7            If Mr. Frazer said at a deposition this

8  morning that Mr. LaPierre was in that session, would he

9  be incorrect?

10      A.   My recollection is that the way the board

11 meeting runs is we all go in and we do the roll call and

12 then the officers give us their reports, like the EVP,

13 Mr. LaPierre.  And he came in, gave his report.  It was

14 very short.  And he left.  And I don't remember seeing

15 him enter the room again --

16      Q.   Okay.

17      A.   -- during the board meeting.

18           So you know, maybe Frazer -- but I'm looking

19 forward and Frazer is looking back.  So he may have

20 entered behind me and I had not seen it.  I don't know.

21 All I know is what I saw in front of me.

22      Q.   Was there a discussion in that session of

23 authority to file for bankruptcy?

24           MR. CICILIANO:  I would just object

25 pursuant to the attorney/client privilege and direct the

                                              Page 23

CONFIDENTIAL PURSUANT TO PROPOSED PROTECTIVE ORDER

1  witness not to answer.

2              MR. WATSON:  And I, too, am going to

3  direct you not to answer that, Judge Journey.

4              THE WITNESS:  Okay.

5      A.   Okay.  I can't tell you what they did say, but

6  I think I can tell you what they didn't say.  And nobody

7  during that --

8              MR. CICILIANO:  I would object -- I would

9  object, Judge, and direct you that what was said or was

10  not said is covered by the attorney/client privilege,

11  and I would direct you not to answer.  The NRA is not

12  waiving that privilege.

13             THE WITNESS:  Okay.

14     A.   Nobody said the word "bankruptcy."

15     Q.   (BY MR. PRONSKE)  Okay.  And did anyone say

16  the word -- and let me ask you this question.  As far as

17  not answering the question regarding a discussion about

18  authority to file bankruptcy, are you refusing to answer

19  that question?

20     A.   No.  You know, I think my motion speaks for

21  itself.

22     Q.   Okay.

23     A.   Doesn't it?

24             MR. CICILIANO:  Mr. Pronski, we ought to

25  be clear here that the privilege is not his to assert or

                                              Page 24

CONFIDENTIAL PURSUANT TO PROPOSED PROTECTIVE ORDER

1    to waive.  The privilege is for the NRA to assert and

2    waive.  And if you are going to insist on getting -- and

3    with respect to Mr. Journey, he may want to talk about

4    it.

5            But to the extent you're going to insist that

6    he break or attempt to break the privilege that's owned

7    by the NRA, I will have to shut the deposition down to

8    seek a protective order under Rule 3OG or 30D.

9            I don't intend to interfere with the rest of

10   his testimony.  So if that's your intent to do so, I say

11   we draw a box around this and move on to other subject

12   matters.

13           MR. PRONSKE:  Well, I think you're going

14   to have a hard time shutting the deposition down because

15   I'm insisting on something when all I've done,

16   Mr. Ciciliano, is ask questions, and I am going to

17   continue to ask questions, and I am going to ask him --

18   when he doesn't want to answer a question, I am going to

19   ask him if he refuses to answer the question.  If you

20   interpret that as insisting, then by all means file

21   whatever you need to file.

22       Q.   (BY MR. PRONSKE)  Judge Journey, can you tell

23   the Court, you've said that the word "bankruptcy" was

24   not used in that session.  Was the word "Chapter 11"

25   used in that session?

Page 25

CONFIDENTIAL PURSUANT TO PROPOSED PROTECTIVE ORDER

1            MR. CICILIANO:  I am going to object and

2    direct you not to answer pursuant to the attorney/client

3    privilege, and if you insist on answering, the

4    deposition will be terminated right now.

5        Q.   (BY MR. PRONSKE)  Are you refusing to answer

6    that question, Judge Journey?

7            MR. WATSON:  I am going to direct you not

8    to answer, Judge Journey.

9            THE WITNESS:  Okay.  Okay.  All right, I

10   will follow your lead, Mr. Watson.

11       Q.   (BY MR. PRONSKE)  Was the word

12   "reorganization" used in that executive session?

13           MR. CICILIANO:  I will once again object

14   and direct the witness not to answer pursuant to the

15   attorney/client privilege.

16           MR. WATSON:  I will direct you not to

17   answer, Judge Journey.

18           THE WITNESS:  Thank you.

19       Q.   (BY MR. PRONSKE)  Are you refusing to answer,

20   Judge Journey?

21       A.   I reluctantly am, yeah.

22       Q.   Was the word -- were either the word "court"

23   or the word "filing" used in that executive session?

24           MR. CICILIANO:  I will once again object

25   pursuant to the attorney/client privilege and direct the

                                              Page 26

CONFIDENTIAL PURSUANT TO PROPOSED PROTECTIVE ORDER

1    judge not to answer.

2              MR. WATSON:  Judge, don't answer the

3    question.  I'm instructing you not to answer.

4              THE WITNESS:  Okay.

5    A.    I'm sorry, I have to say no, I can't answer.

6    Q.    (BY MR. PRONSKE)  Judge Journey, as you -- as

7    you know, the LaPierre employment agreement says -- that

8    was approved says that Wayne LaPierre is empowered,

9    quote, to reorganize or restructure the affairs of the

10   association for purposes of cost minimization,

11   regulatory compliance or otherwise, closed quote.  Are

12   you aware of that language?

13   A.    Yes.

14   Q.    Was there any discussion during the executive

15   committee session whatsoever regarding that sentence of

16   the agreement?

17             MR. CICILIANO:  I am going to object

18   pursuant to the attorney/client privilege and direct the

19   judge not to answer.

20             MR. WATSON:  Yeah, Judge, don't -- I'm

21   going to instruct you not to answer that question.

22             THE WITNESS:  All right.  That's fine.

23   Q.    (BY MR. PRONSKE)  Your testimony, I believe,

24   Judge Journey, is that you did read the entire agreement

25   before it was approved?

                                          Page 27

CONFIDENTIAL PURSUANT TO PROPOSED PROTECTIVE ORDER

1    A.    That's correct.

2    Q.    As a board member of the NRA, do you believe

3  that those -- that that sentence approved or authorized

4  the filing of a bankruptcy by the NRA?

5              MR. CICILIANO:  I would just object, and

6  to the extent that your belief is based on what has been

7  told to you by the counsel of the NRA, I would direct

8  you not to answer.  To the extent you have an individual

9  recollection, you may.

10             MR. WATSON:  Judge Journey, you can

11 answer based on your -- based on your knowledge or

12 observations.

13             THE WITNESS:  Okay.

14   A.    So what was the question again?  You guys, I'm

15 having too much fun watching y'all.  I'm sorry, I'm

16 distracted, okay.

17   Q.    (BY MR. PRONSKE)  The question, Judge Journey,

18 is that that sentence that I read from the employment

19 contract, do you believe that those words authorized or

20 approved a bankruptcy filing of the NRA?

21   A.    You know, when I read that -- we reorganize

22 the NRA all the time.  We create committees, and we do

23 all kinds of things that are not what would have been

24 contemplated as what occurred.  So, you know, I did

25 not -- I'm a little mad at myself because I didn't make

Veritext Legal Solutions
800-336-4000

CONFIDENTIAL PURSUANT TO PROPOSED PROTECTIVE ORDER

1  that link.

2      Q.   You didn't make that connection.  There was

3  certainly no discussion of bankruptcy that would have

4  allowed you to make that connection.  Is that right?

5              MR. CICILIANO:  I am going to object

6  pursuant to the attorney/client privilege and direct the

7  witness not to answer what occurred in the executive

8  session.

9              MR. WATSON:  Yes, Judge, don't -- don't

10  answer the question.

11      A.   Yeah, I don't have to answer that one.  That's

12  self-apparent.

13      Q.   (BY MR. PRONSKE)  So to be apparent and to be

14  clear, your testimony is, am I correct, Judge Journey,

15  that you did not make any correction -- any correlation

16  in your mind between that sentence of the employment

17  contract or any other sentence in the employment

18  contract and the filing of a bankruptcy.  Is that

19  correct?

20              MR. CICILIANO:  I would just to -- I

21  would just object.  To the extent that that requires you

22  to divulge what's in your mind with respect to what was

23  informed to you by counsel of the NRA, I would direct

24  you not to answer to that extent.

25              MR. WATSON:  Judge, you can answer the

Veritext Legal Solutions
800-336-4000

CONFIDENTIAL PURSUANT TO PROPOSED PROTECTIVE ORDER

1  question based upon what you know and your recollection.

2          THE WITNESS:  Thank you.

3      A.  You know, I just want to say "sustained" or

4  "overruled."  I don't know.

5          But anyway, you know, there was -- there was

6  no hint in my little feeble mind that anyone was

7  contemplating bankruptcy.

8      Q.  (BY MR. PRONSKE)  All right.  And was the

9  resolution to approve the employment contract ultimately

10  adopted by the executive session?

11     A.  It was adopted, and then it was reflected in

12  the minutes when we came out.

13     Q.  And was that adoption unanimous?

14     A.  I -- I know I voted for it, but I'm not sure.

15  I suppose so.  I don't remember anybody sticking

16  their -- else sticking their head out of the trench.

17     Q.  Right.

18          Do you -- have you had any discussions with

19  board members about the bankruptcy filing after it was

20  filed?

21     A.  Sure.

22     Q.  How many would you say you've spoken with?

23     A.  (Laughter.)  I talk to a lot of people.  I

24  mean, you know, I called the US Trustee for Kansas, who

25  just retired who is a really good friend of mine.  I

Veritext Legal Solutions
800-336-4000

CONFIDENTIAL PURSUANT TO PROPOSED PROTECTIVE ORDER

1   talked to him.  I talked to lots of people after the

2   filing of the bankruptcy, sure.

3       Q.   So can you -- let's drill down on that

4   conversation with the US Trustee.  Can you tell me about

5   that conversation?

6       A.   He is a really good friend, been my friend for

7   over 30 years, Ed Nazar.  He just retired as the trustee

8   for the district of Kansas.  And I talked to him about

9   the bankruptcy.  And he was so kind.  He sent me

10  mountains of research, and I learned all about

11  Chapter 11 in about four days.

12      Q.   Did you have any discussion with that United

13  States trustee about any concerns that you had that that

14  bankruptcy was not authorized in the board meeting?

15      A.   Yes.

16              MR. WATSON:  Objection.

17              THE WITNESS:  Sorry.

18              MR. WATSON:  Objection.  It calls for

19  speculation, and it calls for a legal conclusion based

20  upon -- to the extent it calls for a legal conclusion, I

21  am instructing him not to answer, but he can answer

22  generally as to what his understanding is of how

23  bankruptcy works.

24      Q.   (BY MR. PRONSKE)  Actually, that's not the

25  question.  The question is what was discussed with the

                                        Page 31

CONFIDENTIAL PURSUANT TO PROPOSED PROTECTIVE ORDER

 1   US Trustee as far as the authorization issue?

 2       A.   That -- that was one of the questions, was how

 3   corporations authorize the filing of a bankruptcy.

 4       Q.   What was the substance of that conversation

 5   regarding authorization?

 6       A.   Oh, my gosh.  That was so long ago.  That was

 7   like on January 16, you know.  We had -- we had many

 8   conversations over the next three days, because I would

 9   seek clarification and he would send me more research.

10   I thought he was going to send me his Colyers and just

11   get it over with, you know.

12       Q.   Did you tell that -- did you tell that US

13   Trustee during any of those conversations that you

14   believed that the filing of the bankruptcy by the NRA

15   was not authorized?

16                MR. WATSON:  Objection, calls for a legal

17   conclusion.

18                You can answer.

19       A.   That was my impression, yes, and that was what

20   I related to Mr. Nazar.

21       Q.   (BY MR. PRONSKE)  And did you tell the United

22   States Trustee during those conversations that the

23   filing of bankruptcy was not discussed in the board

24   meetings?

25                MR. CICILIANO:  I would just object here.

                                              Page 32

CONFIDENTIAL PURSUANT TO PROPOSED PROTECTIVE ORDER

1    First of all, I think you're mischaracterizing.  He

2    wasn't the US Trustee.

3              But second of all, to the extent that you did

4    disclose anything covered by the attorney/client

5    privilege, I would direct you not to disclose it again.

6    That's not a waiver.  You don't have the ability to

7    waive it.

8              THE WITNESS:  Thank you.  One thing I

9    would like to clarify --

10             MR. WATSON:  I instruct you not to answer

11   the question, Judge.

12             THE WITNESS:  I just want to make sure

13   they say the retired trustee, because he's retired and

14   playing with his grandkids in Kansas City, and that's

15   where I found him, you know.  He -- he retired like six

16   months ago or something like that.  He had been a

17   trustee for 30 years ago.

18        Q.   (BY MR. PRONSKE)  So are you refusing to

19   answer that question under advice of counsel?

20        A.   I think we could go there for that, for this

21   one right now, yeah.

22        Q.   Okay.  Do you believe, Judge Journey, as a

23   board member that only the full board of directors of

24   the NRA can authorize a bankruptcy filing?

25             MR. WATSON:  Objection, calls for legal

Page 33

CONFIDENTIAL PURSUANT TO PROPOSED PROTECTIVE ORDER

1    you say "those topics," what exactly are you --

2        A.   The topics of the executive sessions.

Mr. Cotton was chairing the meeting.

4        Q.   Was there anybody giving a presentation at

5    that executive session other than Mr. Cotton?

6                MR. CICILIANO:  Objection to form.

7        A.   I'm not certain.  I am not certain on that.

8        Q.   (BY MR. PRONSKE)  And was Mr. Cotton -- I

9    understand Mr. Cotton is an attorney, but was he in his

10   capacity as attorney in that meeting?  And if so, who

11   was he representing?

12       A.   No, he was not acting as counsel.  He was

13   acting as first vice president and chairing the meeting

14   because the president wasn't there, as I explained

15   before.

16       Q.   Okay.  And what did he say during that

17   presentation?

18       A.   That is what happened in executive session

19   and --

20                MR. CICILIANO:  Yeah, I would object

21   pursuant to attorney/client privilege and instruct you

22   not to answer.

23                MR. WATSON:  Okay.  Yeah, I am going to

24   instruct you not to answer.

25                MR. PRONSKE:  It's not a conversation

                                        Page 157

1    between an attorney who is acting in the capacity as an

2    attorney and clients.  Are you saying it's just because

3    of the presence of attorneys in that room?

4              MR. CICILIANO:  No, Gerrit.  I'm saying

5    because we have a declaration, as you well know, board

6    counsel who actually explains that they were all

7    discussing attorney/client privilege.  So you may want

8    to beat around it and try to snip out portions.  It's

9    not going to happen.  I am directing him not to answer,

10   as is his counsel.

11             MR. PRONSKE:  Who is the attorney that

12   you say was involved in that attorney/client discussion,

13   Mr. Ciciliano?

14             MR. CICILIANO:  I believe the declaration

15   says William Davis, as well as counsel from Brewer.

16             MR. PRONSKE:  And so just because an

17   attorney was present in the room, all discussions in

18   that executive session were privileged?

19             MR. CICILIANO:  No.  But if you actually

20   look at the declaration, what they say is that every

21   discussion they had in there was regarding legal advice.

22   So in that instance, yes.

23             MR. PRONSKE:  So you're saying that

24   everything that happened in the executive session

25   regarding Wayne LaPierre's employment contract on

                                              Page 158

CONFIDENTIAL PURSUANT TO PROPOSED PROTECTIVE ORDER

1    January 7th was privileged.  Is that right?

2                    MR. CICILIANO:  For this one, for what

3    I'm seeing, absolutely.

4                    MR. PRONSKE:  Okay.

5        Q.   (BY MR. PRONSKE)  And Judge Journey, are you

6    refusing to answer the question based on Mr. Ciciliano's

7    advice?

8                    MR. WATSON:  Well, it's my advice.  I am

9    instructing him not to answer.

10       Q.   (BY MR. PRONSKE)  Okay.  Are you refusing to

11   answer the question based on advice of counsel?

12       A.   I am going to defer to counsel, yes.

13       Q.   When you said -- when you testified that

14   bankruptcy is not the disease but it's a symptom of the

15   disease, what is the disease?

16       A.   I think the disease and its symptoms are

17   described in great detail in the New York Attorney

18   General and the Washington, D.C. Attorney General's

19   petitions.  There are other things that I've read in

20   other cases that gave me pause also and concern.

21       Q.   When you testified that there have been,

22   quote, so many resignations from the board, why do you

23   believe there have been so many resignations from the

24   board?

25       A.   Well, it's part of the process to make the

Veritext Legal Solutions
800-336-4000

Federal Rules of Civil Procedure

Rule 30

(e) Review By the Witness; Changes.

(1) Review; Statement of Changes. On request by the deponent or a party before the deposition is completed, the deponent must be allowed 30 days after being notified by the officer that the transcript or recording is available in which:

(A) to review the transcript or recording; and

(B) if there are changes in form or substance, to sign a statement listing the changes and the reasons for making them.

(2) Changes Indicated in the Officer's Certificate. The officer must note in the certificate prescribed by Rule 30(f)(1) whether a review was requested and, if so, must attach any changes the deponent makes during the 30-day period.

DISCLAIMER: THE FOREGOING FEDERAL PROCEDURE RULES ARE PROVIDED FOR INFORMATIONAL PURPOSES ONLY. THE ABOVE RULES ARE CURRENT AS OF APRIL 1, 2019. PLEASE REFER TO THE APPLICABLE FEDERAL RULES OF CIVIL PROCEDURE FOR UP-TO-DATE INFORMATION.

# VERITEXT LEGAL SOLUTIONS
## COMPANY CERTIFICATE AND DISCLOSURE STATEMENT

Veritext Legal Solutions represents that the foregoing transcript is a true, correct and complete transcript of the colloquies, questions and answers as submitted by the court reporter. Veritext Legal Solutions further represents that the attached exhibits, if any, are true, correct and complete documents as submitted by the court reporter and/or attorneys in relation to this deposition and that the documents were processed in accordance with our litigation support and production standards.

Veritext Legal Solutions is committed to maintaining the confidentiality of client and witness information, in accordance with the regulations promulgated under the Health Insurance Portability and Accountability Act (HIPAA), as amended with respect to protected health information and the Gramm-Leach-Bliley Act, as amended, with respect to Personally Identifiable Information (PII). Physical transcripts and exhibits are managed under strict facility and personnel access controls. Electronic files of documents are stored in encrypted form and are transmitted in an encrypted fashion to authenticated parties who are permitted to access the material. Our data is hosted in a Tier 4 SSAE 16 certified facility.

Veritext Legal Solutions complies with all federal and State regulations with respect to the provision of court reporting services, and maintains its neutrality and independence regardless of relationship or the financial outcome of any litigation. Veritext requires adherence to the foregoing professional and ethical standards from all of its subcontractors in their independent contractor agreements.

Inquiries about Veritext Legal Solutions' confidentiality and security policies and practices should be directed to Veritext's Client Services Associates indicated on the cover of this document or at www.veritext.com.