Ken Paxton
  *Attorney General of Texas*
Brent Webster
  Appearing under L.B.R. 2090-1(f)
  *First Assistant Attorney General*
Grant Dorfman
  *Deputy First Assistant Attorney General*
James Lloyd
  Texas Bar No. 24078873
  Appearing under L.B.R. 2090-1(f)
  *Special Counsel to the*
  *First Assistant Attorney General*
OFFICE OF THE ATTORNEY GENERAL
  OF THE STATE OF TEXAS
P.O. Box 12548
Austin, Texas 78711-2548
(512)936-1414
James.Lloyd@oag.texas.gov

*Counsel for Amicus Curiae*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

|  |  |  |
|---|---|---|
| | § | |
| | § | |
| *In re:* | § | Chapter 11 |
| | § | |
| NATIONAL RIFLE ASSOCIATION | § | Case No. 21-30085-HDH-11 |
| OF AMERICA; AND SEA GIRT LLC, | § | |
| | § | |
| *Debtors*[1] | § | Jointly Administered |
| | § | |
| | § | |
| | § | |

### BRIEF OF THE STATE OF TEXAS AS *AMICUS CURIAE* IN SUPPORT OF DEBTORS;
### AND IN OPPOSITION TO THE STATE OF NEW YORK'S MOTION TO DISMISS,
### OR IN THE ALTERNATIVE TO APPOINT A CHAPTER 11 TRUSTEE

---

[1] The last four digits of the Debtors' taxpayer identification numbers are: 6130 (NRA) and 5681 (Sea Girt). The Debtors' mailing address is 11250 Waples Mill Road, Fairfax, Virginia 22030.

TABLE OF CONTENTS

Table of Contents……………………………………………………………...………………i

Table of Authorities……………………………………………………….………………ii

Interest of Amicus Curiae…………………………………………………………………1

Introduction…………………………..…………………………………………………..1

Argument…………………………………………………………………………………2

    I.     State regulation of nonprofit organizations implicates core First Amendment rights and must be viewpoint neutral………………………….…………………..…2

    II.    The chapter 11 cases should not be dismissed, and the NRA should be afforded its right to reorganize under the Bankruptcy Code…………………………….……..5

    III.   The New York Attorney General must produce "clear and convincing evidence" to justify the "extraordinary" and "draconian" remedy of appointing a chapter 11 trustee to replace the debtors-in-possession……………….………………….......8

    IV.   Texas respects the NRA's right to exist….………………………...…………..10

Conclusion…………………………………………………………………………………11

Certificate of Service……………………………………………………………….…12

### TABLE OF AUTHORITIES

## Cases

*Illinois, ex rel. Madigan v. Telemarketing Associates, Inc.*,
    538 U.S. 600 (2003)…………………………………………………….…….…….3

*In re Advanced Contracting Solutions, LLC*,
    582 B.R. 285 (Bankr. S.D.N.Y. 2018)……………….…………………….……….……7

*In re Bay Area Citizens Against Lawsuit Abuse*,
    982 S.W.2d 371 (Tex. 1998)…………………………….…………………...….…………3

*In re Bayou Group, LLC*,
    564 F.3d 541 (2d Cir. 2009)……………………………………………….….…………8

*In re Capitol Food Corp. of Fields Corner*,
    490 F.3d 21 (1st Cir. 2007)…………………………………….………….……..……..6, 7

*In re Continental Airlines Corp.*,
    43 B.R. 127 (Bankr. S.D. Tex. 1984)………………………………………….….…..……7

*In re FiberTower Network Services Corp.*,
    482 B.R. 169 (Bankr. N.D. Tex. 2012)………………………………………….……......6

*In re Little Creek Dev. Co.*,
    779 F.2d 1068 (5th Cir. 1986)……………………………………..………...…………....5

*In re Mirant Corp.*,
    No. 03-46590, 2005 WL 2148362 (Bankr. N.D. Tex. Jan. 26, 2005)……...……….……..5

*In re Patman Drilling International, Inc.*,
    2008 WL 724086 (Bankr. N.D. Tex. Mar. 14, 2008)……………….…….…….……….8

*In re SGL Carbon Corp.*,
    200 F.3d 154 (3d Cir. 1999)……………………………………….......…..……………5, 6

*NLRB v. Bildisco and Bildisco*,
    465 U.S. 513 (1984)…………………………..……………………………...….………7

*Matter of Cajun Electric Power Cooperative, Inc*.,
    69 F.3d 746 (5th Cir. 1995)………………………………………..……………...…..8

**Statutes**

U.S. Const. Amend. I……………………….…………………………………...…………………1

U.S. Const. Amend. II………….…..………………………………………………….…………1

11 U.S.C. § 363(d)(1)…………………………………………………..……………7

Tex. Const. Art. I, § 8…………..……………………………………………………...1

Tex. Const. Art. I, §23…………………………………………………..…………...1

Tex. Const. Art. I, § 27……………………………………………………………………1

Tex. Bus. Orgs. Code § 12.151…………………………………….………...…….....2

Tex. Bus. Orgs. Code § 12.156…………………………………..…………………….2

**Other Authorities**

David Cole, *The NRA Has a Right to Exist*, WALL ST. J. (Aug. 26, 2020)………………………..4

Noah Feldman, *New York's Attorney General Shouldn't Dismantle the NRA*, BLOOMBERG (Opinion, Aug. 6, 2020)....................................................................................................4

iii

### IDENTITY AND INTEREST OF AMICUS CURIAE

*Amicus* is the State of Texas. The State has an interest in protecting the constitutional rights of its citizens. The fundamental rights of freedom of speech and association and the right to bear arms are squarely implicated in the matters before this Court. Approximately 400,000 Texans are among the five million members of the National Rifle Association. Through this association, these members exercise their freedom to defend their rights under the Second Amendment. Texas has a significant interest in defending the rights of these individuals, as well as the right to exist for one of the Nation's oldest civil rights organizations.

Texas Attorney General Ken Paxton, on behalf of the State of Texas, respectfully submits this brief as *amicus curiae* under Fed. R. Bankr. P. 8017 in support of Debtors, and in debtors and debtors-in-possession, and in opposition to *The State of New York's Motion to Dismiss, or, In the Alternative, to Appoint Chapter 11 Trustee* [ECF No. 155].[2]

### INTRODUCTION

The Texas Constitution enshrines two of the same core rights found in the United States Constitution: the right to speak, assemble, and associate freely, and the right to keep and bear arms. U.S. Const. amend. I and II; Tex. Const. art. I, §§ 8, 23, and 27. The preservation of these rights is central to Texas law. So too is the fair and consistent enforcement of the law. Each of these important interests would be assured should the NRA be permitted to reorganize in the State of Texas. For these reasons and based on the legal merits of the arguments at bar, the Court should deny the motions and allow the NRA's reorganization to proceed in Texas.

---

[2] *Amicus* also opposes other motions that seek the same relief as New York's motion. *See Ackerman McQueen, Inc.'s Motion to Dismiss the Chapter 11 Bankruptcy Petition, or, in the Alternative, Motion for the Appointment of a Chapter 11 Trustee, and Brief in Support* [ECF No. 131]; *The District of Columbia's Motion in Support of the State of New York's Motion to Appoint Chapter 11 Trustee* [ECF No. 214].

Texas recognizes the 150-year-old NRA as one of the Nation's oldest civil rights organizations and principal defender of Second Amendment rights, representing some five million members.  The NRA's long-standing ties with Texas and its values are reflected in the fact that approximately 400,000 dues-paying NRA members reside in Texas—more than in any other State.  The State of New York seeks to dissolve the Association and confiscate its assets to the detriment of hundreds of thousands of Texans and millions of law-abiding gun owners.  This Court can, and should, permit the NRA to relocate to a state that respects its right to exist.  Texas is amply equipped to oversee the NRA's compliance with nonprofit and consumer protection laws, and the State intends to do just that.

The NRA has the right to reorganize under the Bankruptcy Code and, facing what it perceives to be existential threats posed by political antagonism in the State of New York and by other simultaneous litigation, the Association has stated its intention to make Texas its new home.  Texas therefore has a meaningful stake in the outcome of this bankruptcy proceeding, and in the Debtors' successful reorganization.  For the reasons set forth below, Texas respectfully submits that Movants' motions to dismiss the Debtors' bankruptcy petitions, or in the alternative, to appoint a bankruptcy trustee, should be denied.

## ARGUMENT

## I.    State regulation of nonprofit organizations implicates core First Amendment rights and must be viewpoint neutral.

The Texas Attorney General is empowered to regulate organizations registered in the State of Texas, to represent the public interest, and to act to protect that interest.  Tex. Bus. Orgs. Code §§ 12.151–12.156.  The NRA, like any corporation or nonprofit in Texas, is subject to robust consumer protection oversight.  The Office of the Attorney General rigorously investigates and initiates legal actions against companies and nonprofits that target consumers with unlawful,

deceptive, or misleading actions. *See* Tex. Bus. & Com. Code §§ 17.41–63. The Agency also investigates and initiates legal action against charitable organizations and their managerial officials to ensure that donations are lawfully solicited and that assets held by the charitable organization are properly managed, invested, and expended. Texas is therefore well positioned to regulate the activities of the NRA.

Given these powers, the Texas Attorney General recognizes that an action to dissolve a nonprofit organization must be lodged judiciously, and with respect for the First Amendment, through the application of viewpoint neutrality principles. While it is well established that the First Amendment does not shield fraud committed by nonprofit organizations, the First Amendment does "protect[] the right to engage in charitable solicitation." *Illinois, ex rel. Madigan v. Telemarketing Associates, Inc.*, 538 U.S. 600, 611-12, 123 S.Ct. 1829, 1836 (2003) (citing *Schaumburg v. Citizens for a Better Environment*, 444 U.S. 620, 632, 100 S.Ct. 826 (1980) ("[C]haritable appeals for funds . . . involve a variety of speech interests—communication of information, the dissemination and propagation of views and ideas, and the advocacy of causes— that are within the protection of the First Amendment.")). Indeed, it is a bedrock Constitutional principle that "[f]reedom of association for the purpose of advancing ideas and airing grievances is a fundamental liberty guaranteed by the First Amendment." *In re Bay Area Citizens Against Lawsuit Abuse*, 982 S.W.2d 371, 375-76 (Tex. 1998) (citing *National Ass'n for Advancement of Colored People v. State of Alabama*, 357 U.S. 449, 460-61, 78 S.Ct. 1163, 1171 (1958) ("[W]hether the beliefs sought to be advanced by association pertain to political, economic, religious or cultural matters . . . state action which may have the effect of curtailing the freedom to associate is subject to the closest scrutiny.").

The ACLU,[3] constitutional scholars,[4] and sixteen states (including Texas)[5] have sounded the alarm that the ongoing effort by New York State to dissolve the NRA violates these principles and appears to represent retaliation for the NRA's political speech. Even if all the allegations set forth by the New York Attorney General in her New York dissolution lawsuit are taken as true, dissolution of an organization based on such facts would be a troubling, extraordinary remedy. Indeed, even if, as alleged, certain executives engaged in improper related-party transactions or received excess benefits, a responsible regulator would seek to resolve those issues—not seek to permanently destroy the ability of NRA members (none of whom are implicated in the alleged misconduct) to associate under their century-old banner in furtherance of their constitutional rights.

The NRA has sought protection under the Bankruptcy Code to achieve that which is being denied in New York—a chance to reorganize and restructure its operations, and continue its existence and mission for the benefit of its creditors, employees, and members, rather than be dissolved, have its assets expropriated, and its members' constitutional right to free association

---

[3] *See* David Cole, *The NRA Has a Right to Exist*, WALL ST. J. (Aug. 26, 2020), https://www.wsj.com/ articles/thenra-has-a-right-to-exist-11598457143 ("The American Civil Liberties Union rarely finds itself on the same side as the National Rifle Association in policy debates or political disputes. Still, we are disturbed by New York Attorney General Letitia James's recent effort to dissolve the NRA . . . You may have your own opinions about the NRA, but all Americans should be concerned about this sort of overreach . . . The right to associate can't survive if officials can shut down organizations with which they disagree.").

[4] Noah Feldman, *New York's Attorney General Shouldn't Dismantle the NRA*, BLOOMBERG (Opinion, Aug. 6, 2020), https://www.bloomberg.com/opinion/articles/2020-08-06/new-york-s-attorney-general-shouldn-t-dismantle-nra-in-lawsuit ("[E]ven liberals who oppose the NRA's mission should take a deep breath and ask: Do we really want an elected attorney general to try to destroy a prominent nongovernmental organization that is arrayed on the other side of the political spectrum from her? . . . [B]y seeking to dissolve the NRA, the New York attorney general is knowingly creating a narrative that is potentially costly to the rule of law, that may create terrible precedents for other states and that potentially implicates the First Amendment.").

[5] *See NRA v. James*, Civ. No. 1:20-cv-00889-MAD-TWD (Dkt. No. 25) (Brief of States of Arkansas, Alaska, Georgia, Idaho, Mississippi, Oklahoma, Kansas, Kentucky, Louisiana, Missouri, Ohio, South Carolina, South Dakota, Texas, Utah and West Virginia as Amici Curiae in Support of Plaintiff and in Opposition to Dismissal) ("The New York AG's actions threaten the civil rights of five million members, including citizens of the *Amici* states."); *see also* Brief of the States of Arkansas, Alabama, Alaska, Georgia, Idaho, Kentucky, Louisiana, Mississippi, Missouri, Montana, Ohio, Oklahoma, South Carolina, South Dakota, Utah, and West Virginia as *Amici Curiae* in Support of Debtors; and in Opposition to the State of New York's Motion to Dismiss, or in the Alternative to Appoint a Chapter 11 Trustee, filed in this case as ECF No. 445.

undermined. The State of Texas will ensure that the reorganized NRA is lawfully governed, while also preserving and protecting the constitutional rights of NRA members.

## II. The chapter 11 cases should not be dismissed, and the NRA should be afforded its right to reorganize under the Bankruptcy Code.

Bankruptcy "is an equitable remedy," whereby a debtor is given the opportunity "to facilitate rehabilitation or reorganization of his finances and to promote a 'fresh start' through the orderly disposition of assets to satisfy his creditors." *In re Little Creek Dev. Co.*, 779 F.2d 1068, 1071 (5th Cir. 1986). The Court of Appeals in *In re Little Creek Dev. Co.* established the standard for dismissal of chapter 11 cases for bad faith. A bankruptcy court will determine whether a debtor's "overriding motive is to delay creditors without benefiting them in any way or to achieve reprehensible purposes." *Id*. at 1072. Determining whether the debtor's filing is in good faith "depends largely upon the bankruptcy court's on-the-spot evaluation of the debtor's financial condition, motives, and the local financial realities." *Id*. "Resort to the protection of the bankruptcy laws is not proper [when] there is no going concern to preserve, there are no employees to protect, and there is no hope of rehabilitation, except according to the debtor's 'terminal euphoria.'" *Id*. at 1073. As explained by the Fifth Circuit, typical of bad faith filings are, for example, where a one-asset entity has been created on the eve of foreclosure to isolate the insolvent property and its creditors. *Id*. Such cases must "rise to the level of egregiousness necessary to conclude that the reorganization process is being perverted." *Id*. It is the party seeking dismissal that bears the initial burden to "present a prima facie case alleging bad faith; once achieved, the burden shifts to the debtor to prove that the petition was filed in good faith." *In re Mirant Corp.*, No. 03-46590, 2005 WL 2148362, at *7 n.20 (Bankr. N.D. Tex. Jan. 26, 2005).

Furthermore, corporations may "seek the protections of bankruptcy when faced with pending litigation that pose[s] a serious threat to the companies' long-term viability," and need not

wait to "file a valid Chapter 11 petition until after a massive judgment has been entered against it." *Official Comm. of Unsecured Creditors v. Nucor Corp.* (In re SGL Carbon Corp.), 200 F.3d 154, 164 (3d Cir. 1999); *see also In re Capitol Food Corp. of Fields Corner*, 490 F.3d 21, 25 (1st Cir. 2007) ("A debtor need not be insolvent before filing a bankruptcy petition . . . . Catastrophic business events, such as an imminent or threatened foreclosure on the debtor's interests . . . are precisely the sort of imminent financial distress for which debtors routinely seek chapter 11 protection"). The court in *In re SGL Carbon Corp.* observed that while a bankruptcy filing "merely to obtain tactical litigation advantages" is not legitimate, a company with a "rehabilitative purpose" should be permitted to reorganize. 200 F.3d at 166. Indeed, the court recognized that chapter 11 protection is appropriate when litigation would result in putting a debtor "out of business," when it causes a "harmful distraction" to a debtor's management, and causes "harm to its customer relationships." *Id*. at 167. *See also In re FiberTower Network Services Corp.*, 482 B.R. 169, 185 n.33 (Bankr. N.D. Tex. 2012) (citing *In re SGL Carbon Corp.*, and finding that "it is clear that Debtors filed bankruptcy for the legitimate purpose of restructuring their debt, not as a mere litigation tactic").

In this case, the New York Attorney General contends that rehabilitating the NRA would be futile, and seeks to deny it the means to do so. The New York Attorney General would prefer instead to dissolve the NRA, permanently, with no recourse for it to have a "fresh start" and reorganize its affairs as it is entitled to do under our bankruptcy laws

The NRA's motives in this bankruptcy are therefore not tactical, but existential. The NRA has sought protection under chapter 11 to propose a comprehensive plan of reorganization that would resolve the outstanding claims against it in a neutral forum, pursue internal governance reform, provide equitable treatment for its estate, its creditors, and vendors, and protect its

hundreds of employees and its millions of dues-paying members, including the 400,000 residing here in Texas. Absent these protections afforded by the Bankruptcy Code, the alternative is that the NRA may well cease as a going concern. Its creditors, vendors, and employees will be left behind. Its dues-paying members, in many cases lifetime members, will be harmed and deprived of an irreplaceable voice that represents them in advocating for their rights under the Second Amendment. That is precisely the outcome the Bankruptcy Code intends to prevent. *See NLRB v. Bildisco and Bildisco*, 465 U.S. 513, 528, 104 S.Ct. 1188, 1197 (1984) ("The fundamental purpose of reorganization is to prevent a debtor from going into liquidation, with an attendant loss of jobs and possible misuse of economic resources."); *see also In re Continental Airlines Corp.*, 43 B.R. 127, 129 (Bankr. S.D. Tex. 1984) (citing *Bildisco*, noting the court's "strong adherence" to this fundamental principle underlying the Bankruptcy Code, and determining to find "the common ground necessary to reach an accommodation and balancing" between the bankruptcy laws and the labor laws implicated in that case); *In Re Capitol Food Corp. of Fields Corner*, 490 F.3d at 25 ("Two primary purposes of chapter 11 relief are the preservation of businesses as going concerns, and the maximization of the assets recoverable to satisfy unsecured claims . . . . If the reorganization succeeds . . . everyone wins: the debtor, creditors, employees, and shareholders.").

Moreover, this Court is a proper forum to hear and adjudicate any claims related to the Debtors' assets. Section 363(d)(1) of the Bankruptcy Code requires a bankruptcy court to apply state nonprofit law when approving a transfer or distribution of a nonprofit debtor's assets. 11 U.S.C. § 363(d)(1); *In re Advanced Contracting Solutions, LLC*, 582 B.R. 285, 298 (Bankr. S.D.N.Y. 2018) ("[A] bankruptcy court has exclusive jurisdiction over the estate and the disposition of its assets. So while a transfer must comply with the substantive requirements of state law—in his case New York's not-for-profit law . . . Section 363 permits that any

determination that would be made by a non-bankruptcy court in the absence of a bankruptcy case, is made by the bankruptcy court to the extent that it implicates the ability to sell a debtor's assets."). Accordingly, any claim to the NRA's assets, whether made by the New York Attorney General in the form of forced dissolution, or otherwise, should be adjudicated by this Court.

III.    **The New York Attorney General must produce "clear and convincing evidence" to justify the "extraordinary" and "draconian" remedy of appointing a chapter 11 trustee to replace the debtors-in-possession.**

The appointment of a chapter 11 trustee to replace the Debtors as debtors-in-possession is an "extraordinary" and "draconian" remedy, the need for which must be established by the moving party with "clear and convincing evidence." *Matter of Cajun Electric Power Cooperative, Inc*., 69 F.3d 746, 749 (5th Cir. 1995), *withdrawn in part on rehearing*, 74 F.3d 599 (5th Cir. 1999); *In re Patman Drilling Int'l, Inc.*, Case No. 07-34622-SGJ, 2008 WL 724086, *6 (Bankr. N.D. Tex. Mar. 14, 2008) ("Appointment of a chapter 11 trustee is a draconian remedy. A strong presumption exists that a chapter 11 debtor should be permitted to remain in possession."). Pursuant to 11 U.S.C. § 1104(a), a chapter 11 trustee may be appointed: (1) for cause, including fraud, dishonesty, incompetence, or gross mismanagement of the affairs of the debtor by current management, either before or after commencement of the case; (2) if such appointment is in the interests of creditors, any equity security holders, and other interests of the estate; or (3) if grounds exist to convert or dismiss under section 1112, but the appointment of a trustee instead is in the best interests of creditors and the estate. *In re Patman Drilling International, Inc.*, 2008 WL 724086 at *6. Importantly, the focus is on the debtor's current activities, not past misconduct. *See, e.g.*, *In re Bayou Group, LLC*, 564 F.3d 541, 547, n.3 (2d Cir. 2009) (pre-petition activity of prior management should not be "impute[d]" to the debtor's current management "when considering whether to appoint a trustee for cause").

8

The drastic step of appointing a trustee to replace the Debtors as debtors-in-possession is not warranted here. Significantly, the Official Committee of Unsecured Creditors (the "Committee") opposes the appointment of a chapter 11 trustee, stating: "[C]onsistent with the especially high burden on the Moving Parties for establishing the appointment of a Chapter 11 trustee, the Committee believes that the risk of future management misconduct is far outweighed by the increased costs, delay and other associated risks that would come along with the appointment of a Chapter 11 a trustee."[6]

Further, as explained by the Debtors, and echoed by the Committee, these chapter 11 cases are unique. The introduction of an unknown individual as trustee, who may harbor strong disagreement with the NRA's constitutional and political positions, could well be detrimental to its mission and would undoubtedly slow down the Debtors' re-emergence from bankruptcy as the trustee deals with the pressures and complexities of leading the NRA during a time of transition. This would harm not only the Debtors' estates by potentially paralyzing the Debtors' reorganization, but it would also harm the NRA's members who would be deprived of leadership they know to be devoted to the NRA's core advocacy mission. The Committee recognizes this imperative: "the Committee is apprehensive to support the wholesale displacement of management by a Chapter 11 trustee, particularly at such an early stage of these cases and given the unique nature of the NRA . . . from a practical standpoint, it is difficult for the Committee to envision a

---

[6] *See* The Official Committee of Unsecured Creditors' Omnibus Response to (I) Ackerman McQueen, Inc.' Motion to Dismiss the Chapter 11 Bankruptcy Petition, or, in the Alternative, Motion for the Appointment of a Chapter 11 Trustee, and Brief in Support; (II) The State of New York's Motion to Dismiss, or, in the Alternative, to Appoint a Chapter 11 Trustee and (III) The District of Columbia's Motion in Support in the State of New York's Motion to Appoint Chapter 11 Trustee, dated March 16, 2021 [ECF No. 368] at ¶ 57.

Chapter 11 trustee successfully displacing management given the complex and unique nature of the NRA and the regulatory challenges facing the organization."[7]

IV.     **Texas respects the NRA's right to exist.**

The NRA has publicly declared its intention to emerge from chapter 11 as a nonprofit entity domiciled in the State of Texas.  Texas is home to more NRA members than any other state.  At least 400,000 Texans are NRA members, many of whom are proud, lifetime members and are continuing a legacy passed on from prior generations.  They, and many other citizens, have a vested interest in the successful reorganization of the NRA, and its future success in Texas.

In addition, just as the NRA has stated it is attracted to Texas's inviting business climate and booming economy, so too does the State welcome the opportunities presented by a potential move by the NRA to Texas.  The Bankruptcy Court has granted the NRA's application to retain a real estate advisor to assist it in locating and renting office space in Texas.  [ECF 115, 278].  The NRA has advised the Court that certain executives are relocating to Texas and will use this office space in connection with the NRA establishing a principal place of business in Texas.  [ECF 115].  The NRA may also purchase property in connection with an anticipated relocation of the NRA's corporate headquarters.  *Id*.  With its approximately 500 employees, such a move may promise increased economic growth in North Texas.  Moreover, the NRA has announced plans to host its 2021 annual meeting in Houston.  The last in-person annual meeting of the NRA in 2019 in Indianapolis attracted approximately 80,000 attendees, proving a boon to the local economy.  The prospect of this, and other future meetings and conventions in the years to come, will further benefit the citizens and businesses of Texas.

---

[7] *Id.* at ¶ 56.

Accordingly, the State of Texas respectfully requests that the NRA be permitted to reorganize its operations under the Bankruptcy Code and the auspices of this Court so that it may reemerge as a strong going concern in Texas.

## CONCLUSION

For the foregoing reasons, the State of Texas, as *amicus*, respectfully requests that Movants' motions to dismiss these chapter 11 cases, or in the alternative, to appoint a trustee pursuant to 11 U.S.C. § 1104(a), be denied.

Respectfully submitted,

Ken Paxton
 *Attorney General of Texas*
Brent Webster
 Appearing under L.B.R. 2090-1(f)
 *First Assistant Attorney General*
Grant Dorfman
 Appearing under L.B.R. 2090-1(f)
 *Deputy First Assistant Attorney General*

*/s/ James R. Lloyd*
James Lloyd
 Texas Bar No. 24078873
 Appearing under L.B.R. 2090-1(f)
 *Special Counsel to the*
 *First Assistant Attorney General*

OFFICE OF THE ATTORNEY GENERAL
 OF THE STATE OF TEXAS
P.O. Box 12548
Austin, Texas 78711-2548
(512)936-1414
James.Lloyd@oag.texas.gov

### CERTIFICATE OF SERVICE

I hereby certify that on April 2, 2021, a true and correct copy of the foregoing document was served upon all parties entitled to notice via the Court's electronic transmission facilities.

*/s/ James R. Lloyd*
James R. Lloyd