G. Michael Gruber
State Bar No. 08555400
gruber.mike@dorsey.com
H. Joseph Acosta
State Bar No. 24006731
acosta.joseph@dorsey.com
Brian E. Mason
State Bar No. 24079906
mason.brian@dorsey.com
**DORSEY &WHITNEY LLP**
300 Crescent Court, Suite 400
Dallas, TX 75201
Tel.: (214) 981-9900
Fax: (214) 981-9901

**Attorneys for Ackerman
McQueen, Inc.**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| IN RE: | § | **CHAPTER 11** |
| | § | |
| **NATIONAL RIFLE ASSOCIATION** | § | **Case No. 21-30085-sgj-11** |
| **OF AMERICA and SEA GIRT LLC** | § | |
| | § | |
| **DEBTORS.** | § | **JOINTLY ADMINISTERED** |

**APPENDIX IN SUPPORT OF ACKERMAN MCQUEEN, INC.'S OMNIBUS REPLY TO
RESPONSES OF THE DEBTORS, OFFICIAL COMMITTEE OF UNSECURED
CREDITORS AND PHILLIP JOURNEY TO ACKERMAN MCQUEEN, INC.'S
MOTION TO DISMISS THE CHAPTER 11 BANKRUPTCY PETITION, OR, IN THE
ALTERNATIVE, MOTION FOR THE APPOINTMENT OF A CHAPTER 11 TRUSTEE**

Ackerman McQueen, Inc. offers the following evidence in support of *Omnibus Reply to*

(I) Omnibus Opposition to (1) Ackerman McQueen, Inc.'s Motion to Dismiss the Chapter 11

Bankruptcy Petition, or, in the Alternative, Motion for the Appointment of a Chapter 11 Trustee,

(2) the State of New York's Motion to Dismiss or, in the Alternative, to appoint Chapter 11

Trustee, and (3) the District of Columbia's Motion to Appoint Chapter 11 Trustee (the "Debtor's

Response") [ECF 307]; (II) The Official Committee of Unsecured Creditors' Omnibus Response

to (i) Ackerman McQueen, Inc.'s Motion to Dismiss the Chapter 11 Bankruptcy Petition, or, in

the Alternative, Motion for the Appointment of a Chapter 11 Trustee, (ii) the State of New York's

Motion to Dismiss or, in the Alternative, to appoint Chapter 11 Trustee (the "UCC Response")

[ECF 368]; and (III) the Limited Objection to the Motions to Dismiss or the Appointment of

Trustee (the "Journey Response") [ECF 306]:

| EX | DESCRIPTION |
|---|---|
| 1. | 2018 990 Filing |
| 2. | 2019 990 Filing |
| 3. | NRA Board Minutes (Jan. 7, 2021) |
| 4. | Mar. 22, 2019 letter from Col. North |
| 5. | *(Intentionally left blank)* |
| 6. | Excerpts from the Deposition of Wayne LaPierre Dep., Vol. 2 (Mar. 23, 2021) |
| 7. | Wayne LaPierre Employment Agreement |
| 8. | Excerpts from the Deposition of Hon. Phillip Journey Dep. (Mar. 18, 2021) |
| 9. | Excerpts from the Deposition of John Frazer Dep., Vol. 2 (Mar. 18, 2021) |
| 10. | Resolution Authorizing Chapter 11 Reorganization and Related Retention of Counsel |
| 11. | Excerpts from Hearing Transcript 341 Meeting (Mar. 5, 2021) |
| 12. | Excerpts from the Deposition of Wayne LaPierre, Vol. 1 (Mar. 22, 2021) |
| 13. | Bankruptcy Resolution (Mar. 28, 2021) |
| 14. | *(Intentionally left blank)* |
| 15. | Will Van Sant & Daniel Nass, *The NRA Exodus: Who Left the Organization During a Year of Upheaval* |
| 16. | *(Intentionally left blank)* |
| 17. | LaPierre Letter to NRA Members and Supporters, NRAFORWARD.ORG (Jan. 15, 2021) |
| 18. | Announcement from Wayne LaPierre (Jan. 15, 2021) |
| 19. | NRA list of news statements, NRAFORWARD.ORG (Jan. 15, 2021) |

| 20. | Paul J. Weber and Michael R. Sisak, *NRA declares bankruptcy, plans to incorporate in Texas*, AP News (Jan. 15, 2021) |
| 21. | Excerpts from the Deposition of Sonya Rowling (Mar. 19, 2021) |
| 22. | *(Intentionally left blank)* |
| 23. | Funds Transfer Authorization |
| 24. | Excerpts from Hearing Transcript of 341 Meeting of Creditors (Jan. 22, 2021) |
| 25. | Excerpts from the Deposition of Charles Cotton (Feb. 7, 2020) |
| 26. | Duane Liptak Resignation Letter (Jan. 19, 2021) |
| 27. | Sea Girt Certificate of Formation |
| 28. | Excerpts from Hearing Transcript (Jan. 20, 2021) |
| 29. | *(Intentionally left blank)* |
| 30. | *(Intentionally left blank)* |
| 31. | NRA Bylaws (Oct. 20, 2020) |
| 32. | Excerpts from the Deposition of William Winkler |
| 33. | Excerpts from the Deposition of Anthony Makris |
| 34. | Excerpts from the Deposition of Charles Cotton (Mar. 28, 2021) |

Dated: April 2, 2021                    Respectfully submitted,


                                        /s/ G. Michael Gruber
                                        **G. Michael Gruber, Esq.**
                                        Texas Bar No. 08555400
                                        gruber.mike@dorsey.com
                                        **Brian E. Mason, Esq.**
                                        Texas Bar No. 24079906
                                        mason.brian@dorsey.com
                                        H. Joseph Acosta
                                        State Bar No. 24006731
                                        acosta.joseph@dorsey.com

                                        **DORSEY & WHITNEY LLP**
                                        300 Crescent Court, Suite 400
                                        Dallas, Texas 75201
                                        (214) 981-9900 Phone
                                        (214) 981-9901 Facsimile

                                        **ATTORNEYS FOR ACKERMAN
                                        McQUEEN, INC.**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing document has been served upon all parties by and through the Court's CM/ECF system on April 2, 2021.

                                        /s/ G. Michael Gruber
                                        G. Michael Gruber

# EXHIBIT 1



Group Check ID    G201911190000026

AMc DEPOSITION
EXHIBIT
14

# CHAR500

NYS Annual Filing for Charitable Organizations
www.CharitiesNYS.com

Send with fee and attachments to:
NYS Office of the Attorney General
Charities Bureau Registration Section
28 Liberty Street
New York, NY 10005

## 2018
Open to Public
Inspection

## 1  General Information

For Fiscal Year Beginning (mm/dd/yyyy) `0 1 / 0 1 / 2018` and Ending (mm/dd/yyyy) `1 2 / 3 1 / 2 0 1 8`

Check if Applicable:
- [ ] Address Change
- [ ] Name Change
- [ ] Initial Filing
- [ ] Final Filing
- [ ] Amended Filing
- [ ] Reg ID Pending

Name of Organization:
**National Rifle Association of America**

Mailing Address:
**11250 Waples Mill Road,**

City / State / Zip:
**Fairfax, VA 22030**

Website:
**www.nra.org**

Employer Identification Number (EIN):
`5 3 0 1 1 6 1 3 0`

NY Registration Number:
`0 2 - 2 1 - 6 4`

Telephone:
**703-267-1250**

Email:
**GCOUNSEL@NRAHQ.ORG**

Check your organization's registration category:
- [ ] 7A only
- [ ] EPTL only
- [x] DUAL (7A & EPTL)
- [ ] EXEMPT*

Confirm your Registration Category in the Charities Registry at www.CharitiesNYS.com.

## 2  Certification

See Instructions for certification requirements. Improper certification is a violation of law that may be subject to penalties. The certification requires two signatories.

We certify under penalties of perjury that we reviewed this report, including all attachments, and to the best of our knowledge and belief, they are true, correct and complete in accordance with the laws of the State of New York applicable to this report.

*Treasurer*

President or Authorized Officer:   Signature   Craig B. Spray   Print Name and Title *Treasurer*   Date 11/13/19

*Secretary*

Chief Financial Officer or Treasurer:   Signature   John C. Frazer, C.F.O., *Secretary*   Print Name and Title   Date 11/13/19

## 3  Annual Reporting Exemption

Check the exemption(s) that apply to your filing. If your organization is claiming an exemption under one category (7A or EPTL only filers) or both categories (DUAL filers) that apply to your registration, complete only parts 1, 2, and 3, and submit the certified Char500. No fee, schedules, or additional attachments are required. If you cannot claim an exemption or are a DUAL filer that claims only one exemption, you must file applicable schedules and attachments and pay applicable fees.

- [ ] **3a. 7A filing exemption:** Total contributions from NY State including residents, foundations, government agencies, etc. did not exceed $25,000 and the organization did not engage a professional fund raiser (PFR) or fund raising counsel (FRC) to solicit contributions during the fiscal year.

- [ ] **3b. EPTL filing exemption:** Gross receipts did not exceed $25,000 and the market value of assets did not exceed $25,000 at any time during the fiscal year.

## 4. Schedules and Attachments

See the following page for a checklist of schedules and attachments to complete your filing.

- [x] Yes [ ] No   **4a.** Did your organization use a professional fund raiser, fund raising counsel or commercial co-venturer for fund raising activity in NY State? If yes, complete Schedule 4a.

- [ ] Yes [x] No   **4b.** Did the organization receive government grants? If yes, complete Schedule 4b.

## 5  Fee

See the checklist on the next page to calculate your fee(s). Indicate fee(s) you are submitting here:

7A filing fee:
**$ 25**

EPTL filing fee:
**$ 750**

Total fee:
**$ 775**

Make a single check or money order payable to:
**"Department of Law"**

CHAR500 Annual Filing for Charitable Organizations (Updated January 2019)
*The "Exempt" category refers to an organization's NYS registration status. It does not refer to its IRS tax designation.

Page 1

# CHAR500
**Annual Filing Checklist**

Simply submit the certified CHAR500 with no fee, schedule, or additional attachments IF:
- Your organization is registered as 7A only and you marked the 7A filing exemption in Part 3.
- Your organization is registered as EPTL only and you marked the EPTL filing exemption in Part 3.
- Your organization is registered as DUAL and you marked both the 7A and EPTL filing exemption in Part 3.

## Checklist of Schedules and Attachments

Check the schedules you must submit with your CHAR500 as described in Part 4:

- [x] If you answered "yes" in Part 4a, submit Schedule 4a: Professional Fund Raisers (PFR), Fund Raising Counsel (FRC), Commercial Co-Venturers (CCV)
- [ ] If you answered "yes" in Part 4b, submit Schedule 4b: Government Grants

Check the financial attachments you must submit with your CHAR500:

- [x] IRS Form 990, 990-EZ, or 990-PF, and 990-T if applicable
- [x] All additional IRS Form 990 Schedules, including Schedule B (Schedule of Contributors). Schedule B of public charities is exempt from disclosure and will not be available for public review.
- [ ] Our organization was eligible for and filed an IRS 990-N e-postcard. Our revenue exceeded $25,000 and/or our assets exceeded $25,000 in the filing year. We have included an IRS Form 990-EZ for state purposes only.

If you are a 7A only or DUAL filer, submit the applicable Independent Certified Public Accountant's Review or Audit Report:

- [ ] Review Report if you received total revenue and support greater than $250,000 and up to $750,000.
- [x] Audit Report if you received total revenue and support greater than $750,000
- [ ] No Review Report or Audit Report is required because total revenue and support is less than $250,000
- [ ] We are a DUAL filer and checked box 3a, no Review Report or Audit Report is required

## Calculate Your Fee

For 7A and DUAL filers, calculate the 7A fee:

- [ ] $0, if you checked the 7A exemption in Part 3a
- [ ] $25, if you did not check the 7A exemption in Part 3a

For EPTL and DUAL filers, calculate the EPTL fee:

- [ ] $0, if you checked the EPTL exemption in Part 3b
- [ ] $25, if the NET WORTH is less than $50,000
- [ ] $50, if the NET WORTH is $50,000 or more but less than $250,000
- [ ] $100, if the NET WORTH is $250,000 or more but less than $1,000,000
- [ ] $250, if the NET WORTH is $1,000,000 or more but less than $10,000,000
- [ ] $750, if the NET WORTH is $10,000,000 or more but less than $50,000,000
- [ ] $1500, if the NET WORTH is $50,000,000 or more

## Send Your Filing

Send your CHAR500, all schedules and attachments, and total fee to:

NYS Office of the Attorney General
Charities Bureau Registration Section
28 Liberty Street
New York, NY 10005

*Need Assistance?*
Visit:   www.CharitiesNYS.com
Call:    (212) 416-8401
Email:  Charities.Bureau@ag.ny.gov

### Is my Registration Category 7A, EPTL, DUAL or EXEMPT?
Organizations are assigned a Registration Category upon registration with the NY Charities Bureau:

**7A** filers are registered to solicit contributions in New York under Article 7-A of the Executive Law ("7A")

**EPTL** filers are registered under the Estates, Powers & Trusts Law ("EPTL") because they hold assets and/or conduct activites for charitable purposes in NY.

**DUAL** filers are registered under both 7A and EPTL.

**EXEMPT** filers have registered with the NY Charities Bureau and meet conditions in **Schedule E - Registration Exemption for Charitable Organizations**. These organizations are not required to file annual financial reports but may do so voluntarily.

Confirm your Registration Category and learn more about NY law at www.CharitiesNYS.com.

### Where do I find my organization's NET WORTH?
NET WORTH for fee purposes is calculated on:
- IRS From 990 Part I, line 22
- IRS Form 990 EZ Part I line 21
- IRS Form 990 PF, calculate the difference between Total Assets at Fair Market Value (Part II, line 16(c)) and Total Liabilities (Part II, line 23(b)).

# CHAR500

Schedule 4a: Professional Fund Raisers, Fund Raising Counsels, Commercial Co-Venturers
www.CharitiesNYS.com

## 2018
### Open to Public Inspection

If you checked the box in question 4a in Part 4 on the CHAR500 Annual Filing for Charitable Organizations, complete this schedule for EACH Professional Fund Raiser (PFR), Fund Raising Counsel (FRC) or Commercial Co-Venturer (CCV) that the organization engaged for fund raising activity in NY State. The PFR or FRC should provide its NY Registration Number to you. Include this schedule with your certified CHAR500 NYS Annual Filing for Charitable Organizations and use additional pages if necessary.

## Definitions

A **Professional Fund Raiser (PFR)**, in addition to other activities, conducts solicitation of contributions and/or handles the donations (Article 7A, 171-a.4).
A **Fund Raising Counsel (FRC)** does not solicit or handle contributions but limits activities to advising or assisting a charitable organization to perform such functions for itself (Article 7A, 171-a.9).
A **Commercial Co-Venturer (CCV)** is an individual or for-profit company that is regularly and primarily engaged in trade or commerce other than raising funds for a charitable organization and who advertises that the purchase or use of goods, services, entertainment or any other thing of value will benefit a charitable organization (Article 7A, 171-a.6).
**Professional fund raising** does not include activities by an organization's development staff, volunteers, or a grantwriter who has been hired solely to draft applications for funding from a government agency or tax exempt organization.

## 1. Organization Information

| Name of Organization: **National Rifle Association of America** | NY Registration Number: **0 2 - 2 1 - 6 4** |
|---|---|

## 2. Professional Fund Raiser, Fund Raising Counsel, Commercial Co-Venturer Information

Fund Raising Professional type:

☐ Professional Fund Raiser
☒ Fund Raising Counsel
☐ Commercial Co-Venturer

| Name of FRP: **501c Solutions LLC** | NY Registration Number: **4 5 - 5 3 - 0 3** |
|---|---|
| Mailing Address: **2530 Meridian Parkway, suite 300** | Telephone: **(9 1 9) 8 0 6 - 4 7 5 8** |
| City / State / Zip: **Research Triangle, NC 27713** | |

## 3. Contract Information

| Contract Start Date: **1/1/2019** | Contract End Date: **12/31/2019** |
|---|---|

## 4. Description of Services

Services provided by FRP:

**Provides counsel and planning of events and programs as well as strategy development and research.**

## 5. Description of Compensation

| Compensation arrangement with FRP: **Compensation by flat fee and/or net costs reimbursement.** | Amount Paid to FRP: **616,000** |
|---|---|

## 6. Commercial Co-Venturer (CCV) Report

☐ Yes ☐ No    If services were provided by a CCV, did the CCV provide the charitable organization with the interim or closing report(s) required by Section 173(a) part 3 of the Executive Law Article 7A?

# CHAR500

**Schedule 4a: Professional Fund Raisers, Fund Raising Counsels, Commercial Co-Venturers**
www.CharitiesNYS.com

## 2018
Open to Public Inspection

If you checked the box in question 4a in Part 4 on the CHAR500 Annual Filing for Charitable Organizations, complete this schedule for EACH Professional Fund Raiser (PFR), Fund Raising Counsel (FRC) or Commercial Co-Venturer (CCV) that the organization engaged for fund raising activity in NY State. The PFR or FRC should provide its NY Registration Number to you. Include this schedule with your certified CHAR500 NYS Annual Filing for Charitable Organizations and use additional pages if necessary.

## Definitions

A **Professional Fund Raiser (PFR)**, in addition to other activities, conducts solicitation of contributions and/or handles the donations (Article 7A, 171-a.4).
A **Fund Raising Counsel (FRC)** does not solicit or handle contributions but limits activities to advising or assisting a charitable organization to perform such functions for itself (Article 7A, 171-a.9).
A **Commercial Co-Venturer (CCV)** is an individual or for-profit company that is regularly and primarily engaged in trade or commerce other than raising funds for a charitable organization and who advertises that the purchase or use of goods, services, entertainment or any other thing of value will benefit a charitable organization (Article 7A, 171-a.6).
**Professional fund raising** does not include activities by an organization's development staff, volunteers, or a grantwriter who has been hired solely to draft applications for funding from a government agency or tax exempt organization.

## 1. Organization Information

| Name of Organization: National Rifle Association of America | NY Registration Number: 0 2 - 2 1 - 6 4 |
|---|---|

## 2. Professional Fund Raiser, Fund Raising Counsel, Commercial Co-Venturer Information

| Fund Raising Professional type: | Name of FRP: InfoCision Management Corp. | NY Registration Number: 3 2 - 5 7 - 0 9 |
|---|---|---|
| ☒ Professional Fund Raiser<br>☐ Fund Raising Counsel<br>☐ Commercial Co-Venturer | Mailing Address: 325 Springside Drive | Telephone: (3 3 0) 6 6 8 - 1 4 0 0 |
| | City / State / Zip: Akron, OH 44333 | |

## 3. Contract Information

| Contract Start Date: 8/1/2011 | Contract End Date: 6/30/2020 |
|---|---|

## 4. Description of Services

Services provided by FRP:

**To plan, prepare, manage, and conduct a nationally directed outbound telemarketing development campaign to active, lapsed, or potential members/donors.**

## 5. Description of Compensation

| Compensation arrangement with FRP: **per call basis** | Amount Paid to FRP: **4,840,658** |
|---|---|

## 6. Commercial Co-Venturer (CCV) Report

| ☐ Yes ☐ No | If services were provided by a CCV, did the CCV provide the charitable organization with the interim or closing report(s) required by Section 173(a) part 3 of the Executive Law Article 7A? |
|---|---|

# CHAR500

**Schedule 4a: Professional Fund Raisers, Fund Raising Counsels, Commercial Co-Venturers**
www.CharitiesNYS.com

**2018**
Open to Public
Inspection

If you checked the box in question 4a in Part 4 on the CHAR500 Annual Filing for Charitable Organizations, complete this schedule for EACH Professional Fund Raiser (PFR), Fund Raising Counsel (FRC) or Commercial Co-Venturer (CCV) that the organization engaged for fund raising activity in NY State. The PFR or FRC should provide its NY Registration Number to you. Include this schedule with your certified CHAR500 NYS Annual Filing for Charitable Organizations and use additional pages if necessary.

## Definitions

A **Professional Fund Raiser (PFR)**, in addition to other activities, conducts solicitation of contributions and/or handles the donations (Article 7A, 171-a.4).
A **Fund Raising Counsel (FRC)** does not solicit or handle contributions but limits activities to advising or assisting a charitable organization to perform such functions for itself (Article 7A, 171-a.9).
A **Commercial Co-Venturer (CCV)** is an individual or a for-profit company that is regularly and primarily engaged in trade or commerce other than raising funds for a charitable organization and who advertises that the purchase or use of goods, services, entertainment or any other thing of value will benefit a charitable organization (Article 7A, 171-a.6).
**Professional fund raising** does not include activities by an organization's development staff, volunteers, or a grantwriter who has been hired solely to draft applications for funding from a government agency or tax exempt organization.

## 1. Organization Information

Name of Organization: **National Rifle Association of America**

NY Registration Number:

**0 2 - 2 1 - 6 4**

## 2. Professional Fund Raiser, Fund Raising Counsel, Commercial Co-Venturer Information

Fund Raising Professional type:

☐ Professional Fund Raiser
☒ Fund Raising Counsel
☐ Commercial Co-Venturer

Name of FRP:
**Allegiance Creative Group**

Mailing Address:
**11250 Waples Mill Road**

City / State / Zip:
**Fairfax, VA 22030**

NY Registration Number:

**4 2 - 9 7 - 0 6**

Telephone:

**( 7 0 3 ) 2 6 7 - 1 0 0 0**

## 3. Contract Information

Contract Start Date:
**12/1/2011**

Contract End Date:
**12/1/2021**

## 4. Description of Services

Services provided by FRP:
**Provides counsel and promotion planning for marketing and direct response mail and phone programs.**

## 5. Description of Compensation

Compensation arrangement with FRP:
**Compensation by management commission fee and/or net costs.**

Amount Paid to FRP:

**1,070,000**

## 6. Commercial Co-Venturer (CCV) Report

☐ Yes ☐ No  If services were provided by a CCV, did the CCV provide the charitable organization with the interim or closing report(s) required by Section 173(a) part 3 of the Executive Law Article 7A?

# CHAR500

**Schedule 4a: Professional Fund Raisers, Fund Raising Counsels, Commercial Co-Venturers**
www.CharitiesNYS.com

| 2018 |
|---|
| Open to Public Inspection |

If you checked the box in question 4a in Part 4 on the CHAR500 Annual Filing for Charitable Organizations, complete this schedule for EACH Professional Fund Raiser (PFR), Fund Raising Counsel (FRC) or Commercial Co-Venturer (CCV) that the organization engaged for fund raising activity in NY State. The PFR or FRC should provide its NY Registration Number to you. Include this schedule with your certified CHAR500 NYS Annual Filing for Charitable Organizations and use additional pages if necessary.

## Definitions

A **Professional Fund Raiser (PFR)**, in addition to other activities, conducts solicitation of contributions and/or handles the donations (Article 7A, 171-a.4).
A **Fund Raising Counsel (FRC)** does not solicit or handle contributions but limits activities to advising or assisting a charitable organization to perform such functions for itself (Article 7A, 171-a.9).
A **Commercial Co-Venturer (CCV)** is an individual or for-profit company that is regularly and primarily engaged in trade or commerce other than raising funds for a charitable organization and who advertises that the purchase or use of goods, services, entertainment or any other thing of value will benefit a charitable organization (Article 7A, 171-a.6).
**Professional fund raising** does not include activities by an organization's development staff, volunteers, or a grantwriter who has been hired solely to draft applications for funding from a government agency or tax exempt organization.

## 1. Organization Information

Name of Organization: **National Rifle Association of America**

NY Registration Number: **0 2 - 2 1 - 6 4**

## 2. Professional Fund Raiser, Fund Raising Counsel, Commercial Co-Venturer Information

Fund Raising Professional type:

☐ Professional Fund Raiser
☒ Fund Raising Counsel
☐ Commercial Co-Venturer

Name of FRP: **McKenna & Associates, LLC**

Mailing Address: **1220 N. Fillmore Street, Suite 300**

City / State / Zip: **Arlington, VA 22201**

NY Registration Number: **4 2 - 7 7 - 5 4**

Telephone: **( 5 7 1 ) 3 1 2 - 1 4 6 5**

## 3. Contract Information

Contract Start Date: **1/1/2019**

Contract End Date: **12/31/2019**

## 4. Description of Services

Services provided by FRP:

**Provides consulting services in the area of general gift cultivation and major donor development.**

## 5. Description of Compensation

Compensation arrangement with FRP:

**Compensation by flat fee and/or net costs reimbursement.**

Amount Paid to FRP: **$300,000**

## 6. Commercial Co-Venturer (CCV) Report

☐ Yes ☐ No  If services were provided by a CCV, did the CCV provide the charitable organization with the interim or closing report(s) required by Section 173(a) part 3 of the Executive Law Article 7A?

# CHAR500

**Schedule 4a: Professional Fund Raisers, Fund Raising Counsels, Commercial Co-Venturers**
www.CharitiesNYS.com

**2018**

Open to Public Inspection

If you checked the box in question 4a in Part 4 on the CHAR500 Annual Filing for Charitable Organizations, complete this schedule for EACH Professional Fund Raiser (PFR), Fund Raising Counsel (FRC) or Commercial Co-Venturer (CCV) that the organization engaged for fund raising activity in NY State. The PFR or FRC should provide its NY Registration Number to you. Include this schedule with your certified CHAR500 NYS Annual Filing for Charitable Organizations and use additional pages if necessary.

## Definitions

A **Professional Fund Raiser (PFR)**, in addition to other activities, conducts solicitation of contributions and/or handles the donations (Article 7A, 171-a.4).

A **Fund Raising Counsel (FRC)** does not solicit or handle contributions but limits activities to advising or assisting a charitable organization to perform such functions for itself (Article 7A, 171-a.9).

A **Commercial Co-Venturer (CCV)** is an individual or for-profit company that is regularly and primarily engaged in trade or commerce other than raising funds for a charitable organization and who advertises that the purchase or use of goods, services, entertainment or any other thing of value will benefit a charitable organization (Article 7A, 171-a.6).

**Professional fund raising** does not include activities by an organization's development staff, volunteers, or a grantwriter who has been hired solely to draft applications for funding from a government agency or tax exempt organization.

## 1. Organization Information

| Name of Organization: National Rifle Association of America | NY Registration Number: 0 2 - 2 1 - 6 4 |
|---|---|

## 2. Professional Fund Raiser, Fund Raising Counsel, Commercial Co-Venturer Information

| Fund Raising Professional type: | Name of FRP: Rio Ammunition, Inc. | NY Registration Number: ☐ ☐ - ☐ ☐ - ☐ ☐ |
|---|---|---|
| ☐ Professional Fund Raiser | Mailing Address: 433 East Las Colinas Blvd., Suite 900 | Telephone: (2 1 4) 3 8 9 - 1 8 9 6 |
| ☐ Fund Raising Counsel | | |
| ☒ Commercial Co-Venturer | City / State / Zip: Irving, TX 75039 | |

## 3. Contract Information

| Contract Start Date: 6/15/18 | Contract End Date: 6/14/19 |
|---|---|

## 4. Description of Services

Services provided by FRP:

**Sales promotion of specific ammunition that contains the NRA logo.**

## 5. Description of Compensation

| Compensation arrangement with FRP: **N/A** | Amount Paid to FRP: **0** |
|---|---|

## 6. Commercial Co-Venturer (CCV) Report

☒ Yes  ☐ No   If services were provided by a CCV, did the CCV provide the charitable organization with the interim or closing report(s) required by Section 173(a) part 3 of the Executive Law Article 7A?

# CHAR500

**Schedule 4a: Professional Fund Raisers, Fund Raising Counsels, Commercial Co-Venturers**
www.CharitiesNYS.com

**2018**
Open to Public
Inspection

If you checked the box in question 4a in Part 4 on the CHAR500 Annual Filing for Charitable Organizations, complete this schedule for EACH Professional Fund Raiser (PFR), Fund Raising Counsel (FRC) or Commercial Co-Venturer (CCV) that the organization engaged for fund raising activity in NY State. The PFR or FRC should provide its NY Registration Number to you. Include this schedule with your certified CHAR500 NYS Annual Filing for Charitable Organizations and use additional pages if necessary.

## Definitions

A **Professional Fund Raiser (PFR)**, in addition to other activities, conducts solicitation of contributions and/or handles the donations (Article 7A, 171-a.4).
A **Fund Raising Counsel (FRC)** does not solicit or handle contributions but limits activities to advising or assisting a charitable organization to perform such functions for itself (Article 7A, 171-a.9).
A **Commercial Co-Venturer (CCV)** is an individual or for-profit company that is regularly and primarily engaged in trade or commerce other than raising funds for a charitable organization and who advertises that the purchase or use of goods, services, entertainment or any other thing of value will benefit a charitable organization (Article 7A, 171-a.6).
**Professional fund raising** does not include activities by an organization's development staff, volunteers, or a grantwriter who has been hired solely to draft applications for funding from a government agency or tax exempt organization.

## 1. Organization Information

| Name of Organization: National Rifle Association of America | NY Registration Number: 0 2 - 2 1 - 6 4 |
|---|---|

## 2. Professional Fund Raiser, Fund Raising Counsel, Commercial Co-Venturer Information

| Fund Raising Professional type: | Name of FRP: H.W.S. Consulting, Inc. | NY Registration Number: 4 5 - 5 6 - 8 7 |
|---|---|---|
| ☐ Professional Fund Raiser | Mailing Address: 221 Homeport Drive | Telephone: ( ) - |
| ☒ Fund Raising Counsel | | |
| ☐ Commercial Co-Venturer | City / State / Zip: Grasonville, MD 21638 | |

## 3. Contract Information

| Contract Start Date: 7/1/2016 | Contract End Date: 4/1/2023 - contract terminated 12/31/2018 |
|---|---|

## 4. Description of Services

Services provided by FRP:
**Provides consulting services in the area of general gift cultivation and major donor development.**

## 5. Description of Compensation

| Compensation arrangement with FRP: **Compensation by flat fee and/or net costs reimbursement.** | Amount Paid to FRP: 360,000 |
|---|---|

## 6. Commercial Co-Venturer (CCV) Report

☐ Yes ☐ No   If services were provided by a CCV, did the CCV provide the charitable organization with the interim or closing report(s) required by Section 173(a) part 3 of the Executive Law Article 7A?

# CHAR500

Instructions for Completing Your NY Annual Filing
www.CharitiesNYS.com

*Need Assistance?*
Visit: www.CharitiesNYS.com
Call: (212) 416-8401
Email: Charities.Bureau@ag.ny.gov

## 2018
Open to Public Inspection

## ore You Begin

Visit www.CharitiesNYS.com and search the Charities Registry to find your organization's NY State Registration Number (##-##-##) and Registration Category (7A, EPTL, DUAL, or EXEMPT). Knowing your organization's Registration Category will help you respond to Sections 1 and 3, determine the required attachments to the CHAR500 and calculate your filing fee. If your organization is not registered with the Charities Bureau, please complete CHAR410 "Registration Statement for Charitable Organizations".

## 1 General Information

Enter the accounting period covered by the report. Provide the best contact information for your organization. This information will be publicly available in the Charities Registry and will be used for communication to your organization. If your organization is registered and this is your regular annual filing, check *Initial Filing*. If your contact information needs to be updated, check *Address Change* and/or *Name Change*. Check *Amended Filing* if you are making a change to a previous filing. If you have submitted a CHAR410 - Registration Statement for Charitable Organizations - but do not yet have a NY State Registration Number, check *NY Reg Pending*. If this is a final filing and the organization is seeking dissolution or ceasing operations, check *Final Filing* and submit all applicable IRS schedules and attachments. If your organization is a NY corporation, visit www.CharitiesNYS.com for information on how to dissolve. Check the Charities Bureau Registration Category of your organization (7A, EPTL, DUAL, or EXEMPT). EXEMPT organizations are those that have registered with the NY Charities Bureau and meet conditions in Schedule E - Registration Exemption for Charitable Organizations - but have registered and file voluntarily.

## 2. Certification

When you have completed the form, sign and print the name, title and date. For 7A and DUAL filers, the CHAR500 must be signed by both the president or another authorized officer and the chief financial officer or treasurer. These must be different individuals. EPTL filers have the option of a single signature if the certification is by a banking institution or a trustee of a trust. Clearly state the title of the representative (e.g. "President," "CEO", Treasurer," "CFO," "Bank Vice President" or "Trustee").

## 3 Annual Reporting Exemption

You may claim an exemption from the reporting and fee requirements if you meet the filing exemptions applicable to your organization. If claiming an exemption under one statute (7A and EPTL only filers) or both statutes (DUAL filers) that apply to your registration, complete only parts 1, 2, and 3, and submit the certified Char500. No fee, schedule, or additional attachments are required. Otherwise, file all required schedules and attachments and pay applicable fees.

Note: A 7A or DUAL filer with contributions over $25,000 that did not contract with a professional fund raiser may check the 7A filing exemption in Part 3 if it (i) received all or substantially all of its contributions from a single government agency to which it submitted an annual report similar to that required by Executive Law Article 7A, or (ii) it received an allocation from a federated fund, United Way or incorporated community appeal and contributions from all other sources did not exceed $25,000.

## 4. Schedules and Attachments

If you do not qualify for the reporting exemptions as described in Part 3, review the checklist of schedules and attachments required to complete your filing. If your organization qualified for and submitted an IRS 990-N "e-Postcard", you must complete and submit an IRS Form 990-EZ to the NY Charities Bureau for reporting purposes. The NY Charities Bureau will not accept an IRS 990-N "e-postcard" because it does not contain sufficient financial information.

## 5. Fee

Your total fee is based on your registration category (7A, EPTL or DUAL). 7A or EPTL filers only pay the fee that applies to the statute under which they have registered unless they have claimed an exemption in Part 3. DUAL filers must pay both fees, unless they have claimed an exemption in Part 3. Consult the CHAR500 to calculate your fee or contact the NY Charities Bureau if you have additional questions.

## When to Submit Your Filing

7A and DUAL filers: postmarked within 4 1/2 months after the organization's accounting period ends. For example, fiscal year end December 31 reports are due by May 15th of the following year. EPTL filers: postmarked within 6 months after the organization's accounting period ends. An additional 180 day extension is automatically granted. Information regarding extensions is available at www.CharitiesNYS.com.

## Where to Submit Your Filing

Payment must be made to the **"Department of Law"**. Send the complete filing with payment to:
**NYS Office of the Attorney General, Charities Bureau Registration Section, 28 Liberty Street, New York, NY 10005.**

## Penalties

The Attorney General may cancel the registration of or seek civil penalties from an organization that fails to comply with the filing requirements.

** PUBLIC DISCLOSURE COPY **

Form **990**

Department of the Treasury
Internal Revenue Service

## Return of Organization Exempt From Income Tax

Under section 501(c), 527, or 4947(a)(1) of the Internal Revenue Code (except private foundations)

▶ Do not enter social security numbers on this form as it may be made public.
▶ Go to www.irs.gov/Form990 for instructions and the latest information.

OMB No. 1545-0047

**2018**

Open to Public Inspection

**A** For the 2018 calendar year, or tax year beginning _____ and ending _____

**B** Check if applicable:
- [ ] Address change
- [ ] Name change
- [ ] Initial return
- [ ] Final return/terminated
- [ ] Amended return
- [ ] Application pending

**C** Name of organization

**NATIONAL RIFLE ASSOCIATION OF AMERICA**

Doing business as

Number and street (or P.O. box if mail is not delivered to street address) | Room/suite
**11250 WAPLES MILL ROAD**

City or town, state or province, country, and ZIP or foreign postal code
**FAIRFAX, VA 22030**

**F** Name and address of principal officer: **CRAIG B. SPRAY**
**SAME AS C ABOVE**

**D** Employer identification number

**53-0116130**

**E** Telephone number
**703-267-1000**

**G** Gross receipts $ **367,702,748.**

**H(a)** Is this a group return for subordinates? [ ] Yes [X] No
**H(b)** Are all subordinates included? [ ] Yes [ ] No
If "No," attach a list. (see instructions)

**I** Tax-exempt status: [ ] 501(c)(3) [X] 501(c) ( **4** ) ◀ (insert no.) [ ] 4947(a)(1) or [ ] 527

**J** Website: ▶ **WWW.NRA.ORG**

**H(c)** Group exemption number ▶

**K** Form of organization: [X] Corporation [ ] Trust [ ] Association [ ] Other ▶    **L** Year of formation: **1871**   **M** State of legal domicile: **NY**

### Part I | Summary

**1** Briefly describe the organization's mission or most significant activities: **FIREARMS SAFETY, EDUCATION, AND TRAINING; AND ADVOCACY ON BEHALF OF SAFE AND RESPONSIBLE GUN OWNERS**

**2** Check this box ▶ [ ] if the organization discontinued its operations or disposed of more than 25% of its net assets.

| | | |
|---|---|---|
| **3** Number of voting members of the governing body (Part VI, line 1a) | **3** | 76 |
| **4** Number of independent voting members of the governing body (Part VI, line 1b) | **4** | 67 |
| **5** Total number of individuals employed in calendar year 2018 (Part V, line 2a) | **5** | 816 |
| **6** Total number of volunteers (estimate if necessary) | **6** | 150000 |
| **7 a** Total unrelated business revenue from Part VIII, column (C), line 12 | **7a** | 23,943,194. |
| **b** Net unrelated business taxable income from Form 990-T, line 38 | **7b** | 0. |

| | Prior Year | Current Year |
|---|---|---|
| **8** Contributions and grants (Part VIII, line 1h) | 98,026,531. | 108,599,726. |
| **9** Program service revenue (Part VIII, line 2g) | 146,955,303. | 193,010,155. |
| **10** Investment income (Part VIII, column (A), lines 3, 4, and 7d) | 4,893,990. | 2,192,041. |
| **11** Other revenue (Part VIII, column (A), lines 5, 6d, 8c, 9c, 10c, and 11e) | 62,111,910. | 48,748,942. |
| **12** Total revenue - add lines 8 through 11 (must equal Part VIII, column (A), line 12) | 311,987,734. | 352,550,864. |
| **13** Grants and similar amounts paid (Part IX, column (A), lines 1-3) | 93,334. | 75,661. |
| **14** Benefits paid to or for members (Part IX, column (A), line 4) | 0. | 0. |
| **15** Salaries, other compensation, employee benefits (Part IX, column (A), lines 5-10) | 66,789,561. | 63,864,842. |
| **16a** Professional fundraising fees (Part IX, column (A), line 11e) | 8,943,038. | 7,798,658. |
| **b** Total fundraising expenses (Part IX, column (D), line 25) ▶ 48,091,585. | | |
| **17** Other expenses (Part IX, column (A), lines 11a-11d, 11f-24e) | 254,005,718. | 283,536,156. |
| **18** Total expenses. Add lines 13-17 (must equal Part IX, column (A), line 25) | 329,831,651. | 355,275,317. |
| **19** Revenue less expenses. Subtract line 18 from line 12 | -17,843,917. | -2,724,453. |

| | Beginning of Current Year | End of Year |
|---|---|---|
| **20** Total assets (Part X, line 16) | 196,125,681. | 197,212,080. |
| **21** Total liabilities (Part X, line 26) | 171,175,478. | 181,180,554. |
| **22** Net assets or fund balances. Subtract line 21 from line 20 | 24,950,203. | 16,031,526. |

### Part II | Signature Block

Under penalties of perjury, I declare that I have examined this return, including accompanying schedules and statements, and to the best of my knowledge and belief, it is true, correct, and complete. Declaration of preparer (other than officer) is based on all information of which preparer has any knowledge.

Sign Here
| Signature of officer | Date  11/14/19 |
| **CRAIG B. SPRAY, TREASURER** | |
| Type or print name and title | |

Paid Preparer Use Only
| Print/Type preparer's name | Preparer's signature | Date | Check [ ] if self-employed | PTIN |
| ZACK FORTSCH, CPA | Zack Fortsch | 11/14/19 | | P00052725 |
| Firm's name ▶ RSM US LLP | | | Firm's EIN ▶ 42-0714325 |
| Firm's address ▶ ONE SOUTH WACKER DR STE 800  CHICAGO, IL 60606-3392 | | | Phone no. 312-634-3400 |

May the IRS discuss this return with the preparer shown above? (see instructions) [X] Yes [ ] No

832001 12-31-18  LHA  **For Paperwork Reduction Act Notice, see the separate instructions.**                     Form **990** (2018)

SEE SCHEDULE O FOR ORGANIZATION MISSION STATEMENT CONTINUATION

Form 990 (2018)    NATIONAL RIFLE ASSOCIATION OF AMERICA    53-0116130    Page **2**

| Part III | Statement of Program Service Accomplishments |
|---|---|

Check if Schedule O contains a response or note to any line in this Part III ................................................................. ☒

**1** Briefly describe the organization's mission:

PER NRA BYLAWS, TO PROTECT AND DEFEND THE U.S. CONSTITUTION; TO
PROMOTE PUBLIC SAFETY, LAW AND ORDER, AND NATIONAL DEFENSE; TO TRAIN
LAW ENFORCEMENT AGENCIES AND CIVILIANS IN MARKSMANSHIP; TO PROMOTE
SHOOTING SPORTS AND HUNTING.

**2** Did the organization undertake any significant program services during the year which were not listed on the
prior Form 990 or 990-EZ? .................................................................................................................... ☐ Yes ☒ No
If "Yes," describe these new services on Schedule O.

**3** Did the organization cease conducting, or make significant changes in how it conducts, any program services? ................. ☐ Yes ☒ No
If "Yes," describe these changes on Schedule O.

**4** Describe the organization's program service accomplishments for each of its three largest program services, as measured by expenses.
Section 501(c)(3) and 501(c)(4) organizations are required to report the amount of grants and allocations to others, the total expenses, and
revenue, if any, for each program service reported.

**4a** (Code: _____ ) (Expenses $ __140,238,506.__ including grants of $ __75,661.__ ) (Revenue $ __203,053,219.__ )
NRA MEMBERSHIP SUPPORT INCLUDES PUBLICATIONS, EDUCATION AND TRAINING,
FIELD SERVICES, COMPETITIVE SHOOTING, LAW ENFORCEMENT, HUNTER SERVICES,
MEMBER COMMUNICATIONS SERVICES, MEMBER PROGRAMS, MEMBER SERVICES, AND
FULFILLMENT OF MEMBER SERVICES. THE CHIEF VALUE OF NRA MEMBERSHIP IS IN
GUN SAFETY AND TRAINING ALONG WITH REGULAR REINFORCEMENT OF THESE
LESSONS AND PRINCIPLES BY KEEPING ENGAGED WITH THE COMMUNITY OF OUTDOOR
LOVERS AND SAFE AND RESPONSIBLE SHOOTING ENTHUSIASTS. NRA MEMBERSHIP
SUPPORT AND FULFILLMENT ARE DEDICATED TO PROVIDING NRA MEMBERS WITH
HIGH QUALITY SUPPORT AS WELL AS CONTENT DELIVERED THROUGH MANY
PLATFORMS. SAFE AND RESPONSIBLE GUN OWNERSHIP REMAINS THE CORNERSTONE
OF EVERYTHING THE ASSOCIATION PROVIDES FOR MEMBERS.

**4b** (Code: _____ ) (Expenses $ __32,507,712.__ including grants of $ __0.__ ) (Revenue $ __0.__ )
THE NRA INSTITUTE FOR LEGISLATIVE ACTION ADVOCATES ON BEHALF OF SAFE
AND RESPONSIBLE GUN OWNERS. AS THE FOREMOST PROTECTOR AND DEFENDER OF
THE SECOND AMENDMENT, THE NRA PROMOTES FIREARMS SAFETY, ADVOCATES
AGAINST EFFORTS TO ERODE GUN RIGHTS AND FREEDOMS, FIGHTS FOR
INITIATIVES AIMED AT REDUCING VIOLENT CRIME, AND PROMOTES
HUNTERS'RIGHTS AND CONSERVATION EFFORTS. NRA MEMBERS RECOGNIZE THIS
VITAL IMPORTANCE OF NRAILA'S TRUE GRASSROOTS WORK TO PRESERVE THE
SECOND AMENDMENT FOR FUTURE GENERATIONS OF SHOOTERS AND OUTDOOR
SPORTSMEN AND SPORTSWOMEN. THIS LEGION OF ENGAGED AND MOTIVATED MEMBERS
IS THE REASON FOR THE NRA'S STRENGTH.

**4c** (Code: _____ ) (Expenses $ __18,732,003.__ including grants of $ _____ ) (Revenue $ __20,582,280.__ )
NRA SHOWS AND EXHIBITS INCLUDE THE NRA ANNUAL MEETINGS AND MEMBERS
EXHIBIT HALL, HELD IN A DIFFERENT CITY EACH YEAR, AND OTHER SHOWS
AROUND THE COUNTRY. THE ANNUAL MEETINGS AND EXHIBITS ARE PRESENTED AS A
CELEBRATION OF AMERICAN FREEDOM FEATURING ACRES OF EXHIBITS, PREMIER
EVENTS, EDUCATIONAL SEMINARS AND WORKSHOPS, AND FUN-FILLED ACTIVITIES
FOR THE ENTIRE FAMILY. DALLAS, TEXAS WAS THE 2018 HOST CITY. OTHER NRA
HOSTED SHOWS INCLUDED THE GREAT AMERICAN OUTDOOR SHOW HELD IN
HARRISBURG, PENNSYLVANIA.

**4d** Other program services (Describe in Schedule O.)
(Expenses $ __59,426,544.__ including grants of $ __0.__ ) (Revenue $ __1,330,515.__ )
**4e** Total program service expenses ▶ __250,904,765.__

Form **990** (2018)

832002 12-31-18

Form 990 (2018)  NATIONAL RIFLE ASSOCIATION OF AMERICA  53-0116130  Page **3**

**Part IV** | **Checklist of Required Schedules**

| | | Yes | No |
|---|---|---|---|
| 1 | Is the organization described in section 501(c)(3) or 4947(a)(1) (other than a private foundation)? *If "Yes," complete Schedule A* | **1** | | X |
| 2 | Is the organization required to complete *Schedule B, Schedule of Contributors*? | **2** | X | |
| 3 | Did the organization engage in direct or indirect political campaign activities on behalf of or in opposition to candidates for public office? *If "Yes," complete Schedule C, Part I* | **3** | X | |
| 4 | **Section 501(c)(3) organizations.** Did the organization engage in lobbying activities, or have a section 501(h) election in effect during the tax year? *If "Yes," complete Schedule C, Part II* | **4** | | |
| 5 | Is the organization a section 501(c)(4), 501(c)(5), or 501(c)(6) organization that receives membership dues, assessments, or similar amounts as defined in Revenue Procedure 98-19? *If "Yes," complete Schedule C, Part III* | **5** | X | |
| 6 | Did the organization maintain any donor advised funds or any similar funds or accounts for which donors have the right to provide advice on the distribution or investment of amounts in such funds or accounts? *If "Yes," complete Schedule D, Part I* | **6** | | X |
| 7 | Did the organization receive or hold a conservation easement, including easements to preserve open space, the environment, historic land areas, or historic structures? *If "Yes," complete Schedule D, Part II* | **7** | | X |
| 8 | Did the organization maintain collections of works of art, historical treasures, or other similar assets? *If "Yes," complete Schedule D, Part III* | **8** | X | |
| 9 | Did the organization report an amount in Part X, line 21, for escrow or custodial account liability, serve as a custodian for amounts not listed in Part X; or provide credit counseling, debt management, credit repair, or debt negotiation services? *If "Yes," complete Schedule D, Part IV* | **9** | | X |
| 10 | Did the organization, directly or through a related organization, hold assets in temporarily restricted endowments, permanent endowments, or quasi-endowments? *If "Yes," complete Schedule D, Part V* | **10** | X | |
| 11 | If the organization's answer to any of the following questions is "Yes," then complete Schedule D, Parts VI, VII, VIII, IX, or X as applicable. | | | |
| a | Did the organization report an amount for land, buildings, and equipment in Part X, line 10? *If "Yes," complete Schedule D, Part VI* | **11a** | X | |
| b | Did the organization report an amount for investments - other securities in Part X, line 12 that is 5% or more of its total assets reported in Part X, line 16? *If "Yes," complete Schedule D, Part VII* | **11b** | | X |
| c | Did the organization report an amount for investments - program related in Part X, line 13 that is 5% or more of its total assets reported in Part X, line 16? *If "Yes," complete Schedule D, Part VIII* | **11c** | | X |
| d | Did the organization report an amount for other assets in Part X, line 15 that is 5% or more of its total assets reported in Part X, line 16? *If "Yes," complete Schedule D, Part IX* | **11d** | | X |
| e | Did the organization report an amount for other liabilities in Part X, line 25? *If "Yes," complete Schedule D, Part X* | **11e** | X | |
| f | Did the organization's separate or consolidated financial statements for the tax year include a footnote that addresses the organization's liability for uncertain tax positions under FIN 48 (ASC 740)? *If "Yes," complete Schedule D, Part X* | **11f** | X | |
| 12a | Did the organization obtain separate, independent audited financial statements for the tax year? *If "Yes," complete Schedule D, Parts XI and XII* | **12a** | X | |
| b | Was the organization included in consolidated, independent audited financial statements for the tax year? *If "Yes," and if the organization answered "No" to line 12a, then completing Schedule D, Parts XI and XII is optional* | **12b** | X | |
| 13 | Is the organization a school described in section 170(b)(1)(A)(ii)? *If "Yes," complete Schedule E* | **13** | | X |
| 14a | Did the organization maintain an office, employees, or agents outside of the United States? | **14a** | | X |
| b | Did the organization have aggregate revenues or expenses of more than $10,000 from grantmaking, fundraising, business, investment, and program service activities outside the United States, or aggregate foreign investments valued at $100,000 or more? *If "Yes," complete Schedule F, Parts I and IV* | **14b** | X | |
| 15 | Did the organization report on Part IX, column (A), line 3, more than $5,000 of grants or other assistance to or for any foreign organization? *If "Yes," complete Schedule F, Parts II and IV* | **15** | | X |
| 16 | Did the organization report on Part IX, column (A), line 3, more than $5,000 of aggregate grants or other assistance to or for foreign individuals? *If "Yes," complete Schedule F, Parts III and IV* | **16** | | X |
| 17 | Did the organization report a total of more than $15,000 of expenses for professional fundraising services on Part IX, column (A), lines 6 and 11e? *If "Yes," complete Schedule G, Part I* | **17** | X | |
| 18 | Did the organization report more than $15,000 total of fundraising event gross income and contributions on Part VIII, lines 1c and 8a? *If "Yes," complete Schedule G, Part II* | **18** | X | |
| 19 | Did the organization report more than $15,000 of gross income from gaming activities on Part VIII, line 9a? *If "Yes," complete Schedule G, Part III* | **19** | | X |
| 20a | Did the organization operate one or more hospital facilities? *If "Yes," complete Schedule H* | **20a** | | X |
| b | If "Yes" to line 20a, did the organization attach a copy of its audited financial statements to this return? | **20b** | | |
| 21 | Did the organization report more than $5,000 of grants or other assistance to any domestic organization or domestic government on Part IX, column (A), line 1? *If "Yes," complete Schedule I, Parts I and II* | **21** | X | |

832003 12-31-18

Form **990** (2018)

Form 990 (2018)     **NATIONAL RIFLE ASSOCIATION OF AMERICA**     53-0116130    Page **4**

**Part IV** | **Checklist of Required Schedules** *(continued)*

| | | | Yes | No |
|---|---|---|---|---|
| 22 | Did the organization report more than $5,000 of grants or other assistance to or for domestic individuals on Part IX, column (A), line 2? *If "Yes," complete Schedule I, Parts I and III* | 22 | X | |
| 23 | Did the organization answer "Yes" to Part VII, Section A, line 3, 4, or 5 about compensation of the organization's current and former officers, directors, trustees, key employees, and highest compensated employees? *If "Yes," complete Schedule J* | 23 | X | |
| 24a | Did the organization have a tax-exempt bond issue with an outstanding principal amount of more than $100,000 as of the last day of the year, that was issued after December 31, 2002? *If "Yes," answer lines 24b through 24d and complete Schedule K. If "No," go to line 25a* | 24a | | X |
| b | Did the organization invest any proceeds of tax-exempt bonds beyond a temporary period exception? | 24b | | |
| c | Did the organization maintain an escrow account other than a refunding escrow at any time during the year to defease any tax-exempt bonds? | 24c | | |
| d | Did the organization act as an "on behalf of" issuer for bonds outstanding at any time during the year? | 24d | | |
| 25a | **Section 501(c)(3), 501(c)(4), and 501(c)(29) organizations.** Did the organization engage in an excess benefit transaction with a disqualified person during the year? *If "Yes," complete Schedule L, Part I* | 25a | | X |
| b | Is the organization aware that it engaged in an excess benefit transaction with a disqualified person in a prior year, and that the transaction has not been reported on any of the organization's prior Forms 990 or 990-EZ? *If "Yes," complete Schedule L, Part I* | 25b | | X |
| 26 | Did the organization report any amount on Part X, line 5, 6, or 22 for receivables from or payables to any current or former officers, directors, trustees, key employees, highest compensated employees, or disqualified persons? *If "Yes," complete Schedule L, Part II* | 26 | | X |
| 27 | Did the organization provide a grant or other assistance to an officer, director, trustee, key employee, substantial contributor or employee thereof, a grant selection committee member, or to a 35% controlled entity or family member of any of these persons? *If "Yes," complete Schedule L, Part III* | 27 | | X |
| 28 | Was the organization a party to a business transaction with one of the following parties (see Schedule L, Part IV instructions for applicable filing thresholds, conditions, and exceptions): | | | |
| a | A current or former officer, director, trustee, or key employee? *If "Yes," complete Schedule L, Part IV* | 28a | X | |
| b | A family member of a current or former officer, director, trustee, or key employee? *If "Yes," complete Schedule L, Part IV* | 28b | | X |
| c | An entity of which a current or former officer, director, trustee, or key employee (or a family member thereof) was an officer, director, trustee, or direct or indirect owner? *If "Yes," complete Schedule L, Part IV* | 28c | X | |
| 29 | Did the organization receive more than $25,000 in non-cash contributions? *If "Yes," complete Schedule M* | 29 | X | |
| 30 | Did the organization receive contributions of art, historical treasures, or other similar assets, or qualified conservation contributions? *If "Yes," complete Schedule M* | 30 | | X |
| 31 | Did the organization liquidate, terminate, or dissolve and cease operations? *If "Yes," complete Schedule N, Part I* | 31 | | X |
| 32 | Did the organization sell, exchange, dispose of, or transfer more than 25% of its net assets? *If "Yes," complete Schedule N, Part II* | 32 | | X |
| 33 | Did the organization own 100% of an entity disregarded as separate from the organization under Regulations sections 301.7701-2 and 301.7701-3? *If "Yes," complete Schedule R, Part I* | 33 | | X |
| 34 | Was the organization related to any tax-exempt or taxable entity? *If "Yes," complete Schedule R, Part II, III, or IV, and Part V, line 1* | 34 | X | |
| 35a | Did the organization have a controlled entity within the meaning of section 512(b)(13)? | 35a | X | |
| b | If "Yes" to line 35a, did the organization receive any payment from or engage in any transaction with a controlled entity within the meaning of section 512(b)(13)? *If "Yes," complete Schedule R, Part V, line 2* | 35b | X | |
| 36 | **Section 501(c)(3) organizations.** Did the organization make any transfers to an exempt non-charitable related organization? *If "Yes," complete Schedule R, Part V, line 2* | 36 | | |
| 37 | Did the organization conduct more than 5% of its activities through an entity that is not a related organization and that is treated as a partnership for federal income tax purposes? *If "Yes," complete Schedule R, Part VI* | 37 | | X |
| 38 | Did the organization complete Schedule O and provide explanations in Schedule O for Part VI, lines 11b and 19? **Note.** All Form 990 filers are required to complete Schedule O | 38 | X | |

**Part V** | **Statements Regarding Other IRS Filings and Tax Compliance**

Check if Schedule O contains a response or note to any line in this Part V ☐

| | | | Yes | No |
|---|---|---|---|---|
| 1a | Enter the number reported in Box 3 of Form 1096. Enter -0- if not applicable | 1a | 1176 | | |
| b | Enter the number of Forms W-2G included in line 1a. Enter -0- if not applicable | 1b | 0 | | |
| c | Did the organization comply with backup withholding rules for reportable payments to vendors and reportable gaming (gambling) winnings to prize winners? | 1c | | X | |

832004 12-31-18                                              Form **990** (2018)

Form 990 (2018) NATIONAL RIFLE ASSOCIATION OF AMERICA 53-0116130 Page **5**

**Part V** | **Statements Regarding Other IRS Filings and Tax Compliance** *(continued)*

| | | | Yes | No |
|---|---|---|---|---|
| **2a** | Enter the number of employees reported on Form W-3, Transmittal of Wage and Tax Statements, filed for the calendar year ending with or within the year covered by this return ... | 2a | 816 | |
| **b** | If at least one is reported on line 2a, did the organization file all required federal employment tax returns? | 2b | X | |
| | **Note.** If the sum of lines 1a and 2a is greater than 250, you may be required to *e-file* (see instructions) | | | |
| **3a** | Did the organization have unrelated business gross income of $1,000 or more during the year? | 3a | X | |
| **b** | If "Yes," has it filed a Form 990-T for this year? *If "No" to line 3b, provide an explanation in Schedule O* | 3b | X | |
| **4a** | At any time during the calendar year, did the organization have an interest in, or a signature or other authority over, a financial account in a foreign country (such as a bank account, securities account, or other financial account)? | 4a | | X |
| **b** | If "Yes," enter the name of the foreign country: ▶ | | | |
| | See instructions for filing requirements for FinCEN Form 114, Report of Foreign Bank and Financial Accounts (FBAR). | | | |
| **5a** | Was the organization a party to a prohibited tax shelter transaction at any time during the tax year? | 5a | | X |
| **b** | Did any taxable party notify the organization that it was or is a party to a prohibited tax shelter transaction? | 5b | | X |
| **c** | If "Yes" to line 5a or 5b, did the organization file Form 8886-T? | 5c | | |
| **6a** | Does the organization have annual gross receipts that are normally greater than $100,000, and did the organization solicit any contributions that were not tax deductible as charitable contributions? | 6a | X | |
| **b** | If "Yes," did the organization include with every solicitation an express statement that such contributions or gifts were not tax deductible? | 6b | X | |
| **7** | **Organizations that may receive deductible contributions under section 170(c).** | | | |
| **a** | Did the organization receive a payment in excess of $75 made partly as a contribution and partly for goods and services provided to the payor? | 7a | | |
| **b** | If "Yes," did the organization notify the donor of the value of the goods or services provided? | 7b | | |
| **c** | Did the organization sell, exchange, or otherwise dispose of tangible personal property for which it was required to file Form 8282? | 7c | | |
| **d** | If "Yes," indicate the number of Forms 8282 filed during the year | 7d | | |
| **e** | Did the organization receive any funds, directly or indirectly, to pay premiums on a personal benefit contract? | 7e | | |
| **f** | Did the organization, during the year, pay premiums, directly or indirectly, on a personal benefit contract? | 7f | | |
| **g** | If the organization received a contribution of qualified intellectual property, did the organization file Form 8899 as required? | 7g | | |
| **h** | If the organization received a contribution of cars, boats, airplanes, or other vehicles, did the organization file a Form 1098-C? | 7h | | |
| **8** | **Sponsoring organizations maintaining donor advised funds.** Did a donor advised fund maintained by the sponsoring organization have excess business holdings at any time during the year? | 8 | | |
| **9** | **Sponsoring organizations maintaining donor advised funds.** | | | |
| **a** | Did the sponsoring organization make any taxable distributions under section 4966? | 9a | | |
| **b** | Did the sponsoring organization make a distribution to a donor, donor advisor, or related person? | 9b | | |
| **10** | **Section 501(c)(7) organizations.** Enter: | | | |
| **a** | Initiation fees and capital contributions included on Part VIII, line 12 | 10a | | |
| **b** | Gross receipts, included on Form 990, Part VIII, line 12, for public use of club facilities | 10b | | |
| **11** | **Section 501(c)(12) organizations.** Enter: | | | |
| **a** | Gross income from members or shareholders | 11a | | |
| **b** | Gross income from other sources (Do not net amounts due or paid to other sources against amounts due or received from them.) | 11b | | |
| **12a** | **Section 4947(a)(1) non-exempt charitable trusts.** Is the organization filing Form 990 in lieu of Form 1041? | 12a | | |
| **b** | If "Yes," enter the amount of tax-exempt interest received or accrued during the year | 12b | | |
| **13** | **Section 501(c)(29) qualified nonprofit health insurance issuers.** | | | |
| **a** | Is the organization licensed to issue qualified health plans in more than one state? | 13a | | |
| | **Note.** See the instructions for additional information the organization must report on Schedule O. | | | |
| **b** | Enter the amount of reserves the organization is required to maintain by the states in which the organization is licensed to issue qualified health plans | 13b | | |
| **c** | Enter the amount of reserves on hand | 13c | | |
| **14a** | Did the organization receive any payments for indoor tanning services during the tax year? | 14a | | X |
| **b** | If "Yes," has it filed a Form 720 to report these payments? *If "No," provide an explanation in Schedule O* | 14b | | |
| **15** | Is the organization subject to the section 4960 tax on payment(s) of more than $1,000,000 in remuneration or excess parachute payment(s) during the year? | 15 | X | |
| | If "Yes," see instructions and file Form 4720, Schedule N. | | | |
| **16** | Is the organization an educational institution subject to the section 4968 excise tax on net investment income? | 16 | | X |
| | If "Yes," complete Form 4720, Schedule O. | | | |

Form **990** (2018)

832005 12-31-18

Form 990 (2018)  NATIONAL RIFLE ASSOCIATION OF AMERICA  53-0116130  Page **6**

| **Part VI** | Governance, Management, and Disclosure *For each "Yes" response to lines 2 through 7b below, and for a "No" response to line 8a, 8b, or 10b below, describe the circumstances, processes, or changes in Schedule O. See instructions.* |
|---|---|

Check if Schedule O contains a response or note to any line in this Part VI ............................................................ ☒

## Section A. Governing Body and Management

|  |  |  | Yes | No |
|---|---|---|---|---|
| 1a | Enter the number of voting members of the governing body at the end of the tax year ............. | 1a | 76 | | |
|  | If there are material differences in voting rights among members of the governing body, or if the governing body delegated broad authority to an executive committee or similar committee, explain in Schedule O. | | | | |
| b | Enter the number of voting members included in line 1a, above, who are independent ............. | 1b | 67 | | |
| 2 | Did any officer, director, trustee, or key employee have a family relationship or a business relationship with any other officer, director, trustee, or key employee? ............................................................ | | 2 | X | |
| 3 | Did the organization delegate control over management duties customarily performed by or under the direct supervision of officers, directors, or trustees, or key employees to a management company or other person? ................ | | 3 | | X |
| 4 | Did the organization make any significant changes to its governing documents since the prior Form 990 was filed? .............. | | 4 | | X |
| 5 | Did the organization become aware during the year of a significant diversion of the organization's assets? ................. | | 5 | | X |
| 6 | Did the organization have members or stockholders? ............................................................ | | 6 | X | |
| 7a | Did the organization have members, stockholders, or other persons who had the power to elect or appoint one or more members of the governing body? ............................................................ | | 7a | X | |
| b | Are any governance decisions of the organization reserved to (or subject to approval by) members, stockholders, or persons other than the governing body? ............................................................ | | 7b | X | |
| 8 | Did the organization contemporaneously document the meetings held or written actions undertaken during the year by the following: | | | | |
| a | The governing body? ............................................................ | | 8a | X | |
| b | Each committee with authority to act on behalf of the governing body? ............................................................ | | 8b | X | |
| 9 | Is there any officer, director, trustee, or key employee listed in Part VII, Section A, who cannot be reached at the organization's mailing address? *If "Yes," provide the names and addresses in Schedule O* ................ | | 9 | | X |

## Section B. Policies *(This Section B requests information about policies not required by the Internal Revenue Code.)*

|  |  |  | Yes | No |
|---|---|---|---|---|
| 10a | Did the organization have local chapters, branches, or affiliates? ............................................................ | 10a | | | X |
| b | If "Yes," did the organization have written policies and procedures governing the activities of such chapters, affiliates, and branches to ensure their operations are consistent with the organization's exempt purposes? ................ | 10b | | | |
| 11a | Has the organization provided a complete copy of this Form 990 to all members of its governing body before filing the form? | 11a | X | | |
| b | Describe in Schedule O the process, if any, used by the organization to review this Form 990. | | | | |
| 12a | Did the organization have a written conflict of interest policy? *If "No," go to line 13* ................................ | 12a | X | | |
| b | Were officers, directors, or trustees, and key employees required to disclose annually interests that could give rise to conflicts? ................ | 12b | X | | |
| c | Did the organization regularly and consistently monitor and enforce compliance with the policy? *If "Yes," describe in Schedule O how this was done* ............................................................ | 12c | X | | |
| 13 | Did the organization have a written whistleblower policy? ............................................................ | 13 | X | | |
| 14 | Did the organization have a written document retention and destruction policy? ............................................ | 14 | X | | |
| 15 | Did the process for determining compensation of the following persons include a review and approval by independent persons, comparability data, and contemporaneous substantiation of the deliberation and decision? | | | | |
| a | The organization's CEO, Executive Director, or top management official ............................................................ | 15a | X | | |
| b | Other officers or key employees of the organization ............................................................ | 15b | X | | |
|  | If "Yes" to line 15a or 15b, describe the process in Schedule O (see instructions). | | | | |
| 16a | Did the organization invest in, contribute assets to, or participate in a joint venture or similar arrangement with a taxable entity during the year? ............................................................ | 16a | | | X |
| b | If "Yes," did the organization follow a written policy or procedure requiring the organization to evaluate its participation in joint venture arrangements under applicable federal tax law, and take steps to safeguard the organization's exempt status with respect to such arrangements? ............................................................ | 16b | | | |

## Section C. Disclosure

17  List the states with which a copy of this Form 990 is required to be filed ►AL, AZ, AR, CA, CO, CT, DC, FL, GA, HI, ID, IL
18  Section 6104 requires an organization to make its Forms 1023 (1024 or 1024-A if applicable), 990, and 990-T (Section 501(c)(3)s only) available for public inspection. Indicate how you made these available. Check all that apply.
☐ Own website  ☐ Another's website  ☒ Upon request  ☐ Other *(explain in Schedule O)* .
19  Describe in Schedule O whether (and if so, how) the organization made its governing documents, conflict of interest policy, and financial statements available to the public during the tax year.
20  State the name, address, and telephone number of the person who possesses the organization's books and records ►

CRAIG B. SPRAY, TREASURER - 703-267-1000
11250 WAPLES MILL RD, FAIRFAX, VA 22030

832006 12-31-18       SEE SCHEDULE O FOR FULL LIST OF STATES         Form **990** (2018)

Form 990 (2018)　　NATIONAL RIFLE ASSOCIATION OF AMERICA　　53-0116130　　Page **7**

| Part VII | Compensation of Officers, Directors, Trustees, Key Employees, Highest Compensated Employees, and Independent Contractors |
|---|---|

　　Check if Schedule O contains a response or note to any line in this Part VII ....................................................................... [X]

**Section A. Officers, Directors, Trustees, Key Employees, and Highest Compensated Employees**

**1a** Complete this table for all persons required to be listed. Report compensation for the calendar year ending with or within the organization's tax year.

● List all of the organization's **current** officers, directors, trustees (whether individuals or organizations), regardless of amount of compensation. Enter -0- in columns (D), (E), and (F) if no compensation was paid.

● List all of the organization's **current** key employees, if any. See instructions for definition of "key employee."

● List the organization's five **current** highest compensated employees (other than an officer, director, trustee, or key employee) who received reportable compensation (Box 5 of Form W-2 and/or Box 7 of Form 1099-MISC) of more than $100,000 from the organization and any related organizations.

● List all of the organization's **former** officers, key employees, and highest compensated employees who received more than $100,000 of reportable compensation from the organization and any related organizations.

● List all of the organization's **former directors or trustees** that received, in the capacity as a former director or trustee of the organization, more than $10,000 of reportable compensation from the organization and any related organizations.

List persons in the following order: individual trustees or directors; institutional trustees; officers; key employees; highest compensated employees; and former such persons.

[ ] Check this box if neither the organization nor any related organization compensated any current officer, director, or trustee.

| (A) Name and Title | (B) Average hours per week (list any hours for related organizations below line) | (C) Position (do not check more than one box, unless person is both an officer and a director/trustee) | | | | | | (D) Reportable compensation from the organization (W-2/1099-MISC) | (E) Reportable compensation from related organizations (W-2/1099-MISC) | (F) Estimated amount of other compensation from the organization and related organizations |
|---|---|---|---|---|---|---|---|---|---|---|
| | | Individual trustee or director | Institutional trustee | Officer | Key employee | Highest compensated employee | Former | | | |
| (1) RICHARD CHILDRESS<br>1ST VICE PRESIDENT | 10.00<br>1.00 | X | | X | | | | 0. | 0. | 0. |
| (2) CAROLYN D. MEADOWS<br>2ND VICE PRESIDENT | 10.00<br>1.00 | X | | X | | | | 0. | 0. | 0. |
| (3) JOE M. ALLBAUGH<br>DIRECTOR | 1.00 | X | | | | | | 0. | 0. | 0. |
| (4) WILLIAM H. ALLEN<br>DIRECTOR (ENDING 6/1/2018) | 1.00 | X | | | | | | 0. | 0. | 0. |
| (5) THOMAS P. ARVAS<br>DIRECTOR | 1.00 | X | | | | | | 0. | 0. | 0. |
| (6) PAUL BABAZ<br>DIRECTOR (STARTING 6/1/2018) | 1.00 | X | | | | | | 0. | 0. | 0. |
| (7) SCOTT L. BACH<br>DIRECTOR | 1.00 | X | | | | | | 0. | 0. | 0. |
| (8) WILLIAM A. BACHENBERG<br>DIRECTOR | 1.00 | X | | | | | | 0. | 0. | 0. |
| (9) BOB BARR<br>DIRECTOR | 1.00 | X | | | | | | 0. | 0. | 0. |
| (10) RONNIE G. BARRETT<br>DIRECTOR | 1.00 | X | | | | | | 0. | 0. | 0. |
| (11) CLEL BAUDLER<br>DIRECTOR | 1.00 | X | | | | | | 0. | 0. | 0. |
| (12) J. KENNETH BLACKWELL<br>DIRECTOR | 1.00 | X | | | | | | 0. | 0. | 0. |
| (13) MATT BLUNT<br>DIRECTOR | 1.00 | X | | | | | | 0. | 0. | 0. |
| (14) DAN BOREN<br>DIRECTOR | 1.00 | X | | | | | | 0. | 0. | 0. |
| (15) ROBERT K. BROWN<br>DIRECTOR | 1.00 | X | | | | | | 0. | 0. | 0. |
| (16) PETE R. BROWNELL<br>DIRECTOR | 1.00<br>1.00 | X | | | | | | 2,997. | 0. | 0. |
| (17) DAVID BUTZ<br>DIRECTOR | 5.00 | X | | | | | | 100,000. | 0. | 0. |

832007 12-31-18　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　Form **990** (2018)

Form 990 (2018)      NATIONAL RIFLE ASSOCIATION OF AMERICA    53-0116130    Page **8**

**Part VII** Section A. Officers, Directors, Trustees, Key Employees, and Highest Compensated Employees *(continued)*

| (A)<br>Name and title | (B)<br>Average hours per week (list any hours for related organizations below line) | (C)<br>Position (do not check more than one box, unless person is both an officer and a director/trustee) | | | | | | (D)<br>Reportable compensation from the organization (W-2/1099-MISC) | (E)<br>Reportable compensation from related organizations (W-2/1099-MISC) | (F)<br>Estimated amount of other compensation from the organization and related organizations |
|---|---|---|---|---|---|---|---|---|---|---|
| | | Individual trustee or director | Institutional trustee | Officer | Key employee | Highest compensated employee | Former | | | |
| (18) DEAN CAIN<br>DIRECTOR (STARTING 5/5/2018) | 1.00 | X | | | | | | 0. | 0. | 0. |
| (19) TED W. CARTER<br>DIRECTOR | 1.00 | X | | | | | | 0. | 0. | 0. |
| (20) PATRICIA A. CLARK<br>DIRECTOR | 1.00 | X | | | | | | 0. | 0. | 0. |
| (21) ALLAN D. CORS<br>DIRECTOR | 1.00 | X | | | | | | 0. | 0. | 0. |
| (22) CHARLES L. COTTON<br>DIRECTOR | 1.00 | X | | | | | | 0. | 0. | 0. |
| (23) DAVID G. COY<br>DIRECTOR | 1.00 | X | | | | | | 0. | 0. | 0. |
| (24) LARRY E. CRAIG<br>DIRECTOR | 1.00 | X | | | | | | 0. | 0. | 0. |
| (25) JOHN L CUSHMAN<br>DIRECTOR | 1.00 | X | | | | | | 0. | 0. | 0. |
| (26) R. LEE ERMEY<br>DIRECTOR (ENDING 4/15/2018) | 1.00 | X | | | | | | 0. | 0. | 0. |
| 1b Sub-total ▶ | | | | | | | | 102,997. | 0. | 0. |
| c Total from continuation sheets to Part VII, Section A ▶ | | | | | | | | 12,820,292. | 0. | 756,013. |
| d Total (add lines 1b and 1c) ▶ | | | | | | | | 12,923,289. | 0. | 756,013. |

**2** Total number of individuals (including but not limited to those listed above) who received more than $100,000 of reportable compensation from the organization ▶    122

| | | Yes | No |
|---|---|---|---|
| **3** | Did the organization list any **former** officer, director, or trustee, key employee, or highest compensated employee on line 1a? *If "Yes," complete Schedule J for such individual* ........ 3 | | X |
| **4** | For any individual listed on line 1a, is the sum of reportable compensation and other compensation from the organization and related organizations greater than $150,000? *If "Yes," complete Schedule J for such individual* ........ 4 | | X |
| **5** | Did any person listed on line 1a receive or accrue compensation from any unrelated organization or individual for services rendered to the organization? *If "Yes," complete Schedule J for such person* ........ 5 | | X |

**Section B. Independent Contractors**

**1** Complete this table for your five highest compensated independent contractors that received more than $100,000 of compensation from the organization. Report compensation for the calendar year ending with or within the organization's tax year.

| (A)<br>Name and business address | (B)<br>Description of services | (C)<br>Compensation |
|---|---|---|
| ACKERMAN MCQUEEN INC<br>1601 NW EXPRESSWAY, OKLAHOMA CITY, OK 73118 | PUBLIC RELATIONS AND ADVERTISING | 31,994,168. |
| INFOCISION MANAGEMENT CORP<br>325 SPRINGSIDE DR, AKRON, OH 44333 | MEMBERSHIP PROCESSING AND CONTR | 25,727,854. |
| BREWER ATTORNEYS AND COUNSELORS<br>1717 MAIN ST, SUITE 5900, DALLAS, TX 75201 | LEGAL SERVICES | 13,832,060. |
| MEMBERSHIP MARKETING PARTNERS LLC, 11250 WAPLES MILL TD, SUITE 310, FAIRFAX, VA | FUNDRAISING PRINTING AND MAILING | 12,561,213. |
| VALTIM INC<br>1095 VENTURE DR, FOREST, VA 24551 | FULFILLMENT CENTER | 8,836,104. |

**2** Total number of independent contractors (including but not limited to those listed above) who received more than $100,000 of compensation from the organization ▶    123

SEE PART VII, SECTION A CONTINUATION SHEETS

Form **990** (2018)

832008 12-31-18

Form 990    NATIONAL RIFLE ASSOCIATION OF AMERICA    53-0116130

**Part VII** | Section A. Officers, Directors, Trustees, Key Employees, and Highest Compensated Employees *(continued)*

| (A) Name and title | (B) Average hours per week (list any hours for related organizations below line) | (C) Position (check all that apply) | | | | | | (D) Reportable compensation from the organization (W-2/1099-MISC) | (E) Reportable compensation from related organizations (W-2/1099-MISC) | (F) Estimated amount of other compensation from the organization and related organizations |
|---|---|---|---|---|---|---|---|---|---|---|
| | | Individual trustee or director | Institutional trustee | Officer | Key employee | Highest compensated employee | Former | | | |
| (27) EDIE P. FLEEMAN | 1.00 | | | | | | | | | |
| DIRECTOR | | X | | | | | | 0. | 0. | 0. |
| (28) CAROL FRAMPTON | 1.00 | | | | | | | | | |
| DIRECTOR | | X | | | | | | 0. | 0. | 0. |
| (29) JOEL FRIEDMAN | 1.00 | | | | | | | | | |
| DIRECTOR | | X | | | | | | 0. | 0. | 0. |
| (30) SANDRA S. FROMAN | 5.00 | | | | | | | | | |
| DIRECTOR | | X | | | | | | 13,060. | 0. | 0. |
| (31) JULIE GOLOB | 5.00 | | | | | | | | | |
| DIRECTOR (STARTING 5/5/2018) | | X | | | | | | 28,661. | 0. | 0. |
| (32) MARIA HEIL | 1.00 | | | | | | | | | |
| DIRECTOR | | X | | | | | | 0. | 0. | 0. |
| (33) GRAHAM HILL | 1.00 | | | | | | | | | |
| DIRECTOR | | X | | | | | | 0. | 0. | 0. |
| (34) STEVE HORNADY | 1.00 | | | | | | | | | |
| DIRECTOR (ENDING 5/5/2018) | | X | | | | | | 0. | 0. | 0. |
| (35) SUSAN HOWARD | 1.00 | | | | | | | | | |
| DIRECTOR | | X | | | | | | 0. | 0. | 0. |
| (36) CURTIS S. JENKINS | 1.00 | | | | | | | | | |
| DIRECTOR | | X | | | | | | 0. | 0. | 0. |
| (37) DAVID A. KEENE | 1.00 | | | | | | | | | |
| DIRECTOR | | X | | | | | | 40,000. | 0. | 0. |
| (38) TOM KING | 1.00 | | | | | | | | | |
| DIRECTOR | | X | | | | | | 0. | 0. | 0. |
| (39) TIMOTHY KNIGHT | 1.00 | | | | | | | | | |
| DIRECTOR | | X | | | | | | 0. | 0. | 0. |
| (40) HERBERT A. LANFORD JR. | 1.00 | | | | | | | | | |
| DIRECTOR | | X | | | | | | 0. | 0. | 0. |
| (41) WILLES K. LEE | 1.00 | | | | | | | | | |
| DIRECTOR | | X | | | | | | 0. | 0. | 0. |
| (42) CARRIE LIGHTFOOT | 1.00 | | | | | | | | | |
| DIRECTOR (STARTING 5/5/2018) | | X | | | | | | 2,907. | 0. | 0. |
| (43) DUANE LIPTAK, JR | 1.00 | | | | | | | | | |
| DIRECTOR (STARTING 5/5/2018) | | X | | | | | | 0. | 0. | 0. |
| (44) KARL A. MALONE | 1.00 | | | | | | | | | |
| DIRECTOR | | X | | | | | | 0. | 0. | 0. |
| (45) SEAN MALONEY | 1.00 | | | | | | | | | |
| DIRECTOR | | X | | | | | | 0. | 0. | 0. |
| (46) ROBERT E. MANSELL | 1.00 | | | | | | | | | |
| DIRECTOR | | X | | | | | | 0. | 0. | 0. |

Total to Part VII, Section A, line 1c ..................................................................

832201
04-01-18

Form 990  **NATIONAL RIFLE ASSOCIATION OF AMERICA**  53-0116130

**Part VII** | Section A.  Officers, Directors, Trustees, Key Employees, and Highest Compensated Employees *(continued)*

| (A)<br>Name and title | (B)<br>Average hours per week (list any hours for related organizations below line) | (C)<br>Position<br>(check all that apply) | | | | | | (D)<br>Reportable compensation from the organization (W-2/1099-MISC) | (E)<br>Reportable compensation from related organizations (W-2/1099-MISC) | (F)<br>Estimated amount of other compensation from the organization and related organizations |
|---|---|---|---|---|---|---|---|---|---|---|
| | | Individual trustee or director | Institutional trustee | Officer | Key employee | Highest compensated employee | Former | | | |
| (47) BILL MILLER<br>DIRECTOR | 1.00 | X | | | | | | 0. | 0. | 0. |
| (48) OWEN BUZ MILLS<br>DIRECTOR | 1.00 | X | | | | | | 5,553. | 0. | 0. |
| (49) CRAIG MORGAN<br>DIRECTOR | 1.00 | X | | | | | | 0. | 0. | 0. |
| (50) IL LING NEW<br>DIRECTOR (STARTING 5/5/2018) | 1.00 | X | | | | | | 0. | 0. | 0. |
| (51) GROVER NORQUIST<br>DIRECTOR (ENDING 5/5/2018) | 1.00 | X | | | | | | 0. | 0. | 0. |
| (52) ROBERT A. NOSLER<br>DIRECTOR | 1.00 | X | | | | | | 0. | 0. | 0. |
| (53) JOHNNY NUGENT<br>DIRECTOR | 1.00 | X | | | | | | 0. | 0. | 0. |
| (54) TED NUGENT<br>DIRECTOR | 1.00 | X | | | | | | 64,234. | 0. | 0. |
| (55) LANCE OLSON<br>DIRECTOR | 5.00 | X | | | | | | 75,000. | 0. | 0. |
| (56) MELANIE PEPPER<br>DIRECTOR | 1.00 | X | | | | | | 0. | 0. | 0. |
| (57) JAMES W. PORTER II<br>DIRECTOR | 1.00 | X | | | | | | 0. | 0. | 0. |
| (58) JAY PRINTZ<br>DIRECTOR | 1.00 | X | | | | | | 0. | 0. | 0. |
| (59) TODD J. RATHNER<br>DIRECTOR | 1.00 | X | | | | | | 0. | 0. | 0. |
| (60) KIM RHODE<br>DIRECTOR | 1.00 | X | | | | | | 0. | 0. | 0. |
| (61) WAYNE ANTHONY ROSS<br>DIRECTOR | 1.00 | X | | | | | | 0. | 0. | 0. |
| (62) CARL T. ROWAN, JR.<br>DIRECTOR | 1.00 | X | | | | | | 0. | 0. | 0. |
| (63) DON SABA<br>DIRECTOR | 1.00 | X | | | | | | 0. | 0. | 0. |
| (64) WILLIAM H. SATTERFIELD<br>DIRECTOR | 1.00 | X | | | | | | 0. | 0. | 0. |
| (65) RONALD L. SCHMEITS<br>DIRECTOR | 1.00 | X | | | | | | 0. | 0. | 0. |
| (66) ESTHER Q. SCHNEIDER<br>DIRECTOR | 1.00 | X | | | | | | 0. | 0. | 0. |

Total to Part VII, Section A, line 1c ......................................................

832201
04-01-18

Form 990  **NATIONAL RIFLE ASSOCIATION OF AMERICA**  53-0116130

**Part VII** Section A. Officers, Directors, Trustees, Key Employees, and Highest Compensated Employees *(continued)*

| (A)<br>Name and title | (B)<br>Average hours per week (list any hours for related organizations below line) | (C)<br>Position<br>(check all that apply) | | | | | | (D)<br>Reportable compensation from the organization (W-2/1099-MISC) | (E)<br>Reportable compensation from related organizations (W-2/1099-MISC) | (F)<br>Estimated amount of other compensation from the organization and related organizations |
|---|---|---|---|---|---|---|---|---|---|---|
| | | Individual trustee or director | Institutional trustee | Officer | Key employee | Highest compensated employee | Former | | | |
| (67) STEVEN C. SCHREINER<br>DIRECTOR | 1.00 | X | | | | | | 0. | 0. | 0. |
| (68) TOM SELLECK<br>DIRECTOR (ENDING 9/8/2018) | 1.00 | X | | | | | | 0. | 0. | 0. |
| (69) JOHN C. SIGLER<br>DIRECTOR | 1.00 | X | | | | | | 0. | 0. | 0. |
| (70) LEROY SISCO<br>DIRECTOR | 1.00 | X | | | | | | 0. | 0. | 0. |
| (71) BART SKELTON<br>DIRECTOR | 5.00 | X | | | | | | 15,000. | 0. | 0. |
| (72) STEPHANIE SPIKA<br>DIRECTOR (4/15/2018-5/5/2018) | 1.00 | X | | | | | | 0. | 0. | 0. |
| (73) KRISTY TITUS<br>DIRECTOR (STARTING 5/5/2018) | 1.00 | X | | | | | | 0. | 0. | 0. |
| (74) DWIGHT D. VAN HORN<br>DIRECTOR | 1.00 | X | | | | | | 0. | 0. | 0. |
| (75) BLAINE E. WADE<br>DIRECTOR | 1.00 | X | | | | | | 0. | 0. | 0. |
| (76) LINDA L. WALKER<br>DIRECTOR | 1.00 | X | | | | | | 0. | 0. | 0. |
| (77) HOWARD J. WALTER<br>DIRECTOR | 1.00 | X | | | | | | 0. | 0. | 0. |
| (78) HEIDI E. WASHINGTON<br>DIRECTOR | 1.00 | X | | | | | | 0. | 0. | 0. |
| (79) ALLEN B. WEST<br>DIRECTOR | 1.00 | X | | | | | | 0. | 0. | 0. |
| (80) ROBERT J. WOS<br>DIRECTOR (ENDING 5/5/2018) | 1.00 | X | | | | | | 0. | 0. | 0. |
| (81) DONALD E. YOUNG<br>DIRECTOR | 1.00 | X | | | | | | 0. | 0. | 0. |
| (82) WAYNE LAPIERRE<br>CEO AND EXECUTIVE VICE PRESIDENT | 60.00<br>1.00 | | | X | | | | 2,150,634. | 0. | 73,793. |
| (83) CHRIS W. COX<br>EXECUTIVE DIRECTOR, NRAILA | 49.00<br>1.00 | | | X | | | | 1,285,318. | 0. | 107,350. |
| (84) WILSON H. PHILLIPS<br>TREASURER (ENDING 9/13/2018) | 29.00<br>11.00 | | | X | | | | 900,537. | 0. | 48,232. |
| (85) JOSHUA L. POWELL<br>CHIEF OF STAFF AND EXEC. DIR | 40.00 | | | X | | | | 844,137. | 0. | 75,832. |
| (86) CRAIG B. SPRAY<br>TREASURER (FROM 9/13/2018) | 39.00<br>11.00 | | | X | | | | 596,958. | 0. | 51,257. |

Total to Part VII, Section A, line 1c ..........................................................

Form 990      **NATIONAL RIFLE ASSOCIATION OF AMERICA**     53-0116130

**Part VII** | Section A.   Officers, Directors, Trustees, Key Employees, and Highest Compensated Employees *(continued)*

| (A)<br>Name and title | (B)<br>Average hours per week (list any hours for related organizations below line) | (C)<br>Position (check all that apply) | | | | | | (D)<br>Reportable compensation from the organization (W-2/1099-MISC) | (E)<br>Reportable compensation from related organizations (W-2/1099-MISC) | (F)<br>Estimated amount of other compensation from the organization and related organizations |
|---|---|---|---|---|---|---|---|---|---|---|
| | | Individual trustee or director | Institutional trustee | Officer | Key employee | Highest compensated employee | Former | | | |
| (87) JOHN C. FRAZER<br>SECRETARY AND GENERAL COUNSEL | 50.00<br>1.00 | | | X | | | | 413,076. | 0. | 76,577. |
| (88) JOSEPH P. DEBERGALIS, JR.<br>EXEC DIR, GENERAL OPS (STARTING 12/3 | 50.00 | | | X | | | | 403,226. | 0. | 57,802. |
| (89) TYLER SCHROPP<br>MANAGING DIRECTOR, ADVANCEMENT | 50.00<br>1.00 | | | | | X | | 733,145. | 0. | 73,623. |
| (90) TODD GRABLE<br>EXECUTIVE DIRECTOR, MEMBERSHIP | 50.00 | | | | | X | | 667,386. | 0. | 66,154. |
| (91) DOUGLAS HAMLIN<br>EXECUTIVE DIRECTOR, PUBLICATIONS | 50.00 | | | | | X | | 581,321. | 0. | 74,409. |
| (92) DAVID LEHMAN<br>DEPUTY EXECUTIVE DIRECTOR, NRAILA | 50.00<br>1.00 | | | | | X | | 571,732. | 0. | 31,121. |
| (93) ERIC FROHARDT<br>DIRECTOR, EDUCATION AND TRAINING | 40.00 | | | | | X | | 525,745. | 0. | 19,863. |
| (94) ROBERT K. WEAVER<br>FMR EXE. DIR, GENERAL OPERATIONS | 0.00 | | | | | | X | 720,000. | 0. | 0. |
| (95) MICHEL MARCELLIN<br>FMR MANAGING DIR, AFFINITY AND LICEN | 0.00 | | | | | | X | 535,045. | 0. | 0. |
| (96) OLIVER L. NORTH<br>PRESIDENT | 20.00<br>1.00 | X | | X | | | | 1,377,617. | 0. | 0. |
| (97) MARION P. HAMMER<br>DIRECTOR | 5.00 | X | | | | | | 270,000. | 0. | 0. |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| Total to Part VII, Section A, line 1c ................................... | | | | | | | | 12,820,292. | | 756,013. |

832201<br>04-01-18

Form 990 (2018)  NATIONAL RIFLE ASSOCIATION OF AMERICA  53-0116130  Page **9**

| Part VIII | Statement of Revenue |

Check if Schedule O contains a response or note to any line in this Part VIII .................................................. [X]

| | | | | (A) Total revenue | (B) Related or exempt function revenue | (C) Unrelated business revenue | (D) Revenue excluded from tax under sections 512 - 514 |
|---|---|---|---|---|---|---|---|
| **Contributions, Gifts, Grants and Other Similar Amounts** | 1 a | Federated campaigns | 1a | | | | |
| | b | Membership dues | 1b | | | | |
| | c | Fundraising events | 1c | | | | |
| | d | Related organizations | 1d | 13,959,442. | | | |
| | e | Government grants (contributions) | 1e | | | | |
| | f | All other contributions, gifts, grants, and similar amounts not included above | 1f | 94,640,284. | | | |
| | g | Noncash contributions included in lines 1a-1f: $ | | 407,352. | | | |
| | h | **Total. Add lines 1a-1f** ........................ ▶ | | 108,599,726. | | | |
| **Program Service Revenue** | | | **Business Code** | | | | |
| | 2 a | MEMBER DUES | 813410 | 170,391,374. | 170,391,374. | | |
| | b | PROGRAM FEES | 813410 | 22,618,781. | 22,618,781. | | |
| | c | | | | | | |
| | d | | | | | | |
| | e | | | | | | |
| | f | All other program service revenue | | | | | |
| | g | **Total. Add lines 2a-2f** ........................ ▶ | | 193,010,155. | | | |
| | 3 | Investment income (including dividends, interest, and other similar amounts) ........................ ▶ | | 1,193,705. | | | 1,193,705. |
| | 4 | Income from investment of tax-exempt bond proceeds ▶ | | | | | |
| | 5 | Royalties ........................ ▶ | | 16,532,433. | | | 16,532,433. |
| | | | (i) Real | (ii) Personal | | | |
| | 6 a | Gross rents | 1,357,108. | | | | |
| | b | Less: rental expenses | 2,203,501. | | | | |
| | c | Rental income or (loss) | -846,393. | | | | |
| | d | Net rental income or (loss) ........................ ▶ | | -846,393. | | | -846,393. |
| | 7 a | Gross amount from sales of assets other than inventory | (i) Securities 9,261,323. | (ii) Other | | | |
| | b | Less: cost or other basis and sales expenses | 8,262,987. | | | | |
| | c | Gain or (loss) | 998,336. | | | | |
| | d | Net gain or (loss) ........................ ▶ | | 998,336. | | | 998,336. |
| **Other Revenue** | 8 a | Gross income from fundraising events (not including $ _____ of contributions reported on line 1c). See Part IV, line 18 ........................ a | | 1,403,289. | | | |
| | b | Less: direct expenses ........................ b | | 296,246. | | | |
| | c | Net income or (loss) from fundraising events ........ ▶ | | 1,107,043. | | | 1,107,043. |
| | 9 a | Gross income from gaming activities. See Part IV, line 19 ........................ a | | | | | |
| | b | Less: direct expenses ........................ b | | | | | |
| | c | Net income or (loss) from gaming activities ........ ▶ | | | | | |
| | 10 a | Gross sales of inventory, less returns and allowances ........................ a | | 10,853,015. | | | |
| | b | Less: cost of goods sold ........................ b | | 4,389,150. | | | |
| | c | Net income or (loss) from sales of inventory ........ ▶ | | 6,463,865. | 7,513,384. | -1,049,519. | |
| | | Miscellaneous Revenue | **Business Code** | | | | |
| | 11 a | ADVERTISING | 541800 | 23,881,546. | | 23,881,546. | |
| | b | OTHER UNRELATED BUSINESS ACTIVITY | 900004 | 1,111,167. | | 1,111,167. | |
| | c | CAFE SALES | 722320 | 361,429. | | | 361,429. |
| | d | All other revenue | 900009 | 137,852. | 137,852. | | |
| | e | **Total. Add lines 11a-11d** ........................ ▶ | | 25,491,994. | | | |
| | 12 | **Total revenue. See instructions** ........................ ▶ | | 352,550,864. | 200,661,391. | 23,943,194. | 19,346,553. |

832009 12-31-18  Form **990** (2018)

Form 990 (2018)     **NATIONAL RIFLE ASSOCIATION OF AMERICA**     53-0116130   Page **10**

| Part IX | Statement of Functional Expenses |

*Section 501(c)(3) and 501(c)(4) organizations must complete all columns. All other organizations must complete column (A).*

Check if Schedule O contains a response or note to any line in this Part IX ................................. [X]

| Do not include amounts reported on lines 6b, 7b, 8b, 9b, and 10b of Part VIII. | (A)<br>Total expenses | (B)<br>Program service expenses | (C)<br>Management and general expenses | (D)<br>Fundraising expenses |
|---|---|---|---|---|
| **1** Grants and other assistance to domestic organizations and domestic governments. See Part IV, line 21 ... | 13,328. | 13,328. | | |
| **2** Grants and other assistance to domestic individuals. See Part IV, line 22 ............ | 62,333. | 62,333. | | |
| **3** Grants and other assistance to foreign organizations, foreign governments, and foreign individuals. See Part IV, lines 15 and 16 ........ | | | | |
| **4** Benefits paid to or for members ................. | | | | |
| **5** Compensation of current officers, directors, trustees, and key employees ............ | 7,673,480. | 2,458,981. | 4,792,957. | 421,542. |
| **6** Compensation not included above, to disqualified persons (as defined under section 4958(f)(1)) and persons described in section 4958(c)(3)(B) ...... | 720,000. | | 720,000. | |
| **7** Other salaries and wages ..................... | 40,314,676. | 25,980,846. | 11,606,692. | 2,727,138. |
| **8** Pension plan accruals and contributions (include section 401(k) and 403(b) employer contributions) | 7,988,421. | 4,512,549. | 2,921,394. | 554,478. |
| **9** Other employee benefits ...................... | 4,538,230. | 2,878,218. | 1,345,012. | 315,000. |
| **10** Payroll taxes .................................. | 2,630,035. | 1,668,010. | 779,474. | 182,551. |
| **11** Fees for services (non-employees): | | | | |
| **a** Management ................................... | | | | |
| **b** Legal .......................................... | 25,064,761. | 8,633,178. | 16,431,583. | |
| **c** Accounting ................................... | 164,730. | | 164,730. | |
| **d** Lobbying ..................................... | 618,525. | 618,525. | | |
| **e** Professional fundraising services. See Part IV, line 17 | 7,798,658. | | | 7,798,658. |
| **f** Investment management fees ................. | 197,342. | | 197,342. | |
| **g** Other. (If line 11g amount exceeds 10% of line 25, column (A) amount, list line 11g expenses on Sch O.) | 17,858,262. | 17,858,262. | | |
| **12** Advertising and promotion ................... | 50,197,599. | 38,815,749. | | 11,381,850. |
| **13** Office expenses ............................... | 6,668,186. | 3,553,053. | 3,115,133. | |
| **14** Information technology ....................... | 11,707,133. | 6,794,820. | 4,912,313. | |
| **15** Royalties ...................................... | | | | |
| **16** Occupancy .................................... | 1,936,953. | 1,067,454. | 869,499. | |
| **17** Travel ......................................... | 8,472,207. | 6,123,416. | 2,348,791. | |
| **18** Payments of travel or entertainment expenses for any federal, state, or local public officials ... | | | | |
| **19** Conferences, conventions, and meetings ...... | 8,076,852. | 5,848,020. | 2,228,832. | |
| **20** Interest ....................................... | 1,645,869. | 876,110. | 769,759. | |
| **21** Payments to affiliates ........................ | | | | |
| **22** Depreciation, depletion, and amortization ...... | 4,065,900. | 2,900,998. | 1,164,902. | |
| **23** Insurance ..................................... | 1,772,834. | 1,772,834. | | |
| **24** Other expenses. Itemize expenses not covered above. (List miscellaneous expenses in line 24e. If line 24e amount exceeds 10% of line 25, column (A) amount, list line 24e expenses on Schedule O.) | | | | |
| **a** ADD'L MEMBER COMMUNICAT | 62,702,161. | 41,126,865. | | 21,575,296. |
| **b** ADD'L TRAINING AND COMM | 34,628,656. | 34,628,656. | | |
| **c** ADD'L PRINTING AND PUBL | 25,296,137. | 25,296,137. | | |
| **d** ADD'L ILA LEGISLATIVE P | 10,600,121. | 10,600,121. | | |
| **e** All other expenses ........................... | 11,861,928. | 6,816,302. | 1,910,554. | 3,135,072. |
| **25** Total functional expenses. Add lines 1 through 24e | 355,275,317. | 250,904,765. | 56,278,967. | 48,091,585. |
| **26** Joint costs. Complete this line only if the organization reported in column (B) joint costs from a combined educational campaign and fundraising solicitation. Check here ▶ ☐ if following SOP 98-2 (ASC 958-720) | | | | |

832010 12-31-18           Form **990** (2018)

Form 990 (2018)     NATIONAL RIFLE ASSOCIATION OF AMERICA     53-0116130   Page **11**

| Part X | Balance Sheet |
|---|---|

Check if Schedule O contains a response or note to any line in this Part X ........................................................ ☐

| | | | (A) Beginning of year | | (B) End of year |
|---|---|---|---|---|---|
| **Assets** | 1 | Cash - non-interest-bearing .......................................... | | 1 | |
| | 2 | Savings and temporary cash investments .......................... | 17,764,563. | 2 | 23,937,821. |
| | 3 | Pledges and grants receivable, net ................................. | 1,184,593. | 3 | 841,562. |
| | 4 | Accounts receivable, net .............................................. | 66,861,150. | 4 | 70,154,574. |
| | 5 | Loans and other receivables from current and former officers, directors, trustees, key employees, and highest compensated employees. Complete Part II of Schedule L ................................... | | 5 | |
| | 6 | Loans and other receivables from other disqualified persons (as defined under section 4958(f)(1)), persons described in section 4958(c)(3)(B), and contributing employers and sponsoring organizations of section 501(c)(9) voluntary employees' beneficiary organizations (see instr). Complete Part II of Sch L .... | | 6 | |
| | 7 | Notes and loans receivable, net ..................................... | 3,000,000. | 7 | 3,000,000. |
| | 8 | Inventories for sale or use ............................................ | 13,639,054. | 8 | 10,632,177. |
| | 9 | Prepaid expenses and deferred charges ........................... | 3,277,662. | 9 | 3,179,694. |
| | 10a | Land, buildings, and equipment: cost or other basis. Complete Part VI of Schedule D ..... 10a 79,426,001. | | | |
| | b | Less: accumulated depreciation ......... 10b 46,716,970. | 34,475,160. | 10c | 32,709,031. |
| | 11 | Investments - publicly traded securities ............................ | 47,415,094. | 11 | 44,066,394. |
| | 12 | Investments - other securities. See Part IV, line 11 ............. | 646,822. | 12 | 871,077. |
| | 13 | Investments - program-related. See Part IV, line 11 ............ | | 13 | |
| | 14 | Intangible assets ....................................................... | | 14 | |
| | 15 | Other assets. See Part IV, line 11 .................................. | 7,861,583. | 15 | 7,819,750. |
| | 16 | **Total assets.** Add lines 1 through 15 (must equal line 34) ...... | 196,125,681. | 16 | 197,212,080. |
| **Liabilities** | 17 | Accounts payable and accrued expenses ......................... | 90,339,532. | 17 | 84,837,717. |
| | 18 | Grants payable ......................................................... | | 18 | |
| | 19 | Deferred revenue ...................................................... | 31,402,766. | 19 | 46,580,520. |
| | 20 | Tax-exempt bond liabilities ........................................... | | 20 | |
| | 21 | Escrow or custodial account liability. Complete Part IV of Schedule D ... | | 21 | |
| | 22 | Loans and other payables to current and former officers, directors, trustees, key employees, highest compensated employees, and disqualified persons. Complete Part II of Schedule L ... | | 22 | |
| | 23 | Secured mortgages and notes payable to unrelated third parties ... | 47,121,100. | 23 | 43,138,412. |
| | 24 | Unsecured notes and loans payable to unrelated third parties ..... | | 24 | |
| | 25 | Other liabilities (including federal income tax, payables to related third parties, and other liabilities not included on lines 17-24). Complete Part X of Schedule D ... | 2,312,080. | 25 | 6,623,905. |
| | 26 | **Total liabilities.** Add lines 17 through 25 ........................ | 171,175,478. | 26 | 181,180,554. |
| **Net Assets or Fund Balances** | | Organizations that follow SFAS 117 (ASC 958), check here ▶ ☒ and complete lines 27 through 29, and lines 33 and 34. | | | |
| | 27 | Unrestricted net assets .............................................. | -31,779,579. | 27 | -36,276,779. |
| | 28 | Temporarily restricted net assets ................................... | 11,398,818. | 28 | 5,268,615. |
| | 29 | Permanently restricted net assets .................................. | 45,330,964. | 29 | 47,039,690. |
| | | Organizations that do not follow SFAS 117 (ASC 958), check here ▶ ☐ and complete lines 30 through 34. | | | |
| | 30 | Capital stock or trust principal, or current funds ................ | | 30 | |
| | 31 | Paid-in or capital surplus, or land, building, or equipment fund ... | | 31 | |
| | 32 | Retained earnings, endowment, accumulated income, or other funds ... | | 32 | |
| | 33 | Total net assets or fund balances .................................. | 24,950,203. | 33 | 16,031,526. |
| | 34 | Total liabilities and net assets/fund balances .................... | 196,125,681. | 34 | 197,212,080. |

Form **990** (2018)

832011 12-31-18

Form 990 (2018)      NATIONAL RIFLE ASSOCIATION OF AMERICA          53-0116130      Page **12**

| **Part XI** | **Reconciliation of Net Assets** | | |
|---|---|---|---|

Check if Schedule O contains a response or note to any line in this Part XI .................................................................. [X]

| | | | |
|---|---|---|---|
| 1 | Total revenue (must equal Part VIII, column (A), line 12) ........................................... | 1 | 352,550,864. |
| 2 | Total expenses (must equal Part IX, column (A), line 25) ........................................... | 2 | 355,275,317. |
| 3 | Revenue less expenses. Subtract line 2 from line 1 ................................................ | 3 | -2,724,453. |
| 4 | Net assets or fund balances at beginning of year (must equal Part X, line 33, column (A)) .................... | 4 | 24,950,203. |
| 5 | Net unrealized gains (losses) on investments ...................................................... | 5 | -5,029,267. |
| 6 | Donated services and use of facilities ............................................................. | 6 | |
| 7 | Investment expenses ............................................................................... | 7 | |
| 8 | Prior period adjustments .......................................................................... | 8 | |
| 9 | Other changes in net assets or fund balances (explain in Schedule O) .............................. | 9 | -1,164,957. |
| 10 | Net assets or fund balances at end of year. Combine lines 3 through 9 (must equal Part X, line 33, column (B)) ................................ | 10 | 16,031,526. |

| **Part XII** | **Financial Statements and Reporting** | | | |
|---|---|---|---|---|

Check if Schedule O contains a response or note to any line in this Part XII .................................................................. [ ]

| | | | Yes | No |
|---|---|---|---|---|
| 1 | Accounting method used to prepare the Form 990: [ ] Cash [X] Accrual [ ] Other _____ | | | |
| | If the organization changed its method of accounting from a prior year or checked "Other," explain in Schedule O. | | | |
| 2a | Were the organization's financial statements compiled or reviewed by an independent accountant? ...................... | 2a | | X |
| | If "Yes," check a box below to indicate whether the financial statements for the year were compiled or reviewed on a separate basis, consolidated basis, or both: | | | |
| | [ ] Separate basis  [ ] Consolidated basis  [ ] Both consolidated and separate basis | | | |
| b | Were the organization's financial statements audited by an independent accountant? .................................. | 2b | X | |
| | If "Yes," check a box below to indicate whether the financial statements for the year were audited on a separate basis, consolidated basis, or both: | | | |
| | [ ] Separate basis  [ ] Consolidated basis  [X] Both consolidated and separate basis | | | |
| c | If "Yes" to line 2a or 2b, does the organization have a committee that assumes responsibility for oversight of the audit, review, or compilation of its financial statements and selection of an independent accountant? ...................... | 2c | X | |
| | If the organization changed either its oversight process or selection process during the tax year, explain in Schedule O. | | | |
| 3a | As a result of a federal award, was the organization required to undergo an audit or audits as set forth in the Single Audit Act and OMB Circular A-133? .......................................................................... | 3a | | X |
| b | If "Yes," did the organization undergo the required audit or audits? If the organization did not undergo the required audit or audits, explain why in Schedule O and describe any steps taken to undergo such audits .................... | 3b | | |

Form **990** (2018)

832012 12-31-18

**SCHEDULE C**
(Form 990 or 990-EZ)

Department of the Treasury
Internal Revenue Service

# Political Campaign and Lobbying Activities

**For Organizations Exempt From Income Tax Under section 501(c) and section 527**
▶ Complete if the organization is described below. ▶ Attach to Form 990 or Form 990-EZ.
▶ Go to www.irs.gov/Form990 for instructions and the latest information.

OMB No. 1545-0047

**2018**

Open to Public
Inspection

**If the organization answered "Yes," on Form 990, Part IV, line 3, or Form 990-EZ, Part V, line 46 (Political Campaign Activities), then**
- Section 501(c)(3) organizations: Complete Parts I-A and B. Do not complete Part I-C.
- Section 501(c) (other than section 501(c)(3)) organizations: Complete Parts I-A and C below. Do not complete Part I-B.
- Section 527 organizations: Complete Part I-A only.

**If the organization answered "Yes," on Form 990, Part IV, line 4, or Form 990-EZ, Part VI, line 47 (Lobbying Activities), then**
- Section 501(c)(3) organizations that have filed Form 5768 (election under section 501(h)): Complete Part II-A. Do not complete Part II-B.
- Section 501(c)(3) organizations that have NOT filed Form 5768 (election under section 501(h)): Complete Part II-B. Do not complete Part II-A.

**If the organization answered "Yes," on Form 990, Part IV, line 5 (Proxy Tax) (see separate instructions) or Form 990-EZ, Part V, line 35c (Proxy Tax) (see separate instructions), then**
- Section 501(c)(4), (5), or (6) organizations: Complete Part III.

| Name of organization | Employer identification number |
|---|---|
| NATIONAL RIFLE ASSOCIATION OF AMERICA | 53-0116130 |

**Part I-A** Complete if the organization is exempt under section 501(c) or is a section 527 organization.

1 Provide a description of the organization's direct and indirect political campaign activities in Part IV.
2 Political campaign activity expenditures ▶ $ **4,319,458.**
3 Volunteer hours for political campaign activities **10,000.**

**Part I-B** Complete if the organization is exempt under section 501(c)(3).

1 Enter the amount of any excise tax incurred by the organization under section 4955 ▶ $ _____
2 Enter the amount of any excise tax incurred by organization managers under section 4955 ▶ $ _____
3 If the organization incurred a section 4955 tax, did it file Form 4720 for this year? ☐ Yes ☐ No
4a Was a correction made? ☐ Yes ☐ No
  b If "Yes," describe in Part IV.

**Part I-C** Complete if the organization is exempt under section 501(c), except section 501(c)(3).

1 Enter the amount directly expended by the filing organization for section 527 exempt function activities ▶ $ **785,548.**
2 Enter the amount of the filing organization's funds contributed to other organizations for section 527 exempt function activities ▶ $ **0.**
3 Total exempt function expenditures. Add lines 1 and 2. Enter here and on Form 1120-POL, line 17b ▶ $ **785,548.**
4 Did the filing organization file **Form 1120-POL** for this year? ☒ Yes ☐ No
5 Enter the names, addresses and employer identification number (EIN) of all section 527 political organizations to which the filing organization made payments. For each organization listed, enter the amount paid from the filing organization's funds. Also enter the amount of political contributions received that were promptly and directly delivered to a separate political organization, such as a separate segregated fund or a political action committee (PAC). If additional space is needed, provide information in Part IV.

| (a) Name | (b) Address | (c) EIN | (d) Amount paid from filing organization's funds. If none, enter -0-. | (e) Amount of political contributions received and promptly and directly delivered to a separate political organization. If none, enter -0-. |
|---|---|---|---|---|
| REPUBLICAN ATTORNEYS GENERAL ASSOCI | WASHINGTON, DC 20006 | 46-4501717 | 85,000. | 0. |
| REPUBLICAN GOVERNORS ASSOCIATION | WASHINGTON, DC 20006 | 11-3655877 | 135,000. | 0. |
| COLORADO REPUBLICAN COMMITTEE | GREENWOOD VILLAGE, CO 80111 | 84-0690399 | 120. | 0. |
| NRA POLITICAL VICTORY FUND (SEE PA | FAIRFAX, VA 22030 | 52-1083020 | 0. | 3,078. |
| | | | | |
| | | | | |

SEE PART IV FOR CONTINUATION

Schedule C (Form 990 or 990-EZ) 2018 **NATIONAL RIFLE ASSOCIATION OF AMERICA** 53-0116130 Page **2**

**Part II-A** Complete if the organization is exempt under section 501(c)(3) and filed Form 5768 (election under section 501(h)).

**A** Check ▶ ☐ if the filing organization belongs to an affiliated group (and list in Part IV each affiliated group member's name, address, EIN, expenses, and share of excess lobbying expenditures).

**B** Check ▶ ☐ if the filing organization checked box A and "limited control" provisions apply.

| Limits on Lobbying Expenditures<br>(The term "expenditures" means amounts paid or incurred.) | (a) Filing organization's totals | (b) Affiliated group totals |
|---|---|---|
| **1a** Total lobbying expenditures to influence public opinion (grass roots lobbying) | | |
| **b** Total lobbying expenditures to influence a legislative body (direct lobbying) | | |
| **c** Total lobbying expenditures (add lines 1a and 1b) | | |
| **d** Other exempt purpose expenditures | | |
| **e** Total exempt purpose expenditures (add lines 1c and 1d) | | |
| **f** Lobbying nontaxable amount. Enter the amount from the following table in both columns. | | |

| If the amount on line 1e, column (a) or (b) is: | The lobbying nontaxable amount is: |
|---|---|
| Not over $500,000 | 20% of the amount on line 1e. |
| Over $500,000 but not over $1,000,000 | $100,000 plus 15% of the excess over $500,000. |
| Over $1,000,000 but not over $1,500,000 | $175,000 plus 10% of the excess over $1,000,000. |
| Over $1,500,000 but not over $17,000,000 | $225,000 plus 5% of the excess over $1,500,000. |
| Over $17,000,000 | $1,000,000. |

| | (a) Filing organization's totals | (b) Affiliated group totals |
|---|---|---|
| **g** Grassroots nontaxable amount (enter 25% of line 1f) | | |
| **h** Subtract line 1g from line 1a. If zero or less, enter -0- | | |
| **i** Subtract line 1f from line 1c. If zero or less, enter -0- | | |
| **j** If there is an amount other than zero on either line 1h or line 1i, did the organization file Form 4720 reporting section 4911 tax for this year? | ☐ Yes | ☐ No |

**4-Year Averaging Period Under Section 501(h)**
(Some organizations that made a section 501(h) election do not have to complete all of the five columns below.
See the separate instructions for lines 2a through 2f.)

**Lobbying Expenditures During 4-Year Averaging Period**

| Calendar year<br>(or fiscal year beginning in) | (a) 2015 | (b) 2016 | (c) 2017 | (d) 2018 | (e) Total |
|---|---|---|---|---|---|
| **2a** Lobbying nontaxable amount | | | | | |
| **b** Lobbying ceiling amount<br>(150% of line 2a, column(e)) | | | | | |
| **c** Total lobbying expenditures | | | | | |
| **d** Grassroots nontaxable amount | | | | | |
| **e** Grassroots ceiling amount<br>(150% of line 2d, column (e)) | | | | | |
| **f** Grassroots lobbying expenditures | | | | | |

Schedule C (Form 990 or 990-EZ) 2018

832042 11-08-18

Schedule C (Form 990 or 990-EZ) 2018 NATIONAL RIFLE ASSOCIATION OF AMERICA 53-0116130 Page 3

**Part II-B** Complete if the organization is exempt under section 501(c)(3) and has NOT filed Form 5768 (election under section 501(h)).

| For each "Yes," response on lines 1a through 1i below, provide in Part IV a detailed description of the lobbying activity. | (a) | | (b) |
|---|---|---|---|
| | Yes | No | Amount |
| **1** During the year, did the filing organization attempt to influence foreign, national, state, or local legislation, including any attempt to influence public opinion on a legislative matter or referendum, through the use of: | | | |
| **a** Volunteers? ............................................................ | | | |
| **b** Paid staff or management (include compensation in expenses reported on lines 1c through 1i)? ... | | | |
| **c** Media advertisements? ................................................... | | | |
| **d** Mailings to members, legislators, or the public? ............................. | | | |
| **e** Publications, or published or broadcast statements? .......................... | | | |
| **f** Grants to other organizations for lobbying purposes? ......................... | | | |
| **g** Direct contact with legislators, their staffs, government officials, or a legislative body? ......... | | | |
| **h** Rallies, demonstrations, seminars, conventions, speeches, lectures, or any similar means? ......... | | | |
| **i** Other activities? ........................................................ | | | |
| **j** Total. Add lines 1c through 1i ........................................... | | | |
| **2a** Did the activities in line 1 cause the organization to be not described in section 501(c)(3)? ......... | | | |
| **b** If "Yes," enter the amount of any tax incurred under section 4912 ......... | | | |
| **c** If "Yes," enter the amount of any tax incurred by organization managers under section 4912 ...... | | | |
| **d** If the filing organization incurred a section 4912 tax, did it file Form 4720 for this year? ......... | | | |

**Part III-A** Complete if the organization is exempt under section 501(c)(4), section 501(c)(5), or section 501(c)(6).

| | | | Yes | No |
|---|---|---|---|---|
| **1** | Were substantially all (90% or more) dues received nondeductible by members? .............................. | **1** | X | |
| **2** | Did the organization make only in-house lobbying expenditures of $2,000 or less? .......................... | **2** | | X |
| **3** | Did the organization agree to carry over lobbying and political campaign activity expenditures from the prior year? | **3** | | X |

**Part III-B** Complete if the organization is exempt under section 501(c)(4), section 501(c)(5), or section 501(c)(6) and if either (a) BOTH Part III-A, lines 1 and 2, are answered "No," OR (b) Part III-A, line 3, is answered "Yes."

| | | | |
|---|---|---|---|
| **1** | Dues, assessments and similar amounts from members ........................................... | **1** | |
| **2** | Section 162(e) nondeductible lobbying and political expenditures **(do not include amounts of political expenses for which the section 527(f) tax was paid).** | | |
| **a** | Current year ................................................................. | **2a** | |
| **b** | Carryover from last year ....................................................... | **2b** | |
| **c** | Total ....................................................................... | **2c** | |
| **3** | Aggregate amount reported in section 6033(e)(1)(A) notices of nondeductible section 162(e) dues ............ | **3** | |
| **4** | If notices were sent and the amount on line 2c exceeds the amount on line 3, what portion of the excess does the organization agree to carryover to the reasonable estimate of nondeductible lobbying and political expenditure next year? ........................................................ | **4** | |
| **5** | Taxable amount of lobbying and political expenditures (see instructions) .............................. | **5** | |

**Part IV** Supplemental Information

Provide the descriptions required for Part I-A, line 1; Part I-B, line 4; Part I-C, line 5; Part II-A (affiliated group list); Part II-A, lines 1 and 2 (see instructions); and Part II-B, line 1. Also, complete this part for any additional information.

PART I-A, LINE 1:

SUPPORT FOR FUNDRAISING AND ADMINISTRATIVE EXPENSES OF A SEPARATE

SEGREGATED FUND IS INDUSTRY STANDARD FOR NONPROFIT ORGANIZATIONS LIKE

THE NRA, AS ALLOWED BY LAW. IN 2018, THE NRA PAID $4,319,459

FUNDRAISING AND ADMINISTRATIVE EXPENSES FOR THE SEPARATE SEGREGATED

FUND, NRA POLITICAL VICTORY FUND, AS ALLOWED BY LAW. THE NRA ENGAGED IN

832043 11-08-18

Schedule C (Form 990 or 990-EZ) 2018 NATIONAL RIFLE ASSOCIATION OF AMERICA 53-0116130 Page 4

| Part IV | Supplemental Information (continued) |

ACTIVITIES IN SUPPORT OF ITS MISSION, WHICH INCLUDES PROTECTING AND

DEFENDING THE CONSTITUTION OF THE UNITED STATES, ESPECIALLY WITH

REFERENCE TO THE INALIENABLE RIGHT OF INDIVIDUAL AMERICAN CITIZEN

GUARANTEED BY SUCH CONSTITUTION TO ACQUIRE, POSSESS, COLLECT, EXHIBIT,

TRANSPORT, CARRY, TRANSFER OWNERSHIP OF, AND ENJOY THE RIGHT TO USE

ARMS, IN ORDER THAT THE PEOPLE MAY ALWAYS BE IN A POSITION TO EXERCISE

THEIR LEGITIMATE INDIVIDUAL RIGHTS OF SELF PRESERVATION AND DEFENSE OF

FAMILY, PERSON, AND PROPERTY. IN PURSUIT OF THESE GOALS OF THE

ASSOCIATION, THE NRA SPENT FUNDS DIRECTLY AND INDIRECTLY ON POLITICAL

ACTIVITIES, WHICH WERE NOT THE PRIMARY ACTIVITIES OF THE ORGANIZATION.

THE NRA IS ORGANIZED PRIMARILY TO PROMOTE SOCIAL WELFARE AND CAN ALSO

ENGAGE IN POLITICAL ACTIVITIES ON BEHALF OF OR IN OPPOSITION TO

CANDIDATES FOR POLITICAL OFFICE, AS ALLOWED BY LAW. BY ANY MEASURE, THE

PERCENTAGE OF FUNDS SPENT BY THE NRA ON POLITICAL ACTIVATES IS MODEST

IN COMPARISON TO THE BUDGET DEVOTED TO THE PRIMARY ACTIVITIES OF THE

NRA. FOR INSTANCE, ALL EXPENDITURES NOTED ON PART I-A AND I-C OF

SCHEDULE C AMOUNTED TO ABOUT 1% OF THE NRA'S TOTAL EXPENSES IN 2018, AS

APPLIED TO TOTAL EXPENSES REPORTED ON FORM 990, PART IX, LINE 25.

REPORTERS AND OTHER READERS ARE ALSO KINDLY REMINDED THAT THE SEPARATE

SEGREGATED FUND IS A SEPARATE ENTITY FOR TAX PURPOSES.


PART I-C CONTINUATION FOR INCOMPLETE NAME/ADDRESS INFORMATION:

REPUBLICAN ATTORNEYS GENERAL ASSOCIATION

1747 PENNSYLVANIA AVE NW STE 800 WASHINGTON, DC 20006


REPUBLICAN GOVERNORS ASSOCIATION

1747 PENNSYLVANIA AVE NW STE 250 WASHINGTON, DC 20006

832044 11-08-18

Schedule C (Form 990 or 990-EZ) 2018 NATIONAL RIFLE ASSOCIATION OF AMERICA     53-0116130  Page 4

| Part IV | Supplemental Information (continued) |

COLORADO REPUBLICAN COMMITTEE

59505 S WILLOW DR GREENWOOD VILLAGE, CO 80111


NRA POLITICAL VICTORY FUND (SEE PARTS I-A AND IV)

11250 WAPLES MILL RD FAIRFAX, VA 22030


PART I-C LINE 4

THIS INFORMATION NOTE REGARDS THE NRA'S TAXES. THE NRA SEPARATELY FILES

FORM 1120-POL, WHICH IS NOT SUBJECT TO PUBLIC DISCLOSURE. THE FOLLOWING

INFORMATION ABOUT TAXES PAID WITH THE NRA'S FORMS 1120-POL IS SHARED HERE

ON A VOLUNTARY BASIS AS A SERVICE TO READERS AND TO DEMONSTRATE IN GOOD

FAITH THAT THE ORGANIZATION IS A TAXPAYER IN GOOD STANDING. 527(F) PROXY

TAX IS PAID ON THE LESSER OF NET INVESTMENT INCOME OR CERTAIN POLITICAL

EXPENDITURES AS DEFINED BY THE FEDERAL TAX CODE, SUCH AS WHEN CERTAIN

POLITICAL COMMUNICATIONS EXPRESSLY ADVOCATE THE ELECTION OR DEFEAT OF A

CANDIDATE AND ARE MADE BY THE NRA ITSELF RATHER THAN BY THE NRA'S SEPARATE

SEGREGATED FUND.  THE AMOUNT OF 527 (F) PROXY TAX PAID WITH THE NRA'S 2018

FORM 1120-POL WAS $164,944. HISTORICALLY, NO 527(F) PROXY TAX WAS REQUIRED

TO BE PAID FOR 2017; THE AMOUNT OF 527(F) PROXY TAX PAID WITH THE NRA'S

2016 FORM 1120-POL WAS $20,835; THE AMOUNT PAID WITH THE NRA'S 2015 FORM

1120-POL WAS $21,817. AS ANOTHER POLITE REMINDER TO REPORTERS AND OTHER

READERS, FORM 990 INFORMATION IS NOT NECESSARILY EXPECTED TO TIE TO

FEDERAL ELECTION COMMISSION (FEC) REPORTING DUE TO DIFFERENT DEFINITIONS

AND EXCLUSIONS IN THE DIFFERENT REGULATORY REGIMES.


PART I-C LINE 5

THE NRA POLITICAL VICTORY FUND, AND AN INDEPENDENT POLITICAL ACTION

COMMITTEE (PAC) OF THE NRA, DIRECTLY RECEIVED CONTRIBUTIONS DURING 2018 OF

Schedule C (Form 990 or 990-EZ) 2018

832044 11-08-18

Schedule C (Form 990 or 990-EZ) 2018 NATIONAL RIFLE ASSOCIATION OF AMERICA     53-0116130  Page 4

**Part IV  Supplemental Information** *(continued)*

$12,938,624.

832044  11-08-18

**SCHEDULE D**
(Form 990)

Department of the Treasury
Internal Revenue Service

# Supplemental Financial Statements

▶ Complete if the organization answered "Yes" on Form 990,
Part IV, line 6, 7, 8, 9, 10, 11a, 11b, 11c, 11d, 11e, 11f, 12a, or 12b.
▶ Attach to Form 990.
▶ Go to www.irs.gov/Form990 for instructions and the latest information.

OMB No. 1545-0047

**2018**
Open to Public
Inspection

| Name of the organization | Employer identification number |
|---|---|
| NATIONAL RIFLE ASSOCIATION OF AMERICA | 53-0116130 |

**Part I** | **Organizations Maintaining Donor Advised Funds or Other Similar Funds or Accounts.** Complete if the organization answered "Yes" on Form 990, Part IV, line 6.

| | | (a) Donor advised funds | (b) Funds and other accounts |
|---|---|---|---|
| 1 | Total number at end of year ................................ | | |
| 2 | Aggregate value of contributions to (during year) ............ | | |
| 3 | Aggregate value of grants from (during year) ................. | | |
| 4 | Aggregate value at end of year ............................ | | |

5 Did the organization inform all donors and donor advisors in writing that the assets held in donor advised funds
are the organization's property, subject to the organization's exclusive legal control? ........................ ☐ Yes ☐ No

6 Did the organization inform all grantees, donors, and donor advisors in writing that grant funds can be used only
for charitable purposes and not for the benefit of the donor or donor advisor, or for any other purpose conferring
impermissible private benefit? ............................................................................. ☐ Yes ☐ No

**Part II** | **Conservation Easements.** Complete if the organization answered "Yes" on Form 990, Part IV, line 7.

1 Purpose(s) of conservation easements held by the organization (check all that apply).
☐ Preservation of land for public use (e.g., recreation or education)       ☐ Preservation of a historically important land area
☐ Protection of natural habitat                                              ☐ Preservation of a certified historic structure
☐ Preservation of open space

2 Complete lines 2a through 2d if the organization held a qualified conservation contribution in the form of a conservation easement on the last
day of the tax year.

| | | Held at the End of the Tax Year |
|---|---|---|
| a | Total number of conservation easements .................................................... | 2a |
| b | Total acreage restricted by conservation easements ....................................... | 2b |
| c | Number of conservation easements on a certified historic structure included in (a) ........... | 2c |
| d | Number of conservation easements included in (c) acquired after 7/25/06, and not on a historic structure listed in the National Register | 2d |

3 Number of conservation easements modified, transferred, released, extinguished, or terminated by the organization during the tax
year ▶ _____

4 Number of states where property subject to conservation easement is located ▶ _____

5 Does the organization have a written policy regarding the periodic monitoring, inspection, handling of
violations, and enforcement of the conservation easements it holds? .................................... ☐ Yes ☐ No

6 Staff and volunteer hours devoted to monitoring, inspecting, handling of violations, and enforcing conservation easements during the year
▶ _____

7 Amount of expenses incurred in monitoring, inspecting, handling of violations, and enforcing conservation easements during the year
▶ $ _____

8 Does each conservation easement reported on line 2(d) above satisfy the requirements of section 170(h)(4)(B)(i)
and section 170(h)(4)(B)(ii)? ........................................................................ ☐ Yes ☐ No

9 In Part XIII, describe how the organization reports conservation easements in its revenue and expense statement, and balance sheet, and
include, if applicable, the text of the footnote to the organization's financial statements that describes the organization's accounting for
conservation easements.

**Part III** | **Organizations Maintaining Collections of Art, Historical Treasures, or Other Similar Assets.**
Complete if the organization answered "Yes" on Form 990, Part IV, line 8.

1a If the organization elected, as permitted under SFAS 116 (ASC 958), not to report in its revenue statement and balance sheet works of art,
historical treasures, or other similar assets held for public exhibition, education, or research in furtherance of public service, provide, in Part XIII,
the text of the footnote to its financial statements that describes these items.

b If the organization elected, as permitted under SFAS 116 (ASC 958), to report in its revenue statement and balance sheet works of art, historical
treasures, or other similar assets held for public exhibition, education, or research in furtherance of public service, provide the following amounts
relating to these items:

(i) Revenue included on Form 990, Part VIII, line 1 ............................................. ▶ $ _____
(ii) Assets included in Form 990, Part X .................................................... ▶ $ _____

2 If the organization received or held works of art, historical treasures, or other similar assets for financial gain, provide
the following amounts required to be reported under SFAS 116 (ASC 958) relating to these items:

a Revenue included on Form 990, Part VIII, line 1 ............................................. ▶ $ _____
b Assets included in Form 990, Part X ....................................................... ▶ $ _____

LHA  **For Paperwork Reduction Act Notice, see the Instructions for Form 990.**                                    **Schedule D (Form 990) 2018**

832051 10-29-18

Schedule D (Form 990) 2018    **NATIONAL RIFLE ASSOCIATION OF AMERICA**    53-0116130   Page **2**

## Part III | Organizations Maintaining Collections of Art, Historical Treasures, or Other Similar Assets *(continued)*

3   Using the organization's acquisition, accession, and other records, check any of the following that are a significant use of its collection items (check all that apply):

a   [X] Public exhibition            d   [X] Loan or exchange programs

b   [X] Scholarly research         e   [ ] Other _____

c   [X] Preservation for future generations

4   Provide a description of the organization's collections and explain how they further the organization's exempt purpose in Part XIII.

5   During the year, did the organization solicit or receive donations of art, historical treasures, or other similar assets
to be sold to raise funds rather than to be maintained as part of the organization's collection? ........................ [X] Yes    [ ] No

## Part IV | Escrow and Custodial Arrangements. Complete if the organization answered "Yes" on Form 990, Part IV, line 9, or reported an amount on Form 990, Part X, line 21.

1a   Is the organization an agent, trustee, custodian or other intermediary for contributions or other assets not included
on Form 990, Part X? ........................................................................................................ [ ] Yes    [ ] No

b   If "Yes," explain the arrangement in Part XIII and complete the following table:

| | | Amount |
|---|---|---|
| c   Beginning balance | 1c | |
| d   Additions during the year | 1d | |
| e   Distributions during the year | 1e | |
| f   Ending balance | 1f | |

2a   Did the organization include an amount on Form 990, Part X, line 21, for escrow or custodial account liability? ............... [ ] Yes    [ ] No

b   If "Yes," explain the arrangement in Part XIII. Check here if the explanation has been provided on Part XIII ..................... [ ]

## Part V | Endowment Funds. Complete if the organization answered "Yes" on Form 990, Part IV, line 10.

| | | (a) Current year | (b) Prior year | (c) Two years back | (d) Three years back | (e) Four years back |
|---|---|---|---|---|---|---|
| 1a | Beginning of year balance | 20,556,237. | 19,520,783. | 17,657,500. | 16,738,628. | 15,706,221. |
| b | Contributions | 1,603,940. | 1,371,910. | 1,482,504. | 1,988,178. | 1,346,379. |
| c | Net investment earnings, gains, and losses | -886,512. | 625,818. | 1,204,551. | -266,970. | 366,395. |
| d | Grants or scholarships | | | | | |
| e | Other expenditures for facilities and programs | 940,564. | 916,400. | 786,344. | 772,538. | 642,077. |
| f | Administrative expenses | 49,737. | 35,574. | 37,728. | 29,798. | 38,290. |
| g | End of year balance | 20,283,364. | 20,566,537. | 19,520,483. | 17,657,500. | 16,738,628. |

2   Provide the estimated percentage of the current year end balance (line 1g, column (a)) held as:

a   Board designated or quasi-endowment ▶ _____ %

b   Permanent endowment ▶   100.00   %

c   Temporarily restricted endowment ▶ _____ %

The percentages on lines 2a, 2b, and 2c should equal 100%.

3a   Are there endowment funds not in the possession of the organization that are held and administered for the organization
by:

| | | Yes | No |
|---|---|---|---|
| (i)   unrelated organizations ................................................................... | 3a(i) | | X |
| (ii)   related organizations ..................................................................... | 3a(ii) | X | |
| b   If "Yes" on line 3a(ii), are the related organizations listed as required on Schedule R? ............... | 3b | X | |

4   Describe in Part XIII the intended uses of the organization's endowment funds.

## Part VI | Land, Buildings, and Equipment.

Complete if the organization answered "Yes" on Form 990, Part IV, line 11a. See Form 990, Part X, line 10.

| Description of property | (a) Cost or other basis (investment) | (b) Cost or other basis (other) | (c) Accumulated depreciation | (d) Book value |
|---|---|---|---|---|
| 1a   Land | | 5,380,792. | | 5,380,792. |
| b   Buildings | | 55,410,753. | 32,259,301. | 23,151,452. |
| c   Leasehold improvements | | | | |
| d   Equipment | | 18,634,456. | 14,457,669. | 4,176,787. |
| e   Other | | | | |

**Total.** Add lines 1a through 1e. *(Column (d) must equal Form 990, Part X, column (B), line 10c.)* ............................... ▶ | 32,709,031.

Schedule D (Form 990) 2018

832052 10-29-18

Schedule D (Form 990) 2018    NATIONAL RIFLE ASSOCIATION OF AMERICA    53-0116130   Page **3**

| Part VII | **Investments - Other Securities.** |
|---|---|

Complete if the organization answered "Yes" on Form 990, Part IV, line 11b. See Form 990, Part X, line 12.

| (a) Description of security or category (including name of security) | (b) Book value | (c) Method of valuation: Cost or end-of-year market value |
|---|---|---|
| **(1)** Financial derivatives ............................................. | | |
| **(2)** Closely-held equity interests ............................ | | |
| **(3)** Other | | |
| (A) | | |
| (B) | | |
| (C) | | |
| (D) | | |
| (E) | | |
| (F) | | |
| (G) | | |
| (H) | | |
| **Total.** (Col. (b) must equal Form 990, Part X, col. (B) line 12.) ▶ | | |

| Part VIII | **Investments - Program Related.** |
|---|---|

Complete if the organization answered "Yes" on Form 990, Part IV, line 11c. See Form 990, Part X, line 13.

| (a) Description of investment | (b) Book value | (c) Method of valuation: Cost or end-of-year market value |
|---|---|---|
| (1) | | |
| (2) | | |
| (3) | | |
| (4) | | |
| (5) | | |
| (6) | | |
| (7) | | |
| (8) | | |
| (9) | | |
| **Total.** (Col. (b) must equal Form 990, Part X, col. (B) line 13.) ▶ | | |

| Part IX | **Other Assets.** |
|---|---|

Complete if the organization answered "Yes" on Form 990, Part IV, line 11d. See Form 990, Part X, line 15.

| (a) Description | (b) Book value |
|---|---|
| (1) | |
| (2) | |
| (3) | |
| (4) | |
| (5) | |
| (6) | |
| (7) | |
| (8) | |
| (9) | |
| **Total.** (Column (b) must equal Form 990, Part X, col. (B) line 15.) ............................................ ▶ | |

| Part X | **Other Liabilities.** |
|---|---|

Complete if the organization answered "Yes" on Form 990, Part IV, line 11e or 11f. See Form 990, Part X, line 25.

| **1.** | (a) Description of liability | (b) Book value |
|---|---|---|
| | (1) Federal income taxes | |
| | (2) NOTE PAYABLE - NRA FOUNDATION | 5,000,000. |
| | (3) CAPITAL LEASE ARRANGEMENT | 1,037,889. |
| | (4) DERIVATIVE INSTRUMENT MARKET | |
| | (5) VALUATION | 429,922. |
| | (6) ACCRUED SALES AND USE TAXES | 149,220. |
| | (7) COUPON LIABILITY | 6,874. |
| | (8) | |
| | (9) | |
| **Total.** (Column (b) must equal Form 990, Part X, col. (B) line 25.) ............... ▶ | | 6,623,905. |

**2.** Liability for uncertain tax positions. In Part XIII, provide the text of the footnote to the organization's financial statements that reports the organization's liability for uncertain tax positions under FIN 48 (ASC 740). Check here if the text of the footnote has been provided in Part XIII   [ X ]

Schedule D (Form 990) 2018

Schedule D (Form 990) 2018    NATIONAL RIFLE ASSOCIATION OF AMERICA    53-0116130   Page **4**

**Part XI** | **Reconciliation of Revenue per Audited Financial Statements With Revenue per Return.**

Complete if the organization answered "Yes" on Form 990, Part IV, line 12a.

| | | | | | |
|---|---|---|---|---|---|
| 1 | Total revenue, gains, and other support per audited financial statements | | | 1 | 352,886,958. |
| 2 | Amounts included on line 1 but not on Form 990, Part VIII, line 12: | | | | |
| a | Net unrealized gains (losses) on investments | 2a | -5,029,267. | | |
| b | Donated services and use of facilities | 2b | | | |
| c | Recoveries of prior year grants | 2c | | | |
| d | Other (Describe in Part XIII.) | 2d | -1,164,957. | | |
| e | Add lines 2a through 2d | | | 2e | -6,194,224. |
| 3 | Subtract line 2e from line 1 | | | 3 | 359,081,182. |
| 4 | Amounts included on Form 990, Part VIII, line 12, but not on line 1: | | | | |
| a | Investment expenses not included on Form 990, Part VIII, line 7b | 4a | | | |
| b | Other (Describe in Part XIII.) | 4b | -6,530,318. | | |
| c | Add lines 4a and 4b | | | 4c | -6,530,318. |
| 5 | Total revenue. Add lines 3 and 4c. *(This must equal Form 990, Part I, line 12.)* | | | 5 | 352,550,864. |

**Part XII** | **Reconciliation of Expenses per Audited Financial Statements With Expenses per Return.**

Complete if the organization answered "Yes" on Form 990, Part IV, line 12a.

| | | | | | |
|---|---|---|---|---|---|
| 1 | Total expenses and losses per audited financial statements | | | 1 | 361,805,635. |
| 2 | Amounts included on line 1 but not on Form 990, Part IX, line 25: | | | | |
| a | Donated services and use of facilities | 2a | | | |
| b | Prior year adjustments | 2b | | | |
| c | Other losses | 2c | | | |
| d | Other (Describe in Part XIII.) | 2d | 6,592,651. | | |
| e | Add lines 2a through 2d | | | 2e | 6,592,651. |
| 3 | Subtract line 2e from line 1 | | | 3 | 355,212,984. |
| 4 | Amounts included on Form 990, Part IX, line 25, but not on line 1: | | | | |
| a | Investment expenses not included on Form 990, Part VIII, line 7b | 4a | | | |
| b | Other (Describe in Part XIII.) | 4b | 62,333. | | |
| c | Add lines 4a and 4b | | | 4c | 62,333. |
| 5 | Total expenses. Add lines 3 and 4c. *(This must equal Form 990, Part I, line 18.)* | | | 5 | 355,275,317. |

**Part XIII** | **Supplemental Information.**

Provide the descriptions required for Part II, lines 3, 5, and 9; Part III, lines 1a and 4; Part IV, lines 1b and 2b; Part V, line 4; Part X, line 2; Part XI, lines 2d and 4b; and Part XII, lines 2d and 4b. Also complete this part to provide any additional information.

PART III, LINE 4:

THIS RESPONSE DESCRIBES THE MUSEUM COLLECTIONS WHICH ARE HELD BY THE NRA'S

RELATED ORGANIZATIONS AND CURATED BY NRA EMPLOYEES. THE NRA MUSEUMS

PROMOTE GUN COLLECTING AND PRESERVATION OF HISTORY THOUGH FIREARMS. THE

NRA MUSEUMS INCLUDE THE NATIONAL FIREARMS MUSEUM IN FAIRFAX, VIRGINIA: THE

FRANK BROWNELL MUSEUM OF THE SOUTHWEST IN RATON, NEW MEXICO; AND THE NRA

NATIONAL SPORTING ARMS MUSEUM AT BASS PRO SHOPS IN SPRINGFIELD, MISSOURI.

TO MAKE THE NRA MUSEUMS THE FINEST POSSIBLE RESOURCE FOR THE PUBLIC, THE

NRA AND ITS AFFILIATED CHARITIES RELY ON GENEROUS SUPPORTERS TO BUILD THE

EXHIBITION AND RESEARCH COLLECTIONS THROUGH COLLECTIONS OF HISTORICALLY

SIGNIFICANT FOREARMS. PLEASE VISIT NRAMUSEUMS.ORG FOR CURRENT INFORMATION

ON THE MUSEUM GALLERIES.

Schedule D (Form 990) 2018    NATIONAL RIFLE ASSOCIATION OF AMERICA    53-0116130  Page 5
**Part XIII** Supplemental Information *(continued)*

LINE 5 THIS RESPONSE EXPLAINS WHY THE NRA MAY SOLICIT OR RECEIVE ASSETS

THAT SOME DONORS INTEND TO BE SOLD RATHER THAN MAINTAINED PERMANENTLY.

WHEN DONORS INTEND THEIR GIFTS OF FIREARMS TO BE SOLD RATHER THEN HELD FOR

EXHIBITION OR RESEARCH IN THE COLLECTIONS OF THE NRA MUSEUM, THE NRA

PARTNERS WITH AUCTION HOUSES. DONORS MAY CHOOSE TO HAVE GUNS SOLD FOR

VARIOUS REASONS, SUCH AS TO SUPPORT CURRENT PROGRAM SERVICES OR TO FUND A

CHARITABLE GIFT ANNUITY OR CHARITABLE TRUST WITH ONE OF THE NRA'S

AFFILIATED CHARITIES. THE PHILANTHROPIC INTENT OF EACH DONOR DETERMINES

HOW A GIFT IS HANDLED.


PART V, LINE 4:

THIS RESPONSE DESCRIBES THE INTENDED USES OF THE ORGANIZATION'S ENDOWMENT

FUNDS. THE ENDOWMENT FUNDS BENEFIT A DIVERSE RANGE OF PHILANTHROPIC

INTERESTS, INCLUDING TRAINING IN MARKSMANSHIP, NATIONAL SHOOTING

CHAMPIONSHIPS, WOMEN'S LEADERSHIP, HUNTERS'LEADERSHIP, RECREATIONAL

SHOOTING, LAW ENFORCEMENT, NRA MUSEUMS, AND THE NATIONAL ENDOWMENT FOR THE

PROTECTION OF THE SECOND AMENDMENT.


PART X, LINE 2:

THIS RESPONSE PROVIDES THE TEXT OF THE FOOTNOTE TO THE ORGANIZATION'S

FINANCIAL STATEMENTS IN ACCORDANCE WITH FASB ASC 740.  MANAGEMENT

EVALUATED THE NRA'S TAX POSITIONS AND CONCLUDED THAT THE NRA HAD TAKEN NO

UNCERTAIN TAX POSITIONS THAT REQUIRE ADJUSTMENT TO THE FINANCIAL

STATEMENTS TO COMPLY WITH THE PROVISIONS OF THIS GUIDANCE. GENERALLY, THE

NRA IS NO LONGER SUBJECT TO INCOME TAX EXAMINATIONS BY THE U.S. FEDERAL,

STATE, OR LOCAL AUTHORITIES FOR YEARS BEFORE 2015, WHICH IS THE STANDARD

STATUTE OF LIMITATIONS LOOKBACK PERIOD.

Schedule D (Form 990) 2018
832055 10-29-18

Schedule D (Form 990) 2018   ·   NATIONAL RIFLE ASSOCIATION OF AMERICA   53-0116130   Page 5

| Part XIII | Supplemental Information (continued) |

PART XI, LINE 2D - OTHER ADJUSTMENTS:

AGENCY TRANSACTIONS BETWEEN THE NRA AND NRA FOUNDATION           -1,910,739.

UNREALIZED GAIN ON DERIVATIVE INSTRUMENT                             745,782.

TOTAL TO SCHEDULE D, PART XI, LINE 2D                             -1,164,957.


PART XI, LINE 4B - OTHER ADJUSTMENTS:

COST OF GOODS SOLD                                                 -4,389,150.

RENTAL EXPENSE                                                     -2,203,501.

INTEREST ON ENDOWMENT GRANTS                                          62,333.

TOTAL TO SCHEDULE D, PART XI, LINE 4B                             -6,530,318.


PART XII, LINE 2D - OTHER ADJUSTMENTS:

COST OF GOODS SOLD                                                  4,389,150.

RENTAL EXPENSE                                                      2,203,501.

TOTAL TO SCHEDULE D, PART XII, LINE 2D                             6,592,651.


PART XII, LINE 4B - OTHER ADJUSTMENTS:

INTEREST ON ENDOWMENT GRANTS                                          62,333.


PART X

LINE 1(4) THIS INFORMATIONAL NOTE PROVIDES CONTEXT FOR THE DERIVATIVE

FINANCIALS INSTRUMENT DISCLOSED AS A LIABILITY. INTEREST RATE SWAPS ARE

ENTERED INTO TO MANAGE INTEREST RATE RISKS ASSOCIATED WITH THE NRA'S

BORROWING, AND INTEREST RATE SWAPS ARE ACCOUNTED FOR IN ACCORDANCE WITH

FASB ASC 815. THE NRA'S INTEREST RATE SWAP IS RECORDED IN THE BALANCE

SHEET AT FAIR VALUE, WITH FAIR VALUE CHANGES RECORDED AS UNREALIZED GAIN

OR LOSS ON DERIVATIVE INSTRUMENT. AS OF MARCH 2019, THE NRA NO LONGER HAS

832055 10-29-18

Schedule D (Form 990) 2018    NATIONAL RIFLE ASSOCIATION OF AMERICA   53-0116130  Page 5

**Part XIII** Supplemental Information *(continued)*

AN INTEREST RATE SWAP ARRANGEMENT.

LINE 1(6) THIS INFORMATIONAL NOTE REGARDS THE NRA'S TAXES. THE NRA IS A

SUBSTANTIAL TAXPAYER AND REMAINS IN GOOD STANDING WITH THE TAX

AUTHORITIES. STATE AND LOCAL TAXES PAID BY THE NRA INCLUDE SALES AND USE

TAXES, REAL ESTATE AND PERSONAL PROPERTY TAXES, AMUSEMENT TAXES, AND STATE

UNEMPLOYMENT TAXES. THE LIABILITY SHOWN ON SCHEDULE D, PART X FOR ACCRUED

SALES AND USE TAXES RELATES TO TIMING AND IS A SMALL FRACTION OF TAXES

PAID DURING THE YEAR. ADDITIONAL NOTES REGARDING THE NRA'S TAXES ARE

SHARED ON SCHEDULE C REGARDING 527(F) PROXY TAXES AND ON SCHEDULE O

REGRADING UNRELATED BUSINESS INCOME TAXES. THE NRA CHOOSES TO SHARE THIS

ADDITIONAL INFORMATION ABOUT THE NRA'S TOTAL TAXES TO DEMONSTRATE IN GOOD

FAITH THAT THE ORGANIZATION IS A TAXPAYER IN GOOD STANDING.

832055 10-29-18

**SCHEDULE F**
**(Form 990)**

Department of the Treasury
Internal Revenue Service

# Statement of Activities Outside the United States

▶ Complete if the organization answered "Yes" on Form 990, Part IV, line 14b, 15, or 16.
▶ Attach to Form 990.
▶ Go to www.irs.gov/Form990 for instructions and the latest information.

OMB No. 1545-0047

# 2018

Open to Public
Inspection

| Name of the organization | Employer identification number |
|---|---|
| NATIONAL RIFLE ASSOCIATION OF AMERICA | 53-0116130 |

| Part I | General Information on Activities Outside the United States. Complete if the organization answered "Yes" on Form 990, Part IV, line 14b. |
|---|---|

**1**  **For grantmakers.** Does the organization maintain records to substantiate the amount of its grants and other assistance,
the grantees' eligibility for the grants or assistance, and the selection criteria used to award the grants or assistance? ......  ☐ **Yes**  ☐ **No**

**2**  **For grantmakers.** Describe in Part V the organization's procedures for monitoring the use of its grants and other assistance outside the
United States.

**3**  Activities per Region. (The following Part I, line 3 table can be duplicated if additional space is needed.)

| (a) Region | (b) Number of offices in the region | (c) Number of employees, agents, and independent contractors in the region | (d) Activities conducted in the region (by type) (such as, fundraising, program services, investments, grants to recipients located in the region) | (e) If activity listed in (d) is a program service, describe specific type of service(s) in the region | (f) Total expenditures for and investments in the region |
|---|---|---|---|---|---|
| CENTRAL AMERICA AND THE CARIBBEAN | 0 | 0 | INVESTMENTS | | 3,021,000. |
| CENTRAL AMERICA AND THE CARIBBEAN | 0 | 0 | PROGRAM SERVICES | PUBLICATIONS | 4,000. |
| EAST ASIA AND THE PACIFIC | 0 | 0 | PROGRAM SERVICES | PUBLICATIONS | 5,000. |
| EUROPE (INCLUDING ICELAND & GREENLAND) | 0 | 0 | FUNDRAISING | | 9,000. |
| EUROPE (INCLUDING ICELAND & GREENLAND) | 0 | 0 | PROGRAM SERVICES | PUBLICATIONS | 21,000. |
| MIDDLE EAST AND NORTH AFRICA | 0 | 0 | FUNDRAISING | | 5,000. |
| NORTH AMERICA | 0 | 0 | FUNDRAISING | | 6,000. |
| NORTH AMERICA | 0 | 0 | PROGRAM SERVICES | PUBLICATIONS | 10,000. |
| **3 a** Subtotal .................. | 0 | 0 | | | 3,081,000. |
| **b** Total from continuation sheets to Part I ......... | 0 | 0 | | | 56,000. |
| **c** Totals (add lines 3a and 3b) .............. | 0 | 0 | | | 3,137,000. |

**LHA  For Paperwork Reduction Act Notice, see the Instructions for Form 990.**

Schedule F (Form 990) 2018

832071 10-31-18

Schedule F (Form 990)     **NATIONAL RIFLE ASSOCIATION OF AMERICA**     53-0116130     Page 1

| Part I | Continuation of Activities per Region. (Schedule F (Form 990), Part I, line 3) |

| (a) Region | (b) Number of offices in the region | (c) Number of employees or agents in region | (d) Activities conducted in region (by type) (i.e., fundraising, program services, grants to recipients located in the region) | (e) If activity listed in (d) is a program service, describe specific type of service(s) in region | (f) Total expenditures for region |
|---|---|---|---|---|---|
| NORTH AMERICA | | | PROGRAM SERVICES | NRA OUTDOORS | 37,000. |
| SOUTH AMERICA | 0 | 0 | FUNDRAISING | | 4,000. |
| SOUTH AMERICA | 0 | 0 | PROGRAM SERVICES | PUBLICATIONS | 8,000. |
| SUB-SAHARAN AFRICA | | | PROGRAM SERVICES | NRA OUTDOORS | 7,000. |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| Totals ▶ | | | | | 56,000. |

832181
04-01-18

**Part II** **Grants and Other Assistance to Organizations or Entities Outside the United States.** Complete if the organization answered "Yes" on Form 990, Part IV, line 15, for any recipient who received more than $5,000. Part II can be duplicated if additional space is needed.

| 1 (a) Name of organization | (b) IRS code section and EIN (if applicable) | (c) Region | (d) Purpose of grant | (e) Amount of cash grant | (f) Manner of cash disbursement | (g) Amount of noncash assistance | (h) Description of noncash assistance | (i) Method of valuation (book, FMV, appraisal, other) |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |

2 Enter total number of recipient organizations listed above that are recognized as charities by the foreign country, recognized as tax-exempt by the IRS, or for which the grantee or counsel has provided a section 501(c)(3) equivalency letter ▶

3 Enter total number of other organizations or entities ▶

832072 10-31-18

Schedule F (Form 990) 2018 **NATIONAL RIFLE ASSOCIATION OF AMERICA** 53-0116130 Page 3

**Part III Grants and Other Assistance to Individuals Outside the United States.** Complete if the organization answered "Yes" on Form 990, Part IV, line 16.

Part III can be duplicated if additional space is needed.

| (a) Type of grant or assistance | (b) Region | (c) Number of recipients | (d) Amount of cash grant | (e) Manner of cash disbursement | (f) Amount of noncash assistance | (g) Description of noncash assistance | (h) Method of valuation (book, FMV, appraisal, other) |
|---|---|---|---|---|---|---|---|
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

Schedule F (Form 990) 2018

832073 10-31-18

Schedule F (Form 990) 2018 **NATIONAL RIFLE ASSOCIATION OF AMERICA** 53-0116130 Page **4**

| Part IV | Foreign Forms |
|---|---|

**1** Was the organization a U.S. transferor of property to a foreign corporation during the tax year? *If "Yes," the organization may be required to file Form 926, Return by a U.S. Transferor of Property to a Foreign Corporation (see Instructions for Form 926)* ........................................................................ ☐ Yes ☒ No

**2** Did the organization have an interest in a foreign trust during the tax year? *If "Yes," the organization may be required to separately file Form 3520, Annual Return To Report Transactions With Foreign Trusts and Receipt of Certain Foreign Gifts, and/or Form 3520-A, Annual Information Return of Foreign Trust With a U.S. Owner (see Instructions for Forms 3520 and 3520-A; don't file with Form 990)* ................................ ☐ Yes ☒ No

**3** Did the organization have an ownership interest in a foreign corporation during the tax year? *If "Yes," the organization may be required to file Form 5471, Information Return of U.S. Persons With Respect To Certain Foreign Corporations (see Instructions for Form 5471)* ................................................. ☐ Yes ☒ No

**4** Was the organization a direct or indirect shareholder of a passive foreign investment company or a qualified electing fund during the tax year? *If "Yes," the organization may be required to file Form 8621, Information Return by a Shareholder of a Passive Foreign Investment Company or Qualified Electing Fund (see Instructions for Form 8621)* ........................................................................ ☐ Yes ☒ No

**5** Did the organization have an ownership interest in a foreign partnership during the tax year? *If "Yes," the organization may be required to file Form 8865, Return of U.S. Persons With Respect to Certain Foreign Partnerships (see Instructions for Form 8865)* ................................................................. ☐ Yes ☒ No

**6** Did the organization have any operations in or related to any boycotting countries during the tax year? *If "Yes," the organization may be required to separately file Form 5713, International Boycott Report (see Instructions for Form 5713; don't file with Form 990)* ................................................... ☐ Yes ☒ No

Schedule F (Form 990) 2018

832074 10-31-18

Schedule F (Form 990) 2018   NATIONAL RIFLE ASSOCIATION OF AMERICA   53-0116130   Page 5

| Part V | Supplemental Information |
|---|---|

Provide the information required by Part I, line 2 (monitoring of funds); Part I, line 3, column (f) (accounting method; amounts of investments vs. expenditures per region); Part II, line 1 (accounting method); Part III (accounting method); and Part III, column (c) (estimated number of recipients), as applicable. Also complete this part to provide any additional information. See instructions.

PART I, LINE 3:

THE NRA'S OFFSHORE INVESTMENTS FOLLOW INDUSTRY STANDARD BEST PRACTICES IN

RISK MANAGEMENT FOR NATIONAL NONPROFIT INSTITUTIONAL INVESTORS.

ALTERNATIVE INVESTMENTS REDUCE OVERALL PORTFOLIO RISK BY REDUCING

VOLATILITY AND IMPROVING DIVERSIFICATION. THE NRA MAINTAINS SEVERAL

INVESTMENT ACCOUNTS THAT ARE MULTI-STRATEGY FUNDS OF FUNDS. INCOME FROM

PASSIVE INVESTMENTS, WHEN APPROPRIATELY STRUCTURED, IS EXCLUDED FROM

UNRELATED BUSINESS INCOME BY LAW. THIS TYPE OF INVESTMENT POSTURE IS

COMMONLY ACCEPTED IN THE U.S. EXEMPT ORGANIZATION INDUSTRY. 100% OF THE

AMOUNT IS THE TOTAL BOOK VALUE OF INVESTMENTS FOR THAT REGION.

SCHEDULE F, PART I, LINE 3

THIS DISCLOSURE REFERS TO FOREIGN FUNDRAISING. 100% OF THE AMOUNT IS

THE CASH VALUE OF EXPENDITURES MADE BY THE NRA FOR NECESSARY TRAVEL,

ACCOMMODATIONS, AND RELATED EXPENSES.

THIS DISCLOSURE OF PROGRAM SERVICES REFERS TO NRA PUBLICATIONS

DIVISION'S FOREIGN TRAVEL EXPENSES RELATING TO GATHERING MATERIALS FOR

NRA MAGAZINES. 100% OF THE AMOUNT IS THE CASH VALUE OF EXPENDITURES

MADE BY THE NRA FOR NECESSARY TRAVEL, ACCOMMODATIONS, AND RELATED

EXPENSES.

**SCHEDULE G**
(Form 990 or 990-EZ)

Department of the Treasury
Internal Revenue Service

**Supplemental Information Regarding Fundraising or Gaming Activities**

Complete if the organization answered "Yes" on Form 990, Part IV, line 17, 18, or 19, or if the organization entered more than $15,000 on Form 990-EZ, line 6a.
▶ Attach to Form 990 or Form 990-EZ.
▶ Go to www.irs.gov/Form990 for instructions and the latest information.

OMB No. 1545-0047

**2018**

Open to Public Inspection

| Name of the organization | Employer identification number |
|---|---|
| NATIONAL RIFLE ASSOCIATION OF AMERICA | 53-0116130 |

**Part I** **Fundraising Activities.** Complete if the organization answered "Yes" on Form 990, Part IV, line 17. Form 990-EZ filers are not required to complete this part.

**1** Indicate whether the organization raised funds through any of the following activities. Check all that apply.

a [X] Mail solicitations
b [X] Internet and email solicitations
c [X] Phone solicitations
d [ ] In-person solicitations
e [ ] Solicitation of non-government grants
f [ ] Solicitation of government grants
g [ ] Special fundraising events

**2 a** Did the organization have a written or oral agreement with any individual (including officers, directors, trustees, or key employees listed in Form 990, Part VII) or entity in connection with professional fundraising services? [X] Yes [ ] No

**b** If "Yes," list the 10 highest paid individuals or entities (fundraisers) pursuant to agreements under which the fundraiser is to be compensated at least $5,000 by the organization.

| (i) Name and address of individual or entity (fundraiser) | (ii) Activity | (iii) Did fundraiser have custody or control of contributions? Yes | No | (iv) Gross receipts from activity | (v) Amount paid to (or retained by) fundraiser listed in col. (i) | (vi) Amount paid to (or retained by) organization |
|---|---|---|---|---|---|---|
| ALLEGIANCE DBA MEMBERSHIP ADVISORS - 11250 WAPLES MILL | FUNDRAISING CONSULTANT | | X | 42,370,456. | 1,070,000. | 41,300,456. |
| INFOCISION MANAGEMENT CORP - 325 SPRINGSIDE DR, AKRON, OH | PAID SOLICITOR | | X | 9,521,431. | 4,840,658. | 4,680,773. |
| 501C SOLUTIONS - 2530 MERIDIAN PKWY STE 300, | FUNDRAISING CONSULTANT | | X | 0. | 616,000. | 0. |
| SHARPE GROUP - 855 RIDGE LAKE BLVD STE 300, MEMPHIS, TN | FUNDRAISING CONSULTANT | | X | 0. | 480,000. | 0. |
| HWS CONSULTING - 221 HOMEPORT DR, GRASONVILLE, MD 21638 | FUNDRAISING CONSULTANT | | X | 0. | 360,000. | 0. |
| MCKENNA & ASSOCIATES - 2000 CALRENDON BLVD STE 200, | FUNDRAISING CONSULTANT | | X | 0. | 300,000. | 0. |
| KEY & ASSOCIATES - 12176 CHANCERY STATION CIR, RESTON, | FUNDRAISING CONSULTANT | | X | 0. | 72,000. | 0. |
| COMMONWEALTH GROUP PARTNERS - 1579 MONROE SR STE F-341 | FUNDRAISING CONSULTANT | | X | 0. | 60,000. | 0. |
| | | | | | | |
| | | | | | | |
| Total | | | ▶ | 51,891,887. | 7,798,658. | 45,981,229. |

**3** List all states in which the organization is registered or licensed to solicit contributions or has been notified it is exempt from registration or licensing.

AL,AK,AZ,AR,CA,CO,CT,FL,DC,GA,HI,IL,KS,KY,LA,MA,MD,ME,MI,MN,MO,MS,NC,ND,NH
NJ,NM,NY,OK,OH,OR,PA,RI,SC,TN,UT,VA,WA,WI,WV

**LHA For Paperwork Reduction Act Notice, see the Instructions for Form 990 or 990-EZ.** Schedule G (Form 990 or 990-EZ) 2018
SEE PART IV FOR CONTINUATIONS

832081 10-03-18

Schedule G (Form 990 or 990-EZ) 2018 NATIONAL RIFLE ASSOCIATION OF AMERICA    53-0116130  Page 2

## Part II  Fundraising Events.
Complete if the organization answered "Yes" on Form 990, Part IV, line 18, or reported more than $15,000 of fundraising event contributions and gross income on Form 990-EZ, lines 1 and 6b. List events with gross receipts greater than $5,000.

|  |  | (a) Event #1 NRAILA (event type) | (b) Event #2 (event type) | (c) Other events NONE (total number) | (d) Total events (add col. (a) through col. (c)) |
|---|---|---|---|---|---|
| Revenue | 1 Gross receipts | 1,403,289. |  |  | 1,403,289. |
|  | 2 Less: Contributions |  |  |  |  |
|  | 3 Gross income (line 1 minus line 2) | 1,403,289. |  |  | 1,403,289. |
| Direct Expenses | 4 Cash prizes |  |  |  |  |
|  | 5 Noncash prizes |  |  |  |  |
|  | 6 Rent/facility costs | 54,440. |  |  | 54,440. |
|  | 7 Food and beverages | 154,712. |  |  | 154,712. |
|  | 8 Entertainment | 38,776. |  |  | 38,776. |
|  | 9 Other direct expenses | 48,318. |  |  | 48,318. |
|  | 10 Direct expense summary. Add lines 4 through 9 in column (d) ▶ |  |  |  | 296,246. |
|  | 11 Net income summary. Subtract line 10 from line 3. column (d) ▶ |  |  |  | 1,107,043. |

## Part III  Gaming.
Complete if the organization answered "Yes" on Form 990, Part IV, line 19, or reported more than $15,000 on Form 990-EZ, line 6a.

|  |  | (a) Bingo | (b) Pull tabs/instant bingo/progressive bingo | (c) Other gaming | (d) Total gaming (add col. (a) through col. (c)) |
|---|---|---|---|---|---|
| Revenue | 1 Gross revenue |  |  |  |  |
| Direct Expenses | 2 Cash prizes |  |  |  |  |
|  | 3 Noncash prizes |  |  |  |  |
|  | 4 Rent/facility costs |  |  |  |  |
|  | 5 Other direct expenses |  |  |  |  |
|  | 6 Volunteer labor | ☐ Yes _____ % ☐ No | ☐ Yes _____ % ☐ No | ☐ Yes _____ % ☐ No |  |
|  | 7 Direct expense summary. Add lines 2 through 5 in column (d) ▶ |  |  |  |  |
|  | 8 Net gaming income summary. Subtract line 7 from line 1, column (d) ▶ |  |  |  |  |

9  Enter the state(s) in which the organization conducts gaming activities: _____

a  Is the organization licensed to conduct gaming activities in each of these states? .................................... ☐ Yes  ☐ No

b  If "No," explain: _____

_____

10a Were any of the organization's gaming licenses revoked, suspended, or terminated during the tax year? ..................... ☐ Yes  ☐ No

b  If "Yes," explain: _____

_____

832082  10-03-18

Schedule G (Form 990 or 990-EZ) 2018

Schedule G (Form 990 or 990-EZ) 2018 NATIONAL RIFLE ASSOCIATION OF AMERICA    53-0116130  Page 3

**11** Does the organization conduct gaming activities with nonmembers? ........................................................ ☐ Yes ☐ No

**12** Is the organization a grantor, beneficiary or trustee of a trust, or a member of a partnership or other entity formed
to administer charitable gaming? ........................................................................................................ ☐ Yes ☐ No

**13** Indicate the percentage of gaming activity conducted in:

**a** The organization's facility ................................................................................................................. | 13a | %

**b** An outside facility ........................................................................................................................... | 13b | %

**14** Enter the name and address of the person who prepares the organization's gaming/special events books and records:

Name ▶ _____

Address ▶ _____

**15a** Does the organization have a contract with a third party from whom the organization receives gaming revenue? ............ ☐ Yes ☐ No

**b** If "Yes," enter the amount of gaming revenue received by the organization ▶ $ _____ and the amount
of gaming revenue retained by the third party ▶ $ _____

**c** If "Yes," enter name and address of the third party:

Name ▶ _____

Address ▶ _____

**16** Gaming manager information:

Name ▶ _____

Gaming manager compensation ▶ $ _____

Description of services provided ▶ _____

☐ Director/officer   ☐ Employee   ☐ Independent contractor

**17** Mandatory distributions:

**a** Is the organization required under state law to make charitable distributions from the gaming proceeds to
retain the state gaming license? ........................................................................................................ ☐ Yes ☐ No

**b** Enter the amount of distributions required under state law to be distributed to other exempt organizations or spent in the
organization's own exempt activities during the tax year ▶ $

| Part IV | Supplemental Information. Provide the explanations required by Part I, line 2b, columns (iii) and (v); and Part III, lines 9, 9b, 10b, 15b, 15c, 16, and 17b, as applicable. Also provide any additional information. See instructions.

SCHEDULE G, PART I, LINE 2B, LIST OF TEN HIGHEST PAID FUNDRAISERS:

(I) NAME OF FUNDRAISER: ALLEGIANCE DBA MEMBERSHIP ADVISORS

(I) ADDRESS OF FUNDRAISER: 11250 WAPLES MILL RD, FAIRFAX, VA   22030

(I) NAME OF FUNDRAISER: INFOCISION MANAGEMENT CORP

(I) ADDRESS OF FUNDRAISER: 325 SPRINGSIDE DR, AKRON, OH   44333

(I) NAME OF FUNDRAISER: 501C SOLUTIONS

Schedule G (Form 990 or 990-EZ)     NATIONAL RIFLE ASSOCIATION OF AMERICA     53-0116130   Page 4

**Part IV** | Supplemental Information *(continued)*

(I) ADDRESS OF FUNDRAISER:

2530 MERIDIAN PKWY STE 300, RESEARCH TRIANGLE PARK , NC   27713


(I) NAME OF FUNDRAISER: SHARPE GROUP

(I) ADDRESS OF FUNDRAISER: 855 RIDGE LAKE BLVD STE 300, MEMPHIS, TN   38120


(I) NAME OF FUNDRAISER: MCKENNA & ASSOCIATES

(I) ADDRESS OF FUNDRAISER:

2000 CALRENDON BLVD STE 200, ARLINGTON, VA   22201


(I) NAME OF FUNDRAISER: KEY & ASSOCIATES

(I) ADDRESS OF FUNDRAISER: 12176 CHANCERY STATION CIR, RESTON, VA   20190


(I) NAME OF FUNDRAISER: COMMONWEALTH GROUP PARTNERS

(I) ADDRESS OF FUNDRAISER: 1579 MONROE SR STE F-341, ATLANTA, GA   30324


PART I LINE 2B(2)

THIS SUPPLEMENTAL INFORMATION NOTES THE DISTINCTION BETWEEN 990 CORE

FORM PART VIII SECTION B LINE 1 AND SCHEDULE G PART I LINE 2B(2) FOR

THE FILING ORGANIZATION'S VENDOR INFOCISION MANAGEMENT CORP. THE VENDOR

INFOCISION PROVIDED SERVICES TO THE FILING ORGANIZATION FOR BOTH

MEMBERSHIPS AND CONTRIBUTIONS SOLICITATIONS, AS SHOWN ON 990 CORE FORM

PART VIII SECTION B LINE 1. SCHEDULE G IS SPECIFIC TO THE VENDOR'S WORK

AS A PAID SOLICITOR PROVIDING PROFESSIONAL FUNDRAISING SERVICES.

THEREFORE, THE SCHEDULE G DISCLOSURE EXCLUDES THE MEMBERSHIP PROCESSING

SERVICES.

832084 04-01-18

| SCHEDULE I (Form 990) | Grants and Other Assistance to Organizations, Governments, and Individuals in the United States | OMB No. 1545-0047 |
|---|---|---|
| Department of the Treasury Internal Revenue Service | Complete if the organization answered "Yes" on Form 990, Part IV, line 21 or 22.<br>▶ Attach to Form 990.<br>▶ Go to www.irs.gov/Form990 for the latest information. | **2018**<br>Open to Public Inspection |

| Name of the organization | Employer identification number |
|---|---|
| NATIONAL RIFLE ASSOCIATION OF AMERICA | 53-0116130 |

**Part I** General Information on Grants and Assistance

1 Does the organization maintain records to substantiate the amount of the grants or assistance, the grantees' eligibility for the grants or assistance, and the selection criteria used to award the grants or assistance? ..................... [X] Yes [ ] No

2 Describe in Part IV the organization's procedures for monitoring the use of grant funds in the United States.

**Part II** Grants and Other Assistance to Domestic Organizations and Domestic Governments. Complete if the organization answered "Yes" on Form 990, Part IV, line 21, for any recipient that received more than $5,000. Part II can be duplicated if additional space is needed.

| 1 (a) Name and address of organization or government | (b) EIN | (c) IRC section (if applicable) | (d) Amount of cash grant | (e) Amount of non-cash assistance | (f) Method of valuation (book, FMV, appraisal, other) | (g) Description of noncash assistance | (h) Purpose of grant or assistance |
|---|---|---|---|---|---|---|---|
| NATIONAL FOUNDATION FOR WOMEN LEGISLATORS - 910 16TH ST NW - WASHINGTON, DC 20006 | 52-1480785 | 501(C)(3) | 13,328. | 0. | | | UNDERGRADUATE COLLEGE SCHOLARSHIPS |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

2 Enter total number of section 501(c)(3) and government organizations listed in the line 1 table ................. ▶ 1.

3 Enter total number of other organizations listed in the line 1 table ........................ ▶ 0.

LHA For Paperwork Reduction Act Notice, see the Instructions for Form 990. Schedule I (Form 990) (2018)

832101 11-02-18

Schedule I (Form 990) (2018)  **NATIONAL RIFLE ASSOCIATION OF AMERICA**  53-0116130  Page **2**

| Part III | Grants and Other Assistance to Domestic Individuals. Complete if the organization answered "Yes" on Form 990, Part IV, line 22. |
|---|---|

Part III can be duplicated if additional space is needed.

| (a) Type of grant or assistance | (b) Number of recipients | (c) Amount of cash grant | (d) Amount of non-cash assistance | (e) Method of valuation (book, FMV, appraisal, other) | (f) Description of noncash assistance |
|---|---|---|---|---|---|
| NRA JEANNE E BRAY MEMORIAL SCHOLARSHIP AWARDS | 20 | 62,333. | 0. | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

| Part IV | Supplemental Information. Provide the information required in Part I, line 2; Part III, column (b); and any additional information. |
|---|---|

PART I, LINE 2:

PART I LINE 2 THE NATIONAL FOUNDATION FOR WOMEN LEGISLATORS PARTNERS WITH

THE NATIONAL RIFLE ASSOCIATION FOR THE ANNUAL NFWL/NRA BILL OF RIGHTS ESSAY

SCHOLARSHIP CONTEST FOR FEMALE HIGH SCHOOL JUNIORS AND SENIORS. THE NRA

ACTIVELY ASSISTS NATIONAL FOUNDATION OF WOMEN LEGISLATORS IN THE SELECTION

AND ADMINISTRATION OF NFWL SCHOLARSHIPS FOR COLLEGE. NFWL SCHOLARSHIP

APPLICATIONS ARE ASSESSED ON THE ELEMENTS OF HISTORICAL RESEARCH, INSIGHT

AND PERSPECTIVE, DEMONSTRATED UNDERSTANDING OF THE AMERICAN CONSTITUTION,

INSPIRATIONAL QUALITY, AND MEANINGFUL PERSONAL CONNECTION. SCHOLARSHIP

832102 11-02-18

Schedule I (Form 990)      NATIONAL RIFLE ASSOCIATION OF AMERICA     53-0116130   Page 2

**Part IV | Supplemental Information**

AWARDS ARE PAID DIRECTLY TO THE EDUCATIONAL INSTITUTION.

PART III LINE 1

THE NRA JEANNE E. BRAY MEMORIAL SCHOLARSHIP AWARDS PROGRAM IS NAMED IN

HONOR AND RECOGNITION OF THE GROUNDBREAKING POLICE OFFICER JEANNE E.

BRAY, A SHOOTING CHAMPION AND PAST MEMBER OF THE NRA BOARD OF

DIRECTORS. JEANNE E. BRAY WAS THE FIRST FEMALE DETECTIVE ON BURGLARY

SQUAD, WHICH HAS EVOLVED INTO TODAY'S MODERN SWAT TEAMS. SHE WAS THE

FIRST FEMALE POLICE OFFICER TO EARN THE NRA POLICE MARKSMANSHIP

"DISTINGUISHED" BAR, AND SHE WON THE NATIONAL WOMEN'S POLICE PISTOL

COMBAT CHAMPIONSHIP FIVE TIMES FROM 1962 TO 1967. THE PROGRAM OFFERS

SCHOLARSHIPS OF UP TO $2,500 PER SEMESTER, UP TO $5,000 PER YEAR FOR A

MAXIMUM OF FOUR YEARS, TO DEPENDENT CHILDREN OF ANY PUBLIC LAW

ENFORCEMENT OFFICER KILLED IN THE LINE OF DUTY WHO WAS AN NRA MEMBER AT

THE TIME OF DEATH, AND TO DEPENDENT CHILDREN OF ANY CURRENT OR RETIRED

LAW ENFORCEMENT OFFICERS WHO ARE LIVING AND HAVE CURRENT NRA

MEMBERSHIP. THE MEMBERSHIP RESTRICTION IS PERMITTED BY LAW BECAUSE THE

NRA JEANNE E. BRAY MEMORIAL SCHOLARSHIP AWARDS PROGRAM IS A 501(C)(4)

PROGRAM. SCHOLARSHIP AWARDS ARE PAID DIRECTLY TO THE EDUCATIONAL

INSTITUTION.

Schedule I (Form 990)

| SCHEDULE J | **Compensation Information** | OMB No. 1545-0047 |
|---|---|---|
| (Form 990) | For certain Officers, Directors, Trustees, Key Employees, and Highest Compensated Employees | **2018** |
| Department of the Treasury Internal Revenue Service | ▶ Complete if the organization answered "Yes" on Form 990, Part IV, line 23. ▶ Attach to Form 990. ▶ Go to www.irs.gov/Form990 for instructions and the latest information. | Open to Public Inspection |

| Name of the organization | Employer identification number |
|---|---|
| NATIONAL RIFLE ASSOCIATION OF AMERICA | 53-0116130 |

**Part I | Questions Regarding Compensation**

|  |  |  | Yes | No |
|---|---|---|---|---|
| **1a** | Check the appropriate box(es) if the organization provided any of the following to or for a person listed on Form 990, Part VII, Section A, line 1a. Complete Part III to provide any relevant information regarding these items. | | | |

- [X] First-class or charter travel
- [X] Travel for companions
- [X] Tax indemnification and gross-up payments
- [ ] Discretionary spending account
- [X] Housing allowance or residence for personal use
- [ ] Payments for business use of personal residence
- [X] Health or social club dues or initiation fees
- [ ] Personal services (such as maid, chauffeur, chef)

|  |  |  | Yes | No |
|---|---|---|---|---|
| **b** | If any of the boxes on line 1a are checked, did the organization follow a written policy regarding payment or reimbursement or provision of all of the expenses described above? If "No," complete Part III to explain | **1b** | X | |
| **2** | Did the organization require substantiation prior to reimbursing or allowing expenses incurred by all directors, trustees, and officers, including the CEO/Executive Director, regarding the items checked on line 1a? | **2** | X | |
| **3** | Indicate which, if any, of the following the filing organization used to establish the compensation of the organization's CEO/Executive Director. Check all that apply. Do not check any boxes for methods used by a related organization to establish compensation of the CEO/Executive Director, but explain in Part III. | | | |

- [X] Compensation committee
- [X] Independent compensation consultant
- [ ] Form 990 of other organizations
- [X] Written employment contract
- [X] Compensation survey or study
- [X] Approval by the board or compensation committee

|  |  |  | Yes | No |
|---|---|---|---|---|
| **4** | During the year, did any person listed on Form 990, Part VII, Section A, line 1a, with respect to the filing organization or a related organization: | | | |
| **a** | Receive a severance payment or change-of-control payment? | **4a** | X | |
| **b** | Participate in, or receive payment from, a supplemental nonqualified retirement plan? | **4b** | X | |
| **c** | Participate in, or receive payment from, an equity-based compensation arrangement? | **4c** | | X |
|  | If "Yes" to any of lines 4a-c, list the persons and provide the applicable amounts for each item in Part III. | | | |
|  | **Only section 501(c)(3), 501(c)(4), and 501(c)(29) organizations must complete lines 5-9.** | | | |
| **5** | For persons listed on Form 990, Part VII, Section A, line 1a, did the organization pay or accrue any compensation contingent on the revenues of: | | | |
| **a** | The organization? | **5a** | | X |
| **b** | Any related organization? | **5b** | | X |
|  | If "Yes" on line 5a or 5b, describe in Part III. | | | |
| **6** | For persons listed on Form 990, Part VII, Section A, line 1a, did the organization pay or accrue any compensation contingent on the net earnings of: | | | |
| **a** | The organization? | **6a** | | X |
| **b** | Any related organization? | **6b** | | X |
|  | If "Yes" on line 6a or 6b, describe in Part III. | | | |
| **7** | For persons listed on Form 990, Part VII, Section A, line 1a, did the organization provide any nonfixed payments not described on lines 5 and 6? If "Yes," describe in Part III | **7** | | X |
| **8** | Were any amounts reported on Form 990, Part VII, paid or accrued pursuant to a contract that was subject to the initial contract exception described in Regulations section 53.4958-4(a)(3)? If "Yes," describe in Part III | **8** | | X |
| **9** | If "Yes" on line 8, did the organization also follow the rebuttable presumption procedure described in Regulations section 53.4958-6(c)? | **9** | | |

LHA  **For Paperwork Reduction Act Notice, see the Instructions for Form 990.**          Schedule J (Form 990) 2018

Schedule J (Form 990) 2018   NATIONAL RIFLE ASSOCIATION OF AMERICA   53-0116130   Page 2

**Part II**   Officers, Directors, Trustees, Key Employees, and Highest Compensated Employees. Use duplicate copies if additional space is needed.

For each individual whose compensation must be reported on Schedule J, report compensation from the organization on row (i) and from related organizations, described in the instructions, on row (ii).
Do not list any individuals that aren't listed on Form 990, Part VII.

**Note:** The sum of columns (B)(i)-(iii) for each listed individual must equal the total amount of Form 990, Part VII, Section A, line 1a, applicable column (D) and (E) amounts for that individual.

| (A) Name and Title | | (B) Breakdown of W-2 and/or 1099-MISC compensation | | | (C) Retirement and other deferred compensation | (D) Nontaxable benefits | (E) Total of columns (B)(i)-(D) | (F) Compensation in column (B) reported as deferred on prior Form 990 |
|---|---|---|---|---|---|---|---|---|
| | | (i) Base compensation | (ii) Bonus & incentive compensation | (iii) Other reportable compensation | | | | |
| (1) WAYNE LAPIERRE<br>EXECUTIVE VICE PRESIDENT AND CEO | (i)<br>(ii) | 1,267,878.<br>0. | 455,000.<br>0. | 20,280.<br>0. | 427,756.<br>0. | 53,513.<br>0. | 2,224,427.<br>0. | 0.<br>0. |
| (2) CHRIS W. COX<br>EXECUTIVE DIRECTOR, NRA-ILA | (i)<br>(ii) | 1,057,586.<br>0. | 200,000.<br>0. | 27,732.<br>0. | 35,484.<br>0. | 71,866.<br>0. | 1,392,668.<br>0. | 0.<br>0. |
| (3) WILSON H. PHILLIPS<br>TREASURER (ENDING 9/13/2018) | (i)<br>(ii) | 573,567.<br>0. | 210,000.<br>0. | 116,970.<br>0. | 20,280.<br>0. | 27,952.<br>0. | 948,769.<br>0. | 0.<br>0. |
| (4) JOSHUA L. POWELL<br>CHIEF OF STAFF AND EXEC. DIR | (i)<br>(ii) | 782,739.<br>0. | 0.<br>0. | 61,398.<br>0. | 16,500.<br>0. | 59,332.<br>0. | 919,969.<br>0. | 0.<br>0. |
| (5) CRAIG B. SPRAY<br>TREASURER (FROM 9/13/2018) | (i)<br>(ii) | 401,111.<br>0. | 0.<br>0. | 195,847.<br>0. | 16,500.<br>0. | 34,757.<br>0. | 648,215.<br>0. | 0.<br>0. |
| (6) JOHN C. FRAZER<br>SECRETARY AND GENERAL COUNSEL | (i)<br>(ii) | 325,953.<br>0. | 54,100.<br>0. | 33,023.<br>0. | 16,500.<br>0. | 60,077.<br>0. | 489,653.<br>0. | 0.<br>0. |
| (7) JOSEPH P. DEBERGALIS, JR.<br>EXEC DIR, GENERAL OPS (STARTING 12/3 | (i)<br>(ii) | 347,452.<br>0. | 0.<br>0. | 55,774.<br>0. | 16,500.<br>0. | 41,302.<br>0. | 461,028.<br>0. | 0.<br>0. |
| (8) TYLER SCHROPP<br>MANAGING DIRECTOR, ADVANCEMENT | (i)<br>(ii) | 604,803.<br>0. | 122,206.<br>0. | 6,136.<br>0. | 16,500.<br>0. | 57,123.<br>0. | 806,768.<br>0. | 0.<br>0. |
| (9) TODD GRABLE<br>EXECUTIVE DIRECTOR, MEMBERSHIP | (i)<br>(ii) | 438,703.<br>0. | 217,553.<br>0. | 11,130.<br>0. | 16,500.<br>0. | 49,654.<br>0. | 733,540.<br>0. | 0.<br>0. |
| (10) DOUGLAS HAMLIN<br>EXECUTIVE DIRECTOR, PUBLICATIONS | (i)<br>(ii) | 443,585.<br>0. | 80,000.<br>0. | 57,736.<br>0. | 16,443.<br>0. | 57,966.<br>0. | 655,730.<br>0. | 0.<br>0. |
| (11) DAVID LEHMAN<br>DEPUTY EXECUTIVE DIRECTOR, NRAILA | (i)<br>(ii) | 450,057.<br>0. | 50,000.<br>0. | 71,675.<br>0. | 16,500.<br>0. | 14,621.<br>0. | 602,853.<br>0. | 0.<br>0. |
| (12) ERIC FROHARDT<br>DIRECTOR, EDUCATION AND TRAINING | (i)<br>(ii) | 500,000.<br>0. | 0.<br>0. | 25,745.<br>0. | 15,000.<br>0. | 4,863.<br>0. | 545,608.<br>0. | 0.<br>0. |
| (13) ROBERT K. WEAVER<br>FMR EXE. DIR, GENERAL OPERATIONS | (i)<br>(ii) | 0.<br>0. | 0.<br>0. | 720,000.<br>0. | 0.<br>0. | 0.<br>0. | 720,000.<br>0. | 0.<br>0. |
| (14) MICHEL MARCELLIN<br>FMR MANAGING DIR, AFFINITY AND LICEN | (i)<br>(ii) | 0.<br>0. | 0.<br>0. | 535,045.<br>0. | 0.<br>0. | 0.<br>0. | 535,045.<br>0. | 0.<br>0. |
| (15) OLIVER L. NORTH<br>PRESIDENT | (i)<br>(ii) | 1,377,617.<br>0. | 0.<br>0. | 0.<br>0. | 0.<br>0. | 0.<br>0. | 1,377,617.<br>0. | 0.<br>0. |
| (16) MARION P. HAMMER<br>DIRECTOR | (i)<br>(ii) | 270,000.<br>0. | 0.<br>0. | 0.<br>0. | 0.<br>0. | 0.<br>0. | 270,000.<br>0. | 0.<br>0. |

832112 10-26-18

Schedule J (Form 990) 2018

Schedule J (Form 990) 2018    NATIONAL RIFLE ASSOCIATION OF AMERICA    53-0116130    Page 3

**Part III | Supplemental Information**

Provide the information, explanation, or description required for Part I, lines 1a, 1b, 3, 4a, 4b, 4c, 5a, 5b, 6a, 6b, 7, and 8, and for Part II. Also complete this part for any additional information.

PART I, LINE 1A:

CHARTER TRAVEL WAS USED ON OCCASIONS WHEN TRAVEL LOGISTICS OR SECURITY

CONCERNS PRECLUDED OTHER AVAILABLE OPTIONS.  COMPANIONS OCCASIONALLY TRAVEL

VIA PRIVATE AIRCRAFT WITH NRA OFFICIALS AND VENDORS IN CONNECTION WITH

THEIR PROFESSIONAL RESPONSIBILITIES.  CERTAIN COMPENSATION ELEMENTS WERE

GROSSED UP FOR ONE INDIVIDUAL FOR ONE TIME RELOCATION COSTS AND THE TAX

GROSS UP WAS PROPERLY INCLUDED IN TAXABLE COMPENSATION .  HOUSING EXPENSES

WERE PROVIDED FOR FIVE INDIVIDUALS AND WERE PROPERLY INCLUDED IN TAXABLE

COMPENSATION.  DUES FOR CLUBS USED FOR BUSINESS PURPOSES WERE PROPERLY

EXCLUDED FROM TAXABLE COMPENSATION.

PART I, LINE 3:

COMPENSATION OF THE NRA'S TOP MANAGEMENT OFFICIALS IS ESTABLISHED BY

METHODS INCLUDING INDEPENDENT COMPENSATION CONSULTANTS, COMPENSATION

SURVEYS AND STUDIES, AND COMPARABILITY DATA.  IN ADDITION, UNDER THE NRA

BYLAWS COMPENSATION OF CERTAIN ELECTED OFFICERS (INCLUDING THE EXECUTIVE

VICE PRESIDENT) MUST BE APPROVED BY THE BOARD OF DIRECTORS, BASED ON

RECOMMENDATIONS BY THE COMPENSATION COMMITTEE.  ALL DECISIONS ARE PROPERLY

DOCUMENTED.

Schedule J (Form 990) 2018

832113 10-26-18

**Part III | Supplemental Information**

Provide the information, explanation, or description required for Part I, lines 1a, 1b, 3, 4a, 4b, 4c, 5a, 5b, 6a, 6b, 7, and 8. Also complete this part for any additional information.

PART I, LINES 4A-B:

ROBERT K. WEAVER'S EMPLOYMENT AS EXECUTIVE DIRECTOR OF GENERAL OPERATIONS

ENDED IN 2016 AND DURING CALENDAR YEAR 2018 MR. WEAVER RECEIVED TAXABLE

COMPENSATION OF $720,000.

MICHEL MARCELLIN'S EMPLOYMENT AS MANAGING DIRECTOR OF AFFINITY AND

LICENSING ENDED IN 2016 AND DURING CALENDAR YEAR 2018 MR. MARCELLIN

RECEIVED TAXABLE COMPENSATION OF $535,045.

THE NRA HAS DEFERRED COMPENSATION RETIREMENT BENEFIT PLANS FOR CERTAIN

EMPLOYEES AND NONQUALIFIED SUPPLEMENTAL EXECUTIVE RETIREMENT PLANS FOR

CERTAIN EMPLOYEES. FOR NONQUALIFIED PLANS, THE FILING ORGANIZATION DECIDES

THE BENEFIT AMOUNT AND TIMEFRAME FOR VESTING OF EACH PARTICIPANT USING

DIFFERENT FACTORS PARTICULAR TO EACH RELEVANT INDIVIDUAL AND HIS OR HER

SPECIFIC CIRCUMSTANCES. PAYOUTS ARE PROPERLY INCLUDED IN TAXABLE WAGES AND

REPORTED IN W-2 INCOME.

PART II

Schedule J (Form 990) 2018

832113 10-26-18

832113 10-26-18

**Part III | Supplemental Information**

Provide the information, explanation, or descriptions required for Part I, lines 1a, 1b, 3, 4a, 4b, 4c, 5a, 5b, 6a, 6b, 7, and 8, and for Part II. Also complete this part for any additional information.

COLUMN B(I) MR. NORTH RECEIVED $1,377,617 PAID BY AN UNRELATED

ORGANIZATION, ACKERMAN MCQUEEN (AS FURTHER DETAILED ON SCHEDULE O).

COLUMN B(III) OTHER REPORTABLE COMPENSATION WITHIN TAXABLE WAGES FOR

MR. LAPIERRE INCLUDED $365,909 457(F) PAYOUT, $38,862 GROUP LIFE

INSURANCE, $18,500 457(B) PLAN, AND $4,485 TAXABLE PERSONAL EXPENSES.

OTHER REPORTABLE COMPENSATION WITHIN TAXABLE WAGES FOR MR. COX INCLUDED

$18,500 457(B) PLAN, $7,830 GROUP LIFE INSURANCE, AND $1,402 TAXABLE

PERSONAL EXPENSES. OTHER REPORTABLE COMPENSATION WITHIN TAXABLE WAGES

FOR MR. PHILLIPS INCLUDED $73,978 457(F) PAYOUT, $21,012 GROUP LIFE

INSURANCE, $18,500 457(B) PLAN, AND $3,480 TAXABLE PERSONAL EXPENSES.

OTHER REPORTABLE COMPENSATION WITHIN TAXABLE WAGES FOR MR. POWELL

INCLUDED $57,168 TAXABLE PERSONAL EXPENSES AND $4,230 GROUP LIFE

INSURANCE. OTHER REPORTABLE COMPENSATION WITHIN TAXABLE WAGES FOR MR.

SPRAY INCLUDED $175,174 ONE-TIME RELOCATION COSTS AND TEMPORARY LIVING

EXPENSES, $18,500 457(B) PLAN, AND $2,173 GROUP LIFE INSURANCE. OTHER

REPORTABLE COMPENSATION WITHIN TAXABLE WAGES FOR MR. FRAZER INCLUDED

$18,500 457(B) PLAN, $10,681 TAXABLE PERSONAL EXPENSES, AND $3,842

GROUP LIFE INSURANCE. OTHER REPORTABLE COMPENSATION WITHIN TAXABLE

Schedule J (Form 990) 2018

832113 10-26-18

**Part III** Supplemental Information

Provide the information, explanation, or description required for Part I, lines 1a, 1b, 3, 4a, 4b, 4c, 5a, 5b, 6a, 6b, 7, and 8, and for Part II. Also complete this part for any additional information.

WAGES FOR MR. DEBERGALIS INCLUDED $35,342 TAXABLE PERSONAL EXPENSES,
$18,500 457(B) PLAN, AND $1,932 GROUP LIFE INSURANCE. OTHER REPORTABLE
COMPENSATION WITHIN TAXABLE WAGES FOR MR. SCHROPP INCLUDED $1,530 GROUP
LIFE INSURANCE AND $2,842 TAXABLE PERSONAL EXPENSES. OTHER REPORTABLE
COMPENSATION WITHIN TAXABLE WAGES FOR MR. GRABLE INCLUDED $9,600
TAXABLE PERSONAL EXPENSES AND $1,530 GROUP LIFE INSURANCE. OTHER
REPORTABLE COMPENSATION WITHIN TAXABLE WAGES FOR MR. HAMLIN INCLUDED
$24,505 TAXABLE PERSONAL EXPENSES, $18,500 457(B) PLAN, AND $14,731
GROUP LIFE INSURANCE. OTHER REPORTABLE COMPENSATION WITHIN TAXABLE
WAGES FOR MR. LEHMAN INCLUDED $50,691 457(F) PAYOUT, $18,500 457(B)
PLAN, AND $2,484 GROUP LIFE INSURANCE. OTHER REPORTABLE COMPENSATION
WITHIN TAXABLE WAGES FOR MR. FROHARDT INCLUDED $24,605 TAXABLE PERSONAL
EXPENSES AND $1,140 GROUP LIFE INSURANCE.
COLUMN C EMPLOYER DEPOSITS TOWARD BENEFITS THAT WILL NOT BE PAID UNTIL
A FUTURE DATE ARE SHOWN IN COLUMN C. THE AMOUNT FOR MR. LAPIERRE
INCLUDED $16,500 401(K) AND $3,780 PENSION PLAN. THE AMOUNT FOR MR. COX
INCLUDED $16,500 401(K), $15,204 457(F), AND $3,780 PENSION PLAN. THE
AMOUNT FOR MR. PHILLIPS INCLUDED $16,500 401(K) AND $3,780 PENSION
PLAN, THE AMOUNT FOR MR. POWELL INCLUDED $16,500 401(K). THE AMOUNT FOR

Schedule J (Form 990) 2018 NATIONAL RIFLE ASSOCIATION OF AMERICA 53-0116130 Page 3

**Part III Supplemental Information**

Provide the information, explanation, or descriptions required for Part I, lines 1a, 1b, 3, 4a, 4b, 4c, 5a, 5b, 6a, 6b, 7, and 8, and for Part II. Also complete this part for any additional information.

MR. SPRAY INCLUDED $16,500 401(K). THE AMOUNT FOR MR. FRAZER INCLUDED

$16,500 401(K). THE AMOUNT FOR MR. DEBERGALIS INCLUDED $16,500 401(K).

THE AMOUNT FOR MR. SCHROPP INCLUDED $16,500 401(K). THE AMOUNT FOR MR.

GRABLE INCLUDED $16,500 401(K). THE AMOUNT FOR MR. HAMLIN INCLUDED

$16,443 401(K). THE AMOUNT FOR MR. LEHMAN INCLUDED $16,500 401(K). THE

AMOUNT FOR MR. FROHARDT INCLUDED $15,000 401(K).

COLUMN D NONTAXABLE BENEFITS ARE PROVIDED TO EMPLOYEES CONSISTENT WITH

ASSOCIATION INDUSTRY STANDARDS AND BEST PRACTICES. STANDARD NONTAXABLE

BENEFITS INCLUDE EMPLOYEE BENEFITS SUCH AS THE EMPLOYER PAID PORTIONS

OF MEDICAL AND DENTAL PLANS AND LONG-TERM AND SHORT-TERM DISABILITY

PLANS.

Schedule J (Form 990) 2018

832113 10-26-18

| SCHEDULE L | **Transactions With Interested Persons** | OMB No. 1545-0047 |
|---|---|---|
| (Form 990 or 990-EZ) | ▶ Complete if the organization answered "Yes" on Form 990, Part IV, line 25a, 25b, 26, 27, 28a, 28b, or 28c, or Form 990-EZ, Part V, line 38a or 40b. | **2018** |
| Department of the Treasury Internal Revenue Service | ▶ Attach to Form 990 or Form 990-EZ. ▶ Go to www.irs.gov/Form990 for instructions and the latest information. | Open To Public Inspection |

| Name of the organization | Employer identification number |
|---|---|
| NATIONAL RIFLE ASSOCIATION OF AMERICA | 53-0116130 |

**Part I** **Excess Benefit Transactions** (section 501(c)(3), section 501(c)(4), and 501(c)(29) organizations only).
Complete if the organization answered "Yes" on Form 990, Part IV, line 25a or 25b, or Form 990-EZ, Part V, line 40b.

| 1 (a) Name of disqualified person | (b) Relationship between disqualified person and organization | (c) Description of transaction | (d) Corrected? Yes | No |
|---|---|---|---|---|
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

2 Enter the amount of tax incurred by the organization managers or disqualified persons during the year under
   section 4958 ......................................................................................................... ▶ $ _____
3 Enter the amount of tax, if any, on line 2, above, reimbursed by the organization ..................... ▶ $ _____

**Part II** **Loans to and/or From Interested Persons.**
Complete if the organization answered "Yes" on Form 990-EZ, Part V, line 38a or Form 990, Part IV, line 26; or if the organization reported an amount on Form 990, Part X, line 5, 6, or 22.

| (a) Name of interested person | (b) Relationship with organization | (c) Purpose of loan | (d) Loan to or from the organization? To | From | (e) Original principal amount | (f) Balance due | (g) In default? Yes | No | (h) Approved by board or committee? Yes | No | (i) Written agreement? Yes | No |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | | | |
| | | | | | | | | | | | | |
| | | | | | | | | | | | | |
| | | | | | | | | | | | | |
| | | | | | | | | | | | | |
| | | | | | | | | | | | | |
| | | | | | | | | | | | | |
| | | | | | | | | | | | | |
| **Total** | | | | | ▶ $ | | | | | | | |

**Part III** **Grants or Assistance Benefiting Interested Persons.**
Complete if the organization answered "Yes" on Form 990, Part IV, line 27.

| (a) Name of interested person | (b) Relationship between interested person and the organization | (c) Amount of assistance | (d) Type of assistance | (e) Purpose of assistance |
|---|---|---|---|---|
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

LHA  For Paperwork Reduction Act Notice, see the Instructions for Form 990 or 990-EZ.          Schedule L (Form 990 or 990-EZ) 2018

832131 10-25-18

Schedule L (Form 990 or 990-EZ) 2018 NATIONAL RIFLE ASSOCIATION OF AMERICA 53-0116130 Page 2

| Part IV | Business Transactions Involving Interested Persons. |
|---------|------------------------------------------------------|

Complete if the organization answered "Yes" on Form 990, Part IV, line 28a, 28b, or 28c.

| (a) Name of interested person | (b) Relationship between interested person and the organization | (c) Amount of transaction | (d) Description of transaction | (e) Sharing of organization's revenues? | |
|---|---|---|---|---|---|
| | | | | Yes | No |
| TOM SELLECK | SEE PART V | 476,000. | SEE PART V | | X |
| JIM POWELL ADVER.PHOTOGRAP | SEE PART V | 11,513. | SEE PART V | | X |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

| Part V | Supplemental Information. |
|--------|---------------------------|

Provide additional information for responses to questions on Schedule L (see instructions).

SCH L, PART IV, BUSINESS TRANSACTIONS INVOLVING INTERESTED PERSONS:

(A) NAME OF PERSON: JIM POWELL ADVER.PHOTOGRAPHY


SCH L, PART IV, BUSINESS TRANSACTIONS INVOLVING INTERESTED PERSONS:

(A) NAME OF PERSON: TOM SELLECK

(B) RELATIONSHIP BETWEEN INTERESTED PERSON AND ORGANIZATION:

BOARD MEMBER

(D) DESCRIPTION OF TRANSACTION: THE NRA PURCHASED A GROUP OF

COLLECTIBLE FIREARMS THAT ORIGINATED FROM THE COLLECTION OF THEN-BOARD

MEMBER TOM SELLECK FOR $476,000. THE NRA INTENDS TO RESELL THE FIREARMS

OR OTHERWISE USE THEM IN NRA FUNDRAISING EFFORTS. BOARD MEMBER LANCE

OLSON,A LICENSED FIREARMS DEALER WHO PROVIDED CONSULTING SERVICES TO

THE NRA ON GUN COLLECTOR OUTREACH,ASSISTED IN THE TRANSACTION.


(A) NAME OF PERSON: JIM POWELL ADVERTISING PHOTOGRAPHY

(B) RELATIONSHIP BETWEEN INTERESTED PERSON AND ORGANIZATION:

OWNER IS AN OFFICER'S RELATIVE

(D) DESCRIPTION OF TRANSACTION: THE NRA PURCHASED JIM POWELL

ADVERTISING PHOTOGRAPY SERVICES FOR NRA COMPETITIONS EVENTS. THE OWNER

OF THE PHOTOGRAPHY SERVICES COMPANY, JIM POWELL, IS THE FATHER OF NRA

832132 10-25-18

Schedule L (Form 990 or 990-EZ)    NATIONAL RIFLE ASSOCIATION OF AMERICA    53-0116130  Page 2

| Part V | Supplemental Information |
|---|---|

Complete this part to provide additional information for responses to questions on Schedule L (see instructions).

OFFICER JOSH POWELL.

Schedule L (Form 990 or 990-EZ)

| SCHEDULE M | **Noncash Contributions** | OMB No. 1545-0047 |
|---|---|---|
| **(Form 990)** | | |

**Noncash Contributions**

| | |
|---|---|
| SCHEDULE M (Form 990) | OMB No. 1545-0047 |
| Department of the Treasury Internal Revenue Service | **2018** |

▶ Complete if the organizations answered "Yes" on Form 990, Part IV, lines 29 or 30.
▶ Attach to Form 990.
▶ Go to www.irs.gov/Form990 for instructions and the latest information.

**Open to Public Inspection**

| Name of the organization | Employer identification number |
|---|---|
| NATIONAL RIFLE ASSOCIATION OF AMERICA | 53-0116130 |

**Part I   Types of Property**

| | | (a) Check if applicable | (b) Number of contributions or items contributed | (c) Noncash contribution amounts reported on Form 990, Part VIII, line 1g | (d) Method of determining noncash contribution amounts |
|---|---|---|---|---|---|
| 1 | Art - Works of art | | | | |
| 2 | Art - Historical treasures | | | | |
| 3 | Art - Fractional interests | | | | |
| 4 | Books and publications | | | | |
| 5 | Clothing and household goods | | | | |
| 6 | Cars and other vehicles | | | | |
| 7 | Boats and planes | | | | |
| 8 | Intellectual property | | | | |
| 9 | Securities - Publicly traded | X | 11,600 | 407,352. | FMV |
| 10 | Securities - Closely held stock | | | | |
| 11 | Securities - Partnership, LLC, or trust interests | | | | |
| 12 | Securities - Miscellaneous | | | | |
| 13 | Qualified conservation contribution - Historic structures | | | | |
| 14 | Qualified conservation contribution - Other | | | | |
| 15 | Real estate - Residential | | | | |
| 16 | Real estate - Commercial | | | | |
| 17 | Real estate - Other | | | | |
| 18 | Collectibles | | | | |
| 19 | Food inventory | | | | |
| 20 | Drugs and medical supplies | | | | |
| 21 | Taxidermy | | | | |
| 22 | Historical artifacts | | | | |
| 23 | Scientific specimens | | | | |
| 24 | Archeological artifacts | | | | |
| 25 | Other ▶ ( _____ ) | | | | |
| 26 | Other ▶ ( _____ ) | | | | |
| 27 | Other ▶ ( _____ ) | | | | |
| 28 | Other ▶ ( _____ ) | | | | |

| | | | |
|---|---|---|---|
| 29 | Number of Forms 8283 received by the organization during the tax year for contributions for which the organization completed Form 8283, Part IV, Donee Acknowledgement | 29 | |

| | | Yes | No |
|---|---|---|---|
| 30a | During the year, did the organization receive by contribution any property reported in Part I, lines 1 through 28, that it must hold for at least three years from the date of the initial contribution, and which isn't required to be used for exempt purposes for the entire holding period? | | X |
| b | If "Yes," describe the arrangement in Part II. | | |
| 31 | Does the organization have a gift acceptance policy that requires the review of any nonstandard contributions? | X | |
| 32a | Does the organization hire or use third parties or related organizations to solicit, process, or sell noncash contributions? | X | |
| b | If "Yes," describe in Part II. | | |
| 33 | If the organization didn't report an amount in column (c) for a type of property for which column (a) is checked, describe in Part II. | | |

LHA   For Paperwork Reduction Act Notice, see the Instructions for Form 990.          Schedule M (Form 990) 2018

Schedule M (Form 990) 2018  NATIONAL RIFLE ASSOCIATION OF AMERICA      53-0116130      Page 2

| Part II | Supplemental Information. Provide the information required by Part I, lines 30b, 32b, and 33, and whether the organization is reporting in Part I, column (b), the number of contributions, the number of items received, or a combination of both. Also complete this part for any additional information.

SCHEDULE M, LINE 32B:

ON OCCASION AND AS APPROPRIATE, SECURITIES AND OTHER DONATED LIQUID OR

ILLIQUID ASSETS CAN BE CONVERTED INTO CASH BY THE OUTSIDE THIRD PARTY

SPECIALISTS THAT PARTNER WITH THE NRA TO FULFILL THE PHILANTHROPIC

INTENTIONS OF THE DONORS.

Schedule M (Form 990) 2018

| SCHEDULE O | **Supplemental Information to Form 990 or 990-EZ** | OMB No. 1545-0047 |
|---|---|---|
| **(Form 990 or 990-EZ)** | Complete to provide information for responses to specific questions on Form 990 or 990-EZ or to provide any additional information. | **2018** |
| Department of the Treasury Internal Revenue Service | ▶ Attach to Form 990 or 990-EZ. ▶ Go to www.irs.gov/Form990 for the latest information. | Open to Public Inspection |

| Name of the organization | Employer identification number |
|---|---|
| NATIONAL RIFLE ASSOCIATION OF AMERICA | 53-0116130 |

FORM 990, PART I, SECTION 1, LINE 1

THE NRA IS A 501(C)(4) MEMBERSHIP ASSOCIATION WITH FOUR 501(C)(3)

PUBLIC CHARITIES AND A SECTION 527 POLITICAL ACTION COMMITTEE (PAC)

WHICH IS A SEPARATE SEGREGATED FUND. THE FOUR CHARITIES AFFILIATED WITH

THE NRA ARE NRA CIVIL RIGHTS DEFENSE FUND, NRA FOUNDATION INC, NRA

FREEDOM ACTION FOUNDATION, AND NRA SPECIAL CONTRIBUTION FUND DBA NRA

WHITTINGTON CENTER. THE POLITICAL ACTION COMMITTEE IS NRA POLITICAL

VICTORY FUND. SEE SCHEDULE R, PART II.


FORM 990, PART I, LINE 7

THIS INFORMATIONAL NOTE REGARDS THE NRA'S UNRELATED BUSINESS INCOME.

FORM 990 PAGE 1 SHOWS GROSS UNRELATED BUSINESS REVENUE ON LINE 7A AND

NET UNRELATED BUSINESS TAXABLE INCOME ON LINE 7B. THE NRA DID NOT OWE

UNRELATED BUSINESS INCOME TAX FOR THE YEAR 2018 BECAUSE DIRECTLY

CONNECTED DEDUCTIONS WERE GREATER THAN THE ASSOCIATED INCOME IN 2018.

THE MAIN SOURCES OF NRA UNRELATED BUSINESS INCOME, AS SHOWN ON 990 PART

VIII, COLUMN C, ARE CERTAIN MERCHANDISE SALES FROM THE E-COMMERCE

PLATFORMS, ADVERTISING, AND OTHER ACTIVITIES NOT RELATED TO THE NRA'S

TAX EXEMPT PURPOSES. ADDITIONAL INFORMATIONAL NOTES RELATED TO THE

NRA'S TAXES ARE SHARED ON SCHEDULE C REGARDING 527(F) PROXY TAXES AND

SCHEDULE D REGARDING STATE AND LOCAL TAXES. THE NRA CHOOSES TO SHARE

THIS EXTRA INFORMATION ABOUT THE TAXES IN ORDER TO DEMONSTRATE IN GOOD

FAITH THAT THE ORGANIZATION IS A TAXPAYER IN GOOD STANDING.


FORM 990 PART I, LINE 8

LHA  For Paperwork Reduction Act Notice, see the Instructions for Form 990 or 990-EZ.          Schedule O (Form 990 or 990-EZ) (2018)

832211 10-10-18

Schedule O (Form 990 or 990-EZ) (2018)                                                                Page 2

| Name of the organization | Employer identification number |
|---|---|
| NATIONAL RIFLE ASSOCIATION OF AMERICA | 53-0116130 |

THIS INFORMATIONAL NOTE REGARDS THE NRA'S CONTRIBUTION REVENUE. THE

VAST MAJORITY OF CONTRIBUTIONS TO THE NRA COMES FROM MILLIONS OF SMALL

INDIVIDUAL DONORS. GIFTS FROM COMPANIES AND EXECUTIVES IN THE FIREARMS,

HUNTING, AND SHOOTING SPORTS INDUSTRIES INDUSTRIES TYPICALLY COMPRISE

LESS THAN 5% OF THE NRA'S CONTRIBUTION REVENUE EVERY YEAR, AS APPLIED

TO CONTRIBUTION REVENUE REPORTED ON FORM 990, PART VIII, LINE 1.


FORM 990, PART III, LINE 4D, OTHER PROGRAM SERVICES:

THIS NOTE PROVIDES FURTHER INFORMATION ON PART III PROGRAM SERVICE

ACCOMPLISHMENTS. NRA PROGRAM SERVICES ARE CENTERED ON THE NRA'S CORE

MISSION OF FIREARMS SAFETY, EDUCATION, AND TRAINING, INCLUDING

MESSAGING THAT PROMOTES FREEDOM AND LIBERTY. THE ADDITIONAL PROGRAM

SERVICE EXPENSES OF $59,426,544 NOTED ON 990 CORE FORM PART III LINE 4D

INCLUDE THE PROGRAM SERVICES COMPONENTS OF PUBLIC AFFAIRS, EXECUTIVE,

AND ADVANCEMENT OPERATIONS. 990 READERS ARE ENCOURAGED TO ACCESS

NRA.ORG FOR OPPORTUNITIES TO CONTINUE TO ENGAGE WITH THE NRA.

EXPENSES $ 59,426,544.   INCLUDING GRANTS OF $ 0.   REVENUE $ 1,330,515.


FORM 990, PART VI, SECTION A, LINE 2:

SEVERAL NRA DIRECTORS ARE EMPLOYED IN THE FIREARMS INDUSTRY AS

MANUFACTURERS OR SELLERS OF FIREARMS, AMMUNITION, OR COMPONENTS THEREOF.

THESE BOARD MEMBERS ROUTINELY BUY AND SELL PRODUCTS FROM ONE ANOTHER IN THE

ORDINARY COURSE OF BUSINESS.


FORM 990, PART VI, SECTION A, LINE 6:

THE NATIONAL RIFLE ASSOCIATION IS A MEMBERSHIP ASSOCIATION THAT REPRESENTS

ONLY INDIVIDUAL CITIZENS. MEMBERSHIP DUES ARE PROPERLY REPORTED ON FORM

Schedule O (Form 990 or 990-EZ) (2018)                                                                Page 2

| Name of the organization | Employer identification number |
|---|---|
| NATIONAL RIFLE ASSOCIATION OF AMERICA | 53-0116130 |

990, PART VIII, LINE 2 PURSUANT TO THE INSTRUCTIONS FOR SUCH REPORTING.


FORM 990, PART VI, SECTION A, LINE 7A:

NRA MEMBERS ELECT ALL 76 MEMBERS OF THE NRA BOARD OF DIRECTORS. 75

DIRECTORS ARE ELECTED FOR STAGGERED THREE YEAR TERMS, AND THE 76TH DIRECTOR

IS ELECTED FOR ONE YEAR TERM ON THE OCCASION OF EACH ANNUAL MEETING OF

MEMBERS.


FORM 990, PART VI, SECTION A, LINE 7B:

CERTAIN BOARD OF DIRECTORS DECISIONS ARE SUBJECT TO MEMBERSHIP APPROVAL PER

NRA BYLAWS AND NEW YORK NOT FOR PROFIT CORPORATE LAW.


FORM 990, PART VI, SECTION B, LINE 11B:

FORM 990 IS REVIEWED BY THE EXTERNAL AUDITING FIRM, PRESENTED TO THE NRA

BOARD OF DIRECTORS AUDIT COMMITTEE, AND MADE AVAILABLE TO THE FULL NRA

BOARD OF DIRECTORS, BEFORE IT IS FILED WITH THE IRS.


FORM 990, PART VI, SECTION B, LINE 12C:

THE ORGANIZATION'S CONFLICT OF INTEREST POLICY APPLIES TO OFFICERS,

DIRECTORS, AND KEY EMPLOYEES OF THE FILING ORGANIZATION AND ITS AFFILIATES,

AS WELL AS TO THEIR RELATIVES. RELATED PARTY TRANSACTIONS AND POTENTIAL

CONFLICTS ARE SELF-REPORTED ON A QUESTIONNAIRE THAT IS DISTRIBUTED AT LEAST

ANNUALLY AND REVIEWED BY THE SECRETARY AND GENERAL COUNSEL. ISSUES MAY ALSO

BE REPORTED THROUGH OTHER MEANS OR INDEPENDENTLY DISCOVERED BY STAFF.

REGARDLESS OF HOW THEY ARE REPORTED, RELATED PARTY TRANSACTIONS AND ISSUES

OF APPARENT CONFLICT ARE PRESENTED TO THE BODY DESIGNATED BY THE BOARD OF

DIRECTORS (THE AUDIT COMMITTEE) FOR APPROVAL, DISAPPROVAL, OR PRECAUTIONARY

MEASURES AS NEEDED.

Schedule O (Form 990 or 990-EZ) (2018)                                                Page 2

| Name of the organization | Employer identification number |
|---|---|
| NATIONAL RIFLE ASSOCIATION OF AMERICA | 53-0116130 |

FORM 990, PART VI, SECTION B, LINE 15:

COMPENSATION OF THE NRA'S TOP MANAGEMENT OFFICIALS IS ESTABLISHED BY

METHODS INCLUDING INDEPENDENT COMPENSATION CONSULTANTS, COMPENSATION

SURVEYS AND STUDIES, AND COMPARABILITY DATA. IN ADDITION, UNDER THE NRA

BYLAWS COMPENSATION OF CERTAIN ELECTED OFFICERS (INCLUDING THE EXECUTIVE

VICE PRESIDENT) MUST BE APPROVED BY THE BOARD OF DIRECTORS, BASED ON

RECOMMENDATIONS BY THE COMPENSATION COMMITTEE. ALL DECISIONS ARE PROPERLY

DOCUMENTED.

FORM 990, PART VI, LINE 17, LIST OF STATES RECEIVING COPY OF FORM 990:

AL,AZ,AR,CA,CO,CT,DC,FL,GA,HI,ID,IL,IN,IA,KS,KY,LA,ME,MD,MA,MI,MN,MS,MO,NE

NV,NH,NJ,MT,NM,NY,ND,NC,OH,OK,OR,PA,PR,RI,SC,DE,SD,TN,TX,UT,VT,VA,WV,WA,WI,

WY

FORM 990, PART VI, SECTION C, LINE 19:

THE ORGANIZATION'S CONFLICT OF INTEREST POLICY APPLIES TO OFFICERS,

DIRECTORS, AND KEY EMPLOYEES OF THE FILING ORGANIZATION AND ITS AFFILIATES,

AS WELL AS TO THEIR RELATIVES. RELATED PARTY TRANSACTIONS AND POTENTIAL

CONFLICTS ARE SELF-REPORTED ON A QUESTIONNAIRE THAT IS DISTRIBUTED AT LEAST

ANNUALLY AND REVIEWED BY THE SECRETARY AND GENERAL COUNSEL. ISSUES MAY ALSO

BE REPORTED THROUGH OTHER MEANS OR INDEPENDENTLY DISCOVERED BY STAFF.

REGARDLESS OF HOW THEY ARE REPORTED, RELATED PARTY TRANSACTIONS AND ISSUES

OF APPARENT CONFLICT ARE PRESENTED TO THE BODY DESIGNATED BY THE BOARD OF

DIRECTORS (THE AUDIT COMMITTEE) FOR APPROVAL, DISAPPROVAL, OR PRECAUTIONARY

MEASURES AS NEEDED.

FORM 990, PART VI, SECTION C, LINE 18

| Name of the organization | Employer identification number |
|---|---|
| NATIONAL RIFLE ASSOCIATION OF AMERICA | 53-0116130 |

READERS ARE POLITELY REMINDED THE NRA WAS FOUNDED 147 YEARS AGO, IN
1871. THE NRA'S 1944 DETERMINATION LETTER FROM THE INTERNAL REVENUE
SERVICE IS AVAILABLE ON GUIDESTAR.ORG AND CAN ALSO BE REQUESTED
DIRECTLY FROM THE NRA AS REQUIRED BY LAW. FORMS 990 CAN BE REQUESTED
DIRECTLY FROM THE NRA AS REQUIRED BY LAW.


FORM 990, PART VII, SECTION A, LINE 1
THIS INFORMATIONAL NOTE REGARDS SERVICE ON THE NRA BOARD OF DIRECTORS,
WHICH IS NOT COMPENSATED. BOARD MEMBERS WHO RECEIVED COMPENSATION IN
2018 WERE COMPENSATED FOR OTHER REASONS, NOT FOR THEIR VOLUNTARY BOARD
SERVICE. MR. BUTZ, MS. FROMAN, MS. GOLOB, MS. HAMMER, MR. KEENE, MR.
NUGENT, MR. OLSON, AND MR. SKELTON WERE COMPENSATED FOR OTHER
PROFESSIONAL SERVICES THEY PERFORMED FOR THE ORGANIZATION. MR.
BROWNELL, MS. LIGHTFOOT, AND MR. MILLS, AND MR. TED NUGENT RECEIVED
MEMBERSHIP RECRUITING COMMISSIONS THAT WERE PAID TO THEIR COMPANIES.
FOR THE PURPOSE OF DETERMINING THE COUNT OF INDEPENDENT DIRECTORS AS OF
DECEMBER 31, 2018 SHOWN ON PART I LINE 3 AND PART VI LINE 1B, THE NINE
DIRECTORS NOT CONSIDERED INDEPENDENT FOR 2018 WERE MR. BUTZ, MS.
FROMAN, MS. GOLOB, MS. HAMMER, MR. KEENE, MR. NORTH, MR. NUGENT, MR.
OLSON, AND MR. SKELTON.


FORM 990, PART VII, SECTION A, LINE 5
IN 2018, MR. NORTH RECEIVED NO COMPENSATION FROM THE NRA FOR HIS 20
HOURS PER WEEK AS NRA PRESIDENT. THE PAYMENTS OF $1,377,617 WERE FROM
AN UNRELATED ORGANIZATION, ACKERMAN MCQUEEN INC. CERTAIN OF THESE
PAYMENTS ARE DISPUTED AND SUBJECT TO ONGOING LITIGATION. IN 2018. MS.
GOLOB WAS ALSO COMPENSATED BY AN UNRELATED ORGANIZATION, ACKERMAN

| Schedule O (Form 990 or 990-EZ) (2018) | Page 2 |
|---|---|
| Name of the organization NATIONAL RIFLE ASSOCIATION OF AMERICA | Employer identification number 53-0116130 |

MCQUEEN INC, $28,661 FOR PROFESSIONAL SERVICES PERFORMED ON NRA DIGITAL

MEDIA PROJECTS.


FORM 990, PART VII SECTION B, LINE 1

THIS INFORMATIONAL NOTE PROVIDES ADDITIONAL DETAIL ABOUT AMOUNTS PAID

TO OUTSIDE SERVICES PROVIDERS. THE FILING ORGANIZATION REPORTS

COMPENSATION PAID TO SERVICES PROVIDERS EXCLUSIVE OF ADVERTISING AND

OTHER MEDIA PLACED ON BEHALF OF THE FILING ORGANIZATION AND EXPENSES

INCURRED ON BEHALF OF THE FILING ORGANIZATION. FOR EXAMPLE, THE FIGURE

OF $31,994,168 STATED ON PART VII SECTION B LINE 1 REFLECTS

COMPENSATION FOR SERVICES PAID TO ACKERMAN MCQUEEN INC. IT EXCLUDES

$6,337,508 INCURRED FOR OUT OF POCKET EXPENDITURES ON BEHALF OF THE

FILING ORGANIZATION INCLUDING MEDIA, OUTSIDE VENDOR COSTS, AND

REIMBURSEMENT OF TRAVEL AND BUSINESS EXPENSES.



FORM 990, PART VIII, LINE 2B

THIS INFORMATIONAL NOTE REGARDS THE REPORTING OF MEMBER DUES ON FORM

990. LINE 1B OF THE REVENUE STATEMENT IS PROPERLY LEFT BLANK. PURSUANT

TO 990 INSTRUCTIONS, MEMBERSHIP DUES THAT ARE NOT CONTRIBUTIONS BECAUSE

THEY COMPARE REASONABLY WITH AVAILABLE BENEFITS ARE SHOWN ON LINE 2.

THUS, ALL NRA MEMBER DUES ARE PROPERLY SHOWN ON THE 990 REVENUE

STATEMENT AS PROGRAM SERVICE REVENUE ON LINE 2, OTHER THAN NRA

LIFE-PLUS CONTRIBUTIONS WHICH ARE PROPERLY COUNTED AS CONTRIBUTION

REVENUE IN LINE 1F OF THE 990 REVENUE STATEMENT.



FORM 990, PART IX, LINE 11

| Name of the organization | Employer identification number |
|---|---|
| NATIONAL RIFLE ASSOCIATION OF AMERICA | 53-0116130 |

THIS INFORMATIONAL NOTE REGARDS THE NRA'S PAYMENT OF FEES FOR OUTSIDE

PROFESSIONAL SERVICES AS STATED ON LINE 11 OF THE 990 EXPENSE

STATEMENT. LINE 11B REPORTS LEGAL FEES PAID TO OUTSIDE ATTORNEYS, SUCH

AS FOR SECOND AMENDMENT CASE WORK AND RELATED LITIGATION AT THE FEDERAL

AND STATE LEVELS AND FOR REGULATORY AND COMPLIANCE MATTERS. LINE 11C

REPORTS ACCOUNTING FEES PAID TO THE OUTSIDE CPA FIRM THAT PROVIDES THE

NRA'S AUDITING AND TAX SERVICES. LINE 11D REPORTS LOBBYING EXPENSE PAID

TO EXTERNAL REGISTERED LOBBYISTS. LINE 11E REPORTS FUNDRAISING COSTS

PAID TO THE AUTHORIZED VENDORS LISTED ON SCHEDULE G. LINE 11F REPORTS

INVESTMENT MANAGEMENT FEES PAID TO INVESTMENT ADVISORS THAT MANAGE THE

NRA'S PORTFOLIOS. LINE 11G SHOWS TELEMARKETING COSTS FOR MEMBERSHIP

SERVICING. PROFESSIONAL SERVICES PERFORMED BY NRA EMPLOYEES (IN HOUSE

COUNSEL, IN HOUSE ACCOUNTANTS, IN HOUSE LOBBYISTS, IN HOUSE

FUNDRAISERS, AND IN HOUSE INVESTMENT MANAGERS, RESPECTIVELY) ARE

PROPERLY REPORTED WITHIN LINES 5-7 OF THE 990 EXPENSE STATEMENT, AS

REQUIRED BY 990 FORM INSTRUCTIONS. PROFESSIONAL SERVICES PERFORMED BY

THE TELEMARKETING VENDOR FOR FUNDRAISING PURPOSES, RATHER THAN FOR

MEMBERSHIP, ARE PROPERLY REPORTED WITHIN LINE 11E, AS REQUIRED BY 990

FORM INSTRUCTIONS.


FORM 990, PART IX, LINE 24E

THIS RESPONSE EXPLAINS $12,581,928 OF OTHER EXPENSES STATED ON LINE 24E

OF THE 990, PART IX EXPENSE STATEMENT WHICH WERE NOT ACCOMMODATED BY

OTHER EXPENSE LINE DESCRIPTIONS. THIS FIGURE INCLUDES $9,204,256 OF

FULFILLMENT MATERIALS, $5,747,802 BANKING FEES, $1,276,567 MEMBERSHIP

PREMIUMS, $560,407 OF NON-PAYROLL TAXES, AND ($4,927,105) FASB ASC 715

PENSION ACCOUNTING VALUATION ADJUSTMENT.

Schedule O (Form 990 or 990-EZ) (2018)                                                                Page 2

| Name of the organization | Employer identification number |
|---|---|
| NATIONAL RIFLE ASSOCIATION OF AMERICA | 53-0116130 |

FORM 990, PART XI, LINE 9, CHANGES IN NET ASSETS:

AGENCY TRANSACTIONS                                                                -1,910,739.

UNREALIZED GAIN ON DERIVATIVE INSTRUMENT                                             745,782.

TOTAL TO FORM 990, PART XI, LINE 9                                                  -1,164,957.


FORM 990, PART XI, LINE 9

THIS RESPONSE EXPLAINS ($1,164,957) OF OTHER CHANGES IN THE NET ASSETS

RECONCILIATION SCHEDULE. THE FIGURE INCLUDES ($1,910,739) AGENCY

TRANSACTIONS BETWEEN THE NRA AND NRA FOUNDATION AND $745,782 UNREALIZED

GAIN ON DERIVATIVE INSTRUMENT. THE AGENCY TRANSACTIONS FIGURE OF

($1,910,739) INCLUDES ENDOWMENT CONTRIBUTIONS AND ENDOWMENT EARNINGS

DESIGNATED BY NRA FOUNDATION DONORS FOR ELIGIBLE NRA PROGRAMS. AN

INFORMATION NOTE REGARDING THE PURPOSE OF THE DERIVATIVE INSTRUMENT IS

INCLUDED WITH SCHEDULE D PART X, LINE 1(2).

SCHEDULE R
(Form 990)

Department of the Treasury
Internal Revenue Service

**Related Organizations and Unrelated Partnerships**
▶ Complete if the organization answered "Yes" on Form 990, Part IV, line 33, 34, 35b, 36, or 37.
▶ Attach to Form 990.
▶ Go to www.irs.gov/Form990 for instructions and the latest information.

OMB No. 1545-0047

**2018**

Open to Public
Inspection

| Name of the organization | Employer identification number |
|---|---|
| NATIONAL RIFLE ASSOCIATION OF AMERICA | 53-0116130 |

**Part I**  Identification of Disregarded Entities.  Complete if the organization answered "Yes" on Form 990, Part IV, line 33.

| (a)<br>Name, address, and EIN (if applicable)<br>of disregarded entity | (b)<br>Primary activity | (c)<br>Legal domicile (state or<br>foreign country) | (d)<br>Total income | (e)<br>End-of-year assets | (f)<br>Direct controlling<br>entity |
|---|---|---|---|---|---|
| LEXINGTON CONCORD HOLDINGS LLC - 83-1798978<br>11250 WAPLES MILL RD<br>FAIRFAX, VA 22030 | DEVELOPMENT PHASE | DELAWARE | 0. | 0. | NRA |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

**Part II**  Identification of Related Tax-Exempt Organizations.  Complete if the organization answered "Yes" on Form 990, Part IV, line 34, because it had one or more related tax-exempt organizations during the tax year.

| (a)<br>Name, address, and EIN<br>of related organization | (b)<br>Primary activity | (c)<br>Legal domicile (state or<br>foreign country) | (d)<br>Exempt Code<br>section | (e)<br>Public charity<br>status (if section<br>501(c)(3)) | (f)<br>Direct controlling<br>entity | (g)<br>Section 512(b)(13)<br>controlled<br>entity? | |
|---|---|---|---|---|---|---|---|
| | | | | | | Yes | No |
| NRA FOUNDATION INC - 52-1710886<br>11250 WAPLES MILL RD<br>FAIRFAX, VA 22030 | CHARITABLE | DISTRICT OF COLUMBIA | 501(C)(3) | LINE 7 | NRA | X | |
| NRA SPECIAL CONTRIBUTION FUND - 23-7367534<br>11250 WAPLES MILL RD<br>FAIRFAX, VA 22030 | CHARITABLE | NEW MEXICO | 501(C)(3) | LINE 7 | NRA | X | |
| NRA CIVIL RIGHTS DEFENSE FUND - 52-1136665<br>11250 WAPLES MILL RD<br>FAIRFAX, VA 22030 | CHARITABLE | VIRGINIA | 501(C)(3) | LINE 7 | NRA | X | |
| NRA FREEDOM ACTION FOUNDATION - 26-1277941<br>11250 WAPLES MILL RD<br>FAIRFAX, VA 22030 | CHARITABLE | VIRGINIA | 501(C)(3) | LINE 7 | NRA | X | |

**For Paperwork Reduction Act Notice, see the Instructions for Form 990.**

832161 10-02-18    LHA

Schedule R (Form 990) 2018

Schedule R (Form 990)   NATIONAL RIFLE ASSOCIATION OF AMERICA   53-0116130

**Part II** Continuation of Identification of Related Tax-Exempt Organizations

| (a) Name, address, and EIN of related organization | (b) Primary activity | (c) Legal domicile (state or foreign country) | (d) Exempt Code section | (e) Public charity status (if section 501(c)(3)) | (f) Direct controlling entity | (g) Section 512(b)(13) controlled organization? Yes | No |
|---|---|---|---|---|---|---|---|
| NRA POLITICAL VICTORY FUND - 52-1083020<br>11250 WAPLES MILL RD<br>FAIRFAX, VA 22030 | PAC/SSF | VIRGINIA | 527 | | NRA | | X |

632222
04-01-18

Schedule R (Form 990) 2018   **NATIONAL RIFLE ASSOCIATION OF AMERICA**      53-0116130    Page **2**

**Part III**   **Identification of Related Organizations Taxable as a Partnership.** Complete if the organization answered "Yes" on Form 990, Part IV, line 34, because it had one or more related organizations treated as a partnership during the tax year.

| (a)<br>Name, address, and EIN<br>of related organization | (b)<br>Primary activity | (c)<br>Legal<br>domicile<br>(state or<br>foreign<br>country) | (d)<br>Direct controlling<br>entity | (e)<br>Predominant income<br>(related, unrelated,<br>excluded from tax under<br>sections 512-514) | (f)<br>Share of total<br>income | (g)<br>Share of<br>end-of-year<br>assets | (h)<br>Disproportionate<br>allocations?<br>Yes / No | (i)<br>Code V-UBI<br>amount in box<br>20 of Schedule<br>K-1 (Form 1065) | (j)<br>General or<br>managing<br>partner?<br>Yes / No | (k)<br>Percentage<br>ownership |
|---|---|---|---|---|---|---|---|---|---|---|
| WBB INVESTMENTS, LLC -<br>32-0569014, 11250 WAPLES MILL<br>RD, FAIRFAX, VA 22030 | INVESTMENT | DE | NRA | 0. | 0. | 0. | X | N/A | X | 99.00% |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |
| | | | | | | | | | | |

**Part IV**   **Identification of Related Organizations Taxable as a Corporation or Trust.** Complete if the organization answered "Yes" on Form 990, Part IV, line 34, because it had one or more related organizations treated as a corporation or trust during the tax year.

| (a)<br>Name, address, and EIN<br>of related organization | (b)<br>Primary activity | (c)<br>Legal domicile<br>(state or<br>foreign<br>country) | (d)<br>Direct controlling<br>entity | (e)<br>Type of entity<br>(C corp, S corp,<br>or trust) | (f)<br>Share of total<br>income | (g)<br>Share of<br>end-of-year<br>assets | (h)<br>Percentage<br>ownership | (i)<br>Section<br>512(b)(13)<br>controlled<br>entity?<br>Yes / No |
|---|---|---|---|---|---|---|---|---|
| WINGATE CHURCH INSURANCE SERVICES INC<br>11250 WAPLES MILL RD<br>FAIRFAX, VA 22030 | DEVELOPMENT PHASE | DE | NRA | C CORP | 0. | 0. | 100% | X |
| NRA HOLDINGS COMPANY INC - 02-0558658<br>11250 WAPLES MILL RD<br>FAIRFAX, VA 22030 | MANAGEMENT SERVICES | VA | NRA | C CORP | 0. | 0. | 100% | X |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |

832162 10-02-18          Schedule R (Form 990) 2018

Schedule R (Form 990) 2018    NATIONAL RIFLE ASSOCIATION OF AMERICA        53-0116130    Page **3**

**Part V**   **Transactions With Related Organizations.** Complete if the organization answered "Yes" on Form 990, Part IV, line 34, 35b, or 36.

| | | | Yes | No |
|---|---|---|---|---|
| **Note:** Complete line 1 if any entity is listed in Parts II, III, or IV of this schedule. | | | | |
| **1** During the tax year, did the organization engage in any of the following transactions with one or more related organizations listed in Parts II-IV? | | | | |
| **a** Receipt of **(i)** interest, **(ii)** annuities, **(iii)** royalties, or **(iv)** rent from a controlled entity | | 1a | X | |
| **b** Gift, grant, or capital contribution to related organization(s) | | 1b | | X |
| **c** Gift, grant, or capital contribution from related organization(s) | | 1c | X | |
| **d** Loans or loan guarantees to or for related organization(s) | | 1d | | X |
| **e** Loans or loan guarantees by related organization(s) | | 1e | X | |
| **f** Dividends from related organization(s) | | 1f | | X |
| **g** Sale of assets to related organization(s) | | 1g | | X |
| **h** Purchase of assets from related organization(s) | | 1h | | X |
| **i** Exchange of assets with related organization(s) | | 1i | | X |
| **j** Lease of facilities, equipment, or other assets to related organization(s) | | 1j | | X |
| **k** Lease of facilities, equipment, or other assets from related organization(s) | | 1k | | X |
| **l** Performance of services or membership or fundraising solicitations for related organization(s) | | 1l | X | |
| **m** Performance of services or membership or fundraising solicitations by related organization(s) | | 1m | | X |
| **n** Sharing of facilities, equipment, mailing lists, or other assets with related organization(s) | | 1n | X | |
| **o** Sharing of paid employees with related organization(s) | | 1o | X | |
| **p** Reimbursement paid to related organization(s) for expenses | | 1p | | X |
| **q** Reimbursement paid by related organization(s) for expenses | | 1q | X | |
| **r** Other transfer of cash or property to related organization(s) | | 1r | X | |
| **s** Other transfer of cash or property from related organization(s) | | 1s | | X |

**2** If the answer to any of the above is "Yes," see the instructions for information on who must complete this line, including covered relationships and transaction thresholds.

| **(a)** Name of related organization | **(b)** Transaction type (a-s) | **(c)** Amount involved | **(d)** Method of determining amount involved |
|---|---|---|---|
| (1) NRA FOUNDATION INC | A | 180,000. | CASH VALUE |
| (2) NRA FOUNDATION INC | C | 13,525,570. | CASH VALUE |
| (3) NRA FOUNDATION INC | E | 5,000,000. | CASH VALUE |
| (4) NRA FOUNDATION INC | O | 13,083,925. | CASH VALUE |
| (5) NRA FOUNDATION INC | Q | 4,218,390. | CASH VALUE |
| (6) NRA CIVIL RIGHTS DEFENSE FUND | C | 433,872. | CASH VALUE |

832163 10-02-18                                               Schedule R (Form 990) 2018

Schedule R (Form 990)    NATIONAL RIFLE ASSOCIATION OF AMERICA    53-0116130

**Part V** Continuation of Transactions With Related Organizations (Schedule R (Form 990), Part V, line 2)

| (a) Name of other organization | (b) Transaction type (a-r) | (c) Amount involved | (d) Method of determining amount involved |
|---|---|---|---|
| (7) NRA CIVIL RIGHTS DEFENSE FUND | Q | 39,431. | CASH VALUE |
| (8) NRA SPECIAL CONTRIBUTION FUND | A | 120,000. | CASH VALUE |
| (9) NRA SPECIAL CONTRIBUTION FUND | Q | 1,805,930. | CASH VALUE |
| (10) NRA POLITICAL VICTORY FUND | R | 3,078. | CASH VALUE |
| (11) LEXINGTON CONCORD HOLDINGS LLC | Q | 88,410. | CASH VALUE |
| (12) | | | |
| (13) | | | |
| (14) | | | |
| (15) | | | |
| (16) | | | |
| (17) | | | |
| (18) | | | |
| (19) | | | |
| (20) | | | |
| (21) | | | |
| (22) | | | |
| (23) | | | |
| (24) | | | |

832225
04-01-18

Schedule R (Form 990) 2018

NATIONAL RIFLE ASSOCIATION OF AMERICA 53-0116130 Page **4**

**Part VI** **Unrelated Organizations Taxable as a Partnership.** Complete if the organization answered "Yes" on Form 990, Part IV, line 37.

Provide the following information for each entity taxed as a partnership through which the organization conducted more than five percent of its activities (measured by total assets or gross revenue) that was not a related organization. See instructions regarding exclusion for certain investment partnerships.

| (a) Name, address, and EIN of entity | (b) Primary activity | (c) Legal domicile (state or foreign country) | (d) Predominant income (related, unrelated, excluded from tax under sections 512-514) | (e) Are all partners sec. 501(c)(3) orgs.? | | (f) Share of total income | (g) Share of end-of-year assets | (h) Dispropor-tionate allocations? | | (i) Code V-UBI amount in box 20 of Schedule K-1 (Form 1065) | (j) General or managing partner? | | (k) Percentage ownership |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | Yes | No | | | Yes | No | | Yes | No | |
| | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |
| | | | | | | | | | | | | | |

Schedule R (Form 990) 2018

832164 10-02-18

Schedule R (Form 990) 2018    NATIONAL RIFLE ASSOCIATION OF AMERICA    53-0116130   Page 5

**Part VII**   Supplemental Information.

Provide additional information for responses to questions on Schedule R. See instructions.

PART II

THE NRA IS A 501(C)(4) MEMBERSHIP ASSOCIATION WITH FOUR 501(C)(3)

PUBLIC CHARITIES AND A SECTION 527 POLITICAL ACTION COMMITTEE (PAC)

WHICH IS A SEPARATE SEGREGATED FUND. THE FOUR CHARITIES AFFILIATED WITH

THE NRA ARE NRA CIVIL RIGHTS DEFENSE FUND, NRA FOUNDATION INC, NRA

FREEDOM ACTION FOUNDATION, AND NRA SPECIAL CONTRIBUTION FUND DBA NRA

WHITTINGTON CENTER. THE POLITICAL ACTION COMMITTEE IS NRA POLITICAL

VICTORY FUND; NRAPVF IS A SEPARATE UNINCORPORATED PAC OF THE NRA. IN

THE EVENT THAT ANY FUNDS ARE RECEIVED BY THE NRA AND EARMARKED TO THE

PAC, THE NRA HAS SYSTEMS IN PLACE TO ENSURE ANY SUCH RECEIPTS ARE

PROMPTLY AND IMMEDIATELY DEPOSITED INTO THE SEPARATE SEGREGATED FUND'S

ACCOUNT.


PART III

WBB INVESTMENTS,LLC WAS FORMED IN CONNECTION WITH A POSSIBLE

TRANSACTION THAT WAS NEVER ULTIMATELY EXECUTED. A CERTIFICATE OF

CANCELLATION HAS BEEN FILED TO DISSOLVE THE COMPANY.


PART V

LINE 1C THIS INFORMATIONAL NOTE REGARDS QUALIFIED CHARITABLE GRANT

MAKING. ALL GRANTS MADE BY NRA FOUNDATION AND NRA CIVIL RIGHTS DEFENSE

FUND TO THE NRA ARE SUBJECT TO STRINGENT REVIEW PROCESSES REQUIRING

THAT THE GRANTS BE MADE AND USED ONLY FOR QUALIFIED CHARITABLE PURPOSE

PROGRAMS. THE NRA IS REQUIRED TO PROVIDE AN ACCOUNTING TO THE CHARITIES

AS DOCUMENTATION THAT PROCEEDS WERE USED BY THE NRA FOR QUALIFIED

CHARITABLE PURPOSES AS SET FORTH IN THE GRANT DOCUMENTS.


LINE 1E DURING 2018, THE NRA ENTERED A SECURED LOAN AGREEMENT WITH THE

Schedule R (Form 990) 2018    NATIONAL RIFLE ASSOCIATION OF AMERICA    53-0116130   Page 5

| Part VII | Supplemental Information.

Provide additional information for responses to questions on Schedule R. See instructions.

NRA FOUNDATION. THE $5,000,000 LOAN IS PAYABLE TO THE NRA FOUNDATION AT

A FAIR VALUE INTEREST RATE. THE NRA MAKES MONTHLY INTEREST PAYMENTS OF

7%.

## NATIONAL RIFLE ASSOCIATION OF AMERICA

**FINANCIAL STATEMENTS**

**as of December 31, 2018 and 2017**

**AND**

**REPORT THEREON**

# NATIONAL RIFLE ASSOCIATION OF AMERICA

## TABLE OF CONTENTS

|  | Page |
|---|---|
| Report of Independent Auditors | 1 |
| Financial Statements: | |
| Statements of Financial Position | 2 |
| Statements of Activities | 3 |
| Statements of Functional Expenses | 4 |
| Statements of Cash Flows | 5 |
| Notes to Financial Statements | 6 - 25 |

Report of Independent Auditors

To the Board of Directors and Members of the
National Rifle Association of America

**Report on the Financial Statements**

We have audited the accompanying financial statements of National Rifle Association of America (NRA), which comprise the statements of financial position as of December 31, 2018 and 2017, the related statements of activities, functional expenses, and cash flows for the years then ended, and the related notes to the financial statements.

**Management's Responsibility for the Financial Statements**

Management is responsible for the preparation and fair presentation of these financial statements in accordance with accounting principles generally accepted in the United States of America; this includes the design, implementation, and maintenance of internal control relevant to the preparation and fair presentation of financial statements that are free from material misstatement, whether due to fraud or error.

**Auditor's Responsibility**

Our responsibility is to express an opinion on these financial statements based on our audits. We conducted our audits in accordance with auditing standards generally accepted in the United States of America. Those standards require that we plan and perform the audit to obtain reasonable assurance about whether the financial statements are free from material misstatement.

An audit involves performing procedures to obtain audit evidence about the amounts and disclosures in the financial statements. The procedures selected depend on the auditor's judgment, including the assessment of the risks of material misstatement of the financial statements, whether due to fraud or error. In making those risk assessments, the auditor considers internal control relevant to the entity's preparation and fair presentation of the financial statements in order to design audit procedures that are appropriate in the circumstances, but not for the purpose of expressing an opinion on the effectiveness of the entity's internal control. Accordingly, we express no such opinion. An audit also includes evaluating the appropriateness of accounting policies used and the reasonableness of significant accounting estimates made by management, as well as evaluating the overall presentation of the financial statements.

We believe that the audit evidence we have obtained is sufficient and appropriate to provide a basis for our audit opinion.

**Opinion**

In our opinion, the financial statements referred to above present fairly, in all material respects, the financial position of National Rifle Association of America as of December 31, 2018 and 2017, and the changes in its net assets and its cash flows for the years then ended in accordance with accounting principles generally accepted in the United States of America.

**Emphasis of Matters**

As disclosed in Note 1 to the financial statements, the NRA adopted the Financial Accounting Standards Board (FASB) issued Accounting Standards Update (ASU) No. 2016-14, *Not-for-Profit Entities (Topic 958): Presentation of Financial Statements of Not-for-Profit Entities.* The adoption of this standard resulted in the issuance of the statement of functional expenses and additional footnote disclosures and changes to the classification of net assets. Our opinion is not modified with respect to this matter.

As discussed in Note 1 to the financial statements, the accompanying financial statements are those of National Rifle Association of America only and are not those of the primary reporting entity. The consolidated financial statements of NRA and its affiliates have been issued as the general purpose financial statements of the reporting entity and should be read in conjunction with the parent-only statements. Our opinion is not modified with respect to this matter.

*RSM US LLP*

McLean, Virginia
March 13, 2019

**NATIONAL RIFLE ASSOCIATION OF AMERICA**
**STATEMENTS OF FINANCIAL POSITION**
**as of December 31, 2018 and 2017**

## ASSETS

|  | 2018 | 2017 |
|---|---|---|
| Cash and cash equivalents | $ 23,780,301 | $ 17,123,743 |
| Investments | 45,094,991 | 48,702,736 |
| Pledges receivable, net | 841,562 | 1,184,593 |
| Accounts receivable, net | 41,458,041 | 36,129,175 |
| Due from affiliates | 28,696,533 | 30,731,975 |
| Inventories and supplies, net | 10,632,177 | 13,639,054 |
| Prepaid expenses | 3,179,694 | 3,277,662 |
| Notes receivable, net | 3,000,000 | 3,000,000 |
| Property and equipment, net | 32,709,031 | 34,475,160 |
| Other assets | 7,819,750 | 7,861,583 |
| Total assets | $ 197,212,080 | $ 196,125,681 |

## LIABILITIES AND NET ASSETS

|  | 2018 | 2017 |
|---|---|---|
| Accounts payable | $ 31,190,974 | $ 29,837,446 |
| Accrued liabilities | 55,270,648 | 62,814,166 |
| Note payable and line of credits | 48,138,412 | 47,121,100 |
| Deferred revenue | 46,580,520 | 31,402,766 |
| Total liabilities | 181,180,554 | 171,175,478 |
| Net assets (deficit): |  |  |
| Without donor restrictions |  |  |
| Net assets without donor restrictions | (16,665,676) | 2,897,932 |
| Cumulative pension liability | (19,611,103) | (33,256,864) |
| Total net deficit without donor restrictions | (36,276,779) | (30,358,932) |
| With donor restrictions | 52,308,305 | 55,309,135 |
| Total net assets | 16,031,526 | 24,950,203 |
| Total liabilities and net assets | $ 197,212,080 | $ 196,125,681 |

The accompanying notes are an integral
part of these financial statements.

2

**NATIONAL RIFLE ASSOCIATION OF AMERICA**
**STATEMENTS OF ACTIVITIES**
**for the years ended December 31, 2018 and 2017**

| | 2018 | | | 2017 | | |
|---|---|---|---|---|---|---|
| | Without Donor Restrictions | With Donor Restrictions | Total | Without Donor Restrictions | With Donor Restrictions | Total |
| **Revenue and other support:** | | | | | | |
| Members' dues | $ 170,391,374 | $ - | $ 170,391,374 | $ 128,209,303 | $ - | $ 128,209,303 |
| Program fees | 8,119,717 | - | 8,119,717 | 10,081,009 | - | 10,081,009 |
| Contributions | 93,618,315 | 16,658,239 | 110,276,554 | 74,599,176 | 24,160,917 | 99,160,093 |
| Advertising | 25,023,714 | - | 25,023,714 | 28,344,743 | - | 28,344,743 |
| Member sales | 3,667,968 | - | 3,667,968 | 3,758,418 | - | 3,758,418 |
| Shows and exhibits | 20,516,030 | - | 20,516,030 | 21,204,275 | - | 21,204,275 |
| Investment income, net | 1,694,315 | 435,393 | 2,129,708 | 4,544,301 | 271,355 | 4,815,656 |
| Insurance administration fees | 12,625,210 | - | 12,625,210 | 14,563,405 | - | 14,563,405 |
| Rental income | 1,357,108 | - | 1,357,108 | 1,255,235 | - | 1,255,235 |
| Other | 6,127,175 | (650,091) | 5,477,084 | 7,205,826 | 772,800 | 7,978,626 |
| Assets released from restrictions | 18,481,638 | (18,481,638) | - | 20,230,894 | (20,230,894) | - |
| Total revenue and other support | 361,622,564 | (2,038,097) | 359,584,467 | 314,396,585 | 4,974,178 | 319,370,763 |
| **Expenses:** | | | | | | |
| **Program services:** | | | | | | |
| Legislative programs | 43,376,477 | - | 43,376,477 | 36,740,357 | - | 36,740,357 |
| Publications | 36,460,363 | - | 36,460,363 | 36,904,080 | - | 36,904,080 |
| Public affairs | 37,931,825 | - | 37,931,825 | 44,138,732 | - | 44,138,732 |
| Shows and exhibits | 17,786,603 | - | 17,786,603 | 18,909,415 | - | 18,909,415 |
| Competitions | 4,586,644 | - | 4,586,644 | 4,702,453 | - | 4,702,453 |
| Education and training | 6,022,846 | - | 6,022,846 | 7,686,318 | - | 7,686,318 |
| Hunter services | 1,558,662 | - | 1,558,662 | 3,958,334 | - | 3,958,334 |
| Field services | 5,859,291 | - | 5,859,291 | 11,882,064 | - | 11,882,064 |
| Law enforcement | 3,853,649 | - | 3,853,649 | 3,805,344 | - | 3,805,344 |
| Recreational shooting | 7,327,265 | - | 7,327,265 | 7,200,332 | - | 7,200,332 |
| | 164,763,625 | - | 164,763,625 | 175,927,429 | - | 175,927,429 |
| Member services and acquisition | 77,898,138 | - | 77,898,138 | 76,546,402 | - | 76,546,402 |
| Administrative | 27,860,599 | - | 27,860,599 | 10,125,180 | - | 10,125,180 |
| Executive office | 39,052,148 | - | 39,052,148 | 32,077,548 | - | 32,077,548 |
| Fundraising | 57,158,230 | - | 57,158,230 | 48,581,269 | - | 48,581,269 |
| Total expenses | 366,732,740 | - | 366,732,740 | 343,257,828 | - | 343,257,828 |
| Change in net assets before other changes | (5,110,176) | (2,038,097) | (7,148,273) | (28,861,243) | 4,974,178 | (23,887,065) |
| Unrealized (loss) gain on investments, net | (4,066,534) | (962,733) | (5,029,267) | 1,472,290 | 787,771 | 2,260,061 |
| Unrealized gain on derivative instrument | 745,782 | - | 745,782 | 952,998 | - | 952,998 |
| (Loss) gain on interest in interrelated entity | (2,414,024) | - | (2,414,024) | 2,731,203 | - | 2,731,203 |
| Net gain on pension obligation | 4,927,105 | - | 4,927,105 | 6,778,316 | - | 6,778,316 |
| Change in net assets | (5,917,847) | (3,000,830) | (8,918,677) | (16,926,436) | 5,761,949 | (11,164,487) |
| Net assets (deficit), beginning of year as previously presented | (30,358,932) | 55,309,135 | 24,950,203 | (14,853,143) | 50,967,833 | 36,114,690 |
| Reclassification to implement ASU 2016-14 | | | | | | |
| Underwater endowments | | | | 1,420,647 | (1,420,647) | |
| Net assets (deficit), end of year as reclassified | $ (36,276,779) | $ 52,308,305 | $ 16,031,526 | $ (30,358,932) | $ 55,309,135 | $ 24,950,203 |

The accompanying notes are an integral
part of these financial statements.

3

**NATIONAL RIFLE ASSOCIATION OF AMERICA**
**STATEMENTS OF FUNCTIONAL EXPENSES**
**for the years ended December 31, 2018 and 2017**

**2018**

| | Legislative | Publications | Public Affairs | Shows & Exhibits | Competitions | Education & Training | Hunter Services | Field Services | Law Enforcement | Recreational Shooting | Total Program Expenses | Member Svc & Acq. | Administrative | Executive | Advancement/ Fundraising | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Salaries, benefits and taxes | $15,518,932 | $ 8,336,809 | $ - | $ 2,538,045 | $ 1,839,311 | $ 1,858,151 | $ 499,582 | $ 1,305,682 | $ 1,880,552 | $ 2,776,605 | $ 38,351,669 | $ 4,950,568 | $ 3,315,637 | $14,277,182 | $ 3,661,033 | $ 62,556,087 |
| Office supplies | 2,131,184 | 138,276 | - | 1,847,194 | 446,787 | 117,169 | 18,725 | 546,027 | 149,836 | 304,930 | 5,498,108 | 186,108 | 88,200 | 326,087 | 589,880 | 8,668,184 |
| Travel & entertainment | 2,401,868 | 597,118 | - | 488,465 | 364,330 | 222,612 | 37,981 | 980,604 | 601,658 | 207,311 | 5,905,946 | 217,469 | 127,892 | 1,290,942 | 929,957 | 8,472,208 |
| Fulfillment material | - | - | - | - | 68,985 | 322,367 | - | - | 113,293 | 67,701 | 572,348 | 7,836,028 | - | - | 2,072,449 | 10,480,623 |
| Occupancy | 662,745 | 346,741 | - | 60,512 | 153,200 | 260,778 | 7,684 | 128,707 | 142,154 | 1,128,587 | 2,891,108 | 418,298 | 651,700 | 444,231 | 397,167 | 4,802,502 |
| Data processing | 909,644 | 677,843 | - | 566,625 | 881,547 | 1,105,153 | - | 1,381,442 | 490,529 | 531,503 | 6,544,286 | 1,160,177 | 283,313 | 2,834,297 | 885,058 | 11,707,131 |
| Printing and publications | - | 25,298,139 | - | - | - | - | - | - | - | - | 25,298,139 | - | - | - | - | 25,298,139 |
| Member communications | - | - | - | - | - | - | - | - | - | - | - | 58,985,126 | - | - | 29,373,954 | 88,359,082 |
| Advertising | - | - | - | - | - | - | - | - | | - | - | - | - | - | 11,381,850 | 11,381,850 |
| Committee & annual mtgs | - | - | - | - | - | - | - | - | - | - | - | - | - | 3,169,779 | - | 3,169,779 |
| Legal, audit and taxes | 8,633,178 | - | - | - | - | - | - | - | - | - | 8,633,178 | - | 21,558,748 | - | 1,170,467 | 31,362,393 |
| Professional services and other | 12,542,230 | 682,399 | 37,505,494 | 8,912,528 | 883,499 | 1,321,499 | 980,501 | 678,213 | 296,794 | 1,084,986 | 65,088,143 | 3,389,639 | 379,291 | 18,127,565 | 6,283,488 | 91,268,125 |
| Depreciation & amortization | 357,293 | 270,239 | 426,331 | 77,550 | 95,999 | 105,998 | 13,203 | 590,003 | 86,957 | 612,937 | 2,638,510 | 816,234 | 910,191 | 434,986 | 281,629 | 4,879,550 |
| Cost of merchandise sold | - | - | - | 3,477,651 | 2,262 | 624,782 | 441 | - | 44,811 | 239,203 | 4,389,150 | - | - | - | - | 4,389,150 |
| Interest expense | 219,425 | 114,801 | - | 20,034 | 50,722 | 88,339 | 2,544 | 42,813 | 47,065 | 373,501 | 957,044 | 138,492 | 565,629 | 147,078 | 131,486 | 1,939,740 |
| | $43,376,477 | $36,460,383 | $37,931,825 | $17,786,603 | $ 4,588,844 | $ 6,022,846 | $ 1,558,862 | $ 5,859,291 | $ 3,853,849 | $ 7,327,265 | $ 164,763,625 | $ 77,898,138 | $27,860,599 | $39,052,148 | $57,158,230 | $ 366,732,740 |

**2017**

| | Legislative | Publications | Public Affairs | Shows & Exhibits | Competitions | Education & Training | Hunter Services | Field Services | Law Enforcement | Recreational Shooting | Total Program Expenses | Member Svc & Acq. | Administrative | Executive | Advancement/ Fundraising | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Salaries, benefits and taxes | $13,713,230 | $ 8,544,090 | $ - | $ 2,119,332 | $ 1,796,030 | $ 2,538,456 | $ 676,355 | $ 7,406,603 | $ 1,897,321 | $ 2,937,283 | $ 41,626,700 | $ 4,888,582 | $ 3,285,130 | $13,030,922 | $ 3,958,228 | $ 66,789,562 |
| Office supplies | 1,632,532 | 134,964 | - | 1,854,084 | 615,305 | 182,283 | 71,747 | 583,359 | 140,335 | 362,933 | 5,577,520 | 182,465 | 61,916 | 325,672 | 540,918 | 6,688,495 |
| Travel & entertainment | 2,091,359 | 674,177 | - | 601,751 | 376,050 | 260,624 | 74,738 | 1,098,148 | 557,453 | 266,593 | 6,002,893 | 276,867 | 102,519 | 1,199,728 | 1,101,240 | 8,683,247 |
| Fulfillment material | - | - | - | - | 47,529 | 420,492 | - | - | 147,047 | 73,557 | 688,625 | 7,588,562 | - | - | 2,073,088 | 10,350,275 |
| Occupancy | 604,018 | 316,015 | - | 55,149 | 139,624 | 351,908 | 7,003 | 117,302 | 129,557 | 1,028,583 | 2,749,157 | 381,232 | 618,900 | 392,612 | 235,042 | 4,376,943 |
| Data processing | 728,244 | 615,247 | - | 393,123 | 763,690 | 1,450,044 | - | 1,226,630 | 437,161 | 357,678 | 6,171,817 | 1,075,181 | 288,935 | 2,401,703 | 803,432 | 10,741,068 |
| Printing and publications | - | 25,348,243 | - | - | - | - | - | - | - | - | 25,348,243 | - | - | - | - | 25,348,243 |
| Member communications | - | - | - | - | - | - | - | - | - | - | - | 58,718,873 | - | - | 21,162,242 | 79,881,115 |
| Advertising | - | - | - | - | - | - | - | - | - | - | - | - | - | - | 10,243,229 | 10,243,229 |
| Committee & annual mtgs | - | - | - | - | - | - | - | - | - | - | - | - | - | 2,561,307 | - | 2,561,307 |
| Legal, audit and taxes | 8,612,772 | - | - | - | - | - | - | - | - | - | 8,612,772 | - | 4,356,093 | - | 923,660 | 11,892,525 |
| Professional services and other | 10,770,389 | 716,266 | 43,787,728 | 10,243,198 | 800,454 | 1,809,352 | 3,104,763 | 770,529 | 310,477 | 927,253 | 73,040,421 | 2,703,402 | 156,650 | 11,675,161 | 7,173,832 | 94,749,465 |
| Depreciation & amortization | 376,762 | 244,864 | 351,004 | 74,390 | 99,139 | 108,545 | 21,085 | 638,508 | 85,774 | 592,333 | 2,590,204 | 598,037 | 892,553 | 353,266 | 284,235 | 4,718,295 |
| Cost of merchandise sold | - | - | - | 3,549,119 | 15,848 | 645,682 | 198 | 0 | 54,952 | 293,043 | 4,558,840 | - | - | - | - | 4,558,840 |
| Interest expense | 211,041 | 110,414 | - | 19,269 | 48,784 | 122,954 | 2,447 | 40,985 | 45,267 | 359,076 | 960,237 | 133,201 | 362,482 | 137,177 | 82,122 | 1,675,219 |
| | $36,740,357 | $36,904,080 | $44,138,732 | $18,909,415 | $ 4,702,453 | $ 7,688,318 | $ 3,958,334 | $11,882,064 | $ 3,805,344 | $ 7,200,332 | $ 175,927,428 | $ 76,546,402 | $10,125,180 | $32,077,548 | $48,581,269 | $ 343,257,828 |

The accompanying notes are an integral part of these financial statements.

**NATIONAL RIFLE ASSOCIATION OF AMERICA**
**STATEMENTS OF CASH FLOWS**
**for the years ended December 31, 2018 and 2017**

| | 2018 | 2017 |
|---|---|---|
| Cash flows from operating activities: | | |
| Change in net assets | $ (8,918,677) | $ (11,164,487) |
| Adjustments to reconcile change in net assets to net cash provided by (used in) operating activities: | | |
| Depreciation and amortization | 4,879,550 | 4,718,295 |
| Provision for losses on pledges receivable | 10,961 | 7,711 |
| Provision for losses on accounts receivable | 4,671,652 | 6,324,662 |
| Provision for losses on inventory | 150,000 | 360,692 |
| Contributions restricted for long-term investment | (1,781,726) | (2,144,164) |
| Net unrealized and realized loss (gain) on investments | 4,030,931 | (6,313,424) |
| Unrealized gain on derivative instrument | (745,782) | (952,998) |
| Net gain on pension obligation | (4,927,105) | (6,778,316) |
| Net loss on disposal of assets | 249,751 | 31,495 |
| Changes in assets and liabilities: | | |
| Decrease in pledges receivable | 332,070 | 323,999 |
| (Increase) decrease in accounts receivable, net | (10,000,518) | 7,094,143 |
| Decrease (increase) in due from affiliates | 2,035,442 | (3,327,840) |
| Decrease in inventories and supplies, net | 2,856,877 | 3,209,377 |
| Decrease in prepaid expenses | 97,968 | 510,355 |
| Decrease (increase) in other assets | 41,833 | (425,438) |
| Increase (decrease) in accounts payable | 1,353,528 | (5,351,028) |
| (Decrease) increase in accrued liabilities | (1,870,631) | 6,974,744 |
| Increase (decrease) in deferred revenue | 15,177,754 | (8,021,797) |
| Total adjustments | 16,562,555 | (3,759,532) |
| Net cash provided by (used in) operating activities | 7,643,878 | (14,924,019) |
| Cash flows from investing activities: | | |
| Sales of investments | 9,261,323 | 27,222,671 |
| Purchases of investments | (9,684,509) | (16,431,830) |
| Purchases of property and equipment | (3,363,172) | (1,888,920) |
| Net cash (used in) provided by investing activities | (3,786,358) | 8,901,921 |
| Cash flows from financing activities: | | |
| Principal payments on note payable | (1,107,008) | (1,039,944) |
| Principal payments on lines of credit | (150,171,240) | (132,737,519) |
| Draw downs on lines of credit and proceeds on note payable | 152,295,560 | 138,060,439 |
| Proceeds from life insurance policy loans | 3,500,000 | 3,500,000 |
| Principal payments on life insurance policy loans | (3,500,000) | - |
| Contributions restricted for long-term investment | 1,781,726 | 2,144,164 |
| Net cash provided by financing activities | 2,799,038 | 9,927,140 |
| Net increase in cash and cash equivalents | 6,656,558 | 3,905,042 |
| Cash and cash equivalents at beginning of year | 17,123,743 | 13,218,701 |
| Cash and cash equivalents at end of year | $ 23,780,301 | $ 17,123,743 |
| Supplemental disclosure of cash flow information: | | |
| Cash paid during the year for interest | $ 1,945,983 | $ 1,680,243 |

The accompanying notes are an integral
part of these financial statements.

5

NATIONAL RIFLE ASSOCIATION OF AMERICA
NOTES TO FINANCIAL STATEMENTS

1.    NATURE OF ACTIVITIES AND SIGNIFICANT ACCOUNTING POLICIES

The National Rifle Association of America (NRA), founded in 1871, is a not-for-profit corporation supported by the membership fees of public-minded citizens and clubs.  Its primary purpose is to protect and defend the Constitution of the United States of America, especially the political, civil and inalienable rights of the American people to keep and bear arms as a common law and Constitutional right of the individual citizen.

The NRA's Board of Directors formed the Institute for Legislative Action (ILA) in 1975 as an internal division of the NRA.  The purpose of ILA is to prevent the passage of laws and regulations restricting firearms ownership, as well as pursuing changes to existing restrictions imposed by federal, state and local governments.  ILA is supported principally by contributions from NRA members.

Basis of Presentation

The NRA publishes financial statements in the NRA's annual report that include the financial statements of certain affiliated entities, which are its primary financial statements for the years ended December 31, 2018 and 2017.  These financial statements for the years ended December 31, 2018 and 2017 are not intended to be the general purpose financial statements of the NRA and have been prepared in conformity with accounting principles that would otherwise be considered a departure from accounting principles generally accepted in the United States of America because certain affiliated organizations are not consolidated.

Affiliates of the NRA whose financial activities are not included in these financial statements of the NRA include the following:  the NRA Foundation, Inc. (Foundation), the NRA Civil Rights Defense Fund (CRDF), the NRA Political Victory Fund (PVF), the NRA Special Contribution Fund (SCF) and the NRA Freedom Action Foundation (FAF).

The preparation of financial statements in conformity with accounting principles generally accepted in the United States of America requires management to make estimates and assumptions that affect the reported amounts of assets and liabilities and disclosure of contingent assets and liabilities as of the date of the financial statements and the reported amounts of revenue and other support and expenses during the reporting period.  Actual results could differ from those estimates.

Certain amounts from the prior year have been reclassified to conform with the current year presentation.  These reclassifications had no effect on the previously reported net assets or change in net assets.

Classification of Net Assets

To identify the observance of limitations and restrictions placed on the use of the resources available to the NRA, the accounts of the NRA are maintained in two separate classes of net assets: without donor restrictions, and with donor restrictions, based on the existence or absence of donor-imposed restrictions.

Net assets without donor restrictions represent resources that are not restricted by donor-imposed stipulations.  They are available for support of the NRA's general operations.

Net assets with donor restrictions represent contributions and other inflows of assets whose use by the NRA for its programs are limited by donor-imposed stipulations.  Some donor-imposed restrictions are temporary in that they either expire by passage of time or can be fulfilled and removed by actions of the NRA pursuant to those stipulations.  Other donor restrictions are perpetual in nature, where by the donor has stipulated the funds be maintained in perpetuity.

6

NATIONAL RIFLE ASSOCIATION OF AMERICA
NOTES TO FINANCIAL STATEMENTS

Cash and Cash Equivalents

Highly liquid investments, consisting principally of money market funds, under the control of the NRA's investment managers, are considered investments. However, the NRA considers any other investments with an original maturity of three months or less at the date of purchase to be cash equivalents. The NRA generally invests these excess funds in repurchase agreements for U.S. government securities. The maturity date of these repurchase agreements is the next day of business. Due to the short-term nature of these agreements, the NRA does not take possession of the securities, which are instead held by the NRA's principal bank from which it purchases the securities. The carrying value of the investments approximates fair value because of the short maturity of the agencies. The NRA believes that it is not exposed to any significant risk on its investments in repurchase agreements. Substantially all the cash and cash equivalents were held at one financial institution in Virginia at December 31, 2018 and 2017.

Concentrations of Credit Risk

The NRA maintains a cash balance in excess of federally insured limits in an interest bearing account. The NRA's policy is to deposit funds only in financially sound institutions. Nevertheless, these deposits are subject to some degree of credit risk. Investments are maintained in financial institutions.

Concentrations of credit risk with respect to accounts receivable that are not collateralized are limited due to the large number of members comprising the NRA's membership base and their dispersion across many different geographies.

The NRA invests in a professionally managed portfolio that primarily contains money market funds, equity securities, fixed income securities, and alternative investments. Such investments are exposed to various risks, such as market and credit. Due to the level of risk associated with such investments, and the level of uncertainty related to changes in the value of such investments, it is at least reasonably possible that changes in risk in the near term would materially affect investment balances and the amounts reported in the financial statements.

Investments

Investments consist primarily of money market funds, equity securities, fixed income securities, and alternative investments. Investments in money market funds, equity securities and fixed income securities are carried at fair value as determined by an independent market valuation service using the closing prices at the end of the period. In calculating realized gains and losses, the cost of securities sold is determined by the specific-identification method. To adjust the carrying value of the investments, the change in fair value is included in other changes in the statements of activities. Interest income and dividends are recorded on the accrual basis.

Alternative investments are valued at fair value based on the applicable net asset value per share as of the measurement date, which is a practical expedient, as determined by the NRA. In determining fair value, the NRA utilizes valuations provided by the fund managers. The underlying investments value securities and other financial instruments on a fair value basis of accounting. The estimated fair values of certain investments of the underlying investments, which may include private placements and other securities for which prices are not readily available, are determined by the general partner of the investment and may not reflect amounts that could be realized upon immediate sale, nor amounts that ultimately may be realized. Accordingly, the estimated fair values may differ significantly from the values that would have been used had a ready market existed for these

7

**NATIONAL RIFLE ASSOCIATION OF AMERICA**
**NOTES TO FINANCIAL STATEMENTS**

investments. The fair value of the NRA's alternative investments generally represents the amount the NRA would expect to receive if it were to liquidate its investment excluding any redemption charges that may apply.

Pledges Receivable

Pledges receivable due in more than one year have been recorded at the present value of estimated cash flows. An allowance for uncollectible pledges receivable is provided based upon management's judgment of potential defaults.

Accounts Receivable

Membership dues, advertising and other accounts receivable are recorded at the invoiced amount and do not bear interest. Membership contributions receivables are recorded when received. The allowance for doubtful accounts is the NRA's best estimate of the amount of probable credit losses in existing accounts receivable. The NRA determines the membership dues accounts receivable allowance based on the aging of accounts receivable, where three or more monthly or quarterly invoices are past due. The NRA determines all other allowances based on historical write-off experience and specific identification. The allowances for doubtful accounts are reviewed monthly and accounts receivable balances are written off against the allowance when the NRA feels probable the receivable will not be recovered.

Inventories and Supplies

Inventories and supplies are stated at the lower of cost or net realizable value, with costs determined using the first-in, first-out method. Provisions are made to reduce the inventories to net realizable value in cases of obsolescence.

Property and Equipment

Property and equipment are stated at cost, less accumulated depreciation. Donated assets are recorded at the appraised or estimated fair value at the time of donation. Expenditures for maintenance and repairs, which do not prolong the useful lives of the assets, are expensed. Depreciation is computed on the straight-line method over the assets' estimated useful lives. Buildings and improvements are depreciated over useful lives ranging from 20 to 45 years, other property and equipment is depreciated over two to ten years. The NRA capitalizes complete desktop and laptop computers greater than $500 and all other fixed assets greater than $1,500.

Members' Dues

A portion of members' dues that represents the present value of the cost of the magazine that is a benefit of membership for the given membership term is deferred and amortized over the life of the membership. The portion considered a contribution is recorded as dues revenue when the membership is received.

Contributions

Unconditional contributions, whether without donor restrictions or with donor restrictions, are recognized as revenue when received and classified in the appropriate net asset category. When the temporary restrictions are met by the NRA which were specified by the donor, contributions with restrictions are released from restriction and are recognized in the net asset without restrictions category.

8

NATIONAL RIFLE ASSOCIATION OF AMERICA
NOTES TO FINANCIAL STATEMENTS

Revenue Recognition

Program fees, advertising, member sales, shows and exhibit sales, and insurance administration fees are recognized as revenue when earned. Rental income is recognized on a straight-line basis over the term of the lease.

Derivative Financial Instruments

Interest rate swaps are entered into to manage interest rate risks associated with the NRA's borrowing. Interest rate swaps are accounted for in accordance with the Financial Accounting Standards Board Accounting Standard Codification (the Codification) topic, *Derivatives and Hedging,* under which the NRA is not allowed to use cash flow hedging. Therefore, the interest rate swap is recorded in the statements of financial position at fair value with fair value changes recorded as an unrealized gain on derivative instrument on the statements of activities and statements of cash flows (Note 9).

Valuation of Long-Lived Assets

Long-lived assets and certain identifiable intangible assets are reviewed for impairment whenever events or changes in circumstances indicate that the carrying amount of an asset may not be recoverable. Recoverability of long-lived assets is measured by a comparison of the carrying amount of the asset to future undiscounted net cash flows expected to be generated by the asset. If such assets are considered to be impaired, the impairment to be recognized is measured by the amount by which the carrying amount of the assets exceeds the estimated fair value of the assets. Assets to be disposed of are reportable at the lower of the carrying amount or fair value, less cost to sell. The NRA had no impairments of long-lived assets during 2018 or 2017.

Outstanding Legacies

The NRA is the beneficiary under various wills and other agreements, the total realizable amounts of which are not presently determinable. The NRA's share of such amounts is not recorded until the NRA has an irrevocable right to the bequest and the proceeds are measurable.

Functional Allocation of Expenses

The costs of providing program services and supporting activities have been accounted for on a functional basis in the statements of activities. Accordingly, certain costs have been allocated among the program services and supporting activities. Such allocations are determined by management on an equitable basis. Occupancy and interest expenses are allocated based on square footage. Certain depreciation is directly charged to applicable areas and certain depreciation is allocated based on square footage or number of employees. Data processing and certain executive salaries and benefits are allocated based on time and effort.

Adopted accounting pronouncement

In August 2016, the FASB issued ASU No. 2016-14, Not-for-Profit Entities (Topic 958): Presentation of Financial Statements of Not-for-Profit Entities. The amendments in this ASU are intended to make improvements to the information provided in the financial statements and the accompanying notes of not-for-profit entities. The amendments set forth the FASB's improvements to net asset classification requirements and the information presented about a not-for-profit entity's liquidity, financial performance and cash flows. The ASU was adopted by the NRA in 2018.

9

**NATIONAL RIFLE ASSOCIATION OF AMERICA**
**NOTES TO FINANCIAL STATEMENTS**

---

Pending accounting pronouncements

In February 2016, FASB issued Accounting Standards Update (ASU) No. 2016-02, Leases (Topic 842). The guidance in this ASU supersedes the leasing guidance in Topic 840, Leases. Under the new guidance, lessees are required to recognize lease assets and lease liabilities on the statement of financial position for all leases with terms longer than 12 months. Leases will be classified as either finance or operating, with classification affecting the pattern of expense recognition in the statement of activities. The new standard is effective for fiscal years beginning after December 15, 2019.In May 2014, the FASB issued ASU No. 2014-09, Revenue from Contracts with Customers (Topic 606), requiring an entity to recognize the amount of revenue to which it expects to be entitled for the transfer of promised goods or services to customers. The updated standard will replace most existing revenue recognition guidance in generally accepted accounting principles in the United States of America (U.S. GAAP) when it becomes effective and permits the use of either a full retrospective or retrospective with cumulative effect transition method. In August 2015, the FASB issued ASU No. 2015-14, which defers the effective date of ASU No. 2014-09 one year, making it effective for annual reporting periods beginning after December 15, 2018. The NRA has not yet selected a transition method and is currently evaluating the effect that the standard will have on the financial statements.

In June 2018, the FASB issued ASU No. 2018-08, Not-for-Profit Entities (Topic 958): Clarifying the Scope and the Accounting Guidance for Contributions Received and Contributions Made, which provides additional guidance on characterizing grants and similar contracts with resource providers as either exchange transactions or contributions, as well as distinguishing between conditional contributions and unconditional contributions. The updated standard will be effective for resource recipients for annual reporting periods beginning after December 15, 2018 and resource providers one year later. Management is currently evaluating the effect on the financial statements.

Tax Status

The NRA is exempt from federal income taxes under Section 501(c)(4) of the Internal Revenue Code and from state income taxes. The NRA activities that cause imposition of the unrelated business income tax provision of the Code result in no significant tax liability.

The NRA follows the accounting standard on accounting for uncertainty in income taxes, which addresses the determination of whether tax benefits claimed or expected to be claimed on a tax return should be recorded in the financial statements. Under this guidance, the NRA may recognize the tax benefit from an uncertain tax position only if it is more-likely-than-not that the tax position will be sustained on examination by taxing authorities, based on the technical merits of the position. The tax benefits recognized in the financial statements from such a position are measured based on the largest benefit that has a greater than 50% likelihood of being realized upon ultimate settlement. The guidance on accounting for uncertainty in income taxes also addresses de-recognition, classification, interest and penalties on income taxes, and accounting in interim periods.

Management evaluated the NRA's tax positions and concluded that the NRA had taken no uncertain tax positions that require adjustment to the financial statements to comply with the provisions of this guidance.

Subsequent Events

The NRA evaluated subsequent events through March 13, 2019, which is the date the financial statements were available to be issued.

NATIONAL RIFLE ASSOCIATION OF AMERICA
NOTES TO FINANCIAL STATEMENTS

2. AVAILABILITY AND LIQUIDITY

The following represents NRA's financial assets and liquidity resources at December 31, 2018 and 2017:

| Financial assets at year-end: | 2018 | 2017 |
|---|---|---|
| Cash and cash equivalents | $ 23,780,301 | $ 17,123,743 |
| Accounts receivable available within one year, net | 14,310,969 | 12,463,413 |
| Due from affiliates | 5,315,563 | 7,854,291 |
| Investments | 45,094,991 | 48,702,736 |
| Total financial assets | $ 88,501,824 | $ 86,144,183 |
| | | |
| Less amounts not available to be used within one year: | | |
| Net assets with donor restrictions | 28,927,335 | 32,431,451 |
| | 28,927,335 | 32,431,451 |
| Financial assets available to meet general expenditures over the next twelve months | $ 59,574,489 | $ 53,712,732 |

The NRA maintains a policy of structuring its financial assets to be available as its general operating expenses come due. In addition, to manage liquidity the NRA maintains a line of credit with a bank that is drawn upon as needed during the year to manage cash flows.

3. INVESTMENTS

Investments as of December 31, 2018 and 2017 consist of:

| | 2018 | 2017 |
|---|---|---|
| Money market funds | $ 157,520 | $ 640,820 |
| Equity securities | 32,640,202 | 38,484,411 |
| Fixed income securities | 8,021,148 | 3,056,353 |
| Alternative investments | 3,405,044 | 5,874,330 |
| Other | 871,077 | 646,822 |
| | $ 45,094,991 | $ 48,702,736 |

Investment (loss) income for the years ended December 31, 2018 and 2017 includes the following:

| | 2018 | 2017 |
|---|---|---|
| Realized gains, net | $ 998,336 | $ 4,053,363 |
| Dividends and interest | 1,131,372 | 762,293 |
| | 2,129,708 | 4,815,656 |
| Unrealized (losses) gains, net | (5,029,267) | 2,260,061 |
| | $ (2,899,559) | $ 7,075,717 |

Interest income of $120,000 and $120,000, earned from notes receivable for 2018 and 2017, respectively, is included in dividends and interest.

**NATIONAL RIFLE ASSOCIATION OF AMERICA**
**NOTES TO FINANCIAL STATEMENTS**

4.  PLEDGES RECEIVABLE

At December 31, 2018 and 2017, donors to the NRA have unconditionally promised to give amounts as follows:

|  | 2018 | 2017 |
|---|---|---|
| Within one year | $ 112,900 | $ 197,286 |
| One to five years | 116,537 | 298,006 |
| More than five years | 621,799 | 753,169 |
|  | 851,236 | 1,248,461 |
| Less: discount of pledges receivable | (362) | (18,595) |
|  | 850,874 | 1,229,866 |
| Less: allowance for uncollectible pledges | (9,312) | (45,273) |
|  | $ 841,562 | $ 1,184,593 |

Pledges due in more than one year have been recorded at the present value of estimated cash flows, discounted by rates ranging from 0.88% to 2.22%.

5.  ACCOUNTS RECEIVABLE

Accounts receivable as of December 31, 2018 and 2017 consist of:

|  | 2018 | 2017 |
|---|---|---|
| Membership | $ 48,428,577 | $ 40,354,236 |
| Contributions | 3,603,517 | 3,119,379 |
| Advertising | 3,149,717 | 3,412,352 |
| Other | 1,274,664 | 1,353,358 |
|  | 56,456,475 | 48,239,325 |
| Less: allowance for doubtful accounts | 14,998,434 | 12,110,150 |
|  | $ 41,458,041 | $ 36,129,175 |

Following are the changes in the allowance for doubtful accounts during the years ended December 31, 2018 and 2017, respectively:

|  | 2018 | 2017 |
|---|---|---|
| Allowance at beginning of year | $ 12,110,150 | $ 16,478,863 |
| Provision for losses on accounts receivable | 4,671,652 | 6,324,662 |
| Write-offs, net of recoveries | (1,783,368) | (10,693,375) |
| Allowance at end of year | $ 14,998,434 | $ 12,110,150 |

12

NATIONAL RIFLE ASSOCIATION OF AMERICA
NOTES TO FINANCIAL STATEMENTS

6. INVENTORIES AND SUPPLIES

Inventories and supplies as of December 31, 2018 and 2017 consist of:

|  | 2018 | 2017 |
|---|---|---|
| Sales inventories | $ 2,549,261 | $ 3,667,792 |
| Supplies: | | |
| Magazine paper | 1,997,175 | 1,650,439 |
| Fulfillment and promotional materials | 6,066,869 | 9,048,870 |
| Other | 967,588 | 63,664 |
|  | 11,580,893 | 14,430,765 |
| Less: obsolescence allowance | 948,716 | 791,711 |
|  | $ 10,632,177 | $ 13,639,054 |

7. NOTES RECEIVABLE

Notes receivable as of December 31, 2018 and 2017 consist of:

|  | Interest Rate | 2018 | 2017 |
|---|---|---|---|
| NRA Special Contribution Fund | 4.0% | $ 3,000,000 | $ 3,000,000 |

The note receivable from the SCF is a demand note, collateralized by a first deed of trust on approximately 33,300 acres of land south of Raton, New Mexico. During the years ended December 31, 2018 and 2017, interest in the amount of $120,000 and $120,000 respectively, was recorded. The total interest receivable remaining at December 31, 2018 and 2017, respectively, is $3,639,073 and is included in other assets in the statements of financial position.

8. PROPERTY AND EQUIPMENT

Property and equipment as of December 31, 2018 and 2017 consist of:

|  | 2018 | 2017 |
|---|---|---|
| Land | $ 5,380,792 | $ 5,380,792 |
| Buildings and improvements | 55,410,753 | 54,253,187 |
| Furniture, fixtures and equipment | 18,634,456 | 17,994,728 |
|  | 79,426,001 | 77,628,707 |
| Less: accumulated depreciation | 46,716,970 | 43,153,547 |
|  | $ 32,709,031 | $ 34,475,160 |

Depreciation expense for the years ended December 31, 2018 and 2017 was $4,879,550 and $4,718,295, respectively.

## NATIONAL RIFLE ASSOCIATION OF AMERICA
## NOTES TO FINANCIAL STATEMENTS

9. NOTES PAYABLE AND CREDIT AGREEMENTS

At December 31, 2018 and 2017, $17,680,174 and $18,787,182, respectively, was payable under a credit agreement with a bank, which expires on October 1, 2019. Under the terms of this agreement, the NRA pays a fixed rate of 6.08%.

This credit agreement incorporates an interest rate swap agreement. This swap agreement is recognized on the statements of financial position in accrued liabilities at its fair value of $429,922 and $1,175,704 as of December 31, 2018 and 2017, respectively.

The NRA maintained a $25,000,000 line of credit agreement which expired on September 27, 2018. Under the terms of this agreement, the NRA made monthly interest payments on the daily outstanding principal at a variable rate based on the 30-day LIBOR rate, plus 0.60%. On September 27, 2018, the NRA entered into a $28,000,000 line of credit agreement which expires September 27, 2021. Under the terms of this agreement, the NRA makes monthly interest payments on the daily outstanding principal at a variable rate based on the 30-day LIBOR rate, plus 0.70%. At December 31, 2018 and 2017, $25,458,238 and $23,333,918 was payable under the different agreements at interest rates of 3.10% and 2.16%, respectively.

During 2017, the NRA entered a secured loan agreement with the Foundation where the NRA's accounts receivable served as collateral, which expired on February 2, 2018. Under the terms of this agreement, the NRA made annual interest payments of 7.00%. In January 2018, the agreement was amended to extend the loan to June 2, 2018 with interest to be paid monthly. The loan, however, was repaid in March 2018. During 2018, the NRA entered another secured loan agreement with the Foundation where the NRA's accounts receivable serve as collateral, which expires October 3, 2019. Under the terms of this agreement, the NRA makes monthly interest payments of 7.00%. At December 31, 2018 and 2017, $5,000,000 was payable under the agreement.

On the $28,000,000 line of credit agreement, the NRA has pledged as collateral $34,741,486 at December 31, 2018, in cash and investments held in certain custodial accounts by the bank. For the credit agreement, the NRA has also pledged as collateral a Deed of Trust on the NRA Headquarters Building.

The NRA is subject to financial covenants associated with the credit agreement and lines of credit agreements. The NRA must maintain minimum cash and investment balances.

The annual minimum payments related to these obligations at December 31, 2018 are as follows:

| | |
|---|---|
| 2019 | $ 22,680,173 |
| 2020 | - |
| 2021 | 25,458,239 |
| Total minimum future payments | $ 48,138,412 |

Interest expense for the years ended December 31, 2018 and 2017, was $1,830,724 and $1,585,858, respectively.

**NATIONAL RIFLE ASSOCIATION OF AMERICA**
**NOTES TO FINANCIAL STATEMENTS**

10. FAIR VALUE MEASUREMENTS

The NRA follows the Codification on *Fair Value Measurement,* which defines fair value as the price that would be received to sell an asset or paid to transfer a liability in an orderly transaction between market participants at the measurement date and sets out a fair value hierarchy. The fair value hierarchy gives the highest priority to quoted prices in active markets for identical assets or liabilities (Level 1) and the lowest priority to unobservable inputs (Level 3). Inputs are broadly defined as assumptions market participants would use in pricing an asset or liability. The three levels of the fair value hierarchy are described below:

Level 1: Unadjusted quoted prices in active markets for identical assets or liabilities that the reporting entity has the ability to access at the measurement date.

Level 2: Inputs other than quoted prices within Level 1 that are observable for the asset or liability, either directly or indirectly; and fair value is determined through the use of models or other valuation methodologies.

Level 3: Inputs are unobservable for the asset or liability and include situations where there is little, if any, market activity for the asset or liability. The inputs into the determination of fair value are based upon the best information in the circumstances and may require significant management judgment or estimation.

In certain cases, the inputs used to measure fair value may fall into different levels of the fair value hierarchy. In such cases, an investment's level within the fair value hierarchy is based on the lowest level of input that is significant to the fair value measurement. The NRA's assessment of the significance of a particular input to the fair value measurement in its entirety requires judgment, and considers factors specific to the investment.

In determining the appropriate levels, the NRA performs a detailed analysis of the assets and liabilities that are subject to fair value measurements. At each reporting period, all assets and liabilities for which the fair value measurement is based on significant unobservable inputs are classified as Level 3.

The estimated fair values of the NRA's short-term financial instruments, including receivables and payables arising in the ordinary course of operations, approximate their individual carrying amounts due to the relatively short period of time between their origination and expected realization.

The carrying value of the NRA's note payable and credit agreement approximates fair value as the interest rate on the credit agreement's underlying instruments fluctuate with market rates.

15

NATIONAL RIFLE ASSOCIATION OF AMERICA
NOTES TO FINANCIAL STATEMENTS

The tables below present the balances of each class of assets and liabilities measured at fair value on a recurring basis by level within the hierarchy.

| | As of December 31, 2018 | | |
| --- | --- | --- | --- |
| | Total | Level 1 | Level 2 |
| Available-for-sale equity securities: | | | |
| Consumer discretionary | $  254,630 | $  254,630 | $  - |
| Consumer staples | 425,035 | 425,035 | - |
| Energy | 945,645 | 945,645 | - |
| Financial services | 97,545 | 97,545 | - |
| Healthcare | 382,118 | 382,118 | - |
| Industrials | 246,862 | 246,862 | - |
| Information technology | 815,491 | 815,491 | - |
| Materials | 1,594,010 | 1,594,010 | - |
| Multi-strategy mutual funds | 27,601,940 | 27,601,940 | - |
| Telecommunications | 276,926 | 276,926 | - |
| Total available-for-sale equity securities | 32,640,202 | 32,640,202 | - |
| Available-for-sale fixed income securities: | | | |
| Multi-strategy bond funds | 8,021,148 | 8,021,148 | - |
| Money market | 157,520 | 157,520 | - |
| Alternative investments: | | | |
| Multi-strategy fund-of-funds [measured using a net asset value per share (or its equivalent) practical expedient] | 3,405,044 | - | - |
| Investments at fair value | $  44,223,914 | $  40,818,870 | $  - |
| Other investments | 871,077 | | |
| Total investments | $  45,094,991 | | |
| Other assets – multi-strategy mutual funds: | | | |
| Deferred compensation plan | $  2,949,908 | $  2,949,908 | $  - |
| Supplemental executive retirement plan | 1,055,242 | 1,055,242 | - |
| Total other assets | $  4,005,150 | $  4,005,150 | $  - |
| Total assets | $  49,100,141 | $  44,824,020 | $  - |
| Interest rate swap | $  (429,922) | $  - | $  (429,922) |
| Deferred compensation liability | (2,949,908) | - | (2,949,908) |
| Supplemental executive retirement liability | (1,055,242) | - | (1,055,242) |
| Total liabilities | $  (4,435,072) | $  - | $  (4,435,072) |

16

**NATIONAL RIFLE ASSOCIATION OF AMERICA**
**NOTES TO FINANCIAL STATEMENTS**

| | As of December 31, 2017 | | |
|---|---|---|---|
| | Total | Level 1 | Level 2 |
| Available-for-sale equity securities: | | | |
| Consumer discretionary | $ 312,920 | $ 312,920 | $ - |
| Consumer staples | 583,095 | 583,095 | - |
| Energy | 441,004 | 441,004 | - |
| Financial services | 21,721 | 21,721 | - |
| Healthcare | 355,704 | 355,704 | - |
| Industrials | 347,757 | 347,757 | - |
| Information technology | 1,356,506 | 1,356,506 | - |
| Materials | 1,837,405 | 1,837,405 | - |
| Multi-strategy mutual funds | 33,097,623 | 33,097,623 | - |
| Telecommunications | 130,676 | 130,676 | - |
| Total available-for-sale equity securities | 38,484,411 | 38,484,411 | - |
| Available-for-sale fixed income securities: | | | |
| Multi-strategy bond funds | 3,056,353 | 3,056,353 | - |
| Money market | 640,820 | 640,820 | - |
| Alternative investments: | | | |
| Multi-strategy fund-of-funds [measured using a net asset value per share (or its equivalent) practical expedient] | 5,874,330 | - | - |
| Investments at fair value | $ 48,055,914 | $ 42,181,584 | $ - |
| Other investments | 646,822 | | |
| Total investments | $ 48,702,736 | | |
| Other assets – multi-strategy mutual funds: | | | |
| Deferred compensation plan | $ 2,886,533 | $ 2,886,533 | $ - |
| Supplemental executive retirement plan | 1,156,982 | 1,156,982 | - |
| Total other assets | $ 4,043,515 | $ 4,043,515 | $ - |
| Total assets | $ 52,746,251 | $ 46,225,099 | $ - |
| Interest rate swap | $ ( 1,175,704) | $ - | $ (1,175,704) |
| Deferred compensation liability | (2,886,533) | - | (2,886,533) |
| Supplemental executive retirement liability | (1,156,982) | - | (1,156,982) |
| Total liabilities | $ (5,219,219) | $ - | $ (5,219,219) |

17

## NATIONAL RIFLE ASSOCIATION OF AMERICA
## NOTES TO FINANCIAL STATEMENTS

Money market funds, equity securities and fixed income securities are classified as Level 1 instruments as they are actively traded on public exchanges.

Deferred compensation plan and supplemental executive retirement plan assets are based upon the fair market value of those assets, which are observable inputs and classified as Level 1. The deferred compensation liability is not publically traded and is, therefore, considered Level 2.

The NRA's swap agreement is valued based on quoted values stated by the bank's mark-to-market estimate using stated fixed rate and LIBOR interest ratings. The interest rate is observable at commonly quoted indexes for the full term of the instrument and is, therefore, considered a Level 2 item.

The table below presents additional information regarding the alternative investments.

| | 2018 Fair Value | 2017 Fair Value | Unfunded Commitments | Redemption Frequency | Redemption Notice Period |
|---|---|---|---|---|---|
| Multi-strategy fund-of-funds (a) | $ - | $ 2,408,648 | $ - | quarterly | 65 days |
| Multi-strategy fund-of-funds (b) | 3,020,588 | 3,043,894 | - | semi-annually | 105 days |
| Multi-strategy fund (c) | 384,456 | 421,788 | - | daily | 1 day |
| | $ 3,405,044 | $ 5,874,330 | $ - | | |

(a) This class invests in hedge funds that pursue multiple strategies to diversify risks and reduce volatility. The hedge funds' composite portfolio for this class includes investments in long, short equity portfolio funds (investments in emerging markets and multiple sectors), directional macro strategy funds (investments in trade futures, options, futures and foreign exchange contracts, and diversified markets), event driven portfolio funds (investments in risk arbitrage, distressed and special situations, and opportunistic investing), relative value portfolio funds (investments in arbitrage, commodity trading advisors and market neutral strategies), and global asset allocation portfolio funds (investment in currencies, bonds, global equities and equity indices). The fair value of the investments in this class have been estimated using the net asset value per share of the investments.

(b) This class invests in hedge funds that pursue multiple strategies to diversify risks and reduce volatility. The hedge fund-of-funds' composite portfolio for this class includes investments in private investment companies (investment in global, distressed/credit, domestic healthcare and other) and securities (common stock). The fair value of the investments in this class have been estimated using the net asset value per share of the investments.

(c) This class invests in a managed futures product that pursue multiple strategies to diversify risks and reduce volatility. The multi-strategy fund composite portfolio for this class includes investments in private investment companies (investment in currency, bonds, interest rates, commodities and other) and securities (common stock). The fair value of the investments in this class have been estimated using the net asset value per share of the investment.

NATIONAL RIFLE ASSOCIATION OF AMERICA
NOTES TO FINANCIAL STATEMENTS

11.   NET ASSETS WITH DONOR RESTRICTIONS AND DONOR RESTRICTED ENDOWMENT

Net assets with donor restrictions are available for the following purposes:

| | 2018 | 2017 |
|---|---|---|
| Legislative programs | $ 21,246,525 | $ 21,468,256 |
| National Firearms Museum | 9,101,835 | 10,139,854 |
| Education and training | 6,298,991 | 6,641,962 |
| Recreational Shooting | 2,973,902 | 3,270,389 |
| Hunter services | 5,546,494 | 5,769,085 |
| Competitions | 1,492,184 | 1,481,987 |
| Field services | 255,055 | 283,422 |
| Law enforcement | 819,764 | 712,791 |
| Community outreach | 76,385 | 61,663 |
| Other | 4,424,698 | 4,687,453 |
| Other, passage of time | 72,472 | 792,273 |
| Total | $ 52,308,305 | $ 55,309,135 |

The NRA follows the Codification subtopic *Reporting endowment funds.* The Codification addresses accounting issues related to guidelines in the Uniform Prudent Management of Institutional Funds Act of 2006 (UPMIFA), which was adopted by the National Conferences of Commissioners on Uniform State Laws in July 2006 and enacted in the Commonwealth of Virginia on July 1, 2008 and by the State of New York on September 17, 2010. The Management of the NRA has interpreted UPMIFA as requiring the preservation of the fair value of original donor-restricted endowment gifts as of the date of the gift absent explicit donor stipulations to the contrary. As a result of this interpretation, the NRA classifies as net assets with donor restrictions (a) the original value of cash gifts donated to permanent donor restricted endowment and (b) the discounted value of future gifts promised to permanent donor restricted endowment, net of allowance for uncollectible pledges. The remaining portion of donor restricted endowment funds not classified in net assets with donor restrictions is classified as net assets with donor restrictions until those amounts are appropriated for expenditure by the NRA in a manner consistent with the standard of prudence prescribed by UPMIFA. In accordance with UPMIFA, the NRA considers the following factors in making a determination to appropriate or accumulate donor-restricted endowment funds:

- The duration and preservation of the fund
- The purposes of the NRA and donor-restricted endowment fund
- General economic conditions
- The possible effect of inflation and deflation
- The expected total return from income and the appreciation of investments
- Other resources of the NRA
- The investment policies of the NRA

The NRA has adopted investment and spending policies for donor-restricted endowment assets that attempt to provide a predictable stream of funding to the programs supported by its endowment while seeking to maintain purchasing power of the endowment assets. The investment policy of the NRA is to achieve, at a minimum, a real (inflation adjusted) total net return that exceeds spending policy requirements. Investments are diversified both by asset class and within asset classes. The purpose of diversification is to minimize unsystematic risk and to provide reasonable assurance that no single security or class of securities will have a disproportionate impact on the total portfolio. The amount appropriated for expenditure ranges from 1% to 5% of the endowment fund's fair value as of the end of the preceding year, as long as the value of the endowment does not drop below the original contribution(s). All earnings of the endowment are reflected as net assets with donor restrictions until appropriated for expenditure in the form of program spending.

19

NATIONAL RIFLE ASSOCIATION OF AMERICA
NOTES TO FINANCIAL STATEMENTS

The NRA's endowment is composed solely of donor restricted funds. The changes in endowment net assets for the years ended December 31, 2018 and 2017 are as follows:

|  | 2018 | 2017 |
|---|---|---|
| Endowment net assets, beginning of year | $51,889,998 | $ 46,569,526 |
| Interest and dividends, net | 475,047 | 1,725,921 |
| Net (depreciation) appreciation | (3,618,641) | 3,279,468 |
| Contributions | 1,708,726 | 2,107,078 |
| Amount appropriated for expenditure | (1,780,774) | (1,791,995) |
| Endowment net assets, end of year | $48,674,356 | $ 51,889,998 |

The related assets are included in due from affiliates, investments and pledges receivable.

From time to time, the fair value of assets associated with individual donor-restricted endowment funds may fall below the level that the donor or UPMIFA requires the NRA to retain as a fund of perpetual duration. In accordance with accounting principles generally accepted in the United States, deficiencies of this nature that are reported in net assets with donor restrictions as of December 31, 2018 and 2017, were $2,053,356 and $396,736, respectively. The deficiencies in the donor-restricted endowment funds at December 31, 2018 and 2017, resulted from unfavorable market fluctuations and the continued appropriation of endowment assets, which was deemed prudent by the NRA. The total amount of the original gifts that have fallen below the level that the donor requires as of December 31, 2018 and 2017, were $21,058,804 and $17,735,887, respectively.

The NRA has reclassified $1,420,647 of underwater endowments, from net assets without donor restrictions to net assets with donor restrictions as of January 1, 2017 to conform with the new standards as required by ASU 2016-14.

12. RETIREMENT PLANS

Certain NRA employees participate in a non-contributory, defined benefit retirement plan (the Plan). Benefits under the Plan are generally based on years of service and final average pay. The NRA's policy is to fund pension costs as accrued. Effective January 1, 2008, the NRA amended the Plan so that employees hired on or after January 1, 2008, will not be eligible to participate in the Plan. Effective December 31, 2018, the NRA froze the Plan and employees will no longer earn additional benefits under the Plan.

The primary investment objectives of the Plan are to provide a long-term, risk-controlled approach using diversified investment options. The NRA may consider all asset classes allowed by the Employee Retirement Income Security Act of 1974 and other applicable law as acceptable investment options.

**NATIONAL RIFLE ASSOCIATION OF AMERICA**
**NOTES TO FINANCIAL STATEMENTS**

The net periodic pension costs for the years ended December 31, 2018 and 2017 consist of the following:

|  | 2018 | 2017 |
|---|---|---|
| Service cost - benefits earned during the year | $ 3,344,289 | $ 3,303,061 |
| Interest cost on projected benefit obligation | 6,011,108 | 5,648,941 |
| Return on plan assets | (7,552,421) | (6,244,120) |
| Recognized net actuarial loss | 2,253,340 | 3,450,270 |
| Net amortization and deferral | 1,362,712 | 98,035 |
| Net periodic benefit cost | 5,419,028 | 6,256,187 |
| Recognized curtailment loss | 8,718,656 | - |
| Other changes | (13,645,761) | (6,778,316) |
| Net recognized curtailment loss and other changes | (4,927,105) | (6,778,316) |
| Total recognized in statements of activities | $ 491,923 | $ (522,129) |

The following table sets forth the changes in the defined benefit pension plan's funded status and the amount of accrued pension costs for the plan years ended December 31, 2018 and 2017 (utilizing a measurement date of December 31):

|  | 2018 | 2017 |
|---|---|---|
| Change in benefit obligation: |  |  |
| Projected benefit obligation at beginning of year | $ 147,957,262 | $ 137,051,874 |
| Service cost | 3,344,289 | 3,303,061 |
| Interest cost | 6,011,108 | 5,648,941 |
| Actuarial (gain) loss | (13,322,876) | 5,519,857 |
| Benefits paid | (6,452,460) | (3,771,868) |
| Plan amendments | 9,309,837 | 205,397 |
| Plan curtailments | (12,728,696) | - |
| Projected benefit obligation at end of year | $ 134,118,464 | $ 147,957,262 |
|  |  |  |
| Change in plan assets: |  |  |
| Fair value of plan assets at beginning of year | $ 98,260,092 | $ 86,832,575 |
| Actual return on plan assets | (7,878,261) | 15,199,385 |
| Employer contributions | 7,600,000 | - |
| Benefits paid | (6,452,460) | (3,771,868) |
| Fair value of plan assets at end of year | 91,529,371 | 98,260,092 |
|  |  |  |
| Accrued pension costs reflected in the statements of financial position in accrued liabilities | $ (42,589,093) | $ (49,697,170) |
|  |  |  |
| Accumulated benefit obligation | $ (134,118,464) | $ (132,178,862) |
|  |  |  |
| Amounts recognized in net assets without donor restrictions: |  |  |
| Total net loss | $ 19,611,103 | $ 32,485,333 |
| Prior service cost | - | 771,531 |
| Total | $ 19,611,103 | $ 33,256,864 |

The total net loss and prior service cost for the defined pension plan that will be amortized from net assets into the net periodic benefit cost over the next year are $880,576 and $0, respectively.

21

NATIONAL RIFLE ASSOCIATION OF AMERICA
NOTES TO FINANCIAL STATEMENTS

The following weighted-average assumptions were used in calculating the above benefit obligations, net periodic benefit cost and fair value of plan assets at December 31, 2018 and 2017:

|  | 2018 | 2017 |
|---|---|---|
| Discount rate used to determine benefit obligation | 4.45% | 3.90% |
| Discount rate used to determine net periodic benefit cost | 3.90% | 4.15% |
| Rate of compensation increase | 4.00% | 4.00% |
| Expected return on plan assets | 8.00% | 8.00% |

The basis used to determine the overall expected long-term rate of return on assets utilizing the target asset allocations established within the plan is based on historical returns.
The asset allocation strategy is based on several factors including:

- The relationship between the current and projected assets of the Plan and the projected actuarial liability stream;
- The historical performance of capital markets adjusted for the perception of future short- and long-term capital market performance;
- The perception of future economic conditions, including inflation and interest rate assumptions.

The asset allocation strategy shall identify target allocations to eligible asset classes and, where appropriate, suitable ranges within which each asset class can fluctuate as a percent of the total fund. Each asset class is to remain suitably invested at all times in either cash (or cash equivalents) or permitted securities within each asset class. The asset classes may be rebalanced from time to time to take advantage of tactical misvaluations across major asset classes or investment styles, or to align the current asset mix with strategic targets.

Following is a description of the valuation methodologies used for assets measured at fair value at December 31, 2018 and 2017.

*Multi-strategy equity and fixed income mutual funds and Pooled separate accounts*: Primarily valued at the net asset value (NAV) per share based on quoted market prices of the underlying investments as reported by the investment advisor using the audited financial statements of the underlying investments. The individual annuities invest in separate accounts, which track the performance of the specific underlying mutual funds. A valuation agent is selected for each mutual fund and PSA. The valuation of the net assets is calculated on each open market day.

The methods described above may produce a fair value calculation that may not be indicative of net realizable value or reflective of future fair values. Furthermore, while the Plan believes its valuation methods are appropriate and consistent with other market participants, the use of different methodologies or assumptions to determine the fair value of certain results in a different fair value measurement at the reporting date.

Investments measured at net asset value (or equivalent) as a practical expedient have not been classified in the fair value hierarchy. The amounts of investments are included below.

22

**NATIONAL RIFLE ASSOCIATION OF AMERICA**
**NOTES TO FINANCIAL STATEMENTS**

At December 31, 2018 and 2017, the fair value and the asset allocation of the NRA's pension plan assets was as follows:

| | 2018 | | 2017 | |
|---|---|---|---|---|
| Asset category: | | | | |
| Multi-strategy equity Mutual funds/PSAs | $ 55,411,934 | 60.5% | $ 61,965,743 | 63.0% |
| Multi-strategy fixed income Mutual funds/ PSAs | 35,569,933 | 38.9 | 36,014,604 | 36.7 |
| Cash | 547,504 | 0.6 | 279,745 | 0.3 |
| | $ 91,529,371 | 100.0% | $ 98,260,092 | 100.0% |

The NRA contributes to the plan based on actuarially determined amounts necessary to provide assets sufficient to meet benefits to be paid to plan members. NRA annually funds the minimum required contribution. Expected contributions for the plan year ending December 31, 2019 are $4,500,000.

The following plan year benefit payments, which reflect expected future service, as appropriate, are expected to be paid over the next 10 fiscal years:

| | | |
|---|---|---|
| 2019 | $ | 6,012,421 |
| 2020 | $ | 6,246,760 |
| 2021 | $ | 6,700,276 |
| 2022 | $ | 6,849,292 |
| 2023 | $ | 7,182,166 |
| 2024 – 2028 (total) | $ | 38,557,012 |

In addition, in 1997, the NRA established a 401(k) plan for employees. The plan, available to all employees after 90 days of service, permits participants to contribute a portion of their salary on a pre-tax basis. The NRA matches participant contributions based on plan provisions. Participants are 100% vested in employer contributions after three years of service. The vested balance is available to participants at termination, retirement, death, disability, hardships or through eligible loans. Employer contributions to the 401(k) plan totaled $2,569,393 and $2,430,068 for the years ended December 31, 2018 and 2017, respectively.

The NRA also maintains a deferred compensation agreement (the Agreement) for certain officers and employees. The Agreement is offered at the sole discretion of its Board of Directors, which may amend or terminate the Agreement at any time. The Agreement is funded through whole life insurance policies on the plan beneficiaries. The NRA is the policy owner and beneficiary.

Currently, several key employees are enrolled in the Agreement. Management believes that no unfunded liability exists under the Agreement. At December 31, 2018 and 2017, the NRA had assets relating to the cash surrender values of the whole life insurance policies of $4,406,082 and $4,182,192, respectively. At December 31, 2018 and 2017, the NRA had loans against the whole life insurance policies of $3,535,004 and $3,535,370, respectively, with the net included in investments on the statement of financial position. The policies serve as the underlying collateral for the loans and interest on the loans is accrued at rates between 4.20% and 4.25%. The NRA had an accrued postretirement liability of $278,958 and $275,795 at December 31, 2018 and 2017, respectively. Deferred compensation expense for the years ended December 31, 2018 and 2017 was $(30,955) and $71,973 respectively.

**NATIONAL RIFLE ASSOCIATION OF AMERICA**
**NOTES TO FINANCIAL STATEMENTS**

The NRA has established a 457(b) deferred compensation plan for the benefit of certain employees. This plan is employee funded, and therefore, the NRA did not contribute to this plan during the years ended December 31, 2018 and 2017. At December 31, 2018 and 2017, the NRA held assets, and had related obligations, relating to this plan of $2,949,908 and $2,886,533, respectively.

The NRA has also established a 457(f) supplemental executive retirement plan for the benefit of certain executives. At December 31, 2018 and 2017, the NRA held assets, and had related obligations, relating to the plan of $1,055,242 and $1,156,982, respectively. The NRA incurred deferred compensation expense of $206,700 for the years ended December 31, 2018 and 2017.

For both plans, the assets are included in other assets and the liabilities are included in accrued liabilities on the statements of financial position.

13. RENTAL OPERATIONS AS LESSOR

The NRA leases a portion of its headquarters building and adjacent property to tenants under various operating leases. These leases include renewal options and escalation clauses and require that the tenants pay for their prorated share of the building operating expenses.

The following is a schedule of minimum future rentals on non-cancellable operating leases as of December 31, 2018:

| | |
|---|---:|
| 2019 | $ 1,179,547 |
| 2020 | 878,796 |
| 2021 | 775,193 |
| 2022 | 752,222 |
| 2023 | 913,527 |
| 2024 & Thereafter | 2,079,638 |
| Total minimum future rentals | $ 6,578,923 |

Total rental income for the years ended December 31, 2018 and 2017 was $1,357,108 and $1,255,235, respectively.

14. COMMITMENTS AND CONTINGENCIES

Leases

The NRA leases warehouse, office space and equipment under non-cancellable operating leases with terms expiring through 2022. The lease agreements for various office space include renewal options and escalation clauses and require that the NRA pay for shared operating expenses.

**NATIONAL RIFLE ASSOCIATION OF AMERICA**
**NOTES TO FINANCIAL STATEMENTS**

The annual minimum payments related to these obligations as of December 31, 2018 are as follows:

| | | |
|---|---|---:|
| 2019 | $ | 1,414,035 |
| 2020 | | 821,277 |
| 2021 | | 458,502 |
| 2022 | | 194,912 |
| Total minimum payments required | $ | 2,888,726 |

Total lease expense for the years ended December 31, 2018 and 2017 was $1,410,079 and $1,298,089, respectively.

Litigation and claims

NRA is subject to various legal proceedings as well as federal and state government agency inquires. In the opinion of the management of the NRA, there are no material pending legal proceedings to which the NRA will be found liable. Management also believes the federal and state inquiries have no merit and will be resolved to the benefit of the NRA.

15.  RELATED PARTIES

The NRA and the NRA Foundation are financially interrelated entities as the NRA is able to influence the Foundation's operating and financial decisions as well as the NRA having ongoing economic interest in the net assets of the Foundation. The NRA is affiliated with CRDF, SCF and the FAF by virtue of the control vested with the NRA's Board of Directors to appoint the Board of Trustees of each affiliate. The PVF is a separately unincorporated political action committee of the NRA whose five officers are NRA employees. The NRA provides certain benefits to the affiliates at no cost, among which are the use of office space and other administrative and support services. Management has determined that the fair value of these benefits is minimal, and accordingly, no amounts are reflected in these financial statements.

The Foundation reimburses the NRA for certain expenses, such as salaries, benefits, and general operating expenses, paid by the NRA on the Foundation's behalf. These expenses totaled $17,482,315 and $6,017,801 for the years ended December 31, 2018 and 2017, respectively. As of December 31, 2018 and 2017, $28,501,182 and $29,542,563 respectively, was owed to the NRA and included in due from affiliates for reimbursements and pass through funds still held by the Foundation. In addition, certain qualified NRA programs were funded by Foundation grants totaling $13,498,464 and $18,812,141 for the years ended December 31, 2018 and 2017, respectively.

The CRDF reimburses the NRA for general operating expenses paid by the NRA on the CRDF's behalf. As of December 31, 2018 and 2017, $3,161 and $1,040,733, respectively, was owed to the NRA for general operating expenses and included in due from affiliates.

All permanent employees of the SCF are maintained as employees of the NRA and the SCF reimburses the NRA for the total employee costs including benefits. The SCF reimburses the NRA for certain other expenses paid by the NRA on the SCF's behalf. As of December 31, 2018 and 2017, $192,190 and $148,679, respectively, was owed to the NRA for salaries, insurance and benefits net of certain other expenses owed by the NRA to the SCF and included in due from affiliates. See also Note 6.

The NRA paid administrative and fundraising expenses of $5,105,006 and $2,968,011 for the years ended December 31, 2018 and 2017, respectively, on behalf of the PVF.

25

COPY OF WITHIN PAPER
RECEIVED

NOV 15 2019

NYS OFFICE OF THE ATTORNEY GENERAL
CHARITIES BUREAU

# EXHIBIT 2

| Form **990** | | **Return of Organization Exempt From Income Tax** | | OMB No. 1545-0047 |
|---|---|---|---|---|
| | | Under section 501(c), 527, or 4947(a)(1) of the Internal Revenue Code (except private foundations) | | **2019** |
| | | ▶ Do not enter social security numbers on this form as it may be made public. | | **Open to Public Inspection** |
| Department of the Treasury Internal Revenue Service | | ▶ Go to *www.irs.gov/Form990* for instructions and the latest information. | | |

**A** For the 2019 calendar year, or tax year beginning _____, 2019, and ending _____, 20___

| **B** Check if applicable: | **C** Name of organization NATIONAL RIFLE ASSOCIATION OF AMERICA | | **D** Employer identification number |
|---|---|---|---|
| ☐ Address change | Doing business as | | 53-0116130 |
| ☐ Name change | Number and street (or P.O. box if mail is not delivered to street address) | Room/suite | **E** Telephone number |
| ☐ Initial return | 11250 WAPLES MILL ROAD | | (703) 267-1000 |
| ☐ Final return/terminated | City or town, state or province, country, and ZIP or foreign postal code | | **G** Gross receipts $ 302,740,488 |
| ☐ Amended return | FAIRFAX, VA 22030 | | |
| ☐ Application pending | **F** Name and address of principal officer: WAYNE R LAPIERRE | | **H(a)** Is this a group return for subordinates? ☐ Yes ☑ No |
| | SAME AS C ABOVE | | **H(b)** Are all subordinates included? ☐ Yes ☐ No |

**I** Tax-exempt status: ☐ 501(c)(3)  ☑ 501(c) ( 4 ) ◀ (insert no.)  ☐ 4947(a)(1) or  ☐ 527     If "No," attach a list. (see instructions)

**J** Website: ▶ WWW.NRA.ORG     **H(c)** Group exemption number ▶

**K** Form of organization: ☑ Corporation  ☐ Trust  ☐ Association  ☐ Other ▶     **L** Year of formation: 1871  **M** State of legal domicile: NY

## Part I  Summary

| | | | | |
|---|---|---|---|---|
| **1** | Briefly describe the organization's mission or most significant activities: FIREARMS SAFETY, EDUCATION, AND TRAINING; AND ADVOCACY ON BEHALF OF SAFE AND RESPONSIBLE GUN OWNERS | | | |
| **2** | Check this box ▶ ☐ if the organization discontinued its operations or disposed of more than 25% of its net assets. | | | |
| **3** | Number of voting members of the governing body (Part VI, line 1a) | | **3** | 73 |
| **4** | Number of independent voting members of the governing body (Part VI, line 1b) | | **4** | 63 |
| **5** | Total number of individuals employed in calendar year 2019 (Part V, line 2a) | | **5** | 770 |
| **6** | Total number of volunteers (estimate if necessary) | | **6** | 150,000 |
| **7a** | Total unrelated business revenue from Part VIII, column (C), line 12 | | **7a** | 22,618,742 |
| **b** | Net unrelated business taxable income from Form 990-T, line 39 | | **7b** | 0 |

| | | **Prior Year** | **Current Year** |
|---|---|---|---|
| **8** | Contributions and grants (Part VIII, line 1h) | 108,599,726 | 109,439,440 |
| **9** | Program service revenue (Part VIII, line 2g) | 193,010,155 | 134,011,736 |
| **10** | Investment income (Part VIII, column (A), lines 3, 4, and 7d) | 2,192,041 | 5,035,760 |
| **11** | Other revenue (Part VIII, column (A), lines 5, 6d, 8c, 9c, 10c, and 11e) | 48,748,942 | 42,668,528 |
| **12** | Total revenue—add lines 8 through 11 (must equal Part VIII, column (A), line 12) | 352,550,864 | 291,155,464 |
| **13** | Grants and similar amounts paid (Part IX, column (A), lines 1–3) | 75,661 | 103,491 |
| **14** | Benefits paid to or for members (Part IX, column (A), line 4) | 0 | 0 |
| **15** | Salaries, other compensation, employee benefits (Part IX, column (A), lines 5–10) | 63,864,842 | 56,740,325 |
| **16a** | Professional fundraising fees (Part IX, column (A), line 11e) | 7,798,658 | 5,269,873 |
| **b** | Total fundraising expenses (Part IX, column (D), line 25) ▶ 45,441,923 | | |
| **17** | Other expenses (Part IX, column (A), lines 11a–11d, 11f–24e) | 283,536,156 | 241,273,626 |
| **18** | Total expenses. Add lines 13–17 (must equal Part IX, column (A), line 25) | 355,275,317 | 303,387,315 |
| **19** | Revenue less expenses. Subtract line 18 from line 12 | (2,724,453) | (12,231,851) |

| | | **Beginning of Current Year** | **End of Year** |
|---|---|---|---|
| **20** | Total assets (Part X, line 16) | 197,212,080 | 198,746,752 |
| **21** | Total liabilities (Part X, line 26) | 181,180,554 | 189,092,595 |
| **22** | Net assets or fund balances. Subtract line 21 from line 20 | 16,031,526 | 9,654,157 |

## Part II  Signature Block

Under penalties of perjury, I declare that I have examined this return, including accompanying schedules and statements, and to the best of my knowledge and belief, it is true, correct, and complete. Declaration of preparer (other than officer) is based on all information of which preparer has any knowledge.

| **Sign Here** | ▶ | Signature of officer | | Date |
|---|---|---|---|---|
| | ▶ | WAYNE R LAPIERRE, EXECUTIVE VICE PRESIDENT | | |
| | | Type or print name and title | | |

| **Paid Preparer Use Only** | Print/Type preparer's name | Preparer's signature | Date | Check ☐ if self-employed | PTIN |
|---|---|---|---|---|---|
| | Firm's name ▶ | | | Firm's EIN ▶ | |
| | Firm's address ▶ | | | Phone no. | |

May the IRS discuss this return with the preparer shown above? (see instructions) . . . . . . . . . . . . . . . ☐ Yes ☐ No

For Paperwork Reduction Act Notice, see the separate instructions.     Cat. No. 11282Y     Form **990** (2019)

Form 990 (2019)
Page **2**

| **Part III** | **Statement of Program Service Accomplishments** |
|---|---|

Check if Schedule O contains a response or note to any line in this Part III . . . . . . . . . . . . ☑

**1** Briefly describe the organization's mission:

PER NRA BYLAWS, TO PROTECT AND DEFEND THE U.S. CONSTITUTION; TO PROMOTE PUBLIC SAFETY, LAW AND
ORDER, AND NATIONAL DEFENSE; TO TRAIN LAW ENFORCEMENT AGENCIES AND CIVILIANS IN MARKSMANSHIP; TO
PROMOTE SHOOTING SPORTS AND HUNTING.

**2** Did the organization undertake any significant program services during the year which were not listed on the
prior Form 990 or 990-EZ? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ☐ **Yes** ☑ **No**
If "Yes," describe these new services on Schedule O.

**3** Did the organization cease conducting, or make significant changes in how it conducts, any program
services? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ☐ **Yes** ☑ **No**
If "Yes," describe these changes on Schedule O.

**4** Describe the organization's program service accomplishments for each of its three largest program services, as measured by
expenses. Section 501(c)(3) and 501(c)(4) organizations are required to report the amount of grants and allocations to others,
the total expenses, and revenue, if any, for each program service reported.

**4a** (Code:                ) (Expenses $      121,344,093 including grants of $      103,491 ) (Revenue $      120,556,156 )
NRA MEMBERSHIP SUPPORT INCLUDES PUBLICATIONS, EDUCATION AND TRAINING, FIELD SERVICES, COMPETITIVE
SHOOTING, LAW ENFORCEMENT, HUNTER SERVICES, MEMBER COMMUNICATIONS SERVICES, MEMBER PROGRAMS, MEMBER
SERVICES, AND FULFILLMENT OF MEMBER SERVICES. THE CHIEF VALUE OF NRA MEMBERSHIP IS IN GUN SAFETY AND
TRAINING ALONG WITH REGULAR REINFORCEMENT OF THESE LESSONS AND PRINCIPLES BY KEEPING ENGAGED WITH
THE COMMUNITY OF OUTDOOR LOVERS AND SAFE AND RESPONSIBLE SHOOTING ENTHUSIASTS. NRA MEMBERSHIP
SUPPORT AND FULFILLMENT ARE DEDICATED TO PROVIDING NRA MEMBERS WITH HIGH QUALITY SUPPORT AS WELL AS
CONTENT DELIVERED THROUGH MANY PLATFORMS. SAFE AND RESPONSIBLE GUN OWNERSHIP REMAINS THE CORNERSTONE
OF EVERYTHING THE ASSOCIATION PROVIDES FOR MEMBERS.

**4b** (Code:                ) (Expenses $      27,138,998 including grants of $      0 ) (Revenue $      0 )
THE NRA INSTITUTE FOR LEGISLATIVE ACTION ADVOCATES ON BEHALF OF SAFE AND RESPONSIBLE GUN OWNERS. AS
THE FOREMOST PROTECTOR AND DEFENDER OF THE SECOND AMENDMENT, THE NRA PROMOTES FIREARMS SAFETY,
ADVOCATES AGAINST EFFORTS TO ERODE GUN RIGHTS AND FREEDOMS, FIGHTS FOR INITIATIVES AIMED AT REDUCING
VIOLENT CRIME, AND PROMOTES HUNTERS'RIGHTS AND CONSERVATION EFFORTS. NRA MEMBERS RECOGNIZE THIS
VITAL IMPORTANCE OF NRAILA'S TRUE GRASSROOTS WORK TO PRESERVE THE SECOND AMENDMENT FOR FUTURE
GENERATIONS OF SHOOTERS AND OUTDOOR SPORTSMEN AND SPORTSWOMEN. THIS LEGION OF ENGAGED AND MOTIVATED
MEMBERS IS THE REASON FOR THE NRA'S STRENGTH.

**4c** (Code:                ) (Expenses $      16,001,367 including grants of $      0 ) (Revenue $      19,828,137 )
NRA SHOWS AND EXHIBITS INCLUDE THE NRA ANNUAL MEETINGS AND MEMBERS EXHIBIT HALL, HELD IN A DIFFERENT
CITY EACH YEAR, AND OTHER SHOWS AROUND THE COUNTRY. THE ANNUAL MEETINGS AND EXHIBITS ARE PRESENTED
AS A CELEBRATION OF AMERICAN FREEDOM FEATURING ACRES OF EXHIBITS, PREMIER EVENTS, EDUCATIONAL
SEMINARS AND WORKSHOPS, AND FUN-FILLED ACTIVITIES FOR THE ENTIRE FAMILY. INDIANAPOLIS, INDIANA WAS
THE 2019 HOST CITY. OTHER NRA HOSTED SHOWS INCLUDED THE GREAT AMERICAN OUTDOOR SHOW HELD IN
HARRISBURG, PENNSYLVANIA.

**4d** Other program services (Describe on Schedule O.)
(Expenses $      31,766,483 including grants of $      0 ) (Revenue $      564,907 )

**4e** Total program service expenses ▶      196,250,941

Form **990** (2019)

Form 990 (2019)        Page **3**

## Part IV   Checklist of Required Schedules

| | | | Yes | No |
|---|---|---|:---:|:---:|
| 1 | Is the organization described in section 501(c)(3) or 4947(a)(1) (other than a private foundation)? *If "Yes," complete Schedule A* . . . . . . . . . . . . . . . . . . . | **1** | | ✔ |
| 2 | Is the organization required to complete *Schedule B, Schedule of Contributors* (see instructions)? . . . | **2** | ✔ | |
| 3 | Did the organization engage in direct or indirect political campaign activities on behalf of or in opposition to candidates for public office? *If "Yes," complete Schedule C, Part I* . . . . . . . . . . . | **3** | ✔ | |
| 4 | **Section 501(c)(3) organizations.** Did the organization engage in lobbying activities, or have a section 501(h) election in effect during the tax year? *If "Yes," complete Schedule C, Part II* . . . . . . . | **4** | | |
| 5 | Is the organization a section 501(c)(4), 501(c)(5), or 501(c)(6) organization that receives membership dues, assessments, or similar amounts as defined in Revenue Procedure 98-19? *If "Yes," complete Schedule C, Part III* | **5** | ✔ | |
| 6 | Did the organization maintain any donor advised funds or any similar funds or accounts for which donors have the right to provide advice on the distribution or investment of amounts in such funds or accounts? *If "Yes," complete Schedule D, Part I* . . . . . . . . . . . . . . . . . . | **6** | | ✔ |
| 7 | Did the organization receive or hold a conservation easement, including easements to preserve open space, the environment, historic land areas, or historic structures? *If "Yes," complete Schedule D, Part II* . . | **7** | | ✔ |
| 8 | Did the organization maintain collections of works of art, historical treasures, or other similar assets? *If "Yes," complete Schedule D, Part III* . . . . . . . . . . . . . . . . . . | **8** | ✔ | |
| 9 | Did the organization report an amount in Part X, line 21, for escrow or custodial account liability, serve as a custodian for amounts not listed in Part X; or provide credit counseling, debt management, credit repair, or debt negotiation services? *If "Yes," complete Schedule D, Part IV* . . . . . . . . . . . | **9** | | ✔ |
| 10 | Did the organization, directly or through a related organization, hold assets in donor-restricted endowments or in quasi endowments? *If "Yes," complete Schedule D, Part V* . . . . . . . . . . | **10** | ✔ | |
| 11 | If the organization's answer to any of the following questions is "Yes," then complete Schedule D, Parts VI, VII, VIII, IX, or X as applicable. | | | |
| a | Did the organization report an amount for land, buildings, and equipment in Part X, line 10? *If "Yes," complete Schedule D, Part VI* . . . . . . . . . . . . . . . . . . | **11a** | ✔ | |
| b | Did the organization report an amount for investments—other securities in Part X, line 12, that is 5% or more of its total assets reported in Part X, line 16? *If "Yes," complete Schedule D, Part VII* . . . . | **11b** | | ✔ |
| c | Did the organization report an amount for investments—program related in Part X, line 13, that is 5% or more of its total assets reported in Part X, line 16? *If "Yes," complete Schedule D, Part VIII* . . . . | **11c** | | ✔ |
| d | Did the organization report an amount for other assets in Part X, line 15, that is 5% or more of its total assets reported in Part X, line 16? *If "Yes," complete Schedule D, Part IX* . . . . . . . . | **11d** | ✔ | |
| e | Did the organization report an amount for other liabilities in Part X, line 25? *If "Yes," complete Schedule D, Part X* | **11e** | ✔ | |
| f | Did the organization's separate or consolidated financial statements for the tax year include a footnote that addresses the organization's liability for uncertain tax positions under FIN 48 (ASC 740)? *If "Yes," complete Schedule D, Part X* | **11f** | ✔ | |
| 12a | Did the organization obtain separate, independent audited financial statements for the tax year? *If "Yes," complete Schedule D, Parts XI and XII* . . . . . . . . . . . . . . . . . | **12a** | ✔ | |
| b | Was the organization included in consolidated, independent audited financial statements for the tax year? *If "Yes," and if the organization answered "No" to line 12a, then completing Schedule D, Parts XI and XII is optional* | **12b** | ✔ | |
| 13 | Is the organization a school described in section 170(b)(1)(A)(ii)? *If "Yes," complete Schedule E* . . . | **13** | | ✔ |
| 14a | Did the organization maintain an office, employees, or agents outside of the United States? . . . . | **14a** | | ✔ |
| b | Did the organization have aggregate revenues or expenses of more than $10,000 from grantmaking, fundraising, business, investment, and program service activities outside the United States, or aggregate foreign investments valued at $100,000 or more? *If "Yes," complete Schedule F, Parts I and IV.* . . . | **14b** | ✔ | |
| 15 | Did the organization report on Part IX, column (A), line 3, more than $5,000 of grants or other assistance to or for any foreign organization? *If "Yes," complete Schedule F, Parts II and IV* . . . . . . . . | **15** | | ✔ |
| 16 | Did the organization report on Part IX, column (A), line 3, more than $5,000 of aggregate grants or other assistance to or for foreign individuals? *If "Yes," complete Schedule F, Parts III and IV.* . . . . . | **16** | | ✔ |
| 17 | Did the organization report a total of more than $15,000 of expenses for professional fundraising services on Part IX, column (A), lines 6 and 11e? *If "Yes," complete Schedule G, Part I* (see instructions) . . . | **17** | ✔ | |
| 18 | Did the organization report more than $15,000 total of fundraising event gross income and contributions on Part VIII, lines 1c and 8a? *If "Yes," complete Schedule G, Part II* . . . . . . . . . . | **18** | ✔ | |
| 19 | Did the organization report more than $15,000 of gross income from gaming activities on Part VIII, line 9a? *If "Yes," complete Schedule G, Part III* . . . . . . . . . . . . . . . . . | **19** | | ✔ |
| 20a | Did the organization operate one or more hospital facilities? *If "Yes," complete Schedule H* . . . . . | **20a** | | ✔ |
| b | If "Yes" to line 20a, did the organization attach a copy of its audited financial statements to this return? . | **20b** | | |
| 21 | Did the organization report more than $5,000 of grants or other assistance to any domestic organization or domestic government on Part IX, column (A), line 1? *If "Yes," complete Schedule I, Parts I and II* . . . . | **21** | ✔ | |

Form 990 (2019)

Page **4**

## Part IV Checklist of Required Schedules *(continued)*

| | | | Yes | No |
|---|---|---|---|---|
| 22 | Did the organization report more than $5,000 of grants or other assistance to or for domestic individuals on Part IX, column (A), line 2? *If "Yes," complete Schedule I, Parts I and III* . . . . . . . . . | **22** | ✔ | |
| 23 | Did the organization answer "Yes" to Part VII, Section A, line 3, 4, or 5 about compensation of the organization's current and former officers, directors, trustees, key employees, and highest compensated employees? *If "Yes," complete Schedule J* . . . . . . . . . . . . . . . . . . . . | **23** | ✔ | |
| 24a | Did the organization have a tax-exempt bond issue with an outstanding principal amount of more than $100,000 as of the last day of the year, that was issued after December 31, 2002? *If "Yes," answer lines 24b through 24d and complete Schedule K. If "No," go to line 25a* . . . . . . . . . . . . . . | **24a** | | ✔ |
| b | Did the organization invest any proceeds of tax-exempt bonds beyond a temporary period exception? . . | **24b** | | |
| c | Did the organization maintain an escrow account other than a refunding escrow at any time during the year to defease any tax-exempt bonds? . . . . . . . . . . . . . . . . . . . . . . . | **24c** | | |
| d | Did the organization act as an "on behalf of" issuer for bonds outstanding at any time during the year? . . | **24d** | | |
| 25a | **Section 501(c)(3), 501(c)(4), and 501(c)(29) organizations.** Did the organization engage in an excess benefit transaction with a disqualified person during the year? *If "Yes," complete Schedule L, Part I* | **25a** | ✔ | |
| b | Is the organization aware that it engaged in an excess benefit transaction with a disqualified person in a prior year, and that the transaction has not been reported on any of the organization's prior Forms 990 or 990-EZ? *If "Yes," complete Schedule L, Part I* . . . . . . . . . . . . . . . . . . . . | **25b** | ✔ | |
| 26 | Did the organization report any amount on Part X, line 5 or 22, for receivables from or payables to any current or former officer, director, trustee, key employee, creator or founder, substantial contributor, or 35% controlled entity or family member of any of these persons? *If "Yes," complete Schedule L, Part II* | **26** | | ✔ |
| 27 | Did the organization provide a grant or other assistance to any current or former officer, director, trustee, key employee, creator or founder, substantial contributor or employee thereof, a grant selection committee member, or to a 35% controlled entity (including an employee thereof) or family member of any of these persons? *If "Yes," complete Schedule L, Part III* . . . . . . . . . . . . . . . . | **27** | | ✔ |
| 28 | Was the organization a party to a business transaction with one of the following parties (see Schedule L, Part IV instructions, for applicable filing thresholds, conditions, and exceptions): | | | |
| a | A current or former officer, director, trustee, key employee, creator or founder, or substantial contributor? *If "Yes," complete Schedule L, Part IV* . . . . . . . . . . . . . . . . . . . | **28a** | ✔ | |
| b | A family member of any individual described in line 28a? *If "Yes," complete Schedule L, Part IV* . . . . | **28b** | | ✔ |
| c | A 35% controlled entity of one or more individuals and/or organizations described in lines 28a or 28b? *If "Yes," complete Schedule L, Part IV* . . . . . . . . . . . . . . . . . . . . . | **28c** | | ✔ |
| 29 | Did the organization receive more than $25,000 in non-cash contributions? *If "Yes," complete Schedule M* | **29** | ✔ | |
| 30 | Did the organization receive contributions of art, historical treasures, or other similar assets, or qualified conservation contributions? *If "Yes," complete Schedule M* . . . . . . . . . . . . . | **30** | ✔ | |
| 31 | Did the organization liquidate, terminate, or dissolve and cease operations? *If "Yes," complete Schedule N, Part I* | **31** | | ✔ |
| 32 | Did the organization sell, exchange, dispose of, or transfer more than 25% of its net assets? *If "Yes," complete Schedule N, Part II* . . . . . . . . . . . . . . . . . . . . . . . | **32** | | ✔ |
| 33 | Did the organization own 100% of an entity disregarded as separate from the organization under Regulations sections 301.7701-2 and 301.7701-3? *If "Yes," complete Schedule R, Part I* . . . . . . . . . | **33** | | ✔ |
| 34 | Was the organization related to any tax-exempt or taxable entity? *If "Yes," complete Schedule R, Part II, III, or IV, and Part V, line 1* . . . . . . . . . . . . . . . . . . . . . . . | **34** | ✔ | |
| 35a | Did the organization have a controlled entity within the meaning of section 512(b)(13)? . . . . . . | **35a** | ✔ | |
| b | If "Yes" to line 35a, did the organization receive any payment from or engage in any transaction with a controlled entity within the meaning of section 512(b)(13)? *If "Yes," complete Schedule R, Part V, line 2* . . | **35b** | ✔ | |
| 36 | **Section 501(c)(3) organizations.** Did the organization make any transfers to an exempt non-charitable related organization? *If "Yes," complete Schedule R, Part V, line 2* . . . . . . . . . . . | **36** | | |
| 37 | Did the organization conduct more than 5% of its activities through an entity that is not a related organization and that is treated as a partnership for federal income tax purposes? *If "Yes," complete Schedule R, Part VI* | **37** | | ✔ |
| 38 | Did the organization complete Schedule O and provide explanations in Schedule O for Part VI, lines 11b and 19? **Note:** All Form 990 filers are required to complete Schedule O. . . . . . . . . . . | **38** | ✔ | |

## Part V Statements Regarding Other IRS Filings and Tax Compliance

Check if Schedule O contains a response or note to any line in this Part V . . . . . . . . . . . . ☐

| | | | | | Yes | No |
|---|---|---|---|---|---|---|
| 1a | Enter the number reported in Box 3 of Form 1096. Enter -0- if not applicable . . . | **1a** | 968 | | | |
| b | Enter the number of Forms W-2G included in line 1a. Enter -0- if not applicable . . . . | **1b** | 0 | | | |
| c | Did the organization comply with backup withholding rules for reportable payments to vendors and reportable gaming (gambling) winnings to prize winners? . . . . . . . . . . . . . . | | | **1c** | ✔ | |

Form 990 (2019)         Page **5**

## Part V   Statements Regarding Other IRS Filings and Tax Compliance *(continued)*

|  |  | Yes | No |
|---|---|:---:|:---:|
| **2a** Enter the number of employees reported on Form W-3, Transmittal of Wage and Tax Statements, filed for the calendar year ending with or within the year covered by this return **2a** 770 |  |  |  |
| **b** If at least one is reported on line 2a, did the organization file all required federal employment tax returns? | **2b** | ✔ |  |
| **Note:** If the sum of lines 1a and 2a is greater than 250, you may be required to *e-file* (see instructions) |  |  |  |
| **3a** Did the organization have unrelated business gross income of $1,000 or more during the year? | **3a** | ✔ |  |
| **b** If "Yes," has it filed a Form 990-T for this year? *If "No" to line 3b, provide an explanation on Schedule O* | **3b** | ✔ |  |
| **4a** At any time during the calendar year, did the organization have an interest in, or a signature or other authority over, a financial account in a foreign country (such as a bank account, securities account, or other financial account)? | **4a** |  | ✔ |
| **b** If "Yes," enter the name of the foreign country ▶ |  |  |  |
| See instructions for filing requirements for FinCEN Form 114, Report of Foreign Bank and Financial Accounts (FBAR). |  |  |  |
| **5a** Was the organization a party to a prohibited tax shelter transaction at any time during the tax year? | **5a** |  | ✔ |
| **b** Did any taxable party notify the organization that it was or is a party to a prohibited tax shelter transaction? | **5b** |  | ✔ |
| **c** If "Yes" to line 5a or 5b, did the organization file Form 8886-T? | **5c** |  |  |
| **6a** Does the organization have annual gross receipts that are normally greater than $100,000, and did the organization solicit any contributions that were not tax deductible as charitable contributions? | **6a** | ✔ |  |
| **b** If "Yes," did the organization include with every solicitation an express statement that such contributions or gifts were not tax deductible? | **6b** | ✔ |  |
| **7** **Organizations that may receive deductible contributions under section 170(c).** |  |  |  |
| **a** Did the organization receive a payment in excess of $75 made partly as a contribution and partly for goods and services provided to the payor? | **7a** |  |  |
| **b** If "Yes," did the organization notify the donor of the value of the goods or services provided? | **7b** |  |  |
| **c** Did the organization sell, exchange, or otherwise dispose of tangible personal property for which it was required to file Form 8282? | **7c** |  |  |
| **d** If "Yes," indicate the number of Forms 8282 filed during the year **7d** |  |  |  |
| **e** Did the organization receive any funds, directly or indirectly, to pay premiums on a personal benefit contract? | **7e** |  |  |
| **f** Did the organization, during the year, pay premiums, directly or indirectly, on a personal benefit contract? | **7f** |  |  |
| **g** If the organization received a contribution of qualified intellectual property, did the organization file Form 8899 as required? | **7g** |  |  |
| **h** If the organization received a contribution of cars, boats, airplanes, or other vehicles, did the organization file a Form 1098-C? | **7h** |  |  |
| **8** **Sponsoring organizations maintaining donor advised funds.** Did a donor advised fund maintained by the sponsoring organization have excess business holdings at any time during the year? | **8** |  |  |
| **9** **Sponsoring organizations maintaining donor advised funds.** |  |  |  |
| **a** Did the sponsoring organization make any taxable distributions under section 4966? | **9a** |  |  |
| **b** Did the sponsoring organization make a distribution to a donor, donor advisor, or related person? | **9b** |  |  |
| **10** **Section 501(c)(7) organizations.** Enter: |  |  |  |
| **a** Initiation fees and capital contributions included on Part VIII, line 12 **10a** |  |  |  |
| **b** Gross receipts, included on Form 990, Part VIII, line 12, for public use of club facilities **10b** |  |  |  |
| **11** **Section 501(c)(12) organizations.** Enter: |  |  |  |
| **a** Gross income from members or shareholders **11a** |  |  |  |
| **b** Gross income from other sources (Do not net amounts due or paid to other sources against amounts due or received from them.) **11b** |  |  |  |
| **12a** **Section 4947(a)(1) non-exempt charitable trusts.** Is the organization filing Form 990 in lieu of Form 1041? | **12a** |  |  |
| **b** If "Yes," enter the amount of tax-exempt interest received or accrued during the year **12b** |  |  |  |
| **13** **Section 501(c)(29) qualified nonprofit health insurance issuers.** |  |  |  |
| **a** Is the organization licensed to issue qualified health plans in more than one state? | **13a** |  |  |
| **Note:** See the instructions for additional information the organization must report on Schedule O. |  |  |  |
| **b** Enter the amount of reserves the organization is required to maintain by the states in which the organization is licensed to issue qualified health plans **13b** |  |  |  |
| **c** Enter the amount of reserves on hand **13c** |  |  |  |
| **14a** Did the organization receive any payments for indoor tanning services during the tax year? | **14a** |  | ✔ |
| **b** If "Yes," has it filed a Form 720 to report these payments? *If "No," provide an explanation on Schedule O* | **14b** |  |  |
| **15** Is the organization subject to the section 4960 tax on payment(s) of more than $1,000,000 in remuneration or excess parachute payment(s) during the year? | **15** | ✔ |  |
| If "Yes," see instructions and file Form 4720, Schedule N. |  |  |  |
| **16** Is the organization an educational institution subject to the section 4968 excise tax on net investment income? | **16** |  | ✔ |
| If "Yes," complete Form 4720, Schedule O. |  |  |  |

Form **990** (2019)

Form 990 (2019)                                                                                                                    Page **6**

| Part VI | Governance, Management, and Disclosure | *For each "Yes" response to lines 2 through 7b below, and for a "No" response to line 8a, 8b, or 10b below, describe the circumstances, processes, or changes on Schedule O. See instructions.* |

Check if Schedule O contains a response or note to any line in this Part VI . . . . . . . . . . . . ☑

### Section A. Governing Body and Management

|  |  |  | Yes | No |
|---|---|---|---|---|
| **1a** | Enter the number of voting members of the governing body at the end of the tax year . . | **1a**  73 |  |  |
|  | If there are material differences in voting rights among members of the governing body, or if the governing body delegated broad authority to an executive committee or similar committee, explain on Schedule O. |  |  |  |
| **b** | Enter the number of voting members included on line 1a, above, who are independent . . | **1b**  63 |  |  |
| **2** | Did any officer, director, trustee, or key employee have a family relationship or a business relationship with any other officer, director, trustee, or key employee? | **2** | ✔ |  |
| **3** | Did the organization delegate control over management duties customarily performed by or under the direct supervision of officers, directors, trustees, or key employees to a management company or other person? . | **3** |  | ✔ |
| **4** | Did the organization make any significant changes to its governing documents since the prior Form 990 was filed? | **4** | ✔ |  |
| **5** | Did the organization become aware during the year of a significant diversion of the organization's assets? . | **5** | ✔ |  |
| **6** | Did the organization have members or stockholders? . . . . . . . . . . . | **6** | ✔ |  |
| **7a** | Did the organization have members, stockholders, or other persons who had the power to elect or appoint one or more members of the governing body? . . . . . . . . . . . | **7a** | ✔ |  |
| **b** | Are any governance decisions of the organization reserved to (or subject to approval by) members, stockholders, or persons other than the governing body? . . . . . . . . . . | **7b** | ✔ |  |
| **8** | Did the organization contemporaneously document the meetings held or written actions undertaken during the year by the following: |  |  |  |
| **a** | The governing body? . . . . . . . . . . . . . . . . . . . | **8a** | ✔ |  |
| **b** | Each committee with authority to act on behalf of the governing body? . . . . . . . | **8b** | ✔ |  |
| **9** | Is there any officer, director, trustee, or key employee listed in Part VII, Section A, who cannot be reached at the organization's mailing address? *If "Yes," provide the names and addresses on Schedule O* . . . . | **9** |  | ✔ |

### Section B. Policies *(This Section B requests information about policies not required by the Internal Revenue Code.)*

|  |  |  | Yes | No |
|---|---|---|---|---|
| **10a** | Did the organization have local chapters, branches, or affiliates? . . . . . . . . . | **10a** |  | ✔ |
| **b** | If "Yes," did the organization have written policies and procedures governing the activities of such chapters, affiliates, and branches to ensure their operations are consistent with the organization's exempt purposes? | **10b** |  |  |
| **11a** | Has the organization provided a complete copy of this Form 990 to all members of its governing body before filing the form? | **11a** |  | ✔ |
| **b** | Describe in Schedule O the process, if any, used by the organization to review this Form 990. |  |  |  |
| **12a** | Did the organization have a written conflict of interest policy? *If "No," go to line 13* . . . . | **12a** | ✔ |  |
| **b** | Were officers, directors, or trustees, and key employees required to disclose annually interests that could give rise to conflicts? | **12b** | ✔ |  |
| **c** | Did the organization regularly and consistently monitor and enforce compliance with the policy? *If "Yes," describe in Schedule O how this was done* . . . . . . . . . . . . . | **12c** | ✔ |  |
| **13** | Did the organization have a written whistleblower policy? . . . . . . . . . . . | **13** | ✔ |  |
| **14** | Did the organization have a written document retention and destruction policy? . . . . . | **14** | ✔ |  |
| **15** | Did the process for determining compensation of the following persons include a review and approval by independent persons, comparability data, and contemporaneous substantiation of the deliberation and decision? |  |  |  |
| **a** | The organization's CEO, Executive Director, or top management official . . . . . . . | **15a** | ✔ |  |
| **b** | Other officers or key employees of the organization . . . . . . . . . . . | **15b** | ✔ |  |
|  | If "Yes" to line 15a or 15b, describe the process in Schedule O (see instructions). |  |  |  |
| **16a** | Did the organization invest in, contribute assets to, or participate in a joint venture or similar arrangement with a taxable entity during the year? . . . . . . . . . . . . . | **16a** |  | ✔ |
| **b** | If "Yes," did the organization follow a written policy or procedure requiring the organization to evaluate its participation in joint venture arrangements under applicable federal tax law, and take steps to safeguard the organization's exempt status with respect to such arrangements? . . . . . . . | **16b** |  |  |

### Section C. Disclosure

| **17** | List the states with which a copy of this Form 990 is required to be filed ▶ AL, AR, AZ, CA, (CONTINUED ON SCHEDULE O) |
|---|---|
| **18** | Section 6104 requires an organization to make its Forms 1023 (1024 or 1024-A, if applicable), 990, and 990-T (Section 501(c) (3)s only) available for public inspection. Indicate how you made these available. Check all that apply. |
|  | ☐ Own website   ☐ Another's website   ☑ Upon request   ☐ Other *(explain on Schedule O)* |
| **19** | Describe on Schedule O whether (and if so, how) the organization made its governing documents, conflict of interest policy, and financial statements available to the public during the tax year. |
| **20** | State the name, address, and telephone number of the person who possesses the organization's books and records ▶ |
|  | CRAIG B. SPRAY, TREASURER, 11250 WAPLES MILL RD, FAIRFAX, VA 22030, (703) 267-1000 |

Form **990** (2019)

NATIONAL RIFLE ASSOCIATION OF AMERICA                                              **6**              11/18/2020 9:47:17 AM
53-0116130

Form 990 (2019)          Page **7**

| **Part VII** | Compensation of Officers, Directors, Trustees, Key Employees, Highest Compensated Employees, and Independent Contractors |
|---|---|

Check if Schedule O contains a response or note to any line in this Part VII . . . . . . . . . . . . . ☑

**Section A.  Officers, Directors, Trustees, Key Employees, and Highest Compensated Employees**

**1a** Complete this table for all persons required to be listed. Report compensation for the calendar year ending with or within the organization's tax year.

• List all of the organization's **current** officers, directors, trustees (whether individuals or organizations), regardless of amount of compensation. Enter -0- in columns (D), (E), and (F) if no compensation was paid.

• List all of the organization's **current** key employees, if any. See instructions for definition of "key employee."

• List the organization's five **current** highest compensated employees (other than an officer, director, trustee, or key employee) who received reportable compensation (Box 5 of Form W-2 and/or Box 7 of Form 1099-MISC) of more than $100,000 from the organization and any related organizations.

• List all of the organization's **former** officers, key employees, and highest compensated employees who received more than $100,000 of reportable compensation from the organization and any related organizations.

• List all of the organization's **former directors or trustees** that received, in the capacity as a former director or trustee of the organization, more than $10,000 of reportable compensation from the organization and any related organizations.

See instructions for the order in which to list the persons above.

☐ Check this box if neither the organization nor any related organization compensated any current officer, director, or trustee.

| (A) Name and title | (B) Average hours per week (list any hours for related organizations below dotted line) | (C) Position (do not check more than one box, unless person is both an officer and a director/trustee) | | | | | | (D) Reportable compensation from the organization (W-2/1099-MISC) | (E) Reportable compensation from related organizations (W-2/1099-MISC) | (F) Estimated amount of other compensation from the organization and related organizations |
|---|---|---|---|---|---|---|---|---|---|---|
| | | Individual trustee or director | Institutional trustee | Officer | Key employee | Highest compensated employee | Former | | | |
| **(1)** WAYNE R LAPIERRE | 60.0 | | | | | | | | | |
| EXECUTIVE VICE PRESIDENT | 1.0 | | | ✔ | | | | 1,810,571 | 0 | 74,138 |
| **(2)** CHRIS COX | 58.0 | | | | | | | | | |
| EXECUTIVE DIRECTOR ILA 6/26/2019 | 1.0 | | | ✔ | | | | 1,512,582 | 0 | 59,943 |
| **(3)** OLIVER L NORTH | 1.0 | | | | | | | | | |
| BOARD DIRECTOR | 1.0 | ✔ | | | | | | 986,015 | 0 | 0 |
| **(4)** JOSHUA L POWELL | 50.0 | | | | | | | | | |
| CHIEF OF STAFF AND SENIOR STRATEGIST | 0.0 | | | | | ✔ | | 858,930 | 0 | 76,151 |
| **(5)** CRAIG B SPRAY | 37.0 | | | | | | | | | |
| TREASURER | 13.0 | | | ✔ | | | | 805,711 | 0 | 70,027 |
| **(6)** TYLER SCHROPP | 50.0 | | | | | | | | | |
| EXECUTIVE DIRECTOR, ADVANCEMENT | 0.0 | | | | | ✔ | | 801,340 | 0 | 68,673 |
| **(7)** TODD GRABLE | 50.0 | | | | | | | | | |
| EXECUTIVE DIRECTOR, MEMBERSHIP | 0.0 | | | | ✔ | | | 636,832 | 0 | 65,109 |
| **(8)** DOUG HAMLIN | 50.0 | | | | | | | | | |
| EXECUTIVE DIRECTOR, PUBLICATIONS | 0.0 | | | | ✔ | | | 616,832 | 0 | 79,582 |
| **(9)** WILSON H PHILLIPS | 1.5 | | | | | | | | | |
| FORMER TREASURER 9/13/2018 | 0.0 | | | | | | ✔ | 659,386 | 0 | 4,985 |
| **(10)** DAVID LEHMAN | 50.0 | | | | | | | | | |
| DEPUTY EXECUTIVE DIRECTOR 9/13/2019 | 1.0 | | | | | ✔ | | 635,736 | 0 | 23,920 |
| **(11)** JOHN C FRAZER | 50.0 | | | | | | | | | |
| SECRETARY | 0.0 | | | ✔ | | | | 414,585 | 0 | 75,884 |
| **(12)** JOSEPH P DEBERGALIS, JR | 50.0 | | | | | | | | | |
| EXECUTIVE DIRECTOR GO | 0.0 | | | ✔ | | | | 422,340 | 0 | 54,016 |
| **(13)** JASON OUIMET | 40.0 | | | | | | | | | |
| EXECUTIVE DIRECTOR ILA | 1.0 | | | ✔ | | | | 397,104 | 0 | 65,164 |
| **(14)** THOMAS R TEDRICK | 30.0 | | | | | | | | | |
| MANAGING DIRECTOR FINANCE | 20.0 | | | | | ✔ | | 397,314 | 0 | 45,123 |

Form **990** (2019)

Form 990 (2019)

Page **8**

| Part VII | Section A. Officers, Directors, Trustees, Key Employees, and Highest Compensated Employees *(continued)* |

| (A)<br>Name and title | (B)<br>Average hours per week (list any hours for related organizations below dotted line) | (C)<br>Position (do not check more than one box, unless person is both an officer and a director/trustee) | | | | | | (D)<br>Reportable compensation from the organization (W-2/1099-MISC) | (E)<br>Reportable compensation from related organizations (W-2/1099-MISC) | (F)<br>Estimated amount of other compensation from the organization and related organizations |
|---|---|---|---|---|---|---|---|---|---|---|
| | | Individual trustee or director | Institutional trustee | Officer | Key employee | Highest compensated employee | Former | | | |
| **(15)** JOHN G PERREN | 37.5 | | | | | | | | | |
| SR. ADVISOR TO THE EVP | 0.0 | | | | | ✔ | | 359,906 | 0 | 12,296 |
| **(16)** ROBERT K WEAVER | 0.0 | | | | | | | | | |
| FORMER EXECUTIVE FORMER DIRECTOR GO 10/25/2016 | 0.0 | | | | | | ✔ | 240,000 | 0 | 0 |
| **(17)** MARION P HAMMER | 5.0 | | | | | | | | | |
| BOARD DIRECTOR | 0.0 | ✔ | | | | | | 220,350 | 0 | 0 |
| **(18)** DAVID A KEENE | 1.0 | | | | | | | | | |
| BOARD DIRECTOR | 0.0 | ✔ | | | | | | 57,592 | 0 | 0 |
| **(19)** TED NUGENT | 5.0 | | | | | | | | | |
| BOARD DIRECTOR | 0.0 | ✔ | | | | | | 45,474 | 0 | 0 |
| **(20)** DAVE BUTZ | 5.0 | | | | | | | | | |
| BOARD DIRECTOR | 0.0 | ✔ | | | | | | 21,000 | 0 | 0 |
| **(21)** JULIE GOLOB | 1.0 | | | | | | | | | |
| BOARD DIRECTOR 8/11/2019 | 0.0 | ✔ | | | | | | 16,119 | 0 | 0 |
| **(22)** LANCE OLSON | 5.0 | | | | | | | | | |
| BOARD DIRECTOR | 0.0 | ✔ | | | | | | 15,000 | 0 | 0 |
| **(23)** BART SKELTON | 1.0 | | | | | | | | | |
| BOARD DIRECTOR | 0.0 | ✔ | | | | | | 13,750 | 0 | 0 |
| **(24)** OWEN BUZ MILLS | 1.0 | | | | | | | | | |
| BOARD DIRECTOR | 0.0 | ✔ | | | | | | 6,852 | 0 | 0 |
| **(25)** (SEE STATEMENT) | | | | | | | | | | |

| | | | |
|---|---|---|---|---|---|
| **1b** Subtotal . . . . . . . . . . . . ▶ | 11,951,321 | 0 | 775,011 |
| **c** Total from continuation sheets to Part VII, Section A . . . . . ▶ | 2,465 | 0 | 0 |
| **d** Total (add lines 1b and 1c) . . . . . . . . . . ▶ | 11,953,786 | 0 | 775,011 |

**2** Total number of individuals (including but not limited to those listed above) who received more than $100,000 of reportable compensation from the organization ▶ 149

| | | Yes | No |
|---|---|---|---|
| **3** Did the organization list any **former** officer, director, trustee, key employee, or highest compensated employee on line 1a? *If "Yes," complete Schedule J for such individual* . . . . . . . . . . | **3** | ✔ | |
| **4** For any individual listed on line 1a, is the sum of reportable compensation and other compensation from the organization and related organizations greater than $150,000? *If "Yes," complete Schedule J for such individual* . . . . . . . . . . . . . . . . . . . . . . | **4** | ✔ | |
| **5** Did any person listed on line 1a receive or accrue compensation from any unrelated organization or individual for services rendered to the organization? *If "Yes," complete Schedule J for such person* . . . . . . | **5** | ✔ | |

### Section B. Independent Contractors

**1** Complete this table for your five highest compensated independent contractors that received more than $100,000 of compensation from the organization. Report compensation for the calendar year ending with or within the organization's tax year.

| (A)<br>Name and business address | (B)<br>Description of services | (C)<br>Compensation |
|---|---|---|
| BREWER ATTORNEYS AND COUNSELORS, 1717 MAIN ST, SUITE 5900, DALLAS, TX 75201 | LEGAL SERVICES | 24,789,326 |
| INFOCISION MANAGEMENT CORP, 325 SPRINGSIDE DR, AKRON, OH 44333 | MEMBERSHIP PROCESSING AND CONTROL | 21,723,870 |
| MEMBERSHIP MARKETING PARTNERS LLC, 11250 WAPLES MILL TD, SUITE 310, FAIRFAX, VA 22030 | FUNDRAISING PRINTING AND MAILING | 11,560,154 |
| VALTIM INC, 1095 VENTURE DR, FOREST, VA 24551 | FULFILLMENT CENTER | 8,957,907 |
| ACKERMAN MCQUEEN INC, 1601 NW EXPRESSWAY, OKLAHOMA CITY, OK 73118 | PUBLIC RELATIONS AND ADVERTISING | 7,317,206 |

**2** Total number of independent contractors (including but not limited to those listed above) who received more than $100,000 of compensation from the organization ▶ 141

Form **990** (2019)

NATIONAL RIFLE ASSOCIATION OF AMERICA
53-0116130

8

11/18/2020 9:47:17 AM

Form 990 (2019)                                                                                                                                 Page **9**

## Part VIII  Statement of Revenue

Check if Schedule O contains a response or note to any line in this Part VIII . . . . . . . . . . . . . ☑

| | | | (A) Total revenue | (B) Related or exempt function revenue | (C) Unrelated business revenue | (D) Revenue excluded from tax under sections 512–514 |
|---|---|---|---|---|---|---|
| **Contributions, Gifts, Grants and Other Similar Amounts** | **1a** Federated campaigns . . . . | **1a** | 0 | | | |
| | **b** Membership dues . . . . . | **1b** | 0 | | | |
| | **c** Fundraising events . . . . . | **1c** | 0 | | | |
| | **d** Related organizations . . . | **1d** | 13,703,287 | | | |
| | **e** Government grants (contributions) | **1e** | 0 | | | |
| | **f** All other contributions, gifts, grants, and similar amounts not included above | **1f** | 95,736,153 | | | |
| | **g** Noncash contributions included in lines 1a–1f . . . . . . . . | **1g** $ | 247,980 | | | |
| | **h** **Total.** Add lines 1a–1f . . . . . . . . . ▶ | | 109,439,440 | | | |
| **Program Service Revenue** | | Business Code | | | | |
| | **2a** MEMBER DUES | 813410 | 112,969,564 | 112,969,564 | 0 | 0 |
| | **b** PROGRAM FEES | 813410 | 21,042,172 | 21,042,172 | 0 | 0 |
| | **c** | | 0 | 0 | 0 | 0 |
| | **d** | | 0 | 0 | 0 | 0 |
| | **e** | | 0 | 0 | 0 | 0 |
| | **f** All other program service revenue . . | | 0 | 0 | 0 | 0 |
| | **g** **Total.** Add lines 2a–2f . . . . . . . . . ▶ | | 134,011,736 | | | |
| **Other Revenue** | **3** Investment income (including dividends, interest, and other similar amounts) . . . . . . ▶ | | 3,926,185 | 0 | 0 | 3,926,185 |
| | **4** Income from investment of tax-exempt bond proceeds ▶ | | 0 | 0 | 0 | 0 |
| | **5** Royalties . . . . . . . . . . . . ▶ | | 13,081,645 | 0 | 0 | 13,081,645 |
| | | | (i) Real | (ii) Personal | | |
| | **6a** Gross rents . . **6a** | | 1,317,211 | 0 | | |
| | **b** Less: rental expenses **6b** | | 1,941,872 | 0 | | |
| | **c** Rental income or (loss) **6c** | | (624,661) | 0 | | |
| | **d** Net rental income or (loss) . . . . . . . ▶ | | (624,661) | 0 | 0 | (624,661) |
| | | | (i) Securities | (ii) Other | | |
| | **7a** Gross amount from sales of assets other than inventory **7a** | | 6,722,597 | | | |
| | **b** Less: cost or other basis and sales expenses **7b** | | 5,613,022 | 0 | | |
| | **c** Gain or (loss) . . **7c** | | 1,109,575 | 0 | | |
| | **d** Net gain or (loss) . . . . . . . . . . ▶ | | 1,109,575 | 0 | | 1,109,575 |
| | **8a** Gross income from fundraising events (not including $ _____ 0 of contributions reported on line 1c). See Part IV, line 18 **8a** | | 758,465 | | | |
| | **b** Less: direct expenses . . . . **8b** | | 445,004 | | | |
| | **c** Net income or (loss) from fundraising events . . ▶ | | 313,461 | | 0 | 313,461 |
| | **9a** Gross income from gaming activities. See Part IV, line 19 **9a** | | 0 | | | |
| | **b** Less: direct expenses . . . . **9b** | | 0 | | | |
| | **c** Net income or (loss) from gaming activities . . ▶ | | 0 | 0 | 0 | 0 |
| | **10a** Gross sales of inventory, less returns and allowances . . . **10a** | | 8,838,051 | | | |
| | **b** Less: cost of goods sold . . . **10b** | | 3,585,126 | | | |
| | **c** Net income or (loss) from sales of inventory . . . ▶ | | 5,252,925 | 6,148,472 | (895,547) | 0 |
| **Miscellaneous Revenue** | | Business Code | | | | |
| | **11a** ADVERTISING | 541800 | 23,232,856 | 0 | 23,232,856 | 0 |
| | **b** OTHER UNRELATED BUSINESS ACTIVITY | 900004 | 281,433 | 0 | 281,433 | 0 |
| | **c** CAFE SALES | 722320 | 341,877 | | | 341,877 |
| | **d** All other revenue | 900009 | 788,992 | 788,992 | 0 | 0 |
| | **e** **Total.** Add lines 11a–11d . . . . . . . . . ▶ | | 24,645,158 | | | |
| | **12** **Total revenue.** See instructions . . . . . . ▶ | | 291,155,464 | 140,949,200 | 22,618,742 | 18,148,082 |

Form 990 (2019)                                                                                                    Page **10**

| Part IX | Statement of Functional Expenses |

*Section 501(c)(3) and 501(c)(4) organizations must complete all columns. All other organizations must complete column (A).*

Check if Schedule O contains a response or note to any line in this Part IX . . . . . . . . . . . . . . ☑

| Do not include amounts reported on lines 6b, 7b, 8b, 9b, and 10b of Part VIII. | (A)<br>Total expenses | (B)<br>Program service expenses | (C)<br>Management and general expenses | (D)<br>Fundraising expenses |
|---|---|---|---|---|
| **1** Grants and other assistance to domestic organizations and domestic governments. See Part IV, line 21 . | 12,000 | 12,000 | | |
| **2** Grants and other assistance to domestic individuals. See Part IV, line 22 . . . . . | 91,491 | 91,491 | | |
| **3** Grants and other assistance to foreign organizations, foreign governments, and foreign individuals. See Part IV, lines 15 and 16 | 0 | 0 | | |
| **4** Benefits paid to or for members . . . . | 0 | 0 | | |
| **5** Compensation of current officers, directors, trustees, and key employees . . . . . | 7,543,034 | 3,143,368 | 3,729,868 | 669,798 |
| **6** Compensation not included above to disqualified persons (as defined under section 4958(f)(1)) and persons described in section 4958(c)(3)(B) . . | 497,914 | 497,914 | 0 | 0 |
| **7** Other salaries and wages . . . . . . | 37,992,679 | 24,618,895 | 10,709,461 | 2,664,323 |
| **8** Pension plan accruals and contributions (include section 401(k) and 403(b) employer contributions) | 3,150,056 | 1,832,778 | 1,065,207 | 252,071 |
| **9** Other employee benefits . . . . . . | 4,806,782 | 3,084,252 | 1,337,884 | 384,646 |
| **10** Payroll taxes . . . . . . . . . | 2,749,860 | 1,764,436 | 765,377 | 220,047 |
| **11** Fees for services (nonemployees): | | | | |
| **a** Management . . . . . . . . . | 0 | 0 | 0 | 0 |
| **b** Legal . . . . . . . . . . . | 38,584,656 | 10,033,895 | 28,550,761 | |
| **c** Accounting . . . . . . . . . | 270,583 | 0 | 270,583 | |
| **d** Lobbying . . . . . . . . . . | 665,200 | 665,200 | 0 | 0 |
| **e** Professional fundraising services. See Part IV, line 17 | 5,269,873 | | | 5,269,873 |
| **f** Investment management fees . . . . | 205,442 | 0 | 205,442 | 0 |
| **g** Other. (If line 11g amount exceeds 10% of line 25, column (A) amount, list line 11g expenses on Schedule O.) . | 2,281,693 | 2,281,693 | 0 | 0 |
| **12** Advertising and promotion . . . . . | 26,147,357 | 18,894,976 | 0 | 7,252,381 |
| **13** Office expenses . . . . . . . . | 5,054,084 | 3,221,695 | 1,832,389 | 0 |
| **14** Information technology . . . . . . | 7,100,417 | 3,692,926 | 3,407,491 | 0 |
| **15** Royalties . . . . . . . . . . | 0 | 0 | 0 | 0 |
| **16** Occupancy . . . . . . . . . . | 1,757,002 | 968,459 | 788,543 | 0 |
| **17** Travel . . . . . . . . . . . | 7,017,420 | 5,285,695 | 1,731,725 | 0 |
| **18** Payments of travel or entertainment expenses for any federal, state, or local public officials | 0 | 0 | 0 | 0 |
| **19** Conferences, conventions, and meetings . | 6,758,731 | 5,031,745 | 1,726,986 | 0 |
| **20** Interest . . . . . . . . . . . | 1,689,348 | 904,181 | 785,167 | 0 |
| **21** Payments to affiliates . . . . . . | 0 | 0 | 0 | 0 |
| **22** Depreciation, depletion, and amortization . | 3,709,911 | 2,573,868 | 1,136,043 | 0 |
| **23** Insurance . . . . . . . . . . | 2,282,669 | 2,282,669 | 0 | 0 |
| **24** Other expenses. Itemize expenses not covered above (List miscellaneous expenses on line 24e. If line 24e amount exceeds 10% of line 25, column (A) amount, list line 24e expenses on Schedule O.) | | | | |
| **a** ADD'L MEMBER COMMUNICATIONS | 70,373,725 | 44,217,918 | 0 | 26,155,807 |
| **b** ADD'L TRAINING AND COMMUNICATIONS | 24,985,588 | 24,985,588 | | |
| **c** ADD'L PRINTING AND PUBLICATIONS | 23,378,939 | 23,378,939 | | |
| **d** ADD'L ILA LEGISLATIVE PROGRAM EXP | 5,752,450 | 5,752,450 | | |
| **e** All other expenses | 13,258,411 | 7,033,910 | 3,651,524 | 2,572,977 |
| **25** Total functional expenses. Add lines 1 through 24e | 303,387,315 | 196,250,941 | 61,694,451 | 45,441,923 |
| **26** **Joint costs.** Complete this line only if the organization reported in column (B) joint costs from a combined educational campaign and fundraising solicitation. Check here ► ☐ if following SOP 98-2 (ASC 958-720) . . . | 0 | 0 | 0 | 0 |

Form **990** (2019)

Form 990 (2019)                                                                                     Page **11**

## Part X | Balance Sheet

Check if Schedule O contains a response or note to any line in this Part X . . . . . . . . . . . ☑

| | | | (A) Beginning of year | | (B) End of year |
|---|---|---|---|---|---|
| **Assets** | 1 | Cash—non-interest-bearing . . . . . . . . . . . . | 0 | **1** | 0 |
| | 2 | Savings and temporary cash investments . . . . . . . . | 23,937,821 | **2** | 23,935,152 |
| | 3 | Pledges and grants receivable, net . . . . . . . . . . | 841,562 | **3** | 932,766 |
| | 4 | Accounts receivable, net . . . . . . . . . . . . | 41,458,041 | **4** | 31,138,285 |
| | 5 | Loans and other receivables from any current or former officer, director, trustee, key employee, creator or founder, substantial contributor, or 35% controlled entity or family member of any of these persons . . . | 0 | **5** | 0 |
| | 6 | Loans and other receivables from other disqualified persons (as defined under section 4958(f)(1)), and persons described in section 4958(c)(3)(B) . | 0 | **6** | 0 |
| | 7 | Notes and loans receivable, net . . . . . . . . . . | 6,639,073 | **7** | 8,479,327 |
| | 8 | Inventories for sale or use . . . . . . . . . . . | 10,632,177 | **8** | 11,716,358 |
| | 9 | Prepaid expenses and deferred charges . . . . . . . . | 3,179,694 | **9** | 2,887,414 |
| | 10a | Land, buildings, and equipment: cost or other basis. Complete Part VI of Schedule D . . . **10a** 80,004,902 | | | |
| | b | Less: accumulated depreciation . . . **10b** 49,947,784 | 32,709,031 | **10c** | 30,057,118 |
| | 11 | Investments—publicly traded securities . . . . . . . . | 44,066,394 | **11** | 52,490,847 |
| | 12 | Investments—other securities. See Part IV, line 11 . . . . | 871,077 | **12** | 543,604 |
| | 13 | Investments—program-related. See Part IV, line 11 . . . . | 0 | **13** | 0 |
| | 14 | Intangible assets . . . . . . . . . . . . . . | 0 | **14** | 0 |
| | 15 | Other assets. See Part IV, line 11 . . . . . . . . . | 32,877,210 | **15** | 36,565,881 |
| | 16 | **Total assets.** Add lines 1 through 15 (must equal line 33) . . . . | 197,212,080 | **16** | 198,746,752 |
| **Liabilities** | 17 | Accounts payable and accrued expenses . . . . . . . . | 84,837,717 | **17** | 83,446,471 |
| | 18 | Grants payable . . . . . . . . . . . . . . . | 0 | **18** | 0 |
| | 19 | Deferred revenue . . . . . . . . . . . . . . | 46,580,520 | **19** | 47,257,288 |
| | 20 | Tax-exempt bond liabilities . . . . . . . . . . . | 0 | **20** | 0 |
| | 21 | Escrow or custodial account liability. Complete Part IV of Schedule D . | 0 | **21** | 0 |
| | 22 | Loans and other payables to any current or former officer, director, trustee, key employee, creator or founder, substantial contributor, or 35% controlled entity or family member of any of these persons . . . . | 0 | **22** | 0 |
| | 23 | Secured mortgages and notes payable to unrelated third parties . . | 43,138,412 | **23** | 52,320,718 |
| | 24 | Unsecured notes and loans payable to unrelated third parties . . . . | 0 | **24** | 0 |
| | 25 | Other liabilities (including federal income tax, payables to related third parties, and other liabilities not included on lines 17–24). Complete Part X of Schedule D . . . . . . . . . . . . . . | 6,623,905 | **25** | 6,068,118 |
| | 26 | **Total liabilities.** Add lines 17 through 25 . . . . . . . . | 181,180,554 | **26** | 189,092,595 |
| **Net Assets or Fund Balances** | | **Organizations that follow FASB ASC 958, check here ▶** ☑ **and complete lines 27, 28, 32, and 33.** | | | |
| | 27 | Net assets without donor restrictions . . . . . . . . | (36,276,779) | **27** | (49,641,823) |
| | 28 | Net assets with donor restrictions . . . . . . . . . | 52,308,305 | **28** | 59,295,980 |
| | | **Organizations that do not follow FASB ASC 958, check here ▶** ☐ **and complete lines 29 through 33.** | | | |
| | 29 | Capital stock or trust principal, or current funds . . . . . | | **29** | |
| | 30 | Paid-in or capital surplus, or land, building, or equipment fund . . . | | **30** | |
| | 31 | Retained earnings, endowment, accumulated income, or other funds . . | | **31** | |
| | 32 | Total net assets or fund balances . . . . . . . . . | 16,031,526 | **32** | 9,654,157 |
| | 33 | Total liabilities and net assets/fund balances . . . . . . . | 197,212,080 | **33** | 198,746,752 |

Form **990** (2019)

Form 990 (2019)                                                                              Page **12**

## Part XI   Reconciliation of Net Assets

Check if Schedule O contains a response or note to any line in this Part XI . . . . . . . . . . . ☑

| | | | |
|---|---|---|---|
| 1 | Total revenue (must equal Part VIII, column (A), line 12) . . . . . . . . . . | **1** | 291,155,464 |
| 2 | Total expenses (must equal Part IX, column (A), line 25) . . . . . . . . . . | **2** | 303,387,315 |
| 3 | Revenue less expenses. Subtract line 2 from line 1 . . . . . . . . . . . | **3** | (12,231,851) |
| 4 | Net assets or fund balances at beginning of year (must equal Part X, line 32, column (A)) . . . | **4** | 16,031,526 |
| 5 | Net unrealized gains (losses) on investments . . . . . . . . . . . | **5** | 6,605,046 |
| 6 | Donated services and use of facilities . . . . . . . . . . . . | **6** | 0 |
| 7 | Investment expenses . . . . . . . . . . . . . . . . | **7** | 0 |
| 8 | Prior period adjustments . . . . . . . . . . . . . . . | **8** | 0 |
| 9 | Other changes in net assets or fund balances (explain on Schedule O) . . . . . . . . | **9** | (750,564) |
| 10 | Net assets or fund balances at end of year. Combine lines 3 through 9 (must equal Part X, line 32, column (B)) . . . . . . . . . . . . . . . . . . | **10** | 9,654,157 |

## Part XII   Financial Statements and Reporting

Check if Schedule O contains a response or note to any line in this Part XII . . . . . . . . . . . ☐

| | | Yes | No |
|---|---|---|---|
| 1 | Accounting method used to prepare the Form 990: ☐ Cash  ☑ Accrual  ☐ Other _____ | | |
| | If the organization changed its method of accounting from a prior year or checked "Other," explain in Schedule O. | | |
| 2a | Were the organization's financial statements compiled or reviewed by an independent accountant? . . .  **2a** | | ✔ |
| | If "Yes," check a box below to indicate whether the financial statements for the year were compiled or reviewed on a separate basis, consolidated basis, or both: | | |
| | ☐ Separate basis   ☐ Consolidated basis   ☐ Both consolidated and separate basis | | |
| b | Were the organization's financial statements audited by an independent accountant? . . . . . . .  **2b** | ✔ | |
| | If "Yes," check a box below to indicate whether the financial statements for the year were audited on a separate basis, consolidated basis, or both: | | |
| | ☐ Separate basis   ☐ Consolidated basis   ☑ Both consolidated and separate basis | | |
| c | If "Yes" to line 2a or 2b, does the organization have a committee that assumes responsibility for oversight of the audit, review, or compilation of its financial statements and selection of an independent accountant? .  **2c** | ✔ | |
| | If the organization changed either its oversight process or selection process during the tax year, explain on Schedule O. | | |
| 3a | As a result of a federal award, was the organization required to undergo an audit or audits as set forth in the Single Audit Act and OMB Circular A-133? . . . . . . . . . . . . . . . . .  **3a** | | ✔ |
| b | If "Yes," did the organization undergo the required audit or audits? If the organization did not undergo the required audit or audits, explain why on Schedule O and describe any steps taken to undergo such audits .  **3b** | | |

Form **990** (2019)

**Part VII** | Section A. Officers, Directors, Trustees, Key Employees, and Highest Compensated Employees  (continued)

| (A) Name and Title | (B) Average hours per week (list any hours for related organizations below dotted line) | (C) Position (Check all that apply) | | | | | | (D) Reportable compensation from the organization (W-2/1099-MISC) | (E) Reportable compensation from related organizations (W-2/1099-MISC) | (F) Estimated amount of other compensation from the organization and related organizations |
|---|---|---|---|---|---|---|---|---|---|---|
| | | Individual trustee or director | Institutional trustee | Officer | Key employee | Highest compensated employee | Former | | | |
| (25) CARRIE LIGHTFOOT | 1.0 | ✓ | | | | | | 1,666 | 0 | 0 |
| BOARD DIRECTOR | 0.0 | | | | | | | | | |
| (26) PETE R BROWNELL | 1.0 | ✓ | | | | | | 527 | 0 | 0 |
| BOARD DIRECTOR 05/29/2019 | 1.0 | | | | | | | | | |
| (27) SCOTT L BACH | 1.0 | ✓ | | | | | | 236 | 0 | 0 |
| BOARD DIRECTOR | 1.0 | | | | | | | | | |
| (28) CHARLES L COTTON | 1.0 | ✓ | | ✓ | | | | 18 | 0 | 0 |
| 1ST VICE PRESIDENT | 1.0 | | | | | | | | | |
| (29) LINDA L WALKER | 1.0 | ✓ | | | | | | 18 | 0 | 0 |
| BOARD DIRECTOR | 0.0 | | | | | | | | | |
| (30) CAROLYN D MEADOWS | 10.0 | ✓ | | ✓ | | | | 0 | 0 | 0 |
| PRESIDENT | 1.0 | | | | | | | | | |
| (31) WILLES K LEE | 1.0 | ✓ | | ✓ | | | | 0 | 0 | 0 |
| 2ND VICE PRESIDENT | 0.0 | | | | | | | | | |
| (32) ALLAN D CORS | 1.0 | ✓ | | | | | | 0 | 0 | 0 |
| BOARD DIRECTOR | 0.0 | | | | | | | | | |
| (33) ALLEN B WEST | 1.0 | ✓ | | | | | | 0 | 0 | 0 |
| BOARD DIRECTOR | 0.0 | | | | | | | | | |
| (34) ANTHONY P COLANDRO | 1.0 | ✓ | | | | | | 0 | 0 | 0 |
| BOARD DIRECTOR | 0.0 | | | | | | | | | |
| (35) BILL MILLER | 1.0 | ✓ | | | | | | 0 | 0 | 0 |
| BOARD DIRECTOR | 0.0 | | | | | | | | | |
| (36) BLAINE WADE | 1.0 | ✓ | | | | | | 0 | 0 | 0 |
| BOARD DIRECTOR | 0.0 | | | | | | | | | |
| (37) BOB BARR | 1.0 | ✓ | | | | | | 0 | 0 | 0 |
| BOARD DIRECTOR | 0.0 | | | | | | | | | |
| (38) CARL T ROWAN, JR | 1.0 | ✓ | | | | | | 0 | 0 | 0 |
| BOARD DIRECTOR | 0.0 | | | | | | | | | |
| (39) CAROL FRAMPTON | 1.0 | ✓ | | | | | | 0 | 0 | 0 |
| BOARD DIRECTOR | 1.0 | | | | | | | | | |
| (40) CLEL BAUDLER | 1.0 | ✓ | | | | | | 0 | 0 | 0 |
| BOARD DIRECTOR | 0.0 | | | | | | | | | |
| (41) CRAIG MORGAN | 1.0 | ✓ | | | | | | 0 | 0 | 0 |
| BOARD DIRECTOR 8/19/2019 | 0.0 | | | | | | | | | |
| (42) CURTIS S JENKINS | 1.0 | ✓ | | | | | | 0 | 0 | 0 |
| BOARD DIRECTOR | 1.0 | | | | | | | | | |
| (43) DAN BOREN | 1.0 | ✓ | | | | | | 0 | 0 | 0 |
| BOARD DIRECTOR 11/1/2019 | 0.0 | | | | | | | | | |
| (44) DAVID G COY | 1.0 | ✓ | | | | | | 0 | 0 | 0 |
| BOARD DIRECTOR | 0.0 | | | | | | | | | |

| (A) Name and Title | (B) Average hours per week (list any hours for related organizations below dotted line) | (C) Position (Check all that apply) | | | | | | (D) Reportable compensation from the organization (W-2/1099-MISC) | (E) Reportable compensation from related organizations (W-2/1099-MISC) | (F) Estimated amount of other compensation from the organization and related organizations |
|---|---|---|---|---|---|---|---|---|---|---|
| | | Individual trustee or director | Institutional trustee | Officer | Key employee | Highest compensated employee | Former | | | |
| (45) DEAN CAIN | 1.0 | ✓ | | | | | | | | |
| BOARD DIRECTOR | 0.0 | | | | | | | 0 | 0 | 0 |
| (46) DON SABA | 1.0 | ✓ | | | | | | | | |
| BOARD DIRECTOR | 0.0 | | | | | | | 0 | 0 | 0 |
| (47) DONALD E YOUNG | 1.0 | ✓ | | | | | | | | |
| BOARD DIRECTOR | 0.0 | | | | | | | 0 | 0 | 0 |
| (48) DR. JOHN THODOS | 1.0 | ✓ | | | | | | | | |
| BOARD DIRECTOR 10/4/2019 | 0.0 | | | | | | | 0 | 0 | 0 |
| (49) DUANE LIPTAK, JR | 1.0 | ✓ | | | | | | | | |
| BOARD DIRECTOR | 0.0 | | | | | | | 0 | 0 | 0 |
| (50) DWIGHT D VAN HORN | 1.0 | ✓ | | | | | | | | |
| BOARD DIRECTOR | 1.0 | | | | | | | 0 | 0 | 0 |
| (51) EDIE P FLEEMAN | 1.0 | ✓ | | | | | | | | |
| BOARD DIRECTOR | 0.0 | | | | | | | 0 | 0 | 0 |
| (52) ESTHER SCHNEIDER | 1.0 | ✓ | | | | | | | | |
| BOARD DIRECTOR 8/1/2019 | 0.0 | | | | | | | 0 | 0 | 0 |
| (53) GRAHAM HILL | 1.0 | ✓ | | | | | | | | |
| BOARD DIRECTOR | 1.0 | | | | | | | 0 | 0 | 0 |
| (54) HEIDI E WASHINGTON | 1.0 | ✓ | | | | | | | | |
| BOARD DIRECTOR | 0.0 | | | | | | | 0 | 0 | 0 |
| (55) HERBERT A LANFORD, JR | 1.0 | ✓ | | | | | | | | |
| BOARD DIRECTOR | 0.0 | | | | | | | 0 | 0 | 0 |
| (56) HOWARD J WALTER | 1.0 | ✓ | | | | | | | | |
| BOARD DIRECTOR | 0.0 | | | | | | | 0 | 0 | 0 |
| (57) IL LING NEW | 1.0 | ✓ | | | | | | | | |
| BOARD DIRECTOR | 0.0 | | | | | | | 0 | 0 | 0 |
| (58) J. KENNETH BLACKWELL | 1.0 | ✓ | | | | | | | | |
| BOARD DIRECTOR | 0.0 | | | | | | | 0 | 0 | 0 |
| (59) JAMES W PORTER II | 1.0 | ✓ | | | | | | | | |
| BOARD DIRECTOR | 2.0 | | | | | | | 0 | 0 | 0 |
| (60) JAY PRINTZ | 1.0 | ✓ | | | | | | | | |
| BOARD DIRECTOR | 0.0 | | | | | | | 0 | 0 | 0 |
| (61) JOE M ALLBAUGH | 1.0 | ✓ | | | | | | | | |
| BOARD DIRECTOR | 0.0 | | | | | | | 0 | 0 | 0 |
| (62) JOEL FRIEDMAN | 1.0 | ✓ | | | | | | | | |
| BOARD DIRECTOR | 1.0 | | | | | | | 0 | 0 | 0 |
| (63) JOHN C SIGLER | 1.0 | ✓ | | | | | | | | |
| BOARD DIRECTOR | 1.0 | | | | | | | 0 | 0 | 0 |
| (64) JOHN L CUSHMAN | 1.0 | ✓ | | | | | | | | |
| BOARD DIRECTOR 4/27/2019 | 0.0 | | | | | | | 0 | 0 | 0 |
| (65) JOHNNY NUGENT | 1.0 | ✓ | | | | | | | | |
| BOARD DIRECTOR | 0.0 | | | | | | | 0 | 0 | 0 |

| (A) Name and Title | (B) Average hours per week (list any hours for related organizations below dotted line) | (C) Position (Check all that apply) | | | | | | (D) Reportable compensation from the organization (W-2/1099-MISC) | (E) Reportable compensation from related organizations (W-2/1099-MISC) | (F) Estimated amount of other compensation from the organization and related organizations |
|---|---|---|---|---|---|---|---|---|---|---|
| | | Individual trustee or director | Institutional trustee | Officer | Key employee | Highest compensated employee | Former | | | |
| (66) KARL A MALONE | 1.0 | ✔ | | | | | | | | |
| BOARD DIRECTOR | 0.0 | | | | | | | 0 | 0 | 0 |
| (67) KEVIN HOGAN | 1.0 | ✔ | | | | | | | | |
| BOARD DIRECTOR | 0.0 | | | | | | | 0 | 0 | 0 |
| (68) KIM RHODE | 1.0 | ✔ | | | | | | | | |
| BOARD DIRECTOR | 0.0 | | | | | | | 0 | 0 | 0 |
| (69) KRISTY TITUS | 1.0 | ✔ | | | | | | | | |
| BOARD DIRECTOR | 0.0 | | | | | | | 0 | 0 | 0 |
| (70) LARRY E CRAIG | 1.0 | ✔ | | | | | | | | |
| BOARD DIRECTOR | 0.0 | | | | | | | 0 | 0 | 0 |
| (71) LEROY SISCO | 1.0 | ✔ | | | | | | | | |
| BOARD DIRECTOR | 0.0 | | | | | | | 0 | 0 | 0 |
| (72) MARIA HEIL | 1.0 | ✔ | | | | | | | | |
| BOARD DIRECTOR | 0.0 | | | | | | | 0 | 0 | 0 |
| (73) MARK E VAUGHAN | 1.0 | ✔ | | | | | | | | |
| BOARD DIRECTOR | 0.0 | | | | | | | 0 | 0 | 0 |
| (74) MARK GEIST | 1.0 | ✔ | | | | | | | | |
| BOARD DIRECTOR | 0.0 | | | | | | | 0 | 0 | 0 |
| (75) MARK ROBINSON | 1.0 | ✔ | | | | | | | | |
| BOARD DIRECTOR | 0.0 | | | | | | | 0 | 0 | 0 |
| (76) MATT BLUNT | 1.0 | ✔ | | | | | | | | |
| BOARD DIRECTOR | 0.0 | | | | | | | 0 | 0 | 0 |
| (77) MELANIE PEPPER | 1.0 | ✔ | | | | | | | | |
| BOARD DIRECTOR | 0.0 | | | | | | | 0 | 0 | 0 |
| (78) PATRICIA A CLARK | 1.0 | ✔ | | | | | | | | |
| BOARD DIRECTOR | 0.0 | | | | | | | 0 | 0 | 0 |
| (79) PAUL D BABAZ | 1.0 | ✔ | | | | | | | | |
| BOARD DIRECTOR | 0.0 | | | | | | | 0 | 0 | 0 |
| (80) RICHARD R CHILDRESS | 1.0 | ✔ | | | | | | | | |
| BOARD DIRECTOR 8/19/2019 | 1.0 | | | | | | | 0 | 0 | 0 |
| (81) RICK S FIGUEROA | 1.0 | ✔ | | | | | | | | |
| BOARD DIRECTOR | 0.0 | | | | | | | 0 | 0 | 0 |
| (82) ROBERT A NOSLER | 1.0 | ✔ | | | | | | | | |
| BOARD DIRECTOR | 2.0 | | | | | | | 0 | 0 | 0 |
| (83) ROBERT E MANSELL | 1.0 | ✔ | | | | | | | | |
| BOARD DIRECTOR | 0.0 | | | | | | | 0 | 0 | 0 |
| (84) ROBERT K BROWN | 1.0 | ✔ | | | | | | | | |
| BOARD DIRECTOR | 1.0 | | | | | | | 0 | 0 | 0 |
| (85) RONALD L SCHMEITS | 1.0 | ✔ | | | | | | | | |
| BOARD DIRECTOR | 1.0 | | | | | | | 0 | 0 | 0 |
| (86) RONNIE G BARRETT | 1.0 | ✔ | | | | | | | | |
| BOARD DIRECTOR | 0.0 | | | | | | | 0 | 0 | 0 |

| (A) Name and Title | (B) Average hours per week (list any hours for related organizations below dotted line) | (C) Position (Check all that apply) | | | | | | (D) Reportable compensation from the organization (W-2/1099-MISC) | (E) Reportable compensation from related organizations (W-2/1099-MISC) | (F) Estimated amount of other compensation from the organization and related organizations |
|---|---|---|---|---|---|---|---|---|---|---|
| | | Individual trustee or director | Institutional trustee | Officer | Key employee | Highest compensated employee | Former | | | |
| (87) SANDRA S FROMAN | 5.0 | ✔ | | | | | | | | |
| BOARD DIRECTOR | 0.0 | | | | | | | 0 | 0 | 0 |
| (88) SEAN MALONEY | 1.0 | ✔ | | | | | | | | |
| BOARD DIRECTOR 8/1/2019 | 0.0 | | | | | | | 0 | 0 | 0 |
| (89) STEVEN C SCHREINER | 1.0 | ✔ | | | | | | | | |
| BOARD DIRECTOR | 0.0 | | | | | | | 0 | 0 | 0 |
| (90) SUSAN HOWARD | 1.0 | ✔ | | | | | | | | |
| BOARD DIRECTOR | 1.0 | | | | | | | 0 | 0 | 0 |
| (91) TED W CARTER | 1.0 | ✔ | | | | | | | | |
| BOARD DIRECTOR | 0.0 | | | | | | | 0 | 0 | 0 |
| (92) THOMAS P ARVAS | 1.0 | ✔ | | | | | | | | |
| BOARD DIRECTOR | 1.0 | | | | | | | 0 | 0 | 0 |
| (93) TIMOTHY KNIGHT | 1.0 | ✔ | | | | | | | | |
| BOARD DIRECTOR 8/1/2019 | 0.0 | | | | | | | 0 | 0 | 0 |
| (94) TODD J RATHNER | 1.0 | ✔ | | | | | | | | |
| BOARD DIRECTOR | 0.0 | | | | | | | 0 | 0 | 0 |
| (95) TOM KING | 1.0 | ✔ | | | | | | | | |
| BOARD DIRECTOR | 2.0 | | | | | | | 0 | 0 | 0 |
| (96) WAYNE ANTHONY ROSS | 1.0 | ✔ | | | | | | | | |
| BOARD DIRECTOR | 0.0 | | | | | | | 0 | 0 | 0 |
| (97) WILLIAM A BACHENBERG | 1.0 | ✔ | | | | | | | | |
| BOARD DIRECTOR | 1.0 | | | | | | | 0 | 0 | 0 |
| (98) WILLIAM H SATTERFIELD | 1.0 | ✔ | | | | | | | | |
| BOARD DIRECTOR | 2.0 | | | | | | | 0 | 0 | 0 |

| SCHEDULE C | **Political Campaign and Lobbying Activities** | OMB No. 1545-0047 |
|---|---|---|
| (Form 990 or 990-EZ) | | **20 19** |

<div align="center">

For Organizations Exempt From Income Tax Under section 501(c) and section 527
► **Complete if the organization is described below.**  ► **Attach to Form 990 or Form 990-EZ.**
► **Go to www.irs.gov/Form990 for instructions and the latest information.**

</div>

Department of the Treasury
Internal Revenue Service

**Open to Public Inspection**

**If the organization answered "Yes," on Form 990, Part IV, line 3, or Form 990-EZ, Part V, line 46 (Political Campaign Activities), then**

- Section 501(c)(3) organizations: Complete Parts I-A and B. Do not complete Part I-C.
- Section 501(c) (other than section 501(c)(3)) organizations: Complete Parts I-A and C below. Do not complete Part I-B.
- Section 527 organizations: Complete Part I-A only.

**If the organization answered "Yes," on Form 990, Part IV, line 4, or Form 990-EZ, Part VI, line 47 (Lobbying Activities), then**

- Section 501(c)(3) organizations that have filed Form 5768 (election under section 501(h)): Complete Part II-A. Do not complete Part II-B.
- Section 501(c)(3) organizations that have NOT filed Form 5768 (election under section 501(h)): Complete Part II-B. Do not complete Part II-A.

**If the organization answered "Yes," on Form 990, Part IV, line 5 (Proxy Tax) (see separate instructions) or Form 990-EZ, Part V, line 35c (Proxy Tax) (see separate instructions), then**

- Section 501(c)(4), (5), or (6) organizations: Complete Part III.

| Name of organization | Employer identification number |
|---|---|
| NATIONAL RIFLE ASSOCIATION OF AMERICA | 53-0116130 |

**Part I-A**     Complete if the organization is exempt under section 501(c) or is a section 527 organization.

**1** Provide a description of the organization's direct and indirect political campaign activities in Part IV. (see instructions for definition of "political campaign activities")

**2** Political campaign activity expenditures (see instructions) . . . . . . . . . . . ► $      2,971,894

**3** Volunteer hours for political campaign activities (see instructions)    5,348

**Part I-B**     Complete if the organization is exempt under section 501(c)(3).

**1** Enter the amount of any excise tax incurred by the organization under section 4955 . . . . ► $ _____

**2** Enter the amount of any excise tax incurred by organization managers under section 4955 . . ► $ _____

**3** If the organization incurred a section 4955 tax, did it file Form 4720 for this year? . . . . . . . . . ☐ Yes ☐ No

**4a** Was a correction made? . . . . . . . . . . . . . . . . . . . . . . . . . . . ☐ Yes ☐ No

  **b** If "Yes," describe in Part IV.

**Part I-C**     Complete if the organization is exempt under section 501(c), except section 501(c)(3).

**1** Enter the amount directly expended by the filing organization for section 527 exempt function activities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ► $    0

**2** Enter the amount of the filing organization's funds contributed to other organizations for section 527 exempt function activities . . . . . . . . . . . . . . . . . . . . . . ► $    0

**3** Total exempt function expenditures. Add lines 1 and 2. Enter here and on Form 1120-POL, line 17b . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ► $    0

**4** Did the filing organization file **Form 1120-POL** for this year? . . . . . . . . . . . . . ☑ Yes ☐ No

**5** Enter the names, addresses and employer identification number (EIN) of all section 527 political organizations to which the filing organization made payments. For each organization listed, enter the amount paid from the filing organization's funds. Also enter the amount of political contributions received that were promptly and directly delivered to a separate political organization, such as a separate segregated fund or a political action committee (PAC). If additional space is needed, provide information in Part IV.

| (a) Name | (b) Address | (c) EIN | (d) Amount paid from filing organization's funds. If none, enter -0-. | (e) Amount of political contributions received and promptly and directly delivered to a separate political organization. If none, enter -0-. |
|---|---|---|---|---|
| **(1)** (SEE STATEMENT) | | | | |
| **(2)** | | | | |
| **(3)** | | | | |
| **(4)** | | | | |
| **(5)** | | | | |
| **(6)** | | | | |

For Paperwork Reduction Act Notice, see the Instructions for Form 990 or 990-EZ.     Cat. No. 50084S     **Schedule C (Form 990 or 990-EZ) 2019**

Schedule C (Form 990 or 990-EZ) 2019                                                            Page **2**

**Part II-A**    **Complete if the organization is exempt under section 501(c)(3) and filed Form 5768 (election under section 501(h)).**

**A**   Check ▶ ☐ if the filing organization belongs to an affiliated group (and list in Part IV each affiliated group member's name, address, EIN, expenses, and share of excess lobbying expenditures).

**B**   Check ▶ ☐ if the filing organization checked box A and "limited control" provisions apply.

| | Limits on Lobbying Expenditures<br>(The term "expenditures" means amounts paid or incurred.) | (a) Filing organization's totals | (b) Affiliated group totals |
|---|---|---|---|
| **1a** | Total lobbying expenditures to influence public opinion (grassroots lobbying) . . . . | | |
| **b** | Total lobbying expenditures to influence a legislative body (direct lobbying) . . . . . | | |
| **c** | Total lobbying expenditures (add lines 1a and 1b) . . . . . . . . . . . | | |
| **d** | Other exempt purpose expenditures . . . . . . . . . . . . . . . | | |
| **e** | Total exempt purpose expenditures (add lines 1c and 1d) . . . . . . . . . . | | |
| **f** | Lobbying nontaxable amount. Enter the amount from the following table in both columns. | | |

| If the amount on line 1e, column (a) or (b) is: | The lobbying nontaxable amount is: | | |
|---|---|---|---|
| Not over $500,000 | 20% of the amount on line 1e. | | |
| Over $500,000 but not over $1,000,000 | $100,000 plus 15% of the excess over $500,000. | | |
| Over $1,000,000 but not over $1,500,000 | $175,000 plus 10% of the excess over $1,000,000. | | |
| Over $1,500,000 but not over $17,000,000 | $225,000 plus 5% of the excess over $1,500,000. | | |
| Over $17,000,000 | $1,000,000. | | |

| | | (a) | (b) |
|---|---|---|---|
| **g** | Grassroots nontaxable amount (enter 25% of line 1f) . . . . . . . . . . . | | |
| **h** | Subtract line 1g from line 1a. If zero or less, enter -0- . . . . . . . . . . | | |
| **i** | Subtract line 1f from line 1c. If zero or less, enter -0- . . . . . . . . . . | | |
| **j** | If there is an amount other than zero on either line 1h or line 1i, did the organization file Form 4720 reporting section 4911 tax for this year? . . . . . . . . . . . . . . . ☐ Yes ☐ No | | |

**4-Year Averaging Period Under Section 501(h)**
**(Some organizations that made a section 501(h) election do not have to complete all of the five columns below.**
**See the separate instructions for lines 2a through 2f.)**

**Lobbying Expenditures During 4-Year Averaging Period**

| Calendar year (or fiscal year beginning in) | (a) 2016 | (b) 2017 | (c) 2018 | (d) 2019 | (e) Total |
|---|---|---|---|---|---|
| **2a** Lobbying nontaxable amount | | | | | |
| **b** Lobbying ceiling amount (150% of line 2a, column (e)) | | | | | |
| **c** Total lobbying expenditures | | | | | |
| **d** Grassroots nontaxable amount | | | | | |
| **e** Grassroots ceiling amount (150% of line 2d, column (e)) | | | | | |
| **f** Grassroots lobbying expenditures | | | | | |

**Schedule C (Form 990 or 990-EZ) 2019**

Schedule C (Form 990 or 990-EZ) 2019                                                                   **Page 3**

**Part II-B**   **Complete if the organization is exempt under section 501(c)(3) and has NOT filed Form 5768 (election under section 501(h)).**

*For each "Yes" response on lines 1a through 1i below, provide in Part IV a detailed description of the lobbying activity.*

|  |  | (a) Yes | (a) No | (b) Amount |
|---|---|---|---|---|
| **1** | During the year, did the filing organization attempt to influence foreign, national, state, or local legislation, including any attempt to influence public opinion on a legislative matter or referendum, through the use of: |  |  |  |
| **a** | Volunteers? |  |  |  |
| **b** | Paid staff or management (include compensation in expenses reported on lines 1c through 1i)? |  |  |  |
| **c** | Media advertisements? |  |  |  |
| **d** | Mailings to members, legislators, or the public? |  |  |  |
| **e** | Publications, or published or broadcast statements? |  |  |  |
| **f** | Grants to other organizations for lobbying purposes? |  |  |  |
| **g** | Direct contact with legislators, their staffs, government officials, or a legislative body? |  |  |  |
| **h** | Rallies, demonstrations, seminars, conventions, speeches, lectures, or any similar means? |  |  |  |
| **i** | Other activities? |  |  |  |
| **j** | Total. Add lines 1c through 1i |  |  |  |
| **2a** | Did the activities in line 1 cause the organization to be not described in section 501(c)(3)? |  |  |  |
| **b** | If "Yes," enter the amount of any tax incurred under section 4912 |  |  |  |
| **c** | If "Yes," enter the amount of any tax incurred by organization managers under section 4912 |  |  |  |
| **d** | If the filing organization incurred a section 4912 tax, did it file Form 4720 for this year? |  |  |  |

**Part III-A**   **Complete if the organization is exempt under section 501(c)(4), section 501(c)(5), or section 501(c)(6).**

|  |  |  | Yes | No |
|---|---|---|---|---|
| **1** | Were substantially all (90% or more) dues received nondeductible by members? | **1** | ✔ |  |
| **2** | Did the organization make only in-house lobbying expenditures of $2,000 or less? | **2** |  | ✔ |
| **3** | Did the organization agree to carry over lobbying and political campaign activity expenditures from the prior year? | **3** |  | ✔ |

**Part III-B**   **Complete if the organization is exempt under section 501(c)(4), section 501(c)(5), or section 501(c)(6) and if either (a) BOTH Part III-A, lines 1 and 2, are answered "No" OR (b) Part III-A, line 3, is answered "Yes."**

|  |  |  |  |
|---|---|---|---|
| **1** | Dues, assessments and similar amounts from members | **1** |  |
| **2** | Section 162(e) nondeductible lobbying and political expenditures (do not include amounts of political expenses for which the section 527(f) tax was paid). |  |  |
| **a** | Current year | **2a** |  |
| **b** | Carryover from last year | **2b** |  |
| **c** | Total | **2c** |  |
| **3** | Aggregate amount reported in section 6033(e)(1)(A) notices of nondeductible section 162(e) dues | **3** |  |
| **4** | If notices were sent and the amount on line 2c exceeds the amount on line 3, what portion of the excess does the organization agree to carryover to the reasonable estimate of nondeductible lobbying and political expenditure next year? | **4** |  |
| **5** | Taxable amount of lobbying and political expenditures (see instructions) | **5** |  |

**Part IV**   **Supplemental Information**

Provide the descriptions required for Part I-A, line 1; Part I-B, line 4; Part I-C, line 5; Part II-A (affiliated group list); Part II-A, lines 1 and 2 (see instructions); and Part II-B, line 1. Also, complete this part for any additional information.

SEE NEXT PAGE

--------------------------------------------------------------------------------

--------------------------------------------------------------------------------

--------------------------------------------------------------------------------

--------------------------------------------------------------------------------

--------------------------------------------------------------------------------

--------------------------------------------------------------------------------

NATIONAL RIFLE ASSOCIATION OF AMERICA                                  56           11/18/2020 9:47:17 AM
53-0116130

| Part IV | Supplemental Information. Provide the descriptions required for Part I-A, line 1; Part I-B, line 4; Part I-C, line 5; Part II-A (affiliated group list); Part II-A, lines 1 and 2 (see instructions); and Part II-B, line 1. Also, complete this part for any additional information. |

| Return Reference - Identifier | Explanation |
|---|---|
| SCHEDULE C, PART I-A, LINE 1 - DESCRIPTION OF POLITICAL ACTIVITIES | SUPPORT FOR FUNDRAISING AND ADMINISTRATIVE EXPENSES OF A SEPARATE SEGREGATED FUND IS INDUSTRY STANDARD FOR NONPROFIT ORGANIZATIONS LIKE THE NRA, AS ALLOWED BY LAW. IN 2019, THE NRA PAID $2,971,894 FUNDRAISING AND ADMINISTRATIVE EXPENSES FOR THE SEPARATE SEGREGATED FUND, NRA POLITICAL VICTORY FUND, AS ALLOWED BY LAW. THE NRA ENGAGED IN ACTIVITIES IN SUPPORT OF ITS MISSION, WHICH INCLUDES PROTECTING AND DEFENDING THE CONSTITUTION OF THE UNITED STATES, ESPECIALLY WITH REFERENCE TO THE INALIENABLE RIGHT OF INDIVIDUAL AMERICAN CITIZEN GUARANTEED BY SUCH CONSTITUTION TO ACQUIRE, POSSESS, COLLECT, EXHIBIT, TRANSPORT, CARRY, TRANSFER OWNERSHIP OF, AND ENJOY THE RIGHT TO USE ARMS, IN ORDER THAT THE PEOPLE MAY ALWAYS BE IN A POSITION TO EXERCISE THEIR LEGITIMATE INDIVIDUAL RIGHTS OF SELF PRESERVATION AND DEFENSE OF FAMILY, PERSON, AND PROPERTY. IN PURSUIT OF THESE GOALS OF THE ASSOCIATION, THE NRA SPENT FUNDS DIRECTLY AND INDIRECTLY ON POLITICAL ACTIVITIES, WHICH WERE NOT THE PRIMARY ACTIVITIES OF THE ORGANIZATION. THE NRA IS ORGANIZED PRIMARILY TO PROMOTE SOCIAL WELFARE AND CAN ALSO ENGAGE IN POLITICAL ACTIVITIES ON BEHALF OF OR IN OPPOSITION TO CANDIDATES FOR POLITICAL OFFICE, AS ALLOWED BY LAW. BY ANY MEASURE, THE PERCENTAGE OF FUNDS SPENT BY THE NRA ON POLITICAL ACTIVATES IS MODEST IN COMPARISON TO THE BUDGET DEVOTED TO THE PRIMARY ACTIVITIES OF THE NRA. FOR INSTANCE, ALL EXPENDITURES NOTED ON PART I-A AND I-C OF SCHEDULE C AMOUNTED TO ABOUT 1% OF THE NRA'S TOTAL EXPENSES IN 2019, AS APPLIED TO TOTAL EXPENSES REPORTED ON FORM 990, PART IX, LINE 25. REPORTERS AND OTHER READERS ARE ALSO KINDLY REMINDED THAT THE SEPARATE SEGREGATED FUND IS A SEPARATE ENTITY FOR TAX PURPOSES. |
| SCHEDULE C, PART I-C, LINE 4 - FORM 1120-POL | THIS INFORMATION NOTE REGARDS THE NRA'S TAXES. THE NRA SEPARATELY FILES FORM 1120-POL, WHICH IS NOT SUBJECT TO PUBLIC DISCLOSURE. THE FOLLOWING INFORMATION ABOUT TAXES PAID WITH THE NRA'S FORMS 1120-POL IS SHARED HERE ON A VOLUNTARY BASIS AS A SERVICE TO READERS AND TO DEMONSTRATE IN GOOD FAITH THAT THE ORGANIZATION IS A TAXPAYER IN GOOD STANDING. 527(F) PROXY TAX IS PAID ON THE LESSER OF NET INVESTMENT INCOME OR CERTAIN POLITICAL EXPENDITURES AS DEFINED BY THE FEDERAL TAX CODE, SUCH AS WHEN CERTAIN POLITICAL COMMUNICATIONS EXPRESSLY ADVOCATE THE ELECTION OR DEFEAT OF A CANDIDATE AND ARE MADE BY THE NRA ITSELF RATHER THAN BY THE NRA'S SEPARATE SEGREGATED FUND. THE AMOUNT OF 527 (F) PROXY TAX PAID WITH THE NRA'S 2019 FORM 1120-POL WAS ZERO. HISTORICALLY, 527(F) PROXY TAX WAS REQUIRED TO BE PAID FOR 2018 WAS $164,944; NO 527(F) PROXY TAX WAS REQUIRED TO BE PAID FOR 2017; THE AMOUNT OF 527(F) PROXY TAX PAID WITH THE NRA'S 2016 FORM 1120-POL WAS $20,835; THE AMOUNT PAID WITH THE NRA'S 2015 FORM 1120-POL WAS $21,817. AS ANOTHER POLITE REMINDER TO REPORTERS AND OTHER READERS, FORM 990 INFORMATION IS NOT NECESSARILY EXPECTED TO TIE TO FEDERAL ELECTION COMMISSION (FEC) REPORTING DUE TO DIFFERENT DEFINITIONS AND EXCLUSIONS IN THE DIFFERENT REGULATORY REGIMES. |
| SCHEDULE C, PART I-C, LINE 5 - POLITICAL ACTION COMMITTEE | THE NRA POLITICAL VICTORY FUND, AN INDEPENDENT POLITICAL ACTION COMMITTEE (PAC) OF THE NRA, DIRECTLY RECEIVED CONTRIBUTIONS DURING 2019 OF $10,713,253. |

| PartI-C | Line 5. **Enter the names, addresses and employer identification number (EIN) of all section 527 political organizations to which the filing organization made payments.** (continued) |
|---|---|

| (a)<br>Name | (b)<br>Address | (c)<br>EIN | (d)<br>Amount paid from filing organization's funds. If none, enter -0-. | (e)<br>Amount of political contributions received and promptly and directly delivered to a separate political organization. If none, enter -0-. |
|---|---|---|---|---|
| REPUBLICAN ATTORNEYS GENERAL ASSOCIATION | 1747 PENNSYLVANIA AVE, NW STE 800 WASHINGTON, DC 20006 | 46-4501717 | 90,000 | 0 |
| REPUBLICAN GOVERNORS ASSOCIATION | 1747 PENNSYLVANIA AVE, NW STE 250 WASHINGTON, DC 20006 | 11-3655877 | 145,000 | 0 |
| NRA POLITICAL VICTORY FUND (SEE PARTS I-A AND IV) | 11250 WAPLES MILL RD FAIRFAX, VA 22030 | 52-1083020 | 0 | 3,952 |

**SCHEDULE D**
**(Form 990)**

Department of the Treasury
Internal Revenue Service

# Supplemental Financial Statements

► **Complete if the organization answered "Yes" on Form 990,**
**Part IV, line 6, 7, 8, 9, 10, 11a, 11b, 11c, 11d, 11e, 11f, 12a, or 12b.**
► **Attach to Form 990.**
► **Go to www.irs.gov/Form990 for instructions and the latest information.**

OMB No. 1545-0047

**2019**

**Open to Public Inspection**

| Name of the organization | Employer identification number |
|---|---|
| NATIONAL RIFLE ASSOCIATION OF AMERICA | 53-0116130 |

| **Part I** | **Organizations Maintaining Donor Advised Funds or Other Similar Funds or Accounts.** |
|---|---|

Complete if the organization answered "Yes" on Form 990, Part IV, line 6.

| | | (a) Donor advised funds | (b) Funds and other accounts |
|---|---|---|---|
| 1 | Total number at end of year . . . . . . . . . | | |
| 2 | Aggregate value of contributions to (during year) . | | |
| 3 | Aggregate value of grants from (during year) . . . | | |
| 4 | Aggregate value at end of year . . . . . . . | | |

5  Did the organization inform all donors and donor advisors in writing that the assets held in donor advised funds are the organization's property, subject to the organization's exclusive legal control? . . . . . . ☐ **Yes** ☐ **No**

6  Did the organization inform all grantees, donors, and donor advisors in writing that grant funds can be used only for charitable purposes and not for the benefit of the donor or donor advisor, or for any other purpose conferring impermissible private benefit? . . . . . . . . . . . . . . . . . . . . ☐ **Yes** ☐ **No**

| **Part II** | **Conservation Easements.** |
|---|---|

Complete if the organization answered "Yes" on Form 990, Part IV, line 7.

1  Purpose(s) of conservation easements held by the organization (check all that apply).
  ☐ Preservation of land for public use (for example, recreation or education)   ☐ Preservation of a historically important land area
  ☐ Protection of natural habitat   ☐ Preservation of a certified historic structure
  ☐ Preservation of open space

2  Complete lines 2a through 2d if the organization held a qualified conservation contribution in the form of a conservation easement on the last day of the tax year.

| | | | Held at the End of the Tax Year |
|---|---|---|---|
| a | Total number of conservation easements . . . . . . . . . . . . . | 2a | |
| b | Total acreage restricted by conservation easements . . . . . . . . . | 2b | |
| c | Number of conservation easements on a certified historic structure included in (a) . . . . | 2c | |
| d | Number of conservation easements included in (c) acquired after 7/25/06, and not on a historic structure listed in the National Register . . . . . . . . . . . . | 2d | |

3  Number of conservation easements modified, transferred, released, extinguished, or terminated by the organization during the tax year ► _____

4  Number of states where property subject to conservation easement is located ► _____

5  Does the organization have a written policy regarding the periodic monitoring, inspection, handling of violations, and enforcement of the conservation easements it holds? . . . . . . . . . . ☐ **Yes** ☐ **No**

6  Staff and volunteer hours devoted to monitoring, inspecting, handling of violations, and enforcing conservation easements during the year ► _____

7  Amount of expenses incurred in monitoring, inspecting, handling of violations, and enforcing conservation easements during the year ► $ _____

8  Does each conservation easement reported on line 2(d) above satisfy the requirements of section 170(h)(4)(B)(i) and section 170(h)(4)(B)(ii)? . . . . . . . . . . . . . . . . . . . . . . ☐ **Yes** ☐ **No**

9  In Part XIII, describe how the organization reports conservation easements in its revenue and expense statement and balance sheet, and include, if applicable, the text of the footnote to the organization's financial statements that describes the organization's accounting for conservation easements.

| **Part III** | **Organizations Maintaining Collections of Art, Historical Treasures, or Other Similar Assets.** |
|---|---|

Complete if the organization answered "Yes" on Form 990, Part IV, line 8.

1a  If the organization elected, as permitted under FASB ASC 958, not to report in its revenue statement and balance sheet works of art, historical treasures, or other similar assets held for public exhibition, education, or research in furtherance of public service, provide in Part XIII the text of the footnote to its financial statements that describes these items.

  b  If the organization elected, as permitted under FASB ASC 958, to report in its revenue statement and balance sheet works of art, historical treasures, or other similar assets held for public exhibition, education, or research in furtherance of public service, provide the following amounts relating to these items:

  **(i)** Revenue included on Form 990, Part VIII, line 1 . . . . . . . . . ► $ _____
  **(ii)** Assets included in Form 990, Part X . . . . . . . . . . . . . ► $ _____

2  If the organization received or held works of art, historical treasures, or other similar assets for financial gain, provide the following amounts required to be reported under FASB ASC 958 relating to these items:

  a  Revenue included on Form 990, Part VIII, line 1 . . . . . . . . . . . ► $ _____
  b  Assets included in Form 990, Part X . . . . . . . . . . . . . . . ► $ _____

For Paperwork Reduction Act Notice, see the Instructions for Form 990.   Cat. No. 52283D   **Schedule D (Form 990) 2019**

| **Part III** | **Organizations Maintaining Collections of Art, Historical Treasures, or Other Similar Assets** *(continued)* |
|---|---|

**3** Using the organization's acquisition, accession, and other records, check any of the following that make significant use of its collection items (check all that apply):

**a** ☑ Public exhibition      **d** ☑ Loan or exchange program

**b** ☑ Scholarly research      **e** ☐ Other _____

**c** ☑ Preservation for future generations

**4** Provide a description of the organization's collections and explain how they further the organization's exempt purpose in Part XIII.

**5** During the year, did the organization solicit or receive donations of art, historical treasures, or other similar assets to be sold to raise funds rather than to be maintained as part of the organization's collection? . . . ☑ **Yes** ☐ **No**

| **Part IV** | **Escrow and Custodial Arrangements.** |
|---|---|

Complete if the organization answered "Yes" on Form 990, Part IV, line 9, or reported an amount on Form 990, Part X, line 21.

**1a** Is the organization an agent, trustee, custodian or other intermediary for contributions or other assets not included on Form 990, Part X? . . . . . . . . . . . . . . . . . . . ☐ **Yes** ☐ **No**

**b** If "Yes," explain the arrangement in Part XIII and complete the following table:

| | | Amount |
|---|---|---|
| **c** Beginning balance . . . . . . . . | **1c** | |
| **d** Additions during the year . . . . . | **1d** | |
| **e** Distributions during the year . . . . | **1e** | |
| **f** Ending balance . . . . . . . . | **1f** | |

**2a** Did the organization include an amount on Form 990, Part X, line 21, for escrow or custodial account liability? ☐ **Yes** ☐ **No**

**b** If "Yes," explain the arrangement in Part XIII. Check here if the explanation has been provided on Part XIII . . . . ☐

| **Part V** | **Endowment Funds.** |
|---|---|

Complete if the organization answered "Yes" on Form 990, Part IV, line 10.

| | | **(a)** Current year | **(b)** Prior year | **(c)** Two years back | **(d)** Three years back | **(e)** Four years back |
|---|---|---|---|---|---|---|
| **1a** | Beginning of year balance . . . | 20,293,364 | 20,566,237 | 19,520,483 | 17,657,500 | 16,738,628 |
| **b** | Contributions . . . . . . | 1,152,173 | 1,603,940 | 1,371,910 | 1,482,504 | 1,988,178 |
| **c** | Net investment earnings, gains, and losses | 2,118,475 | (886,512) | 625,818 | 1,204,551 | (266,970) |
| **d** | Grants or scholarships . . . . | 0 | 0 | | | |
| **e** | Other expenditures for facilities and programs . . . . . | 0 | 940,564 | 916,400 | 786,344 | 772,538 |
| **f** | Administrative expenses . . . . | 51,474 | 49,737 | 35,574 | 37,728 | 29,798 |
| **g** | End of year balance . . . . . | 23,512,538 | 20,293,364 | 20,566,237 | 19,520,483 | 17,657,500 |

**2** Provide the estimated percentage of the current year end balance (line 1g, column (a)) held as:

**a** Board designated or quasi-endowment ▶ 0.00 %

**b** Permanent endowment ▶ 100.00 %

**c** Term endowment ▶ 0.00 %

The percentages on lines 2a, 2b, and 2c should equal 100%.

**3a** Are there endowment funds not in the possession of the organization that are held and administered for the organization by:

| | | Yes | No |
|---|---|---|---|
| **(i)** Unrelated organizations . . . . . . . . . . . . . . . . . . . | **3a(i)** | | ✔ |
| **(ii)** Related organizations . . . . . . . . . . . . . . . . . . . | **3a(ii)** | ✔ | |
| **b** If "Yes" on line 3a(ii), are the related organizations listed as required on Schedule R? . . . | **3b** | ✔ | |

**4** Describe in Part XIII the intended uses of the organization's endowment funds.

| **Part VI** | **Land, Buildings, and Equipment.** |
|---|---|

Complete if the organization answered "Yes" on Form 990, Part IV, line 11a. See Form 990, Part X, line 10.

| Description of property | **(a)** Cost or other basis (investment) | **(b)** Cost or other basis (other) | **(c)** Accumulated depreciation | **(d)** Book value |
|---|---|---|---|---|
| **1a** Land . . . . . . . . . . | 0 | 5,380,792 | | 5,380,792 |
| **b** Buildings . . . . . . . . . | | 55,907,362 | 34,155,156 | 21,752,206 |
| **c** Leasehold improvements . . . . | | | | |
| **d** Equipment . . . . . . . . . | | 18,716,748 | 15,792,628 | 2,924,120 |
| **e** Other . . . . . . . . . . | | | | |
| **Total.** Add lines 1a through 1e. *(Column (d) must equal Form 990, Part X, column (B), line 10c.)* . . . . . ▶ | | | | 30,057,118 |

**Schedule D (Form 990) 2019**

Schedule D (Form 990) 2019      Page **3**

| **Part VII** | **Investments—Other Securities.** |
|---|---|

Complete if the organization answered "Yes" on Form 990, Part IV, line 11b. See Form 990, Part X, line 12.

| **(a)** Description of security or category (including name of security) | **(b)** Book value | **(c)** Method of valuation: Cost or end-of-year market value |
|---|---|---|
| **(1)** Financial derivatives . . . . . . . . . . . | | |
| **(2)** Closely held equity interests . . . . . . . . | | |
| **(3)** Other | | |
|   (A) | | |
|   (B) | | |
|   (C) | | |
|   (D) | | |
|   (E) | | |
|   (F) | | |
|   (G) | | |
|   (H) | | |
| **Total.** (Column (b) must equal Form 990, Part X, col. (B) line 12.) ▶ | | |

| **Part VIII** | **Investments—Program Related.** |
|---|---|

Complete if the organization answered "Yes" on Form 990, Part IV, line 11c. See Form 990, Part X, line 13.

| **(a)** Description of investment | **(b)** Book value | **(c)** Method of valuation: Cost or end-of-year market value |
|---|---|---|
| **(1)** | | |
| **(2)** | | |
| **(3)** | | |
| **(4)** | | |
| **(5)** | | |
| **(6)** | | |
| **(7)** | | |
| **(8)** | | |
| **(9)** | | |
| **Total.** (Column (b) must equal Form 990, Part X, col. (B) line 13.) ▶ | | |

| **Part IX** | **Other Assets.** |
|---|---|

Complete if the organization answered "Yes" on Form 990, Part IV, line 11d. See Form 990, Part X, line 15.

| **(a)** Description | **(b)** Book value |
|---|---|
| **(1)** OTHER | 3,970,243 |
| **(2)** DUE FROM NRA FOUNDATION | 32,252,080 |
| **(3)** DUE FROM NRA CIVIL RIGHTS DEFFENSE FUND | 1,374 |
| **(4)** DUE FROM NRA SPECIAL CONTRIBUTION FUND | 342,184 |
| **(5)** | |
| **(6)** | |
| **(7)** | |
| **(8)** | |
| **(9)** | |
| **Total.** (Column (b) must equal Form 990, Part X, col. (B) line 15.) . . . . . . . . . . . . . . ▶ | 36,565,881 |

| **Part X** | **Other Liabilities.** |
|---|---|

Complete if the organization answered "Yes" on Form 990, Part IV, line 11e or 11f. See Form 990, Part X, line 25.

| **1.** | **(a)** Description of liability | **(b)** Book value |
|---|---|---|
| | (1) Federal income taxes | |
| | (2) NOTE PAYABLE - NRA FOUNDATION | 5,000,000 |
| | (3) CAPITAL LEASE ARRANGEMENT | 918,898 |
| | (4) ACCRUED SALES AND USE TAXES | 149,220 |
| | (5) COUPON LIABILITY | 0 |
| | (6) DERIVATIVE INSTRUMENT MARKET VALUATION | 0 |
| | (7) | |
| | (8) | |
| | (9) | |
| | **Total.** (Column (b) must equal Form 990, Part X, col. (B) line 25.) . . . . . . . . . . . . ▶ | 6,068,118 |

**2.** Liability for uncertain tax positions. In Part XIII, provide the text of the footnote to the organization's financial statements that reports the organization's liability for uncertain tax positions under FASB ASC 740. Check here if the text of the footnote has been provided in Part XIII . ☑

Schedule D (Form 990) 2019     **Page 4**

| **Part XI** | **Reconciliation of Revenue per Audited Financial Statements With Revenue per Return.** | | | |
|---|---|---|---|---|
| | Complete if the organization answered "Yes" on Form 990, Part IV, line 12a. | | | |
| 1 | Total revenue, gains, and other support per audited financial statements . . . . . . . . | | **1** | 306,852,309 |
| 2 | Amounts included on line 1 but not on Form 990, Part VIII, line 12: | | | |
| a | Net unrealized gains (losses) on investments | **2a**   6,605,046 | | |
| b | Donated services and use of facilities . . . . . . . | **2b**   0 | | |
| c | Recoveries of prior year grants . . . . . . . . . | **2c**   0 | | |
| d | Other (Describe in Part XIII.) . . . . . . . . . . | **2d**   3,656,292 | | |
| e | Add lines **2a** through **2d** . . . . . . . . . . . . . . . . . . | | **2e** | 10,261,338 |
| 3 | Subtract line **2e** from line 1 . . . . . . . . . . . . . . . . . . | | **3** | 296,590,971 |
| 4 | Amounts included on Form 990, Part VIII, line 12, but not on line 1: | | | |
| a | Investment expenses not included on Form 990, Part VIII, line 7b . . . | **4a** | | |
| b | Other (Describe in Part XIII.) . . . . . . . | **4b**   (5,435,507) | | |
| c | Add lines **4a** and **4b** . . . . . . . . . . . . . . . . . . . | | **4c** | (5,435,507) |
| 5 | Total revenue. Add lines **3** and **4c.** *(This must equal Form 990, Part I, line 12.)* . . . . . . . . | | **5** | 291,155,464 |
| **Part XII** | **Reconciliation of Expenses per Audited Financial Statements With Expenses per Return.** | | | |
| | Complete if the organization answered "Yes" on Form 990, Part IV, line 12a. | | | |
| 1 | Total expenses and losses per audited financial statements . . . . . . . . . . . . | | **1** | 308,822,822 |
| 2 | Amounts included on line 1 but not on Form 990, Part IX, line 25: | | | |
| a | Donated services and use of facilities . . . . . . . | **2a**   0 | | |
| b | Prior year adjustments . . . . . . . . . | **2b**   0 | | |
| c | Other losses . . . . . . . . . . . . | **2c**   0 | | |
| d | Other (Describe in Part XIII.) . . . . . . . . . . | **2d**   5,526,998 | | |
| e | Add lines **2a** through **2d** . . . . . . . . . . . . . . . . . . | | **2e** | 5,526,998 |
| 3 | Subtract line **2e** from line 1 . . . . . . . . . . . . . . . . . . | | **3** | 303,295,824 |
| 4 | Amounts included on Form 990, Part IX, line 25, but not on line 1: | | | |
| a | Investment expenses not included on Form 990, Part VIII, line 7b . . . | **4a** | | |
| b | Other (Describe in Part XIII.) . . . . . . . | **4b**   91,491 | | |
| c | Add lines **4a** and **4b** . . . . . . . . . . . . . . . . . . . | | **4c** | 91,491 |
| 5 | Total expenses. Add lines **3** and **4c.** *(This must equal Form 990, Part I, line 18.)* . . . . . . . | | **5** | 303,387,315 |

| **Part XIII** | **Supplemental Information.** |
|---|---|

Provide the descriptions required for Part II, lines 3, 5, and 9; Part III, lines 1a and 4; Part IV, lines 1b and 2b; Part V, line 4; Part X, line 2; Part XI, lines 2d and 4b; and Part XII, lines 2d and 4b. Also complete this part to provide any additional information.

SEE STATEMENT

-------------------------------------------------------------------------------

-------------------------------------------------------------------------------

-------------------------------------------------------------------------------

-------------------------------------------------------------------------------

-------------------------------------------------------------------------------

-------------------------------------------------------------------------------

-------------------------------------------------------------------------------

-------------------------------------------------------------------------------

-------------------------------------------------------------------------------

-------------------------------------------------------------------------------

-------------------------------------------------------------------------------

-------------------------------------------------------------------------------

**NATIONAL RIFLE ASSOCIATION OF AMERICA**      62      11/18/2020 9:47:17 AM
53-0116130

| Part XIII | Provide the descriptions required for Part II, lines 3, 5, and 9; Part III, lines 1a and 4; Part IV, lines 1b and 2b; Part V, line 4; Part X, line 2; Part XI, lines 2d and 4b; and Part XII, lines 2d and 4b. Also complete this part to provide any additional information. |
|---|---|

| Return Reference - Identifier | Explanation | |
|---|---|---|
| SCHEDULE D, PART XI, LINE 2(D) - OTHER REVENUES IN AUDITED FINANCIAL STATEMENTS NOT IN FORM 990 | **(a)** Description | **(b)** Amount |
| | OTHER- AGENCY TRANSACTIONS | 3,534,160 |
| | OTHER-UNREALIZED GAIN (LOSS) ON DERIVATIVE INSTRUMENT | 122,132 |
| SCHEDULE D, PART XI, LINE 4(B) - OTHER REVENUE | **(a)** Description | **(b)** Amount |
| | GRANTS PAID | 91,491 |
| | RENT EXPENSE | - 1,941,872 |
| | COST OF GOOD SOLD-MEMBERSHIP | - 3,585,126 |
| SCHEDULE D, PART XII, LINE 2(D) - OTHER EXPENSES IN AUDITED FINANCIAL STATEMENTS NOT IN FORM 990 | **(a)** Description | **(b)** Amount |
| | RENTAL EXPENSE | 1,941,872 |
| | COST OF GOODS SOLD-MEMBERSHIP | 3,585,126 |
| SCHEDULE D, PART XII, LINE 4(B) - OTHER EXPENSES | **(a)** Description | **(b)** Amount |
| | INTEREST ON ENDOWMENTS - GRANTS | 91,491 |

| Part XIII | | **Supplemental Information.** Provide the descriptions required for Part II, lines 3, 5, and 9; Part III, lines 1a and 4; Part IV, lines 1b and 2b; Part V, line 4; Part X, line 2; Part XI, lines 2d and 4b; and Part XII, lines 2d and 4b. Also complete this part to provide any additional information. |
|---|---|---|

| Return Reference - Identifier | Explanation |
|---|---|
| SCHEDULE D, PART III, LINE 4 - COLLECTIONS OF ART - DESCRIPTION OF COLLECTIONS | THIS RESPONSE DESCRIBES THE MUSEUM COLLECTIONS WHICH ARE HELD BY THE NRA'S RELATED ORGANIZATIONS AND CURATED BY NRA EMPLOYEES. THE NRA MUSEUMS PROMOTE GUN COLLECTING AND PRESERVATION OF HISTORY THOUGH FIREARMS. THE NRA MUSEUMS INCLUDE THE NATIONAL FIREARMS MUSEUM IN FAIRFAX, VIRGINIA: THE FRANK BROWNELL MUSEUM OF THE SOUTHWEST IN RATON, NEW MEXICO: AND THE NRA NATIONAL SPORTING ARMS MUSEUM AT BASS PRO SHOPS IN SPRINGFIELD, MISSOURI. TO MAKE THE NRA MUSEUMS THE FINEST POSSIBLE RESOURCE FOR THE PUBLIC, THE NRA AND ITS AFFILIATED CHARITIES RELY ON GENEROUS SUPPORTERS TO BUILD THE EXHIBITION AND RESEARCH COLLECTIONS THROUGH COLLECTIONS OF HISTORICALLY SIGNIFICANT FIREARMS. PLEASE VISIT NRAMUSEUMS.ORG FOR CURRENT INFORMATION ON THE MUSEUM GALLERIES. |
| SCHEDULE D, PART III, LINE 5 - DONATIONS | THIS RESPONSE EXPLAINS WHY THE NRA MAY SOLICIT OR RECEIVE ASSETS THAT SOME DONORS INTEND TO BE SOLD RATHER THAN MAINTAINED PERMANENTLY. WHEN DONORS INTEND THEIR GIFTS OF FIREARMS TO BE SOLD RATHER THEN HELD FOR EXHIBITION OR RESEARCH IN THE COLLECTIONS OF THE NRA MUSEUM, THE NRA PARTNERS WITH AUCTION HOUSES. DONORS MAY CHOOSE TO HAVE GUNS SOLD FOR VARIOUS REASONS, SUCH AS TO SUPPORT CURRENT PROGRAM SERVICES OR TO FUND A CHARITABLE GIFT ANNUITY OR CHARITABLE TRUST WITH ONE OF THE NRA'S AFFILIATED CHARITIES. THE PHILANTHROPIC INTENT OF EACH DONOR DETERMINES HOW A GIFT IS HANDLED. |
| SCHEDULE D, PART V, LINE 4 - INTENDED USES OF ENDOWMENT FUNDS | THIS RESPONSE DESCRIBES THE INTENDED USES OF THE ORGANIZATION'S ENDOWMENT FUNDS. THE ENDOWMENT FUNDS BENEFIT A DIVERSE RANGE OF PHILANTHROPIC INTERESTS, INCLUDING TRAINING IN MARKSMANSHIP, NATIONAL SHOOTING CHAMPIONSHIPS, WOMEN'S LEADERSHIP, HUNTERS'LEADERSHIP, RECREATIONAL SHOOTING, LAW ENFORCEMENT, NRA MUSEUMS, AND THE NATIONAL ENDOWMENT FOR THE PROTECTION OF THE SECOND AMENDMENT. |
| SCHEDULE D, PART X, LINE 1 - OTHER LIABILITIES-TAXES | THIS INFORMATIONAL NOTE REGARDS THE NRA'S TAXES. THE NRA IS A SUBSTANTIAL TAXPAYER AND REMAINS IN GOOD STANDING WITH THE TAX AUTHORITIES. STATE AND LOCAL TAXES PAID BY THE NRA INCLUDE SALES AND USE TAXES, REAL ESTATE AND PERSONAL PROPERTY TAXES, AMUSEMENT TAXES, AND STATE UNEMPLOYMENT TAXES. THE LIABILITY SHOWN ON SCHEDULE D, PART X FOR ACCRUED SALES AND USE TAXES RELATES TO TIMING AND IS A SMALL FRACTION OF TAXES PAID DURING THE YEAR. ADDITIONAL NOTES REGARDING THE NRA'S TAXES ARE SHARED ON SCHEDULE C REGARDING 527(F) PROXY TAXES AND ON SCHEDULE O REGRADING UNRELATED BUSINESS INCOME TAXES. THE NRA CHOOSES TO SHARE THIS ADDITIONAL INFORMATION ABOUT THE NRA'S TOTAL TAXES TO DEMONSTRATE IN GOOD FAITH THAT THE ORGANIZATION IS A TAXPAYER IN GOOD STANDING. |
| SCHEDULE D, PART X, LINE 2 - FIN 48 (ASC 740) FOOTNOTE | THIS RESPONSE PROVIDES THE TEXT OF THE FOOTNOTE TO THE ORGANIZATION'S FINANCIAL STATEMENTS IN ACCORDANCE WITH FASB ASC 740<br>THE NRA IS EXEMPT FROM FEDERAL INCOME TAXES UNDER SECTION 501(C)(4) OF THE INTERNAL REVENUE CODE AND FROM STATE INCOME TAXES. THE NRA ACTIVITIES THAT CAUSE IMPOSITION OF THE UNRELATED BUSINESS INCOME TAX PROVISION OF THE CODE RESULT IN NO SIGNIFICANT TAX LIABILITY. THE NRA FOLLOWS THE ACCOUNTING STANDARD ON ACCOUNTING FOR UNCERTAINTY IN INCOME TAXES, WHICH ADDRESSES THE DETERMINATION OF WHETHER TAX BENEFITS CLAIMED OR EXPECTED TO BE CLAIMED ON A TAX RETURN SHOULD BE RECORDED IN THE FINANCIAL STATEMENTS. UNDER THIS GUIDANCE, THE NRA MAY RECOGNIZE THE TAX BENEFIT FROM AN UNCERTAIN TAX POSITION ONLY IF IT IS MORE-LIKELY-THAN-NOT THAT THE TAX POSITION WILL BE SUSTAINED ON EXAMINATION BY TAXING AUTHORITIES, BASED ON THE TECHNICAL MERITS OF THE POSITION. THE TAX BENEFITS RECOGNIZED IN THE FINANCIAL STATEMENTS FROM SUCH A POSITION ARE MEASURED BASED ON THE LARGEST BENEFIT THAT HAS A GREATER THAN 50% LIKELIHOOD OF BEING REALIZED UPON ULTIMATE SETTLEMENT. THE GUIDANCE ON ACCOUNTING FOR UNCERTAINTY IN INCOME TAXES ALSO ADDRESSES DE-RECOGNITION, CLASSIFICATION, INTEREST AND PENALTIES ON INCOME TAXES, AND ACCOUNTING IN INTERIM PERIODS. MANAGEMENT EVALUATED THE NRA'S TAX POSITIONS AND CONCLUDED THAT THE NRA HAD TAKEN NO UNCERTAIN TAX POSITIONS THAT REQUIRE ADJUSTMENT TO THE FINANCIAL STATEMENTS TO COMPLY WITH THE PROVISIONS OF THIS GUIDANCE. TAX YEARS FROM 2016 THROUGH THE CURRENT YEAR REMAIN OPEN FOR EXAMINATION BY TAX AUTHORITIES. |

| SCHEDULE F (Form 990) | **Statement of Activities Outside the United States** | OMB No. 1545-0047 |
|---|---|---|
| | ▶ Complete if the organization answered "Yes" on Form 990, Part IV, line 14b, 15, or 16.<br>▶ Attach to Form 990.<br>▶ Go to *www.irs.gov/Form990* for instructions and the latest information. | **2019** |
| Department of the Treasury<br>Internal Revenue Service | | **Open to Public Inspection** |

| Name of the organization | Employer identification number |
|---|---|
| NATIONAL RIFLE ASSOCIATION OF AMERICA | 53-0116130 |

**Part I** **General Information on Activities Outside the United States.** Complete if the organization answered "Yes" on Form 990, Part IV, line 14b.

**1** **For grantmakers.** Does the organization maintain records to substantiate the amount of its grants and other assistance, the grantees' eligibility for the grants or assistance, and the selection criteria used to award the grants or assistance? . . . . . . . . . . . . . . ☐ **Yes** ☐ **No**

**2** **For grantmakers.** Describe in Part V the organization's procedures for monitoring the use of its grants and other assistance outside the United States.

**3** Activities per Region. (The following Part I, line 3 table can be duplicated if additional space is needed.)

| | (a) Region | (b) Number of offices in the region | (c) Number of employees, agents, and independent contractors in the region | (d) Activities conducted in the region (by type) (such as, fundraising, program services, investments, grants to recipients located in the region) | (e) If activity listed in (d) is a program service, describe specific type of service(s) in the region | (f) Total expenditures for and investments in the region |
|---|---|---|---|---|---|---|
| (1) | CENTRAL AMERICA AND THE CARIBBEAN | 0 | 0 | INVESTMENTS | | 3,352,620 |
| (2) | EAST ASIA AND THE PACIFIC | 0 | 0 | PROGRAM SERVICES | PUBLICATIONS | 600 |
| (3) | EUROPE (INCLUDING ICELAND AND GREENLAND) | 0 | 0 | FUNDRAISING | | 4,800 |
| (4) | EUROPE (INCLUDING ICELAND AND GREENLAND) | 0 | 0 | PROGRAM SERVICES | PUBLICATIONS | 15,600 |
| (5) | MIDDLE EAST AND NORTH AFRICA | 0 | 0 | FUNDRAISING | | 315 |
| (6) | NORTH AMERICA (CANADA & MEXICO ONLY) | 0 | 0 | PROGRAM SERVICES | PUBLICATIONS | 21,500 |
| (7) | NORTH AMERICA (CANADA & MEXICO ONLY) | 0 | 0 | FUNDRAISING | NRA OUTDOORS | 2,800 |
| (8) | SUB-SAHARAN AFRICA | 0 | 0 | PROGRAM SERVICES | NRA OUTDOORS | 3,700 |
| (9) | EAST ASIA AND THE PACIFIC | 0 | 0 | FUNDRAISING | | 14 |
| (10) | | | | | | |
| (11) | | | | | | |
| (12) | | | | | | |
| (13) | | | | | | |
| (14) | | | | | | |
| (15) | | | | | | |
| (16) | | | | | | |
| (17) | | | | | | |
| 3a | Subtotal . . . . . . | 0 | 0 | | | 3,401,949 |
| b | Total from continuation sheets to Part I . . . . | 0 | 0 | | | 0 |
| c | **Totals** (add lines 3a and 3b) | 0 | 0 | | | 3,401,949 |

For Paperwork Reduction Act Notice, see the Instructions for Form 990. Cat. No. 50082W **Schedule F (Form 990) 2019**

Schedule F (Form 990) 2019      Page **2**

**Part II**    **Grants and Other Assistance to Organizations or Entities Outside the United States.** Complete if the organization answered "Yes" on Form 990, Part IV, line 15, for any recipient who received more than $5,000. Part II can be duplicated if additional space is needed.

| 1 | (a) Name of organization | (b) IRS code section and EIN (if applicable) | (c) Region | (d) Purpose of grant | (e) Amount of cash grant | (f) Manner of cash disbursement | (g) Amount of noncash assistance | (h) Description of noncash assistance | (i) Method of valuation (book, FMV, appraisal, other) |
|---|---|---|---|---|---|---|---|---|---|
| (1) | | | | | | | | | |
| (2) | | | | | | | | | |
| (3) | | | | | | | | | |
| (4) | | | | | | | | | |
| (5) | | | | | | | | | |
| (6) | | | | | | | | | |
| (7) | | | | | | | | | |
| (8) | | | | | | | | | |
| (9) | | | | | | | | | |
| (10) | | | | | | | | | |
| (11) | | | | | | | | | |
| (12) | | | | | | | | | |
| (13) | | | | | | | | | |
| (14) | | | | | | | | | |
| (15) | | | | | | | | | |
| (16) | | | | | | | | | |

2   Enter total number of recipient organizations listed above that are recognized as charities by the foreign country, recognized as tax-exempt by the IRS, or for which the grantee or counsel has provided a section 501(c)(3) equivalency letter . . . . . . . . . ▶

3   Enter total number of other organizations or entities . . . . . . . . . . . . . . . ▶

Schedule F (Form 990) 2019

Schedule F (Form 990) 2019                                                         **Page 3**

**Part III**   **Grants and Other Assistance to Individuals Outside the United States.** Complete if the organization answered "Yes" on Form 990, Part IV, line 16. Part III can be duplicated if additional space is needed.

| (a) Type of grant or assistance | (b) Region | (c) Number of recipients | (d) Amount of cash grant | (e) Manner of cash disbursement | (f) Amount of noncash assistance | (g) Description of noncash assistance | (h) Method of valuation (book, FMV, appraisal, other) |
|---|---|---|---|---|---|---|---|
| (1) | | | | | | | |
| (2) | | | | | | | |
| (3) | | | | | | | |
| (4) | | | | | | | |
| (5) | | | | | | | |
| (6) | | | | | | | |
| (7) | | | | | | | |
| (8) | | | | | | | |
| (9) | | | | | | | |
| (10) | | | | | | | |
| (11) | | | | | | | |
| (12) | | | | | | | |
| (13) | | | | | | | |
| (14) | | | | | | | |
| (15) | | | | | | | |
| (16) | | | | | | | |
| (17) | | | | | | | |
| (18) | | | | | | | |

Schedule F (Form 990) 2019

Schedule F (Form 990) 2019

Page **4**

| **Part IV** | **Foreign Forms** |
| --- | --- |

**1** Was the organization a U.S. transferor of property to a foreign corporation during the tax year? *If "Yes," the organization may be required to file Form 926, Return by a U.S. Transferor of Property to a Foreign Corporation (see Instructions for Form 926)* . . . . . . . . . . . . . . . ☐ Yes ☑ No

**2** Did the organization have an interest in a foreign trust during the tax year? *If "Yes," the organization may be required to separately file Form 3520, Annual Return To Report Transactions With Foreign Trusts and Receipt of Certain Foreign Gifts, and/or Form 3520-A, Annual Information Return of Foreign Trust With a U.S. Owner (see Instructions for Forms 3520 and 3520-A; don't file with Form 990)* . . . . . . . ☐ Yes ☑ No

**3** Did the organization have an ownership interest in a foreign corporation during the tax year? *If "Yes," the organization may be required to file Form 5471, Information Return of U.S. Persons With Respect to Certain Foreign Corporations (see Instructions for Form 5471)* . . . . . . . . . . . . . . ☐ Yes ☑ No

**4** Was the organization a direct or indirect shareholder of a passive foreign investment company or a qualified electing fund during the tax year? *If "Yes," the organization may be required to file Form 8621, Information Return by a Shareholder of a Passive Foreign Investment Company or Qualified Electing Fund (see Instructions for Form 8621)* . . . . . . . . . . . . . . . ☐ Yes ☑ No

**5** Did the organization have an ownership interest in a foreign partnership during the tax year? *If "Yes," the organization may be required to file Form 8865, Return of U.S. Persons With Respect to Certain Foreign Partnerships (see Instructions for Form 8865)* . . . . . . . . . . . . . . . ☐ Yes ☑ No

**6** Did the organization have any operations in or related to any boycotting countries during the tax year? *If "Yes," the organization may be required to separately file Form 5713, International Boycott Report (see Instructions for Form 5713; don't file with Form 990)* . . . . . . . . . . . . . . . ☐ Yes ☑ No

Schedule F (Form 990) 2019

| Part V | Supplemental Information.  Provide the information required by Part I, line 2 (monitoring of funds); Part I, line 3, column (f) (accounting method;amounts of investments vs. expenditures per region); Part II, line 1 (accounting method); Part III (accounting method); andPart III, column (c) (estimated number of recipients), as applicable. Also complete this part to provide any additional information (see instructions). |
|---|---|

| Return Reference - Identifier | Explanation |
|---|---|
| SCHEDULE F, PART I, LINE 3 - 1. ACTIVITIES PER REGION-OFFSHORE INVESTMENTS | THE NRA'S OFFSHORE INVESTMENTS FOLLOW INDUSTRY STANDARD BEST PRACTICES IN RISK MANAGEMENT FOR NATIONAL NONPROFIT INSTITUTIONAL INVESTORS. ALTERNATIVE INVESTMENTS REDUCE OVERALL PORTFOLIO RISK BY REDUCING VOLATILITY AND IMPROVING DIVERSIFICATION. THE NRA MAINTAINS SEVERAL INVESTMENT ACCOUNTS THAT ARE MULTI-STRATEGY FUNDS OF FUNDS. INCOME FROM PASSIVE INVESTMENTS, WHEN APPROPRIATELY STRUCTURED, IS EXCLUDED FROM UNRELATED BUSINESS INCOME BY LAW. THIS TYPE OF INVESTMENT POSTURE IS COMMONLY ACCEPTED IN THE U.S. EXEMPT ORGANIZATION INDUSTRY. 100% OF THE AMOUNT IS THE TOTAL BOOK VALUE OF INVESTMENTS FOR THAT REGION. |
| SCHEDULE F, PART I, LINE 3 - ACTIVITIES PER REGION | THIS DISCLOSURE REFERS TO FOREIGN FUNDRAISING. 100% OF THE AMOUNT IS THE CASH VALUE OF EXPENDITURES MADE BY THE NRA FOR NECESSARY TRAVEL, ACCOMMODATIONS, AND RELATED EXPENSES. |
| SCHEDULE F, PART I, LINE 3 - ACTIVITIES PER REGION-PROGRAM SERVICES | THIS DISCLOSURE OF PROGRAM SERVICES REFERS TO NRA PUBLICATIONS DIVISION'S FOREIGN TRAVEL EXPENSES RELATING TO GATHERING MATERIALS FOR NRA MAGAZINES. 100% OF THE AMOUNT IS THE CASH VALUE OF EXPENDITURES MADE BY THE NRA FOR NECESSARY TRAVEL, ACCOMMODATIONS, AND RELATED EXPENSES. |
| SCHEDULE F, PART I, LINE 3 - METHOD TO ACCOUNT FOR EXPENDITURES ON ORG'S FINANCIAL STATEMENTS | CENTRAL AMERICA AND THE CARIBBEAN: ACCRUAL<br>EAST ASIA AND THE PACIFIC: ACCRUAL<br>EUROPE (INCLUDING ICELAND AND GREENLAND): ACCRUAL<br>MIDDLE EAST AND NORTH AFRICA: ACCRUAL<br>NORTH AMERICA (CANADA & MEXICO ONLY): ACCRUAL<br>SUB-SAHARAN AFRICA: ACCRUAL |

| SCHEDULE G | **Supplemental Information Regarding Fundraising or Gaming Activities** | OMB No. 1545-0047 |
|---|---|---|
| **(Form 990 or 990-EZ)** | Complete if the organization answered "Yes" on Form 990, Part IV, line 17, 18, or 19, or if the organization entered more than $15,000 on Form 990-EZ, line 6a. | **2019** |
| Department of the Treasury Internal Revenue Service | ▶ Attach to Form 990 or Form 990-EZ. ▶ Go to *www.irs.gov/Form990* for instructions and the latest information. | **Open to Public Inspection** |

| Name of the organization | Employer identification number |
|---|---|
| NATIONAL RIFLE ASSOCIATION OF AMERICA | 53-0116130 |

**Part I**    **Fundraising Activities.** Complete if the organization answered "Yes" on Form 990, Part IV, line 17. Form 990-EZ filers are not required to complete this part.

**1**   Indicate whether the organization raised funds through any of the following activities. Check all that apply.

**a** ☑ Mail solicitations      **e** ☐ Solicitation of non-government grants
**b** ☑ Internet and email solicitations      **f** ☐ Solicitation of government grants
**c** ☑ Phone solicitations      **g** ☐ Special fundraising events
**d** ☐ In-person solicitations

**2a**   Did the organization have a written or oral agreement with any individual (including officers, directors, trustees, or key employees listed in Form 990, Part VII) or entity in connection with professional fundraising services?    ☑ **Yes** ☐ **No**

**b**   If "Yes," list the 10 highest paid individuals or entities (fundraisers) pursuant to agreements under which the fundraiser is to be compensated at least $5,000 by the organization.

| (i) Name and address of individual or entity (fundraiser) | (ii) Activity | (iii) Did fundraiser have custody or control of contributions? | | (iv) Gross receipts from activity | (v) Amount paid to (or retained by) fundraiser listed in col. (i) | (vi) Amount paid to (or retained by) organization |
|---|---|---|---|---|---|---|
| | | Yes | No | | | |
| **1** ALLEGIANCE DBA MEMBERSHIP ADVISORS, 11250 WAPLES MILL RD, FAIRFAX, VA 22030 | FUNDRAISING CONSULTANT | | ✔ | 47,634,979 | 1,080,000 | 46,554,979 |
| **2** INFOCISION MANAGEMENT CORP, 325 SPRINGSIDE DR, AKRON, OH 44333 | PAID SOLICITOR | | ✔ | 7,044,115 | 3,437,873 | 3,606,242 |
| **3** 501C SOLUTIONS, 2530 MERIDIAN PKWY, STE 300, RESEARCH TRIANGLE PARK, NC 27713 | FUNDRAISING CONSULTANT | | ✔ | 0 | 320,000 | (320,000) |
| **4** MCKENNA & ASSOCIATES, 2001 CALRENDON BLVD, STE 201, ARLINGTON, VA 22202 | FUNDRAISING CONSULTANT | | ✔ | 0 | 300,000 | (300,000) |
| **5** KEY & ASSOCIATES, 12177 CHANCERY STATION CIR, RESTON, VA 20191 | FUNDRAISING CONSULTANT | | ✔ | 0 | 72,000 | (72,000) |
| **6** COMMONWEALTH GROUP PARTNERS, 1579 MONROE SR, STE F-341, ATLANTA, GA 30324 | FUNDRAISING CONSULTANT | | ✔ | 0 | 60,000 | (60,000) |
| **7** | | | | | | |
| **8** | | | | | | |
| **9** | | | | | | |
| **10** | | | | | | |
| **Total** . . . . . . . . . . . . . ▶ | | | | 54,679,094 | 5,269,873 | 49,409,221 |

**3**   List all states in which the organization is registered or licensed to solicit contributions or has been notified it is exempt from registration or licensing.

AL, AK, AZ, AR, CA, CO, CT, DC, FL, GA, HI, IL, KS, KY, LA, ME, MD, MA, MI, MN, MS, MO, NH, NJ, NM, NY, NC, ND,

OH, OK, OR, PA, RI, SC, TN, UT, VA, WA, WV, WI

----------------------------------------------------------------
----------------------------------------------------------------
----------------------------------------------------------------
----------------------------------------------------------------
----------------------------------------------------------------
----------------------------------------------------------------
----------------------------------------------------------------
----------------------------------------------------------------
----------------------------------------------------------------

**For Paperwork Reduction Act Notice, see the Instructions for Form 990 or 990-EZ.**    Cat. No. 50083H    **Schedule G (Form 990 or 990-EZ) 2019**

Schedule G (Form 990 or 990-EZ) 2019 | Page **2**

| **Part II** | **Fundraising Events.** Complete if the organization answered "Yes" on Form 990, Part IV, line 18, or reported more than $15,000 of fundraising event contributions and gross income on Form 990-EZ, lines 1 and 6b. List events with gross receipts greater than $5,000. |

| | | | **(a)** Event #1<br>NRAILA AUCTION<br>(event type) | **(b)** Event #2<br>_____<br>(event type) | **(c)** Other events<br>_____<br>(total number) | **(d)** Total events<br>(add col. **(a)** through<br>col. **(c)**) |
|---|---|---|---|---|---|---|
| Revenue | 1 | Gross receipts . . . . | 758,465 | 0 | | 758,465 |
| | 2 | Less: Contributions . | 0 | 0 | | 0 |
| | 3 | Gross income (line 1 minus line 2) . . . . . . . | 758,465 | 0 | 0 | 758,465 |
| Direct Expenses | 4 | Cash prizes . . . . . | 0 | 0 | 0 | 0 |
| | 5 | Noncash prizes . . . | 0 | 0 | 0 | 0 |
| | 6 | Rent/facility costs . . . | 42,908 | | | 42,908 |
| | 7 | Food and beverages . . | 193,500 | | | 193,500 |
| | 8 | Entertainment . . . . | 147,899 | | | 147,899 |
| | 9 | Other direct expenses . | 60,697 | | | 60,697 |
| | 10 | Direct expense summary. Add lines 4 through 9 in column (d) . . . . . . . . . ▶ | | | | 445,004 |
| | 11 | Net income summary. Subtract line 10 from line 3, column (d) . . . . . . . . ▶ | | | | 313,461 |

| **Part III** | **Gaming.** Complete if the organization answered "Yes" on Form 990, Part IV, line 19, or reported more than $15,000 on Form 990-EZ, line 6a. |

| | | | **(a)** Bingo | **(b)** Pull tabs/instant bingo/progressive bingo | **(c)** Other gaming | **(d)** Total gaming (add col. **(a)** through col. **(c)**) |
|---|---|---|---|---|---|---|
| Revenue | 1 | Gross revenue . . . . | | | | |
| Direct Expenses | 2 | Cash prizes . . . . | | | | |
| | 3 | Noncash prizes . . . | | | | |
| | 4 | Rent/facility costs . . . | | | | |
| | 5 | Other direct expenses . | | | | |
| | 6 | Volunteer labor . . . . | ☐ Yes _____%<br>☐ No | ☐ Yes _____%<br>☐ No | ☐ Yes _____%<br>☐ No | |
| | 7 | Direct expense summary. Add lines 2 through 5 in column (d) . . . . . . . . ▶ | | | | |
| | 8 | Net gaming income summary. Subtract line 7 from line 1, column (d) . . . . . . . ▶ | | | | |

9   Enter the state(s) in which the organization conducts gaming activities: _____
a   Is the organization licensed to conduct gaming activities in each of these states? . . . . . . . . . ☐ Yes ☐ No
b   If "No," explain: _____
     _____

10a  Were any of the organization's gaming licenses revoked, suspended, or terminated during the tax year? . ☐ Yes ☐ No
b   If "Yes," explain: _____
     _____

Schedule G (Form 990 or 990-EZ) 2019

Schedule G (Form 990 or 990-EZ) 2019     Page **3**

| | | | |
|---|---|---|---|
| **11** | Does the organization conduct gaming activities with nonmembers? . . . . . . . . . | ☐ **Yes** | ☐ **No** |
| **12** | Is the organization a grantor, beneficiary or trustee of a trust, or a member of a partnership or other entity formed to administer charitable gaming? . . . . . . . . . . . . . . | ☐ **Yes** | ☐ **No** |

**13**   Indicate the percentage of gaming activity conducted in:

| | | | |
|---|---|---|---|
| **a** | The organization's facility . . . . . . . . . . . . . . . . . . . | **13a** | % |
| **b** | An outside facility . . . . . . . . . . . . . . . . . . . . | **13b** | % |

**14**   Enter the name and address of the person who prepares the organization's gaming/special events books and records:

Name ▶ _____

Address ▶ _____

**15a**   Does the organization have a contract with a third party from whom the organization receives gaming revenue? . . . . . . . . . . . . . . . . . . . . . .    ☐ **Yes**   ☐ **No**

   **b**   If "Yes," enter the amount of gaming revenue received by the organization ▶   $ _____ and the amount of gaming revenue retained by the third party ▶   $ _____

   **c**   If "Yes," enter name and address of the third party:

Name ▶ _____

Address ▶ _____

**16**   Gaming manager information:

Name ▶ _____

Gaming manager compensation ▶   $ _____

Description of services provided ▶ _____

    ☐ Director/officer     ☐ Employee     ☐ Independent contractor

**17**   Mandatory distributions:

   **a**   Is the organization required under state law to make charitable distributions from the gaming proceeds to retain the state gaming license? . . . . . . . . . . . . . . . . .    ☐ **Yes**   ☐ **No**

   **b**   Enter the amount of distributions required under state law to be distributed to other exempt organizations or spent in the organization's own exempt activities during the tax year ▶   $

| | |
|---|---|
| **Part IV** | **Supplemental Information.** Provide the explanations required by Part I, line 2b, columns (iii) and (v); and Part III, lines 9, 9b, 10b, 15b, 15c, 16, and 17b, as applicable. Also provide any additional information. See instructions. |

SEE NEXT PAGE

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

Schedule G (Form 990 or 990-EZ) 2019