| | |
|---|---|
| Gerrit M. Pronske<br>State Bar No. 16351640<br>Eric M. Van Horn<br>State Bar No. 24051465<br>Jason P. Kathman<br>State Bar No. 24070036<br>**SPENCER FANE LLP**<br>2200 Ross Avenue, Suite 4800 West<br>Dallas, TX 75201<br>(214) 750-3610 – Telephone<br>(214) 750-3612 – Telecopier<br>-and-<br>5700 Granite Parkway, Suite 650<br>Plano, TX 75024<br>(972) 324-0300 – Telephone<br>(972) 324-0301 – Telecopier<br>Email: gpronske@spencerfane.com<br>Email: ericvanhorn@spencerfane.com<br>Email: jkathman@spencerfane.com<br><br>**COUNSEL FOR THE PEOPLE OF THE STATE OF NEW YORK, BY LETITIA JAMES, ATTORNEY GENERAL OF THE STATE OF NEW YORK** | James Sheehan<br>*Pro Hac Vice*<br>Emily Stern<br>*Pro Hac Vice*<br>Monica Connell<br>*Pro Hac Vice*<br>Stephen Thompson<br>*Pro Hac Vice*<br>**OFFICE OF THE ATTORNEY GENERAL OF THE STATE NEW OF NEW YORK**<br>28 Liberty Street<br>New York, NY 10005<br>(212) 416-8401 – Telephone<br>Email: James.Sheehan@ag.ny.gov<br>Email: Emily.Stern@ag.ny.gov<br>Email: Monica.Connell@ag.ny.gov<br>Email: Stephen.Thompson@ag.ny.gov<br><br>**COUNSEL FOR THE PEOPLE OF THE STATE OF NEW YORK, BY LETITIA JAMES, ATTORNEY GENERAL OF THE STATE OF NEW YORK** |

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| IN RE: | § | |
| | § | CASE NO. 21-30085-hdh-11 |
| NATIONAL RIFLE ASSOCIATION | § | |
| OF AMERICA and SEA GIRT LLC, | § | CHAPTER 11 |
| | § | |
| Debtors[1]. | § | Jointly Administered |

**THE STATE OF NEW YORK'S PRELIMINARY OBJECTION TO DEBTORS'
APPLICATION FOR AN ORDER AUTHORIZING THE RETENTION AND
EMPLYOMENT OF ANKURA CONSULTING GROUP, LLC AND
APPOINTMENT OF LOUIS ROBICHAUX IV TO SERVE
<u>AS THE DEBTORS' CHIEF RESTRUCTURING OFFICER</u>**

---

[1] The last four digits of the Debtors' taxpayer identification numbers are: 6130 (NRA) and 5681 (Sea Girt). The Debtors' mailing address is 11250 Waples Mill Road, Fairfax, Virginia 22030.

**THE STATE OF NEW YORK'S PRELIMINARY OBJECTION TO THE DEBTORS' CRO APPLICATION
– PAGE 1**

**TO THE HONORABLE HARLIN D. HALE,
CHIEF UNITED STATES BANKRUPTCY JUDGE:**

The People of the State of New York, by Letitia James, Attorney General of the State of New York ("**NYAG**"), a party in interest in the above-referenced bankruptcy case, hereby respectfully submits this *Preliminary Objection* (the "**Objection**") to the Debtors' *Application for an Order Authorizing the Retention and Employment of Ankura Consulting Group, LLC and Appointment of Louis Robichaux IV as the Debtors' Chief Restructuring Officer* [Docket No. 519] (the "**CRO Application**", Mr. Robichaux IV is the "**Proposed CRO**", and Ankura Consulting Group, LLC is "**Ankura**").

### PRELIMINARY STATEMENT

1.  The Debtors CRO Application and Motion for Expedited Consideration,[2] filed mid-trial (the "**Trial**") on the NYAG's *Motion to Dismiss, or, in the Alternative, Appoint a Trustee*[3] and other similar motions (collectively the "**Dismissal/Trustee Motions**"),[4] should be denied. The CRO Application is yet another attempt by Debtors in this bankruptcy proceeding to assert improper corporate authority in contravention of the NRA's bylaws. After filing this bankruptcy without authority or the Board's informed consent, now Debtors attempt to install a new officer without providing notice to and approval of, the NRA's members, as required by the Association's Bylaws.[5]

2.  Even if allowable under the Bylaws, the Court should not approve the application because the proposed CRO will not provide the promised independent oversight. The pending

---

[2] Docket No. 520 (the "**Motion to Expedite**").
[3] *The State of New York's Motion to Dismiss, or, in the Alternative, to Appoint a Trustee* [Docket Nos. 155-156, 163] (the "**Motion**").
[4] The Dismissal/Trustee Motions include Ackerman McQueen, Inc.'s *Motion to Dismiss the Chapter 11 Bankruptcy Petition, or, in the Alternative, Motion for the Appointment of a Chapter 11 Trustee* [Docket No. 131], the District of Columbia's motion and joinder in support of the NYAG's Motion [Docket Nos. 214 & 429]. The Trial is also adjudicating the Motion for Appointment of Examiner [Docket No. 114].
[5] Bylaws at Art. V, Sec. 1(b). A copy of the NRA's most recent Bylaws are attached hereto as **Exhibit A**.

---

**THE STATE OF NEW YORK'S PRELIMINARY OBJECTION TO THE DEBTORS' CRO APPLICATION
– PAGE 2**

Dismissal/Trustee Motions allege bad faith, fraud, dishonesty and gross mismanagement by the Debtors' current leadership team. The evidence adduced thus far has demonstrated serious abuses by the Debtors' leadership. Indeed, by the Debtors' own admission, there is no financial need for the CRO. Accordingly, the appointment must be intended to address the issues relating to governance failures, especially by Executive Vice President Wayne LaPierre and members of the Special Litigation Committee ("**SLC**"). Yet the proposed terms of the CRO appointment undermine the CRO's authority with conflicts, including by granting the SLC[6] ultimate decision making authority over any dispute between the CRO and management. Further, as a Section 363(b) retention, instead of Section 327, this Court and the parties will be deprived of the transparency and oversight of the services rendered and fees charged to the Debtors. The facts, circumstances and issues in this case warrant more, not less, transparency and oversight.

3. The Debtors provide no reasonable justification for their request that the CRO Application be expedited and "set for hearing [at] the conclusion of the motions to dismiss and/or for appointment of a trustee or examiner, which are set to conclude on Friday, April 16 . . . or as soon thereafter as the Court can accommodate."[7] It is apparent that the CRO Application and hearing are a distraction from the matters before the Court in the Trial and yet another improper[8] attempt to add new evidence into the Trial. The Debtors' only reason for requesting an expedited hearings is because they "believe that the Court should consider [the CRO Application] at the same time as the Court is considering the [Dismissal/Trustee Motions]."[9] The Court should wait to rule, even on an interim basis, until after deciding the Dismissal/Trustee Motions, which will moot the

---

[6] The SLC is comprised of the President (Carolyn Meadows), 1st Vice President (Charles Cotton), and 2nd Vice President (Willes Lee). See Docket No. 1 at p. 5 of 16.
[7] *Motion to Expedite* at pp. 1-2.
[8] Among others prior to the CRO Application is the Debtors' eliciting testimony related to a bankruptcy plan that has not been filed or the subject of full and fair discovery for the Trial.
[9] *Motion to Expedite* at pp.1-2.

**THE STATE OF NEW YORK'S PRELIMINARY OBJECTION TO THE DEBTORS' CRO APPLICATION
– PAGE 3**

application if the Court grants either form of relief.[10] No emergency exists that requires the Court to issue a decision, even on an interim basis, that would also be a significant usurpation of the Bylaws.

4. The NYAG further joins and shares the concerns and objections raised by the Office of the United States Trustee (the "**UST**") [Docket No. 580] (the "**UST Objection**").

## PRELIMINARY OBJECTION

### A. THE BYLAWS PROHIBIT A NEW OFFICER POSITION.

5. The Court should deny the CRO Application because the Bylaws clearly and strictly prohibit the creation of a new officer position without amending the Bylaws through the members.

6. Article V of the Bylaws is entitled "Officers." Section 1(a) unequivocally states that the officers "shall be a President, one or more Vice Presidents, an Executive Vice President, a Secretary, a Treasurer, an Executive Director of the National Rifle Association General Operations, and an Executive Director of the [NRA] Institute of Legislative Action"[11] ("**NRA-ILA**").

7. Section 1(b) clearly and unequivocally states in bold and italicized font: "***The Board may not abolish said offices nor create any other offices***."[12] The use of bold and italicized font has important consequences and restrictions on changing provisions like Section 1(b). The Bylaws state in all capitalized font:[13]

---

[10] The Court's Local Bankruptcy Rules allow the proposed professionals (Ankura and the Proposed CRO) to work for the Debtors while the application is pending, and any such approval of the application can relate back to the date work began. L.B.R. 2014-1(b)(1). As the Court is aware, the Debtors designated the Proposed CRO as its corporate representative for the remainder of the Trial. In short,
[11] Bylaws at Art. V., Sec. 1(a).
[12] *Id.* at Sec. 1(b) (emphasis in the original).
[13] *Id.* at p. 2 (capitalization in the original).

**THE STATE OF NEW YORK'S PRELIMINARY OBJECTION TO THE DEBTORS' CRO APPLICATION – PAGE 4**

> NOTE: AMENDMENTS IN BOLD FACE ITALICS SHALL NOT BE REPEALED OR AMENDED BY THE BOARD OF DIRECTORS.

8. To amend or repeal this provision, and others like it, requires approval by the members of the NRA by mail: [14]

> Section 4. Authority to Amend or Repeal.
> Any Bylaw adopted by the Board may be amended or repealed either by the Board, or by the members by mail pursuant to Section 2 of this Article. Any Bylaw adopted by the members may be amended or repealed by the Board, unless it is adopted in bold face italics, in which case it may be amended or repealed only by the members, by mail, and not by the Board.

9. By requesting the Court's approval of the CRO Application, the Debtors are requesting the Court to circumvent, if not ignore, the NRA's Bylaws. Given the clear and direct prohibition on the creation of new officer positions, the Court should not approve the CRO Application, even on an interim basis, without the NRA properly creating the officer position of Chief Restructuring Officer pursuant to, and in compliance with, its Bylaws.

**B. THE APPLICATION SHOULD BE DENIED EVEN IF THE BYLAWS DO NOT PROHIBIT THE APPOINTMENT OF A CRO.**

10. Even if the Court is willing to consider ruling upon the CRO Application prior to the end of Trial and without the NRA's Bylaws being amended by the NRA's membership, the Court should deny the application for several reasons.

   **i. An Independent Statutory Trustee is Required to Address the NRA's Issues Because the Proposed CRO is Subject to Significant Control by the SLC and Mr. LaPierre.**

---

[14] Bylaws at Art. XV, Sec. 4. The procedure for proposing such actions to members by mail is provided by Art. XV, Sec. 3.

**THE STATE OF NEW YORK'S PRELIMINARY OBJECTION TO THE DEBTORS' CRO APPLICATION – PAGE 5**

11. First, the NYAG agrees with the UST that the Proposed CRO will lack the independence required to resolve the NRA's underlying issues.[15] Rather, only an independent fiduciary provided by the Bankruptcy Code, namely a chapter 11 trustee, will possess the requisite powers and authorities to properly effectuate the necessary changes should these cases not be dismissed. Below are just a few examples of the lack of independence that prevents the Proposed CRO from making significant changes that the NRA's current leadership may resist and reject.

12. The Proposed CRO and Ankura do not report to any independent committee or special committee that is composed of clearly independent and unconflicted members who had no part in commencing or continuing the Debtors' bankruptcy cases. Instead, the Proposed CRO and Ankrua report directly to the SLC.[16] Further, the chain of decision makers for any material action that the Proposed CRO would recommend are the same conflicted, and potentially conflicted, officers – Wayne LaPierre as the Executive Vice President ("**EVP**"), and the members of the SLC – Ms. Meadows, Mr. Cotton and Mr. Lee[17] who are responsible for commencing and continuing the Debtors' bankruptcy cases.

13. "In the event of a material difference of opinion among the CRO . . . and Company management . . . regarding any matter constituting Management Operations, the matter may be raised with the elected Officers of the Company, who may propose a resolution."[18] Company management is not defined, but presumably, at the top of the management is Mr. LaPierre as the EVP. But even if the "Company management" does not include Mr. LaPierre, and a "material difference of opinion" exists, then the Proposed CRO may raise the issue with "elected Officers."

---

[15] *See generally*, UST Objection at ¶¶8-15.
[16] CRO Application, Ex. B at p. 8 ("We . . . will report directly to the Special Litigation Committee . . . ."); and p. 22 of 24 ("The CRO will report directly to the SLC . . . .").
[17] CRO Application, Ex. B at p. 23 of 24.
[18] CRO Application, Ex. B at p. 23 of 24.

**THE STATE OF NEW YORK'S PRELIMINARY OBJECTION TO THE DEBTORS' CRO APPLICATION – PAGE 6**

While that phrase, in whole or part, is not defined, the elected Officers of the NRA are the eight (8) elected by the Board pursuant to the Bylaws detailed above: President (Ms. Meadows), 1st Vice President (Mr. Cotton), 2nd Vice President (Mr. Lee), the EVP (Mr. LaPierre), the Secretary (John Frazer, who is also the general counsel), the Treasurer[19], Executive Director for the NRA-ILA (Jason Oimet), and the Executive Director of General Operations (Joseph DeBergalis, Jr.). Given that Mr. Spray, the Treasurer, is separated from the NRA and not involved in operations or decision making, there are effectively only seven (7) elected Officers, of which four (4) are Mr. LaPierre and the members of the SLC, and would, therefore, control the decision making on behalf of the elected Officers and any resolution they might propose. Then, if the Proposed CRO still disagrees, he may "bring the matter to the SLC for final determination."[20] Ultimately, the Proposed CRO's different levels of dispute resolution on a material difference of opinion over Management Operations matters involves Mr. LaPierre and the members of the SLC. As for CRO Responsibilities (which include both the Management Operations and Bankruptcy Responsibilities), the Proposed CRO's decision making is "subject to only the direction, limitations, and parameters set by the SLC and consistent with the Company's bylaws and all applicable laws."[21]

14. Furthermore, the possibility exists that the SLC could be in a conflicted position with respect to certain proposals the Proposed CRO may develop. For example, the Proposed CRO may recommend a plan that replaces one or more of the elected Officers, or the members of the SLC entirely. The CRO Application contains no solution or provisions to address who at the NRA

---

[19] According to the Debtors, the Treasurer is still Craig Spray, however, Mr. Spray has no day to day involvement or communication with the Debtors in his role as Treasurer and has testified at the Trial that he is "not performing that role" but performing duties for transitioning certain matters to an interim Treasurer, like changing signature cards.
[20] CRO Application, Ex. B at p. 23 of 24.
[21] CRO Application, Ex. B at p. 8 of 24. Ankura must also take its "direction, guidance or instruction from the SLC" if there is a disagreement in connection with the Services (as defined by the engagement letter) it provides. *Id.*

**THE STATE OF NEW YORK'S PRELIMINARY OBJECTION TO THE DEBTORS' CRO APPLICATION
– PAGE 7**

will make such decisions if a conflict arises for the members of the SLC. The Proposed CRO's and Ankura's engagement is therefore severely limited and potentially not likely to be effective given the ultimate control and power over them by the SLC and Mr. LaPierre, and the failure to provide for decision makers if or when a decision presents a conflict for the SLC. Given these issues, a chapter 11 trustee is the proper solution if the cases are not dismissed, not an extra-statutory creation of the Debtors.

### ii. The $1 Million Restructuring Fee Appears Excessive and Presents Potential Conflicts.

15. Second, the CRO Application provides for a $1 million "restructuring fee" "payable immediately upon the effective date of any Chapter 11 plan consented to, or accepted by, the Debtors."[22] Not only does this appear to be an excessive, and unnecessary, additional fee to be paid given the hourly rate structure for Ankura and hourly rate of $1,155 per hour of the Proposed CRO, the existence of this provision creates a potential conflict under these facts and circumstances. The "restructuring fee" acts as an incentive for the Proposed CRO to develop and seek confirmation of a plan that the Debtors ultimately approve, which could operate as a disincentive to seeking approval of a plan that the Proposed CRO may believe is better for the Debtors (e.g., a plan that may replace one or more of the elected Officers). Moreover, given that the Debtors have already stated the ability and intent to propose a plan that pays unsecured, undisputed creditors 100%, and the Debtors currently hold enough available cash to pay such creditors under a plan, it is unclear what justifies such a large fee to confirm a plan.

### iii. The Proposed Services Appear Duplicative and Potentially Unnecessary.

16. Third, the services to be provided by the Proposed CRO could duplicate services of other estate professionals including the Debtors' financial advisor. During the Proposed CRO's

---

[22] CRO Application at p. 6, ¶22.

deposition, he testified that he and Ankura would provide services that include accounting, budget to actual finance related services, financial analysis of a plan, and financial reporting.[23] Further, the services that comprise "Management Operations" in the CRO Application,[24] would appear to duplicate many, if not most, of the services and duties being performed by the NRA's Executive Director of General Operations and those who report to him. Further, the Proposed CRO will also undertake and perform what is defined as the "CRO Responsibilities" to effectuate the Debtors' bankruptcy restructuring.[25] As discussed above, developing and confirming a plan under these facts and circumstances does not appear to require significant financial restructuring that needs the expertise of the Proposed CRO. Instead, any challenges in developing or confirming a bankruptcy plan is likely to be based upon core legal issues related to how the plan may address the NYAG's Enforcement Action – not core financial issues.

          iv.       **The Proposed Compensation Structure Lacks Appropriate Oversight.**

17.     Fourth, the Court should not approve the CRO Application because it seeks approval under Section 363(b) which will deprive the Court and parties, including the UST, from oversight and the Court's approval of the Proposed CRO's and Ankura's fees. Under the facts and circumstances of these Debtors' cases, more – not less – oversight and transparency is needed, including of all professionals' fees and services rendered on the Debtors' behalf.

**C.     NO EMERGENCY EXISTS AND THE APPLICATION MAY BECOME MOOT.**

18.     The Debtors provide no legitimate basis or grounds as to why an emergency exists to justify a ruling, even on an interim basis, which (as detailed below) would represent a significant

---

[23] See *Application for Order Authorizing the Retention and Employment of BVA Group Restructuring and Advisory LLC as Financial Advisor to the Debtors* [Docket No. 349] at ¶9 (services to be provided include "Facilitating bankruptcy financial reporting and disclosures; Assisting Debtors with management of its financial and treasury functions; Supporting the preparation of financial projections and liquidity planning/management . . . .")
[24] CRO Application, Ex. B at pp. 22-23 of 24.
[25] CRO Application, Ex. B at p. 23.

**THE STATE OF NEW YORK'S PRELIMINARY OBJECTION TO THE DEBTORS' CRO APPLICATION – PAGE 9**

circumvention and deviation of the NRA's Bylaws. The Debtors grounds are limited solely to their belief "that the Court should consider [the CRO Application] at the same time as the Court is considering the [Dismissal/Trustee Motion]."[26] The Debtors' do not cite any emergency crisis that the CRO and Ankura must address – and can only address – with the Court's approval of their employment, even on an interim basis. Indeed, they cannot because the Local Bankruptcy Rules already provide the Debtors the benefit of their services without the necessity of even an interim order approving their employment. Thus, the desire to have the application considered with the Dismissal/Trustee Motions is clearly the Debtors' desperate efforts to influence the Court's ruling on those motions. Were the Debtors confident that they could prevail at Trial on the merits, they would have no need to seek an expedited hearing on the CRO Application. The Court should not indulge this latest litigation tactic.

19. A ruling on the CRO Application is also premature and unnecessary until after the Court decides the Dismissal/Trustee Motions because the outcome may moot the need for such a ruling. If the Court dismisses the Debtors' cases, the CRO Application is immediately moot. If the Court appoints a chapter 11 trustee, that trustee immediately replaces management which would obviate any need for a CRO, or at least one selected by the Debtors. The Court should not indulge the Debtors attempt to force the Court to make unnecessary decisions.

**D. THE DEBTORS DO NOT NEED COURT APPROVAL TO OBTAIN THE BENEFITS OF THE CRO APPLICATION.**

20. Local Bankruptcy Rule 2014-1(b)(1) provides Debtors the benefit of the services of their chosen professionals, like the Proposed CRO and Ankura, during the period of time when their applications are pending and being considered by thy Court. This is achieved by operation of the Court's local rules: "If a motion for approval of the employment of a professional is made

---

[26] *Motion to Expedite* at pp.1-2.

**THE STATE OF NEW YORK'S PRELIMINARY OBJECTION TO THE DEBTORS' CRO APPLICATION – PAGE 10**

within 30 days of the commencement of that professional's provision of services, it is deemed contemporaneous."[27] This local rule avoids the necessity of debtors or other estate constituencies, like creditors' committees, from rushing to the Court to seek emergency, even interim, approval of the employment of their professionals. In fact, the multiple professionals employed by both the Debtors[28] and the Official Committee of Unsecured Creditors (the "**UCC**")[29] have all utilized – and benefited from – this exact provision.

21. Based upon the CRO Application and engagement letter, April 2, 2021 (defined as the "Effective Date" in the engagement letter) is the date when services began to be provided to the Debtors.[30] The CRO Application was filed on April 7, 2021, well within thirty (30) days of the Effective Date. By having filed the CRO Application well within thirty (30) days, the Debtors also fulfilled their obligation to Ankura in the engagement letter to "use their best efforts to ensure that the Bankruptcy Court approves this Agreement, *nunc pro tunc*, to the Effective Date."[31]

22. The Debtors provide no legitimate reason why the CRO Application should be treated differently, much less preferentially, to all of the other employment applications of the Debtors' and UCC's professionals. The local rules effectively, and wisely, address and accommodate any concerns proposed professionals or their clients may have about ensuring

---

[27] L.B.R. 2014-1(b)(1).
[28] *See* Docket No. 319 (the Court's order approving the Debtors' application to employ Neligan LLP filed on January 29, 2021 effective as of January 15, 2021 (the "**Petition Date**")); Docket No. 365 (the Court's order approving the Debtors' application to employ Garman Turner Gordon LLP filed on February 10, 2021 effective as of January 25, 2021); Docket No. 554 (the Court's order approving the Debtors' application to employ BVA Group Restructuring and Advisory LLC filed on March 12, 2021 effective as of March 10, 2021); Docket No. 364 (the Court's order continuing the hearing until after the Trial on the Debtors' application to employ Brewer Attorneys & Counselors filed on January 29, 2021 (the "**Brewer Application**") which sought approval effective as of the Petition Date; if approved, even months after services began, the application would be approved retroactively to the Petition Date).
[29] *See* Docket No. 489 (the Court's order approving the UCC's application to employ Norton Rose Fulbright US LLP filed on March 10, 2021 effective as of February 8, 2021); Docket No. 490 (the Court's order approving the UCC's application to employ AlixPartners, LLP filed on March 10, 2021 effective as of February 8, 2021).
[30] CRO Application, Ex. B at p. 8 of 24: "This letter agreement . . . entered into and effective as of April 2, 2021, confirm the terms of the agreement among [Ankura] and [the Debtors] . . . ."
[31] *Id*. at p. 11 of 24, Section 8(a).

approval of services by such professionals to begin effective as of the date when such services started so long as the applications are filed within thirty (30) days. That occurred here with the CRO Application, and nothing further is needed, much less required, of the Court to provide the Debtors' with the benefit of the services of the Proposed CRO and Ankura.

## RESERVATION OF RIGHTS

23. Due to the expedited nature of the hearing on the CRO Application, the NYAG reserves all rights to supplement and modify the Objection. Further, the NYAG shares the concerns and joins the objections raised by the UST.

## CONCLUSION

24. The Debtors do not need this Court to enter an order, even on an interim basis, to obtain the services of the Proposed CRO and Ankura. The Debtors have demonstrated no exigency for the Court to not simply rely upon Local Bankruptcy Rule 2014-1(b)(1) which assures that any ultimate approval of the CRO Application will be effective as of the date when services began on April 2, 2021. The Court should be wary of accepting the Debtors' invitation to approve the CRO Application, even on an interim basis, given the clear prohibition by the NRA's Bylaws of creating a new officer position. The Court should, therefore, at minimum, defer any ruling on the application until after the Dismissal/Trustee Motions are decided.

25. Regardless of when the Court believes it is proper to rule upon the CRO Application, the application should be denied. The NRA does not currently have a chief restructuring officer position, nor has the NRA properly created one by complying with its Bylaws. Until the NRA has done so, the Court should deny the CRO Application. Further, the Court should deny the CRO Application based upon the reporting and decision making chain of command that rests the ultimate power and control with Mr. LaPierre and the three members of the SLC. Instead,

a court appointed, independent statutory fiduciary is the proper solution if these cases are not dismissed.

26. For the reasons demonstrated above, NYAG respectfully requests that the Court (1) deny the CRO Application; or (2) defer the ruling on the CRO Application until after the Court decides the Dismissal/Trustee Motions. NYAG also requests that the Court grant such other and further relief as it deems just, proper and appropriate.

Dated: April 15, 2021

Respectfully submitted,

*/s/ Eric M. Van Horn*
Gerrit M. Pronske
State Bar No. 16351640
Eric M. Van Horn
State Bar No. 24051465
Jason P. Kathman
State Bar No. 24070036
**SPENCER FANE LLP**
2200 Ross Avenue, Suite 4800 West
Dallas, Texas 75201
(214) 750-3610 – Telephone
(214) 750-3612 – Telecopier
-and-
5700 Granite Parkway, Suite 650
Plano, Texas 75024
(972) 324-0300 – Telephone
(972) 324-0301 – Telecopier
Email: gpronske@spencerfane.com
Email: ericvanhorn@spencerfane.com
Email: jkathman@spencerfane.com

– And –

*/s/ Monica Connell*
Monica Connell
*Pro Hac Vice*
James Sheehan
*Pro Hac Vice*
Emily Stern
*Pro Hac Vice*
Stephen Thompson
*Pro Hac Vice*
**OFFICE OF THE ATTORNEY GENERAL OF THE STATE OF NEW YORK**
28 Liberty Street

**THE STATE OF NEW YORK'S PRELIMINARY OBJECTION TO THE DEBTORS' CRO APPLICATION – PAGE 13**

New York, NY 10005  
(212) 416-8401  
Email: James.Sheehan@ag.ny.gov  
Email: Emily.Stern@ag.ny.gov  
Email: Monica.Connell@ag.ny.gov  
Email: Stephen.Thompson@ag.ny.gov  

**COUNSEL FOR THE PEOPLE OF THE STATE OF NEW YORK, BY LETITIA JAMES, ATTORNEY GENERAL OF THE STATE OF NEW YORK**

## CERTIFICATE OF SERVICE

I hereby certify that on April 15, 2021, a true and correct copy of the foregoing was served (without exhibits) upon all parties entitled to notice, including the Debtors and United States Trustee, via the Court's electronic transmission facilities. Any party may request the exhibits from the counsel listed above. Any additional method of service will be reflected with a supplemental certificate of service.

*/s/ Eric M. Van Horn*

Eric M. Van Horn