Patrick J. Neligan, Jr.
State Bar. No. 14866000
Douglas J. Buncher
State Bar No. 03342700
John D. Gaither
State Bar No. 24055516
**Neligan LLP**
325 North St. Paul, Suite 3600
Dallas, Texas 75201
Telephone: 214-840-5333
Facsimile: 214-840-5301
pneligan@neliganlaw.com
dbuncher@neliganlaw.com
jgaither@neliganlaw.com

Gregory E. Garman
Nevada Bar No. 6665, *pro hac vice*
William M. Noall
Nevada Bar No. 3549, *pro hac vice*
Gabrielle A. Hamm
Texas Bar No. 24041047
**Garman Turner Gordon LLP**
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
Telephone: (725) 777-3000
Facsimile: (725) 777-3112
ggarman@gtg.legal
wnoall@gtg.legal
ghamm@gtg.legal

**COUNSEL FOR DEBTORS**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | § | CHAPTER 11 |
| | § | |
| | § | |
| **NATIONAL RIFLE ASSOCIATION OF** | § | **CASE NO. 21-30085-hdh11** |
| **AMERICA and SEA GIRT LLC** | § | |
| | § | |
| **DEBTORS**[1] | § | **JOINTLY ADMINISTERED** |

## DEBTORS' OBJECTION TO THE MOTION OF WILSON PHILLIPS TO MODIFY THE AUTOMATIC STAY, TO THE EXTENT APPLICABLE, TO ALLOW PAYMENT, REIMBURSEMENT, AND/OR ADVANCEMENT OF DEFENSE COSTS UNDER THE D&O POLICY

---

[1] The last four digits of the Debtors' taxpayer identification numbers are: 6130 (NRA) and 5681 (Sea Girt). The Debtors' mailing address is 11250 Waples Mill Road, Fairfax, Virginia 22030.

# TABLE OF CONTENTS

I. INTRODUCTION ...........................................................................................................................1

II. JURISDICTION AND VENUE................................................................................................3

III. FACTUAL BACKGROUND.................................................................................................3

A. Phillips Served as the NRA's Treasurer and CFO and, in a Recent Deposition, Declined to Answer Questions Posed to Him Based on His Fifth Amendment Privilege Against Self-Incrimination. ...................................................3

B. The D&O Policy Insures the NRA's Current and Former Officers and Directors as Well as the NRA, up to a Cap of $2 Million, but Provides for No Coverage for Dishonest or Similar Conduct as Finally Adjudicated in Any Proceeding.........................................................................................................4

IV. LEGAL ARGUMENT............................................................................................................6

A. In the Absence of a Court Order, Any Payment by the Insurer to Phillips Would Violate the Automatic Stay.........................................................................6

B. Phillips Has Not Shown Cause to Modify the Automatic Stay. .............................9

V. CONCLUSION........................................................................................................................12

The National Rifle Association of America (the "NRA") and Sea Girt, LLC ("Sea Girt" and, together with the NRA, the "Debtors"), as debtors and debtors in possession, file this objection (the "Objection") to the *Motion of Wilson Phillips to Modify the Automatic Stay, to the Extent Applicable, to Allow Payment, Reimbursement, and/or Advancement of Defense Costs Under the D&O Policy* (Docket No. 557) (the "Motion") and further state:

## I.
## INTRODUCTION

The automatic stay of section 362 of the Bankruptcy Code prohibits third parties, such as Phillips, from attempting to collect from or take actions that would otherwise adversely affect property of the Debtors' bankruptcy estates. This fundamental protection ensures a breathing spell for the Debtors and preservation of the Debtors' assets while allowing the Debtors to focus on their reorganization efforts for the benefit of all creditors.

Phillips, the former CFO of the NRA who left the NRA in 2018, seeks permission to make a claim on the Debtors' directors' and officers' insurance policy (the "D&O Policy") for reimbursement or advancement of defense costs in the New York Attorney General's lawsuit against the NRA in which he and certain other NRA officers are named as Defendants.[2] He also seeks proceeds under the D&O Policy in furtherance of a potential settlement payment.

Whatever the purpose of the payment that Phillips seeks, allowing him to claim proceeds of the D&O Policy would dissipate property of the Debtors' estates. The NRA is itself an insured under the D&O Policy; therefore, pursuant to the Fifth Circuit precedent, the proceeds of the D&O Policy are an asset of the NRA's bankruptcy estate. Unlike the policies at issue in the cases Phillips

---

[2] *People of the State of New York v. The National Rifle Association et al.*, Index No. 451625/2020 (Sup. Ct. N.Y.) (the "NYAG Action") (**Exhibit A-1**).

cites, the D&O Policy here provides direct coverage for covered losses of the NRA, not simply reimbursement to the NRA for its indemnification liability to the individual director and officer insureds. For that reason, the D&O Policy provides potential coverage for the claims made against the NRA in the lawsuits brought against the NRA by the Attorneys General of New York and the District of Columbia.[3] Because the limit of liability under the D&O Policy is $2 million, and the D&O Policy is a wasting policy, any payments to Phillips will deplete—dollar for dollar—the limited amounts of coverage available for the NRA. Therefore, the Court should not lift the stay to allow Phillips to make a claim and obtain reimbursement of defense costs under the D&O Policy, potentially exhausting the coverage available for the NRA.

Phillips argues that even if the automatic stay applies it should be lifted to allow the insurance company to pay him. However, Phillips fails to show that cause exists for such relief. The D&O Policy does not cover any losses "brought about or contributed to by any intentional dishonest or fraudulent act or omission or any intentional criminal act or omission, as determined by a final adjudication in any action or proceeding." At a recent deposition in these chapter 11 cases, Phillips invoked his Fifth Amendment privilege against self-incrimination when he was questioned about the subject matter of the NYAG's allegations against him. Similarly, he invoked his Fifth Amendment privilege and declined to answer questions when he was asked to confirm the truthfulness of his representations to the NRA, its auditors, and the IRS in internal conflict of interest questionnaires, in management representation letters, and on the NRA's Forms 990, respectively. Consequently, as the Debtors' disclosures reveal, the Debtors believe that they have

---

[3] *District of Columbia v. NRA Foundation, Inc. et al.*, Case No. 2020 CA 003454 B (D.C. Sup. 2020) (the "DCAG Action") (**Exhibit A-2**). The NRA is also a defendant in a putative class action brought against it and others by David Dell'Aquila (**Exhibit A-3**).

a potential claim or claims against Phillips for amounts improperly billed to, charged to, or obtained from the NRA. Docket No. 645 at page 4. Given these facts, it is questionable whether any claim by Phillips would even be covered under the D&O Policy. Given the totality of circumstances and all the reasons discussed below, Phillips's Motion should be denied.

## II.
## JURISDICTION AND VENUE

The Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. Consideration of this Motion is a core proceeding under 28 U.S.C. § 157(b)(2).

The Debtors confirm their consent, pursuant to Bankruptcy Rule 7008, to the entry of a final order by the Court.

Venue is proper pursuant to 28 U.S.C. §§ 1408(1) and (2) and 1409(a).

## III.
## FACTUAL BACKGROUND

A.  **Phillips Served as the NRA's Treasurer and CFO and, in a Recent Deposition, Declined to Answer Questions Posed to Him Based on His Fifth Amendment Privilege Against Self-Incrimination.**

The movant—an individual assured under the Policy—previously served as the NRA's Treasurer and CFO. In that position, he oversaw the NRA's Financial Services Department. In August 2020, Phillips and the NRA were among the defendants named in the NYAG Action. *See* NYAG Complaint, annexed hereto as **Exhibit A-1**. In connection with that litigation, he incurred defense costs. Phillips seeks the Court's permission for the insurer to pay him an unspecified amount for his costs, charges, and expenses in that litigation and for a potential settlement with the NYAG, thereby depleting coverage available for the NRA under the D&O Policy.

In the NYAG Action, the NYAG accuses Phillips of breaching his fiduciary duties to the NRA, unjust enrichment at the expense of the NRA, and other violations of New York law. Exhibit A-1. When Phillips served as the NRA's Treasurer and CFO, he routinely executed various documents in which he repeatedly represented that, in his dealings with the NRA, he conducted himself in accordance with the law and its internal policies, that the NRA's books and records, for which he was responsible under the NRA's Bylaws, were complete and accurate, and that he was unaware of any violations of the law or the Association's internal policies by others at the NRA. However, when Phillips was deposed in March 2021, he invoked his Fifth Amendment privilege against self-incrimination and declined to answer numerous questions about his work at the NRA, including whether his representations to the NRA, its auditors, and the Internal Revenue Service were complete, accurate, or correct. *See* Transcript of Woody Phillips's Deposition, annexed hereto as **Exhibit B**.

**B.      The D&O Policy Insures the NRA's Current and Former Officers and Directors as Well as the NRA, up to a Cap of $2 Million, but Provides for No Coverage for Dishonest or Similar Conduct as Finally Adjudicated in Any Proceeding.**

The D&O Policy was purchased by and, as Phillips concedes, belongs to the NRA. Furthermore, it provides coverage for covered losses of the NRA itself, including defense costs and other losses such as damages and judgements, not just coverage for indemnification obligations to the individual "assureds," such as Phillips. Policy, Sections I and II. The insurer's liability to all assureds, including the NRA, however, is capped at $2 million. *E.g.*, Policy, Declarations, Item C; *see also* Motion at Paragraph 12 (conceding that "Coverage under the D&O Policy is subject to a $2,000,000 aggregate limit of liability"). To date, the NRA has sought

payments under the D&O Policy for approximately $1.2 million and believes that it will incur additional losses for which it will seek payments under the D&O Policy.

Thus, any payments to the individual assureds—whether for defense costs, settlements, or otherwise—will deplete the limited amounts available to the NRA. Policy, Section II.A ("Underwriters have the . . . duty to defend any Claim . . . . Underwriters shall . . . pay all Costs . . . subject to the Retention and the Limit of Liability [which is $2 million]."); Policy, Section II.B ("Notwithstanding Paragraph II.A., Underwriters shall have no . . . duty to defend, continue to defend and to pay Costs . . . after the Limit of Liability has been made available . . . to the Insureds, irrespective of whether the availability . . . of the Limit of Liability resolves the Claim(s) or not."); Policy, Section III.B.1 ("The Limit of Liability stated in Item C.(i) of the Declarations shall be the maximum aggregate liability of Underwriters for all Loss as a result of any and all Claims first made during the Policy Period, except Claims for Wrongful Employment Practices [which is inapplicable here]."); Policy, Section III.C ("Costs, Charges and Expenses shall be part of and not in addition to the applicable Limit of Liability, and such Costs, Charges and Expenses shall reduce the applicable Limit of Liability and shall be subject to the Retention.").

In addition, the D&O Policy contains an Exclusion, which provides that the insurer has no obligation to pay Phillips or another individual assured for losses "brought about or contributed to by any intentional dishonest or fraudulent act or omission or any intentional criminal act or omission, as determined by a final adjudication in any action or proceeding other than in an action brought by Underwriters." Policy, Section VI. G.

# IV.
# LEGAL ARGUMENT

## A. In the Absence of a Court Order, Any Payment by the Insurer to Phillips Would Violate the Automatic Stay.

Because the NRA is a covered insured under the D&O Policy for its own losses, and not just for its indemnification obligations to the individual insureds, the Policy proceeds are property of the Debtor's estate. The Bankruptcy Code defines property of a bankruptcy estate to consist of "*all* legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1) (emphasis added). This definition is to be broadly construed. *United States v. Whiting Pools, Inc.*, 462 U.S. 198, 204-206 (1983). The parties agree that "liability insurance policies fall within § 541(a)(1)'s definition of estate property." *In re Vitek, Inc.*, 51 F.3d 530, 533 (5th Cir.1995); Motion at Paragraph 17.

"[T]he question of whether [insurance] *proceeds* [as opposed to the Policy] are property of the estate must be analyzed in light of the facts of each case," *In re Sfuzzi, Inc.*, 191 B.R. 664, 668 (Bankr. N.D. Tex. 1996), and as Phillips concedes, "depends on the nature of the policy." *In re Equinox Oil Co., Inc.*, 300 F.3d 614, 618 (5th Cir. 2002); Motion at Paragraph 17.

The nature of the D&O Policy here, which provides direct coverage to the NRA for covered losses, makes it clear that the proceeds of the D&O Policy are property of the NRA's estate. Phillips does not debate this point, but rather argues that the Court should nonetheless allow him to access those proceeds to pay for his defense in the NYAG Action. However, as Phillips concedes, any payment to him would deplete the limited amount of funds ($2 million) available under the Policy to cover defense costs and losses of the NRA. Motion at Paragraph 21.

When a policy provides coverage for officers and the debtor, the proceeds are property of the bankruptcy estate if depletion of the proceeds, as here, would have an adverse effect on the bankruptcy estate "to the extent the policy actually protects the estate's other assets from diminution." *In re Allied Digital Techs., Corp.*, 306 B.R. 505, 512 (Bankr. D. Del. 2004) (allowing a payment nonetheless because, unlike here, there were no active claims against the entity); *see also In re Sacred Heart Hosp. of Norristown*, 182 B.R. 413, 419-20 (Bankr. E.D. Pa. 1995) (where the debtor is an insured and has sufficient interest in the insurance proceeds, the proceeds belong in the estate).

The NRA is defending itself against multiple claims covered by the Policy. The Debtors have a tangible interest in the proceeds of the Policy and have already sought reimbursement of approximately $1.2 million in attorneys' fees incurred in connection with the various pending actions.

The authority Phillips cites for the position that the automatic stay does not apply is inapposite. In *In re Louisiana World Exposition*, the policy provided coverage only for the directors and officers and, unlike here, did *not* provide coverage for the entity. *In re Louisiana World Exposition*, 832 F.2d 1391, 1401 (5th Cir. 1987) (holding that if a debtor does not have a direct interest in the insurance proceeds, the proceeds are not property of the debtor's estate). In contrast, here, the Policy also provides coverage for the NRA.

Similarly misplaced is Phillips's reliance on *In re Edgeworth*, where the court merely held that *"[w]hen a payment by the insurer cannot inure to the debtor's pecuniary benefit*, then that payment should neither enhance nor decrease the bankruptcy estate." *In re Edgeworth*, 993 F.2d

51, 55-56 (5th Cir. 1993) (citations omitted) (emphasis added). Here, a payment by the insurer to the NRA will inure to the NRA's pecuniary benefit, and Phillips does not argue otherwise.

In *Babcock*, the payments at issue were payable by the insurer on behalf of the debtor, and the debtor itself was entitled to receive no payments. Rather the payments under the policy were payable to third parties. *In re Babcock and Wilcox*, 69 Fed. Appx. 659, at *1 (5th Cir. 2003) (upholding bankruptcy court's judgment that it had no subject matter jurisdiction over the dispute because the policy proceeds in that case were not property of the debtor's estate). Because the debtor had no right to receive or keep the proceeds, the proceeds were not property of the estate. *Id*. ("The insurance policies indicate that ANI must 'pay on behalf of' the insured . . . . This language suggests that ANI must release the proceeds of the policies to third parties. In other words, the proceeds of this liability policy inure to the benefit of plaintiffs claiming injury from ARCO and [the debtor's] operations and for cost of defense."). Here, as noted earlier, the Policy proceeds are property of the estate because the NRA is a party entitled to receive and keep them. That Phillips too arguably has rights under the Policy does not change the applicability of the automatic stay.

Lastly, in *In re GB Holdings, Inc.*, the court found that policy proceeds were property of the estate but nonetheless, on the facts specific to that case, allowed the payment. *In re GB Holdings, Inc.*, No. 05-42736 JHW, 2006 WL 4457350, at *4 (Bankr. D.N.J. Sept. 21, 2006) (allowing payment to the individuals after finding that proceeds were property of the estate where it was the debtors who sought the court's permission and the rights of the debtor were "subject to" the individuals' right to payment). That is not the case here. The Debtors are not seeking

permission to allow Phillips to be reimbursed his defense costs, and the Debtor's right to coverage is not subject to the individual's right to payment.

**B.**     <u>**Phillips Has Not Shown Cause to Modify the Automatic Stay.**</u>

In seeking to lift the stay, Phillips faces a high burden. The automatic stay contained in section 362 of the Bankruptcy Code is a fundamental protection for a debtor and its assets during the pendency of a chapter 11 case. *Matter of S.I. Acquisition, Inc.*, 817 F.2d 1142, 1146 (5th Cir. 1987). "In a chapter 11 reorganization proceeding, the stay prevents the dissipation or diminution of the bankrupt's assets while rehabilitative efforts are undertaken and prohibits the proliferation of numerous claims in different forums against the debtor." *Id*. The vital importance of the automatic stay is underscored in the Bankruptcy Code's legislative history:

> The automatic stay is one of the fundamental debtor protections provided by the bankruptcy laws. It gives the debtor a breathing spell from his creditors. It stops all collection efforts, all harassment, and all foreclosure actions. It permits the debtor to attempt a repayment or reorganization plan, or simply to be relieved of the financial pressures that drove him into bankruptcy.

*Id*.; *see also* H.R. Rep. No. 595, 95th Cong., 1st Sess. 340 (1977), *reprinted in* 1978 U.S. Code Cong. & Admin. News 5963, 6296-97.

Where a party seeks an order lifting or modifying the automatic stay to access property of the debtor's estate, it must show sufficient cause for such relief. Without sufficient cause, the automatic stay may not be lifted. 11 U.S.C. § 362(d)(1). While "cause" is not defined in the Code, whether it exists is a case-by-case inquiry and turns on totality of the circumstances. *In re Laminate Kingdom, LLC*, No. 07-10279-BKC-AJC, 2008 WL 1766637, at *3 (Bankr. S.D. Fla. Mar. 13, 2008).

Here, no sufficient cause has been or can be shown. Any modification of the stay and consequent payment to Phillips by the insurer would deplete limited coverage available to the NRA. Moreover, Phillips's right to any D&O Policy proceeds is tenuous, because the D&O Policy excludes coverage for any losses "brought about or contributed to by any intentional dishonest or fraudulent or act or omission or any intentional criminal act or omission, as determined by a final adjudication in any action or proceeding." Policy, Section VI.G. Here, at his deposition in these chapter 11 cases, Phillips refused to answer on Fifth Amendment grounds various questions about the subject matter of NYAG's allegations against him, including whether his representations to the IRS, to the NRA's auditors and to the NRA—made in his capacity as the NRA's Treasurer and CFO—were complete, accurate, or truthful. *See*, e.g., Transcript of Woody Phillips's Deposition, annexed hereto as **Exhibit B**, at 22:9-19, 24:15-23, 27:19-30:22, 33:18-37:8, 44:10-45-25, 46:8-47:1, 53:12-58:6, 251:2-252:24, 252:25-254:5, 254:6-255:9, 255:12-257:19, 258:9-263:13, 263:14-264:24, 264:25-266:14, 266:15-270:4, 270:5-275:15, 275:16-278:25. The NRA relied on Phillips, a fiduciary, to make truthful representations to the organization and, based on his invocation of his Fifth Amendment right as described above, is entitled to infer that they were not. *See In re Powers*, 261 F. App'x 719, 722-23 (5th Cir. 2008) (trial court was entitled to draw an adverse inference from the individual's assertion of his Fifth Amendment right during, *inter alia*, a deposition taken in an adversary proceeding). The subject matter of those representations, which a court will be able to infer were false, overlaps to a significant extent with the factual bases of NYAG's claims against Phillips. *Id.*; *Baxter v. Palmigiano*, 425 U.S. 308, 318 (1976) ("[T]he Fifth Amendment does not forbid adverse inferences against parties to civil actions . . . .").

Although Phillips's intent has not been finally adjudicated as required for the D&O Policy's Exclusion to apply, his reliance on his Fifth Amendment privilege and the obvious effect it has on his right to any D&O Policy proceeds if and once that happens weigh heavily against granting the relief he seeks. This is particularly true because any payments from the insurer to Phillips will dissipate assets available for the Debtors. As a result, the Court should deny the request to lift the automatic stay.

In addition, forcing the Debtors to litigate now the issue of Phillips's rights to Policy proceeds would contravene the policy reasons for the existence of the automatic stay. The Debtors need to focus on matters related to their chapter 11 cases so that they can reorganize, emerge from chapter 11, and make payments on the account of their prepetition debts. Any litigation now over Phillips's rights to Policy proceeds will distract from those important efforts to the detriment of Debtors' creditors and estates.

The cases Phillips cites in which courts granted lift stay relief involve different facts and therefore are inapposite. In *In re CyberMedica*, cause existed to modify the automatic stay because the harm to the debtor was "speculative" as the policy provided no direct coverage to the debtor and there did "not appear to be an immediate risk of the . . . Policy . . . being depleted." *In re CyberMedica, Inc.*, 280 B.R. 12, 18 (Bankr. D. Mass. 2002). Here, by contrast, the Policy provides for direct coverage to the Debtor; therefore, the risk of harm to the Debtor is real and immediate if Phillips is permitted to deplete the coverage available to the Debtor.

## V.
## <u>CONCLUSION</u>

For the foregoing reasons, the Debtors respectfully request that the Court deny the Motion

and grant the Debtors such other and further relief as the Court deems just and proper.

Dated: April 26, 2021    Respectfully submitted,


       */s/ Patrick J. Neligan, Jr.*
       Patrick J. Neligan, Jr.
       Texas Bar No. 14866000
       pneligan@neliganlaw.com
       Douglas J. Buncher
       State Bar No. 03342700
       dbuncher@neliganlaw.com
       John D. Gaither
       Texas Bar No. 24055516
       jgaither@neliganlaw.com
       **NELIGAN LLP**
       325 N. St. Paul, Suite 3600
       Dallas, Texas 75201
       Telephone: (214) 840-5300

       and

       Gregory E. Garman
       Nevada Bar No. 6654 *Pro Hac Vice*
       ggarman@gtg.legal
       William M. Noall
       Nevada Bar No. 3549 *Pro Hac Vice*
       wnoall@gtg.legal
       Gabrielle A. Hamm
       Texas State Bar No. 24041047
       ghamm@gtg.legal
       **GARMAN TURNER GORDON LLP**
       7251 Amigo Street, Suite 210
       Las Vegas, Nevada 89119
       Telephone: (725) 777-3000
       Facsimile: (725) 777-3112
       **COUNSEL FOR THE DEBTORS**

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on the 26th day of April 2021, a copy of the foregoing was served via first class U.S. mail on the parties named on the attached Master Service List.

<i>/s/ Patrick J. Neligan, Jr.</i>       <br>
Patrick J. Neligan, Jr.

FirmDocs 90727v.1

**In re: Sea Girt LLC - Case No. 21-30080**
**In re: National Rifle Association of America - Case No. 21-30085**

**MASTER SERVICE LIST**

**<u>Debtor/Debtor's Counsel</u>**

National Rifle Association of America
11250 Waples Mill Road
Fairfax, VA  22030

**Neligan LLP**
Attn:   Patrick J. Neligan
            Douglas J. Buncher
            John D. Gaither
325 N. St. Paul, Suite 3600
Dallas, TX 75201
Email: pneligan@neliganlaw.com
            dbuncher@neliganlaw.com
            jgaither@neliganlaw.com

Sea Girt LLC
11250 Waples Mall Road
Fairfax, VA  22030

**Garman Turner Gordon LLP**
Attn:   Gregory E. Garman
            William M. Noall
            Gabrielle A. Hamm
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
Telephone: 725-777-3000
Facsimile: 725-777-3112
Email: ggarman@gtg.legal
            wnoall@gtg.legal
            ghamm@gtg.legal

**<u>U.S. Trustee</u>**

Office of the United States Trustee
Attn: Lisa Young
Earle Cabell Federal Building
1100 Commerce Street, Room 976
Dallas, TX  75242

**<u>Secured Creditors</u>**

Atlantic Union Bank
Attn: Andrew Kalin
1800 Robert Fulton Drive, Suite 100
Reston, VA  20191
Email: andrew.kalin@atlanticunionbank.com

90324v1

**Counsel For Official Committee of Unsecured Creditors**

Louis R. Strubeck, Jr.
Kristian W. Gluck
Scott P. Drake
Laura L. Smith
Nick Hendrix
Norton Rose Fulbright US LLP
2200 Ross Avenue, Suite 3600
Dallas, TX  75201-7932
louis.strubeck@nortonrosefulbright.com
kristian.gluck@nortonrosefulbright.com
laura.smith@nortonrosefulbright.com
scott.drake@nortonrosefulbright.com
nick.hendrix@nortonrosefulbright.com

**20 Largest Unsecured Creditors**

Ackerman McQueen, Inc.
1601 Northwest Expressway
Oklahoma City, OK  73118-1438

Gould Paper Corporation
Attn: Warren Connor
99 Park Avenue, 10th Floor
New York, NY  10016

Under Wild Skies
c/o Dycio & Biggs
10533 Main Street
Fairfax, VA  22030

Quadgraphics
N63W23075 Hwy. 74
Sussex, WI  53089

Membership Advisors Public REL
11250 Waples Mill Road, Suite 310
Fairfax, VA  22030

Mercury Group
1601 NW Expressway, Suite 1100
Oklahoma City, OK  73118

Membership Marketing Partners LLC
11250 Waples Mill Road, Suite 310
Fairfax, VA  22030

Infocision Management Corp.
325 Springside Drive
Akron, OH  44333

Valtim Incorporated
P.O. Box 114
Forest, VA  24551

Communications Corp of America
Attn:  Ken Bentley
13129 Airpark Drive, Suite 120
Elkwood, VA  22718

Salesforce.Com, Inc.
One Mark St. – The Landmark, Suite 300
San Francisco, CA  94105

Speedway Motorsports, Inc.
P.O. Box 600
Concord, NC  28026

Image Direct Group LLC
200 Monroe Avenue, Building 4
Frederick, MD 21701

Google
1600 Amphitheatre Parkway
Mountain View, CA 94043-1351

TMA Direct, Inc.
12021 Sunset Hills Road, Suite 350
Manassas, VA 20109

United Parcel Services
P.O. Box 7247-0244
Philadelphia, PA 19170

Membership Advisors Fund Raising
11250 Waples Mill Road, Suite 310
Fairfax, VA 22030

Stone River Gear, LLC
75 Manor Road
Red Hook, NY 12571

Krueger Associates, Inc.
105 Commerce Drive
Aston, PA 19014

CDW Computer Centers, Inc.
P.O. Box 75723
Chicago, IL 60675

### Government Agencies

Internal Revenue Service
P.O. Box 7346
Philadelphia, PA 19101-7346

Office of Attorney General (NY)
Attn: Letitia James
28 Liberty Street
New York, NY 10005

Office of Attorney General (DC)
Attn: Karl A. Racine
441 Fourth St., N.W., Suite 600-South
Washington, DC 20001

Office of Attorney General (TX)
Attn: Ken Paxton
P.O. Box 12548
Austin, TX 78711-2548

Mahmooth A. Faheem
Lori A. Butler
Pension Benefit Guaranty Corporation
1200 K NW
Washington, DC 20005-4026
mahmooth.faheem@pbgc.gov
butler.lori@pbgc.gov
efile@pbgc.gov

### Notice of Appearance

Laurie A. Spindler
Linebarger Coggan Blair & Sampson, LLP
2777 N. Stemmons Freeway, Suite 1000
Dallas, TX 75207
dallas.bankruptcy@publicans.com

G. Michael Gruber
Dorsey & Whitney LLP
300 Crescent Court, Suite 400
Dallas, TX 75201
gruber.mike@dorsey.com

90324v1

Brian E. Mason
Dorsey & Whitney LLP
300 Crescent Court, Suite 400
Dallas, TX  75201
mason.brian@dorsey.com

Rebecca Loegering
Natalie L. Arbaugh
Winston & Strawn LLP
2121 N. Pearl Street, Suite 900
Dallas, TX  75201
rloegering@winston.com
narbaugh@winston.com

David J. McGuire
35 W. Wacker Drive
Chicago, IL  60601
dmcguire@winston.com

Seth C. Farber
David Neier
Winston & Strawn LLP
200 Park Avenue
New York, NY  10166-4193
sfarber@winston.com
dneier@winston.com

Michael I. Baird
Pension Benefit Guaranty Corporation
1200 K St. NW
Washington, DC  20005-4026
baird.michael@pbgc.gov
efile@pbgc.gov

Gerritt M. Pronske
Eric M. Van Horn
Jason P. Kathman
Spencer Fane LLP
2200 Ross Avenue, Suite 4800 West
Dallas, TX  75201
gpronske@spencerfane.com
ericvanhorn@spencerfane.com
jkathman@spencerfane.com

H. Joseph Acosta
Dorsey & Whitney LLP
300 Crescent Court, Suite 400
Dallas, TX  75201
acosta.joseph@dorsey.com

Thomas M. Buchanan
Matthew Saxon
Winston & Strawn LLP
1901 L St., N.W.
Washington, DC  20036
tbuchana@winston.com
msaxon@winston.com

Mark Werbner
Werbner Law
5600 W. Lovers Lane, Suite 116-314
Dallas, TX  75209
mwerbner@merbnerlaw.com

Tara LeDay
McCreary, Veselka, Bragg & Allen, P.C.
P.O. Box 1269
Round Rock, TX  78680
tleday@mvbalaw.com

Brandon R. Freud
Chuhak & Tecson, P.C.
30 S. Wacker Drive, Suite 2600
Chicago, IL  60606
bfreud@chuhak.com

James Sheehan
Emily Stern
Monica Connell
Office of Letitia James
Attorney General for the State of New York
28 Liberty Street
New York, NY  10005
james.sheehan@ag.ny.gov
emily.stern@ag.ny.gov
monica.connell@ag.ny.gov

Mark Ralston
Fishman Jackson Ronquillo PLLC
Three Galleria Tower
13155 Noel Road, Suite 700
Dallas, TX 75240
mralston@fjrpllc.com

Robert Lapowsky
Stevens & Lee, P.C.
620 Freedom Business Center, Suite 200
King of Prussia, PA 19406
rl@stevenslee.com

Joe E. Marshall
Marshall Law
2626 Cole Avenue, Suite 300
Dallas, TX 75204
jmarshall@marshalllaw.net

M. Jermaine Watson
Joshua N. Eppich
H. Brandon Jones
Clay M. Taylor
J. Robertson Clarke
Bonds Ellis Eppich Schafer Jones LLP
420 Throckmorton Street, Suite 1000
Fort Worth, TX 76102
jermaine.watson@bondsellis.com
joshua@bondsellis.com
clay.taylor@bondsellis.com
brandon@bondsellis.com
robbie.clarke@bondsellis.com

Arthur A. Greenberg
G&B Law, LLP
16000 Ventura Boulevard, Suite 100
Encino, CA 91436-2730
agreenberg@gblawllp.com

Kevin T. White
Director – Legal
Quad/Graphics, Inc.
601 Silveron Blvd., Suite 200
Flower Mound, TX 75028
ktwhite@quad.com

David W. Giattino
Stevens & Lee, P.C.
919 Market Street, Suite 1300
Wilmington, DE 19801
dwg@stevenslee.com

Duane M. Geck
Donald H. Cram
Severson & Werson, P.C.
One Embarcadero Center, Suite 2600
San Francisco, CA 94111
dmg@severson.com
dhc@severson.com

Judith W. Ross
Ross & Smith, PC
700 North Pearl Street, Suite 1610
Dallas, TX 75201
judith.ross@judithwross.com

Nancy L. Alper
Senior Assistant Attorney General
Office of the Attorney General
for the District of Columbia
400 Sixth Street, N.W., 9th Floor
Washington, DC 20001
nancy.alper@dc.gov

90324v1

Stephen G. Wilcox
Wilcox Law, PLLC
P.O. Box 201849
Arlington, TX  76006
swilcox@wilcoxlaw.com

Leonor Miranda
Assistant Attorney General
Office of the Attorney General For
The District of Columbia
400 Sixth Street, N.W. 10th Floor
Washington, DC  20001
leonor.miranda@dc.gov

D. Brett Marks
Akerman LLP
201 East Olas Blvd., Suite 1800
Fort Lauderdale, FL  33301
brett.marks@akerman.com

Heather M. Crockett
Deputy Attorney General
Indiana Office of Attorney General
302 W. Washington St., IGCS – 5th Floor
Indianapolis, IN  46204
heather.crockett@atg.in.gov

Michael W. May
Trial Attorney – Tax Division
U.S. Department of Justice
717 N. Harwood, Suite 400
Dallas, TX  75201
michael.w.may@usdoj.gov

Christina Carroll
Dorsey & Whitney LLP
300 Crescent Court, Suite 400
Dallas, TX  75201
carroll.christina@dorsey.com

Catherine Jackson
Assistant Attorney General
Office of the Attorney General for
The District of Columbia
400 Sixth Street, N.W. 10th Floor
Washington, DC  20001
catherine.jackson@dc.gov

David W. Parham
Akerman LLP
2001 Ross Avenue, Suite 3600
Dallas, TX  75201
david.parham@akerman.com

Walter A. Herring
Robert Blackwell
Blackwell, Blackburn, Herring & Singer LLP
7557 Rambler Road, Suite 1450
Dallas, TX  75231
wherring@bbhsllp.com
bblackwell@bbhsllp.com

James F. Chiu
Deputy Attorney General
Indiana Office of Attorney General
302 W. Washington St., IGCS – 5th Floor
Indianapolis, IN  46204
james.chiu@atg.in.gov

Jennifer Jones
Senior Trial Counsel
Office of the Attorney General
For the District of Columbia
400 Sixth Street, N.W., 10th Floor
Washington, DC  20001
leonor.miranda@dc.gov

P. Kent Correll
Correll Law Group
250 Park Avenue, 7th Floor
New York, NY  10177
kent@correlllawgroup.com

Kelsey M. Taylor
Dorsey & Whitney LLP
300 Crescent Court, Suite 400
Dallas, TX  75201
taylor.kelsey@dorsey.com