# EXHIBIT B

## To

## DEBTORS' OBJECTION TO THE MOTION OF WILSON PHILLIPS TO MODIFY THE AUTOMATIC STAY, TO THE EXTENT APPLICABLE, TO ALLOW PAYMENT, REIMBURSEMENT, AND/OR ADVANCEMENT OF DEFENSE COSTS UNDER THE D&O POLICY
## [Docket No. 695]

1              UNITED STATES BANKRUPTCY COURT

2               NORTHERN DISTRICT OF TEXAS

3                   DALLAS DIVISION

4   IN RE:                        )
                                  ) Case No.
5   NATIONAL RIFLE ASSOCIATION  ) 21-30085-hdh-11
    OF AMERICA AND SEA GIRT, LLC)
6                                 ) Chapter 11
        Debtors.                  )

7

8

9

10  *************************************************

11          VIDEOTAPED ORAL DEPOSITION OF

12            WILSON H. PHILLIPS, JR.

13               MARCH 19, 2021

14     CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER

15              (Reported Remotely)

16  *************************************************

17

18

19

20

21

22

23

24

25

                                        Page 1

1

2          On the 19th day of March, 2021, at 10:30 a.m.

3    CST, the videotaped oral deposition of the

4    above-named witness was taken at the instance of The

5    State of New York, via Zoom video conference, before

6    Michelle L. Munroe, Certified Shorthand Reporter in

7    and for the State of Texas, the Witness located at

8    his residence in Dallas, Texas, pursuant to Notice,

9    the Thirty-Sixth Emergency Order Regarding the

10   COVID-19 State of Disaster, and the agreement

11   hereinafter set forth.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

                                        Page  2

```
1              A P P E A R A N C E S
2    FOR THE DEBTORS:
         Mr. Dylan T. Ciciliano (via Zoom)
3        GARMAN TURNER GORDON LLP
         7251 Amigo Street, Suite 210
4        Las Vegas, Nevada  89119
         702.777.3000  telephone
5        dciciliano@gtg.legal
6
7    PROPOSED SPECIAL COUNSEL TO THE DEBTORS:
         Ms. Svetlana Eisenberg (via Zoom)
8        Mr. Serhiy Moshak (via Zoom)
         BREWER ATTORNEYS & COUNSELORS
9        1717 Main Street
         Suite 5900
10       Dallas, Texas  75201
         sme@brewerattorneys.com
11
12
     FOR THE OFFICE OF THE NEW YORK STATE ATTORNEY
13   GENERAL:
         Ms. Monica Connell (via Zoom)
14       Mr. William Wang (via Zoom)
         OFFICE OF THE ATTORNEY GENERAL
15       28 Liberty Street
         18th Floor
16       New York, New York  10005
         212.416.8401  telephone
17       monica.connell@ag.ny.gov
18
         Mr. Jonathan Conley (via Zoom)
19       OFFICE OF THE ATTORNEY GENERAL
         The Capitol
20       Albany, New York  12224
         212.416.8108  telephone
21       jonathan.conley@ag.ny.gov
22
         Mr. Lucas McNamara (via Zoom)
23       OFFICE OF THE ATTORNEY GENERAL
         120 Broadway
24       New York, New York  10271-0499
         lucas.mcnamara@ag.ny.gov
25
                                          Page 3
```

```
1            A P P E A R A N C E S (continued)
2    FOR THE OFFICE OF THE NEW YORK STATE ATTORNEY
     GENERAL:
3         Mr. Eric Van Horn (via Zoom)
          Mr. Gerrit Pronske (via Zoom)
4         SPENCER FANE LLP
          2200 Ross Avenue, Suite 4800 West
5         Dallas, Texas  75201
          214.750.3610  telephone
6         ericvanhorn@spencerfane.com
7
8    FOR THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS:
          Mr. Tim Carney (via Zoom)
9         NORTON ROSE FULBRIGHT US LLP
          2200 Ross Avenue
10        Suite 3600
          Dallas, Texas  75201
11        214.855.8341  telephone
          tim.carney@nortonrosefulbright.com
12
13
     FOR JUDGE PHILLIP JOURNEY:
14        Mr. Jermaine Watson (via Zoom)
          BONDS ELLIS EPPICH SCHAFER JONES LLP
15        420 Throckmorton Street
          Suite 1000
16        Fort Worth, Texas  76102
          817.529.2724  telephone
17        jermaine.watson@bondsellis.com
18
19   FOR ACKERMAN MCQUEEN, INC.:
          Mr. Brian E. Mason (via Zoom)
20        Ms. Kymberlee Milligan (via Zoom)
          DORSEY & WHITNEY LLP
21        300 Crescent Court
          Suite 400
22        Dallas, Texas  75201
          214.981.9929  telephone
23        mason.brian@dorsey.com
24
25
```

Page 4

| | | |
|---|---|---|
| 1 | the U.S. Constitution. | 10:45:12 |
| 2 | Q. Do you believe that Mr. LaPierre in his | 10:45:24 |
| 3 | position as executive vice president acted with | 10:45:26 |
| 4 | prudence with respect to the NRA's finances? | 10:45:29 |
| 5 | MS. EISENBERG (VIA ZOOM): Objection. | 10:45:33 |
| 6 | A. Again, I decline to answer based on the | 10:45:34 |
| 7 | privilege provided to me by the Fifth Amendment to | 10:45:37 |
| 8 | the U.S. Constitution. | 10:45:39 |
| 9 | Q. Okay. In your role as treasurer, | 10:45:42 |
| 10 | Mr. Phillips, what were your responsibilities? | 10:45:45 |
| 11 | MS. EISENBERG (VIA ZOOM): Objection. | 10:45:48 |
| 12 | A. Overseeing the financial position of the | 10:45:51 |
| 13 | National Rifle Association. | 10:46:01 |
| 14 | Q. Did you have a fiduciary obligation to the | 10:46:02 |
| 15 | NRA, if you know? | 10:46:07 |
| 16 | MS. EISENBERG (VIA ZOOM): Objection. | 10:46:08 |
| 17 | A. I decline to answer based on the privilege | 10:46:09 |
| 18 | provided to me by the Fifth Amendment of the U.S. | 10:46:11 |
| 19 | Constitution. | 10:46:15 |
| 20 | Q. Who were you responsible for supervising | 10:46:16 |
| 21 | within the NRA? | 10:46:18 |
| 22 | MS. EISENBERG (VIA ZOOM): Objection. | 10:46:20 |
| 23 | A. They were the head -- heads of several | 10:46:23 |
| 24 | divisions. It was the accounting and reporting, | 10:46:29 |
| 25 | purchasing, IT, information technology and other | 10:46:33 |

Page 22

| | | |
|---|---|---|
| 1 | A. Yes, I was -- I was the treasurer of it. | 10:48:06 |
| 2 | Q. If I refer to the National Rifle | 10:48:09 |
| 3 | Association Foundation as the NRAF, will you | 10:48:13 |
| 4 | understand what I'm talking to? Can we agree -- | 10:48:15 |
| 5 | A. I will. | 10:48:15 |
| 6 | Q. I can refer to it? Thank you. | 10:48:17 |
| 7 | As the treasurer of the NRAF, whom did you | 10:48:21 |
| 8 | report to? | 10:48:26 |
| 9 | MS. EISENBERG (VIA ZOOM): Objection; | 10:48:27 |
| 10 | vague. | 10:48:28 |
| 11 | A. I reported to their board of directors. | 10:48:31 |
| 12 | Q. When did you become treasurer of the NRAF? | 10:48:34 |
| 13 | A. It was probably 1993, 1992. I'm pretty | 10:48:46 |
| 14 | sure it would be 1993. | 10:48:56 |
| 15 | Q. Going back to your role as CFO and | 10:49:02 |
| 16 | treasurer at the NRA. In the years that you worked | 10:49:04 |
| 17 | at the NRA, who was responsible for the preparation | 10:49:09 |
| 18 | of the IRS Form 990? | 10:49:12 |
| 19 | MS. EISENBERG (VIA ZOOM): Objection; | 10:49:15 |
| 20 | form. | 10:49:16 |
| 21 | A. I decline to answer based on the privilege | 10:49:18 |
| 22 | provided me by the Fifth Amendment of the U.S. | 10:49:21 |
| 23 | Constitution. | 10:49:24 |
| 24 | Q. To your knowledge, did the NRA prepare IRS | 10:49:26 |
| 25 | Form 990s for each year that you were CFO or | 10:49:30 |

Page 24

CONFIDENTIAL

| | | |
|---|---|---|
| 1 | started. I don't -- I can't tell you what year we | 10:51:39 |
| 2 | started. Once we started, I'm not aware of a | 10:51:42 |
| 3 | change. | 10:51:45 |
| 4 | Q. Okay. Do you know the approximate length | 10:51:46 |
| 5 | of time the board members had to review the 990s, | 10:51:51 |
| 6 | like how long were they made available for? | 10:51:54 |
| 7 | MS. EISENBERG (VIA ZOOM): Objection; | 10:51:57 |
| 8 | form. | 10:52:00 |
| 9 | MR. WERBNER (VIA ZOOM): If you | 10:52:00 |
| 10 | understand. | 10:52:01 |
| 11 | A. I understand. They were available -- | 10:52:01 |
| 12 | usually the meetings lasted a day. Some years they | 10:52:05 |
| 13 | may last two days. | 10:52:10 |
| 14 | Q. And they would be available that whole | 10:52:12 |
| 15 | time? | 10:52:14 |
| 16 | MS. EISENBERG (VIA ZOOM): Object to | 10:52:15 |
| 17 | form. | 10:52:15 |
| 18 | A. As far as I know. | 10:52:17 |
| 19 | Q. Okay. Who signed the IRS Form 990s while | 10:52:19 |
| 20 | you were CFO and treasurer? | 10:52:24 |
| 21 | A. I decline -- | 10:52:26 |
| 22 | MS. EISENBERG (VIA ZOOM): Objection; | 10:52:27 |
| 23 | form. | 10:52:27 |
| 24 | A. I decline to answer based on the privilege | 10:52:27 |
| 25 | provided to me by the Fifth Amendment of the U.S. | 10:52:30 |

Page 27

1    Constitution.                                              10:52:33

2         Q.   Did the person who signed change over the        10:52:35

3    years that you worked at the NRA?                          10:52:38

4         A.   I decline to answer based on the privilege       10:52:42

5    provided me by the Fifth Amendment of the U.S.             10:52:45

6    Constitution.                                              10:52:48

7         Q.   How was it determined who would sign each        10:52:48

8    year's 990 form?                                           10:52:51

9              MS. EISENBERG (VIA ZOOM):  Objection;            10:52:54

10   form.                                                      10:52:55

11        A.   I decline to answer based on the privilege       10:52:55

12   provided to me by the Fifth Amendment of the U.S.          10:52:58

13   Constitution.                                              10:53:01

14        Q.   In your experience, did Mr. LaPierre             10:53:02

15   review the IRS Form 990s?                                  10:53:05

16             MS. EISENBERG (VIA ZOOM):  Object to             10:53:08

17   form.                                                      10:53:09

18        Q.   You can answer, sir.                             10:53:13

19        A.   I don't know.                                    10:53:15

20        Q.   Did you ever give Mr. LaPierre an IRS Form       10:53:21

21   990?                                                       10:53:26

22        A.   I decline to answer based on the privilege       10:53:26

23   provided to me by the Fifth Amendment of the U.S.          10:53:29

24   Constitution.                                              10:53:32

25        Q.   If Mr. LaPierre had asked you to provide         10:53:34

Page 28

CONFIDENTIAL

| | | |
|---|---|---|
| 1 | him with a copy of the IRS Form 990, would you have | 10:53:37 |
| 2 | given it to him? | 10:53:40 |
| 3 | MS. EISENBERG (VIA ZOOM): Object to | 10:53:41 |
| 4 | form. | 10:53:42 |
| 5 | A.    I decline to answer based on the privilege | 10:53:42 |
| 6 | provided to me by the Fifth Amendment of the U.S. | 10:53:44 |
| 7 | Constitution. | 10:53:48 |
| 8 | Q.    I don't know if I -- I don't think I asked | 10:53:48 |
| 9 | the specific question. | 10:53:50 |
| 10 | But did Mr. LaPierre ever ask you to see | 10:53:51 |
| 11 | an IRS Form 990 form? | 10:53:53 |
| 12 | A.    I decline -- | 10:53:57 |
| 13 | MS. EISENBERG (VIA ZOOM): Object to | 10:53:57 |
| 14 | form. | 10:53:58 |
| 15 | A.    I decline to answer based on the privilege | 10:53:58 |
| 16 | provided to me by the Fifth Amendment of the U.S. | 10:54:00 |
| 17 | Constitution. | 10:54:03 |
| 18 | Q.    Was Mr. LaPierre generally present at the | 10:54:05 |
| 19 | board meetings at which the Form 990s were made | 10:54:08 |
| 20 | available? | 10:54:11 |
| 21 | MS. EISENBERG (VIA ZOOM): Objection; | 10:54:12 |
| 22 | form. | 10:54:13 |
| 23 | A.    Yes. | 10:54:13 |
| 24 | Q.    Did you ever discuss any aspects of the | 10:54:18 |
| 25 | preparation of the Form 990s with Mr. LaPierre? | 10:54:20 |

Page 29

| 1 | MS. EISENBERG (VIA ZOOM): Objection; | 10:54:24 |
| 2 | form. | 10:54:24 |
| 3 | A.   I decline to answer based on the privilege | 10:54:24 |
| 4 | provided to me by the Fifth Amendment of the U.S. | 10:54:26 |
| 5 | Constitution. | 10:54:30 |
| 6 | Q.   A company called -- are you familiar with | 10:54:30 |
| 7 | a company called RSM? | 10:54:34 |
| 8 | A.   Yes. | 10:54:37 |
| 9 | Q.   Who are -- who or what is RSM? | 10:54:39 |
| 10 | A.   It's a public accounting firm. | 10:54:42 |
| 11 | Q.   Was RSM the NRA's auditor for a number of | 10:54:45 |
| 12 | years? | 10:54:50 |
| 13 | A.   Yes. | 10:54:50 |
| 14 | Q.   Okay.  Was there an annual representation | 10:54:52 |
| 15 | letter the NRA would sign with respect to the RSM | 10:54:55 |
| 16 | engagement? | 10:55:00 |
| 17 | A.   I decline -- | 10:55:00 |
| 18 | MS. EISENBERG (VIA ZOOM): Objection; | 10:55:01 |
| 19 | form. | 10:55:01 |
| 20 | A.   I decline to answer based on the privilege | 10:55:01 |
| 21 | provided to me by the Fifth Amendment of the U.S. | 10:55:03 |
| 22 | Constitution. | 10:55:07 |
| 23 | Q.   How did the NRA retain RSM as an auditor? | 10:55:07 |
| 24 | A.   There was a search by the audit committee. | 10:55:15 |
| 25 | Q.   Okay.  And the audit committee made a | 10:55:20 |

Page 30

CONFIDENTIAL

| | | |
|---|---|---|
| 1 | form. | 10:58:08 |
| 2 | A. Yes. | 10:58:08 |
| 3 | THE WITNESS (VIA ZOOM): Sorry, | 10:58:09 |
| 4 | Svetlana. | 10:58:11 |
| 5 | Q. And did you -- did you provide space for | 10:58:11 |
| 6 | the RSM employees to work? | 10:58:14 |
| 7 | A. Yes. | 10:58:17 |
| 8 | Q. Where would that -- where would that space | 10:58:18 |
| 9 | be? | 10:58:21 |
| 10 | A. Most -- most often it was on the second | 10:58:23 |
| 11 | floor of where the accounting function was in the | 10:58:26 |
| 12 | NRA building. | 10:58:29 |
| 13 | Q. Was there one particular employee assigned | 10:58:32 |
| 14 | to give documents to RSM or information to RSM? | 10:58:35 |
| 15 | MS. EISENBERG (VIA ZOOM): Object to | 10:58:41 |
| 16 | form. | 10:58:42 |
| 17 | A. I don't know. I doubt it. | 10:58:43 |
| 18 | Q. Okay. Do you know whether you ever signed | 10:58:47 |
| 19 | the retention letters for RSM? | 10:58:53 |
| 20 | A. I decline to answer based on the privilege | 10:58:58 |
| 21 | provided to me by the Fifth Amendment to the U.S. | 10:59:00 |
| 22 | Constitution. | 10:59:04 |
| 23 | Q. Okay. Mr. Phillips, you received a | 10:59:05 |
| 24 | corporate American Express card in your name from | 10:59:13 |
| 25 | the NRA; is that correct? | 10:59:15 |

Page 33

CONFIDENTIAL

```
 1        A.   I decline to answer based on the privilege     10:59:17

 2   provided me by the Fifth Amendment of the U.S.           10:59:19

 3   Constitution.                                            10:59:23

 4        Q.   Did you ever -- did you ever receive           10:59:24

 5   any -- excuse me.   Withdrawn.                           10:59:29

 6             Did you ever authorize the issuance of         10:59:31

 7   corporate credit cards to Joseph -- a corporate          10:59:41

 8   credit card to Joseph DeBergalis?                        10:59:45

 9        A.   I decline to answer based on the privilege     10:59:50

10   provided to me by the Fifth Amendment of the U.S.        10:59:52

11   Constitution.                                            10:59:55

12        Q.   Did you authorize the issuance of a            10:59:57

13   corporate card to Joshua Powell?                         11:00:03

14        A.   I decline to answer based on the privilege     11:00:04

15   provided to me by the Fifth Amendment of the U.S.        11:00:04

16   Constitution.                                            11:00:06

17        Q.   Do you know whether the NRA issued             11:00:06

18   corporate credit cards to Mr. -- I can never say his     11:00:12

19   name correctly -- DeBergalis?                            11:00:19

20             MS. EISENBERG (VIA ZOOM):  I'm sorry.          11:00:19

21   I couldn't hear the question.                            11:00:19

22        Q.   Did the NRA issue a corporate credit card      11:00:21

23   to Mr. DeBergalis?                                       11:00:23

24             MS. EISENBERG (VIA ZOOM):  Objection;          11:00:25

25   form.                                                    11:00:27
```

Page 34

| | | |
|---|---|---|
| 1 | A.   I decline to answer based on the privilege | 11:00:27 |
| 2 | provided to me by the Fifth Amendment of the U.S. | 11:00:27 |
| 3 | Constitution. | 11:00:30 |
| 4 | Q.   Did the NRA -- sorry. | 11:00:31 |
| 5 | Did the NRA issue a corporate credit card | 11:00:34 |
| 6 | to Joshua Powell? | 11:00:38 |
| 7 | A.   I decline to answer based on the privilege | 11:00:39 |
| 8 | provided to me by the Fifth Amendment of the U.S. | 11:00:39 |
| 9 | Constitution. | 11:00:40 |
| 10 | Q.   Did the NRA issue a corporate credit card | 11:00:46 |
| 11 | to Millie Hallow? | 11:00:50 |
| 12 | A.   I decline to answer based on the privilege | 11:00:52 |
| 13 | provided to me by the Fifth Amendment of the U.S. | 11:00:52 |
| 14 | Constitution. | 11:00:54 |
| 15 | Q.   Mr. Phillips, would issuance of a | 11:00:54 |
| 16 | corporate credit card generally be handled by you or | 11:01:06 |
| 17 | those you supervise? | 11:01:11 |
| 18 | MS. EISENBERG (VIA ZOOM):  Object to | 11:01:13 |
| 19 | form. | 11:01:14 |
| 20 | MR. WERBNER (VIA ZOOM):  I'll object | 11:01:14 |
| 21 | to the form.  I don't understand the question. | 11:01:15 |
| 22 | Q.   If a corporate -- I'll clarify, Counsel. | 11:01:18 |
| 23 | Thank you. | 11:01:21 |
| 24 | If a corporate credit card were issued by | 11:01:21 |
| 25 | the NRA, would that generally be done under the | 11:01:23 |

Page 35

CONFIDENTIAL

| | | |
|---|---|---|
| 1 | auspices of the treasurer's office? | 11:01:27 |
| 2 | A. I decline to answer based on the privilege | 11:01:31 |
| 3 | provided to me by the Fifth Amendment of the U.S. | 11:01:31 |
| 4 | Constitution. | 11:01:34 |
| 5 | Q. Do you know who, if anyone, within the NRA | 11:01:39 |
| 6 | determines whether an employee or an officer | 11:01:41 |
| 7 | receives a corporate credit card? | 11:01:43 |
| 8 | MS. EISENBERG (VIA ZOOM): Objection | 11:01:46 |
| 9 | to form. | 11:01:46 |
| 10 | A. I decline to answer based on the privilege | 11:01:47 |
| 11 | provided to me by the Fifth Amendment of the U.S. | 11:01:47 |
| 12 | Constitution. | 11:01:50 |
| 13 | Q. Do you know whether the NRA had any | 11:01:50 |
| 14 | process for determining who should receive a | 11:01:55 |
| 15 | corporate credit card? | 11:01:57 |
| 16 | A. I decline to answer based on the privilege | 11:02:00 |
| 17 | provided to me by the Fifth Amendment of the U.S. | 11:02:00 |
| 18 | Constitution. | 11:02:00 |
| 19 | Q. Do you know whether the NRA had a process | 11:02:06 |
| 20 | to review expenditures charged to a corporate credit | 11:02:09 |
| 21 | card? | 11:02:12 |
| 22 | MS. EISENBERG (VIA ZOOM): Object to | 11:02:13 |
| 23 | the form. | 11:02:14 |
| 24 | A. I decline to answer based on the privilege | 11:02:14 |
| 25 | provided to me by the Fifth Amendment of the U.S. | 11:02:14 |

Page 36

| | | |
|---|---|---|
| 1 | Constitution. | 11:02:17 |
| 2 | Q. To your knowledge, did Mr. LaPierre know | 11:02:17 |
| 3 | that some employees had corporate credit cards? | 11:02:25 |
| 4 | MS. EISENBERG (VIA ZOOM): Objection | 11:02:28 |
| 5 | to form. | 11:02:30 |
| 6 | A. I decline to answer based on the privilege | 11:02:30 |
| 7 | provided to me by the Fifth Amendment of the U.S. | 11:02:30 |
| 8 | Constitution. | 11:02:35 |
| 9 | Q. During -- Mr. LaPierre was examined by the | 11:02:35 |
| 10 | New York Attorney General's office in this action. | 11:02:47 |
| 11 | I would like to -- | 11:02:51 |
| 12 | MS. CONNELL (VIA ZOOM): Jonathan, if | 11:02:52 |
| 13 | you can, call up Mr. LaPierre's deposition and pull | 11:02:53 |
| 14 | it to page 174, if that's possible. | 11:02:58 |
| 15 | MS. EISENBERG (VIA ZOOM): Ms. | 11:03:02 |
| 16 | Connell, what do you mean by this action? | 11:03:02 |
| 17 | MS. CONNELL (VIA ZOOM): Excuse me. | 11:03:05 |
| 18 | Thank you, Svetlana. Good catch. | 11:03:06 |
| 19 | Q. Mr. LaPierre was examined during the | 11:03:09 |
| 20 | course of the Attorney General's investigation of | 11:03:11 |
| 21 | the NRA. I would like to pull up, please, as | 11:03:14 |
| 22 | Exhibit A, Mr. LaPierre's deposition. | 11:03:19 |
| 23 | MR. CONLEY (VIA ZOOM): Just one | 11:03:26 |
| 24 | second. | 11:03:27 |
| 25 | MS. CONNELL (VIA ZOOM): Thank you, | 11:03:27 |

Page 37

CONFIDENTIAL

| | | |
|---|---|---|
| 1 | Constitution. | 11:11:01 |
| 2 | Q. Did you have any -- ever have any | 11:11:07 |
| 3 | conversations with Mr. LaPierre regarding improperly | 11:11:10 |
| 4 | covered expenses by use of a corporate credit card? | 11:11:16 |
| 5 | MS. EISENBERG (VIA ZOOM): Object to | 11:11:21 |
| 6 | form. | 11:11:22 |
| 7 | A. I decline to answer based on the privilege | 11:11:23 |
| 8 | provided to me by the Fifth Amendment of the U.S. | 11:11:23 |
| 9 | Constitution. | 11:11:27 |
| 10 | Q. Okay. I would like to jump to one other | 11:11:30 |
| 11 | topic for a second. And I apologize, Mr. Phillips, | 11:11:33 |
| 12 | I meant to get into this at the beginning. | 11:11:36 |
| 13 | Am I correct in understanding that a | 11:11:39 |
| 14 | number of years ago you had a bike-related accident? | 11:11:40 |
| 15 | A. Yes. | 11:11:45 |
| 16 | Q. Can you tell us the nature of that | 11:11:47 |
| 17 | accident? | 11:11:49 |
| 18 | A. I hit a pothole going high speed, flipped | 11:11:52 |
| 19 | over like a (inaudible) front wheel, rammed my face, | 11:11:57 |
| 20 | head, arm into the -- into the path. It was a | 11:12:04 |
| 21 | concrete path. | 11:12:09 |
| 22 | Q. I'm sorry to hear that. | 11:12:12 |
| 23 | Were you hospitalized as a result of that | 11:12:13 |
| 24 | accident? | 11:12:18 |
| 25 | A. Yes, I was. | 11:12:21 |

Page 44

CONFIDENTIAL

| | | |
|---|---|---|
| 1 | Q.   Did you miss work as a result of that | 11:12:22 |
| 2 | accident? | 11:12:24 |
| 3 | A.   I did. | 11:12:26 |
| 4 | Q.   What year did that accident occur? | 11:12:27 |
| 5 | A.   I don't know for sure.  Several years ago. | 11:12:32 |
| 6 | Three or four years ago. | 11:12:38 |
| 7 | Q.   Maybe four.  Okay.  Did it occur while you | 11:12:40 |
| 8 | were an NRA employee? | 11:12:44 |
| 9 | A.   Yes. | 11:12:46 |
| 10 | Q.   Okay.  When you returned to work -- did | 11:12:47 |
| 11 | you return to work following that accident? | 11:12:50 |
| 12 | A.   Yes. | 11:12:53 |
| 13 | Q.   When you returned to work, were you able | 11:12:54 |
| 14 | to fully resume your duties as CFO and treasurer? | 11:12:56 |
| 15 | A.   I decline to answer based on the privilege | 11:13:03 |
| 16 | provided to me by the Fifth Amendment of the U.S. | 11:13:03 |
| 17 | Constitution. | 11:13:04 |
| 18 | Q.   Mr. Phillips, when you returned to work | 11:13:12 |
| 19 | following that accident, do you believe that you | 11:13:13 |
| 20 | were unable to fully perform the duties of your job | 11:13:16 |
| 21 | as CFO and treasurer of the National Rifle | 11:13:20 |
| 22 | Association? | 11:13:24 |
| 23 | A.   I decline to answer based on the privilege | 11:13:24 |
| 24 | provided to me by the Fifth Amendment of the U.S. | 11:13:24 |
| 25 | Constitution. | 11:13:24 |

Page 45

CONFIDENTIAL

```
 1        Q.   Mr. Phillips, did there come a time when    11:13:33
 2   you left the NRA?                                     11:13:35
 3        A.   Yes.                                        11:13:38
 4        Q.   How did that come about?                    11:13:39
 5        A.   I retired.                                  11:13:42
 6        Q.   Okay.  And when was that?                   11:13:44
 7        A.   It was 2018, fourth quarter.                11:13:46
 8        Q.   Around the time that you left the NRA, you  11:13:58
 9   signed a post employment consulting contract; is      11:14:00
10   that correct?                                         11:14:03
11        A.   I decline to answer based on the privilege  11:14:03
12   provided to me by the Fifth Amendment of the U.S.     11:14:03
13   Constitution.                                         11:14:04
14             MS. CONNELL (VIA ZOOM):  Jonathan, can      11:14:10
15   we pull up tab 1?  Maybe we'll have better luck with  11:14:11
16   that.                                                 11:14:15
17             MR. CONLEY (VIA ZOOM):  Yes, I hope         11:14:16
18   so.                                                   11:14:17
19        Q.   While we wait for Jonathan to pull that     11:14:20
20   up, Mr. Phillips, whose idea was it to -- for you to  11:14:25
21   enter into a consulting contract with the NRA?        11:14:30
22             MS. EISENBERG (VIA ZOOM):  Object to        11:14:34
23   form.                                                 11:14:34
24        A.   I decline to answer based on the privilege  11:14:42
25   provided to me by the Fifth Amendment of the U.S.     11:14:42
```

Page 46

CONFIDENTIAL

| | | |
|---|---|---|
| 1 | Constitution. | 11:14:42 |
| 2 |    Q.  The transcript finally came up in the | 11:14:44 |
| 3 | shared drive. | 11:14:46 |
| 4 | MR. CONLEY (VIA ZOOM): Okay. Good. | 11:14:50 |
| 5 | MS. CONNELL (VIA ZOOM): But I would | 11:14:52 |
| 6 | like to still go to tab 1 to the agreement if we | 11:14:52 |
| 7 | could, Jonathan. Thanks. | 11:14:55 |
| 8 | MS. EISENBERG (VIA ZOOM): Are you | 11:15:00 |
| 9 | marking it as Exhibit 1? | 11:15:00 |
| 10 | MS. CONNELL (VIA ZOOM): Yes. | 11:15:03 |
| 11 | MR. CONLEY (VIA ZOOM): This will be | 11:15:05 |
| 12 | Exhibit B because the -- | 11:15:07 |
| 13 | MS. CONNELL (VIA ZOOM): The | 11:15:10 |
| 14 | transcript was A. | 11:15:11 |
| 15 | MR. CONLEY (VIA ZOOM): Right. | 11:15:12 |
| 16 | MR. CICILIANO (VIA ZOOM): Just so the | 11:15:16 |
| 17 | record's clear, are you saying that LaPierre's | 11:15:18 |
| 18 | transcript will be Exhibit 1? | 11:15:21 |
| 19 | MS. CONNELL (VIA ZOOM): Yes. | 11:15:22 |
| 20 | MR. CICILIANO (VIA ZOOM): Because we | 11:15:30 |
| 21 | (inaudible) -- it's 848 pages, do you just want sub | 11:15:33 |
| 22 | pages or -- | 11:15:37 |
| 23 | MS. CONNELL (VIA ZOOM): | 11:15:38 |
| 24 | Unfortunately, I think we're going jump around within | 11:15:39 |
| 25 | it so -- | 11:15:41 |

Page 47

CONFIDENTIAL

| | | |
|---|---|---|
| 1 | it.  Okay.  Wait.  This is it.  Yeah. | 11:39:08 |
| 2 | Q.  Are you able to open it up?  Is everyone | 11:39:26 |
| 3 | able to open it up? | 11:39:29 |
| 4 | A.  It looks like I can open it. | 11:39:30 |
| 5 | MS. EISENBERG (VIA ZOOM):  I'm not | 11:39:30 |
| 6 | able to access it, but I don't want to slow things | 11:39:31 |
| 7 | down so -- for the moment, I don't want it to be | 11:39:34 |
| 8 | paused just for that reason.  Thank you. | 11:39:38 |
| 9 | A.  I have it. | 11:39:40 |
| 10 | MS. CONNELL (VIA ZOOM):  Thank you, | 11:39:42 |
| 11 | Svetlana.  I appreciate it. | 11:39:42 |
| 12 | Q.  Have you ever seen this document before, | 11:39:46 |
| 13 | Mr. Phillips? | 11:39:47 |
| 14 | A.  I decline to answer based on the privilege | 11:39:49 |
| 15 | provided to me by the Fifth Amendment of the U.S. | 11:39:49 |
| 16 | Constitution. | 11:39:51 |
| 17 | Q.  Mr. Phillips, if you page down to the | 11:39:56 |
| 18 | final page of -- the final two pages of this | 11:40:00 |
| 19 | document, Bates number NYAG 00042332 and the | 11:40:04 |
| 20 | following page. | 11:40:14 |
| 21 | Is your signature at the bottom of that | 11:40:16 |
| 22 | page? | 11:40:19 |
| 23 | A.  I decline to answer based on the privilege | 11:40:20 |
| 24 | provided to me by the Fifth Amendment of the U.S. | 11:40:20 |
| 25 | Constitution. | 11:40:22 |

Page 53

```
 1        Q.   Mr. Phillips, who is Pete Brownell?        11:40:22

 2        A.   He was president of the National Rifle     11:40:29

 3   Association at the time.                             11:40:33

 4        Q.   When you say "at the time," are you        11:40:33

 5   referring to May 2018?                               11:40:35

 6        A.   Yes.                                        11:40:38

 7        Q.   And that's the date on this contract; is   11:40:39

 8   that correct?                                        11:40:42

 9        A.   Yes.                                        11:40:42

10        Q.   And who is Carolyn Meadows?                11:40:44

11        A.   She is the current president of the        11:40:49

12   National Rifle Association.                          11:40:51

13        Q.   And she also signed this contract; is that 11:40:55

14   correct?                                             11:40:57

15        A.   Yes.                                        11:40:58

16        Q.   And Mr. Brownell signed this contract; is  11:40:59

17   that correct?                                        11:41:03

18        A.   Correct.                                    11:41:03

19        Q.   Okay.  I would like to go back up to the   11:41:04

20   first page of the contract, sir.                     11:41:07

21             To your knowledge, was a business case     11:41:12

22   analysis performed for this contract?                11:41:15

23        A.   I decline to answer based on privilege     11:41:18

24   provided to me by the Fifth Amendment of the U.S.    11:41:18

25   Constitution.                                         11:41:19
```

Page 54

1    Q.  What is a business case analysis, to your       11:41:24

2    knowledge?       11:41:27

3    A.  I decline to answer based on the privilege       11:41:27

4    provided to me by the Fifth Amendment of the U.S.       11:41:27

5    Constitution.       11:41:30

6    Q.  Did the NRA ever require that business       11:41:30

7    case analysis forms be completed for contracts?       11:41:36

8    A.  I decline --       11:41:42

9        MS. EISENBERG (VIA ZOOM):  Object to       11:41:42

10   form.       11:41:43

11   A.  I decline to answer based on the privilege       11:41:44

12   provided to me by the Fifth Amendment of the U.S.       11:41:44

13   Constitution.       11:41:46

14   Q.  Have you ever heard the term "business       11:41:48

15   case analysis"?       11:41:50

16   A.  I decline to answer based on the privilege       11:41:53

17   provided to me by the Fifth Amendment of the U.S.       11:41:53

18   Constitution.       11:41:53

19   Q.  Mr. Phillips, did you ever negotiate the       11:41:57

20   terms of a post employment contract with the NRA?       11:42:05

21       MS. EISENBERG (VIA ZOOM):  Objection;       11:42:09

22   form.       11:42:10

23   A.  I decline to answer based on the privilege       11:42:10

24   provided to me by the Fifth Amendment of the U.S.       11:42:10

25   Constitution.       11:42:15

Page 55

```
 1       Q.   This contract indicates that it goes into    11:42:17

 2   effect December 31, 2018, but it was executed         11:42:22

 3   several months earlier in May.  Why is that?          11:42:25

 4                MS. EISENBERG (VIA ZOOM):  Object to      11:42:29

 5   form.                                                 11:42:30

 6       A.   I decline to answer based on the privilege   11:42:30

 7   provided to me by the Fifth Amendment of the U.S.     11:42:30

 8   Constitution.                                         11:42:30

 9       Q.   If you look at page 1 of the contract        11:42:36

10   under number 1, sub number -- sub heading (b), and    11:42:41

11   then Roman Numeral II, it says, Consultant will       11:42:48

12   coordinate activities with NRA's executive vice       11:42:54

13   president, treasurer and CFO, and executive           11:42:57

14   director, office of advancement to build and          11:43:01

15   maintain relationships with gift -- major gift        11:43:05

16   donors, identify, cultivate relationships with        11:43:08

17   fundraising partners, and identify prospective high   11:43:11

18   net worth individuals to solicit for major gifts.     11:43:15

19   Consultant will communicate periodically with NRA     11:43:19

20   employees, officers, board members, and others as     11:43:22

21   deemed necessary in the performance of stated         11:43:25

22   services.                                             11:43:28

23           Do you see that paragraph, sir?               11:43:28

24       A.   I do.                                         11:43:31

25       Q.   Okay.  Did you -- when it uses the term       11:43:32
```

Page 56

```
 1    "consultant," do you know whether -- strike that.        11:43:37

 2    I'm sorry.                                                11:43:41

 3            Did you provide any of these services            11:43:42

 4    listed in this paragraph?                                11:43:44

 5        A.   I decline to answer --                          11:43:52

 6                MS. EISENBERG (VIA ZOOM):  Objection;        11:43:52

 7    form.                                                    11:43:53

 8        A.   -- based on the privilege provided to me        11:43:53

 9    by the Fifth Amendment of the U.S. Constitution.         11:43:54

10        Q.   Did you ever provide an invoice to the NRA      11:43:54

11    reflecting performance of duties -- these duties         11:43:58

12    after you retired from NRA?                              11:44:02

13        A.   I decline to answer --                          11:44:04

14                MS. EISENBERG (VIA ZOOM):  Object to         11:44:05

15    form.                                                    11:44:06

16        A.   -- based on privilege provided to me by         11:44:06

17    the Fifth Amendment of the U.S. Constitution.            11:44:08

18        Q.   To your knowledge, was Mr. LaPierre aware       11:44:10

19    of this contract?                                        11:44:15

20        A.   I decline to answer based on the privilege      11:44:19

21    provided to me by the Fifth Amendment of the U.S.        11:44:19

22    Constitution.                                            11:44:19

23        Q.   Was Mr. Spray aware of this contract?           11:44:28

24        A.   I decline to answer based on the privilege      11:44:31

25    provided to me by the Fifth Amendment of the U.S.        11:44:31
```

Page 57

CONFIDENTIAL

| | | |
|---|---|---|
| 1 | Constitution. | 11:44:31 |
| 2 | Q. Were you ever paid for services performed | 11:44:37 |
| 3 | under this contract? | 11:44:39 |
| 4 | A. I decline to answer based on the privilege | 11:44:40 |
| 5 | provided to me by the Fifth Amendment of the U.S. | 11:44:40 |
| 6 | Constitution. | 11:44:41 |
| 7 | Q. I would like to look at, if we go back | 11:44:49 |
| 8 | now, to Exhibit A. If you go back to your Marked | 11:44:51 |
| 9 | Exhibits folder. | 11:44:57 |
| 10 | A. We're now leaving Exhibit B? | 11:45:00 |
| 11 | Q. We're now leaving Exhibit B, yes. | 11:45:02 |
| 12 | MS. CONNELL (VIA ZOOM): Jonathan, it | 11:45:07 |
| 13 | the Exhibit A the first one or the second one that | 11:45:08 |
| 14 | we're looking at? It's the 1231. | 11:45:10 |
| 15 | Q. I think if you look at the first | 11:45:19 |
| 16 | Exhibit A. | 11:45:21 |
| 17 | A. I'm having trouble navigating back there. | 11:45:22 |
| 18 | Okay. I have it. I have something that's -- a | 11:45:29 |
| 19 | document says Exhibit A in the little yellow box, | 11:45:33 |
| 20 | right. | 11:45:37 |
| 21 | Q. Can you open it up? | 11:45:38 |
| 22 | A. Yes. | 11:45:44 |
| 23 | Q. Could you please go to page 151. | 11:45:44 |
| 24 | A. Is there a go-to method or do I have to | 11:45:56 |
| 25 | scroll? | 11:45:59 |

Page 58

CONFIDENTIAL

| | | |
|---|---|---|
| 1 | A.  Yes. | 16:44:44 |
| 2 | MS. EISENBERG (VIA ZOOM):  Let's pull | 16:44:49 |
| 3 | up the 2014, 990. | 16:44:50 |
| 4 | MR. CICILIANO (VIA ZOOM):  I'm not | 16:45:07 |
| 5 | sure I have the 2014.  Oh, yeah, sorry about that. | 16:45:07 |
| 6 | MS. EISENBERG (VIA ZOOM):  Thank you. | 16:45:13 |
| 7 | Q.  Mr. Phillips, showing you what's marked as | 16:45:28 |
| 8 | Debtors' Exhibit 3 -- 4 -- so for the record we'll | 16:45:31 |
| 9 | make the answer 2 and we'll make this 4 -- 3. | 16:45:40 |
| 10 | What is Debtors' Exhibit 3? | 16:45:53 |
| 11 | (Exhibit 3 marked.) | 16:45:55 |
| 12 | A.  It's the 2014 Form 990. | 16:45:55 |
| 13 | Q.  For the NRA? | 16:45:59 |
| 14 | A.  For the -- yes, for the NRA. | 16:46:00 |
| 15 | Q.  Directing your attention to the signature | 16:46:04 |
| 16 | in the bottom left corner where it says, Sign here. | 16:46:07 |
| 17 | Do you see there is a signature next to the words | 16:46:12 |
| 18 | sign here? | 16:46:14 |
| 19 | A.  I do. | 16:46:15 |
| 20 | Q.  And states your name in typed letters | 16:46:16 |
| 21 | Wilson H. Phillips, Jr. | 16:46:20 |
| 22 | Do you see that? | 16:46:25 |
| 23 | A.  I do. | 16:46:25 |
| 24 | Q.  Is that your signature that appears right | 16:46:25 |
| 25 | above those words? | 16:46:27 |

Page 251

CONFIDENTIAL

| | | |
|---|---|---|
| 1 | A.   Yes, it is. | 16:46:28 |
| 2 | Q.   Directing your attention to typed text | 16:46:31 |
| 3 | right above the signature, it states, Under | 16:46:34 |
| 4 | penalties of perjury, I declare that I have examined | 16:46:38 |
| 5 | this return, including accompanying schedules and | 16:46:42 |
| 6 | statements, and to the best of my knowledge and | 16:46:46 |
| 7 | belief, it is the correct and complete -- I'm sorry. | 16:46:50 |
| 8 | I'm having difficulty seeing it.  And to the best of | 16:46:58 |
| 9 | my ability, it is true, correct and complete. | 16:47:02 |
| 10 | Do you see that? | 16:47:05 |
| 11 | A.   I do, yes. | 16:47:07 |
| 12 | Q.   Mr. Phillips, when you signed this Form | 16:47:08 |
| 13 | 990, was it, in fact, true that the document was to | 16:47:14 |
| 14 | the best of your knowledge true? | 16:47:19 |
| 15 | A.   I decline to answer based on the privilege | 16:47:27 |
| 16 | provided to me by the Fifth Amendment. | 16:47:36 |
| 17 | Q.   When you signed this document, was it | 16:47:36 |
| 18 | correct? | 16:47:39 |
| 19 | A.   I decline to answer based on the privilege | 16:47:42 |
| 20 | provided to me by the Fifth Amendment. | 16:47:46 |
| 21 | Q.   When you signed this document, was it | 16:47:46 |
| 22 | complete? | 16:47:48 |
| 23 | A.   I decline to answer based on the privilege | 16:47:49 |
| 24 | provided to me by the Fifth Amendment. | 16:47:51 |
| 25 | Q.   Let's take a look at the Form 990 for | 16:47:53 |

Page 252

CONFIDENTIAL

```
 1      A.   Yes, it is.                              16:46:28

 2      Q.   Directing your attention to typed text   16:46:31

 3   right above the signature, it states, Under     16:46:34

 4   penalties of perjury, I declare that I have examined  16:46:38

 5   this return, including accompanying schedules and  16:46:42

 6   statements, and to the best of my knowledge and   16:46:46

 7   belief, it is the correct and complete -- I'm sorry.  16:46:50

 8   I'm having difficulty seeing it.  And to the best of  16:46:58

 9   my ability, it is true, correct and complete.    16:47:02

10        Do you see that?                            16:47:05

11      A.   I do, yes.                               16:47:07

12      Q.   Mr. Phillips, when you signed this Form   16:47:08

13   990, was it, in fact, true that the document was to  16:47:14

14   the best of your knowledge true?                 16:47:19

15      A.   I decline to answer based on the privilege  16:47:27

16   provided to me by the Fifth Amendment.           16:47:36

17      Q.   When you signed this document, was it    16:47:36

18   correct?                                         16:47:39

19      A.   I decline to answer based on the privilege  16:47:42

20   provided to me by the Fifth Amendment.           16:47:46

21      Q.   When you signed this document, was it    16:47:46

22   complete?                                        16:47:48

23      A.   I decline to answer based on the privilege  16:47:49

24   provided to me by the Fifth Amendment.           16:47:51

25      Q.   Let's take a look at the Form 990 for    16:47:53
```

Page 252

| | | |
|---|---|---|
| 1 | 2015.  Mr. Phillips, showing you Debtors' Exhibit 4, | 16:47:59 |
| 2 | what is it? | 16:48:20 |
| 3 | (Exhibit 4 marked.) | 16:48:21 |
| 4 | A.    Form 990 for the year 2015. | 16:48:22 |
| 5 | Q.    For what organization? | 16:48:26 |
| 6 | A.    For The National Rifle Association. | 16:48:28 |
| 7 | Q.    Do you see your signature at the bottom of | 16:48:35 |
| 8 | the page? | 16:48:37 |
| 9 | A.    I do. | 16:48:38 |
| 10 | Q.    It appears right above your name Wilson H. | 16:48:40 |
| 11 | Phillips, Jr., correct? | 16:48:44 |
| 12 | A.    Yes. | 16:48:44 |
| 13 | Q.    Directing your attention to the text right | 16:48:45 |
| 14 | above your signature, it appears to contain language | 16:48:47 |
| 15 | that's similar, if not identical, to the one we just | 16:48:53 |
| 16 | read. | 16:48:56 |
| 17 | A.    Correct. | 16:48:57 |
| 18 | Q.    When you signed this Form 990, Debtors' | 16:48:58 |
| 19 | Exhibit 4, was it to the best of your knowledge | 16:49:03 |
| 20 | true? | 16:49:07 |
| 21 | A.    I decline to answer based on the privilege | 16:49:09 |
| 22 | provided to me by the Fifth Amendment. | 16:49:13 |
| 23 | Q.    When you signed it, was it to the best of | 16:49:13 |
| 24 | your knowledge correct? | 16:49:16 |
| 25 | A.    I decline to answer based on the privilege | 16:49:17 |

Page 253

```
 1   provided to me by the Fifth Amendment.              16:49:22

 2        Q.   When you signed this Form 990, was it to   16:49:22

 3   the best of your knowledge complete?               16:49:25

 4        A.   I decline to answer based on the privilege 16:49:28

 5   provided to me by the Fifth Amendment.              16:49:28

 6        Q.   Let's take a look at the Form 990 for      16:49:32

 7   2016.  Showing you what we'll mark for             16:49:36

 8   identification as Debtors' Exhibit 5.              16:49:52

 9             Mr. Phillips what is Debtors' Exhibit 5?  16:49:56

10             (Exhibit 5 marked.)                       16:49:59

11        A.   It's the Form 990 for The National Rifle   16:49:59

12   Association for the year 2016.                      16:50:03

13        Q.   Do you see your signature on the first     16:50:06

14   page of Debtors' Exhibit 5?                         16:50:08

15        A.   I do.                                      16:50:10

16        Q.   And like the exhibit we just looked at, it 16:50:13

17   appears near your name that's typed, Wilson H.      16:50:17

18   Phillips, correct?                                  16:50:24

19        A.   Yes.                                       16:50:25

20        Q.   When you signed this Form 990, Debtors'    16:50:25

21   Exhibit 5, was it to the best of your knowledge and 16:50:29

22   belief true?                                        16:50:34

23        A.   I decline to answer based on the privilege 16:50:36

24   provided to me by the Fifth Amendment.              16:50:38

25        Q.   When you signed this Form 990, Debtors'    16:50:40
```

Page 254

```
1    provided to me by the Fifth Amendment.                16:49:22

2         Q.   When you signed this Form 990, was it to    16:49:22

3    the best of your knowledge complete?                  16:49:25

4         A.   I decline to answer based on the privilege  16:49:28

5    provided to me by the Fifth Amendment.                16:49:28

6         Q.   Let's take a look at the Form 990 for       16:49:32

7    2016.  Showing you what we'll mark for                16:49:36

8    identification as Debtors' Exhibit 5.                 16:49:52

9              Mr. Phillips what is Debtors' Exhibit 5?    16:49:56

10             (Exhibit 5 marked.)                         16:49:59

11        A.   It's the Form 990 for The National Rifle    16:49:59

12   Association for the year 2016.                        16:50:03

13        Q.   Do you see your signature on the first      16:50:06

14   page of Debtors' Exhibit 5?                           16:50:08

15        A.   I do.                                       16:50:10

16        Q.   And like the exhibit we just looked at, it  16:50:13

17   appears near your name that's typed, Wilson H.        16:50:17

18   Phillips, correct?                                    16:50:24

19        A.   Yes.                                        16:50:25

20        Q.   When you signed this Form 990, Debtors'     16:50:25

21   Exhibit 5, was it to the best of your knowledge and   16:50:29

22   belief true?                                          16:50:34

23        A.   I decline to answer based on the privilege  16:50:36

24   provided to me by the Fifth Amendment.                16:50:38

25        Q.   When you signed this Form 990, Debtors'     16:50:40
```

Page 254

| | | |
|---|---|---|
| 1 | Exhibit 5, was it to the best of your knowledge and | 16:50:44 |
| 2 | belief correct? | 16:50:47 |
| 3 | A.   I decline to answer based on the privilege | 16:50:52 |
| 4 | provided to me by the Fifth Amendment. | 16:50:53 |
| 5 | Q.   When you signed this Form 990, Debtors' | 16:50:58 |
| 6 | Exhibit 5, was it to the best of your knowledge and | 16:51:00 |
| 7 | belief complete? | 16:51:04 |
| 8 | A.   I decline to answer based on the privilege | 16:51:07 |
| 9 | provided to me by the Fifth Amendment. | 16:51:08 |
| 10 | Q.   Let's take a look at the Form 990 for | 16:51:12 |
| 11 | 2017.  I apologize.  I misspoke. | 16:51:17 |
| 12 | Let's take a look at the questionnaire for | 16:51:52 |
| 13 | 2015.  Mr. Phillips, showing you what we'll mark as | 16:51:55 |
| 14 | Debtor's Exhibit 6 for identification. | 16:52:13 |
| 15 | Do you have a document in front of you | 16:52:18 |
| 16 | that says National Rifle Association Financial | 16:52:20 |
| 17 | Disclosure Questionnaire 2016 at the top? | 16:52:22 |
| 18 | (Exhibit 6 marked.) | 16:52:26 |
| 19 | A.   I do. | 16:52:26 |
| 20 | Q.   And it's a four-page document; is that | 16:52:27 |
| 21 | fair?  We can scroll through to allow the witness to | 16:52:32 |
| 22 | review it. | 16:52:35 |
| 23 | MR. WERBNER (VIA ZOOM):  Well, if | 16:52:37 |
| 24 | you're going to scroll it so that he can tell it's | 16:52:38 |
| 25 | four pages, that's fine.  But you're going to have to | 16:52:41 |

Page 255

| | | |
|---|---|---|
| 1 | Exhibit 5, was it to the best of your knowledge and | 16:50:44 |
| 2 | belief correct? | 16:50:47 |
| 3 | A. I decline to answer based on the privilege | 16:50:52 |
| 4 | provided to me by the Fifth Amendment. | 16:50:53 |
| 5 | Q. When you signed this Form 990, Debtors' | 16:50:58 |
| 6 | Exhibit 5, was it to the best of your knowledge and | 16:51:00 |
| 7 | belief complete? | 16:51:04 |
| 8 | A. I decline to answer based on the privilege | 16:51:07 |
| 9 | provided to me by the Fifth Amendment. | 16:51:08 |
| 10 | Q. Let's take a look at the Form 990 for | 16:51:12 |
| 11 | 2017. I apologize. I misspoke. | 16:51:17 |
| 12 | Let's take a look at the questionnaire for | 16:51:52 |
| 13 | 2015. Mr. Phillips, showing you what we'll mark as | 16:51:55 |
| 14 | Debtor's Exhibit 6 for identification. | 16:52:13 |
| 15 | Do you have a document in front of you | 16:52:18 |
| 16 | that says National Rifle Association Financial | 16:52:20 |
| 17 | Disclosure Questionnaire 2016 at the top? | 16:52:22 |
| 18 | (Exhibit 6 marked.) | 16:52:26 |
| 19 | A. I do. | 16:52:26 |
| 20 | Q. And it's a four-page document; is that | 16:52:27 |
| 21 | fair? We can scroll through to allow the witness to | 16:52:32 |
| 22 | review it. | 16:52:35 |
| 23 | MR. WERBNER (VIA ZOOM): Well, if | 16:52:37 |
| 24 | you're going to scroll it so that he can tell it's | 16:52:38 |
| 25 | four pages, that's fine. But you're going to have to | 16:52:41 |

Page 255

| | | |
|---|---|---|
| 1 | take time to read it if you really want to question | 16:52:45 |
| 2 | him about the contents. | 16:52:47 |
| 3 | Q.   Absolutely.  Take as much time as you | 16:52:48 |
| 4 | need. | 16:52:52 |
| 5 | MR. WERBNER (VIA ZOOM):  Put it back | 16:52:53 |
| 6 | on page 1 and he'll start reading. | 16:52:55 |
| 7 | MS. EISENBERG (VIA ZOOM):  Okay. | 16:52:57 |
| 8 | Thank you so much. | 16:52:58 |
| 9 | A.   (Reviewed document.)  You can move.  Hold | 16:53:07 |
| 10 | on.  Hold on.  One second.  Can you go back down | 16:53:31 |
| 11 | just a little bit.  Yeah, that way.  Am I reading | 16:53:43 |
| 12 | that wrong?  Okay.  Let's move on. | 16:54:01 |
| 13 | MR. WERBNER (VIA ZOOM):  It's pretty | 16:54:24 |
| 14 | hard to read. | 16:54:26 |
| 15 | A.   Move it down just a little bit.  I'm | 16:54:29 |
| 16 | sorry. | 16:54:29 |
| 17 | MR. CICILIANO (VIA ZOOM):  Do you need | 16:54:34 |
| 18 | it bigger? | 16:54:34 |
| 19 | THE WITNESS (VIA ZOOM):  That's good | 16:54:34 |
| 20 | there size-wise. | 16:54:35 |
| 21 | A.   I have to get the first part of the | 16:54:41 |
| 22 | question too.  Okay.  Okay.  Move on.  Okay.  We're | 16:54:42 |
| 23 | going to 4.  Okay.  Move to 7.  Okay.  10.  Okay. | 16:55:25 |
| 24 | Q.   Let's pause on the last page of Debtors' | 16:56:30 |
| 25 | Exhibit 6 where it says, Print name, Wilson H. | 16:56:34 |

Page 256

| | | |
|---|---|---|
| 1 | Phillips, Jr.  Do you see that? | 16:56:42 |
| 2 | A.   I do. | 16:56:43 |
| 3 | Q.   And right above that there is a signature. | 16:56:43 |
| 4 | Is that your signature? | 16:56:45 |
| 5 | A.   Yes. | 16:56:46 |
| 6 | Q.   Right above the signature it states, By my | 16:56:48 |
| 7 | signature below, I affirm that my answers are true | 16:56:51 |
| 8 | and correct to the best of my knowledge. | 16:56:53 |
| 9 | Mr. Phillips, when you signed Debtors' | 16:56:56 |
| 10 | Exhibit 6, did you believe that the answers that you | 16:56:59 |
| 11 | provided to the NRA were, in fact, true to the best | 16:57:04 |
| 12 | of your knowledge? | 16:57:07 |
| 13 | A.   I decline to answer based on the privilege | 16:57:08 |
| 14 | provided to me by the Fifth Amendment. | 16:57:09 |
| 15 | Q.   When you signed Debtors' Exhibit 6, were | 16:57:13 |
| 16 | the answers in Debtors' Exhibit 6 correct to the | 16:57:19 |
| 17 | best of your knowledge? | 16:57:25 |
| 18 | A.   I decline to answer based on the privilege | 16:57:27 |
| 19 | provided to me by the Fifth Amendment. | 16:57:28 |
| 20 | Q.   Let's take a look at the questionnaire for | 16:57:32 |
| 21 | 2016.  Showing you a document with the title of | 16:57:37 |
| 22 | National Rifle Association Financial Disclosure | 16:57:59 |
| 23 | Questionnaire 2016. | 16:58:01 |
| 24 | Can you see it on your screen, sir? | 16:58:02 |
| 25 | A.   I can. | 16:58:05 |

Page 257

| | | |
|---|---|---|
| 1 | Q. I would like to ask you questions that are | 16:58:08 |
| 2 | similar to those that I asked with regard to | 16:58:14 |
| 3 | Debtors' Exhibit 6. And I would like to give you an | 16:58:17 |
| 4 | opportunity to review it in its entirety. | 16:58:21 |
| 5 | Perhaps, though, we can start at the end | 16:58:26 |
| 6 | of the document and then scroll through it as | 16:58:29 |
| 7 | necessary. | 16:58:36 |
| 8 | I apologize. We just pulled up the same | 16:58:36 |
| 9 | document. Let's take a look at the questionnaire | 16:58:41 |
| 10 | for 2017. So we'll mark this document, National | 16:58:44 |
| 11 | Rifle Association Financial Disclosure Questionnaire | 16:59:05 |
| 12 | 2017 as Debtors' 7. | 16:59:07 |
| 13 | Mr. Phillips, can you see it on your | 16:59:12 |
| 14 | screen? It's a document entitled National Rifle | 16:59:14 |
| 15 | Association Financial Disclosure Questionnaire 2017. | 16:59:16 |
| 16 | (Exhibit 7 marked.) | 16:59:20 |
| 17 | A. Yes, I can see it. | 16:59:20 |
| 18 | Q. What is it? | 16:59:24 |
| 19 | A. It's what you just said, it's the | 16:59:26 |
| 20 | disclosure financial for 2017. | 16:59:28 |
| 21 | Q. Let's take a look at the last page of the | 16:59:34 |
| 22 | document. Directing your attention to the lower | 16:59:36 |
| 23 | left corner, page 4 of Debtors' Exhibit 7, where it | 16:59:46 |
| 24 | says, Wilson Phillips right above. | 16:59:51 |
| 25 | Is that your signature, Mr. Phillips? | 16:59:54 |

Page 258

CONFIDENTIAL

| | | |
|---|---|---|
| 1 | A. Are you sure you're on the same one? That | 16:59:56 |
| 2 | signature looks just like the last one we looked at. | 17:00:02 |
| 3 | Q. Okay. We will sort it out and come back | 17:00:07 |
| 4 | to that. | 17:00:10 |
| 5 | A. Look at the date, 2017. | 17:00:11 |
| 6 | Q. Right. I do -- directing your attention | 17:00:19 |
| 7 | to the bullets right above your signature. | 17:00:23 |
| 8 | A. Yeah. | 17:00:26 |
| 9 | Q. Do you see where it says, My answers are | 17:00:27 |
| 10 | true and correct to the best of my knowledge? | 17:00:29 |
| 11 | A. I do. | 17:00:32 |
| 12 | Q. When you said that this looks just like | 17:00:36 |
| 13 | the one we were looking at, do you know if this is | 17:00:40 |
| 14 | another form that was signed in 2016? | 17:00:48 |
| 15 | A. I'm sorry. I thought we just did 2016. | 17:00:56 |
| 16 | We were now looking for 2017. | 17:01:00 |
| 17 | Q. Do you remember when you signed this | 17:01:08 |
| 18 | document? | 17:01:10 |
| 19 | A. I'm just talking about just a few minutes | 17:01:10 |
| 20 | ago. | 17:01:13 |
| 21 | Q. You believe this to be the same document | 17:01:19 |
| 22 | that we just looked at a moment ago? | 17:01:21 |
| 23 | A. I do. I think it's a technical problem, | 17:01:23 |
| 24 | not a question of when it was filed. | 17:01:27 |
| 25 | Q. Sure. | 17:01:31 |

Page 259

| | | |
|---|---|---|
| 1 | MS. EISENBERG (VIA ZOOM): | 17:01:34 |
| 2 | Mr. Ciciliano, is it possible to look at 6 and 7 side | 17:01:34 |
| 3 | by side? | 17:01:39 |
| 4 | MR. CICILIANO (VIA ZOOM): No. I | 17:01:57 |
| 5 | don't believe you can get them side by side. I think | 17:01:58 |
| 6 | you can get them one at a time. | 17:02:00 |
| 7 | MS. EISENBERG (VIA ZOOM): Okay. | 17:02:02 |
| 8 | Q. Well, let's just go back to 6 if you don't | 17:02:04 |
| 9 | mind. Showing you Debtors' Exhibit 6 again. | 17:02:05 |
| 10 | Do you have that document in front of you? | 17:02:25 |
| 11 | A. I do. | 17:02:27 |
| 12 | Q. And it says, National Rifle Association | 17:02:29 |
| 13 | Financial Disclosure Questionnaire 2016 at the top | 17:02:31 |
| 14 | of the first page, correct? | 17:02:35 |
| 15 | A. Yes. | 17:02:36 |
| 16 | Q. Let's look at the last page if you don't | 17:02:37 |
| 17 | mind. Is the date on the last page March 1, 2016? | 17:02:40 |
| 18 | A. Correct. | 17:02:47 |
| 19 | Q. When did you sign this document? | 17:02:50 |
| 20 | A. Looks like I signed it on March 1, 2016. | 17:02:56 |
| 21 | Q. Let's now take a look at Debtors' | 17:03:01 |
| 22 | Exhibit 7. Directing your attention to the last | 17:03:04 |
| 23 | page of Debtors' Exhibit 7. | 17:03:22 |
| 24 | Is the date on this questionnaire | 17:03:26 |
| 25 | December 15, 2016? | 17:03:31 |

Page 260

```
 1        A.    Yes.                                      17:03:35

 2        Q.    When did you sign Debtors' Exhibit 7?     17:03:36

 3        A.    That's what I dated it.                   17:03:43

 4        Q.    Do you know if you signed it on the date  17:03:48

 5   that you dated it?                                   17:03:50

 6        A.    I would think so.                         17:03:53

 7        Q.    Does it appear, Mr. Phillips, that you    17:03:56

 8   signed two questionnaires in 2016?                   17:04:01

 9        A.    It's possible.                            17:04:05

10        Q.    Do you have any reason to believe that you 17:04:14

11   did not?                                             17:04:16

12        A.    No.                                       17:04:16

13        Q.    I would like to ask you about the bulleted 17:04:20

14   statements that appear right above your signature on 17:04:24

15   the fourth page of Debtors' Exhibit 7.              17:04:27

16            Would you like to review the document       17:04:30

17   before we go through those statements?              17:04:33

18                 MR. WERBNER (VIA ZOOM):  I don't think 17:04:40

19   that's going to be necessary.  Why don't you submit  17:04:40

20   your question and we'll see.                         17:04:43

21                 MS. EISENBERG (VIA ZOOM):  Certainly.  17:04:44

22        Q.    And if at any time you would like to do   17:04:45

23   so, please let us know, Mr. Phillips.               17:04:47

24            Mr. Phillips, when you signed this          17:04:49

25   document on or about December 15, 2016, were your    17:04:50
```

Page 261

| | | |
|---|---|---|
| 1 | answers true to the best of your knowledge? | 17:04:56 |
| 2 | A.   I decline to answer based on the privilege | 17:04:59 |
| 3 | provided to me by the Fifth Amendment. | 17:05:02 |
| 4 | Q.   When you signed this questionnaire, were | 17:05:05 |
| 5 | the answers correct to the best of your knowledge? | 17:05:08 |
| 6 | A.   I decline to answer based on the privilege | 17:05:12 |
| 7 | provided to me by the Fifth Amendment. | 17:05:13 |
| 8 | Q.   Next it states, I have received a copy of | 17:05:19 |
| 9 | the NRA's conflict of interest and related party | 17:05:22 |
| 10 | transaction policy. | 17:05:24 |
| 11 | Do you see that statement? | 17:05:26 |
| 12 | A.   I do. | 17:05:30 |
| 13 | Q.   Was that a true statement? | 17:05:32 |
| 14 | A.   I decline to answer based on the privilege | 17:05:34 |
| 15 | provided to me by the Fifth Amendment. | 17:05:35 |
| 16 | Q.   Next it states, I have read and understand | 17:05:41 |
| 17 | that policy and agree to comply with it. | 17:05:43 |
| 18 | Do you see that? | 17:05:46 |
| 19 | A.   I decline to answer based on the privilege | 17:05:50 |
| 20 | provided to me by the Fifth Amendment to the U.S. | 17:05:50 |
| 21 | Constitution. | 17:05:57 |
| 22 | Q.   The question was if you see language that | 17:05:57 |
| 23 | states, I have read and understand the policy and | 17:06:00 |
| 24 | agree to comply with it. | 17:06:02 |
| 25 | A.   Yes, I do. | 17:06:03 |

Page 262

| | | |
|---|---|---|
| 1 | Q. Thank you. When you signed this | 17:06:05 |
| 2 | questionnaire on or about December 15, 2016, was it, | 17:06:08 |
| 3 | in fact, the case that you had read the NRA's | 17:06:14 |
| 4 | conflict of interest and related party transaction | 17:06:18 |
| 5 | policy? | 17:06:20 |
| 6 | A. I decline to answer based on the privilege | 17:06:22 |
| 7 | provided to me by the Fifth Amendment. | 17:06:25 |
| 8 | Q. When you signed it on December 15, 2016, | 17:06:25 |
| 9 | on or about that date, was it, in fact, true that | 17:06:32 |
| 10 | you were agreeing to comply with the NRA's conflict | 17:06:36 |
| 11 | of interest and related party transaction policy? | 17:06:40 |
| 12 | A. I decline to answer based on the privilege | 17:06:45 |
| 13 | provided to me by the Fifth Amendment. | 17:06:45 |
| 14 | Q. Let's take a look at the questionnaire for | 17:06:49 |
| 15 | 2018 which we will mark as Debtors' 8. | 17:06:51 |
| 16 | Mr. Phillips, showing you Debtors' 8. Do | 17:07:11 |
| 17 | you have it on the screen in the front of you? | 17:07:15 |
| 18 | (Exhibit 8 marked.) | 17:06:58 |
| 19 | A. I don't see it identified that way, but I | 17:07:20 |
| 20 | see it's questionnaire for 2018. | 17:07:22 |
| 21 | Q. Fair point. It states, National Rifle | 17:07:26 |
| 22 | Association Financial Disclosure Questionnaire 2018, | 17:07:29 |
| 23 | correct? | 17:07:32 |
| 24 | A. Correct. | 17:07:32 |
| 25 | Q. Is your name written right above those | 17:07:34 |

Page 263

| | | |
|---|---|---|
| 1 | Q.   Thank you.  When you signed this | 17:06:05 |
| 2 | questionnaire on or about December 15, 2016, was it, | 17:06:08 |
| 3 | in fact, the case that you had read the NRA's | 17:06:14 |
| 4 | conflict of interest and related party transaction | 17:06:18 |
| 5 | policy? | 17:06:20 |
| 6 | A.   I decline to answer based on the privilege | 17:06:22 |
| 7 | provided to me by the Fifth Amendment. | 17:06:25 |
| 8 | Q.   When you signed it on December 15, 2016, | 17:06:25 |
| 9 | on or about that date, was it, in fact, true that | 17:06:32 |
| 10 | you were agreeing to comply with the NRA's conflict | 17:06:36 |
| 11 | of interest and related party transaction policy? | 17:06:40 |
| 12 | A.   I decline to answer based on the privilege | 17:06:45 |
| 13 | provided to me by the Fifth Amendment. | 17:06:45 |
| 14 | Q.   Let's take a look at the questionnaire for | 17:06:49 |
| 15 | 2018 which we will mark as Debtors' 8. | 17:06:51 |
| 16 | Mr. Phillips, showing you Debtors' 8.  Do | 17:07:11 |
| 17 | you have it on the screen in the front of you? | 17:07:15 |
| 18 | (Exhibit 8 marked.) | 17:06:58 |
| 19 | A.   I don't see it identified that way, but I | 17:07:20 |
| 20 | see it's questionnaire for 2018. | 17:07:22 |
| 21 | Q.   Fair point.  It states, National Rifle | 17:07:26 |
| 22 | Association Financial Disclosure Questionnaire 2018, | 17:07:29 |
| 23 | correct? | 17:07:32 |
| 24 | A.   Correct. | 17:07:32 |
| 25 | Q.   Is your name written right above those | 17:07:34 |

Page 263

```
 1   words?                                              17:07:37

 2       A.   Yes.                                       17:07:37

 3       Q.   I would like to show you I believe the     17:07:40

 4   penultimate page of this document.  Directing your 17:07:44

 5   attention to page 4 of Debtors' Exhibit 8, is the  17:07:52

 6   signature in the bottom left corner of that page   17:08:01

 7   your signature, Mr. Phillips?                       17:08:04

 8       A.   It's my signature.                         17:08:07

 9       Q.   And it appears right above the words in    17:08:10

10   handwritten Wilson Phillips, correct?               17:08:14

11       A.   Correct.                                   17:08:17

12       Q.   When did you sign this questionnaire,      17:08:19

13   Debtors' Exhibit 8?                                 17:08:22

14       A.   I decline to answer based on the privilege 17:08:26

15   provided to me by the Fifth Amendment.             17:08:32

16       Q.   When you signed this document, Debtors'    17:08:32

17   Exhibit 8, were your answers true to the best of    17:08:40

18   your knowledge?                                     17:08:43

19       A.   I decline to answer based on the privilege 17:08:47

20   provided to me by the Fifth Amendment.             17:08:48

21       Q.   Were your answers correct to the best of   17:08:49

22   your knowledge?                                     17:08:52

23       A.   I decline to answer based on the privilege 17:08:52

24   provided to me by the Fifth Amendment.             17:08:55

25       Q.   Let's take a look at the January 2019      17:09:03
```

Page 264

| | | |
|---|---|---|
| 1 | words? | 17:07:37 |
| 2 | A.   Yes. | 17:07:37 |
| 3 | Q.   I would like to show you I believe the | 17:07:40 |
| 4 | penultimate page of this document.  Directing your | 17:07:44 |
| 5 | attention to page 4 of Debtors' Exhibit 8, is the | 17:07:52 |
| 6 | signature in the bottom left corner of that page | 17:08:01 |
| 7 | your signature, Mr. Phillips? | 17:08:04 |
| 8 | A.   It's my signature. | 17:08:07 |
| 9 | Q.   And it appears right above the words in | 17:08:10 |
| 10 | handwritten Wilson Phillips, correct? | 17:08:14 |
| 11 | A.   Correct. | 17:08:17 |
| 12 | Q.   When did you sign this questionnaire, | 17:08:19 |
| 13 | Debtors' Exhibit 8? | 17:08:22 |
| 14 | A.   I decline to answer based on the privilege | 17:08:26 |
| 15 | provided to me by the Fifth Amendment. | 17:08:32 |
| 16 | Q.   When you signed this document, Debtors' | 17:08:32 |
| 17 | Exhibit 8, were your answers true to the best of | 17:08:40 |
| 18 | your knowledge? | 17:08:43 |
| 19 | A.   I decline to answer based on the privilege | 17:08:47 |
| 20 | provided to me by the Fifth Amendment. | 17:08:48 |
| 21 | Q.   Were your answers correct to the best of | 17:08:49 |
| 22 | your knowledge? | 17:08:52 |
| 23 | A.   I decline to answer based on the privilege | 17:08:52 |
| 24 | provided to me by the Fifth Amendment. | 17:08:55 |
| 25 | Q.   Let's take a look at the January 2019 | 17:09:03 |

Page 264

| | | |
|---|---|---|
| 1 | questionnaire. I am showing you a document that | 17:09:06 |
| 2 | states, National Rifle Association Financial | 17:09:19 |
| 3 | Disclosure Questionnaire. | 17:09:21 |
| 4 | Do you see that? | 17:09:23 |
| 5 | (Exhibit 9 marked.) | 17:09:24 |
| 6 | A. I do. | 17:09:24 |
| 7 | Q. Does -- do words Wilson H. Phillips, Jr., | 17:09:25 |
| 8 | appear in the top right corner on the first page of | 17:09:31 |
| 9 | the document? | 17:09:34 |
| 10 | A. Yes. | 17:09:35 |
| 11 | Q. If we can take a look at the penultimate | 17:09:37 |
| 12 | page of this document which we'll mark as | 17:09:41 |
| 13 | Debtors' 9. | 17:09:46 |
| 14 | Mr. Phillips, is that your signature on | 17:09:50 |
| 15 | page 4 of Debtors' Exhibit 9? | 17:09:55 |
| 16 | A. Yes, it's my signature. | 17:09:58 |
| 17 | Q. When did you sign this document? | 17:10:08 |
| 18 | A. I decline to answer based on the privilege | 17:10:11 |
| 19 | provided to me by the Fifth Amendment. | 17:10:13 |
| 20 | Q. When you signed this document, were your | 17:10:17 |
| 21 | answers true and correct to the best of your | 17:10:21 |
| 22 | knowledge? | 17:10:23 |
| 23 | A. I decline to answer based on the privilege | 17:10:24 |
| 24 | provided to me by the Fifth Amendment of the U.S. | 17:10:33 |
| 25 | Constitution. | 17:10:34 |

Page 265

```
 1        Q.   When you signed this document, were the        17:10:34

 2   answers you provided correct to the best of your         17:10:39

 3   knowledge?                                               17:10:40

 4        A.   I decline to answer based on the privilege     17:10:43

 5   provided to me by the Fifth Amendment.                   17:10:46

 6        Q.   The first bullet states also after the         17:10:46

 7   comma, quote, And I will inform the Secretary's          17:10:51

 8   Office if any of my answers change, closed quote.        17:10:55

 9        Do you see that language?                           17:11:00

10        A.   I do.                                          17:11:02

11        Q.   Did you understand when you signed this        17:11:07

12   document that you made this representation?              17:11:10

13        A.   I decline to answer based on the privilege     17:11:19

14   provided to me by the Fifth Amendment.                   17:11:23

15        Q.   Let's take a look at the management rep        17:11:23

16   letter for 2015.  Mr. Phillips, I'm showing you a        17:11:28

17   document that is a five-page document.  It's dated       17:12:00

18   March 8, 2016, and it is addressed to RSM US LLP.        17:12:07

19        Do you have it in front of you?                     17:12:14

20        A.   I do.                                          17:12:15

21        Q.   And for purposes of keeping track we'll        17:12:16

22   mark it as Debtor's Exhibit 9.                           17:12:18

23        What is this document, Debtors' Exhibit 9?          17:12:22

24        A.   It's a representation letter to the            17:12:28

25   outside auditors in connection with their audit.         17:12:30
```

Page 266

CONFIDENTIAL

| | | |
|---|---|---|
| 1 | Q.   When you signed this document, were the | 17:10:34 |
| 2 | answers you provided correct to the best of your | 17:10:39 |
| 3 | knowledge? | 17:10:40 |
| 4 | A.   I decline to answer based on the privilege | 17:10:43 |
| 5 | provided to me by the Fifth Amendment. | 17:10:46 |
| 6 | Q.   The first bullet states also after the | 17:10:46 |
| 7 | comma, quote, And I will inform the Secretary's | 17:10:51 |
| 8 | Office if any of my answers change, closed quote. | 17:10:55 |
| 9 | Do you see that language? | 17:11:00 |
| 10 | A.   I do. | 17:11:02 |
| 11 | Q.   Did you understand when you signed this | 17:11:07 |
| 12 | document that you made this representation? | 17:11:10 |
| 13 | A.   I decline to answer based on the privilege | 17:11:19 |
| 14 | provided to me by the Fifth Amendment. | 17:11:23 |
| 15 | Q.   Let's take a look at the management rep | 17:11:23 |
| 16 | letter for 2015.  Mr. Phillips, I'm showing you a | 17:11:28 |
| 17 | document that is a five-page document.  It's dated | 17:12:00 |
| 18 | March 8, 2016, and it is addressed to RSM US LLP. | 17:12:07 |
| 19 | Do you have it in front of you? | 17:12:14 |
| 20 | A.   I do. | 17:12:15 |
| 21 | Q.   And for purposes of keeping track we'll | 17:12:16 |
| 22 | mark it as Debtor's Exhibit 9. | 17:12:18 |
| 23 | What is this document, Debtors' Exhibit 9? | 17:12:22 |
| 24 | A.   It's a representation letter to the | 17:12:28 |
| 25 | outside auditors in connection with their audit. | 17:12:30 |

Page 266

```
 1        Q.   What is the purpose of this letter?        17:12:36

 2        A.   To show -- to indicate that they believe   17:12:39

 3   what they provided was accurate.                     17:12:45

 4        Q.   And when you say "they," who are you       17:12:48

 5   referring to?                                        17:12:50

 6        A.   The clients.                               17:12:51

 7        Q.   Sorry.  Who?                               17:12:58

 8        A.   The clients of the firm.                   17:12:59

 9        Q.   And by the firm you mean RSM, correct?     17:13:01

10        A.   Yes, I do.                                 17:13:04

11        Q.   Okay.  Let's take a look at the last two   17:13:05

12   pages of Debtors' Exhibit 9.                         17:13:08

13             Does your signature appear on page 4 of    17:13:14

14   this letter to RSM?                                  17:13:20

15        A.   It does.                                   17:13:23

16        Q.   And is it right above the words Wilson H.  17:13:26

17   Phillips, Jr.?                                       17:13:31

18        A.   Yes.                                       17:13:35

19        Q.   Let's scroll down -- let's go up to the    17:13:36

20   first page.  Directing your attention to the text    17:13:58

21   right below financial statements, the text that      17:14:07

22   appears in bold.  There is a list of numbered        17:14:11

23   representations 1 through 7.                         17:14:15

24             Do you see that?                           17:14:20

25        A.   I do.                                      17:14:20
```

Page 267

| | | |
|---|---|---|
| 1 | Q. The first statement states, We have | 17:14:24 |
| 2 | fulfilled our responsibilities as set out in the | 17:14:26 |
| 3 | terms of the audit arrangement letter, dated | 17:14:30 |
| 4 | October 23, 2015, for the preparation and fair | 17:14:34 |
| 5 | presentation of the financial statements referred to | 17:14:40 |
| 6 | above in accordance with the US GAAP. | 17:14:43 |
| 7 | Do you see that? | 17:14:49 |
| 8 | A. I do. | 17:14:49 |
| 9 | Q. The word "we," does that refer to you, | 17:14:54 |
| 10 | among others? | 17:14:57 |
| 11 | A. Yes. | 17:14:59 |
| 12 | Q. When you signed Debtors' Exhibit 9, had | 17:15:01 |
| 13 | you fulfilled your responsibilities as set out in | 17:15:06 |
| 14 | the terms of the audit arrangement letter that's | 17:15:11 |
| 15 | referenced in this paragraph? | 17:15:16 |
| 16 | A. I decline to answer based on the privilege | 17:15:19 |
| 17 | provided to me by the Fifth Amendment. | 17:15:21 |
| 18 | Q. Directing your attention to page 3 of the | 17:15:37 |
| 19 | letter. Directing your attention to statement | 17:15:40 |
| 20 | numbered 11. It states, All transactions have been | 17:15:56 |
| 21 | recorded in the accounting records and are reflected | 17:16:00 |
| 22 | in the financial statements. | 17:16:05 |
| 23 | Do you see that? | 17:16:07 |
| 24 | A. I do. | 17:16:10 |
| 25 | Q. To the best of your knowledge and belief, | 17:16:13 |

Page 268

1    when you signed Debtors' Exhibit 9, had all          17:16:15

2    transactions been recorded in the accounting         17:16:21

3    records?                                             17:16:25

4         A.   I decline to answer based on the privilege  17:16:26

5    provided to me by the Fifth Amendment.                17:16:28

6         Q.   Went you signed Debtors' Exhibit 9, had     17:16:31

7    all transactions been reflected in the financial     17:16:35

8    statements?                                          17:16:39

9         A.   I decline to answer based on the privilege  17:16:43

10   provided to me by the Fifth Amendment.                17:16:44

11        Q.   Directing your attention to paragraph 14,   17:16:53

12   which appears towards the bottom of the page, it      17:16:56

13   states, We have no knowledge of any allegations of    17:16:59

14   fraud or suspected fraud affecting the NRA's          17:17:02

15   financial statements received in communications from  17:17:05

16   employees, former employees, regulators or others.    17:17:09

17        Do you see that language?                        17:17:14

18        A.   I do.                                        17:17:16

19        Q.   And again, the word "we," does that refer   17:17:19

20   to yourself, among others?                            17:17:22

21        A.   Yes.                                         17:17:24

22        Q.   When you signed Debtors' Exhibit 9, is it   17:17:26

23   fair to say that you had no knowledge of any          17:17:29

24   allegations of fraud or suspected fraud affecting     17:17:32

25   the NRA's financial statements, whether they had      17:17:37

Page 269

| | | |
|---|---|---|
| 1 | been received in communications from employees, | 17:17:40 |
| 2 | former employees, regulators or others? | 17:17:43 |
| 3 | A. I decline to answer based on the privilege | 17:17:47 |
| 4 | provided to me by the Fifth Amendment. | 17:17:48 |
| 5 | Q. Let's take a look at the letter for 2016. | 17:17:53 |
| 6 | Let's move on to the next exhibit. | 17:17:58 |
| 7 | A. This is 2016, though, right? | 17:18:03 |
| 8 | Q. Let's go back. I think that you are | 17:18:05 |
| 9 | making an important point. Some we're back to | 17:18:09 |
| 10 | Debtors' Exhibit 9 (sic). | 17:18:22 |
| 11 | So is it fair to say that the letter is | 17:18:24 |
| 12 | dated March 8, 2016? | 17:18:28 |
| 13 | A. Yes. | 17:18:32 |
| 14 | Q. And directing your attention to the first | 17:18:34 |
| 15 | full paragraph on the first page of Debtors' | 17:18:37 |
| 16 | Exhibit 9, does it state as follows, quote, This | 17:18:43 |
| 17 | representation letter is provided in connection with | 17:18:48 |
| 18 | your audits of the consolidated financial of | 17:18:52 |
| 19 | National Rifle Association of America and | 17:18:55 |
| 20 | affiliates, the NRA, which comprise the consolidated | 17:18:58 |
| 21 | statements of financial position as of December 31, | 17:19:02 |
| 22 | 2015 and 2014, and the related consolidated | 17:19:06 |
| 23 | statements of activities and cash flow for the years | 17:19:12 |
| 24 | then ended, and the related notes to the | 17:19:16 |
| 25 | consolidated financial statements for the purpose of | 17:19:19 |

Page 270

| | | |
|---|---|---|
| 1 | been received in communications from employees, | 17:17:40 |
| 2 | former employees, regulators or others? | 17:17:43 |
| 3 | A. I decline to answer based on the privilege | 17:17:47 |
| 4 | provided to me by the Fifth Amendment. | 17:17:48 |
| 5 | Q. Let's take a look at the letter for 2016. | 17:17:53 |
| 6 | Let's move on to the next exhibit. | 17:17:58 |
| 7 | A. This is 2016, though, right? | 17:18:03 |
| 8 | Q. Let's go back. I think that you are | 17:18:05 |
| 9 | making an important point. Some we're back to | 17:18:09 |
| 10 | Debtors' Exhibit 9 (sic). | 17:18:22 |
| 11 | So is it fair to say that the letter is | 17:18:24 |
| 12 | dated March 8, 2016? | 17:18:28 |
| 13 | A. Yes. | 17:18:32 |
| 14 | Q. And directing your attention to the first | 17:18:34 |
| 15 | full paragraph on the first page of Debtors' | 17:18:37 |
| 16 | Exhibit 9, does it state as follows, quote, This | 17:18:43 |
| 17 | representation letter is provided in connection with | 17:18:48 |
| 18 | your audits of the consolidated financial of | 17:18:52 |
| 19 | National Rifle Association of America and | 17:18:55 |
| 20 | affiliates, the NRA, which comprise the consolidated | 17:18:58 |
| 21 | statements of financial position as of December 31, | 17:19:02 |
| 22 | 2015 and 2014, and the related consolidated | 17:19:06 |
| 23 | statements of activities and cash flow for the years | 17:19:12 |
| 24 | then ended, and the related notes to the | 17:19:16 |
| 25 | consolidated financial statements for the purpose of | 17:19:19 |

Veritext Legal Solutions
800-336-4000

CONFIDENTIAL

| | | |
|---|---|---|
| 1 | expressing an opinion on whether the consolidated | 17:19:23 |
| 2 | financial statements are presented fairly, in all | 17:19:27 |
| 3 | material respects, in accordance with accounting | 17:19:30 |
| 4 | principles generally accepted in the United States | 17:19:32 |
| 5 | of America (US GAAP). | 17:19:36 |
| 6 | Does Exhibit 9 say what I just said? | 17:19:40 |
| 7 | A.   Yes. | 17:19:43 |
| 8 | Q.   Can you explain the reference to | 17:19:48 |
| 9 | December 31, 2015, and December 31, 2014, in this | 17:19:50 |
| 10 | paragraph? | 17:19:56 |
| 11 | A.   In the -- those are the two years under | 17:19:58 |
| 12 | audit.  Actually '15 currently under audit.  '14 was | 17:20:03 |
| 13 | showing the prior year by comparison. | 17:20:10 |
| 14 | Q.   Thank you.  So let's now go back to | 17:20:14 |
| 15 | Exhibit 10.  Can you see Exhibit 10 which is a | 17:20:18 |
| 16 | March -- a letter dated March 8, 2017? | 17:20:36 |
| 17 | (Exhibit 10 marked.) | 17:20:29 |
| 18 | A.   Yes. | 17:20:39 |
| 19 | Q.   And what is Debtors' Exhibit 10? | 17:20:40 |
| 20 | A.   It's a representation letter for audits | 17:20:47 |
| 21 | year for the year 2016 and comparable 2015. | 17:20:53 |
| 22 | Q.   What is the difference between Debtors' | 17:20:58 |
| 23 | Exhibits 9 and 10? | 17:21:01 |
| 24 | A.   The dates. | 17:21:04 |
| 25 | Q.   Did you sign this letter, Debtors' | 17:21:11 |

Page 271

| | | |
|---|---|---|
| 1 | Exhibit 10? | 17:21:16 |
| 2 | MS. EISENBERG (VIA ZOOM): Dylan, | 17:21:18 |
| 3 | would be so kind as to please scroll down. | 17:21:20 |
| 4 | A. Go to the bottom. That's my signature. | 17:21:22 |
| 5 | Q. Is your signature -- by it's my signature, | 17:21:31 |
| 6 | are you referring to the signature in the top left | 17:21:33 |
| 7 | corner of page 4 of Debtors' Exhibit 10? | 17:21:36 |
| 8 | A. Right above my name. | 17:21:38 |
| 9 | Q. Thank you. Let's scroll up. | 17:21:41 |
| 10 | Mr. Phillips, directing your attention to | 17:22:01 |
| 11 | the numbered paragraph 1 on page 1 of Debtors' | 17:22:03 |
| 12 | Exhibit 10. Do you see where it states, We have | 17:22:06 |
| 13 | fulfilled our responsibilities as set out in the | 17:22:08 |
| 14 | terms of the audit arrangement letter, dated | 17:22:11 |
| 15 | October 12, 2016, for the preparation and fair | 17:22:14 |
| 16 | representation of the financial statements referred | 17:22:20 |
| 17 | to above in accordance with US GAAP. | 17:22:21 |
| 18 | Do you see that? | 17:22:24 |
| 19 | A. I'm still trying to find it. | 17:22:25 |
| 20 | Q. I'm so sorry. Let me slow down. | 17:22:27 |
| 21 | A. Okay. Now I have got it. Is that the | 17:22:30 |
| 22 | very first paragraph? | 17:22:31 |
| 23 | Q. It is. | 17:22:32 |
| 24 | A. I got a few steps behind you there. | 17:22:34 |
| 25 | Q. So let me go over it again just to make | 17:22:40 |

Veritext Legal Solutions
800-336-4000

CONFIDENTIAL

| | | |
|---|---|---|
| 1 | sure.  Is it fair to say, Mr. Phillips, that the | 17:22:43 |
| 2 | first -- the paragraph that's numbered number 1 | 17:22:47 |
| 3 | states as follows? | 17:22:50 |
| 4 | A.  I was up on the first paragraph above, the | 17:22:52 |
| 5 | very first paragraph in the letter. | 17:22:55 |
| 6 | Q.  Yes.  I'm sorry I made it confusing. | 17:22:58 |
| 7 | So directing you to the paragraph that's | 17:23:01 |
| 8 | the first of the numbered paragraphs and appears | 17:23:03 |
| 9 | after 1.  Do you agree that it states, quote, We | 17:23:07 |
| 10 | have fulfilled our responsibilities as set out in | 17:23:13 |
| 11 | the terms of the audit arrangement letter, dated | 17:23:17 |
| 12 | October 12, 2016, for the preparation and fair | 17:23:19 |
| 13 | presentation of the financial statements referred to | 17:23:23 |
| 14 | above in accordance with the US GAAP? | 17:23:26 |
| 15 | A.  Yes. | 17:23:29 |
| 16 | Q.  What is the audit arrangement letter dated | 17:23:35 |
| 17 | October 12, 2016? | 17:23:35 |
| 18 | A.  There is the engagement letter that the | 17:23:38 |
| 19 | auditors sent at the beginning of the audit. | 17:23:41 |
| 20 | Q.  When you signed this letter to RSM, had | 17:23:47 |
| 21 | you fulfilled your responsibilities as set out in | 17:23:53 |
| 22 | the terms of that audit arrangement letter? | 17:23:58 |
| 23 | A.  I decline to answer based on the privilege | 17:24:03 |
| 24 | provided to me by the Fifth Amendment. | 17:24:04 |
| 25 | Q.  Let's go to the second page.  Directing | 17:24:10 |

Page 273

| | | |
|---|---|---|
| 1 | your attention to paragraph number 8 on page 2 of | 17:24:28 |
| 2 | Debtors' Exhibit 10. | 17:24:35 |
| 3 | Mr. Phillips, does it state quote, The | 17:24:37 |
| 4 | selection and application of accounting policies are | 17:24:39 |
| 5 | appropriate. Do you see that? | 17:24:44 |
| 6 | A. I do. | 17:24:50 |
| 7 | Q. I apologize. I couldn't hear you. Did | 17:24:53 |
| 8 | you say yes? | 17:24:55 |
| 9 | A. Yes. Yes. | 17:24:56 |
| 10 | Q. And the second sentence in paragraph 8 | 17:24:57 |
| 11 | does it say, quote, We further represent the | 17:25:01 |
| 12 | following are properly presented and/or disclosed: | 17:25:04 |
| 13 | First, our tax status -- and then there is text | 17:25:10 |
| 14 | which I won't read by you are welcome to take as | 17:25:16 |
| 15 | much time as you like. | 17:25:20 |
| 16 | A. Keep going. | 17:25:20 |
| 17 | Q. B, releases of restricted net assets. C, | 17:25:25 |
| 18 | amounts held for others under agency, et cetera, | 17:25:27 |
| 19 | et cetera. | 17:25:31 |
| 20 | And then number 9, is it fair to say that | 17:25:31 |
| 21 | it states, We have no knowledge of any uncorrected | 17:25:37 |
| 22 | misstatements in the financial statements. | 17:25:39 |
| 23 | Do you see that? | 17:25:42 |
| 24 | A. Uh-huh. | 17:25:42 |
| 25 | Q. When you signed Debtors' Exhibit 10, is it | 17:25:46 |

Page 274

| | | |
|---|---|---|
| 1 | fair to say that you had no knowledge of any | 17:25:54 |
| 2 | uncorrected misstatements in the financial | 17:25:57 |
| 3 | statements as referenced in paragraph 9? | 17:26:00 |
| 4 | A. I decline to answer based on the privilege | 17:26:03 |
| 5 | provided to me by the Fifth Amendment. | 17:26:05 |
| 6 | Q. When you signed this letter to RSM, was it | 17:26:09 |
| 7 | the case that the items listed in paragraph 8 were, | 17:26:15 |
| 8 | in fact, properly presented? | 17:26:23 |
| 9 | A. I decline to answer based on the privilege | 17:26:27 |
| 10 | provided to me by the Fifth Amendment. | 17:26:29 |
| 11 | Q. When you signed this letter to RSM, was | 17:26:31 |
| 12 | it, in fact, the case that the items listed in | 17:26:34 |
| 13 | paragraph 8 had been properly disclosed? | 17:26:40 |
| 14 | A. I decline to answer based on the privilege | 17:26:44 |
| 15 | provided to me by the Fifth Amendment. | 17:26:45 |
| 16 | Q. Let's take a look at the letter for 2017 | 17:26:46 |
| 17 | which we will mark as Debtors' 11. | 17:26:55 |
| 18 | Mr. Phillips, I'm showing you a four-page | 17:27:32 |
| 19 | document on NRA letterhead dated March 7, 2018. | 17:27:36 |
| 20 | Do you see that? | 17:27:43 |
| 21 | (Exhibit 11 marked.) | 17:26:59 |
| 22 | A. I do. | 17:27:43 |
| 23 | Q. What is it? | 17:27:43 |
| 24 | A. It's a representation letter for National | 17:27:46 |
| 25 | Rifle Association and its affiliates for the year | 17:27:52 |

Page 275

CONFIDENTIAL

| | | |
|---|---|---|
| 1 | fair to say that you had no knowledge of any | 17:25:54 |
| 2 | uncorrected misstatements in the financial | 17:25:57 |
| 3 | statements as referenced in paragraph 9? | 17:26:00 |
| 4 | A.   I decline to answer based on the privilege | 17:26:03 |
| 5 | provided to me by the Fifth Amendment. | 17:26:05 |
| 6 | Q.   When you signed this letter to RSM, was it | 17:26:09 |
| 7 | the case that the items listed in paragraph 8 were, | 17:26:15 |
| 8 | in fact, properly presented? | 17:26:23 |
| 9 | A.   I decline to answer based on the privilege | 17:26:27 |
| 10 | provided to me by the Fifth Amendment. | 17:26:29 |
| 11 | Q.   When you signed this letter to RSM, was | 17:26:31 |
| 12 | it, in fact, the case that the items listed in | 17:26:34 |
| 13 | paragraph 8 had been properly disclosed? | 17:26:40 |
| 14 | A.   I decline to answer based on the privilege | 17:26:44 |
| 15 | provided to me by the Fifth Amendment. | 17:26:45 |
| 16 | Q.   Let's take a look at the letter for 2017 | 17:26:46 |
| 17 | which we will mark as Debtors' 11. | 17:26:55 |
| 18 | Mr. Phillips, I'm showing you a four-page | 17:27:32 |
| 19 | document on NRA letterhead dated March 7, 2018. | 17:27:36 |
| 20 | Do you see that? | 17:27:43 |
| 21 | (Exhibit 11 marked.) | 17:26:59 |
| 22 | A.   I do. | 17:27:43 |
| 23 | Q.   What is it? | 17:27:43 |
| 24 | A.   It's a representation letter for National | 17:27:46 |
| 25 | Rifle Association and its affiliates for the year | 17:27:52 |

Page 275

```
 1    ended December 31st, 2017, and the prior year.        17:27:55

 2         Q.    Did you sign Debtors' Exhibit 11?           17:28:01

 3         A.    Can you take me to down to the bottom?      17:28:05

 4         Q.    Certainly.                                  17:28:07

 5         A.    That's my signature again.                  17:28:17

 6         Q.    So is the answer yes, you signed it?        17:28:21

 7         A.    The answer is it's my signature.  It looks  17:28:25

 8    like a facsimile.                                      17:28:29

 9         Q.    Who had the ability to apply your           17:28:32

10    facsimile to documents in or around when Exhibit 11   17:28:37

11    is dated?                                              17:28:48

12         A.    Lisa Supernaugh.                            17:28:50

13         Q.    Anybody else?                               17:28:53

14         A.    No.                                         17:28:58

15         Q.    Did you authorize Ms. Supernaugh to apply   17:29:01

16    your facsimile signature to this letter?              17:29:04

17         A.    I don't know about that document.  I'm not  17:29:07

18    aware ever of any time she used it without coming to   17:29:10

19    me first.                                              17:29:16

20         Q.    I apologize.  I couldn't hear what you      17:29:16

21    said.  Could you --                                    17:29:19

22               MS. EISENBERG (VIA ZOOM):  Ms. Munroe,      17:29:21

23    if you heard what Mr. Phillips said, could you read    17:29:22

24    it just so that I can hear it.

25               THE REPORTER (VIA ZOOM):  He faded out
```

Page 276

CONFIDENTIAL

1  at the end.

2          MS. EISENBERG (VIA ZOOM):  Why don't

3  we reread my question, if you don't mind, Ms. Munroe,

4  and then we'll ask to please answer it again.          17:29:52

5          (Record read.)                                 17:29:52

6      A.   I don't recall.                               17:29:52

7      Q.   Counsel, I would like to --                   17:30:01

8          MS. EISENBERG (VIA ZOOM):  Go up to           17:30:10

9  the first page of Exhibit 11, Dylan, if you would be   17:30:11

10  so kind.                                              17:30:17

11      Q.   Mr. Phillips, it states in the              17:30:18

12  paragraph -- first numbered paragraph, quote, We      17:30:23

13  have fulfilled our responsibilities as set out in     17:30:27

14  the terms of the audit arrangement letter, dated      17:30:29

15  October 23, 2017, for the preparation and fair        17:30:32

16  presentation of the consolidated financial            17:30:37

17  statements referred to above in accordance with the   17:30:40

18  US GAAP.                                              17:30:42

19          Do you see that?                              17:30:42

20      A.   I do.                                        17:30:44

21      Q.   Do you understand the term "we" to refer     17:30:47

22  to you, among others?                                 17:30:49

23      A.   Yes.                                         17:30:51

24      Q.   To whom else does the term "we" as used in   17:30:52

25  this letter refer?                                    17:30:56

                                        Page 277

1    A.   Well, it would be the people that signed          17:30:57

2    the letter for one thing and then possibly -- I        17:31:00

3    guess that's who is actually saying it.  But people    17:31:06

4    that worked for them, too, I'm sure they're            17:31:11

5    attesting for them as well.                            17:31:13

6    Q.   And as to your yourself, in March of 2018,        17:31:16

7    had you fulfilled your responsibilities as set out     17:31:23

8    in the letter referenced in paragraph 1?               17:31:26

9    A.   I decline to answer based on the privilege        17:31:30

10   provided to me by the Fifth Amendment.                 17:31:30

11   Q.   Can we please go to the second page.              17:31:35

12   Directing your attention to paragraph 8 which          17:31:44

13   consists of multiple subparagraphs.                    17:31:48

14        Do you see that?                                  17:31:52

15   A.   Yes.                                              17:31:53

16   Q.   The second sentence of the preface in             17:31:55

17   paragraph 8 states, We further represent that the      17:32:01

18   following are properly recorded and/or disclosed in    17:32:03

19   the consolidated financial statements.                 17:32:07

20        Do you see that?                                  17:32:09

21   A.   I do.                                             17:32:10

22   Q.   Was this a correct statement as of the            17:32:11

23   date of this letter?                                   17:32:15

24   A.   I decline to answer based on the privilege        17:32:19

25   provided to me by the Fifth Amendment.                 17:32:21

Page 278

```
 1   STATE OF TEXAS    )

 2   COUNTY OF DALLAS )

 3

 4

 5

 6

 7

 8

 9        I, Michelle L. Munroe, Certified Shorthand

10   Reporter in and for the State of Texas, certify that

11   the foregoing deposition of WILSON H. PHILLIPS, JR.

12   was reported stenographically by me at the time and

13   place indicated, said witness having been placed

14   under oath by me, and that the deposition is a true

15   record of the testimony given by the witness;

16        That the amount of time used by each party at

17   the deposition is as follows:

         Ms. Connell      -    4 hours, 16 minutes

18       Mr. Mason        -    34 minutes

19       Ms. Eisenberg    -    1 hour

20

21

22

23

24

25

                                          Page 294
```

CONFIDENTIAL

1     I further certify that I am neither counsel for

2  nor related to any party in this cause and am not

3  financially interested in its outcome.

4     Given under my hand on this the 22nd day

5  of March, 2021.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

           *Michelle L Munroe*

20           Michelle L. Munroe, CSR No. 6011

           Commission expires 12-31-22

21           Firm Registration #571

           VERITEXT LEGAL SOLUTIONS

22           300 Throckmorton Street, Suite 1600

           Fort Worth, Texas  76102

23           817.336.3042  telephone

24

25

                              Page 295

1   mwerbner@werbernlaw.com

2                           March 22, 2021

3   National Rifle Association Of America And Sea Girt LLC

4   DEPOSITION OF: Wilson H. Phillips , Jr. (# 4507548)

5       The above-referenced witness transcript is

6   available for read and sign.

7       Within the applicable timeframe, the witness

8   should read the testimony to verify its accuracy. If

9   there are any changes, the witness should note those

10  on the attached Errata Sheet.

11      The witness should sign and notarize the

12  attached Errata pages and return to Veritext at

13  errata-tx@veritext.com.

14      According to applicable rules or agreements, if

15  the witness fails to do so within the time allotted,

16  a certified copy of the transcript may be used as if

17  signed.

18                          Yours,

19                          Veritext Legal Solutions

20

21

22

23

24

25

                                        Page 296