Patrick J. Neligan, Jr.
Texas Bar No. 14866000
Douglas J. Buncher
Texas Bar No.03342700
John D. Gaither
Texas Bar No. 24055516
**Neligan LLP**
325 N. St. Paul, Suite 3600
Dallas, Texas 75201
Telephone: (214) 840-5300
Facsimile: (214) 840-5301
pneligan@neliganlaw.com
dbuncher@neliganlaw.com
jgaither@neliganlaw.com

**COUNSEL FOR THE DEBTORS**

Gregory E. Garman
Nevada Bar No. 6665, admitted *pro hac vice*
William M. Noall
Nevada Bar No. 3549, admitted *pro hac vice*
Talitha Gray Kozlowski
Nevada Bar No. 9040, admitted *pro hac vice*
Teresa M. Pilatowicz
Nevada Bar No. 9605, admitted *pro hac vice*
**Garman Turner Gordon LLP**
7251 Amigo Street, Suite 210
Las Vegas, Nevada 89119
Telephone: (725) 777-3000
Facsimile: (725) 777-3112
ggarman@gtg.legal
wnoall@gtg.legal
tgray@gtg.legal
tpilatowicz@gtg.legal

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| IN RE: | § | CHAPTER 11 |
| | § | |
| NATIONAL RIFLE ASSOCIATION | § | CASE NO. 21-30085-hdh11 |
| OF AMERICA and SEA GIRT LLC | § | |
| | § | |
| DEBTORS[1] | § | JOINTLY ADMINISTERED |

**PLAN OF REORGANIZATION OF THE NATIONAL RIFLE
ASSOCIATION AND SEA GIRT LLC**

Dated: [____], 2021

---

[1] The last four digits of the Debtors' taxpayer identification numbers are: 6130 (NRA) and 5681 (Sea Girt). The Debtors' mailing address is 11250 Waples Mill Road, Fairfax, Virginia 22030.

## TABLE OF CONTENTS

**Page**

| | | |
|---|---|---|
| I. | DEFINITIONS AND CONSTRUCTION OF TERMS | 1 |
| | A. Definitions | 1 |
| | B. Interpretation; Application of Definitions and Rules of Construction | 13 |
| | C. Computation of Time | 13 |
| | D. Governing Law | 13 |
| | E. Reference to Monetary Figures | 13 |
| | F. Reference to the Debtors or Reorganized NRA | 13 |
| | G. Controlling Document | 13 |
| II. | TREATMENT OF UNCLASSIFIED CLAIMS | 14 |
| | A. Administrative Expense Claims | 14 |
| | B. Priority Tax Claims | 15 |
| | C. Statutory Fees | 16 |
| III. | CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS | 16 |
| | A. Grouping of Debtors for Convenience | 16 |
| | B. Classification of Claims and Interests | 16 |
| | C. Treatment of Claims and Interests | 17 |
| | D. Special Provision Governing Unimpaired Claims | 23 |
| | E. Special Provision Governing Causes of Action | 24 |
| | F. Modification of Treatment of Claims and Interests | 24 |
| | G. Confirmation Pursuant to Sections 1129(a)(10) and 1129(b) of the Bankruptcy Code | 24 |
| | H. Elimination of Vacant Classes | 24 |
| | I. Voting Classes; Presumed Acceptance by Non-Voting Classes | 25 |
| | J. Controversy Concerning Impairment | 25 |

# TABLE OF CONTENTS
## (cont'd)

Page

IV.  MEANS FOR IMPLEMENTATION OF THE PLAN ........................................................25

    A.  General.......................................................................................................................25

    B.  Operations of the Debtors Between Confirmation and the Effective Date ................25

    C.  Restructuring Transactions ......................................................................................25

    D.  Dissolution of Sea Girt .............................................................................................26

    E.  Corporate Governance ..............................................................................................26

    F.  Reorganized NRA's Directors and Senior Management............................................27

    G.  Due Authorization and Corporate Action..................................................................27

    H.  Sources of Consideration for Plan Distributions ......................................................28

    I.  Vesting of Assets in Reorganized NRA ....................................................................28

    J.  Restatement of Indebtedness ....................................................................................28

    K.  Compromise and Settlement of Claims, Interests, and Controversies........................29

    L.  Retiree Benefits and Pension Plan............................................................................29

    M.  Compensation and Benefits Programs.......................................................................30

    N.  Customer, Donor, and Member Programs ................................................................30

    O.  Preservation of NRA Membership Interests..............................................................30

    P.  D&O Liability Insurance Policies .............................................................................31

    Q.  Indemnification Obligations .....................................................................................31

    R.  Other Insurance Policies...........................................................................................31

    S.  Exemption from Certain Taxes and Fees...................................................................31

    T.  Preservation of Causes of Action .............................................................................32

    U.  Miscellaneous ...........................................................................................................32

# TABLE OF CONTENTS
## (cont'd)

Page

V. TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES ............32

    A.    Assumption and Rejection of Executory Contracts and Unexpired Leases ...............32

    B.    Claims Based on Rejection of Executory Contracts or Unexpired Leases ................33

    C.    Cure of Defaults for Assumed Executory Contracts and Unexpired Leases ..............34

    D.    Dispute Resolution ...............................................................................................34

    E.    Modifications, Amendments, Supplements, Restatements, or Other Agreements ...........................................................................................................35

    F.    Reservation of Rights ...........................................................................................35

    G.    Nonoccurrence of Effective Date ........................................................................35

VI. PROVISIONS GOVERNING DISTRIBUTIONS UNDER THE PLAN ...........................36

    A.    Distributions Generally ........................................................................................36

    B.    Record Date for Distribution ...............................................................................36

    C.    Method of Payment .............................................................................................36

    D.    Distribution After Allowance ...............................................................................36

    E.    Claims Paid or Payable by Third Parties ..............................................................36

    F.    Delivery of Distributions .....................................................................................37

    G.    Unclaimed Distributions ......................................................................................37

    H.    Allocations ..........................................................................................................37

    I.    No Post-Petition Interest on Claims .....................................................................38

    J.    Set-Off and Recoupment .....................................................................................38

    K.    Compliance with Tax Requirements .....................................................................38

# TABLE OF CONTENTS
## (cont'd)

**Page**

VII. PROCEDURES FOR RESOLVING CONTINGENT, UNLIQUIDATED, AND DISPUTED CLAIMS .................................................................................39

    A. Authority to Object to and Settle Claims.................................................39

    B. Time to Object to Claims.........................................................................39

    C. Estimation of Claims ...............................................................................39

    D. Determination of Tax Liabilities .............................................................39

    E. No Distributions Pending Allowance .......................................................40

    F. Distributions After Allowance..................................................................40

    G. Disputed Claims Reserve.........................................................................40

    H. Adjustment to Claims Register Without Objection ..................................41

    I. Disallowance of Certain Claims ..............................................................41

VIII. CONDITIONS TO THE EFFECTIVE DATE OF THE PLAN ..........................41

    A. Conditions Precedent to the Effective Date.............................................41

    B. Waiver of Conditions...............................................................................43

    C. Substantial Consummation ......................................................................43

    D. Effect of Non-Occurrence of Conditions to the Effective Date .................43

IX. EFFECT OF CONFIRMATION OF THE PLAN, INCLUDING RELEASE, EXCULPATION, INJUNCTION, AND RELATED PROVISIONS ...................43

    A. Binding Effect..........................................................................................43

    B. Discharge of Claims and Termination of Interests ....................................43

    C. Discharge Injunction................................................................................44

    D. Provisions Regarding NYAG Claims and DCAG Claims ..........................44

    E. Injunction Against Interference with the Plan ...........................................44

# TABLE OF CONTENTS
## (cont'd)

**Page**

F. Exculpation ...................................................................................................45

G. Release .........................................................................................................45

H. Injunction .....................................................................................................46

I. Protections Against Discriminatory Treatment ...........................................47

J. Subordination Rights ...................................................................................47

K. Release of Liens...........................................................................................48

L. Reservation of Rights ..................................................................................48

X. MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN .....................48

A. Modification and Amendments ....................................................................48

B. Effect of Confirmation on Modifications ....................................................49

C. Revocation or Withdrawal of the Plan.........................................................49

XI. RETENTION OF JURISDICTION ...........................................................................49

XII. MISCELLANEOUS PROVISIONS...........................................................................51

A. Immediate Binding Effect............................................................................51

B. Additional Documents .................................................................................51

C. Reservation of Rights ..................................................................................51

D. Successors and Assigns ...............................................................................52

E. Notices..........................................................................................................52

F. Term of Injunctions or Stays .......................................................................52

G. Entire Agreement .........................................................................................53

H. Nonseverability of Plan Provisions .............................................................53

I. Governing Law .............................................................................................53

## TABLE OF CONTENTS
### (cont'd)

**Page**

J.    Headings .................................................................................................................53

K.    Exhibits/Schedules....................................................................................................53

L.    Implementation..........................................................................................................53

## <u>INTRODUCTION</u>

The National Rifle Association of America and Sea Girt LLC, as debtors and debtors-in-possession in the above-captioned bankruptcy cases, jointly propose this plan of reorganization pursuant to chapter 11 of title 11 of the United States Code. Capitalized terms used and not otherwise defined shall have the meanings ascribed to such terms in Article I(A). Holders of Claims and Interests may refer to the Disclosure Statement for a discussion of the Debtors' history, businesses, assets, results of operations, historical financial information, and projections of future operations, as well as a summary and description of the Plan. The Debtors are the proponents of the Plan within the meaning of section 1129 of the Bankruptcy Code.

ALL HOLDERS OF CLAIMS AND INTERESTS ENTITLED TO VOTE ON THE PLAN ARE ENCOURAGED TO READ THE PLAN AND THE DISCLOSURE STATEMENT IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THE PLAN.

## I. **DEFINITIONS AND CONSTRUCTION OF TERMS**

### A. **Definitions**

As used herein, the following terms have the respective meanings specified below, unless the context otherwise requires:

**1.** "**Ackerman Claims**" means any Claims asserted against the Debtors by Ackerman McQueen, Inc. and any of its current or former Affiliates, including but not limited to the Claims asserted in (i) the litigation styled *The National Rifle Association v. Ackerman McQueen, Inc., et al.*, Case No. 1:18-cv-566, pending the United States District Court for the Northern District of Texas, Dallas Division, and (ii) *National Rifle Association of America v. AMC McQueen, Inc.*, *et al.*, Consolidated Case Nos. CL1901757, CL19002067, CL19002886, pending in the Circuit Court of the City of Alexandria, Virginia.

**2.** "**Administrative Expense Bar Date**" means the first Business Day that is thirty (30) days after the Effective Date of the Plan.

**3.** "**Administrative Expense Claim**" means any right to payment constituting a cost or expense of administration of the Chapter 11 Cases under sections 503(b) and 507(a)(2) of the Bankruptcy Code including, without limitation: (a) any actual and necessary costs and expenses of preserving the Estates, (b) all compensation and reimbursement of expenses to the extent Allowed by the Bankruptcy Court under section 330 or 503 of the Bankruptcy Code, (c) any fees or charges assessed against the Estates under section 1930 of chapter 123 of Title 28 of the United States Code, and (d) all Claims arising under section 503(b)(9) of the Bankruptcy Code.

**4.** "**Affiliates**" has the meaning ascribed to it in 11 U.S.C. § 101(2).

**5.** "**Allowance Date**" means the date on which a Claim becomes an Allowed Claim.

**6.** "**Allowed**" means with respect to any Claim, except as otherwise provided herein: (a) a Claim that is evidenced by a Proof of Claim Filed by the applicable Bar Date (or for which Claim under the Plan, the Bankruptcy Code, or a Final Order of the Bankruptcy Court was not required to be Filed); (b) a Claim that is listed in the Schedules as not contingent, not unliquidated, and not disputed, and for which no Proof of Claim, as applicable, has been timely Filed; or (c) a Claim Allowed pursuant to the Plan or a Final Order; *provided, however,* that with respect to a Claim described in clauses (a) and (b) above, such Claim shall be considered Allowed only if and to the extent that (i) such Claim is not identified as a Disputed Claim in the Plan, (ii) no objection to the allowance of such Claim has been interposed by the Claims' Objection Deadline, or, if such an objection is so interposed, such Claim shall have been Allowed by a Final Order, or (ii) the Reorganized NRA agrees that such Claim shall be an Allowed Claim in its sole discretion prior to the expiration of the Claims Objection Deadline. "Allow," "Allowing," and "Allowance," shall have correlative meanings.

**7.** "**AUB**" means Atlantic Union Bank, and any successors and assigns, in its capacity as a lender under the AUB Loan Documents.

**8.** "**AUB Claims**" means, collectively, the Building Loan Claim, the Marketable

Securities RCF Claim, and the Real Estate RCF Claim.

9.      **"AUB Loan Documents"** means, collectively, the Building Loan Documents, the Marketable Securities RCF Loan Documents, and the Real Estate RCF Loan Documents.

10.      **"Avoidance Actions"** means any and all rights to recover or avoid transfers or Liens under Chapter 5 of the Bankruptcy Code or otherwise, including, but not limited to, sections 506(d), 522, 541, 542, 543, 544, 545, 547, 548, 549, 550, or 553 of the Bankruptcy Code, or otherwise under the Bankruptcy Code or under similar or related state or federal statutes and common law, including, without limitation, all preference, fraudulent conveyance, fraudulent transfer, and/or other similar avoidance claims, rights, and causes of action, whether or not litigation has been commenced as of the Effective Date to prosecute such Avoidance Actions.

11.      **"Balloting Agent"** means [____].

12.      **"Bankruptcy Code"** means title 11 of the United States Code, as amended from time to time.

13.      **"Bankruptcy Court" or "Court"** means the United States Bankruptcy Court for the Northern District of Texas, having jurisdiction over the Chapter 11 Cases, or if such Court ceases to exercise jurisdiction over the Chapter 11 Cases, such court or adjunct thereof that exercises jurisdiction over the Chapter 11 Cases in lieu of the United States Bankruptcy Court for the Northern District of Texas.

14.      **"Bankruptcy Rules"** means the Federal Rules of Bankruptcy Procedure as promulgated by the United States Supreme Court under section 2075 of title 28 of the United States Code, and any Local Rules of the Bankruptcy Court, as amended from time to time.

15.      **"Bar Date"** means (a) May 24, 2021 for any Claim (other than an Administrative Expense Claim, Professional Fee Claim, or Claim of a Governmental Unit), (b) August 23, 2021 for any Claim of a Governmental Unit, (c) the Administrative Expense Claim Bar Date, (d) the Professional Fee Claim Bar Date, or (e) the date established in any order by of the Bankruptcy Court approving additional bar dates.

16.      **"Building Loan Claim"** means any Claim against the NRA arising under, derived from, or based on the Building Loan Documents, including any Claim for obligations, indebtedness, and liabilities of the NRA arising under any of the Building Loan Documents, whether now existing or hereafter arising, whether direct, indirect, related, unrelated, fixed, contingent, liquidated, unliquidated, joint, several, or joint and several, including the obligation of the NRA to pay principal and interest, and all fees, costs, expenses and other obligations of any kind or character due or recoverable under the Building Loan Documents.

17.      **"Building Loan Documents"** means, with respect to the $18,000,000 real estate loan extended to the NRA by AUB, (i) the Loan and Security Agreement, dated as of March 13, 2019, between Access National Bank, a Division of Union Bank & Trust of Richmond Virginia (n/k/a AUB) and the NRA; (ii) the Promissory Note in the face amount of $18,000,000, dated March 13, 2019, by and among Access National Bank (n/k/a AUB) and the NRA; (iii) the Deed of Trust, Assignment of Rents, and Security Agreement, dated as of March 13, 2019, by and among

the NRA and Andrew Kalin and Robert Shoemaker, for the benefit of Access National Bank, a Division of Union Bank & Trust of Richmond Virginia (n/k/a AUB); (iv) the Assignment of Rents and Leases, dated as of March 13, 2019, by and between the NRA and Access National Bank, a Division of Union Bank & Trust of Richmond Virginia (n/k/a AUB); (v) the Environmental Indemnity Agreement, dated as of March 13, 2019, between Access National Bank, a Division of Union Bank & Trust of Richmond Virginia (n/k/a AUB) and the NRA, and (vi) all documentation executed and delivered in connection with each of the foregoing, and each as amended, restated, supplemented or otherwise modified from time to time.

18.     **"Business Day"** means any day other than a Saturday, Sunday or any other day on which commercial banks in New York, New York are required or authorized to close by law or executive order.

19.     **"Cash"** means legal tender of the United States of America and equivalents thereof.

20.     **"Causes of Action"** means the Avoidance Actions and all other Claims, actions, causes of action, choses in action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, third-party claims, counterclaims, and crossclaims of any Debtor and/or any of the Estates against any Entity, based in law or equity, including, but not limited to, under the Bankruptcy Code, whether direct, indirect, derivative, or otherwise and whether asserted or unasserted, and any and all commercial tort claims against any party, including the Debtors' current and former directors and officers.

21.     **"Chapter 11 Cases"** means the jointly administered cases under chapter 11 of the Bankruptcy Code commenced by the Debtors on January 15, 2021, styled as *In re National Rifle Association of America and Sea Girt LLC.*, Case No. 21-30085-hdh11, currently pending in the Bankruptcy Court.

22.     **"Claim"** shall have the meaning set forth in section 101(5) of the Bankruptcy Code.

23.     **"Claims Objection Deadline"** means ninety (90) days after the Effective Date or such later date as may be approved by the Bankruptcy Court.

24.     **"Class"** means any group of substantially similar Claims classified by the Plan pursuant to sections 1122 and 1123(a)(1) of the Bankruptcy Code.

25.     **"Clerk"** means the clerk of the Bankruptcy Court.

26.     **"Collateral"** means any property or interest in property of (a) the Estates or, (b) after the Effective Date, of the Reorganized NRA, that is subject to a Lien to secure the payment or performance of a Claim, which Lien is valid, perfected and enforceable under applicable law and is not subject to avoidance or otherwise invalid under the Bankruptcy Code or applicable non-bankruptcy law.

27.     **"Committee"** means the Official Committee of Unsecured Creditors appointed by the UST in the Chapter 11 Cases pursuant to section 1102(a) of the Bankruptcy Code.

28. **"Compensation and Benefits Programs"** means all employment agreements and policies, and all employment, compensation, and benefit plans, policies, savings plans, retirement plans (including the Pension Plan), deferred compensation plans, supplemental executive retirement plans, healthcare plans, disability plans, severance benefit agreements, plans or policies, incentive plans, life and accidental death and dismemberment insurance plans, and programs of the Debtors, and all amendments and modifications thereto, applicable to the Debtors' employees, former employees, retirees, and non-employee directors.

29. **"Confirmation Date"** means the date on which the Confirmation Order is entered on the Docket.

30. **"Confirmation Hearing"** means the hearing held by the Bankruptcy Court to consider confirmation of the Plan pursuant to section 1129 of the Bankruptcy Code, as such hearing may be adjourned or continued from time to time.

31. **"Confirmation Order"** means the Order confirming the Plan pursuant to section 1129 of the Bankruptcy Code.

32. **"Convenience Claim"** means any Claim that would otherwise be a General Unsecured Claim that is Allowed in an amount of $10,000 or less; *provided, however,* that a holder of a General Unsecured Claim that is Allowed in an amount greater than $10,000 may irrevocably elect on its ballot accepting or rejecting the Plan to have such Claim irrevocably reduced to $10,000 and treated as a Convenience Claim (upon Allowance) for purposes of the Plan, in full and final satisfaction of such Claim.

33. **"Cox Claims"** means any Claims asserted against the Debtors by Christopher Cox, including but not limited to the Claims asserted in the arbitration proceeding before JAMS, Inc. as of the Petition Date.

34. **"Creditor"** means any Person that is the Holder of a Claim against any of the Debtors.

35. **"CRO"** means Louis Robichaux IV of Ankura Consulting, the Chief Restructuring Officer retained pursuant to the *Order Authorizing the Retention and Employment of Ankura Consulting Group, LLC and Appointment of Louis E. Robichaux IV as Debtors' Chief Restructuring Officer* [Docket No. ____].

36. **"Cure Claims"** means a monetary Claim based upon the Debtors' default under any Executory Contract or Unexpired Lease at the time such contract or lease is assumed by the Debtors pursuant to section 365 of the Bankruptcy Code.

37. **"Cure Notice"** means a notice sent to the non-Debtor counterparties to an Executory Contract or Unexpired Lease in connection with the proposed assumption or assumption and assignment of such Executory Contract or Unexpired Lease under the Plan pursuant to section 365 of the Bankruptcy Code, which shall include the proposed amount to be paid on account of Cure Claims, and which shall be (a) filed with the Plan Supplement and (b) served on all counterparties to an Executory Contract or Unexpired Lease to be assumed under the Plan.

38.     "**Customer, Donor, and Member Programs**" means all agreements, programs, policies, and procedures of the Debtors relating to (i) deposits, prepayments, advances, refunds, returns, exchanges, and gift cards, (ii) donations, contributions, and dues, (iii) scholarships, grants, awards, and sweepstakes, and (iv) all amendments and modifications thereto, applicable to the Debtors' customers, donors, and members.

39.     "**D&O Liability Insurance Policies**" means all insurance policies (including any "tail policy") of the Debtors that cover current or former directors', managers', and officers' liability.

40.     "**DCAG**" means the Attorney General for the District of Columbia.

41.     "**DCAG Claims**" means any Claims asserted against the Debtors by the DCAG, including but not limited to the Claims asserted in the litigation styled *District of Columbia v. NRA Foundation, Inc., et al.*, Civil Action No. 2020-CA-003454 B, in the Superior Court for the District of Columbia.

42.     "**Debtors**" means National Rifle Association of America and Sea Girt LLC.

43.     "**Dell'Aquila Claims**" means any Claims asserted against the Debtors by David Dell'Aquila, individually or on behalf of a putative class, including but not limited to the Claims asserted in the litigation styled *David Dell'Aquila v. The National Rifle Association, et al.*, Case No. 3:19-cv-00679, pending the United States District Court for the Middle District of Tennessee.

44.     "**Disclosure Statement**" means the disclosure statement (as may be further amended, supplemented, or modified from time to time in accordance with its terms) for the Plan, including all exhibits and schedules thereto, as approved by the Bankruptcy Court pursuant to section 1125 of the Bankruptcy Code.

45.     "**Disputed**" means any Claim that is listed on the Schedules as disputed, contingent or unliquidated, or which is objected to in whole or in part prior to the Claims Objection Deadline, that has not been resolved by settlement or Final Order.

46.     "**Disputed Claim**" means any Claim that is Disputed or is not Allowed and which has not been disallowed, withdrawn or expunged.

47.     "**Disputed Claims Reserve**" means the reserve established and maintained by Reorganized NRA for the benefit of Holders of Disputed Claims in Classes 5, 6, and 7 in accordance with Article VII(G) of the Plan.

48.     "**Distribution**" means any Plan distribution to the Holders of Allowed Claims.

49.     "**Distribution Record Date**" means the record date for purposes of making distributions under the Plan on account of Allowed Claims, which date shall be the Confirmation Date or such other date established by order of the Bankruptcy Court.

50.     "**Docket**" means the docket in the Chapter 11 Cases maintained by the Clerk.

51. **"Effective Date"** means the first Business Day following the date on which the conditions specified in Article VIII of this Plan have been satisfied or waived.

52. **"Entity"** shall have the meaning set forth in section 101(15) of the Bankruptcy Code.

53. **"Estates"** means the estates of the Debtors created upon the commencement of the Chapter 11 Cases pursuant to section 541 of the Bankruptcy Code.

54. **"Exculpated Parties"** means, collectively, each of the following in their capacity as such:  (a) the Debtors; (b) Reorganized NRA; (c) the Estates; and (d) the Committee, and (e) with respect to each of the foregoing Entities in clauses (a) through (d), such Entity and its current and former Affiliates, and such Entities' and their current and former Affiliates' current and former directors, managers, officers, equity holders (regardless of whether such interests are held directly or indirectly), predecessors, successors, and assigns, subsidiaries, and each of their respective current and former equity holders, officers, directors, managers, principals, members, employees, agents, advisory board members, financial advisors, partners, attorneys, accountants, investment bankers, consultants, representatives, and other professionals, each in their capacity as such.

55. **"Executory Contract"** means any executory contract as of the Petition Date between the Debtor and any other Person or Persons, specifically excluding contracts and agreements entered into pursuant to this Plan.

56. **"Face Amount"** means, with respect to a Disputed Claim, the lesser of: (a) the full stated amount claimed by the Holder of such Claim in a Proof of Claim Filed by the applicable Bar Date if the Proof of Claim specifies a liquidated amount; (b) the full amount of such Claim listed on the Debtors' Schedules if the applicable Proof of Claim does not specify a liquidated amount; or (c) the amount of such Claim estimated by the Bankruptcy Court for purposes of allowance pursuant to section 502(c) of the Bankruptcy Code; provided, however, that, with respect to such a Claim, the amount estimated by the Bankruptcy Court for purposes of allowance pursuant to section 502(c) shall control notwithstanding that such Holder has Filed a Proof of Claim or the amount of such Claim is listed on the Debtors' Schedules.

57. **"Federal Judgment Rate"** means the interest rate under 28 U.S.C. § 1961 as of the Effective Date.

58. **"File"**, **"Filed"**, or **"Filing"** means file, filed, or filing with the Bankruptcy Court in the Chapter 11 Cases.

59. **"Final Fee Application"** means an application for final allowance of any Professional's aggregate Professional Fee Claim.

60. **"Final Order"** means, as applicable, an order or judgment of the Bankruptcy Court or other court of competent jurisdiction with respect to the relevant subject matter, which has not been reversed, stayed, modified, or amended, and as to which the time to appeal or seek certiorari has expired and no appeal or petition for certiorari has been timely taken, or as to which any appeal that has been taken or any petition for certiorari that has been or may be Filed has been resolved by the highest court to which the order or judgment was appealed or from which certiorari was

sought; *provided, however,* that the possibility that a request for relief under Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules or the Local Bankruptcy Rules of the Bankruptcy Court or applicable non-bankruptcy law, may be filed relating to such order shall not prevent such order from being a Final Order.

61.    **"First Day Motions"** shall have the meaning ascribed to the term in Article IV(A) of the Disclosure Statement.

62.    **"General Unsecured Claim"** means any Unsecured Claim, but not including an Administrative Expense Claim, a Professional Fee Claim, a Priority Tax Claim, an Other Priority Claim, a Litigation Claim, an NYAG Claim, a DCAG Claim, a Convenience Claim, or a Cure Claim.

63.    **"Governmental Unit"** shall have the meaning set forth in section 101(27) of the Bankruptcy Code.

64.    **"Holder"** means the beneficial holder of any Claim, Interest, or NRA Membership Interest.

65.    **"Impaired"** means when used in reference to a Claim, a Claim that is impaired within the meaning of section 1124 of the Bankruptcy Code.

66.    **"Indemnification Obligations"** means the Debtors' indemnification obligations in effect as of the Effective Date, whether in the bylaws, certificates of incorporation or formation, corporate charter, limited liability company agreements, other organizational or formation documents, board resolutions, indemnification agreements, or employment or other contracts, or under applicable law, for the past and present directors, officers, employees, attorneys, accountants, financial advisors, and other professionals and agents who provided services to the Debtors before, on, or after the Petition Date, solely in their capacities as such.

67.    **"Interests"** means any equity security as defined in section 101(16) of the Bankruptcy Code, but not including any NRA Membership Interests.

68.    **"Interim Compensation Procedures Order"** means the Order Granting Debtors' Motion to Establish Procedures for Interim Compensation and Reimbursement of Expenses for Case Professionals [Docket No. 322] entered by the Bankruptcy Court in the Chapter 11 Cases.

69.    **"IRS"** means the Internal Revenue Service.

70.    **"Lien"** means any mortgage, pledge, deed of trust, assessment, security interest, lease, lien, adverse claim, levy, charge or other encumbrance of any kind, including any "lien" as defined in section 101(37) of the Bankruptcy Code, or a conditional sale contract, title retention contract or other contract to give any of the foregoing.

71.    **"Litigation Claims"** means the Ackerman Claims, the Mercury Group Claims, the Dell'Aquila Claims, the Under Wild Skies Claims, and the Cox Claims.

72.    **"Marketable Securities RCF Claim"** means any Claim against the NRA arising

under, derived from, or based on the Marketable Securities RCF Loan Documents, including any Claim for obligations, indebtedness, and liabilities of the NRA arising under any of the Marketable Securities RCF Loan Documents, whether now existing or hereafter arising, whether direct, indirect, related, unrelated, fixed, contingent, liquidated, unliquidated, joint, several, or joint and several, including the obligation of the NRA to pay principal and interest, and all fees, costs, expenses and other obligations of any kind or character due or recoverable under the Marketable Securities RCF Loan Documents.

73.    "**Marketable Securities RCF Loan Documents**" means (i) the Loan and Security Agreement, dated as of September 28, 2018, between Access National Bank (n/k/a AUB) and the NRA; (ii) the Promissory Note, in the face amount of $28,000,000, executed as on September 27, 2018, by the NRA in favor of Access National Bank (n/k/a/ AUB); (iii) the Control Agreement, executed as of September 27, 2018, by and among Morgan Stanley Smith Barney LLC, Access National Bank (n/k/a AUB), and the NRA; and (iv) all documentation executed and delivered in connection with each of the foregoing, and each as amended, restated, supplemented or otherwise modified from time to time.

74.    "**Mercury Group Claims**" means any Claims asserted against the Debtors by the Mercury Group, Inc. and any of its current or former Affiliates, including but not limited to the Claims asserted in the litigation styled (i) *The National Rifle Association v. Ackerman McQueen, Inc.*, et al., Case No. 1:18-cv-566, pending the United States District Court for the Northern District of Texas, Dallas Division, and (ii) *National Rifle Association of America v. AMC McQueen, Inc., et al.*, Consolidated Case Nos. CL1901757, CL19002067, CL19002886, pending in the Circuit Court of the City of Alexandria, Virginia.

75.    "**Miscellaneous Secured Claim**" means a Secured Claim other than the Building Loan Claim, Marketable Securities RCF Claim, or Real Estate RCF Claim.

76.    "**NRA**" means the National Rifle Association of America, as debtor and debtor in possession in the Chapter 11 Cases.

77.    "**NRA Board**" means the board of directors of the NRA established under and pursuant to the NRA Bylaws.

78.    "**NRA Bylaws**" means the Bylaws of the NRA, as of October 24, 2020, and from time to time thereafter.

79.    "**NRA's General Bankruptcy Counsel**" means any attorneys retained in the Chapter 11 Cases pursuant to section 327(a) of the Bankruptcy Code.

80.    "**NRA Member**" means the Holder of an NRA Membership Interest.

81.    "**NRA Membership Interest**" means the interest of a member of the NRA under the NRA Bylaws, including all associated rights, duties, and obligations.

82.    "**NYAG**" means the Attorney General of the State of New York.

83.    "**NYAG Claim**" means any Claims asserted against the Debtors by the NYAG,

including but not limited to the Claims asserted in the litigation styled *People of the State of New York, by Letitia James, Attorney General of the State of New York v. The National Rifle Association of America, et al.*, Case No. 4516125/2020, in the Supreme Court of the State of New York, County of New York.

84.    **"Order"** means an order or judgment of the Bankruptcy Court as entered on the Docket.

85.    **"Other Priority Claim"** means a Claim that is accorded priority in right of payment under section 507 of the Bankruptcy Code, other than (i) a Priority Tax Claim, (ii) a Customer, Donor, or Member Claim, (iii) an Administrative Expense Claim, or (iv) a Professional Fee Claim.

86.    **"Pension Plan"** means the NRA Employee Retirement Plan, a single employer, qualified, defined benefit pension plan that is subject to the Employee Retirement Income Security Act of 1974, as amended, and the Internal Revenue Code, of which the NRA is the plan sponsor.

87.    **"Person"** means an individual, a corporation, a partnership, an association, a joint stock company, a joint venture, an estate, a trust, an unincorporated association or organization, a Governmental Unit or any agency or subdivision thereof or any other entity.

88.    **"Petition Date"** means January 15, 2021.

89.    **"Plan"** means this *Plan of Reorganization of the National Rifle Association of America and Sea Girt LLC* (including the Plan Supplement and all exhibits hereto and thereto), as the same may be amended, modified, supplemented or amended and restated from time to time in accordance with the Bankruptcy Code and the terms hereof.

90.    **"Plan Supplement"** means a supplemental appendix to the Plan, which shall be Filed with the Bankruptcy Court not later than thirty (30) days prior to the Confirmation Hearing, containing, among other things, draft forms of documents (or term sheets thereof), schedules, and exhibits to the Plan, including, but not limited to, the following (each of which must be in form and substance acceptable to the Debtors, in all material respects):  (a) the Rejected Executory Contract/Unexpired Lease Schedule; (b) the Cure Notice; (c) either a term sheet summary of, or the form of, the documents providing for the corporate governance of the Reorganized NRA upon consummation of the Restructuring Transactions, including the Revised Bylaws and related organizational documents, which documents shall be acceptable in form and substance to the NRA Board; (d) the disclosures required by section 1129(a)(5) of the Bankruptcy Code, and (e) either a term sheet summary of, or the form of, the Restated AUB Loan Documents.  Any reference to the Plan Supplement in the Plan shall include each of the documents identified above as (a) through (e), as applicable.  The Debtors shall be entitled to revise and amend such documents through and including the Effective Date.

91.    **"Priority Tax Claim"** means a Claim that is entitled to priority under section 507(a)(8) of the Bankruptcy Code.

92.    **"Professional"** means any professional person employed in the Chapter 11 Cases pursuant to section 327, 363 or 1103 of the Bankruptcy Code or otherwise pursuant to an Order of

the Bankruptcy Court.

93. **"Professional Fee Claim"** means a claim under sections 330(a), 331, 503 or 1103 of the Bankruptcy Code for compensation of a Professional or other Entity for services rendered or expenses incurred in the Chapter 11 Cases.

94. **"Professional Fee Claim Bar Date"** means the first Business Day that is forty-five (45) days after the Effective Date.

95. **"Professional Fee Claims Estimate"** means the aggregate unpaid Professional Fee Claims through the Effective Date, net of any undrawn retainer funds held by such Professionals as of the Effective Date, as estimated in accordance with Article II(A)(2)(b) of this Plan.

96. **"Professional Fee Reserve"** means a segregated account established and funded pursuant to Article II(A)(2)(c) of this Plan.

97. **"Proof of Claim"** means a proof of Claim Filed against any of the Debtors in the Chapter 11 Cases.

98. **"Real Estate RCF Claim"** means any Claim against the NRA arising under, derived from, or based on the Real Estate RCF Loan Documents, including any Claim for obligations, indebtedness, and liabilities of the NRA arising under any of the Real Estate RCF Loan Documents, whether now existing or hereafter arising, whether direct, indirect, related, unrelated, fixed, contingent, liquidated, unliquidated, joint, several, or joint and several, including the obligation of the NRA to pay principal and interest, and all fees, costs, expenses and other obligations of any kind or character due or recoverable under the Real Estate RCF Loan Documents.

99. **"Real Estate RCF Loan Documents"** means, with the respect to the revolving credit facility provided to the NRA by AUB in the original amount of $10,000,000, (i) the Loan and Security Agreement, dated as of March 13, 2019, between Access National Bank, a Division of Union Bank & Trust of Richmond Virginia (n/k/a AUB) and the NRA; (ii) the Promissory Note in the face amount of $10,000,000 dated March 13, 2019, by and among Access National Bank (n/k/a AUB) and the NRA; (iii) the Deed of Trust, Assignment of Rents, and Security Agreement, dated as of March 13, 2019, by and among the NRA and Andrew Kalin and Robert Shoemaker, for the benefit of Access National Bank, a Division of Union Bank & Trust of Richmond Virginia (n/k/a AUB); (iv) the Assignment of Rents and Leases, dated as of March 13, 2019, by and between the NRA and of Access National Bank, a Division of Union Bank & Trust of Richmond Virginia (n/k/a AUB); (v) the Environmental Indemnity Agreement, dated as of March 13, 2019, between of Access National Bank, a Division of Union Bank & Trust of Richmond Virginia (n/k/a AUB) and the NRA, and (vi) all documentation executed and delivered in connection with each of the foregoing, and each as amended, restated, supplemented or otherwise modified from time to time.

100. **"Rejected Executory Contract/Unexpired Lease Schedule"** means the schedule (as may be amended prior to the Effective Date) of Executory Contracts and/or Unexpired Leases (including any amendments or modifications thereto) that will be rejected by the Reorganized Debtors pursuant to the Plan, which shall be included in the Plan Supplement.

101. **"Released Parties"** means each of the following in their capacity as such: (a) the Debtors; (b) the Reorganized NRA; (c) the Estates; (d) the Committee, and (e) with respect to each of the foregoing Entities in clauses (a) through (d), such Entity and all of its directors, officers, and employees who were serving such Entity as of the Petition Date, together with Entity's attorneys, accountants, financial consultants, and other professionals including Ankura Consulting Group LLC and its employees.

102. **"Releasing Party"** means each of the following in their capacity as such: (a) the Debtors; (b) the Reorganized NRA; (c) the Estates; (d) the Committee, and (e) with respect to each of the foregoing Entities in clauses (a) through (d), such Entity and any successor or assign.

103. **"Reorganized NRA"** means, on or after the Effective Date, the NRA as reorganized in accordance with section 1123(a)(5)(C) of the Bankruptcy Code and applicable law through merger, consolidation, or redomestication as a Texas nonprofit corporation under the Texas Business Organizations Code and any successor thereto.

104. **"Restated AUB Loan Documents"** means, collectively, the Restated Building Loan Documents, the Restated Marketable Securities RCF Loan Documents, and the Restated Real Estate RCF Loan Documents.

105. **"Restated Building Loan Documents"** means those certain mortgage and loan documents by and among AUB and Reorganized NRA, dated as of the Effective Date, which shall contain substantially the same terms as the Building Loan Documents, except that: (a) [_____].

106. **"Restated Marketable Securities RCF Loan Documents"** means those certain restated revolving credit facility documents by and among AUB and Reorganized NRA, dated as of the Effective Date, which shall contain substantially the same terms as the Marketable Securities RCF Loan Documents, except that: (a) [_____].

107. **"Restated Real Estate RCF Loan Documents"** means those certain restated revolving credit facility documents by and among AUB and Reorganized NRA, dated as of the Effective Date, which shall contain substantially the same terms as the Real Estate RCF Loan Documents, except that: (a) [_____].

108. **"Restructuring Documents"** means all agreements, instruments, pleadings, orders, forms, questionnaires and other documents (including all exhibits, schedules, supplements, appendices, annexes, instructions and attachments thereto) that are utilized to implement or effectuate, or that otherwise relate to, the Plan and/or the restructuring of the Debtors, including, but not limited to: (a) the Plan, (b) the Plan Supplement, (c) the Confirmation Order, (d) the Disclosure Statement and all exhibits thereto, (e) the Solicitation Procedures Order, (f) all First Day Motions, and (g) the Restated AUB Loan Documents, each of which shall be in form and substance acceptable to the Debtors in their sole discretion.

109. **"Restructuring Transactions"** shall have the meaning ascribed to the term in Article IV(C) of this Plan.

110. **"Revised Bylaws"** shall have the meaning set forth in Article IV(E) of this Plan.

111.   **"Schedules"** means the schedules of assets and liabilities, the list of Holders of Interests and the statement of financial affairs Filed by the Debtors under section 521 of the Bankruptcy Code and Bankruptcy Rule 1007, and all amendments and modifications thereto through the Effective Date.

112.   **"Sea Girt"** means Sea Girt LLC, as debtor and debtor in possession in the Chapter 11 Cases.

113.   **"Secured Claim"** means a Claim:  (i) that is secured by a Lien on property in which the Estates has an interest, which Lien is not subject to avoidance under the Bankruptcy Code or otherwise invalid under the Bankruptcy Code or applicable state law, or a Claim that is subject to a valid right of the Creditor of setoff against amounts owed to the Debtors; (ii) to the extent of the value of the Holder's interest in the Estates' interest in such property or to the extent of the amount subject to a valid right of setoff, as applicable; and (iii) the amount of which (A) is undisputed by the Debtors, or (B) if disputed by the Debtors, such dispute is settled by written agreement between the Debtors or Reorganized NRA, as applicable, and the holder of such Claim or determined, resolved, or adjudicated by Final Order.

114.   **"Solicitation Procedures Order"** means the order(s) of the Bankruptcy Court approving procedures for the solicitation of acceptances of the Plan.

115.   **"SLC"** means the Special Litigation Committee of the NRA formed on September 10, 2020 and approved by the NRA Board's Resolution Formalizing Special Litigation Committee.

116.   **"Under Wild Skies Claim"** means any Claims asserted against the Debtors by Under Wild Skies, Inc. and any of its current or former Affiliates, including but not limited to the Claims asserted in the litigation styled *Under Wild Skies, Inc. v. The National Rifle Association of America*, Case No. 19-12530, pending in the Circuit Court for the County of Fairfax, Virginia.

117.   **"Unexpired Lease"** means a lease to which one or more of the Debtors is a party that is subject to assumption or rejection under sections 365 or 1123 of the Bankruptcy Code.

118.   **"Unimpaired"** means with respect to a Claim or a Class of Claims or Equity Interests, a Claim or an Interest that is unimpaired within the meaning of section 1124 of the Bankruptcy Code.

119.   **"Unrestricted Cash"** means all Cash owned by the Debtors or Reorganized NRA that is not subject to legally enforceable restrictions requiring the use or disposition of such assets for a particular purpose.

120.   **"Unsecured"** means, with respect to any Claim, any Claim that is not a Secured Claim.

121.   **"UST"** means the Office of the United States Trustee for the Northern District of Texas.

**B.** <u>**Interpretation; Application of Definitions and Rules of Construction**</u>

Wherever from the context it appears appropriate, each term stated in either the singular or the plural shall include both the singular and the plural and pronouns stated in the masculine, feminine or neuter gender shall include the masculine, feminine and neuter. Unless otherwise specified, all section, article, schedule or exhibit references in the Plan are to the respective section in, Article of, Schedule to, or Exhibit to the Plan. The words "herein," "hereof," "hereto," "hereunder" and other words of similar import refer to the Plan as a whole and not to any particular section, subsection or clause contained in the Plan. The rules of construction contained in section 102 of the Bankruptcy Code shall apply to the construction of the Plan. A term used herein that is not defined herein, but that is used in the Bankruptcy Code, shall have the meaning ascribed to that term in the Bankruptcy Code. The headings in the Plan are for convenience of reference only and shall not limit or otherwise affect the provisions of the Plan.

**C.** <u>**Computation of Time**</u>

Unless otherwise specifically stated herein, the provisions of Bankruptcy Rule 9006(a) shall apply in computing any period of time prescribed or allowed herein. If the date on which a transaction may occur pursuant to the Plan shall be a day that is not a Business Day, then such transaction shall instead occur on the next succeeding Business Day.

**D.** <u>**Governing Law**</u>

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) or unless otherwise specifically stated herein, the laws of the State of Texas, without giving effect to the principles of conflict of laws, shall govern the rights, obligations, construction, and implementation of the Plan, any agreements, documents, instruments, or contracts executed or entered into in connection with the Plan (except as otherwise set forth in those agreements, in which case the governing law of such agreement shall control); *provided, however,* that corporate or limited liability company governance matters relating to the Debtors or Reorganized NRA, as applicable, shall be governed by the laws of the state of incorporation or formation (as applicable) of the applicable Debtor or Reorganized NRA.

**E.** <u>**Reference to Monetary Figures**</u>

All references in the Plan to monetary figures shall refer to currency of the United States of America, unless otherwise expressly provided herein.

**F.** <u>**Reference to the Debtors or Reorganized NRA**</u>

Except as otherwise specifically provided in the Plan to the contrary, references in the Plan to the Debtors or Reorganized NRA shall mean the Debtors and Reorganized NRA, as applicable, to the extent the context requires.

**G.** <u>**Controlling Document**</u>

In the event of an inconsistency between the Plan and the Disclosure Statement, the terms of the Plan shall control in all respects. In the event of an inconsistency between the Plan and the

Plan Supplement, the terms of the relevant document in the Plan Supplement shall control (unless stated otherwise in such Plan Supplement document or in the Confirmation Order).  In the event of an inconsistency between the Confirmation Order and the Plan, the Confirmation Order shall control.

## II.    TREATMENT OF UNCLASSIFIED CLAIMS

### A.    Administrative Expense Claims

#### 1.    Treatment of Administrative Expense Claims

Requests for payment of Administrative Expense Claims (other than Professional Fee Claims, which are governed by Article II(A)(2)) must be Filed no later than the Administrative Expense Bar Date.  Except to the extent that a Holder of an Allowed Administrative Expense Claim agrees to less favorable treatment with respect to such Allowed Administrative Expense Claim, each Holder of an Allowed Administrative Expense Claim (other than Professional Fee Claims) shall receive from the Debtors or Reorganized NRA, on account of and in full and complete settlement, release and discharge of, and in exchange for, such Claim, payment of Cash in an amount equal to the unpaid portion of such Allowed Administrative Expense Claim, on or as soon as reasonably practicable after the later of: (a) the Effective Date; (b) the first Business Day after the date that is thirty (30) calendar days after the Allowance Date of such Allowed Administrative Expense Claim; (c) such other date(s) as such Holder and the Debtors or Reorganized NRA shall have agreed; or (d) such other date ordered by the Bankruptcy Court; *provided*, *however*, that Allowed Administrative Expense Claims that arise in the ordinary course of the Debtors' operations during the Chapter 11 Cases may be paid by the Debtors or Reorganized NRA in the ordinary course of operations and in accordance with the terms and conditions of the particular agreements governing such obligations, course of dealing, course of operations, or customary practice.

**Requests for payment of Administrative Expense Claims (other than Professional Fee Claims) must be Filed no later than the Administrative Expense Bar Date. Holders of Administrative Expense Claims (other than Professional Fee Claims) that do not file requests for the allowance and payment thereof on or before the Administrative Expense Bar Date shall forever be barred, estopped, and enjoined from asserting such Administrative Expense Claims against the Debtors, Reorganized NRA, or the Estates, and such claims shall be discharged as of the Effective Date.**

#### 2.    Professional Fee Claims

a.    **Final Fee Applications**.    All Professionals or other Persons requesting the final Allowance and payment of compensation and/or reimbursement of expenses pursuant to sections 328, 330, 331 and/or 503(b) for services rendered during the period from the Petition Date to and including the Effective Date shall File and serve final applications for Allowance and payment of Professional Fee Claims on counsel to the Debtors and the UST no later than the Professional Fee Claim Bar Date. A Professional may include any outstanding, non-Filed monthly or interim request for payment of a Professional Fee Claim pursuant to the Interim Compensation Procedures Order in its Final Fee Application.  Objections to any Professional Fee

Claim must be Filed and served on Reorganized NRA and the applicable Professional within twenty-one (21) calendar days after the Filing of the Final Fee Application that relates to the Professional Fee Claim (unless otherwise agreed by the Debtors or Reorganized NRA, as applicable, and the Professional requesting Allowance and payment of a Professional Fee Claim).

        **b.**    <u>**Professional Fee Claims Estimate**</u>. Professionals shall estimate in good faith their unpaid Professional Fee Claims and other unpaid fees and unreimbursed expenses incurred in rendering services to the Debtors or the Estates before and as of the Effective Date and shall deliver such good faith estimate to the Debtors no later than five (5) Business Days prior to the Effective Date; *provided, however*, that such estimate shall not be deemed to limit the amount of the fees and expenses that are the subject of the Professional's final request for payment of Filed Professional Fee Claims. If a Professional does not provide an estimate, the Debtors shall estimate in good faith the unpaid and unbilled fees and expenses of such Professional.

        **c.**    <u>**Professional Fee Reserve**</u>. If the Professional Fee Claims Estimate is greater than zero, as soon as reasonably practicable after the Confirmation Date and no later than the Effective Date, the Debtors shall establish and fund the Professional Fee Reserve with Cash equal to the Professional Fee Claims Estimate, and no Liens, Claims, or interests shall encumber the Professional Fee Reserve in any way. The Professional Fee Reserve (including funds held in the Professional Fee Reserve) shall not be and shall not be deemed property of the Debtors, Reorganized NRA, or the Estates, and shall be held in trust for the Professionals; *provided, however*, that funds remaining in the Professional Fee Reserve after all Allowed Professional Fee Claims have been irrevocably paid in full shall revert to Reorganized NRA. Allowed Professional Fee Claims shall be paid in Cash to such Professionals from funds held in the Professional Fee Reserve as soon as reasonably practicable after such Claims are Allowed by a Final Order of the Bankruptcy Court or authorized to be paid under the Interim Compensation Procedures Order; *provided, however*, the Debtors' and Reorganized NRA's obligations with respect to Professional Fee Claims shall not be limited nor deemed limited in any way to the balance of funds held in the Professional Fee Reserve, as such amounts are solely estimates. In the event the amount in the Professional Fee Reserve is insufficient to fund payment in full of all Allowed amounts owing to Professionals, the deficiency shall be promptly funded by the Debtors or Reorganized NRA, as applicable, to the Professional Fee Reserve or applicable Professionals without any further action or order of the Bankruptcy Court.

        **d.**    <u>**Post-Effective Date Fees and Expenses**</u>. From and after the Effective Date, any requirement that Professionals comply with sections 327 through 331 or 1103 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date shall terminate, and Professionals may be employed and paid in the ordinary course of business by Reorganized NRA without any further notice to or action, order, or approval of the Bankruptcy Court.

    **B.**    <u>**Priority Tax Claims**</u>

        Except to the extent that a Holder of an Allowed Priority Tax Claim and the Debtors or Reorganized NRA, as applicable, agree to a less favorable treatment, in full and final satisfaction, settlement, release, and discharge of and in exchange for each Allowed Priority Tax Claim, each Holder of such Allowed Priority Tax Claim shall receive from the Debtors or Reorganized NRA,

at the sole option of the Debtors or Reorganized NRA: (1) Cash in an amount equal to such Allowed Priority Tax Claim on or as soon as reasonably practicable after the later of (a) the Effective Date, to the extent such Claim is an Allowed Priority Tax Claim on the Effective Date; (b) thirty (30) calendar days after the Allowance Date of such Allowed Priority Tax Claim; and (c) the date such Allowed Priority Tax Claim is due and payable in the ordinary course as such obligation becomes due; *provided*, *however*, that the Debtors reserve the right to prepay all or a portion of any such amounts at any time under this option without penalty or premium; or (2) regular installment payments in Cash of a total value, as of the Effective Date of the Plan, equal to the Allowed amount of such Claim over a period ending not later than five years after the Petition Date. Notwithstanding the foregoing, any Claim or demand for payment of a penalty (other than a penalty of the type specified in section 507(a)(8)(G) of the Bankruptcy Code) shall be disallowed pursuant to this Plan and the Holder of an Allowed Priority Tax Claim shall not assess or attempt to collect such penalty from the Debtors, Reorganized NRA, or the Estates.

### C.  **Statutory Fees**

All fees payable pursuant to section 1930 of title 28 of the United States Code, to the extent unpaid through the Effective Date, shall be paid by the Debtors, or Reorganized NRA, in Cash within thirty (30) Business Days after the Effective Date, or as soon thereafter as is practicable. From and after the Effective Date through the closing of the Chapter 11 Cases, all fees payable pursuant to section 1930 of title 28 of the United States Code, plus any interest under 37 U.S.C. § 3717, shall be paid by Reorganized NRA as and when they come due in the ordinary course of business.

## III.  **CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS**

### A.  **Grouping of Debtors for Convenience**

The Plan is being proposed as a joint plan of reorganization of the Debtors for administrative purposes only and constitutes a separate chapter 11 plan of reorganization for each Debtor. The Plan is not premised upon the substantive consolidation of the Debtors with respect to the Classes of Claims or Interests set forth in the Plan.

### B.  **Classification of Claims and Interests**

Claims and Interests, other than Administrative Expense Claims, Professional Fee Claims, Priority Tax Claims, are classified for all purposes, including voting, confirmation and distribution pursuant to the Plan, as follows:

| Class | Type | Status Under Plan | Voting Status |
|---|---|---|---|
| 1a | Marketable Securities RCF Claims | Impaired | Entitled to Vote |
| 1b | Real Estate RCF Claims | Impaired | Entitled to Vote |
| 1c | Building Loan Claims | Impaired | Entitled to Vote |
| 2 | Miscellaneous Secured Claims | Unimpaired | Deemed to Accept; Not Entitled to Vote |
| 3 | Other Priority Claims | Unimpaired | Deemed to Accept; Not Entitled to Vote |
| 4 | General Unsecured Claims | Impaired | Entitled to Vote |
| 5 | Litigation Claims | Impaired | Entitled to Vote |
| 6 | NYAG Claims | Impaired | Entitled to Vote |
| 7 | DCAG Claims | Impaired | Entitled to Vote |
| 8 | Convenience Claims | Unimpaired | Deemed to Accept; Not Entitled to Vote |
| 9 | Interests in Sea Girt | Impaired | Deemed to Reject; Not Entitled to Vote |

### C. Treatment of Claims and Interests

### 1. Class 1a – Marketable Securities RCF Claim

**a.** Classification

Class 1a consists of all Marketable Securities RCF Claims.

**b.** Impairment and Voting

Class 1a is Impaired by the Plan. Holders of Claims in Class 1a are entitled to vote to accept or to reject the Plan.

**c.** Allowance

The Marketable Securities RCF Claims shall be deemed fully Secured and Allowed in the amount of [$_____] plus any accrued but unpaid interest and reasonable fees and expenses as of the Effective Date.

**d.** Treatment

Except to the extent that the Holder of an Allowed Marketable Securities RCF Claim agrees to less favorable treatment of such Claim, in full and final satisfaction, settlement, release, and discharge of, and in exchange for such Claim, the Holder of an Allowed Marketable Securities RCF Claim shall receive a Claim under the Restated Marketable Securities RCF Loan Documents

in an amount equal to the amount of such Holder's Allowed Marketable Securities RCF Claim.

2.      **Class 1b – Real Estate RCF Claims**

    a.      Classification

Class 1b consists of all Real Estate RCF Claims.

    b.      Impairment and Voting

Class 1b is Impaired by the Plan.  Holders of Claims in Class 1b are entitled to vote to accept or to reject the Plan.

    c.      Allowance

The Real Estate RCF Claims shall be deemed fully Secured and Allowed in the amount of [$_____] plus any accrued but unpaid interest and reasonable fees and expenses as of the Effective Date.

    d.      Treatment

Except to the extent that the Holder of an Allowed Real Estate RCF Claim agrees to less favorable treatment of such Claim, in full and final satisfaction, settlement, release, and discharge of, and in exchange for such Claim, the Holder of an Allowed Real Estate RCF Claim shall receive a Claim under the Restated Real Estate RCF Loan Documents in an amount equal to the amount of such Holder's Allowed Real Estate RCF Claim.

3.      **Class 1c – Building Loan Claims**

    a.      Classification

Class 1c consists of all Building Loan Claims.

    b.      Impairment and Voting

Class 1c is Impaired by the Plan.  Holders of Claims in Class 1c are entitled to vote to accept or to reject the Plan.

    c.      Allowance

The Building Loan Claims shall be deemed fully Secured and Allowed in the amount of [$_____] plus any accrued but unpaid interest and reasonable fees and expenses as of the Effective Date.

    d.      Treatment

Except to the extent that the Holder of an Allowed Building Loan Claim agrees to less favorable treatment of such Claim, in full and final satisfaction, settlement, release, and discharge

of, and in exchange for such Claim, the Holder of an Allowed Building Loan Claim shall receive a Claim under the Restated Building Loan Documents in an amount equal to the amount of such Holder's Allowed Building Loan Claim.

4. **Class 2 – Miscellaneous Secured Claims**

    a. <u>Classification</u>

Class 2 consists of all Miscellaneous Secured Claims.

    b. <u>Impairment and Voting</u>

Class 2 is Unimpaired by the Plan. Holders of Claims in Class 2 shall be deemed to have accepted the Plan, and thus are not entitled to vote to accept or to reject the Plan.

    c. <u>Allowance</u>

The Allowed amount of each Miscellaneous Secured Claim shall be agreed to by the Debtors or Reorganized NRA, as applicable, and the Holder thereof, or determined by the Bankruptcy Court.

    d. <u>Treatment</u>

On or as soon as practicable after the later of (a) the Effective Date, or (b) the Allowance Date with respect to a Miscellaneous Secured Claim, each Holder of a Miscellaneous Secured Claim shall receive from the Reorganized NRA, in full satisfaction, settlement, release and discharge of and in exchange for such Claim, either (i) Cash in the Allowed Amount of such Claim, (ii) the return of the Collateral securing such Claim, (iii) satisfaction of such Allowed Miscellaneous Secured Claim in any other manner that renders the Allowed Miscellaneous Secured Claim Unimpaired, including Reinstatement, or (iv) such other, less favorable treatment to which such Holder and the Debtors or the Reorganized NRA, as applicable, agree to in writing. Nothing in this Plan shall be construed as a limitation on, or waiver of, any party's right to object to the Allowance of a Miscellaneous Secured Claim under section 502(a) of the Bankruptcy Code or otherwise.

5. **Class 3 – Other Priority Claims**

    a. <u>Classification</u>

Class 3 consists of all Other Priority Claims.

    b. <u>Impairment and Voting</u>

Class 3 is Unimpaired by the Plan. Holders of Claims in Class 3 shall be deemed to have accepted the Plan, and thus are not entitled to vote to accept or to reject the Plan.

**c.**     Allowance

The Allowed amount of each Other Priority Claim shall be agreed to by the Debtor or the Reorganized NRA, as applicable, and the Holder thereof, or determined by the Bankruptcy Court.

**d.**     Treatment

On or as soon as practicable after the later of (a) the Effective Date, or (b) the Allowance Date with respect to an Other Priority Claim, each Holder of an Other Priority Claim shall receive from the Reorganized NRA, in full satisfaction, settlement, release and discharge of and in exchange for such Claim, either (i) Cash in the Allowed Amount of such Claim, (ii) satisfaction of such Allowed Other Priority Claim in any other manner that renders the Allowed Other Priority Claim Unimpaired, including Reinstatement, or (iii) such other, less favorable treatment to which such Holder and the Debtors or the Reorganized NRA, as applicable, agree to in writing.

**6.     Class 4 – General Unsecured Claims**

**a.**     Classification

Class 4 consists of all General Unsecured Claims.

**b.**     Impairment and Voting

Class 4 is Impaired by the Plan.  Holders of Claims in Class 4 shall be entitled to vote to accept or to reject the Plan.

**c.**     Allowance

The Allowed amount of each General Unsecured Claim shall be agreed to by the Debtors or the Reorganized NRA, as applicable, and the Holder thereof, or determined by the Bankruptcy Court, including by estimation in accordance with Article VII(C) of the Plan.

**d.**     Treatment

Except to the extent that a Holder of an Allowed General Unsecured Claim agrees to less favorable treatment of such Claim, in exchange for full and final satisfaction, settlement, release, and discharge of, and in exchange for, such Allowed General Unsecured Claim, each Holder of an Allowed General Unsecured Claim shall receive, subject to the Holder's ability to elect Convenience Class treatment on account of the Allowed General Unsecured Claim, Cash in the Allowed amount of such Claim, which shall be paid as follows:  (i) 50% of the Allowed Amount of such Claim payable on the Effective Date (or the Allowance Date if such Claim becomes Allowed after the Effective Date), and (ii) 50% of the Allowed Amount of such Claim payable on the 90th day following the Effective Date (or the Allowance Date if such Claim becomes Allowed after the Effective Date).

7. **Class 5 – Litigation Claims**

   a. <u>Classification</u>

Class 5 consists of all Litigation Claims.

   b. <u>Impairment and Voting</u>

Class 5 is Impaired by the Plan. Holders of Claims in Class 5 shall be entitled to vote to accept or to reject the Plan.

   c. <u>Allowance</u>

All Litigation Claims are Disputed Claims under the Plan. The Allowed amount of each Litigation Claim shall be agreed to by the Debtors or the Reorganized NRA, as applicable, and the Holder thereof, or determined by (i) the Bankruptcy Court, including by estimation in accordance with Article VII(C) of the Plan, or (ii) by Final Order of a court of competent jurisdiction, including the court presiding over such Litigation Claim.

   d. <u>Treatment</u>

Except to the extent that a Holder of an Allowed Litigation Claim agrees to less favorable treatment of such Claim, in exchange for full and final satisfaction, settlement, release, and discharge of, and in exchange for, such Allowed Litigation Claim, each Holder of an Allowed Litigation Claim shall receive Cash in the Allowed amount of such Claim, paid via semiannual *pro rata* Distributions from the Disputed Claims Reserve, commencing on the January 15 or July 15 first following the Allowance Date of such Allowed Litigation Claim and payable on each subsequent January 15 and July 15 until such Allowed Litigation Claim is paid in full. Allowed Litigation Claims shall accrue simple interest at the Federal Judgment Rate from the Allowance Date of such Claim through the date on which such Claim is fully satisfied. Holders of Allowed Litigation Claims shall have recourse only to the Disputed Claims Reserve and not to any other property of Reorganized NRA.

8. **Class 6 – NYAG Claims**

   a. <u>Classification</u>

Class 6 consists of all NYAG Claims.

   b. <u>Impairment and Voting</u>

Class 6 is Impaired by the Plan. Holders of Claims in Class 6 shall be entitled to vote to accept or to reject the Plan.

   c. <u>Allowance</u>

All NYAG Claims are Disputed Claims under the Plan. The Allowed amount of each NYAG Claim shall be agreed to by the Debtors or the Reorganized NRA, as applicable, and the

Holder thereof, or determined by the Bankruptcy Court, including by estimation in accordance with Article VII(C) of the Plan.

        **d.**    <u>Treatment</u>

Except to the extent that a Holder of an Allowed NYAG Claim agrees to less favorable treatment of such Claim, in exchange for full and final satisfaction, settlement, release, and discharge of the Debtors' obligations in respect of such Allowed NYAG Claim, each Holder of an Allowed NYAG Claim shall receive Cash in the Allowed amount of such Claim, paid via semiannual *pro rata* Distributions from the Disputed Claims Reserve, commencing on the January 15 or July 15 first following the Allowance Date of such Allowed NYAG Claim and payable on each subsequent January 15 and July 15 until such Allowed NYAG Claim is paid in full. Allowed NYAG Claims shall accrue simple interest at the Federal Judgment Rate from the Allowance Date of such Claim through the date on which such Claim is fully satisfied. Holders of Allowed NYAG Claims shall have recourse only to the Disputed Claims Reserve and not to any other property of Reorganized NRA.

        **9.**    **<u>Class 7 – DCAG Claims</u>**

        **a.**    <u>Classification</u>

Class 7 consists of all DCAG Claims.

        **b.**    <u>Impairment and Voting</u>

Class 7 is Impaired by the Plan. Holders of Claims in Class 7 shall be entitled to vote to accept or to reject the Plan.

        **c.**    <u>Allowance</u>

All DCAG Claims are Disputed Claims under the Plan. The Allowed amount of each DCAG Claim shall be agreed to by the Debtors or the Reorganized NRA, as applicable, and the Holder thereof, or determined by the Bankruptcy Court, including by estimation in accordance with Article VII(C) of the Plan.

        **d.**    <u>Treatment</u>

Except to the extent that a Holder of an Allowed DCAG Claim agrees to less favorable treatment of such Claim, in exchange for full and final satisfaction, settlement, release, and discharge of the Debtors' obligations in respect of such Allowed DCAG Claim, each Holder of an Allowed DCAG Claim shall receive Cash in the Allowed amount of such Claim, paid via semiannual *pro rata* Distributions from the Disputed Claims Reserve, commencing on the January 15 or July 15 first following the Allowance Date of such Allowed DCAG Claim and payable on each subsequent January 15 and July 15 until such Allowed DCAG Claim is paid in full. Allowed DCAG Claims shall accrue simple interest at the Federal Judgment Rate from the Allowance Date of such Claim through the date on which such Claim is fully satisfied. Holders of Allowed DCAG Claims shall have recourse only to the Disputed Claims Reserve and not to any other property of

Reorganized NRA.

10. **Class 8 – Convenience Claims**

    a. <u>Classification</u>

Class 8 consists of All Convenience Claims.

    b. <u>Impairment and Voting</u>

Class 8 is Unimpaired by the Plan. Holders of Claims in Class 8 shall be deemed to have accepted the Plan, and thus are not entitled to vote to accept or to reject the Plan.

    c. <u>Allowance</u>

The Allowed amount of each Convenience Claim shall be agreed to by the Debtors or Reorganized NRA, as applicable, and the Holder thereof, or determined by the Bankruptcy Court.

    d. <u>Treatment</u>

In full and final satisfaction, settlement, release, and discharge of, and in exchange for, an Allowed Convenience Claim, each Holder of an Allowed Convenience Claim shall receive Cash in the Allowed amount of such Convenience Class Claim, payable on (i) the Effective Date or as reasonably soon as practicable thereafter, or (ii) within thirty (30) days following the Allowance Date of such Allowed Convenience Class Claim (if such Claim becomes Allowed after the Effective Date).

11. **Class 9 –Interests in Sea Girt**

    a. <u>Classification</u>

Class 9 consists of Interests in Sea Girt.

    b. <u>Impairment and Voting</u>

Class 9 is Impaired by the Plan. Holders of Interests in Class 9 are deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code. Therefore, Holders of Interests in Class 9 are not entitled to vote to accept or reject the Plan.

    c. <u>Treatment</u>

On the Effective Date of the Plan, all Interests in Sea Girt shall be deemed cancelled without any further action by or order of the Bankruptcy Court and shall be of no further force or effect. There shall be no Distribution on account of such Interests.

D. **Special Provision Governing Unimpaired Claims**

Except as otherwise specifically provided in the Plan, nothing herein shall be deemed to

affect, diminish, or impair the Debtors' or the Reorganized NRA's rights and defenses, both legal and equitable, with respect to any reinstated Claim or Unimpaired Claim, including legal and equitable defenses to setoffs or recoupment against reinstated Claims or Unimpaired Claims; and, except as otherwise specifically provided in the Plan, nothing herein shall be deemed to be a waiver or relinquishment of any Claim, Cause of Action, right of setoff, or other legal or equitable defense which the Debtors had immediately prior to the Petition Date, against or with respect to any reinstated Claim or Claim that is Unimpaired by the Plan. Except as otherwise specifically provided in the Plan, including the releases therein, the Reorganized NRA shall have, retain, reserve, and be entitled to assert all such Claims, Causes of Action, rights of setoff, and other legal or equitable defenses which the Debtors had immediately prior to the Petition Date fully as if the Chapter 11 Cases had not been commenced, and all of the Reorganized NRA's legal and equitable rights with respect to any reinstated Claim or Claim that is Unimpaired by this Plan may be asserted after the Confirmation Date and the Effective Date to the same extent as if the Chapter 11 Cases had not been commenced.

### E. Special Provision Governing Causes of Action

Except as otherwise specifically provided in the Plan, nothing herein shall be deemed to affect, diminish, or impair any third-party non-Debtor's rights and defenses, both legal and equitable, with respect to any Claims or Causes of Actions asserted against such third parties. In addition, nothing in this Plan, the Confirmation Order, or any of the Restructuring Documents shall toll, or should be interpreted to toll, any statute of limitations related to any third party Claims or Causes of Action against any non-Debtor.

### F. Modification of Treatment of Claims and Interests

The Debtors reserve the right to modify the treatment of any Allowed Claim or Interest in any manner adverse only to the Holder of such Claim or Interest at any time after the Effective Date upon the consent of the Holder of the Claim whose Allowed Claim or Interest is being adversely affected.

### G. Confirmation Pursuant to Sections 1129(a)(10) and 1129(b) of the Bankruptcy Code

Section 1129(a)(10) of the Bankruptcy Code shall be satisfied for purposes of Confirmation by acceptance of the Plan by an Impaired Class of Claims. The Debtors may seek Confirmation of the Plan pursuant to section 1129(b) of the Bankruptcy Code with respect to any rejecting Class of Claims.

### H. Elimination of Vacant Classes

Any Class of Claims that does not have a Holder of an Allowed Claim or a Claim temporarily Allowed by the Bankruptcy Court as of the date of the Confirmation Hearing shall be deemed eliminated from the Plan for purposes of voting to accept or reject the Plan and for purposes of determining acceptance or rejection of the Plan by such Class pursuant to section 1129(a)(8) of the Bankruptcy Code.

I. **Voting Classes; Presumed Acceptance by Non-Voting Classes**

If a Class contains Claims or Interests eligible to vote and no Holders of Claims or Interests eligible to vote in such Class vote to accept or reject the Plan, the Plan shall be presumed to have been accepted by the Holders of such Claims and Interests in such Class.

J. **Controversy Concerning Impairment**

If a controversy arises as to whether any Claims, or any Class of Claims, are Impaired, the Bankruptcy Court shall, after notice and a hearing, determine such controversy on or before the Confirmation Date.

IV. **MEANS FOR IMPLEMENTATION OF THE PLAN**

A. **General**

On and after the Confirmation Date, the Debtors shall be empowered and authorized to take or cause to be taken, prior to the Effective Date, all actions necessary to enable them to implement the provisions of the Plan on the Effective Date.

B. **Operations of the Debtors Between Confirmation and the Effective Date**

The Debtors shall continue to operate as debtors and debtors in possession during the period from the Confirmation Date to the Effective Date.

C. **Restructuring Transactions**

Prior to the Effective Date, the Debtors shall take such actions, including as set forth below, as are necessary or appropriate to enable Debtors to effectuate this Plan on the Effective Date.

Following the Confirmation Date, the Debtors, with the approval of the NRA Board, may take all actions as may be necessary or appropriate in the Debtors' discretion to effectuate any transaction described in, approved by, contemplated by, or necessary to implement or consummate the Plan (the "Restructuring Transactions"). The Restructuring Transactions may include one or more of the following: (a) the execution and delivery of appropriate agreements or other documents of merger, amalgamation, consolidation, restructuring, incorporation, conversion, disposition, transfer, arrangement, continuance, dissolution, sale, purchase, or liquidation containing terms that are consistent with the terms of the Plan; (b) the execution and delivery of appropriate instruments of transfer, assignment, assumption, or delegation of any asset, property, right, liability, debt, or obligation on terms consistent with the terms of the Plan; (c) the filing of appropriate certificates or articles of incorporation, reincorporation, merger, consolidation, conversion, amalgamation, arrangement, continuance, or dissolution and the adoption of bylaws pursuant to applicable state or local law; and (d) all other actions that the Debtors determine to be necessary, including making filings or recordings that may be required by applicable law in connection with the Plan.

The Confirmation Order shall and shall be deemed to, pursuant to both section 1123 and section 363 of the Bankruptcy Code, approve and authorize, among other things, all actions by the

Debtors and Reorganized NRA as may be necessary or appropriate to effect any transaction described in, approved by, contemplated by, or necessary to effectuate the Plan, including the Restructuring Transactions.

**D.**     **Dissolution of Sea Girt**

As of the Effective Date, in accordance with Article III(C), all Interests in Sea Girt shall be deemed cancelled without further action by or order of the Bankruptcy Court and shall be of no further force or effect. On the Effective Date, Sea Girt's members, directors, officers and employees shall be deemed to have resigned and Sea Girt shall be deemed to have dissolved for all purposes and be of no further legal existence under any applicable state or federal law, without the need for any further action or the filing of any plan of dissolution, notice, or application with the Secretary of State of the State of Texas or any other state or government authority, and without the need to pay any franchise or similar taxes to effectuate such dissolution. Any Allowed Claims against Sea Girt will be treated as set forth in Article III(C).

**E.**     **Corporate Governance**

Prior to the Confirmation Hearing, in consultation with the CRO, the SLC will retain an expert to advise on non-profit corporate governance matters for the NRA. Such expert shall consult with the CRO and take direction from the SLC and the NRA Board through the NRA's General Bankruptcy Counsel. Such expert will:

(i)     propose modifications to the NRA Bylaws, including without limitation modifications to provide for a Chief Compliance Officer that reports directly to the NRA Board and corresponding recommendations with respect to the provisions governing the Chief Compliance Officer's compensation, retention, and termination; and

(ii)     propose the scope of the duties of the Chief Compliance Officer, including without limitation addressing his or her responsibility for ensuring compliance with policies, procedures, and ethical standards created by the NRA Board and regulatory compliance with respect to non-profit law, election law, and lobbying; and

(iii)     prepare recommendations with respect to best corporate governance practices for the NRA and the Reorganized NRA, which recommendations shall be provided to the NRA Board through the NRA's General Bankruptcy Counsel.

The NRA Board, in consultation with the CRO, the NRA Board counsel, and the NRA's General Bankruptcy Counsel, shall consider the non-profit corporate governance expert's proposed modifications to the NRA Bylaws and recommendations with respect to the best corporate governance practices for the NRA and the Reorganized NRA.

Prior to the Confirmation Hearing, the NRA Board shall vote on the adoption and implementation of the non-profit corporate governance expert's proposed modifications to the NRA Bylaws, inclusive of establishing a Chief Compliance Officer, and recommendations with respect to best corporate governance practices. The NRA Bylaw amendments for the NRA and

the Reorganized NRA that are approved by the NRA Board (the "Revised Bylaws"), as well as the corporate governance practices approved by the NRA Board shall be included in the Plan Supplement.

Prior to the Confirmation Hearing, in consultation with the CRO, the SLC shall begin a search to identify potential Chief Compliance Officer candidates for consideration by the NRA Board, as well as employees that will assist and report directly to the Chief Compliance Officer. The SLC, in consultation with the CRO and the non-profit corporate governance expert, shall cultivate the Chief Compliance Officer candidates for consideration by the NRA Board prior to the Confirmation Hearing. If approved by the NRA Board, the identity of the Chief Compliance Officer, as well as her compensation, scope of duties, and number of dedicated employees shall be included in the Plan Supplement.

From and after the Effective Date, Reorganized NRA shall be governed pursuant to the Revised Bylaws. The Revised Bylaws shall contain such provisions as are necessary to satisfy the provisions of the Plan, subject to further amendment thereof after the Effective Date as permitted by applicable law. Under the Revised Bylaws, Reorganized NRA shall have no power to issue certificates of stock, its object and purpose being solely of a charitable, not-for-profit nature. The requirements of section 1123(a)(6) therefore do not apply to the NRA.

To the extent required under the Plan or applicable non-bankruptcy law, on or as soon as reasonably practicable after the Effective Date, Reorganized NRA will file such Revised Bylaws as are required to be filed with the applicable Secretary of State and/or other applicable authorities in the state, province, or country of the Reorganized NRA's incorporation in accordance with the corporate laws of the respective state, province, or country of incorporation. After the Effective Date, Reorganized NRA may amend and restate the Revised Bylaws, and Reorganized NRA may file certificates or articles of incorporation, bylaws, or such other applicable formation documents, and other constituent documents as permitted or required by the laws of the respective states, provinces, or countries of incorporation and the Revised Bylaws.

### F.    Reorganized NRA's Directors and Senior Management

Unless an officer or director of the NRA resigns prior to the Effective Date, which vacancy shall be filled in accordance with the NRA Bylaws, the officers and directors of the NRA shall serve as the officers and directors of the Reorganized NRA, subject solely to modification in accordance with the Revised Bylaws. For the avoidance of doubt, the information required by section 1129(a)(5) of the Bankruptcy Code, including the identities and affiliations of the directors and officers of Reorganized NRA, shall be contained in the Plan Supplement. Commencing on the Effective Date, each of the directors and officers of Reorganized NRA shall serve pursuant to the terms of Revied Bylaws. Additionally, on and after the Effective Date, the Revised Bylaws, as may be amended from time to time in accordance with applicable law, shall govern the designation and election of directors and officers of the Reorganized NRA.

### G.    Due Authorization and Corporate Action

On or before the Effective Date, the appropriate officers of the Debtors shall be authorized to issue, execute, and deliver the agreements, documents, securities, and instruments contemplated

by the Plan (or necessary or desirable to effect the transactions contemplated by the Plan, including the Restructuring Transactions, which documents shall have been approved by the NRA Board), in the name of and on behalf of the Debtors and the Reorganized NRA, to the extent not previously authorized by the Bankruptcy Court. The authorizations and approvals contemplated by this Article IV(G) shall be effective notwithstanding any requirements under non-bankruptcy law.

Upon the Effective Date, all actions contemplated by the Plan, including actions requiring a vote of the NRA Board or NRA Members under the NRA Bylaws or the Revised Bylaws, or a vote of the sole member of Sea Girt, shall be deemed authorized and approved by the Bankruptcy Court in all respects, including, as applicable: (a) adoption of the Revised Bylaws approved by the NRA Board, (b) implementation of the Restructuring Transactions; (c) the entry into the Restated AUB Loan Documents; (d) the rejection, assumption, or assumption and assignment, as applicable, of Executory Contracts and Unexpired Leases; (e) all Restructuring Transactions; and (f) all other actions contemplated by the Plan (whether to occur before, on, or after the Effective Date). Upon the Effective Date, all matters provided for in the Plan involving the corporate structure of the Reorganized NRA, and any corporate action required by the Debtors or the Reorganized NRA in connection with the Plan, shall be deemed to have been authorized, approved, and, to the extent taken prior to the Effective Date, ratified in all respects, and shall be in effect, without any requirement of further action by the members, directors, or officers of the Debtors or Reorganized NRA, or any other Person.

### H.  Sources of Consideration for Plan Distributions

The Debtors and the Reorganized NRA shall fund Distributions under the Plan with: (a) Unrestricted Cash on hand on or after the Effective Date; (b) with respect to the AUB Claims, the Claims and rights under the Restated AUB Loan Documents; (c) with respect to Disputed Claims in Classes 5, 6, and 7 that become Allowed Claims, the Disputed Claims Reserve; and (d) with respect to Professional Fee Claims, the Professional Fee Reserve.

### I.  Vesting of Assets in Reorganized NRA

On the Effective Date, all property in each Estate, all Causes of Action, and any property acquired by any of the Debtors pursuant to the Plan shall vest in the Reorganized NRA, free and clear of all Liens, Claims, charges, Causes of Action, or other encumbrances. On and after the Effective Date, the Reorganized NRA may operate its business and may use, acquire, or dispose of property and compromise or settle any Claims or Causes of Action without supervision or approval by the Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules.

### J.  Restatement of Indebtedness

On the Effective Date, all AUB Loan Documents, including all agreements, instruments, and other documents evidencing or issued pursuant to the AUB Claims, or any indebtedness or other obligations thereunder, and any rights of any Holder in respect thereof, shall be deemed amended and restated in the form of the Restated AUB Loan Documents. Reorganized NRA and AUB shall, and shall be authorized to, execute, deliver and enter into the Restated AUB Loan Documents as of such date, in principal amounts equal to the Allowed amounts set forth in Article III(C) of the Plan without the need for any further corporate action or any further notice to or order

of the Bankruptcy Court. The Debtors or Reorganized NRA, as applicable, and AUB shall take all actions necessary to continue the Debtors' obligations under the AUB Loan Documents, as amended and restated by the Restated AUB Loan Documents and to give effect to the Restated AUB Loan Documents.

Except as otherwise modified by the Restated AUB Loan Documents, all Liens, mortgages and security interests securing the obligations arising under the Restated AUB Loan Documents that attached to Collateral securing the Debtors' obligations under the AUB Loan Documents as of the Petition Date are unaltered by the Plan, and all such Liens, mortgages and security interests are reaffirmed and perfected with respect to the Restated AUB Loan Documents to the same extent, in the same manner and on the same terms and priorities as they were under the AUB Loan Documents. All Liens and security interests granted and continuing pursuant to the Restated AUB Loan Documents shall be (a) valid, binding, perfected, and enforceable Liens and security interests in the personal and real property described in and subject to such documents, with the priorities established in respect thereof under applicable non-bankruptcy law; (b) granted in good faith and deemed not to constitute a fraudulent conveyance or fraudulent transfer; and (c) not otherwise subject to avoidance, recharacterization, or subordination (whether equitable, contractual or otherwise) under any applicable law. The Debtors, Reorganized NRA, and AUB are authorized to make, and to the extent required by the Restated AUB Loan Documents, the Debtors, Reorganized NRA, and AUB will make, all filings and recordings, and obtain all governmental approvals and consents necessary to establish, attach and perfect such Liens and security interests under any applicable law (it being understood that perfection shall occur automatically by virtue of the entry of the Confirmation Order and any such filings, recordings, approvals, and consents shall not be required), and will thereafter cooperate to make all other filings and recordings that otherwise would be necessary under applicable law to give notice of such Liens and security interests to third parties. For purposes of all mortgages and deposit account control agreements that secured the obligations arising under the AUB Loan Documents, the Restated AUB Loan Documents are deemed an amendment and restatement of the AUB Loan Documents, and such mortgages and control agreements shall survive the Effective Date, shall not be cancelled, and shall continue to secure Reorganized NRA's obligations under the Restated AUB Loan Documents.

K.    **Compromise and Settlement of Claims, Interests, and Controversies**

Pursuant to section 1123(b)(3)(A) of the Bankruptcy Code and Bankruptcy Rule 9019 and in consideration for the Distributions and other benefits provided under the Plan, upon the Effective Date, the provisions of the Plan shall constitute a good-faith compromise and settlement of all Claims, Interests, and controversies relating to the contractual, legal, and subordination rights that Holders of Claims or Interests may have with respect to any Claim or Interest under the Plan or any Distribution to be made on account of an Allowed Claim or Interest. The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise and settlement of all such Claims, Interests, and controversies, as well as a finding by the Bankruptcy Court that such compromise or settlement is in the best interests of the Debtors, their Estates, and Holders of such Claims and Interests, and is fair, equitable and reasonable.

L.    **Retiree Benefits and Pension Plan**

Pursuant to section 1129(a)(13) of the Bankruptcy Code, from and after the Effective Date,

all retiree benefits (as such term is defined in section 1114 of the Bankruptcy Code) shall continue to be paid in accordance with applicable law. No provision contained in the Plan, Confirmation Order, the Bankruptcy Code (including section 1141 of the Bankruptcy Code), or any other document Filed or order entered in the Chapter 11 Cases shall be construed to exculpate, discharge, release or relieve the Debtors, or any other party, in any capacity, from any liability or responsibility to any Person with respect to the Pension Plan under any law, governmental policy, or regulatory provision. The Pension Plan shall not be enjoined or precluded from enforcing any such liability or responsibility as a result of any of the provisions of the Plan (including those provisions providing for exculpation, satisfaction, release and discharge of Claims against the Debtors), the Confirmation Order, the Bankruptcy Code (including section 1141 of the Bankruptcy Code), or any other document Filed or order entered in the Chapter 11 Cases.

## M.   Compensation and Benefits Programs

All of the Compensation and Benefits Programs entered into before the Petition Date and not since terminated shall be deemed to be, and shall be treated as though they are, Executory Contracts under the Plan. Entry of the Confirmation Order will constitute the Bankruptcy Court's approval of Reorganized NRA's assumption and continued maintenance and sponsorship of each of such Compensation and Benefits Program under sections 365 and 1123 of the Bankruptcy Code, and the Debtors' and Reorganized NRA's obligations under the Compensation and Benefits Programs shall survive and remain unaffected by entry of the Confirmation Order and be fulfilled in the ordinary course of the Debtors' and Reorganized NRA's operations. Holders of Claims arising under Compensation and Benefits Programs shall not be required to file Proofs of Claim and all Proofs of Claim Filed on account of amounts asserted to be owed under Compensation and Benefits Programs shall be deemed satisfied and expunged from the Claims Register as of the Effective Date without any further notice to or action, order, or approval of the Bankruptcy Court.

## N.   Customer, Donor, and Member Programs

All of the Customer, Donor, and Member Programs existing as of the Petition Date and not since terminated shall be deemed to be, and shall be treated as though they are, Executory Contracts under the Plan. Entry of the Confirmation Order will constitute the Bankruptcy Court's approval of Reorganized NRA's assumption and continued maintenance and sponsorship of each of such Customer, Donor, and Member Programs under sections 365 and 1123 of the Bankruptcy Code, and the Debtors' and Reorganized NRA's obligations under the Customer, Donor, and Member Programs shall survive and remain unaffected by entry of the Confirmation Order and be fulfilled in the ordinary course of the Debtors' and Reorganized NRA's operations. Holders of Claims arising under Customer, Donor, and Member Programs shall not be required to file Proofs of Claim and all Proofs of Claim Filed on account of amounts asserted to be owed under Customer, Donor, and Member Programs shall be deemed satisfied and expunged from the Claims Register as of the Effective Date without any further notice to or action, order, or approval of the Bankruptcy Court.

## O.   Preservation of NRA Membership Interests

All NRA Membership Interests shall be deemed to be, and shall be treated as though they are, Executory Contracts under the Plan, and entry of the Confirmation Order will constitute the Bankruptcy Court's approval of the Debtors' assumption of each such Executory Contracts.  All

NRA Membership Interests shall survive and remain unaffected by entry of the Confirmation Order, and nothing in the Plan shall alter, affect, modify, impair, or discharge any of the rights, interests, or obligations of the Debtors, Reorganized NRA, or NRA Members with respect to NRA Membership Interests.  As of the Effective Date, all NRA Members shall be, and shall be deemed to be, members of the Reorganized NRA under the Revised Bylaws and applicable law.

### P.    D&O Liability Insurance Policies

All D&O Liability Insurance Policies shall be deemed to be, and shall be treated as though they are, Executory Contracts under the Plan, and entry of the Confirmation Order will constitute the Bankruptcy Court's approval of the Debtors' assumption of each such Executory Contracts. Notwithstanding anything to the contrary contained in the Plan or Confirmation Order, Confirmation of the Plan shall not discharge, impair, or otherwise modify any indemnity obligations assumed by the foregoing assumption of the D&O Liability Insurance Policies, or any agreements, documents, and instruments related thereto.

### Q.    Indemnification Obligations

All Indemnification Obligations shall be deemed to be, and shall be treated as though they are, Executory Contracts under the Plan, and entry of the Confirmation Order will constitute the Bankruptcy Court's approval of the Debtors' assumption of each such Executory Contracts.  All Indemnification Obligations shall survive and remain unaffected by entry of the Confirmation Order, and nothing in the Plan shall alter, affect, modify, impair, or discharge any of the rights, interests, or obligations of the Debtors, Reorganized NRA, or the Debtors' officers and directors with respect to Indemnification Obligations.  Notwithstanding the foregoing, nothing shall impair the ability of Reorganized NRA to modify Indemnification Obligations (whether in the bylaws, certificates of incorporation or formation, corporate charter, limited liability company agreements, other organizational or formation documents, board resolutions, indemnification agreements, employment contracts, or otherwise) arising after the Effective Date.

### R.    Other Insurance Policies

From and after the Effective Date, each of the Debtors' insurance policies in existence as of the Effective Date of the Plan, shall be reinstated and continued in accordance with their terms and, to the extent applicable, shall be deemed assumed by Reorganized NRA pursuant to section 365 of the Bankruptcy Code and Article V(A) of the Plan.  Nothing in the Plan shall affect, impair or prejudice the rights of the insurance carriers, the insureds, or Reorganized NRA under the insurance policies in any manner, and such insurance carriers, the insureds, and Reorganized NRA shall retain all rights and defenses under such insurance policies, and such insurance policies shall apply to, and be enforceable by and against, the insureds, and Reorganized NRA in the same manner and according to the same terms and practices applicable to the Debtors, as existed prior to the Effective Date.

### S.    Exemption from Certain Taxes and Fees

Pursuant to section 1146(a) of the Bankruptcy Code, any transfers of property pursuant hereto shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, stamp act, real estate transfer tax, sale or use tax, mortgage recording

tax, or other similar tax or governmental assessment, and upon entry of the Confirmation Order, the appropriate state or local governmental officials or agents shall forgo the collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents pursuant to such transfers of property without the payment of any such tax, recordation fee, or governmental assessment.

### T. Preservation of Causes of Action

In accordance with section 1123(b) of the Bankruptcy Code, all Causes of Action that a Debtor may hold against any Person shall vest in Reorganized NRA on the Effective Date. Thereafter, Reorganized NRA shall have the exclusive right, authority, and discretion to determine and to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any such Causes of Action, whether arising before or after the Petition Date, and to decline to do any of the foregoing without the consent or approval of any third party or further notice to or action, order, or approval of the Bankruptcy Court. No Person may rely on the absence of a specific reference in the Plan or the Disclosure Statement to any specific Cause of Action as any indication that the Debtors or Reorganized NRA, as applicable, will not pursue any and all available Causes of Action. The Debtors or Reorganized NRA, as applicable, expressly reserve all rights to prosecute any and all Causes of Action against any Person, except as otherwise expressly provided in the Plan, and, therefore, no preclusion doctrine, including the doctrines of *res judicata*, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable or otherwise) or laches, shall apply to any Cause of Action upon, after, or as a consequence of Confirmation or the occurrence of the Effective Date.

### U. Miscellaneous

The foregoing provisions shall not affect the discharge of Claims pursuant to the Bankruptcy Code, the Confirmation Order, or the Plan, or result in any expense or liability to the Reorganized Debtors except to the extent set forth in or provided for under the Plan.

## V. TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

### A. Assumption and Rejection of Executory Contracts and Unexpired Leases

On the Effective Date, except as otherwise provided herein, all Executory Contracts or Unexpired Leases not otherwise assumed or rejected shall be deemed assumed by Reorganized NRA without the need for any further notice to or action, order, or approval of the Bankruptcy Court under sections 365 and 1123 of the Bankruptcy Code, other than: (a) those that are identified as rejected contracts on the Rejected Executory Contract/Unexpired Lease Schedule; (b) those that previously expired or terminated pursuant to their terms; (c) those that have been previously assumed or rejected by a Final Order; (d) those that are the subject of a motion to reject Executory Contracts or Unexpired Leases that is pending on the Effective Date; or (e) those that are subject to a motion to reject an Executory Contract or Unexpired Lease pursuant to which the requested effective date of such rejection is after the Effective Date.

Entry of the Confirmation Order shall constitute an order of the Bankruptcy Court approving the assumptions, assumptions and assignments, or rejections, as applicable, of such Executory Contracts or Unexpired Leases as set forth in the Plan and the Rejected Executory

Contract/Unexpired Lease Schedule, pursuant to sections 365(a) and 1123 of the Bankruptcy Code. Except as otherwise specifically set forth herein, assumptions or rejections of Executory Contracts and Unexpired Leases pursuant to the Plan are effective as of the Effective Date. Each Executory Contract or Unexpired Lease assumed pursuant to the Plan or by Bankruptcy Court order, but not assigned to a third party before the Effective Date, shall re-vest in and be fully enforceable by Reorganized NRA in accordance with its terms, except as such terms may have been modified by the provisions of the Plan or any order of the Bankruptcy Court authorizing and providing for its assumption under applicable federal law. To the extent any provision in any Executory Contract or Unexpired Lease assumed pursuant to the Plan restricts or prevents, or purports to restrict or prevent, or is breached or deemed breached by, the assumption of such Executory Contract or Unexpired Lease (including, without limitation, any "change of control", "assignment", or similar provision), then such provision shall be deemed automatically modified or stricken such that the transactions contemplated by the Plan, including the Restructuring Transactions shall not entitle the non-Debtor party thereto to terminate such Executory Contract or Unexpired Lease or to exercise any other default, breach, violation or acceleration rights with respect thereto. Any motions to assume Executory Contracts or Unexpired Leases pending on the Effective Date shall be subject to approval by a Final Order of the Bankruptcy Court on or after the Effective Date, but may be withdrawn, settled, or otherwise prosecuted by the Reorganized Debtor.

The Debtors or Reorganized NRA, as applicable, may alter, amend, modify, or supplement the Rejected Executory Contract/Unexpired Lease Schedule (an "Amended Rejected Executory Contract/Unexpired Lease Schedule"), at any time through and including the Effective Date, which amended schedule shall be Filed with the Bankruptcy Court. The Debtors or Reorganized NRA, as applicable, shall provide notice of any Rejected Executory Contract/Unexpired Lease Schedule to the parties to the Executory Contracts or Unexpired Leases affected thereby.

**Any objection to the assumption or rejection of an Executory Contract or Unexpired Lease under the Plan must be Filed with the Bankruptcy Court, served, and actually received by the Debtor on or before (a) [_____], 2021 at 5:00 p.m. (Central Time), or (b) in the case of an Executory Contract or Unexpired Lease that is affected by any Amended Rejected Executory Contract/Unexpired Lease Schedule, on the date that is fourteen (14) days following the Filing of such Amended Schedule**. Any counterparty to an Executory Contract or Unexpired Lease that fails to timely object to the proposed assumption, including any proposed cure amount, of any Executory Contract or Unexpired Lease will be deemed to have consented to such assumption, including any proposed cure amount.

### B. Claims Based on Rejection of Executory Contracts or Unexpired Leases

**Proofs of Claim with respect to Claims arising from the rejection of Executory Contracts or Unexpired Leases, if any, must be Filed with the Bankruptcy Court within the later of (i) thirty (30) days after the Effective Date, or (ii) the claim deadline set forth in such Order rejecting the Executory Contract or Unexpired Lease**. **Any Claims arising from the rejection of an Executory Contract or Unexpired Lease not Filed within such time will be disallowed upon an order of the Bankruptcy Court, forever barred from assertion, and shall not be enforceable against, as applicable, the Debtors, Reorganized NRA, the Estates, or property of the foregoing parties, without the need for any objection by the Debtors or the**

**Reorganized NRA or further notice to, or action, order, or approval of the Bankruptcy Court or any other Entity, and any Claim arising out of the rejection of the Executory Contract or Unexpired Lease shall be deemed fully satisfied, released, and discharged, notwithstanding anything in the Schedules, if any, or a Proof of Claim to the contrary.** Claims arising from the rejection of Executory Contracts or Unexpired Leases shall be classified as Class 4 General Unsecured Claims and shall be treated in accordance with Article III(C).

### C.    Cure of Defaults for Assumed Executory Contracts and Unexpired Leases

The Debtor or Reorganized NRA, as applicable, shall pay Cure Claims, if any, on the Effective Date or as soon as practicable thereafter, or on such other terms as the parties to such Executory Contracts or Unexpired Leases may otherwise agree. Any Cure Claim shall be deemed fully satisfied, released, and discharged upon payment by the Debtors or Reorganized NRA, as applicable, of such Cure Claim; *provided, however,* that nothing herein shall prevent Reorganized NRA from paying any Cure Claim despite the failure of the relevant counterparty to File such request for payment of such Cure Claim. Reorganized NRA may settle any Cure Claim on account of any Executory Contract or Unexpired Lease without any further notice to or action, order, or approval of the Bankruptcy Court.

The Cure Notice Filed with the Plan Supplement shall contain the proposed cure amount for any Executory Contract or Unexpired Lease identified for assumption therein. The Debtors' failure to identify an Executory Contract or Unexpired Lease on such Cure Notice shall constitute an assertion by the Debtors that the Cure Claim with respect to such omitted Executory Contract or Unexpired Lease is $0. **Any objection by a counterparty to an Executory Contract or Unexpired Lease to the proposed assumption, assumption and assignment or related cure amount must be Filed, served and actually received by the Debtor on or before (a) [_____] 2021 at 5:00 p.m. (Central Time); or (b) in the case of an Executory Contract or Unexpired Lease that is affected by any Amended Rejected Executory Contract/Unexpired Lease Schedule, on the date that is fourteen (14) days following the Filing of such amended schedule and service of a Cure Notice on the parties to the Executory Contracts or Unexpired Leases affected thereby.** Any counterparty to an Executory Contract or Unexpired Lease that fails to timely object to the proposed cure amount of any Executory Contract or Unexpired Lease will be deemed to have consented to such proposed cure amount.

### D.    Dispute Resolution

In the event of a dispute between the Debtors and a non-Debtor counterparty to any Executory Contract or Unexpired Lease to be assumed or assumed and assigned regarding (a) the amount of any Cure Claim, (b) the ability of Reorganized NRA or any assignee to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the Executory Contract or Unexpired Lease to be assumed, or (c) any other matter pertaining to assumption, assumption and assignment, or the cure payments required by section 365(b)(1) of the Bankruptcy Code, such dispute shall be resolved by a Final Order of the Bankruptcy Court (which may be the Confirmation Order) or as may be agreed upon in writing by the Debtors or Reorganized NRA, as applicable, and the counterparty to the Executory Contract or Unexpired Lease. Cure payments required by section 365(b)(1) of the Bankruptcy Code shall be made following: (i) the entry of a Final Order or orders resolving the dispute and approving

the assumption or assumption and assignment, which Final Order or orders may, for the avoidance of doubt, be entered (and any related hearing may be held) after the Effective Date, or (ii) upon the written, consensual resolution between the counterparty to any Executory Contract or Unexpired Lease and the Debtors or Reorganized NRA, as applicable. The Debtors or Reorganized NRA, as applicable, reserve the right to reject any Executory Contract or Unexpired Lease as part of a resolution of any cure disputes. If the Bankruptcy Court determines that the Allowed Cure Claim with respect to any Executory Contract or Unexpired Lease is greater than the amount set forth in the applicable Cure Notice, the Debtors or Reorganized NRA, as applicable, will have the right to add such Executory Contract or Unexpired Lease to the Rejected Executory Contract/Unexpired Lease Schedule, in which case such Executory Contract or Unexpired Lease will be deemed rejected as of the Effective Date.

### E. Modifications, Amendments, Supplements, Restatements, or Other Agreements

Unless otherwise provided in the Plan, each Executory Contract or Unexpired Lease that is assumed shall include all modifications, amendments, supplements, restatements, or other agreements that in any manner affect such Executory Contract or Unexpired Lease, and Executory Contracts and Unexpired Leases related thereto, if any, including easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, and any other interests, unless any of the foregoing agreements has been previously rejected or repudiated or is rejected or repudiated under the Plan.

Modifications, amendments, and supplements to, or restatements of, prepetition Executory Contracts and Unexpired Leases that have been executed by the Debtors during the Chapter 11 Cases shall not be deemed to alter the prepetition nature of the Executory Contract or Unexpired Lease, or the validity, priority, or amount of any Claims that may arise in connection therewith.

### F. Reservation of Rights

Neither the inclusion of any Executory Contract or Unexpired Lease on the Debtors' Schedules, nor anything contained in the Plan, shall constitute an admission by the Debtors or Reorganized NRA that any such contract or lease is in fact an Executory Contract or Unexpired Lease or that Reorganized NRA has any liability thereunder. If there is a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption or rejection, the Debtors, or, after the Effective Date, Reorganized NRA, shall have thirty (30) days following entry of a Final Order resolving such dispute to alter their treatment of such contract or lease.

### G. Nonoccurrence of Effective Date

In the event that the Effective Date does not occur, the Bankruptcy Court shall retain jurisdiction with respect to any request to extend the deadline for assuming or rejecting Unexpired Leases of nonresidential real property pursuant to section 365(d)(4) of the Bankruptcy Code.

## VI. PROVISIONS GOVERNING DISTRIBUTIONS UNDER THE PLAN

### A. Distributions Generally

Reorganized NRA shall make all Distributions to the Holders of Allowed Claims in accordance with the terms of this Plan.

### B. Record Date for Distribution

On the Distribution Record Date, the Claims Register shall be closed for purposes of determining the identity of the Holder of a Claim and, in connection with Distributions under the Plan, the Debtors and Reorganized NRA, as applicable, shall be authorized and entitled to recognize only those record Holders listed on the Claims Register as of the close of business on the Distribution Record Date. The Debtors or Reorganized NRA, as applicable, shall have no obligation to recognize any transfer or designation of such Claims occurring after the close of business on the Distribution Record Date.

### C. Method of Payment

Unless otherwise expressly agreed in writing, all Cash payments to be made pursuant to the Plan shall be made by check drawn on a domestic bank or via an electronic wire or ACH Transfer.

### D. Distribution After Allowance

Distributions shall only be made on account of Allowed Claims. To the extent a Disputed Claim (or a portion thereof) becomes an Allowed Claim, Distributions (if any) shall be made to the Holder of such Allowed Claim in accordance with the provisions of this Plan.

### E. Claims Paid or Payable by Third Parties

#### 1. Claims Paid by Third Parties

A Claim shall be reduced in full, and such Claim shall be disallowed without an objection to such Claim having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court, to the extent that the Holder of such Claim receives payment in full on account of such Claim from a party that is not a Debtor or Reorganized NRA. To the extent a Holder of a Claim receives a Distribution on account of such Claim and receives payment from a party that is not a Debtor or Reorganized NRA on account of such Claim, such Holder shall repay, return, or deliver any Distribution held by or transferred to the Holder under this Plan to Reorganized NRA to the extent the Holder's total recovery on account of such Claim exceeds the Allowed amount of such Claim.

#### 2. Claims Payable by Insurance Carriers

No Distributions under the Plan shall be made on account of an Allowed Claim that is payable pursuant to one of the Debtors' insurance policies until the Holder of such Allowed Claim has exhausted all remedies with respect to such insurance policy. To the extent that one or

more of the Debtors' insurers agrees to satisfy in full or in part a Claim (if and to the extent adjudicated by a court of competent jurisdiction), then immediately upon such insurer's agreement, such Claim may be expunged from the Claims Register to the extent of any agreed upon satisfaction without an objection having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court.

### 3.   Applicability of Insurance Policies

Except as otherwise provided in the Plan, Distributions to Holders of Allowed Claims shall be made in accordance with the provisions of any applicable insurance policy. Nothing contained in the Plan shall constitute or be deemed a waiver of any Cause of Action that the Debtors or any Entity may hold against any other Entity, including insurers under any policies of insurance, nor shall anything contained herein constitute or be deemed a waiver by such insurers of any defenses, including coverage defenses, held by such insurers.

### F.   Delivery of Distributions

Except as provided herein, Distributions to Holders of Allowed Claims shall be made: (1) at the addresses set forth on the respective Proofs of Claim Filed by such Holders; (2) at the addresses set forth in any written notices of address changes delivered to the Debtors or Reorganized NRA, as applicable, after the date of any related Proof of Claim; or (3) at the address reflected in the Schedules if no Proof of Claim is Filed and the Debtors or Reorganized NRA have not received a written notice of a change of address.

If the Distribution to the Holder of any Claim is returned to the Reorganized NRA as undeliverable, no further Distribution shall be made to such Holder unless and until the Reorganized NRA is notified in writing of such Holder's then current address. Unclaimed Distributions shall remain in the possession of the Reorganized NRA until the earlier of: (i) such time as a Distribution becomes deliverable, or (ii) such undeliverable Distribution becomes an unclaimed Distribution pursuant to Article VI(G) of the Plan. Reorganized NRA shall make reasonable efforts to update or correct contact information for recipients of undeliverable Distributions, *provided, however*, nothing contained in the Plan shall require Reorganized NRA to locate any Holder of an Allowed Claim.

### G.   Unclaimed Distributions

Any Cash or other property to be distributed under the Plan shall revert to Reorganized NRA if it is not claimed by the Entity entitled to such Distribution within ninety (90) days after the date of such Distribution. If such Cash or other property is not claimed on or before such date, the Distribution made to such Entity shall be deemed to be reduced to zero without any further action of the Bankruptcy Court.

### H.   Allocations

Unless otherwise specifically provided for in an order of the Bankruptcy Court, the Plan, or the Confirmation Order, Distributions with respect to Allowed Claims shall be allocated first to the principal amount of such Claims (as determined for federal income tax purposes) and then, to the extent the consideration exceeds the principal amount of the Claims, to any portion of such

Claims for accrued but unpaid interest as Allowed herein.

### I. No Post-Petition Interest on Claims

Unless otherwise specifically provided for in an order of the Bankruptcy Court, and except with respect to the AUB Claims, the Plan, or the Confirmation Order, or required by applicable bankruptcy law, post-petition interest shall not be paid on any Claims, and no Holder of a Claim shall be entitled to interest accruing on or after the Petition Date on any such Claim for purposes of Distributions under this Plan.

### J. Set-Off and Recoupment

Except as otherwise expressly provided herein, the Debtors or Reorganized NRA, as applicable, may, but shall not be required to, setoff against or recoup from any Claims of any nature whatsoever that the Debtors or Reorganized NRA, as applicable, may have against the Holder of a Claim, and neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtors or Reorganized NRA, as applicable, of any such Claim it may have against the Holder of such Claim.

In no event shall any Holder of a Claim be entitled to set off or recoup any such Claim against any Claim, right, or Cause of Action of the Debtors or Reorganized NRA, as applicable, unless: (a) the Debtors or Reorganized NRA, as applicable, have consented, or (b) such Holder has Filed a motion with the Bankruptcy Court requesting the authority to perform such recoupment or setoff on or before the Confirmation Date and that such Holder asserts, has, or intends to preserve any right of recoupment or setoff pursuant to section 553 of the Bankruptcy Code or otherwise, or (c) such Holder timely Filed a Proof of Claim asserting any right of recoupment or setoff pursuant to section 553 of the Bankruptcy Code or otherwise.

### K. Compliance with Tax Requirements

In connection with the Plan, to the extent applicable, Reorganized NRA shall comply with all tax withholding and reporting requirements imposed by any Governmental Unit, and all Distributions pursuant to the Plan shall be subject to such withholding and reporting requirements. Notwithstanding any provision in the Plan to the contrary, Reorganized NRA shall be authorized to take all actions necessary or appropriate to comply with such withholding and reporting requirements, including (a) liquidating a portion of the distribution to be made under the Plan to generate sufficient funds to pay applicable withholding taxes, (b) withholding distributions pending receipt of information necessary to facilitate such distributions or establishing any other mechanisms they believe are reasonable and appropriate, including using commercially reasonable efforts to obtain, if such information is not already in the possession of Reorganized NRA, (i) in the case of a U.S. Holder, a properly executed IRS Form W-9 and, (ii) in the case of a non-U.S. Holder, a properly executed applicable IRS Form W-8 and any other forms required by any applicable law (or in each of the cases of clauses (i) and (ii) above, such Holder otherwise establishes eligibility for an exemption). The failure of a claimant to timely respond to a request by Reorganized NRA for tax identification information in the manner identified in a letter to the claimant requesting such information may result in forfeiture of the claimant's Distribution under the Plan. Reorganized NRA reserves the right to allocate all Distributions made under the Plan in

compliance with applicable wage garnishments, alimony, child support, and other spousal awards, liens, and encumbrances.

## VII. PROCEDURES FOR RESOLVING CONTINGENT, UNLIQUIDATED, AND DISPUTED CLAIMS

### A. Authority to Object to and Settle Claims

As of the Effective Date, and as provided herein, Reorganized NRA shall have the sole authority to File objections, settle, compromise, withdraw or litigate to judgment objections to all Claims. Reorganized NRA shall have and retain any and all rights and defenses that the Debtors had with respect to any Claim immediately prior to the Effective Date. Reorganized NRA shall be authorized to settle or withdraw any objections to any Disputed Claim following the Effective Date without further notice to Creditors or authorization of the Bankruptcy Court, in which event such Claim shall be deemed to be an Allowed Claim in the amount compromised for purposes of this Plan.

### B. Time to Object to Claims

Objections to Claims by Reorganized NRA shall be Filed by the Claims Objection Deadline, *provided*, *however*, that Reorganized NRA may seek extension(s) of such deadline subject to Bankruptcy Court approval and with notice only to parties that have requested such notice pursuant to Bankruptcy Rule 2002. The expiration of the Claims Objection Deadline shall not limit or affect Reorganized NRA's rights to dispute Claims asserted in the ordinary course of Reorganized NRA's business other than through a Proof of Claim.

### C. Estimation of Claims

The Debtors (prior to the Effective Date) and Reorganized NRA (on and after the Effective Date) may at any time request that the Bankruptcy Court estimate any contingent, unliquidated, or Disputed Claim pursuant to section 502(c) of the Bankruptcy Code, regardless of whether the Debtors have previously objected to such Claim or whether the Bankruptcy Court has ruled on such objection. The Bankruptcy Court shall retain jurisdiction to estimate any Claim at any time during litigation concerning any such Claim, including during the pendency of any appeal relating to such Claim or an objection to such Claim. In the event the Bankruptcy Court so estimates any contingent, unliquidated, or Disputed Claim, that estimated amount shall constitute the Allowed amount of the Claim or a maximum limitation on the Allowed amount of such Claim. If the estimated amount of a Claim constitutes a maximum limitation on such Claim, the Debtors (prior to the Effective Date) and Reorganized NRA (on and after the Effective Date) may elect to pursue any supplemental proceedings to object to any ultimate Distribution on such Claim. All of the objection, estimation, settlement, and resolution procedures set forth in the Plan are cumulative and not necessarily exclusive of one another. Claims may be estimated and subsequently compromised, objected to, settled, withdrawn, or resolved by any mechanism permitted by the Bankruptcy Code or approved by the Bankruptcy Court.

### D. Determination of Tax Liabilities

In addition to any other available remedies or procedures with respect to tax issues or

liabilities or rights to tax refunds, Reorganized NRA may at any time utilize (and receive the benefits of) section 505 of the Bankruptcy Code with respect to: (1) any tax issue or liability or right to a tax refund relating to an act or event occurring prior to the Effective Date; or (2) any tax liability or right to a tax refund arising prior to the Effective Date. If Reorganized NRA utilizes section 505(b) of the Bankruptcy Code, the Bankruptcy Court will determine the amount of the subject tax liability or right to a tax refund in the event that the appropriate Governmental Unit timely determines a tax to be due in excess of the amount indicated on the subject return.

### E.     No Distributions Pending Allowance

Notwithstanding any other provision of the Plan, no payment or Distribution of Cash or other property shall be made with respect to any portion of a Disputed Claim unless and until all objections to such Claim are resolved by Final Order or as otherwise permitted by this Plan. Distributions on account of any Disputed Claim shall only be made to the extent such Claim becomes an Allowed Claim in accordance with Article VII of this Plan.

### F.     Distributions After Allowance

To the extent that a Disputed Claim (or a portion thereof) becomes an Allowed Claim, Distributions (if any) shall be made to the Holder of such Allowed Claim in accordance with the provisions of the Plan.

### G.     Disputed Claims Reserve

#### 1.     Reservation of Cash on Account of Disputed Claims

On the Effective Date, or as soon as reasonably practicable thereafter, the Debtors or Reorganized NRA, as applicable, shall establish and fund the Disputed Claims Reserve. Funds in the Disputed Claims Reserve shall be held in trust for the benefit of Holders of Disputed Claims in Class 5, 6, and 7. The Disputed Claims Reserve shall initially be funded with $5,000,000 of Unrestricted Cash. Commencing on July 15, 2022 and continuing each January 15 and July 15 thereafter until the earlier of (i) the date on which all Disputed Claims in Classes 5, 6, and 7 that become Allowed Claims are paid in full or (ii) the date on which the balance of the Disputed Claims Reserve equals the aggregate Face Amount of all Disputed Claims in Classes 5, 6, and 7, Reorganized NRA shall contribute to the Disputed Claims Reserve the lesser of (i) $5,000,000 of Unrestricted Cash or (ii) the amount such that the balance of the Disputed Claims Reserve, after the contribution, will equal the aggregate Face Amount of all Disputed Claims in Classes 5, 6, and 7. In the event the amount of Allowed Claims in Classes 5, 6, and 7 ultimately exceeds the aggregate Face Amount of such Claims, Reorganized NRA shall recommence funding the Disputed Claims Reserve in accordance with this Article VII(G) to the extent necessary until all such Allowed Claims are paid in full.

#### 2.     Distributions from Disputed Claims Reserve

If a Disputed Claim in Classes 5, 6, or 7 becomes an Allowed Claim, Reorganized NRA shall, on the next date on which Distributions are made under the Plan following the date on which such Disputed Claim becomes an Allowed Claim, distribute to the Holder of such Allowed Claim the amount of Cash such Holder is owed in that Distribution. *Pro rata* Distributions from

the Disputed Claims Reserve shall be determined by dividing the amount of each Allowed Claim Classes 5, 6, and 7 by the total amount of Allowed Claims in Classes 5, 6, and 7 as of the date such Distribution is made.

### 3. Investment of Segregated Cash and Property

To the extent practicable, Reorganized NRA may invest any Cash or other property segregated in the Disputed Claims Reserve or any proceeds thereof (i) in a manner that will yield a reasonable net return taking into account the safety of the investment, or (ii) in any manner permitted by section 345 of the Bankruptcy Code; *provided, however*, that Reorganized NRA shall be under no obligation to so invest such Cash or proceeds and shall have no liability to any party for any investment made or any omission to invest such Cash, other property or proceeds.

### 4. Release of Cash from Disputed Claims Reserve

If any assets remain in the Disputed Claims Reserve after all Disputed Claims have been resolved, such assets shall be released to, and revest in, Reorganized NRA in accordance with the terms of the Plan.

### H. Adjustment to Claims Register Without Objection

Any duplicate Proof of Claim that has been paid or satisfied, or any Proof of Claim that has been amended or superseded, may be adjusted or expunged on the Claims Register by Reorganized NRA upon stipulation between the parties in interest without an objection having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court. Any Claim that has been or is hereafter listed in the Schedules as contingent, unliquidated, or disputed, and for which no Proof of Claim is or has been timely Filed, is considered Disallowed and shall be expunged without further action by the Debtors or Reorganized NRA, as applicable, and without further notice to any party or action, approval, or order of the Court.

### I. Disallowance of Certain Claims

Except as otherwise agreed by Reorganized NRA and Holder of such Claim, any and all Proofs of Claim Filed after the applicable Bar Date shall be deemed Disallowed and expunged as of the Effective Date without any further notice to or action, order, or approval of the Bankruptcy Court, and no Holder of any such Claim shall receive any Distributions on account of such Claim. From or after the Effective Date, a Proof of Claim may not be Filed or amended without the prior authorization of the Bankruptcy Court or Reorganized Debtors, and any such new or amended Proof of Claim Filed shall be deemed Disallowed in full and expunged without any further action by Reorganized NRA or notice to or order of the Bankruptcy Court.

## VIII. CONDITIONS TO THE EFFECTIVE DATE OF THE PLAN

### A. Conditions Precedent to the Effective Date

It shall be a condition precedent to consummation of the Plan and the occurrence of the Effective Date that the following conditions shall have been satisfied or occur (or be waived pursuant to Article VIII(B)):

1.     The Bankruptcy Court shall have entered the Confirmation Order, in form and substance acceptable to the Debtors and such Confirmation Order shall be a Final Order.

2.     The Debtors shall have obtained all authorizations, consents, regulatory approvals, rulings, or documents that are necessary to implement and effectuate the Plan and each of the Restructuring Transactions.

3.     The final version of the Plan Supplement and all of the schedules, documents, and exhibits contained therein, and all other schedules, documents, supplements and exhibits to the Plan shall have been Filed with the Bankruptcy Court.

4.     All allowed Professional Fee Claims approved by the Bankruptcy Court shall have been paid in full or amounts sufficient to pay the Professional Fee Claims Estimate after the Effective Date shall have been placed in the Professional Fee Reserve pending approval of the Professional Fee Claims by the Bankruptcy Court.

5.     The NRA shall have provided a copy of the Revised Bylaws to the Attorney General for the State of Texas and obtained acknowledgment that the State of Texas accepts the Reorganized NRA as a Texas nonprofit corporation under the Texas Business Organizations Code. To the extent appropriate, the NRA may negotiate and agree to additional regulatory protocols or reporting with the Attorney General for the State of Texas.

6.     All actions, documents, certificates, and agreements necessary to implement this Plan shall have been effected or executed and tendered for delivery to the required parties and, to the extent required, filed with the applicable Governmental Units in accordance with applicable laws, and all conditions precedent to the effectiveness of such documents and agreements shall have been satisfied or waived pursuant to the terms thereof (or will be satisfied and waived substantially concurrently with the occurrence of the Effective Date).

7.     All authorizations, consents, regulatory approvals, rulings, or documents that are necessary to implement and effectuate the Plan and the transactions contemplated herein shall have been obtained, not be subject to unfulfilled conditions and shall be in full force and effect, and all applicable waiting periods shall have expired without any action being taken or threatened by any competent authority that would restrain, prevent or otherwise impose materially adverse conditions on any of the transactions contemplated herein.

8.     The Restructuring Documents, which shall be in form and substance acceptable to the Debtors, shall have been duly executed and delivered by all of the Entities that are parties thereto and all conditions precedent (other than any conditions related to the occurrence of the Effective Date) to the effectiveness thereof shall have been satisfied or duly waived in writing and the closing shall have occurred thereunder

9.     The Restated AUB Loan Documents, which shall be in form and substance acceptable to the Debtors and AUB, shall have been duly executed and delivered by all of the Entities that are parties thereto and all conditions precedent (other than any conditions related to the occurrence of the Effective Date) to the effectiveness thereof shall have been satisfied or duly waived in writing and the closing shall have occurred thereunder.

B. **Waiver of Conditions**

The conditions to the Effective Date of the Plan set forth in this Article VIII may be waived by written consent of the Debtors, without notice, leave, or order of the Bankruptcy Court or any formal action other than proceedings to confirm or consummate the Plan, subject to the terms of the Bankruptcy Code and the Bankruptcy Rules.

C. **Substantial Consummation**

"Substantial consummation" of the Plan, as defined by section 1102(2) of the Bankruptcy Code, shall be deemed to occur on the Effective Date.

D. **Effect of Non-Occurrence of Conditions to the Effective Date**

If the Effective Date does not occur, the Plan shall be null and void in all respects and nothing contained in the Plan shall: (a) constitute a waiver or release of any Claims by or Claims against or Interests in the Debtors; (b) prejudice in any manner the rights of the Debtors, any Holders of a Claim or Interest, or any other Entity; or (c) constitute an admission, acknowledgment, offer, or undertaking by the Debtors, any Holders, or any other Entity in any respect.

IX. **EFFECT OF CONFIRMATION OF THE PLAN, INCLUDING RELEASE, EXCULPATION, INJUNCTION, AND RELATED PROVISIONS**

A. **Binding Effect**

As of the Effective Date, all provisions of the Plan, including all agreements, instruments and other documents entered into in connection with the Plan by the Debtors or Reorganized NRA shall be binding upon the Debtors, the Estates, Reorganized NRA, all Holders of Claims against and Interests in the Debtors, each such Holder's respective successors and assigns, and all other Persons that are affected in any manner by the Plan, regardless of whether the Claim or Interest of such Holder is Impaired under the Plan or whether such Holder has accepted the Plan. Except as otherwise expressly provided in the Plan, all agreements, instruments and other documents Filed in connection with the Plan shall be given full force and effect and shall bind all Persons referred to therein on and after the Effective Date, whether or not such agreements are actually issued, delivered or recorded on or after the Effective Date and whether or not such Persons have actually executed such agreement.

B. **Discharge of Claims and Termination of Interests**

Pursuant to section 1141(d) of the Bankruptcy Code, and except as otherwise specifically provided in the Plan or in any contract, instrument, or other agreement or document created pursuant to the Plan, the Distributions, rights, and treatment that are provided in the Plan shall be in complete satisfaction, discharge, and release, effective as of the Effective Date, of Claims, Interests, and Causes of Action of any nature whatsoever, including any interest accrued on Claims or Interests from and after the Petition Date, whether known or unknown, against, liabilities of, liens on, obligations of, rights against, and Interests in, the Debtors, or any of its assets or properties, regardless of whether any property shall have been distributed or retained pursuant to the Plan on account of such Claims and Interests, including demands, liabilities, and Causes of

Action that arose before the Effective Date, any liability to the extent such Claims or Interests relate to services performed by employees of the Debtors prior to the Effective Date and that arise from a termination of employment, any contingent or non-contingent liability on account of representations or warranties issued on or before the Effective Date, and all debts of the kind specified in sections 502(g), 502(h), or 502(i) of the Bankruptcy Code. The foregoing applies in each case whether or not: (a) a Proof of Claim based upon such debt or right is Filed or deemed Filed pursuant to section 501 of the Bankruptcy Code; (b) a Claim or Interest based upon such debt, right, or Interest is Allowed pursuant to section 502 of the Bankruptcy Code; or (c) the Holder of such a Claim or Interest has accepted the Plan. Any default or "event of default" by the Debtors with respect to any Claim or Interest that existed immediately before or on account of the Filing of the Chapter 11 Cases shall be deemed cured (and no longer continuing) as of the Effective Date with respect to a Claim that is Unimpaired by the Plan. Subject to the terms and conditions of the Plan, the Confirmation Order shall be a judicial determination of the discharge of all Claims and Interests subject to the occurrence of the Effective Date.

C.      **Discharge Injunction**

From and after the Effective Date, except as expressly provided in the Plan or the Confirmation Order, all Holders of Claims or Interests of any nature whatsoever against or in the Debtors or any of their assets or properties based upon any act, omission, transaction, occurrence, or other activity of any nature that occurred prior to the Effective Date that are discharged pursuant to the terms of the Plan shall be precluded and permanently enjoined from taking any of the following actions on account of, or on the basis of, such discharged Claims and Interests: (a) commencing or continuing any action or other proceeding of any kind against the Debtors, Reorganized NRA, or their respective property; (b) enforcing, attaching, collecting, or recovering by any manner or means of judgment, award, decree or other against the Debtors, Reorganized NRA, or their respective property; (c) creating, perfecting or enforcing any Lien or Encumbrance of any kind against the Debtors, Reorganized NRA, or their respective property; or (d) commencing or continuing any judicial or administrative proceeding, in any forum and in any place in the world, that does not comply with or is inconsistent with the provisions of the Plan or the Confirmation Order. The foregoing injunction shall extend to the successors and assigns of the Debtors (including Reorganized NRA) and their respective properties and interests in property.

D.      **Provisions Regarding NYAG Claims and DCAG Claims**

Solely with respect to the NYAG and DCAG, the discharge, release, and injunction provisions contained in the Plan and Confirmation Order are not intended and shall not be construed to (i) bar the NYAG and DCAG from pursuing any police or regulatory action against the Debtors or non-Debtor third parties or (ii) discharge, release, exculpate, impair, or otherwise preclude any liability to the NYAG or DCAG that is not a Claim under the Plan or within the meaning of section 101(5) of the Bankruptcy Code.

E.      **Injunction Against Interference with the Plan**

Upon entry of the Confirmation Order, all Holders of Claims and Interests shall be precluded and enjoined from taking any actions to interfere with the implementation and consummation of the Plan.

F. **Exculpation**

EXCEPT AS OTHERWISE SPECIFICALLY PROVIDED IN THE PLAN, TO THE MAXIMUM EXTENT PERMITTED UNDER APPLICABLE LAW, NO EXCULPATED PARTY SHALL HAVE OR INCUR LIABILITY FOR, AND EACH EXCULPATED PARTY IS HEREBY RELEASED AND EXCULPATED FROM, ANY CAUSE OF ACTION FOR ANY CLAIM RELATED TO ANY ACT OR OMISSION IN CONNECTION WITH, RELATING TO, OR ARISING OUT OF, THE CHAPTER 11 CASES, IN WHOLE OR IN PART, THE FORMULATION, PREPARATION, DISSEMINATION, NEGOTIATION, FILING, OR IMPLEMENTATION OF THE PLAN, THE DISCLOSURE STATEMENT, OR THE RESTRUCTURING TRANSACTIONS, ANY CONTRACT, INSTRUMENT, RELEASE OR OTHER AGREEMENT OR DOCUMENT CREATED OR ENTERED INTO IN CONNECTION WITH THE PLAN, THE FILING OF THE CHAPTER 11 CASES, THE PURSUIT OF CONFIRMATION OF THE PLAN, THE PURSUIT OF CONSUMMATION OF THE PLAN, THE ADMINISTRATION AND IMPLEMENTATION OF THE PLAN, INCLUDING THE ISSUANCE OR DISTRIBUTION OF SECURITIES PURSUANT TO THE PLAN, OR THE DISTRIBUTION OF PROPERTY UNDER THE PLAN OR ANY OTHER RELATED AGREEMENT, EXCEPT FOR CLAIMS OR CAUSES OF ACTION ARISING FROM AN ACT OR OMISSION THAT IS JUDICIALLY DETERMINED IN A FINAL ORDER TO HAVE CONSTITUTED ACTUAL FRAUD OR WILLFUL MISCONDUCT.  THE EXCULPATED PARTIES HAVE, AND UPON COMPLETION OF THE PLAN SHALL BE DEEMED TO HAVE, PARTICIPATED IN GOOD FAITH AND IN COMPLIANCE WITH THE APPLICABLE LAWS WITH REGARD TO THE SOLICITATION OF VOTES AND DISTRIBUTION OF CONSIDERATION PURSUANT TO THE PLAN AND, THEREFORE, ARE NOT, AND ON ACCOUNT OF SUCH DISTRIBUTIONS SHALL NOT BE, LIABLE AT ANY TIME FOR THE VIOLATION OF ANY APPLICABLE LAW, RULE, OR REGULATION GOVERNING THE SOLICITATION OF ACCEPTANCES OR REJECTIONS OF THE PLAN OR SUCH DISTRIBUTIONS MADE PURSUANT TO THE PLAN.

G. **Release**

AS OF THE EFFECTIVE DATE, PURSUANT TO SECTION 1123(B) OF THE BANKRUPTCY CODE, EXCEPT FOR THE RIGHTS THAT REMAIN IN EFFECT FROM AND AFTER THE EFFECTIVE DATE TO ENFORCE THE PLAN AND THE RESTRUCTURING DOCUMENTS, FOR GOOD AND VALUABLE CONSIDERATION, THE ADEQUACY OF WHICH IS HEREBY CONFIRMED, AND EXCEPT AS OTHERWISE PROVIDED IN THE PLAN OR IN THE CONFIRMATION ORDER, TO THE MAXIMUM EXTENT PERMITTED UNDER APPLICABLE LAW, THE RELEASED PARTIES WILL BE DEEMED CONCLUSIVELY, ABSOLUTELY, UNCONDITIONALLY, IRREVOCABLY, AND FOREVER RELEASED AND DISCHARGED, TO THE EXTENT PERMITTED BY LAW, BY THE RELEASING PARTIES FROM ANY AND ALL CLAIMS, INTERESTS, CAUSES OF ACTION, OBLIGATIONS, SUITS, JUDGMENTS, DAMAGES, DEMANDS, DEBTS, RIGHTS, REMEDIES, LOSSES, AND LIABILITIES WHATSOEVER, INCLUDING ANY DERIVATIVE CLAIMS, ASSERTED OR ASSERTABLE ON BEHALF OF THE

DEBTORS, OR REORGANIZED NRA, AS APPLICABLE, OR THE ESTATES, WHETHER LIQUIDATED OR UNLIQUIDATED, FIXED OR CONTINGENT, MATURED OR UNMATURED, KNOWN OR UNKNOWN, FORESEEN OR UNFORESEEN, EXISTING OR HEREINAFTER ARISING, IN LAW, EQUITY, OR OTHERWISE, THAT THE RELEASING PARTIES WOULD HAVE BEEN LEGALLY ENTITLED TO ASSERT IN THEIR OWN RIGHT (WHETHER INDIVIDUALLY OR COLLECTIVELY) OR ON BEHALF OF THE HOLDER OF ANY CLAIM OR INTEREST OR OTHER PERSON, BASED ON OR RELATING TO, OR IN ANY MANNER ARISING FROM THE CHAPTER 11 CASES, THE SUBJECT MATTER OF, OR THE TRANSACTIONS OR EVENTS GIVING RISE TO, ANY CLAIM THAT IS TREATED IN THE PLAN,THE RESTRUCTURING OF ANY CLAIM OR INTEREST DURING THE CHAPTER 11 CASES, THE PLAN, INCLUDING THE DISTRIBUTION OF PROPERTY UNDER THE PLAN, THE RESTRUCTURING TRANSACTIONS, THE PLAN SUPPLEMENT, THE DISCLOSURE STATEMENT, AND RELATED AGREEMENTS, INSTRUMENTS, AND OTHER DOCUMENTS (INCLUDING THE RESTRUCTURING DOCUMENTS), AND THE NEGOTIATION, FORMULATION, OR PREPARATION THEREOF, THE SOLICITATION OF VOTES WITH RESPECT TO THE PLAN, OR ANY OTHER ACT OR OMISSION, TRANSACTION, AGREEMENT, EVENT, OR OTHER OCCURRENCE TAKING PLACE ON OR BEFORE THE EFFECTIVE DATE OF THE PLAN RELATED OR RELATING TO THE FOREGOING.

H. __Injunction__

EXCEPT AS OTHERWISE EXPRESSLY PROVIDED IN THE PLAN OR FOR OBLIGATIONS ISSUED OR REQUIRED TO BE PAID PURSUANT TO THE PLAN OR THE CONFIRMATION ORDER, ALL ENTITIES THAT HAVE HELD, HOLD, OR MAY HOLD CLAIMS OR INTERESTS THAT HAVE BEEN RELEASED PURSUANT TO THE PLAN, DISCHARGED PURSUANT TO THE PLAN, OR ARE SUBJECT TO EXCULPATION PURSUANT TO THE PLAN, ARE PERMANENTLY ENJOINED, FROM AND AFTER THE EFFECTIVE DATE, FROM TAKING ANY OF THE FOLLOWING ACTIONS AGAINST, AS APPLICABLE, THE DEBTORS, REORGANIZED NRA, THE RELEASED PARTIES, AND THE EXCULPATED PARTIES: (A) COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING OF ANY KIND ON ACCOUNT OF, OR IN CONNECTION WITH, OR WITH RESPECT TO, ANY SUCH CLAIMS OR INTERESTS; (B) ENFORCING, ATTACHING, COLLECTING, OR RECOVERING BY ANY MANNER OR MEANS ANY JUDGMENT, AWARD, DECREE, OR ORDER AGAINST SUCH ENTITIES ON ACCOUNT OF, OR IN CONNECTION WITH, OR WITH RESPECT TO, ANY SUCH CLAIMS OR INTERESTS; (C) CREATING, PERFECTING, OR ENFORCING ANY LIEN OR ENCUMBRANCE OF ANY KIND AGAINST SUCH ENTITIES OR THE PROPERTY OR THE ESTATES OF SUCH ENTITIES ON ACCOUNT OF, OR IN CONNECTION WITH, OR WITH RESPECT TO, ANY SUCH CLAIMS OR INTERESTS; (D) ASSERTING ANY RIGHT OF SETOFF, SUBROGATION, OR RECOUPMENT OF ANY KIND AGAINST ANY OBLIGATION DUE FROM SUCH ENTITIES OR AGAINST THE PROPERTY OF SUCH ENTITIES ON ACCOUNT OF, OR IN CONNECTION WITH, OR WITH RESPECT TO, ANY SUCH CLAIMS OR INTERESTS UNLESS SUCH ENTITY HAS EITHER (1) TIMELY FILED A

**PROOF OF CLAIM ASSERTING A RIGHT OF SETOFF OR RECOUPMENT, OR (2) TIMELY ASSERTED SUCH SETOFF OR RECOUPMENT RIGHT IN A DOCUMENT FILED WITH THE BANKRUPTCY COURT EXPLICITLY PRESERVING SUCH SETOFF OR RECOUPMENT, AND NOTWITHSTANDING AN INDICATION OF A CLAIM OR INTEREST OR OTHERWISE THAT SUCH ENTITY ASSERTS, HAS, OR INTENDS TO PRESERVE ANY RIGHT OF SETOFF OR RECOUPMENT PURSUANT TO APPLICABLE LAW OR OTHERWISE; AND (E) COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING OF ANY KIND ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS OR INTERESTS TREATED, RELEASED, EXCULPATED, OR SETTLED PURSUANT TO THE PLAN.**

## I.     Protections Against Discriminatory Treatment

Consistent with section 525 of the Bankruptcy Code and the Supremacy Clause of the United States Constitution, all Entities, including Governmental Units, shall not discriminate against the Debtors or Reorganized NRA or deny, revoke, suspend, or refuse to renew a license, permit, charter, franchise, or other similar grant to, condition such a grant to, discriminate with respect to such a grant against, the Debtors or Reorganized NRA, or another Entity with whom Reorganized NRA has been associated, solely because each Debtor has been a debtor under chapter 11 of the Bankruptcy Code, has been insolvent before the commencement of the Chapter 11 Cases (or during the Chapter 11 Cases but before the Debtors are granted or denied a discharge), or has not paid a debt that is dischargeable in the Chapter 11 Cases.

## J.     Subordination Rights

The classification and manner of satisfying all Claims and Interests under the Plan take into consideration all subordination rights, whether arising under general principles of equitable subordination, contract, section 510(c) of the Bankruptcy Code, or otherwise, that a Holder of a Claim or Interest may have against other Claim or Interest Holders with respect to any Distribution made pursuant to the Plan. Except as provided in the Plan, all subordination rights that a Holder of a Claim may have with respect to any Distribution to be made pursuant to the Plan shall be discharged and terminated, and all actions related to the enforcement of such subordination rights shall be permanently enjoined.

Pursuant to Bankruptcy Rule 9019, and in consideration for the Distributions and other benefits provided under the Plan, the provisions of the Plan shall constitute a good faith compromise and settlement of all Claims or controversies relating to the subordination rights that a Holder of a Claim may have with respect to any Allowed Claim or any Distribution to be made pursuant to the Plan on account of any Allowed Claim. The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, as of the Effective Date, of the compromise or settlement of all such Claims or controversies and the Bankruptcy Court's finding that such compromise or settlement is in the best interests of the Debtors, Reorganized NRA, and the Estates, and Claim and Interest Holders, and is fair, equitable, and reasonable.

### K.     Release of Liens

Except with respect to the AUB Claims and, in the Debtors' sole discretion, Allowed Miscellaneous Secured Claims, each of which shall be treated in accordance with Article III(C), or as otherwise provided in the Plan, or in any contract, instrument, release, or other agreement or document created pursuant to the Plan, on the Effective Date, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estate shall be fully released and discharged, and the Holders of such mortgages, deeds of trust, Liens, pledges, or other security interests shall execute such documents as may be reasonably requested by the Debtors or Reorganized NRA, as applicable, to reflect or effectuate such releases, and all of the right, title, and interest of any Holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert to Reorganized NRA.

### L.     Reservation of Rights

Except as specifically provided for in the Plan, Plan Supplement, or in the Confirmation Order, nothing contained in the Plan or in the Confirmation Order shall be deemed to be a waiver or relinquishment of any Claim, Cause of Action, right of setoff, or other legal or equitable defense that the Debtors have immediately prior to the Petition Date, against, or with respect to, any Claim left unimpaired by the Plan.  The Debtor or the Reorganized Debtor, as applicable, shall have, retain, reserve, and be entitled to assert all such claims, Causes of Action, rights of setoff, or other legal or equitable defenses which it had immediately prior to the Petition Date fully as if the Chapter 11 Case had not been commenced, and all legal and equitable rights of any Debtor with respect to any Claim left unimpaired by the Plan may be asserted after the Confirmation Date to the same extent as if the Chapter 11 Case had not been commenced.  The Reorganized Debtor's right to commence and prosecute Causes of Action shall not be abridged or materially altered in any manner by reason of Confirmation of the Plan.  No defendant party to any Causes of Action brought by the Debtor or Reorganized NRA shall be entitled to assert any defense based, in whole or in part, upon confirmation of the Plan, and confirmation of the Plan shall not have any res judicata or collateral estoppel effect upon the commencement and prosecution of the Causes of Action.

## X.     MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN

### A.     Modification and Amendments

The Debtors reserve the right to modify the Plan consistent with the NRA Board's directives and to seek Confirmation consistent with the Bankruptcy Code and the Bankruptcy Rules and, as appropriate, not resolicit votes on such modified Plan.  Subject to certain restrictions and requirements set forth in the Plan, section 1127 of the Bankruptcy Code, and Bankruptcy Rule 3019, the Debtors expressly reserve their right to alter, amend, or modify materially the Plan with respect to the Debtors, one or more times, after Confirmation, and, to the extent necessary, may initiate proceedings in the Bankruptcy Court to so alter, amend, or modify the Plan, or remedy any defect or omission, or reconcile any inconsistencies in the Plan, the Plan Supplement, or the Confirmation Order, in such matters as may be necessary to carry out the purposes and intent of the Plan.

**B.**     <u>Effect of Confirmation on Modifications</u>

Entry of the Confirmation Order shall mean that all modifications or amendments to the Plan occurring after the solicitation thereof are approved pursuant to section 1127(a) of the Bankruptcy Code and do not require additional disclosure or resolicitation under Bankruptcy Rule 3019.

**C.**     <u>Revocation or Withdrawal of the Plan</u>

The Debtors reserve the right to revoke or withdraw the Plan prior to the Confirmation Date. If the Debtors revoke or withdraw the Plan, or if Confirmation and consummation does not occur, then: (a) the Plan shall be null and void in all respects; (b) any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount any Claim or Interest or Class of Claims or Interests), assumption or rejection of Executory Contracts or Unexpired Leases effected by the Plan, and any document or agreement executed pursuant to the Plan, shall be deemed null and void; and (c) nothing contained in the Plan shall: (1) constitute a waiver or release of any Claims or Interests; (2) prejudice in any manner the rights of the Debtors or any other Entity; or (3) constitute an admission, acknowledgement, offer, or undertaking of any sort by the Debtors or any other Entity, including the non-Debtor subsidiaries.

**XI.**     <u>RETENTION OF JURISDICTION</u>

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court shall retain jurisdiction over the Chapter 11 Cases and all matters arising out of, or related to, the Chapter 11 Cases and the Plan, including, but not limited to, jurisdiction to:

    1.     allow, disallow, determine, liquidate, classify, estimate, or establish the priority, Secured or unsecured status, or amount of any Claim or Interest, including the resolution of any request for payment of any Administrative Claim and the resolution of any and all objections to the Secured or Unsecured status, priority, amount, or allowance of Claims or Interests, or whether a Claim constitutes a "claim" within the meaning of section 101(5) of the Bankruptcy Code; *provided, however,* that the Bankruptcy Court's retention of jurisdiction with respect to such matters shall not preclude the Debtors or Reorganized NRA from seeking relief from any other court, tribunal, or other legal forum of competent jurisdiction with respect to such matters;

    2.     decide and resolve all matters related to the granting and denying, in whole or in part, any applications for allowance of compensation or reimbursement of expenses to Professionals authorized pursuant to the Bankruptcy Code or the Plan;

    3.     resolve any matters related to: (a) the assumption, or assumption and assignment of, the Executory Contract or Unexpired Lease to which a Debtor is a party or with respect to which a Debtor may be liable in any manner and to hear, determine, and, if necessary, liquidate, any Claims arising therefrom, including Claims related to the rejection of an Executory Contract or Unexpired Lease, cure costs pursuant to section 365 of the Bankruptcy Code, or any other matter related to such Executory Contract or Unexpired Lease; (b) Reorganized NRA amending, modifying, or supplementing, after the Confirmation Date, the Executory Contracts or Unexpired Leases included in the initial schedule of Executory Contracts and Unexpired Leases

-49-

to be assumed; and (c) any dispute regarding whether a contract or lease is or was executory or expired;

4.      adjudicate controversies, if any, with respect to distributions to Holders of Allowed Claims;

5.      adjudicate, decide, or resolve any motions, adversary proceedings, contested, or litigated matters, and any other matters, and grant or deny any applications involving a Debtor that may be pending on the Effective Date;

6.      adjudicate, decide, or resolve any and all matters related to Causes of Action;

7.      adjudicate, decide, or resolve any and all matters related to section 1141 of the Bankruptcy Code;

8.      enter and implement such orders as may be necessary or appropriate to execute, implement, or consummate the provisions of the Plan and all contracts, instruments, releases, indentures, and other agreements or documents created in connection with the Plan;

9.      enter and enforce any order for the sale of property pursuant to sections 363, 1123, or 1146(a) of the Bankruptcy Code;

10.     resolve any cases, controversies, suits, disputes, or Causes of Action that may arise in connection with the Consummation, interpretation, or enforcement of the Plan or any Entity's obligations incurred in connection with the Plan;

11.     issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any Entity with Consummation or enforcement of the Plan;

12.     resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the settlements, compromises, discharges, releases, injunctions, exculpations, and other provisions contained in Article IX hereto and enter such orders as may be necessary or appropriate to implement and/or enforce such releases, injunctions, and other related provisions, including, without limitation, whether any Claim or Cause of Action is a Claim that belongs to the Debtors, Reorganized NRA, or the Estates or is a Claim or Cause of Action that belongs to, and can be asserted by, a third party;

13.     resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the repayment or return of Distributions and the recovery of additional amounts owed by the Holder of a Claim or Interest for amounts not timely repaid;

14.     enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked, or vacated;

15.     determine any other matters that may arise in connection with or relate to the Plan, the Confirmation Order, or the Plan Supplement;

16.     adjudicate any and all disputes arising from, or relating to, Distributions under the Plan or any transactions contemplated therein;

17.     consider any modifications of the Plan, to cure any defect or omission, or to reconcile any inconsistency in any Bankruptcy Court Order, including the Confirmation Order;

18.     determine requests for the payment of Claims and Interests entitled to priority pursuant to section 507 of the Bankruptcy Code;

19.     hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

20.     hear and determine matters concerning exemptions from state and federal registration requirements in accordance with section 1145 of the Bankruptcy Code;

21.     enforce all orders previously entered by the Bankruptcy Court;

22.     hear any other matter not inconsistent with the Bankruptcy Code; and

23.     enter an order concluding or closing the Chapter 11 Cases.

## XII.    **MISCELLANEOUS PROVISIONS**

### A.    **Immediate Binding Effect**

Notwithstanding Bankruptcy Rules 3020(e), 6004(h), or 7062 or otherwise, upon the occurrence of the Effective Date, the terms of the Plan, the Plan Supplement, and the Confirmation Order shall be immediately effective and enforceable and deemed binding upon the Debtors, Reorganized NRA, and any and all Holders of Claims or Interests (regardless of whether such Claims or Interests are deemed to have accepted or rejected the Plan), all Entities that are parties to or are subject to the settlements, compromises, releases, and injunctions described in the Plan, each Entity acquiring property under the Plan or the Confirmation Order, and any and all non-Debtor parties to Executory Contracts and Unexpired Leases with the Debtors.  All Claims shall be as fixed, adjusted, or compromised, as applicable, pursuant to the Plan regardless of whether any Holder of a Claim or debt has voted on the Plan.

### B.    **Additional Documents**

On or before the Effective Date, the Debtors may file with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.  The Debtors and all Holders of Claims or Interests receiving distributions pursuant to the Plan and all other parties in interest shall, from time to time, prepare, execute, and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan.

### C.    **Reservation of Rights**

Except as expressly set forth in the Plan, the Plan shall have no force or effect unless the

Bankruptcy Court enters the Confirmation Order in accordance with Article XI hereof. Neither the Plan, any statement or provision contained in the Plan, nor any action taken or not taken by the Debtor with respect to the Plan, Confirmation Order, or the Plan Supplement shall be or shall be deemed to be an admission or waiver of any rights of any Debtors with respect to the Holders of Claims or Interests prior to the Effective Date.

**D.** **Successors and Assigns**

The rights, benefits, and obligations of any Entity named or referred to in the Plan or the Confirmation Order shall be binding on, and shall inure to the benefit of any heir, executor, administrator, successor or assign, affiliate, officer, director, manager, agent, representative, attorney, beneficiaries, or guardian, if any, of each Entity.

**E.** **Notices**

To be effective, all notices, requests and demands to or upon Reorganized NRA shall be in writing and directed at the following addresses and individuals and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile or e-mail transmission, when received and telephonically confirmed:

>National Rifle Association of America
>11250 Waples Mill Road,
>Fairfax, Virginia 22030
>Attn: John Frazer, Secretary and General Counsel
>Email: John.Frazer@nrahq.com

>With copies to:

>Neligan LLP
>325 N. St. Paul St. Suite 3600
>Dallas, Texas 75201
>Attn: Patrick J. Neligan, Jr.
>Email: pneligan@neliganlaw.com

>and

>Garman Turner Gordon LLP
>7251 Amigo Street, Suite 210
>Las Vegas, Nevada 89119
>Attn: Gregory Garman
>Email: ggarman@gtg.legal

**F.** **Term of Injunctions or Stays**

Unless otherwise provided in the Plan or in the Confirmation Order, all injunctions or stays in effect in the Chapter 11 Cases pursuant to sections 105 or 362 of the Bankruptcy Code or any

order of the Bankruptcy Court, and extant on the Confirmation Date (excluding any injunctions or stays contained in the Plan or the Confirmation Order) shall remain in full force and effect until the Effective Date. All injunctions or stays contained in the Plan or the Confirmation Order shall remain in full force and effect in accordance with their terms.

### G.   Entire Agreement

The Plan and Confirmation Order supersede all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into the Plan and Confirmation Order.

### H.   Nonseverability of Plan Provisions

If, prior to Confirmation, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court shall be prohibited from altering or interpreting such term or provision to make it valid or enforceable, provided that at the request of the Debtors or Reorganized NRA, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such terms or provision shall then be applicable as altered or interpreted provided that any such alteration or interpretation shall be acceptable to the Debtors. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is: (a) valid and enforceable pursuant to its terms; (b) integral to the Plan and may not be deleted or modified without consent from the Debtors; and (c) nonseverable and mutually dependent.

### I.   Governing Law

Except to the extent the Bankruptcy Code, Bankruptcy Rules or other federal law is applicable, or to the extent an exhibit to the Plan provides otherwise, the rights and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of Texas, without giving effect to the principles of conflicts of law of such jurisdiction.

### J.   Headings

Headings are used in the Plan for convenience and reference only and shall not constitute a part of the Plan for any other purpose.

### K.   Exhibits/Schedules

All exhibits and schedules to the Plan, including the Plan Supplement, are incorporated into and are a part of the Plan as if set forth in full herein.

### L.   Implementation

The Debtors shall take all steps, and execute all documents, including appropriate releases, necessary to effectuate the provisions contained in this Plan.

[*remainder of page intentionally left blank*]

Dated: [____], 2021                    **NATIONAL RIFLE ASSOCIATION**
                                       **OF AMERICA and SEA GIRT LLC**

                                       By: _/s/ draft_____