the closure of 226,000 acres to shooting, but as an October 8th USFS press release clearly states, no new closures to informal shooting will be made until shooting ranges built and open to the public. The Devil's Nose Shooting Range near Idaho Springs on USFS lands is under construction with expected completion next year. Colorado Parks and Wildlife continues to work with the USFS and the four counties (Gilpin, Clear Creek, Boulder and Larimer) that surround the national forests to find sites for shooting ranges on USFS and county lands. Planning is underway for a 15-lane range to be built adjacent to the Clear Creek Sportsmen's Club Gun Range in Dumont. Under the Project, Boulder County is required to develop two shooting ranges. One in planning would expand the Boulder Rifle Club range. A site for the second range is still in the exploratory stages, as are sites in Larimar and Gilpin Counties.

**Agreement Reached Regarding Overpopulation of Wild Horses and Burros**

Previous board reports have addressed the important role that the National Horse and Burro Rangeland Management Coalition, of which the NRA is a founding member, has played in the development of a much-needed protocol on how to reduce the population of wild horses and burros (over 88,000), which is reaching a crisis situation at three times the number of animals considered sustainable on the western rangelands, in addition to another 46,000 in holding facilities. Progress was made earlier this year with a compromise plan agreed to between Coalition NGOs and HSUS and other animal rights groups. In a statement before the National Wild Horse and Burro Federal Advisory Board, which met in October, the Coalition expressed support for the plan titled "The Path Forward for Management of BLM's Wild Horses and Burros," even though it falls short in the Coalition's estimation of what is needed to reduce population numbers on the rangeland and in holding facilities. At the Advisory Board meeting, BLM Acting Director Perry Pendley blamed excessive environmental regulations stemming from NEPA as a major reason for the BLM's difficultly in controlling animal numbers. He announced a further delay of a report to Congress that is to outline strategies and costs to reduce the growing herds until more expansive consideration is given to various solutions. Funds have been increased in the FY 2020 Interior Appropriations bill for the BLM to remove more animals from the range and to carry out widespread sterilizations.

**Support for Creating New Refuge in Kentucky**

The NRA, along with 23 other wildlife conservation and hunting organizations, signed a letter in August addressed to Secretary of the Interior Bernhardt supporting the creation of the Green River National Wildlife Refuge in Henderson County, Kentucky. The Refuge's purpose is to restore and protect a wetland complex for migratory birds and threatened and endangered species. It would allow for recreational opportunities, including hunting and fishing. Much of the land for the refuge would have to be acquired from willing sellers.

NRA-NYAG-00083787

**RESEARCH & INFORMATION – Josh Savani, Director**

**Introduction**

ILA Research & Information staff completed regular and recurring duties, including retrieving and distributing news articles and transcripts, reviewing and analyzing federal, state and local legislation, updating and creating issue fact sheets and other materials, responding to questions from NRA members and legislators, providing background information for media requests, posting relevant material on NRA-ILA's website, supplying vote and legislative progress information, serving as a clearinghouse for information disseminated by ILA, and monitoring activities of anti-gun politicians, activists, and groups.

**Federal Affairs Projects**

**Regulatory Comments –**

Members of the Research & Information Division monitored and analyzed Federal Register notices to determine if comments or other responses were warranted.
- Staff worked with the director of Conservation, Wildlife and Natural Resources to develop a regulatory definition of "shooting range" for purposes of newly-enacted federal laws

New Legislation – Staff assisted in the drafting and updating of federal legislation and prepared summaries, analyses, and background information on neutral or pro-gun subjects that included the following:
- Requiring states that issue concealed carry or firearm acquisition permits to do so on a "shall-issue" basis
- Increasing penalties for illegal interstate firearms trafficking
- Preempting state bans on semi-automatic firearms
- Easing the requirements and fees to obtain an FFL
- Amending the PLCAA to moot the Remington Arms case in Connecticut
- Reforming the rules governing interstate commerce in firearms
- Enacting more specific prohibitions on the straw purchase of firearms
- Creating tax incentives for businesses to sell "safe firearm storage devices," including safes and locks
- Creating a Militia Enrollment Program that would allow eligible persons to carry, transport, and acquire firearms interstate, notwithstanding contrary state and local laws
- Removing "short-barreled rifles" from regulation under the NFA

Staff also provided analyses and opposition talking points for anti-gun federal legislation, including bills that concerned the following subjects:
- Empowering the anti-gun CDC to research mass violence and how to predict its perpetrators, to intervene and prevent their plans, and to create standardized risk assessment tools

NRA-NYAG-00083788

- Lowering the threshold for when firearm sales trigger the legal requirement for an FFL
- Creating an online NICS portal and mobile phone app to allow private individuals to run background checks on firearm sales
- Encouraging states to empower courts to issue firearm seizure orders with insufficient due process
- Banning standard capacity firearm magazines and feeding devices
- Expanding categorical prohibitions on firearm possession and acquisition
- Banning popular and common semiautomatic firearms and the standard magazines with which they are equipped
- Incorporating non-politically motivated mass shootings, and the weapons used to commit them, into laws prohibiting "domestic terrorism"
- Banning private transfers of firearms
- Empowering anti-gun agencies like HHS and DOE to establish and provide grants to implement "best practices" for "behavioral intervention" and "violence risk assessment" in educational settings

Nominations – Staff monitored news of the president's staffing and nomination decisions and provided insights and background analyses on the Second Amendment records of candidates for various positions.
- Closely followed developments on possible changes to the composition on the U.S. Supreme Court and lower federal courts.
- Provided research and background information on Chuck Canterbury, President Trump's nominee for director of ATF.

Federal Affairs Projects – Staff provided extensive background research, talking points, and suggested questions for numerous gun control hearings that occurred in various committees of the U.S. House of Representatives.

**Case Law**

Division attorneys followed developments in case law and prepared summaries and articles detailing significant decisions. These included:
- *Remington Arms v. Soto* (U.S. Supreme Court denies certiorari in case in which the Connecticut Supreme Court held that the Protection of Lawful Commerce in Arms Act does not prevent survivors and representatives of Newtown murder victims from suing the manufacturer and distributors of the firearm used in the crimes for "unscrupulous" and "immoral" marketing under the Connecticut Unfair Trade Practices Act)
- *New York State Rifle and Pistol Association v. City of New York* (U.S. Supreme Court denies New York City's motion to dismiss case on mootness grounds and sets Dec. 2 argument date)

NRA-NYAG-00083789

- *City of Missoula v. Fox* (Montana Supreme Court unanimously holds that local ban on private firearm transfers violated the state's firearm preemption statute)
- *Anderson v. City of Pittsburgh* (Allegheny County Court of Common of Pleas grants summary judgment to plaintiffs who challenged the legality of gun control ordinances passed by Pittsburgh as violating the state's firearm preemption statute)

**Public Affairs Projects**

Staff members provided ongoing support to the Public Affairs Department in answering media questions, providing background information to reporters, and preparing statements, talking points, and op-eds in support of NRA positions and objectives.

Educational Events and Public Speaking

Staff members took on speaking engagements within their areas of expertise, including at the Firearms Law & The Second Amendment Symposium in Richmond, VA.

Magazine and Online Content

Staff members provided content for the NRA-ILA website and NRA official journals on an ongoing basis.

**Online News Service**

As a first order of business each morning, staff posted links to articles from newspapers, magazines and websites relevant to NRA's legislative and political mission. These links are maintained in a searchable database as long as they are current. State-specific articles are also cross-linked in the "Legislative Action" section of the ILA site. News links are also cross-posted to social networking websites such as Facebook; authors of stories report that links on the ILA site and Facebook page cause substantial increases in readership.

**Key Vote Database --** Staff maintained and updated ILA's congressional key vote database that allows ILA staff to research and create vote reports on members of the U.S. House and Senate. Improvements to the system continue.

**State and Local Projects --** Staff provided crime and accident data to State & Local staff in support of legislative efforts in various states. All state and national crime and accident tables were updated, and corresponding web pages were prepared for posting on the NRA-ILA website.

**Strategy Sessions --** Staff participated in strategy sessions to help formulate policy on a number of difficult issues, including state level "universal" background check initiatives and attempts by gun control groups to portray their agenda as tied to "women's issues" and "domestic violence." Suicide prevention has also emerged on the state and local scene, with requests for NRA involvement in a handful of states this session.

NRA-NYAG-00083790

**Legislative Analysis**

Staff members were focused on supporting ILA's State & Local Division with analysis and drafting support of legislative initiatives for all states in session for the year.

Based on requests from State & Local personnel, the legal staff prepared drafts for bills and amendments for pro-gun legislation for the upcoming and ongoing state legislative sessions.

**Legislative changes include** -- Legal staff drafted or reviewed numerous pro-gun bills and amendments. The highlights of positive legislative changes include:

**Right to Keep & Bear Arms**: A change to Iowa's state constitution to protect the right to keep and bear arms is progressing.

**Permitless Carry/Concealed Carry**: Permitless carry bills were drafted or reviewed in Iowa and Oklahoma. Other bills affecting carrying addressed weapons in courthouses (Iowa) and proposed teacher carry in the state of Alabama, and a Maine bill regarding "school drop-off" zones and gun possession. Delaware's regulations on firearms in state forests and state parks were invalidated in December following a court ruling; staff reviewed the proposed replacement regulations and prepared detailed comments for the public review process. Staff reviewed and provided comments on draft legislation proposing a new "lifetime" carry permit bill in Alabama. Further amendments were proposed to a draft Ohio bill authorizing permitless carry.

**Castle Doctrine/Stand Your Ground**: Amendments to state law regarding the justified use of force and eliminating a general duty to retreat were passed in Wyoming. A bill to bring Ohio law in line with that of other states regarding the burden of proof in defensive use of force cases, and other amendments, is pending in Ohio, as is a bill in Idaho. Bills also proposed amending Oklahoma's use of force law to include places of worship as special places and to expand the use of force protections.

**Other**: A bill would amend Ohio law to take ATF-approved non-NFA firearms out of the restrictions on short-barreled guns; changes were proposed to Delaware's Relief from Firearm Disabilities Board to update and make it more user-friendly, and proposed changes to Iowa's firearm auction/disposal and Iowa hunting regulations were reviewed and amended.

The Division's legal staff provided legal analysis of numerous anti-gun measures during the quarter:

**Repeal of Firearm Preemption**: Washington State rolled out a bill to repeal the state firearm preemption law.

**Carry Restrictions**: A Washington State bill, SB 6415, proposed a new crime of concealed carrying into another person's residence without "express permission."

NRA-NYAG-00083791

**Rate Increasing Devices and Assault Weapon Bans**: Staff identified significant problems in proposed bills that purported to outlaw "bump stock" devices in New Mexico, Delaware, Washington, Ohio, and South Carolina; Delaware introduced an assault weapons ban bill.

**Age Restrictions and Waiting Periods**: Numerous states have introduced bills to impose age restrictions on the acquisition and possession of rifles and shotguns. Staff provided research and legal support in opposing these restrictions. Waiting periods, a gun control measure that had been generally abandoned, has been introduced in a number of states despite the substantial evidence now available that waiting periods are ineffective at reducing crime.

**Storage Requirements**: A Washington State bill proposed imposing storage restrictions on firearms in any place, with civil liability for noncompliance. Other proposed laws that were reviewed or redrafted by staff that potentially affected gun rights and gun owners included two trespass laws bills in Idaho, an Iowa bill creating a new definition of "simulated firearm," an Iowa bill regarding powers of law enforcement regarding game taken illegally, proposed Iowa rules governing daycare providers and prohibiting firearms in child care facilities, and an Albuquerque, NM pawnshop ordinance.

**Background Checks**. Ohio had several bills and drafts to address expanded background checks (adding protective orders, warrants, mental health prohibitors); suggesting a new "seller's protection certificate" process bill run by the sheriffs and the department of public safety; and HB 354 (creating a new "weapons disability data portal" to be used for state background checks). Another bill was a package of gun proposals by Governor DeWine. HB 248, would exclude "antique firearms" from the existing definition of "firearm" in state law, to align state law with federal law. A bill on "street gun violence prevention" would have created new gun offenses and increased penalties for existing gun crimes.

**Justified Use of Force**. Staff analyzed a bill in Ohio to expand the "no duty to retreat" from homes and occupied vehicles to any place the person was lawfully allowed to be present in; other changes would clarify the justified use of force law in the state.

**Mental Health and "Red Flag" Bills**. Draft bills were reviewed for New Mexico ("extreme risk firearm protection order act") and Ohio ("safety protection orders"). Other Ohio drafts proposed amendments to the state mental health and involuntary treatment/commitment law, linked to the state firearms disabilities language. In New York State, bill A1589 would impose a mandatory mental health evaluation precondition to firearm acquisition.

**Preemption and local laws**. Staff commented on problems with proposed ordinances in Albuquerque, NM, on firearm storage (O-19-82), imposing a gun ban in city buildings and other facilities (O-19-83), and creating new crimes (O-19-84).

**Relief from Firearm Disabilities**. Staff analyzed and suggested changes to a NICS Improvement Act-based bill in Wyoming, to create a relief from firearm disabilities process and to increase reporting of state records related to prohibited persons into NICS.

NRA-NYAG-00083792

**Ballot Initiatives**. Staff researched and submitted formal comments to the Montana Attorney General regarding the ballot statement for legislative initiative LR-130, on state preemption. Staff also reviewed and commented on a proposed Ohio initiative petition for "universal" background checks, regulating almost all private sales, loans and transfers of firearms. Staff assisted State & Local in filing comments on an Oregon ballot initiative that would institute strict storage requirements.

## Grassroots Projects

Staff continues to support the Grassroots Division in the production of the weekly Grassroots Alert, disseminated via email to 500K+ members and supporters. In an average week, R&I staff contribute 4-7 items, ranging from 500-2000 words each.

Research & Information staff members are a primary resource for the Grassroots Division in responding to questions from NRA members and the general public, and they assisted Grassroots daily in this regard. Typical inquires asked about federal gun laws, policies of corporations and organizations, and recently, an unfortunately high volume of conspiracy theories disseminated online.

Staff created and regularly update numerous NRA-ILA Research & Information Division Fact Sheets on the most common firearms legislation topics for distribution by Grassroots staff and for posting on the NRA-ILA website. The fact sheets are one of NRA-ILA's primary means of providing detailed information on firearms issues to members, students, the media and others. Information in the fact sheets is also used by Grassroots staff in responding (via telephone, U.S. mail and e-mail) to members and the general public, and by Public Affairs staff in their contacts with the press.

Current versions of the fact sheets are electronically housed in the computer directory to which all ILA (and some NRA non-ILA) staff has access. These can be immediately accessed for use during phone conversations, and sections of the sheets can be cut and pasted for use in letters or other written communications. They are also routinely used by Grassroots Coordinators for distribution at grassroots seminars around the country.

## Statistical and Empirical Research Projects

Staff provided statistical research information on a wide range of topics to assist other divisions with legislative drafting, message development and legislator and member education. This includes crime statistics, as well as responses to various studies promulgated by anti-gun groups and politicians.

Staff provided multiple divisions data on firearm manufacturing, export, and importation, and firearm-related background check numbers and trends.

NRA-NYAG-00083793

**Research Insights**

Staff continued expanding ILA research initiatives to analyze member and supporter intensity on political and legislative issues, especially regarding our ongoing fundraising activities. Several online surveys have been conducted, primarily through ILA's website portals, to uncover priorities and level of support for various legislative initiatives by our members and supporters.

Staff analyzed academic research, public opinion surveys, and statistical evidence in support of policy goals. Analyses complemented and informed talking points, fact sheets, testimony, and other material. Staff expanded the crime and injury statistics database and developed data visualization tools.

**Data Management**

Staff continued development of a large-scale effort to create and update charts and compilations of laws to assist NRA personnel in strategic planning and to reduce response time to inquiries. The goal is to provide a comprehensive, searchable database for research, strategic planning, and inquiries on firearm laws across the United States (for example, on how many states require fingerprints as part of a concealed carry permit application). These state law surveys may also be a valuable resource for NRA members looking for specific information. Once completed, this resource will provide improved accuracy and response time for legal research inquires and will allow personnel to better plan legislative priorities. The database will also prove invaluable in assisting staff in carrying out the division's new responsibility of maintaining state law information on ILA's website.

**Library Activities**

The division produces ILA's Library Pack to provide Second Amendment and firearm news to NRA staff, board members and consultants. The Library Pack includes articles on federal, state, and local legislation and court cases; firearms control, right-to-carry, hunting, shooting sports, international and self-defense issues; armed citizen incidents; editorials; and commentaries.

The primary source of data retrieval is Meltwater powered by Dow Jones/Factiva, through which the news content is bonded for copyright compliance and redistribution.

The Library Pack is a daily compilation of articles on Second Amendment and firearm news from the past 24-hour news cycle. Depending on the publication, there may be a time lag of one to two days for some articles.

Stories of national importance will generally have articles from several publications, to reflect various reporting styles and points of view. These publications include the *Washington Times*, *Washington Post*, *New York Times*, *Wall Street Journal*, Associated Press, and primary news networks. For most regional stories, one article will be selected. This will be the best article available with copyright compliance. Not all regional sources are represented, so as not to be redundant.

201

NRA-NYAG-00083794

There is at least one posting every business day. Early postings are grouped by a topic. Occasionally, there are postings later during the day. There also may be postings on weekends and holidays.

The division's library staff collects and archives significant materials for inclusion in the ILA Library. These include magazine and newspaper articles, files from staff members with materials from legislative and regulatory efforts, and audio/visual media. Library staff also acquired new books and materials relevant to ILA's mission.

## OFFICE OF LITIGATION COUNSEL - Christopher A. Conte, Director

### Federal Legislation, Regulation & Enforcement

### US FWS

#### *Hunter Education Matching Funds*

The Pittman Robertson Act collects taxes from firearm and ammunition sales and distributes the money to the states for conservation and hunter-education programs. The states, however, must come up with 25% of the program cost as their "match." The match can come from third-party in-kind contributions.

The NRA developed a new online hunter-education program. We give the course free of charge to everyone—even if they have no affiliation with the NRA. Because it's free, we asked the U.S. Fish and Wildlife Service if the course would count as an in-kind contribution under the Act. We initially got it approved but were not happy with the valuation. Ultimately, we were able to persuade the Service to value the course at its fair market value—what a willing buyer would pay for the course on the open market—about $25-30 per person.

Now when states approve the course, they can claim the fair market value of the course multiplied by however many people in the state took the course during the year as their match. In other words, the states do not have to come up with those funds when they apply for their Pittman Robertson funds. This was a major piece of work by NRA for both hunters and state Fish and Wildlife agencies.

### Executive Administration - Operation Chokepoint

Although formally stopped by the current administration, commercial businesses have escalated gross discrimination against gun owners and firearm related businesses under pressure from organized protests including conservative business interests. To date, the Office of Litigation Counsel has continued to investigate complaints from various sources. Instances of discriminatory action and their effects are investigated, documented, and turned over to the Research and Federal Affairs Divisions.

NRA-NYAG-00083795

**ATF**

In 2019, the Office of Litigation Counsel continued to monitor cases involving ATF. The Office continued working to assist a 07 FFL to obtain a letter of credit after being turned down by several lenders specifically because of his involvement with the gun industry.

**Law Enforcement Officers Safety Act (LEOSA)**

The Office of Litigation Counsel continued to work closely with NRA's Law Enforcement Division (LED), NRA External Affairs Manager James Baranowski, and law enforcement. We also continued direct law enforcement outreach work with organizations such as ILEETA.

**DoD**

**Loss of Second Amendment Rights by Veterans through the Veterans Administration**

The Office of Litigation Counsel continued to receive and verify cases of Veterans Administration abuse of guardianship proceedings to strip veterans of their gun rights. This office provided counsel in the past in cases where the veteran's claims are considered uniquely meritorious and assisted veterans as best we could, even where their case does not meet our criteria for underwriting.

The Office of Litigation Counsel continued to advise both Federal Affairs and the Research Division on this issue. With pro bono assistance from one of our regular outside firms, the Office of Litigation Counsel prepared a guideline to assist counsel representing veterans before the VA on this issue. We arranged to have the material taught at the 2019 Firearm Law Seminar in Indianapolis and will look for other opportunities to allow the architect of the guide to address friendly counsel. This particular counsel has made himself available to veterans and their counsel throughout 2019.

**Federal Litigation** (By Federal Circuit)

**United States Supreme Court**

*New York State Rifle Pistol Association, et. al, v. New York City* (Supreme Court of the United States)

This long-running case challenges New York City's (NYC) egregious law prohibiting travel with a gun, under a NYC premises permit, outside of the five boroughs without permission from the NYPD (which has never been granted). Following a loss at the District level the case was appealed to the Second Circuit, where the loss was affirmed in February 2018. Certiorari was granted on January 22, 2019, marking the first true Second Amendment case to be accepted by the Court since *MacDonald v. Chicago*. Despite a significant last-minute effort by both the city and state of New York to moot the case, the Court proceeded to hold oral arguments on December 2, 2019.

NRA-NYAG-00083796

**_Rogers v. Grewal_** (Supreme Court of the United States)

This suit challenges New Jersey's concealed-carry restrictions. It was filed on February 2018, in coordination with ANJRPC (NRA State Association). New Jersey requires those wishing to carry firearms outside the home to obtain a license that it will issue only upon a showing of "justifiable need." It is nearly impossible to obtain a handgun for home defense without that license. While the Third Circuit's decision in *Drake v. Filko* upheld this requirement, this litigation is designed to prompt reconsideration of that opinion in light of the DC Circuit's decision in *Grace v. DC*.

The district court dismissed the case in June 2018, and the Third Circuit summarily affirmed in September 2018. The Plaintiffs petitioned the Supreme Court for certiorari on December 20, 2018. The petition was considered at the Court's May 23, 2019 conference. It has not acted on the petition since that date. It appears to be one of several cases holding pending *New York State Rifle & Pistol Ass'n v. City of New York* (NYSRPA v. NYC above).

**_Gould v. Lipson_** (Supreme Court of the United States)

This challenge to Massachusetts' restriction on the carrying of firearms in public was filed in February 2016. Massachusetts requires a license to carry firearms in public, which may be granted only upon demonstration of a "good reason," and delegates to local licensing authorities the power to require the showing of a heightened need for self-defense before issuance of a license. The parties filed cross-motions for summary judgment in 2017. The District Court granted the defendant's summary judgment motion in December 2017, and the plaintiffs appealed to the First Circuit. In November 2018, the panel affirmed the district court's decision. Counsel for Plaintiffs filed a cert. petition in the Supreme Court in April 2019, and the Court considered that petition at its June 6, 2019 conference. It has not acted on the petition since. It appears to be holding the case pending its decision in *NYSRPA v. NYC* (along with a brace of other cases).

**_Malpasso v. Pallozzi_** (Supreme Court of the United States)

This challenge to Maryland's concealed-carry restrictions was filed in April 2018. Maryland requires those wishing to carry firearms outside the home to obtain a license to do so but only upon a showing of a "good and substantial reason." While the Fourth Circuit's decision in *Woolard v. Gallagher* upheld this requirement, this litigation is designed to prompt reconsideration of that decision in light of the DC Circuit's decision in *Grace*. Maryland moved to dismiss in June 2018, and the Plaintiffs filed a response in June, 2018. NRA filed an amicus brief supporting the plaintiffs in July 2018. The district court granted Defendants' motion and dismissed the case in October 2018. The Plaintiffs appealed to the Fourth Circuit, which affirmed in a short, unpublished per curiam opinion on April 29, 2019. A petition for certiorari was filed in the Supreme Court on September 26, 2019. NRA filed an amicus brief in support on November 15, 2019. There is no further action as of this report.

NRA-NYAG-00083797

### *Worman, et. al, v. Baker, et. al.* (Supreme Court of the United States)

On April 6, 2018, the United States District Court for the District of Massachusetts upheld Massachusetts' ban on so-called "assault weapons" and magazines with a capacity of more than ten rounds, rejecting Second and Fourteenth Amendment challenges by law-abiding Massachusetts citizens. The district court adopted the test set out by the Fourth Circuit in the *Kolbe* case, ruling that the firearms and magazines at issue are not within the scope of the Second Amendment. The district court also held that the phrase "copies or duplicates" was not unconstitutionally vague as used in Massachusetts' assault-weapons ban, and dismissed without deciding Plaintiffs' claim that the Massachusetts' Attorney General's 2016 Notice of Enforcement was not ripe for consideration.

Plaintiffs appealed to the First Circuit, and on January 9, 2019, a unanimous panel, including retired U.S. Supreme Court Justice David Souter (a dissenting vote in *Heller*), affirmed the judgment of the district court on different grounds. Rather than applying *Kolbe*, the Court of Appeals applied a two-part approach, assuming that the challenged laws burden the Second Amendment right and applied intermediate scrutiny to uphold the ban. A petition for cert was filed September 23, 2019, and was supported by a number of amici briefs including one filed on behalf of NRA. Defendants' response is due December 9, 2019, and the case will be sent to conference December 23, 2019.

### *Mance v. Barr (Formerly Whitaker)* (Supreme Court of the United States)

This case was brought by SAF, thorough Alan Gura, to challenge once again the federal prohibition on direct interstate handgun sales from an FFL licensed in one state to a citizen of another state. NRA filed an amicus brief in support of the plaintiffs. On January 19, 2018, a panel of the Fifth Circuit ruled in favor of the government, and a petition for cert was filed with the US Supreme Court in November 2018. The case was distributed for conference on March 29, 2019. Like many cases listed here, it is being held pending the Court's consideration of *NYSRPA v. NYC*.

### *Soto, et. al. v. Bushmaster, et. al.* (Supreme Court of the United States)

A tiny portion of the families impacted by the tragedy at Sandy Hook elementary filed suit against the estate of the dead shooter and those in the chain of distribution for the gun he used. Initially pursuing a theory that selling any AR-15 platform gun to the public was per se negligent along with marketing negligence claims the suit was dismissed by the trial court applying traditional tort law. The State Supreme Court took the case directly and—in open defiance of fact and law—reversed the lower-court, finding the marketing of some guns manufactured by the defendant gun maker created enough potential liability to allow the case to proceed. NRA filed an amicus in the case when it was before the Connecticut Supreme Court and worked with other groups to file amici as well.

Once counsel for Bushmaster (Remington) determined to take the ruling to the US Supreme Court, they reached out to the Office of Litigation Counsel. We assisted in the preparation of the petition and renewed efforts to bring in other interested parties for amicus support. The petition was filed August 1, 2019. The Court denied certiorari on

NRA-NYAG-00083798

November 12, 2019. Counsel for Remington is now working the case back in state trial court. The plaintiffs have a very high burden to meet, but the costs inflicted on the defendants by the failure of the courts to assert PLCAA and common law tort standards is significant.

**DC Circuit**

**_2017 Elephant Importation litigation_**, (USDC DC)

**_FOA v. Bernhardt, et. al,_** and **_CBD, et. al, v. Bernhardt_** (Formerly Zinke) (USCA DC)

In November 2017, the Fish and Wildlife Service issued findings that would allow hunters to import elephant and lion trophies from Zambia and Zimbabwe. Two groups of plaintiffs—one lead by CBD and HSUS, the other lead by Friends of Animals—brought suit challenging these findings. NRA/SCI were granted intervention in both cases.

In light of NRA/SCI's win in the D.C. Circuit on our 2014 & 2015 rulemaking claims for the previous administration's trophy-importation ban, the Fish and Wildlife Service withdrew those findings and announced that it would make all future findings while processing trophy-import-permit applications on a case-by-case basis. Even though the findings were withdrawn, the Plaintiffs refused to drop those claims. They amended their complaints, bringing additional claims against the Service's case-by-case approach. NRA/SCI DOJ filed motions to dismiss these claims as moot, for lack of standing, and for failure to state a claim.

On March 29th, Judge Lamberth issued an order dismissing all eight of CBD and HSUS's claims, primarily for lack of standing and mootness. Then, on April 9th, Judge Lamberth issued a similar opinion dismissing all five of the claims brought by Friends of Animals, again, primarily on jurisdictional grounds. Both groups of Plaintiffs filed appeals. The Friends of Animals case is fully briefed, and the CBD case will be Fully briefed in January.

**_Duberry, et. al, v. District of Columbia_** (USCA DC)

This case found retired officers actually have a right to sue for baseless denial of LEOSA certification under federal law (18 USC 926 B&C). The officers otherwise eligible under federal law cannot be refused proper credentials. Plaintiffs initially lost on a motion to dismiss but on appeal, and with some help from the Office of Litigation Counsel, the US Court of Appeals vacated and remanded the matter for trial, stating that while they reversed on the issue of a right to sue, there were further issues that needed to be resolved by the lower court. On Remand, the officers won and D.C. appealed. The Office of Litigation Counsel provided resources and expert assistance to allow law enforcement groups to file an amicus brief in support of the officers. The brief was filed January 19, 2019, and following argument on May 21, 2019, the Court of Appeals ruled in favor of the officers again. The time for DC to pursue further appeal or petition for cert ran without further action. This case is revolutionary: it creates a direct cause of action under LEOSA that no court before had been willing to recognize. Because this ruling creates a circuit split, it will likely be raised in a future petition for cert in another circuit.

NRA-NYAG-00083799

### *Reyes v. Sessions* (USDC DC)

This is a case brought on behalf of an individual who was convicted of committing federal securities offenses. As a result of the convictions, federal law bars him from possessing firearms unless the convictions "pertain[ ] to antitrust violations, unfair trade practices, restraints of trade, or other similar offenses relating to the regulation of business practices." 18 U.S.C. § 921(a)(20)(A). The case argues that he falls within this statutory exception to the bar on felons possessing firearms and, if he does not, that the application of that bar violates the Second Amendment and the Equal Protection Clause as applied to individuals like Reyes, whose offenses provide no indicia of a propensity to engage in violence or misuse firearms. The District Court, Judge John Bates, entered judgment in favor of Plaintiff on November 21, 2018, accepting the argument that Section 921(a)(20)(A) exempts Plaintiff from the disarmament statute. The Government opted not to appeal that decision, and the judgment became final on February 22, 2019.

**First Circuit**

### *Pullman Arms, Inc., et. al, v. Healy (MA)* (USDC MA)

This case, filed in September 2016 by NSSF, challenges the Massachusetts AG's reinterpretation of Massachusetts' long-standing gun ban (same as *Worman* above but under a different legal theory). In November 2016, the AG filed a motion to dismiss. The Office of Litigation Counsel assisted plaintiffs throughout the suit. On March 14, 2018, the Court denied the motion to dismiss, and the case proceeded to discovery. The AG filed a notice of appeal to the First Circuit on the Court's denial of the jurisdictional grounds of her motion to dismiss. The First Circuit dismissed the appeal after the Plaintiffs represented they were not pursuing any state law claims. Meanwhile an NSSF backed complaint was filed in state court alleging only state law claims against the AG's notice of enforcement. On remand from the First Circuit in *Pullman*, the AG sought to stay the federal *Pullman* suit pending the outcome of the state case, notwithstanding the absence of any state law claims in *Pullman*. On March 10, 2019, the court in *Pullman* denied the stay request, allowing the federal *Pullman* suit to proceed to discovery. District Court Judge Timothy Hillman entered an amended scheduling order in Pullman on October 11, 2019. Expert discovery will end December 5, 2019, and dispositive motions are due January 13, 2020.

**Second Circuit**

### *New York State Rifle & Pistol Association v. Beach* (USCA Second Circuit)

This challenge to New York's concealed carry restrictions was filed on January 31, 2018. New York law requires a showing of "proper cause." While the Second Circuit's decision in *Kachalsky v. County of Westchester* is binding precedent upholding this requirement, this litigation was intended to prompt reconsideration of that opinion in light of the DC Circuit's decision in *Grace*. The district court dismissed the case on December 17, 2018. The plaintiffs appealed to the Second Circuit, and the appellate briefing was completed on May 8, 2019. At the conclusion of the briefing, New York suggested that the court should hold the appeal in abeyance

207

until the Supreme Court's disposition of *New York State Rifle & Pistol Ass'n v. City of New York*. The Second Circuit set the case for oral argument, but entered an order on September 28, 2019, adjourning argument, staying the case, and instructing the Appellants to inform the Court as to the outcome in *NYSRPA* within seven days of its being decided.

## Third Circuit

### *Doe, et al. v. Wolf* (USCA Third Circuit)

This case challenges Pennsylvania's permanent deprivation of firearms rights under Section 6105 of the Pennsylvania Uniform Firearms Act for anyone temporarily committed. Temporary commitment occurs without any due process. In November 2016, Plaintiffs filed a Complaint arguing that the deprivation of their Second Amendment rights, as a result of their observation commitments, violates the Due Process clause of the Fourteenth Amendment.

Discovery revealed the Pennsylvania State Police began reporting Section 302 and other mental health records to NICS in 2013, without specific legal authority. As a result, state restoration procedures cannot restore firearms rights; they cannot undo the federal disqualification triggered by state action. Cross motions for summary judgment were filed and the Court granted summary judgment to the Defendant in early 2019. Plaintiffs filed a motion for reconsideration based on material error and inconsistencies in the Court's decision. The Defendant did not oppose the motion. The district court denied the motion for reconsideration on April 8, 2019.

Plaintiffs noted their appeal to the Third Circuit on April 23, 2019, and filed their opening brief on June 26, 2019. Plaintiffs demonstrated PUFA Section 6105(c)(4) is an established state procedure that deprives everyone certified as committable (but not committed) of their Second Amendment rights and the Constitution requires the Commonwealth to provide adequate procedural protections before the deprivation occurs. Defendants filed their brief on August 26, 2019, along with a motion to expand the record on appeal to include the ATF's certification of Pennsylvania's restoration process as enough to also restore rights under federal law. Plaintiffs filed their reply brief and opposition to the motion on September 16, 2019. The Third Circuit referred the motion to the merits panel and tentatively scheduled argument for December 9, 2019.

### *ANJRPC, et, al. v. Grewell* (USDC NJ)

Shortly after taking office, New Jersey Governor Murphy backed and the legislature passed a complete ban on the possession of any firearm ammunition magazines capable of holding over ten (10) rounds. On June 13, 2018, suit was filed on behalf of ANJRPC and several New Jersey residents challenging the new magazine ban. The suit raises claims under the Second Amendment, Takings Clause, and Equal Protection Clause. Plaintiffs moved for a preliminary injunction on June 21, 2018. At the PI hearing, the judge announced that he wanted to hear live testimony on the motion and scheduled an evidentiary hearing from August 13, 16, and 17, 2018. Following completion of the evidentiary hearing, post-hearing briefing, and oral argument, the District Court denied the PI motion on September 28, 2018.

NRA-NYAG-00083801

Plaintiffs appealed to the U.S. Court of Appeals for the Third Circuit, moved for an injunction pending appeal, and moved for expedited briefing. The Third Circuit granted the motion for expedited briefing but denied the motion for injunction pending appeal without prejudice. Oral argument was held November 14, 2018, and, due to technical problems, again on November 20, 2018. On December 5, 2018 the Third Circuit panel affirmed the District Court over the dissent of Judge Bibas. Plaintiffs petitioned for rehearing en banc. That request was denied on January 9, 2019. Defendants moved for summary judgment on remand. Plaintiffs cross-moved for a stay of all proceedings pending the Supreme Court's decision in *NYSRPA v. NYC*.

The District Court granted Defendants' motions for summary judgment on July 29, 2019, holding that the Third Circuit's decision affirming the denial of a preliminary injunction was "precedential" and "resolve[d] all legal issues in this case." The district court entered its judgment on August 19, 2019, and Plaintiffs appealed. On October 22, 2019, Defendants moved the court for summary action based on the prior panel's substantive decision and requested a 30-day stay in the briefing schedule pending the court's resolution of their motion. On November 8, 2019, Plaintiffs responded to Defendants' motion and moved the court to stay the case pending the Supreme Court's decision in *New York State Rifle & Pistol Association, Inc. v. City of New York*. The court referred the motion for summary action and Plaintiffs' opposition to a motions panel and stayed the case pending the resolution of that motion. Plaintiffs' opening brief is now due within 40 days of the order denying Defendants' motion or referring it to a merits panel.

**Fourth Circuit**

### *Maryland Shall Issue, Inc., et al. v. Hogan, et al.* (USCA Fourth Circuit)

Beginning in October 2013, Maryland required all handgun purchasers to obtain a Handgun Qualification License, which requires a half-day formal class with live fire at a range, electronic fingerprinting, a background check, and payment of fees and other costs that can total more than $300.00, in addition to the same background check and additional fees imposed upon any subsequent handgun purchase. The Office of Litigation is supporting Plaintiffs' challenge to the Handgun Qualification license requirement. The State filed a motion to dismiss. Following a hearing on the motion on August 7, 2017, Judge Marvin Garbis held Plaintiffs had stated plausible claims for relief under the Second and Fourteenth Amendments and denied the State's motion to dismiss. Judge Garbis suddenly retired for health reasons in June 2018 and the case has been assigned to Judge Ellen Hollander, an Obama appointee.

Following discovery, the parties filed cross-motions for summary judgment. On April 1, 2019, Judge Hollander granted the State's motion for summary judgment and denyied Plaintiffs' because she held that no Plaintiff had standing. Plaintiffs appealed to the Fourth Circuit, asking the court to reverse and remand the case to be decided on its merits. The appeal is fully briefed, and we are now waiting for the court to schedule oral argument.

NRA-NYAG-00083802

**Ninth Circuit**

### *Duncan v. Becerra* (USDC SD CA)

This suit was filed in May 2017, in response to a ban on the possession of magazines over ten rounds in cooperation with the CRPA Foundation through the Office of Litigation Counsel under the direction of the Office of the Executive Director of ILA. It is also supported in part by the NRA Civil Rights Defense Fund. The lawsuit challenges California's ban on over-ten-round magazines as a violation of the Second Amendment, Due Process Clause, and Takings Clause of the United States Constitution. In March 2019, the district court granted Plaintiffs' motion for summary judgment, declaring all of California's restrictions on magazines over ten rounds unconstitutional—*including its restrictions against acquisition.* As a result of this ruling, millions of magazines over ten rounds were lawfully purchased in California before the district court stayed its judgment pending appeal. The State has appealed, and the case is now fully briefed before the Ninth Circuit. Oral argument has yet to be scheduled.

### *Rupp v. Becerra* (USDC CD CA)

Filed April 2017, this suit is in response to legislation redefining California's "assault weapon" restrictions to include certain firearms that were previously allowed to be equipped with "bullet buttons." The lawsuit challenges California's entire "assault weapon" regulatory scheme as a violation of the Second Amendment. On July 22, 2019, the district court granted California's motion for summary judgment. Plaintiffs appealed to the Ninth Circuit, and their opening brief is due December 5, 2019. The suit was filed in cooperation with the CRPA through the Office of Litigation Counsel under the direction of the Office of the Executive Director of ILA. It is also supported in part by the NRA Civil Rights Defense Fund.

### *Center for Biological Diversity, et al., v. Bernhardt, et al., (formerly Zinke)* (USDC AK)

Towards the end of the Obama administration, the U.S. Fish and Wildlife Service promulgated a rule that limited predator hunting on National Wildlife Refuges in Alaska, which was otherwise authorized by the state of Alaska. *See* 81 Fed. Reg. 52248 (Aug. 5, 2016). Then Congress passed H.J. Res. 69, which nullified the rule under the Congressional Review Act. President Trump signed Pub. L. No. 115-20 (which was the final version of H.J. Res. 69) on April 3, 2017. CBD filed suit alleging that (1) the revocation was unconstitutional under the separation-of-powers doctrine, and (2) it was an ultra vires (unauthorized) revocation since a subsequent Congress passed the resolution revoking the final rule. The NRA intervened in this case with Safari Club International. The federal defendants unsuccessfully opposed our intervention—even though we were intervening in support of them. We filed Rule 12 Motions last year. And on May 9, 2018, the district court dismissed the case and upheld the constitutionality of Congress's revocation of the Service's rule limiting hunting. CBD appealed the case to the Ninth Circuit. The case was argued on August 5th; we are awaiting a decision from the court.

NRA-NYAG-00083803

**_Six Grizzly Bear Cases,_** (USCA Ninth Circuit)

The U.S. Fish and Wildlife Service promulgated a final rule removing Endangered Species Act protections from grizzly bears in the Greater Yellowstone Ecosystem (Idaho, Montana, and Wyoming). Six separate groups of plaintiffs filed lawsuits challenging this decision: _The Crow Tribe v. U.S._, _CBD v. Zinke_, _HSUS v. U.S. Fish and Wildlife Service_, _Alliance for the Wild Rockies v. Zinke_, _WildEarth Guardians v Zinke_, and _Aland v. Department of Interior_. There are 36 claims before the court. NRA and Safari Club International were granted intervention in all six cases.

On August 30, 2018, the District Court heard argument from all parties, including NRA. Immediately following the close of argument, the Plaintiffs filed for an emergency TRO, which the trial judge granted. And on September 24, 2018, the court granted the plaintiffs partial summary judgment. It adopted the DC Circuit's holdings in the Western Great Lakes Gray Wolf case, and found that the Service did not conduct a thorough enough analysis of its decision to delist the wolves. All parties appealed. Briefing was recently concluded. The Ninth Circuit Clerk indicated that it would not be argued until 2020.

**_Center for Biological Diversity, et al., v. U.S. Forest Service,_** (USDC AZ)

CBD filed a complaint against the U.S. Forest Service under the Recourse Conservation and Recovery Act (RCRA) in the U.S. District Court for the District of Arizona on September 5th 2012. CBD claimed that by allowing hunting with lead ammunition in the Kaibab National Forest, the Forest Service is contributing to the disposal of solid or hazardous waste that may present an imminent and substantial endangerment to the environment, most notably to the experimental California condor population. CBD sought to enjoin the Forest Service from allowing any further use of lead ammunition in the Kaibab National Forest. The NRA moved to intervene in the District Court with Safari Club International. On July 2, 2013, the District Court sua sponte dismissed CBD's complaint on standing, and dismissed our motion to intervene as moot. CBD appealed the denial to the 9th Circuit where NRA/SCI submitted an amicus brief. The case sat idle until the court reversed the district court's ruling on January 12, 2016.

On remand, NRA/SCI successfully intervened in the case and completed Rule 12 motions in October, 2016. On March 15, 2017, the court dismissed the sua sponte, finding that the relief CBD was requesting amounted to an advisory opinion. CBD appealed this to the Ninth Circuit, and the case was reversed again.

Now we are back to the trial court, where the court will finally have to get to the merits of the Rule 12 motions after seven years. NRA/SCI refiled their motion to dismiss on November 12, 2020.

**_Rhode v. Becerra_** (USDC SD CA)

Filed April 26, 2018, in response to new ammunition-sales laws, including requirements that all sales be conducted via face-to-face transactions, all ammunition sales be recorded with DOJ, and purchasers undergo a background check. Olympian Kim Rhode is the named plaintiff,

NRA-NYAG-00083804

along with several individuals and retail ammunition businesses. California brought a motion to dismiss Plaintiffs' Commerce Clause, Equal Protection, and federal preemption claims; but not the Second Amendment claim. On July 22, 2019, due to reported problems with the background check system, Plaintiffs filed a preliminary injunction motion, resulting in the State producing evidence showing 20% of purchasers are rejected ammunition merely because their records were not to the State's liking and the majority of them were unable to acquire ammunition within two months. As a result, Plaintiffs filed a supplemental brief on October 29, 2019, to address this evidence. The parties have since filed a joint status report requesting that all discovery deadlines be postponed until a ruling on the preliminary injunction motion and that the court rule without holding an evidentiary hearing after allowing the State an opportunity to respond to Plaintiffs' supplemental brief. A response from the court to those requests is expected any day.

### *Flanagan v. Becerra* (Ninth Circuit Court of Appeals)

Filed in August 2016, in response to the Ninth Circuit's en banc decision in *Peruta v. California*, this case seeks to force the court to decide whether California's entire regulatory scheme prohibiting both open and concealed carry violates the Second Amendment. In May 2018, the trial judge granted the State's motion for summary judgment. Plaintiffs appealed the case to the Ninth Circuit. California petitioned to have the case heard initially by an 11-judge en banc panel along with the *Young v. Hawaii* lawsuit, but the court denied that petition on February 7, 2019. The court also stayed the *Young* case pending the outcome of the Supreme Court's decision in *NYSRPA v. City of New York* (see above). On July 30th 2019, the Ninth Circuit also stayed further proceedings in this case due to *NYSRPA*.

### *Mitchell, et. al v. Atkins, et. al* (USDC WD WA) (Previously reported as NRA & SAF v. Washington)

Immediately following passage of the Washington State antigun initiative (I-1638) NRA filed suit jointly with SAF and several local activists on November 15, 2018, against certain aspects of the initiative deemed potentially challengeable. Among other things the law bans sales of any semiautomatic rifle to a person between 18 and 21 years old, and a ban on sales of any semiautomatic rifle to a non-resident of the state.

To date plaintiffs' counsel has succeeded in defeating motions to dismiss based on lack of standing, lack of harm, and that the interstate commerce clause does not protect Washington dealers from Washington laws that burden them. Counsel for plaintiffs continue to attempt to engage in discovery with the state and intervenors. The local law enforcement officials have stipulated that they have no discoverable information and we have therefore withdrawn all discovery on them. The State and intervenor have sought to block discovery, contending that no fact discovery is permitted in constitutional challenges.

### *Livingston v. Ballard* (USDC HI)

This case was filed on March 29, 2019, challenging Hawaii's extreme requirement that a carry license can only be issued in "urgent" or "exceptional" instances as a violation of the Second Amendment. On June 10, 2019, the district court granted Hawaii's motion to stay the

NRA-NYAG-00083805

case pending the outcome of an en banc decision in *Young v. Hawaii* (which has also been stayed pending a decision in the *NYSRPA v. City of New York* case).

### *B&L Productions v. 22nd District Agricultural Association* (USDC SD CA)

This case was filed on January 21, 2019, challenging the Board of the 22nd Agricultural District's decision to prohibit gun shows at the Del Mar Fairgrounds as a violation of the First Amendment and Equal Protection Clause. Following a hearing on June 17, 2019, the district court denied Del Mar's motion to dismiss the case and granted a preliminary injunction in favor of Plaintiffs. As a result of this decision, the Ventura County Fairgrounds has also abandoned its plans to prohibit gun shows. In September, the court ordered parties to engage in settlement negotiations and issued a deadline to file motions for summary judgment by May 8, 2020.

### *NRA v. City of Los Angeles* (USDC CD CA)

This case was filed on April 24, 2019, challenging the City of Los Angeles' adoption of an ordinance requiring all current and prospective City contractors to disclose any "sponsorship" of or "contract" with the National Rifle Association of America as a violation of the First Amendment and Equal Protection Clause. Plaintiffs filed a motion for preliminary injunction, which the court heard on August 12, 2019. The motion is still under submission and the court has not indicated when it might rule, but has until January 6, 2020 to do so under the rules.

**Eleventh Circuit**

### *NRA v. Moody* (USCA Eleventh Circuit/USDC NDFL)

This lawsuit challenges Florida's ban on the purchase of firearms by adults between the ages of 18 and 21. The State previously banned these adults from purchasing handguns, but it recently extended this ban to encompass long guns. Plaintiff argues that this ban violates both the Second Amendment and the Equal Protection Clause of the Fourteenth Amendment. The complaint was filed on March 9, 2018. On April 26, 2018, NRA moved for leave to amend its complaint to add a named individual plaintiff, allegations concerning another named individual harmed by the ban, and additional named defendants. Plaintiff simultaneously moved for leave to allow the named individuals to participate under pseudonyms. The State opposed this request, and on May 13, 2018, the district court issued an order denying the request to proceed anonymously. Plaintiff and the named individuals appealed that interlocutory order to the Eleventh Circuit. The Eleventh Circuit initially issued a jurisdictional question querying whether it had jurisdiction to entertain the appeal. Both parties agreed that jurisdiction exists, and on July 16, 2018, the court noted probable jurisdiction. Oral argument was set for December 10, 2019, but the Plaintiffs and the Florida Attorney General's Office agreed to an alternative and dismissed the appeal: Plaintiffs will amend the complaint by consent, proceed without Doe plaintiffs, and move the case forward on the merits in the district court.

NRA-NYAG-00083806

**State Legislation**

In 2019, the Office of Litigation Counsel continues to assist the Research Division with legislation through review and comment on bills on an array of gun legislation where it specifically intersects with litigation issues. Frequently cases this office becomes involved in or investigates provide insights for needed changes to existing laws and entirely new legislation not previously identified as required.

**State Litigation**

**California**

*Kirk v. City of Morgan Hill* (Santa Clara County Superior Court)

Filed on April 15, 2019, this case is a preemption challenge of a Morgan Hill ordinance. The ordinance imposes a duty to report the theft or loss of a firearm within forty-eight (48) hours. But Proposition 63, adopted by California voters in 2016, imposes a duty to report the theft or loss of a firearm within five (5) days. Cross motions for summary judgement are expected to be filed before year end.

*Villanueva v. Becerra* (California State Court 5th Appellate division)

This case was filed on September 8, 2017, in response to California's regulations regarding the registration of newly classified "assault weapons." The lawsuit challenges the regulations as a violation of California's Administrative Procedure Act, on the grounds that DOJ exceeded its regulatory authority and enacted regulations that directly conflict with California firearm laws. In June 2018, the trial judge denied Plaintiffs' request for a writ of mandate. Plaintiffs have appealed the case to California's 5th District Court of Appeal, and the case is now fully briefed and awaiting oral argument, which has yet to be scheduled. This case is supported by NRA through the Office of Litigation Counsel in cooperation with CRPA Foundation.

*Gentry v. Becerra* (California State Supreme Court Sacramento)

This case was first filed in 2013, to challenge aspects of California's DROS fee. After lengthy delays by the state, the court bifurcated the matter. Plaintiffs prevailed on the merits of their claims in the first phase of trial. But on March 4, 2019, the court issued an order finding the DROS fee to be legitimate, even though about 1/3 of the money collected from the fee is used to fund investigations of persons who may be illegally in possession of firearms. Plaintiffs contend this is contrary to clearly established law and have appealed to the California Court of Appeals. And in what appears to be a direct response to the Gentry lawsuit, California recently enacted AB 1669, which reduces the DROS fee to $1, but simultaneously imposes a new $31.19 fee that will be used to fund DOJ's general law enforcement activities related to firearms. Plaintiffs will be addressing this change in their opening appellate brief.

NRA-NYAG-00083807

***Parker v. State of California*** (California State Court 4th Appellate division)

This suit was originally filed under direction of the Office of Litigation Counsel on behalf of the Office of ILA Executive challenging as unconstitutionally vague California's restrictions on "handgun ammunition" sales. Plaintiffs prevailed in the trial court and on appeal, but the California Supreme Court dismissed the case as moot due to the enactment of subsequent laws. The State agreed to pay Plaintiffs attorneys' fees, and, on September 20, 2019, Plaintiffs received a check in the amount of $433,860.20.

**California Regulatory**

**CA DOJ's Ammunition Background Check Regulations**

Counsel acting on behalf of NRA and CRPA filed two comment letters on CA DOJ's ammunition-sales background-check regulations, which have since been adopted and are now in effect. As of July 1, 2019, all ammunition sales in the state of California require a background check. But the implementation of the background check system has proven to be unduly burdensome and otherwise ineffective. Both comment letters raised many of the concerns that have now been shown to be justified. As a result of the disastrous rollout of the new system, Plaintiffs in the *Rhode* case are seeking a preliminary injunction.

**CA DOJ's Federally Compliant ID Regulations**

Less than three weeks before the implementation of the July 1, 2019 ammunition background-check requirements, DOJ introduced an "emergency" regulatory proposal to require federally compliant IDs for all firearm and ammunition related eligibility checks. In response, counsel acting on behalf of NRA and CRPA submitted a comment letter highlighting the many flaws with the proposal. But California's Office of Administrative Law ultimately approved the "emergency" regulation which is now in effect. This regulation is being challenged in the *Rhode* case.

**CA DOJ's Home-Built Firearm Regulations for New California Residents**

Existing CA DOJ regulations require California residents wishing to build their own firearm to first apply for a CA DOJ-approved serial number that must be engraved on the firearm during the assembly process. State law has since been amended to also require anyone moving into California with a home-built firearm to also obtain and engrave a CA DOJ-approved serial number on their firearm, prompting CA DOJ to propose amendments to their existing regulations. As proposed, the regulations amount to an improper use of the federal National Instant Criminal Background Check System (NICS), include vague and ambiguous definitions, and otherwise fail to meet California rulemaking requirements. Counsel submitted a letter in opposition on November 19, 2019.

NRA-NYAG-00083808

**Colorado**

*Chambers, et al. v. City of Boulder* (Boulder County District Court)

The City of Boulder enacted Boulder Ordinance 8245, prohibiting possession of so-called "assault weapons" by law-abiding citizens unless they obtain approval from municipal authorities through a certification process. The Ordinance also prohibits "large-capacity magazines" that hold more than ten rounds of ammunition and raises the age of majority for purchasing and possessing firearms to twenty-one years. Suit was filed on June 14, 2018, challenging the Ordinance on state-law preemption grounds. The Colorado General Assembly has declared firearm ownership and possession to be a matter of statewide concern. Boulder's Ordinance conflicts with controlling Colorado state law that allows possession of "assault weapons," defines "large-capacity magazines" as magazines capable of holding more than 15 rounds, and declares the age of majority for purchasing and possessing firearms to be eighteen.

The City moved to dismiss. Before oral argument, the court granted Boulder's motion in part, dismissing Plaintiffs' claims that challenge the Ordinance's age regulation because no Plaintiff had standing to represent the interests of Colorado citizens between the ages of 18-20. After oral argument, the court denied the remainder of Boulder's motion, permitting Plaintiffs to pursue their challenges to the Ordinance's ban on "assault weapons" and "large capacity magazines." Boulder answered Plaintiffs' amended complaint on July 12, 2019. Discovery is proceeding. Meanwhile the Second Amendment challenge to these ordinances brought in federal court by Mountain States Legal Foundation was stayed by the federal court pending the outcome of the NRA supported state-law preemption challenge.

*Rocky Mountain Gun Owners (RMGO), et.al, v. Polis* (Colorado State Supreme Court)

This case was brought by RMGO (a division of NAGR) to challenge the Colorado Magazine limit in state court under the state's constitution. When the case was accepted for cert by the state's high court, we were approached for an amicus brief of specific areas where counsel for RMGO had fallen down. The Office of Litigation Counsel under the direction of ILA Executive arranged to ghost write an amicus for the NRA state association (CSSA). It was filed June 3, 2019. The Court accepted the brief but extended the time for the State to respond to all briefs to August 12, 2019. Counsel for NRA assisted in considerable preparation of RMGO counsel for argument. Argument was held before the state Supreme Court on November 14, 2020. By all accounts we are guardedly optimistic.

**Florida**

*Love v. State of Florida* (Florida State Supreme Court)

This case arose from a criminal prosecution in which the defendant asserted immunity from prosecution under Florida's Stand Your Ground Law, a statute passed with significant NRA support. The trial court declared unconstitutional a recent amendment to this statute requiring the State to prove by clear and convincing evidence that a defendant's use of force was unlawful once that defendant has made a *prima facie* claim of self-defense. The trial court instead applied

NRA-NYAG-00083809

a Florida Supreme Court decision to hold that the criminal defendant bears a burden of proving his or her claim of self-defense immunity by a preponderance of the evidence.

This trial court decision represented such a departure from Florida law that even the State is opposing the holding. NRA Freedom Action Foundation filed amicus briefs in *Love* supporting the constitutionality of the amendment and defending the Stand Your Ground law more broadly as an important development securing the fundamental right of self-defense in a manner consistent with the American legal tradition. On July 24, 2018, an amicus brief was filed in the *Love* case on behalf of the United Sportsmen of Florida. On August 24, 2018, NRA Freedom Action Foundation filed an amicus brief in support of the statute. On October 19, 2018, the State filed its responsive brief. On March 6, 2019, the Florida Supreme Court held oral argument. No decision has been rendered as of this report.

### *City of Weston v. Scott; Daley v. Florida; Broward County v. Florida* (Circuit Court of the Second Judicial Circuit, Leon County)

Florida law broadly preempts the regulation of firearms and ammunition by municipalities, and it imposes penalties on local officials and municipalities who violate the preemption statute. These three consolidated cases were brought by local officials and municipalities challenging the penalty provisions of Florida law. The plaintiffs filed complaints during late spring of 2018. After obtaining consolidation of the three cases, Florida moved to dismiss the complaints in July 2018, arguing that the plaintiffs lack standing and that their claims fail for various other procedural reasons. In July 2018, the NRA filed an amicus brief in support of the State's motion to dismiss. The amicus brief explained the reasoning behind the penalty provisions and their importance for safeguarding the right to keep and bear arms, the traditional power that state legislatures have over municipalities, the lack of any First Amendment problem with the penalty provisions, and the lack of any legislative or sovereign immunity problem with the provisions. The trial court denied in substantial part the motion to dismiss, and the parties filed cross-motions for summary judgment on February 21, 2019. The NRA filed an amicus brief in support of the State's summary judgment motion on March 4, 2019. The court heard oral argument on June 7, 2019. The trial court granted summary judgment for plaintiffs and against defendants on July 26, 2019. Defendants appealed, and the intermediate appellate court granted their motion for expedited appeal. The NRA will file an amicus brief in support of the Defendants on December 2, 2019.

### Florida State Ballot Initiatives 19-01 & 19-03

National anti-gun organizations have been pursuing radical infringement of gun rights through ballot initiatives for several years in states. Florida is now one of those targets with two of the worst provisions proposed to date. Under the guise of banning "assault weapons" they define the banned guns as "any semiautomatic capable of holding or being converted to hold more than five (5) rounds." They go so far as to propose altering the state constitution to declare such gun as beyond the reach of the federal Second Amendment and the state constitutions right to keep and bear arms. Counter measures are underway by NRA led by BOD member Marion Hammer. A quality legal team is now working with Ms. Hammer, the Office of Litigation Counsel and ILA's Research Division to block the initiatives from fraudulently reaching the

NRA-NYAG-00083810

2020 ballot. Following argument on the ballot title the matter went into litigation with counsel for NRA and Florida Sportsmen noting numerous arguments against the initiative. Counsel for the proponents of the ballot measure sought an eighteen (18) day extension but on November 11, 2019 the state Supreme Court only granted a fourteen-day extension.

**Illinois**

### *Guns Save Life, Inc. v. Village of Deerfield* (Illinois State Appellate Court Second District)

This action was brought on behalf of Guns Save Life, Inc. and John Wombacher, a resident of the Village of Deerfield, challenging Deerfield ordinances banning the possession of certain types of firearms the Village termed "assault weapons" and magazines over ten rounds. The lawsuit was filed on April 19, 2018. A similar suit was filed by Daniel Easterday, also a Deerfield resident, and two other organizations that promote Second Amendment rights (the *Easterday* case). Both cases were assigned to Circuit Judge Luis Berrones. On July 27, 2018, Judge Berrones entered an order consolidating the two case "for all purposes." On June 12, 2018, the Circuit Court issued a temporary restraining order in both cases barring the enforcement of the ordinances pending resolution of the case on the merits. We followed this with a motion for summary judgment and permanent injunction, as did the *Easterday* plaintiffs. On March 22, 2019, the court granted all plaintiffs' motions for summary judgment on all claims, except our takings and eminent domain claims, and it issued the permanent injunction barring enforcement of the ordinances.

Deerfield subsequently filed an appeal, but its Notice of Appeal was filed in the wrong court, and by the time this error was discovered, the time for appealing the March 22 order had expired. Under Illinois rules, failure to properly file a timely notice of appeal is generally fatal. The Appellate Court held that it had insufficient information from the record before it to resolve the jurisdictional issues. While the March 22 Order resolved all of the *Easterday* claims, it left open the takings and eminent domain claims in our case. The court held that the record was unclear as to whether the consolidation of the two cases was a full merger or a discovery measure. If it was a full merger, the appeal was premature because the trial court's March 22 order was not final as to all claims, and it did not contain language under Rule 304(a) that there is no just reason to delay enforcement or appeal, which is required to appeal an order that does not resolve all claims. If the two cases were not fully merged, Deerfield missed its deadline to appeal the *Easterday* case, so that ruling would stand, barring some special condition. Since the Appellate Court could not determine the nature of the consolidation, it dismissed the appeal.

Subsequently, Deerfield filed a motion requesting the 304(a) language that there is no reason to delay an appeal. This teed up a dispute over whether the consolidation was a full merger or not. After briefing and a fairly extensive oral argument, the trial court held that the consolidation was indeed a full merger and granted Deerfield's motion. Deerfield then filed a new Notice of Appeal, so we are now back in the Second District Appellate Court where the arguments will address the merits of the trial court's March 22 ruling. Deerfield has until December 5 to file the record. The parties will then submit their briefs on a schedule that will take us to the end of February, unless there are any extensions allowed. The Appellate Court

NRA-NYAG-00083811