will either rule on the briefs or assign an oral argument date, but there is no way to predict the time frame for either of these paths.

### *Guns Save Lives (GSL), et. al v. Ali (Cook County)* (Illinois App. Ct., 1st Judicial District)

This case is a challenge to both an ammunition "violence tax" and to the gun tax imposed by Cook County, Illinois in 2015. Defendants filed a Motion to Dismiss in March 2016, which was denied. Plaintiffs filed a motion for summary judgment, but in February 2017, the court granted the County's motion to delay briefing while it takes discovery. After a round of limited discovery, the County cross-moved for summary judgment on November 6, 2017. The district court granted the County's motion for summary judgment on August 17, 2018. The plaintiffs appealed that decision, and briefing in the Illinois Appellate Court concluded on July 19, 2019. We now await either notice that a decision has been reached or an oral argument date.

### *Guns Save Lives (GSL), v. Kwame Raoul* (Illinois Appellate Court, Fourth Judicial District)

This case challenges Illinois's extraordinary requirement—one of only two in the Nation—that ordinary citizens must obtain a permit even to possess any type of firearm in the home. Plaintiff alleges that this prior restraint violates the state and federal constitutional rights to keep and bear arms as well as the state and federal equal protection clauses. Suit was brought after a judge in White County found the FOID Card requirement unconstitutional as applied to a criminal defendant, and the State appealed the case to the Illinois Supreme Court. Plaintiff moved for a preliminary injunction immediately upon filing suit, on May 15, 2019, and the trial judge denied that motion from the bench on May 24, 2019. Plaintiff appealed, seeking to have the case heard by the Supreme Court with the case from White County. That effort failed. The case was briefed in the Appellate Court which concluded July 23, 2019. Because the appeal is interlocutory, an accelerated briefing schedule applied under the Illinois Rules, and briefing was completed on July 23, 2019. Argument occurred on October 8, 2019. We are currently awaiting a decision.

### *Johnson v. State of Illinois* (Illinois State Supreme Court)

The Office of Litigation Counsel has been engaged at the periphery of this case for many years but is not directing the matter. Ms. Johnson received a domestic battery conviction under ridiculous circumstances many years ago. She applied for relief and restoration of her gun rights as provided for under Illinois state law. The Illinois State Police in conjunction with the FBI have disregarded the restoration despite the fact that federal law is supposed to follow state law on restoration of gun rights. The Illinois law in question is admittedly not the soul of clarity but relief having been granted should not be able to be disregarded. The case is now pending before the State Supreme Court, which is also hearing related cases calling into question the state's FOID law. This case was argued by counsel November 13, 2019.

NRA-NYAG-00083812

**Miscellaneous Illinois Cases on FOID Cards and Concealed Carry**

The Office of Litigation Counsel assisted in numerous smaller cases on FOID Cards and Concealed Carry issues since the passage of the Illinois shall issue law. That work continues with significant restoration of rights issues and reciprocity for out of state license holders.

**Massachusetts**

Following the announcement by Massachusetts AG Healy banning most semiautomatic rifles, enforcement of all the states gun laws has become a rampant problem for members in the state. The Office of Litigation Counsel has directed and assisted many members to local counsel and assisted counsel throughout the state with myriad issues none of which individually rise to the level of reporting at this time.

**Montana**

*City of Missoula v. Fox* (MT) (Montana State Supreme Court)

This preemption case was instigated by Missoula itself in yet another Bloomberg inspired gun-control move. In the midst of an effort to streamline and harmonize two separate threads in the state's preemption laws, Missoula decided to test the waters by filing a declaratory suit claiming the ability to infringe on its citizen's rights. After much wrangling the case got to the state supreme court where counsel for NRA prepared and filed an amicus brief siding with the Attorney General against the city. On October 22, 2019 the State Supreme Court ruled flatly against the City.

**New York**

**General Assistance to Cases in New York**

The Office of Litigation Counsel continued to provide direct assistance to counsel in New York and members on licensing and other firearm cases and issues as they arose during 2019. Significant attention has been paid to "SAFE Act" prosecutions, which to date have been based on preexisting New York and federal laws. These have led to speedy dismissals when counsel could demonstrate the law was either not applicable, or had been misapplied in the arrest or seizure of the firearms. Licensing issues continue to dominate the legal environment in the state in spite of attention in the media to the SAFE Act. In addition, counsel have been assisted in dozens of pistol-permit cases and criminal prosecutions for regulatory issues. Below are just a few examples of cases or matters where NRA directed counsel have provided guidance:

*NY v. Daniel Gemmel* (NY Supreme Court) (state trial court)

A member was the subject of an Order of Protection, and his firearms were seized. The seizure resulted in criminal possession charges for failure to register a non-compliant SAFE Act firearm. But the firearm was purchased from an FFL (post SAFE Act) and was unmodified. The

FFL's liability and the member's ability to transfer the legally owned firearms were at issue in the case. We provided guidance to the member's attorney.

*In Re Application of Charles Deperno* (NY Supreme Court) (state trial court)

A member was the subject of a temporary mental-hygiene observation and released after a 48-hour hold. The Sheriff refused to release the member's firearms that were confiscated—despite a court order for the release. Our counsel assisted the member's attorney in drafting an Order to Show Cause, which was granted. The firearms were returned to the member.

**Recurring and Ongoing issues in New York in 2019**

**NYC Administrative Code Issues**

Revocation of business and concealed-carry licenses without cause; denial of premise licenses for a history of misdemeanors and repeated DMV violations; spousal or co-habitant permission required for any license; denial of premise license when long gun license has already been granted for premise and statutory basis is the same; denial of due process in granting hearing on denial, suspension and revocations including not providing documents for examination prior to hearing or disclosure of records, statements etc. relied upon for adverse determination.

**New York's New "Red Flag" Law**

This new law went into effect August 24, 2019. On August 5, 2019, prosecutors, public defenders, Supreme Court Judges, Mental Hygiene Officials and other interested parties met telephonically with the State AG. The purpose was to streamline procedures and centralize processing under the law. While a large number of issues remain open, the meeting clarified that the State Police, not local Sheriffs and Chiefs, will have sole jurisdiction on direct enforcement. This action may have been in response to Sheriffs and chiefs who publicly announced they would not enforce the law. Counsel working with NRA's Office of Litigation Counsel assisted counsel in Olean, NY in preparing for a red flag hearing.

**HOA:** We have assisted members in amending HOA board rules restricting home owners' abilities to carry firearms in common areas.

**Children and Family Services:** Endangering the welfare of a child is a "serious offense" and conviction of a "serious offense" prohibits the issuance of a pistol license under NY's Penal Code Section 400 (licensing). We have continued to assist in marital and child-custody matters that may result in future firearms prohibition.

**Probation/Parole restrictions:** Probation and Parole Officers have great latitude in setting conditions for the release of prisoners. It is not uncommon for them to require the parent or spouse of the inmate to be released to divest themselves of firearms in their own homes as a condition for the inmate's release. NY law provides for certain firearm storage in the case of individuals living with prohibited persons. It allows the non-prohibited owner to secure their

firearms in the shared household. We are attempting to have this language entered into the terms and conditions of probation/parole; cases are outstanding.

**Pistol permits:** suspensions, revocations and initial denials are addressed on a case-by-case basis. The Office of Litigation Counsel continues to address dozens of these matters as part of an effort to both assist individual members and to search for patterns that can be addressed systemically.

**Pennsylvania**

*Anderson v. City of Pittsburgh* (Court of Common Pleas, Allegheny County, Pennsylvania)

On April 2, 2019, Pittsburgh's Mayor signed into law an ordinance that on its face purports to prohibit the public possession of loaded magazines capable of holding more than 10 rounds. A group of gunowners who routinely carry such magazines in public sued the same day, arguing that the ordinance is preempted by Pennsylvania law. The plaintiffs moved for a preliminary injunction on April 16, 2019. Rather than file an opposition, the city consented to the preliminary injunction. Then the plaintiffs moved for summary judgment on June 24, 2019. The city responded on July 15, 2019. The city's lead argument is that the plaintiffs lack standing because the plaintiffs load their magazines. On October 29, 2019 the trial Court ruled in favor of all plaintiffs. While the City has indicated they want to appeal no appeal has been filed as of this report.

**Vermont**

*Vermont Federation of Sportsmen's Clubs v. Birmingham* (Vermont Sup. Ct., Wash. Cty.)

This is a challenge to Vermont's ban on the purchase, sale, transfer, or possession of handgun magazines with a capacity greater than 15 rounds and long-gun magazines with a capacity greater than 10. Due to the adverse Second Circuit precedent on this issue, this case has been brought exclusively under the Vermont Constitution's protection of the right to bear arms (which may be more protective than the Second Amendment). The complaint was filed in April, 2018. Defendants moved to dismiss the case in July 2018, and the plaintiffs cross-moved for summary judgment in August 2018. On March 20, 2019 the trial court denied both the motion to dismiss and the cross-motion for summary judgment. The court subsequently established a pre-trial schedule and set a trial-ready date of November 11, 2019. The parties paused fact- and expert-witness depositions while they sought to have the trial court authorize them to seek review by the Vermont Supreme Court. This was an effort to keep up with the case of Max Misch, an avowed white nationalist who is being prosecuted for violating the magazine ban.

On July 25, 2019, the parties filed a joint motion to appeal this case to align with the *Misch* appeal in the Supreme Court. That same day, Defendants filed a motion to stay this case until *Misch* is resolved. On August 29, 2019, the Court denied both motions, ruling that a full factual record should be developed in this case to support any constitutional interpretation. Neither party appealed the denial of the joint motion to appeal. But on September 10, 2019, Defendants asked the trial court to reconsider the denial of the motion to stay and in the

NRA-NYAG-00083815

alternative for permission to appeal that denial to the Vermont Supreme Court. On October 29, 2019, the trial court denied that motion. On November 1, 2019, Defendants appealed that ruling to the Vermont Supreme Court. Plaintiffs' opposition is due November 15, 2019. Meanwhile, on November 4, 2019, Plaintiffs moved the court to amend the scheduling order to move the case along in the trial court on merits. Defendants have opposed this motion, suggesting a longer discovery period if the case is not stayed by the Vermont Supreme Court pending *Misch*.

**Washington**

*Bass, et. al. v. City of Edmonds, et, al.* (Superior Court Snohomish County, Washington)

This is a state preemption-law test, pushed by anti-gun forces in Washington State. Suit was filed August, 2018. The city filed a motion to dismiss on lack of standing and on October 22, 2018. On March 19, 2019, the court denied the Defendant's motion in its entirety. Following discovery, both sides filed cross motions for summary judgement. After argument on October 18, 2019, the court largely, but not completely, granting our motion. On November 15, the city noted an appeal. We intend to cross appeal on the portion we did not prevail on.

*Alim, et. al, v. City of Seattle* (Washington Court of Appeals, Division I)

This is a challenge to an Ordinance passed by the City of Seattle, which regulates the possession and storage of firearms. Individual plaintiffs and organizational plaintiffs (the NRA and the Second Amendment Foundation) filed a declaratory judgment lawsuit in 2018, arguing that the Ordinance was preempted by state law. The court granted the City's motion to dismiss based on standing, with prejudice. We filed a motion for reconsideration, along with a proposed amended complaint, which the court denied. In 2019, we appealed the case, which is now fully briefed and awaiting oral argument or a decision.

**West Virginia**

*Goldstein v. Peacemaker*, (WV Supreme Court of Appeals)

Peacemaker National Training Facility is a shooting range, located in Berkley County, WV, near the WV/VA border. The plaintiffs live on the VA side of the border and brought common-law nuisance actions against Peacemaker in VA and WV courts. The VA claim was prohibited under the VA range-protection statute, and was dismissed accordingly. The WV legislature amended the state's range-protection statute, which prohibited the WV claims from going forward. The Plaintiffs subsequently challenged the constitutionality of the WV range-protection statute under the WV Constitution's certain-remedy provision, i.e., that the statute deprives plaintiffs of their nuisance claim, which is a vested right. The trial court dismissed the claims and the Plaintiffs appealed. The NRA filed an amicus brief, arguing in favor of the constitutionality of the range-protection statute.

On March 15th, the WV Supreme Court affirmed in part, reversed in part, and remanded back to the trial court. The court held that the claims for an injunction could be retroactively extinguished by the new range-protection statute. But it also held that the Plaintiffs adequately

NRA-NYAG-00083816

pleaded a claim for money damages, which is a vested right that cannot be retroactively extinguished. On remand, the trial court will determine if the Plaintiffs are entitled to any money damages.

**Wisconsin**

*Hartland Sportsmen's Club v. City of Delafield* (Wisconsin State Court)

Hartland Sportsmen's Club has operated in the same location for almost fifty years and was grandfathered under the states' original NRA-backed range-protection law. After an errant round left the range, the City of Delafield seized the opportunity to try to close the range based on a misreading of an amendment to the state range law. The Office of Litigation Counsel assessed the situation and engaged counsel to vindicate the amendment to the range law. The club prevailed in their first lawsuit. The City then decided that despite the fact that the Conditional Use Permit (CUP) application was not remanded for further municipal proceedings, it would act as though it did. Over strong and detailed objections, the City held a series of hearings before again reaching the same preordained decision to deny the CUP. In doing so, the City added new evidence and a wide range of new requirements/concerns to the record, both of which would be impermissible even if remand had been ordered.

Counsel for the range was forced to file a second lawsuit, alleging the City violated the rulings in the first lawsuit and that, the city's second proceedings were contrary to law. Once the record was finally completed (after absolute trench warfare with the city's counsel) the club's counsel submitted a motion on the merits. Following remand and re-briefing the trial court ruled in favor of the club and mandated that the CUP be issued. The city then held several secret meetings and then appealed something that does not affect application of the judgment in the interim. The club's counsel pressed the city but it did nothing to move on the reopening of the range; when finally threatened with contempt, the city moved the circuit court for a stay of the judgment pending appeal. On July 24, 2019, the court slapped the city's motion down. The City has continued to make bad faith misrepresentations in the CUP process and has filed yet another appeal of the case.

**Range Support**

Ongoing monitoring of legal issues and providing in house and contract counsel to assist chosen efforts for environmental, land use, design and safety litigation and representation nationwide involving ranges. Regularly perform range evaluations and meet with Club Board of Directors on behalf of NRA (and CRPA in California) to strategize and assist with coordination of defense campaigns against NIMBY, environmental NGOs, agency and/or municipality matters. This is a constant and growing area of work.

**Information Services**

The Office of Litigation Counsel searches daily for reported Federal and state court opinions of possible concern to the Association. This office also works regularly with all parts

NRA-NYAG-00083817

of NRA internally providing consult and opinion on a wide range of issues where legal and litigation concern cross with various activities of the organization.

**Member Services**

Member communication, which takes up the majority of the Office of Litigation Counsel's non-attorney productive time, is a prime source for issue identification. In 2019, the Office of Litigation Counsel has fielded hundreds of member letters, phone calls, and e-mails on a variety of issues. Often, the Office of Litigation Counsel staff provided the member with referral counsel, research materials and legal resources in their areas. This work represents a majority of the efforts of non-attorney staff and a significant part of the work of counsel as well. In addition significant time and effort is expended working in support of counsel in private practice, prosecutors and public defenders in locating legal information related to firearms and the Second Amendment as appropriate to the mission of the NRA. The Office of Litigation Counsel searches daily for reported state and federal court opinions of possible concern to the Association. Each case is reviewed and acted on as directed by ILA's Executive Office. In addition, the Office routinely takes numerous calls throughout the day from members with a variety of questions.

**Monitoring Government Agencies & Anti-Gun Groups**

The Office of Litigation Counsel continues to monitor groups including the various fabrications of Michael Bloomberg's false front anti-gun groups and organizations like Giffords (which merged with LCAGV), Moms Demand Action, Everytown for Gun Safety and the Brady Campaign as well as George Soros' "Open Society" and its many shadow organizations.

**FINANCE AND ADMINISTRATION – Robert G. Owens C.P.A., Fiscal Officer**

**Fundraising**

The NRA Institute for Legislative Action (ILA) and the Political Victory Fund (PVF) raised $25 million and $10.3 million dollars respectively through November 30, 2019 using direct mail and digital on-line solicitations. The production for ILA and PVF is in line with historical pre-presidential year averages over the last three pre-presidential years.

**Legislative and Political Mailings**

Almost 600,000 pieces of legislative, political and informational mailings were produced and mailed by ILA and the Political Victory Fund. Over 175 new state house and state senate district mailings went to NRA members, hunters, concealed weapons holders and state legislatures via information packets, endorsement letters and postcards.

Over $900,000 was invested by the PVF in the Virginia state elections in November through paid canvassing, mail to members and non-members, advertising and direct candidate support.

NRA-NYAG-00083818

**Phone Banks**

Almost 500,000 calls were made to over 100 separate states and districts encouraging members to vote or call their state and federal legislators.

**Virginia State Elections**

Over $900,000 was invested by the PVF in the Virginia state elections in November through paid canvassing, mail to members and non-members, advertising and direct candidate support.

**Financial and Fiduciary Performance**

ILA on pace to exceed budgeted special program net revenue by $5M (32%) the majority of which was used to cover legal defense expenditures for key 2nd Amendment cases across the country and support Virginia state election strategy.

ILA is on pace to end 2019 with a $2M bottom line surplus while saving the NRA over $840,000 in reimbursed operating expenses through the efficient management of corporate resources. Over the two year's ending December 31, 2019 ILA has left $1.8M in budgeted staff costs and NRA supported operating expenses unspent and available to cover the operating deficits in other NRA departments / divisions. ILA is also on pace to achieve over $600,000 in year on year savings from renegotiated contracts and/or elimination of unneeded/inefficient expenditures increasing resources available for legislative and policy projects.

PVF is on pace to end 2019 with $10.7M in cash available to support the 2020 elections at the federal, state and local levels.

NRA-NYAG-00083819