COURT ADMITTED EXHIBITS PURSUANT TO DOCKET NO. 757

NRA EXHIBIT 24 (IN 3 PARTS)

.

NRA - 24

NRA -  24

**NATIONAL RIFLE ASSOCIATION OF AMERICA**
**REPORT OF THE SECRETARY**

**Tysons Corner, Virginia**                                    **January 11-12, 2020**

TO:    NRA BOARD OF DIRECTORS AND EXECUTIVE COUNCIL

ELECTION OF DIRECTORS

Preparations for the 2020 election of Directors are proceeding on schedule. Thirty-one nominees will be elected: 25 for three-year terms, four for two-years terms and two for one-year terms from a total of 38 eligible candidates.   (There are 39 candidates on the ballot, but one candidate withdrew after the ballots were printed.)

The ballot package will be in the February issue of the Official Journals.  It will contain a ballot to elect Directors, along with candidates' biographical sketches.

The following information may be of assistance in responding to member questions about the elections:

1.  Voting members will receive their 2020 ballot packages in the February *American Rifleman, American Hunter, America's 1st Freedom* and *Shooting Illustrated* magazines.  Ballot printing began January 2, 2020 and binding began January 6, 2020.  The ballot issues of the magazine should start to arrive in the hands of the voting members by January 21, 2020 and be completed by January 25, 2020.

2.  The last day a person can become a voting member for this election cycle is February 28, 2020. This is established by the NRA Bylaws as 50 days before the Annual Meeting of Members.

3.  Voting is by paper ballot only.  The deadline for completed ballots to be received by our accounting firm is March 29, 2020.  Since this is a Sunday, the last mail pickup will be the morning of Monday, March 30, 2020.

4.  The following voting members will receive their ballots by first class mail: 1) those who don't normally receive a magazine; 2) those who live in Hawaii; 3) those who have an APO, FPO or U.S. possessions address; 4) those who receive their Official Journal electronically; and 5) those who become voting members between the date the first addresses were selected at the end of December and the membership deadline, February 28, 2020.

5.  There will be two first class mail drops, with the first occurring the week of February 9, 2020 and the second on March 4, 2020.

MILEAGE REIMBURSEMENT RATE FOR 2020

An updated Expense Report was put in your packets with the 2020 standard mileage reimbursement rate of 57.5 cents per mile.

INTELLECTUAL PROPERTY

In March of 1995 the Executive Vice President appointed an Intellectual Property Committee to review and make decisions on the use of NRA's trademarks and copyrights.  The committee consists of

227

NRA-NYAG-00083820

the NRA Secretary (who serves as Chairman), a representative from the Office of General Counsel, a representative from the Membership Division, a representative from the Publications Division and the Executive Director of General Operations. The Committee met four times in 2019 and considered 12 items of business. Many requests to use NRA intellectual property are routine matters that do not require action by the committee and are addressed directly by the Secretary. The Secretary also responds to violations of NRA's intellectual property rights, and ensures proper maintenance of NRA's registered trademarks.

FEDERAL FIREARMS LICENSE

The Secretary is the "responsible person" for the NRA's headquarters and Field Operations federal firearms licenses. The headquarters FFL is used in the transfer of firearms to the Museum inventory, firearms received by the Publications Division for test and evaluation, and firearms sent to other NRA divisions for training or demonstration purposes. There were 1,405 transactions on the NRA's headquarters FFL in 2019. (NRA Federal Firearms Licenses are used for Association business only – not for personal transactions.)

ARCHIVES

In accordance with Article V, Section 2(d) of the NRA Bylaws, the Secretary has charge of the archives of the Association. Because of space availability, the NRA did not have an official archives center until 1995. When NRA moved into the new headquarters building in Fairfax, Virginia, the Secretary established an official archives area. Since then a large number of items have been donated to the archives and an offsite storage facility is also being used.

The archives room at NRA Headquarters is located in the basement of the building. The room is climate controlled to help preserve old documents, historical pictures, films and other items. There are over 100,000 items that are listed under 84 major categories.

In 2019 the archives were regularly used in a number of research projects. These projects included providing written materials and photographs for a new Marine Corps Marksmanship book (Red Book), research on past NRA shooting competitions, photo requests from the NRA Publications Division, and researching previous board motions, resolutions, and bylaw amendments.

BYLAW COMPLIANCE

Article IV, Section 2 of the NRA Bylaws, as amended by vote of the members in 2017, requires the NRA Secretary to report business transactions in which NRA Board members, officers, or employees received payments in excess of $2,000 for goods and services provided to the NRA.

The following members of the Board of Directors reported payments from the Association for goods or services which total in excess of $2,000 with the Association in 2019:

- Mr. Dave Butz received $71,000 in 2019 from the National Rifle Association as an independent contractor.

- Mr. David Keene received $56,000 for support of public speaking engagements at Friends of NRA dinners and other outreach events.

NRA-NYAG-00083821

FUTURE MEETINGS OF THE BOARD OF DIRECTORS

2020 Annual Meeting (Nashville, Tennessee) April 16-21
    (Board Meeting April 20-21)
2020 Fall Board Meeting (Tysons Corner, Virginia) September 9-13
    (Board Meeting September 12-13)
2021 Winter Board Meeting (Tysons Corner, Virginia) January 6-10
    (Board Meeting January 9-10)
2021 Annual Meeting (Houston, Texas) May 13-18
    (Board Meeting May 17-18)
2021 Fall Board Meeting (Tysons Corner, Virginia) September 8-12
    (Board Meeting September 11-12)
2022 Annual Meeting (Louisville, Kentucky) May 19-24
    (Board Meeting May 23-24)
2023 Annual Meeting (Indianapolis, Indiana) April 13-18
    (Board Meeting April 17-18)
2024 Annual Meeting (Dallas, Texas) May 16-21
    (Board Meeting May 20-21)
2025 Annual Meeting (Atlanta, Georgia) April 24 – April 29
    (Board Meeting April 28-29)

Respectfully submitted,

John C. Frazer
Secretary

229

NRA-NYAG-00083822

## NATIONAL RIFLE ASSOCIATION OF AMERICA
## REPORT OF THE TREASURER

**Tysons Corner, Virginia**                                                 **January 11, 2020**

**TO:**     NRA BOARD OF DIRECTORS

Operating results for the eleven months ended November 30, 2019 are attached. The lines of credit at December 31, 2019 totaled $34.6M.

YTD Net Loss (before Investment gains) were ($7.2)M, which is unfavorable to budget by ($8.5)M.

Revenues were $277M, which is unfavorable to budget by ($6.4) M. This negative variance was driven by underperformance to budget in GO ($6.0) M, Advancement ($4.3) M, Affinity ($2.1) M, PR ($1.2) M and Publications ($0.5) M, while being offset by above performance to budget in ILA-Special Programs $7.0M, and Membership $0.8M.

Expenses were $284M, which is unfavorable to budget by ($2.1) M. This negative variance was driven by overruns to budget in Membership ($10.9) M, Legal Services/OGC ($9.0) M, ILA-Special Programs of ($6.3) M (offsetting higher revenue activity), Security ($1.7) M, and Publications ($1.0) M, while being materially offset by ongoing cost containment efforts in PR $10.1M, GO $6.1M, Affinity $3.6M, Advancement $3.2M, and EVP $2.1M.

More details on the results of operations and comments on other 2019 activities are attached to the Finance Committee report, along with the 2020 budget detail.

The accumulation of the final results for 2019 is in process and will be available in the 2019 NRA Annual Report once our outside auditing firm has completed their work.

Respectfully submitted,

Craig B. Spray
Treasurer

NRA-NYAG-00083823



**National Rifle Association of America**

STATEMENT OF REVENUE AND EXPENSES
For Eleven Months Ended November 30, 2019
*(in thousands)*

| | | Page Number | Line Number | **A** YTD Actual | *% of Annual Budget* | **B** YTD Budget | *% of Annual Budget* | **C** Favorable/ (Unfavorable) Variance | **D** Annual Budget |
|---|---|---|---|---|---|---|---|---|---|
| | **Revenue** | | | | | | | | |
| 1 | Membership | A-2 | 69 | $158,180.0 | 89.5% | $157,364.6 | 89.0% | $815.4 | $176,719.6 |
| 2 | Affinity and Other Programs | A-3 | 84 | 11,650.3 | 77.9% | 13,787.5 | 92.2% | (2,137.2) | 14,961.7 |
| 3 | Institute for Legislative Action | A-4 | 92 | 28,518.4 | 128.3% | 21,552.0 | 96.9% | 6,966.4 | 22,236.0 |
| 4 | General Operations | A-5 & A-6 | 157 & 175 | 34,011.9 | 79.5% | 39,974.2 | 93.4% | (5,962.3) | 42,791.7 |
| 5 | Advancement & Field Operations | A-7 | 196 & 206 | 10,316.5 | 65.3% | 14,633.3 | 92.7% | (4,316.8) | 15,787.0 |
| 6 | Publications | A-9 | 244 | 21,210.1 | 88.3% | 21,752.4 | 90.6% | (542.3) | 24,016.5 |
| 7 | Public Relations | A-11 | 298 | 470.5 | 26.9% | 1,660.9 | 95.0% | (1,190.5) | 1,747.5 |
| 8 | NRAF Grants & General Endowments | | | 12,181.5 | 91.6% | 12,235.7 | 92.0% | (54.2) | 13,294.0 |
| 9 | **Total Revenue** | | | 276,539.1 | 88.8% | 282,960.5 | 90.8% | (6,421.4) | 311,554.0 |
| | **Expenses** | | | | | | | | |
| 10 | Membership | A-2 | 70 | 86,337.9 | 104.1% | 75,407.4 | 90.9% | (10,930.5) | 82,931.7 |
| 11 | Affinity and Other Programs | A-3 | 85 | 1,267.5 | 24.9% | 4,877.4 | 95.8% | 3,609.9 | 5,090.0 |
| | Institute for Legislative Action | | | | | | | | |
| 12 | ILA-Costs reimbursed from NRA | A-4 | 96 | 13,514.1 | 83.4% | 14,378.9 | 88.7% | 864.8 | 16,209.1 |
| 13 | ILA - Special Programs Costs | A-4 | 112 | 26,698.2 | 120.1% | 20,379.5 | 91.7% | (6,318.8) | 22,236.0 |
| 14 | Subtotal Institute for Legislative Action | | | 40,212.4 | 104.6% | 34,758.4 | 90.4% | (5,454.0) | 38,445.1 |
| 15 | General Operations | A-5 & A-6 | 158 & 176 | 32,118.7 | 77.7% | 38,207.9 | 92.4% | 6,089.2 | 41,348.2 |
| 16 | Advancement & Field Operations(*) | A-7 | 197 & 207 | 11,666.7 | 69.6% | 14,864.3 | 88.6% | 3,197.5 | 16,768.2 |
| 17 | Publications | A-9 | 245 | 29,615.0 | 92.6% | 28,655.9 | 89.6% | (959.0) | 31,975.1 |
| 18 | Treasurer | A-10 | 279 | 18,581.9 | 86.9% | 19,289.2 | 90.2% | 707.3 | 21,383.3 |
| 19 | President Office | A-11 | 280 | 313.1 | 87.1% | 329.8 | 91.8% | 16.7 | 359.4 |
| 20 | Executive | A-11 | 281 | 5,960.9 | 66.3% | 8,026.0 | 89.2% | 2,065.1 | 8,995.8 |
| 21 | Security | A-11 | 282 | 7,554.9 | 119.7% | 5,885.0 | 93.2% | (1,669.9) | 6,311.8 |
| 22 | Human Resources | A-11 | 283 | 675.6 | 75.1% | 804.5 | 89.5% | 129.0 | 899.1 |
| 23 | OGC_Secretary | A-11 | 291 | 30,983.6 | 130.4% | 21,983.4 | 92.5% | (9,000.2) | 23,753.9 |
| 24 | Public Relations | A-11 | 299 | 18,401.1 | 60.4% | 28,477.6 | 93.6% | 10,076.4 | 30,440.6 |
| 25 | **Total Expenses** | | | 283,689.2 | 91.9% | 281,566.7 | 91.2% | (2,122.5) | 308,702.0 |
| 26 | **Operating Income (Loss) b/f Investments** | | | (7,150.1) | -250.7% | 1,393.8 | 48.9% | (8,543.8) | 2,852.0 |
| 27 | Capital Expenditures | | | (1,405.4) | 47.5% | (2,927.6) | 98.9% | 1,522.2 | (2,961.5) |
| 28 | Principal Activity - Term Loan | | | 45.2 | -3.8% | (1,076.2) | 91.3% | 1,121.4 | (1,178.4) |
| 29 | Principal - Lines of Credit | | | 6,627.7 | -94.9% | 3,500.0 | -50.1% | 3,127.7 | (6,985.1) |
| 30 | Retirement Plan Funding | | | (5,050.7) | 84.2% | (6,000.0) | 100.0% | 949.3 | (6,000.0) |
| 31 | Other Balance Sheet Activity (excl. depreciation/bad debt) | | | 1,092.7 | 11.2% | 4,567.1 | 46.9% | (3,474.4) | 9,735.0 |
| 32 | **Excess (Deficiency) of Revenue over Expenses** | | | ($5,840.5) | -87.0% | ($542.9) | 12.0% | ($5,297.6) | ($4,538.0) |
| | **Investment Activity** | | | | | | | | |
| 33 | Endowment Activity | | | 3,398.9 | 169.9% | 1,791.7 | 89.6% | 1,607.3 | 2,000.0 |
| 34 | Dividends, Interest & Net Gains (Losses) from Portfolio | | | 6,387.8 | 251.7% | 1,915.0 | 75.5% | 4,472.8 | 2,538.0 |
| 35 | **Total Investment Activity** | | | 9,786.7 | 215.7% | 3,706.7 | 81.7% | 6,080.1 | 4,538.0 |
| 36 | **Operating Income (Loss)** | | | $3,946.2 | N/A | 3,163.8 | N/A | 782.5 | (0.0) |

**Basis of Accounting:**

These statements are presented using accrual basis method of recording transactions for revenue when earned and expenses when incurred. A key advantage of the accrual basis is that it matches revenues with related expenses, so that the complete impact of a business transaction can be seen within a single reporting period.

*Advancement and Field Operations raise funds for affiliated organizations as well. See pages A-7 and A-8 for complete picture of the operations of these divisions.

NRA-NYAG-00083824

**NATIONAL RIFLE ASSOCIATION OF AMERICA**
**REPORT OF THE ACTION SHOOTING COMMITTEE**

Tysons Corner, Virginia                                                    **January 11, 2020**

TO:    **NRA Board of Directors**

The Action Shooting Committee met on October 18, 2019 via teleconference. Committee Members present were: Dwight Van Horn, Chairman; Don Martin, Vice Chairman; Clel Baudler; Julie Golob; George Mowbray; Mark Redl; and Neil Sookdeo, Committee Secretary. Committee members William H. Allen and Duane Liptak, Jr. were unable to attend. Others in attendance were: Cole McCulloch, Director, NRA Competitive Shooting Division; Aaron Farmer, Deputy Director, NRA Competitive Shooting Division; Beth Martin, Pistol Program Manager; and John Gordon, NRA member and advisor to Mr. Martin (Committee Vice Chairman).

**The Committee discussed many areas of interest and while not rising to the level of requiring Board action, the following items were addressed:**

1. Beth Martin, Manager of the Pistol Department, briefed the committee on the status of National Records, the Distinguished Program and presented statistical data on participation, events and Bianchi Cup survey results.

2. The Committee discussed developments toward a Range Officer training program.

3. The Committee discussed addition of a course of fire to the National Records.

4. The Committee discussed a new class for Production Optics Firearms.

5. The Committee discussed a proposed rule restricting use of pistol caliber carbines or rifle caliber pistols in Action Pistol Matches.

6. The Committee discussed the future use of Practiscore, an electronic method of scoring, for use in Action Pistol Matches.

7. The Committee discussed the use of used and repaired AP1n standard targets for Regional or State level matches.

8. **Motions to add, change or amend rules in the Action Pistol Rulebook were forwarded to the Competition Rules & Programs Committee for its review and consideration to be recommended to the Board of Directors.**

The Committee has no recommendations to the Board of Directors at this time.

Respectfully submitted,

Clel Baudler
Committee Member

232

## NATIONAL RIFLE ASSOCIATION OF AMERICA
## REPORT OF THE AIR GUN COMMITTEE

Tysons Corner, Virginia                           **January 11, 2012**

TO:   **NRA Board of Directors**

The Committee met at NRA Headquarters in Fairfax, Virginia on November 3, 2019. Committee Members present were: Edie P. Fleeman, Chairman; Patricia A. Clark, Vice Chairman; Ted Carter; Clyde Furr; Lisa Kelley; and Elizabeth Martin, Committee Secretary. Committee member Val Gamerman was unable to attend. Others in attendance were: Cole McCulloch, Director, NRA Competitive Shooting Division (via phone); Aaron Farmer, Deputy Director, NRA Competitive Shooting Division (via phone); and Victoria Taylor, National Manager, Collegiate and Schools Program & Smallbore Department.

**The Committee discussed many areas of interest. The following items were addressed:**

1. All items on the agenda were discussed.

2. The committee discussed at length the lack of an Air Gun-dedicated staff member in the Competitive Shooting Division. It is the consensus of the committee that the lack of funding of a dedicated staff person in Air Gun negatively impacts competitor participation in a critical phase of competitive shooting (Air Gun/BB gun). Air Gun spans the competitor spectrum, but especially serves as a foundational point of entry into competitive shooting.

3. The committee discussed the possibility of the NRA and the Competitive Shooting Division getting involved in the Pyramyd Air Gun Cup, with sponsorship, Range Safety Officer support and advertisement. It is the consensus of the committee that the NRA should get involved and reach out to Mr. Val Gamerman in regards to the Pyramyd Air Gun Cup.

4. Mr. Farmer briefed the committee on the current state of the Air Gun championships and their possible move to Camp Atterbury in the future. There is a consensus of the committee to support discussion and any potential funding needed for a dedicated space at Camp Atterbury for an air gun competition facility.

5. It is the consensus of the committee that the Competitive Shooting Division should reach out to the Education and Training Division about inclusion in youth program booklets, and event participant information to link up Pyramyd Air information to appropriate youth program activities and advertisements.

6. **The committee discussed BB Gun Rules 3.11, 3.11.2 items (b) and (d), and Rule 15.7, which will be forwarded to the Competition Rules and Programs Committee for their review and consideration to be recommended to the Board of Directors.**

NRA-NYAG-00083826

7. **The Committee discussed a motion regarding decimal scoring, which will be forwarded to the Competition Rules & Programs Committee for their review and consideration to be recommended to the Board of Directors:**

Respectfully submitted,

Edie P. Fleeman
Chairman

234

NRA-NYAG-00083827

## NATIONAL RIFLE ASSOCIATION OF AMERICA
## REPORT OF THE AUDIT COMMITTEE

**Tysons Corner, Virginia**                    **January 11, 2020**

TO: NRA BOARD OF DIRECTORS

The Audit Committee met in person at 9:00 a.m. EST, November 20, 2019. Committee members in attendance were: Charles L. Cotton, Chairman, David G. Coy, Vice Chairman, Curtis Jenkins, Herbert A. Lanford, Jr. and Carolyn Meadows. Also in attendance were: Craig B. Spray, NRA Treasurer, David A. Warren, Committee Secretary, John Frazer, NRA Secretary, Thomas R. Tedrick, NRA Managing Director of Finance, Robert Owens, Fiscal Officer ILA, Sonya Rowling, NRA Director of Finance Reporting & Accounting, Christina Majors, NRAF Managing Director of Finance and Jean Hwang, NRAF Manager of Financial Operations. Noted outside counsel in attendance were Wit Davis – Board Counsel (via teleconference), along with William A. Brewer and Sarah Rogers – Brewer Attorneys. It was noted that the meeting was duly authorized and appropriate notice was given.

**The Committee discussed many areas of interest and while not rising to the level of Board action, the following items were addressed:**

1. The minutes from the September 12, 2019 meeting was approved.

2. The Committee was presented with background materials by the staff of two competing audit/tax firms; Aronson LLC and Rogers & Company, with the intent to replace RSM as the exiting firm. The Committee was able to inquire with questions to each firm, the NRA staff and to hold mutual dialogue regarding a proposed selection recommendation. As a result of these efforts the Committee approved a motion to engage the firm of Aronson LLC for the 2019, 2020 & 2021 audit/tax services. There was a further approved Committee motion to seek to engage Rogers & Company with consulting services around the 2019 990 preparation.

3. The Committee met with counsel and staff in executive session to discuss contract and policy related matters.

4. Receiving, investigating and resolving all instances of whistleblowing as they arise is part of the Audit Committee's business at each meeting. There was one instances of whistleblowing reported to the Committee since the prior Committee meeting, where this incident was investigated and it was determined to be unfounded.

The Committee went into executive session at 1:50 p.m., and rose from executive session at 4:30 p.m., with the following resolutions being adopted.

NRA-NYAG-00083828

## I.   Barrett Firearms

WHEREAS, Ronnie G. Barrett, an NRA director, is the Founder and CEO of Barrett Firearms Manufacturing, Inc., which is well known for, and whose products include, high quality rifles that are often in scarce supply on the consumer market; and

WHEREAS, at various times since 2012, Barrett Firearms Manufacturing, Inc. offered The NRA Foundation the opportunity to buy these rifles at prices favorable to the Foundation; and

WHEREAS, these rifles were then offered at Friends of NRA events for the benefit of The NRA Foundation, and have proven popular sales items raising substantial funds in support of the Foundation's charitable and educational mission; and

WHEREAS, Barrett Firearms Manufacturing, Inc. now wishes to be included in The NRA Foundation's Vendor Direct Program, through which these rifles would be made available to individual Friends of NRA committees for use at Friends of NRA events for the benefit of The NRA Foundation, at favorable prices that only Barrett Firearms Manufacturing's strongest partners are able to receive; and

WHEREAS, any purchases made under the Vendor Direct Program are at the sole discretion of those individual Friends of NRA committees; now therefore be it

RESOLVED, that the Committee finds that due to the highly favorable pricing terms, these transactions are fair, reasonable, and in the best interest of The NRA Foundation, that the past transactions are approved and ratified, and that similar future transactions, on substantially the same terms, are also authorized.

## II.   Remington Outdoor Company

WHEREAS, from 2011 to 2018, George K. Kollitides served as a Trustee of The NRA Foundation; and

WHEREAS, from 2012 to 2015, George K. Kollitides served as Chairman and CEO of Remington Outdoor Company, which manufactures firearms such as Remington, Bushmaster, and Marlin; and

WHEREAS, at various times before, during, and after Mr. Kollitides' service as a Trustee of The NRA Foundation and Chairman and CEO of Remington Outdoor Company, Remington offered The NRA Foundation the opportunity to buy firearms at prices favorable to the Foundation, under Remington's Conservation Program where purchasers receive a discount of 33% off of MSRP; and

236

NRA-NYAG-00083829

WHEREAS, The NRA Foundation at various times purchased such firearms, received this discount, and offered the firearms at Friends of NRA events for the benefit of The NRA Foundation; now therefore be it

RESOLVED, that the Committee finds that due to the highly favorable pricing terms, these past transactions were fair, reasonable, and in the best interest of The NRA Foundation and that these past transactions are approved and ratified.

### III.    Sturm, Ruger & Co., Inc.

WHEREAS, Sandra S. Froman, an NRA director, has served on the board of directors of firearms manufacturer Sturm, Ruger & Co., Inc. since December, 2015; and

WHEREAS, at various times prior to and since Sandra S. Froman joining the board of Sturm, Ruger & Co., Inc., Ruger offered The NRA Foundation the opportunity to buy firearms at the same prices and under the same terms as offered to Ruger's distributors; and

WHEREAS, The NRA Foundation at various times purchased such firearms at distributor pricing and offered the firearms at Friends of NRA events for the benefit of The NRA Foundation; now therefore be it

RESOLVED, that the Committee finds that due to the highly favorable pricing terms, these transactions are fair, reasonable, and in the best interest of The NRA Foundation, that the past transactions are approved and ratified, and that similar future transactions, on substantially the same terms, are also authorized, provided that Sandra S. Froman not engage in any deliberations concerning such transactions and that she abstain from any vote or other decisions involving such transactions.

The Committee stood in recess at 4:30 p.m., with no further actions.

The Audit Committee met in person at 12:00 p.m. EST, January 9, 2020. Committee members in attendance were: Charles L. Cotton, Chairman, David G. Coy, Vice Chairman, Curtis Jenkins, Herbert A. Lanford, Jr. and Carolyn Meadows. Also in attendance were: Craig B. Spray, NRA Treasurer, Willes Lee, NRA Second Vice President, David A. Warren, Committee Secretary, John Frazer, NRA Secretary, Thomas R. Tedrick, NRA Managing Director of Finance, Robert Owens, Fiscal Officer ILA, Sonya Rowling, NRA Director of Finance Reporting & Accounting, Christina Majors, NRAF Managing Director of Finance and Jean Hwang, NRAF Manager of Financial Operations. Noted outside counsel in attendance were Wit Davis – Board Counsel (via teleconference), along with William A. Brewer and Sarah Rogers – Brewer Attorneys. It was noted that the meeting was duly authorized and appropriate notice was given.

**The Committee discussed many areas of interest and while not rising to the level of Board action, the following items were addressed:**

1. The minutes from the November 20, 2019 meeting was approved.

NRA-NYAG-00083830

2. The Committee was presented by Greg Plotts, Partner and Will Donahue, Sr. Manager of Audit, of Aronson LLC (engaged audit/tax firm). The scope of this presentation was to present what was new for the 2019 audit engagement, significant audit areas of focus, upcoming changes, present the Aronson audit engagement team and to propose the audit engagement timeline.

3. The Committee met with counsel and staff in executive session to discuss contract and policy related matters.

4. Receiving, investigating and resolving all instances of whistleblowing as they arise is part of the Audit Committee's business at each meeting. There were no instances of whistleblowing reported to the Chairman of the Audit Committee, General Counsel, Human Resources Director, or the Secretary of the Audit Committee.

The Committee went into executive session at 12:24 p.m., and rose from executive session at 1:47 p.m., with the following resolutions being adopted.

## I.  Ted Nugent—Advertising

WHEREAS, Ted Nugent is a member of the Board of Directors of the National Rifle Association of America (NRA), a position for which he receives no compensation;

WHEREAS, Ted Nugent is well known as an avid hunter and is the host and producer of "Spirit of the Wild," a hunting-related television program produced by SpiritWild Productions, Inc.;

WHEREAS, Ted Nugent's wife, Shemane Nugent, is the president and director of SpiritWild Productions;

WHEREAS, the audience of "Spirit of the Wild" is a desirable audience for NRA marketing efforts, and the NRA has in the past entered into a series of agreements to advertise on the program, including payments of $40,000 for two quarters of advertising in 2017, $80,000 for four quarters of advertising in 2018, and $45,000 for two quarters of advertising in 2019; and

WHEREAS, the NRA has entered into an additional contract for two quarters of advertising in the first half of 2020, at a cost of $45,000; now therefore be it

RESOLVED, that the NRA Audit Committee has reviewed the agreement and has reviewed financial analysis for advertising via "Spirit of the Wild" in 2020 on the Outdoor Channel, specifically the cost per 1,000 views, or "CPM" as is custom and usage in the advertising industry. Measured against the CPM that third parties pay the NRA to advertise via American Rifleman TV on the Outdoor Channel, the CPM for "Spirit of the Wild" in 2020 is appropriately priced. Therefore, the NRA Audit Committee finds the transaction to be fair, reasonable, and in the best interest of the NRA, and approves and ratifies it accordingly; and be it further

NRA-NYAG-00083831

RESOLVED, that approval for future transactions regarding NRA advertising on the program is hereby granted, provided that future similar transactions are on substantially the same financial (i.e., CPM) and commercial terms as the present one. Any material changes to financial or commercial terms would compel this Committee to re-evaluate its approval.

## II.    Leroy Sisco – Military Warriors Support Foundation

WHEREAS, Lieutenant General Leroy Sisco (U.S. Army, Ret.), is an unpaid NRA director, and is also the founder and paid chief executive officer of the Military Warriors Support Foundation (MWSF), a section 501(c)(3) charity that provides support for combat wounded veterans in the form of housing, homeownership and transportation assistance, recreational activities, and leadership development programs; and

WHEREAS, between 2013 and 2018, the National Rifle Association donated a total of $300,000 to the MWSF, and The NRA Foundation donated $60,000, as a means of showing their support for veterans, consistent with the NRA's historic mission of supporting America's military and with NRA entities' past record of contributing to veterans' charities; and

WHEREAS, these donations were announced at various events—including the Saturday evening concerts at NRA Annual Meetings—at which the MWSF presented homes to wounded veterans, gaining favorable publicity for the NRA and its affiliates; and

WHEREAS, although Gen. Sisco does not hold an ownership interest in MWSF sufficient to classify MWSF as a "related party," and does not have a financial interest in the foregoing donations which would classify them as "related party transactions," pursuant to N.Y. NPCL § 102, the NRA out of an abundance of caution sought review and ratification of the donations by the Audit Committee; now, therefore, be it

RESOLVED, that such donations were fair, reasonable, and in the best interest of the NRA at the time they were made, and are hereby approved and ratified; and be it further

RESOLVED, that any proposed future donations to the MWSF shall be approved by the Audit Committee before any payment is made by the NRA.

## III.    Peacemaker National Training Center – NRA Schools

WHEREAS, the Director of the NRA's Competitive Shooting Division, Cole McCulloch, is the owner of Peacemaker National Training Center ("PNTC"), a shooting facility in West Virginia; and

WHEREAS, the NRA has, in the past, presented and marketed various multi-disciplinary firearms training schools, and intends to resume doing so during 2020; and

NRA-NYAG-00083832

WHEREAS, the NRA considers PNTC to be a desirable site for such schools based on PNTC's involvement in the previous program; and

WHEREAS, the terms under consideration for the NRA's proposed contract with PNTC are as follows: (i) PNTC will furnish facilities and shooting instruction under the guidance and direction of NRA Staff; (ii) all PNTC proposed curricula will be subject to approval by the NRA; (iii) the NRA will be responsible for financial management of the schools, including determining optimal pricing; (iv) the parties currently anticipate that courses will be priced between $299 and $349 per student; (v) the NRA will retain $125 per student; and (vi) PNTC shall maintain, at its own expense, insurance insuring PNTC and the NRA against liabilities arising from PNTC's operation of the schools and shall indemnify and hold harmless the NRA from liabilities relating to PNTC's operation of the schools; and

WHEREAS, the NRA anticipates contracting with other shooting facilities for the operation of shooting schools on substantially similar terms;

WHEREAS, in consideration for the fees and benefits received under the contract, the NRA intends to market and promote the schools on a non-exclusive basis and permit the use of its intellectual property in connection therewith;

WHEREAS, Mr. McCulloch will be involved in the NRA's oversight of PNTC's curricula, but beyond the initial proposal of this program, has recused himself, and will continue to recuse himself, from decision-making bearing on the NRA's financial relationship with PNTC; and

WHEREAS, although the NRA does not anticipate that Mr. McCulloch will constitute a "key person" within the meaning of its Conflict of Interest and Related Party Transaction Policy for purposes of any transactions during the upcoming year, it nonetheless seeks approval of the proposed transaction for the avoidance of doubt; now, therefore, be it

RESOLVED that the Audit Committee has reviewed the proposed transaction, and considered that PNTC's classes held at the Peacemaker facility will be useful to members and gun owners and produce revenue for the NRA, and based on its review has determined that promoting the schools at PNTC pursuant to the above-referenced terms is fair, reasonable, and in the best interests of the NRA.

## IV. Woody Phillips Consulting Contract

WHEREAS, Wilson H. Phillips served as Chief Financial Officer and Treasurer of the NRA until his retirement in 2018; and

WHEREAS, in the course of his service, Mr. Phillips developed valuable relationships and expertise, as well as knowledge useful to the NRA in connection with its prosecution and defense of pending and anticipated litigation matters; and

WHEREAS, since retiring, Mr. Phillips has accordingly continued to serve the NRA, including by dedicating substantial time to meet with the NRA's counsel, inform the NRA about

NRA-NYAG-00083833

facts, and assist the NRA in locating documents which further the NRA's objectives in connection with its legal matters; and

WHEREAS, prior to Mr. Phillips' retirement, a consulting contract was drafted which allowed the NRA to avail itself of Mr. Phillips' expertise and services; however, the contract departed from NRA guidelines with respect to such consulting arrangements and was never approved by the Treasurer, the Executive Vice President, or the Audit Committee; and

WHEREAS, the Audit Committee previously advised that it would consider approving a consulting contract with Mr. Phillips, provided that (i) the contract adhered to the NRA's best-practices guidelines for consulting arrangements with departed executives; and (ii) the contract satisfied signature requirements and, if applicable, business-case-analysis requirements appropriate to the NRA's anticipated level of expenditures and

WHEREAS, at its January 9, 2020 meeting, the Audit Committee reviewed a proposed revised contract and concluded that the terms of the contract are broadly acceptable and appear to be fair, reasonable, and in the best interest of the NRA; now, therefore, be it

RESOLVED that subject to the satisfaction of signature requirements and, if applicable, business-case-analysis requirements set forth in the NRA Policy Manual, the proposed Consulting Agreement with Wilson H. Phillips presented to the Audit Committee at its January 9, 2020, meeting is hereby approved.

## V. Whistleblower Policy

WHEREAS, the NRA strives to meet or exceed best practices with respect to compliance and governance matters; and

WHEREAS, in furtherance of this effort, the Audit Committee believes it appropriate to further update and expand upon certain existing NRA policies; and

WHEREAS, on January 7, 2006, the NRA Board of Directors adopted a Statement of Corporate Ethics which sets forth the NRA's commitment to impartial, sound business practices and such policy (as set forth in the NRA Employee Handbook) also makes clear that the NRA is committed to the protection of whistleblowers who raise questions or concerns regarding such practices; and

WHEREAS, the Audit Committee recommends that the Statement of Corporate Ethics be expanded to set forth further express detail regarding whistleblowing protocols and protections; now, therefore, be it

RESOLVED that the Audit Committee recommends that the Board of Directors adopt the proposed revised Statement of Corporate Ethics set forth in Exhibit A hereto.

241

NRA-NYAG-00083834

Respectfully submitted,

Charles L. Cotton, Chairman

242

NRA-NYAG-00083835

**Exhibit A**
**Proposed Expanded Statement of Corporate Ethics**
**Jan. 8, 2020**

It is the policy of the National Rifle Association of America to conduct the Association's business in an honest and forthright manner. To this end, Association employees strive for excellence in their work and for a consistent standard of integrity in their business dealings.

Consistent with this objective is the Association's requirement that all employees comply with applicable bylaws and policies of the association, and all relevant laws and regulations in conducting the association's business. No violation of the spirit or intent of these bylaws, policies, laws and regulations will be tolerated.

To maintain consistent standards of integrity:

1. Association employees shall not become involved in any activity which might influence, be reasonably expected to influence, or give the appearance of influencing their objective business judgment in dealing with others. Employees shall not become involved in conflict of interest situations.

2. No Association employee shall engage in illegal or unethical actions involving any person or organization doing business or attempting to do business with the Association.

3. Association employees shall maintain complete and accurate books, records and documentation in accordance with the accounting rules and controls established by the Association.

4. Employees who are officers, directors, division directors or activity supervisors, shall have responsibility: (a) to insure that these policies are annually communicated to the employees reporting to them; (b) to clarify and explain said policies when necessary; (c) to monitor compliance therewith, and (d) to report all known (or suspected) violations of said policies to the Executive Vice President of the Association, the Treasurer of the Association, or to other persons whom they designate, as appropriate.

Where a question arises whether a particular anticipated course of business conduct is ethical or legal, the individual

243

NRA-NYAG-00083836

contemplating the action or directed to perform the action shall seek advice from the Office of the General Counsel of the Association.

Failure to comply with this policy and any specific implementing policies may result in dismissal from employment or other disciplinary action. Violations of law will be reported to appropriate law enforcement officials.

Consistent with historic NRA practice, this Corporate Ethics Policy shall be distributed to all directors, officers, and employees of the NRA, as well as any contractors, vendors, or volunteers who provide substantial services to the NRA.

### A-1.03: 2 of 4

### II    Ethical Business Relationships

To ensure that the Association maintains a reputation for ethical conduct in its business relationships, it is the individual responsibility of each employee to avoid any activity or interest that might tend to discredit him or herself, or the Association. Specific prohibitions are as follows:

> Each employee will be free of any investment, association or connection, which interferes, or may appear to interfere, with the independent exercise of his or her judgment on behalf of the Association. The fulfillment of this obligation shall include, but not be limited to, the following:

1.    No employee may own directly or indirectly, or act as agent or trustee for any financial interest in any supplier of goods or services to the association, unless such financial interest is in stocks, bonds or other publicly traded securities of a corporation, and the interest comprises less than five percent (5%) of the assets of the corporation.

2.    No employee may hold a position of director, officer, employee, trustee, statutory employee, independent contractor or agent with any such supplier.

3.    No employee may accept personal favors, gifts, entertainment or gratuities from any supplier or potential supplier with either a retail price or fair-market value in excess of $250 unless, prior to

NRA-NYAG-00083837

accepting or receiving such personal favor or gratuity, the employee submits a written statement of justification that is approved by the Executive Director of the employee's division or Officer, as appropriate. A copy of the approved justification will be filed with the Human Resources Division.

4. No employee may use, for personal gain, any information that he or she acquires in the course of his or her employment.

5. Any employee involved in any situation that may represent a possible conflict of interest, shall report same immediately to the Executive Vice President.

Employees who in good faith believe that a fellow employee, supervisor, manager, or director is in violation of this policy are encouraged to report their concerns as discussed in Section III below.

### III. Whistleblower Policy

It is the responsibility of each NRA employee, director, and contractor to report in good faith any concerns he or she may have regarding actual or suspected violations of this Corporate Ethics Policy or any NRA policies or controls. Reports may be made in person, in writing, by telephone, or by email to any of the following contacts:

- Chairman of the Audit Committee:
  - Name:
  - Phone number:
  - Email address:

- Secretary of the Audit Committee:
  - Name:
  - Phone number:
  - Email address:

- Office of the General Counsel:
  - Name:
  - Phone number:
  - Email address:

NRA-NYAG-00083838

Reports may be made anonymously. To make an anonymous report by letter, please address an envelope marked "CONFIDENTIAL" to any of the contacts above. Letters to the Chairman of the Audit Committee may be delivered via the Office of the Secretary.

No person who in good faith makes a report pursuant to this policy shall suffer intimidation, harassment, retaliation, discrimination, or adverse employment consequences because of such report. A report is made in good faith if the person making the report reasonably believes that the information reported is true and constitutes a violation of the law or of NRA policies or controls.

The Secretary of the Audit Committee, in conjunction with the NRA Office of the General Counsel and any outside counsel or professionals they deem appropriate, shall be responsible for investigating and resolving all whistleblower reports. At the discretion of the Office of the General Counsel, investigative responsibilities may also be delegated to NRA staff including, where appropriate, Human Resources staff. In the course of investigating and resolving whistleblower concerns, neither the Secretary of the Audit Committee, nor the NRA Office of the General Counsel, nor any professionals or staff to whom investigative responsibilities are delegated shall take any action, unless legally required, that would compromise the identity of a person who reported a concern anonymously, or would otherwise compromise the integrity of any investigation. For example, under no circumstances shall a person who is the subject of a whistleblower complaint be involved in the investigative process (except as necessary for the conduct of such process, e.g., such person may be interviewed to elicit relevant facts), nor shall the person be present for any Board or committee deliberations or voting which relate to the whistleblower complaint.

The Secretary of the Audit Committee shall report to the Audit Committee at each regularly scheduled board meeting regarding the implementation of this Whistleblower Policy and the general type and resolution of recent whistleblower complaints.

### A-1.03: 3 of 4

### IV  Use of and Accounting for Association Funds and Assets

    1.    The use of association funds or assets for any unlawful or improper purpose is strictly prohibited.

NRA-NYAG-00083839

2. No undisclosed or unrecorded fund or asset of the Association shall be established for any purpose.

3. The appropriate employees of the Association will make and keep books, records, and accounts, in reasonable detail, sufficient to reflect accurately and fairly all financial transactions and the disposition of funds and assets.

4. The appropriate employees of the Association will devise and maintain a system of internal controls sufficient to provide reasonable assurance that:

   a. Transactions are executed in accordance with management's general or specific authorization;

   b. Transactions are recorded: 1) to permit preparation of financial statements in conformity with generally accepted accounting principles or any other criteria applicable to such statements, and 2) to maintain accountability for funds and assets;

   c. Access to assets is permitted only in accordance with management's general or specific authorization; and

   d. The recorded accountability for funds and assets is compared with the existing funds and assets at reasonable intervals and appropriate action is taken with respect to any differences.

5. Periodic compliance reviews shall be the responsibility of the Treasurer of the Association, at the direction of the Audit Committee established by the Board of Directors and/or at the direction of the Executive Vice President of the Association. Employees specifically designated by the Treasurer of the Association as having responsibilities involving purchase authorization, control or disbursements of funds, and/or other control of Association assets, will be required to sign an Annual Statement of Corporate Ethics that will be maintained in the individual personnel records in the Human Resources Division.

247

NRA-NYAG-00083840

### A-1.03: 4 of 4

### V    Written Statement of Business with the Association

The Bylaws require any employee of the Association to disclose
any business with the Association in excess of $2,000 per year.
This Bylaw (Article IV, Section 2) reads as follows:

"Any Director, officer, or employee of the Association who is
also a member of the governing body of any business, corporate,
or other entity (whether as trustee, director, sole-owner,
officer, partner, or the like) which does any business with the
Association in excess of $2,000 either within a year or pursuant
to any contract or contracts originating within a year shall
immediately file a written statement of all such business as to
the nature and amount thereof, to the best of his or her
knowledge, with the Secretary who shall transmit such statement
to the Board of Directors at its next meeting and who shall
include all such statements in the Secretary's report at the
next Annual Meeting for Members."

Compliance with this paragraph does not affect or supersede the
requirement to submit a Financial Disclosure Questionnaire.

I HAVE READ THE FOREGOING AND UNDERSTAND ITS CONTENTS AND AGREE
TO THE TERMS THEREIN.

_____(Signature)

_____(Name)

_____(Date)

NRA-NYAG-00083841

(Original with noted changes)
**Proposed Expanded Statement of Corporate Ethics**
**Jan. 8, 2020**

It is the policy of the National Rifle Association of America to conduct the Association's business in an honest and forthright manner. To this end, Association employees strive for excellence in their work and for a consistent standard of integrity in their business dealings.

Consistent with this objective is the Association's requirement that all employees comply with applicable bylaws and policies of the association, and all relevant laws and regulations in conducting the association's business. No violation of the spirit or intent of these bylaws, policies, laws and regulations will be tolerated.

To maintain consistent standards of integrity:

1. Association employees shall not become involved in any activity which might influence, be reasonably expected to influence, or give the appearance of influencing their objective business judgment in dealing with others. Employees shall not become involved in conflict of interest situations.

2. No Association employee shall engage in illegal or unethical actions involving any person or organization doing business or attempting to do business with the Association.

3. Association employees shall maintain complete and accurate books, records and documentation in accordance with the accounting rules and controls established by the Association.

4. Employees who are officers, directors, division directors or activity supervisors, shall have responsibility: (a) to insure that these policies are annually communicated to the employees reporting to them; (b) to clarify and explain said policies when necessary; (c) to monitor compliance therewith, and (d) to report all known (or suspected) violations of said policies to the Executive Vice President of the Association, the Treasurer of the Association, or to other persons whom they designate, as appropriate.

Where a question arises whether a particular anticipated course of business conduct is ethical or legal, the individual

**Formatted:** Indent: Left: 0.5", Hanging: 0.56"

249

NRA-NYAG-00083842

contemplating the action or directed to perform the action shall seek advice from the Office of the General Counsel of the Association.

Failure to comply with this policy and any specific implementing policies may result in dismissal from employment or other disciplinary action. Violations of law will be reported to appropriate law enforcement officials.

Consistent with historic NRA practice, this Corporate Ethics Policy shall be distributed to all directors, officers, and employees of the NRA, as well as any contractors, vendors, or volunteers who provide substantial services to the NRA.

### A-1.03: 2 of 4

### II    Ethical Business Relationships

To ensure that the Association maintains a reputation for ethical conduct in its business relationships, it is the individual responsibility of each employee to avoid any activity or interest that might tend to discredit him or herself, or the Association. Specific prohibitions are as follows:

Each employee will be free of any investment, association or connection, which interferes, or may appear to interfere, with the independent exercise of his or her judgment on behalf of the Association. The fulfillment of this obligation shall include, but not be limited to, the following:

1. No employee may own directly or indirectly, or act as agent or trustee for any financial interest in any supplier of goods or services to the association, unless such financial interest is in stocks, bonds or other publicly traded securities of a corporation, and the interest comprises less than five percent (5%) of the assets of the corporation.

2. No employee may hold a position of director, officer, employee, trustee, statutory employee, independent contractor or agent with any such supplier.

3. No employee may accept personal favors, gifts, entertainment or gratuities from any supplier or potential supplier with either a retail price or fair-market value in excess of $250 unless, prior to

NRA-NYAG-00083843

accepting or receiving such personal favor or gratuity, the employee submits a written statement of justification that is approved by the Executive Director of the employee's division or Officer, as appropriate. A copy of the approved justification will be filed with the Human Resources Division.

4. No employee may use, for personal gain, any information that he or she acquires in the course of his or her employment.

5. Any employee involved in any situation that may represent a possible conflict of interest, shall report same immediately to the Executive Vice President.

Employees who in good faith believe that a fellow employee, supervisor, manager, or director is in violation of this policy are encouraged to report their concerns as discussed in Section III below. bring the information on which their belief is based to the attention of the General Counsel. Employees who in good faith believe that an officer or a member of the Board of Directors is engaged in any financial irregularity affecting the Association or has a conflict of interest are encouraged to bring the information on which their belief is based to the attention of the Audit Committee. The Audit Committee should be contacted through its Secretary, Thomas R. Tedrick, at 703-267-1067, or through its Chairman. The taking of such action in good faith will not result in retribution or reprisal against the employment of any employee. Alternate contacts are listed at the bottom of this form.

[Formatted: body]

### III. Whistleblower Policy

It is the responsibility of each NRA employee, director, and contractor to report in good faith any concerns he or she may have regarding actual or suspected violations of this Corporate Ethics Policy or any NRA policies or controls. Reports may be made in person, in writing, by telephone, or by email to any of the following contacts:

[Formatted: head]

- Chairman of the Audit Committee:
  - o Name:
  - o Phone number:
  - o Email address:

- Secretary of the Audit Committee:

251

NRA-NYAG-00083844

- o Name:
- o Phone number:
- o Email address:

- Office of the General Counsel:
  - o Name:
  - o Phone number:
  - o Email address:

Formatted: Indent: Left: 1", No bullets or numbering

Reports may be made anonymously. To make an anonymous report by letter, please address an envelope marked "CONFIDENTIAL" to any of the contacts above. Letters to the Chairman of the Audit Committee may be delivered via the Office of the Secretary.

No person who in good faith makes a report pursuant to this policy shall suffer intimidation, harassment, retaliation, discrimination, or adverse employment consequences because of such report. A report is made in good faith if the person making the report reasonably believes that the information reported is true and constitutes a violation of the law or of NRA policies or controls.

The Secretary of the Audit Committee, in conjunction with the NRA Office of the General Counsel and any outside counsel or professionals they deem appropriate, shall be responsible for investigating and resolving all whistleblower reports. At the discretion of the Office of the General Counsel, investigative responsibilities may also be delegated to NRA staff including, where appropriate, Human Resources staff. In the course of investigating and resolving whistleblower concerns, neither the Secretary of the Audit Committee, nor the NRA Office of the General Counsel, nor any professionals or staff to whom investigative responsibilities are delegated shall take any action, unless legally required, that would compromise the identity of a person who reported a concern anonymously, or would otherwise compromise the integrity of any investigation. For example, under no circumstances shall a person who is the subject of a whistleblower complaint be involved in the investigative process (except as necessary for the conduct of such process, e.g., such person may be interviewed to elicit relevant facts), nor shall the person be present for any Board or committee deliberations or voting which relate to the whistleblower complaint.

The Secretary of the Audit Committee shall report to the Audit Committee at each regularly scheduled board meeting regarding

NRA-NYAG-00083845

the implementation of this Whistleblower Policy and the general type and resolution of recent whistleblower complaints.

### A-1.03: 3 of 4

### IV~~II~~ Use of and Accounting for Association Funds and Assets



Formatted: body

Formatted: head, Left

1. The use of association funds or assets for any unlawful or improper purpose is strictly prohibited.

2. No undisclosed or unrecorded fund or asset of the Association shall be established for any purpose.

3. The appropriate employees of the Association will make and keep books, records, and accounts, in reasonable detail, sufficient to reflect accurately and fairly all financial transactions and the disposition of funds and assets.

4. The appropriate employees of the Association will devise and maintain a system of internal controls sufficient to provide reasonable assurance that:

    a. Transactions are executed in accordance with management's general or specific authorization;

    b. Transactions are recorded: 1) to permit preparation of financial statements in conformity with generally accepted accounting principles or any other criteria applicable to such statements, and 2) to maintain accountability for funds and assets;

    c. Access to assets is permitted only in accordance with management's general or specific authorization; and

    d. The recorded accountability for funds and assets is compared with the existing funds and assets at reasonable intervals and appropriate action is taken with respect to any differences.

5. Periodic compliance reviews shall be the responsibility of the Treasurer of the Association, at the direction of the Audit Committee established by the Board of Directors and/or at the direction of the Executive Vice President of the Association.

NRA-NYAG-00083846

Employees specifically designated by the Treasurer of the Association as having responsibilities involving purchase authorization, control or disbursements of funds, and/or other control of Association assets, will be required to sign an Annual Statement of Corporate Ethics that will be maintained in the individual personnel records in the Human Resources Division.

### A-1.03: 4 of 4

### ~~IV~~ Written Statement of Business with the Association

The Bylaws require any employee of the Association to disclose any business with the Association in excess of $2,000 per year. This Bylaw (Article IV, Section 2) reads as follows:

"Any Director, officer, or employee of the Association who is also a member of the governing body of any business, corporate, or other entity (whether as trustee, director, sole-owner, officer, partner, or the like) which does any business with the Association in excess of $2,000 either within a year or pursuant to any contract or contracts originating within a year shall immediately file a written statement of all such business as to the nature and amount thereof, to the best of his or her knowledge, with the Secretary who shall transmit such statement to the Board of Directors at its next meeting and who shall include all such statements in the Secretary's report at the next Annual Meeting for Members."

Compliance with this paragraph does not affect or supersede the requirement to submit a Financial Disclosure Questionnaire.

I HAVE READ THE FOREGOING AND UNDERSTAND ITS CONTENTS AND AGREE TO THE TERMS THEREIN.

_____ (Signature)

_____ (Name)

_____ (Date)

~~Alternate contacts to report concerns:~~

~~Chairperson~~
~~Audit Committee~~

NRA-NYAG-00083847

(Consult NRA Official Directory for
 contact information)

Director, Human Resources
NRA – Human Resources
703/267-1264

General Counsel
NRA – Office of General Counsel
703/267-1250



NRA-NYAG-00083848

## NATIONAL RIFLE ASSOCIATION OF AMERICA
## REPORT OF THE BLACK POWDER COMMITTEE

**Tysons Corner, Virginia**                                **January 11-12, 2020**

**TO:   NRA Board of Directors**

The Black Powder Committee met via teleconference on November 22, 2019. Committee Members present were: Todd J. Rathner, Chairman; Johnny Nugent, Vice Chairman; David G. Coy, Joe Hill, Marty Murphy, Rick Weber, and Diane Danielson, Committee Secretary. Committee member Donald E. Young was unable to attend. Others in attendance were Willes K. Lee, NRA Second Vice President and Aaron Farmer, Deputy Director, NRA Competitive Shooting Division.

**The Committee discussed many areas of interest and while not rising to the level of requiring Board action, the following items were addressed:**

1.  The old business regarding contacting the donor of the Arthur C. Jackson Trophy to see if an additional assignment to the trophy could include the Iron Man Championship at the Black Powder Target Rifle (BPTR) National Championships has been tabled until such time as the match is held again.

2.  Rick Weber and Joe Hill reported that, during the 2019 Black Powder Nationals in June at Friendship, Indiana, NMLRA board members met with the Muzzle Loaders Associations International Committee (MLAIC) to discuss hosting eight matches per year in Friendship.

3.  Discussion was started by Joe Hill to consider a "Super Membership" campaign that would include NMLRA, North/South Skirmishers, American Single Shot Rifle Club, USMLAIC and NRA. He suggested special rates from each organization that would include memberships in all of the participating organizations under the super membership. It could be considered an organic way to drive interest in multiple organizations and strengthen membership numbers in each.

4.  Aaron Farmer reported on the cancellation of the BPTR National Championship due to insufficient registrations to justify holding the match. There are no plans to conduct the match in 2020.

5.  The NMLRA Championships will be held in Friendship, Indiana June 13 to 21 and BPTR has been added as part of their matches. All Committee members and Mr. Farmer are invited to attend.

6.  Clarification of the rule regarding the participation of match officials in matches was requested and Mr. Farmer clarified that match officials can compete in lower matches but not the National Match officials.

NRA-NYAG-00083849

7. The NMLRA will be combining Black Powder Cartridge and Black Powder Target rifle in one single championship during their May Regional championship at Friendship, IN and will be adding more equipment to accommodate more shooters in monthly matches and have a way to expose shooters to other disciplines and get more use out of the range.

8. **A motion for a wording change in all the muzzleloading rule books was forwarded to the Competition Rules & Programs Committee for its review and consideration to be recommended to the Board of Directors.**

The Committee has no recommendations to the Board of Directors at this time.

Respectfully submitted,

Todd J. Rathner
Chairman

NRA-NYAG-00083850

# NATIONAL RIFLE ASSOCIATION OF AMERICA
## REPORT OF THE BYLAWS & RESOLUTIONS COMMITTEE

**Tysons Corner, Virginia**                    **January 11-12, 2020**

**To: NRA Board of Directors**

The Bylaws & Resolutions Committee met on January 8, 2020 at the Hyatt Regency Tysons Corner Center in Tysons Corner, Virginia.

Committee members present were Carol Frampton, Chairman; Charles L. Cotton, Vice Chairman; Scott L. Bach; Larry E. Craig; Joel Friedman; Todd J. Rathner; and Michael Blaz, Committee Secretary. Others in attendance were: Carolyn D. Meadows, NRA President; NRA Board members: Robert E. Mansell, and Kristy Titus; John C. Frazer, NRA Secretary and General Counsel; Frank Tait, candidate for NRA Board; and Amanda Suffecool.

The Committee approved the minutes of the meeting on September 11, 2019.

The Committee discussed the member-proposed bylaw amendment to "Establish Minimum Attendance Requirements for the NRA Board of Directors" (the "Proposal") which was noticed prior to the Fall Board meeting. The Chairman created a task group composed of Mr. Bach, Mr. Friedman, Mr. Rathner and herself to further study and research the potential merits of the Proposal. The Committee deferred the Proposal pending this study.

Mr. Frazer reported to the Committee on the petition from Anthony Garcia to impose 12-year term limits on members of the NRA Board of Directors. Mr. Frazer reported that the petition failed to get 250 valid signatures from members eligible to vote, and thus the petition was not eligible for consideration by this Committee or the NRA Board of Directors. Mr. Frazer reported that he notified Mr. Garcia of this by mail on December 13, 2019.

The Committee recessed at approximately 9:25 a.m. subject to the call of the Chairman.

The Committee reconvened on January 10, 2020 at 8:10 a.m.

Committee members present were Carol Frampton, Chairman; Charles L. Cotton, Vice Chairman; Scott L. Bach; Allan D. Cors; Joel Friedman; Todd J. Rathner; and John C. Frazer, Acting Committee Secretary. Committee member Larry E. Craig was unable to attend. Others in attendance were NRA Board members Robert E. Mansell and Kristy Titus; Wit Davis, NRA Board Counsel; and Peter Flocos of K&L Gates, outside counsel to the Board of Directors (via phone).

The Committee went into executive session at approximately 8:12 a.m.

The Committee emerged from session and went into recess at approximately 8:45 a.m. subject to the call of the Chairman.

NRA-NYAG-00083851

The Committee reconvened on January 10, 2020 at 1:30 p.m.

Committee members present were Carol Frampton, Chairman; Charles L. Cotton, Vice Chairman; Scott L. Bach; Larry E. Craig; Joel Friedman; Todd J. Rathner; and John C. Frazer, Acting Committee Secretary. Committee member Allan D. Cors was unable to attend. Others in attendance were NRA Board member Robert E. Mansell, and Wit Davis, NRA Board Counsel.

The Committee considered a draft NRA Board of Directors policy relating to the meeting attendance of members of the NRA's Board of Directors. Following discussion and deliberation by this Committee, upon a motion duly made and seconded, a motion to present the final draft NRA Board of Directors' policy on attendance was unanimously approved.

**Therefore, the Committee makes the following recommendation to the Board of Directors:**

> **"MOVED, That the Committee recommends that the Board adopt the 'NRA Board Policy for Board Member Attendance, a copy of which is attached.'"**

The Committee recessed at approximately 2:00 p.m. subject to the call of the Chairman.

Respectfully submitted,

*Carol Frampton*

Carol Frampton
Chairman

259

**NRA Board Policy for Board Member Attendance**

(a) Members of the Board of Directors should regularly attend Board meetings. In order to discharge their fiduciary duties under applicable law, Board members shall keep informed of matters within the scope of the Board's oversight role in the governance of the Association. Attendance at Board meetings is one of a number of methods by which Directors may keep informed of matters within the purview of the Board.

(b) An excessive number of unexcused absences from meetings of the Board may be grounds for disciplinary or corrective action in accordance with the Association's Bylaws or as otherwise may be determined. Such action may include, without limitation, publicizing to the Board the attendance record of the Director and the Board asking for the resignation of the Director.

An absence from a Board meeting is deemed "excused" if the President, having been informed of the reason for the absence, in good faith deems the absence excused prior to the closing of the missed Board meeting based on at least one of the following six factors:

(1) the Director has a personal or family illness or bereavement; (2) severe weather, natural disaster, or civil disorder precludes attendance; (3) the Director is engaged in service in the military, as a law enforcement officer or other emergency responder; (4) the Director's attendance is required at a legislative body, legal proceeding, or other professional circumstance beyond the Director's reasonable control; (5) the Director's participation in other activities are of such importance that the Director's absence from Board meetings is justifiable; or (6) reasonable evidence is presented that such Board member has remained engaged and apprised of matters within the scope of the Board's oversight role despite the absence.

(c) In the event an absence is not "excused", the President shall, pursuant to Article VII, Section 2(b) of the Association's Bylaws, delegate the matter to the Executive Council to determine whether the Board member's absence should have been excused or, as the case may be, to make recommendations for disciplinary or corrective action consistent with the Association's Bylaws and applicable law.

NRA-NYAG-00083853

**NATIONAL RIFLE ASSOCIATION OF AMERICA**
**REPORT OF THE CLUBS & ASSOCIATIONS COMMITTEE**

**Tysons Corner, Virginia**                               **January 11-12, 2020**

The Clubs & Associations Committee met at he Hyatt Regency Hotel Tysons Corner Center in Tysons Corner, Virginia on January 8, 2020. Committee members present were Herbert A. Lanford; Jr., Chairman; Heidi E. Washington, Vice Chairman; Scott L. Bach; Anthony P. Colandro; Joel Friedman; Maria Heil; Victoria Huyge; Tom King; Carrie Lightfoot; Richard Pearson; James Wallace; Michael O. Ware (via phone); Gerald Wehner; and Son Nguyen, Committee Secretary. Natalie Foster was unable to attend. Others in attendance were: Elizabeth Bush, Managing Director, NRA Community Engagement Division; Todd Adkins, Managing Director, NRA ILA State & Local Affairs; Joseph P. DeBergalis, Jr., Executive Director, NRA General Operations; Jim Kohlmeyer, Sr. Managing Director, NRA Programs/Shooting Activities, General Operations; Paul Payne, Liaison, Clubs & Associations, NRA Community Engagement Division (via phone); Ed Worley, Manager, Members Council Programs, General Operations; NRA Board members John C. Sigler and Stephen C. Schreiner; and John Cushman, member, NRA Grassroots Development Committee.

**The Committee discussed many areas of interest and while not significant to be recommended to the Board of Directors, the following topics were discussed:**

1. Elizabeth Bush provided an update on the new structure of NRA Community Engagement Division and the status of various programs such as affiliated clubs and business alliance, YHEC, NRA Day, Adaptive Shooting, Eddie Eagle®, Refuse to Be a Victim®, and NRA's Online Hunter Education.

2. Todd Adkins led a discussion on the relationship of NRA-ILA with current NRA State Associations. The strength of the relationship is dependent on how much the State Associations are working with NRA-ILA. When State Associations are actively working with NRA-ILA, they form a strong relationship that has produced successful results. However, when State Associations are not working with NRA-ILA, the outcome is significantly different. Currently, there are about 25 State Associations that are not working with NRA-ILA. Under the new NRA-ILA leadership, they will work harder and quicker to relay information to State Associations so that State Associations have talking points regarding issues in their state. State Associations and NRA-ILA will also try to work together regarding candidate ratings with elections.

3. Paul Payne updated the committee on the status of being the NRA State Association liaison the past year. He has done research on each of their Annual Reports, websites, social media, and contacted each State Association president individually to open the lines of communication. Paul is trying to convey the message that State Associations can act as a resource to NRA.

4. Michael Ware led the discussion on strengthening the relationship between NRA and State Associations. He stated that after speaking with NRA members, he is finding the members are saying there is a disconnection in the relationship between NRA members

NRA-NYAG-00083854

and NRA Headquarters. Michael suggested finding a strategy to increase the personal relationship between the two. Chairman Lanford asked members of the committee to submit ideas for strategic plan and email them to the Chairman and Committee Secretary Son Nguyen. Things to consider are how to strengthen the relationship, changes NRA needs to make, revisions to current things we are doing, etc.

5. The Committee discussed the need to establish a State Association Mentor Program to help State Associations that aren't as strong. Many suggestions on how to start the program include hosting webinars on educational topics such as member recruitment and retention, looking at the Top 5 strong State Associations for guidance, and contacting neighboring State Associations to see if they need assistance with anything. A motion was passed to establish a State Association Mentor Program Subcommittee chaired by Tom King.

6. Joel Friedman reported that the Club Awards Subcommittee will meet following this meeting. The following awards were given out.

   a. Outstanding Club Award – Oklahoma City Gun Club
   b. Outstanding Youth Club Award – Capitol City Junior Rifle Club
   c. Outstanding State Association Award – Delaware State Sportsmen's Association, Inc.

Respectfully submitted,

Herbert A. Lanford, Jr.
Chairman

262

# NATIONAL RIFLE ASSOCIATION OF AMERICA
## REPORT OF THE COLLEGIATE PROGRAMS COMMITTEE

**Tysons Corner, Virginia**                         **January 11-12, 2020**

**TO: NRA Board of Directors**

The Collegiate Programs Committee met on October 30, 2019 via teleconference. Committee members present were Dave Butz, Chairman; Joe M. Allbaugh, Vice Chairman; Paul Benneche; Ted W. Carter; Marling P. Engle; Edie P. Fleeman; Bailey Glenewinkel; Duane Shepherd; and Victoria Taylor, Committee Secretary.

**The committee discussed many areas of interest and while not significant to be recommended to the Board of Directors, the following topics were addressed:**

1. The committee reviewed the reports given to the Competition Rules and Programs Committee and the Board of Directors.

2. The committee discussed the NRA All American nominations.

3. The committee extensively reviewed and discussed the 39th Annual NRA Intercollegiate Pistol Championships, the 10th Annual NRA Intercollegiate Rifle Club Championships, the NCAA Rifle Championships and the ACUI Clay Target Championships.

4. The committee discussed how to keep participation numbers growing. The committee agreed, once again, that a strong push needs to be made from our Industry Partnerships Division, and our Media/Marketing/Publications divisions specifically for these Collegiate Shooting Championships.

5. The committee also reviewed the NRA Intercollegiate Sectionals, NRA College Nights at the Smallbore National Matches, and NCAA and ACUI program updates.

6. The committee discussed temporary changes to the pistol programs for the 2019-2020 school year. Discussion revolved around coach submissions.

7. Staff informed the committee that all of the 2020 collegiate dates are available online.

8. **The Collegiate Programs Committee passed two motions concerning temporary changes to the pistol program for the 2019-2020 season. These motions were forwarded to the Competition Rules & Programs committee for its review and consideration to be recommended to the Board of Directors.**

The Committee has no recommendations to the Board of Directors at this time.

Respectfully submitted,

Dave Butz
Committee Chairman

263

## NATIONAL RIFLE ASSOCIATION OF AMERICA
## REPORT OF THE DISABLED SHOOTING SPORTS COMMITTEE

**Tysons Corner, Virginia**                                          **January 11-12, 2020**

**TO:   NRA Board of Directors**

The meeting of the Disabled Shooting Sports Committee was held on Friday, January 10, 2020, at the Hyatt Regency Tysons Corner Center in Tysons Corner, Virginia. Committee members present were Graham Hill, Chairman; Clel Baudler; Chuck Coccodrilli; Marco DeLaRosa; Ashlee Lundvall; Edward Mays; Chad Waligura (via phone); and Joseph Logar, Committee Secretary. Committee members William A. Bachenberg, Vice Chairman; Robin Kelleher; Tom King; and Robert Unkovic were unable to attend. Others in attendance were Elizabeth Bush, Managing Director, NRA Community Engagement Division; Jim Kohlmeyer, Senior Managing Director, NRA Programs and Shooting Activities; NRA Board member, Anthony Colandro; and other guests.

**The Committee discussed many areas of interest and while not significant to be presented to the Board of Directors, the following topics were addressed:**

1. The committee discussed numerous strategic initiatives to advance and support the mission of the NRA and the Adaptive Shooting Programs.

2. The committee elected to emphasize factors with the greatest impact on the shooting community at large. These were identified as 1) efforts intended to identify, improve and promote shooting range accessibility; and 2) enhanced training materials, courses and ratings for NRA instructors, coaches and training counselors. Enacting these initiatives should better prepare them to serve students with disabilities.

The Committee has no recommendations for the Board of Directors at this time.

Respectfully submitted,

Graham Hill
Chairman

264

NRA-NYAG-00083857

**NATIONAL RIFLE ASSOCIATION OF AMERICA**
**REPORT OF THE EDUCATION & TRAINING COMMITTEE**

**Tysons Corner, Virginia**             **January 11-12, 2020**

**TO:**    **NRA Board of Directors**

The meeting of the Education & Training Committee was held at the Hyatt Regency Tysons Corner Center in Tysons Corner, Virginia, on January 9, 2020. Committee members present were Willes K. Lee, Chairman; Dave Butz; Anthony Colandro; Scott Johnson; Carrie Lightfoot; Mitch O'Neal-Mitchell; Mark Vaughan; and John Howard, Committee Secretary. Committee members unable to attend were: Owen Buz Mills, Vice Chairman; Il Ling New; Janet Nyce; and Dwight D. Van Horn.

Others in attendance were NRA Board Members: Ronald L. Schmeits and Dr. Thomas P. Arvas. Staff in attendance were: John Perren, Special Assistant to EVP; James Kohlmeyer, Senior Managing Director, Programs/Shooting Activities, General Operations; Sheila Brantley, Director, National School Shield Program; Dr. Joseph Logar, National Manager, Adaptive Shooting Programs; Brian Goldstein, Training Manager, National School Shield Program; Brett Simon, Manager, Training Department, Education and Training Division; Darrell Sirignano, Administrative Assistant, National School Shield Program. Non-staff members included Ron Carter and Todd Ellis.

We were honored to have Joseph P. DeBergalis, Jr., Executive Director, General Operations attend and address the committee.

Chairman Lee briefly discussed the responsibility of the Education & Training Committee, which is to develop and monitor policies relating to training and education activities in shooting sports related fields, other than law enforcement, security and hunting.

**The Committee discussed many areas of interest and while not significant to be recommended to the Board, the following items were addressed**:

1. Chairman Lee recognized the new members on the committee, and had the group take a moment to briefly introduce themselves. He reinforced the importance of the committee, and expressed that the committee members are advocates for the NRA's Education and Training Division and briefly discussed adherence to Robert's Rules of Order and importance of keeping the committee focused on task at hand.
2. Mr. DeBergalis briefly addressed the committee and gave special emphasis on thanking the Education and Training staff for the work they have been doing.
3. Mr. Perren briefly introduced a presentation by the School Shield Staff.
4. Ms. Brantley provided a brief but very informative and detailed presentation regarding the School Shield Program and the progress it has made. She discussed the grant funds available, how much has been provided to schools and the current projections for 2020.

NRA-NYAG-00083858